IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| Plaintiff, | : | |
| v. | : | NO. 1:20-cv-00292 |
| | : | Judge Jones |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | : | ELECTRONCIALLY FILED |
| Defendant. | : | |

## COMPLAINT

Plaintiff Pace-O-Matic, Inc. ("POM"), by and through its undersigned counsel, alleges the following as its Complaint against Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert") in the above-captioned matter:

## NATURE OF THE ACTION

For years, POM relied on Eckert for legal advice concerning the marketing and sale of its electronic skill games and, in seeking that advice, entrusted Eckert with highly proprietary and confidential information concerning the design, development and operation of its skill games. Eckert's representation of POM has been extensive and multi-dimensional and includes the defense of POM's electronic skill games in litigation and representation of POM in government relations strategies to educate public officials about the legality of POM's skill

games. Eckert, however, recently took up arms on behalf of Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino") *against* POM over the continued legality of skill games. While advocating on behalf of POM that its devices are games of skill and not illegal gambling, Eckert concurrently advocates on behalf of Parx Casino that the *same games* should be outlawed as illegal gambling devices. Eckert's client's interests could not be more directly and materially adverse. When POM confronted Eckert with its impermissible conflict, Eckert further breached the duty of undivided loyalty owed to POM by dropping POM like the proverbial "hot potato" in favor of its more lucrative client relationship with Parx Casino. POM brings this action for a judicial declaration that Eckert breached and continues to breach its fiduciary duty to POM and as a result must be enjoined from representing Parx Casino in matters adverse to POM.

## PARTIES

1. POM is a corporation organized and existing under the laws of the State of Wyoming with a principal place of business at 3450 Corporate Way, Duluth, Georgia. POM developed, produced and licensed legally compliant electronic games of skill which are sold in Pennsylvania, Virginia and elsewhere and retained Eckert to provide legal services for itself and its affiliates. The games

of skill that POM sells in Virginia and Pennsylvania utilize identical algorithms and there is no difference in how the machines operate or function.

2. Eckert is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business at 213 Market Street, 8th Floor, Harrisburg, Pennsylvania. Eckert is a law firm that touts its ability to "develop[] strategies . . . to establish an environment in which [its gaming] clients can achieve maximum success." On information and belief, Eckert does not maintain a place of business in Wyoming or Georgia and none of its members are citizens of Wyoming or Georgia.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) in that this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. The object of the litigation is enforcement of POM's right to conflict-free legal representation. The deprivation of that right threatens the very future of POM's business in Pennsylvania and elsewhere. POM's sales of skill games in Pennsylvania exceed $75,000 and the fees paid to Eckert which are subject to disgorgement far exceed $75,000 and therefore the amount in controversy requirement in 28 U.S.C. § 1332(a) is met.

3

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because Eckert has a place of business in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

5. Pursuant to a written engagement letter dated September 13, 2011, Eckert agreed to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania."

6. Eckert provided legal services pursuant to the engagement in 2011 and, on information and belief, retains the unearned balance of the retainer remitted by POM in accordance with the September 13, 2011 engagement letter.

7. On December 20, 2016, Eckert and POM executed a second engagement letter pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software."

4

8. Eckert's representation of POM and its affiliates pursuant to the December 20, 2016 engagement letter relates to substantially the same electronics and software referenced in the September 13, 2011 engagement letter.[1]

9. Eckert regularly billed POM for its legal services and POM remitted very substantial fees for those legal services.

10. Relying on the duties of undivided loyalty and confidentiality owed to POM as a client of Eckert and in furtherance of the requested legal services, POM provided Eckert with highly sensitive, proprietary, confidential and non-public information concerning its skill games and business operations as well as confidential and privileged communications concerning the development and execution of legal strategies to preserve and defend the legality of those games.

11. Eckert regularly participated in privileged conferences with POM representatives involving and relating to POM's short and long-term business objectives, competitive business strategies, litigation matters and legal, regulatory and legislative strategies in, *inter alia*, the Commonwealth of Pennsylvania and

---

[1] The nature of Eckert's years-long representation of POM and its affiliates is described in only general terms to protect and preserve the attorney-client and attorney work product privileges. POM does not in any way waive, but on the contrary expressly reserves and asserts, the attorney-client and work product privileges with respect to all communications with and legal services provided by Eckert.

5

Commonwealth of Virginia concerning POM's skill games. As legal counsel for POM, Eckert has been intimately involved in POM's affairs.

12. Eckert's representation of POM includes, but is not limited to: representing POM and its affiliates in meetings with law enforcement and government personnel; representing POM and its affiliates in litigation matters concerning the legality of POM's skill games; negotiating and drafting agreements between POM and its affiliates and third parties; and providing advice and counsel relating to legal, legislative and litigation strategies for marketing and selling POM skill games.

