# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                          :

     Plaintiff,     :

   v.        :  NO. 20-CV-292

            :

ECKERT, SEAMANS CHERIN & :  JUDGE WILSON

MELLOTT, LLC,     :

            :  ELECTRONICALLY FILED

     Defendant.   :

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION[1]

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

---

[1] Pace-O-Matic, Inc. and its counsel remain supremely mindful of the national crisis caused by COVID-19 and the unprecedented burdens placed on the courts, other public institutions, opposing counsel and the public.  This request for injunctive relief is submitted to preserve Pace-O-Matic. Inc.'s rights and to address, as soon as appropriate, the ongoing irreparable harm resulting from the breach described herein.  Counsel for Pace-O-Matic, Inc. respectfully requests that this motion be addressed by the court as soon as circumstances permit without jeopardizing anyone's health.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..... 1

QUESTION PRESENTED ............................................................................. 10

ARGUMENT ............................................................................................... 10

CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

## CASES

*Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175
(Pa. 1978) ........................................................................................ 15

*American Dredging Co. v. City of Philadelphia*, 389 A.2d 568 (Pa. 1978) ........... 17

*American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975) ............................. 13

*Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005) ................. 12

*Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082
(Pa. Super. 2014) ............................................................................ 18

*Emle Indus., Inc. v. Patentex*, 478 F.2d 562 (2d Cir. 1973) ................................... 16

*Estate of Pew*, 655 A.2d 521 (Pa. Super. 1994) ...................................................... 17

*Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116
(3d Cir. 2020) .................................................................................. 14

*Greenwood Gaming & Entm't, Inc. v. Smoker's Express*, No. 2019-6832
(Ct. Common Pleas Bucks Cty.) ....................................................... 7

*Hyman Cos., Inc. v. Brozost*, 964 F. Supp. 168 (E.D. Pa. 1997) ............................. 16

*Int'l Bus. Machines Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978) .......................... 15

*Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277
(Pa. 1992) .................................................. 10, 11, 12, 13, 15, 16, 17, 18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
Pharms. Co.*, 290 F.3d 578 (3d Cir. 2002) ......................................... 14

*Office of Disciplinary Counsel v. Baldwin*, No. 2587 Disciplinary Docket No. 3,
2020 WL 808757 (Pa. 2020) ............................................................ 12

*In re Pace-O-Matic, Inc. Equip.*, M.D. 965-2013 (Ct. Common Pleas Beaver Cty. Dec. 23, 2014)................................................................................ 2, 5

*POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, No. 503 M.D. 2018 (Pa. Commw.) ................................. 8

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017)..................................... 11

*Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382 (3d Cir. 1972) ...................... 16

*Rosenberg v. Commonwealth of Va.*, 181 S.E. 368 (Va. 1935) ............................... 5

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ............................................... 15

## STATUTES

Pa. R. Prof. Conduct R. 1.0(e)............................................................................ 12

Pa. R. Prof. Conduct R. 1.7 ........................................................................... 11, 12

Pa. R. Prof. Conduct R. 1.7(a)(1) ........................................................................ 12

Pa. R. Prof. Conduct R. 1.7(b)(4) ........................................................................ 12

Pa. R. Prof. Conduct R. 1.10(b)(1)....................................................................... 18

Pa. R. Prof. Conduct R. 1.11(b)............................................................................ 18

## INTRODUCTION

Defendant Eckert, Seamans, Cherin & Mellott, LLC ("Eckert") has been impermissibly playing both sides of the same legal issue. For years, Eckert represented Plaintiff Pace-O-Matic, Inc. ("POM") in advocating, defending and promoting the continued legality of POM's electronic skill games. More recently, while still representing POM, Eckert took up arms *against* POM on behalf of a large casino client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino"), on whose behalf Eckert advocates that POM's skill games should be outlawed as gambling devices. Eckert's attack on POM products is a clear breach of its fiduciary duty. To prevent irreparable harm to POM resulting from Eckert's breach of the duty of undivided loyalty, Eckert should be preliminarily enjoined from representing Parx Casino in matters adverse to POM.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

