Exhibit "C"

# DECLARATION OF THOMAS A. LISK

I, Thomas A. Lisk, hereby declare as follows:

1. I am an attorney licensed to practice in the Commonwealth of Virginia and a partner at the Cozen O'Connor firm.

2. From 2010 to 2018, I was a partner at Eckert, Seamans, Cherin & Mellott, LLC ("Eckert").

3. In December 2016, while I was with Eckert, I became the partner in charge of the firm's relationship with Pace-O-Matic, Inc. ("POM"). I remained the partner in charge of the POM relationship until I left Eckert in September 2018.

4. POM retained the Eckert firm to provide legal services relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software." The engagement is documented in an engagement letter dated December 20, 2016 which I signed on behalf of Eckert. A copy of the engagement letter is attached as Exhibit "1."

5. I never discussed with any representative of POM or advised POM that Eckert would undertake the representation of POM only if POM agreed to waive any future conflict with Parx Casino.

6. It was not a condition of Eckert's engagement that POM agree that Eckert could represent Parx Casino or other gaming clients in a matter or matters adverse to POM in Pennsylvania. No such condition was imposed and POM never consented to any such condition.

7. I never discussed the waiver language in the 2016 engagement letter or the meaning of that language with POM. I am not aware that any other Eckert representative discussed the waiver language with POM.

8. The Eckert firm acquired, retained and had access to highly sensitive, confidential and proprietary product and business information concerning POM and its affiliates and their skill game products during the representation of POM. Further, Eckert regularly engaged in privileged discussions with POM. Eckert's representation of POM focused on advocating, defending and promoting the continued legality of POM's skill games and included representing POM and its affiliates in litigation matters, contract matters, government relations matters and legislative matters.

9. I was never made aware of any confidentiality screen between Eckert personnel who worked on POM matters and Eckert personnel who worked on Parx Casino matters. An Eckert lawyer who worked on POM matters met with an

Eckert partner and Parx Casino representatives in Harrisburg, Pennsylvania regarding work for Parx Casino in Virginia.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Thomas A. Lisk

Date: 3/20/2020

# Exhibit 1



Eckert Seamans Cherin & Mellott, LLC
SunTrust Center
919 East Main Street, Suite 1300
Richmond, VA 23219

TEL 804 788 7740
FAX 804 698 2950
www.eckertseamans.com

Thomas A. Lisk
tlisk@eckertseamans.com
804-788-7750

December 20, 2016

Michael Pace, President
Pace-O-Matic, Inc.
4150 Blue Ridge Industrial Parkway
Norcross, GA 30071

Re: Pace-O-Matic, Inc./
Engagement of Eckert Seamans Cherin & Mellott, LLC

Dear Mr. Pace:

Eckert Seamans Cherin & Mellott, LLC (hereinafter, "Eckert Seamans") is very pleased that Pace-O-Matic, Inc. (hereinafter "POM") has asked our Firm to represent it concerning certain legal, regulatory and possible legislative matters in Virginia relating to the sales and marketing of your electronics and software (hereinafter, the "Project"). The purpose of this engagement letter is to set forth our mutual understanding of the basis on which we have agreed to undertake such representation. Below you will find the basis of the fee and expense reimbursement arrangement that will be applicable to our handling of the aforementioned representation. This letter agreement will become effective upon our receipt of a copy of this letter signed by an appropriate officer of POM.

The charges for our services will be based upon our regular hourly rates in effect at the time the services are rendered. Alternatively, many clients prefer to establish a fixed-fee monthly or quarterly retainer to provide predictability in billings for our representation. Please let me know if such an arrangement may be of interest to POM. Absent such a fixed-fee arrangement, I am the primary attorney responsible for your representation and I have a current rate of $520 per hour, which will rise to $545 per hour in 2017. If other members in the Firm work on this matter, their time will be billed on the basis of their regular hourly rate in effect at that time. All of our current rates will be in effect for the calendar year 2016, but are subject to change thereafter, usually on an annual basis. Unless otherwise agreed, any additional services requested to be provided by our Firm beyond the scope of the work involved in this Project will be billed to POM in accordance with our hourly rates in effect at the time those services are rendered.

Bills will be submitted to you on a monthly basis and will be itemized describing all time expended by each attorney or paralegal involved in the Project. It is our understanding that all bills rendered to you by us will be paid within thirty days of the date on which such bills are submitted. We reserve the right to terminate our representation of POM if such bills are not paid in a timely manner. We also reserve the right to charge interest on the amount of any unpaid



bills after the expiration of this thirty-day period at a rate of one percent (1%) per month. Similarly, we will promptly respond to any questions you may have concerning any item on a bill submitted to POM.

POM will be billed for disbursements and expenses that we incur on its behalf, including, without limitation, travel costs, mileage, express mailings and postage, long distance telephone costs, telecopying charges and photocopying charges. To the extent that any expenses incurred are payable to a third party, Eckert Seamans typically will pay such expenses and, thereafter, include the same expense on our monthly invoice to POM. If, however, any expenses to be incurred are in excess of $200 and will be payable to a third party, Eckert Seamans will seek approval from POM before incurring the expense and, thereafter, we will forward the invoice to you for direct payment. Please remit such payments within thirty days directly to the third party.

Some of our clients use electronic mail ("E-Mail") to conduct communications between them and the Firm. During 1999, the ethics committee of the American Bar Association issued a Formal Opinion in which it concluded that an attorney could transmit information relating to the representation of a client by use of unencrypted E-Mail sent over the Internet without violating the attorney's responsibilities under the Rules of Professional Conduct because such a mode of information transmission afforded a reasonable expectation of privacy from a technological and legal standpoint. For greater protection of client information, our Firm has the capability to encrypt E-Mail. If you would like to request the use of encrypted E-Mail, please contact me so I can notify the appropriate personnel in our Information Systems Department. However, no system of encryption provides absolute protection of the confidentiality of information communicated by E-Mail. If you do not want the Firm to use E-Mail for some, or all, of its communications with you, please advise us promptly to that effect. We will follow your instructions as to the manner in which you want to communicate with the Firm.

Clients are entitled to request and receive client-owned files unless the Firm asserts a legally cognizable right to retain all or a portion of the files. No client files can be removed from the Firm and transmitted to any person or entity without the client's written authorization. After a legal representation has ended, client-owned files will either be returned to the client or kept in the possession of the Firm in accordance with its client file retention policy. Under that policy, client files are retained by the Firm for a fixed time period after which the files may be destroyed. No client files will be destroyed unless approved by the responsible Firm attorney on that legal representation or by the Firm's Executive Director. If the client requests that its files be returned, we will strive to do so within ten (10) business days following the client's written request. Files released to a client are no longer subject to the Firm's client file retention policy.

It is possible that some of our present or future clients will have matters adverse to POM while we are representing POM. We understand that POM will have no objection to our representations of parties with interests adverse to it and that POM will waive any actual or potential conflict of interest as long as those engagements are not substantially related to our



representation of POM. We agree that this consent shall not apply in any instance where, as a result of our representation of POM, we have obtained confidential information that, if known to such other client, could be used to its material disadvantage.

If this engagement letter is consistent with your understanding of our fee and representation arrangement, please have an appropriate officer of POM execute the enclosed copy where indicated and return it to me. If you have any questions concerning any of the matters discussed in this letter, please do not hesitate to let me know.

We appreciate the opportunity to be of service to you and Pace-O-Matic, Inc. on the Project and look forward to working with you.

Very truly yours,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: _____
Thomas A. Lisk

Accepted and agreed to this _____ day of December, 2016

PACE-O-MATIC, INC.

By: _____
Title: VP Finance & Operations