Attorneys for Plaintiff:

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly LLP
425 Spruce Street, Suite 200
Scranton, PA 18507
(570) 342-6100

Attorneys for Defendant:

Abraham C. Reich
Robert S. Tintner
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PACE-O-MATIC, INC.,** | ) | |
| | ) | **No. 1:20-CV-292** |
| **v.** | ) | |
| | ) | |
| **ECKERT, SEAMANS, CHERIN** | ) | **JUDGE WILSON** |
| **& MELLOTT, LLC,** | ) | |
| | ) | |

## JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

## 1.  Principal Issues

1.1    Separately for each party, please give a statement summarizing this case:

By plaintiff(s):

Plaintiff Pace-O-Matic, Inc. ("POM") develops, produces and licenses legally compliant electronic games of skill which have been sold in Pennsylvania and elsewhere.   In 2011, POM retained Defendant Eckert, Seamans, Cherin & Mellott, LLC ("Eckert") to provide legal services in relation to distribution of its "Palmetto Gold" skill game in Pennsylvania. In 2016, POM and Eckert entered into a second engagement letter pursuant to which Eckert agreed to provide legal services in relation to legal, regulatory and legislative matters in Virginia concerning sales and marketing of POM's skill games.   In furtherance of the requested legal services and in reliance on Eckert's duties of undivided loyalty and confidentiality, POM provided Eckert with highly sensitive, proprietary and confidential information concerning its skill games and business operations and participated with Eckert in confidential and privileged discussions concerning, *inter alia*, the development of legal strategies to preserve and defend the legality of those games.

Unbeknownst to POM, while Eckert possessed confidential information concerning POM's games and participated in privileged communications with POM personnel concerning legal matters relating to those same games, Eckert was simultaneously representing one of Pennsylvania's casinos, Parx Casino, in preparing to challenge the legality of POM's games in Pennsylvania.   In the fall and early winter of 2019, Eckert filed actions on behalf of Parx Casino in Pennsylvania state courts against nearly two dozen smoke shops, convenience stores and other establishments that offer POM skill games.   Eckert, acting on behalf of Parx Casino, is seeking in those actions a judicial declaration that skill games constitute a public nuisance.   In late 2019, Eckert openly attacked POM and its skill games in the context of those actions, falsely alleging that POM "deceptively market[s] these games as 'legal,' when, in fact, they are not."

Eckert's simultaneous representation of POM and Parx Casino while attacking POM on behalf of Parx Casino is a plain breach of the duty of undivided loyalty which Eckert owes to POM.   When POM confronted Eckert with its conflict, Eckert dropped POM like a "hot potato" on January 29, 2020 in favor of its more lucrative relationship with Parx Casino.

POM seeks injunctive and other relief for Eckert's breach of fiduciary duty.   Among other things, POM is entitled to disgorgement of fees paid to Eckert and an injunction barring Eckert from continuing to represent Parx Casino in matters adverse to POM.

By defendant(s):

POM approached Eckert in 2011 about representing POM in Pennsylvania concerning the proposed distribution of one of its games, "Palmetto Gold."   After making several inquiries and doing some limited investigation, Eckert advised POM that it could not represent POM.   Eckert returned the balance of the retainer provided.

In 2016, POM approached Eckert about representing POM in Virginia.   POM agreed to a prospective waiver.   Further, Eckert agreed to represent POM on the condition that POM had no objection to POM's prior and pre-existing representation of gaming clients in Pennsylvania.   POM agreed, and Eckert undertook the representation.   An ethical screen was put in place between the attorneys representing Eckert's gaming clients in Pennsylvania and the lawyers representing POM in Virginia.   There was no sharing of any confidential or other proprietary information for any of the clients by their respective attorneys subject to the ethical screen.

Represented by counsel other than Eckert, POM filed a Petition for Review in the Commonwealth Court of Pennsylvania concerning the legal status of its games in Pennsylvania.   Eckert is not involved in that case.

