IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| Plaintiff, | : | |
| v. | : | Docket No. 1:20-cv-00292 |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | : | (Judge Jennifer P. Wilson) |
| Defendant. | : | |

## MEMORANDUM OF LAW OF DEFENDANT, ECKERT SEAMANS CHERIN & MELLOTT, LLC, IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"), by and through its counsel, Fox Rothschild LLP, hereby files its Memorandum of Law in Opposition to the Motion for Preliminary Injunction of plaintiff, Pace-O-Matic, Inc. ("POM").

## INTRODUCTION

In addition to being overreaching, inappropriate and virtually case-dispositive at a way-too-early stage of these proceedings, the motion for preliminary injunction (the "Motion") filed by POM fails to meet any of the requisite elements necessary to obtain any form of injunctive relief. Through its Motion, POM intentionally mischaracterizes the limited nature of Eckert's representation of POM and seeks to interfere with Eckert's ongoing representation of other clients, who are not parties to this action.

**First**, POM's Motion fails to establish that its request for relief is immediate or irreparable. Indeed, POM first raised the issues addressed in the Motion by correspondence and discussion in October 2019. POM filed its Complaint in February 2020 and its Motion in late March 2020. Inexplicably, POM waited until the onset of the COVID-19 crisis, after the

1

pleadings were closed, to seek injunctive relief. Similarly, POM's request for relief is not irreparable insofar as POM seeks monetary damages in its Complaint.

**Second**, POM is not entitled to any of the relief that it seeks. There is no actual conflict of interest because Eckert is not representing parties in litigation adverse to POM. At most, there is a positional or business conflict. Most significantly, POM waived the potential positional conflict before Eckert agreed to represent POM back in 2017. The e-mails that confirm the waiver – as well as the signed Engagement Letter between POM and Eckert – contradict the sworn testimony of POM's principal declarant, Thomas Lisk, Esquire. Of great concern are the contradictions of Mr. Lisk's statements, both versions of which cannot be true.[1] Either way, such statements provide no basis for POM to seek to disqualify Eckert from representing pre-existing clients who consented to Eckert's limited representation of POM in Virginia and who likewise understood that Eckert's representation of POM in Virginia would be limited to Virginia. There is also no evidence that any confidential information of POM's has been shared with anyone, let alone Eckert's other clients. Eckert enacted an appropriate ethical screen, and the attorneys abided by that screen.

**Third**, contrary to what POM asserts, balancing the hardships weighs in favor of Eckert because the *status quo* does not require issuance of any type of preliminary injunction. Able counsel of its choosing represents POM in its actions pending in Pennsylvania. Eckert represents its other pre-existing gaming clients in Pennsylvania. Aside from the absence of direct adversity, the parties may maintain the *status quo* by allowing them to have counsel of their choosing.

**Fourth**, public policy favors permitting parties to have counsel of their own choosing. Eckert undertook the representation of POM with certain conditions in place. From Eckert's

---

[1] Politely, counsel are reminded of their obligations under Pennsylvania Rule of Professional Conduct 3.3(a) with respect to the use of Mr. Lisk's Declaration. *See* RPC 3.3(a).

understanding, those conditions were met. There is no public policy reason to preclude Eckert from continuing its representation of other clients, which it had been doing for many years, let alone to use the Motion as some improper tactical weapon to seek to disqualify Eckert in matters that are not before this Court.

In sum, POM cannot meet any of the requisite elements of a preliminary injunction. Accordingly, this Court should deny POM's Motion in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Although largely irrelevant to the Motion or these proceedings, because of certain mischaracterizations, Eckert must address its two (2) separate representations of POM, as well as the facts underlying this dispute, in order to clarify what occurred.

