*E X H I B I T "C"*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PACE-O-MATIC, INC.,          : | |
|                Plaintiff,   : | |
| v.                 : | Docket No. 1:20-cv-00292 |
|                  : | |
| ECKERT SEAMANS CHERIN & MELLOTT,  : | |
| LLC,               : | |
|                : | |
|           Defendant.  : | |

## DECLARATION OF MARK S. STEWART, ESQUIRE

I, Mark S. Stewart, Esquire, hereby declare and state as follows:

1. I am an attorney licensed to practice law in the Commonwealth of Pennsylvania and the State of Maryland.

2. I am a member of the law firm of Eckert Seamans Cherin & Mellott, LLC ("Eckert"), the defendant in the above-captioned action, with an office in Harrisburg, Pennsylvania.

3. I am the Co-Chair of Eckert's Hospitality and Gaming Groups, and I concentrate my practice on all aspects of gaming law and civil and administrative litigation.

4. I represent a number of gaming clients in Pennsylvania.

5. At some point in 2016, Thomas Lisk, formerly of Eckert, approached me about his potential representation of Pace-O-Matic, Inc. ("POM"), the plaintiff in this action.

6. Mr. Lisk asked me whether Eckert could potentially represent POM in Virginia.

7. Mr. Lisk did so because he recognized that there would be a potential business or positional conflict with respect to my representation of certain gaming clients in Pennsylvania because those clients potentially could take positions that were adverse to POM in Pennsylvania.

8.      I was adamant with Mr. Lisk that we could not represent POM in Virginia if POM could not consent to Eckert's representation of its gaming clients in Pennsylvania where those clients might need Eckert to take positions adverse to POM.

9.      To that end, I specifically told Mr. Lisk orally and in writing, and it was my understanding that Mr. Lisk specifically advised POM, that: (1) Eckert represented gaming clients in Pennsylvania; (2) Eckert would continue to represent its gaming clients in Pennsylvania, including in ways that could or would be adverse to POM; (3) Eckert would not represent POM in Pennsylvania; and (4) there was a potential positional conflict with respect to Eckert's representation of gaming clients in Pennsylvania and Eckert's representation of POM in Virginia.

10.     Mr. Lisk agreed and confirmed in an e-mail to me that he would approach POM and that any representation of POM in Virginia would be subject to a conflict waiver. *See* e-mail chain between Mr. Lisk and me.

11.     Mr. Lisk later confirmed for me verbally that POM agreed to the representation subject to the waiver.

12.     Eckert also set up an ethical screen to screen off those of us representing gaming clients in Pennsylvania from the attorneys who were representing POM in Virginia.

13.     Later, in April 2017, POM apparently asked Eckert to represent POM in Pennsylvania.

14.     Based on our arrangement not to represent POM in Pennsylvania and because of the potential business conflict issue that my gaming clients were unwilling to waive, Eckert declined that potential representation.

2

15.     As part of the April 2017 communications, Mr. Lisk again acknowledged the limitations and arrangements that we agreed to in order to enable Eckert to represent POM n Virginia.

16.     As a result of those e-mails in 2016 and 2017, I was surprised to see Mr. Lisk's Declaration in this case.

17.     It is concerning to me, to say the least, that Mr. Lisk stated that he "never discussed with any representative of POM or advised POM that Eckert would undertake the representation of POM only if POM agreed to waive the future conflict with Parx Casino."

18.     It is also concerning to me that Mr. Lisk stated that "it was not a condition of Eckert's engagement that Eckert could represent Parx Casino or other gaming clients in a matter or matters adverse to POM" and that "[n]o such condition was imposed."

19.     Mr. Lisk's contemporaneous e-mails to me and other members of Eckert suggest otherwise. *See* e-mails.

20.     Mr. Lisk further states in his Declaration that he was unaware of any ethical screen when he actively participated in discussions with our General Counsel and me about the need to implement such an ethical screen.

21.     Mr. Lisk participated in several telephone calls and e-mails where we discussed the ethical screen.

22.     These issues came up again when POM approached Eckert about representing POM in Pennsylvania, and Eckert declined that representation.

23.     Other than discussions concerning the potential conflict waiver for Eckert to represent POM in Virginia, I have never discussed Eckert's representation of POM in Virginia with any of the attorneys at Eckert who represented POM in Virginia.

3

24. I never disclosed any confidential information about my gaming clients or discussed any of my attorney-client privileged communications with those clients with the attorneys at Eckert who represented POM in Virginia.

25. I neither got involved nor was I asked to get involved in any of the matters in which Eckert was representing POM in Virginia.

26. It would be a tremendous hardship upon my existing gaming clients to find new counsel for the matters in which I am representing those clients in Pennsylvania.

MARK S. STEWART, ESQUIRE

Dated: April 20 , 2020