*EXHIBIT "F"*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PACE-O-MATIC, INC., | : |
| Plaintiff, | : |
| v. | : Docket No. 1:20-cv-00292 |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | : |
| Defendant. | : |

## DECLARATION OF MATTHEW B. KIRSNER, ESQUIRE

I, Matthew B. Kirsner, Esquire, hereby declare and state as follows:

1. I am an attorney licensed to practice law in the Commonwealth of Virginia and the District of Columbia.

2. I am the Member-in-Charge for the Richmond Office of the law firm of Eckert Seamans Cherin & Mellott, LLC ("Eckert"), the defendant in the above-captioned action.

3. I am the Chairman of Eckert's Commercial Litigation practice group.

4. I have personal knowledge regarding the client relationship between Eckert and Pace-O-Matic, Inc. ("POM"), the plaintiff in this action. In addition to managing the Richmond office, I served as co-counsel for POM in a litigation matter pending in the United States District Court of Virginia (Alexandria Division).

5. The POM relationship was originated by a former Eckert Member, Thomas Lisk, in December 2016. POM engaged Mr. Lisk to handle state government relations work at the Virginia General Assembly. Mr. Lisk asked another Eckert Member, Anthony Troy, to assist with outreach to local government officials on behalf of POM. Mr. Troy's representation of POM later expanded to include various litigation matters in the federal and state courts of

Virginia. When Mr. Lisk departed Eckert for Cozen O'Connor in September 2018, Mr. Troy took over as Eckert's relationship attorney with POM.

6.      After Mr. Lisk left Eckert in September 2018, Eckert continued to provide legal services for POM in Virginia handling local government outreach and a number of litigation matters.

7.      When I started representing POM on the federal court litigation matter around May 2019, I became aware of the fact that Eckert's representation of POM in Virginia from the outset in December 2016 constituted a potential (but not an actual) conflict of interest because of Eckert's concurrent representation of certain gaming clients in Pennsylvania.

8.      I have seen the e-mails from December 2016 and February through April 2017 between Mr. Lisk and another Eckert Member, Mark S. Stewart, regarding the terms of a prospective waiver by POM. As I understand it, in order for Eckert to represent POM in Virginia, POM needed to agree that Eckert could be adverse potentially to POM in Pennsylvania. *See* e-mails between Mr. Lisk and Mr. Stewart.

9.      Mr. Lisk confirmed that POM had agreed to the prospective conflict waiver in several e-mails that he sent to Mr. Stewart. *Id.*

10.     I also reviewed the Engagement Letter with POM, which specifically contains the prospective conflict waiver. *See* 2016 Engagement Letter.

11.     Mr. Stewart also told Mr. Lisk on February 10, 2017: "We cannot rep [POM] in PA and they need to waive [Eckert] being adverse to them there. There will be adverse legislative action and potential litigation against them."

12.     At some point, I also became aware of the fact that POM wanted Eckert to represent POM in Pennsylvania regarding government relations issues.

2

13.     Eckert declined the representation of POM in Pennsylvania because of Eckert's concurrent representation of certain gaming clients in Pennsylvania and the potential conflict that it created.

14.     I understand that Mr. Troy, for Eckert, advised POM that due to the potential conflict and related to Eckert's ongoing attorney-client relationship with certain gaming clients in Pennsylvania, Eckert could not represent POM in Pennsylvania.

15.     Other than reviewing the potential conflict issues concerning POM and the Pennsylvania gaming clients with Mr. Stewart and Timothy Coon, Eckert's General Counsel, I have never discussed Eckert's representation of POM in Virginia with any of the attorneys at Eckert who represent gaming clients in Pennsylvania.

16.     I never disclosed any confidential information about POM, or discussed any of my attorney-client privileged communications with POM, with the attorneys at Eckert who represent gaming clients in Pennsylvania, including but not limited to, Mr. Stewart.

17.     I neither got involved, nor was I asked to get involved, in any of the matters in which Eckert was representing gaming clients in Pennsylvania.

18.     At some point when POM raised the potential conflict concerning positions that Eckert was taking on behalf of its gaming client in Pennsylvania, we sought guidance from Ethics Counsel for the Virginia State Bar.

19.     The guidance that we received was consistent with Eckert's position on the issue: Eckert had not engaged in any impermissible conflict of interest by asserting different legal positions in different jurisdictions, regarding different games, under separate state statutory schemes, on behalf of different clients.

20.     When Eckert communicated these positions to POM, POM refused to concede the lack of an actual (versus potential or positional) conflict and demanded that Eckert withdraw from its representation of those clients.

21.     Eckert and counsel for POM in Pennsylvania exchanged several letters regarding the potential conflict of interest. Eckert's counsel, Mr. Coon, proposed that POM waive the positional (not ethical) conflict, and agree that Eckert's existing screen was sufficient to address any confidentiality concerns within Eckert. In the alternative, Eckert proposed that it would withdraw from representing POM in Virginia and continue with its representation of the gaming clients in Pennsylvania.

22.     When POM refused to acknowledge the lack of a conflict and/or agree to the terms of the pre-existing screen, in January 2020, Eckert was left with no alternative but to withdraw from its representation of POM in its ongoing matters in Virginia.

_____

MATTHEW B. KIRSNER, ESQUIRE

Dated: April 16, 2020

4