*E X H I B I T "J"*



**AIR PRODUCTS AND CHEMICALS, INC., Plaintiff, vs. AIRGAS, INC., PETER McCAUSLAND, JAMES W. HOVEY, PAULA A. SNEED, DAVID M. STOUT, ELLEN C. WOLF, W. THACHER BROWN, RICHARD C. ILL, LEE M. THOMAS and JOHN C. VAN RODEN, JR., Defendants.**

**Civil Action No. 5249-CC**

**COURT OF CHANCERY OF DELAWARE, SUSSEX**

*2010 Del. Ch. LEXIS 35*

**March 5, 2010, Decided**

**NOTICE:**

THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Motion denied by *Air Prods. & Chems. v. Airgas, Inc. (In re Airgas, Inc. S'holder Litig.),* 2010 Del. Ch. LEXIS 93 (Del. Ch., Mar. 17, 2010)
Request denied by, On reconsideration by *Air Prods. & Chems. v. Airgas, Inc.,* 2010 Del. Ch. LEXIS 155 (Del. Ch., July 13, 2010)

**PRIOR HISTORY:** *Airgas, Inc. v. Cravath, Swaine & Moore LLP,* 2010 U.S. Dist. LEXIS 15120 (E.D. Pa., Feb. 22, 2010)

**COUNSEL:** [*1] APPEARANCES: (By telephone): JON E. ABRAMCZYK, ESQ., Morris, Nichols, Arsht & Tunnell LLP -and- FRANCIS P. BARRON, ESQ., DAVID R. MARRIOTT, ESQ., of the New York bar, Cravath, Swaine & Moore LLP, for Plaintiff.

KEVIN R. SHANNON, ESQ., Potter, Anderson & Corroon LLP -and- MARC WOLINSKY, ESQ., of the New York bar, Wachtell, Lipton, Rosen & Katz -and- JEFFREY G. WEIL, ESQ., of the Pennsylvania bar, Cozen O'Connor, for Defendants.

**JUDGES:** BEFORE: HON. WILLIAM B. CHANDLER III, CHANCELLOR.

**OPINION**

TELECONFERENCE RULING OF THE COURT

THE COURT: Good afternoon, counsel. I understand that we have a court reporter on the line with us, is that correct?

MS. McCAFFERY: Yes.

THE COURT: Thank you, Miss McCaffery.

Counsel, I appreciate your cooperation in being available for this conference call on such short notice. But given the nature of the underlying dispute, and the importance of moving the case forward, I have decided that it is more im-

portant that I provide you with a prompt ruling on the pending motion than that I provide you with a lengthy explanation of the reasons for my decision.

You have provided me with careful and thoughtful briefing under fairly extreme time pressures that I regrettably inflicted on you. [*2] And I in no way want to understate the importance of your efforts by this somewhat abbreviated ruling. But I do think it is my job to try to move the matter forward as efficiently and as quickly as possible, consistent, of course, with the proper administration of justice.

Now, the real meat of this lawsuit, as you know, is a dispute about the potential business combination of two Delaware firms, Air Products and Chemicals Inc. and Airgas Inc.

After tentative contacts about that business combination between these two companies in October and November, and perhaps December of 2009, all of which proved fruitless, Air Products, on February 4, 2010, announced publicly its intention to offer to purchase all outstanding Airgas stock for $ 60 per share in cash. That same day, Air Products filed a complaint in the Delaware Court of Chancery against Airgas and its board of directors seeking declaratory and injunctive relief based on allegations of breach of fiduciary duty by the Airgas board.

At issue in this litigation, therefore, are the actions and decisions of the Airgas board beginning late October up until the present in responding to Air Products' all-shares, all-cash offer, and specifically [*3] whether the Airgas board may properly rely on certain defensive measures, effectively just saying no to the offer, while resting on its poison pill, staggered board and the strictures of Section 203 of the Delaware General Corporation Law.

Now, on the very next day, February 5th, 2010, Airgas filed a lawsuit in the Pennsylvania Court of Common Pleas, not against Air Products, but against Cravath, Swaine & Moore, the New York law firm representing Air Products in connection with the proposed business combination, and in the lawsuit filed in this Court.

