**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PACE-O-MATIC, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 20-CV-292** |
| | : | |
| **ECKERT, SEAMANS, CHERIN & MELLOTT, LLC,** | : | **JUDGE WILSON** |
| | : | |
| | : | **ELECTRONICALLY FILED** |
| **Defendant.** | : | |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT**
**OF MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION[1]

Defendant Eckert Seamans Cherin & Mellott, LLC's ("Eckert") opposition brief is remarkable for what it ignores: its attacks on its own client. Eckert does not deny—because it cannot deny—that it attacked Plaintiff Pace-O-Matic, Inc.'s ("POM") electronic games as "deceptively market[ed]" slot machines while simultaneously advocating correctly on behalf of POM that those same games are legitimate games of skill. Eckert never disclosed to POM that it planned to seek to declare POM's games a public nuisance and as a result there was no informed consent or valid conflict waiver. Nor is this conflict waivable. As demonstrated

[1] Pace-O-Matic, Inc. submits this brief pursuant to Local Rule 7.7 and will file a supplemental brief after the close of discovery in accordance with the Stipulation filed on May 5, 2020 (ECF No. 24).

below and in POM's opening brief, POM has established all requirements for preliminary injunctive relief[2] and Eckert should be enjoined from representing Parx Casino in matters adverse to POM.

### A. *Maritrans* Establishes POM's Right to Relief on the Merits.

Eckert concedes that *Maritrans* is the "seminal case" concerning the duty of loyalty, but urges the Court not to follow *Maritrans* because it claims to have implemented an ethical screen and denies sharing POM's confidential information with Eckert attorneys representing Parx Casino. (Opp'n Br. (ECF 21) at 8.) *Maritrans*, however, rejected both of these arguments.

*Maritrans* acknowledged that "a court may restrain conduct which it feels may develop into a breach of ethics; it is not bound to sit back and wait for a probability to ripen into a certainty." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992) (citation and internal quotation marks omitted). *Maritrans* went on to hold that it is "just and proper" to preliminarily enjoin a law firm from representing a client's competitors even absent a breach of confidentiality where, as in this case, the law firm acquired confidential information from the client concerning matters that were the subject of the law

[2] The correct standard for preliminary injunctive relief is set forth in *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). As *Reilly* noted, the *ECRI* and *Optician's Ass'n* cases on which Eckert relies are part of "an inconsistent line of cases" which "appear to be the product of compounded subtle misinterpretations of [Third Circuit] longstanding jurisprudence." *Id.* at 177.

firm's representation of its competitors. *Id.* at 1287. The Third Circuit similarly recognized that "[i]t is the possibility that confidences might be breached and not the fact of their disclosure" that requires disqualification when a conflict of interest is established. *See American Roller Co. v. Budinger*, 513 F.2d 982, 986 (3d Cir. 1975); *see also Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972) (lawyer is not "permitted to place himself in a position where, even unconsciously, he will be tempted . . . in the interests of his new client, to take advantage of information derived from confidences placed in him by [a former client]"). There is thus no doubt that Eckert's breach of the duty of loyalty while in possession of POM's confidential information justifies preliminary injunctive relief.

Even if Eckert had timely implemented an ethical screen—and it did not[3]—an ethical screen is no defense to the breach of fiduciary duty in this case. Ethical screens are effective only when a lawyer changes firms or leaves government employment. Pa. R. Prof. Conduct 1.10(b)(1), 1.11(b)(1). An ethical screen cannot remedy a conflict of interest. *See, e.g.*, *Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1094-95 (Pa. Super. 2014) (Donohue, J.,

---

[3] For example, the co-chair of Eckert's gaming practice, Mark S. Stewart, invited a member of Eckert's POM team to Harrisburg to solicit work from Parx Casino. (*See* Lisk Decl. (attached to POM's Supp. Br. (ECF No. 13) as Ex. C) ¶ 9.)

concurring) (observing that "the existence of an ethical screen does not overcome a conflict of interest"). Moreover, as the Supreme Court recognized in enjoining the conflicting representation rather than just the disclosure of client confidences in *Maritrans*, anything less than a preliminary injunction barring the conflicting representation "would create too great a danger" that the confidential attorney-client relationship would be breached and any confidentiality order would be "difficult if not impossible" to police. *Maritrans*, 602 A.2d at 1287.

