## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                      :
                                         :
       **Plaintiff,**          :       **NO. 20-CV-292**
                                         :
  **v.**                               :       **JUDGE WILSON**
                                         :
ECKERT, SEAMANS, CHERIN & :       **MAGISTRATE JUDGE SAPORITO**
MELLOTT, LLC,                            :
                                         :       **ELECTRONICALLY FILED**
      **Defendant.**          :

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY PURSUANT TO FED R. CIV. P. 37(a)(1)

## INTRODUCTION

Plaintiff Pace-O-Matic, Inc. ("POM") seeks in this action to enforce the duty

of undivided loyalty owed by its counsel, Defendant Eckert, Seamans, Cherin &

Mellott, LLC, and, specifically, to preliminarily enjoin Eckert from representing

another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino

(hereinafter "Parx Casino"), in matters adverse to POM.  Eckert and Parx Casino

have refused to produce four categories of information that have direct bearing on

POM's pending motion for preliminary injunction:  (1) communications relating to

Eckert's involvement in litigation adverse to POM; (2) communications relating to

Eckert's assertion that it obtained informed consent for its conflicting

representations of POM and Parx Casino; (3) communications between Eckert and

Parx Casino concerning the claims asserted in this case and Eckert's decision to

withdraw from representing POM; and (4) the total legal fees paid to Eckert by Parx Casino. This information is relevant to Eckert's conflict and POM's entitlement to injunctive relief and is not protected from discovery by any privilege and therefore should be produced.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pending before the Court is POM's motion for a preliminary injunction to bar Eckert from continuing to represent Parx Casino in matters adverse to POM and from using or disclosing confidential information acquired during its representation of POM. The dispute stems from Eckert's overt and covert attacks on POM's skill games while simultaneously representing POM in relation to those same games.

In November 2019, while Eckert was representing POM, Mark Stewart, the Co-Chair of Eckert's gaming practice group, issued a press release urging law enforcement authorities to prosecute POM and establishments that offer POM games. Mr. Stewart wrote: "POM and any person who makes, sells, leases, maintains or offers for play one of their games should be immediately subject to criminal enforcement by local and state law enforcement authorities."[1] Eckert also commenced actions against more than 20 establishments that offer POM games

---

[1] A copy of the press release is attached as Exhibit "A."

2

and seeks to have those games declared a public nuisance.  In a brief filed in one of those actions on December 3, 2019, Eckert identified POM—its own client—as the manufacturer of the skill games that it is seeking to have declared a public nuisance:  "Each illegal slot machine is manufactured by POM of Pennsylvania, LLC d/b/a Pace-O-Matic d/b/a Miele Manufacturing ('POM')."  *See* Br. at 5.[2] Eckert asserted in the same brief:  "Manufacturers of 'skill games,' and the establishments that offer them, deceptively market these games as 'legal,' when, in fact, they are not."  *Id.* at 4.  On January 10, 2020, Eckert, again acting as counsel for Parx Casino, sent letters to hundreds of municipalities advocating that skill games including those manufactured by POM are "illegal slot machines" and should be outlawed through a local ordinance which Eckert gratuitously drafted and enclosed with the letter.[3]  On January 15, 2020, Eckert appeared and collaborated with Parx Casino's *amicus* counsel at a hearing in Commonwealth Court opposing POM's motion for an order preventing the unlawful seizure of its skill games.

These and other attacks by Eckert on POM while representing POM demonstrate an egregious conflict of interest and indisputable breach of fiduciary

---

[2]  A copy of the brief filed on December 3, 2019 (without exhibits) is attached as Exhibit "B."

[3]  A copy of the January 10, 2020 letter is attached as Exhibit "C."

duty.  From December 2016 through January 2020, POM enagaged Eckert to provide legal advice concerning the *same skill games* that Eckert attacked and continues to attack on behalf of Parx Casino.  Eckert, when confronted, refused POM's request to withdraw from representing Parx Casino in matters adverse to POM and instead withdrew from representing POM in favor of its apparently more lucrative relationship with Parx Casino.

