# Exhibit B

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Andrew J. Kramer, Esquire (PA I.D. 52613)
KANE, PUGH, KNOELL, TROY & KRAMER, LLP
510 Swede Street
Norristown, PA 19401-4807
610.275.2000 (Phone)
610.275.2018 (Fax)
akramer@kanepugh.com

Mark Stewart, Esquire (PA I.D. 75958)
Kevin M. Skjoldal, Esquire (PA I.D. 200841)
Casey A. Coyle, Esquire (PA I.D. 307712)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
213 Market Street, 8th Floor
Harrisburg, PA 17101
717.237.6000 (Phone)
717.237.6019 (Fax)
mstewart@eckertseamans.com
kskjoldal@eckertseamans.com
ccoyle@eckertseamans.com

*Counsel for Plaintiff Greenwood Gaming and
Entertainment, Inc. (d/b/a Parx Casino)*

## IN THE COURT OF COMMON PLEAS
## BUCKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| GREENWOOD GAMING AND ENTERTAINMENT, INC., | : CIVIL ACTION |
| | : |
| Plaintiff, | : No. 2019-06832 |
| | : |
| v. | : |
| | : Hon. Robert O. Baldi |
| SMOKER'S EXPRESS, | : |
| | : |
| Defendant. | : JURY TRIAL DEMANDED |

## PLAINTIFF GREENWOOD GAMING AND ENTERTAINMENT, INC.'S BRIEF IN OPPOSITION TO DEFENDANT SMOKER'S EXPRESS' PRELIMINARY OBJECTIONS TO COMPLAINT

### I.    INTRODUCTION

Currently pending before this Court are Defendant Smoker's Express' ("Defendant") Preliminary Objections to the Complaint. Defendant argues that, as a threshold matter, Plaintiff Greenwood Gaming and Entertainment, Inc. d/b/a Parx Casino ("Parx Casino" or "Parx") lacks standing to bring this suit, which seeks to hold Defendant liable for its continued operation of illegal slot machines. That argument is spurious at best. As a slot machine licensee who has paid tens of millions of dollars in fees for the right to lawfully participate in *regulated, licensed* gambling, Parx has a direct, substantial, and immediate interest in eliminating *unregulated,*

L0841592.4

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*unlicensed* gambling, especially in its backyard. To conclude otherwise would defy common sense.

In the alternative, Defendant contends that Count I fails to state a viable claim for public nuisance. This position is also meritless, because the Complaint alleges that Defendant is conducting unlicensed gambling operations in violation of two Pennsylvania statutes – specifically, Section 1301 of the Gaming Act and Section 5513 of the Crimes Code – and such conduct amounts to a public nuisance as a matter of law. Defendant's assertion is also inconsistent with what its attorneys argued in *POM of Pennsylvania, LLC v. 3C Amusements, LLC*, No. 2019-3138 (Cambria Cnty. Ct. Com. Pl.) ("*3C Amusements*"), and *POM of Pennsylvania, LLC v. Gary Lagana*, No. 2019-CV-08798 (Luzerne Cnty. Ct. Com. Pl.) ("*Lagana*").

Defendants also maintain that Count III fails to state a plausible cause of action for negligence *per se*. Parx Casino, however, is not asserting a standalone claim for negligence *per se*. Rather, and as the body of Count III makes clear, Parx is raising a claim for negligence against Defendant under a negligence *per se* theory of liability. Parx merely captioned Count III as "Negligence *Per Se*" to reinforce this point. Moreover, the Complaint contains sufficient allegations to satisfy the four-part test announced in *Wagner v. Anzon, Inc.*, 684 A.2d 570 (Pa. Super. Ct. 1996). Accordingly, this Court should overrule Defendants' Preliminary Objections, in all respects.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Development of legal, regulated gaming in Pennsylvania

When it was enacted in 2004, the Pennsylvania Race Horse Development and Gaming Act, 4 Pa. C.S. §§ 1101-1904 (the "Gaming Act"), established three categories of slot machine

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

licensees – Category 1, 2 and 3 licensees – which have the exclusive right to place and operate slot machines in the Commonwealth. 4 Pa. C.S. § 1301.[1] After the completion of a costly and extensive application process, Parx Casino was awarded a Category 1 slot machine license by the Pennsylvania Gaming Control Board ("PGCB"). (Compl. ¶15). Parx Casino paid a $50 million license fee for its Category 1 slot machine license. (*Id.* ¶16).

In 2017, the General Assembly passed Act 42 of 2017, expanding gaming in the Commonwealth. Act of Oct. 30, 2017, P.L. 419, No. 42. As part of Act 42, the Commonwealth authorized interactive gaming in Pennsylvania, with slot machine licensees having the exclusive right, in the first instance, to offer interactive games. Slot machine licensees are entitled to apply for an interactive gaming certificate that will enable them to conduct gaming over the Internet, including offering online slot machines, table games and poker. 4 Pa. C.S. §§ 13B11, 13B12.

On August 15, 2018, Parx Casino was awarded an interactive gaming certificate. (Compl. ¶20). Parx Casino paid a $10 million fee for its interactive gaming certificate. (*Id.* ¶20). On July 15, 2019, Parx Casino began offering interactive gaming. (*Id.* ¶21). Through its interactive gaming platform, Parx Casino currently accepts wagers from eligible gamblers anywhere within the Commonwealth of Pennsylvania. (*Id.* ¶22). In addition to the above fees, Parx Casino has invested approximately $500 million in the development and expansion of its casino, including additions to offer dining options, a poker room, and a live entertainment venue. (*Id.* ¶23).

