IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff | : | No. 1:20-cv-00292 |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | (Magistrate Judge Joseph F. Saporito, Jr.) |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | : | |
| | : | |
| | : | Electronically Filed Document |
| Defendant. | : | |

### BRIEF OF HAWKE MCKEON & SNISCAK, LLP IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND/OR MOTION TO QUASH SUBPOENA

Hawke McKeon & Sniscak, LLP (HMS) submits this brief in support of its Motion for a Protective Order and/or Motion to Quash the subpoena to produce documents served upon HMS (HMS subpoena) by Plaintiff in the above-captioned matter, Pace-O-Matic, Inc (POM).

I. **Introduction and Summary**

Pursuant to Fed. R. Civ. P. 26(c) and/or Fed. R. Civ. P. 45(d)(3)(A)(iii), HMS hereby moves this Court for a protective order and/or order quashing the HMS subpoena served by POM upon HMS.

1

HMS seeks relief before this Court because HMS had the apparent temerity to agree to step in as conflict counsel and to file an amicus brief in a matter initiated by POM in Pennsylvania Commonwealth Court. HMS has compounded further its annoyance of POM by acting as counsel to a group of entities which operate legal gaming devices in Pennsylvania and seeking to intervene in POM's Commonwealth Court cases. HMS has no involvement whatsoever in the dispute between POM and Defendant Eckert in the above-captioned matter (POM/Eckert litigation). That salient fact notwithstanding, HMS now finds itself before this Court defending against a subpoena that seeks the same information POM sought from Eckert in the instant matter and, which *on its face* seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Given the dispute in progress between Eckert and POM in which POM seeks the same or similar privileged information, there is no reason for POM to burden needlessly HMS with the duty to respond to meritless subpoenas for information that is so obviously privileged and irrelevant to any of the claims in the POM/Eckert litigation. As is obvious from its face, POM's HMS subpoena seeks documents wholly unrelated to that litigation to which POM lacks even a pretense of gaining access. As such, it is reasonable to conclude that, aside from punishing HMS for becoming involved in POM's Commonwealth Court case, the HMS subpoena was issued with the apparent intent to unfairly advantage POM in those cases. This Court

should end POM's fishing expedition and issue a protective order and/or quash the HMS subpoena.

## II. Procedural History

POM served the HMS subpoena on or about June 4, 2020 with a return date of June 15, 2020 (**Attachment 1** hereto). HMS is not a party to the POM/Eckert litigation. The POM/Eckert litigation involves POM's claim that Defendant Eckert breached a fiduciary duty to POM by representing Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx), in matters related to devices that POM calls "skill games."

HMS timely objected to the HMS subpoena by letter dated June 13, 2020 and emailed to POM counsel Donna Walsh (**Attachment 2** hereto). Therein, HMS advised attorney Walsh that the documents sought via the HMS subpoena all involve and constitute work product prepared on behalf of Parx that is protected from disclosure under the attorney work-product doctrine and/or are protected by attorney-client privilege. The undersigned as HMS counsel subsequently discussed the subpoena and HMS' objections thereto with POM counsel Daniel T. Brier but was unable to resolve POM's demand for the documents or HMS' objections thereto.

POM, Eckert, Parx and HMS filed letters with Judge Wilson explaining their positions (HMS' letter is **Attachment 3** hereto). Subsequently, POM, Eckert, Parx and HMS participated in a conference call with Magistrate Judge Saporito, Jr., to

discuss POM's discovery directed to Eckert, Parx and HMS. Following the call, Judge Saporito on June 25, 2020 issued an order directing that all discovery motions together with supporting briefs shall be filed on or before July 20, 2020, and that any motions asserting privilege shall be supported by appropriate privilege logs.[1] Briefs in response are due on or before August 7, 2020.

### III. Statement of Facts

POM initiated litigation in the Commonwealth Court of Pennsylvania against the Pennsylvania Department of Revenue and the City of Philadelphia (Docket No. 418 MD 2018) and against the Pennsylvania State Police, Bureau of Liquor Control Enforcement (Docket No. 502 MD 2018) seeking declarations concerning the legal status of its so called "skill games" and preliminary injunctive relief, which litigation is active and ongoing (Commonwealth Court cases).

