# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

PACE-O-MATIC, INC.,                             :
                                                :
                        Plaintiff,              :
        v.                                      :        Docket No. 1:20-cv-00292
                                                :
ECKERT SEAMANS CHERIN &                         :
MELLOTT, LLC,                                   :        (Judge Jennifer P. Wilson)
                                                :        (Judge Joseph F. Saporito, Jr.)
                        Defendant.              :
_____:

### MEMORANDUM OF LAW OF DEFENDANT, ECKERT SEAMANS CHERIN & MELLOTT, LLC, IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"), through its counsel, Fox Rothschild LLP, hereby files its Memorandum of Law in Opposition to the Motion to Compel filed by plaintiff, Pace-O-Matic, Inc. ("POM").

## INTRODUCTION

POM seeks to compel attorney-client privileged and confidential communications between Eckert and Greenwood Gaming & Entertainment d/b/a Parx Casino ("Parx Casino"), who is not a party to this lawsuit. Indeed, Parx Casino is POM's business adversary and has intervened in unrelated cases in which POM is the plaintiff. Under the guise, somehow, that POM is entitled to review its adversary's communications with its legal counsel, POM claims that: (1) the information sought is not, in fact, privileged; and (2) the information sought is relevant because it relates to POM's waiver of potential

conflicts when it, in fact, relates to Eckert's separate conflict waiver with Parx Casino. POM is wrong on both accounts.

**First**, the information sought is absolutely protected by the attorney-client privilege, client confidentiality and/or the attorney work product doctrine. That issue has been fully briefed in connection with Eckert's motion for protective order. Among other things, POM erroneously claims that communications between attorneys in different law firms about matters for a common client are not privileged. Significantly, POM fails to mention to the Court that it asserts the very same attorney-client privilege as to its communications between POM's current counsel and Cozen O'Connor attorney, Thomas Lisk, who formerly practiced law at Eckert. POM cannot have it both ways.

**Second**, POM has no standing to intervene and/or to review communications between Eckert and its other clients. Simply because Eckert obtained a conflict waiver from Parx Casino does not mean that POM has any right to obtain information that goes directly to the process of obtaining Parx Casino's informed consent, including any attorney-client privileged and confidential communications with Parx Casino.

Accordingly, as POM has offered no factual or legal basis to invade the attorney-client privilege, client confidentiality or the work product doctrine, the Court should deny POM's motion to compel and enter Eckert's proposed form of order in connection with its motion for protective order.

## FACTUAL AND PROCEDURAL BACKGROUND

### Facts Underlying This Dispute

POM has brought a breach of fiduciary duty action against Eckert, who previously represented POM in Virginia, subject to a conflict waiver and other representational limitations, including an express understanding that Eckert would not represent POM in Pennsylvania and an acknowledgement by POM that Eckert could be adverse to POM in Pennsylvania. Eckert's long-standing and separate representation of Parx Casino and other gaming clients in Pennsylvania is of course subject to the attorney-client privilege as well as client confidentiality as stated in Pennsylvania Rule of Professional Conduct ("RPC") 1.6. During the course of this litigation, Eckert intentionally has not addressed those representations or the work that it is currently performing for its current clients. Indeed, it is largely irrelevant, as there was no overlap between the work that Eckert was and is performing for its gaming clients in Pennsylvania and that which Eckert did for POM in Virginia.[1]

Through other counsel, POM filed two (2) Petitions for Review in the Commonwealth Court of Pennsylvania, now consolidated, seeking certain declarations about the use of its games in Pennsylvania. POM put those legal issues – and,

---

[1] Contrary to POM's advocacy that the legal issues in Virginia and Pennsylvania are substantially related, they are not. They involve different issues altogether. In Virginia, gambling and casinos are illegal. In Pennsylvania, gambling is legal and is part of a highly regulated, statewide industry, which is subject to an extensive statutory scheme. The work that Eckert was doing on POM's behalf in Virginia was unrelated to the work that Eckert was and is performing for its gaming clients in Pennsylvania.

specifically, the legality of its games in Pennsylvania – directly before the courts in Pennsylvania.  Indeed, Parx Casino, Eckert's client about and from whom POM seeks the requested discovery, intervened in those Commonwealth Court actions as they involve important issues of statutory construction applicable to the entire gaming industry.  While Eckert is not counsel to any party in those actions, POM is aware and Eckert acknowledges that it has continued to represent Parx Casino in other Pennsylvania matters where Parx Casino's interests are adverse to POM – even if not directly representing Parx Casino in a particular matter.

