# In the United States District Court for the Middle District of Pennsylvania

PACE-O-MATIC, INC. )
)
          *Plaintiff,* ) [ELECTRONICALLY FILED]
)
          *vs.* ) Docket No. 20-292
)
ECKERT, SEAMANS, CHERIN ) JUDGE WILSON
& MELLOT, LLC )
)
          *Defendant.* )

## BRIEF OF PARX CASINO IN OPPOSITION OF THE MOTION TO COMPEL FILED BY PACE-O-MATIC, INC.

Greenwood Gaming & Entertainment, d/b/a Parx Casino ("Parx"), files its brief in opposition to the motion filed by Pace-O-Matic, Inc. ("POM") in the above matter to compel responses to (a) discovery requests served on the defendant, Eckert, Seamans, Cherin & Mellot, LLC ("Eckert"), and (b) two subpoenas issued separately to Parx and another of Parx's law firm, Hawke McKeon & Sniscak ("Hawke").

The Court should deny the motion to compel for the reasons described in Parx's brief supporting its motion to quash (Doc. 49). Parx writes in opposition to POM's motion to address POM's contention that

the documents subpoenaed are not privileged because they involve basic terms of engagement and have nothing to do with offering "legal advice." As described below, POM is wrong.

As it relates to Parx, POM subpoenaed documents regarding (a) actual or potential conflicts of interests between Parx and POM; (b) Parx's informed consent to concurrent representation of Parx and POM; (c) Eckert's decision to withdraw from representing POM; and (d) this litigation. As Parx explained in the brief supporting its motion to quash the subpoenas (Doc. 49), Parx does not have documents responsive to the first three requests in the subpoena regarding conflicts and the emails containing information about this litigation arguably responsive to the fourth request are all privileged or immune from disclosure under the attorney work-product doctrine. *See* Parx Br. at 9-12.

In its motion and supporting brief, POM argues that none of the documents that POM requested are protected by attorney-client privilege because none of them involve Eckert providing "legal advice" to Parx. Rather, POM argues, any communications about potential conflicts, informed consent, withdrawal of representation, or this litigation involve basic conditions of engagement that are not protected by privilege, citing

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995); *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969); and *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 & n.16 (Pa. 2011), for that proposition.

Even if Parx or its law firms had documents in response to this request, POM would not be entitled to them. As the Court is aware, the scope of permissible discovery excludes privileged matters. Fed. R. Civ. P. 26 provides in relevant part that "[p]arties may obtain discovery regarding any **nonprivileged matter** that is relevant to any party's claim or defense … ."

The attorney-client privilege attaches when, among other things not at issue here,[1] a lawyer and client engage in communications for the purpose of securing legal advice, e.g., either an opinion of law, legal services, or assistance in a legal matter. *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007), *aff'd* 992 A.2d 65 (2010).

"Legal advice" means "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *See*

---

[1] POM concedes *sub silentio* that the documents subpoenaed otherwise meet the test to determine whether the attorney-client privilege attaches by focusing solely on whether or not documents contain communications regarding legal advice.

*generally* 1 Paul R. Rice, *Attorney Client Privilege in the United States* §

7:9 (2d ed. 1999). As the Second Circuit has explained:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it. … [I]t should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

*In re Cty. of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007) (emphasis added).

*See also Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D.

Pa. 2014) (communications about strengths/weaknesses of claim or

defense, options, strategy, settlement constitute legal advice for purposes

of apply attorney-client privilege).

Here, the subpoenas request documents (to the extent they even

exist) containing discussions that take place only between lawyers and

clients. POM wants to discover all discussions between Eckert and Parx

about actual or potential conflicts of interests, information that Eckert

provided to assure Parx made an informed decision about concurrent representation, and discussions about Eckert's decisions to withdraw from representation.

These discussions inevitably involve a lawyer's review and analysis; evaluation of pros, cons, and risks to share with the client; and providing sufficient information to the client for making informed decisions, all as required by the Pennsylvania Rules of Professional Conduct. *See* Pa.R.P.C. 1.0 (defining "informed consent"); *see also* Pa.R.P.C. 1.7-1.10 (regarding conflicts) and 2.1 (lawyer as advisor). Likewise, the attorney-client privilege attaches and precludes POM from discovering any documents or emails about this litigation. Stated simply, there is no purpose for communications about this litigation other than providing legal opinions, advice, or information regarding legal matters.

Having established that "legal advice" would pervade the documents that POM subpoenaed such that (to the extent they ever existed) they would be protected by privilege, the question becomes whether the cases on which POM relies compel a different conclusion. The answer is no.

*Glenmede* and *Gillard* stand for the unremarkable propositions that privilege attaches to communications involving legal advice and that it protects both client-to-lawyer and lawyer-to-client communications. *See Glenmede,* 56 F.3d at 486; *Gillard,* 15 A.3d at 59 ("We hold that, in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice."). Neither *Glenmede* nor *Gillard* exclude from the definition of "legal advice" any communications between lawyers and clients regarding the interpretation and application of ethical rules, rendering advice to make decisions on concurrent representation, or providing information and advice about pending litigation.

*In re Semel* is no more helpful to POM. In that case, a referee in bankruptcy ordered the lawyer/debtor to provide a list of clients that owed him money after he testified that roughly $250,000 in accounts receivable should not have a bearing on the value of the debtor's estate. The lawyer invoked attorney-client privilege, but the bankruptcy court disagreed, holding that, "[i]n the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment

and the amount of the fee do not come within the privilege of the attorney-client relationship." *See Semel*, 411 F.2d at 197.

Thus, there is a meaningful difference between communications involving a lawyer's professional skills (e.g., reviewing, analyzing, advising, etc. on the law or litigation), on the one hand, *versus* perfunctory information about a lawyer-client engagement, on the other. The former constitutes legal advice. Consequently, POM is not entitled to discover documents containing sensitive lawyer-client communications.

Whatever the dispute between POM and Eckert, POM has no business pursuing documents containing information that is confidential and privileged to Parx. Because of POM's improper requests, Parx has been thrust into a dispute to defend its privileged and confidential communications at considerable disruption and expense for no reason other than POM's apparent desire to burden the client of Eckert with whom POM has adverse business interests. That is an improper reason to subpoena documents from third parties. The Court should recognize the impropriety and deny the motion to compel accordingly.

WHEREFORE, the Court should deny POM's motion; grant Parx's motion and quash the subpoenas directed to Parx and Hawke; grant a protective order to Eckert to prevent disclosure of privileged materials; and order such other and further relief as the Court deems necessary or appropriate.

August 14, 2020

Respectfully submitted,

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming &
Entertainment, d/b/a Parx Casino*

## CERTIFICATE OF SERVICE

I hereby certify that I filed and served the foregoing electronically.


<u>/s George A. Bibikos</u>
George A. Bibikos