# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PACE-O-MATIC, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **NO. 20-CV-292** |
| | : | |
| **v.** | : | **JUDGE WILSON** |
| | : | |
| **ECKERT, SEAMANS, CHERIN &** | : | **MAGISTRATE JUDGE SAPORITO** |
| **MELLOTT, LLC,** | : | |
| | : | **ELECTRONICALLY FILED** |
| **Defendant.** | : | |

## PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO COMPEL DISCOVERY PURSUANT TO FED R. CIV. P. 37(a)(1)

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425Spruce Street, Suite 200
Scranton, PA  18503

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

## <u>INTRODUCTION</u>

Neither Defendant Eckert, Seamans, Cherin & Mellott, LLC nor third-parties Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino") or Hawke, McKeon & Sniscak, LLP offer anything to rebut or refute Plaintiff Pace-O-Matic, Inc.'s ("POM") compelling showing that the specific categories of information sought are not privileged, are relevant and are properly discoverable.  Indeed, the deficient  privilege logs that this Court had to Order Eckert, Parx Casino and Hawke McKeon to produce only lend strong support to POM's claim that Eckert breached its fiduciary duty of undivided loyalty owed to POM by covertly and overtly attacking POM's games while also representing POM.  Accordingly, as detailed below: Eckert, Parx Casino and Hawke McKeon should be required to produce all communications relating to Eckert's involvement in the Commonwealth Court litigation between POM and the Pennsylvania State Police and Department of Revenue; Eckert and Parx Casino should be required to produce communications between them concerning the conflict of interest asserted in this case and/or Eckert's decision to withdraw from representing POM; and Eckert should be compelled to produce the total legal fees paid to Eckert by Parx Casino.

## ARGUMENT

### A.    The Privilege Logs Are Insufficient and Do Not Substantiate Any Claimed Privilege.

Pursuant to Rule 26 and 45 of the Federal Rules of Civil Procedure, by Order dated June 25, 2020 (ECF No. 35), Eckert, Parx Casino and Hawke McKeon were Ordered to submit privilege logs detailing the documents and materials that they withheld on the basis of any claim of privilege.  Rule 26(b)(5) provides that a party withholding information on the ground that it is privileged must claim the privilege expressly and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  Rule 45 imposes a similar requirement on non-parties that withhold records requested by subpoena.  Fed. R. Civ. P. 45(e)(2)(A)(ii).  In both instances, the party asserting the privilege has the burden of proving its existences and applicability.  *In re Grand Jury Proceedings*, 918 F.2d 374, 385 n.15 (3d Cir. 1990).  Eckert, Parx Casino and Hawke McKeon have not satisfied this burden.

The amended log filed by Hawke McKeon improperly groups multiple communications and lacks detail necessary to support the privileges claimed.  Item numbers 10-11, 13, 15, 24-29, 31, 34, 36-40, 46, 48-50, 52-54 and 59 on the

2

Hawke McKeon log[1] relate collectively to groups of emails without identifying the specific sender or recipient of each email,[2] the number of emails withheld, the specific times and dates of the emails or whether any of the emails had attachments.  This is plainly insufficient.  *See Heller's Gas, Inc. v. International Ins. Co. of Hannover, Ltd.*, No. 15-CV-1350, 2016 WL 3077366, at *3 n.14 (M.D. Pa. June 1, 2016) (agreeing that privilege log must contain date, name of author, name of recipient, names of all persons receiving copies, subject and privilege asserted) (citing *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989)).  Item numbers 17, 20, 28-30 and 47 on the Hawke McKeon log relate to emails to or from "Parx," "Parx team," "Parx legal team" and "Parx executives and advisors," but the log does not identify the Parx Casino personnel involved in those communications.  This too is insufficient to substantiate a claim of privilege.  *See*, *e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005) (noting that "the scope of an individual's employment is . . . relevant to the question" of privilege and therefore courts "scrutinize closely any privilege claim where [party

---

[1]  The amended privilege log filed by Hawke McKeon (ECF No. 56) is attached as Exhibit "A."

