## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

      Plaintiff,

      v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

      Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## **<u>MEMORANDUM</u>**

This is a diversity action in which the plaintiff, Pace-O-Matic, Inc. ("POM") has brought a state-law breach of fiduciary duty action against the defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"). POM, a Wyoming corporation with a principal place of business in Georgia, is a former client of Eckert, a law firm based in Harrisburg, Pennsylvania. POM claims that Eckert breached its professional duties of loyalty and confidentiality by undertaking the concurrent representation of another client in litigation against POM. For relief, POM seeks an award of compensatory and punitive damages plus declaratory and injunctive relief against Eckert.

Now before the court are several discovery motions by POM,

Eckert, and two subpoena recipients. (Doc. 44; Doc. 48; Doc. 50; Doc. 52.) These motions have been fully briefed, and oral argument on these motions was held on October 20, 2020. Following this hearing, the parties met and conferred to narrow the scope of documents to be submitted to the court for an *in camera* privilege review. In December 2020, the defendant and the subpoena recipients submitted the agreed-upon selection of purportedly privileged or protected documents for *in camera* review. The motions are now ripe for disposition.

## I.   BACKGROUND

POM develops, produces, and licenses electronic "skill games" sold in Pennsylvania and elsewhere. Beginning in 2016, POM engaged Eckert to represent it in Virginia with respect to litigation over whether those skill games were illegal gambling devices under Virginia law. That representation was limited to Virginia, as Eckert represented other clients with adverse commercial interests in Pennsylvania. One of those other clients was Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), with which Eckert had a prior existing attorney-client relationship.

In June 2018, POM filed a lawsuit concerning its skill games in

the Commonwealth Court against the City of Philadelphia and the Pennsylvania Department of Revenue; that case was assigned Docket No. 418 MD 2018. In July 2018, POM filed a second lawsuit concerning its skill games in the Commonwealth Court against the Pennsylvania State Police; that case was assigned Docket No. 503 MD 2018. On November 20, 2019, the Commonwealth Court issued an opinion in Case No. 418 denying a motion for summary disposition by the Pennsylvania Department of Revenue, which had the effect of placing both actions on an active litigation schedule.

On December 12, 2019, POM filed a motion for a preliminary injunction against the Pennsylvania State Police in Case No. 503. POM sought to enjoin the state police from seizing its skills games from its customers. On December 18, 2019, Parx and another casino filed an amicus brief in opposition to POM's motion for a preliminary injunction. Parx appeared through counsel of record Kevin McKeon of Hawke McKeon & Sniscak, LLP ("HMS") and Adrian King of Ballard Spahr, LLP ("Ballard").[1] On January 15, 2020, the Commonwealth Court held a

---

[1] King is co-counsel with McKeon in both Commonwealth Court cases. It is our understanding that he represents the other casino that joined Parx in filing the amicus brief and, later, the motions to intervene.

hearing on POM's application for a preliminary injunction. On February 14, 2020, the casinos filed applications to intervene in both of POM's Commonwealth Court cases.[2]

At some point in January 2020, POM learned that Eckert was involved in representing Parx in connection with the Commonwealth Court cases and requested that it withdraw from that representation. Eckert declined and instead withdrew from representing POM in the Virginia matters. On February 20, 2020, POM filed the complaint in this action, alleging that Mark Stewart and other attorneys at Eckert had been behind the litigation efforts of Parx in both Commonwealth Court cases, despite a conflict of interest. POM claimed that Eckert's representation of Parx in the Commonwealth Court cases, directly adverse to POM, amounted to a breach of its fiduciary duties to POM as its client—namely, its professional duties of loyalty and confidentiality.

POM has served interrogatories and requests for production seeking information and documents reflecting communications concerning the Commonwealth Court cases exchanged between Eckert

---

[2] It is our understanding that Parx's applications to intervene remain pending.

attorneys on the one hand and Parx, HMS, and their agents on the other hand. Eckert has objected, asserting attorney-client privilege and work-product protection with respect to various documents identified on a 30-page privilege log. POM has moved to compel the production of these documents, and Eckert has moved for a protective order precluding production of these documents.

POM also served non-party subpoenas on HMS and Parx, seeking any similar documents that were in their possession. HMS and Parx have entered their appearances here and moved to quash the subpoenas or for a protective order, asserting attorney-client privilege and work-product protection with respect to documents identified on their own privilege logs. Parx has further adopted the privilege logs of Eckert and HMS with respect to any documents in the possession of the two law firms, but which might belong to Parx as client.

Following oral argument, the parties met and conferred to winnow the list of documents to be submitted for *in camera* review. Those documents have been submitted and reviewed by the court *in camera*. It is our understanding that any other discovery disputes raised by the parties in their motion papers have been resolved among them.

## II.   APPLICABLE STANDARDS

### A. Attorney-Client Privilege

This is a diversity case. Therefore, Pennsylvania state law governs whether attorney-client privilege applies to the documents at issue. *See* Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d  Cir. 1988). *See generally* 42 Pa. Cons. Stat. Ann. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *see also Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 387 (M.D. Pa. 2010) (noting that, under Pennsylvania law, the attorney-client privilege is generally disfavored and should be narrowly construed). For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'"

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, "*Restatement (3d) Lawyers*"]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Id.* at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *Id.* at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984). "These exceptions are consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

### B. Work-Product Doctrine

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One

> of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as

> "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting

*Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling in to the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

### III.  DISCUSSION

### A. Rule 1.6 Duty of Confidentiality

Eckert, Parx, and HMS each argue that the requested discovery is barred by Rule 1.6 of the Pennsylvania Rules of Professional Conduct, which provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c) [of Rule 1.6]." Pa. R. Prof'l Conduct 1.6(a). "The confidentiality provisions of Rule 1.6 provide broader protections than does the attorney-client privilege." *Office of Disciplinary Counsel v. Baldwin*, 225 A.3d 817, 843 (Pa. 2020); *see also In re Gartley*, 491 A.2d 851, 859 (Pa. Super. Ct. 1985) ("The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his clients."), *aff'd sub nom. In re Search Warrant B-21778*, 521 A.2d 422 (Pa. 1987).

But this is a discovery dispute in a federal civil action, not an ethical complaint in disciplinary or disqualification proceedings. It is the Pennsylvania attorney-client privilege statute, 42 Pa. Cons. Stat. Ann.

§ 5928,[3] and the federal work-product doctrine, Fed. R. Civ. P. 26(b)(3), that govern the scope of discoverable information or documents in this case, not Rule 1.6. *See Frieman v. USAir Grp., Inc.*, Civ. A. No. 93-3142, 1994 WL 675221, at *6 (E.D. Pa. Nov. 23, 1994).

