# In the United States District Court for the Middle District of Pennsylvania

PACE-O-MATIC, INC.      )
)
         *Plaintiff,*    )   [ELECTRONICALLY FILED]
)
      *vs.*      )   Docket No. 20-292
)
ECKERT, SEAMANS, CHERIN   )   JUDGE WILSON
& MELLOT, LLC         )
)
       *Defendant.*   )

---

## BRIEF OF GREENWOOD GAMING & ENTERTAINMENT, D/B/A PARX CASINO, IN SUPPORT OF ITS APPEAL PURSUANT TO L.R. 72.2

---

## GA BIBIKOS LLC

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for*
*Greenwood Gaming & Entertainment*
*d/b/a Parx Casino*

March 2, 2021

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY ................................................. 1

II.   BACKGROUND ........................................................................ 3

III.  BASIS FOR OBJECTIONS ............................................................ 8

      A.    The attorney-client privilege protects the Section I Documents from disclosure. .................................................... 9

      B.    Judicial estoppel does not apply. ........................................ 12

             1.    The magistrate judge should not have invoked judicial estoppel sua sponte. ...................................... 12

             2.    Judicial estoppel is not an exception to privilege. ........ 14

             3.    The magistrate judge misapplied the judicial-estoppel doctrine. .......................................................... 15

IV.  CONCLUSION .......................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Bare v. Cruz*, Civil Action No. 10-4546, 2012 WL 1138591, at
   *3 (E.D. Pa. Apr. 2, 2012) ...............................................................6

*Chao v. Roy's Constr., Inc.*, 517 F.3d 180 186 n.5 (3d Cir.
   2008) ...........................................................................................7, 15

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 34 F. App'x 818,
   825, 2002 WL 121932, at *8 (3d Cir. 2002) ...........................13, 18

*Constand v. Cosby*, 232 F.R.D. 494, 502 (E.D. Pa. 2006) .........................6

*G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d
   Cir. 2009)................................................................................*passim*

*In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (E.D.
   Pa. Bankr. 2013) ................................................................7, 14, 15

*In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010) ...........................................6

*Montrose Medical Group v. Bulger*, 243 F.3d 773, 782 (3d
   Cir. 2001)................................................................................13, 18

*Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa.
   Super. 2007) ............................................................................10, 14

*Okum v. Unemployment Compensation Bd. of Review*, 465
   A.2d 1324, 1325 (Pa. Commw. Ct. 1983) .........................................6

*Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271
   (W.D. Pa. 2014) ..............................................................................10

## STATUTES

42 Pa.C.S. § 5928 ....................................................................................14

**OTHER AUTHORITIES**

1 Paul R. Rice, *Attorney Client Privilege in the United States* §
    7:9 (2d ed. 1999) ................................................................. 10

**RULES**

F.R.E. 501 ............................................................................. 14

L.R. 72.2 ........................................................................ *passim*

**ATTACHMENTS**

Tab A:    Order and Opinion

Tab B:    Commonwealth Court Letter

Greenwood Gaming & Entertainment, d/b/a Parx Casino ("Parx"), files its brief in support of its appeal of the order and opinion of Magistrate Judge Saporito, Jr., granting in part and denying in part a motions of Parx; Eckert, Seamans, Cherin & Mellot, LLC ("Eckert"); Hawke McKeon & Sniscak ("HMS") to quash subpoenas issued by Pace-O-Matic, Inc. ("POM") and/or for a protective order in the above matter.

## I.  INTRODUCTION AND SUMMARY

Parx is constrained to file this appeal.  The magistrate judge correctly granted Parx's motion to quash based on attorney-client privilege. However, the magistrate judge *sua sponte* invoked "judicial estoppel" as a basis to order the disclosure of Parx's privileged documents in possession of Eckert and HMS. *See* Tab "A" (opinion and order).

To that end, the magistrate judge concluded that, to the extent Parx is aligned with Eckert's position, Parx "arguably" adopted Eckert's allegedly "irreconcilable" positions in "bad faith" because Eckert's pleadings and the joint case-management plan state that Eckert does not represent any party in Commonwealth Court litigation adverse to POM. The magistrate judge reached that conclusion even though Eckert informed him directly that Eckert has not entered any appearance in that

case but had assisted Parx and other casinos in that litigation while HMS entered a formal appearance to handle the matter for Parx and the other casinos as possible intervenors.

