# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PACE-O-MATIC, INC., : | |
| : | |
| Plaintiff : | No. 1:20-cv-00292 |
| : | |
| v. : | (Judge Jennifer P. Wilson) |
| : | (Magistrate Judge Joseph F. Saporito, |
| ECKERT SEAMANS CHERIN & : | Jr.) |
| MELLOTT, LLC, : | |
| : | |
| Defendant. : | Electronically Filed Document |

## HAWKE MCKEON & SNISCAK, LLP's
## BRIEF IN SUPPORT OF
## STATEMENT OF APPEAL

### (From February 16, 2021 Nondispositive
### Order Overruling Attorney-Client Privilege Objection
### to Non-Party Subpoena)

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon & Sniscak, LLP*

## TABLE OF CONTENTS

I. PROCEDURAL HISTORY ........................................................................... 1

II. FACTS ............................................................................................................ 3

III. QUESTION PRESENTED ........................................................................... 5

IV. ARGUMENT .................................................................................................. 5

    A.    The Elements of Judicial Estoppel Are Not Present .......................... 5

        1.    HMS's attorney-client privilege claim does not involve an inconsistent position for purposes of judicial estoppel ...... 7

        2.    HMS has not engaged in bad faith ......................................... 10

        3.    POM will not be harmed if the privilege is sustained ........... 12

    B.    The Court should set aside Section III.I of the Memorandum and the portions of Ordering Paragraph 4 to which it applies as clearly erroneous or contrary to law. ............................................... 13

V. CONCLUSION ............................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Chao v. Roy's Constr., Inc.*,
  517 F.3d 180 (3d Cir.2008) .................................................................................. 5

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
  586 F.3d 247 (3d Cir. 2009) ....................................................................... 5, 9, 12

*MD Mall Associates, LLC v. CSX Transp., Inc.*,
  715 F.3d 479 (3d Cir. 2013) .................................................................................. 6

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .............................................................................................. 6

**Rules**

Fed. R. Civ. P. 72(a) .................................................................................................. 1

## I. PROCEDURAL HISTORY

Hawke McKeon & Sniscak, LLP (HMS), pursuant to Fed. R. Civ. P. 72(a) and L.R.72.2, appeals from portions of Ordering Paragraph 4 of Magistrate Judge Joseph F. Saporito, Jr.'s February 16, 2021 Order and accompanying Memorandum, Section III.I (Judicial Estoppel and Implied Waiver of Privilege) at 32-42 (2021 WL 602733) (Doc. 87), which overrule HMS's objections to plaintiff Pace-O-Matic, Inc.'s (POM) subpoena and order production of documents identified in HMS's privilege log as to which HMS has claimed attorney-client privilege.

In the underlying action filed by POM in this court, POM claims that Eckert, Seamans, Cherin & Mellott, LLC (Eckert) breached a fiduciary duty to POM by representing Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx), in matters adverse to POM in Pennsylvania related to devices that POM calls "skill games," when Eckert was representing POM on skill game matters in the Commonwealth of Virginia. Specifically, POM initiated litigation in the Commonwealth Court of Pennsylvania at Docket Nos. 418 MD 2018 and 502 MD 2018, seeking declarations concerning the legal status of its skill games, which litigation is active and ongoing (Commonwealth Court litigation). HMS represents Parx (and other casinos) in the casinos' attempt to intervene in the Commonwealth Court litigation. On behalf of Parx and other casinos, HMS filed an amicus brief opposing POM's request for a preliminary injunction, and presently has pending a

1

request to intervene.

POM served a non-party subpoena on HMS in June 2020, seeking: (1) any document that reflects communications between HMS and Eckert relating to the Commonwealth Court litigation; (2) any document HMS received from Eckert for use or reference relating to the Commonwealth Court litigation; (3) any communications between HMS partner Kevin McKeon or any other HMS employee and any person at Eckert relating to either the Commonwealth Court litigation or POM's complaint against Eckert in this court; and (4) any communications or documents relating to any potential or actual conflict between Eckert and POM. HMS objected on grounds that all documents requested are subject to the attorney-client privilege because the requests seek communications between and among Parx's lawyers at Eckert, Parx's lawyers at HMS, and Parx, including legal advice that Parx's lawyers and law firms provided to Parx. POM also served a subpoena on Parx, and addressed discovery to Eckert, in both seeking similar information deemed privileged, to which Parx and Eckert also objected.

By order entered June 19, 2020 (Doc. 30) the matter was referred for resolution by a United States Magistrate Judge, and then assigned to Magistrate Judge Saporito. The parties filed competing motions on July 20, 2020. Judge Saporito held oral argument on October 20, 2020. After an *in camera* review of documents listed in privilege logs submitted by HMS, Parx, and Eckert, Magistrate Judge Saporito issued

his Memorandum and Order on February 16, 2021.

