# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PACE-O-MATIC, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **NO. 20-CV-292** |
| | : | |
| **v.** | : | **JUDGE WILSON** |
| | : | |
| **ECKERT, SEAMANS, CHERIN &** | : | **MAGISTRATE JUDGE SAPORITO** |
| **MELLOTT, LLC,** | : | |
| | : | **ELECTRONICALLY FILED** |
| **Defendant.** | : | |

## PLAINTIFF'S CONSOLIDATED BRIEF IN RESPONSE TO APPEALS (ECF NOS. 93, 94, 95, 96, 97, 98)

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................... 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ......................... 2

ARGUMENT ........................................................................................ 7

    A.    Judge Saporito Properly Invoked Judicial Estoppel To Prevent
            Eckert, HMS and Parx From Playing Fast and Loose With the
            Court ................................................................................ 7

    B.    Eckert Has Not Identified and Cannot Identify Any Error ................ 12

    C.    Eckert, HMS and Parx Did Not Appeal Judge Saporito's
            Determination That the Communications Are Not Protected by the
            Work Product Doctrine ..................................................... 19

    D.    The Communications At Issue Should Be Disclosed Because
            Eckert Has Waived Any Applicable Privilege ..................... 19

CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Aetna, Inc. v. Mednax, Inc.*, No. 18-CV-02217, 2019 WL 5566705 (E.D. Pa. Oct. 29, 2019) ........................................................................................ 20

*Bowman v. American Homecare Supply, LLC*, No. 07-3945, 2009 WL 1873667 (E.D. Pa. June 25, 2009) ........................................................................... 20

*First Fidelity Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 90-1866, 1992 WL 55742 (E.D. Pa. Mar. 13, 1992) ......................... 20

*G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009) ...... 8, 9, 12, 13

*Haines v. Liggett Grp., Inc.*, 975 F.2d 81 (3d Cir. 1992) ........................................ 7

*In re Berks Behav. Health, LLC*, 500 B.R. 711 (E.D. Pa. Oct. 21, 2013) .............. 18

*In re Kane*, 628 F.3d 631 (3d Cir. 2010) ................................................................. 8

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, LLC, 2010 WL 4537002 (M.D. Pa. Nov. 3, 2010) ............... 20

*Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir. 1972) ................................................... 7

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors, Corp.*, 337 F.3d 314 (3d Cir. 2003) ........................................................ 8, 11, 12, 13, 18

*Montrose Med. Grp. Participating Savs. Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001) ...................................................................................... 13, 16

*PA Prison Soc. v. Cortes*, 622 F.3d 215 (3d Cir. 2010) ........................................ 7

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) ................................................................................................... 12

*United Steelworkers of Am. v. New Jersey Zinc Co., Inc.*, 828 F.2d 1001 (3d Cir. 1987) .................................................................................... 6, 19

*United States v. Purcell*, 667 F. Supp. 2d 498 (E.D. Pa. 2009) ........................... 20

## STATUTES

28 U.S.C. § 636(b)(1)(A) ................................................................ 7

42 Pa. C.S.A. § 5928 ...................................................................... 19

## RULES

Fed. R. Civ. P. 26(b)(3) ................................................................ 19

Fed. R. Civ. P. 72(a) ...................................................................... 7

Pa. R. Prof. Conduct 1.7(b)(3) ...................................................... 17

Pa. R. Prof. Conduct 8.4 ................................................................ 10

Pa. R. Prof. Conduct 8.4(a) ............................................................ 10

Pa. R.A.P. 2501(b) ........................................................................ 18

