# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff | : | No. 1:20-cv-00292 |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | (Magistrate Judge Joseph F. Saporito, |
| ECKERT SEAMANS CHERIN & | : | Jr.) |
| MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Electronically Filed Document |

**HAWKE MCKEON & SNISCAK, LLP's
REPLY BRIEF IN SUPPORT OF
STATEMENT OF APPEAL**

**(From February 16, 2021 Nondispositive
Order Overruling Attorney-Client Privilege Objection
to Non-Party Subpoena)**

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon &
Sniscak, LLP*

## I.    INTRODUCTION AND SUMMARY

Hawke McKeon & Sniscak, LLP (HMS), pursuant to the court's March 4, 2021 Order (Doc. 101) files this reply brief to plaintiff Pace-O-Matic, Inc.'s (POM) brief in opposition to HMS's appeal (Doc. 107).

Magistrate Judge Saporito's conclusion in the Memorandum (Doc. 87) that is the subject of this appeal, that HMS must disclose the privileged information of its client Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx), based on the doctrine of judicial estoppel, is clearly erroneous and contrary to law, as set forth in detail in HMS's opening brief. (Doc. 98). POM's answering brief contributes nothing to support the Memorandum's conclusion that any of the elements of judicial estoppel are present here.

As to the first element, HMS has not taken inconsistent positions. The evidence demonstrates that, in defending against POM's as-yet unresolved attempt to disqualify HMS from representing Parx in POM's Commonwealth Court complaints at Docket Nos. 418 MD 2018 and 502 MD 2018 (Commonwealth Court litigation), HMS was candid with Commonwealth Court in representing that Eckert, Seamans, Cherin & Mellott, LLC (Eckert) was part of the group of lawyers representing Pennsylvania casinos (Casino lawyer group) that seek to intervene in POM's Commonwealth Court cases. Therefore, there is no inconsistency, let alone an "irreconcilable conflict," between HMS's representations to the Commonwealth Court concerning Eckert's involvement in the Casino lawyer group, on one hand, and HMS's claim in this court,

on the other hand, that communications among Parx and its lawyers, including Eckert, are privileged. Eckert was part of the lawyer group advising Parx and the other casinos, and privilege attaches to the work product developed by the lawyer group and to the communications between and among HMS, Eckert, and Parx.

As to the second element, HMS has not engaged in bad faith, and for the same reasons – HMS was candid with the Commonwealth Court and with this court concerning Eckert's involvement. POM's arguments to the contrary in support of the Memorandum fail to respond to HMS's points and rely on arguments the Memorandum did not adopt. Stripped of their unsupported accusations and undeserved venom, POM's arguments prove nothing. The Memorandum in any event did not make the required finding of bad faith, POM's arguments do not change that fact, and the record reveals only good faith on the part of HMS in its representations to the Commonwealth Court and this court.

Finally, given that Eckert has conceded POM's claim that Eckert was involved in the Casino lawyer group advising the casinos that seek to intervene in the Commonwealth Court cases and take positions adverse to POM, there is no reason -- even if the other elements of judicial estoppel were present here (and they plainly are not) – to sanction HMS or Eckert through the drastic step of disclosing Parx's privileged information to POM.  Such a remedy would provide information to POM that it does not need and does not deserve, and would punish only Parx.

## II.    ARGUMENT: JUDICIAL ESTOPPEL IS INAPPLICABLE

### A.    HMS did not take inconsistent positions

POM fails to acknowledge the errors in the Memorandum's justification for concluding that HMS took inconsistent positions. The Memorandum's basis for concluding that HMS took inconsistent positions is that HMS, in opposing POM's still-pending attempt to disqualify HMS from representing Parx in the Commonwealth Court cases, misled that court to believe that Eckert did not "provide legal advice and services to Parx" in those cases and "implicitly represented that Eckert played no substantial role in Parx's activities in those cases," on one hand, while on the other hand invoked privilege in this proceeding to shield its attorney-client communications and work product. Memorandum at 37, *citing* Doc. 82 at 162-168. As HMS has pointed out, however (Doc. 98 at 7-9), Doc. 82 proves precisely the opposite. Indeed, Doc. 82 at 173-179, which is Mr. McKeon's sworn declaration in opposition to POM's disqualification attempt, explains that Eckert *did* play a substantial role in the Casino group's attempt to intervene in the Commonwealth Court litigation:

> Although Eckert did not sign the amicus brief, Mr. Stewart and Eckert continued to believe that Eckert had a valid conflict waiver from POM, and Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and continued to be involved in the casino lawyer group, including creating first drafts of filings or editing the first drafts of documents created by other casino group lawyers for use in this case.

*Id*. at 176 ¶ 10.

POM's silence on this point is telling.

3

Nor does POM address the fact that the Commonwealth Court has not ruled on POM's disqualification motion, so that even if the Memorandum were correct that HMS took inconsistent positions, HMS has not prevailed on the disqualification motion, which remains pending. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings,Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (*G-I Holdings*). While it is true that the *G-I Holdings* court allowed that "[w]e do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply," *id.*, a court's acceptance of the initial position plainly is the general rule requirement for a finding of judicial estoppel. That has not occurred here, and POM offers no basis for an exception. Unlike the situation cited in *G-I Holdings* involving judicial estoppel in *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir.2003), there is no evidence here of detrimental reliance on HMS's alleged "implicit representation" that Eckert played no substantial role in Parx's activities in the Commonwealth Court cases. Indeed, as discussed below, both POM and Magistrate Saporito were well aware that Eckert did in fact have a substantial role.

