## APPENDIX OF UNPUBLISHED OPINIONS

1.  *Bally Total Fitness Holding Corp. v. Liberation Investments, LP*, No. 05-841, 2005 WL 3525679 (D. Del. Dec. 22, 2005)

2.  *Corby v. Scranton Hous. Auth.*, No. 04-2523, 2005 WL 6789319, (M.D. Pa. June 7, 2005)

3.  *Loveless v. Bank of Am.*, No. 13-CV-1546, 2016 WL 5030394 (M.D. Pa. Aug. 24, 2016)

1

2005 WL 3525679
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

BALLY TOTAL FITNESS
HOLDING CORP., Plaintiff,

v.

LIBERATION INVESTMENTS,
L.P., Liberation Investments, Ltd.,
Liberation Investment Group LLC and
Emanuel R. Pearlman, Defendants.

No. Civ.A. 05–841–JJF.
|
Dec. 22, 2005.

**Attorneys and Law Firms**

Gregory P. Williams, Raymond J. Dicamillo, and Elizabeth C. Tucker, of Richards, Layton & Finger, P.A., Wilmington, Delaware, Laurie B. Smilan, of Latham & Watkins LLP, Reston, Virginia, for Plaintiff, of counsel.

Stephen E. Jenkins, Steven T. Margolin, Lauren E. Maquire, and Andrew D. Cordo, of Ashby & Geddes, Wilmington, Delaware, Michael H. Diamond, Kenneth J. Baronsky, and Adam R. Moses, of Milbank, Tweed, Hadley & McCloy, LLP, Los Angeles, California, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before the Court are Defendants' Motion To Dismiss The Preliminary Injunction Proceeding As Moot (D.I.28) and Plaintiff's Motion For Expedited Discovery (D.I.14). For the reasons discussed, the Court will grant Defendants' Motion and deny Plaintiff's Motion.

BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in Chicago, Illinois. Plaintiff owns and operates a nationwide chain of fitness centers. Defendants own a substantial number of shares of Plaintiff's stock. In connection with Plaintiff's upcoming January 26, 2006 shareholder's meeting and a related proxy solicitation campaign, Defendants have filed disclosure documents with the Securities and Exchange Commission. By its Complaint (D.I.1), Plaintiff alleges that those disclosure documents contain materially false and misleading statements and fail to disclose material facts, thereby violating §§ 14(a) and 13(d) of the Securities Exchange Act of 1934.

On December 5, 2005, Plaintiff filed a Motion For A Temporary Restraining Order (D.I.5), seeking, among other relief, an order requiring Defendants to issue corrective disclosures. The Court scheduled a hearing on that Motion for December 7, 2005. On the day of the hearing, Plaintiff withdrew its Motion For A Temporary Restraining Order, but indicated that it would soon file a motion for a preliminary injunction requesting the Court to order Defendants to issue corrective disclosures. Plaintiff also filed a Motion For Expedited Discovery (D.I.14) to take place in connection with the preliminary injunction proceeding. Following the hearing, the Court issued a Scheduling Order in which it ordered Plaintiff to "provide a letter to Defendants setting forth the disclosures it contends Defendants have failed to make (in violation of Sections 13(d) and 14(a) of the Securities Act of 1934) and which [Plaintiff] will pursue at the preliminary injunction hearing...." (D.I. 38 .) Plaintiff complied with that order by sending its letter dated December 10, 2005 (the "contention letter"). (D.I.28, Ex. A.) After receiving the contention letter, Defendants submitted a Revised Preliminary Proxy Statement (D.I.28, Ex. B) (the "revised statement"), in which they set forth, verbatim, all of the allegations of insufficient disclosures that Plaintiff had listed. Defendants also included their responses to Plaintiff's allegations.

DISCUSSION

By their Motion, Defendants contend that their revised statement renders moot Plaintiff's request for corrective disclosures, obviating the need for a preliminary injunction proceeding. (D.I. 28 at 1–2.) Plaintiff responds that the disclosures in Defendants' revised statement are insufficient (D.I. 41 at 7–9) and continue to omit material information (*Id.* at 11).

To obtain a preliminary injunction based on a violation of a disclosure provision of the Securities Exchange Act of 1934, a plaintiff must make a showing of irreparable harm. *Rondeau v.*

Bally Total Fitness Holding Corp. v. Liberation Investments, L.P., Not Reported In...

