**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PACE-O-MATIC, INC.,

               Plaintiff,

v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

               Defendant.

Docket No. 1:20-cv-00292

(Judge Jennifer P. Wilson)
(Judge Joseph F. Saporito, Jr.)

**REPLY MEMORANDUM OF DEFENDANT,
ECKERT SEAMANS CHERIN & MELLOTT, LLC,
IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS PRELIMINARY INJUNCTION MOTION**

Defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"), by and

through its counsel, Fox Rothschild LLP, hereby files this Reply Memorandum in

Further Support of its Motion to Dismiss as Moot the Motion for Preliminary

Injunction of plaintiff, Pace-O-Matic, Inc. ("POM").

**INTRODUCTION**

Lost in POM's accusatory and misguided response to the motion to dismiss

filed by Eckert ("Eckert's Motion") is the fact that Eckert has given POM the exact

relief that it sought through its preliminary injunction motion filed over a year ago

and, likely, more relief than POM would ever be entitled to as part of its motion for

preliminary injunction ("POM's Motion"). Rather than accept the relief provided

and agree to the proposed dismissal of POM's Motion as moot, POM makes unnecessary and unwarranted attacks against Eckert. POM also raises irrelevant issues that go to potential liability and its purported damage claims (rather than any form of injunctive relief). Most importantly, POM fails to provide this Court with any basis to go forward with a preliminary injunction hearing now that Eckert has taken steps that fully and completely moot POM's request for injunctive relief.

**RESPONSE TO POM's MISCHARACTERIZATION OF CERTAIN FACTS**

The most serious concern about POM's response to Eckert's Motion is that, in some stubborn but unwarranted attempt to go forward with POM's Motion, POM resorts to factual misstatements and mischaracterizations of the testimony in the record. It is simply not true that Eckert has *only agreed* that it "will not advocate that 'POM's devices are not based predominantly upon skill.'"[1] *See* POM's Response at 2. Rather, Eckert goes well beyond that concession. Indeed, Eckert withdrew from the pending lawsuits in which POM's "interests" were adverse. Eckert agreed not to consult or remain involved in any way in the pending Commonwealth Court of Pennsylvania cases that have drawn POM's ire – even though Greenwood Gaming & Casino, Inc. d/b/a Parx Casino ("Parx Casino"), Eckert's other client, is not yet even a party in those cases. Eckert has

---

[1] It is concerning that POM would take any issue with that concession when POM proposed and requested such relief in the first place.

agreed prospectively not to represent any client adverse to POM in Pennsylvania (consistent with POM's proposed form of order), pursuant to Pennsylvania Rules of Professional Conduct (the "Rules") 1.7 and 1.9. Eckert further has agreed not to advocate against POM legislatively, publicly or otherwise about POM's games. Eckert has agreed to adhere to its confidentiality screen and to maintain POM's confidentiality with respect to any confidential information that Eckert learned through its representation of POM in Virginia. Such concessions and voluntary agreement to do so beg the ultimate question: what more could POM possibly want? More to the point, what more could a Court order as part of a motion for preliminary injunction? POM fails to recognize the limits of the relief that it now apparently is seeking and the inappropriateness of such a request.

Also, POM falsely claims that Judge Saporito's decision confirms some type of breach on the part of Eckert. Judge Saporito's decision goes to discovery issues related to attorney-client privileged and work product documents claimed by Eckert and the other third parties. Such a decision does not confirm, as POM suggests, either some admitted breach of its duties or any covert conspiracy.[2]

---

[2] While this issue is largely irrelevant to Eckert's Motion, the Court should note that POM has been aware of Eckert's separate representation of Parx Casino since the outset of Eckert's representation of POM in Virginia in late 2016-early 2017. POM's counsel wrote to Mr. Coon in January 2020 – well before the filing of POM's Motion and the discovery dispute at issue complaining about the purported conflict surrounding Eckert's involvement with *amicus* counsel in POM's pending Commonwealth Court cases. Eckert's involvement was not covert.

