IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| Plaintiff, | : | |
| v. | : | Judge Jennifer P. Wilson |
| ECKERT, SEAMANS CHERIN & MELLOTT, LLC, | : | |
| Defendant. | : | Magistrate Judge Joseph Saporito, Jr. |

# **MEMORANDUM**

Before the court is an appeal of United States Magistrate Judge Joseph Saporito, Jr.'s memorandum and order directing that some of Plaintiff's discovery requests be granted as to numerous documents and information as to which Defendant and third parties have asserted attorney-client privilege. (Docs. 87, 88.) Defendant objects to Judge Saporito's sua sponte application of the judicial estoppel doctrine to order the production of various documents and information which Defendant asserts are protected by the attorney-client privilege. Because the court finds that Judge Saporito erred procedurally by failing to notify the parties that judicial estoppel would be applied or providing an opportunity for argument or briefing on this issue, the court will grant Defendant's appeal, overrule section III. I. of Judge Saporito's memorandum and paragraph 4 of Judge Saporito's order, and recommit the matter to Judge Saporito for further consideration.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Neither party appeals the facts or procedural history stated in Judge Saporito's memorandum. As such, the court will only restate the factual background and procedural history necessary for clarity in this opinion. Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Defendant, Eckert, Seamans Cherin & Mellot, LLC ("Eckert"), for an alleged breach of fiduciary duties to POM. (Doc. 1.) POM alleges that this breach stems from Eckert's representation of both itself and a third-party competitor, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania. (Doc. 87, p. 2.)[1]

Eckert's representation of POM began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania. That was because Eckert represented Parx, a market competitor, in Pennsylvania. (*Id.*) In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania through other counsel relating to the seizure and removal of some of

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

its skill games in Pennsylvania.² (*Id.* at 2–3.) During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS"), filed amicus briefs in opposition to POM's position, and motions to intervene, which allegedly remain pending with the Commonwealth Court. (*Id.* at 3–4; Doc. 94, p. 3 n.1.) In January 2020, POM learned that Eckert was allegedly involved with Parx's representation in the Commonwealth Court cases, assuming positions materially adverse to POM despite Eckert's ongoing representation of POM in Virginia. (Doc. 87, p. 4.) After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert withdrew from representing POM in Virginia. (*Id.*)

Thereafter, on the basis of these facts, POM initiated the present lawsuit in February 2020, alleging that Eckert attorneys had been working behind the scenes to aid litigation efforts for Parx in the Commonwealth Court cases despite this conflict of interest, and that these efforts breached Eckert's professional duties of loyalty and confidentiality to POM. (*Id.*) In an attempt to support its theory, POM served interrogatories and requests for document production on Eckert, and corresponding subpoenas on Parx, HMS, and their agents regarding communications concerning the Commonwealth Court cases between these entities. (*Id.* at 4–5.) Eckert, Parx, and HMS objected to these requests, asserting

---

² These cases are located at docket numbers 418 MD 2018 and 503 MD 2018.

attorney-client and work-product privileges. (*Id.* at 5.) POM moved to compel the production of these documents and information, and Eckert, Parx, and HMS moved for a protective order. (*Id.*)

This discovery dispute was extensively briefed and Judge Saporito allowed oral argument on these issues on October 20, 2020, during which the partis agreed to allow Judge Saporito to conduct an in camera review of the requested documents and information. (*Id.* at 2.) Thereafter, the parties met and conferred to determine the documents to be submitted to Judge Saporito. (*Id.*) These documents were provided to Judge Saporito in December 2020, and Judge Saporito issued his memorandum and order on February 16, 2021. (Docs. 87, 88.)

