# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff | : | No. 1:20-cv-00292 |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | (Magistrate Judge Joseph F. Saporito, |
| ECKERT SEAMANS CHERIN & | : | Jr.) |
| MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Electronically Filed Document |

## HAWKE MCKEON & SNISCAK LLP's
## REMAND BRIEF

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon & Sniscak LLP*

Dated: May 26, 2021

**TABLE OF CONTENTS**

I.    PROCEDURAL HISTORY ........................................................................4

II.   FACTS ....................................................................................................7

III.  QUESTION PRESENTED.........................................................................9

IV.   ARGUMENT ...........................................................................................9

     A.    The Elements of Judicial Estoppel Are Not Present ...........................9

          1.    HMS's attorney-client privilege claim does not involve
              an inconsistent position for purposes of judicial estoppel ......11

          2.    HMS has not engaged in bad faith ...........................................14

          3.    POM will not be harmed if the privilege is sustained.............16

V.    CONCLUSION.......................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Bensalem Racing Ass'n v. Pa. State Harness Racing Comm'n,*
  19 A.3d 549 (Pa. Cmwlth. 2011) ............................................................................5

*Chao v. Roy's Constr., Inc.,*
  517 F.3d 180 (3d Cir.2008) ....................................................................................9

*G-I Holdings,Inc. v. Reliance Ins. Co.,*
  586 F.3d 247 (3d Cir. 2009) ..................................................................... 9, 13, 16

*Greenwood Gaming and Entertainment, Inc. v. Com., Dept. of Revenue,*
  90 A.3d 699 (Pa. 2014) ...........................................................................................5

*Greenwood Gaming and Entertainment, Inc. v.
  Pennsylvania Gaming Control Bd.,*
  15 A.3d 884 (Pa. 2011) ...........................................................................................5

*Greenwood Gaming and Entertainment, Inc. v.
  Pennsylvania Gaming Control Bd.,*
  2013 WL 3984742 (Pa. Cmwlth. 2013).................................................................5

*MD Mall Associates, LLC v. CSX Transp., Inc.,*
  715 F.3d 479 (3d Cir. 2013) .................................................................................10

*New Hampshire v. Maine,*
  532 U.S. 742 (2001)...............................................................................................10

*SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board,*
  162 A.3d 353 (Pa. 2017)..........................................................................................5

*SugarHouse HSP Gaming, LP v. Pennsylvania Gaming Control Bd.,*
  136 A.3d 457 (Pa. 2016).........................................................................................5

## I.    PROCEDURAL HISTORY

Hawke McKeon & Sniscak LLP (HMS) files this brief pursuant to Magistrate Judge Saporito, Jr.'s May 4, 2021 Order (Doc. 122) following District Judge Wilson's remand via her April 6, 2021 Memorandum and Order (Docs. 113 and 114) overruling Section III.I. of Judge Saporito's February 16, 2021 Memorandum (Doc. 87) and Paragraph 4 of the accompanying Order (Doc. 88) on the issue of judicial estoppel. Judge Wilson found that "in light of the importance of the attorney-client privilege and the harshness of the judicial estoppel sanction, it was a procedural error for Judge Saporito to apply judicial estoppel without affording the parties notice and an opportunity to address this issue," (Doc. 113 at 10). She recommitted the matter to Judge Saporito for further consideration (*Id.* at 11).

In the underlying action filed by Pace-O-Matic, Inc. (POM) in this court, POM claims that Eckert, Seamans, Cherin & Mellott, LLC (Eckert) breached a fiduciary duty to POM by representing Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx), in matters adverse to POM in Pennsylvania related to devices that POM calls "skill games," when Eckert was representing POM on skill game matters in the Commonwealth of Virginia. Specifically, POM initiated litigation in the Commonwealth Court of Pennsylvania at Docket Nos. 418 MD 2018 and 502 MD 2018, seeking declarations concerning the legal status of its skill

games, which litigation is active and ongoing (Commonwealth Court litigation). HMS represents Parx (and other casinos) in the casinos' attempt to intervene in the Commonwealth Court litigation. On behalf of Parx and other casinos, HMS participated in the casino lawyer group drafting an amicus brief opposing POM's request for a preliminary injunction and filed same, and presently has pending the casino group's request to intervene.[1]

