## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                       :
                                          :
              **Plaintiff,**                 :       **NO. 20-CV-292**
                                          :
    **v.**                               :       **JUDGE WILSON**
                                          :
**ECKERT, SEAMANS, CHERIN &** :       **MAGISTRATE JUDGE SAPORITO**
**MELLOTT, LLC,**                         :
                                          :       **ELECTRONICALLY FILED**
          **Defendant.**                 :

## PLAINTIFF'S MEMORANDUM OF LAW RELATING
## TO APPLICATION OF JUDICIAL ESTOPPEL

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ......................... 2

ARGUMENT ............................................................................................. 6

    A.    Application of Judicial Estoppel Was a Proper Exercise of Discretion ..................................................................................... 8

    B.    There Was No Error in Applying Judicial Estoppel ........................... 11

CONCLUSION ........................................................................................ 16

i

# TABLE OF AUTHORITIES

## CASES

*G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009)............7, 8, 12

*In re Kane*, 628 F.3d 631 (3d Cir. 2010)...................................................................7

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors, Corp.*,
    337 F.3d 314 (3d Cir. 2003)...............................................6, 7, 10, 11, 12, 15

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ......................................................6

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d
    Cir. 1996) ...................................................................................................12

## STATUTES

Pa. R. Prof. Conduct 1.7(a)(1)....................................................................9

Pa. R. Prof. Conduct 1.7(b)(3)..............................................................9, 15

Pa. R. Prof. Conduct 8.4...........................................................................9

Pa. R. Prof. Conduct 8.4(a) ..................................................................9, 14

Pa. R.A.P. 531(b)(2)..................................................................................9

L.R. 16.3(a)...............................................................................................8

# INTRODUCTION

The conduct at issue is outrageous, an affront to the Court and a betrayal of the most fundamental duty which lawyers owe to their clients.

In plain violation of the duty of undivided loyalty, Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert") covertly advocated against Plaintiff Pace-O-Matic, Inc. ("POM"), its own client, in multiple forums in matters directly related to its ongoing representation of POM. In an attempt to conceal its prohibited conduct, Eckert first denied to this Court that it acted as counsel in any litigation adverse to POM and later switched course and argued that evidence of its involvement in the litigation is protected from discovery by the attorney-client privilege and work product doctrine. As this Court previously found, these positions are irreconcilably inconsistent and were arguably advanced in bad faith and therefore Eckert is properly estopped from asserting privilege over communications concerning litigation that it denied being involved in.

This matter was recommitted to this Court to afford the parties an opportunity to address judicial estoppel, but nothing has changed that might support a different outcome. After conducting a thorough *in camera* review, this Court correctly concluded that "Eckert and Parx[1] have adopted irreconcilably

---

[1] Eckert's other client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino is referred to herein as "Parx."

inconsistent positions with respect to whether Eckert represented and provided legal advice and services to Parx in connection with the Commonwealth Court cases," that the "inconsistent positions were arguably adopted in bad faith," and that "estoppel addresses the harm to POM . . . and no lesser sanction would suffice." ECF 87, pp. 37-38. This ruling should be reaffirmed. Eckert and Hawke McKeon & Sniscak, LLP ("HMS") should once again be compelled to produce the 182 communications between them relating to Eckert's involvement in the Commonwealth Court litigation.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

POM is a developer and producer of electronic skill games. Compl. (ECF 1) ¶ 1. Pursuant to a written engagement letter dated September 13, 2011, Eckert agreed to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania." *Id.* ¶ 5. POM and Eckert entered into a second engagement letter dated December 20, 2016 pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software." *Id.* ¶ 7.

Pursuant to the 2016 engagement, Eckert handled a wide variety of legal matters for POM and its affiliates, including representing POM and affiliates at meetings with government personnel, handling litigation, negotiating and drafting contracts and providing advice concerning legal, legislative and litigation strategies for marketing and selling POM skill games. *Id.* ¶ 12. In furtherance of these services, POM provided Eckert with highly sensitive, proprietary and confidential information relating to its skill games and business operations. *Id.* ¶ 10. POM paid substantial fees for these services. *Id.* ¶ 9.

