# Exhibit D

Received 12/18/2019 3:47:22 PM Commonwealth Court of Pennsylvania

Filed 12/18/2019 3:47:00 PM Commonwealth Court of Pennsylvania
503 MD 2018

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| POM OF PENNSYLVANIA, LLC,<br>Petitioner, | : | |
| v. | : | No. 503 MD 2018 |
| PENNSYLVANIA STATE POLICE,<br>BUREAU OF LIQUOR CONTROL<br>ENFORCEMENT,<br>Respondent. | : | |

---

## BRIEF OF AMICI CURIAE
## GREENWOOD GAMING AND ENTERTAINMENT, INC.,
## DOWNS RACING, L.P., MOUNTAINVIEW THOROUGHBRED
## RACING ASSOCIATION, LLC AND WASHINGTON
## TROTTING ASSOCIATION, LLC

---

Adrian R. King, Jr., I.D. # 69315
Ballard Spahr LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
Phone: (215) 864-8622
Fax: (215) 864-8999
kinga@ballardspahr.com

Kevin J. McKeon, I.D. # 30428
Hawke McKeon & Sniscak LLP
100 North Tenth Street, P.O. Box 1778
Harrisburg, PA  17105
Phone: (717) 236-1300
Fax:  (717) 236-4841
kjmckeon@hmslegal.com

*Attorneys for Amici Curiae*

Date:  December 18, 2019

{L0847857.3}

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.  STATEMENT OF IDENTITY AND INTEREST OF AMICUS
    CURIAE.................................................................................................... 1

    A.  GGE, MOHEGAN, HOLLYWOOD AND MEADOWS .................... 2

    B.  LICENSED SLOT MACHINE GAMING IN
           PENNSYLVANIA ............................................................................ 3

II.  INTRODUCTION .................................................................................... 6

III.  ARGUMENT ............................................................................................ 8

    A.  LEGAL STANDARD FOR PRELIMINARY INJUNCTION. ........... 8

    B.  POM IS NOT LIKELY TO SUCCEED ON THE MERITS OF
           ITS CLAIMS. ................................................................................... 9

        1.  Slot machines are illegal outside of licensed casinos ................. 9

        2.  "Skill Game" Machines are Slot Machines under the
               Crimes Code ........................................................................... 12

    C.  POM WILL NOT SUFFER IMMEDIATE AND
           IRREPARABLE HARM ABSENT A  PRELIMINARY
           INJUNCTION ................................................................................ 22

    D.  NEITHER THE PUBLIC INTEREST NOR THE EQUITIES
           SUPPORT POM'S APPLICATION ................................................ 24

    E.  GRANTING A PRELIMINARY INJUNCTION WILL NOT
           RESTORE THE STATUS QUO FOR POM. .................................... 25

IV.  CONCLUSION ........................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Algrant v. Evergreen Valley Nurseries Ltd. Pshp.,*
126 F.3d 178 (3rd Cir. Pa. 1997)................................................ 17, 18, 19

*Commonwealth v. Milano,*
446 A.2d 325 (1982)...................................................................15

*Commonwealth v. Sloan,*
907 A.2d 460 (Pa. 2006).............................................................16

*Commonwealth v. Two Electronic Poker Game Machines,*
465 A.2d 973 (Pa. 1983).............................................................11

*DeForte v. Borough of Worthington,*
212 A.3d 1018 (Pa. 2019)............................................................17

*Goryeb v. Commonwealth, Dep't of Public Welfare,*
575 A.2d 545 (Pa. 1990).............................................................17

*Hutskow v. Washowich,*
628 A.2d 1202 (Pa. Cmwlth. 1993).............................................15

*In re Annexation of 171.481 Acres,*
290 A.2d 102 (Pa. 1972).......................................................17, 19, 21

*In re Estate of Belefski,*
196 A.2d 850 (Pa. 1964).............................................................13

*McGrath v. Bureau of Prof'l & Occupational Affairs,*
173 A.3d 656 (Pa. 2017)........................................................ 7, 16

*Moonlite Café, Inc. v. Dep't of Health,*
23 A.3d 1111 (Pa. Cmwlth. 2011)..............................................15

*P.H.D. v. R.R.D.,*
56 A.3d 702 (Pa. Super. 2012) ............................................. 7, 16, 18

*Pa. State Corr. Officers Ass'n v. State Civil Ser. Comm'n,*
939 A.2d 296 (Pa. 2007)............................................................17

**Cases (con't)**                                                    **Page(s)**

*Perez v. Bureau of Comm'ns, Elections & Legislation,*
854 A.2d 998 (Pa. 2004)........................................................................17

*Philips Bros. Elec. Contractors, Inc. v. Valley Forge Sewer Auth.,*
999 A.2d 652 (Pa. Cmwlth. 2010)........................................................22

*PPL Holtwood, LLC v. Pike County Bd. of Assessment & Revision of Taxes,*
846 A.2d 201 (Pa. Cmwlth. 2004)................................................... 7, 16

*PUC v. Israel,*
52 A.2d 317 (Pa. 1947).............................................................. 22, 24

*Roach v. Port Authority of Allegheny County,*
550 A.2d 1346 (Pa. Super. 1987) .........................................................16

*POM of Pennsylvania, LLC v. Com. of Pennsylvania, Dept. of Revenue and City of
Philadelphia,* No. 418 M.D. 2018  (Opinion issued November 20, 2019) ("*POM
of PA*") ............................................................................... passim

*Snyder Bros. v. Pa. PUC,*
198 A.3d 1056 (Pa. 2018).....................................................................14

*Stuart v. Gimbel Bros., Inc.,*
131 A. 728 (Pa. 1926)...........................................................................23

