IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,              :
                                 :
            Plaintiff,           :      NO. 20-CV-292
                                 :
    v.                           :      JUDGE WILSON
                                 :
ECKERT, SEAMANS, CHERIN & :      MAGSITRATE JUDGE SAPORITO
MELLOTT, LLC,                    :
                                 :      ELECTRONICALLY FILED
            Defendant.           :

**PLAINTIFF'S REPLY MEMORANDUM RELATING
TO APPLICATION OF JUDICIAL ESTOPPEL**

**INTRODUCTION**

Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert") got caught.  It

first denied representing Greenwood Gaming & Entertainment, Inc. d/b/a Parx

Casino ("Parx") in the Commonwealth Court litigation but later claimed privilege

over its communications concerning that litigation.  Now that Eckert's duplicity

has been exposed, Eckert, Hawke McKeon & Sniscak, LLP ("HMS") and Parx

argue that the irreconcilable assertions should be excused because there is no real

inconsistency, no court has granted relief based on either position and Eckert has

voluntarily withdrawn from representing Parx in the Commonwealth Court.  Their

arguments defy reality and well-settled Third Circuit law and serve to further

underscore the "fast and loose" litigation tactics that led to the estoppel finding in

the first place.  As detailed below, Eckert is properly judicially estopped from claiming privilege over communications concerning litigation in which it denied involvement.  The February 16, 2021 Memorandum and Order should be reaffirmed and Eckert and HMS should again be directed to produce the 182 communications between them relating to the Commonwealth Court litigation.

## ARGUMENT

The briefs submitted by Eckert, HMS and Parx offer nothing new and nothing to suggest that application of judicial estoppel was an abuse of discretion.

As their principal argument, Eckert, HMS and Parx maintain that judicial estoppel cannot apply because no court has yet accepted the denials of Eckert's involvement in the Commonwealth Court litigation.  ECF 128, p. 13; ECF 129, pp. 9-10; ECF 130, p. 13.  This argument misapprehends controlling law.  The Third Circuit has repeatedly made clear that there is no "independent requirement" that the party to be estopped must have benefitted from his or her prior position.  *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) ("[T]he application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court.").  Nor is it a requirement that the estopped party's initial position was accepted by a court.  *G-I Holdings, Inc. v. Reliance Ins.*

2

*Co.*, 586 F.3d 247, 262 (3d Cir. 2009) ("We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply."). Eckert's, HMS's and Parx's assertions to the contrary are plainly wrong.

As the Third Circuit recognized, judicial estoppel is properly applied "to neutralize threats to judicial integrity however they may arise." *Id.* Here, there is no doubt that Eckert's and HMS's conduct and misrepresentations offend the integrity of this proceeding and the related proceeding in Commonwealth Court. Eckert's denial of involvement in the Commonwealth Court litigation necessitated substantial discovery and expenditure of judicial effort, including the extensive *in camera* review of the withheld documents, and delayed disposition of POM's motion for preliminary injunctive relief. Further, identification of the authors of the *amicus* brief was a condition to Parx's participation as *amicus* in the Commonwealth Court. *See* Pa. R. App. P. 531(b)(2). The on-the-record, affirmative false denials of Eckert's involvement can only be understood as intentional efforts to conceal Eckert's continuing breach of loyalty,[1] dissuade this

---

[1]   It bears emphasis that Eckert misrepresented its role in the Commonwealth Court litigation to this Court *in real time*. Eckert denied involvement in its Answer and Affirmative Defenses filed on March 10, 2020, ECF 9, ¶ 9 & Seventeenth Defense, in the Joint Case Management Plan filed on April 2, 2020, ECF 18, § 1.1, and in its opposition to POM's motion for preliminary injunction filed on April 21, 2020, ECF 21, p. 2, but nonetheless asserts privilege over communications it had with HMS through at least May 2020, ECF 87, pp. 40-41. This is bad faith.

Court from awarding preliminary injunctive relief and enable Eckert's ongoing, behind-the-scenes representation of Parx in the Commonwealth Court.  Eckert, HMS and Parx played fast and loose and as a result are properly estopped from reversing position now.

