## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff | : | No. 1:20-cv-00292 |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | (Magistrate Judge Joseph F. Saporito, |
| ECKERT SEAMANS CHERIN & | : | Jr.) |
| MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Electronically Filed Document |

## HAWKE MCKEON & SNISCAK, LLP's
## REPLY BRIEF ON REMAND

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon &*
*Sniscak, LLP*

Dated: June 9, 2021

**INTRODUCTION AND SUMMARY**

Hawke McKeon & Sniscak LLP (HMS) hereby replies to POM's Memorandum of Law Relating to Application of Judicial Estoppel (Doc. 133) in accord with this court's May 4, 2021 scheduling Order (Doc. 122). The judicial estoppel issue is before this court following Judge Wilson's remand (Docs. 113, 114).

As set forth in detail in HMS's opening brief (Doc. 128), the conclusion in this court's February 16 Memorandum (Doc. 87) that HMS must disclose the privileged information of its client Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx) based on the doctrine of judicial estoppel is unsupported by the plain facts and contrary to law. POM's Memorandum does not persuade otherwise. Stripped of its veneer of conclusory statements masquerading as "facts" and its gratuitous vitriol, POM's filing contributes nothing to support the conclusion that any of the elements of judicial estoppel are present here.

First and foremost, HMS has not taken inconsistent positions. HMS, in defending against POM's as-yet unresolved attempt to disqualify HMS from representing Parx (and other casinos) in POM's Commonwealth Court actions (Docket Nos. 418 MD 2018 and 502 MD 2018) (Commonwealth Court litigation), was candid with that court in representing that Eckert, Seamans, Cherin & Mellott, LLC (Eckert) was part of the group of lawyers representing Pennsylvania casinos

(Casino lawyer group) seeking to intervene in the Commonwealth Court litigation. There thus is no inconsistency, let alone an "irreconcilable conflict," between HMS's representations to Commonwealth Court concerning Eckert's involvement in the Casino lawyer group, on one hand, and HMS's claim in this court, on the other, that communications among Parx and its lawyers, including Eckert, are privileged. Eckert was part of the Casino lawyer group advising Parx and the other casinos, and privilege attaches to the work product developed by the lawyer group and to the communications between and among HMS, Eckert, and Parx.

Nor has HMS engaged in bad faith, the second element, and for the same reasons – HMS was candid with Commonwealth Court and with this court concerning Eckert's involvement. POM's arguments to the contrary fail to respond to HMS's points and rely on arguments this court did not adopt. This court itself in its February 16 Memorandum did not make the required finding of bad faith, and nothing POM now offers advances that case. Indeed, the record reveals only good faith on the part of HMS in its representations to Commonwealth Court and to this court.

Finally, since Eckert has conceded POM's claim that Eckert was involved in the Casino lawyer group seeking to intervene in the Commonwealth Court litigation and take positions adverse to POM, there is no reason – even if the other elements of judicial estoppel were present here (and they plainly are not) – to sanction HMS

or Eckert through the drastic step of disclosing Parx's privileged information to POM. Such a remedy would provide information to POM that it does not need and does not deserve, and would punish only Parx.

## ARGUMENT: JUDICIAL ESTOPPEL IS INAPPLICABLE

### HMS did not take inconsistent positions.

POM's filings: 1) fail to acknowledge the errors in this court's justification for concluding that HMS took inconsistent positions; and 2), attempt to neutralize HMS' rebuttal by offering yet another misleading argument. The court's basis for concluding in the February 16 Memorandum that HMS took inconsistent positions is that HMS, in opposing POM's still-pending attempt to disqualify HMS from representing the casino group including Parx in the Commonwealth Court litigation, misled that court to believe that Eckert did not "provide legal advice and services to Parx" in those cases and "implicitly represented that Eckert played no substantial role in Parx's activities in those cases," on one hand, while on the other hand invoking privilege in this proceeding to shield its attorney-client communications and work product. February 16 Memorandum at 37, *citing* Doc. 82 at 162-168. As HMS has pointed out, however (Doc. 128 at 11-13), Doc. 82 proves precisely the opposite. Indeed, Doc. 82 at 173-179, which is Mr. McKeon's sworn declaration in opposition to POM's disqualification attempt, explains that Eckert *did* play a substantial role in the Casino group's attempt to intervene in the Commonwealth

