# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                              :
                                                 :
            Plaintiff,                           :      NO. 20-CV-292
                                                 :
      v.                                         :      ~~NO.~~
_____              :
~~ECKERT SEAMANS CHERIN &~~                      :
~~MELLOTT, LLC,~~                                :
      ~~ELECTRONCIALLY~~ELECTRONICALLY FILED
                                                 :
            ~~Defendant.~~                       :

ECKERT SEAMANS CHERIN &    :      JUDGE WILSON
MELLOTT, LLC, MARK S.      :
STEWART and KEVIN M.       :      JURY TRIAL DEMANDED
SKJOLDAL,                  :
                           :
            Defendants.    :

## **AMENDED COMPLAINT**

Plaintiff Pace-O-Matic, Inc. ("POM"), by and through its undersigned counsel, ~~alleges~~states the following as its Amended Complaint against ~~Defendant~~Defendants Eckert Seamans Cherin & Mellott, LLC ("Eckert~~")~~")"), Mark S. Stewart and Kevin M. Skjoldal in the above-captioned matter:

## **NATURE OF THE ACTION**

For years, POM relied on Eckert for legal advice concerning the marketing and sale of its electronic skill games and, in ~~seeking~~the course of that ~~advice~~years-

long representation, entrusted Eckert with highly proprietary and confidential information concerning the design, development and operation of its skill games. and its legal, business and marketing strategies.  Eckert's representation of POM has beenwas extensive and multi-dimensional and includesincluded the defense of POM's electronic skill games in litigation as well as development and representationimplementation of POM in government relations strategies to educate public officials aboutand otherwise advocate the legality of POM's skill games.  Eckert

While representing POM, however, recentlyEckert took up arms *against POM* on behalf of another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino") *against* POM over the continued legality of skill games.  While advocating").  While Eckert advocated on behalf of POM that its devices are games of skill and not illegal gambling devices, Eckert concurrently advocates*at the same time* argued on behalf of Parx Casino that the *same POM games* should be outlawed as illegal gambling devices.  Eckert's client's interests could not be more directly and materially adverse.This is a plain breach of fiduciary duty.  When POM confronted Eckert withover its impermissible conflict, Eckert further breached the duty of undivided loyalty owed to POM by dropping POM like the proverbial "hot potato" in favor of its more lucrative client relationship with Parx Casino.  POM brings this action for a judicial declaration

2

~~hEdebedahdonhethadidtluydydPOMrdaedmuhejieEmepeanguPaGairimatadestPOMdfolpwdPaGain~~

It gets worse. After this action was filed, POM discovered that, contrary to Eckert's express representations to POM and to this Court that Eckert "is not involved" in litigation adverse to POM, see Joint Case Management Plan (ECF 18) at 3, Defendant Mark S. Stewart, the co-chair of Eckert's gaming practice group, and another member of the Eckert firm, Defendant Kevin M. Skjoldal, actively participated in and covertly manipulated litigation in Pennsylvania Commonwealth Court adverse to POM's interests, both directly and surreptitiously through another law firm, Hawke McKeon & Sniscak LLP ("Hawke McKeon"). And even worse, Mr. Stewart and Mr. Skjoldal participated in a campaign intended to destroy POM's business by attempting to convince elected and appointed public officials that POM's games are gambling devices that should be seized and outlawed.

Defendants violated the most basic fiduciary duties owed to POM and as a result POM is entitled to injunctive and other relief as detailed herein.

## PARTIES

1. POM is a corporation organized and existing under the laws of the State of Wyoming with a principal place of business at 3450 Corporate Way, Duluth, Georgia. POM developed, produced and licensed legally compliant electronic games of skill which are sold in Pennsylvania, Virginia and elsewhere

3

and retained Eckert to provide legal services for itself and its affiliates. concerning its skill game products. The skill games of skill that POM sells in Virginia and Pennsylvania utilize identical software and algorithms and there is no difference in how the machines operate or function.

2.      Eckert is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business at 213 Market Street, 8th Floor, Harrisburg, Pennsylvania. Eckert is a law firm that touts its ability to "develop[] strategies . . . to establish an environment in which [its gaming] clients can achieve maximum success." On information and belief, Eckert does not maintain a place of business in Wyoming or Georgia and none of its members are citizens of Wyoming or Georgia.

