IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,          :
                             :
        **Plaintiff,**        :        **NO. 20-CV-292**
                             :
  v.                         :        **JUDGE WILSON**
                             :
ECKERT, SEAMANS, CHERIN & :        **MAGISTRATE JUDGE SAPORITO**
MELLOTT, LLC,                :
                             :        **ELECTRONICALLY FILED**
        **Defendant.**        :

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Pace-O-Matic, Inc. ("POM") commenced this action against its former counsel, Defendant Eckert, Seamans, Cherin & Mellot, LLC ("Eckert"), to enforce the fiduciary duties owed by Eckert and to enjoin Eckert from representing other clients in matters adverse to POM that are substantially related to its representation of POM. While Eckert initially denied to this Court that it had involvement in any litigation adverse to POM, subsequent discovery revealed that Eckert and two of its lawyers, Mark S. Stewart and Kevin M. Skjoldal, continuously, contemporaneously and covertly collaborated with POM's adversaries and advised and represented proposed intervenors adverse to POM in actions pending in Pennsylvania Commonwealth Court. Messrs. Stewart and

Skjoldal also aggressively advocated against POM and its skill games—the same products that Eckert was retained by POM to defend—in multiple forums both during and after its representation of POM.  POM seeks leave to file an amended complaint asserting additional claims for breach of fiduciary duty against Messrs. Stewart and Skjoldal and a new fraud claim against Eckert arising from its false denial of involvement in litigation adverse to POM.

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a written engagement letter dated September 13, 2011, POM retained Eckert to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania."  Compl. (ECF 1) ¶ 5. POM and Eckert entered into a second engagement letter dated December 20, 2016 pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software."  *Id.* ¶ 7.

Pursuant to the 2016 engagement, Eckert handled a variety of legal matters for POM and its affiliates, including representing POM and its affiliates at meetings with government personnel, handling litigation matters, negotiating and drafting contracts and providing advice concerning legal, legislative and litigation

2

strategies for marketing and selling POM skill games. *Id.* ¶ 12. In furtherance of these services, POM provided Eckert with highly sensitive, proprietary and confidential information relating to its skill games and business operations. *Id.* ¶ 10. POM paid substantial fees to Eckert for those services. *Id.* ¶ 9.

While Eckert was representing POM and advocating the legality of POM's skill games, Eckert undertook to ***attack those same POM games*** on behalf of another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). In the fall of 2019, Eckert commenced actions on behalf of Parx in state courts against establishments that offer POM's skill games seeking declaratory judgments that POM games—***Eckert's own client's products***—constitute a public nuisance. *Id.* ¶ 15. In a brief filed on December 3, 2019 in one of those cases, while still representing POM, Eckert posited on behalf of Parx that POM manufactures "illegal slot machine[s]" and "deceptively market[s] these games as 'legal,' when, in fact, they are not." *Id.*

The public nuisance actions are part of a broader campaign by Eckert and Parx to secure a ban against the very same POM skill games that Eckert defended and promoted as counsel for POM. In furtherance of that campaign, while Eckert was representing POM, the co-chair of Eckert's gaming practice, Mark S. Stewart, sent letters on behalf of Parx to Pennsylvania municipalities advocating that skill games, including those manufactured by POM, are "illegal slot machines" and

should be outlawed through a local ordinance which Eckert drafted and Mr. Stewart enclosed with the letter.  *Id.* ¶ 17.

POM confronted Eckert with its impermissible conflict and demanded that Eckert withdraw from representing Parx in matters adverse to POM.  *Id.* ¶ 26.  In a January 17, 2020 letter, Eckert's Chief Legal Officer, Timothy S. Coon, denied any conflict and represented that "Eckert is not counsel for a party in a litigation where POM is an adverse party."  (A copy of the January 17, 2020 letter is attached as Exhibit "A.")  Eckert refused POM's request to withdraw as counsel for Parx and instead dropped POM like a "hot potato" on January 29, 2020 in favor of continuing its more lucrative relationship with Parx.  Compl. ¶ 26.