13. As counsel for POM and its affiliates, Eckert secured legal and governmental opinions attesting that POM's products are games of skill and not gambling devices and, citing those opinions, accurately asserted on June 28, 2019 in state court in Virginia that POM's games "are not illegal gambling" because "skill is determinative of successful play." In fact, the legal opinion that Eckert submitted to the court in Virginia relied on *In re Pace-O-Matic, Inc. Equip.*, M.D. 965-2013 (Ct. Common Pleas Beaver Cty. Dec. 23, 2014), which held that POM's skill games are legal in Pennsylvania.

14. Unbeknownst to POM, while Eckert was in possession of POM's confidential information and privileged communications, Eckert represented Parx

Casino and/or its affiliates in matters directly adverse to POM's interests and substantially related to matters Eckert handled or was handling for POM. Nevertheless, Eckert continued to represent POM, advocate for the legality of POM's skill games and participate in confidential conferences regarding POM's legal and business strategies while secretly and simultaneously advising Parx Casino on matters materially adverse to the interests of POM.

15. Eckert's conflicted representation was exposed when Eckert openly and publicly attacked POM in the context of an action filed on behalf of Parx Casino against an establishment that offers POM skill games. In the action filed in the Court of Common Pleas of Bucks County, Eckert fired a shot directly at POM by arguing on December 2, 2019 that POM manufactures "illegal slot machine[s]" and "deceptively market[s] these games as 'legal,' when, in fact, they are not."

16. Eckert was actively representing POM when it made this accusation on behalf of Parx Casino against POM. In fact, before Eckert openly attacked POM, an Eckert lawyer participated in privileged conference calls with POM and POM's Pennsylvania counsel relating to, *inter alia*, POM's Pennsylvania legal matters affecting POM and its affiliates.

17. On or about January 10, 2020, while Eckert was representing POM, the Harrisburg-based co-chair of Eckert's gaming practice authored letters sent on

behalf of Parx Casino to hundreds of Pennsylvania municipalities advocating that skill games including those manufactured by POM are "illegal slot machines" that should be outlawed through a local ordinance which Eckert drafted and enclosed with the letter. Again, while Eckert was representing POM, Eckert appeared and collaborated with Parx Casino's *amicus* counsel at a January 15, 2020 hearing in the Commonwealth Court in Harrisburg to oppose POM's motion to prevent the unlawful seizure of its skill games. Further, Eckert hosted a gaming industry meeting and legislative reception in Harrisburg on February 4, 2020, just after Eckert declared its intention to drop POM as a client, at which Eckert advocated for legislation banning skill games like POM's. These and other activities by Eckert on behalf of Parx Casino are attempts to secure judicial and/or legislative determinations that POM's skill games—the same games that Eckert simultaneously promoted in Virginia as *legal* games of skill—should be illegal in Pennsylvania. Eckert engaged in these actions against POM during its concurrent representation of POM.

18. Eckert's representation of Parx Casino is directly and materially adverse to the interests of POM. Eckert's argument on behalf of Parx Casino that POM's skill games should be illegal in Pennsylvania cannot be reconciled with Eckert's express and repeated reliance on *In re Pace-O-Matic, Inc. Equip.* which holds that POM's games are "predominantly . . . game[s] of skill rather than . . .

8

game[s] of chance" and therefore not illegal gambling devices under Pennsylvania law. Eckert simultaneously worked for and against POM in direct violation of its fiduciary and ethical duties to POM.

19. Eckert's conflicted efforts on behalf of Parx Casino to destroy POM's Pennsylvania market threatens POM's continued existence.

20. Eckert breached its fiduciary duty to POM, violated its duty of loyalty and violated its ethical obligations by advocating on behalf of Parx Casino directly against POM while representing POM and while in possession of POM's confidential information.

21. Rule 1.7 of the Pennsylvania Rules of Professional Conduct provides in pertinent part that "a lawyer shall not represent a client if . . . the representation of one client will be directly adverse to another client" unless "each client affected informed consent." Pa. R. Prof. Conduct 1.7(a)(1), (b)(4).

22. Rule 1.9 of the Pennsylvania Rules of Professional Conduct provides in pertinent part that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Pa. R. Prof. Conduct 1.9(a).

23. Rule 1.10(a) of the Pennsylvania Rules of Professional Conduct provides that, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, or 1.9 . . . ." Pa. R. Prof. Conduct 1.10(a).

24. Eckert did not communicate information to POM concerning its direct conflict of interest before undertaking the representation of Parx Casino against POM and POM did not knowingly consent to waive Eckert's conflict of interest.