POM develops and produces electronic skill games that are sold in Pennsylvania, Virginia and elsewhere. POM's skill games are predominantly dependent upon skill and therefore are not subject to regulation as gambling devices. In the only decision on the subject in Pennsylvania or Virginia, the Court of Common Pleas of Beaver County ruled that POM's games are not illegal gambling devices because they are "predominantly . . . game[s] of skill rather than

. . . game[s] of chance" and, for this reason, ordered the Pennsylvania Bureau of Liquor Control Enforcement to return POM games which had been improperly seized from a social club. *In re Pace-O-Matic, Inc. Equip.*, M.D. 965-2013, slip op. at 11-12 (Ct. Common Pleas Beaver Cty. Dec. 23, 2014).[2]

Despite the manifest correctness of this ruling, POM has over the years faced legal challenges to the sale and use of its games. In connection with a potential challenge, POM retained Eckert in 2011 to provide legal services relating to distribution of its "Palmetto Gold" skill game in Pennsylvania. (Cline Decl. ¶ 5.)[3] Pursuant to a written engagement letter dated September 13, 2011, Eckert agreed to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania." (*Id.* ¶ 6 & Ex. A.)[4] Eckert billed POM in relation to this representation in late 2011 and never advised

---

[2] The opinion in *In re Pace-O-Matic, Inc. Equip.* is attached hereto as Exhibit "A."

[3] The Declaration of B. Greg Cline ("Cline Declaration") is attached hereto as Exhibit "B."

[4] The September 13, 2011 engagement letter is appended to the Cline Declaration as Exhibit A.

2

POM that it no longer considered itself bound by the September 13, 2011 engagement letter. (*Id.* ¶ 7.)

POM and Eckert entered into a second engagement letter dated December 20, 2016 pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software." (Cline Decl. ¶ 8.)[5] POM's electronic skill games have functioned similarly over the years and provide similar game play. (*Id.* ¶ 9.)

Since the engagement letter was signed in late 2016, Eckert handled a variety of legal matters for POM and its affiliates.[6] Among other things: Eckert represented POM and its affiliates in meetings with law enforcement and government personnel concerning POM's skill games; Eckert represented POM and its affiliates in litigation matters concerning the legality of POM's skill games; Eckert negotiated and drafted agreements between POM and its affiliates and third

---

[5] The December 20, 2016 engagement letter is appended to the Cline Declaration as Exhibit B.

[6] The nature of Eckert's years-long representation of POM and its affiliates is described in only general terms to protect and preserve the attorney-client privilege and attorney work product doctrine. POM does not in any way waive, but on the contrary expressly reserves and asserts, the attorney-client and work product privileges with respect to all communications with and legal services provided by Eckert.

parties; and Eckert provided advice and counsel relating to legal, legislative and litigation strategies for marketing and selling POM skill games. (*Id.* ¶¶ 10-15.) In furtherance of these legal services requested from Eckert, and in reliance on the duties of undivided loyalty and confidentiality owed by Eckert, POM provided Eckert with highly sensitive, proprietary, confidential and non-public information concerning its skill games and business operations and participated with Eckert in confidential and privileged communications concerning the development and execution of legal strategies to preserve and defend the legality of POM's games and address other legal matters. (*Id.* ¶¶ 11-12.) As legal counsel for POM with respect to matters involving POM skill games, Eckert was intimately involved in POM's affairs. (*Id.* ¶ 13.) POM paid substantial fees to Eckert for those legal services. (*Id.* ¶ 14.)

As counsel for POM and its affiliates, Eckert secured legal and governmental opinions attesting that POM's products are games of skill and not gambling devices. (*Id.* ¶ 16.) Among other things, Eckert obtained an opinion from the Deputy Chief of the Commonwealth of Virginia Department of Alcoholic Beverage Control that POM's electronic skill games are not subject to administrative sanction because they are not gambling devices. (*Id.* ¶ 17.)[7] The

---

[7] The July 7, 2017 opinion letter is appended to the Cline Declaration as Exhibit D.