3

In October 2019, POM raised concerns about positions that Eckert was taking in litigation in which POM was not a party but where POM alleges an interest in the outcome of the case. The cases at issue are pending in Bucks County and Montgomery County, Pennsylvania. POM sought a stay of those cases pending the outcome of its case in the Commonwealth Court and, to date, all of the Bucks County cases are stayed. Ultimately, POM demanded that Eckert withdraw from its representation of its Pennsylvania gaming clients. As that condition could not be met, and POM refused to acknowledge its prior waiver of the potential conflict that it was then asserting in connection with Eckert's representation of its gaming clients in Pennsylvania, Eckert was left with no alternative but to withdraw from its representation of POM in Virginia.

Eckert is not representing a client that is directly adverse to POM in Pennsylvania. Eckert did not drop POM like a "hot potato" as Eckert's representation of its gaming client predated any representation of POM. Eckert did not disclose any confidential information or otherwise breach any duties owed to POM.

There is no basis for injunctive relief or any of the damages that POM is seeking.

1.2    The facts the parties <u>dispute</u> are as follows:

1.21    Whether, while still representing POM, Eckert challenged the legality of POM's skill games on behalf of Parx Casino.

1.22    Whether Eckert, on behalf of Parx Casino, advocated in Pennsylvania state court actions that POM "deceptively market[s] [its skill] games as 'legal,' when, in fact, they are not."

1.23    Whether Eckert ever disclosed to POM that it had been engaged by Parx Casino to challenge the legality of POM's skill games.

1.24    Whether Eckert withdrew from the representation of POM on January 29, 2020 after POM allegedly demanded that Eckert withdraw from its representation of its Pennsylvania gaming clients and refused to acknowledge an alleged waiver of any potential conflict.

1.25    Whether Eckert continues to represent Parx Casino in matters adverse to POM relating to the legality of POM skill games.

1.26    Whether, as of the date of Eckert's withdrawal as counsel for POM, Eckert represented POM only with respect to the sale of its products in Virginia.

<u>agree</u> upon are as follows:

1.27    In December 2016, POM engaged Eckert to provide legal services concerning matters in Virginia relating to the sales and marketing of its electronics and software.

1.28    The partner in charge of the POM relationship at Eckert from December 2016 to September 2018 was Thomas A. Lisk.

1.29    POM paid Eckert more than $700,000.00 in legal fees.

1.3    The legal issues the parties <u>dispute</u> are as follows:

1.31    Whether Eckert breached a fiduciary duty to POM.

1.32    Whether Eckert violated its duty of confidentiality to POM.

1.33    Whether Eckert violated its duty of loyalty to POM.

1.34    Whether POM is entitled to any disgorgement of legal fees.

1.35    Whether POM agreed to Eckert's alleged condition of representation that it waive any conflict of interest with respect to Eckert's representation of gaming clients in Pennsylvania and whether any such alleged waiver is valid.

<u>agree</u> upon are as follows:

1.36    Eckert owes a duty of undivided loyalty to POM.

1.37    Eckert owes a duty of confidentiality to POM.

1.4    Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

Per the Court's request, the parties will brief the issue concerning subject matter jurisdiction.

1.5    Identify any named parties that have not yet been served:

None.

1.6    Identify any additional parties that:

plaintiff(s) intends to join:   None at this time.

defendant(s) intends to join:

1.7    Identify any additional claims that:

plaintiff(s) intends to add:   None at this time.

defendant(s) intends to add:

**2.0    Disclosures**

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

2.1    Separately for each party, list by name and title/position each person whose identity has been disclosed.

Disclosed by Plaintiff:

| Name | Title/Position |
|---|---|
| B. Greg Cline | General Counsel, Pace-O-Matic, Inc. |
| Thomas A. Lisk | Former Member, Eckert, Seamans, Cherin & Mellott, LLC |

Disclosed by Defendant:

| Name | Title/Position |
|---|---|
| Mark Stewart | Co-Chair of Gaming Practice, Eckert, Seamans, Cherin & Mellott, LLC |
| Anthony F. Troy | Member, Eckert, Seamans, Cherin & Mellott, LLC |
| Timothy S. Coon | Chief Legal Officer, Eckert, Seamans, Cherin & Mellott, LLC |
| Matthew B. Kirsner | Member, Eckert, Seamans, Cherin & Mellott, LLC |
| David J. Mayernik | Member, Eckert, Seamans, Cherin & Mellott, LLC |