### 2011 Representation of POM in Pennsylvania

In September 2011, POM through a referral approached Eckert about representing POM in Pennsylvania involving its "Palmetto Gold" game. Eckert requested a $5,000 retainer and sent an Engagement Letter. *See* 2011 Engagement Letter attached hereto as Exhibit "A". The representation, in essence, ended before it began. Eckert did some limited research and made some inquiries in October 2011 and, ultimately, concluded, that it could not assist POM and informed POM of that conclusion. *See* Declaration of David J. Mayernik, Esquire attached hereto as Exhibit "B". Eckert billed POM a total of $120.00 and later refunded the entirety of the retainer, plus an additional $120.00 that POM overpaid. *Id.*

### Representation of POM in Virginia

Five years later, in December 2016, POM reached out to Eckert through Mr. Lisk to see if Eckert could assist POM in Virginia. When Mr. Lisk raised the issue internally, other Eckert attorneys raised concerns, among them, Mark S. Stewart, Esquire, who is a co-chair of Eckert's

3

Gaming Group. Mr. Stewart was concerned that Eckert's representation of POM potentially could conflict with Mr. Stewart's pre-existing representation of certain gaming clients in Pennsylvania. *See* Declaration of Mark S. Stewart, Esquire attached hereto as Exhibit "C". Mr. Stewart raised his concerns directly with Mr. Lisk before the representation of POM began. *Id.*; *see also* December 2016 and February – April 2017 e-mails between Mr. Stewart and Mr. Lisk attached hereto as Exhibit "D". So that there would be no confusion, Mr. Stewart wanted Mr. Lisk to confirm with POM for Eckert that: (1) Eckert represented gaming clients in Pennsylvania; (2) Eckert would continue to represent gaming clients in Pennsylvania; (3) Eckert would not represent POM in Pennsylvania; and (4) there was a potential positional conflict with respect to Eckert's representation of gaming clients in Pennsylvania and Eckert's representation of POM in Virginia. *Id.*

Eventually, Mr. Lisk confirmed verbally and later by e-mail that he obtained POM's informed consent and waiver. *Id.* The Engagement Letter sent by Mr. Lisk reiterates the advanced conflict waiver. *See* 2016 Engagement Letter attached hereto as Exhibit "E". In addition, Eckert enacted an appropriate ethical screen to screen off the attorneys representing POM in Virginia from the attorneys representing gaming clients in Pennsylvania. *See* Mr. Stewart's Declaration (Exhibit "C").

In April 2017 and then later in September 2017, issues arose with respect to Eckert's potential representation of POM in Pennsylvania. Eckert declined the representation because of the potential positional conflict. *See* Declaration of Matthew B. Kirsner, Esquire attached hereto as Exhibit "F". *See also* e-mails between Mr. Lisk and Mr. Stewart (Exhibit "D").

Notwithstanding Eckert's inability to represent POM in Pennsylvania, Eckert continued to represent POM in Virginia from early 2017 until January 2020. *Id.* It was only when POM

4

refused to acknowledge its prior waiver of any potential conflict and made a demand upon Eckert not to represent its gaming clients in Pennsylvania that Eckert was forced to withdraw from its representation of POM in Virginia. *Id.*

## Facts Underlying This Dispute

Eckert's long-standing representation of its gaming clients in Pennsylvania is subject to the attorney-client privilege as well as client confidentiality as required by Pennsylvania Rule of Professional Conduct ("RPC") 1.6. Eckert will not address those representations or the work that it is currently performing for its current clients. Indeed, aside from the fact that the legal framework of gaming in Pennsylvania is different than it is in Virginia (where there are no casinos or legalized gambling), there was no overlap between work that Eckert was performing for its gaming clients in Pennsylvania and that which Eckert did for POM in Virginia.[2]

Through other counsel, POM filed two (2) Petitions for Review in the Commonwealth Court of Pennsylvania seeking certain declarations about the use of its games in Pennsylvania. *See* Petitions for Review attached hereto as Exhibit "G" and "H". POM put these legal issues – and, specifically, the legality of its games – directly before the courts in Pennsylvania. Eckert is not representing any party in those actions, and Eckert's clients did not put that issue before the Commonwealth Court to decide; POM through other counsel did.