After winning an initial skirmish in the Pennsylvania State Court, Cravath had Airgas' State Court action removed to the United States District Court for the Eastern District of Pennsylvania where, on February 22nd, 2010, the Honorable Eduardo Robreno issued an opinion and order that stayed Airgas' lawsuit against Cravath until this Court ruled on Air Products' motion seeking a determination here that Cravath may properly represent Air Products in this lawsuit.

With that truncated background, I now turn to Air Products' motion for a declaration that Cravath, Swaine & Moore may continue to serve as Air Products' counsel in this case. Airgas, [*4] of course, opposes the motion, even going so far as to ask me to revoke pro hac vice orders I have entered allowing two Cravath attorneys to appear before me.

Airgas also objects to Cravath's continuing role as an advisor to Air Products with respect to the proposed business combination with Airgas.

After considering counsel's correspondence, briefs and affidavits, including affidavits submitted by four different experts on legal ethics, I make the following findings and reach the following conclusions.

First, I hold that Delaware law, in particular, the Delaware Lawyers Rules of Professional Conduct, and Delaware's common law rules regarding lawyer disqualifications applies to this dispute.

Airgas seeks to disqualify the law firm of Cravath, Swaine & Moore from representing a litigant in a matter now pending before the Court of Chancery. Judge Robreno of the United States District Court in Philadelphia similarly concluded that Delaware law should apply to the issue of Cravath's disqualification in Delaware.

Rule 8.5, the choice of law rule under the Rules of Professional Conduct, directs that the rules of the tribunal govern an effort to disqualify counsel appearing before that tribunal, [*5] even as to conduct of a lawyer whose predominant effect is in a different jurisdiction.

Where the relief sought, as here, is disqualification before a particular tribunal, Rule 8.5 authorizes that tribunal to apply its local law to the disqualification question.

Airgas' position that Pennsylvania's rules govern the dispute, in my opinion, fails to recognize the import of Rule 8.5 as well as Delaware's direct interest in applying its law to a situation where both litigants, Airgas and Air Products, are incorporated in Delaware and both are represented principally by law firms based in New York.

If disqualification issues in this court involving Delaware companies, who are often represented principally by counsel from other jurisdictions, were instead to be decided by this Court based on professional conduct rules from other jurisdictions where the firms happened to be headquartered, or where their lawyers happen to be based, then fun-

damental concerns involving a lawyer's right to practice law before the tribunal adjudicating the underlying dispute could be decided in accordance with rules from any number of jurisdictions.

That outcome would potentially result in inconsistent or conflicting [*6] rulings in similar circumstances based on differences in rules of conduct from foreign jurisdictions, and for no sound public policy reason that I can discern.

The State of Delaware has a supervening interest in having Delaware's Lawyers Rules of Professional Conduct apply to proceedings in the State's own courts.

In sum, where a case is filed in the Court of Chancery involving Delaware entities represented by out-of-state lawyers, and a request is made to disqualify a lawyer in that case, that would obviously have an immediate effect on the litigation. I hold that the Court of Chancery has an obligation and the right to apply its own local rules in order to ultimately determine whether a particular lawyer or particular law firm may represent a client appearing before the Court of Chancery.

Second, and turning now to the substantive question before me, I find and determine that no basis exists for me to disqualify Cravath, Swaine & Moore from representing Air Products in the litigation pending in this court.

Although the parties strenuously disagree regarding the propriety of Cravath's role in connection with its previous work for Airgas while it was simultaneously engaged as counsel for [*7] Air Products, and although the ethics experts diverge over whether Cravath has complied with the strict requirements of Rules 1.7 or 1.9 of the Professional Conduct rules, I need not formally decide that question in order to dispose of the motion and objections before me.

Before this Court may enter the Draconian order of disqualification, a moving party seeking that drastic relief must come forward with clear and convincing evidence establishing a violation of the Delaware Rules of Professional Conduct so extreme that it calls into question the fairness or the efficiency of the administration of justice. That is the holding of our Supreme Court in a case styled In Re: Dunlap.

Motions seeking disqualification, of course, are often viewed with suspicion as they are known to be filed for tactical reasons rather than genuine concerns about client loyalty. In addition, courts recognize that a litigant should be able to use the counsel of his or her choice.

For those reasons, the Delaware Supreme Court has instructed the trial courts to exercise the utmost care in addressing motions to disqualify, noting that the purpose of the Rules of Professional Conduct can be subverted when they are invoked [*8] by opposing parties as procedural weapons.