Eckert also tries to avoid the consequence of straightforward application of *Maritrans* by denying that its work for Parx Casino is related to its work for POM. (Opp'n Br. at 9.) The record proves otherwise. Eckert is on both sides of the *very same issu*e. While advocating on behalf of POM that POM's electronic games are "skill game[s]" rather than "gambling device[s],"[4] Eckert advocated on behalf of Parx Casino that those very same POM products are misbranded as "skill games" and instead constitute "gambling activities."[5] Eckert's representations of POM and

---

[4] On behalf of POM, prior to terminating the attorney-client relationship, Eckert sought a declaratory judgment that POM's product "is a skill game the outcome of which is determined predominantly by the player's skill with pattern recognition and memory retention." *See* Compl. ¶ 68 in *Queen of Virginia Skill & Entm't, LLC, POM of Va., LLC and Miele Mfg., Inc. v. Platania* (attached to Cline Decl. (Ex. B to POM's Supp. Br.) as Ex. C).

[5] On behalf of Parx Casino, and while also representing POM, Eckert sought and continues to seek a declaration that POM's games constitute "illegal gambling activities" and therefore a "public nuisance." *See* Compl. ¶ 66 & WHEREFORE

Parx Casino are directly adverse within the meaning of Rule 1.7(a)(1) which governs concurrent conflicts, *see generally Mylan, Inc. v. Kirkland & Ellis LLP*, No. 15-581, 2015 WL 12733414, at *13 (W.D. Pa. June 9, 2015) ("Rule 1.7 looks to the lawyer's . . . *advocacy against* his client" and prohibits "concurrent undertaking to work in opposition to the clients' wishes and interests toward an objective to which the client is opposed") (magistrate report & recommendation) (emphasis in original),[6] and substantially related within the meaning of Rule 1.9(a) which governs conflicts involving former clients, s*ee Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*, 909 F. Supp. 287, 291 (E.D. Pa. 1995) ("Two matters are 'substantially related' under PRC Rule 1.9(a) when an attorney might have acquired confidential information as counsel in one matter which is also relevant to the other matter.").

Contrary to Eckert's argument, its attack on POM is not a permissible "positional" conflict and Eckert is not insulated from liability because "the legal framework of gaming" is different in Virginia and Pennsylvania. (Opp'n Br. at 5 n.2, 9, 12 n.3.) The reality is that Eckert is seeking on behalf of Parx Casino a judicial declaration that POM's games are a public nuisance. The actions that

---

clause on pp. 10-11 in *Greenwood Gaming & Entm't, Inc. v. Smoker's Express* (attached to Cline Decl. (Ex. B to POM's Supp. Br.) as Ex. E.)

[6] Pursuant to Local Rule 7.8(a), the *Mylan, Inc.* decision is reproduced in the attached appendix.

Eckert filed on behalf of Parx Casino in Bucks County and Montgomery County are aimed at eliminating competition from POM. This is an actual, not a positional or business, conflict. Eckert cites part of Comment [24] to Rule 1.7 in its brief, (*id.* at 12 n.3), but ignores the next sentence in the same comment which warns: "A conflict of interest exists . . . if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case, for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client." Pa. R. Prof. Conduct 1.7, Comment [24]. That is exactly the problem here: Eckert's advocacy on behalf of Parx Casino threatens POM's business in Pennsylvania and elsewhere. This is a clear conflict of interest and breach of the duty of undivided loyalty which Eckert owes to POM.