POM commenced this action on February 18, 2020 asserting a claim for breach of fiduciary duty and seeking declaratory and injunctive relief.  In its Answer and Affirmative Defenses filed on March 10, 2020, Eckert asserted that there is no conflict of interest because it "does not represent a party adverse to POM in litigation" and because POM allegedly agreed to a "prospective waiver." *See* Dec.'s Answer and Affirmative Defenses (ECF No. 9) ¶ 18; *id.* at Seventeenth Defense.  As will be demonstrated, Eckert's defenses fail on both the law and the facts.

Information recently obtained through a Right-To-Know request proves that Eckert was materially involved in litigation adverse to POM.  Specifically, Eckert assisted POM's adversary in civil proceedings commenced by POM in Commonwealth Court seeking declaratory relief relating to POM's games.[4]  While

---

[4]  There are two separate actions pending in Commonwealth Court.  The first is captioned *POM of Pennsylvania, LLC v. Department of Revenue and City of Philadelphia* and is docketed at No. 418 M.D. 2018.  The second is captioned

Parx Casino is nominally represented in that litigation by Hawke McKeon & Sniscak LLP, Eckert lawyers covertly assisted, influenced and coordinated with counsel for POM's adversary contrary to Eckert's assertion in its Answer in this case.[5]  Mr. Stewart and other Eckert lawyers provided legal research to POM's adversary, suggested legal strategies, shared drafts of legal filings and offered to coordinate on court submissions.  In fact, on January 23, 2020, just *six days* after Eckert's Chief Legal Officer claimed in a letter to the undersigned that "Eckert is not counsel for a party in a litigation where POM is an adverse party," Eckert lawyers sent a draft brief on behalf of Parx Casino to the Office of Attorney General, which is counsel to POM's adversary in the Commonwealth Court litigation, and advised that they were working on a motion to intervene in that action.  With regard to the draft brief, Mr. Stewart wrote:  "*We'd* appreciate the chance to coordinate *our* filing timing-wise with yours."  *See* January 23, 2020 email from Mark Stewart to Karen Romano.  (Emphasis added.)

---

*POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement* and is docketed at No. 503 M.D. 2018.  The actions have been consolidated.  Parx Casino sought leave to intervene in the consolidated matters on February 14, 2020.  For convenience, the actions are referred to collectively herein as "the Commonwealth Court litigation."

[5]  Representative communications obtained through the Right-To-Know request are attached as Exhibit "D."  Redactions were made by the Right-To-Know Office.

In relation to the pending motion for preliminary injunction, POM served a subpoena *duces tecum* on the Hawke McKeon firm seeking communications relating to Eckert's involvement in the Commonwealth Court litigation. Specifically, the subpoena compelled the production of: (1) communications with Eckert and materials received from Eckert in relation to either of the actions pending in the Commonwealth Court; and (2) communications regarding any actual or potential conflict of interest between POM and Parx Casino.[6] POM sought the same communications from Eckert pursuant to written discovery requests. *See* Request for Prod. No. 2 & Interrog. No. 5.[7] Both Eckert and Hawke McKeon objected to the requests on privilege grounds.

POM also sought information from Eckert and Parx Casino concerning Eckert's assertion that the parties agreed to a blanket advance waiver prior to the start of the representation in 2016. Specifically, POM requested that Eckert identify a corporate designate to testify pursuant to Rule 30(b)(6) about communications between Eckert and Parx Casino or any other client concerning any conflict waiver. *See* Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(6) ¶¶ 1,

---

[6] A copy of the subpoena *duces tecum* served on the Hawke McKeon firm is attached as Exhibit "E."

[7] Copies of Request for Production No. 2 and Interrogatory No. 5 served on Eckert together with Eckert's objection to each request are attached as Exhibits "F" and "G," respectively.

2.[8]  POM also requested that Eckert identify a representative to testify about communications between Eckert and Parx Casino concerning Eckert's decision to withdraw from representing POM.  *Id.* ¶ 15.  POM sought similar information pursuant to a subpoena *duces tecum* served on Parx Casino.[9]  Specifically, the subpoena *duces tecum* served on Parx Casino compelled the production of:  (1) communications with Eckert concerning an actual or potential conflict with POM; (2) communications with Eckert relating to any request that Parx Casino consent to Eckert's concurrent representation of POM; (3) communications with Eckert concerning its decision to withdraw from representing POM; and (4) documents relating to this action.  Both Eckert and Parx Casino objected to the requests on privilege grounds.