Parx Casino and Pennsylvania's other licensed casinos have been an unqualified boon to the Commonwealth and its citizens. (*Id.* ¶24). Pennsylvania receives more gaming tax revenue than any other jurisdiction in the United States, taking approximately 54 cents of every dollar

---

[1] In 2017, the Legislature authorized an additional category of slot machine licensee, Category 4. 4 Pa. C.S. § 1305.1.

3

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

wagered in the slot machines of each licensed casino. (Compl. ¶25). In Fiscal Year 2017-2018, Pennsylvania's licensed casinos, including Parx Casino, generated over $1.16 billion in slot machine tax revenue for the Commonwealth. (*Id.* ¶26).

In Fiscal Year 2017-2018, slot operations by Pennsylvania's licensed casinos, including Parx Casino, contributed to more than $123 million in local share funding and fees that were distributed to host counties and municipalities. (*Id.* ¶27). Pennsylvania's licensed casinos, including Parx Casino, spend approximately $230 million annually with local business entities in their host and contiguous counties. (*Id.* ¶28). Pennsylvania's licensed casinos, including Parx Casino, employ more than 20,000 employees, the vast majority of which reside in Pennsylvania. (*Id.* ¶29). The success of Pennsylvania's licensed casinos, including Parx Casino, in slot machine gaming was achieved while operating under a highly regulated environment, ensuring the highest integrity in gaming operations, while simultaneously promoting responsible gaming. (*Id.* ¶30).

### 2. Development of unlicensed, unregulated, and untaxed slot machines across the Commonwealth

With the success of licensed slot machine gaming in Pennsylvania, unlicensed slot machines have started to proliferate across the state at locations such as bars, restaurants, convenience stores, gas stations, and other establishments. (Compl. ¶31). Manufacturers of these slot machines have sought to conceal their true nature by branding them as "games of skill" or "skill games." (*Id.* ¶32). Despite the manufacturers' clever marketing campaign, these machines are nothing more than unlicensed slot machines. (*Id.* ¶33). It is estimated that nearly 12,000 of these unlicensed and illegal slot machines exist at establishments across Pennsylvania. (*Id.* ¶34). Manufacturers of "skill games," and the establishments that offer them, deceptively market these games as "legal," when, in fact, they are not. (*Id.* ¶35).

4

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Section 5513 of the Pennsylvania Crimes Code makes it illegal to intentionally or knowingly sell, lease, or maintain a "slot machine" or other gambling device, except as permitted under the State Lottery Law, Bingo Law, Local Option Small Games of Chance Act, or Gaming Act. 18 Pa. C.S. § 5513(a), (e.1). While the term "slot machine" is not defined in the Crimes Code, the Legislature made clear in Act 42 of 2017 that a "slot machine" includes so-called "skill games." 4 Pa. C.S. § 1103. That definition applies to the Crimes Code under on basic rules of statutory construction. *See, e.g.,* 1 Pa. C.S. § 1932; *see also id.* § 1921(c)(5). This is significant because the Commonwealth Court recently found that "skill games" meet the definition of a "slot machine" under Act 42. *POM of Pennsylvania, LLC v. Department of Revenue,* ___ A.3d ___, 2019 WL 6138270, at *5 (Pa. Commw. Ct. Nov. 20, 2019) ("*POM*").

### 3. Defendant's unlawful conduct

Despite the clear and unmistakable terms of the Gaming Act, slot machines continue to be offered illegally at bars, restaurants, convenience stores, gas stations, and other venues across Pennsylvania. (Compl. ¶41). Defendant is one of those establishments. (*Id.* ¶42). Defendant currently leases and/or maintains at least five slot machines on its premises. (*Id.* ¶¶43, 57).[2] Each illegal slot machine is located in close proximity to a Pennsylvania Lottery terminal. (Compl., Ex. A).

Each illegal slot machine is also located in close proximity to signage for the Pennsylvania Lottery. (*Id.*). Each illegal slot machine is branded as a "Pennsylvania Skill Game." (Compl. ¶46). Each illegal slot machine is manufactured by POM of Pennsylvania, LLC d/b/a Pace-O-Matic d/b/a Miele Manufacturing ("POM"). (*Id.* ¶47). Each illegal slot machine is operated through the insertion of coins or cash. (*Id.* ¶48). Each illegal slot machine

---

[2] A photo of the illegal slot machines is attached as "Exhibit A" to the Complaint.

5

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential Information and documents.

offers cash prizes. (*Id.* ¶51). Each illegal slot machine utilizes spinning reels, video displays, or both, upon information and belief. (*Id.* ¶52).

Defendant is located in close proximity to Parx Casino, which is the only licensed casino within Bucks County. (Compl. ¶53).

### B.    Procedural History

On September 27, 2019, Parx Casino filed a Complaint against Defendant. On October 9, 2019, Parx served Defendant with the Complaint. On October 29, 2019, Defendant filed Preliminary Objections. On November 18, 2019, Parx filed its Response to the Preliminary Objections. On November 19, 2019, Defendant filed its Brief in Support of its Preliminary Objections.