HMS represents Parx in the Commonwealth Court cases. That representation commenced upon referral from Eckert due to Eckert's alleged conflict with POM which is the subject of the POM/Eckert litigation. HMS filed an amicus brief on Parx' behalf opposing POM's request for preliminary injunction in Docket No. 502 MD 2018, and presently has pending requests on behalf of a group of operators of legal gaming devices to intervene in both Commonwealth Court cases.

---

[1] HMS' privilege log is **Attachment 4** hereto.

POM's HMS subpoena commands HMS to produce: (1) any document that reflects communications between HMS and Eckert relating to the Commonwealth Court cases; (2) any document HMS received from Eckert for use or reference relating to the Commonwealth Court cases; (3) any communications between HMS attorney Kevin J. McKeon or any other HMS employee and any person at Eckert relating to either the Commonwealth Court cases or the POM/Eckert litigation; and (4) any communications or documents relating to any potential or actual conflict between Eckert and POM.

POM propounded discovery requests to Eckert seeking the same or similar information from Eckert, to which Eckert has already objected, which objections remain unresolved. HMS informed Parx of the HMS subpoena (Parx also has received a subpoena seeking similar information to which Parx is objecting through separate counsel).

Parx directed HMS to take any necessary steps to object to the HMS subpoena in order to protect the confidentiality and privacy of communications between Parx and its lawyers, and the confidentiality of legal advice that Parx's lawyers and law firms provided to Parx to which the attorney-client privilege or any other privilege attaches. All the document requests in the HMS subpoena are immune from production under one or more of these protections.

### IV. Statement of Questions Involved

1. Should this Court issue a protective order and/or quash the HMS subpoena where the documents sought all involve and constitute work product prepared on behalf of Parx that is protected from disclosure under the attorney work-product doctrine and/or are protected by the attorney-client privilege?

2. Should this Court issue a protective order and/or quash the HMS subpoena where POM propounded discovery requests to Eckert seeking the same or similar information from Eckert, to which Eckert has already objected, which objections remain unresolved, and where there is no reason for POM to burden needlessly HMS with the duty to respond to meritless subpoenas for information that is so obviously privileged and irrelevant to any of the claims in the POM/Eckert litigation?

### V. Argument

**A. This Court should enter a protective order forbidding POM disclosure or discovery of the HMS documents protected by the attorney-client privilege and/or the work-product doctrine.**

Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(c)(1) provides that any person from whom discovery is sought may seek a

protective order.[2] This Court may, for good cause, issue an order to protect HMS from being forced to produce documents that are protected by the attorney-client privilege and/or the attorney work-product doctrine and to protect HMS from the annoyance and undue burden of producing documents that are so obviously privileged and irrelevant to any of the claims in the POM/Eckert litigation. Fed. R. Civ. P. 26(c)(1)(A).

A party claiming a communication is privileged must set forth facts showing the privilege was properly invoked. In this regard, the moving party claiming attorney-client privilege must prove four elements: 1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made is a member of the bar of a court, or their subordinate; 3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and, 4) the privilege has been claimed and is not waived. *Bousamra v. Excela Health*, 210 A.3d 967 (Pa. 2019). Upon that showing, the burden shifts to the party seeking disclosure, which must explain why the communication at issue should not be privileged. *Id*.

---

[2] The required certification that HMS has in good faith conferred with POM to resolve this dispute without court action is included in HMS' motion.

Here, the documents sought by POM through the HMS subpoena are privileged. HMS has a duty of confidentiality to Parx under Rule 1.6 of the Pennsylvania Rules of Professional Conduct to protect such communications, which duty extends to lawyer-client communications about conflicts of interest as required by Rules 1.7 through 1.10. The communications involve legal advice that Parx' lawyers and law firms provided to Parx to which the attorney-client privilege attaches. See **Attachment 4** HMS privilege log. HMS has preserved and has not waived any privilege claims.

Moreover, the communications involve and constitute work product prepared on Parx' behalf that is protected from disclosure under the attorney work-product doctrine. The Supreme Court long ago recognized the concept of work-product protection in *Hickman v. Taylor*, 329 U.S. 495 (1947). Fed. R. Civ. P. 26(b)(3) defines work-product as: 1) documents or other tangible things; 2) that were prepared by or for a party or the party's representative; 3) in anticipation of litigation.