Notwithstanding the fact that Eckert properly disclosed its prior existing representations to POM and that Eckert could likely be adverse to POM in Pennsylvania, POM began to raise concerns about Eckert's representation of Parx Casino in Pennsylvania in October 2019.  Eckert addressed the concerns and sought reaffirmation from POM of its prior conflict waiver in order to continue to represent POM in Virginia. Not only did POM refuse to reaffirm its prior waiver, POM then took the position that Eckert had to withdraw from its representation of Parx Casino in order to satisfy POM's concern.  Because of POM's insistence that Eckert withdraw from its other representations in Pennsylvania and its refusal to reaffirm its prior waiver, Eckert was left with no alternative but to withdraw as POM's counsel in Virginia in early 2020. Throughout numerous communications with POM's counsel from October 2019 through

4

January 2020, POM never made any challenge to the advanced conflict waiver that it agreed to in writing at the commencement of the engagement.

Only after this litigation began did POM assert that its prior conflict waiver was inadequate and that Eckert had not properly sought an advanced conflict waiver with respect to its ongoing representation of Parx Casino in Pennsylvania. It is a pure tactical move, which is intended to disrupt the attorney-client relationship with Parx Casino, a conclusion further supported by POM's motion to compel which clearly seeks to invade the attorney-client privilege and work product doctrine as to Parx Casino without legal justification or demonstrated need.

Consistent with the ethical screen, at no time did any of the Eckert attorneys working on the POM matters in Virginia discuss those matters with the Eckert attorneys who were representing Parx Casino in Pennsylvania.  The Eckert attorneys who represented POM did not disclose any of POM's confidential information to anyone. Eckert has provided sworn declarations and other evidence on this point. POM, admittedly, has no evidence to the contrary, but it persists in making wholly unsupported allegations that Eckert is purportedly using POM's "confidential information" in representing Parx Casino.  This is yet another tactical move to support POM's unwarranted attempt to intrude upon the privileges as between Parx Casino and Eckert.

## Procedural History

POM filed its Complaint in this action on February 18, 2020. Eckert timely answered the Complaint and asserted Affirmative Defenses on March 10, 2020. Despite the passage of time and the onset of the COVID-19 crisis, POM filed the Motion for Preliminary Injunction on March 24, 2020. Eckert filed its opposition to the Motion for Preliminary Injunction on April 21, 2020. POM later filed a reply brief. Discovery followed, and this Court granted the parties the opportunity to file motions by July 20, 2020 on these issues. On July 20, 2020, Eckert filed its motion for protective order. Eckert now files its response in opposition to POM's motion to compel.

## LEGAL ARGUMENT

### Contrary to POM's Position, the Documents and Information Are Privileged.

With respect to the application of the attorney-client privilege and client confidentiality, and the relevant authority for its position, Eckert respectfully incorporates the legal arguments made in its motion for protective order filed on July 20, 2020. What is abundantly clear is that the purpose of the attorney-client privilege is "'to foster the free and open exchange of relevant information between the lawyer and client.'" *Bousamra v. Excela Health*, *et al.*, 210 A.3d 967, 982 (Pa. 2019), citing *Gillard v. AIG Ins. Co.,* 15 A.3d 44, 47 (Pa. 2011). The attorney-client privilege is a "two-way street" that protects both communications from the client to the attorney as well as from the attorney to the client in connection with legal advice being provided. *Id.* at 59.