[2]  For example, Item No. 10 dated December 14, 2019 relates to "Emails concerning POM emergency application" and identifies "McKeon/Stewart" as both "Author" and "Recipient."  Similarly, Item No. 11 identifies "Emails concerning amicus brief issues and requirements" as the "Subject Matter" and "McKeon/Stewart" as both "Author" and "Recipient."

advocating privilege] . . . has provided only a general group-wide description for the recipients") (quotations and citations omitted).  Similarly, many of the entries on the log, including item numbers 18, 24-26, 28-29, 31-40, 49-51, and 53-59, provide only the last names of persons who sent or received emails (*e.g.*, "King," "Burns," "Mulhern," "Skoff," "Hittenger," "Downey," "Bonner" and "Maguzzi").  This is also insufficient to support a claim of privilege.  *See New Jersey Manufacturers Ins. Co. v. Brady*, No. 15-CV-02236, 2017 WL 264457, at *15 (M.D. Pa. Jan. 20, 2017) (privilege log entries insufficient where they do not identify name or title of person who prepared work product being withheld or contents of work product).

Several items on the Hawke McKeon log, including item numbers 25, 31-33 and 55-58, constitute communications with "Defendant counsel" or "Romano" which are understood to refer to Karen M. Romano, Chief Deputy Attorney General and counsel for the Pennsylvania State Police and Department of Revenue in the Commonwealth Court actions initiated by POM.  Of course, no privilege applies to these communications.  *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("Disclosing a communication to a third party unquestionably waives the privilege.").  Both Hawke McKeon and Eckert should be compelled to produce all communications with Ms. Romano or any other third party.

4

In addition, both Hawke McKeon and Parx appear to be claiming privilege over communications with public relations consultants, including Richard Gmerek,[3] Sean Schafer,[4] Pete Shelly and Charlie Lyons.[5]  *See* Hawke McKeon Privilege Log, Item Nos. 27, 29, 38, 40; *see*, *e.g.*, Eckert Privilege Log, Nov. 21, 2019 at 14:49; *id.* at Nov. 22, 2019 at 22:36; *id.* at Dec. 10, 2019 at 12:07.[6]  No privilege applies to these communications.  The Pennsylvania Supreme Court has held that the attorney-client privilege is waived when confidential communications are shared with an outside public relations firm.  *See BouSamra v. Excela Health*, 210 A.3d 967, 985-86 (Pa. 2019).  Similarly, such disclosures are not entitled to protection under the federal work product doctrine because they do not assist counsel in providing legal services.  *See generally Westinghouse Elec. Corp. v.*

---

[3]  Mr. Gmerek appears to be affiliated with Gmerek Government Relations, Inc. *See* Firm Profile, GMEREK GOVERNMENT RELATIONS, https://www.ggrgov.com/firm-profile/ (last visited August 14, 2020).

[4]  Mr. Schafer appears to be affiliated with Schafer Government Affairs.  *See* Chris English, *Persuasion is the best tool, two lobbyists tell Bensalem High School*, BUCKS COUNTY COURIER TIMES (Oct. 19, 2018, 1:47 p.m.), https://www.buckscountycouriertimes.com/news/20181019/persuasion-is-best-tool-two-lobbyists-tell-bensalem-high-school-students.

[5]  Messrs. Shelly and Lyons are affiliated with ShellyLyons.  *See* SHELLYLYONS PUBLIC AFFAIRS & COMMUNICATIONS, https://www.shelly-lyons.com/ (last visited August 14, 2020).

[6]  These are just a few of the many entries in the Eckert log relating to communications with public relations or government relations personnel that should be produced.

*Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991) (disclosure of work product waives the protection of the doctrine where disclosure does not "further the goal underlying the privilege").  Under this standard, Eckert and Hawke McKeon cannot credibly claim work product protection over their communications with public and government relations consultants which include a January 21, 2020 communication initiated by government relations advisor, Richard Gmerek, with the subject heading "Pennsylvania Commonwealth Court Says Pace-O-Matic's Pennsylvania Skill Are Legal" or the March 4, 2020 email communication sent by Mr. Gmerek to another public relations consultant, Sean Schafer, which was copied to a number of persons, including an Eckert lawyer, with the subject heading "Meeting w/the Governors Office."  *See* Eckert Privilege Log.[7]  None of these communications involving government and public relations personnel are privileged or protected from discovery by the work product doctrine.