> Although Pennsylvania courts have recognized that a lawyer's duty of confidentiality is quite extensive, the Rules of Professional Conduct are not substantive law. Rather, those rules govern disciplinary proceedings against Pennsylvania attorneys, and, through its Supreme Court, the Commonwealth has said that the rules do not govern or affect judicial application of the attorney-client privilege.

*United States v. Servin*, 721 Fed. App'x 156, 159 (3d Cir. 2018) (citations, internal quotation marks, brackets, and ellipses omitted) (affirming district court order denying motion to quash IRS summonses); *see also Hodczak v. Latrobe Specialty Steel Co.*, Civil Action No. 08-649, 2010 WL 4137515, at *2 (W.D. Pa. Aug. 10, 2010). *See generally* Pa. R. Prof'l Conduct 1.6 cmt. [3] ("The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence

---

[3] When the claims and defenses at issue in a civil case arise under state law, the scope of attorney-client privilege is governed by state law. Fed. R. Evid. 501.

concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law."). Indeed, the Rule itself contemplates as much, expressly providing that "[a] lawyer may reveal such information to the extent that the lawyer reasonably believes necessary . . . to comply with other law or court order." Pa. R. Prof'l Conduct 1.6(c)(8). The Federal Rules of Civil Procedure constitute such "other law," and the order that accompanies this memorandum opinion constitutes such a "court order." Rule 1.6 simply provides no basis upon which to deny the motion to compel or to grant the motions for a protective order or to quash the subpoenas. *See Servin*, 721 Fed. App'x at 159–60.

### B. Email Strings

The documents at issue here consist mostly of email messages and attachments.[4] As a general rule, "each version of an email string (i.e. a forward or reply of a previous email message) must be considered as a separate, unique document." *Rhoads Indus., Inc. v. Bldg. Materials Corp. of America*, 254 F.R.D. 238, 240 (E.D. Pa. 2008); *accord United States v.*

---

[4] HMS has produced a handful of text message exchanges for *in camera* review as well.

*Davita, Inc.*, 301 F.R.D. 676, 684–85 (N.D. Ga. 2014); *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336–37 (M.D. Pa. 2013).

> For example, an email string consisting of four email messages would have four distinct versions: (1) the most recent version consisting of Email 4 (most recent), Email 3, Email 2, and Email 1 (original email), (2) a prior version consisting of Email 3, Email 2, and Email 1, (3) a prior version consisting of Email 2 and Email 1, and (4) the original Email 1. Additionally[,] there could be other email strings consisting of some or all of Emails 1–4.

*Rhoads Indus.*, 254 F.R.D. at 240 n.4. Thus, "each message of the string which is privileged must be separately logged in order to claim privilege in that particular document." *Rhoads Indus.*, 254 F.R.D. at 240–41; *see also Davita*, 301 F.R.D. at 685 ("[T]he Court simply requires that Defendants ensure that each withheld email within a string be logged in some fashion *at least once*.").

We note that the Eckert privilege log follows this approach, describing only the author, the recipient, the subject line, and the time and date for the top email in each version produced for *in camera* review. The Eckert privilege log entries do not describe any prior emails that might be appended to the top email, and we infer from this format that either any claim of privilege applicable to prior email messages is

asserted separately on the log[5] or any prior emails that are responsive and non-privileged have been produced.

The HMS privilege log appears to group related email messages or strings together, identifying several related messages or strings together in a single entry, often without identifying all authors or recipients. *See, e.g.*, *Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012) ("If listing only the recipients of the last e-mail in a chain fails to disclose everyone to whom an allegedly privilege communication has been sent, the listing cannot be adequate. Moreover, if the recipient(s) at an e-mail address cannot be adequately identified, it is impossible to determine whether the privilege is properly asserted."). Any inadequacy in the HMS privilege log is moot, however, as the most appropriate remedy in our view would have been *in camera* inspection of a select sample of the withheld documents, which we have already done. *See generally Nat'l Labor Relations Bd. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009) (outlining four common remedies for a privilege log that fails to comply with the requirements of Fed. R. Civ. P. 26(b)(5)).

We found no defects or other issues with the Parx log.

---

[5] The log includes several entries consistent with this inference.

## C. Identification of Documents and Duplicate Copies

The Eckert documents are not Bates-labeled.[6] Instead, each separate email message appears to have been saved to a "pdf" file labeled with the time and date it was sent, down to the second (i.e., "2017_02_14_15_34_42.pdf" appears to be an email sent at 3:34 p.m. on February 14, 2017). In populating the "sent time" column of its privilege log, however, we note that Eckert appears to have used inconsistent time zones—some of the entries are logged using Coordinated Universal Time instead of the Eastern Standard Time or Eastern Daylight Time recorded on the header of the email message itself. Each email message has been produced for *in camera* review together with a blue slip-sheet on which the associated filename is printed, and we will refer to each of the Eckert documents by this filename.[7]

In addition, Eckert has produced identical copies of certain email

-----

[6] We do not mean to suggest that the Eckert *in camera* production is defective. The federal rules impose no obligation to Bates-label non-privileged responsive documents produced to the other party, much less purportedly privileged documents produced for *in camera* review by the Court. *See Cmty. Ass'n Underwriters of America, Inc. v. Queensboro Flooring Corp.*, Civil Action No. 3:10-CV-1559, 2014 WL 12603510, at *5 (M.D. Pa. June 24, 2014). But the convention for our identification of documents in this opinion bears explanation.

[7] HMS and Parx have Bates-labeled their documents.

messages, presumably wherever two copies of the same email message were recovered from its computer systems.[8] In most instances, a second pdf file has been produced for *in camera* review with "(Copy 2)" appended to its filename.[9] All rulings herein with respect to the original documents should be construed to apply to these identical copies as well. To the extent the original documents are ordered produced, it is unnecessary for Eckert to also produce these identical copies of the very same documents.