As described below, the privilege applies to the documents, and there is no waiver or exception to the attorney-client privilege that applies in this case. The analysis should have ended there. The magistrate judge erred by *sua sponte* raising judicial estoppel as an exception to privilege, particularly without first giving Parx or Eckert or HMS any opportunity to address the issue and the allegation of "arguable bad faith." In any event, judicial estoppel does not justify the disclosure of otherwise protected materials. There certainly is no evidence that Parx or its law firms engaged in any "bad faith" here.

The Court should vacate for yet another reason. POM has forwarded the opinion and order to Commonwealth Court and in its cover letter highlighted the magistrate judge's unsupported statements and conclusions that Parx somehow "arguably" engaged in "bad faith." *See* Tab "B" (Commonwealth Court Letter). The cover letter is a naked attempt to cast Parx in an unwarranted negative light before the state court judge. There is no substantive reason to share the magistrate

judge's opinion; it is not binding or controlling on the state court regarding POM's efforts to disqualify HMS as Parx's attorneys nor does it have anything to do with the merits of the case.

Accordingly, the Court should grant the appeal, vacate the order and opinion in part, and order such other relief the Court deems appropriate.

## II. BACKGROUND

Parx is not a party here. In this case, POM alleges that Eckert breached a fiduciary duty to POM by having separate attorneys in separate offices represent POM in Virginia and also represent Parx in state-court litigation in Pennsylvania in which the interests of Parx and POM are adverse, including a matter pending in Commonwealth Court.

In its pleadings, Eckert alleged that it "does not represent a party adverse to POM in litigation" and "is not counsel in any litigation where POM is an adverse party." (Doc. 9.). In the joint case-management plan, on which the magistrate judge relied in substantial part (despite Local Rule 16 which states that "[t]he information in the case management form will not be deemed an admission by any party"), Eckert stated it is not involved in a case pending in Commonwealth Court involving POM.

(Doc. 18.) In its brief in opposition to the plaintiff's motion for a preliminary injunction, Eckert stated that "Eckert is not representing parties in litigation adverse to POM." (Doc. 21.)

POM served discovery requests on Eckert and a subpoena on another non-party (HMS) calling for documents relating to their representation of Parx and various state court proceedings, including the Commonwealth Court proceeding. POM also served a subpoena *duces tecum* on Parx calling for documents relating to communications about conflicts, consent to concurrent representation, withdrawal of representation, and this litigation.

Parx lodged objections based on confidentiality, privilege, and attorney work product. Eckert and HMS asserted privilege on Parx's behalf with respect to Parx's privileged documents in their possession. The parties filed numerous motions and briefs supporting their respective positions, and the magistrate judge held oral argument on all motions. At oral argument, counsel for Eckert in particular explained that Eckert already produced non-privileged documents demonstrating Eckert's involvement in the Commonwealth Court matter on behalf of

Parx and other casinos and that there is "no question" Eckert was assisting Parx in the Commonwealth Court matter. *See* Tr. at 30-40.

Counsel also explained the distinction between entering a formal appearance on behalf of Parx in the case *versus* being part of a team of lawyers representing Parx in casino-related matters both on the policy and law side of the issue, including advice on positions favorable to all casinos (not just Parx) in Commonwealth Court. *See* Tr. at 30-40.

After an *in camera* review, the magistrate judge issued the order and opinion subject to this appeal (Docs. 87 and 88). The magistrate judge correctly quashed the Parx subpoena based on privilege. However, in Discussion Section III, Subsection I, and corresponding ordering paragraphs, the magistrate judge ordered the disclosure of Parx's privileged documents that HMS and Eckert have in their possession. In that portion of the opinion, the magistrate judge stated in pertinent part as follows (excerpted here for the Court's benefit):

> Eckert has withheld responsive documents and refused to answer the interrogatory on the ground that such documents and information are protected from disclosure by attorney-client privilege. In both cases, Parx has moved to intervene as a party-opponent of POM, and in one of these cases, it has appeared as amicus curiae in opposition to a motion for a preliminary injunction by POM as well. In both cases, Parx has appeared through counsel of record Kevin McKeon [HMS]

5

and Adrian King. *The withheld documents—and presumably any information responsive to the interrogatory response as well—involve communications between Stewart and other Eckert attorneys, on the one hand, and King, McKeon, and Parx on the other.*

Perhaps it goes without saying, but "[f]irst and foremost, the attorney-client privilege applies only if an attorney-client relationship exists." *Bare v. Cruz*, Civil Action No. 10-4546, 2012 WL 1138591, at *3 (E.D. Pa. Apr. 2, 2012). "The privilege requires the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer; the key is whether there has been a professional consultation with an attorney, who acts or advises as such." *Constand v. Cosby*, 232 F.R.D. 494, 502 (E.D. Pa. 2006) (quoting *Okum v. Unemployment Compensation Bd. of Review*, 465 A.2d 1324, 1325 (Pa. Commw. Ct. 1983)).