HMS appeals only that portion of the opinion that finds that HMS's assertion of attorney-client privilege is defeated by application of the doctrine of judicial estoppel, Section III.I at pp. 32-42, and that on that basis directs the production of HMS documents listed at pp. 41-42 of the Memorandum.

## II.   FACTS

POM alleges in the underlying case that Eckert breached its fiduciary duty to POM by taking positions adverse to POM's skill games in litigation in Pennsylvania while at the same time representing POM on issues related to POM's skill games in the Commonwealth of Virginia. Among other examples, POM cited in its complaint the fact that Eckert appeared and collaborated with HMS and the casinos' other counsel of record at a hearing in the Commonwealth Court litigation in January 2020, at which the casinos as amici opposed the relief POM was seeking. Eckert's answer filed in March 2020 responded among other defenses that "Eckert does not represent a party adverse to POM in litigation, and POM agreed to a prospective waiver" (Doc. 9 ¶ 18). Eckert has since learned, however, through a deposition on September 1, 2020, that although Eckert's management and its lawyers who have long represented Parx in Pennsylvania were led to believe by their former partner Mr. Lisk, who began representing POM in Virginia in 2016, that Lisk had discussed with POM the proposed conflict waiver allowing Eckert to be adverse to POM in Pennsylvania, he never did.

3

See Doc 91-5; Doc. 21-5.

In applying the doctrine of judicial estoppel to bar Eckert's assertion of the attorney-client privilege, the Memorandum finds that Eckert's assertion of the attorney-client privilege takes a position that is in irreconcilable conflict with Eckert's statement that Eckert does not represent a party adverse to POM in litigation. Memorandum at 32-37. In applying the doctrine of judicial estoppel to bar HMS's assertion of the attorney-client privilege, the Memorandum relies on pleadings filed in the Commonwealth Court litigation, supplied by POM (Doc. 82) after the close of briefing and argument on the discovery motions at issue. Specifically, POM moved in December 2020 to disqualify HMS from representing Parx in the Commonwealth Court litigation, arguing that Eckert is barred from taking positions adverse to POM in Pennsylvania, and therefore so too is HMS to the extent that Eckert has assisted HMS to do so in any way. After HMS responded to the motion to disqualify in the Commonwealth Court, POM filed in this proceeding, via December 16, 2020 letter to Magistrate Judge Saporito, a collection of documents that included HMS's answer to POM's disqualification application. (Doc. 82). Interpreting that answer, the Memorandum finds that HMS's assertion of the attorney-client privilege likewise takes a position that is in irreconcilable conflict with statements HMS made in the Commonwealth Court litigation. These statements, the Memorandum concludes, implicitly represent that Eckert played no substantial role in Parx's activities in those

cases. Asserting that that HMS's allegedly conflicting positions "were arguably adopted in bad faith," the Memorandum concludes that HMS is estopped from asserting attorney-client privilege. *Id*. at 37.

### III. QUESTION PRESENTED

Whether the Memorandum's finding in Section III.I that the doctrine of judicial estoppel applies to defeat HMS's assertion of attorney-client privilege for the HMS documents ordered to be produced at pp. 41-42 of the Memorandum and Ordering Paragraph 4 is clearly erroneous or contrary to law?

Suggested answer: Yes

### IV. ARGUMENT

#### A. The Elements of Judicial Estoppel Are Not Present

"Under the doctrine of judicial estoppel, a court can defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of litigation." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009) (*G-I Holdings*). "Three factors inform a federal court's decision whether to apply it: there must be (1) 'irreconcilably inconsistent positions;' (2) 'adopted ... in bad faith;' and (3) 'a showing that ... estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.'" *G-I Holdings* at 262, *quoting Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n. 5 (3d Cir.2008) (internal quotation marks omitted). The law in the

Third Circuit is that "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings* at 262. Thus, "courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *MD Mall Associates, LLC v. CSX Transp., Inc.,* 715 F.3d 479, 487 (3d Cir. 2013) *quoting New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "Because judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase,' *id*. at 749, 121 S.Ct. 1808 (internal quotation marks omitted), '[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity,' *id.* at 750–51, 121 S.Ct. 1808 (citation and internal quotation marks omitted)." *Id*.

Here, the Memorandum errs in finding that judicial estoppel applies and results in a waiver of HMS's right to assert the attorney-client privilege on behalf of its client Parx. None of the elements of judicial estoppel is present: HMS did not take inconsistent positions as to whether Eckert has an attorney-client relationship with Parx; even if the positions taken on the issue by Eckert could be deemed inconsistent and attributed to HMS, Eckert has not prevailed on either; neither HMS' positions nor

6

Eckert's positions, even if deemed inconsistent, were taken in bad faith; the Memorandum in any event does not find bad faith; and POM will not be harmed if the privilege is sustained.