L.R. 7.8 .......................................................................................... 21

L.R. 16.3 ........................................................................................ 9

# **INTRODUCTION**[1]

U.S. Magistrate Judge Joseph F. Saporito, Jr. is the only objective person who ever compared appellants' public representations to this Court with their extensive secret contradictory conduct.[2] Having devoted considerable time and effort to the review, Judge Saporito concluded that those public and private positions are irreconcilable and that the appellants acted "arguably . . . in bad faith" in representing to this Court that Defendant Eckert Seamans Cherin & Mellot, LLC ("Eckert") was not counsel in any litigation matter adverse to POM. Now, Eckert, Hawke McKeon & Sniscak LLP ("HMS") and Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx") urge this Court to pay no attention to Judge Saporito's informed damning finding and ignore their knowing deceptions. The appeals are wholly without merit. Eckert, HMS and Parx have not sustained and cannot sustain their burden of showing that Judge Saporito's thorough and well-supported decision is "clearly erroneous or contrary to law." The appeals should be denied and Eckert and HMS should be compelled to

---

[1] This brief is submitted in response to the appeals filed by Eckert (ECF 93, 94), HMS (ECF 97, 98) and Parx (ECF 95, 96).

[2] Judge Saporito's *in camera* review informed his detailed analysis and findings. His decision should not be reconsidered or reversed without a similar *in camera* review of the withheld communications that are the subject of this appeal.

produce the 182 communications that Judge Saporito identified relating to Eckert's involvement in litigation adverse to Plaintiff Pace-O-Matic, Inc. ("POM").

## **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

POM is a developer and producer of electronic skill games. Pursuant to a written engagement letter dated September 13, 2011, Eckert agreed to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania." Compl. (ECF 1) ¶ 5. POM and Eckert entered into a second engagement letter dated December 20, 2016 pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software." *Id.* ¶ 7.

Pursuant to the 2016 engagement, Eckert handled a wide variety of legal matters for POM and its affiliates, including representing POM and affiliates at meetings with government personnel, handling litigation matters, negotiating and drafting contracts and providing advice concerning legal, legislative and litigation strategies for marketing and selling POM skill games. *Id.* ¶ 12. In furtherance of these services, POM provided Eckert with highly sensitive, proprietary, confidential and non-public information relating to its skill games and business

operations. *Id.* ¶ 10. POM paid substantial fees to Eckert for those services. *Id.* ¶ 9.

While Eckert was representing POM and advocating the legality of POM's skill games, Eckert undertook to attack those ***same games*** on behalf of another client, Parx. In the fall of 2019, Eckert commenced more than 20 actions in state courts in Pennsylvania against establishments that offer POM's games, seeking a declaratory judgment that POM skill games—Eckert's own client's products—constitute a public nuisance. *Id.* ¶ 15. In a brief filed on December 3, 2019 in one of those cases, while still representing POM, Eckert posited on behalf of Parx that POM manufactures "illegal slot machine[s]" and "deceptively market[s] these games as 'legal,' when, in fact, they are not." *Id.*

The appellants' secret coordinated attack on POM in state court is part of a broader campaign by Eckert acting for Parx to secure a ban against the very same POM skill games that Eckert was defending and promoting as counsel for POM. In furtherance of that campaign, while Eckert was representing POM, the co-chair of Eckert's gaming practice, Mark S. Stewart, sent letters on behalf of Parx to Pennsylvania municipalities advocating that skill games including those manufactured by POM are "illegal slot machines" and should be outlawed through a local ordinance which Eckert drafted and enclosed with the letter. *Id.* ¶ 17.

POM confronted Eckert with its impermissible conflict and demanded that Eckert withdraw from representing Parx in matters adverse to POM. *Id.* ¶ 26. In a January 17, 2020 letter, Eckert's Chief Legal Officer, Timothy S. Coon, represented that "Eckert is not counsel for a party in a litigation where POM is an adverse party." The recent production of documents compelled by Judge Saporito reveals that Mr. Stewart, on behalf of Parx, was on *the very same day* collaborating with the Attorney General's Office and HMS concerning litigation which POM initiated in the Pennsylvania Commonwealth Court ("the Commonwealth Court litigation"). On January 17, 2020, while Eckert was denying acting as counsel for a party in litigation adverse to POM, Mr. Stewart urged the Attorney General to "enjoin POM"—*Eckert's own client*—"from bringing new machines into the state." HMS-000949.[3]

Eckert refused POM's request to withdraw and instead dropped POM like a "hot potato" on January 29, 2020 in favor of continuing its more lucrative relationship with Parx. Compl. ¶ 26.