POM's "proof" consists of snippets of HMS's comments during oral argument before Magistrate Saporito that POM distorts into an argument that HMS "misrepresented to the Court" that Eckert had no role. (Doc. 107 at 10). The Memorandum does not rely on these, however, and with good reason. POM's

4

references are to HMS statements that HMS stepped in "as conflict counsel" and that Eckert handed off the Parx representation to HMS, but these prove nothing. Viewed in context, these statements convey only that HMS became Parx's counsel of record in the Commonwealth Court cases and Eckert did not. Moreover, as counsel for HMS before this court did state, and Magistrate Saporito acknowledged, Tr. at 56:15-18 (Doc 81), HMS's Mr. McKeon knew the details of Eckert's involvement in the Commonwealth Court litigation and the undersigned did not. As it stands, therefore, the only sworn testimony on the issue is Mr. McKeon's declaration filed in opposition to POM's attempt to disqualify HMS in the Commonwealth Court litigation, and that declaration represents unequivocally that Eckert was substantially involved in that litigation as part of the Casino group legal team.

As the record here reveals, moreover, POM has known all along that Eckert was taking positions adverse to POM in Pennsylvania, and that Eckert was involved with the Casino group legal team that was adverse to POM. POM cited examples in its complaint. (Doc. 9 at ¶¶ 15-18). The oral argument transcript before Magistrate Saporito is replete with acknowledgements on the part of Eckert that Eckert was working with the Casino lawyer group on the Commonwealth Court cases. (Doc. 81 at 32-33, 36-39, 42-43).

In short, there is no credible basis for a conclusion that HMS "misrepresented to the Court" that Eckert had no role in the Commonwealth Court litigation. The Memorandum's basis – HMS's response to POM's disqualification motion in the

5

Commonwealth Court – demonstrates only that HMS was candid about Eckert's involvement.  POM's alternative basis – a technical parsing of the term "conflict counsel" and "hand off" – ignores the reality that those statements were made in the context of, and minutes after, counsel for Eckert had already explained to the Magistrate Judge that Eckert had participated in the Casino lawyer group adverse to POM and helped develop pleadings and strategy in the Commonwealth Court cases.

HMS did not take inconsistent positions here.  The Memorandum's conclusion that HMS did has no basis in the record or in the law of judicial estoppel, and POM's attempt to defend the Memorandum's conclusion fails.

### B.      HMS did not act in bad faith

POM argues that HMS engaged in "deliberate deception" in denying Eckert's involvement in the Commonwealth Court litigation, and that such deception fully supports Magistrate Saporito's "specific finding" that HMS took "inconsistent positions [that] were arguably adopted in bad faith." (Doc. 107 at 10-11). As demonstrated above, there is no basis to conclude HMS adopted inconsistent positions. The evidence compels the opposite conclusion. Nor did Magistrate Saporito make a finding of bad faith, an element required under the judicial estoppel standard. *G-I Holdings* at 262. Contrary to POM's claims, the Memorandum's assertion of "arguable" bad faith does not meet the standard and is hardly a "specific finding." "Arguable" is defined as "not certain or clearly true: open to argument, dispute, or

6

question."[1]   Its   synonyms   include:   "controvertible, debatable,   disputable,

doubtable, doubtful, issuable, moot, negotiable, and questionable."[2]

Even if "arguable" bad faith were the standard for triggering judicial estoppel,

the record is clear that HMS acted in good faith here.

### C.     POM will not be harmed if the privilege is sustained

Ignoring the facts that Eckert has conceded that Eckert was involved in the

Casino lawyer group that is taking positions adverse to POM in the Commonwealth

Court cases and in other fora, and that POM itself was aware of that role before it filed

its complaint in this case, POM maintains that the only way to punish Eckert for its

"secret involvement" is to allow POM access to Parx's attorney-client privileged

information and the work product its lawyers prepared on Parx's behalf. (Doc. 107 at

15).  Granting such a remedy is only appropriate, however, if "no lesser sanction [is]

sufficient.' *G-I Holdings* at 262. POM does not need Parx's privileged material,

because Eckert already has conceded that it took positions adverse to POM.

Only Parx would be punished by the disclosure of Parx's privileged information.

Disclosure is not needed for POM to meet its burden in this case, and disclosure will

give POM an undeserved advantage in the Commonwealth Court cases. Accordingly,

even if the other elements of judicial estoppel were present here – and neither are – a

---

[1] https://www.merriam-webster.com/dictionary/arguable.

[2] https://www.merriam-webster.com/dictionary/arguable#synonyms.

sanction that discloses Parx's privileged information when POM does not need it fails the "no lesser sanction [is] sufficient" judicial estoppel criterion.

## III.    CONCLUSION

HMS respectfully requests that the court reverse Section III.I of the Memorandum and direct that HMS is not required to produce the associated documents that Paragraph 4 of the Order directs HMS to produce.

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon & Sniscak LLP*

Dated: March 18, 2021

8

## CERTIFICATE OF SERVICE

I hereby certify that, on March 18, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

*/s/ Dennis A. Whitaker*