2005 WL 3525679

*Mosinee Paper Corp.,* 422 U.S. 49, 60–62 (1975). However, if a defendant cures the alleged defects in disclosure, a showing of irreparable harm is precluded. *Energy Ventures, Inc. v. Appalachian Co.,* 587 F.Supp. 734, 743 (D.Del.1984). In the context of a motion for preliminary injunction, where there is a good faith dispute as to facts or an alleged legal violation, disclosure of the dispute is sufficient to cure the alleged defects. *City Capital Association Ltd. Partnership v. Interco, Inc.,* 696 F.Supp. 1551, 1556 (D.Del.1988) (citing *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1502 (D.Del.1984); *Avnet, Inc. v. Scope Industries,* 499 F.Supp. 1121, 1124–26 (S.D.N.Y 1980)).

**\*2** Here, the parties have a good faith dispute with regard to Plaintiff's allegations, and Defendants' revised statement fully discloses all matters that Plaintiff indicated it would pursue at the preliminary injunction hearing. Thus, the Court concludes that Plaintiff cannot make a showing of irreparable harm and the preliminary injunction proceeding is, therefore, moot. Accordingly, the Court will grant Defendants' Motion To Dismiss The Preliminary Injunction Proceeding. Because there will be no preliminary injunction proceeding, Plaintiff's

Motion For Expedited Discovery is also moot and will be denied.

An appropriate order will be entered.

*ORDER*

At Wilmington, this *22* day of December 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1. Defendants' Motion To Dismiss The Preliminary Injunction Proceeding As Moot (D.I.28) is *GRANTED;*

2. Plaintiff's Motion For Expedited Discovery (D.I.14) is *DENIED* as moot.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3525679

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2

2005 WL 6789319

KeyCite Yellow Flag - Negative Treatment
Order Supplemented by Corby v. Scranton Housing Authority, M.D.Pa., September 8, 2005

2005 WL 6789319
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Karen CORBY, et al., Plaintiffs,
v.
SCRANTON HOUSING AUTHORITY
and its Executive Director, Daniel E.
Baker, in his official capacity, Defendants.

Civil Action No. 3:04–CV–2523.
|
June 7, 2005.

**Attorneys and Law Firms**

Andrew Hailstone, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, Kevin L. Quisenberry, Community Justice Project, Pittsburgh, PA, Laurence E. Norton, II, Community Justice Project, Harrisburg, PA, for Plaintiffs.

Paul K. Paterson, Mascelli & Paterson, Sal Cognetti, Jr., Foley, Cognetti & Comerford, Scranton, PA, for Defendants.

*MEMORANDUM*

A. RICHARD CAPUTO, District Judge.

**\*1** Presently before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.) I will grant the motion because I find that there is a likelihood of success on the merits, there is a risk of irreparable harm to the Plaintiffs if the injunction were not issued, there is no risk of irreparable harm to the Defendants if I issue the injunction, and the public interest is served by issuance of the injunction. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**FACTUAL BACKGROUND**

The facts of this case are undisputed. The Scranton Housing Authority (hereinafter Housing Authority) owns and operates low income housing for residents of Scranton, Pennsylvania, including the Washington Plaza Apartments (hereinafter Washington Plaza). The Housing Authority receives funds from the United States Department of Housing and Urban Development (hereinafter HUD). For several years, the Housing Authority has planned to renovate and modernize Washington Plaza. They sought out and received funds from HUD to perform the modernization. The Housing Authority included the modernization in their five year plan. The plan called for all residents to vacate Washington Plaza, thus permitting all buildings to be renovated simultaneously. Residents could choose to moved to other Housing Authority developments, Section Eight housing, or private residencies. The Housing Authority offered to compensate residents for the relocation. The plan further called for new residents to move into the units after they were reopened. On or about October 6, 2004, the Housing Authority sent residents a letter informing them that they had ninety days to begin relocation. The same letter informed residents that information on relocation options and available housing could be received from a person on site at Washington Plaza. Residents had already begun moving out by the time the action was filed.

On November 19, 2004, Plaintiffs filed an Emergency Complaint against the Scranton Housing Authority and its Executive Director, David Baker, in his official capacity. (Doc. 1.) The complaint alleged that the renovation plan violated the Uniform Relocation Assistance Act, 42 U.S.C. § 4601, *et seq.,* as well as the federal regulations governing HUD funded projects, 24 C.F.R. § 968.105, *et seq.,* and the Due Process clause of the Fourteenth Amendment. On November 19, 2004, I held a hearing on the Motion for Temporary Restraining Order and Preliminary Injunction. After hearing testimony from both sides, I conditionally certified the class and issued a temporary restraining order enjoining the Housing Authority from moving residents out of Washington Plaza. (Doc. 6.) I scheduled a hearing on the preliminary injunction for December 1, 2004, (*id.*) but it was canceled because the parties informed the Court that a settlement was forthcoming (Docs. 10 & 11). After several months of negotiations, the parties informed the Court that settlement was not possible. (Doc. 22.) I held a hearing on the preliminary injunction on April 18, 2005. Prior to the hearing, the parties submitted legal memoranda. (Docs. 30 & 32.) The motion is now ripe for disposition.