3

In addition, POM claims that it needs injunctive relief "enjoining the misuse and disclosure of its confidential and proprietary information." First, there has been no such misuse or disclosure of any confidential information, and POM is fully aware of it.[3] Second, contrary to what Thomas Lisk testified, which is that he had no idea whether an ethical screen was implemented or not, POM states that Lisk testified that, "there was no screen." That is not how Lisk testified. Instead, Lisk testified as follows:

> Q. Well, you don't know for sure whether it [the ethical screen] was implemented or not, do you?
>
> A. **No, to the best of my knowledge, I don't know one way or another.**

*See* Thomas Lisk Deposition Transcript at 61 attached hereto as Exhibit "A". Lisk was not the person who would either set up or implement the screen. Moreover, Lisk left Eckert before the purported conflict issue with Parx Casino arose in late 2019.

Not only did Eckert implement the ethical screen, Eckert attorneys and staff adhered to it, and they continue to do so. *See* Revised Declaration of Timothy S. Coon attached hereto as Exhibit "B".

---

[3] POM has not identified any specific document, fact or circumstance evidencing the disclosure of any of POM's confidential information by Eckert because there has been no such disclosure.

## ARGUMENT

### POM's Continued Request for Injunctive Relief is Inappropriate.

What has become more clear through POM's aggressive stance and overly-punitive tone is that POM is not really interested in obtaining any form of legitimate injunctive relief, it instead seeks to use POM's Motion as some form of a punishment and/or a request for a permanent injunction. POM has not sought and would not be entitled to any form of a permanent injunction at this stage of the proceedings. *See, e.g., Ciba Geigy Corp. v. Bolar Pharmaceutical, Inc.*, 747 F.2d 844, 850 (3rd Cir. 1984) (plaintiff must have actually succeeded on the merits to warrant any form of a permanent injunction). Further, an injunction should not be used as some type of strategic weapon to dangle over a defendant's head. Rather, "[p]reliminary injunctive relief is an extraordinary remedy that places precise burdens on the moving party, and 'the preliminary injunction must be the only way of protecting the plaintiff from harm.'" *Loveless v. Bank of America*, 2016 WL 5030394 at *5 (M.D. Pa., Aug. 24, 2016), citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3rd Cir. 1989); *Thomas v. Pennsylvania Dept. of Corr.*, 2014 WL 3955105 at *1 (M.D. Pa., Aug. 13, 2014) ("An injunction is an extraordinary remedy that is never awarded as of right"). The Court should not condone POM's attempt to use the injunctive process as a form of punishment or

5

strategic weapon when Eckert has given *POM the relief that it sought* and POM's Motion is now moot.

Moreover, the cases cited by POM neither support its argument as to mootness nor do they provide any basis for the Court to deny Eckert's Motion. Indeed, the standard for determining whether an injunction becomes moot, as stated in *Corby v. Scranton Housing Authority*, 2005 WL 6789319 at *4 (M.D. Pa., Jun. 7, 2005), which is cited by POM, is whether the defendants have shown "not only that they have ceased activities, but they will not reinitiate illegal activities in the future." *Id.*, citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 189, 120 S.Ct. 693 (2000). Here, Eckert has met that burden not only by agreeing to step out of any pending cases but by declaring prospectively that Eckert "will not represent any party adverse to POM consistent with Pennsylvania Rules of Professional Conduct 1.7 and 1.9" and that Eckert will not "advocate legislatively, judicially, or publicly that POM's devices are not based predominantly upon skill." *See* Revised Declarations of Timothy S. Coon and Mark S. Stewart[4] attached hereto as Exhibits "B" and "C".

In both of the other cases cited by POM, the Courts denied as moot or denied the motions for preliminary injunction. These cases certainly do not

---

[4] While attorneys as officers of the Court certainly do not need to take their declarations to a Court "under penalty of perjury," because POM has raised this concern, Eckert has provided revised Declarations with that language in there.

support POM's position that POM's Motion is not moot, or that the Court should

go forward with a preliminary injunction hearing.