In pertinent part, Judge Saporito determined that, based on his in camera review of the documents at issue, "and under the circumstances presented in this case, . . . the defendant is estopped from asserting attorney-client privilege . . . based on its express statements in pleadings and other papers before this court that it does not represent an adverse party, such as Parx, and it is not otherwise 'involved' in the POM Commonwealth Court cases." (Doc. 87, p. 36.) Judge Saporito raised the issue of judicial estoppel sua sponte, and it is undisputed that the parties did not have notice or an opportunity to brief or argue this issue prior to Judge Saporito issuing his memorandum and order.

4

On March 2, 2021, Eckert, HMS, and Parx filed separate appeals of Judge Saporito's decision, each only appealing section III. I. of Judge Saporito's memorandum and paragraph 4 of Judge Saporito's order pertaining to judicial estoppel.  (Docs. 93, 95, 97.)  Due to the pending deadline to comply with Judge Saporito's order, Eckert, HMS, and Parx also filed a joint motion to stay the deadlines in paragraph 4 of Judge Saporito's order to postpone their disclosure obligation until the court could rule on the merits of the appeal.  (Doc. 99.)  The court granted this motion on March 4, 2021 and set an expedited briefing schedule to address the merits of the appeal, noting that the disclosure obligations and corresponding deadlines not subject to appeal would proceed absent a stay.  (Doc. 101.)  POM filed an omnibus brief in opposition to the appeal on March 11, 2021.  (Doc. 107.)  Eckert, HMS, and Parx timely filed reply briefs.  (Docs. 108, 109, 110.)  Thus, this appeal is ripe for disposition.

### STANDARD OF REVIEW

The application of judicial estoppel is reviewed for an abuse of discretion. *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010); *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 108 (3d Cir. 1999).  "[A] court 'abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts[.]'" *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (quoting *In re O'Brien*, 188 F.3d 116, 125 (3d Cir. 1999)).

## DISCUSSION

As Judge Saporito noted, there is no rigid test for determining whether judicial estoppel is appropriately applied. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that "[a]dditional considerations may inform the doctrine's application in specific factual contexts"). However, the Court of Appeals for the Third Circuit has set forth factors for consideration before a court may apply judicial estoppel. *Montrose*, 243 F.3d at 779. These factors are as follows:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." *Id.* Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. *Klein*, 185 F.3d at 108 (quotation marks and citation omitted).

*Id.* at 779–80.

As the Third Circuit has explained, "[i]nconsistencies are not sanctionable unless a litigant has taken one or both positions 'in bad faith.'" *Id.* at 780–81. Thus:

> A finding of bad faith "must be based on more than" the existence of an inconsistency, *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 111 (3d Cir. 1999) (emphasis added); indeed, a litigant has not acted in "bad faith" for judicial estoppel purposes unless two requirements are met. First, he or she must have behaved in a manner that is somehow culpable. *See Ryan Operations*, 81 F.3d at 362 (stating that judicial estoppel may not be employed unless "'intentional self

6

> contradiction is . . . used as a means of obtaining unfair advantage'" (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)); *id.* ("An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing."); *see also In re Chambers Dev. Co. Inc.*, 148 F.3d 214, 229 (3d Cir. 1998) (quoting this language from *Ryan Operations*).
>
> Second, a litigant may not be estopped unless he or she has engaged in culpable behavior vis-a-vis the court. As we have stressed time and time again, judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other. *See, e.g.*, *Ryan Operations*, 81 F.3d at 360 ("Judicial estoppel 'is intended to protect the courts rather than the litigants.'" (quoting *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121–22 (3d Cir. 1992))); *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990) (same). Accordingly, judicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court.

*Montrose*, 243 F.3d at 781.

As part of this analysis, and in order to find bad faith, the Third Circuit originally held that the court applying judicial estoppel must be satisfied that the initial inconsistent statement was accepted or adopted by a court or agency. *Id.* In other words, "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency. Because the practice is specifically sanctioned by the Federal Rules, asserting inconsistent claims within a single action obviously does not constitute misconduct that threatens the court's integrity." *Id.* at 782. However, the Third Circuit later held that there may be cases where judicial estoppel is applicable "where no court has accepted an initial position" if there is otherwise a

7

threat to judicial integrity. *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) ("We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply. We will apply it to neutralize threats to judicial integrity however they may arise."). Thus, the application and appropriateness of judicial estoppel remains a case-specific inquiry confined to the judge's discretion based on the facts and circumstances of the case.