POM served a non-party subpoena on HMS in this case in June 2020, seeking: (1) any document that reflects communications between HMS and Eckert relating to the Commonwealth Court litigation; (2) any document HMS received from Eckert for use or reference relating to the Commonwealth Court litigation; (3) any communications between HMS partner Kevin McKeon or any other HMS employee and any person at Eckert relating to either the Commonwealth Court litigation or POM's complaint against Eckert in this court; and (4) any

---

[1] Eckert is Parx's usual counsel, but HMS has appeared for the Parx companies on multiple occasions for well over a decade, particularly in Pennsylvania's Commonwealth Court and Supreme Court. *See, e.g., SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353 (Pa. 2017); *SugarHouse HSP Gaming, LP v. Pennsylvania Gaming Control Bd.*, 136 A.3d 457 (Pa. 2016); *Greenwood Gaming and Entertainment, Inc. v. Com., Dept. of Revenue,* 90 A.3d 699 (Pa. 2014); *Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*, 2013 WL 3984742 (Pa. Cmwlth. 2013); *Bensalem Racing Ass'n v. Pa. State Harness Racing Comm'n*, 19 A.3d 549 (Pa. Cmwlth. 2011); *Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*, 15 A.3d 884 (Pa. 2011).

communications or documents relating to any potential or actual conflict between Eckert and POM. HMS objected on grounds that all documents requested are subject to the attorney-client privilege because the requests seek communications between and among Parx's lawyers at Eckert, Parx's lawyers at HMS, and Parx, including legal advice that Parx's lawyers and law firms provided to Parx. POM also served a subpoena on Parx, and addressed discovery to Eckert, seeking in both similar information deemed privileged, to which Parx and Eckert also objected.

By order entered June 19, 2020 (Doc. 30) the matter was referred for resolution by a United States Magistrate Judge, and then assigned to Magistrate Judge Saporito, Jr. The parties filed competing motions on July 20, 2020. Judge Saporito held oral argument on October 20, 2020.  After an *in-camera* review of documents listed in privilege logs submitted by HMS, Parx, and Eckert, Judge Saporito issued his February 16, 2021 Memorandum (February 16 Memorandum or Doc. 87) and Order (February 16 Order or Doc. 88).

HMS appealed only that portion of the February 16 Memorandum that found that HMS's assertion of attorney-client privilege is defeated by application of the doctrine of judicial estoppel, Section III.1 at pp. 32-42, and on that basis directs the production of HMS documents listed at pp. 41-42 of the Memorandum, and appealed Paragraph 4 of the February 16 Order for the same reasons. (Doc. 95).

HMS has already produced to POM all other documents ordered produced in the February 16, 2021 Memorandum.

## II.   FACTS

POM alleges in the underlying case that Eckert breached its fiduciary duty to POM by taking positions adverse to POM's skill games in litigation in Pennsylvania while at the same time representing POM on issues related to POM's skill games in the Commonwealth of Virginia. Among other examples, POM cited in its complaint the fact that Eckert appeared and collaborated with HMS and the casinos' other counsel of record at a hearing in the Commonwealth Court litigation in January 2020, at which the casinos as amici opposed the relief POM was seeking. Eckert's answer filed in March 2020 responded among other defenses that "Eckert does not represent a party adverse to POM in litigation, and POM agreed to a prospective waiver" (Doc. 9 ¶ 18). Eckert has since learned, however, through a deposition on September 1, 2020, that although Eckert's management and its lawyers who have long represented Parx in Pennsylvania were led to believe by their former partner Mr. Lisk, who began representing POM in Virginia in 2016, that Lisk had discussed with POM a conflict waiver allowing Eckert to be adverse to POM in Pennsylvania, he never did.  *See* (Doc 91-5; Doc. 21-5).