While Eckert was representing POM and advocating and defending the legality of POM's skill games, Eckert covertly undertook to attack POM's games on behalf of its other client, Parx. In the fall of 2019, on behalf of Parx, Eckert commenced actions in Pennsylvania state courts against establishments that offer POMs games, seeking a declaratory judgment that POM skill games—its *own client's* products—constitute a public nuisance. *Id.* ¶ 15. In a brief filed on behalf of Parx in one of those cases, while Eckert was representing POM, Eckert posited that POM manufactures "illegal slot machine[s]" and "deceptively market[s] these games as 'legal,' when, in fact, they are not." *Id.*

In late 2019 and early 2020, POM confronted Eckert regarding its impermissible conflict of interest and demanded that Eckert withdraw from representing Parx in matters adverse to POM. *Id.* ¶ 26. Eckert refused POM's

3

request to withdraw from representing Parx and instead advised POM on January 29, 2020 that it would no longer represent POM. *Id.*

On February 18, 2020, POM commenced this action against Eckert asserting that Eckert breached the fiduciary duty of undivided loyalty owed to POM. ECF 1. On March 10, 2020, Eckert filed its Answer and Affirmative Defenses claiming that it "does not represent a party adverse to POM in litigation." ECF 9, ¶ 18; *see also id.* at Seventeenth Defense. On March 24, 2020, POM moved for a preliminary injunction barring Eckert from representing Parx and any other entity in any matters adverse to POM. ECF 12, 13. In its opposition, Eckert doubled down and again represented to the Court that it "is not representing parties in litigation adverse to POM." ECF 21, p. 2.

To test Eckert's denials, POM served interrogatories and requests for documents on Eckert and third-party subpoenas on Parx and HMS seeking, *inter alia*, communications between Eckert and HMS concerning Eckert's involvement in two actions brought by POM in Pennsylvania Commonwealth Court against Commonwealth entities to prevent the illegal seizure of its skill games.[2] HMS

---

2  Those actions are *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, docketed at No. 503 MD 2018, and *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Department of Revenue and City of Philadelphia*, docketed at No. 418 MD 2018. For convenience, these actions are referred to herein as "the Commonwealth Court litigation."

sought a protective order and represented to this Court in its supporting brief that it "step[ed] in as conflict counsel" "upon referral from Eckert due to Eckert's alleged conflict with POM . . . ." ECF 53, pp. 2, 4. In furtherance of their strategy to shield the prohibited conduct from this Court's scrutiny, Parx and Eckert also moved for a protective order. ECF 44, 45, 48, 49. POM moved to compel complete responses. ECF 50, 51.

Following briefing and oral argument, by Memorandum and Order dated February 16, 2021, ECF 87, 88, Eckert and HMS were ordered to produce, *inter alia*, 182 communications between them concerning the Commonwealth Court litigation.[3] ECF 87, pp. 40-43. At least 48 of the withheld communications occurred while Eckert was representing **both** POM and Parx. ECF 87, p. 40, Nos. 1-48.[4] With respect to the privilege, the Court determined that Eckert, HMS and Parx are judicially estopped from claiming privilege over the 182 communications because they denied Eckert's involvement in the litigation and later tried to assert privilege over litigation-related communications. *Id.* at 36-38.

---

[3] The February 16, 2021 Memorandum and Order resolved other discovery disputes between the parties and directed that certain other communications be produced. Those rulings are not at issue here.

[4] The privilege logs produced by Eckert, HMS and Parx are reproduced as Exhibits A, B and C, respectively.