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,*
828 A.2d 995 (Pa. 2003).........................................................................9

*The Woods at Wayne Homeowners Ass'n v. Gambone Bros. Const. Co., Inc.,*
893 A.2d 196 (Pa.Cmwlth. 2006)..........................................................26

*Walker v. Eleby,*
842 A.2d 389 (Pa. 2004)........................................................................15

## Statutes

1 Pa.C.S. § 1921 ............................................................................................ 7, 16, 19, 20

1 Pa.C.S. § 1932 ................................................................................................ 7, 17

18 Pa.C.S. § 5513 ............................................................................................ *passim*

4 Pa. C.S. § 13B ...................................................................................................... 3

4 Pa.C.S. § 1103 ............................................................................................ 7, 13, 15

4 Pa.C.S. § 1903 .................................................................................................. 14, 18

42 Pa.C.S. § 5803 .................................................................................................. 23

Pa. Const. art. I § 14 ............................................................................................ 16

## Rules

Pa.R.A.P. 531(b)(2) ................................................................................................ 6

{L0847857.3}

## I.    STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE

Amici curiae are Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("GGE"), Downs Racing, L.P., d/b/a Mohegan Sun Pocono ("Mohegan Sun" or "MSP"), Mountainview Thoroughbred Racing Association, LLC, d/b/a Hollywood Casino at Penn National Race Course ("Hollywood"), and Washington Trotting Association, LLC, d/b/a Meadows Racetrack and Casino ("Meadows"). GGE, Mohegan Sun, Hollywood and Meadows are slot machine licensees under the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. § 1101 et seq. (the "Gaming Act"). As slot machine licensees, Amici are authorized by law to place and operate slot machines consistent with the Commonwealth's comprehensive legal and regulatory oversight.

Amici file this brief to apprise the Court of their specialized interest in protecting legal gambling in Pennsylvania, and to support the position of the Pennsylvania State Police Bureau of Liquor Control Enforcement ("PSP") that POM of Pennsylvania LLC's ("POM") so-called skill games are illegal slot machines under Section 5513 of the Crimes Code, 18 Pa.C.S. § 5513. For this reason and those set forth herein, POM cannot satisfy its burden and its Application for Preliminary Injunction should be denied.

## A.    GGE, Mohegan, Hollywood and Meadows

GGE is a corporation engaged in, inter alia, operating Parx Casino in Bensalem, Pennsylvania, under a Category 1 slot machine license and table game operation certificate issued by the Pennsylvania Gaming Control Board ("Board").

Downs Racing is a Pennsylvania limited partnership engaged in, inter alia, operating the Mohegan Sun Pocono Casino Resort in Wilkes-Barre, Pennsylvania, under a Category 1 slot machine license and table game operation certificate issued by the Board.

Mountainview Thoroughbred Racing, LLC is an entity engaged in, inter alia, operating the Hollywood Casino at Penn National Race Course in Grantville, Pennsylvania, and Washington Trotting Association, LLC is engaged in, *inter alia*, operating The Meadows Casino Racetrack and Casino in Washington, Pennsylvania, each under separate Category 1 slot machine licenses and table game certificates issued by the Board.

All four Amici have invested heavily in order to be authorized to offer slot machine gaming in Pennsylvania.  Each has paid a $50 million license fee for its slot machine license(s), and each having completed a costly and extensive suitability review and application process.  GGE and Hollywood were also winning bidders for three Category 4 licenses, which allow them to offer slot machine play at facilities outside of their primary locations.  Hollywood was

awarded two Category 4 licenses at a cost of approximately $50 million and $7.5 million, respectively. GGE secured the right to apply for one Category 4 license at a cost of approximately $8.1 million. Moreover, GGE, Mohegan and Hollywood have each been awarded interactive gaming certificates enabling them to conduct gaming over the Internet, including offering online slot machines and other games. 4 Pa. C.S. §§ 13B11, 13B1. GGE and Hollywood have each paid a $10 million fee for their interactive gaming certificates, and Mohegan paid an $8 million fee for its certificate. Through their interactive gaming platforms, these licensed casinos offers slot machine play and other forms of gaming to eligible gamblers anywhere within the Commonwealth of Pennsylvania.

In addition to the above fees, GGE, Mohegan, Hollywood and Meadows have each invested hundreds of millions of dollars in the development and expansion of their casinos in order to offer state-of-the-art facilities. In addition to their gaming spaces, each offers a variety of dining, shopping, and entertainment options for their patrons.

**B.    Licensed Slot Machine Gaming in Pennsylvania**

In 2004, the General Assembly enacted the Gaming Act, for the first time authorizing a small number of licensed entities to offer legal slot machine gaming in Pennsylvania. Pennsylvania's licensed casinos, including GGE and Downs Racing, have been an unqualified boon to the Commonwealth and its citizens.

Licensed casinos have expended hundreds of millions of dollars (if not, more) to conduct lawful slot machine operations in the Commonwealth since that time. Those operations have generated billions of dollars for the Commonwealth and its citizens, in the form of licensing fees, tax revenue, local share funding and fees, and other financial benefits. Now, just 15 years after slot operations were first authorized, Pennsylvania receives more gaming tax revenue than any other jurisdiction in the United States, taking approximately 54 cents of every dollar wagered in the slot machines of each licensed casino.

Indeed, in Fiscal Year 2017-2018, Pennsylvania's licensed casinos, including GGE and MSP, generated over $1.16 billion in slot machine tax revenue for the Commonwealth. In that same Fiscal Year, licensed casinos contributed more than $123 million in local share funding and fees that were distributed to host counties and municipalities. Licensed casinos also spent approximately $230 million annually with local business entities in their host and contiguous counties. The licensed entities employ more than 20,000 employees, the vast majority of which reside in Pennsylvania.