Eckert, HMS and Parx misstate the record in proposing that there was no inconsistency because Eckert never entered an appearance as counsel of record. ECF 128, pp. 11-12; ECF 129, p. 7; ECF 130, p. 13.  The many denials of Eckert's involvement were not qualified in this way.  Rather, Eckert represented to this Court that it "does not represent a party adverse to POM in litigation," ECF 9, ¶ 18, that it "is not representing parties in litigation adverse to POM," ECF 21, p. 2, and that it "is not involved in that [*i.e.* the Commonwealth Court] case," ECF 18, § 1.1. HMS similarly misrepresented to this Court that it "step[ped] in as conflict counsel" "upon referral from Eckert due to Eckert's alleged conflict" and that Eckert's involvement was "preparatory to . . . handling off the Parx representation to HMS."  ECF 53, pp. 2, 4, 9.  They did not qualify Eckert's relationship as off-the-record involvement and certainly did not disclose to the Court that Eckert continued to represent Parx "behind the scenes as part of Parx's legal team" as Parx now claims.  ECF 130, p. 13.  Concealing Eckert's involvement by participating off-the-record is the problem and certainly does not excuse or justify misleading the Court.

4

Eckert dares to argue that its repeated denials of involvement in litigation adverse to POM are "largely irrelevant" now given its after-the-fact offer to no longer consult with HMS or Parx's adversaries in relation to the Commonwealth Court litigation. ECF 129, pp. 7-8. This is rich: Eckert now implores the Court to excuse its misrepresentations because it has belatedly come to the realization that its advocacy against POM was not allowed. This is not how judicial estoppel works. Even if Eckert were to admit that it misrepresented its role—and it does not, rather it continues to baselessly deny any inconsistency, ECF 129, pp. 7-8—a party cannot avoid the consequences that flow from advancing irreconcilably inconsistent positions by coming clean after it gets caught. The Third Circuit has rejected "eleventh hour candor" as a defense to judicial estoppel. *Krystal-Cadillac-Oldsmobile*, 337 F.3d at 321 (affirming application of judicial estoppel even though litigant moved to amend disclosure because "creating an escape hatch" for litigants to "duck into . . . once their lack of candor is discovered" would only encourage incomplete disclosures).

But Eckert still has not come clean. Eckert has made no effort to correct the representations in its Answer or in its opposition to POM's motion for preliminary injunction. Instead, Eckert doubled down and suggests that its denial of involvement in the Commonwealth Court litigation is an "affirmative defense" which it "will seek to prove in connection with its defense at trial." ECF 129, p. 7.

It is noteworthy that Eckert continues to advance this position while maintaining that the communications that expose the depravity of this "affirmative defense" are privileged.  And that is exactly why a finding of bad faith is appropriate and application of judicial estoppel is warranted.  Denying involvement in the Commonwealth Court litigation is not a legal defense but rather a misrepresentation of then-existing fact.  Holding Eckert to its initial position that it "does not represent a party adverse to POM in litigation" and preventing invocation of privilege contrary to this initial position will appropriately remedy the offense to judicial integrity that inheres in intentional assertion of factually inconsistent positions.  Nothing other than judicial estoppel will ensure the integrity of these judicial proceedings.[2]

Eckert posits that there was no bad faith because its representation of Parx and its involvement in the Commonwealth Court litigation were known to POM prior to this litigation.  ECF 129, pp. 11-12.  This argument also fails.  While Eckert's conflicting representation of Parx was known—that is what prompted POM to demand that Eckert withdraw from representing Parx—POM did not know and had no way of knowing that Eckert was the marionettist drafting documents

---

[2]  Relatedly, Eckert continues to baselessly posit that its representation of POM was "subject to an advance conflict waiver," ECF 129, pp. 2; *id.*, p. 4, when it knows full well that "it did not have such an informed conflict waiver," ECF 92, p. 3.

for HMS to file and otherwise directing the Commonwealth Court litigation behind the scenes or that Eckert was secretly collaborating with counsel for POM's adversaries in the litigation.  Indeed, Eckert falsely denied any involvement. Eckert responded to the January 16, 2020 letter from POM's counsel (referenced in Eckert's brief at p. 11) by claiming that it "is not counsel for a party in a litigation where POM is an adverse party."  *See* Jan. 17, 2020 Letter from Eckert's Chief Legal Officer Timothy S. Coon, Esquire (attached as Exhibit A) at 2.  Eckert later upped the ante by denying to this Court in its Answer, in its brief in opposition to POM's motion for preliminary injunction and in the Joint Case Management Plan that it represented Parx or any other party in the Commonwealth Court litigation. HMS now concedes that Eckert had "*substantial* involvement" in the litigation, ECF No. 128, p. 12 (emphasis in original), and the record confirms that this involvement continued through at least May 2020 contrary to Eckert's contemporaneous denials to this Court, *see* ECF 87, pp. 40-41 (withheld communications continued through May 15, 2020).  This change in position can only have been in bad faith.