Court litigation:

> Although Eckert did not sign the amicus brief, Mr. Stewart and Eckert continued to believe that Eckert had a valid conflict waiver from POM, and Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and continued to be involved in the casino lawyer group, including creating first drafts of filings or editing the first drafts of documents created by other casino group lawyers for use in this case.

*Id*. at 176 ¶ 10.

Perhaps realizing that this basis for its preferred narrative has been rebutted, POM now inappositely seizes on Pa. R.A.P. 531(b)(2) ("The statement of interest [of the amicus] shall disclose the identity of any person or entity other than the *amicus curiae*, its members, or counsel who… (ii) authored in whole or in part the *amicus curiae* brief") for the proposition that the casino group should have, but failed, to disclose that Eckert had a role in authoring the brief the casino group, through HMS and Ballard Spahr, filed in the Commonwealth Court litigation. (Doc. 131 at 9). Depending as it does on the baseless assumption that Parx, a member of the amicus casino group, and Eckert, Parx's long-time counsel who advised Parx in the amicus casino group, are somehow entities or persons "other than the *amicus curiae*, its members, or counsel," POM's argument merits no weight. Suffice it to say, the *amicus* brief that POM touts as evidence of Parx's (and by implication HMS's) misdeeds actually confirms precisely what HMS (and Eckert, and Parx)

have expressed consistently: that Eckert, Parx's counsel of long standing, was initially involved in all of the communications between and among the lawyers and clients in the casino lawyer group that was adverse to POM in the Commonwealth Court litigation, and among other things prepared first drafts of documents for casino lawyer group review because Eckert believed at the time that it had a conflict waiver that permitted a role adverse to POM. Neither HMS, Eckert nor Parx has at anytime said anything different to this court or to Commonwealth Court.

Nor does POM address the fact that the Commonwealth Court has not ruled on POM's disqualification motion, so that even if the February 16 Memorandum were correct that HMS took inconsistent positions, HMS has not prevailed on the disqualification motion, which remains pending. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings,Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (*G-I Holdings*). While it is true that the *G-I Holdings* court allowed that "[w]e do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply," *id.* a court's acceptance of the initial position plainly is the general rule requirement for a finding of judicial estoppel. That has not occurred here, and POM offers no basis for an exception. Unlike the situation cited in *G-I Holdings* involving judicial estoppel in *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir.2003), there is no

6

evidence here of detrimental reliance on HMS's alleged "implicit representation" that Eckert played no substantial role in Parx's activities in the Commonwealth Court litigation. Indeed, as discussed below, both POM and this court were well aware that Eckert did in fact have a substantial role.

POM's "proof" consists of snippets of HMS's comments during oral argument before this court that POM distorts into an argument that HMS "misrepresented to the Court" that Eckert had no role. (Doc. 107 at 10). The February 16 Memorandum does not rely on these, however, and with good reason. POM's references are to HMS statements that HMS stepped in "as conflict counsel" and that Eckert handed off the Parx representation to HMS, but these prove nothing. Viewed in context, these statements convey only that HMS became Parx's counsel of record in the Commonwealth Court litigation and Eckert did not. Moreover, as counsel for HMS before this court did state, and this court acknowledged, Tr. at 56:15-18 (Doc. 81), HMS's Mr. McKeon knew the details of Eckert's involvement in the Commonwealth Court litigation and the undersigned did not. As it stands, therefore, the only sworn testimony on the issue is Mr. McKeon's declaration filed in opposition to POM's attempt to disqualify HMS in the Commonwealth Court litigation, and that declaration represents unequivocally that Eckert was substantially involved in that litigation as part of the Casino group legal team.