3.      Mr. Stewart is a member of the Eckert firm with an office address in Harrisburg, Pennsylvania and is believed to be a resident and citizen of the Commonwealth of Pennsylvania. Mr. Stewart is the Co-Chair of the Hospitality & Gaming practice group at Eckert and a member of the firm's Board of Directors.

4.      Mr. Skjoldal is a member of the Eckert firm with an office address in Harrisburg, Pennsylvania and is believed to be a resident and citizen of the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

4

5.    This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) in that this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.  The object of the litigation is enforcement of POM's right to conflict-free legal representation, and enforcement of the fiduciary duties owed to POM.  The deprivation of that right threatensand ongoing breaches of fiduciary duties threaten the very future of POM's business in Pennsylvania and elsewhere.  POM's sales of skill games in Pennsylvania exceed $75,000 and the fees paid to Eckert which are subject to disgorgement far exceed $75,000 and therefore the amount in controversy requirement in 28 U.S.C. § 1332(a) is met.

6.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Eckert has a place of business in this district and Messrs. Stewart and Skjoldal reside in this district and a substantial part of the events or omissions giving rise to the claimclaims herein occurred in this district.

## BACKGROUND

7.    Pursuant to a written engagement letter dated September 13, 2011, Eckert agreed to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth

5

of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania."

6.8.    Eckert provided legal services pursuant to the engagement in 2011 and, on information and belief, retains the unearned balance of the retainer remitted by POM in accordance with the September 13, 2011 engagement letter. continuously thereafter identified POM as an active client of the firm.

7.9.    On December 20, 2016, Eckert and POM executed a second engagement letter pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software."

8.10.    Eckert's representation of POM and its affiliates pursuant to the December 20, 2016 engagement letter relates to substantially the same electronics and software referenced in the September 13, 2011 engagement letter.[1]

11.    At the time of the 2016 engagement, Eckert knew and planned that it would advocate on behalf of its other client, Parx Casino, against POM's interests,

---

[1] The nature of Eckert's years-long representation of POM and its affiliates is described in only general terms to protect and preserve the attorney-client and attorney work product privileges.  POM does not in any way waive, but on the contrary expressly reserves and asserts, the attorney-client and work product privileges with respect to all communications with and legal services provided by Eckert.

6

specifically through "adverse legislative action and potential litigation." Mr. Stewart confirmed in an email message on February 6, 2017 that "our clients"—*i.e.* Parx Casino—"do not agree [POM's products] are games of skill and will likely be actively opposing them [*i.e.* POM] on legal and legislative fronts."

12. Despite the acknowledgement of an obvious conflict, Eckert, with the knowledge, approval and involvement of Eckert's Chief Legal Officer, Timothy S. Coon, undertook to represent POM in advocating for and defending the legality of POM skill games.

13. Eckert did not disclose to POM that Eckert was planning "adverse legislative action and potential litigation against" POM on behalf of Parx Casino, another Eckert client.

9.14. Eckert regularly billed POM for its legal services and POM remitted very substantial fees for those legal services.

10.15. Relying on the duties of undivided loyalty and confidentiality owed to POM as a client of Eckert and in furtherance of the requested legal services, POM provided Eckert with highly sensitive, proprietary, confidential and non-public information concerning its skill games and business operations as well as confidential and privileged communications concerning the development and execution of legal strategies to preserve and defend the legality of those games.

7

11.16. Eckert regularly participated in privileged conferences with POM representatives involving and relating to POM's short and long-term business objectives, competitive business strategies, litigation matters and legal, regulatory and legislative strategies in, *inter alia*, the Commonwealth of Pennsylvania and Commonwealth of Virginia concerning POM's skill games. As legal counsel for POM, Eckert has beenwas intimately involved in POM's affairs.

12.17. Eckert's representation of POM includes, but is not limited to: representing POM and its affiliates in meetings with law enforcement and government personnel; representing POM and its affiliates in litigation matters concerning the legality of POM's skill games; negotiating and drafting agreements between POM and its affiliates and third parties; and providing advice and counsel relating to legal, legislative and litigation strategies for marketing and selling POM skill games.