On February 18, 2020, POM commenced this action against Eckert to enforce the duty of undivided loyalty owed to POM.  POM's two-count Complaint (ECF 1) includes claims for declaratory judgment (Count I) and breach of fiduciary duty (Count II).  On March 10, 2020, Eckert filed its Answer and Affirmative Defenses in which it claimed that it "does not represent a party adverse to POM in litigation."  ECF 9, ¶ 18; *see also id.* at Seventeenth Defense.  On March 24, 2020, POM moved for a preliminary injunction to enjoin Eckert from representing Parx and any other entity in any matter adverse to POM.  ECF 12, 13.  In its opposition brief filed on April 21, 2020, Eckert again misrepresented to the Court that it "is not representing parties in litigation adverse to POM."  ECF 21 at 2.  Eckert further

misrepresented in the Joint Case Management Plan filed on April 2, 2020, that it had no involvement in any litigation adverse to POM.  ECF 18 at 3-4.

POM later discovered that these denials of involvement were not true. Through Right-To-Know requests, discovery in relation to POM's motion for preliminary injunction, and POM's motion to compel discovery (ECF 50), POM learned that Eckert, led by Messrs. Stewart and Skjoldal, covertly represented Parx casino in litigation matters commenced by POM in Pennsylvania Commonwealth Court and otherwise advocated against POM and its skill games while the Eckert firm was representing POM.

Another law firm, Hawke McKeon & Sniscak, LLP ("HMS"), entered its appearance as counsel for Parx in the Commonwealth Court actions but Messrs. Stewart and Skjoldal, as members of the Eckert firm, directed and managed the litigation behind the scenes.[1]  For example, POM learned after filing the original complaint that Messrs. Stewart and Skjoldal suggested arguments and litigation strategies to POM's adversaries, advocated for seizure of POM's games, solicited

---

[1]  The actions pending in Commonwealth Court are *POM of Pennsylvania, LLC v. Department of Revenue and City of Philadelphia,* docketed at No. 418 M.D. 2018, and *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, docketed at No. 503 M.D. 2018.  Initially, Parx was involved as *amicus*, relying on a brief drafted by Eckert and filed by HMS. Parx later sought leave to intervene based on documents prepared by Eckert.

intervenors and drafted court filings which Hawke McKeon filed under its own name.  This was all contrary to HMS's representation to this Court on July 20, 2020 that it "step[ped] in as conflict counsel" "upon referral from Eckert due to Eckert's alleged conflict with POM . . .," ECF 53 at 2, 4, and that Eckert's involvement in the Commonwealth Court litigation was limited to drafting documents "preparatory to" handing the case over to Hawke McKeon, *id.* at 9.  On December 7, 2020, HMS admitted in a filing in Commonwealth Court that Eckert continued to have substantial involvement in the Commonwealth Court litigation notwithstanding its earlier denials.  HMS wrote: "Although Eckert did not sign the amicus brief filed in [the Commonwealth Court litigation] in December 2019 or otherwise enter its appearance in [the litigation] . . . . Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and assisted in creating first drafts of filings or editing the first drafts created by other casino group lawyers for filings in [the Commonwealth Court litigation]."  (A copy of the filing is attached as Exhibit "B.")

For example, on November 22, 2019, Messrs. Stewart and Skjoldal sent an email to counsel for POM's adversary in the Commonwealth Court litigation suggesting legal strategies and advocating that POM's games constitute illegal slot machines.  (A copy of the November 22, 2019 email message chain is attached as Exhibit "C.")  POM also discovered after filing the original complaint that, on

January 17, 2020, while Eckert was denying acting as counsel for a party in litigation adverse to POM, Mr. Stewart urged the Attorney General to "enjoin POM"—*Eckert's own client*—"from bringing new machines into the state." (A copy of the January 17, 2020 email message (HMS-000949) is attached as Exhibit "D.") Mr. Stewart sent a draft brief on behalf of Parx to counsel for POM's adversary on January 23, 2020, stating: "*We'd* appreciate the chance to coordinate *our* filing timing-wise with yours." (A copy of the January 23, 2020 email message is attached as Exhibit "E.") (Emphasis added.) Mr. Skjoldal sent an email message to POM's adversary on January 28, 2020 accusing POM of making "misleading" statements in a court filing and again encouraging the seizure of POM machines. (A copy of the January 28, 2020 email is attached as Exhibit "F.")