25. Eckert engaged in an impermissible conflict of interest in violation of Rules 1.7 and 1.9 by working for and against POM and, as a result, the Eckert firm and all of its attorneys are barred by Rule 1.10(a) from continuing the conflicting representation of Parx Casino.

26. POM confronted Eckert concerning its impermissible conflict and requested that Eckert withdraw from any representation of Parx Casino adverse to POM. Eckert refused to withdraw on behalf of Parx Casino and instead attempted to negate its conflict by dropping POM like a "hot potato" on January 29, 2020. Eckert's termination of its representation of POM is a further breach of the fiduciary and ethical duties owed to POM.

27. POM has been forced to retain counsel to enforce Eckert's fiduciary and ethical obligations, to address Eckert's refusal to withdraw from the adverse representation of Parx Casino and to protect POM's interests.

28. This Court has the power and the obligation to enforce fiduciary duties owed by a lawyer to a client and to restrain violations of a lawyer's fiduciary duties.

## COUNT I

## CLAIM FOR DECLARATORY JUDGMENT

## 28 U.S.C. §§ 2201-02

29. Paragraphs 1 through 28 of this Complaint are incorporated by reference as if set forth fully herein.

30. Under Pennsylvania common law, Eckert owes a fiduciary duty to POM to act with undivided loyalty. Accordingly, Eckert is prohibited from undertaking a representation adverse to POM and from misusing POM's confidences.

31. While representing POM, Eckert acquired detailed confidential and proprietary information and privileged communications concerning POM's skill games, business operations and legal strategies that is highly relevant to its

representation of Parx Casino and Parx Casino's efforts to challenge the legality of the very same POM skill games.

32. Eckert breached its fiduciary duty to POM by representing Parx Casino in matters that are directly and materially adverse to POM and its affiliates concerning the very same POM skill games.

33. Eckert further breached its fiduciary duty to POM by terminating its representation of POM when POM challenged its concurrent representation of Parx Casino.

34. There exists an actual controversy between the parties as to the fiduciary and ethical duties owed by Eckert to POM and thus declaratory relief under 28 U.S.C. § 2201 is warranted.

35. POM is entitled to a judicial declaration under 28 U.S.C. § 2201 that Eckert breached its fiduciary duty to POM by representing Parx Casino in matters directly adverse to POM.

36. Pursuant to the authority in 28 U.S.C. § 2202 to grant further necessary relief based on a declaratory judgment, POM is also entitled to an injunction barring Eckert from representing Parx Casino or any other client in any

matter directly adverse to POM and an order compelling Eckert to disgorge all fees paid by POM and awarding other relief to remedy Eckert's unlawful conduct.

WHEREFORE, POM respectfully requests:

(1)  A judicial declaration that Eckert has breached its fiduciary duty to POM;

(2)  A judicial declaration that Eckert is enjoined from representing, advising or otherwise acting on behalf of or in support of Parx Casino and its affiliates on matters adverse to POM;

(3)  A judicial declaration that Eckert is prohibited from using, relying on or disclosing any information acquired from its representation of POM in any representation of any other client;

(4)  An order requiring Eckert to disgorge all fees paid by POM and otherwise remedy the breach of fiduciary duty; and

(5)  Such other and further relief as the Court deems appropriate under the circumstances.

## COUNT II

## **BREACH OF FIDUCIARY DUTY**

37. Paragraphs 1 through 36 of this Complaint are incorporated by reference as if set forth fully herein.

38. A fiduciary relationship exists between Eckert and POM and its affiliates by virtue of POM's retention of Eckert to provide legal services to it and to its affiliates.

39. Eckert knowingly failed to act in good faith and solely for the benefit of POM and its affiliates in matters for which Eckert was employed.

40. POM suffered and continues to suffer substantial injury as a direct result of Eckert's breach of its fiduciary duty, including, but not limited to, by incurring costs and fees to enforce the right to conflict-free representation and to otherwise protect itself against Eckert's breach of fiduciary duty.

41. Eckert's conduct was malicious, wanton and willful and done with reckless indifference to the rights of POM and therefore warrants an award of punitive damages.

WHEREFORE, POM demands the entry of judgment in its favor and against Eckert, together with an award of compensatory and punitive damages and such other and further relief as the Court deems appropriate under the circumstances.

        Respectfully submitted,

        /s/ Daniel T. Brier
        Daniel T. Brier (PA ID 53248)
        dbrier@mbklaw.com
        Donna A. Walsh (PA ID 74833)
        dwalsh@mbklaw.com
        Erik R. Anderson (PA ID 203007)
        eanderson@mbklaw.com

        Attorneys for Plaintiff,
        Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date: February 18, 2020