Deputy Chief noted that his decision was based, in part, on the determination that POM's skill games are legal in Pennsylvania: "As we discussed, this game is currently being widely used in Pennsylvania . . . and has been found to be a game of skill by the Court of Common Pleas of Beaver County, Pennsylvania." (*Id.* & Ex. D.)[8]

In addition to meeting with and obtaining opinions from government officials, Eckert filed an action on behalf of POM's affiliates, Queen of Virginia Skill & Entertainment, LLC and POM of Virginia, LLC, against the Commonwealth's Attorney for the City of Charlottesville in the Circuit Court for the City of Charlottesville, Virginia seeking declaratory and other relief to ensure the continued undisturbed sale and use of POM skill games. (*Id.* ¶ 16.) Citing legal and governmental opinions attesting that POM's products are games of skill and not gambling devices, Eckert accurately asserted in the complaint filed on June

---

[8] The opinion from the Deputy Chief of the Virginia Department of Alcoholic Beverage Control concludes that POM's skill games do not satisfy the chance element which, in addition to placing a bet and the opportunity to win a prize, is necessary to constitute illegal gambling under Virginia law. *See* July 7, 2017 letter at p.1; *see also Rosenberg v. Commonwealth of Va.*, 181 S.E. 368, 370 (Va. 1935). The standard for determining whether a device is an illegal gambling device is the same in Pennsylvania. In other words, a machine is a gambling device if it: (1) involves payment of consideration, (2) the result is determined by chance rather than skill, and (3) the player can receive a reward. *See In re Pace-O-Matic, Inc. Equip.*, slip op. at 5.

5

28, 2019 that POM's games "are not illegal gambling" because "skill is determinative of successful play." (*Id.* & Ex. C.)[9] Eckert wrote on behalf of POM:

> In determining that their game is legal and not an unlawful gambling device, Plaintiffs had the game examined by an independent laboratory which determined that its outcome depended predominantly on skill rather than chance and therefore could not be an illegal gambling device under Virginia law. . . . Prior to distributing the game in the Commonwealth [of Virginia], Plaintiffs submitted the game to the ABC, which determined, based on information provided by Plaintiffs, and with the advice of the Attorney General's office, that the game was predominantly skill-based. Plaintiffs met with numerous Commonwealth's attorneys throughout the Commonwealth, including the former Commonwealth's attorney for the City of Charlottesville, who stated that he had no problems with the game. . . . .

(Cline Decl., Ex. C at ¶ 1.) On this basis, Eckert sought, *inter alia*, a temporary and permanent injunction prohibiting the Commonwealth's Attorney from prosecuting or attempting to prosecute use of POM skill games as illegal gambling devices. (*Id.*, Ex. C at pp. 19-20.) The action in Charlottesville remains pending.

In direct opposition to the correct position which Eckert regularly advanced on behalf of POM, Eckert has since openly and publicly attacked POM in more than 20 actions filed on behalf of Parx Casino against establishments that offer

---

[9] The Verified Complaint in the *Queen of Virginia Skill & Entm't, LLC, POM of Virginia, LLC and Miele Manufacturing, Inc. v. Joseph D. Platania* action, which was originally filed in the Circuit Court for the City of Charlottesville and was later removed to the U.S. District Court for the Eastern District of Virginia, is appended to the Cline Declaration as Exhibit C.