**3.0    Early Motions**

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| Motion for Prelim. Inj. | Plaintiff | March 10, 2020 |

**4.0    Discovery**

4.1    Briefly describe any discovery that has been completed or is in progress:

By plaintiff(s):

By defendant(s):

4.2   Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

POM will serve written discovery requests and will depose Eckert personnel and other persons with relevant knowledge, including a 30(b)(6) designate of Eckert.   POM will also serve third-party subpoenas to obtain relevant documents.

Eckert will send written discovery requests and conduct depositions. Eckert may also send third-party subpoenas.

4.3   Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects</u>, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

4.4   Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:

4.5   For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

4.5.1   depositions (excluding experts) to be taken by:

plaintiff(s):__7____            defendant(s):___7___

4.5.2   interrogatories to be served by:
plaintiff(s):__25_____          defendant(s):__25_____

8

4.5.3   document production requests to be served by:

plaintiff(s):___25___                 defendant(s):___25___

4.5.4   requests for admission to be served by:

plaintiff(s):___25___                 defendant(s):___25___

4.6     Discovery of Electronically Stored Information

X Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

☐ Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

## 5.0   Protective Order

5.1     If entry of a protective order is sought, attach to this statement a copy of the proposed order.   Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

Both parties may request an appropriate protective order as the matter progresses.

5.2     If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

## 6.0   Scheduling

6.1     Final date for joining additional parties:

July 1, 2020____  Plaintiff(s)

July 1, 2020____  Defendants(s)

9

6.2    Final date for amending pleadings:

      July 1, 2020     Plaintiff(s)

      July 1, 2020     Defendants(s)

6.3    All fact discovery commenced in time to be completed by:

      October 30, 2020

6.4    All potentially dispositive motions should be filed by:   November 30, 2020

6.5    Reports from retained experts due:

      from plaintiff(s) by  November 30, 2020

      from defendant(s) by  January 1, 2021

6.6    Supplementations due   January 15, 2021

6.7    All expert discovery commenced in time to be completed by February 12, 2021

6.8    This case may be appropriate for trial in approximately:

      _____ 240 Days from the filing of the action in this court

      _____ 365 Days from the filing of the action in this court

      425 Days from the filing of the action in this court

6.9    Suggested Date for the final Pretrial Conference:

      April 11, 2021

6.10   Trial

6.10.1  Suggested Date for Trial:

   May 2021

## 7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)

I hereby certify that the following individual(s) have settlement authority.

B. Greg Cline
General Counsel, Pace-O-Matic, Inc.
c/o Myers, Brier & Kelly LLP
425 Spruce Street, Suite 200
Scranton, PA 18507
(570) 342-6100

Timothy S. Coon
Chief Legal Officer
Eckert, Seamans, Cherin & Mellott, LLC
c/o Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222

## 8.0    Alternative Dispute Resolution ("ADR")

8.1    Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

ADR procedure  N/A
Date ADR to be commenced
Date ADR to be completed

8.2    If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

8.3   If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

**9.0   Consent to Jurisdiction by a Magistrate Judge**

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court:   __Y  X  N

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

\_\_\_\_\_   Scranton/Wilkes-Barre
\_\_\_\_\_   Harrisburg
_____Williamsport

**10.0   Other Matters**

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

**11.0   Identification of Counsel**

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.   Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.   Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference.   The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party.   Also please indicate ECF User status below.

Dated:                 s/ Daniel T. Brier
                          Attorney(s) for Plaintiff(s)

X    ECF User(s)
☐    Waiver requested (as separate document)
☐    Fed.R.Civ.P.7.1 (statement filed if necessary)*

Dated:                 s/ Robert S. Tintner
                          Attorneys(s) for Defendant(s)

X    ECF User(s)
☐    Waiver requested (as separate document)
☐    Fed.R.Civ.P.7.1 (statement filed if necessary)*


\* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.

13