Notwithstanding the fact that Eckert properly disclosed its prior existing representations to POM and that Eckert could not represent POM in Pennsylvania, POM began to raise concerns about Eckert's representation of its gaming clients in Pennsylvania in October 2019. Eckert

---

[2] Contrary to POM's advocacy that the legal issues in Virginia and Pennsylvania are substantially related, they are not. They involve different issues altogether. In Virginia, gambling and casinos are illegal. In Pennsylvania, gambling is legal and is part of a highly regulated, statewide industry. As such, the work that Eckert was doing on POM's behalf in Virginia was unrelated to the work that Eckert was performing for its gaming clients in Pennsylvania.

5

addressed the concerns and sought confirmation of its prior conflict waiver in order to continue to represent POM in Virginia. Not only did POM refuse to acknowledge its prior waiver, POM then took the position that Eckert had to withdraw from its representation of other pre-existing clients in order to satisfy POM's concern. *See* Mr. Kirsner's Declaration (Exhibit "F"). Because of POM's insistence that Eckert withdraw from its other representations in Pennsylvania and its refusal to acknowledge its prior waiver, Eckert was left with no alternative but to withdraw as POM's counsel in Virginia in early 2020. *Id.*

Consistent with the ethical screen, at no time did any of the Eckert attorneys working on the POM matters in Virginia discuss those matters with the Eckert attorneys who were representing gaming clients in Pennsylvania. *Id.; see also* Declaration of Anthony F. Troy, Esquire attached hereto at Exhibit "I". The Eckert attorneys who represented POM did not disclose any of POM's confidential information to anyone. *Id.*

Also consistent with the ethical screen, Mr. Stewart did not discuss the matters on which he was working for his gaming clients in Pennsylvania with the Eckert attorneys who were representing POM in Virginia. *See* Mr. Stewart's Declaration (Exhibit "C"). Mr. Stewart did not disclose any of his gaming clients' confidential information to anyone. *Id.*

**Procedural History**

POM's response to Eckert's withdrawal was to file its Complaint in this action on February 18, 2020. Eckert timely answered the Complaint and asserted Affirmative Defenses on March 10, 2020. Despite the passage of time and the onset of the COVID-19 crisis, POM filed the Motion on March 24, 2020. This Court granted Eckert's uncontested motion to extend the time for it to respond, permitting Eckert to file its response to the Motion by April 21, 2020.

## QUESTIONS PRESENTED

1. Does this Court have subject matter jurisdiction over this dispute based upon diversity jurisdiction? Suggested Answer: Yes.

2. Is POM entitled to preliminary injunctive relief? Suggested Answer: No.

## LEGAL ARGUMENT

### A. This Court has Subject Matter Jurisdiction Over This Dispute.

It is aximoatic that a district court cannot enter any form of injunctive relief in accordance with Federal Rule of Civil Procedure 65, unless it has subject matter jurisdiction to do so. *See* Fed.R.Civ.P. 65; *see also* Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538 (3rd Cir. 1995). Here, based upon the well-pled allegations in the Complaint, POM seeks to invoke this Court's subject matter jurisdiction pursuant to diversity jurisdiction as articulated in 28 U.S.C. §1332(a)(1). As pled, POM is a citizen of Wyoming and Georgia. Eckert is a citizen of Pennsylvania. Thus, there is complete diversity of citizenship between the parties.

In a diversity action, the amount in controversy must exceed $75,000 exclusive of interest and costs. POM has alleged that the value of the sales of its skill games in Pennsylvania exceeds $75,000 and that the legal fees that POM paid to Eckert in Virginia exceed $75,000. While Eckert disputes POM's entitlement to any damages that it has alleged, the test for determining the amount in controversy, particularly in an action seeking injuctive relief, is "a party's good faith allegation of the amount in controversy" and "the value of the object in litigation." *See* Columbia Gas, 62 F.3d at 541, citing Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443 (1977). Here, POM has alleged both damages in excess of $75,000 and that the value of the alleged object in this litigation is in excess of $75,000. As

7

such, Eckert believes that POM has correctly pled subject matter jurisdiction sufficient for the Court to hear this dispute.