In fact, I have held in similar circumstances that even when a violation of the ethical rules has, in fact, occurred, it need not automatically result in disqualification. And, more recently, in the Dow Chemical case, I refused to disqualify counsel when there was no showing that counsel's participation as an advocate unfairly benefited its present client, in that instance Rohm & Haas, or unfairly prejudiced its former client, the Dow Chemical Company, even though the representation of the two clients may have overlapped.

Like Dow Chemical and the Rohm & Haas case, Airgas here has not demonstrated even simply persuasively, let alone clearly and convincingly, that it would be disadvantaged by the presence of its former counsel as advocate for its opponent, Air Products.

Nothing before me shows that Cravath had access to or learned internal and non-public confidential information, corporate strategies or defensive tactics during the course of its narrowly focused work for Airgas from 2001 until late October of 2009, or that such information, even if available to Cravath, would prejudice the fairness or the integrity of this proceeding.

The evidence [*9] presented to me indicates that Cravath's work for Airgas between 2001 and 2009 was limited in scope and nature, confined to advising Airgas regarding the completion of debt financings, and involved neither contact nor advice regarding corporate governance, litigation matters, charter or by-law issues, merger and acquisition advice, defensive tactics or corporate counseling.

Cravath did not counsel or meet with the most senior Airgas executives or the Airgas board of directors, and Airgas, in fact, had other long-standing counsel advising it on litigation, corporate governance and mergers and acquisitions issues.

What's more, even if Cravath had access from its earlier representation to information that might be relevant in this proceeding, it has represented to this Court that it has no intention of using such information, and as is customary, Cra-

2010 Del. Ch. LEXIS 35, *

vath has erected an ethical wall to seal off those members of the firm who worked on the Airgas debt financings from those members of the firm working on the Air Products proposed business combination with Airgas.

A similar ethical wall was erected in the Rohm & Haas matter as a means to further assure this Court that no prejudice or unfairness [*10] in the proceedings would result to Dow Chemical, the former client in that case. The same is true here.

Next, Airgas is represented by extremely capable and highly skilled counsel in this takeover battle. Disqualification of Cravath, which has been the long-time counsel to Air Products on a wide range of matters, including mergers and acquisitions, would be a serious blow, forcing Air Products to search out and retain new counsel in the heat of an already launched hostile acquisition contest.

Given the absence of any credible threat of prejudice to Airgas from Cravath's continued participation in this lawsuit, I think the threat of harm to Air Products from disqualification far outweighs the threat of harm to Airgas from a failure to disqualify.

I am even more confident in reaching this calculus because of the nature and timing of Airgas' objection to Cravath's participation.

For all of these reasons, I find and conclude that disqualification of Cravath is not necessary to protect the integrity or the fairness of the proceedings before me or to maintain public confidence in the judicial system.

I am not persuaded that Cravath possesses confidential Airgas information that is not already [*11] publicly disclosed, but, of course, if it does, it recognizes that it is under a continuing duty not to reveal it or to use it to the disadvantage of its former client, Airgas.

Accordingly, I grant Air Products' motion, declare that Cravath may continue to represent it in this litigation, and deny Airgas' objection to the Cravath lawyers who have been previously admitted pro hac vice in this matter.

Now, to the extent that an order is necessary to implement this decision and ruling, it is so ordered.

Counsel, I realize you will want to review the transcript of this ruling, but are there any applications at the moment?

MR. SHANNON: No, Your Honor.

THE COURT: Thank you then. Hearing none, I want to wish all of you pleasant weekend. Court is adjourned.

(The teleconference concluded at 1:50 p.m.)

CERTIFICATE

I, MAUREEN M. McCAFFERY, Official Court Reporter of the Chancery Court, State of Delaware, do hereby certify that the foregoing pages numbered 3 through 14 contain a true and correct transcription of the proceedings as stenographically reported by me at the hearing in the above cause before the Chancellor of the State of Delaware, on the date therein indicated.

IN WITNESS WHEREOF, I have hereunto [*12] set my hand at Dover, this 5th day of March, 2010.

/s/ Maureen M. McCaffery

Maureen M. McCaffery

Official Court Reporter of the Chancery Court State of Delaware