Unable to credibly deny the conflict, Eckert maintains that its attacks on POM are permissible because it obtained an advance waiver. (Opp'n Br. at 3-4, 9.) There is no valid waiver because there was no informed consent. *See* Pa. R. Prof. Conduct 1.0(e), 1.7(b)(4). Eckert never disclosed to POM that it would seek on behalf of Parx Casino to ban the same electronic games that POM retained Eckert to defend. (*See* Lisk Decl. ¶¶ 5-6.)[7] The internal Eckert emails appended to

---

[7] Eckert twice invokes Rule 3.3(a) of the Rules of Professional Conduct in relation to Mr. Lisk's declaration, (Opp'n Br. at 2 n.1, 12 n.4), but offers no

Eckert's opposition brief do not contemplate or confirm a consultation with POM about Parx Casino's plan to attack POM's games as a public nuisance. Absent actual consultation about the conflict and potential risks, there is no effective waiver. *See Int'l Longshoremen's Ass'n*, 909 F. Supp. at 293 (informed consent "calls for more than mere 'awareness' of a possible conflict of interest"; "[a]ctual consultation is required"). Having searched high and low, Eckert fails to offer a single email sent to or received from POM that corroborates Eckert's revisionist claim that Eckert informed POM that Eckert expected to directly attack POM's games of skill in Pennsylvania.

Eckert's opposition brief in no way undermines POM's compelling showing that Eckert breached its fiduciary duty by attacking POM's products. POM has amply established that it "can win on the merits." *Reilly*, 858 F.3d at 179.

### B. Eckert's Representation of Parx Casino in Matters Adverse to POM Constitutes Irreparable Harm.

Eckert ignores the teaching of *Maritrans* in denying that its conflicting representation of Parx Casino constitutes irreparable harm. (Opp'n Br. at 10-11.) *Maritrans* made clear that a lawyer's breach of the duty of undivided loyalty threatens irreparable harm which is properly abated by a preliminary injunction. 602 A.2d at 1284. The Supreme Court explained that injunctive relief is "just and

---

evidence contradicting Mr. Lisk's attestations. This Court, not Eckert, will evaluate candor. POM and its counsel welcome that objective evaluation.

proper" because a client's "competitive position could be irreparably injured if [its lawyer] continued to represent [its] competitors" and any "remedy at law . . . would be difficult if not impossible to sustain. . ." given the privilege between the lawyer and the competitors. *Id.* at 1287. Eckert's breach of the duty of undivided loyalty plainly satisfies the irreparable harm factor.

Contrary to Eckert's argument, the availability of disgorgement as a remedy for a breach of fiduciary duty does not undermine POM's right to a preliminary injunction. (Opp'n Br. at 11.) The relevant question is not whether money damages are available but rather whether they are adequate to compensate for a lawyer's breach of the duty of undivided loyalty. *See Loretangeli v. Critelli*, 853 F.2d 186, 196 n.17 (3d Cir. 1988) ("irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate"). The answer is clearly no. *See Maritrans*, 602 A.2d at 1284, 1287.

Eckert is also wrong in suggesting that POM should be denied relief because it did not immediately move for a preliminary injunction after confronting Eckert with its conflict. (Opp'n Br. at 11.) As the record demonstrates, POM addressed the conflict with Eckert when Eckert sought a judicial declaration that POM's games constitute a public nuisance. (*See* Cline Decl. ¶ 25 & Ex. H.) POM thereafter conferred several times with Eckert in an effort to remedy the conflict and commenced this action and sought injunctive relief when it became apparent

that Eckert would not withdraw from its adverse representation of Parx Casino. (*Id.*) The law in the Third Circuit is clear that such attempts to resolve a dispute do not negate irreparable harm. *See Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 169 (3d Cir. 2000); *see also Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 726-27 (3d Cir. 2004).