In addition, POM sought to depose an Eckert representative concerning the total legal fees paid by Parx Casino to Eckert.  *See* Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(6) ¶ 14.  Eckert objected to this request on privilege grounds.

## ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. .

---

[8]  The Notice of Deposition Pursuant to Rule 30(b)(6) is attached as Exhibit "H."

[9]  A copy of the subpoena *duces tecum* served on Parx Casino is attached as Exhibit "I."

. .” Fed. R. Civ. P. 26(b)(1).  It is well recognized that the federal rules allow broad and liberal discovery.  *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) (citations omitted).  When one party refuses to comply with another party's legitimate discovery requests, the aggrieved party "may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  As demonstrated below, the information sought from Eckert, Parx Casino and Hawke McKeon is relevant and not protected by any privilege and therefore production should be compelled under Rule 37(a)(1).

**A.    Communications relating to Eckert's involvement in the Commonwealth Court litigation are not protected by any privilege.**

Eckert has repeatedly proffered as a defense that "[n]o actual conflict of interest existed because . . . Eckert does not represent a party adverse to POM in litigation."  *See* Answer & Affirmative Defenses ¶ 18; *id.* at Seventeenth Defense ("Eckert is not counsel in any litigation where POM is an adverse party."); *see also* Def.'s Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. ¶ 2 ("There is no actual conflict of interest because Eckert is not representing parties in litigation adverse to POM.")  POM is entitled to test Eckert's assertion by compelling the production of communications and documents exchanged between Eckert and Hawke McKeon and others relating to the Commonwealth Court litigation.

8

The communications at issue are not protected from disclosure by any privilege. The attorney-client privilege does not apply to communications between counsel not involving the client. *See Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 & n.16 (Pa. 2011). Even if the requested communications constituted work product—and they do not[10] —Eckert waived any work product protection over its communications with the Hawke McKeon firm by asserting as a defense that it had no involvement in the Commonwealth Court litigation. The work product privilege belongs to the attorney. *See In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir. 1979). Eckert put its communications with Hawke McKeon concerning the Commonwealth Court litigation directly at issue by asserting as a defense that it is not counsel in any litigation where POM is an adverse party. A defense that is, at best, bereft of merit based on Eckert's covert and material involvement in the Commonwealth Court litigation. *See* Ex. D. In any event, by denying involvement, Eckert opened the door and waived any right to assert a work product objection to discovery requests for those communications. *See*, *e.g.*, *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) (finding waiver of

---

[10] Even under Eckert's characterization, the work product doctrine does not apply. If, as Eckert contends, it had no involvement in the Commonwealth Court litigation, it cannot in good faith also claim protection over purported mental impressions, conclusions and opinions relating to that litigation.

attorney client privilege where party "made a conscious decision to inject the advice of counsel as an issue in the litigation").

In sum, no privilege applies to Eckert's communications with separate counsel for Parx Casino concerning litigation in which Parx Casino was not a party.  Moreover, Eckert affirmatively waived any work product protection over those communications by asserting as a defense that it had no involvement in the Commonwealth Court litigation.  Communications between Eckert and Hawke McKeon concerning the Commonwealth Court litigation should be produced.

**B.      Communications between Eckert and Parx Casino concerning any alleged conflict waiver are not protected by any privilege.**

As with its communications with Hawke McKeon concerning the Commonwealth Court litigation, Eckert placed its communications with Parx Casino directly at issue by claiming that it obtained a conflict waiver authorizing its concurrent representation of POM and Parx Casino.  Eckert asserts as a defense that its concurrent representation of POM and Parx Casino is permitted because it obtained an advance waiver.  *See* Answer & Affirmative Defenses, Twelfth-Fourteenth Defenses.  Because a conflict waiver requires informed consent from both parties, Eckert's communications with Parx Casino concerning any purported conflict waiver are not privileged and are required to be produced.