## III.    COUNTERSTATEMENT OF QUESTION PRESENTED

A.    **Whether Parx Casino has standing to bring this suit, where Parx is a slot machine licensee who paid tens of millions of dollars in fees for the right to lawfully participate in regulated, licensed gambling, and thus, has a direct, substantial, and immediate interest in eliminating unregulated, unlicensed gambling?**

B.    **Whether Count I states a viable claim for public nuisance, where the Complaint alleges that Defendant is conducting unlicensed gambling operations in violation of two Pennsylvania statutes and such conduct amounts to a public nuisance as a matter of law?**

C.    **Whether Count III asserts a plausible claim for negligence based on a negligence *per se* theory of liability, where the Complaint contains sufficient allegations to satisfy the four-part test announced in *Wagner v. Anzon, Inc.*, 684 A.2d 570 (Pa. Super. Ct. 1996)?**

**Suggested answer to all three questions: Yes, overrule Defendant's Preliminary Objections.**

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IV.   ARGUMENT

### A.   This Court Should Overrule The Preliminary Objections, In Their Entirety

Under the Pennsylvania Rules of Civil Procedure, preliminary objections may be filed by any party to any pleading and are limited to certain grounds, including lack of capacity to sue. Pa. R. Civ. P. 1028(a)(5).[3]   Preliminary objections also may be filed on the basis that the pleading fails to state a legally cognizable claim (commonly referred to as a "demurrer"). PA. R. CIV. P. 1028(a)(6).  Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *See, e.g., Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. Ct. 2011). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *See, e.g., Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005).

When reviewing preliminary objections in the nature of lack of standing or a demurrer, a trial court must accept all well-pleaded, material, and relevant facts alleged in the complaint, as well as all inferences reasonably deductible therefrom, as true. *See, e.g., Rellick-Smith v. Rellick*, 147 A.3d 897, 901 (Pa. Super. Ct. 2016); *Haun v. Cmty. Health Sys., Inc.*, 14 A.3d 120, 123 (Pa. Super. Ct. 2011). Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. *See, e.g., Hykes v. Hughes*, 835 A.2d 382, 383 (Pa. Super. Ct. 2003). Where a doubt exists as to whether a demurrer should be sustained,

---

[3] It is unclear if Pennsylvania law distinguishes between capacity to sue and standing. *Compare Witt v. Dept. of Banking*, 425 A.2d 374, 377 n. 7 (Pa. 1981) (quoting 67A C.J.S. Parties § 10 distinction between "capacity to sue" and "standing"), *with In re Estate of Alexander*, 758 A.2d 182, 189 (Pa. Super. Ct. 2000) (using the terms "capacity to sue" and "standing" interchangeably). Regardless, trial courts permit parties to file challenges to standing in preliminary objections. *See, e.g., Kee v. Pa. Tpk. Comm'n*, 685 A.2d 1054, 1056 (Pa. Commw. Ct. 1996); *see also Gen. Crushed Stone Co. v. Caernarvon Twp.*, 605 A.2d 472, 473 n 4 (Pa. Commw. Ct. 1992).

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

this doubt should be resolved in favor of overruling it. *See, e.g., MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050, 1056 (Pa. 1996).

Based on the foregoing standard, this Court should overrule Defendant's Preliminary Objections, in all respects.

> **1.** **Parx Casino has standing to bring this action, because, as a slot machine licensee who paid tens of millions of dollars in fees for the right to lawfully participate in regulated, licensed gambling, Parx has a direct, substantial, and immediate interest in eliminating unregulated, unlicensed gambling**

A party can establish that it has been aggrieved if it shows that it has a substantial, direct, and immediate interest in the outcome of the litigation. *See, e.g., Commonwealth v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014). An interest is substantial if it is an interest in the resolution of the challenge which surpasses the common interest of all citizens in procuring obedience to the law. *See, e.g., Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005). An interest is direct if the matter complained of caused harm to the party's interest – *i.e.*, a causal connection between the harm and the violation of law. *See, e.g., In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003). An interest is immediate if the causal connection is not remote or speculative. *See, e.g., Johnson v. Am. Standard*, 8 A.3d 318, 329 (Pa. 2010). "The keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion." *Pittsburgh Palisades*, 888 A.2d at 660.

Within the immediacy requirement is a "zone of interests" concept. *Upper Bucks Cnty. Vocational-Tech. Sch. Educ. Ass'n v. Upper Bucks Cnty. Vocational-Tech. Sch. Joint Comm.*, 474 A.2d 1120, 1122 (Pa. 1984). The concept is that the "protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.'" *Id.* (citation and quotation marks omitted); *see also William Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269, 284 & n.23 (Pa. 1975) (plurality) ("Generalization about the

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

degree of causal connection required to confer standing is more difficult than generalization about the other requirements discussed above. However, it is clear that the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote. It is also clear that standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.'").

The Supreme Court has clarified as to whether a court must examine the relevant zone of interests to determine if a party has met the immediacy prong of aggrievability, writing:

> [I]n Pennsylvania, a party must be aggrieved in order to possess standing to pursue litigation. Aggrievability is obtained by having a substantial, direct, and immediate interest in proceedings or litigation. When the standards for substantiality, directness, and immediacy are readily met, the inquiry into aggrievability, and therefore standing, ends. Should, however, a party's immediate interest not be apparent, a zone of interests analysis may (and should) be employed to assist a court in determining whether a party has been sufficiently aggrieved, and therefore has standing. . . .
>
> We stress, however, that such consideration is merely a guideline that may be used to find immediacy, and not as an absolute test[.]

*Johnson*, 8 A.3d at 333.

When applying the three-part test for standing, accepting the well-pleaded allegations of the Complaint as true, and drawing all reasonable inferences in Parx Casino's favor, there can be no doubt that Parx has standing to bring this action, because it has a substantial, direct, and immediate interest in stopping the harm it is suffering from Defendant's continued operation of its illegal slot machines. This Court's intervention is appropriate and necessary to stop Defendant's harmful actions.