Discovery of work-product materials is limited to where the requesting entity, here POM, can show substantial need for those materials and undue hardship if access is denied. Fed. R. Civ. P. 26(b)(3)(A). However, where, as here, the materials contain the attorney's mental impressions, the ordinary showing of need and hardship are insufficient, and disclosure will be required only under rare and extreme

circumstances. Fed. R. Civ. P. 26(b)(3)(b); *Upjohn Co. v. U.S*. 449 U.S. 383, 400-401(1981).

The attached privilege log establishes that the identified documents meet each of the elements for establishing protection under the work-product doctrine. Emails are "documents and tangible things." *In re EchoStar Communications Corp*., 448 F.3d 1294, 1301 (Fed. Cir. 2006). By the very mechanism of HMS becoming involved in the Commonwealth Court cases, as conflict counsel asked to file an amicus brief and now as counsel for a group potential intervenors who operate legal gaming devices, the "in anticipation of litigation" element is met.

So too is the "by or for the party or party's representative" element. The documents identified in the privilege log were prepared either by HMS as counsel to Parx and/or the potential intervenors[3], by Parx and/or the potential intervenors either alone or in combination with HMS, or by Eckert and/or HMS preparatory to Eckert handing off the Parx representation to HMS.

The HMS subpoena also is overly broad and unduly burdensome because it seeks documents wholly unrelated to the POM/Eckert litigation to which POM lacks

---

[3] Communications which form part of an "ongoing and joint effort to set up a common [litigation] strategy" are protected from disclosure. *Eisenberg v. Gagnon*, 766 F. 2d 770, 787 (3d. Cir.), *cert denied*, 474 U.S. 946 (1985): *Andritz Sprout-Bauer v. Beazer-East, Inc*., 174 F.R.D. 609 (M.D. Pa. 1997).

even a pretense of gaining access, with the apparent intent to unfairly advantage POM in the Commonwealth Court cases.

Given the dispute in progress between Eckert and POM in which POM seeks the same or similar privileged information, there is no reason for POM to burden needlessly HMS with the duty to respond to meritless subpoenas for information that is so obviously privileged and irrelevant to any of the claims in the POM/Eckert litigation. For these reasons, this Court should enter a protective order barring POM from requiring production of the identified documents.

> **B. This Court should quash the HMS subpoena where Fed. R. Civ. P. 45(d)(3)(A)(iii) precludes the disclosure of "privileged or other protected matter to which no exception or waiver applies."**

Fed. R. Civ. P. 45(d)(3)(A)(iii) precludes the disclosure of "privileged or other protected matter to which no exception or waiver applies." As detailed above, all the documents requested in the HMS subpoena are privileged because the requests seek communications between and among Parx' lawyers at Eckert, Parx' lawyers at HMS, and Parx. Under Rule 45(d)(3)(A)(iii) this Court must quash the HMS subpoena as no exception or waiver applies. To the extent the documents related to the Commonwealth Court cases are not relevant to any of POM's claims in the POM/Eckert litigation, and therefore can only be aimed at garnering an untoward litigation advantage in those cases, Fed. R. Civ. P. 45(d)(3)(A)(iv) requires that this Court quash the HMS subpoena where it presents an undue burden on HMS.

## VI. Conclusion

WHEREFORE, for the aforestated reasons, this Court should enter a protective order relieving HMS of the burden and duty of responding to meritless subpoenas for information that is so obviously privileged and irrelevant to any of the claims in the POM/Eckert litigation order and/or enter an order quashing the HMS subpoena where all of the document requests in the HMS subpoena are immune from production under the attorney client privilege and/or the attorney work product doctrine, and the subpoena presents an undue burden on HMS.

Respectfully submitted,

*/s/ Dennis A. Whitaker*

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA  17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon & Sniscak, LLP*

Dated: July 20, 2020

## CERTIFICATION OF COUNSEL

The undersigned certifies, subject to Fed. R. Civ. P. 11, that the foregoing brief contains 2,203 words and, therefore, complies with the word-count limit set forth by Local Rule 7.8(b). This certification is based upon the word count feature of Microsoft Word, the software used to prepare the brief.

*/s/ Dennis A. Whitaker*

Dennis A. Whitaker

Dated: July 20, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 20, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

*/s/ Dennis A. Whitaker*