Here, there is no dispute that Parx Casino is an Eckert client and that the communications that POM seeks are between Eckert and Parx Casino, as well as between Eckert, Parx Casino and Parx Casino's other counsel, Hawke McKeon.  Eckert asserts – and Parx Casino has confirmed – that the information sought is for purposes relating to securing legal advice.  Eckert on Parx Casino's behalf has properly asserted the privilege, and there has been no waiver.  If, in fact, the Court compels Eckert to turn over the communications at issue, or any of its related work product, Eckert will be waiving Parx Casino's attorney-client privilege, a privilege owned by Parx Casino.

In its motion to compel, POM has failed to state any authority to counter those prevailing but well-established legal principles about the application of the privilege to the information and documents that POM seeks.  POM has failed to articulate any cognizable reason to invade the attorney-client privilege, and it has failed to offer any position or argument that there has been a waiver.  POM's position and arguments about the applicability of the attorney-client privilege and work product doctrines to the documents and information that POM requested as between Eckert and Parx Casino are inconsistent, inaccurate and unsupported by the relevant authority.

**First**, POM's position is entirely inconsistent and contrary to its own application of the privilege.  POM would like the privilege applied very broadly to its own discovery obligations, but POM would like this Court to eviscerate the privilege entirely as it relates to Eckert's relationship with Parx Casino.  In its discovery responses, POM

asserted the attorney-client privilege and the work product doctrine in almost every response.  *See* Objections/Responses of POM to Eckert's interrogatories/document requests, attached hereto as Exhibits "A" and "B".  POM provided no privilege log despite the assertions of those privileges.[2]

In addition and more troubling, Eckert sought to depose its former member, Mr. Lisk, though a properly served subpoena that included a very narrow document request addressing the communications that Mr. Lisk had concerning his declaration and disavowing the advanced conflict waiver that Mr. Lisk discussed with POM in early 2017.  POM inserted itself in that process and demanded that Mr. Lisk withhold documents because of the attorney-client privilege and the attorney work product.  *See* Lisk Privilege Log attached hereto as Exhibit "C".  Putting aside the propriety of whether any privilege could or should apply to communications with a fact witness who gave a declaration in support of POM's motion for preliminary injunction (and who previously worked at Eckert), the application of the attorney-client privilege as to an attorney, who is not acting as counsel of record, is the same.

In its motion to compel, POM argues – incorrectly – that the attorney-client privilege does not apply to counsel who is not of record or concerning communications as between different counsel representing the same client.  Yet in the privilege log

---

[2] As the Court will recall, POM insisted that Eckert and its counsel all provide privilege logs in connection with its respective motions for protective order and motions to quash subpoenas. Eckert and its counsel complied with those requests in accordance with the Court's Order and the Federal Rules of Civil Procedure.

produced by POM for Mr. Lisk, POM asserts the attorney-client privilege to communications with a fact witness who happens to be an attorney and who is with a different law firm. There, POM freely believes that the attorney-client privilege and work product doctrine should govern regardless of whether Mr. Lisk is counsel of record, which he certainly is not. POM's position is entirely inconsistent and warrants the denial of its motion to compel in its entirety.

**Second**, POM has failed to provide any authority that the documents and information sought are not privileged. POM's position is inaccurate. POM merely asserts that conclusion without any supporting authority either factually or legally. Simply because, Eckert is not "counsel of record" for Parx Casino in the Commonwealth Court litigation matters does not mean that no attorney-client privilege or client confidentiality apply. POM fails to cite a single case for such an aberrant principle. Such a conclusion also flies in the face of the prevailing authority in Pennsylvania, which confirms that the attorney-client privilege is a two-way street that operates to protect a client's right to obtain professional legal advice – frankly, in any capacity. *See Bousamra*, 210 A.3d at 982, citing *Gillard,* 15 A.3d at 47. *See also Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 427 (E.D. Pa. 1984) ("all professional communications are sacred. If the particular case forms an exception it must be shown by him who would withdraw the seal of secrecy, and . . . should be clearly shown").