For all of these reasons, the privilege logs are facially deficient and fail to substantiate the broad privilege assertions advanced by Hawke McKeon and Eckert.  At a minimum, all communications to and from Ms. Romano and public relations and government relations consultants concerning Eckert's conflict and its advocacy against POM should be produced.  In addition, Hawke McKeon and Eckert should be compelled to produce all other communications for which they

---

[7] The privilege log submitted by Eckert is attached as Exhibit "B."

failed to properly substantiate any claim of privilege.  To resolve disputed privilege claims relating to other materials detailed herein, all withheld communications and materials should be provided to the Court for *in camera* review.  *See United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("proper procedure" for resolving dispute concerning disputed claim of attorney-client privilege is "in camera inspection by the court").

**B.    Communications relating to Eckert's involvement in the Commonwealth Court litigation are not privileged.**

Contrary to Eckert's representations to this Court that it "does not represent a party adverse to POM in litigation," *see* Answer & Affirmative Defenses (ECF No. 9) ¶ 18, and "is not counsel in any litigation where POM is an adverse party," *id.* at Seventeenth Defense; *see also* Def.'s Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. (ECF No. 21) ¶ 2 ("There is no actual conflict of interest because Eckert is not representing parties in litigation adverse to POM"), the privilege log provided by Hawke McKeon proves that Eckert lawyers, including Mark Stewart and Kevin Skjoldal, regularly and surreptitiously provided information, advice and assistance to POM's adversary and to Parx Casino in relation to the Commonwealth Court litigation and they did so while Eckert was still actively representing POM. Eckert's deceptive representations to the Court underscore the importance of and relevance of these communications.  No privilege or protection applies to these communications and materials.

Both Hawke McKeon and Eckert assert attorney-client privilege over their communications concerning the Commonwealth Court litigation. *See* Hawke McKeon Privilege Log at Entries 1-59; *see also* Eckert Br. in Supp. of Mot. for Protective Order (Doc. No. 45) at 10.[8] But the attorney-client privilege does not apply to communications between Eckert and Hawke McKeon that are at issue here. The privilege has no application to communications between counsel that do not involve the client. *See Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011) (attorney-client privilege "protect[s] confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing legal advice").

Hawke McKeon also asserts work product protection over its communications with Eckert, *see* Hawke McKeon Privilege Log, Item Nos. 1-59,

---

[8] Eckert proposes that discovery is unnecessary because it claims to have implemented an ethical screen. Eckert Br. in Supp. of Mot. for Prot. Order at 13. Even if Eckert had timely implemented an effective screen—and it did not—a screen is not a defense to a breach of fiduciary duty. *See*, *e.g.*, *Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1094-95 (Pa. Super. 2014) (Donohue, J., concurring) (observing that "the existence of an ethical screen does not overcome a conflict of interest"); *see generally Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1287 (Pa. 1992) (rejecting suggestion that injunction against disclosure would be sufficient to remedy breach of fiduciary duty stemming from conflict of interest). Eckert's eleventh hour invocation of an ethical screen is not only legally irrelevant, it is of no comfort to POM especially now that it has been discovered that Mr. Stewart, on behalf of Eckert, was encouraging law enforcement officials to criminally prosecute POM, while POM was still a client of Eckert, on the other side of the purported "screen."

but the work product doctrine does not apply in these circumstances.  The work product doctrine "protect[s] the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation."  *Westinghouse Elec. Corp.*, 951 F.2d at 1428.  The doctrine does not apply to communications between Eckert and Hawke McKeon concerning the Commonwealth Court litigation because Eckert has affirmatively disavowed that it was representing Parx Casino or any other party in litigation adverse to POM.  Eckert cannot claim work product protection over its communications concerning the very litigation in which it also denies involvement.  Simply put, Eckert's communications regarding POM's litigation in the Commonwealth Court are both highly relevant and entitled to no protection.