We note that we originally anticipated that most—if not all—of the documents produced by HMS for *in camera* review would be duplicative of those produced by Eckert, as the subpoena directed to HMS was generally limited to communications with Eckert attorneys. But while there may be some overlap, HMS appears to have produced a much more comprehensive collection of its communications with Eckert attorneys than Eckert has. Thus, we have not endeavored to exclude any

---

[8] 2018_11_28_15_13_42 (Copy 2).pdf; 2019_05_02_13_50_00.pdf; 2019_05_06_15_43_12 (Copy 2).pdf; 2020_01_15_07_49_01.pdf; 2020_01_22_16_28_25 (Copy 2).pdf; 2020_01_23_09_19_41 (Copy 2).pdf; 2020_01_30_13_04_55 (Copy 2).pdf; 2020_02_10_14_38_15 (Copy 2).pdf; 2020_02_19_18_01_55 (Copy 2).pdf; 2020_02_19_18_21_19 (Copy 2).pdf; 2020_02_19_18_55_53 (Copy 2).pdf; 2020_02_20_16_10_20 (Copy 2).pdf; 2020_05_01_17_12_49 (Copy 2).pdf.

[9] In two instances, the duplicate is time-stamped one second later than the original.

HMS documents that may be duplicative of those to be produced by Eckert. We have, however, identified a handful of documents that are identical copies of other documents produced by HMS for *in camera* review: we find it unnecessary for HMS to produce HMS-000815 (an identical copy of HMS-000814), HMS-000926 (an identical copy of HMS-000925), HMS-000972–HMS-000984 (an identical copy of HMS-000959–HMS-000971), HMS-001323 (an identical copy of HMS-001322), or HMS-001325 (an identical copy of HMS-001324).

### D. Common-Interest Doctrine and Government Attorneys

The documents produced for *in camera* review by Eckert and HMS include communications and documents shared with government attorneys representing various state agencies and the City of Philadelphia—the defendants in POM's Commonwealth Court cases. HMS has asserted attorney-client privilege with respect to some of these materials, relying on the common-interest doctrine. Eckert has not included any entries in its privilege log describing communications with these government attorneys, but some of the emails described on Eckert's log include within them copies of prior emails shared with these government attorneys.

> Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person. In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances. For that reason, the common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise.

*United States v. BDO Seidman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007) (citation omitted). "To qualify for protection under the common-interest privilege, 'the communication must be shared with the attorney of the member of the community of interest,' and 'all members of the community must share a common legal interest in the shared communication.'" *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 118 (E.D. Pa. 2011) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007)). "[T]he requirement that the parties to the communication share 'at least a substantially similar legal interest' prevents abuse of the privilege and 'unnecessary information sharing.'" *Id.* (quoting *Teleglobe*, 493 F.3d at 365) (footnote omitted). "The common interest binding parties to the communication must be *legal* in nature, and not merely commercial or business related." *Id.* at 118 n.6 (emphasis

added).

Here, HMS contends that Parx has shared a common legal interest with the government defendants insofar as they are all opposed to POM's litigation position in the Commonwealth Court cases. But the legal interest of the government defendants in the Commonwealth Court cases is that of regulators of gaming devices, such as those manufactured and sold by POM. As regulators, the government defendants represent the public interest, not any particular commercial or business interest. Meanwhile, Parx has intervened—or sought to intervene—in the Commonwealth cases based on its commercial interests: in short, the gaming devices manufactured and sold by POM are competition for its casino business, which is likewise regulated by the same government regulators. This economic interest may align Parx with the policy interests of the government regulators in POM's Commonwealth Court cases, but ultimately, they are not substantially similar *legal* interests, and thus the common-interest doctrine does not shield communications or documents shared between Parx's attorneys and the government attorneys from disclosure. *See Hope for Families & Cmty. Serv., Inc. v. Warren*, No. 3:06-CV-1113-WKW, 2009 WL 174970, at *24–*25 (M.D.

Ala. Jan. 26, 2009).

Based on our *in camera* review, the following documents are non-privileged communications involving attorneys representing government regulators with whom Parx did not share a common legal interest. The objections raised by HMS and Parx are overruled, and the following documents shall be produced to the plaintiffs:

| | | | |
|---|---|---|---|
| 1) | HMS-000714–HMS-000722 | 9) | HMS-001113–HMS-001117 |
| 2) | HMS-000816 | 10) | HMS-001118–HMS-001119 |
| 3) | HMS-000959–HMS-000971 | 11) | HMS-001131–HMS-001132 |
| 4) | HMS-001083–HMS-001088 | 12) | HMS-001331–HMS-001334 |
| 5) | HMS-001089–HMS-001092 | 13) | HMS-001335–HMS-001338 |
| 6) | HMS-001093–HMS-001105 | 14) | HMS-001339–HMS-001340 |
| 7) | HMS-001106–HMS-001107 | 15) | HMS-001341–HMS-001342 |
| 8) | HMS-001108–HMS-001112 | 16) | HMS-001343–HMS-001345 |

### E. Transmittal Messages

Several of the documents logged by Eckert and HMS are mere transmittal messages to or from attorneys forwarding other messages or documents that are not themselves privileged or otherwise protected from disclosure. It is well settled that "[t]ransmittal documents themselves are not privileged unless they reveal the client's confidences." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 (S.D.N.Y. 2010). Likewise, work-product protection does not attach to mere transmittal

letters that do not contain the mental impressions of counsel. *See Smith ex rel. Smith v. United States*, 193 F.R.D. 201, 214 (D. Del. 2000); *see also Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 559 (E.D. La. 1996) ("Mere transmittal or confirmation letters, which do not contain any confidential communications or attorney advice, opinion or mental impressions, are not privileged simply because they are written by or to an attorney."). Although "attached documents may themselves be protected by the attorney-client privilege or the work-product doctrine, . . . the transmittal messages are not." *Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 336 (M.D. Pa. 2013). With respect to such transmittal messages, the objection to production will be overruled and the defendant will be ordered to produce these documents.

Based on our *in camera* review, the following documents are non-privileged transmittal messages, containing no confidential client information or legal advice. The objections of Eckert, HMS, and Parx are overruled, and the following documents shall be produced to the plaintiffs:

1) 2019_07_16_23_06_14.pdf
2) 2019_11_20_19_57_16.pdf
3) 2019_11_21_11_35_26.pdf
4) 2019_11_22_12_39_49.pdf
5) 2019_11_22_14_06_31.pdf
6) 2019_11_25_18_01_20.pdf
7) 2019_12_19_09_16_07.pdf
8) 2019_12_19_14_38_32.pdf

9)  2019_12_20_09_58_07.pdf
10) 2020_01_03_16_02_42.pdf
11) 2020_01_13_16_49_17.pdf
12) 2020_01_21_10_57_52.pdf
13) 2020_01_21_12_58_11.pdf
14) 2020_01_27_11_17_33.pdf
15) 2020_01_28_11_55_57.pdf
16) 2020_02_05_11_40_20.pdf
17) 2020_02_05_11_42_28.pdf
18) 2020_02_06_17_03_53.pdf
19) 2020_02_20_16_08_56.pdf
20) 2020_02_20_16_11_16.pdf
21) 2020_05_11_10_57_45.pdf