Here, in this litigation, Eckert has taken the position that it is not involved in any other litigation where POM is an adverse party. At the same time, Eckert has taken the position that its communications with counsel representing Parx and other clients actively opposing POM in the Commonwealth Court cases are protected by attorney-client privilege, which necessarily requires an attorney-client relationship between Eckert and those adverse parties. The two positions cannot be reconciled.

Judicial estoppel is an equitable doctrine that entails "the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." *In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010). "Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) 'irreconcilably inconsistent positions;' (2) 'adopted . . . in bad faith;' and (3) 'a showing that . . . estoppel address[es] the harm and . . . no lesser sanction [is] sufficient.'" *G-I Holdings, Inc. v. Reliance*

*Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (quoting *Chao v. Roy's Constr., Inc.*, 517 F.3d 180 186 n.5 (3d Cir. 2008)) (alterations in original).

Based on our in camera review, and under the circumstances presented in this case, we find the defendant is estopped from asserting attorney-client privilege with respect to the following documents based on its express statements in pleadings and other papers before this court that it does not represent an adverse party, such as Parx, and it is not otherwise "involved" in the POM Commonwealth Court cases. *See G-I Holdings*, 586 F.3d at 262 (noting that judicial estoppel may be applied to neutralize threats to judicial integrity even if a court has not accepted the initial position); *In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (E.D. Pa. Bankr. 2013) (estopping a debtor-plaintiff in an adversary action from recharacterizing his son's role with the company to assert privilege when he had previously contended that his son had no role with the company).

*Moreover, to the extent Parx has adopted Eckert's privilege log and seeks to interpose attorney-client privilege on its own behalf with respect to documents in Eckert's possession, Parx is likewise estopped from asserting attorney-client privilege with respect to these documents based on its papers filed in the Commonwealth Court cases, in which Parx and its counsel of record there (HMS) have expressly represented that "Eckert is not counsel in this case" and implicitly represented that Eckert played no substantial role in Parx's activities in those cases. (See Doc. 82, at 162–68.)*

In particular, *we find that Eckert and Parx have adopted irreconcilably inconsistent positions with respect to whether Eckert represented and provided legal advice and services to Parx in connection with the Commonwealth Court cases, where POM and Parx were directly adverse, when denying liability or opposing disqualification on the one hand versus invoking attorney-client privilege in attempting to shield documents concerning that (non-)representation from*

*disclosure. We find that, based on our in camera review of these purportedly privileged documents, these inconsistent positions were arguably adopted in bad faith. Finally, we find that, under the particular circumstances of this case, the estoppel addresses the harm to POM, Eckert's other client, and no lesser sanction would suffice.*

Slip Op. at 34-38 (emphasis added).

Based on this analysis, the magistrate judge ordered the disclosure of 182 documents held by Eckert and HMS (the "Section I Documents"). In light of the magistrate judge's conclusions and in particular the statement that Parx arguably "arguably" engaged in "bad faith," Parx filed appealed under Local Rule 72.2 and requested a stay of the order in part pending the Court's resolution. This is the supporting brief.

## III.   BASIS FOR OBJECTIONS

The Court should vacate Discussion Section III, Subsection I of the magistrate judge's opinion and corresponding ordering paragraphs. Under Local Rule 72.2, the Court may review any non-dispositive order of a magistrate judge in a case in which the magistrate is not presiding. *See* L.R. 72.2. "A judge of the court shall consider the appeal and *shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.* The judge may also reconsider sua sponte any matter determined by a magistrate judge under this rule." *Id.*

As described below, the attorney-client privilege protects the Section I Documents from disclosure; judicial estoppel is not an exception to the privilege; and in any event, there is no evidence of "bad faith" – arguable or otherwise – to support the magistrate judge's conclusion.

## A.   *The attorney-client privilege protects the Section I Documents from disclosure.*

As a threshold matter, the magistrate judge never concluded that the Section I Documents contain anything other than lawyer-client communications.  Instead, the magistrate judge seems to have held that Parx and Eckert waived their attorney-client *relationship* by allegedly disavowing that relationship in Commonwealth Court "arguably in bad faith" while using the attorney-client relationship as a basis to protect the Section I Documents from disclosure in this case.