### 1. HMS's attorney-client privilege claim does not involve an inconsistent position for purposes of judicial estoppel

The Memorandum finds that HMS, acting on behalf of Parx, is taking irreconcilably inconsistent positions that trigger application of judicial estoppel to bar the assertion of attorney-client privilege:

> [W]e find that Eckert and Parx have adopted irreconcilably inconsistent positions *with respect to whether Eckert represented and provided legal advice and services to Parx in connection with the Commonwealth Court cases*, where POM and Parx were directly adverse, when denying liability *or opposing disqualification on the one hand versus invoking attorney-client privilege* in attempting to shield documents concerning that (non-)representation from disclosure.

Memorandum at 37 (emphasis added).

The Memorandum errs on the "inconsistent position" element for several reasons.

First, the Memorandum's conclusion that HMS, in opposing POM's application to disqualify HMS from representing Parx in the Commonwealth Court litigation, is taking a position inconsistent with its assertion of attorney-client privilege as a non-party subpoena recipient in the present proceeding before this court, is clearly factually erroneous. Referencing the Commonwealth Court litigation, the Memorandum states

7

that "Parx and its counsel of record there (HMS) have expressly represented that 'Eckert is not counsel in this case' and implicitly represented that Eckert played no substantial role in Parx's activities in those cases. (See Doc. 82, at 162–68.)" *Id*. The cited portion of Doc. 82,[1] however, proves exactly the opposite – in defending against POM's attempt to disqualify HMS in Commonwealth Court, HMS expressly has represented that Eckert, while not counsel of record, was involved as part of the lawyer group representing Parx and the other casinos seeking to intervene in developing strategy and pleadings:

> *Although Eckert did not sign the amicus brief filed in this case in December 2019 or otherwise enter its appearance* in this case, Mr. Stewart and Eckert believed in December 2019 and continued to believe thereafter that Eckert had obtained a conflict waiver from POM. Accordingly, *Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and assisted in creating first drafts of filings or editing the first drafts created by other casino group lawyers for filings in this case.* It was not until September 2020, that Eckert learned definitively in a deposition of Mr. Lisk, the former Eckert partner who represented POM in the Commonwealth of Virginia, that although Mr. Lisk had represented to Mr. Stewart and others at Eckert that POM had given a conflict waiver, POM had not given a conflict waiver.

Doc. 82 at 164 (emphasis added).

Contrary to the Memorandum's conclusion, the statement that "Eckert is not

---

[1] Doc. 82 is POM's uninvited letter to Magistrate Judge Saporito, submitted post-argument, transmitting various documents, including selected portions of HMS's filings in the Commonwealth Court.

8

counsel in this [*i.e.*, the Commonwealth Court] case" is merely a statement of objective fact – Eckert did not enter an appearance. HMS's explanation of Eckert's role in the litigation, however, can only be seen as a frank acknowledgement of Eckert's substantial involvement, not an implicit representation to the contrary. Thus, there is no inconsistency in HMS's representations to the Commonwealth Court about Eckert's role as one of the lawyers advising Parx and the other casinos, on one hand, and the assertion of attorney-client privilege in this court as to communications among Parx and its lawyers, on the other.

Second, POM's application to disqualify HMS in the Commonwealth Court remains undecided, so that even if HMS had taken an inconsistent position (it did not) it has not yet prevailed. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings* at 262.

Third, to the extent the Memorandum attributes vicarious liability to HMS for the perceived infractions of Eckert, the same rationales defeat triggering of judicial estoppel: there is no inconsistency, and even if there were, Eckert has not to date prevailed on the merits. As to consistency, Eckert correctly stated in pleadings in this case that "Eckert does not represent a party adverse to POM in litigation," (Doc. 9 ¶ 18) cited in Memorandum at 32. Parx was not at the time, and has not yet, been granted status as a party in the Commonwealth Court litigation; Eckert has never entered an

9

appearance on behalf of Parx in that litigation. Moreover, at argument before Magistrate Judge Saporito in this discovery dispute, Eckert conceded that Eckert was part of the attorney group advising the casinos adverse to POM, based on the belief as of the time of that representation in late 2019 and early 2020 that POM had waived any associated conflict. (Doc. 81 at 32-33, 36-39). As to Eckert having already prevailed on the merits against POM in this proceeding by taking a position contrary to the position it has taken in the present discovery dispute, Eckert has not prevailed – the present status is that Eckert has now acknowledged that, contrary to Mr. Stewart's and Eckert's leadership's understanding that former Eckert partner Lisk had obtained an informed, advanced conflict waiver that consented to Eckert representing clients in matters adverse to POM in Pennsylvania, Mr. Lisk did not actually discuss a conflict waiver with POM. (Doc. 91-5 at ¶¶ 4-5).