On February 18, 2020, POM commenced this action against Eckert asserting that Eckert breached its fiduciary duty of undivided loyalty. ECF 1. On March 10, 2020, Eckert filed its Answer and Affirmative Defenses (ECF 9) claiming that it "does not represent a party adverse to POM in litigation." ECF 9, ¶ 18; *see also id.*

---

[3] The email message is reproduced as Exhibit A.

4

at Seventeenth Defense.  On March 24, 2020, POM moved for a preliminary injunction to enjoin Eckert from representing Parx and any other entity in any matters adverse to POM.  ECF 12, 13.  In its opposition, Eckert again represented to the Court that it "is not representing parties in litigation adverse to POM."  ECF 21, p.2.  It did not disclose that it was covertly collaborating with HMS in litigation adverse to POM.  And it was.

To test Eckert's denials, POM served interrogatories and requests for documents on Eckert and third-party subpoenas on Parx and HMS seeking, *inter alia*, communications between Eckert and HMS concerning Eckert's involvement in the Commonwealth Court litigation.  HMS sought a protective order and claimed in its brief that it "stepp[ed] in as conflict counsel" "upon referral from Eckert due to Eckert's alleged conflict with POM . . . ."  ECF 53, pp. 2, 4.  Parx and Eckert also moved for a protective order and POM moved to compel complete responses.  ECF 44, 45, 48, 49, 50, 51.  The motions were referred to Judge Saporito for resolution.  ECF 31.  Eckert, HMS and Parx initially resisted providing privilege logs but were ordered to do so by Judge Saporito.  ECF 35.[4]

Following briefing and oral argument, Judge Saporito ordered that 182 communications between Eckert and HMS concerning the Commonwealth Court

---

[4]  The privilege logs produced by Eckert, HMS and Parx are reproduced as Exhibits B, C and D, respectively.

litigation are not shielded from discovery by the attorney-client privilege or work product doctrine and must be produced.[5]  ECF 87, pp.40-43.  With respect to the privilege, Judge Saporito determined that Eckert, HMS and Parx should be judicially estopped from claiming privilege because they acted in bad faith by denying Eckert's involvement in the litigation while at the same time claiming privilege over litigation-related communications.  *Id.* at 36-38.  With respect to work product, Judge Saporito determined that Eckert's conduct was "directly in issue" and therefore Eckert cannot invoke the work product doctrine to shield its communications from discovery.  *Id.* at 38-40.

On March 2, 2020, Eckert, Parx Casino and HMS filed separate appeals from the portion of Judge Saporito's decision that compelled production of communications relating to the Commonwealth Court litigation.

## **ARGUMENT**

When a magistrate judge decides a non-dispositive motion, the district court sitting on appeal may only reverse the decision if the ruling was "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).

---

[5]  Judge Saporito's decision resolved other discovery disputes and directed that other communications be produced.  Those rulings are not at issue in this appeal and, in fact, Eckert and HMS produced those documents on March 9, 2021.  *See United Steelworkers of Am. v. New Jersey Zinc Co., Inc.*, 828 F.2d 1001, 1006 (3d Cir. 1987) ("[A] party's failure to object to a magistrate's ruling waives the party's objection.").

Under this standard, a decision may not be reversed merely because the reviewing court would have decided the issue differently. *PA Prison Soc. v. Cortes*, 622 F.3d 215, 231 (3d Cir. 2010) (citation and internal quotation marks omitted). A factual determination must be accepted unless it "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972)).

Judge Saporito's thorough and well-reasoned decision is neither clearly erroneous nor contrary to law and therefore should be affirmed.

### A.   Judge Saporito Properly Invoked Judicial Estoppel To Prevent Eckert, HMS and Parx From Playing Fast and Loose With the Court.