**DISCUSSION**

**\*2** There are two issues presently before the Court: whether I should certify the class for purposes of this action, and whether I should grant a preliminary injunction. I will address each of these in turn.

## A. Class Certification

At the November 19, 2004 hearing, I conditionally certified the class. Now, I will revisit the issue to determine whether the class should be certified for the purposes of this litigation. Class relief is appropriate when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for class certification. To be certified, a putative class must first satisfy the four threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Fed. R. Civ. P. 23(a). In addition, a plaintiff seeking class certification must show the action is maintainable under Rule 23(b)(1), (2), or (3). *Id.* at 614.

For purposes of class certification, the Court does not consider the merits of the plaintiff's claim. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23 is given liberal rather than restrictive construction. *See In re A.H. Robins Co.,* 880 F.2d 709 (4th Cir.1989). The "interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472, 476 (W.D.Pa.1999) (quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985)). The ultimate burden, however, is on the plaintiff to demonstrate that a class should be certified. *See Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974).

A class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "The question of what constitutes [numerosity] ... depends on the particular facts of each case and no arbitrary rules regarding the size of classes have been established by the courts." 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 (1986). In the present case, Washington Plaza contains sixty units. Of these units, fifty to fifty-five families lived in the units when the modernization planning began. Thus, I find that the potential plaintiffs are numerous enough.

The commonality requirement states that there must be "questions of law or fact common to the class." Rule 23(a)(2). This requirement does not mean that every question must be common to the entire class. *See Weiss v. York Hosp.,* 745 F.2d 786, 809 (3d Cir.1984); *Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980). In the present case, the conduct in question is the manner in which the Scranton Housing Authority planned and intends to execute the modernization of Washington Plaza. Thus, the legal issues as they relate to the individual plaintiffs are identical.[1]

**\*3** "Typicality entails an inquiry into whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Reilly v. Gould, Inc.,* 965 F.Supp. 588, 598 (M.D.Pa.1997) (quoting *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988)). Although typicality measures the sufficiency of the named plaintiffs, it does not require that "all putative class members share identical claims." *Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). Rather, the typicality requirement is intended "to screen out class actions involving legal or factual positions of the class representative which are markedly different from those of other class members." *Reilly,* 965 F.Supp. at 600 (quoting *Liberty Lincoln Mercury v. Ford Marketing,* 149 F.R.D. 65, 77 (D.N.J.1993)). In the present case, the named Plaintiffs represent a large crosssection of the residents of the complex. They are mothers rearing children, people caring for elderly parents, people suffering from ongoing medical conditions which require frequent hospital visits, people who work, and people who rely upon public transportation. Thus, I find the typicality requirement is met.

Last is the question of adequacy of representation. This requirement actually encompasses two factors. First, "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees." *Georgine v. Amchem Prods.,* 83 F.3d 610, 630 (3d Cir.1996). I find that this requirement has been met. Plaintiffs are seeking to enforce their rights of relocation assistance and participation provided under the applicable statutes and regulations. The second component of Rule 23(a)(4) is that "class counsel must be qualified and must serve the interests of the entire class." *Id.* at 630. After observing Plaintiffs' counsel in two hearings and *in camera* meetings, and after reviewing the filings before the Court, I am satisfied that Plaintiffs' counsel is capable of providing adequate legal representation and will serve the interests of the entire class.

Case 1:20-cv-00292-JPW    Document 111-2    Filed 03/22/21    Page 8 of 16

Thus, I find that the putative class meets all of the requirements for class certification. I will certify the class of residents of Washington Plaza who resided there since the Housing Authority's initiation of negotiations with HUD for modernization funding.

## B. Preliminary Injunction

"The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700 (3d Cir.2004).

In the present case, the success on the likelihood on the merits is clear. Defendants concede that they failed to provide residents with participation required under the HUD regulations. In particular, Plaintiffs presented evidence that Defendants failed to give residents adequate notice of the planned renovations during the planning stages, failed to involve the residents and did not include them in the creation of goals, needs, strategies, and priorities for the project, and failed to have resident participation in the decision-making process to determine that relocation was necessary. In addition, Plaintiffs presented evidence that Defendants violated the Uniform Relocation Assistance Act. Specifically, Plaintiffs presented evidence that Defendants failed to provide comparable replacement housing as part of the relocation and failed to provide the full range of options for compensation for the relocation.