### POM Fails To Establish Relief Through *Maritrans*.

Moreover, as argued in response to POM's Motion, reliance upon *Maritrans*

*v Pepper Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992), is entirely misplaced.

There has been no use or disclosure of POM's confidential information. *See*

Revised Declaration of Timothy S. Coon attached hereto as Exhibit "B".

The key issue in *Maritrans*, which supported the entry of injunctive relief,

was that the very same attorney who held the confidential information and the duty

of loyalty to the former client *was the attorney seeking to represent the former*

*client's competitors in substantially related matters.* *Id.* at 248-249 and 1286.

There, Maritrans actually agreed to the implementation of an ethical screen that

permitted its former lead attorney, Anthony Messina, Jr., to represent four

competitors of Maritrans in New York. *Id.* at 249. Messina not only violated the

ethical screen in order to represent other Maritrans competitors, but he was

simultaneously trying to recruit another attorney representing other Maritrans

competitors to join Pepper. *Id.*

Because of Messina's direct knowledge of Maritrans' highly confidential

and industry-competitive information and because Messina was directly

representing competitors in actions adverse to Maritrans (and had violated his own

7

proposed ethical screen), the trial court believed that a preliminary injunction was warranted. *Id.* at 251.

Interestingly, both the trial court and the Supreme Court found the ethical screen there to be defective largely because Messina was on both sides of it. Nevertheless, in dissent, former Chief Justice Nix believed that an injunction was unnecessary because Maritrans had given its consent to the ethical screen. *Id.* at 266.

While *Maritrans* certainly establishes a cause of action for breach of fiduciary duty under Pennsylvania law and even a potential basis for injunctive relief in certain circumstances, none of the factors that existed in *Maritrans* is present here. **First**, there is an ethical screen in place, and there are different attorneys involved in the respective representations not the same one as in *Maritrans*. **Second**, Eckert has not disclosed or misused any confidential information of POM. **Third**, unlike in *Maritrans*, Eckert has agreed to step out of the matters in which there is any potential for adversity. **Finally**, here, POM cannot demonstrate any of the elements necessary to establish injunctive relief in the first place.

### POM's Response Confuses Injunctive Relief with Potential Liability.

One of the fatal flaws in POM's reasoning is its reliance upon arguments that, because POM believes that it can establish liability based upon Eckert's

8

conduct in the past, somehow, that creates a need for an injunction to prevent future harm. Even if POM's accusations about Eckert's role in any prior matters are true, which they are not, including those matters brought by POM that are pending in the Commonwealth Court of Pennsylvania, such issues go to potential liability for establishing POM's claims *at the time of trial*. Whether, for example, Eckert's advance conflict waiver was valid or not is an issue that goes to liability; it has little to do with a prospective preliminary injunction. Such issues – argued by POM not because they go to a potential request for a preliminary injunction, but because they are designed to taint Eckert in the eyes of the Court – do not undo the fact that Eckert has mooted POM's Motion and has stepped out of the cases that led to the filing of POM's Motion in the first place. After all, even if POM's Motion were denied as moot, nothing prevents POM from seeking Court relief if, as POM alleges, Eckert does not adhere to its sworn declarations or takes on a representation adverse to POM during the pendency of this case.

### POM's Proposed Relief Goes Well Beyond What the Rules Provide.

At this point, over a year after filing POM's Motion, POM simply cannot establish irreparable harm in the face of Eckert's agreement to provide the relief as articulated in the attached declarations and consistent with what POM proposed. POM's Motion has been pending for a year. There is nothing immediate about it, and POM cannot establish irreparable harm. "Irreparable injury is "harm which

9

cannot be redressed by a legal or an equitable remedy following trial," and "the preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight*, 882 F.2d at 801. Here, POM is not suffering any harm, and POM is not entitled to relief that the Rules do not otherwise provide.