As a procedural matter, the Third Circuit has held that "equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 320 (3d Cir. 2003) (citing *Montrose*, 243 F.3d at 780). Thus, while "a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes," and may apply the doctrine sua sponte, the court must nevertheless "ensure that the party to be estopped has been given a meaningful opportunity to provide 'an explanation' for its changed position." *Krystal Cadillac*, 337 F.3d at 325; *Montrose*, 243 F.3d at 780 n.5 (citing *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 807 (1999); *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 111 n.13 (3d Cir. 1999); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364–65 (3d Cir. 1996)). The Third Circuit has held that a failure to allow briefing may be a sufficient basis to reverse a sua sponte application of judicial estoppel.

*See Coast Auto. Group, Ltd. v. VW Credit, Inc.*, No. 00-5200, 34 F. App'x 818, 825 (3d Cir. Jan. 29, 2002) (finding that it was error to apply judicial estoppel where "the parties did not brief the issue," it did not arise at oral argument, and the "parties were not on notice that judicial estoppel would be applied").

Finally, in exercising discretion to apply judicial estoppel, courts must remain mindful of the fact that "judicial estoppel 'is often the harshest remedy' that a court can impose for inequitable conduct, [and therefore] a district court may not invoke the doctrine unless: (1) 'no sanction established by the Federal Rules or a pertinent statute is up to the task of remedying the damage done by a litigant's malfeasance;' and (2) 'the sanction [of judicial estoppel] is tailored to address the harm identified.'" *Montrose*, 243 F.3d at 784 (quoting *Klein*, 185 F.3d at 108, 110).

In this case, Eckert, HMS, and Parx object to, inter alia, the application of judicial estoppel because they assert that Judge Saporito should not have applied this doctrine and otherwise erred in doing so. (Doc. 94, pp. 10–12; Doc. 96, pp. 16–24; Doc. 98, pp. 8–16.) Eckert and Parx also assert that the information sought in the documents at issue is irrelevant because POM already has the benefit of privilege logs to maintain its case. (Doc. 94, pp. 13–14; Doc. 98, p. 15.)

Here, Judge Saporito applied the judicial estoppel doctrine sua sponte by raising and addressing this issue for the first time in his memorandum. (Doc. 87;

*see* Doc. 94, p. 6 n.2; Doc. 96, pp. 16–18.)  The court finds that, in light of the importance of the attorney-client privilege and the harshness of the judicial estoppel sanction, it was a procedural error for Judge Saporito to apply judicial estoppel without affording the parties notice and an opportunity to address this issue.  *See Coast Auto. Group, Ltd.*, 34 F. App'x at 825; *In re Boates*, No. 05-4353, 2006 U.S. Dist. LEXIS 2256, at *9–10 (E.D. Pa. Jan. 23, 2006).  To be clear, at this time, the court does not make a determination regarding the appropriateness of applying judicial estoppel as a sanction in this case; the court merely finds that the parties should have been afforded an opportunity to address this issue before Judge Saporito made a ruling on the motion.  Indeed, the application of judicial estoppel may well be appropriate in this case based on Judge Saporito's in camera review of the documents at issue, and the circumstances presented in the case.  However, the court does not reach this conclusion at this time.[3]

---

[3] In light of the court's conclusion that judicial estoppel was inappropriately applied in this case, the court need not address Eckert, HMS, or Parx's other arguments on appeal.

## CONCLUSION

For the reasons stated herein, the court will grant the appeal, overrule section III. I. of Judge Saporito's memorandum and paragraph 4 of Judge Saporito's order, and recommit the matter to Judge Saporito for further consideration. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 6, 2021