In applying the doctrine of judicial estoppel to bar Eckert's assertion of the attorney-client privilege, the February 16 Memorandum found that Eckert's

7

assertion of the attorney-client privilege takes a position that is in irreconcilable conflict with Eckert's statement that Eckert does not represent a party adverse to POM in litigation. (Doc. 87 at 32-37). In applying the doctrine of judicial estoppel to bar HMS's assertion of the attorney-client privilege, the February 16 Memorandum relied on pleadings filed in the Commonwealth Court litigation, supplied by POM (Doc. 82) after the close of briefing and argument on the discovery motions at issue. Specifically, POM moved in the Commonwealth Court in December 2020 to disqualify HMS from representing Parx in the Commonwealth Court litigation, arguing that Eckert is barred from taking positions adverse to POM in Pennsylvania, and therefore so too is HMS to the extent that Eckert has assisted HMS to do so in any way. After HMS responded to the motion to disqualify in the Commonwealth Court, POM filed in this proceeding, via December 16, 2020 letter, a collection of documents that included HMS's answer to POM's disqualification application. (Doc. 82). Interpreting HMS's statements in opposition to the disqualification motion, the February 16 Memorandum found that HMS's assertion of the attorney-client privilege in this proceeding likewise takes a position that is in irreconcilable conflict with statements HMS made in the Commonwealth Court litigation. These statements, the February 16 Memorandum concludes, implicitly represent that Eckert played no substantial role in Parx's activities in the Commonwealth Court litigation.

Asserting that that HMS's allegedly conflicting positions "were arguably adopted in bad faith," the February 16 Memorandum concluded that HMS is judicially estopped from asserting attorney-client privilege. *Id*. at 37.

## III.   QUESTION PRESENTED

Does the doctrine of judicial estoppel apply to defeat HMS's assertion of attorney-client privilege for the HMS documents ordered to be produced at pp. 41-42 of the February 16 Memorandum and Ordering Paragraph 4?

Suggested answer: No.

## IV.   ARGUMENT

### A.    The Elements of Judicial Estoppel Are Not Present

"Under the doctrine of judicial estoppel, a court can defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of litigation." *G-I Holdings,Inc. v. Reliance Ins. Co*., 586 F.3d 247, 261 (3d Cir. 2009) (*G-I Holdings*). "Three factors inform a federal court's decision whether to apply it: there must be (1) 'irreconcilably inconsistent positions;' (2) 'adopted ... in bad faith;' and (3) 'a showing that ... estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.'" *G-I Holdings* at 262, *quoting Chao v. Roy's Constr., Inc*., 517 F.3d 180, 186 n. 5 (3d Cir.2008) (internal quotation marks omitted). The law in the Third Circuit is that "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to

accept its earlier position." *G-I Holdings* at 262. Thus, "courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *MD Mall Associates, LLC v. CSX Transp., Inc.,* 715 F.3d 479, 487 (3d Cir. 2013), *quoting New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "Because judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase,' *id.* at 749 (internal quotation marks omitted), '[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity,' *id.* at 750–51 (citation and internal quotation marks omitted)." *Id.*

Here, judicial estoppel simply does not apply. None of the elements of judicial estoppel is present: HMS did not take inconsistent positions as to whether Eckert has an attorney-client relationship with Parx; even if the positions taken on the issue by Eckert could be deemed inconsistent and attributed to HMS, Eckert has not prevailed on either; even if the positions taken on the issue by HMS could be deemed inconsistent, Eckert has not been successful in the underlying litigation in this court and HMS has not been successful on POM's disqualification motion

in the Commonwealth Court; neither HMS' positions nor Eckert's positions, even if deemed inconsistent, were taken in bad faith; and POM will not be harmed if the attorney-client privilege is upheld.

### 1.     HMS's attorney-client privilege claim does not involve an inconsistent position for purposes of judicial estoppel

The February 16, 2021 Memorandum found that HMS, acting on behalf of Parx, is taking irreconcilably inconsistent positions that trigger application of judicial estoppel to bar the assertion of attorney-client privilege:

> [W]e find that Eckert and Parx have adopted irreconcilably inconsistent positions *with respect to whether Eckert represented and provided legal advice and services to Parx in connection with the Commonwealth Court cases*, where POM and Parx were directly adverse, when denying liability *or opposing disqualification on the one hand versus invoking attorney-client privilege* in attempting to shield documents concerning that (non-)representation from disclosure.

(Doc. 87 at 37 (emphasis added)). HMS has not taken inconsistent positions, however.