On March 2, 2021, Eckert, Parx and HMS filed appeals from the portion of the decision that compelled production of communications relating to the Commonwealth Court litigation. ECF 93-98. By Memorandum and Order dated April 6, 2021, the Honorable Jennifer P. Wilson declined to reach the merits of the appeals and instead recommitted the matter to afford the parties an opportunity to correct "a procedural error" by addressing the issue of judicial estoppel. ECF 113, p. 10. Judge Wilson explained that "the application of judicial estoppel may well be appropriate in this case based on Judge Saporito's *in camera* review of the documents at issue, and the circumstances presented in this case. . . ." *Id.*

## ARGUMENT

Federal courts have the "intrinsic ability" to dismiss a claim or defense to prevent a litigant from "playing fast and loose with the courts." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (citation omitted). As Judge Wilson recognized, "there is no rigid test for determining whether judicial estoppel is appropriately applied." ECF 113, p. 6 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The Third Circuit identified the following criteria as relevant in deciding whether to apply the doctrine: (1) the party to be estopped has taken positions that are irreconcilably inconsistent; (2) the inconsistent positions were advanced in bad faith, *i.e.* "with intent to play fast and loose with the court"; and (3) no lesser sanction would

6

adequately remedy the damage done by the party's misconduct. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 319 (citation omitted).

It is not a condition for application of the doctrine that the estopped party actually benefitted from the initial position or that the position was accepted by a court. Rather, the doctrine may be "appl[ied] . . . to neutralize threats to judicial integrity however they may arise." *G.I. Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009); *see also Krystal Cadillac-Oldsmobile*, 337 F.3d at 324 ("[T]he application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court.").

As Judge Wilson explained, "the application and appropriateness of judicial estoppel remains a case-specific inquiry confined to the judge's discretion based on the facts and circumstances of the case." ECF 113, p. 8; *see also In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010) ("Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion."). Following a thorough *in camera* review, that discretion was properly exercised in this case to prevent Eckert from gaining an unfair advantage by claiming privilege over its involvement in litigation that it previously and repeatedly denied.

A.    **Application of Judicial Estoppel Was a Proper Exercise of Discretion.**

Eckert, HMS and Parx knowingly misrepresented Eckert's role in the Commonwealth Court litigation in a calculated and coordinated attempt to conceal Eckert's breach of loyalty. The criteria for judicial estoppel are easily satisfied.

*First*, there is no question that Eckert, HMS and Parx asserted irreconcilably inconsistent positions. Eckert represented to the Court in its Answer that it "does not represent a party adverse to POM in litigation." ECF 9, ¶ 18; *see also id.* at Seventeenth Defense ("Eckert is not counsel in any litigation where POM is an adverse party."). Similarly, Eckert represented in the Joint Case Management Plan that it "is *not involved* in [the Commonwealth Court] case." ECF 18, § 1.1 (emphasis added).[5] Eckert also asserted in its opposition to POM's motion for preliminary injunction that it "is not representing parties in litigation adverse to POM." ECF 21, p. 2. HMS also falsely denied and downplayed Eckert's involvement in the Commonwealth Court litigation. HMS represented to this Court that it "step[ped] in as conflict counsel" "due to Eckert's alleged conflict

---

[5] Eckert tries to excuse its denial of involvement in the Joint Case Management Plan by pointing to Local Rule 16.3(a) which states that information in the plan "will not be deemed an admission by any party." ECF 94, p. 11. This misses the point. Eckert's intentional denial in the plan is a misrepresentation *to the Court* and therefore a threat to judicial integrity. *See G-I Holdings, Inc.,* 586 F.3d at 262 ("We will apply [judicial estoppel] to neutralize threats to judicial integrity however they may arise.").