The success of Pennsylvania's licensed casinos, including GGE and Mohegan Sun, in slot machine gaming was achieved while operating under a highly regulated environment, ensuring the highest integrity in gaming operations, while simultaneously promoting responsible gaming.

{L0847857.3}

4

Despite the Gaming Act specifically authorizing slot machine operations only in licensed casinos, and the Crimes Code's declaration that the offering of any slot machine without a license is a crime, there has been a proliferation of "skill games" – or unlicensed slot machines – being offered in bars, restaurants, convenience stores, gas stations, and other establishments. This is not one or two machines at a few establishments; rather, this is a massive gambling operation that is cutting into the licensed gaming market. PSP has testified before the House Gaming Oversight Committee that there are approximately 10,000 of these unlicensed slot machines – from one company alone – in Pennsylvania; and that there are five or six different manufacturers that have unlicensed slot machines in the Commonwealth. Testimony of Major Scott T. Miller before House Gaming Oversight Committee (October 30, 2019). PSP also testified that an operator with 10,000 skill game slot machines would generate approximately $260 million in annual revenue. *Id.* POM is one of the many providers of unlicensed slot machines that are operating outside of the Gaming Act's comprehensive regulatory framework and tax scheme and in violation of the Crimes Code.

Amici submit this brief in an effort to protect their property interest in their slot machine licenses, their licensed casino facilities and their interactive gaming

{L0847857.3}

5

certificates from illegal competition from unlicensed, unregulated, and illicit slot machines.[1]

## II.    INTRODUCTION

This Court should deny POM's request to enjoin the application of the Crimes Code to its unlicensed and illegal slot machines.  Although POM has cleverly branded its machines as "skill games," this Court has already concluded that those machines are "slot machines."  *See POM of Pennsylvania, LLC v. Com. of Pennsylvania, Dept. of Revenue and City of Philadelphia*, No. 418 M.D. 2018 (Opinion issued November 20, 2019) ("*POM of PA*").  Through its Application, POM is essentially asking this Court to allow it to offer slot machines throughout the Commonwealth without *any* oversight under the law.  POM demands to operate outside of the comprehensive legal, financial and regulatory oversight of the Gaming Control Board, while at the same time demanding to be free from PSP's enforcement of the Crimes Code provision that criminalizes conduct involving "any slot machine" except those regulated by the Gaming Board.  This Court should not countenance such a brazen request.

---

[1]    Pursuant to Pa.R.A.P. 531(b)(2), Amici curiae state that no person or entity, other than amici, and their members and counsel, (i) paid in whole or in part for the preparation of the amicus curiae brief or (ii) authored in whole or in part the amicus curiae brief.

The heart of the issue before the Court is a question of law; not one of fact. Section 5513 of the Crimes Code makes it illegal to commit various actions involving "any ... slot machine" (*e.g.*, make, sell, own, offer, for play and more). 18 Pa.C.S. § 5513(a)(1)-(4). The only exception contained in Section 5513, whereby such conduct involving a "slot machine" is not illegal, is when the conduct is performed in or with licensed casinos under Title 4 of the Pennsylvania Consolidated Statutes. 18 Pa.C.S. § 5513(e.1)(4).

The meaning of the phrase "any slot machine" is a matter of statutory construction and a question of law. Based on the text of Section 5513, that meaning is clear: "any slot machine" is all-inclusive. Nonetheless, to the extent there is any doubt about the meaning of that phrase in the Crimes Code, Pennsylvania law directs that courts consult the definitions of "slot machine" in other statutes upon the same or similar subjects. 1 Pa.C.S. §§ 1921(c)(5), 1932; *McGrath v. Bureau of Prof'l & Occupational Affairs*, 173 A.3d 656 (Pa. 2017); *P.H.D v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012); *PPL Holtwood, LLC v. Pike County Bd. of Assessment & Revision of Taxes*, 846 A.2d 201, 207 (Pa. Cmwlth. 2004).

The General Assembly has provided a clear and comprehensive definition of the term "slot machine." 4 Pa.C.S. § 1103. POM's machines fit squarely into that definition. *POM of PA* at 11. At the very least, by its plain language, the phrase

"any slot machine" in Section 5513 of the Crimes Code encompasses the slot machines defined in Title 4. Further, as more fully explained herein, the Legislature's slot machine definition in Title 4 applies to Section 5513.

Thus, the so-called "skill game" machines are slot machines under Section 5513 of the Crimes Code. Consequently, any activity identified in Section 5513(a) that involves these "skill game" machines (*i.e.,* slot machines) and that is conducted outside of or without a connection to a licensed casino is illegal. The plain language of the statute is satisfied. The crime is established. No further inquiry or analysis or measuring of skill and chance need be conducted.

For this reason alone, POM's Application must be denied. POM cannot establish the requisite clear right to relief on the merits to secure a preliminary injunction. Likewise, POM can neither demonstrate that it will suffer irreparable harm unless it is permitted to continue its illegal conduct, nor that the equities and the public interest favor such illegalities.

## III. ARGUMENT

### A. Legal Standard for Preliminary Injunction.

POM cannot meet the well-established standard for preliminary injunctive relief. In order for an injunction to issue, POM, as the moving party, must establish that: (1) it is likely to prevail on the merits; (2) an injunction is necessary to prevent immediate and irreparable harm; (3) the equities weigh in favor of

issuing an injunction – specifically, that greater injury would result from refusing an injunction than from granting it and that issuance of an injunction will not substantially harm other interested parties in the proceedings; (4) a preliminary injunction will not adversely affect the public interest; (5) the injunction is reasonably suited to abate the offending activity; and (6) the requested injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. *See, e.g., Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003). POM cannot meet this high threshold and the requested injunction should be denied.