HMS proposes that application of judicial estoppel is unwarranted because any inconsistent positions were only "arguably" adopted in bad faith.  ECF 128, p. 14.  This is no safe harbor and no basis for reversal.  This Court properly applied the criteria identified by the Third Circuit as guiding application of judicial

estoppel—the same authority cited by HMS, *compare* ECF 87, pp. 35-36 *with* ECF 128, p. 9—and detailed the basis for its conclusion that Eckert advanced irreconcilably inconsistent positions in an effort to shield its communications with HMS from disclosure to POM in this litigation, ECF 87, pp. 36-38.  Eckert, HMS and Parx had knowledge of Eckert's involvement in the Commonwealth Court litigation and a motive to conceal that involvement, thereby giving rise to a rebuttable presumption of bad faith.  *Krystal Cadillac-Oldsmobile*, 337 F.3d at 321 ("a rebuttable inference of bad faith arises when averments . . . demonstrate both knowledge . . . and a motive to conceal . . .").  They offer nothing to rebut this presumption and therefore are properly estopped from changing position.[3]  This Court, after painstakingly reviewing the subject communications that expose Eckert's knowing wrongdoing, should enter a clear and unambiguous ruling on bad faith.  Otherwise, Eckert will yet again claim that its conduct is defensible.  And the District Court should know that this Court is certain that the months-long

---

[3]   HMS self-servingly argues that it "has been forthright and acted in good faith" in moving to quash the subpoena and in opposing disqualification.  ECF 128, p. 14.  HMS cannot credibly claim that it was "forthright" or acting in "good faith" when it represented to this Court that it "step[ped] in as conflict counsel" "upon referral from Eckert" and that Eckert's involvement was "preparatory to . . . handing off the Parx representation . . . ."  ECF 53, pp. 2, 4, 9.  These claims were part of the mosaic of deliberate misrepresentations intended to fool POM and this Court.  Only after the Court painstakingly conducted its *in camera* review did HMS admit that Eckert had "*substantial* involvement" in the Commonwealth Court litigation.  ECF 128, p. 12 (emphasis in original).  And that late-stage admission is irreconcilable with HMS's earlier misrepresentations.

conduct was classic bad faith and also know that this Court will not hesitate to apply judicial estoppel to neutralize threats to judicial integrity.

Finally, Parx argues that judicial estoppel should not overcome the privilege that arises under state law.  ECF 130, p. 10.  This too misconstrues controlling law. The Third Circuit has made clear that federal, not state law, governs application of judicial estoppel.  *G-I Holdings, Inc.*, 586 F.3d at 261 ("[A] federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose.") (quoting *Ryan Operations*, 81 F.3d at 358 n.2).  Judicial estoppel is a federal equitable doctrine intended to prevent "improper use of judicial machinery."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  There is no recognized exception to the doctrine when a litigant's misuse of "judicial machinery" involves assertion of privilege.  To the contrary, judicial estoppel has been applied in such a circumstance.  *See*, *e.g.*, *In re Berks Behav. Health, LLC*, 500 B.R. 711, 720-21 (E.D. Pa. Oct. 21, 2013) (applying judicial estoppel to prevent party from arguing that son was agent of corporation for purposes of maintaining privilege when party previously denied that son had any involvement in company).  Moreover, the communications at issue are between Eckert and HMS and do not involve Parx and, as this Court properly concluded, are not protected by the work product doctrine because the activities of Eckert are directly at issue.  ECF 87, pp. 38-40.

9

Simply stated, there is no basis to reverse the Court's previous ruling. There is only a basis to affirm the previous finding of bad faith, now in stark and unambiguous terms.  The misuse of the judicial machinery must end.

### CONCLUSION

Eckert and HMS should again be compelled to produce the 182 communications referenced in this Court's February 16, 2021 Memorandum and Order.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  June 9, 2021

## **CERTIFICATE OF SERVICE**

I, Donna A. Walsh, hereby certify that a true and correct copy of the

foregoing Reply Memorandum was served upon the following counsel of record

via the Court's ECF filing system on this 9th day of June 2021:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

Dennis A. Whitaker, Esquire
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA  17101

George A. Bibikos, Esquire
5901 Jonestown Road, #6330
Harrisburg, PA  17112

/s/ Donna A. Walsh
Donna A. Walsh