As the record here reveals, moreover, POM has known all along that Eckert

7

was taking positions adverse to POM in Pennsylvania, and that Eckert was involved with the Casino group legal team that was adverse to POM. POM cited examples in its complaint. (Doc. 9 at ¶¶ 15-18). The oral argument transcript before this court is replete with acknowledgements on the part of Eckert that Eckert was working with the Casino lawyer group on the Commonwealth Court litigation. (Doc. 81 at 32-33, 36-39, 42-43).

In short, there is no credible basis for a conclusion that HMS "misrepresented to the Court" that Eckert had no role in the Commonwealth Court litigation. The February 16 Memorandum's basis – HMS's response to POM's disqualification motion in the Commonwealth Court – demonstrates only that HMS was candid about Eckert's involvement.  POM's alternative basis – a technical parsing of the term "conflict counsel" and "hand off" – ignores the reality that those statements were made in the context of, and minutes after, counsel for Eckert had already explained to the court that Eckert had participated in the Casino lawyer group adverse to POM and helped develop pleadings and strategy in the Commonwealth Court litigation.

HMS did not take inconsistent positions here. The February 16 Memorandum's conclusion that HMS did so has no basis in the record or in the law of judicial estoppel, and POM's arguments to the contrary fail.

8

**HMS did not act in bad faith**

POM argues that HMS engaged in "deliberate deception" in denying Eckert's involvement in the Commonwealth Court litigation, and that such deception fully supports this court's "specific finding" that HMS took "inconsistent positions [that] were arguably adopted in bad faith." (Doc. 131 at 9-10). As demonstrated above, there is no basis to conclude HMS adopted inconsistent positions. The evidence compels the opposite conclusion. Nor did this court make a finding of bad faith, an element required under the judicial estoppel standard. *G-I Holdings* at 262. Contrary to POM's claims, the February 16 Memorandum's assertion of "arguable" bad faith does not meet the standard and is hardly a "specific finding." "Arguable" is defined as "not certain or clearly true**:** open to argument, dispute, or question."[1] Its synonyms include: "controvertible, debatable, disputable, doubtable, doubtful, issuable, moot, negotiable, and questionable."[2]

Even if "arguable" bad faith were the standard for triggering judicial estoppel, the record is clear that HMS acted in good faith here.

**POM will not be harmed if the privilege is sustained**

Ignoring the facts that Eckert has conceded that Eckert was involved in the

---

[1] https://www.merriam-webster.com/dictionary/arguable.

[2] https://www.merriam-webster.com/dictionary/arguable#synonyms.

Casino lawyer group that is taking positions adverse to POM in the Commonwealth Court litigation and in other fora, and that POM itself was aware of that role before it filed its complaint in this case, POM maintains that the only way to punish Eckert for its "secret involvement" is to punish Parx by allowing POM access to its attorney-client privileged information and the work product its lawyers prepared. (Doc. 107 at 15). Granting such a remedy is only appropriate, however, if "no lesser sanction [is] sufficient.' *G-I Holdings* at 262. POM does not need Parx's privileged material, because Eckert already has conceded that it took positions adverse to POM.

Only Parx would be punished by the disclosure of Parx's privileged information. Disclosure is not needed for POM to meet its burden in this case, and disclosure will give POM an undeserved advantage in the Commonwealth Court litigation. Accordingly, even if the other elements of judicial estoppel were present here – and neither are – a sanction that discloses Parx's privileged information when POM does not need it fails the "no lesser sanction [is] sufficient" judicial estoppel criterion.

**CONCLUSION**

HMS respectfully requests that the court reverse Section III.I of the February 16 Memorandum and direct that HMS is not required to produce the associated documents that Paragraph 4 of the February 16 Order directs HMS to produce.

10

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon &*
*Sniscak LLP*

Dated: June 9, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 9, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

*/s/ Dennis A. Whitaker*