13.18. As counsel for POM and its affiliates, Eckert secured legal and governmental opinions attesting that POM's products are games of skill and not gambling devices and, citing those opinions, accurately asserted on June 28, 2019 in state court in Virginia that POM's games "are not illegal gambling" because "skill is determinative of successful play." In fact, theThe expert legal opinion that Eckert submitted to the court in Virginia relied on *In re Pace-O-Matic, Inc. Equip.*,

8

M.D. 965-2013 (Ct. Common Pleas Beaver Cty. Dec. 23, 2014), which ~~held~~holds that POM's skill games are legal in Pennsylvania.

~~14.~~19. Unbeknownst to POM, while Eckert was in possession of POM's confidential information and privileged communications, Eckert ~~represented~~was representing Parx Casino and/or its affiliates in matters directly adverse to POM's interests and substantially related to matters that Eckert handled or was handling for POM. ~~Nevertheless,~~ Eckert continued to represent POM, continued to advocate for the legality of POM's skill games and continued to participate in confidential conferences regarding POM's legal and business strategies while secretly and simultaneously advising Parx Casino on matters materially adverse to the interests of POM.

~~15.~~20. Eckert's ~~conflicted representation was~~conflicting representations were exposed when Eckert openly and publicly attacked POM in the context of an action filed on behalf of Parx Casino against ~~an establishment~~establishments that ~~offers~~offer POM skill games. In one of the ~~action~~actions filed in the Court of Common Pleas of Bucks County, Pennsylvania, Eckert fired a shot directly at POM—its own client—by ~~arguing~~positing on December 2, 2019 that POM manufactures "illegal slot machine[s]" and "deceptively market[s] these games as 'legal,' when, in fact, they are not."

9

21.    Eckert was actively representing POM when it made this accusation on behalf of Parx Casino against POM.  In fact, beforeaccused POM of manufacturing "illegal slot machine[s]" and sought a declaratory judgment declaring that POM's skill games are a public nuisance.

16.22.Before Eckert openly attacked POM, an Eckert lawyer participated in privileged conference calls with POM and POM's other counsel in Pennsylvania counsel relating to, *inter alia*, POM's Pennsylvania legal matters affecting POM and its affiliates.

23.    On or about January 10, 2020, while Eckert was representing POM, Mr. Stewart, the Harrisburg-based co-chair of Eckert's gaming practice, authored letters sent on behalf of Parx Casino to hundreds of Pennsylvania municipalities advocating that skill games, including those manufactured by POM, are "illegal slot machines" that should be outlawed through a local ordinance which Eckert drafted and enclosed with the letter.  Again,letters.

24.    Also while Eckert was representing POM, EckertMr. Stewart appeared and collaborated with Parx Casino's purported *amicus* counsel at a January 15, 2020 hearing in  the Commonwealth Court in Harrisburg to opposeon POM's motion to prevent the unlawful seizure of its skill games.  Further in the matter captioned *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau*

10

*of Liquor Control Enforcement* pending in Pennsylvania Commonwealth Court at No. 503 MD 2018.[2]

25.    In addition, Eckert hosted a gaming industry meeting and legislative reception in Harrisburg on February 4, 2020, just after Eckert declared its intention to drop POM as a client, at which Eckert advocated for legislation banning skill games like POM's.

~~17.~~26. These and other activities by Eckert on behalf of Parx Casino are attempts to secure judicial and/or legislative determinations that POM's skill games—the same games that Eckert simultaneously promoted in Virginia as *legal* games of skill—should be declared illegal in Pennsylvania. Eckert, Mr. Stewart and Mr. Skjoldal engaged in these actions against POM during ~~its~~Eckert's concurrent representation of POM.

27.    Eckert's representation of Parx Casino is directly and materially adverse to the interests of POM. Eckert's argument on behalf of Parx Casino that POM's skill games should be illegal in Pennsylvania cannot be reconciled with Eckert's express and repeated reliance on *In re Pace-O-Matic, Inc. Equip.* which holds that POM's games are "predominantly . . . game[s] of skill rather than . . .