The recent production of documents compelled by Magistrate Judge Saporito on February 16, 2021 (ECF 87, 88) reveals additional involvement by Messrs. Stewart and Skjoldal in advocating against POM. For example, Mr. Stewart facilitated a meeting on March 4, 2020 with government officials at which he advocated for the seizure of POM games and for legislation banning those games in the Commonwealth. (A copy of the March 4, 2020 email message chain describing the meeting is attached hereto as Exhibit "G.") An email from Mr. Stewart to Parx personnel dated March 20, 2020 confirmed that Eckert continued to manage the representation of Parx in the Commonwealth Court actions. In that

email, Mr. Stewart proposed strategies for responding to a subpoena directed at Parx and for securing intervention in the case. (A copy of the March 20, 2020 email message is attached hereto as Exhibit "H.")

Based on the subsequent disclosure of additional breaches of fiduciary duty by Messrs. Stewart and Skjoldal and of additional evidence exposing the falsity of representations in Mr. Coon's January 17, 2020 letter, POM seeks leave to amend its complaint to include claims for breach of fiduciary duty against Messrs. Stewart and Skjoldal, a claim for fraud against Eckert and a jury demand.

## STATEMENT OF QUESTION INVOLVED

**QUESTION PRESENTED**:    Given the later discovered information concerning breaches of fiduciary duty by Messrs. Stewart and Skjoldal and fraudulent misrepresentations by Eckert, should POM be permitted to amend its complaint to assert additional claims against Messrs. Stewart and Skjoldal and against Eckert?

**SUGGESTED ANSWER**:    Yes.

## ARGUMENT

Rule 15 of the Federal Rules of Civil Procedure provides that, after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has instructed that the mandate that leave to amend "shall be freely given when

justice so requires . . . is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be denied under Rule 15 only if (1) amendment would prejudice the other party, (2) the moving party has demonstrated undue delay, bad faith or dilatory motives, or (3) the amendment would be futile. *Diaz v. Palakovich*, 448 F. App'x 211, 215-16 (3d Cir. 2011) (internal citation omitted). None of these circumstances exist here and therefore the proposed amendment should be allowed.

### A.    Eckert Will Not Be Prejudiced If Leave To Amend Is Granted.

In the Third Circuit, prejudice to the non-moving party is the touchstone for denial of amendment. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990); *Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981). Merely alleging prejudice is not sufficient. *Heyl & Patterson Int'l*, 663 F.2d at 426. Rather, to justify denial of leave to amend, the non-moving party must demonstrate that it will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendment[] been timely." *Dole*, 921 F.2d at 488 (quoting *Heyl & Patterson Int'l*, 663 F.2d at 426). In other words, the non-movant must demonstrate that "its ability to present its case would be seriously impaired were amendment allowed." *Dole*, 921 F.2d at 488.

Eckert cannot make any such showing.  Importantly, discovery is ongoing. It is anticipated that a status conference will be scheduled in the near future "to reset deadlines for this case." ECF 115.  There is nothing that inhibits Eckert's ability to discover information concerning the new fraud claim or the new allegations directed against Messrs. Stewart and Skjoldal.  Moreover, Eckert cannot credibly claim prejudice since it knowingly concealed Stewart's and Skjoldal's involvement in the Commonwealth Court litigation and obstructed development of the factual record upon which POM's new claims are based.  *See Cuthie v. J&J Material Handling Sys., Inc.*, No. 10-cv-555, 2011 WL 13213861, at *2 (M.D. Pa. Mar. 15, 2011) (finding no prejudice and allowing amendment where "facts necessary to support this new claim" were in possession of defendants and "[d]efendants easily could have disclosed this information more promptly, and thus had the opportunity to conduct relevant discovery about it earlier in the litigation. . .").[2]  Amendment will not prejudice Eckert and therefore should be allowed.

**B.    There Is No Undue Delay, Bad Faith or Dilatory Motive.**

Absent undue prejudice, "denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Heyl & Patterson*

---

[2]   The unpublished decisions cited herein are reproduced in the attached appendix pursuant to Local Rule 7.8(a).