6

POM skill games.[10]  Parx Casino, which declares itself "the #1 casino in Pennsylvania," operates a gaming facility with thousands of slot machines outside of Philadelphia.[11]  In a brief filed on December 3, 2019 in one of the establishment cases, Eckert posited on behalf of Parx Casino that skill games "manufactured by POM of Pennsylvania, LLC/d/b/a Pace-O-Matic d/b/a Miele Manufacturing ('POM')" are "illegal slot machine[s]" and that Parx Casino "has a substantial interest in quelling the spread" of those machines.  (Cline Decl. ¶ 20 & Ex. E at pp. 5, 10.)[12]  Eckert wrote:  "Despite the manufacturers' clever marketing campaigns, these machines are nothing more than unlicensed slot machines. . . . Manufacturers of 'skill games,' and the establishments that offer them, deceptively market these games as 'legal,' when, in fact, they are not."  (Cline Decl., Ex. E at p. 4.)  Eckert further advocated that the allegedly "illegal gambling devices" manufactured by POM "compete directly with the licensed gaming offered by Parx Casino" and, on behalf of Parx Casino, Eckert is seeking, *inter alia*, a judicial declaration that POM skill games—*its own client's products*—constitute a "public

---

[10]  A list of those actions is appended to the Cline Declaration as Exhibit F.

[11]  *See* https://www.parxcasino.com/bensalem/about (last visited March 24, 2020).

[12]  The brief that Eckert filed on behalf of Parx Casino in opposition to the defendant's preliminary objections in *Greenwood Gaming & Entm't, Inc. v. Smoker's Express*, docketed at No. 2019-6832 in the Court of Common Pleas of Bucks County, is appended to the Cline Declaration as Exhibit E.

7

nuisance" and an injunction barring the defendant tobacco shop from offering POM games to its customers. (*Id.* at 11, 14-20.)

Eckert's direct attack on POM in the Bucks and Montgomery County litigation matters is part of a larger campaign by Eckert on behalf of Parx Casino to secure a ban against *the very same POM skill games* that Eckert was retained to defend and promote in Virginia. (Cline Decl. ¶¶ 23-24.) In furtherance of that campaign, Eckert attacked POM and its games in the following additional ways:

- While Eckert was representing POM, the co-chair of Eckert's gaming practice sent letters on behalf of Parx Casino to hundreds of Pennsylvania municipalities advocating that skill games including those manufactured by POM are "illegal slot machines" that should be outlawed through a local ordinance which Eckert drafted and enclosed with the letter. (*Id.* ¶ 23.)

- While Eckert was representing POM, Eckert conferred with Parx Casino's *amicus* counsel at a January 15, 2020 hearing in the Commonwealth Court in opposition to a motion brought by a POM affiliate to prevent the unlawful seizure of POM skill games in the matter captioned *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, No. 503 M.D. 2018 (Pa. Commw.). (*Id.*)

- Eckert planned, advertised and hosted a gaming industry meeting and legislative reception in Harrisburg on February 4, 2020 at which Eckert advocated for legislation banning skill games like POM's. (*Id.* ¶ 24.)

These activities by Eckert on behalf of Parx Casino are attempts to secure judicial and/or legislative determinations that POM's skill games—the same games that

Eckert simultaneously and correctly promoted in Virginia as *legal* games of skill—should be declared unlawful in Pennsylvania.

POM confronted Eckert with its impermissible conflict and demanded that Eckert withdraw from representing Parx Casino in matters adverse to POM. (*Id.* ¶ 25.) Eckert refused and instead dropped POM like a "hot potato" in favor of its more lucrative relationship with Parx Casino. (*Id.*) In its January 29, 2020 letter, Eckert professed to "understand POM's concerns about Eckert's continued representation of [Parx Casino]" and offered its opinion that "the best course of action is to end the client relationship between POM and Eckert now." (*Id.* & Ex. H at p. 4.)[13] Eckert continues to represent Parx Casino.

POM filed the instant action for declaratory and other relief on February 18, 2020. (ECF No. 1.) In Count I of the Complaint, POM seeks a judicial declaration that Eckert breached its fiduciary duty to POM by advocating against POM while also representing POM, an injunction barring Eckert from representing Parx Casino in any matter directly adverse to POM and an order compelling Eckert to disgorge all fees received from POM. In Count II, POM

---

[13]  A copy of the January 29, 2020 letter from Eckert is appended to the Cline Declaration as Exhibit H.