  **B.  There Has Been No Breach of Fidcuiary Duty, And There is No Evidence That Eckert Used POM's Confidential Information.**

The seminal case concerning claims for breach of fiduciary duty under Pennsylvania law is <u>Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz</u>, 602 A.2d 1277, 1283 (Pa. 1992). In <u>Maritrans</u>, the Pennsylvania Supreme Court conclusively established that an attorney owes his client a fiduciary duty to maintain a client's confidential information and to preserve an attorney's loyalty to a client by not engaging in impermissible conflicts of interest. *Id.*

In reviewing POM's request for a preliminary injunction here, it is important to analyze and understand the breadth and scope of the injunction that the Pennsylvania Supreme Court ultimately reinstated from the trial court, which the Superior Court of Pennsylvania had reversed. The key issue in <u>Maritrans</u>, which supported the entry of injunctive relief, was that the very same attorney who held the confidential information and the duty of loyalty to the former client *was the attorney seeking to represent the former client's competitors in substantially related matters.* *Id.* at 248-249 and 1286. There, Maritrans actually agreed to the implementation of an ethical screen that permitted its former lead attorney, Anthony Messina, Jr., to represent four competitors of Maritrans in New York. *Id.* at 249. Messina not only violated the ethical screen in order to represent other Maritrans competitors, but he was simultaneously trying to recruit another attorney representing other Maritrans competitors to join Pepper. *Id.*

Because of Messina's direct knowledge of Maritrans' highly confidential and industry-competitive information and because Messina was directly representing competitors in actions adverse to Maritrans (and had violated his own proposed ethical screen), the trial court believed that a preliminary injunction was warranted. *Id.* at 251.

Interestingly, both the trial court and the Supreme Court found the ethical screen there to be defective largely because Messina was on both sides of it. Nevertheless, in dissent, former Chief Justice Nix believed that an injunction was unnecessary because Maritrans had given its consent to the ethical screen. *Id.* at 266.

While Maritrans certainly establishes a cause of action for breach of fiduciary duty under Pennsylvania law and even a potential basis for injunctive relief in certain circumstances, none of the factors that existed in Maritrans is present here. **First**, Eckert obtained a conflict waiver in order for Eckert to represent POM in Virginia. That conflict waiver recognized that Eckert represented gaming clients in Pennsylvania whose interests were potentially adverse to POM in Pennsylvania, where Eckert could not – and did not – represent POM. **Second**, there is an ethical screen in place, and there are different attorneys involved in the respective representations not the same one as in Maritrans. **Third**, Eckert has not disclosed any confidential information of POM. **Fourth**, the matters are not substantially related, as they involve different legal issues in different fora where the framework for gambling is entirely different. **Finally**, here, POM cannot demonstrate any of the elements necessary to establish injunctive relief.

C.  **POM Is Not Entitled To Any Form of Injunctive Relief.**

   1.  **Standard for a Preliminary Injunction.**

Injunctive relief is an "extraordinary remedy and should be granted only in limited circumstances." Kos Pharmaceuticals v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). In order to obtain a preliminary injunction, the moving party bears the heavy burden of establishing that: (1) it has shown a reasonable probability of success on the merits; (2) it will be irreparably injured by denial of the relief because there is no adequate remedy at law; (3) granting preliminary relief

9

will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest. *See* ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1990); The Prudential Ins. Co. of America v. Stella, 994 F. Supp. 308, 316 (E.D. Pa. 1998); *see also* American Tel. and Tel. Co. v. Windback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994), cert. denied, 514 U.S. 1103, 115 S. Ct. 1838 (1995), citing Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990).

In this Circuit, a district court may issue a preliminary injunction *only* if the moving party has shown that it is likely to prevail on the merits, that it will suffer irreparable harm absent such relief and that the balance of the equities and the public interest favor injunctive relief. *See* American Greetings Corp. v. Dan-Dee Imports, Inc., 807 F.2d 1136, 1140 (3d Cir. 1986). This Court should deny POM's Motion because POM is incapable of establishing any of the necessary requirements for such relief.