### C. Granting Preliminary Injunctive Relief Poses No Risk of Irreparable Harm to Others.

Eckert does not and cannot show that Parx Casino or any interested party will suffer irreparable or any other harm if POM's request for preliminary injunctive relief is granted. Eckert asserts only that Parx Casino will be deprived of its chosen counsel, (Opp'n Br. at 13-14), but this is not entirely accurate. Parx Casino is also represented by the Kane, Pugh firm in the state court actions challenging the legality of POM's games and will suffer no interruption in representation if Eckert is enjoined from advocating against POM. Eckert also mistakes the relevant status quo in arguing that its representation of Parx Casino should not be disturbed. (*Id.* at 14.) Conflict-free representation is "the status quo as it existed prior to the wrongful conduct" and the status quo that is properly restored by injunctive relief. *Maritrans*, 602 A.2d at 1288.

Neither of the cases cited by Eckert suggest otherwise. *Slater* actually supports POM to the extent it recognizes that a party's right to his chosen counsel must give way when a conflict of interest is established. *Slater v. Rimar, Inc.*, 338

A.2d 584, 590-91 (Pa. 1975). *Air Products* is inapposite due to its materially different facts. The law firm's prior representation of the movant in *Air Products* involved providing advice on debt financings and was wholly unrelated to the law firm's later representation of a competitor in connection with attempts to acquire the movant. *Air Products and Chemicals, Inc. v. Airgas, Inc.*, No. 5249-CC, 2010 Del. Ch. LEXIS 35 (Del. Ch. Mar. 5, 2010). In stark contrast to *Air Products*, Eckert's representation of POM involved the *very same products* that Eckert concurrently attacked on behalf of Parx Casino and the *same issue*, *i.e.* whether the games constitute gambling devices. And, contrary to Eckert's characterization of the representation as "limited," (Opp'n Br. at 1, 2, 3), Eckert was deeply involved in POM's business relating to the development, marketing and sale of its skill games. (*See*, *e.g.*, Cline Decl. ¶¶ 11-18; Lisk Decl. ¶ 8.) These different facts compel a different outcome than *Air Products*.

Eckert makes much of the fact that POM sought declaratory judgments against state officials in Pennsylvania Commonwealth Court concerning the legality of its skill games. (Opp'n Br. at 13-14.) This is true and it changes nothing. Eckert's attacks on POM while representing POM constitute an impermissible conflict and require disqualification regardless of POM's claims for declaratory relief against other parties. Nonetheless, it is highly probative of Eckert's breach of loyalty that the co-chair of Eckert's gaming practice appears to

have assisted *amicus* counsel in opposing POM in Commonwealth Court, presumably on behalf of Parx Casino. (*See* Cline Decl. ¶ 24.)

The harm to POM resulting from Eckert, first secretly and then overtly, playing both sides far outweighs any unarticulated inconvenience to Parx Casino or Eckert and the third factor thus favors granting preliminary injunctive relief.

### D. The Public Interest Favors Preliminary Injunctive Relief.

As demonstrated in POM's opening brief, the public interest will be served by enforcing POM's right to conflict-free counsel. *See* cases cited in Supp. Br. at 15. Unable to distinguish the authority cited by POM, Eckert makes a naked assertion that POM moved for a preliminary injunction "for tactical reasons." (Opp'n Br. at 14-15.) This accusation is baseless. Granting injunctive relief will confer no tactical advantage in the pending state court matters because Parx Casino is already represented by other counsel in those matters. The public interest favors granting preliminary injunctive relief.

### E. POM Is Entitled to a Preliminary Injunction Barring Eckert From Representing Parx Casino in Matters Adverse to POM.

As demonstrated above and in POM's opening brief, all four preliminary injunction factors are satisfied and those factors weigh overwhelmingly in favor of granting relief. Having acquired confidential information from POM relating to POM's games, Eckert must be enjoined from attacking those same games on behalf of Parx Casino.

## CONCLUSION

For the reasons above and in POM's opening brief, Eckert should be preliminarily enjoined from representing Parx Casino in any matter adverse to POM.

Respectfully submitted,

s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Dated: May 8, 2020

**CERTIFICATE OF SERVICE**

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing Reply Brief was served upon the following counsel of record via the Court's ECF filing system on this 8th day of May 2020:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291

/s/ Daniel T. Brier
Daniel T. Brier