Rule 1.7 of the Rule of Professional Conduct provides that a lawyer shall not represent a client if the representation is directly adverse to another client unless

10

"each affected client gives informed consent."  Pa. R. Prof. Conduct 1.7(a)(1),

(b)(4).  Informed consent is defined for purposes of the rules as "consent by a

person to a proposed course of conduct after the lawyer has communicated

adequate information and explanation about the material risks of and reasonably

available alternatives to the proposed course of conduct."  Pa. R. Prof. Conduct

1.0(e).  Therefore, for a valid waiver, Eckert must have communicated the relevant

circumstances to and received express consent from both POM and Parx Casino.

By claiming a prospective waiver, Eckert has placed at issue its communications

with Parx Casino concerning any alleged conflicts and cannot prevent discovery of

those communications by asserting privilege.  *See Glenmede Tr. Co.*, 56 F.3d at

486.

More fundamentally, communications between Eckert and Parx Casino

concerning actual or potential conflicts are not protected from disclosure by the

attorney-client privilege because they do not relate to legal advice.  A

communication is privileged only if its purpose is to gain or provide legal advice.

*Gillard*, 15 A.3d at 59.  Communications between Eckert and Parx Casino

concerning Eckert's conflicts do not constitute or relate to legal advice and

therefore are not privileged.  Indeed, it is well settled that communications with

counsel concerning conditions of an engagement do not come within the scope of

the privilege.  *See*, *e.g.*, *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969) ("In the

11

absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship.") (citations omitted).

Because the terms of Eckert's representation of Parx Casino are not privileged, and because Eckert has waived any protection by claiming that it obtained a prospective waiver of any conflict, Eckert and Parx Casino should be compelled to produce any communications concerning any purported conflict waiver.

### C. Communications between Eckert and Parx Casino concerning this action and Eckert's decision to withdraw from representing POM are not protected by any privilege.

Eckert's communications with Parx Casino concerning this action and Eckert's decision to withdraw from representing POM are also discoverable because they do not implicate or involve the provision of legal advice to Parx Casino. "The privilege 'protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-24 (1991) (emphasis in original) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). Communications between Eckert and Parx Casino concerning this action and Eckert's decision to withdraw from representing POM do not relate

to any legal advice to Parx Casino and therefore are not privileged. Those communications are required to be produced.

### D. The total fees billed to Parx Casino is not privileged.

The law in Pennsylvania is that a lawyer cannot drop one client in order to avoid a conflict with a more remunerative client. *See International Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Ass'n*, 909 F. Supp. 287, 293 (E.D. Pa. 1995) ("[A]n attorney may not drop one client like a 'hot potato' in order to avoid a conflict with another, more remunerative client."). POM maintains that Eckert did just that. On January 29, 2020, Eckert gave notice that it would not accede to POM's demand to withdraw from representing Parx Casino in matters adverse to POM and that, instead, Eckert would withdraw from representing POM. Accordingly, POM seeks to depose an Eckert representative concerning the total fees paid by Parx Casino during the period when Eckert was also representing POM.

Eckert objected to the request on privilege grounds, but no privilege applies to amounts billed by an attorney to his client. *See In re Semel*, 411 F.2d at 197-98; *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. 2004) (attorney's invoices billed to client do not implicate attorney-client privilege); *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005) (testimony regarding fee charged is not subject to attorney-client privilege). Accordingly, Eckert should be compelled to

13

designate a witness to testify pursuant to Rule 30(b)(6) concerning the total fees paid by Parx Casino during the period that Eckert representing POM.

## CONCLUSION

For the reasons set forth above, Eckert, Parx Casino and Hawke McKeon should be compelled to produce the information requested.

Respectfully submitted,

s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Dated:  July 20, 2020

14

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Support of Motion To Compel Discovery was served

upon the following counsel of record via the Court's ECF filing system on this

20th day of July 2020:

> Abraham C. Reich, Esquire
> Robert S. Tintner, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103-3291

/s/ Daniel T. Brier
Daniel T. Brier