9

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a.       *Parx Casino has a substantial interest in the outcome of this case*

Parx Casino was required, by law, to obtain a license to legally conduct gambling activities in Pennsylvania. 4 Pa. C.S. §§ 1301, 13A11, 13B11, 13B12. Parx paid a $50 million license fee for its Category 1 slot machine license and a $10 million fee for its interactive gaming certificate. (Compl. ¶¶16, 20). Each license or certificate is a legally enforceable property interest. *See, e.g.*, *MEC Pa. Racing v. Pa. State Horse Racing Comm'n*, 827 A.2d 580, 588 (Pa. Commw. Ct. 2003) (reciting the oft-stated proposition that a party "has a direct interest if the adjudication causes harm to an interest of his" (citation and quotation marks omitted)); *cf. Man O'War Racing Ass'n v. Pa. State Horse Racing Comm'n*, 250 A.2d 172, 176 (Pa. 1969) (holding that a horse racing license is a valuable privilege for which an applicant expends large sums of money, and therefore, an unsuccessful applicant has standing to challenge the granting of licenses to others). Therefore, as a licensee and certificate holder, Parx Casino has a substantial interest in quelling the spread of unregulated, unlicensed gambling in Pennsylvania. *See, e.g.*, *Pittsburgh Palisades*, 888 A.2d at 660.

The Commonwealth Court effectively reached this same conclusion in *Churchill Downs, Inc. v. Commonwealth*, No. 476 M.D. 2016 (Pa. Commw. Ct.) (Covey, J.). There, Parx Casino sought to intervene in an action brought by an out-of-state entity seeking to declare Act 7 of 2016 – which, for the first time, permitted persons other than licensed racing entities to engage in electronic wagering with Commonwealth residents – unconstitutional. The Commonwealth Court permitted Parx Casino to intervene, in part, due to "Pennsylvania courts' '[recognition of] the interest of a business to be protected from competition allegedly prohibited by a regulatory scheme,' and [testimony from a Parx witness] reflecting the harm that [Parx] would sustain in the

10

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

absence of Act 7's protections from competition." Memorandum and Order at 5 in *Churchill Downs, Inc. v. Commonwealth*, No. 476 M.D. 2016 (Pa. Commw. Ct. Nov. 4, 2016).[4]

While Defendant may attempt to distinguish *Churchill Downs* on the basis that it involved the standard to intervene as opposed to the question of standing, such efforts would be misguided because the standard to intervene is essentially the same test for standing. *In re Application of Biester*, 409 A.2d 848, 850 n.2 (Pa. 1979) (holding that, if a petitioner lacks standing to file a petition for review, the party also has no legally enforceable interest to intervene). This Court should therefore follow the Commonwealth Court's well-reasoned opinion in *Churchill Downs* and hold that Parx Casino has a substantial interest in this action.

Defendant's contrary arguments are groundless as they are largely unsupported by any caselaw. Instead, they consist almost entirely of commentary. (Br. at 6-8). To the extent that Defendant cites any cases, they are distinct from the present circumstances. For instance, in *Pittsburgh Palisades*, the Court held that the petitioners lacked standing to challenge the constitutionality of Section 1209 of the Gaming Act because, *unlike in this case*, "they have not been issued a gaming license." 888 A.2d at 660-61. The other cases relied upon by Defendant are similarly distinguishable. *See, e.g., In re Milton Hershey School*, 911 A.2d 1258, 1262-63 (Pa. 2006) (holding that a school alumni lacked standing to bring suit against the school, where the school was established by a charitable trust and the alumni sought the rescission of an agreement entered into by the school and the Attorney General).

        b.     *Parx Casino has a direct interest in the outcome of this case*

Defendant's illegal gambling activities compete directly with the licensed gaming offered by Parx Casino, which paid hundreds of millions of dollars for the right to lawfully conduct such

---

[4] A true and correct copy of the Memorandum and Order is attached hereto as "**Exhibit 1.**"

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

operations. (Compl. ¶66). Defendant's illegal gambling activities take market share and customers away from the slot machines offered by Parx Casino. (*Id.* ¶67). Defendant repeatedly argues that this Court should ignore these well-pleaded factual allegations, (*see, e.g.,* Preliminary Objections ¶24; Br. at 7), but this flies in the face of the applicable standard of review. *See, e.g., Haun,* 14 A.3d at 123 (reciting the oft-stated proposition that, "[w]hen considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom.").

Because Defendant's illegal gambling activities reduce Parx Casino's revenues and market share (Compl. ¶67), Parx Casino's interest in this action is direct. *Cf. MEC Pa. Racing,* 827 A.2d at 589 (holding that existing racetracks had standing to appeal from the Pennsylvania State Horse Racing Commission's approval of a new license application to conduct horse racing meetings with pari-mutuel wagering, since granting the license would have a detrimental impact on the existing racetracks and would dilute attendance and revenue).

Indeed, the licensed casinos made this exact argument as a basis to intervene in *Telesweeps of Butler Valley, Inc. v. Kelley,* No. 3:12-CV-1374 (M.D. Pa.) – a case which, similar to here, involved whether the sweepstakes game at issue constituted a "simulated gambling program" for purposes of Act 81 of 2012, as codified Section 5513 of the Crimes Code, 18 Pa. C.S. § 5513(a.1).[5] The federal district court permitted the casinos to intervene, reasoning:

---

[5] Section 5513 of the Crimes Code outlaws unlicensed slot machines and other illegal gambling devices, providing, *inter alia,* that a person is guilty of a misdemeanor of the first degree if he owns or operates a place used as an unlicensed gambling facility or makes a simulated gambling program available to patrons. 18 Pa. C.S. § 5513(a), (a.1). Specifically, subsections (a) and (a.1) of Section 5513 state:

> (a) Offense defined.--A person is guilty of a misdemeanor of the first degree if he:
> (1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;
> (2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Act 81 criminalizes gambling operations that evade the licensing and taxing schemes to which the Casinos are subject. Casinos claim that Internet sweepstakes cafes, such as Plaintiff, have been circumventing the gambling laws, resulting in reduced market share and revenues for Casinos. Though Casinos and Defendants appear to have overlapping interests (*i.e.*, establishing the constitutionality of Act 81) the Court concludes that Casinos would provide a helpful viewpoint in addition to Defendants' position.