9

Contrary to POM's assertion, nowhere in footnote 16 of *Gillard* (which of course would constitute *dicta*) does it come close to stating "the attorney-client privilege does not apply to communications between counsel not involving the client." Instead, that footnote focuses on the differences between the attorney-client privilege and the attorney work product doctrine. Moreover, the prevailing authority is that communications between counsel representing the same client in which attorney-client privileged information and strategy are discussed are protected by the attorney-client privilege. *See Cedrone, supra*, 103 F.R.D. at 429; *see also Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005) ("There is no bar to extending attorney-client privilege to inter-attorney communications. To the contrary, 'privilege also attaches . . . to inter-attorney communications . . . which include legal advice or confidential information received from the client.'").

POM's argument is also factually inaccurate because the majority of the communications <u>do</u> involve the client as evidenced by the various privilege logs provided. More importantly, the attorney work product doctrine would cover the communications regardless. Again, POM's conclusion that Eckert "put its communications with Hawke McKeon in the Commonwealth Court litigation directly at issue by asserting as a defense that it is not counsel in any litigation where POM is an adverse party," while correct only insofar as Eckert is not counsel in those proceedings, is irrelevant for determining whether the work product doctrine applies. Such a

10

statement is unfortunately misleading because Eckert has not denied that it represents

Parx Casino or that Parx Casino has taken positions adverse to POM's financial interests

in Pennsylvania.  Moreover, Eckert's assertion of an affirmative defense has no bearing

on Parx Casino's right to assert its attorney-client privilege.

The case cited by POM, *Glenmeade Tr. Co. v. Thompson*, 56 F.3d 476 (3rd Cir.

1995), does not support POM's position and involves an entirely different principle.  In

that case, the Third Circuit held that asserting the "advice of counsel defense" waives the

attorney-client privilege.  It has nothing to do with the work product doctrine, as POM

strangely suggests, and consequently, it is irrelevant to any issue in this case because no

one has asserted a reliance on counsel defense.

As those appear to be the only cases relied upon by POM in its motion to compel,

and none supports any of POM's positions regardless, the Court should deny POM's

motion to compel in its entirety.

**Whether Eckert Obtained a Conflict Waiver from Parx Casino is Irrelevant.**

Putting aside the obviously privileged nature of the communications sought,

POM's assertions about communications between Eckert and Parx Casino as to Parx

Casino's waiver are irrelevant to the case.  While POM's breach of fiduciary duty claim

rests, in part, on its assertions of a conflict under Rule of Professional Conduct (the

"Rules") 1.7, POM's requests for communications between Eckert and Parx Casino

involving any conflict waiver between Parx Casino and Eckert are irrelevant to POM's

11

claim.  The issues in this case center on POM's claim that it did not consent to conduct

of Eckert which is believes creates a conflict, and Eckert's claim that it did consent and

the conduct in any event is a permissible positional conflict.  It is not about Parx

Casino's view of this dispute and, certainly, there is no evidence whatsoever that Parx

Casino believes that Eckert's prior representation of POM was a conflict of interest or

that it did not consent to any potential conflict.  In other words, Parx Casino's consent to

Eckert's former simultaneous representation of POM is not an issue in the case.

POM also lacks standing to request such information as between Eckert and Parx

Casino in accordance with the Rules.  On this point, Comment [19] to the Scope of the

Rules is particularly instructive.  It states as follows:

> [19]   Violation of a Rule itself should not give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.  In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  **They are not designed to be a basis for civil liability.  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer, under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule**.  Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty.

Comment [19] to Scope of the Rules (emphasis added).

12

Simply stated, POM lacks standing to see, involve itself or otherwise know about Eckert's communications with Parx Casino concerning Eckert's conflict waiver *with Parx Casino*. It is not within POM's standing or purview to involve itself in Eckert's discussions with Parx Casino about Parx Casino's waiver of any potential conflict. Only Parx Casino is invested with standing to address the propriety of such a conflict waiver. Indeed, all POM is entitled to know, if relevant, is that Parx Casino has waived its potential conflict.

Finally, the notion that Eckert's discussions with Parx Casino concerning Parx Casino's "informed consent" do not constitute legal advice and communications protected by the attorney-client privilege is wholly without merit. "Informed Consent" is defined under the Rules as "the consent by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." *See* Rule 1.0. If that does not constitute legal advice within the attorney-client privilege, then nothing does.