Even if work product protection were available—and it is not—Eckert affirmatively waived any work product protection by asserting as a defense to POM's breach of fiduciary duty claim that it had no involvement in litigation adverse to POM.  Eckert opened the door and placed its involvement in the Commonwealth Court litigation directly at issue and cannot at the same time claim work product protection over the very communications with Hawke McKeon and others that will refute that defense.  *See*, *e.g.*, *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) (finding waiver of attorney client privilege where party "made a conscious decision to inject the advice of counsel as an issue in the litigation").  Moreover, the work product rule contemplates and allows discovery

9

of work product where there is "substantial need" for the material and the material is not available from other sources.  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Because Eckert placed its involvement in the Commonwealth Court litigation directly at issue, there is substantial need for Eckert's communications with Hawke McKeon to respond to Eckert's putative defense and the communications are therefore discoverable under Rule 26(b)(3)(A)(ii).  *See United States v. Nobles*, 422 U.S. 239, 239-40 & n.14 (1975) ("Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination."); *Aetna, Inc. v. Mednax, Inc.*, No. 18-CV-02217, 2019 WL 5566705, at *2 (E.D. Pa. Oct. 29, 2019) (plaintiffs waived work production protection that extends to information put "at issue"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, LLC, 2010 WL 4537002 (M.D. Pa. Nov. 3, 2010) (concluding that "justice requires" that party has right to work product material "in order to defend itself" where work product is placed "at issue"); *Bowman v. American Homecare Supply, LLC*, 07-3945, 2009 WL 1873667, at *5 (E.D. Pa. June 25, 2009) (ordering production of work product which was put "directly at issue"); *United States v. Purcell*, 667 F. Supp. 2d 498, 520 (E.D. Pa. 2009) (government waived work product privilege by placing

10

prosecutors' "thought processes and litigation strategy at issue"); *First Fidelity Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 90-1866, 1992 WL 55742, at *2 (E.D. Pa. Mar. 13, 1992) (same).

Contrary to Eckert's argument, Eckert Br. in Supp. of Mot. for Protective Order at 12-13, its communications concerning the Commonwealth Court litigation are undeniably relevant to Eckert's conflict of interest and breach of fiduciary duty. Those communications constitute powerful proof that *Eckert was advocating against POM while representing POM* and therefore go to the heart of the POM's claim for breach of fiduciary duty and breach of the duty of undivided loyalty. Even the limited information in the Hawke McKeon privilege log reveals Eckert's repeated covert involvement in the Commonwealth Court litigation as an advocate against POM while POM was a client of the Eckert firm. For example, on November 27, 2019, Mark Stewart of the Eckert firm sent "[b]ackground information of skill game litigation and legislation" to Kevin McKeon at the Hawke McKeon firm, presumably for use in the Commonwealth Court litigation. *See* Hawke McKeon Privilege Log, Item No. 1. On December 16, 2019, Mr. Stewart sent a "draft brief" to Mr. McKeon in an email "concerning amicus brief" and the Hawke McKeon firm is believed to have filed that same brief in the Commonwealth Court on behalf of Parx Casino and others. *Id.* at No. 12. Between January 17 and 20, 2020, Mr. Stewart communicated with Mr. McKeon

11

about "post-PI Hearing strategy," presumably referring to the January 15, 2020 hearing on POM's motion for preliminary injunction which Mr. Stewart attended. *Id.* at No. 27. These communications put the lie to Eckert's assertion that it "does not represent a party adverse to POM in litigation," *see* Answer & Affirmative Defenses ¶ 18, and are highly relevant to its breach of fiduciary duty.[9]

Accordingly, POM is entitled to all communications between Eckert and Hawke McKeon concerning Eckert's involvement in the Commonwealth Court litigation, including all items on the privilege log provided by Hawke McKeon.[10]

---

[9] Eckert also invokes Rule 1.6 of the Rules of Professional Conduct as justification for withholding its communications with the Hawke McKeon firm concerning the Commonwealth Court litigation. Eckert. Br. in Supp. of Mot. for Prot. Order at 11-12. As Comment 3 to the rule makes clear, however, the attorney-client privilege and work product doctrine, not Rule 1.6, govern an attorney's duties in responding to discovery. *See* Pa. R. Prof. Conduct, Comment [3] ("The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law."); *see also Hodczak v. Latrobe Specialty Steel Co.*, No. 08-649, 2010 WL 4137515, at *2 (W.D. Pa. Aug. 10, 2010) ("the Rules of Professional Conduct that speak to the rule of confidentiality are inapplicable" in judicial proceeding) (magistrate judge opinion).