22) 2020_05_13_08_41_56.pdf
23) 2020_05_15_16_11_57.pdf
24) HMS-000709
25) HMS-000725–HMS-000732
26) HMS-000745–HMS-000811
27) HMS-000936–HMS-000938
28) HMS-000949
29) HMS-000950–HMS-000951
30) HMS-000952
31) HMS-000953–HMS-000956
32) HMS-000957–HMS-000958
33) HMS-001049–HMS-001056

We have further found two copies of one transmittal message that should be disclosed with redaction. In a November 27, 2019, email message—identified as 2019_11_27_14_13_25.pdf by Eckert and HMS-000001–HMS-000059 by HMS—Stewart forwarded to McKeon a prior non-privileged email message with attachments concerning non-privileged business and lobbying issues, which was sent to numerous recipients regarding "Documents discussed on 10/31 Industry call." In addition to that prior email and its attachments, Stewart attached a copy of a draft brief prepared by other counsel for other litigation to which POM is not a party, identified in the Eckert document as an attachment named "*PLD – BRIEF IOT TO DEF RAJESHWARI"S PRELMINARY OBJECTIONS TO COMPLAINT …docx*" and identified in the HMS

document by Bates-labeled pages HMS-000035–HMS-000059. This draft appears to constitute protected work product. Therefore, the objections of Eckert, HMS, and Parx with respect to these documents are overruled in part and sustained in part; Eckert and HMS shall produce these documents with appropriate redactions.

### F. Business Conversations

HMS has produced for *in camera* review a short set of text messages exchanged between Stewart and McKeon on February 20, 2020, described in HMS's log as concerning the "POM lawsuit" against Eckert: HMS-001322 and HMS-001324. But while this text message conversation may have indirectly involved the instant lawsuit by POM against Eckert, upon *in camera* review, it is clear that these communications do not involve any legal advice or services, and they were created in the ordinary course of law firm business. The conversation between the two lawyers concerned Stewart's efforts to retain Parx as a client, which required discussions with various members of the client's board of directors. The objections by Eckert, HMS, and Parx are overruled, and documents HMS-001322 and HMS-001324 shall be produced to the plaintiff.

## G. Lobbying and Public Affairs Communications

Many entries on Eckert's privilege log identify communications with lobbyists and public relations professionals. In particular, these include emails exchanged with Richard Gmerek and Sean Schafer, both of whom are lawyer-lobbyists, and with Pete Shelly and Charlie Lyons, both of whom are non-lawyer public affairs professionals.

With respect to the lawyer-lobbyists, Gmerek and Schafer, it is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted). "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001). "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

> Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, including on matters that may also be the subject of the lobbying efforts."

*Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, in evaluating communications with Gmerek and Schafer,[10] we must look to see whether the primary or predominant

---

[10] Or other lawyers involved in these lobbying discussions.

purpose of the communication was to procure *legal advice*, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165; *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

With respect to the non-lawyer public affairs professionals, Shelly and Lyons, such communications generally are not protected by attorney-client privilege because they predominantly relate to standard public relations or messaging issues, rather than legal advice or issues. *See In re Riddell Concussion Reduction Litig.*, Civil No. 13-7585 (JBS/JS), 2016 WL 7108455, at *9 (D.N.J. Dec. 5, 2016). "A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that does not transform their coordination of a campaign into legal advice." *Haugh v. Schroder Inv.*

*Mgmt. North America, Inc.*, No. 02 Civ.9755 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003); *see also Riddell*, 2016 WL 7108455, at *9 (quoting *Haugh* and *NXIVM*); *Chevron*, 749 F. Supp. 2d at 165 n.142 (quoting *Haugh*); *NXIVM*, 241 F.R.D. at 141 (citing *Haugh*). Communications such as these are protected only "if the public relations consultants' communications are made in connection with ongoing or anticipated litigation and the [public relations] advice is directed at supporting the client's litigation position, or the P.R. input is necessary for an attorney to provide legal advice." *Riddell*, 2016 WL 7108455, at *9.

Based on our *in camera* review, the following documents are non-privileged communications concerning lobbying or public relations advice or services. Any legal advice contained therein is no more than incidental to the predominant lobbying or public relations purposes of these documents.[11] The objections by Eckert, HMS, and Parx are overruled, and the following documents shall be produced to the plaintiffs:

1) 2019_04_15_11_30_49.pdf      2) 2019_05_02_13_49_59.pdf

---

[11] We note that document 2019_05_02_13_49_59.pdf includes a legal memorandum as an attachment, but the email itself indicates that this memorandum was previously disclosed to government attorneys and other third parties, and thus it is not privileged. We further note that several other documents include drafts of legal opinions prepared for dissemination to legislators or other non-privileged recipients.

3)  2019_05_02_15_29_57.pdf
4)  2019_05_02_16_40_39.pdf
5)  2019_05_28_16_03_43.pdf
6)  2019_05_28_16_22_48.pdf
7)  2019_05_29_12_09_56.pdf
8)  2019_06_03_15_53_47.pdf
9)  2019_06_12_16_55_18.pdf
10) 2019_06_14_14_19_52.pdf
11) 2019_06_14_14_29_36.pdf
12) 2019_06_14_14_56_58.pdf
13) 2019_06_14_17_21_16.pdf
14) 2019_06_14_17_50_13.pdf
15) 2019_06_14_17_51_46.pdf
16) 2019_06_17_16_05_21.pdf
17) 2019_06_17_16_51_49.pdf
18) 2019_06_17_17_22_56.pdf
19) 2019_06_17_17_30_08.pdf
20) 2019_11_20_16_48_14.pdf
21) 2019_11_20_17_26_23.pdf
22) 2019_11_20_17_39_02.pdf
23) 2019_11_20_18_09_05.pdf
24) 2019_11_20_18_19_20.pdf
25) 2019_11_20_18_31_03.pdf
26) 2019_11_20_18_35_51.pdf
27) 2019_11_20_18_42_52.pdf
28) 2019_11_21_09_59_17.pdf
29) 2019_11_21_11_33_54.pdf
30) 2019_11_21_13_09_31.pdf
31) 2019_11_21_13_26_27.pdf
32) 2019_11_21_14_08_51.pdf
33) 2019_11_21_14_19_51.pdf
34) 2019_11_21_14_28_53.pdf
35) 2019_11_21_14_31_13.pdf
36) 2019_11_21_14_32_31.pdf
37) 2019_11_21_14_57_04.pdf
38) 2019_11_21_15_00_21.pdf