The attorney-client privilege attaches when (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his subordinate; (3) the communication related to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort;

(4) the privilege has been claimed and is not waived. *Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007).

The attorney-client privilege applies when a lawyer and a client engage in communications for the purpose of securing legal advice, *e.g.*, either an opinion of law, legal services, or assistance in a legal matter. *Nationwide*, *supra*. In turn, "legal advice" means "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *See generally* 1 Paul R. Rice, *Attorney Client Privilege in the United States* § 7:9 (2d ed. 1999); *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271 (W.D. Pa. 2014) (communications about strengths/weaknesses of claim or defense, options, strategy, settlement constitute legal advice for purposes of apply attorney-client privilege).

Here, there is no question that the privilege applies to the Section I documents. The magistrate judge acknowledged that "[t]he withheld documents—and presumably any information responsive to the interrogatory response as well—*involve communications between Stewart and other Eckert attorneys, on the one hand, and King, McKeon, and Parx on the other*." *See* Slip Op. at 34 (emphasis added). Eckert and Parx have a long-standing attorney-client relationship, *see* Tr. at 30-40,

and the communications embodied in the documents between Eckert, Parx, and Parx's other lawyers are protected by privilege.

The magistrate judge incorrectly concluded that there is no attorney-client relationship between Eckert and Parx. If the magistrate judge is correct, then the Court should dismiss the complaint in this matter on the merits with prejudice because there can be no breach of Eckert's fiduciary duty to POM based on Eckert's representation of Parx in matters adverse to POM in Commonwealth Court *if, as the magistrate judge here says, Eckert has no attorney-client relationship with Parx in the Commonwealth Court matters*.

The only question before the magistrate judge was whether the elements of the attorney-client privilege have been met and whether or not a recognized exception applies. The magistrate judge erred by invoking judicial estoppel to eviscerate the attorney-client relationship between Parx and Eckert and thereby authorize POM to discovery otherwise privileged information.

Accordingly, the Court should vacate the magistrate judge's order because the attorney-client privilege applies to the Section I Documents.

## B. *Judicial estoppel does not apply.*

Having determined that the attorney-client privilege applies to the Section I Documents, the question becomes whether judicial estoppel justifies the disclosure of otherwise protected documents. The answer is no. The magistrate judge erred by concluding otherwise.

### 1. The magistrate judge should not have invoked judicial estoppel sua sponte.

At the outset, the magistrate judge erred by invoking judicial estoppel *sua sponte* without giving Parx, HMS, or Eckert any opportunity to respond. The purpose of judicial estoppel is to promote candor to the tribunal by preventing parties from taking inconsistent positions in litigation in bad faith. *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009).

Given that the test for judicial estoppel requires a finding of "bad faith" by a litigant directed to the court, it is fundamental that courts may not impose the harsh consequences of judicial estoppel until the alleged offending party has an opportunity to address the accusation. As the Third Circuit has stated:

> [T]he District Court invoked judicial estoppel to dismiss many of Coast's claims *even though the parties did not brief the issue nor did it arise at oral argument. The parties were not on*

*notice that judicial estoppel would be applied*, and *Coast was not allowed the opportunity to argue lack of bad faith or contest any other factor in the application of the doctrine*. In *Montrose*, **we warned that courts should be wary of just such a sua sponte application of the doctrine**. *See Montrose*, 243 F.3d at 780 n.5. Further, as we stated in Montrose:

> Judicial estoppel "is an 'extraordinary remedy'" that should be employed only " 'when a party's inconsistent behavior would otherwise result in a miscarriage of justice.'" *Ryan Operations G.P. v. Santiam Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir.1996) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.1988) (Stapleton, J., dissenting)).

*Montrose*, 243 F.3d at 784. Especially because judicial estoppel is such a harsh remedy as this case demonstrates and should be used only in limited circumstances, the court should have invited briefing and argument before deploying the doctrine to dismiss many of Coast's claims.

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 34 F. App'x 818, 825, 2002 WL 121932, at *8 (3d Cir. 2002) (emphasis added); *Montrose Medical Group v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001).