### 2. HMS has not engaged in bad faith

The Memorandum concedes the absence of bad faith on the part of HMS, concluding only that "these inconsistent positions were arguably adopted in bad faith." Memorandum at 37. Facts in the record, moreover, demonstrate that HMS's positions were not even "arguably" adopted in bad faith, but instead were based on the good faith belief that Eckert had obtained the appropriate waivers to allow it to take positions adverse to POM in Pennsylvania, and had chosen to do so through the casino lawyer group rather than on-the-record representation. Doc. 82, the basis for the

Memorandum's incorrect conclusions about HMS's inconsistency of positions, also provides insight into HMS's good faith in working with Eckert as part of the lawyer group representing Parx and the other casinos. Mr. McKeon's declaration filed in opposition to POM's application to disqualify HMS in the Commonwealth Court litigation states:

> Mr. Stewart represented to me in December 2019 and again in February 2020 after POM sued Eckert in federal district court, that Mr. Stewart (a) believed Eckert had obtained a conflict waiver from POM concerning Eckert's anticipated adverse representation against POM's interests in Pennsylvania, and (b) that Mr. Stewart had no access to any information that Eckert lawyers representing POM in the Commonwealth of Virginia may have obtained. He stated that Eckert had a conflict screen in place between its lawyers working on POM's matters in Virginia and Mr. Stewart and other Eckert lawyers working on Parx matters, such that neither the Eckert POM lawyers nor the Eckert Parx lawyers had access to their respective clients' information.

Doc. 82 at ¶ 12;[2] *see also* ¶¶ 1-11 (explaining background of HMS involvement in the Commonwealth Court litigation).

Again, to the extent the Memorandum attributes vicarious liability to HMS for the perceived arguable bad faith of Eckert, Doc. 91 makes it clear that Eckert was acting in good faith. Mr. Stewart and Eckert's leadership reasonably believed that former Eckert partner Lisk had obtained an informed, advanced conflict waiver that consented to Eckert representing clients in matters adverse to POM in Pennsylvania,

---

[2] These representations by Mr. Stewart are again confirmed in Doc. 91-5.

11

and did not learn to the contrary that Mr. Lisk never actually discussed a conflict waiver with POM until Lisk's deposition in September 2020. (Doc. 91-5 at ¶¶ 4-5).

"Arguable" bad faith is not the standard for triggering judicial estoppel, but even if it were, HMS acted in good faith here.

### 3. POM will not be harmed if the privilege is sustained

The third element of judicial estoppel requires a showing that "estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.' *G-I Holdings* at 262. Here, POM seeks "information and documents reflecting communications concerning the Commonwealth Court cases exchanged between Eckert" and HMS. Memorandum at 4, in order to prove that Eckert was involved in activities adverse to POM in Pennsylvania. Eckert has conceded that it was involved in such activities, however, has explained that it believed they were permitted because of waivers it believed Mr. Lisk had been provided by POM, and has represented that its actions adverse to POM's interests in Pennsylvania have ceased. Doc. 91. Given this, even assuming that other elements that give rise to judicial estoppel were present here (they are not), compelling disclosure of documents protected by the attorney-client privilege is neither necessary nor appropriate. Disclosure will disadvantage Parx, allowing POM to rummage through privileged communications, allegedly in order to prove a point that is no longer contested, while improperly advantaging POM by providing it access to documents that would prove useful to POM in its Commonwealth Court litigation.

## B. The Court should set aside Section III.I of the Memorandum and the portions of Ordering Paragraph 4 to which it applies as clearly erroneous or contrary to law.

The Memorandum at pp. 41-42 and Ordering Paragraph 4 direct that HMS produce the listed HMS documents on the basis that judicial estoppel defeats HMS's assertion of the attorney-client privilege with respect to those documents. As demonstrated in Section III.A of this brief, none of the elements of judicial estoppel has been established here. The Memorandum's finding that judicial estoppel applies is clearly erroneous and contrary to law. In particular, the Memorandum's conclusion that HMS's positions "were arguably adopted in bad faith" is clearly erroneous factually, and misstates and misapplies the applicable legal standard.

## V. CONCLUSION

HMS respectfully requests that the court reverse Section III.I of the Memorandum and direct that HMS is not required to produce the associated documents that Paragraph 4 of the Order directs HMS to produce.

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com
*Counsel for Hawke McKeon & Sniscak LLP*

Dated: March 2, 2021

13

## CERTIFICATION OF COUNSEL

The undersigned certifies, subject to Fed. R. Civ. P. 11, that the foregoing brief contains 3,090 words and, therefore, complies with the word-count limit set forth by local rule 7.8(b). This certification is based upon the word count feature of Microsoft Word, the software used to prepare the brief.

/s/ <em>Dennis A. Whitaker</em><br>Dennis A. Whitaker

Dated: March 2, 2021

## CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

<em>/s/ Dennis A. Whitaker</em>