Eckert, HMS and Parx knowingly misrepresented HMS's role in the Commonwealth Court litigation in a months-long calculated and coordinated attempt to deceive the Court and conceal the extent of Eckert's breach of loyalty. Judge Saporito properly invoked and applied judicial estoppel to prevent Eckert from deriving an unfair advantage from irreconcilably inconsistent positions concerning its role.

Federal courts[6] have the "intrinsic ability" to dismiss a claim or defense to prevent a litigant from "playing fast and loose with the courts." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (citation omitted). The doctrine is properly invoked where: (1) the party to be estopped has taken positions that are irreconcilably inconsistent; (2) the inconsistent positions were advanced in bad faith, *i.e.* "with intent to play fast and loose with the court"; and (3) no lesser sanction would adequately remedy the damage done by the party's misconduct. *Id.* "Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010).

The three criteria for judicial estoppel are easily satisfied here.

First, there is no question that appellants asserted irreconcilably inconsistent positions concerning Eckert's role in the Commonwealth Court litigation. Eckert represented in its Answer that it "does not represent a party adverse to POM in litigation." ECF 9, ¶ 18; *see also id.* at Seventeenth Defense ("Eckert is not counsel in any litigation where POM is an adverse party."). Similarly, Eckert asserted in its opposition to POM's motion for preliminary injunction that it "is not

---

[6] Parx suggests that state law controls. ECF 96, p.14. This is not correct. In this diversity case, federal law governs "[a] federal court's ability to protect itself from manipulation by litigants . . . ." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009) (citation omitted).

representing parties in litigation adverse to POM." ECF 21, p.2. In the Joint Case

Management Plan, Eckert stated that it "is *not involved* in [the Commonwealth

Court] case." ECF 18, § 1.1 (emphasis added).[7] HMS also falsely denied and

downplayed Eckert's involvement. HMS misrepresented to this Court that it

"step[ped] in as conflict counsel" "due to Eckert's alleged conflict with POM" and

that Eckert's only activity was "preparatory to . . . handing off the Parx

representation to HMS." ECF 53 at 2, 4, 9. After conducting a diligent *in camera*

review, Judge Saporito concluded that these assertions of non-involvement cannot

be reconciled with reality or the invocation of the attorney-client privilege and as a

result the first criteria is satisfied. ECF 87, pp.36-37.

Second, the inconsistent representations were made in bad faith to conceal

Eckert's breach of loyalty and Eckert's and HMS's breach of Professional Rule of

Conduct 8.4 which prohibits lawyers from indirect violations of the conflict rules.[8]

---

[7] Eckert tries to justify its misrepresentation in the plan by pointing to Local
Rule 16.3 which provides that information in the plan "will not be deemed an
admission." ECF 94, p.11. This misses the point. Eckert's denial in the plan is a
misrepresentation *to the Court* and therefore a threat to judicial integrity regardless
of the evidentiary uses to which the plan may be put. *See G-I Holdings, Inc.,* 586
F.3d at 262 ("We will apply [judicial estoppel] to neutralize threats to judicial
integrity however they may arise.").

[8] Rule 8.4 states that "[i]t is professional misconduct for a lawyer to . . . violate
or attempt to violate the Rules of Professional Conduct, *knowingly assist* or induce
another to do so, *or do so through the acts of another* . . . ." Pa. R. Prof. Conduct
8.4(a) (emphasis added). Because Eckert was prohibited from representing Parx in
any matter adverse to POM, it was an ethical violation for Eckert to represent Parx