*4 Similarly, the likelihood of harm to the Plaintiffs is clear. At the time the case was filed, Defendants were in the process of moving residents out of Washington Plaza. Once residents leave Washington Plaza, they lose certain rights to contest Defendants' actions. In addition, Defendants' failure to have Plaintiffs meaningfully participate in the planning is a harm that cannot be undone once the lack of participation occurs. Thus, an injunction requiring participation will prevent future harm.

Defendants contend that there is no longer a risk of irreparable harm because they have stopped the renovation plans. At the hearing, Defendants explained to the Court that they intend to reinvestigate the options they have for renovations and then permit the residents to comment on the new proposed plan. While I do not doubt Defendants' intention to engage the residents, I do not believe that the Defendants' representations to the Court eliminate all possible injuries. In most recent hearing, Defendants talked about conducting studies and then notifying residents of the decisions. However, the duty to have resident participation begins from the point that a housing authority receives HUD money. 24 C.F.R. § 968.315. It is unchallenged that Defendants have received HUD money for modernization. Thus, no actions can be taken at this point, including no decision-making or planning, without meaningful resident participation. Therefore, it is clear to the Court that even now Defendants' current plan will continue to cause harm to Plaintiffs.

Furthermore, even if Defendants' stated intentions were compliant with the applicable statutes and regulations, the unilateral actions of a Defendant cannot moot a case easily. The burden is upon Defendants to show not only that they have ceased activities, but that they will not reinitiate the illegal activities in the future. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). I find in the current situation that Defendants have not met their burden. Thus, the dispute is not moot.

As for the third prong of the test for a preliminary injunction, potential harm to Defendants, I find that Defendants would suffer no irreparable harm from the issuance of an injunction. Defendants have openly admitted that they have voluntarily postponed the renovation project. Thus, an injunction requiring that action will cause no harm. Furthermore, Defendants have certain legal obligations to the Plaintiffs under the Uniform Relocation Assistance Act and the federal regulations. An injunction requiring Defendants to follow those laws and regulations presents no additional burden upon Defendants.

The last prong of the test for a preliminary injunction is whether the public interest is served. It is the Court's opinion that the public interest is always served when parties are required to comply with the laws. In addition, there is a strong public interest is providing protection against relocation from one's home, particularly when the affected population is composed of low-income individuals who rely upon government services to provide affordable, safe housing.

## CONCLUSION

**\*5** I will certify the class because they demonstrate the necessary numerosity, typicality, commonality, and adequacy of representation. I find that there is a likelihood of success on the merits, there is a risk of irreparable harm to the Plaintiffs if the injunction were not issued, there is no risk of irreparable harm to the Defendants if I issue the injunction, and the public interest is served by issuance of the injunction. Therefore, I will grant Plaintiffs' motion for Preliminary Injunction.

An appropriate Order follows.

### ORDER

**NOW,** this 7th day of June, 2005, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **GRANTED:**

(1) I hereby **CERTIFY** the class of plaintiffs comprised of the individuals who resided at the Washington Plaza Apartments since the Scranton Housing Authority began negotiations with the United States Department of Housing and Urban Development for modernization funding. Any persons withdrawn from the class up to this point shall remain withdrawn from the class.

(2) Defendants are hereby **ENJOINED** from relocating or displacing any residents of Washington Plaza Apartments until such time as they comply with the Uniform Relocation Assistance Act and the regulations governing funding from the United States Department of Housing and Urban Development for modernization of public housing.

(3) Defendants shall notify and provide Class members the right to reside at Washington Plaza Apartments after the completion of any renovations.

(4) Defendants shall take all steps feasible to minimize the temporary displacement of Class members from Washington Plaza Apartments during the renovation period.

(5) Defendants shall notify and provide Class members the right to participate in a process which ensures that Class members are involved in a meaningful way in all phases of modernization planning and implementation, including decisions regarding the feasibility of conducting the renovations with onsite relocation only or with partial onsite relocation, in order to recognize the hardships associated with displacement and relocation and develop solutions thereto. This resident participation process shall meet the standards and procedures set forth at 42 U.S.C. § 4625(a), 49 CFR § 24.205(a) and 24 CFR Part 968 which shall the include the following:

a. Defendants shall provide Plaintiff Class counsel with all information relevant to any proposed renovation and relocation. If any information is not provided to Plaintiff Class counsel, such information may not be relied upon by the Defendants to determine the feasibility of conducting renovations with onsite relocation only or with partial onsite relocation;

b. Class members may utilize a consultant to evaluate the feasibility of conducting renovations with onsite relocation only or with partial onsite relocation. Defendants shall provide for the reasonable cost of such technical assistance as an eligible management improvement cost from the Capital Grant awarded to the Defendants;

**\*6** c. Defendants shall carry out the resident participation process by conducting meetings with Class members; and,

d. Defendants shall arrange for a record of the proceedings to be established.