In its response, POM appears to want several forms of additional relief, all of which Eckert has already addressed. It wants a preliminary injunction "enjoining Eckert from representing Parx Casino and any other clients in matters substantially related to matters in which Eckert had represented POM." *See* POM's Response at 5. Eckert has already agreed on its own not to do so. Both Messrs. Stewart and Coon have confirmed that they will not undertake any representation adverse to POM "consistent with Pennsylvania Rules of Professional Conduct 1.7 and 1.9." *See* Revised Declarations attached hereto. Those statements are consistent with the proposed form of order that POM submitted with POM's Motion (attached to Eckert's Motion as Exhibit "A"), which only requested that the Court enjoin Eckert from representing Parx Casino adverse to POM. Eckert has gone even farther than the relief proposed by POM. At the very least, the Court should hold POM to what it filed and what relief it sought. In that respect, there can be no dispute that POM's Motion is now moot, and that the Court should grant Eckert's Motion and dismiss POM's Motion.

POM further claims that, "Mr. Stewart wants to continue baselessly attacking POM's skill games as gambling devices and continue advocating for legislation outlawing POM's games." *See* POM's Response at 4. Not only is such a statement untrue, it is inconsistent with Mr. Stewart's Declaration.

POM also alleges that it needs a preliminary injunction "enjoining the misuse and disclosures of its confidential and proprietary information." *See* POM's Response at 6. Again, there has been no such disclosures, and Eckert's Declarations address this issue fully and completely.

Finally, POM claims that it needs injunctive relief "because Eckert continues to refuse to acknowledge that its attacks on POM's skill game products violate the duty of undivided loyalty." *See* POM's Response at 7. Not only is such a statement patently untrue, but it does not go to the issue of whether an injunction is warranted. Again, as stated above, injunctions are not devices used to establish liability. Courts also do not enter injunctions to force parties to concede liability or admit wrongdoing. Such a request also goes well beyond the limits of Rule 1.9, which requires attorneys to respect and adhere to the duties of loyalty and confidentiality associated with a former client but hardly require an admission of wrongdoing as POM strangely suggests.

In sum, whether POM can establish liability as to a purported breach of Eckert's fiduciary duty to POM is an issue that will be decided at another time and

11

place. Eckert has taken appropriate steps to address the concerns raised by POM and to prevent any type of prospective or irreparable harm as POM raised. For that reason, and in the absence of any irreparable harm, POM's Motion is now moot. Accordingly, this Court should grant Eckert's Motion and dismiss POM's Motion.

## CONCLUSION

For all of the foregoing reasons, and those contained in its Motion to Dismiss and principal brief, defendant, Eckert Seamans Cherin & Mellott, LLC, respectfully requests that this Court enter its proposed form of Order and grant the motion to dismiss as moot the Motion for Preliminary Injunction of plaintiff, Pace-O-Matic, Inc.

Respectfully submitted,

ABRAHAM C. REICH, ESQUIRE (No. 20060)
ROBERT S. TINTNER, ESQUIRE (No. 73865)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
(215) 299-2090/2766 (telephone)
(215) 299-2150 (facsimile)
areich@foxrothschild.com
rtintner@foxrothschild.com

**Counsel for Defendant,**
**ECKERT SEAMANS CHERIN & MELLOTT,**
**LLC**

Date:   April 5, 2021

12

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                         :
                                            :
                   Plaintiff,               :
                                            :
     v.                                     :     Docket No. 1:20-cv-00292
                                            :
ECKERT SEAMANS CHERIN &                     :
MELLOTT, LLC,                               :     (Judge Jennifer P. Wilson)
                                            :     (Judge Joseph F. Saporito, Jr.)
                   Defendant.               :
                                            :

## CERTIFICATE OF SERVICE

I, Robert S. Tintner, Esquire, hereby certify that, on this 5th day of April,

2021, I served a true and correct copy of the foregoing Reply Memorandum, via

ECF, upon the following:

> Daniel T. Brier, Esquire
> Myers, Brier & Kelly, LLP
> 425 Spruce Street, Suite 200
> Scranton, PA 18503
>
> **Counsel for Plaintiff**
> **PACE-O-MATIC, INC.**

_____
ROBERT S. TINTNER, ESQUIRE