First, as a factual matter, in opposing POM's attempt to disqualify HMS in Commonwealth Court, HMS expressly represented that Eckert, while not counsel of record in the Commonwealth Court litigation, was involved as part of the lawyer group representing Parx and the other casinos seeking to intervene in developing strategy and pleadings:

11

> *Although Eckert did not sign the amicus brief filed in this case in December 2019 or otherwise enter its appearance* in this case, Mr. Stewart and Eckert believed in December 2019 and continued to believe thereafter that Eckert had obtained a conflict waiver from POM. Accordingly, *Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and assisted in creating first drafts of filings or editing the first drafts created by other casino group lawyers for filings in this case.* It was not until September 2020, that Eckert learned definitively in a deposition of Mr. Lisk, the former Eckert partner who represented POM in the Commonwealth of Virginia, that although Mr. Lisk had represented to Mr. Stewart and others at Eckert that POM had given a conflict waiver, POM had not given a conflict waiver.

(Doc. 82 at 164 (emphasis added)).

The statement that "Eckert is not counsel in this [*i.e.*, the Commonwealth Court] case" is merely a statement of objective fact – Eckert did not enter an appearance in the Commonwealth Court litigation. HMS's explanation of Eckert's role in the litigation, however, can only be seen as a frank acknowledgement of Eckert's *substantial* involvement, not an implicit representation to the contrary. In its role as part of the casino lawyer group in the Commonwealth Court litigation, Eckert plainly had an attorney client relationship with Parx, Eckert's client and a member of the casino group. Thus, there is no inconsistency in HMS's representations to the Commonwealth Court (in the context of POM's disqualification motion) about Eckert's role as one of the lawyers advising Parx and the other casinos in the Commonwealth Court litigation, on one hand, and the

assertion of attorney-client privilege in this court as to communications among Parx and its lawyers (including HMS and Eckert), on the other.

Second, POM's application to disqualify HMS in the Commonwealth Court remains undecided, so that even if HMS had taken an inconsistent position (it did not) HMS has not yet prevailed. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings* at 262.

Third, to the extent HMS could somehow be considered vicariously liable for the perceived infractions of Eckert, the same rationales defeat triggering of judicial estoppel against Eckert: there is no inconsistency, and even if there were, Eckert has not to date prevailed on the merits of POM's claim against Eckert in the present district court proceeding.  As to consistency, Eckert correctly stated in pleadings in this case that "Eckert does not represent a party adverse to POM in litigation," (Doc. 9 ¶ 18) cited in the February 16 Memorandum at 32.  Parx was not at the time, and has not yet, been granted status as a party in the Commonwealth Court litigation; Eckert has never entered an appearance on behalf of Parx in that litigation.  However, Eckert's statement obviously was not an attempt to mislead this court – at argument before Judge Saporito in this discovery dispute, Eckert conceded that Eckert was part of the attorney group advising Parx and the other casinos adverse to POM, because it believed in late 2019 and

13

throughout much of 2020 that POM had waived any associated conflict. (Doc. 81 at 32-33, 36-39). As to Eckert having already prevailed on the merits against POM in this proceeding (by allegedly taking a position contrary to the position it has taken in the present discovery dispute where it claims attorney-client privilege), Eckert has not prevailed – the present status is that Eckert has now acknowledged that, contrary to Mr. Stewart's and Eckert's leadership's original understanding that former Eckert partner Lisk had obtained an informed, advanced conflict waiver that consented to Eckert representing clients in matters adverse to POM in Pennsylvania, Mr. Lisk did not actually discuss a conflict waiver with POM. (Doc. 91-5 at ¶¶ 4-5). The matter remains unresolved; Eckert has not as yet prevailed.

### 2. HMS has not engaged in bad faith

The February 16 Memorandum concluded that "these inconsistent positions were arguably adopted in bad faith." (Doc. 87 at 37). "Arguable" bad faith is not the standard for triggering judicial estoppel, however. More importantly, HMS has been forthright and acted in good faith, both in asserting attorney-client privilege in this court with respect to communications between and among HMS and Eckert and Parx with respect to the Commonwealth Court litigation, on one hand, and in opposing POM's motion to disqualify HMS in the Commonwealth Court, on the other. The claim of attorney-client privilege as to the documents POM requested