8

with POM" and then intentionally misrepresented that Eckert's only activity was "preparatory to . . . handing off the Parx representation to HMS." ECF 53 at 2, 4, 9. And, on behalf of Parx, HMS represented to the Commonwealth Court pursuant to Rule 531(b)(2) of the Pennsylvania Rules of Appellate Procedure that no one else "authored in whole or in part the amicus curiae brief." *See* Amicus Curiae Br. at 6 n.1.[6] These repeated denials of Eckert's involvement cannot be reconciled with invocation of the attorney-client privilege over that same involvement and therefore the first criteria for judicial estoppel is satisfied. ECF 87, p. 36.

*Second*, there can be no serious debate that the inconsistent representations were made in bad faith to conceal Eckert's unwaivable conflict of interest[7] and Eckert's and HMS's breaches of their ethical obligations.[8] There was no mistake:

---

[6] The Brief of Amicus Curiae filed by HMS and Ballard Spahr LLP on December 18, 2019 in the No. 503 MD 2018 matter is attached as Exhibit D.

[7] Rule 1.7 of the Pennsylvania Rules of Professional Conduct provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest" which exists where "the representation of one client will be directly adverse to another client." Pa. R. Prof. Conduct. 1.7(a)(1). Conflicts like the one at issue here involving one client adverse to another in the same litigation are not waivable. Pa. R. Prof. Conduct 1.7(b)(3).

[8] Rule 8.4 of the Pennsylvania Rules of Professional Conduct states that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, *knowingly assist* or induce another to do so, *or do so through the acts of another* . . . ." Pa. R. Prof. Conduct 8.4(a) (emphasis added). Because Eckert was prohibited from representing Parx in any matter adverse to POM, it was an ethical violation for Eckert to represent Parx indirectly through HMS, for HMS to assist Eckert in that conduct and for HMS and Eckert to hide

9

Eckert denied involvement in the Commonwealth Court litigation *in real time*.

Eckert represented to the Court on March 10, 2020 that it "does not represent a

party adverse to POM in litigation," ECF 9, ¶ 18, but continued to secretly

communicate with HMS about the Commonwealth Court litigation through at least

May 2020. ECF 87, pp. 40-41.[9] Eckert was certainly aware at the time that its

dual representation was prohibited. HMS admitted that it was asked to "step in as

conflict counsel" and claimed that Eckert's only activity in relation to the

Commonwealth Court litigation was "preparatory to Eckert handing off the Parx

representation to HMS," but the communications at issue occurred largely *after* the

"referral from Eckert due to Eckert's alleged conflict" and *after* HMS "step[ped] in

as conflict counsel." ECF 53 at pp. 2, 4, 9. There was no handing off of the

representation. Rather, Eckert continued to draft court filings, make strategy

recommendations and otherwise advocate against POM while HMS nominally

served as counsel of record. ECF 87, pp. 40-41. Deliberate deception to the Court

to conceal the ongoing conflict is most certainly bad faith. *See Krystal Cadillac-*

*Oldsmobile*, 337 F.3d at 321 ("a rebuttable inference of bad faith arises when

averments . . . demonstrate both knowledge . . . and a motive to conceal. . .")

---

Eckert's involvement. This is the basis for POM's pending application to
disqualify HMS from representing Parx in the Commonwealth litigation.

[9] The last entry in the Eckert privilege log is June 14, 2020. *See* Ex. A. Eckert
has not updated the log to address the period after that date.

10

(citation omitted). The deception is now known because of this Court's diligence in performing the *in camera* review.

*Third*, judicial estoppel is unquestionably appropriate to address the harm. As the Court concluded, no lesser sanction will suffice to remedy the deliberate deception. ECF 87, pp. 37-38. Eckert proposes that POM should be required to prove its case through time and date entries in the privilege logs rather than the actual communications between itself and HMS. ECF 94, p. 14. This is no sanction at all. Allowing Eckert to cloak its conflict of interest in the attorney-client privilege would instead reward its deception. As the Third Circuit recognized in *Krystal Cadillac-Oldsmobile*, creating an "escape hatch" for deceptive litigants to "duck into . . . once their lack of candor is discovered" would only diminish the incentive to be truthful. 337 F.3d at 321 (citation omitted). Here, too, nothing short of estoppel will prevent Eckert from profiting from its duplicity.