**B.    POM is Not Likely to Succeed on the Merits of its Claims.**

The crux of POM's claim is that it may lawfully offer its slot machines throughout Pennsylvania without violating the Crimes Code. Not only is POM unlikely to prevail on this argument, the argument has no merit.

**1.    Slot machines are illegal outside of licensed casinos**

The Crimes Code is explicit that only entities licensed by the Board may operate any slot machines in the Commonwealth. Section 5513(a) states:

(a) Offense defined.--A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, **any** punch board, drawing card, **slot machine** or any device to be used for gambling purposes, except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

18 Pa.C.S. § 5513(a)(1)-(4) (emphasis added). Only licensed casinos and others licensed by the Gaming Control Board are excepted from this criminal offense. The General Assembly specifically provided an exception to the crimes established in Section 5513(a) for "any activity that is lawfully conducted under" the Gaming Act. 18 Pa.C.S. § 5513(e.1)(4). By including this exception, the General Assembly explicitly tied together conduct under Section 5513 of the Crimes Code and conduct under the Gaming Act.

Under this statutory scheme, a person who sells or leases a slot machine to a convenience store or a pizza shop is guilty of a misdemeanor of the first degree. However, if a person sells or leases a slot machine to a licensed Pennsylvania casino, in accordance with the Gaming Act, then the person has not committed a crime.

This statutory scheme was recognized by this Court's recent decision in this matter addressing the PSP's motion for judgment on the pleadings. In that decision, this Court found that POM's video game machines constitute slot

{L0847857.3}

10

machines, as defined under the Gaming Act, and that POM is engaged in the making and selling of slot machines. *POM of PA* at 11-12. This Court also determined that the Gaming Act only addresses licensed, or lawful, gambling activity and, therefore, that the legality of the slot machines at issue would be determined under the Crimes Code. *POM of PA* at 20-27.

As its text makes clear, Section 5513 makes it a crime to engage in its litany of actions with "any slot machine." This means that, if POM's so-called "skill game" machines are slot machines, then POM would be in violation of the Crimes Code by making, selling, owning, leasing, offering for play, hosting, etc., such machines. 18 Pa.C.S. § 5513(a). As the identified conduct involving slot machines is expressly illegal, once a device is determined to be a slot machine, the legality (or illegality) of the conduct is established. No need exists to resort to the "predominance test," which assesses whether the outcome of a game is determined primarily by skill or by chance.[2]

---

[2]    If a device is *not* a slot machine, it may still be illegal as "any device to be used for gambling purposes" if the device entails the payment of consideration to play, an opportunity to win a reward and is predominately determined by chance. *Commonwealth v. Two Electronic Poker Game Machines*, 465 A.2d 973 (Pa. 1983).

{L0847857.3}

11

### 2.    "Skill Game" Machines are Slot Machines under the Crimes Code

This Court has already definitively concluded that POM's video game machines are slot machines, as defined by the Gaming Act. *POM of PA* at 11.[3]

---

[3]    "Slot machine."

(1) The term includes:

(i) Any mechanical, electrical or computerized contrivance, terminal, machine or other device approved by the Pennsylvania Gaming Control Board which, upon insertion of a coin, bill, ticket, token or similar object therein or upon payment of any consideration whatsoever, including the use of any electronic payment system except a credit card or debit card, is available to play or operate, the play or operation of which, whether by reason of skill or application of the element of chance or both:

 (A)  May deliver or entitle the person or persons playing or operating the contrivance, terminal, machine or other device to receive cash, billets, tickets, tokens or electronic credits to be exchanged for cash or to receive merchandise or anything of value whatsoever, whether the payoff is made automatically from the machine or manually.

 (B)  May utilize spinning reels or video displays or both.

 (C)  May or may not dispense coins, tickets or tokens to winning patrons.

 (D)  May use an electronic credit system for receiving wagers and making payouts.

(ii) Associated equipment necessary to conduct the operation of the contrivance, terminal, machine or other device.

(iii) A skill slot machine, hybrid slot machine and the devices or associated equipment necessary to conduct the operation of a skill slot machine or hybrid slot machine.

{L0847857.3}

12

The only remaining question is whether a "slot machine" under the Gaming Act is, or is included within the phrase, "any slot machine" in Section 5513 of the Crimes Code. This is a question of statutory construction and, thus, a question of law for the Court. Based on the text of the Section 5513, and according to Pennsylvania law, the answer is clearly yes.

Section 5513 broadly declares that unlicensed conduct involving "any . . . slot machine" is unlawful. Section 5513 does not contain a definition of the term "slot machine." Nonetheless, the Section's text makes clear that a slot machine, as defined under the Gaming Act, is a slot machine under Section 5513(a). First, Section 5513(a) captures and applies to *"any . . . slot machine."* Here, the term "any" is all-inclusive. *In re Estate of Belefski,* 196 A.2d 850, 855 (Pa. 1964) ("The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most

---

(iv) A slot machine used in a multistate wide-area progressive slot machine system and devices and associated equipment as defined by the Pennsylvania Gaming Control Board through regulations.

(v) A multi-use computing device which is capable of simulating, either digitally or electronically, a slot machine.

(2) The term does not include a fantasy contest terminal within the meaning of Chapter 3.