---

[2]    There is a related matter pending in the Commonwealth Court captioned *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Department of Revenue, and City of Philadelphia*, which is docketed at No. 418 MD 2018.

11

game[s] of chance" and therefore not illegal gambling devices under Pennsylvania law.

18.28.Eckert simultaneously worked for and against POM in direct violation of its fiduciary and ethical duties to POM.

19.29.Eckert's conflicted efforts on behalf of Parx Casino to destroy POM's Pennsylvania market threatensthreaten POM's continued existence.

20.30.Eckert breached its fiduciary duty to POM, violated its duty of loyalty and violated its ethical obligations by advocating on behalf of Parx Casino directly against POM while representing POM and while in possession of POM's confidential information.

21.31.Rule 1.7 of the Pennsylvania Rules of Professional Conduct provides in pertinent part that "a lawyer shall not represent a client if . . . the representation of one client will be directly adverse to another client" unless "each client affected informed consent."  Pa. R. Prof. Conduct 1.7(a)(1), (b)(4).

22.32.Rule 1.9 of the Pennsylvania Rules of Professional Conduct provides in pertinent part that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the

12

former client unless the former client gives informed consent." Pa. R. Prof. Conduct 1.9(a).

23.33. Rule 1.10(a) of the Pennsylvania Rules of Professional Conduct provides that, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, or 1.9 . . . ." Pa. R. Prof. Conduct 1.10(a).

24.34. Eckert did not communicate information to POM concerning its direct conflict of interest before undertaking the representation of Parx Casino against POMPOM or at any time during the representation and POM did not knowingly consent to waive Eckert's conflict of interest. Nor was Eckert's conflict the type that could ethically or lawfully be waived.

25.35. Eckert engaged in an impermissible conflict of interest in violation of Rules 1.7 and 1.9 by working for and against POM and, as a result, the Eckert firm and all of its attorneys were and are barred by Rule 1.10(a) from continuing the conflicting representation of Parx Casino.

36.    POM confronted Eckert concerning its impermissible conflict and requested that Eckert withdraw from any representation of Parx Casino adverse to POM. Eckert refused to withdraw on behalf of Parx Casino and instead attemptedmisrepresented that Eckert obtained an advance waiver of any conflict.

13

26.37.Eckert also tried to negate its conflict by dropping POM like a "hot potato" on January 29, 2020. Eckert's termination of its representation of POM is a further breach of the fiduciary and ethical duties owed to POM.

38.    Both before Eckert withdrew from the representation of POM and after this case was filed, Eckert asserted that it is not counsel for a party in any litigation matter where POM is an adverse party.

39.    In a letter to POM's counsel dated January 17, 2020, Mr. Coon, Eckert's Chief Legal Officer, tried to justify Eckert's conflicting representation of POM and Parx Casino by denying that Eckert played any role in any litigation adverse to POM. He wrote: "Eckert made a careful examination of the facts and law and concluded there is no ethical conflict under the Rules of Professional Conduct of either Pennsylvania or Virginia. The key points are: Eckert is not counsel for a party in a litigation where POM is an adverse party. . . ."

40.    Eckert similarly claimed in its Answer filed in this action that it "does not represent a party adverse to POM in litigation." *See* Answer & Affirmative Defenses (Doc. No. 9) ¶ 18; *see also id.* at Seventeenth Defense. Further, Eckert misrepresented in the Joint Case Management Plan that it "is not involved" in the action commenced by POM in the Commonwealth Court. *See* Joint Case Management Plan (Doc. No. 18) at 3.

14

41. These representations are intentionally and knowingly false.

42. While Eckert was denying involvement in the Commonwealth Court litigation, Mr. Stewart and Mr. Skjoldal were actively and covertly participating on behalf of Parx Casino in the Commonwealth Court litigation and were actively and covertly supporting, assisting and encouraging POM's adversaries in those litigation matters.

43. Among other things, on behalf of Parx Casino, Mr. Stewart and Mr. Skjoldal suggested legal theories and arguments, prepared court filings and offered to coordinate legal strategies adverse to POM in the Commonwealth Court litigation.