*Int'l, Inc.,* 663 F.2d at 425 (internal citation omitted). While the mere passage of time does not require that a motion to amend a pleading be denied, "at some point, the [movant's] delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (citation omitted).

Here, it is not possible for Eckert to claim undue delay, bad faith or dilatory motive. Rather, Eckert misled POM and this Court for more than a year by denying that it served as "counsel for a party in a litigation where POM is an adverse party." *See* January 17, 2020 letter at 2. POM discovered the substantial involvement of Messrs. Stewart and Skjoldal through discovery in this litigation and as a result of Judge Saporito's February 16, 2021 ruling which compelled Eckert to disclose additional communications documenting its advocacy against POM in the Commonwealth Court litigation. It is plain from the record that there was no undue delay in seeking leave to amend and there is no bad faith or dilatory motive on the part of POM. *See, e.g., Williams v. City of York, Pennsylvania*, No. 1:15-CV-0493, 2016 WL 2610007, at *3 (M.D. Pa. May 6, 2016) (permitting amendment where defendants withheld "critical information" from plaintiff notwithstanding plaintiff's specific request); *see also Combined Ins. Co. of America v. Bastian*, No. 09-cv-111, 2009 WL 5111794 (M.D. Pa. Dec. 17, 2009)

11

(granting leave to amend where defendant concealed facts supporting claim plaintiff sought to add).

### C.     The Proposed Amendment Is Not Futile.

"Futility" means that the complaint, as amended, fails to state a claim upon which relief could be granted. *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing "futility," a district court applies the standard of legal sufficiency in Rule 12(b)(6). *Id.* (citing 3 Moore's Federal Practice, § 15.08[4] at 15-81 (3d ed. 2013)). Accordingly, in assessing the potential futility of a proposed amended complaint, the Court must accept as true the allegations in the proposed amended complaint and construe those allegations in the light most favorable to the party seeking leave to amend. *See, e.g., Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Measured against this standard, the proposed amendment is not futile.

POM seeks to add Messrs. Stewart and Skjoldal as additional defendants to the existing Counts I and II which assert claims for declaratory judgment and breach of fiduciary duty, respectively. The addition of Messrs. Stewart and Skjoldal is based on the subsequent discovery that they had direct, personal involvement in advocating against POM while Eckert represented POM and that they concealed their involvement by working through HMS. Because Messrs. Stewart and Skjoldal are prohibited from undertaking any representation which the

12

Eckert firm is prohibited from undertaking, they too breached fiduciary duties owed to POM and are also properly named as defendants in Count I and II.  *See American Dredging Co. v. City of Philadelphia*, 389 A.2d 568, 572 (Pa. 1978) ("[W]hen one attorney is prohibited by ethical considerations from undertaking to represent a certain client, all members of the firm to which that attorney belongs are also prohibited from serving as counsel to that client.").

POM also seeks to assert a new claim for fraud against Eckert based on Eckert's false denials of involvement in litigation adverse to POM.  In denying involvement, Eckert misrepresented a material fact that was undoubtedly material to its relationship with POM and did so with the intent of misleading POM.  These allegations state a plausible claim for fraud and therefore the proposed amendment is not futile.  *See, e.g.*, *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) (listing elements of fraud claim).

**D.**     **Leave To Amend Should Be Granted Under Rule 15(a)(2).**

In sum, Eckert will not be prejudiced if the proposed amendment is allowed, there has been no undue delay, there is no bad faith or dilatory motive and the proposed amendment is not futile and therefore leave to amend should be granted.

## CONCLUSION

For the reasons above, POM requests that this Court grant its motion for leave to file an amended complaint.

Respectfully submitted,

s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Dated:  July 15, 2021

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion For Leave To File Amended Complaint was served upon the following counsel of record via the Court's ECF filing system on this 15th day of July 2021:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291

Dennis A. Whitaker, Esquire
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101

George A. Bibikos, Esquire
5901 Jonestown Road, #6330
Harrisburg, PA 17112

/s/ Donna A. Walsh
Donna A. Walsh