9

asserts a separate claim for breach of fiduciary duty seeking money damages resulting from Eckert's breach of the common law duty of undivided loyalty.

## QUESTION PRESENTED

Whether Eckert should be preliminarily enjoined from representing Parx Casino in matters adverse to POM relating to POM's skill games given Eckert's concurrent representation of POM and receipt of confidential information from POM relating to those same skill games?

Suggested answer:  Yes.

## ARGUMENT

In Pennsylvania, attorneys owe a fiduciary duty to their clients to act with undivided loyalty and to avoid conflicts of interest. *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992).  Eckert breached its fiduciary duty to POM by attacking POM's games on behalf of another client and by arguing on behalf of that other client that POM's games should be banned. Preliminary injunctive relief is appropriate and necessary to restrain Eckert's manifest breach of its fiduciary duty.

In determining whether to grant a motion for preliminary injunctive relief, district courts consider four factors:  (1) whether the movant has a reasonable probability of eventual success in the litigation; (2) whether the movant will be irreparably harmed if relief is not granted; (3) the possibility of harm to other

10

interested persons from the grant or denial of the injunction; and (4) the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citation omitted). The two "most critical" factors are probability of success on the merits and irreparable harm. *Id.* at 179. To establish a reasonable probability of success on the merits, the movant must demonstrate that "it can win on the merits," which requires a showing that is "significantly better than negligible but not necessarily more likely than not." *Id.* With respect to irreparable harm, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* If the likelihood of success and irreparable harm factors—the "gateway factors"—are satisfied, the district court proceeds to consider the third and fourth factors and to "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

POM is entitled to preliminary injunctive relief in this case because all four factors are satisfied and the balance tips decisively in favor of such relief.

*First,* given Eckert's undeniable conflict of interest, POM will likely prevail on its breach of fiduciary duty claim. The Supreme Court made clear in *Maritrans* that attorneys in Pennsylvania owe a common law fiduciary duty[14] to their clients

---

[14] Lawyers in Pennsylvania are also obligated to comply with the Rules of Professional Conduct which derive from the common law duties identified in

11

to avoid conflicting representations and to refrain from misusing client confidences. *Maritrans*, 602 A.2d at 1283-85. *Maritrans* holds that an attorney breaches that duty by representing a former client's competitor in a matter substantially related to the representation of the former client. *Id.* Eckert did just that. While engaged by POM to defend and promote the legality of its skill games, Eckert simultaneously advocated on behalf of Parx Casino that POM's games are "illegal slot machines" that are "deceptively market[ed] . . . as 'legal,' when, in fact, they are not."[15] Eckert's attack on POM while representing POM is an inarguable violation of the duty of undivided loyalty. *Maritrans* squarely applies and establishes POM's likelihood of success on the merits.[16]

---

*Maritrans* and which prohibit lawyers from undertaking representations that pose a conflict to current or former clients. With respect to current clients, Rule 1.7 provides that "a lawyer shall not represent a client if . . . the representation of one client will be directly adverse to another client" unless "each affected client gives informed consent." Pa. R. Prof. Conduct 1.7(a)(1), (b)(4). POM was a current client of Eckert when Eckert undertook the directly adverse representation of POM and therefore Eckert violated Rule 1.7 as well as the fiduciary duty owed to POM.

[15] *See* Br. in Opp'n to Prelim. Objs. at 4 (appended to Cline Decl. as Ex. E).