### 2. POM Cannot Establish Immediate and Irreparable Harm.

POM cannot establish immediate and irreparable harm here. Aside from the fact that there has been no breach of confidentiality or improper use of any purportedly confidential information, there is an ethical screen in place. There are no allegations or statements to the contrary by POM of Eckert's purported misuse of confidential information. The allegation that Eckert has supposedly misused POM's "confidential" matters it is handling for other clients lacks any supporting evidence, including from Mr. Lisk. POM waives as a sword a vague allegation with no detail whatsoever and which as a matter of unassailable fact is simply untrue.

POM also waited to seek any type of relief calling into question the tactical nature of its Motion. POM knew at the outset of Eckert's representation of POM that Eckert represented gaming clients in Pennsylvania who were potentially adverse to POM. POM knew as early as

the start of the representation, but certainly no later than April 2017 that Eckert could not – and would not – represent POM in Pennsylvania. POM identified and complained of a potential conflict with Eckert surrounding the issues raised in POM's Petitions for Review as early as the fall of 2019. Despite all of that, POM filed its Complaint in February 2020 and waited until late March 2020 to file its Motion.

POM simply has failed in its burden to establish immediate and irreparable harm. In this Circuit, "[a] plaintiff has the burden of making a 'clear showing of immediate irreparable (not merely serious or substantial) injury' . . ." The Prudential, 994 F. Supp. at 316, quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 90-91 (3d Cir. 1992). "An injury is regarded as 'irreparable' if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard." Sheridan Broad. Networks, Inc. v. NBN Broad., Inc., 693 A.2d 989, 995 (1997) quoting Sovereign Bank v. Harper, 674 A.2d 1085, 1093 (Pa. Super. 1996); Rollins Protective Services Co. v. Shaffer, 383 Pa. Super. 598, 600, 557 A.2d 413, 414 (1989).

In its Complaint, POM seeks a disgorgement of the legal fees POM paid to Eckert for Eckert's representation of POM in Virginia. Although those alleged damages are clearly not recoverable, POM nonetheless asserts an entitlement to them. Irreparable harm is harm where no adequate remedy of law exists such that a party may be compensated in the form of monetary damages. *See* Doe v. Provident Life and Accident Insurance Co., 936 F. Supp. 302, 305-06 (E.D. Pa. 1996) (equitable relief is not appropriate where a party has an adequate legal or statutory remedy), citing Tudor Dev. Group v. U.S.F.&G., 968 F.2d 257, 264 (3d Cir. 1992).

Here, POM has not suffered any immediate or irreparable harm. Accordingly, this Court should deny POM's motion for a preliminary injunction.

11

### 3. POM Cannot Prevail On The Merits Of Its Claims.

POM asserts one substantive cause of action – a claim for breach of fiduciary duty. For the reasons articulated above, POM cannot establish that Eckert violated its duties of confidentiality or loyalty as POM waived the potential conflict, Eckert established an ethical screen, and there has been no disclosure of any confidential information.

With respect to the ethical screen, POM has no evidence that any Eckert attorney who handled its matters in Virginia shared its confidential information with anyone, let alone the attorneys who represented Eckert's gaming clients in Pennsylvania. Eckert's Declarations submitted with this memorandum confirm that assertion.

With respect to the purported conflict and the conflict waiver, POM signed an Engagement Letter that contained an advanced conflict waiver.[3] There are e-mails directly contradicting Mr. Lisk's Declaration about the fact that the representation itself was subject to a conflict waiver, and there are contemporaneous e-mails confirming that Mr. Lisk sought and obtained the waiver. It was a condition precedent to Eckert's representation of POM in Virginia. It is no wonder that, now, Mr. Lisk, who left Eckert and took POM with him as a client at his new firm, might claim otherwise. However, notwithstanding the reasons or bases for his contradictory statements or lack of candor[4], the e-mails and the fact that, subsequent to the e-mails, Eckert declined a representation of POM in Pennsylvania for the same reasons, belie any such claims after the fact.