7/30/12 Order in *Telesweeps of Butler Valley, Inc. v. Kelley*, No. 3:12-CV-1374 (M.D. Pa.) (Dkt. No. 18). Given the striking similarities between the standard to intervene and the test for standing, as explained above, the rationale employed by the federal district court in *Telesweeps* should apply with full force here.

        c.     *Parx Casino has an immediate interest in the outcome of this case*

Parx Casino's interest in this action is not remote or speculative. As a slot machine licensee who has paid substantial fees for the right to lawfully participate in *regulated, licensed gambling*, Parx has a direct and immediate interest in eliminating *unregulated, unlicensed*

---

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or
(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

(a.1) Electronic video monitor.--A person commits a misdemeanor of the first degree if he owns, operates, maintains, places into operation or has a financial interest in an electronic video monitor or business that owns, operates, maintains or places into operation or has a financial interest in an electronic video monitor:
(1) which is offered or made available to persons to play or participate in a simulated gambling program for direct or indirect consideration, including consideration associated with a related product, service or activity; and
(2) for which the person playing the simulated gambling program may become eligible for a cash or cash-equivalent prize, whether or not the eligibility for or value of the cash or cash-equivalent prize is determined by or has any relationship to the outcome of or play of the simulated gambling program.

18 Pa. C.S. 5513(a), (a.1).

13

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

gambling, especially in its backyard.[6] *See, e.g., Johnson*, 8 A.3d at 329. A contrary finding would defy common sense.

Even if it is found that Parx Casino's interest in fighting against the proliferation of illegal gambling is remote or speculative (even though it is not), Parx can still satisfy the immediacy requirement because, as a highly regulated entity subject to strict financial monitoring and controls, Parx falls within the zone of interests sought to be protected or regulated by the Gaming Act, generally, and Section 5513 of the Crimes Code, specifically. *Malt Beverages Distributors Ass'n v. PLCB*, 881 A.2d 37, 43 (Pa. Commw. Ct. 2005) (holding that a statewide trade association had standing to intervene in a licensure matter involving the Pennsylvania Liquor Control Board because, among other reasons, "[w]ith over 400 beer distributor members, [the association] certainly is integrally involved in the regulated distribution of beer and malt beverages generally").

In sum, Parx Casino has standing to bring this action. Defendant's arguments to the contrary are nothing more than a desperate attempt to avoid liability for its ongoing illegal activity.

2.    **Count I states a viable claim for public nuisance, because the Complaint alleges that Defendant is conducting unlicensed gambling operations in violation of two Pennsylvania statutes and such conduct amounts to a public nuisance as a matter of law**

A public nuisance is an "'unreasonable interference with a right common to the general public.'" *Machipongo Land & Coal Co. v. DEP*, 799 A.2d 751, 773 (Pa. 2002) (quoting RESTATEMENT (SECOND) OF TORTS § 821B (1979)). A public nuisance differs from a private

---

[6] It stands to reason that Parx Casino has an immediate interest in eliminating unregulated, unregulated gambling across the Commonwealth of Pennsylvania (not just in its backyard), because Parx was awarded an interactive gaming certificate, and through its interactive gaming platform, Parx currently accepts wagers from eligible gamblers anywhere within the Commonwealth. (Compl. ¶¶20-22).

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

nuisance, which "requires an invasion of another's interest in the private use and enjoyment of his or her land." 2 SUMM. PA. JUR. 2D TORTS § 21:4 (2d ed. 2019). By contrast, a public nuisance is an inconvenience or troublesome offense that annoys a whole community in general, and not merely some particular person. *See, e.g., Feeley v. Borough of Ridley Park*, 551 A.2d 373, 375 (Pa. Commw. Ct. 1988).

The circumstances that may sustain a holding that an interference with a public right is unreasonable – and thus, amount to a public nuisance – include various types of conduct. RESTATEMENT (SECOND) OF TORTS § 821B(2)(b). Historically, gambling constituted a public nuisance. *Tull v. United States*, 481 U.S. 412, 421 n.5 (1987). Under the Second Restatement, a public nuisance may be found where the "conduct is proscribed by statute, ordinance or administrative regulation." RESTATEMENT (SECOND) OF TORTS § 821B(2)(b). In light of the proliferation of legalized gambling, courts have found a public nuisance where, as here, a defendant conducted unlicensed gambling operations, in violation of one or more state statutes. *See, e.g., Texas v. del Sur Pueblo*, 220 F.Supp.2d 688, 690, 695-96 (W.D. Tex. 2001).

In order to recover damages in an individual action for a public nuisance, "one must have suffered harm of a kind different from that suffered by the other members of the public exercising the right common to the general public that was the subject of interference." RESTATEMENT (SECOND) OF TORTS § 821C(1) (1979); *see also Pa. & Oh. Canal Co. v. Graham*, 63 Pa. 290, 296 (1869) (observing that, "if a party has sustained any special damage from a public nuisance beyond that which affects the public at large, whether it be direct or consequential, an action will lie against the author of the nuisance, for redress."); *Edmunds v. Duff*, 124 A. 489, 492 (Pa. 1924) (same).