Not surprisingly, POM fails to cite any authority for the proposition that Eckert's communications with Parx Casino about any conflict waiver – in which it must obtain informed consent – are not covered by the attorney-client privilege and/or client confidentiality. POM's argument that a conflict waiver or informed consent constitute mere "conditions of engagement" is inaccurate and insupportable. Those discussions

13

cannot be equated with the fact of a retainer, the identity of the client or the basic conditions of employment (such as the mere scope of the engagement)[3], as articulated by the Third Circuit in *In re Semel*, 411 F.2d 195, 197 (3rd Cir. 1989).  Even there, the Third Circuit found that, in the first instance, a referee should look at the information to decide whether the attorney-client privilege applied.  *Id.*  Thus, in the absence of any authority or standing, the Court should deny POM's motion to compel Eckert's communications with Parx Casino about Parx Casino's conflict waiver.

### POM's Arguments About the "Hot Potato Rule" are Inapplicable

Finally, POM attempts to re-assert its argument that Eckert dropped POM like a "hot potato."  That argument is baseless for several reasons and provides POM with no basis to eviscerate the attorney-client privilege or client confidentiality regardless.

**First**, Eckert did not drop POM as POM now suggests. POM made a demand that Eckert drop Parx Casino in order to continue to represent POM in Virginia.  Eckert could not agree to that condition particularly in light of the advanced conflict waiver, which POM never claimed was invalid or ineffective until it filed this action.

**Second**, Eckert represented Parx Casino well before it began to represent POM in December 2016.  Eckert, thus, did not drop its earlier client in order to represent a later more lucrative client.  As such, the "hot potato rule" is inapplicable.

---

[3] To the extent that the Court concludes that the actual amount of fees paid by Parx Casino to Eckert between December 2016 and January 2020 is relevant and material to an issue in this case, Eckert will provide the number if so directed by the Court.  POM's demand for a Rule 30(b)(6) deposition to obtain that information should be denied as unnecessary and burdensome.

Finally, notwithstanding whether POM wants to continue to offer that argument in support of its position, such an argument provides POM with no basis to invade attorney-client privileged or otherwise confidential communication as between Eckert and any other client, including but not limited to, Parx Casino.  Accordingly, this Court should deny any circular attempt to interfere with the attorney-client privilege or attorney work product doctrines based upon POM's purported "hot potato rule" theory.

## CONCLUSION

For all of the foregoing reasons, defendant, Eckert Seamans Cherin & Mellott, LLC, respectfully requests that this Court enter its proposed form of Order and deny the motion to compel of plaintiff, Pace-O-Matic, Inc.

Respectfully submitted,

_____
ABRAHAM C. REICH, ESQUIRE (No. 20060)
ROBERT S. TINTNER, ESQUIRE (No. 73865)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
(215) 299-2090/2766 (telephone)
(215) 299-2150 (facsimile)
areich@foxrothschild.com
rtintner@foxrothschild.com

**Counsel for Defendant,**
**ECKERT SEAMANS CHERIN & MELLOTT,**
**LLC**

Date:  August 14, 2020

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____

PACE-O-MATIC, INC.,                              :
                                                 :
                        Plaintiff,               :
                                                 :
        v.                                       :       Docket No. 1:20-cv-00292
                                                 :
ECKERT SEAMANS CHERIN &                          :
MELLOTT, LLC,                                    :       (Judge Jennifer P. Wilson)
                                                 :       (Judge Joseph F. Saporito, Jr.)
                        Defendant.               :
_____:

## CERTIFICATE OF SERVICE

I, Robert S. Tintner, Esquire, hereby certify that, on this 14th day of August,

2020, I served a true and correct copy of the foregoing Memorandum of Law in

Opposition to Motion to Compel, via ECF, upon the following:

> Daniel T. Brier, Esquire
> Myers, Brier & Kelly, LLP
> 425 Spruce Street, Suite 200
> Scranton, PA 18503
>
> **Counsel for Plaintiff
> PACE-O-MATIC, INC.**

_____

ROBERT S. TINTNER, ESQUIRE