[10] Eckert attempts to impugn POM's motive in seeking information concerning Eckert's advocacy against POM. Eckert. Br. in Supp. of Mot. for Prot. Order at 13-14. This unsupported and unsupportable argument merits no response. Having covertly advocated against POM while at the same time expressly denying such involvement, Eckert cannot in good faith suggest that POM has no legitimate basis for requesting evidence of Eckert's indefensible conduct.

**C.    Communications between Eckert and Parx Casino concerning any alleged conflict waiver are not protected by any privilege.**

As with its communications with Hawke McKeon concerning the Commonwealth Court litigation, Eckert placed its communications with Parx Casino directly at issue by asserting the defense that Eckert's concurrent representation of POM and Parx Casino is subject to an advance waiver. *See* Answer & Affirmative Defenses, Twelfth-Fourteenth Defenses. As detailed in POM's opening brief, because a conflict waiver requires informed consent from both parties and because Eckert's communications between Eckert and Parx Casino concerning Eckert's conflicts do not constitute or relate to legal advice, those communications are not privileged. See POM's Br. in Supp. of Mot. To Compel (ECF No. 51) at pp. 10-12. Moreover, communications with counsel concerning conditions of an engagement do not come within the scope of the privilege. *See*, *e.g.*, *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969) ("In the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship.") (citations omitted). As a result, Eckert has no basis to withhold communications that relate to any purported conflict waiver and those communications should be produced.

13

**D.** **Communications between Eckert and Parx Casino concerning this action and Eckert's decision to withdraw from representing POM are not protected by any privilege.**

Eckert's communications with Parx Casino concerning this action and Eckert's decision to withdraw from representing POM are likewise discoverable because they do not implicate or involve the provision of legal advice to Parx Casino. "The privilege 'protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Westinghouse Elec. Corp.*, 951 F.2d at 1423-24 (emphasis in original) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). Communications between Eckert and Parx Casino concerning this action and Eckert's decision to withdraw from representing POM do not relate to any legal advice to Parx Casino and therefore are not privileged. Because those communications are relevant to Eckert's conflict and its breach of the duty of undivided loyalty, they should be produced.

**E.** **The fees billed to Parx Casino are not privileged and are relevant to Eckert's breach of fiduciary duty.**

The fee collected from Parx Casino is relevant to Eckert's breach of fiduciary duty, *see International Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Ass'n*, 909 F. Supp. 287, 293 (E.D. Pa. 1995) ("[A]n attorney may not drop one client like a 'hot potato' in order to avoid a conflict with another, more remunerative client."), and is not privileged, *see In re*

*Semel*, 411 F.2d at 197-98; *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. 2004) (attorney's invoices billed to client do not implicate attorney-client privilege); *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005) (testimony regarding fee charged is not subject to attorney-client privilege).  Accordingly, Eckert should be compelled to designate a witness to testify pursuant to Rule 30(b)(6) concerning the fees paid by Parx Casino during the period that Eckert representing POM.  In addition, there is no likelihood that Eckert's extensive covert involvement in the Commonwealth Court adverse to POM was done pro bono.  It is relevant that Eckert was billing Parx to be covertly involved with Hawke McKeon.  POM requests that this Court review Eckert's bills related to the Commonwealth Court matter in camera.

    **F.**    **POM Requests the Opportunity To Present Oral Argument.**

Pursuant to Local Rule 7.9, POM respectfully requests that this matter be scheduled for oral argument.  POM also requests the opportunity to present additional argument in response to any additional privilege logs that may be forthcoming.

## CONCLUSION

For the reasons set forth above, Eckert, Parx Casino and Hawke McKeon should be compelled to produce all information requested.

Respectfully submitted,


/s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP          Attorneys for Plaintiff,
425 Spruce Street, Suite 200       Pace-O-Matic, Inc.
Scranton, PA  18503
(570) 342-6100

Dated:  July 20, 2020

16

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Support of Motion To Compel Discovery was served

upon the following counsel of record via the Court's ECF filing system on this

20th day of July 2020:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

/s/ Daniel T. Brier
Daniel T. Brier