39) 2019_11_22_09_32_09.pdf
40) 2019_11_22_11_57_40.pdf
41) 2019_11_22_17_36_12.pdf
42) 2019_12_09_23_08_38.pdf
43) 2019_12_10_07_02_32.pdf
44) 2019_12_10_07_07_26.pdf
45) 2019_12_10_09_24_14.pdf
46) 2019_12_10_09_25_46.pdf
47) 2019_12_11_23_24_42.pdf
48) 2019_12_11_23_39_21.pdf
49) 2019_12_13_10_10_12.pdf
50) 2019_12_13_10_12_21.pdf
51) 2019_12_13_10_13_06.pdf
52) 2019_12_13_11_16_51.pdf
53) 2019_12_13_13_31_21.pdf
54) 2019_12_13_13_47_48.pdf
55) 2019_12_19_13_34_47.pdf
56) 2019_12_31_11_12_17.pdf
57) 2020_02_05_16_41_30.pdf
58) 2020_02_07_10_34_48.pdf
59) 2020_03_04_16_39_04.pdf
60) 2020_03_04_16_48_08.pdf
61) 2020_03_04_17_42_47.pdf
62) 2020_03_04_17_51_05.pdf
63) 2020_03_04_18_05_41.pdf
64) 2020_03_06_10_43_08.pdf
65) 2020_03_20_10_09_48.pdf
66) 2020_03_20_10_12_30.pdf
67) 2020_03_21_08_30_59.pdf
68) 2020_03_22_13_31_45.pdf
69) HMS-000064–HMS-000072
70) HMS-000073–HMS-000075
71) HMS-000076–HMS-000083
72) HMS-000084–HMS-000085
73) HMS-000086–HMS-000087

In addition, the following documents are email strings in which the top email is itself a non-privileged communication concerning lobbying or public relations advice or services, but prior emails providing legal advice or analysis with respect to lobbying issues are included in the email string. The following documents shall be produced, but with the emails sent by Richard Gmerek at 11:06 a.m. on March 1, 2019, and by Mark Stewart at 11:01 a.m. on March 1, 2019, redacted:

1) 2019_03_01_11_39_44.pdf    3) 2019_03_01_15_58_37.pdf
2) 2019_03_01_15_53_16.pdf    4) 2019_03_01_16_00_10.pdf

## H. Subject-Matter Waiver by Selective Disclosure

The plaintiff contends that, in Commonwealth Court filings, Parx selectively disclosed the substance of communications between McKeon and Stewart with respect to preparation of an amicus brief, including a printout of a text message exchange as to which HMS and Parx have asserted a claim of attorney-client privilege in this litigation. POM argues that this selective disclosure effects a broad subject-matter waiver of attorney-client privilege with respect to all communications between Eckert and HMS attorneys regarding the same subject matter, POM's Commonwealth Court cases. While the federal courts have recognized a

broad subject-matter waiver doctrine with respect to federal claims, "Pennsylvania courts have not adopted subject-matter waiver." *Bagwell v. Pennsylvania Dep't of Educ.*, 103 A.3d 409, 419 (Pa. Commw. Ct. 2014). As we have previously noted, in a diversity action such as this one, Pennsylvania state law governs whether attorney-client privilege applies to the documents at issue. *See* Fed. R. Evid. 501. Thus, we do not find a broad subject-matter waiver appropriate in this case.

We do find, however, that any applicable attorney-client privilege or work-product protection with respect to HMS-000060–HMS-000063 has been waived based on the specific disclosure or description of the substance of these text messages between Stewart and McKeon in the Commonwealth Court proceedings. Indeed, not only was it described in Parx's filings there, but HMS-000060 itself was filed as an exhibit.

## I. **Judicial Estoppel and Implied Waiver of Privilege**

Eckert has repeatedly, and unequivocally, denied that it has represented an adverse party in litigation against POM. In its answer and affirmative defenses in this case, Eckert expressly pleaded that: (1) "Eckert does not represent a party adverse to POM in litigation," (Doc. 9 ¶ 18); and (2) "Eckert is not counsel in any litigation where POM is an

adverse party," (*id.* at 13 (Seventeenth Affirmative Defense)). In the Joint Case Management Plan submitted by both parties, Eckert stated that: "Eckert is not involved in [POM's Commonwealth Court] case." (Doc. 18 § 1.1.) In its brief in opposition to the plaintiff's motion for a preliminary injunction, Eckert stated that: "Eckert is not representing parties in litigation adverse to POM." (Doc. 21, at 2.)

POM has sought to test these representations through discovery, requesting the production of documents by Eckert that

> refer or relate to or otherwise embody communications with any person or entity concerning the matter captioned *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Department of Revenue and City of Philadelphia*, docketed at 418 M.D. 2018 in the Commonwealth Court of Pennsylvania, or the matter captioned *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, docketed at 503 M.D. 2018 in the Commonwealth Court of Pennsylvania, including, but not limited to, communications with any *amicus* counsel representing [Parx] and communications to municipal, government and regulatory bodies that reference or relate to either action.

(Doc. 51-6, at 3.) POM has also served an interrogatory requesting that Eckert

> [i]dentify and describe with particularity all communications that any Eckert lawyer, including Mark S. Stewart, had with any *amicus* counsel for [Parx]

> in the matter captioned *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, docketed at No. 503 M.D. 2018 in the Commonwealth Court, including, but not limited to, at the hearing in the Commonwealth Court on January 15, 2020.

(Doc. 51-7, at 3.) Eckert has withheld responsive documents and refused to answer the interrogatory on the ground that such documents and information are protected from disclosure by attorney-client privilege.[12] In both cases, Parx has moved to intervene as a party-opponent of POM,[13] and in one of these cases, it has appeared as *amicus curiae* in opposition to a motion for a preliminary injunction by POM as well. In both cases, Parx has appeared through counsel of record Kevin McKeon and Adrian King. The withheld documents—and presumably any information responsive to the interrogatory response as well—involve communications between Stewart and other Eckert attorneys, on the one hand, and King, McKeon, and Parx on the other.

Perhaps it goes without saying, but "[f]irst and foremost, the attorney-client privilege applies only if an attorney-client relationship exists." *Bare v. Cruz*, Civil Action No. 10-4546, 2012 WL 1138591, at *3

---

[12] Eckert has also invoked the work-product doctrine.
[13] The motions to intervene remain pending in both cases.