Here, despite extensive briefing in this case on other issues, the magistrate judge *sua sponte* invoked judicial estoppel and concluded that it applies to circumvent Parx's attorney-client privilege "to the extent" Parx adopted Eckert's positions and that Parx did so "arguably in bad faith." The magistrate judge qualified these conclusions, by necessity, because he never took any evidence or argument on the elements of

judicial estoppel nor offered Parx or Eckert an opportunity to address these allegations. The magistrate judge's unilateral decision to invoke judicial estoppel and levying allegations of bad faith against Parx without giving Eckert or Parx an opportunity to address those allegations is grounds for reversal.

Accordingly, the magistrate judge erred by *sua sponte* raising judicial estoppel.

### 2. Judicial estoppel is not an exception to privilege.

In any event, judicial estoppel is not an exception to the attorney-client privilege. As a threshold matter, when the federal court sits in its diversity jurisdiction, state privilege laws apply. F.R.E. 501. Under Pennsylvania law, courts can compel disclosure of otherwise privilege communications based on waiver or the crime-fraud exception, neither of which are at issue regarding the Section I Documents. *See* 42 Pa.C.S. § 5928; *Nationwide*, *supra*. Research has not revealed a situation in which a Pennsylvania court applied judicial estoppel as an exception to the attorney-client privilege.

In any case, the magistrate judge's reliance on *G-I Holdings, Inc.* and *In re Berks Behavioral Health LLC* seemingly for the proposition that

judicial estoppel can operate as an exception to the attorney-client privilege is misplaced. *G-I Holdings* discusses judicial estoppel generally as applied to a different fact pattern and has no value in addressing the situation here. *In re Berks* involved an intentional father-son scheme to swear out affidavits in a bankruptcy proceeding about a sham agency relationship that directly contradicted prior sworn deposition testimony.

Here, there is no attempt – intentionally or otherwise – to mislead POM or the magistrate judge or the Court. To the contrary, everyone knows that Eckert and Parx have a longstanding attorney-client relationship and that Eckert assisted Parx and other casinos in the Commonwealth Court litigation, albeit not as counsel of record appearing on behalf of those entities.

### 3. The magistrate judge misapplied the judicial-estoppel doctrine.

Even if the Court gets past the threshold issues outlined above, the magistrate judge erred in applying the judicial-estoppel doctrine.

As the magistrate judge wrote, "[t]hough there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) "irreconcilably inconsistent positions;" (2) "adopted ... in bad faith;" and (3) "a showing that ... estoppel ...

address[es] the harm and ... no lesser sanction [is] sufficient." *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n. 5 (3d Cir.2008) (internal quotation marks omitted). *G.I. Holdings, Inc., supra.* What the magistrate judge did not quote is that "in our Circuit judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *Id.*

At the outset, Parx is not a party in this case and did not take or adopt a position regarding Eckert's pleadings. Certainly Parx and Eckert are aligned on the discovery issues because Eckert has a duty to protect Parx's privileged documents and communications. In that respect, Parx agreed with or incorporated Eckert's legal arguments or deferred to its privilege log in support of applying the attorney-client privilege and the work-product doctrine for documents in Eckert's possession that are protected by Parx's privilege or by work-product immunity. But Parx has always maintained that Eckert and Parx have an attorney-client relationship. *See* Parx Briefs (Docs. 49, 60, 76, 84) and Tr. 43-47, 56-57.

In any event, the dispositive question is whether Eckert prevailed on the basis of a prior inconsistent position and is switching positions for purposes of this discovery dispute. The answer is no. The Court has not

accepted any of Eckert's statements as facts or otherwise made any findings about the facts or ruled upon them.

Second, there is no irreconcilable inconsistency in Eckert's positions. Although the magistrate judge perceived an inconsistency, Eckert has maintained throughout that it has assisted Parx and other casinos in Commonwealth Court proceedings and informed the magistrate judge during oral argument. If the magistrate judge disagreed with Eckert's distinction between (a) assisting Parx behind the scenes as part of Parx's legal team and (b) entering a formal appearance in court, so be it. However, drawing that distinction is in no way playing fast and loose with the Court and certainly serves as no justification to order the disclosure of Parx's privileged documents.

Third, there is no bad faith here. Even assuming (for argument's sake) that Eckert's statements are somehow inconsistent, inconsistency is never enough to establish bad faith:

> However, to invoke judicial estoppel, *a court must do more than merely find that a party advanced inconsistent positions to the court.* The District Court here failed to engage in the requisite analysis and make the necessary findings that Coast changed its position in bad faith and that the application of judicial estoppel was specifically tailored to address the harm caused by Coast's alleged inconsistencies. Additionally, in raising the issue sua sponte, the court failed to allow the

parties to brief the issue and inform the court's analysis, as suggested by the Supreme Court and by this Court. Therefore, we conclude that the District Court abused its discretion by invoking the doctrine sua sponte.