9

There was no mistake: Eckert misrepresented its non-involvement to the Court *in real time*. Eckert assured the Court on March 10, 2020 that it "does not represent a party adverse to POM in litigation," ECF 9, ¶ 18, but nonetheless claims privilege over communications it had with HMS about the Commonwealth Court litigation *through at least May 2020*, ECF 87, pp.40-41.[9] HMS misrepresented to the Court that it "step[ped] in as conflict counsel" and that the documents withheld from discovery were "preparatory to Eckert handing off the Parx representation to HMS," but the communications at issue occurred largely *after* Eckert fronted HMS "due to [its] alleged conflict with POM." ECF 53 at pp.2, 4, 9. Having reviewed their contemporaneous communications *in camera*, Judge Saporito knows that there was no handing off of the representation. Rather, there was deliberate deception. To deny representation while invoking privilege is textbook bad faith. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 321 ("a rebuttable inference of bad faith arises when averments . . . demonstrate both knowledge . . . and a motive to conceal. . .") (citation omitted). Moreover, after reviewing the withheld documents

---

indirectly through HMS, for HMS to assist Eckert in that conduct and for HMS and Eckert to hide Eckert's involvement. This is the basis for POM's pending application to disqualify HMS from representing Parx in the Commonwealth litigation.

  [9] As Judge Saporito noted, the Eckert privilege log entries identify emails by time and date. ECF 87 at 15. At least 48 of the withheld communications occurred while Eckert was representing *both* POM and Parx.

*in camera*, Judge Saporito made a specific finding that the "inconsistent positions were arguably adopted in bad faith." ECF 87, p.37.  Eckert, Parx and HMS do not suggest and cannot establish that this specific finding was lacking in evidentiary support so as to be clearly erroneous.

Third, Judge Saporito correctly determined that judicial estoppel is tailored to address the harm identified and that no lesser sanction would suffice.  ECF 87, pp.37-38.  Eckert's self-serving proposal—that POM be left to prove its case using the privilege logs rather than the actual communications, ECF 94, p.14—is no sanction at all.  To the contrary, allowing Eckert to continue to deny its role in the Commonwealth Court litigation while at the same time blocking POM from discovering the nature and extent of Eckert's secret involvement would reward Eckert for its continued duplicity.  As the Third Circuit recognized in *Krystal Cadillac-Oldsmobile*, creating an "escape hatch" for litigants to "duck into  to avoid sanctions . . . once their lack of candor is discovered" "would only diminish the necessary incentive" to be truthful.  337 F.3d at 321.  Application of judicial estoppel is thus necessary to prevent Eckert from profiting from its duplicity.

In short, Judge Saporito's decision is not clearly erroneous or contrary to law and the appeals should be denied.

## B.    Eckert Has Not Identified and Cannot Identify Any Error.

Eckert, Parx and HMS argue that judicial estoppel is not an appropriate remedy because their inconsistent positions were not accepted by any court, because the doctrine was invoked *sua sponte* and because the doctrine cannot overcome the attorney-client privilege.  They are wrong on each point.

Eckert, HMS and Parx are wrong in arguing that a court's acceptance of an inconsistent position is a prerequisite for judicial estoppel.  As Judge Saporito correctly noted, ECF 87, p.36, there is no such requirement.  The Third Circuit has made clear that "application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Krystal Cadillac-Oldsmobile*, 337 F.3d at 324; *see also G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) ("We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply."); *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) ("Whether the party sought to be estopped benefitted from its earlier position . . . may be relevant insofar as it evidences an intent to play fast and loose with the courts.  It is not, however, an independent requirement for application of the doctrine of judicial estoppel.").[10]  To the contrary, judicial

---

[10]   While some of the referenced authorities declined to apply judicial estoppel, the facts and circumstances are materially different from this case and as a result

12

estoppel may be applied "to neutralize threats to judicial integrity however they may arise." *G-I Holdings, Inc.*, 586 F.3d at 262.[11]

Eckert, Parx and HMS also err in suggesting that judicial estoppel should not apply because Judge Saporito raised the doctrine *sua sponte* and denied them an opportunity to explain. They are wrong on both the law and the facts. Because judicial estoppel is concerned with the integrity of the court, the doctrine may properly be raised by the court *sua sponte*. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 325 (finding no error where bankruptcy court raised issue of judicial estoppel *sua sponte* and gave parties opportunity to brief issue and present argument). Further, an evidentiary hearing is not required but rather the party to be estopped need only be given an opportunity to explain its change in position. *Montrose Med. Grp. Participating Savs. Plan v. Bulger*, 243 F.3d 773, 780 n.5 (3d Cir.