(6) Defendants shall notify and provide Class members the full range of the moving options, relocation payments and advisory services to which they are entitled by law.

(7) Defendants shall notify and provide Class members the right to participate in a hearing consistent with due process to protect against the erroneous deprivation of their vested property interest to continued occupancy at Washington Plaza.

(8) Defendants shall notify and provide Class members who have already moved from Washington Plaza Apartments of the option to immediately return to the property, moving expenses to be paid by the Defendants.

(9) The Temporary Restraining Order issued November 19, 2004 and the amendment of December 16, 2004 are hereby vacated and replaced by this Order. In the cases of Daveen Coello and Mildred Reyes, members of the Plaintiff Class who had already relocated prior to the Order of November 19, 2004, IT IS HEREBY ORDERED that the Order of November 19, 2004 and

Case 1:20-cv-00292-JRW   Document 111-2   Filed 03/22/21   Page 10 of 16

2005 WL 6789319

this Order shall not prevent the finalization of these two moves by the Defendants, provided, however, that these two class members shall not be prejudiced as a result of their moving as to any rights, protections or benefits should the Plaintiffs prevail in this litigation.

The Court shall retain jurisdiction as necessary and appropriate to enforce and implement this Order.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 6789319

## Footnotes

1    The Court notes that some of the class members have relocated from the complex, while others are still living there. It is possible that this distinction may have implications at later stages of the litigation, but it is not significant enough to outweigh the commonalities that the class members share.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

3

Loveless v. Bank of America, N.A., Not Reported in Fed. Supp. (2016)

2016 WL 5030394

2016 WL 5030394
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Russell R. LOVELESS and
Mary Ellen Hennings, Plaintiff

v.

BANK OF AMERICA,
N.A., et al., Defendants.

CIVIL NO: 3:13-CV-01546
|
Signed 08/24/2016

**Attorneys and Law Firms**

Thomas J. Jones, Jr., Thomas J. Jones, Jr., PC, Scranton, PA, for Plaintiff.

Robert E. Warring, Reed Smith LLP, Philadelphia, PA, for Defendants.

## REPORT AND RECOMMENDATION

Susan E. Schwab, United States Magistrate Judge

### I. Introduction.

*1 The plaintiffs, Russell R. Loveless and Mary Ellen Hennings, claim that the defendants breached the terms of a mortgage and that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* They also assert a quiet-title claim. Loveless is seeking a preliminary injunction ordering defendant Bank of America and its contractors to stop trespassing on his property. Because Loveless has not shown irreparable injury, we recommend that the Court deny his request for a preliminary injunction.

### II. Background and Procedural History.

The plaintiffs began this action by filing a complaint in June of 2013. At that time they were represented by counsel, Anthony J. Moses, Esquire. The defendants filed a motion to dismiss the complaint, and the plaintiffs sought an extension of time to respond to that motion asserting that they could not reach Moses, that Moses closed his office, and that his phone number had been disconnected. The Court granted the plaintiffs an extension of time to respond to the motion, and it ordered that they obtain new counsel or proceed *pro se.* The plaintiffs subsequently filed an amended complaint *pro se.*

The defendants moved to dismiss the amended complaint, and the Court granted in part and denied in part that motion. The Court also granted the plaintiffs leave to file a second amended complaint, which the plaintiffs filed on September 30, 2014. The second amended complaint names five defendants: (1) Bank of America, N.A. (Bank of America); (2) BAC Home Loans Servicing, LP (BAC); (3) MERS Corp., Inc. (MERS Corp.); (4) Mortgage Electronic Registration Systems, Inc. (MERS Inc.); and (5) the Federal National Mortgage Association (Fannie Mae).

The plaintiffs allege the following facts about the defendants. Bank of America is a subsidiary of Bank of America Corporation (BOA), which is a national bank. BAC was a subsidiary of Bank of America until July of 2011, when BAC merged with Bank of America. MERS Corp. is owned by many of the most significant stakeholders in the mortgage industry, including Bank of America and Fannie Mae, and it owns and operates an electronic registry system (MERS system) that purports to track the ownership and servicing rights of its members in residential loans. MERS Inc. is a wholly owned subsidiary of MERS Corp. MERS Inc. serves as the nominal mortgagee in the public land records for loans that are registered on the MERS system. Since 2001, MERS Inc. has served as the mortgagee of record for more than 1.5 million mortgages. Fannie Mae is a publically traded company that securitizes mortgages.