14

in discovery in this case was and is accurate: Eckert, Parx's counsel of long standing, was initially involved in all of the communications between and among the lawyers and clients in the casino lawyer group that was adverse to POM in the Commonwealth Court litigation, because it believed at the time that Eckert had a conflict waiver that permitted a role adverse to POM. Eckert did not learn to the contrary until September 2020 that Mr. Lisk did not actually discuss a conflict waiver with POM. At argument on the discovery motions in this court in October 2020, Eckert acknowledged this evolution of its understanding of the waiver issue vis-a-vis POM. *See* (Doc. 81 at 33 ("He's been a lead lawyer for Parx for many years, but Mark Stewart was under the mistaken impression throughout this entire period, and probably leading up until when Mr. Lisk was deposed, based on the e-mails that he had permission to do that in Pennsylvania, so he was going about his business.")).

Likewise, in responding to POM's motion to disqualify HMS in the Commonwealth Court litigation in December 2020, HMS's Mr. McKeon made no attempt to conceal Eckert's initial involvement, but rather stated clearly that Eckert had prepared first drafts of documents for casino lawyer group review, Doc. 82 at 164, and explained why HMS reasonably believed POM had through an advance waiver pre-approved Eckert's involvement:

> Mr. Stewart represented to me in December 2019 and again in February 2020 after POM sued Eckert in federal

15

district court, that Mr. Stewart (a) believed Eckert had obtained a conflict waiver from POM concerning Eckert's anticipated adverse representation against POM's interests in Pennsylvania, and (b) that Mr. Stewart had no access to any information that Eckert lawyers representing POM in the Commonwealth of Virginia may have obtained. He stated that Eckert had a conflict screen in place between its lawyers working on POM's matters in Virginia and Mr. Stewart and other Eckert lawyers working on Parx matters, such that neither the Eckert POM lawyers nor the Eckert Parx lawyers had access to their respective clients' information.

(Doc. 82 at 177, ¶ 12;[2] *see also* 173-176, ¶¶ 1-11 (explaining background of HMS involvement in the Commonwealth Court litigation)).

The bottom line is that HMS asserted both positions – attorney-client privilege in this court, and opposition to disqualification of HMS in the Commonwealth Court litigation -- in good faith. There is no inconsistency in the positions, and no attempt to mislead either tribunal. "Arguable" bad faith is not the standard for triggering judicial estoppel, but even if it were, HMS acted in good faith here.

### 3.    POM will not be harmed if the privilege is sustained

The third element of judicial estoppel requires a showing that "estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.' *G-I Holdings* at 262. Here, POM seeks "information and documents reflecting communications

---

[2] These representations by Mr. Stewart are again confirmed in Doc. 91-5.

concerning the Commonwealth Court cases exchanged between Eckert" and HMS (February 16 Memorandum at 3-4), in order to prove that Eckert was involved in activities adverse to POM in Pennsylvania. Eckert has conceded that it was involved in such activities, however, has explained that it believed they were permitted because of waivers it believed Mr. Lisk had been provided by POM, and has represented that its actions adverse to POM's interests in Pennsylvania have ceased. (Doc. 91). Given this, even assuming that other elements that could give rise to judicial estoppel were present here (they plainly are not), compelling disclosure of documents protected by the attorney-client privilege – the "harshest remedy" applied to a privilege as important as attorney-client (Doc. 113 at 10), is neither necessary nor appropriate. Disclosure will disadvantage Parx by allowing POM to rummage through privileged communications, allegedly in order to prove a point that is no longer contested, thereby providing POM access to documents to which it has no right and that would only prove useful to POM in its Commonwealth Court litigation.

## V.    CONCLUSION

HMS respectfully requests that the court find that judicial estoppel does not apply, that the attorney-client privilege does, and that the documents identified in Paragraph 4 of the February 16, 2021 Order be withheld from disclosure.

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon &
Sniscak LLP*

Dated: May 26, 2021

18

## CERTIFICATION OF COUNSEL

The undersigned certifies, subject to Fed. R. Civ. P. 11, that the foregoing brief contains 3,335 words and, therefore, complies with the word-count limit set forth by local rule 7.8(b). This certification is based upon the word count feature of Microsoft Word, the software used to prepare the  brief.

/s/ *Dennis A. Whitaker*
Dennis A. Whitaker

Dated: May 26, 2021

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

*/s/ Dennis A. Whitaker*