The Court got it right the first time: it was a proper exercise of discretion to bind Eckert, HMS and Parx to their prior representation to the Court that Eckert was not involved in litigation adverse to Parx.

## B.    There Was No Error in Applying Judicial Estoppel.

The arguments advanced by Eckert, HMS and Parx in their appeals are without merit and do not in any way support a different outcome.

11

Eckert, HMS and Parx suggest that acceptance of an inconsistent position by a court is a prerequisite for judicial estoppel, *see, e.g.,* ECF 94, pp. 11-12, but that is not the law in the Third Circuit. As the Court correctly noted, ECF 87, p. 36, there is no such requirement. The Third Circuit has made clear that "application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Krystal Cadillac-Oldsmobile*, 337 F.3d at 324; *see also G-I Holdings, Inc.*, 586 F.3d at 262 ("We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply."); *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) ("Whether the party sought to be estopped benefitted from its earlier position . . . may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel.").[10] To the contrary, as noted above, judicial estoppel is properly applied "to neutralize threats to judicial integrity however they may arise." *G-I Holdings, Inc.*, 586 F.3d at 262.[11]

---

[10]  While some of the referenced authorities declined to apply judicial estoppel, the facts and circumstances are materially different from this case and as a result they do not undermine application of judicial estoppel to the unique and egregious facts here.

[11]  Eckert, HMS and Parx appear to be conflating inconsistent *legal* claims, where a change in position after acceptance of an earlier position by a court or

12

Unable to justify their deception, Eckert and HMS resort to hairsplitting. Eckert's counsel suggested at oral argument that there was no inconsistency because Eckert was "serving on the team of lawyers that work for Parx Casino." *See* Tr. of Oral Argument at p. 32 (emphasis added).[12]  But that eleventh hour revelation is exactly the problem.  Eckert repeatedly denied involvement in the Commonwealth Court litigation, but remained an active participant behind the scenes.  It is deceptive to claim otherwise.  As this Court recognized, Eckert's continued participation in developing strategy simply cannot be reconciled with its "representations *here in this Court* that Eckert did not represent anyone adverse to POM." *Id.* at p. 42 (emphasis added).

---

judge demonstrates a litigant's bad faith, and inconsistent *factual* assertions like the material ones at issue here.  There is no question that a litigant "plays fast and loose with the court" when he knowingly makes directly conflicting statements about a factual matter.  This is what Eckert, HMS and Parx did here.  Over and over again.  And they got caught.  They denied Eckert's involvement in the Commonwealth Court litigation and at the same time claimed that Eckert was acting as counsel.  Acceptance by a court of one of these inconsistent factual assertions is not necessary to conclude that asserting both at the same time is bad faith.  But there was reliance here.  The Commonwealth Court accepted Parx's and HMS's representation that no other person or entity was involved in writing the *amicus* brief and the entries of appearance filed by HMS as counsel for Parx and permitted HMS to participate in the litigation on behalf of Parx.  And this Court conducted an extensive *in camera* review of the withheld records.

[12] The transcript of the oral argument on October 20, 2020 is attached as Exhibit E.

13

Nor is it any defense that Eckert never entered an appearance of record. *Id.* at 53 (emphasis added). Again, this is exactly the problem. Eckert is ethically barred from doing indirectly what it cannot do directly. Pa. R. Prof. Conduct 8.4(a). In the words of this Court, to direct the representation from behind the scenes and without entering an appearance "flies in the face of the duty of loyalty that a lawyer owes to a client." *Id.* at 56 ("If that were the case and counsel from Eckert did that, that kind of flies in the face of the duty of loyalty that a lawyer owes to a client. . . ."). Eckert's decision not to appear of record, while covertly directing the representation of Parx, is powerful evidence that Eckert knew its participation was prohibited. Eckert plainly did not immunize itself by acting covertly.