4 Pa.C.S. § 1103 (*see also* definitions of "Hybrid slot machine" and "Skill slot machine").

comprehensive.").[4]  Accordingly, Section 5513(a)(1)'s prohibitions relating to "any slot machine" must include the slot machines defined by the General Assembly in Section 1103 of the Gaming Act.[5]

Second, the text of Section 5513 directly links the provision and the conduct addressed thereunder to the Gaming Act.  As noted above, Section 5513(e.1)(4) exempts from the crimes established in subsection (a) any activity that is lawfully conducted under the Gaming Act.  As subsection (a) addresses crimes committed involving "any slot machine," that term must include and/or be consistent with the definition in the Gaming Act or the exemption would be unnecessary.

Similarly, prior to the enactment of the exemption in subsection (e.1), Act 71 of 2004 (the original Gaming Act) included a provision that repealed Section 5513(a) to the extent that it was inconsistent with the Gaming Act.  4 Pa.C.S. § 1903(a)(2).  Once again, unless the "slot machines" referenced in Section 5513

---

[4]    The Pennsylvania Supreme Court has recognized that "any" has two commonly accepted alternative meanings in the English language:  "any" could mean "all" or "every," as well as "one."  The Court held that the meaning of the term "any" is dependent on the context in which it is used in the particular statute under review. *Snyder Bros. v. Pa. PUC*, 198 A.3d 1056 (Pa. 2018).  Here, when viewed in the context of the Crimes Code, the term "any" is not ambiguous.  Clearly, the General Assembly intended for unlicensed conduct involving all slot machines to be unlawful, as opposed to targeting a singular slot machine.

[5]    Notably, Section 1103 of the Gaming Act represents the only instance in Pennsylvania law where the General Assembly has defined the term "slot machine."

include and/or are the same "slot machines" defined in the Gaming Act, the repealer provision in Act 71 would have been unnecessary. Clearly, these provisions are not – and cannot be construed to be – unnecessary surplusage. *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004); *Moonlite Café, Inc. v. Dep't of Health*, 23 A.3d 1111, 1114 (Pa. Cmwlth. 2011).

The reference to "any slot machine" in the Crimes Code, thus, encompasses the slot machines defined in the Gaming Act. Such conclusion is wholly consistent with the legal presumption that the Legislature, when enacting a statute, "does so with full knowledge of existing statutes relating to the same subject." *Hutskow v. Washowich*, 628 A.2d 1202, 1207 (Pa. Cmwlth. 1993) *citing Commonwealth v. Milano*, 446 A.2d 325 (1982). Significantly, from its enactment in 2004, the Gaming Act's definition of "slot machine" has included machines where the outcome is determined "<u>by reason of skill or application of chance or both</u>." 4 Pa.C.S. § 1103 (emphasis added).[6]

To the extent that the text of Section 5513 does not sufficiently clarify the scope or meaning of the phrase "any slot machine," the Pennsylvania Statutory Construction Act also directs that the General Assembly's definition of "slot

---

[6]    In Act 42 of 2017, the Legislature added to the Gaming Act additional definitions for "Hybrid slot machine" and "Skill slot machine," emphasizing the fact that the question of skill or chance is not determinative of whether a machine constitutes a "slot machine" as a matter of law. 4 Pa.C.S. § 1103.

machine" in the Gaming Act should apply when interpreting Section 5513. The rules of statutory construction make clear that the meaning of a term or provision in one statute may be ascertained by considering "other statutes upon the same or similar subjects." 1 Pa.C.S. § 1921(c)(5). Pennsylvania courts have followed this rule on numerous occasions. *See, e.g., McGrath v. Bureau of Prof'l & Occupational Affairs*, 173 A.3d 656, 662 (Pa. 2017) (". . . similar automatic-suspension provisions in other professional-licensing statutes shed light on the legislative intent underlying the statutory provisions under review."); *Commonwealth v. Sloan*, 907 A.2d 460 (Pa. 2006) (similar statutory provisions and Pa. Const. art. I § 14 used to interpret Rule 600(E) of the PA Rules of Criminal Procedure); *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012) ("Even though this is not a [Uniform Child Custody Jurisdiction Enforcement Act] case, we may, in the absence of other governing authority, afford that definition [found in the Act] persuasive value."); *PPL Holtwood, LLC v. Pike County Bd. of Assessment & Revision of Taxes*, 846 A.2d 201, 207 (Pa. Cmwlth. 2004) ("We may, of course, derive guidance from another statute that is concerned with the same or a similar subject pursuant to Section 1921(c)(5) of the Statutory Construction Act."); *Roach v. Port Authority of Allegheny County*, 550 A.2d 1346 (Pa. Super. 1987) (court looked to Pennsylvania's No-Fault Motor Vehicle Insurance Act to interpret provisions of Pennsylvania's Motor Vehicle Insurance Act); *Algrant v. Evergreen*

*Valley Nurseries Ltd. Pshp.*, 126 F.3d 178, 188 (3rd Cir. Pa. 1997) (court resorted to Pennsylvania Uniform Commercial Code to supply definition of undefined term "goods" in Unfair Trade Practices and Consumer Protection Law, explaining "words can be construed by reference to other statutes.").

Similarly, Section 1932 of the rules of statutory construction directs that laws addressing the same class of persons or things (*i.e.,* statutes *in pari materia*) "shall be construed together" when possible. 1 Pa.C.S. § 1932(b). Once again, Pennsylvania courts have routinely followed this rule of construction when interpreting statutes. *See, e.g., DeForte v. Borough of Worthington*, 212 A.3d 1018 (Pa. 2019); *Pa. State Corr. Officers Ass'n v. State Civil Ser. Comm'n*, 939 A.2d 296 (Pa. 2007); *Perez v. Bureau of Comm'ns, Elections & Legislation*, 854 A.2d 998, 1001 (Pa. 2004); *Goryeb v. Commonwealth, Dep't of Public Welfare*, 575 A.2d 545, 548 (Pa. 1990); *In re Annexation of 171.481 Acres*, 290 A.2d 102, 105 (Pa. 1972); *see also Algrant v. Evergreen Valley Nurseries Ltd. Pshp.*, 126 F.3d 178, 188 (3d Cir. 1997).