44. For example, while Eckert was still representing POM, on November 22, 2019, Mr. Skjoldal sent an email to the Office of the Pennsylvania Attorney General which was counsel for POM's adversaries, with a copy to Mr. Stewart which included a legal analysis of the recent Commonwealth Court opinion in the matter docketed at No. 418 MD 2018. Mr. Skjoldal ended the email by encouraging the Office of Attorney General to prosecute the use of POM's machines. He wrote: "[I]t would seem that the OAG would still have this power in its arsenal to go after POM's slot machines. Please let us know how you intend

15

to proceed.  We would welcome the chance to discuss these issues . . . . If we can be of any assistance, please let us know."

45.   On November 26, 2019, while Eckert was still representing POM, Mr. Stewart sent an email to the Pennsylvania Office of Attorney General providing his own legal analysis of the opinion issued by the Commonwealth Court.  He wrote: "Ultimately, should you move for summary relief on POM's claims under [18 Pa. C.S.A. §] 5513, based on the slot machine argument, we (and other casinos) would be interested in filing an amicus brief in support of your position.  So, just trying to provide some guidance for the clients on that front."

46.   To avoid detection, Mr. Stewart and Mr. Skjoldal arranged for Parx Casino to be publicly represented by Hawke McKeon in the Commonwealth Court litigation, first as *amicus* counsel and later as counsel to Parx Casino as proposed intervenor, while Mr. Stewart and Mr. Skjoldal directed the Commonwealth Court litigation for Parx Casino behind the scenes.

47.   Hawke McKeon characterizes its role in the Commonwealth Court litigation as "conflict counsel," ECF 53 at 2, but subsequent proceedings and discovery compelled by the February 16, 2021 ruling, ECF 87, 88, revealed that Mr. Stewart and Mr. Skjoldal remained substantially involved in the Commonwealth Court litigation on behalf of Parx Casino and continued to covertly

16

advance Parx Casino's interests which were adverse to POM.  Among other things, Mr. Stewart and Mr. Skjoldal drafted court filings, encouraged participation of the casino gaming regulatory agency, advocated legal theories and strategies and served as go-between with Parx Casino personnel concerning the litigation.

48.     In a December 7, 2020 filing in Commonwealth Court, Hawke McKeon admitted that Eckert and Mr. Stewart directed the representation of Parx Casino behind the scenes because POM notified Eckert that POM viewed Eckert's concurrent representation of POM and Parx Casino as a conflict of interest.  In short, Eckert deliberately stayed behind the scenes to conceal its improper participation from POM.

49.     By surreptitiously representing Parx Casino in the Commonwealth Court litigation, Mr. Stewart and Mr. Skjoldal violated Rule 8.4 of the Pennsylvania Rules of Professional Conduct which prohibits lawyers from inducing another to do that which he or she cannot do directly.

50.     In addition to covertly advocating against POM in relation to the Commonwealth Court litigation, Eckert, Mr. Stewart and Mr. Skjoldal actively encouraged criminal, administrative, regulatory and legislative actions against POM and POM games, both while Eckert was representing POM and after that representation ended.

17

51.    Eckert and its lawyers, including Mr. Stewart and Mr. Skjoldal, repeatedly, intentionally and overtly placed their own conflicted interests and Parx Casino's interests over the interests of POM and thereby breached and continue to breach fiduciary duties owed to POM.

52.    Mr. Stewart continues to advocate against the legality of POM skill games in legislative, government relations and regulatory contexts.

27.53. POM has been forced to retain counsel to enforce Eckert's fiduciary and ethical obligations, to address Eckert's refusal to withdraw from the adverse representation of Parx Casino and to protect POM's interests.

28.54. This Court has the power and the obligation to enforce fiduciary duties owed by a lawyer to a client and to restrain violations of a lawyer's fiduciary duties.

## COUNT I

### CLAIM FOR DECLARATORY JUDGMENT

### 28 U.S.C. §§ 2201-02

### Against Defendants Eckert, Seamans, Cherin & Mellott, LLC, Mark S. Stewart and Kevin M. Skjoldal

29.55. Paragraphs 1 through 2854 of this Amended Complaint are incorporated by reference as if set forth fully herein.

18

30.56.Under Pennsylvania common law, Eckert owesand its lawyers owe a fiduciary duty to POM to act with undivided loyalty. Accordingly, Eckert is prohibited from undertaking a representation adverse to POM and from misusing POM's confidences.