[16] When confronted with its impermissible conflict, Eckert tried to defend its double-dealing by claiming that POM gave an advance waiver of future conflicts. (*See* Cline Decl, Ex. H.) An advance waiver is effective only if the client gives "truly informed consent" after a consultation in which the attorney explains the areas of potential conflict that might arise. *See generally Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675, 691 (3d Cir. 2005); *Office of Disciplinary Counsel v. Baldwin*, No. 2587 Disciplinary Docket No. 3, 2020 WL 808757, at *18 (Pa. 2020) ("informed consent" requires "full disclosure of all possible conflicts"); *see also* Pa. R. Prof. Conduct 1.0(e). Eckert did not provide any such consultation

12

*Second*, Eckert's conflict constitutes irreparable harm that is properly remedied by injunctive relief. *Maritrans* holds that an injunction is "just and proper" to remedy a breach of fiduciary duty because a client's "competitive position could be irreparably injured if [its counsel] continued to represent [its] competitors" and any damage remedy in these circumstances "would be difficult if not impossible to sustain." *Maritrans*, 602 A.2d at 1287; *see also id.* at 1283-84. Here, as in *Maritrans*, Eckert was intimately involved in developing legal strategies relating to the operation and sale of POM's skill games and, in the process, Eckert acquired substantial confidential information concerning the very same POM skill games that Eckert is now attacking on behalf of Parx Casino. (*See* Cline Decl. ¶¶ 8-13, 15-18, 27-28.) The opportunity for misuse of this confidential information constitutes irreparable harm which is properly abated by a preliminary injunction. *Maritrans*, 602 A.2d at 1287-88; *see generally American Roller Co. v. Budinger*, 513 F.2d 982, 986 (3d Cir. 1975) ("It is the possibility that confidences might be breached and not the fact of their disclosure or use that dictates disqualification once a substantial relationship between two representations has been established.").

---

in this case and consequently there was no effective advance waiver. *See* Cline Decl. ¶ 29; *see also* Declaration of Thomas A. Lisk (attached hereto as Exhibit "C") ¶¶ 5-7.

13

*Third*, no interested person will be harmed if injunctive relief is granted. The only harm relevant to the preliminary injunction analysis is irreparable harm. *See generally Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020). Eckert will not be irreparably or otherwise harmed if enjoined from advocating against POM. The only potential loss to Eckert is monetary—reduced opportunity to bill Parx Casino—and any lost billing opportunity will likely be mitigated by assigning personnel to work on other client matters. Nor will Parx Casino suffer any harm. Given that Parx Casino is already represented by another law firm, Kane, Pugh, Knoell, Troy & Kramer, LLP, in the state court actions attacking POM's games, Parx Casino will not need to find replacement counsel if Eckert is enjoined from advocating against POM.[17] There is thus no risk of irreparable harm to any interested person that might weigh against injunctive relief.[18]

---

[17] The litigation matters filed in Bucks County have been stayed pending the outcome of a related matter in Commonwealth Court. *See* Jan. 17, 2020 Order attached as Exhibit "D."

[18] Even if Eckert's fees were relevant to the preliminary injunction analysis—and they are not—Eckert cannot be heard to complain about a reduction in its income resulting from its knowing decision to engage in conflicting representations. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself.").

*Fourth*, an injunction restraining Eckert from breaching its fiduciary duty to POM is in the public interest. The public interest is served by enforcing fiduciary duties owed by lawyers to their clients and by protecting attorney-client confidences. *See, e.g., Maritrans*, 602 A.2d at 1282 (reasoning that "[t]he public's trust in the legal profession undoubtedly would be undermined" if preliminary injunction barring law firm from conflicted representation were not reinstated); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1186 (Pa. 1978) (recognizing "special responsibility" of courts to "assure that persons seeking professional legal assistance receive the quality advocacy and fair treatment they justifiably expect"); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (attorney-client privilege "promote[s] . . . public interests in the observance of law and administration of justice"); *Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) ("The maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration that we have held that a court may disqualify an attorney for failing to avoid even the appearance of impropriety.") (citations omitted). Accordingly, there is strong public interest in enjoining Eckert from breaching its fiduciary duties to POM.