---

[3] The Court should note that positional conflicts do not require informed consent and waiver as contemplated by RPC 1.7. On that point, Comment [24] states as follows: "Ordinarily, a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter *does not create a conflict of interest.*" RPC 1.7, Comment [24]. That is precisely what POM alleges occurred here and why there is no conflict of interest.

[4] Again, RPC 3.3(a) is applicable to Mr. Lisk and counsel for POM. *See* Pa.R.P.C. 3.3(a).

Moreover, POM seeks disqualification of Eckert in the form of a preliminary injunction. The Court should critically review any attempt at disqualification "to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." Slater v. Rimar, Inc., 338 A.2d 584, 590 (Pa. 1975). There was a conflict waiver by POM. Eckert established an ethical screen. Therefore, there has been no breach of any fiduciary duty by Eckert. Accordingly, POM cannot prevail on the merits of its breach of fiduciary duty claim, and this Court should deny POM's motion for a preliminary injunction.

### 4. Balancing the Hardships Weighs in Favor of Eckert.

When considering the appropriateness of an injunction, this Court must ensure that granting preliminary relief will not result in even greater harm to the other party. *See* ECRI, 809 F.2d at 226. Consequently, this Court should balance the interests of the parties and determine whether the grant of injunctive relief would impose greater harm upon either party. Here, POM in essence seeks to disqualify Eckert from representing other clients, who are not even parties to this litigation. What could be further evidence of greater harm than that possible outcome where other parties – companies who are not parties to this lawsuit – are deprived of their chosen right to counsel. *See* Slater, *supra*, at 590 (balancing the deprivation of a party's choice of counsel). *See also* Air Products v. Airgas, 2010 Del. Ch. LEXIS 35 at *10 (Mar. 5, 2010) ("Given the absence of any credible threat of prejudice to Airgas from Cravath's continued participation in this lawsuit, I think the threat of harm to Air Products from disqualification from outweighs the threat of harm to Airgas from a failure to disqualify"), attached hereto as Exhibit "J".

More importantly, it is POM, and not Eckert that put the legality of POM's games before the Pennsylvania courts. POM filed its own Petitions for Review in the Pennsylvania

13

Commonwealth Court. POM's chosen counsel represents POM in those matters. Eckert's gaming clients are not parties to those actions despite the fact that the outcome of those cases could independently affect other cases that Eckert's gaming clients have pursued, and which are against parties that do not include POM. Because of the pendency of those Commonwealth Court actions, the trial courts in most of the matters that Eckert's clients pursued stayed those actions (and the remainder are likely to be stayed) pending the outcome of the Commonwealth Court actions. Thus, it is POM, which put the legality of its games at issue. Maintaining the *status quo* and a balancing of the equities would weigh strongly in favor of denying POM's request for injunctive relief.

As such, granting injunctive relief would be far more harmful to Eckert and its other clients than denying such relief would be to POM. *See* Slater, *supra* (courts must balance the equities of depriving a client of counsel of its choosing); Air Products, *supra*. Here, POM has the counsel it selected, and there are no concerns about any disclosure of confidential information. Accordingly, the Court should deny POM's motion for a preliminary injunction.

### 5. **Granting POM's Injunction Is Not in the Public's Interest.**

POM has failed to allege properly, and it cannot establish, that granting an injunction will be in the public's interest. Quite to the contrary, any evaluation with respect to the public's interest weighs heavily in Eckert's favor. It is in the public's interest to permit parties to choose which counsel should represent them. *Id.* POM's requested relief unnecessarily violates that principle particularly in the absence of any actual breach of fiduciary duty.