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Here, when accepting the well-pleaded allegations of the Complaint as true and drawing all reasonable inferences in Parx Casino's favor, it is evident that Count I of the Complaint states a viable claim for public nuisance. The Complaint alleges that Defendant has on its premises, and makes available for customer play, at least five slot machines – an allegation that Defendant does not deny. (Compl. ¶57). To the contrary, Defendant appears to concede this fact. (Preliminary Objections ¶22 (admitting to "[t]he operation of five 'Pennsylvania Skill Games' in a convenience store near Plaintiff")). Notably, the Commonwealth Court recently concluded that a "Pennsylvania Skill Game" machine like the ones offered by Defendant meets the definition of a "slot machine" under the Gaming Act. *POM*, 2019 WL 6138270, at *5.

The Complaint alleges that the ongoing and continuing operation of these unlicensed slot machines violate Section 1301 of the Gaming Act, as well as Section 5513 of the Crimes Code. (Compl. ¶¶58-61). Therefore, as alleged in the Complaint, Defendant is conducting unlicensed gambling operations in violation of two Pennsylvania statutes. Such conduct amounts to a public nuisance as a matter of law. RESTATEMENT (SECOND) OF TORTS § 821B(2)(b); *see, e.g., Texas*, 220 F.Supp.2d at 690, 695-96.

While Defendant argues that Parx Casino "has not sufficiently alleged that it suffered actual harm greater in magnitude and different in kind than that suffered by the general public," (Preliminary Objections ¶46), Defendant's position is contradicted by the plain terms of the Complaint:

> 66.    [Defendant's] illegal gambling activities compete directly with the licensed gaming offered by Parx Casino, which paid hundreds of millions of dollars for the right to lawfully conduct such operations.
>
> 67.    [Defendant's] illegal gambling activities take market share and customers away from the slot machines offered by Parx Casino.

16

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

68.    To the extent that such losses can be quantified, [Defendant's] illegal gambling activities deprive Parx Casino of profits and causes it pecuniary harm (and, in turn, a loss of tax revenue for the Commonwealth).

69.    The general public has not suffered this type of harm.

(Compl. ¶¶66-69). These allegations are more than sufficient to satisfy the harm element of a public nuisance claim. RESTATEMENT (SECOND) OF TORTS § 821C(1); *see also Graham*, 63 Pa. at 296.

Defendant's position is also directly at odds with what its attorneys argued in *3C Amusements* and in *Lagana*. In both of those cases, POM instituted an action against a defendant, alleging that it had on its premises, and available for customer play, numerous video game machines that are illegal gambling devices. In both of those cases, POM raised a claim of public nuisance, and in doing so, specifically alleged that "[i]llegal gambling is a nuisance *per se* under Pennsylvania law." Compl. ¶44 in *3C Amusements*; Compl. ¶45 in *Lagana*.[7]

In both of those cases, the defendant responded by filing preliminary objections, which included a demurrer as to the public nuisance claim. In both of those cases, POM opposed the preliminary objections, with same attorneys that are representing Defendant making the following argument:

> 3C's contention that POM cannot premise its independent public nuisance claim on conduct that violates a criminal statute – in this case 18 Pa. C.S. § 5513 – is wrong as a matter of Pennsylvania law. Pennsylvania Courts have long recognized that nuisance claims can be premised on conduct that also may be criminal and that courts have jurisdiction over such claims. For example, in *Boggs v. Werner*, 94 A.2d 50, 51 (Pa. 1953), the Pennsylvania Supreme Court held that the trial court had jurisdiction over a nuisance claim based on the practice of dentistry without a license, even though this conduct was prohibited by statute and was a misdemeanor crime. The Court rejected the argument that the trial court had no jurisdiction because a statute prohibited the conduct and provided for penalties, recognizing that the statute did "not deprive equity of its

---

[7] A true and correct copy of the Complaint that POM filed in *3C Amusements* is attached hereto as "**Exhibit 2**," while copy of the Complaint that POM filed in *Lagana* is attached hereto as "**Exhibit 3**."

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

jurisdiction to enjoin a nuisance merely because the Legislature has prescribed criminal penalties for the conduct sought to be enjoined." *Id.*

Similarly, in *Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 237 A.2d 342, 347-48 (Pa. 1968), the Pennsylvania Supreme Court found that courts had equity jurisdiction to enjoin a public nuisance that was based on conduct that also was criminal. The Court first noted that jurisdiction attached when a plaintiff has shown that the defendant's acts violated the plaintiffs personal, property or civil rights, even if the defendant's conduct also violated criminal law. *Id.* The Court then found:

> Further, if the criminal act sought to be enjoined constitutes a 'public nuisance' then it may properly be restrained on the motion of the proper public authorities. It is also true that a public nuisance may be enjoined at the behest of a private citizen or group of citizens, if the latter, either in their property or civil rights, are specifically injured by the public nuisance over and above the injury suffered by the public generally.

*Id.* at 348 (citations omitted); *see also Bulls v. Southwestern Energy Production Co.*, 2014 WL 3953155 at *7 (M.D. Pa. Aug. 12, 2014) ("Since a public nuisance is a quasi-criminal action, 'the normal remedy is in the hands of the state.' However, in limited circumstances, courts recognize a private right of action for a public nuisance.") (citations omitted).