(E.D. Pa. Apr. 2, 2012). "The privilege requires the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer; the key is whether there has been a professional consultation with an attorney, who acts or advises as such." *Constand v. Cosby*, 232 F.R.D. 494, 502 (E.D. Pa. 2006) (quoting *Okum v. Unemployment Compensation Bd. of Review*, 465 A.2d 1324, 1325 (Pa. Commw. Ct. 1983)). Here, in this litigation, Eckert has taken the position that it is not involved in any other litigation where POM is an adverse party. At the same time, Eckert has taken the position that its communications with counsel representing Parx and other clients actively opposing POM in the Commonwealth Court cases are protected by attorney-client privilege, which necessarily requires an attorney-client relationship between Eckert and those adverse parties. The two positions cannot be reconciled.

Judicial estoppel is an equitable doctrine that entails "the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." *In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010). "Though there is no rigid test for judicial estoppel, three factors inform a federal court's

decision whether to apply it: there must be (1) 'irreconcilably inconsistent positions;' (2) 'adopted . . . in bad faith;' and (3) 'a showing that . . . estoppel address[es] the harm and . . . no lesser sanction [is] sufficient.'" *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (quoting *Chao v. Roy's Constr., Inc.*, 517 F.3d 180 186 n.5 (3d Cir. 2008)) (alterations in original).

Based on our *in camera* review, and under the circumstances presented in this case, we find the defendant is estopped from asserting attorney-client privilege with respect to the following documents based on its express statements in pleadings and other papers before this court that it does not represent an adverse party, such as Parx, and it is not otherwise "involved" in the POM Commonwealth Court cases. *See G-I Holdings*, 586 F.3d at 262 (noting that judicial estoppel may be applied to neutralize threats to judicial integrity even if a court has not accepted the initial position); *In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (E.D. Pa. Bankr. 2013) (estopping a debtor-plaintiff in an adversary action from recharacterizing his son's role with the company to assert privilege when he had previously contended that his son had no role with the company). Moreover, to the extent Parx has adopted Eckert's

privilege log and seeks to interpose attorney-client privilege on its own behalf with respect to documents in Eckert's possession, Parx is likewise estopped from asserting attorney-client privilege with respect to these documents based on its papers filed in the Commonwealth Court cases, in which Parx and its counsel of record there (HMS) have expressly represented that "Eckert is not counsel in this case" and implicitly represented that Eckert played no substantial role in Parx's activities in those cases. (*See* Doc. 82, at 162–68.)

In particular, we find that Eckert and Parx have adopted irreconcilably inconsistent positions with respect to whether Eckert represented and provided legal advice and services to Parx in connection with the Commonwealth Court cases, where POM and Parx were directly adverse, when denying liability or opposing disqualification on the one hand versus invoking attorney-client privilege in attempting to shield documents concerning that (non-)representation from disclosure. We find that, based on our *in camera* review of these purportedly privileged documents, these inconsistent positions were arguably adopted in bad faith. Finally, we find that, under the particular circumstances of this case, the estoppel addresses the harm to POM, Eckert's other client, and

no lesser sanction would suffice.

We further find that these documents are not protected by the work-product doctrine. "Many courts faced with the issue of the production of opinion work product have recognized an exception to Rule 26(b)(3) protection for work product which concerns the activities of counsel that are directly in issue. *Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127, 130 (M.D.N.C. 1989); *see also Hartman v. Banks*, 164 F.R.D. 167, 170 (E.D. Pa. 1995) ("[O]pinion work product can be discovered in cases in which the opinions of an attorney or his agent are themselves at issue."); *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 567 (E.D. Pa. 1989) ("Allegations of . . . misconduct while rendering legal advice also can place attorneys' mental impressions and opinions directly at issue and eliminate work product protection."); *Truck Ins. Exch. v. St. Paul Fire & Marine Ins. Co.*, 66 F.R.D. 129, 136 (E.D. Pa. 1975) ("[T]he materials in [counsel's] file are sought here because they are at issue in this action before the Court. The activities of counsel in the underlying lawsuit are the basis of the [defendant's] defense in this case."); *Sec. & Exch. Comm'n v. Nat'l Student Mktg. Corp.*, 18 Fed. R. Serv. 2d 1302, 1974 WL 415, at *3 (D.D.C. June 25, 1974) (no work-product protection

where production requests were served on law firm as defendants and activities of counsel were at issue in the action before the court). *See generally* 8 Richard L. Marcus, *Federal Practice and Procedure* § 2026 (3d ed. 2020) ("[C]ourts have found such disclosure justified principally where the material is directly at issue, particularly if the lawyer or law firm is a party to the litigation."); 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.70[6][c] (3d ed. 2020) ("A party . . . impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue."). Courts have also held that the work-product doctrine cannot shield a lawyer's papers from discovery where that work product implicates or creates a conflict of interest. *See Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 286 (E.D. Pa. 2002); *cf. Sunrise Sec. Litig.*, 130 F.R.D. at 597 (no attorney-client privilege where law firm's communication with in-house counsel implicated or created a conflict between law firm's fiduciary duties to itself and to the client seeking to discover the communication); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 368–70 (E.D. Pa. 1975) (finding attorney-client privilege did not apply where a conflicted attorney subordinated one client's interest

to another's).

Accordingly, the objections of Eckert, HMS, and Parx are overruled, and the following documents shall be produced to the plaintiffs:

| | | | |
|---|---|---|---|
| 1) | 2019_12_13_13_45_48.pdf | 31) | 2020_01_16_19_41_46.pdf |
| 2) | 2019_12_13_15_24_35.pdf | 32) | 2020_01_17_16_23_45.pdf |
| 3) | 2019_12_13_16_58_02.pdf | 33) | 2020_01_17_16_39_22.pdf |
| 4) | 2019_12_13_17_04_24.pdf | 34) | 2020_01_17_16_45_14.pdf |
| 5) | 2019_12_13_17_05_37.pdf | 35) | 2020_01_17_16_51_18.pdf |
| 6) | 2019_12_14_11_06_16.pdf | 36) | 2020_01_19_16_01_31.pdf |
| 7) | 2019_12_16_16_56_58.pdf | 37) | 2020_01_22_16_28_25.pdf |
| 8) | 2019_12_18_02_55_49.pdf | 38) | 2020_01_22_18_44_52.pdf |
| 9) | 2019_12_18_12_12_16.pdf | 39) | 2020_01_23_07_21_42.pdf |
| 10) | 2019_12_18_12_57_27.pdf | 40) | 2020_01_23_09_19_41.pdf |
| 11) | 2019_12_18_14_04_35.pdf | 41) | 2020_01_23_09_40_35.pdf |
| 12) | 2019_12_18_14_12_23.pdf | 42) | 2020_01_23_10_54_41.pdf |
| 13) | 2019_12_18_14_42_06.pdf | 43) | 2020_01_23_10_58_33.pdf |
| 14) | 2019_12_18_15_14_03.pdf | 44) | 2020_01_23_11_19_43.pdf |
| 15) | 2019_12_19_16_22_36.pdf | 45) | 2020_01_23_11_29_40.pdf |
| 16) | 2020_01_13_13_05_02.pdf | 46) | 2020_01_26_22_47_08.pdf |
| 17) | 2020_01_13_13_26_46.pdf | 47) | 2020_01_26_22_45_37.pdf |
| 18) | 2020_01_13_13_39_23.pdf | 48) | 2020_01_27_19_04_50.pdf |
| 19) | 2020_01_13_17_16_53.pdf | 49) | 2020_01_30_11_34_32.pdf |
| 20) | 2020_01_13_18_05_01.pdf | 50) | 2020_01_30_11_34_33.pdf |
| 21) | 2020_01_14_15_49_07.pdf | 51) | 2020_01_30_12_03_36.pdf |
| 22) | 2020_01_14_15_55_27.pdf | 52) | 2020_01_30_13_04_55.pdf |
| 23) | 2020_01_14_16_24_06.pdf | 53) | 2020_01_30_13_06_10.pdf |
| 24) | 2020_01_14_17_37_03.pdf | 54) | 2020_02_04_12_05_21.pdf |
| 25) | 2020_01_14_19_46_34.pdf | 55) | 2020_02_04_12_53_05.pdf |
| 26) | 2020_01_14_23_55_57.pdf | 56) | 2020_02_04_16_21_41.pdf |
| 27) | 2020_01_15_07_49_00.pdf | 57) | 2020_02_05_10_24_31.pdf |
| 28) | 2020_01_15_07_50_51.pdf | 58) | 2020_02_06_08_19_01.pdf |
| 29) | 2020_01_15_07_51_56.pdf | 59) | 2020_02_06_09_56_51.pdf |
| 30) | 2020_01_16_18_09_26.pdf | 60) | 2020_02_07_14_10_16.pdf |

61) 2020_02_07_14_10_56.pdf
62) 2020_02_07_16_11_26.pdf
63) 2020_02_07_16_19_05.pdf
64) 2020_02_07_16_47_19.pdf
65) 2020_02_10_14_38_15.pdf
66) 2020_02_10_17_48_35.pdf
67) 2020_02_12_11_58_58.pdf
68) 2020_02_12_11_59_15.pdf
69) 2020_02_13_17_35_37.pdf
70) 2020_02_18_10_57_43.pdf
71) 2020_02_20_16_10_20.pdf
72) 2020_02_20_16_16_24.pdf
73) 2020_02_27_15_07_59.pdf
74) 2020_04_07_11_31_00.pdf
75) 2020_05_01_14_25_10.pdf
76) 2020_05_01_14_33_41.pdf
77) 2020_05_01_17_12_49.pdf
78) 2020_05_01_23_09_28.pdf
79) 2020_05_04_09_49_02.pdf
80) 2020_05_04_12_24_38.pdf
81) 2020_05_04_12_26_39.pdf
82) 2020_05_04_12_28_31.pdf
83) 2020_05_07_10_48_18.pdf
84) 2020_05_07_11_23_40.pdf
85) 2020_05_07_11_24_31.pdf
86) 2020_05_07_17_02_24.pdf
87) 2020_05_11_12_53_48.pdf
88) 2020_05_12_10_26_15.pdf
89) 2020_05_12_17_19_04.pdf
90) 2020_05_14_11_42_01.pdf
91) 2020_05_15_10_13_45.pdf
92) 2020_05_15_16_12_26.pdf
93) HMS-000088–HMS-000112
94) HMS-000113
95) HMS-000114–HMS-000193
96) HMS-000194–HMS-000198
97) HMS-000199–HMS-000200
98) HMS-000201–HMS-000202

99) HMS-000203–HMS-000205
100) HMS-000206–HMS-000208
101) HMS-000209–HMS-000249
102) HMS-000250–HMS-000253
103) HMS-000254–HMS-000257
104) HMS-000258–HMS-000261
105) HMS-000262–HMS-000555
106) HMS-000556–HMS-000557
107) HMS-000558
108) HMS-000559–HMS-000592
109) HMS-000593–HMS-000594
110) HMS-000595–HMS-000628
111) HMS-000629–HMS-000630
112) HMS-000631–HMS-000633
113) HMS-000634–HMS-000637
114) HMS-000638–HMS-000671
115) HMS-000672
116) HMS-000673–HMS-000708
117) HMS-000710
118) HMS-000723–HMS-000724
119) HMS-000733–HMS-000736
120) HMS-000737–HMS-000739
121) HMS-000740–HMS-000741
122) HMS-000742
123) HMS-000743–HMS-000744
124) HMS-000812–HMS-000813
125) HMS-000814
126) HMS-000817–HMS-000818
127) HMS-000819–HMS-000820
128) HMS-000821–HMS-000823
129) HMS-000824–HMS-000831
130) HMS-000832–HMS-000833
131) HMS-000834–HMS-000839
132) HMS-000840–HMS-000842
133) HMS-000843–HMS-000846
134) HMS-000847
135) HMS-000848–HMS-000860
136) HMS-000861–HMS-000865

137) HMS-000866–HMS-000914
138) HMS-000915–HMS-000923
139) HMS-000924
140) HMS-000925
141) HMS-000927–HMS-000928
142) HMS-000929
143) HMS-000930
144) HMS-000931–HMS-000933
145) HMS-000934–HMS-000935
146) HMS-000939–HMS-000941
147) HMS-000942–HMS-000945
148) HMS-000946–HMS-000948
149) HMS-000985–HMS-000997
150) HMS-000998–HMS-001007
151) HMS-001008–HMS-001012
152) HMS-001013–HMS-001016
153) HMS-001017–HMS-001020
154) HMS-001021–HMS-001022
155) HMS-001023–HMS-001029
156) HMS-001030–HMS-001048
157) HMS-001057–HMS-001061
158) HMS-001062–HMS-001064
159) HMS-001065–HMS-001066