The court made no finding that Coast changed its position in a bad faith attempt to "assault the dignity or authority" of the court. In its brief footnote explaining its invocation of judicial estoppel, the court indeed quoted our statement in *Ryan Operations* that judicial estoppel is designed to prevent litigants from "playing fast and loose with the courts." *Coast I* at 6 n. 3 (quoting *Ryan Operations*, 81 F.3d at 358). We have noted that "playing fast and loose with the courts" is a factor in a finding of bad faith. *See Montrose*, 243 F.3d at 780–81; *Ryan Operations*, 81 F.3d at 358. *However, simply quoting this language without any explanation or analysis of how Coast's actions rose to the level of "playing fast and loose" is insufficient to invoke the harsh sanction of judicial estoppel. No finding of culpability, intentional self-contradiction, or intentional wrongdoing was made. We counseled in Montrose that a mere finding of inconsistency, without more, fails to fulfill the bad faith requirement. See id.* at 781. Furthermore, the court also made *no explicit finding that Shansab's and counsel's prior statements were accepted or adopted by the court.* The District Court failed to apply the law to the facts here, and therefore abused its discretion.

*Coast Auto.*, 34 F. App'x at 824-25, 2002 WL 121932, at *7.

Fourth, the statement about Eckert's role in Commonwealth Court is true given that Eckert has not entered any appearance for Parx in state-court litigation adverse to POM. All parties here have acknowledged that Eckert has a longstanding attorney-client relationship with Parx and assisted Parx on issues and positions involved

in the state-court litigation while another law firm (HMS) is counsel of record for and entered an appearance on behalf of Parx and other casinos.

Fifth, there is no evidence to support the magistrate judge's conclusion that Parx – "arguably" or otherwise – adopted irreconcilably inconsistent positions "in bad faith" in an effort to harm the court. There is nothing in Parx's papers or conduct during its limited involvement in this case as a non-party recipient of a third-party subpoena protecting its privileged materials and asking that its lawyers assert the privilege on its behalf (as is their duty) to avoid waiver.

Sixth, the magistrate judge's remedy goes too far. The magistrate judge ordered Eckert to disclose Parx's privileged documents. That is a harsh remedy to impose on a party, let alone a non-party. At most, the magistrate judge could have rejected Eckert's position that it did not assist Parx in the state-court litigation pending in Commonwealth Court, as Eckert already has clarified, instead of ordering Eckert to hand over privileged documents belonging to Parx.

In other words, the remedy is overbroad. Even POM agrees that it should not have access to the legal advice Parx receives from its lawyers. *See* Tr. at 57 ("So I would agree with my colleague, Mr. Bibikos, that if

Parx was getting advice from its lawyers, I shouldn't have access to that."). Far from narrowly addressing a harm to POM, the magistrate judge gave POM an advantage in any matters in which POM and Parx have adverse interests by giving POM access to confidential documents and communications that inevitably describe legal advice and strategies.

Finally, POM is misusing the magistrate judge's opinion and order. POM forwarded a copy of the opinion and order to a state-court judge and in its cover letter highlighted the magistrate judge's statements that Parx arguably adopted inconsistent positions in bad faith. The cover letter is a naked attempt to cast Parx in an unwarranted negative light before the state-court judge. There is no substantive reason to share the magistrate judge's opinion; it is not binding or controlling on the state court regarding POM's efforts to disqualify HMS as Parx's attorneys nor does it have anything to do with the merits of that case.

## IV. CONCLUSION

WHEREFORE, the Court should grant the appeal, vacate the magistrate judge's opinion and order with respect to Discussion Section III, Subsection I and corresponding ordering paragraphs, and order such other and further relief as the Court deems necessary or appropriate.

March 2, 2021

Respectfully submitted,

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Parx*

## CERTIFICATE OF SERVICE

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that counsel and the magistrate judge will be served automatically.

/s George A. Bibikos
George A. Bibikos

## WORD-COUNT CERTIFICATION

Pursuant to L.R. 7.8, I hereby certify that the foregoing document contains 4,996 words based on the word-count feature of Microsoft Word.

/s George A. Bibikos
George A. Bibikos