---

they do not undermine application of judicial estoppel to the unique and egregious facts here.

[11]  Eckert, HMS and Parx appear to be conflating inconsistent ***legal*** claims, where a change in position after acceptance of an earlier position by a court or judge demonstrates a litigant's bad faith, and inconsistent ***factual*** assertions like the ones at issue here. There is no question that a litigant "plays fast and loose with the court" when he knowingly makes directly conflicting statements about a factual matter. This is what Eckert, HMS and Parx did here. Over and over again. And they got caught. They both denied Eckert's involvement in the Commonwealth Court litigation and at the same time claimed that Eckert was acting as counsel. Acceptance by a court of one of these inconsistent assertions is not necessary to conclude that asserting both at the same time is bad faith.

2001).  Eckert, HMS and Parx had such an opportunity at the oral argument on

October 20, 2020.  *See* Tr. of Proceedings at pp. 30, 32, 35-42, 46, 53, 55-56.[12]

At oral argument, Judge Saporito noted that Eckert's Mr. Stewart is "all over

the [privilege] logs" and asked how Eckert can reconcile the denial of involvement

with log entries showing Mr. Stewart's participation at critical stages of the

litigation:

> THE COURT:  . . . [W]e see in the logs where Mr.
> Stewart especially is all over the logs.
> MR. TINTNER:  Yes, no question.
> THE COURT:  He was having obviously some
> communication – well, at least it appears as though he
> was having some communication about this case and
> about certain strategies and documents that should be
> filed, whether it's the amicus brief, whether it's an
> intervention petition, whatever it may be.
> MR. TINTNER:  No question.
> THE COURT:  The question then is, how does Mr.
> Stewart on behalf of Eckert reconcile his involvement?
> Is he representing somebody or isn't he?  What is he
> doing?  Who is paying him to do that, nobody or
> somebody?
> MR. TINTNER:  He is serving on the team of
> lawyers that works for Parx Casino.

(*Id.* at 32.)  Still concerned, Judge Saporito inquired several more times how

Eckert can assert privilege over communications relating to litigation in which it

denies involvement.  *Id.* at 36 ("Eckert is taking the position that . . . [i]t is not

representing anyone that is adverse to POM in that litigation. . . .  It also claimed

---

[12]   The transcript of the oral argument is reproduced as Exhibit E.

that it had no involvement in the Commonwealth Court litigation. How does that come about?"); *id.* at 37-38 ("[I]t appears as though Eckert is saying, well, we are not representing anyone that is adverse to POM. We will wink our eye at somebody and say, okay, but we're going to give all the information that we can to this client, even though it doesn't put POM in a good light, and that was our client at one time or during a period of time."); *id.* at 39 ("Eckert is in a situation that they want to have it both ways and they simply can't, either they represent POM or they represent Parx against POM or they don't, and they can't say, well, we're not representing anybody and then on the q.t. give information."); *id.* at 42 (concession that "Eckert was involved in strategy" "flies in the face of the stated representations here in this Court that Eckert did not represent anyone adverse to POM"). Eckert, to this day, has not corrected the misrepresentations it made to this Court.

Judge Saporito similarly pressed counsel for HMS and likewise received no credible justification for the inconsistent positions:

> THE COURT: Do you have any way to reconcile Eckert's litigation position that neither it, nor any of its attorneys were counsel in any litigation adverse to POM with, you know, privileged log entries, documenting communications between them?
> MR. WHITAKER: I will tell you, Your Honor, that I have sort of ***purposely tried to remain ignorant*** of what's in the background here. . . .
> It appears to me that that's sort of a narrow distinction here . . . . Eckert may have been giving advice

to Parx about how to deal with POM, but they weren't
doing it in the context of being in court.