The plaintiffs' claims stem from a mortgage, and they allege the following facts with respect to that mortgage and their involvement with the defendants. In May of 2007, the plaintiffs entered into a mortgage with Countrywide FSB, a federally chartered savings bank. The mortgage, which the plaintiffs attach to their second amended complaint as an exhibit, lists the plaintiffs as the borrower/mortgagor, Countrywide Bank, FSB as the lender, and MERS Inc. as the mortgagee. *Doc. 38* at 3. The mortgage provides that MERS Inc. is acting solely as a nominee for the Lender and the Lender's successors and assigns. *Id.* The mortgage provides for an escrow for property taxes, and it provides among other things that the "Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA." *Id.* at 11.

*2 In August of 2007, the Pocono Mountain School District issued a tax bill in the amount of $1,468.22 for taxes on

Case 1:20-cv-00292-JPW   Document 111-2   Filed 03/22/21   Page 13 of 16
Loveless v. Bank of America, N.A., Not Reported in Fed. Supp. (2016)
2016 WL 5030394

the property subject to the mortgage. Countrywide FSB failed to pay those taxes from the escrow as it was required by the mortgage. The plaintiffs received a notice from the Coolbaugh Township tax collector that the taxes were unpaid, and they notified Countrywide that the taxes were due and payable. Still Countrywide failed to pay the taxes. In January of 2008, the Coolbaugh Township tax collector transferred the tax bill to the Monroe County Tax Claim Bureau. The Monroe County Tax Claim Bureau charged additional fees and interest bringing the new total due to $1,666.01, for which the plaintiffs became liable. The plaintiffs claim that Countrywide FSB breached the mortgage by failing to pay the taxes when due.

In 2008, BOA, the parent of Bank of America, purchased Countrywide Financial Corporation. Prior to April of 2009, BAC did business under the name "Countrywide Home Loan Services, LP." According to the plaintiffs, Countywide FSB breached the mortgage by failing to pay the taxes before BOA acquired Countrywide. The plaintiffs allege that they exercised their right to rescind the mortgage.[1]

On April 28, 2009, MERS, Inc., as nominee for Countrywide FSB, assigned and transferred the mortgage to Countrywide Home Loans Servicing LP. That assignment was executed by David Perez and Serena Harmon, identified on the assignment as assistant vice presidents of MERS, Inc. The plaintiffs allege, however, that Perez was not a duly appointed or authorized officer of MERS, Inc. and that he did not have proper signing authority for MERS Corp.

On May 18, 2009, BAC, formerly known as Countrywide Home Loan Servicing LP, filed a mortgage foreclosure action in the Court of Common Pleas of Monroe County, Pennsylvania against the plaintiffs. The foreclosure complaint in that case, which the plaintiffs attach to their second amended complaint as an exhibit, alleged that the mortgage was in default because monthly payments of principal and interest were due and unpaid for December 1, 2008 and each month thereafter. *Doc. 38-3* at 4. The verification attached to the foreclosure complaint was signed by David Perez, as assistant vice president of BAC. In November of 2009, the Court of Common Pleas entered a default judgment against the plaintiffs in the amount of $134,204.54, and a few days later, BAC filed a praecipe for a writ of execution. Execution proceedings were stayed, however, in January of 2011.

In January of 2011, the plaintiffs discovered, through Fannie Mae's website, that Fannie Mae claimed to own their mortgage. Also, a customer service representative of Fannie Mae informed Loveless that Fannie Mae owned the mortgage since its origination. The plaintiffs also allege that a representative of Fannie Mae stated that Fannie Mae owned the mortgage since May 1, 2007, which date is ten days before the origination of the mortgage. According to the plaintiffs, Fannie Mae claimed to own the mortgage during the same time that BAC was seeking to foreclose on the property. But Fannie Mae has not recorded any instrument with the Monroe County Recorder of Deeds establishing its ownership of the mortgage.

In late January of 2011, the plaintiffs sent a request to BAC asking for the full name, address, and phone number of the current holder of their loan, but BAC did not respond. At a reconciliation meeting ordered by the state court, an attorney representing BOA stated that "Bank of America certainly does own your loan." *Doc. 37* at ¶43. Bank of America, MERS Corp., MERS, Inc., and Fannie Mae, however, failed to produce any evidence of ownership of the mortgage and note.

**\*3** In July of 2011, the Court of Common Pleas of Monroe County ordered the default judgment and writ of execution in the foreclosure action stricken, and it cancelled a scheduled sheriff's sale. A short time later, BAC filed a praecipe to discontinue the foreclosure action.

Loveless contends that he was misled as to which entity owned his mortgage and note. According to the plaintiffs, although Bank of America no longer owns the mortgage and the note, it is still attempting to initiate a foreclosure action.