Both at oral argument and in their appeal briefs, Eckert, HMS and Parx devoted considerable energy professing that some lawyers at Eckert believed there was an advance conflict waiver. *See, e.g.*, Tr. of Oral Argument at 53. There was no waiver and Eckert always knew it. The Eckert partner in charge of the relationship, Thomas A. Lisk, denied making disclosures necessary for an effective waiver. ECF 13-3, ¶¶ 5-7.[13] Mr. Lisk and therefore Eckert knew all along that POM never consented to Eckert attacking POM games on behalf of Parx. POM

---

[13] Mr. Lisk's declaration, which was attached to POM's brief in support of motion for preliminary injunction, is reproduced as Exhibit F.

14

filed a sworn declaration from Mr. Lisk in March 2020 confirming there was no waiver, *id.*, but Eckert continued to falsely claim waiver and continues to unjustifiably assert privilege over communications it had with HMS concerning the Commonwealth Court litigation *after* March 2020. *See* Ex. A. In any event, even if a waiver were effective in a matter involving a direct conflict in litigation—and it is not, see Pa. R. Prof. Conduct. 1.7(b)(3)—a waiver would not excuse or justify misrepresentations to this Court or to the Commonwealth Court.

Finally, in a last-gasp attempt to avoid the adverse consequences that must properly flow from their deception, Eckert argues that judicial estoppel should not be applied when a privilege is at issue. ECF 94, pp. 6-10. This is not the law. Judicial estoppel is properly invoked to prevent a miscarriage of justice. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 319. There is no exception to the doctrine where fraud on the court relates to application of a privilege. As this Court noted, ECF 87, p. 36, judicial estoppel has been applied to bar a party from changing his position for purposes of maintaining the privilege. *See In re Berks Behav. Health, LLC*, 500 B.R. 711, 720-21 (E.D. Pa. Oct. 21, 2013) (applying judicial estoppel to prevent party from arguing that son was agent of corporation for purposes of maintaining privilege when party previously denied that son had any involvement in the company). The doctrine applies equally to Parx given its representation to the Commonwealth Court through counsel that no other counsel authored its

15

*amicus curiae* brief. *See* Amicus Curiae Br. at 6 n.1. Further, documents produced after February 16, 2021 confirm that Eckert kept Parx and Parx's government relations personnel informed of its efforts to secretly influence the Commonwealth Court litigation in Parx's favor. *See, e.g.,* ECKERT01214-16 (reproduced as Exhibit G). Accordingly, Parx should likewise be estopped from claiming privilege over Eckert's communications with HMS.

In short, there is no reason to alter this Court's prior ruling.

## CONCLUSION

For the reasons above, Eckert, HMS and Parx were properly judicially estopped from asserting privilege over Eckert's communications with HMS concerning the Commonwealth Court litigation given their previous representations that Eckert had no involvement in the litigation. The February 16, 2021 Memorandum and Order should be reaffirmed.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  May 26, 2021

16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)

I, Donna A. Walsh, hereby certify that the foregoing Memorandum lf Law Relating To Application of Judicial Estoppel is in compliance with Local Rule 7.8(b)(3). The brief contains 3899 words as computed by Microsoft Office Word.

/s/ Donna A. Walsh

Date: May 26, 2021

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the

foregoing Memorandum of Law was served upon the following counsel of record

via the Court's ECF filing system on this 26th day of May 2021:

> Abraham C. Reich, Esquire
> Robert S. Tintner, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103-3291
>
> Dennis A. Whitaker, Esquire
> Hawke McKeon & Sniscak, LLP
> 100 North Tenth Street
> Harrisburg, PA  17101
>
> George A. Bibikos, Esquire
> 5901 Jonestown Road, #6330
> Harrisburg, PA  17112

/s/ Donna A. Walsh
Donna A. Walsh