Applying these rules, and consulting this case law, leads to the unavoidable conclusion that the phrase "any slot machine" in Section 5513 of the Crimes Code includes the slot machines defined in the Gaming Act. The two statutes plainly address the same or similar subjects – gambling and gambling devices. Gaming is nothing more than legal gambling. Moreover, the express text of both statutes

{L0847857.3}

17

address slot machines (*e.g.*, where and how they may be made, sold, owned and played) and, as noted above, each of the statutes accommodates or modifies the other via the exemption and repealer provisions. 18 Pa.C.S. § 5513(e.1)(4); 4 Pa.C.S. § 1903(a)(2). Having established that the laws are on the same or similar subjects, Pennsylvania law directs that the term "slot machine" be given the same meaning under both statutes.

At the very least, the slot machines defined in the Gaming Act must be captured by Section 5513's expansive phrase "any slot machine." Such a conclusion is consistent with precedent, as the courts have, on multiple occasions, specifically used definitions in one statute to supply the meaning of a term that was undefined in another body of law. For instance, in *P.H.D. v. R.R.D.*, the Superior Court considered what constituted a "modification" of a custody agreement, a term that was undefined in Pennsylvania custody law. Following the rule in Section 1921(c)(5), the Court stated:

> In the Uniform Child Custody and Jurisdiction and Enforcement Act [citations omitted], our General Assembly has provided a definition of modification. Even though this is not a UCCJEA case, we may, in the absence of other governing authority, afford that definition persuasive value.

*P.H.D.*, 56 A.3d at 706.

Similarly, in *Algrant v. Evergreen Valley Nurseries Ltd. Pshp.*, the United States Court of Appeals for the Third Circuit relied on Sections 1921(c)(5) and

{L0847857.3}

18

1932 when interpreting the term "goods" under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"). *Algrant*, 126 F.3d at 188. Concluding that the District Court committed no error in interpreting the definition of the term "goods" under the UTP/CPL by relying on the definition of the term as provided in Pennsylvania's Uniform Commercial Code, the Court explained:

> The difficulty arises because the term "goods" is not expressly defined in the UTP/CPL. Pennsylvania law, however, has established rules of statutory construction to be employed when defining a term not defined in the statute itself . . . words can be construed by reference to other statutes. 1 Pa. Cons. Stat. §§ 1921(c), 1932. The district court did just that, comparing the term "goods" under the UTP/CPL with the term "goods" under the Uniform Commercial Code."

*Id.*

The *Algrant* court's explanation and decision are directly parallel to Section 5513. Like the Consumer Protection Law, Section 5513 does not specifically define the pertinent term: "slot machine." Like the Pennsylvania UCC, the Gaming Act contains a definition of that term and, pursuant to the rules of statutory construction, this Court should use the Gaming Act's definition to interpret the legislative intent behind Section 5513.

To do otherwise would result in the same word having different meanings under the two statutes – a result that would be unreasonable and contrary to the rules of statutory construction. In *In re Annexation of 171.481 Acres*, the Pennsylvania Supreme Court, applying Section 1932, found that the annexation

provisions of the Borough Code should be read *in pari materia* with the annexation provisions of the Second Class Township Code. *In re Annexation of 171.481 Acres*, 290 A.2d at 104-05. In so doing, the Court applied the definition of the term "freeholder" in the Second Class Township Code to the Borough Code's use of the same term. *Id.* at 105. The Court explained that doing otherwise would create an unreasonable and absurd result:

> [F]ollowing the precepts of the Statutory Construction Act that the legislature is to be presumed rational, i.e., not intending unreasonable results, we are making a substantive determination that ***the legislature had to intend that "freeholders" must be defined in the same way under both statutes***.

*Id.* (emphasis added). The Supreme Court's analysis applies squarely to the legislature's use of the term "slot machine" in both Section 5513 of the Crimes Code and the Gaming Act – "the legislature had to intend that [slot machine] must be defined in the same way under both statutes."

The conclusion that the phrase "any slot machine" referenced in Section 5513 of the Crimes Code includes a "slot machine" as defined in the Gaming Act is further confirmed by Sections 1921(c)(3) and (6) of the Statutory Construction Act. 1 Pa.C.S. § 1921(c)(3) and (6). Those sections, respectively, identify the "mischief to be remedied" and the "consequences of a particular interpretation" as additional criteria that may be considered in determining legislative intent. Each of these interpretative guides supports the conclusion that the phrase "any slot

machine" in Section 5513 captures the "slot machine" defined in the Gaming Act, and both are consistent with this Court's statutory analysis in *POM of PA*.

In that decision, the Court determined that the video "skill" game machines offered by POM are slot machines (as per the Gaming Act's definition), but then held that the Gaming Act only concerns licensed or regulated slot machines. Unlicensed or illegal slot machines, as per the Court, are addressed by Section 5513 of the Crimes Code. Therefore, in order to effectuate this statutory scheme and to remedy the mischief of unlicensed and illegal slot machines, the phrase "any slot machine" in Section 5513 would have to include the slot machines defined in the Gaming Act. To hold otherwise would result in the consequence that no law applies to unlicensed and illegal slot machines. A person could evade <u>both</u> the Gaming Act's comprehensive regulatory framework <u>and</u> prosecution under the Crimes Code simply by not obtaining a license to make/sell/operate the slot machine. This is the very type of absurdity the Pennsylvania Supreme Court rejected in *In re Annexation of 171.481 Acres*, 290 A.2d at 105.