31.57.While representing POM, Eckert acquired detailed confidential and proprietary information and privileged communications concerning POM's skill games, business operations and legal strategies that is highly relevant to its representation of Parx Casino and Parx Casino's efforts to challenge the legality of the very same POM skill games.

32.58.Eckert, Mr. Stewart and Mr. Skjoldal breached its fiduciary dutyduties owed to POM by representing Parx Casino in matters that are directly and materially adverse to POM and its affiliates concerning the very same POM skill games. and in otherwise advocating against POM skill games.

33.59.Eckert further breached its fiduciary dutyduties owed to POM by claiming to have obtained an advance waiver from POM permitting Eckert's conflicting representations when no such waiver was obtained and by terminating itsEckert's representation of POM when POM challenged its concurrent conflicting representation of Parx Casino.

19

34.60. There exists an actual controversy between the parties as to the breaches of fiduciary and ethical duties ~~owed~~ by Eckert ~~to POM~~, Mr. Stewart and Mr. Skjoldal and thus declaratory relief under 28 U.S.C. § 2201 is warranted.

35.61. POM is entitled to a judicial declaration under 28 U.S.C. § 2201 that Eckert, Mr. Stewart and Mr. Skjoldal breached ~~its~~ fiduciary ~~duty~~duties owed to POM ~~by representing Parx Casino in matters directly adverse to POM.~~as detailed herein.

36.62. Pursuant to the authority in 28 U.S.C. § 2202 to grant further necessary relief based on a declaratory judgment, POM is also entitled to an injunction barring Eckert and its lawyers from representing Parx Casino or any other client in any matter directly adverse to POM or POM games and an order compelling Eckert to disgorge all fees paid by POM and awarding other relief to remedy Eckert's unlawful conduct.

WHEREFORE, POM respectfully requests:

(1) A judicial declaration that Eckert ~~has~~, Mr. Stewart and Mr. Skjoldal breached ~~its~~ fiduciary ~~duty~~duties owed to POM and violated ethical obligations imposed by Rules 1.7, 1.9 and 8.4 of the Pennsylvania Rules of Professional Conduct;

20

(2)    A judicial declaration that Eckert isand its lawyers are enjoined from representing, advising or otherwise acting on behalf of supporting, directly or indirectly, any client adverse to POM in support of Parx Casino and any matter substantially related to its affiliates onrepresentation of POM;

(2)(3) A judicial declaration that Eckert and its lawyers are enjoined from communicating, directly or indirectly, with any party, *amicus curiae*, intervenor or proposed intervenor or counsel for any party, *amicus curiae*, intervenor or proposed intervenor regarding the litigation matters adverse to POMinitiated by POM in Pennsylvania Commonwealth Court;

(4)    A judicial declaration that Eckert and its lawyers are enjoined from representing any party, directly or indirectly, in any capacity and from assisting, helping or communicating with any party or counsel for any party in any legal proceeding against any entity that hosts or offers POM's skill games or where POM's skill games are at issue;

(5)    A judicial declaration that Eckert and its lawyers are enjoined from representing any party, directly or indirectly, in any capacity, including as counsel for any industry group or association, in any matter adverse to POM or any POM affiliate directly or indirectly related to POM skill games;

(6)    A judicial declaration that Eckert and its lawyers are enjoined

21

from advocating, directly or indirectly, in any forum, including in any legislative, lobbying, government relations and/or public relations context, against the legality of electronic games of skill manufactured or distributed by POM or any POM affiliate and from advocating, directly or indirectly, that POM games are not games of skill or are not games where skill predominates over chance;

(3)(7) A judicial declaration that Eckert is prohibited from using, relying on or disclosing any information acquired from its representation of POM in any representation of any other client;;

(4)(8) An order requiring Eckert to disgorge all fees paid by POM and otherwise remedy the breach of fiduciary duty; and

(5)(9) Such other and further relief as the Court deems appropriate under the circumstances.