All four factors are thus satisfied and those factors tip sharply in favor of granting injunctive relief. Eckert knowingly embarked on a campaign to attack

15

POM's products on behalf of Parx Casino while receiving confidential information from and participating in privileged conversations with POM about those *very same products*. As in *Maritrans*, Eckert's continued representation of Parx Casino in matters adverse to POM "create[s] too great a danger that [POM's] confidential relationship with [Eckert] would be breached" and therefore injunctive relief is "just and proper" to avoid further irreparable harm to POM resulting from Eckert's divided loyalty. *See Maritrans*, 602 A.2d at 1287; *see also Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972) (lawyer is not "permitted to place himself in a position where, even unconsciously, he will be tempted, or it appears to the public and his former clients that he might be tempted, in the interests of his new client, to take advantage of information derived from confidences placed in him by [former clients]"); *Hyman Cos., Inc. v. Brozost*, 964 F. Supp. 168, 173 (E.D. Pa. 1997) ("[I]f [the lawyer] could divulge specific, valuable, confidential information learned while [working for the client], information that, if disclosed, could injure [the client's] economic health to the point of irreparable harm, a fiduciary duty has been breached and the conduct may be enjoined.").[19]

---

[19] The rationale for this "strict prophylactic rule" was cogently explained in *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973), as follows:

> A lawyer's good faith, although essential in all his professional activity, is, nevertheless, an inadequate safeguard when standing

16

Eckert's conflict affects the entire firm and requires that the entire firm be enjoined from advocating against POM. Confidential information acquired by one member of a law firm "is imputable to other members of the same law firm." *Estate of Pew*, 655 A.2d 521, 545 (Pa. Super. 1994). Consequently, the entire Eckert firm must be restrained from representing Parx Casino in matters adverse to POM. *See American Dredging Co. v. City of Philadelphia*, 389 A.2d 568, 572 (Pa. 1978) ("[W]hen one attorney is prohibited by ethical considerations from undertaking to represent a certain client, all members of the firm to which that attorney belongs are also prohibited from serving as counsel to that client."); *see also Maritrans*, 602 A.2d at 1287 (both law firm and law firm partner enjoined

---

alone. Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation. . . . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case. These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.

478 F.2d at 571.

17

from representing competitor based on conflict of interest); Pa. R. Prof. Conduct

R. 1.10.[20]

## CONCLUSION

For the reasons set forth above, Eckert should be preliminarily enjoined

from representing Parx Casino in any matters adverse to POM.

Respectfully submitted,

/s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh

Myers, Brier & Kelly, LLP                    Attorneys for Plaintiff,
425 Spruce Street, Suite 200                 Pace-O-Matic, Inc.
Scranton, PA  18503
570-342-6100

Date:  March 24, 2020

---

[20] Eckert may argue an ethical screen or propose an injunction barring only the use of POM's confidential information, but neither proposal suffices to remedy Eckert's breach of fiduciary duty or mitigates the danger that POM's confidential information may be misused.  While an ethical screen may apply when an attorney moves between firms, Pa. R. Prof. Conduct 1.10(b)(1), or joins a firm after government service, Pa. R. Prof. Conduct 1.11(b), such a screen cannot rectify an impermissible conflict of interest like Eckert's. *See, e.g., Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1094 (Pa. Super. 2014) (Donohue, J., concurring) (observing that "the existence of an ethical screen does not overcome a conflict of interest").  In any event, there was no screen. *See* Lisk Decl. ¶ 9.  And *Maritrans* expressly rejected the suggestion that an injunction against disclosure would be sufficient, explaining that "such an injunction would be difficult, if not impossible, to administer" and the danger of disclosure of confidential information is "too great" to impose a remedy short of an injunction. 602 A.2d at 1287.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)

I, Daniel T. Brier, hereby certify that the foregoing Memorandum of Law in Support of Motion for Preliminary Injunction is in compliance with Local Rule 7.8(b)(3). The brief contains 4524 words as computed by Microsoft Office Word.

/s/ Daniel T. Brier

Date: March 24, 2020

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Support of Motion for Preliminary Injunction was served

upon the following counsel of record via the Court's ECF filing system on this

24th day of March 2020:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

/s/ Daniel T. Brier
Daniel T. Brier