Similarly, POM's Motion strongly suggests more of a tactical strategy than any immediate or irreparable need for relief. As such, the Court should discourage and deny tactical motions to disqualify because they are strongly disfavored and against public policy. *See, e.g.*,

Hamilton v. Merrill Lynch, 645 F. Supp. 60, 61 (E.D. Pa. 1986) ("the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes"); *see also* Air Products, *supra* at *7 ("Motions seeking disqualification, of course, are often viewed with suspicion as they are known to be filed for tactical reasons rather than genuine concerns about loyalty").

In sum, it is simply not in the public's interest to invoke this Court's equitable powers and resources when POM has an adequate legal remedy and cannot prevail on the merits. It is in the public interest to reserve the Court's equitable powers for circumstances that warrant them. Equitable relief is unnecessary and unwarranted here, and the Court should not utilize its equitable powers based upon the unsubstantiated allegations in POM's Complaint and Motion. The Court, accordingly, should deny POM's motion for a preliminary injunction.

## CONCLUSION

For all of the foregoing reasons, defendant, Eckert Seamans Cherin & Mellott, LLC, respectfully requests that this Court enter its proposed form of Order and deny the motion for preliminary injunction of plaintiff, Pace-O-Matic, Inc.

Respectfully submitted,

ABRAHAM C. REICH, ESQUIRE (No. 20060)
ROBERT S. TINTNER, ESQUIRE (No. 73865)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
(215) 299-2090/2766 (telephone)
(215) 299-2150 (facsimile)
areich@foxrothschild.com
rtintner@foxrothschild.com

**Counsel for Defendant,
ECKERT SEAMANS CHERIN & MELLOTT, LLC**

Date: April 21, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| PACE-O-MATIC, INC., | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Docket No. 1:20-cv-00292 |
| | : | |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | : | (Judge Jennifer P. Wilson) |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF COMPLIANCE

I, Robert S. Tintner, Esquire, hereby certify that the foregoing Memorandum of Law in Opposition to Motion for Preliminary Injunction is in compliance with Local Rule 7.8(b)(2). The total word count according to Microsoft Word is 4594.

_____
ROBERT S. TINTNER, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

     Plaintiff,

v.

ECKERT SEAMANS CHERIN & MELLOTT, LLC,

     Defendant.

Docket No. 1:20-cv-00292

(Judge Jennifer P. Wilson)

## CERTIFICATE OF SERVICE

I, Robert S. Tintner, Esquire, hereby certify that, on this 21st day of April, 2020, I served a true and correct copy of the foregoing Memorandum of Law in Opposition to Motion for Preliminary Injunction, via ECF and U.S. First-Class Mail, upon the following:

    Daniel T. Brier, Esquire
    Myers, Brier & Kelly, LLP
    425 Spruce Street, Suite 200
    Scranton, PA 18503

    **Counsel for Plaintiff**
    **PACE-O-MATIC, INC.**

_____
ROBERT S. TINTNER, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

    Plaintiff,

v.

ECKERT SEAMANS CHERIN & MELLOTT, LLC,

    Defendant.

Docket No. 1:20-cv-00292

(Judge Jennifer P. Wilson)

## TABLE OF EXHIBITS

**EXHIBIT A** – September 13, 2011 Engagement Letter

**EXHIBIT B** – Declaration of David J. Mayernik, Esquire

**EXHIBIT C** – Declaration of Mark S. Stewart, Esquire

**EXHIBIT D** – Relevant E-Mails between Mark S. Stewart and Thomas Lisk

**EXHIBIT E** – December 20, 2016 Engagement Letter

**EXHIBIT F** – Declaration of Matthew B. Kirsner, Esquire

**EXHIBIT G** – POM's Petition for Review in the Commonwealth Court (418 MD 2018)

**EXHIBIT H** – POM's Petition for Review in the Commonwealth Court (503 MD 2018)

**EXHIBIT I** – Declaration of Hon. Anthony F. Troy

**EXHIBIT J** – <u>Air Products v. Airgas</u>, 2010 Del. Ch. LEXIS 35 (Mar. 5, 2010)