In short, POM has pled a valid claim for public nuisance based in part on 3C's conduct that violates 18 Pa. C.S. § 5513. POM has not asserted a private cause of action for violation of 18 Pa. C.S. § 5513.

Pltf.'s Br. in Opp'n to Def.'s Preliminary Objections at 5-7 in *3C Amusements*; *accord* Pltf.'s Br. in Opp'n to Def.'s Preliminary Objections at 7-8 in *Lagana*.[8]

In the event that Defendant argues that this Court should overlook their attorneys' prior, inconsistent arguments in light of the Commonwealth Court's recent decision in *POM* – which ruled that POM's games are slot machines, but that the Gaming Act "only applies to licensed slot machines in licensed entities/facilities and does not apply to unlicensed and illegal devices," 2019 WL 6138270, at *11 – Defendant is misguided. For one, that ruling is fundamentally

---

[8] A true and correct copy of POM's Brief in Opposition in *3C Amusements* is attached hereto as "**Exhibit 4**," while a true and correct copy of POM's Brief in Opposition in *Lagana* is attached hereto as "**Exhibit 5**."

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

flawed because the Commonwealth Court did not reconcile its holding with the provisions of the Gaming Act that apply to unlicensed persons. For instance, Sections 1518(a)(9), (9.1), and (10) are criminal offenses that apply to any "person" or "individual," and are not limited to only licensed entities. 4 Pa. C.S. §§ 1518(a)(9),(9.1), (10).[9] And Section 1518(f) provides for the seizure of the unlawful machines and money from these unlicensed persons. 4 Pa. C.S. § 1518(f).[10]

Moreover, even if this Court followed *POM* and held that the Gaming Act does not apply to unlicensed and illegal devices (despite express provisions to the contrary), Count I would still state a plausible claim for public nuisance because the Complaint alleges that Defendant's continuing and ongoing operation of unlicensed slot machines violates Section 5513 of the Crimes Code (Compl. ¶60), and *POM* did not reach that issue. 2019 WL 6138270, at *13 n.17 ("Of course, we do not answer the separate question of whether the POM Game qualifies as an illegal gambling device under section 5513 of the Crimes Code, which both parties appear to acknowledge presents a question of fact that requires factual discovery to resolve."). Equally important, Defendant did not raise a demurrer to Count I on the ground that a violation of

[9] 4 Pa. C.S. § 1518(a)(9) ("It shall be unlawful for a *person or licensed entity* to possess any device, equipment or material which the person or licensed entity knows has been manufactured, distributed, sold, tampered with or serviced in violation of the provisions of this part with the intent to use the device, equipment or material as though it had been manufactured, distributed, sold, tampered with or serviced pursuant to this part." (emphasis added); *id.* § 1518(a)(9.1) ("It shall be unlawful for a *person* to sell, offer for sale, represent or pass off as lawful any device, equipment or material which the person or licensed entity knows has been manufactured, distributed, sold, tampered with or serviced in violation of this part." (emphasis added); *id.* § 1518(a)(10) ("It shall be unlawful for an *individual* to work or be employed in a position the duties of which would require licensing or permitting under the provisions of this part without first obtaining the requisite license or permit issued under the provisions of this part." (emphasis added)).

[10] 4 Pa. C.S. § 1518(f) ("Any equipment, device or apparatus, money, material, gaming proceeds or substituted proceeds or real or personal property used, obtained or received or any attempt to use, obtain or receive the device, apparatus, money, material, proceeds or real or personal property in violation of this part shall be subject to the provisions of 42 Pa.C.S. §§ 5803 (relating to asset forfeiture), 5805 (relating to forfeiture procedure), 5806 (relating to motion for return of property), 5807 (relating to restrictions on use), 5807.1 (relating to prohibition on adoptive seizures) and 5808 (relating to exceptions).").

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Section 5513 of the Crimes Code cannot amount to a public nuisance. Any attempt to do so at this late juncture is waived.[11]

For all of the foregoing reasons, Count I states a viable claim for public nuisance.

3.    **Count III of the Complaint states a plausible claim for negligence based on a *per se* theory of liability under the four-part test announced in *Wagner v. Anzon, Inc.*, 684 A.2d 570 (Pa. Super. Ct. 1996)**

The concept of "negligence *per se*" establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. *See, e.g., Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. Ct. 2014). However, a plaintiff, having proven negligence *per se*, cannot recover unless it can be proven that such negligence was the proximate cause of the injury suffered. *See, e.g., Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1058 (Pa. Super. Ct. 2003).

The Pennsylvania Superior Court has defined "negligence *per se*" in the following fashion:

> ["Negligence *per se*" is] conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.
>
> In order to prove a claim based on negligence *per se*, the following four requirements must be met:
>
> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

---

[11] That said, since the term "slot machine" is not defined in the Crimes Code, the definition set forth in Act 42 applies based on basic rules of statutory construction. *See, e.g.,* 1 Pa. C.S. § 1932; *see also id.* § 1921(c)(5). This is significant because the Commonwealth Court has already determined that "skill games" are "slot machines" under the definition of that term in the Gaming Act. *POM*, 2019 WL 6138270, at *5. While the Commonwealth Court stopped short of deciding whether the particular "skill game" at issue in *POM* amounted to an illegal gambling device under Section 5513 of the Crimes Code because of purported factual disputes, no such disputes exist in this case.

20

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. Ct. 1996) (citations and quotations omitted).