160) HMS-001067–HMS-001076
161) HMS-001077–HMS-001080
162) HMS-001081–HMS-001082
163) HMS-001120–HMS-001129
164) HMS-001130
165) HMS-001133–HMS-001161
166) HMS-001162–HMS-001194
167) HMS-001195–HMS-001197
168) HMS-001198
169) HMS-001201–HMS-001202
170) HMS-001203–HMS-001204
171) HMS-001205–HMS-001220
172) HMS-001221–HMS-001222
173) HMS-001223–HMS-001251
174) HMS-001252–HMS-001253
175) HMS-001254–HMS-001281
176) HMS-001282–HMS-001298
177) HMS-001299–HMS-001301
178) HMS-001302–HMS-001306
179) HMS-001307–HMS-001310
180) HMS-001311–HMS-001315
181) HMS-001316–HMS-001319
182) HMS-001326–HMS-001330

## J. Privileged Documents

Notwithstanding the foregoing, we find that some of the documents presented for *in camera* review have been properly designated as privileged attorney-client communications or protected work product, and that the applicable attorney-client privilege or work-product protection has not been waived.

### *1. Eckert and HMS Attorney-Client Privileged Documents*

Based on our *in camera* review, the following documents are protected by attorney-client privilege and are properly withheld from disclosure. These generally include three categories of documents: (1) attorney-client privileged communications regarding legislative, lobbying, or public relations issues in which the primary or predominant purpose of the communication was to procure or provide legal advice; (2) attorney-client privileged communications regarding the POM Commonwealth Court cases exchanged before efforts by Parx to intervene as a party or amicus curiae were undertaken; and (3) attorney-client privileged communications regarding other subjects, including other litigation. The defendant's objections are sustained, and the following documents shall be withheld from production:

| | | | |
|---|---|---|---|
| 1) | 2017_02_14_15_34_42.pdf | 13) | 2019_03_01_11_06_07.pdf |
| 2) | 2017_06_20_00_02_56.pdf | 14) | 2019_04_25_17_06_08.pdf |
| 3) | 2017_07_06_11_46_57.pdf | 15) | 2019_04_26_11_47_31.pdf |
| 4) | 2018_03_20_10_09_35.pdf | 16) | 2019_05_06_12_02_53.pdf |
| 5) | 2018_03_20_10_12_26.pdf | 17) | 2019_05_06_14_48_53.pdf |
| 6) | 2018_05_09_16_22_26.pdf | 18) | 2019_05_06_15_43_12.pdf |
| 7) | 2018_05_10_13_11_40.pdf | 19) | 2019_05_09_22_23_18.pdf |
| 8) | 2018_11_27_14_04_27.pdf | 20) | 2019_05_10_09_31_19.pdf |
| 9) | 2018_11_28_15_13_42.pdf | 21) | 2019_06_18_16_24_48.pdf |
| 10) | 2019_01_24_16_07_34.pdf | 22) | 2019_06_18_16_45_29.pdf |
| 11) | 2019_02_13_12_07_54.pdf | 23) | 2019_07_25_14_26_00.pdf |
| 12) | 2019_03_01_11_01_08.pdf | 24) | 2019_07_25_15_04_52.pdf |

25)  2019_08_14_12_40_15.pdf
26)  2019_08_16_10_16_13.pdf
27)  2019_08_16_10_35_13.pdf
28)  2019_08_16_10_42_44.pdf
29)  2019_11_20_09_28_23.pdf
30)  2019_11_20_09_43_21.pdf
31)  2019_11_20_10_19_08.pdf
32)  2019_11_20_10_39_57.pdf
33)  2019_11_20_11_09_38.pdf

34)  2019_12_10_13_38_10.pdf
35)  2019_12_10_22_33_45.pdf
36)  2019_12_31_12_01_32.pdf
37)  2020_01_06_10_18_00.pdf
38)  2020_01_06_13_06_32.pdf
39)  2020_02_09_12_38_53.pdf
40)  2020_02_10_09_56_26.pdf
41)  HMS-000711–HMS-000713

### 2. *Parx Privileged Documents*

Due to its document retention policies, Parx has identified few documents from its own records responsive to the subpoena served upon it by POM. In addition to adopting the objections asserted by Eckert in its privilege log with respect to documents in Eckert's possession, Parx has served a privilege log identifying four email messages and interposing objections to disclosure based on attorney-client privilege and work-product protection. (*See* Doc. 49, at 8.) Parx has provided the court with copies of these emails for *in camera* review, with each page sequentially Bates-labeled PARX000001 through PARX000025. Based on our *in camera* review, all of these documents are protected by attorney-client privilege and are properly withheld from disclosure. With respect to these documents, Parx's objections are sustained, and the documents Bates-labeled PARX000001 through PARX000025 shall be withheld from

production.

### 3. *Documents Protected by the Work-Product Doctrine*

Based on our *in camera* review, the following documents are not protected by attorney-client privilege,[14] but they are properly withheld from disclosure under the work-product doctrine, as they were prepared in anticipation of *this* litigation and their disclosure to HMS or Parx and their respective agents did not waive work-product protection. The objections by Eckert, HMS, and Parx are sustained, and the following documents shall be withheld from production:

1)  2020_02_19_18_01_55.pdf
2)  2020_02_19_18_02_22.pdf
3)  2020_02_19_18_21_19.pdf
4)  2020_02_19_18_55_53.pdf
5)  2020_02_20_11_05_59.pdf
6)  2020_02_21_14_56_37.pdf
7)  2020_02_21_15_12_13.pdf
8)  HMS-001320–HMS-001321
9)  HMS-001322
10) HMS-001324

---

[14] These documents are a string of emails in which Stewart advised Parx of the instant federal lawsuit brought by POM against Eckert and provided additional background information.

## IV.  CONCLUSION

For the foregoing reasons, each of the four motions before us will be granted in part and denied in part. With respect to documents identified above as duplicative of other documents or protected by attorney-client privilege or the work-product doctrine, the objections of Eckert, HMS, and Parx are sustained and said documents shall be withheld from production. With respect to documents identified above as non-privileged and non-protected communications with government attorneys, transmittal messages, business communications, and lobbying or public affairs communications, or as communications for which any attorney-client privilege has been waived or judicially estopped and work-product doctrine does not apply, the objections of Eckert, HMS, and Parx are overruled and said documents shall be produced to the plaintiff, subject to any redactions also described above.

An appropriate order follows.

Dated: February 16, 2021                    ***s/Joseph F. Saporito, Jr.***
                                            JOSEPH F. SAPORITO, JR.
                                            United States Magistrate Judge