> THE COURT:  But what if they were doing it in
the context of providing papers that your firm filed on
behalf of Parx?

> MR. WHITAKER:  . . . That's a question that
Eckert has to answer. . . .

(*Id.* at 53-54 (emphasis added); *id.* at 55-56 ("THE COURT:  . . . [I]t appears as
though many of those file documents that you filed on behalf of Parx may have
been ghostwritten by someone from Eckert's firm and under the guise that Eckert
really wasn't counsel of record but you were, but, you know, given the advice to
you to be adverse to POM.  I think that's the implication or at least the allegation
that has been made. . . .").

The transcript thus proves that Eckert, Parx and HMS were afforded "a
meaningful opportunity to provide 'an explanation' for [their] changed position."
*Montrose Med. Grp.*, 243 F.3d at 780 n.5.  This is all that is required.

Both at oral argument and in their briefs, Eckert, HMS and Parx devoted
considerable energy professing that some lawyers at Eckert believed there was an
advance conflict waiver.  However, the Eckert partner in charge of the relationship,
Thomas A. Lisk, denied making disclosures necessary for an effective waiver.
ECF 13-3, ¶¶ 5-7.[13]  Lisk and therefore Eckert knew all along there was no valid

---

[13]  Mr. Lisk's declaration, which was attached to POM's brief in support of
motion for preliminary injunction, is reproduced as Exhibit F.

waiver. Further, Eckert was aware of Mr. Lisk's sworn declaration when it was filed of record in March 2020, but Eckert continued to foist its misrepresentations on this Court. In any event, an advance waiver would not have enabled Eckert to be adverse to POM in the same litigation. Pa. R. Prof. Conduct 1.7(b)(3). This is precisely was why HMS entered an appearance on the record and Eckert hid behind the scenes. While lack of a waiver is relevant to Eckert's breach of fiduciary duty, the existence or non-existence of a waiver does not and cannot justify Eckert's misrepresentations to this Court. Nor is it any defense that Eckert never entered an appearance of record. Eckert claimed that it "does not represent a party adverse to POM," ECF 9, ¶ 18, and "is not involved" in the Commonwealth Court litigation, ECF 18, § 1.1, not that it was not counsel of record. Judge Saporito, having reviewed the materials *in camera*, knows that Eckert was intimately involved in the Commonwealth Court litigation on behalf of Parx which was adverse to POM.

Finally, in a last-gasp attempt to avoid the adverse consequences that must flow from their deception, Eckert and Parx argue that judicial estoppel cannot overcome the attorney client privilege. This is not the law. Judicial estoppel is a sanction applied to avoid a miscarriage of justice. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 319. The doctrine admits of no exception where the fraud on the court relates to application of a privilege. As Judge Saporito noted in his decision, ECF

87, p.36, there is authority for applying judicial estoppel to prevent a litigant like

Eckert from changing positions concerning an attorney-client relationship in an

effort to obtain a litigation advantage. *See In re Berks Behav. Health, LLC*, 500

B.R. 711, 721-22 (E.D. Pa. Oct. 21, 2013) (applying judicial estoppel to prevent

party from claiming attorney-client relationship which it previously denied).

Further, Judge Saporito found that Parx is also properly estopped from asserting

privilege because, like Eckert, it too knowingly downplayed Eckert's role in the

Commonwealth Court litigation.  ECF 87, p.37.[14]

In short, Eckert, HMS and Parx have failed to identify any error in Judge

Saporito's decision.[15]

### C.    Eckert, HMS and Parx Did Not Appeal Judge Saporito's Determination That the Communications Are Not Protected by the Work Product Doctrine.

As an alternative and separate basis for his decision, Judge Saporito

concluded that the work product doctrine does not protect communications

---

[14] The documents produced on March 9, 2021 confirm that Eckert kept Parx and Parx's government relations personnel informed of its efforts to influence the Commonwealth Court litigation in Parx's favor. *See, e.g.*, ECKERT01214-16 (reproduced as Exhibit G).