Paragraph 16 of the Mortgage, titled "Governing Law; Severability; Rules of Construction," provides in part:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

*Doc. 38* at 18. According to the plaintiffs, Fannie Mae concealed its alleged ownership of the mortgage and note, but it nevertheless had an "implied duty" to comply with Paragraph 16 of the mortgage and as such it was required to record all mortgages and assignments of mortgages and notes in accordance with Pennsylvania's recording statute, 21 P.S. § 351. According to the plaintiffs, Bank of America, BAC, and MERS, Inc. also were required by Pennsylvania's recording statute to record all mortgages and assignments of mortgages

2016 WL 5030394

and notes. The plaintiffs claim that the defendants actions and inactions constitute "breach of contract by putting a cloud on the chain of title" of their property. *Doc. 37* at ¶52.

According to the plaintiffs, they received a number of communications from Bank of America and BAC that violated the FDCPA.[2] Also, according to the plaintiffs, BOA, through its contractors, caused physical damage to their property and took personal property belonging to them. The plaintiffs allege that BOA implied to its contractors that it owned the property, and this resulted in the contractors illegally entering the property, removing more than $20,000 worth of personal property belonging to the plaintiffs, and changing the locks.

According to the plaintiffs, Fannie Mae's assertions that it owns the mortgage coupled with its failure to record any mortgage instrument affects and corrupts the chain of title to their property. Similarly, according to the plaintiffs, MERS Corp. and MERS, Inc.'s failure to record note assignments among its members violates Pennsylvania's recording statute and corrupts the chain of title. Further, the plaintiffs allege that Bank of America and BAC claim that they own the mortgage and note, but they have failed to provide evidence of such. The plaintiffs claim that the actions of the defendants have corrupted the title to their property and have made their property unmarketable.

The second amended complaint contains three counts. Count One is for breach of contract based on Countrywide's failure to pay the property taxes in a timely manner, based on the defendants' failure to comply with Pennsylvania's recording statue, and possibly based on the assignment of the mortgage. Count Two contains claims under the Fair Debt Collection Practices Act. And Count Three is a claim to quiet title.

*4 The defendants filed a motion to dismiss the second amended complaint, and that motion was granted in part and denied in part. All claims against MERS Corp. were dismissed; all breach-of-contract claims were dismissed except the breach-of-contract claim against Bank of America and BAC based on the failure to pay the taxes; all FDCPA claims by Hennings were dismissed except the claim based on contractors entering the property, changing the locks, and removing personal property; the quiet-title claim against MERS Inc. was dismissed in its entirety; and the quiet-title claim against the other defendants was dismissed to the extent that the plaintiffs are seeking to have the mortgage and/or note declared invalid because transfers were not recorded and

to the extent that claim was based on defendants' alleged violations of 21 P.S. § 351.

In 2014, Loveless filed a motion for an order to cease and desist claiming that contractors for Bank of America trespassed on his property for the purpose of repairing pipes on the property, and they changed the locks, performed landscaping, and removed some personal property without his consent. Given that Bank of America responded that it instructed its contractors not to enter the property any more, we recommended that Loveless's motion be denied because he could not show irreparable injury. Judge Caputo adopted that Report and Recommendation and denied Loveless's motion as moot without prejudice to Loveless refiling should the defendant or its contractors re-enter the property.

Currently pending is Loveless's renewed "Motion for Order to Cease and Desist."[3] In this motion, Loveless asserts that in October of 2015, contractors working for Bank of American entered his property, removed the locks, and installed their own locks, all without his knowledge. He contends that this barred him from the use of the property, and requests that the Court order Bank of America and its contractors to stop any further trespass on the property. Loveless filed a brief in support of this motion arguing that because Countrywide failed to pay a tax bill in 2007 on time, it materially breached the mortgage contract, and thus, he was excused from fulfilling his obligations under the contract. And therefore, according to Loveless, Bank of America, as successor of Countrywide, has no right under the mortgage to enter the property.

Bank of America filed a brief in opposition arguing that it has only one vendor assigned to the subject property, that vendor's records show that a "no-entry" instruction has been in place since July of 2014, and it has been limited to visual drive-by inspection since that time. Bank of America contends that Loveless does not have any evidence that it or its contractors entered the property. Further, according to Bank of America, the 2007 school taxes on the property were eventually paid and the alleged failure to pay the school taxes in a timely manner in 2007 was not a material breach of the mortgage. Bank of America contends, therefore, that Loveless was not excused from performing his obligations under the mortgage, that he is in default, and under the mortgage it has the contractual right to enter the property and protect its rights. Bank of America also asserts that any injury to Loveless is compensable in money damages, and so Loveless cannot show irreparable injury. Bank of America further asserts that

Case 1:20-cv-00292-JPW    Document 111-2    Filed 03/22/21    Page 15 of 16

Loveless v. Bank of America, N.A., Not Reported in Fed. Supp. (2016)

2016 WL 5030394

given that the plaintiffs no longer reside at the property and the property is vacant, granting a preliminary injunction would adversely affect its ability to protect its interest in the property under the terms of the mortgage. Finally, Bank of America contends that the motion for a preliminary injunction is moot given that it notified its contractors not to enter the property and that instruction remains in effect.