In sum, a slot machine is a slot machine, whether under the Gaming Act or the Crimes Code. Conduct (*e.g.*, making, selling, leasing, owning, playing, etc.) involving "*any* slot machine" committed outside of or apart from a licensed casino is a crime. 18 Pa.C.S. § 5513(a), (e.1)(4) (emphasis added). Accordingly, POM

cannot establish that it is likely to prevail on the merits of its action, and its

Application for preliminary injunctive relief must be denied.

### C.    POM will Not Suffer Immediate and Irreparable Harm Absent a Preliminary Injunction

POM's Application should also be denied for a lack of any immediate and

irreparable harm. As detailed above, conduct involving POM's slot machines that

is unrelated to lawful activity under Title 4 is illegal under Section 5513(a)(1) of

the Crimes Code. POM has no right to engage in unlawful conduct, and as such

cannot establish that it will suffer irreparable harm without preliminary injunctive

relief.

This Application essentially presents the converse scenario of the *Israel*

Doctrine. Recognizing that "[w]hen the Legislature declares certain conduct to be

unlawful[,] it is tantamount in law to calling it injurious to the public," the

Pennsylvania Supreme Court long ago declared that, where the Legislature

declares certain conduct to be unpermitted and unlawful, engaging in such conduct

is *per se* irreparable harm. *PUC v. Israel*, 52 A.2d 317, 321 (Pa. 1947); *see also*

*Philips Bros. Elec. Contractors, Inc. v. Valley Forge Sewer Auth.*, 999 A.2d 652,

657 (Pa. Cmwlth. 2010). Likewise, POM cannot be found to suffer irreparable

harm by being deprived of the ability to continue to engage in conduct the General

Assembly has called "injurious to the public."

{L0847857.3}

22

Even assuming that POM could establish some harm as a result of the PSP's recent seizures, preliminary injunctive relief should still be denied because POM has an adequate remedy at law. *Stuart v. Gimbel Bros., Inc.*, 131 A. 728, 730 (Pa. 1926) ("As applied in equity, 'irreparable injury' is, in fact, nothing more than the antithesis of 'an adequate remedy at law'; where the latter does not exist, . . . the former does."). PSP seized the illegal and unlicensed slot machines pursuant to 42 Pa.C.S. § 5803. *See* Emergency Application at Exhibit J (Receipt for Property Seized Pursuant to § 5803 42 Pa.C.S.A.). Section 5803 is part of a comprehensive statutory scheme in Chapter 58 of the Judicial Code regarding the seizure and forfeiture of assets. Section 5803 establishes the statutory authority for asset forfeiture and, under Section 5803(a), "notwithstanding any law to the contrary, this section shall apply to forfeitures conducted under . . . (7) 18 Pa.C.S. § 5513 (relating to gambling devices, gambling, etc.)." Section 5803 inter alia defines the property that can be seized, custody of the seized property, and the auditing of such property.

Significantly, the statutory scheme of Chapter 58 also provides a statutory remedy for the return of seized property. Section 5806(a)(1) requires that: "A person aggrieved by a search and seizure may move for the return of the property seized by filing a motion in the court of common pleas in the judicial district where the property is located." (Emphasis added). As the legislature has provided a

statutory remedy for POM, which claims to be aggrieved by the seizure of the unlicensed slot machines, its recourse is to file a motion for return of property in the Court of Common Pleas of Dauphin County. Indeed, POM's own Exhibit recites its legal right to seek relief in the court of common pleas under Section 5806. See Emergency Petition at Exhibit J.

Because POM has a remedy at law, indeed a remedy that requires it to seek relief in common pleas court and not the Commonwealth Court – it cannot prevail on its request for injunctive relief.

### D.    Neither the Public Interest Nor the Equities Support POM's Application

This Court should also deny POM's Application as it is inconsistent with the public interest, and granting preliminary injunctive relief would cause greater harm than denying it. Where conduct has been rendered unlawful, the public interest has been defined by the General Assembly. *Israel*, 52 A.2d at 321. There can be no dispute that Section 5513 of the Crimes Code makes it illegal to make, sell, own, have, etc., "any slot machine" outside of a licensed casino. 18 Pa.C.S. § 5513(a)(1), (e.1)(4). This Court already concluded that POM's machines are slot machines. *POM of PA.* As such, the public interest cannot be said to favor the perpetuation of illegal slot machines all across the Commonwealth.

{L0847857.3}

24

Beyond the harm to the public perpetuated by the violations of the Crimes Code, the Commonwealth and its residents will also suffer additional, significant harm if POM's slot machines are permitted to operate unabated by law enforcement. Such illegal slot machines place at risk the Commonwealth's major revenue share of gaming revenue from licensed casinos and undermines the Legislature's important priorities that such funds support, including, but not limited to, property tax relief, rent rebates for senior citizens, economic development and tourism initiatives, support for agriculture, and support for host counties and communities.

Illegal slot machine operations also inflict substantial harm to the Pennsylvania Lottery and the many vital programs it funds for senior citizens. Finally, POM's illegal slot machines put children, problem gamblers and consumers at risk inasmuch as they are operated with none of the underage and responsible gaming programs and regulatory testing that is required of the licensed gaming industry.