## COUNT II

### BREACH OF FIDUCIARY DUTY

**Against Defendants Eckert, Seamans, Cherin & Mellott, LLC, Mark S. Stewart and Kevin M. Skjoldal**

22

37.63.Paragraphs 1 through 3662 of this Amended Complaint are incorporated by reference as if set forth fully herein.

38.64.A fiduciary relationship exists between Eckert and POM and its affiliates by virtue of POM's retention of Eckert to provide legal services to it and to its affiliates.

39.65.Eckert knowingly failed to act in good faith and solely for the benefit of POM and its affiliates in matters for which Eckert was employed.

66.    As members of the Eckert firm, Mr. Stewart and Mr. Skjoldal likewise owed a fiduciary duty to act in good faith and solely for the benefit of POM in matters for which the Eckert firm was employed and they were likewise prohibited from representing any client directly adverse to POM.

67.    Eckert, Mr. Stewart and Mr. Skjoldal breached the fiduciary duty owed to POM by actively collaborating with POM's adversary in the Commonwealth Court litigation, by surreptitiously directing the representation of Parx Casino through the Hawke McKeon firm and by advocating for criminal prosecution of POM and seizure of POM's machines.

23

68.    Eckert and Mr. Stewart further breached the fiduciary duty owed to POM by undertaking to represent POM knowing that Eckert would take action adverse to POM on behalf of its other client, Parx Casino.

40.69.   POM suffered and continues to suffer substantial injury as a direct result of Eckert's breachthe breaches of its fiduciary duty detailed herein, including, but not limited to, by incurring costs and fees to enforce theits right to conflict-free representation and to otherwise protect itself against Eckert's breachthe breaches of fiduciary duty.

41.70.Eckert'sThe conduct of Eckert, Mr. Stewart and Mr. Skjoldal was malicious, wanton and willful and done with reckless indifference to the rights of POM and therefore warrants an award of punitive damages.

WHEREFORE, POM demands the entry of judgment in its favor and against Eckert, Mr. Stewart and Mr. Skjoldal, together with an award of compensatory and punitive damages and such other and further relief as the Court deems appropriate under the circumstances.

24

## COUNT III

## FRAUD

### Against Eckert, Seamans, Cherin & Mellott, LLC

71.    Paragraphs 1 through 70 of this Amended Complaint are incorporated by reference as if set forth fully herein.

72.    Eckert knowingly misrepresented the firm's involvement in the Commonwealth Court litigation in the January 17, 2020 letter sent by Mr. Coon.

73.    Eckert further misrepresented its involvement in the Commonwealth Court litigation in, *inter alia*, the Joint Case Management Plan filed in this case.

74.    Eckert denied involvement in the Commonwealth Court litigation intending that POM would rely on the denial and POM justifiably relied on the denial to its detriment.

75.    POM suffered substantial damage as a result.  Among other things, Eckert personnel secretly continued to communicate and collaborate with parties in litigation adverse to POM and met with government officials concerning POM's games after Eckert denied involvement in such matters.  All of this was discovered after this litigation was commenced.

25

76.    Eckert's conduct was malicious, wanton and willful and done with reckless indifference to the rights of POM and therefore warrants an award of punitive damages.

WHEREFORE, POM demands the entry of judgment in its favor and against Eckert, together with an award of compensatory and punitive damages and such other and further relief as the Court deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, POM demands a jury trial on all issues so triable.

Respectfully submitted,

/s/

Daniel T. Brier
Daniel T. Brier (PA ID 53248)
dbrier@mbklaw.com
Donna A. Walsh (PA ID 74833)
dwalsh@mbklaw.com
Erik R. Anderson (PA ID 203007)
eanderson@mbklaw.com

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

26

**Formatted:** Section start: Continuous

**Formatted:** No underline

(570) 342-6100

Date:  February 18, 2020_____, 2021

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Amended Complaint was served upon the following counsel of record via the

Court's ECF filing system on this ____ day of _____ 2021:

> Abraham C. Reich, Esquire
> Robert S. Tintner, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103-3291

_____

Daniel T. Brier

28