Regarding the first requirement, the Pennsylvania Supreme Court has stated that the purpose of the asserted statute or regulation must be: "(a) to protect a class of persons which includes the plaintiff; (b) to protect the particular interest which is invaded; (c) to protect that interest against the kind of harm which has resulted and (d) to protect that interest against the particular hazard from which the harm results." *Congini by Congini v. Potersville Valve Co.*, 470 A.2d 515, 517-18 (Pa. 1983) (quoting RESTATEMENT (SECOND) OF TORTS § 286 (1965)).

Here, when accepting the well-pleaded allegations of the Complaint as true and drawing all reasonable inferences in Parx Casino's favor, it is apparent that Count III of the Complaint states a viable negligence claim under a negligence *per se* theory.[12] Under Section 1301 of the Gaming Act, slot machine licensees like Parx Casino have the exclusive right to place and operate slot machines in the Commonwealth. 4 Pa. C.S. § 1301. Again, Defendant is violating Section 1301 by placing and operating at least five slot machines on its premises. (Compl. ¶¶43, 57).

Applying the four-part test announced in *Wagner*, a violation of Section 1301 constitutes negligence *per se* because:

1) The purpose of Section 1301, at least in part, is to protect the substantial investment of Parx Casino and the other slot machine licensees, who have expended hundreds of millions of dollars for the right to conduct lawful slot operations in Pennsylvania.

---

[12] While Defendant is correct that negligence *per se* is not a separate cause of action, Parx Casino is not asserting a standalone claim for negligence *per se*. Rather, and as the body of Count III makes clear, Parx is raising a claim for negligence against Defendant under a negligence *per se* theory of liability. (Compl. ¶¶79-86). Parx merely captioned Count III as "Negligence *Per Se*" to reinforce this point.

21

This is in contrast to Section 5513 of the Crimes Code, which is intended to protect all Pennsylvanians from illegal gambling;

2) Section 1301 clearly applies to the conduct of Defendant, since it is operating at least three slot machines on its premises. To the extent that Defendant relies upon *POM* to claim otherwise, that argument fails because, as explained above, the Commonwealth Court did not reconcile its holding with the provisions of the Gaming Act that are directly applicable to unlicensed persons;

3) Defendant is violating Section 1301 because it is operating those machines without a license; and

4) Defendant's violation of Section 1301 is the proximate cause of Parx Casino's harm based upon the well-pleaded allegations in the Complaint.

*Cf. Wagner*, 684 A.2d at 574 (observing that a "court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public," which is distinguishable from the present circumstances where only licensees are able to conduct lawful slot operations).

While Defendant contends the opposite because the Gaming Act does not provide for a private cause of action, (Preliminary Objections ¶63), the absence of a private cause of action in a statutory scheme does not necessarily preclude that statute's use as the basis for negligence *per se*. To the contrary, numerous courts have found a violation of a statute to constitute negligence *per se* absent a private cause of action. *See, e.g., Schemberg*, 85 A.3d at 1074 (holding that a violation of 18 Pa. C.S. § 5104 can amount to negligence *per se* despite no private cause of action); *Madison v. Bethanna, Inc.*, No. 12-01330, 2012 WL 1867459, at *5 (M.D. Pa. May 23, 2012) (holding that a violation of 55 Pa. Code § 3350.5 can constitute negligence *per se* despite no private cause of action); *Goldsborough v. Columbia Borough*, 48 Pa. D. & C.3d 193 (Lancaster Cnty. Ct. Com. Pl. 1986) (holding that a violation of the Air Pollution Control Act of January 8, 1960, P.L. 2119, 35 Pa. C.S. § 4001 *et seq.*, can amount to negligence *per se* despite no private cause of action). This

22

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Court should do the same here.

## V.    CONCLUSION

In light of the foregoing, Plaintiff Greenwood Gaming and Entertainment, Inc.

respectfully requests that this Court overrule Defendant RAJ Rajeshwari Inc.'s Preliminary

Objections to the Complaint.

Respectfully submitted,

/s/ Andrew J. Kramer

Andrew J. Kramer, Esquire (PA I.D. 52613)
KANE, PUGH, KNOELL, TROY & KRAMER, LLP
510 Swede Street
Norristown, PA 19401-4807
610.275.2000 (Phone)
610.275.2018 (Fax)
akramer@kanepugh.com

Mark S. Stewart, Esquire (PA I.D. 75958)
Kevin M. Skjoldal, Esquire (PA I.D. 200841)
Casey A. Coyle, Esquire (PA I.D. 307712)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
213 Market Street, 8th Floor
Harrisburg, PA 17101
717.237.6000 (Phone)
717.237.6019 (Fax)
mstewart@eckertseamans.com
kskjoldal@eckertseamans.com
ccoyle@eckertseamans.com

Date: December 2, 2019      *Counsel for Plaintiff Greenwood Gaming and Entertainment, Inc. (d/b/a Parx Casino)*

## CERTIFICATE OF SERVICE

I certify that, on December 2, 2019, I caused a copy of the foregoing PLAINTIFF

GREENWOOD GAMING AND ENTERTAINMENT, INC.'S BRIEF IN OPPOSITION TO

DEFENDANT RAJ RAJESHWARI INC.'S PRELIMINARY OBJECTIONS TO COMPLAINT

to be served via email and First Class U.S. Mail, which service satisfies the Pennsylvania Rules

of Civil Procedure, addressed to:

Mattew H. Haverstick, Esquire
Eric J. Schreiner, Esquire
Shohin H. Vane, Esquire
Kleinbard LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
*Counsel for Defendant*

*/s/Andrew J. Kramer*
Andrew J. Kramer, Esquire

Date:  December 2, 2019

Case# 2019-06832-12 - JUDGE:35 Received at County of Bucks Prothonotary on 12/03/2019 9:42 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

L0841592.4