[15] Parx suggests that it was improper for POM to provide a copy of Judge Saporito's decision to the Commonwealth Court in connection with its pending disqualification motion.  ECF 96, p.20.  There was no impropriety. Communications concerning supplemental authority are specifically authorized. *See* Pa. R.A.P. 2501(b).

between Eckert and HMS concerning the Commonwealth Court litigation.  ECF

87, pp.38-40.  Judge Saporito found that, because Eckert's involvement is "directly

in issue," its communications and activities are excepted from the work product

protection in Rule 26(b)(3).  *Id.* at 38-39.  Further, the work product doctrine does

not shield a lawyer's activities where the work product implicates or creates a

conflict of interest.  *Id.* at 39-40.  Because Eckert, HMS and Parx did not object to

this part of the decision, any objection has been waived.  *United Steelworkers of*

*Am.*, 828 F.2d at 1006.  Accordingly, communications identified in Paragraph 4 of

the February 16, 2021 Order that do not involve Parx and that are not within the

scope of 42 Pa. C.S.A. § 5928 are proper subjects of discovery and must be

produced regardless of the outcome of this appeal.

**D.     The Communications At Issue Should Be Disclosed Because**
**Eckert Has Waived Any Applicable Privilege.**

There is a third independent basis to require production of the

communications itemized in Paragraph 4 of the February 16, 2021 Order: Eckert

asserts defenses that implicate the content of those communications.  Eckert is

attempting to defend against POM's breach of fiduciary duty claims by denying

that it "represent[s] a party adverse to POM in litigation," ECF 9, ¶ 18, by

professing to have implemented an ethical screen, *id.* ¶ 25 & Sixteenth Defense,

and by denying misuse of POM's confidential information, *id.* at Eighteenth

Defense.  Having thus placed its activities and communications at issue, Eckert

19

cannot at the same time invoke the attorney-client privilege or work product doctrine as a shield to avoid discovery of those very same activities and communications. *See Aetna, Inc. v. Mednax, Inc.*, No. 18-CV-02217, 2019 WL 5566705, at \*2 (E.D. Pa. Oct. 29, 2019) (work production protection waived for information put "at issue"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, 2010 WL 4537002, at \*2 (M.D. Pa. Nov. 3, 2010) ("justice requires" that party has right to work product "to defend itself" where work product is "at issue"); *Bowman v. American Homecare Supply, LLC*, 07-3945, 2009 WL 1873667, at \*5 (E.D. Pa. June 25, 2009) (ordering production of work product put "directly at issue"); *United States v. Purcell*, 667 F. Supp. 2d 498, 520 (E.D. Pa. 2009) (work product privilege waived by placing "thought processes and litigation strategy at issue"); *First Fidelity Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 90-1866, 1992 WL 55742, at \*2 (E.D. Pa. Mar. 13, 1992) (work product privilege waived when lawyer makes selective disclosure of protected documents).[16]

For this additional reason, the communications itemized in Paragraph 4 should be produced.

---

[16]   Pursuant to Local Rule 7.8, the unpublished decisions cited herein are reproduced in the attached appendix.

## **CONCLUSION**

For the reasons above, Judge Saporito's decision should be affirmed.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  March 11, 2021

21

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)</u>

I, Donna A. Walsh, hereby certify that the foregoing Consolidated Brief in

Response to Appeals is in compliance with Local Rule 7.8(b)(3).  The brief

contains 4978 words as computed by Microsoft Office Word.


                                        /s/ Donna A. Walsh_____

Date:  March 11, 2019

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Consolidated Brief in Response to Appeals was served upon the following counsel of record via the Court's ECF filing system on this 11th day of March 2021:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

Dennis A. Whitaker, Esquire
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA  17101

George A. Bibikos, Esquire
5901 Jonestown Road, #6330
Harrisburg, PA  17112

/s/ Donna A. Walsh
Daniel T. Brier