**\*5** Counsel subsequently entered an appearance on behalf of Loveless and Hennings. After a status conference with counsel, we stayed Loveless's motion to cease and desist to allow counsel, who had recently entered his appearance, time to come up to speed and to consider whether Loveless still wanted to pursue the motion to cease and desist. In accordance with orders from the undersigned, counsel filed letters on the docket regarding whether the motion to cease and desist could be resolved without judicial intervention. *See docs. 82 & 84.* The parties were unable to resolve the issue and given their letters, the motion to cease and desist is ripe for decision.

## III. Discussion.

At the outset, we reject Bank of America's argument that the motion should be denied as moot in light of its instructions to its contractors not to enter the property. Given Bank of America's assertion in 2014 that it had instructed its contractors not to enter the property, Loveless's first motion to cease and desist was denied as moot. But it was denied without prejudice to refiling should the defendant or its contractors re-enter the property. Loveless now contends that someone reentered the property and changed the locks. While Bank of America contends that its contractor did not change the locks because it had previously instructed its contractor not to enter the property, it is difficult to image who else would change the locks. In any event, given that the someone has purportedly reentered the property and again changed the locks, it would not be appropriate to dismiss Loveless's renewed motion as moot.

We nevertheless recommend that Loveless's motion for a preliminary injunction be denied. A motion for preliminary injunctive relief is governed by Rule 65 of the Federal Rules of Civil Procedure and is judged against exacting legal standards. To obtain a preliminary injunction, a party "must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010).

Preliminary injunctive relief is not granted as a matter of right. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982); *see also Thomas v. Pennsylvania Dep't of Corr.*, 3:13-CV-2661, 2014 WL 3955105, at \*1 (M.D. Pa. Aug. 13, 2014) ("An injunction is an 'extraordinary remedy' that is never awarded as of right."). Rather, the decision to grant or deny such relief is committed to the discretion of the district court. *United States v. Price*, 688 F.2d 204, 210 (3d Cir. 1982). Preliminary injunctive relief is an extraordinary remedy that places precise burdens on the moving party, and "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

Loveless cannot show irreparable injury. Irreparable injury is "harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "The preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.* "Thus, in order to warrant a preliminary injunction, the injury created by a failure to issue the requested injunction must 'be of a peculiar nature, so that compensation in money cannot atone for it ....' " *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (quoting *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976)). "[P]urely economic harm that can be adequately compensated with a monetary award following adjudication on the merits" does not qualify as irreparable injury. *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 643 Fed.Appx. 229, 232 (3d Cir. 2016); *See also Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) ("We have long held that an injury measured in solely monetary terms cannot constitute irreparable harm."); *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate monetary damages belies a claim of irreparable injury."); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982) ("[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law").

**\*6** Here, because Loveless does not live in the property and Bank of America has asserted that it will not take steps to prevent him from entering the property, *see doc. 84* at 2, Loveless will not be irreparably injured if a preliminary

Loveless v. Bank of America, N.A., Not Reported in Fed. Supp. (2016)

2016 WL 5030394

Case 1:20-cv-00292-JPW     Document 111-2)    Filed 03/22/21    Page 16 of 16

injunction is not issued barring Bank of America from entering the property and changing the locks again. Loveless can pay to have the locks changed so that he has access to the property. While this will cost some money, if, as Loveless asserts, Bank of America had no right to enter the property under the mortgage because of the purported failure to timely pay the taxes in 2007, then Loveless can recover that amount as damages should he prevail on the merits. Because Loveless's asserted injury can be compensated by money, it does not amount to irreparable injury, and Loveless is not entitled to a preliminary injunction.

### IV. Recommendation.

Based on the foregoing, it is recommended that Loveless's motions (docs. 60 & 74) for a preliminary injunction be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of August, 2016.

### All Citations

Not Reported in Fed. Supp., 2016 WL 5030394

### Footnotes

1    The plaintiffs do not allege when they purportedly rescinded the mortgage. Nor do they provide any other allegations about the purported rescission.

2    We do not set forth the alleged details regarding these communications as they are not relevant to the pending motion to cease and desist.

3    Although Loveless initially failed to sign this motion, see doc. 60, after the undersigned pointed that out during a telephone conference, Loveless then filed a signed copy of his motion, see doc. 74. As Hennings has not signed the motion, we construe the motion as brought only by Loveless.

**End of Document**                                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.