**E.    Granting a preliminary injunction will not restore the status quo for POM.**

POM's Emergency Application seeks the return of its equipment and currency and an injunction against the PSP, prohibiting it from seizing additional Skill Games and associated equipment. *Id* at p. 32, ¶ 1. These actions, according to POM, will restore the status quo in this matter. However, when viewing this

{L0847857.3}

25

position vis-à-vis POM's averments regarding reputational harm, loss of good will, and loss of business opportunity, the latter allegations are exposed as disingenuous.

The status quo to be considered in the context of a preliminary injunction is the last *lawful* status of the parties. *See, e.g., The Woods at Wayne Homeowners Ass'n v. Gambone Bros. Const. Co., Inc.*, 893 A.2d 196, 204 n.10 (Pa.Cmwlth. 2006). POM's conduct prior to the seizure of its slot machines was not legal and, accordingly, a preliminary injunction will not and cannot restore the status quo.

## IV.   CONCLUSION

For the reasons set forth above, amici respectfully request that this Court

adopt the position of the Pennsylvania State Police, Bureau of Liquor Control

Enforcement, and deny Petitioner's Application for Preliminary Injunction.

Respectfully submitted,

/s/ *Kevin J. McKeon*

_____

| | |
|---|---|
| Adrian R. King, Jr., I.D. # 69315 | Kevin J. McKeon, I.D. # 30428 |
| Ballard Spahr LLP | Hawke McKeon & Sniscak LLP |
| 1735 Market Street | 100 North Tenth Street, P.O. Box 1778 |
| 51st Floor | Harrisburg, PA  17105 |
| Philadelphia, PA 19103 | Phone: (717) 236-1300 |
| Phone: (215) 864-8622 | Fax:  (717) 236-4841 |
| Fax: (215) 864-8999 | kjmckeon@hmslegal.com |
| kinga@ballardspahr.com | |

Date:  December 18, 2019          *Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT

Pursuant to Pa. R.A.P. 531(b)(3), I hereby certify that this Brief of Amici

Curiae does not exceed 7,000 words based on the word count feature on the

Microsoft Word processing system used to prepare the brief.

/s/ Kevin J. McKeon
Kevin J. McKeon, Esquire

Date: December 18, 2019

{L0847857.3}

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

/s/ Kevin J. McKeon
Kevin J. McKeon, Esquire

Date: December 18, 2019

{L0847857.3}

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving a copy of the foregoing Brief of

Amici Curiae upon the persons and in the manner indicated below, which service

satisfies the requirements Pa.R.A.P. 121.

### Via the Court's PACFile System:

Matthew H. Haverstick, Esquire
Shohin H. Vance, Esquire
Kleinbard LLC
1717 Arch Street, 5ht Fl.
Philadelphia, PA  19103

Paul G. Gagne, Esquire
Eric J. Schreiner, Esquire
Kleinbard LLC
1650 Market St., 46 Fl.
Philadelphia, PA  19103

Karen M. Romano, Esquire
PA Office of Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA  17120

/s/ Kevin J. McKeon
Kevin J. McKeon, Esquire

Date:  December 18, 2019

{L0847857.3}

Received 12/18/2019 3:47:22 PM Commonwealth Court of Pennsylvania

Filed 12/18/2019 3:47:00 PM Commonwealth Court of Pennsylvania
503 MD 2018

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

POM of Pennsylvania, LLC,                      :      503 MD 2018
Petitioner                                     :
            v.                                 :
Pennsylvania State Police, Bureau of
Liquor Control Enforcement,
Respondent

## PROOF OF SERVICE - DRAFT

I hereby certify that this  day of , , I have served the attached document(s) to the persons on the date(s) and in the

manner(s) stated below, which service satisfies the requirements of Pa.R.A.P. 121:

**Service**

| | |
|---|---|
| Served: | Eric Joseph Schreiner |
| Service Method: | eService |
| Email: | eschreiner@kleinbard.com |
| Service Date: | |
| Address: | Three Logan Square |
| | 1717 Arch Street, 5th Floor |
| | Philadelphia, PA 19103 |
| Phone: | 251--49-6-7217 |
| Representing: | Petitioner   POM of Pennsylvania, LLC |
| | |
| Served: | Karen Mascio Romano |
| Service Method: | eService |
| Email: | kromano@attorneygeneral.gov |
| Service Date: | |
| Address: | PA Office of Attorney General |
| | Strawberry Square, 15th Floor |
| | Harrisburg, PA 17120 |
| Phone: | 717- 78-7-2717 |
| Representing: | Respondent   Pennsylvania State Police, Bureau of Liquor Control Enforcement |

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## PROOF OF SERVICE - DRAFT

*(Continued)*

Served:
Service Method: eService
Email: mhaverstick@kleinbard.com
Service Date:
Address: Matthew Hermann Haverstick

Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: 215--56-8-2000
Representing: Petitioner   POM of Pennsylvania, LLC

Served: Paul Gerard Gagne
Service Method: eService
Email: pgagne@kleinbard.com
Service Date:
Address: Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Phone: 215--56-8-2000
Representing: Petitioner   POM of Pennsylvania, LLC

Served: Shohin Hadizadeh Vance
Service Method: eService
Email: svance@kleinbard.com
Service Date:
Address: Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: 267-443-4124
Representing: Petitioner   POM of Pennsylvania, LLC

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

_/s/  Kevin James McKeon_

_(Signature of Person Serving)_

Person Serving:                    McKeon, Kevin James
Attorney Registration No:          030428
Law Firm:
Address:                           Hawke Mckeon & Sniscak Llp
                                   100 N 10TH St
                                   Harrisburg, PA 17101
Representing:                      Amicus Curiae   Greenwood Gaming and Entertainment Inc et al.