# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 20-CV-292** |
| | : | |
| ECKERT, SEAMANS, CHERIN & | : | **JUDGE WILSON** |
| MELLOTT, LLC, MARK S. | : | |
| STEWART and KEVIN M. | : | **ELECTRONICALLY FILED** |
| SKJOLDAL, | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

    I.     The Amended Complaint Sufficiently Alleges a Claim for Declaratory Relief To Enforce Fiduciary Duties Owed to POM ......... 2

    II.    POM Has Adequately Alleged a Claim for Fraud Based on Eckert's False Denials of Involvement in Litigation Adverse to POM ................................................................................................... 6

          A.    Judicial privilege does not apply to false statements made prior to and to deter litigation ..................................................... 6

          B.    POM has adequately pled justifiable reliance .......................... 10

    III.    Eckert's Flagrant Breaches of Fiduciary Duty and International Misrepresentations to Its Own Client To Conceal Its Conflict of Interest Are More Than Sufficient to Support a Claim for Punitive Damages ................................................................................. 12

CONCLUSION ............................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, No. 19-1600, 2021 WL 431475 (D. Del. Feb. 8, 2021), *recommendation adopted*, 2021 WL 1152982 (D. Del. Mar. 26, 2021) .................................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 10, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2009) ...................................... 10, 11

*Blakeney v. Marsico*, 340 F. App'x 778 (3d Cir. 2009) ............................................ 6

*Brown v. Delaware Valley Transplant Program*, 539 A.2d 1372 (Pa. Super. 1988) .................................................................................................................... 8

*Corlioss v. O'Brien*, 200 F. App'x 80 (3d Cir. 2016) ............................................... 6

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578 (Pa. Super. 2013) ................. 11, 12

*Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243 (Pa. Super. 1983) .................... 15

*Doe v. Garabedian*, No. 19-1539, 2020 WL 1244126 (E.D. Pa. Mar. 13, 2020) ..... 9

*Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822 (Pa. Super. 2005) ............................. 12

*Ganassi v. Buchanan Ingersoll, P.C.*, 540 A.2d 272 (Pa. Super. 1988) ................... 8

*Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, 479 F. Supp. 3d 143 (E.D. Pa. 2020) ...................................................................................................... 5

*Hammonds v. Aigeldinger*, No. 20-657, 2021 WL 3022633 (M.D. Pa. July 26, 2021) .................................................................................................................... 6

*Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766 (Pa. 2005) ........................... 15

*McClellan v. Health Maint. Org. of Pa.*, 604 A.2d 1053 (Pa. Super. 1992) ................................................................................................................................ 15

*Michtavi v. Scism*, No. 12-1196, 2013 WL 371643 (M.D. Pa. Jan. 30, 2013) ......... 5

*Miller v. County of Centre*, 702 F. App'x 69 (3d Cir. 2017) .................................... 9

ii

*Motorup Corp. v. Galland, Kharasch & Garfinkle, P.C.*, No. 00-2212, 2001 WL 34368760 (E.D. Pa. Dec. 4, 2001) ............................................... 15

*O'Callaghan v. Hon. X*, 661 F. App'x 179 (3d Cir. 2016) ....................................... 6

*Panitz v. Behrend*, 632 A.2d 562 (Pa. Super. 1993) ............................................... 8

*Pawlowski v. Smorto*, 588 A.2d 36 (Pa. Super. 1991) ............................................. 8

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ............................... 16

*Rizzo v. Haines*, 555 A.2d 58 (Pa. 1989) ............................................................. 15

*Schanne v. Addis*, 121 A.3d 942 (Pa. 2015) .............................................. 6, 8, 9, 10

*Schanne v. Addis*, 615 F. App'x 759 (3d Cir. 2015) ............................................... 8

*Smith v. Griffiths*, 476 A.2d 22 (Pa. Super. 1984) ................................................. 8

*Tran v. Metro. Life Ins. Co.*, 408 F.3d 130 (3d Cir. 2005) ..................................... 11

*Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F. Supp. 2d 517 (M.D. Pa. 1999) ................................................................ 11

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ..................................................... 5

## STATUTES

28 U.S.C. § 2201 ..................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .................................................................................. 6, 11, 16

L.R. 7.8 (a).............................................................................................................. 5

## INTRODUCTION

Defendant Eckert, Seamans, Cherin & Mellott, LLC knew that its representation of Plaintiff Pace-O-Matic, Inc. ("POM") would conflict with its representation of another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino"), but it undertook the representation anyway. While representing POM, Eckert, on behalf of Parx Casino, initiated litigation that sought to have POM games declared a public nuisance—the very products Eckert was retained to defend. When POM confronted Eckert over its conflict, Eckert denied involvement in litigation adverse to POM. The denial was false. POM discovered during this litigation that, both before and after the false denial, Eckert conspired and collaborated with POM's adversaries in litigation matters pending in Commonwealth Court and did so surreptitiously through another law firm to conceal its breaches of fiduciary duty.

Based on these discoveries, POM sought and received leave to file an Amended Complaint that asserts a new claim for fraud in Count III based on the false statements and adds two Eckert lawyers, Mark S. Stewart and Kevin M. Skjoldal, as additional defendants on the claims for declaratory relief and for breach of fiduciary duty in Counts I and II, respectively. In a vain attempt to cabin

its substantial liability, Eckert[1] filed a partial[2] motion to dismiss challenging the fraud claim, part of the claim for declaratory relief and the demands for punitive damages. The motion lacks merit and should be denied in its entirety.

## ARGUMENT

**I.      The Amended Complaint Sufficiently Alleges a Claim for Declaratory Relief To Enforce Fiduciary Duties Owed to POM.**

Echoing the arguments advanced in its unsuccessful motion to dismiss POM's preliminary injunction motion,[3] Eckert contends that declaratory relief is unavailable because its representation of conflicting interests "occurred in the past." Br. (ECF 156) at 7. This argument necessarily fails because it purports to contradict the well-pled allegations in the Amended Complaint and ignores the

---

[1]  For convenience, the Eckert firm, Stewart and Skjoldal are referred to collectively herein as "Eckert" unless otherwise specified.

[2]  Eckert is not challenging the claim for breach of fiduciary duty in Count II of the Amended Complaint.

[3]  In denying Eckert's motion to dismiss POM's preliminary injunction motion on mootness grounds, this Court explained: "[W]hile Eckert has promised or agreed to take certain actions, allegedly following its realization that an advance conflict waiver had not been obtained from POM, there is nothing other than Eckert's own word to prevent it from resuming its presently challenged course of conduct. . . . Eckert has not satisfied its heavy burden of persuading the court that there is no longer a live controversy . . . ." ECF 116 at 6-7 (citations and internal punctuation marks omitted). The same reasoning compels rejection of Eckert's motion to dismiss POM's claim for declaratory relief in Count I.

2

relief actually sought in POM's claim for declaratory relief. Eckert's second bite at the mootness apple should fail like its first attempt.

Contrary to Eckert's argument, POM is not seeking a declaratory judgment based solely on past conduct, but rather judicial declarations barring Eckert from *continued* violations of its ethical obligations. Count I of the Amended Complaint seeks, *inter alia*, a judicial declaration that Eckert, Stewart and Skjoldal are prohibited from representing Parx Casino and any other client in any matter directly adverse to POM or POM games. Am. Compl. (ECF 145) ¶ 62. While POM's right to declaratory relief derives from past conduct—Eckert's breaches of the duty of undivided loyalty owed to POM—the declaratory relief sought is *prospective*. The Amended Complaint alleges that Eckert *continues* to advocate unlawfully against the legality of the same POM games that it was retained by POM to defend. *Id.* ¶¶ 52-53. The Amended Complaint further alleges that there is an actual controversy between the parties concerning the duties owed by Eckert to POM and that declaratory relief is necessary to resolve the controversy. *Id.* ¶ 62.

On this factual basis, Count I seeks *prospective* relief to enforce the fiduciary duties of undivided loyalty and confidentiality which Eckert owes to POM, including judicial declarations that Eckert and its lawyers are enjoined from: (i) representing, advising or otherwise supporting, directly or indirectly, any client

adverse to POM in any matter substantially related to its representation of POM;

(ii) communicating, directly or indirectly, with any party, *amicus curiae*,

intervenor or proposed intervenor or counsel for any party, *amicus curiae*,

intervenor or proposed intervenor regarding the litigation matters initiated by POM

in Pennsylvania Commonwealth Court; (iii) representing any party, directly or

indirectly, in any capacity and from assisting, helping or communicating with any

party or counsel for any party in any legal proceeding against any entity that hosts

or offers POM's skill games or where POM's skill games are at issue; (iv)

representing any party, directly or indirectly, in any capacity, including as counsel

for any industry group or association, in any matter adverse to POM or any POM

affiliate directly or indirectly related to POM skill games; (v) advocating, directly

or indirectly, in any forum, including in any legislative, lobbying, government

relations and/or public relations context, against the legality of electronic games of

skill manufactured or distributed by POM or any POM affiliate and from

advocating, directly or indirectly, that POM games are not games of skill or are not

games where skill predominates over chance; and (vi) using, relying on or

disclosing any information acquired from its representation of POM. Am. Compl.

at pp. 20-21.

Because Count I seeks a declaratory judgment that will establish the rights

of the parties going forward, it states a plausible claim for relief under 28 U.S.C. §

4

2201. *See generally Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (purpose of a declaratory judgment is "to declare the rights of litigants"); *see also Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, No. 19-1600, 2021 WL 431475, at *12 (D. Del. Feb. 8, 2021) (magistrate judge recommendation to deny motion to dismiss claim for declaratory relief where complaint alleged that "breaching conduct 'continues or is likely to continue in the future'"), *recommendation adopted*, 2021 WL 1152982 (D. Del. Mar. 26, 2021); *Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, 479 F. Supp. 3d 143, 148-49 (E.D. Pa. 2020) (Declaratory Judgment Act applies although "some past conduct of Defendant is implicated in the Complaint" if "there is present and future conduct that would be impacted by a declaratory judgment"); *Michtavi v. Scism*, No. 12-1196, 2013 WL 371643, at *5 (M.D. Pa. Jan. 30, 2013) ("to the extent that Plaintiff is alleging that the conduct is ongoing and that he is still being subjected to unconstitutional treatment, . . . he is entitled to pursue declarations to that effect").[4]

For the same reason this Court denied Eckert's motion to dismiss POM's preliminary injunction motion, Eckert's mootness challenge to Count I lacks merit and must likewise be denied.[5]

---

[4]    Pursuant to Local Rule 7.8(a), the unpublished decisions cited herein are reproduced in the attached appendix.

[5]    The cases cited by Eckert are materially different because they did not involve claims for prospective declaratory relief but rather requests for declarations

## II.   POM Has Adequately Alleged a Claim for Fraud Based on Eckert's False Denials of Involvement in Litigation Adverse to POM.

Eckert argues for dismissal of the fraud claim in Count III based on judicial privilege and its disagreement with POM's allegations of justifiable reliance. Br. at 7-12. Neither argument has merit. Judicial privilege does not apply to Eckert's deception and Eckert's disagreement with POM's factual allegations is not a basis for dismissal under Rule 12(b)(6).

### A.   Judicial privilege does not apply to false statements made prior to and to deter litigation.

Eckert advances the extraordinary argument that it was absolutely privileged to make false representations to its then client concerning the existence of a conflict because the representations preceded litigation. Br. at 7. This argument is a perversion of the judicial privilege and cannot stand the slightest scrutiny.

The Pennsylvania Supreme Court clarified the scope of the judicial privilege in *Schanne v. Addis*, 121 A.3d 942 (Pa. 2015). At issue in that case was a

---

dealing exclusively with past conduct. *See, e.g., O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (litigant sought declaration that judge "previously violated" his constitutional rights); *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (inmate sought declaration that district attorney, judge and court staff mishandled his private criminal complaint); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (prisoner sought declaration that trial judge violated his constitutional rights); *Hammonds v. Aigeldinger*, No. 20-657, 2021 WL 3022633, at *1 (M.D. Pa. July 26, 2021) (plaintiff sought declaration that "the past actions of the Defendants were in violation of the stated laws") (internal brackets omitted).

statement made by a student to her friend that she had been involved in an intimate personal relationship with her high school teacher years earlier. The friend reported the statement to school officials and, as a result, the teacher lost his job. *Id.* at 943-44. The teacher later brought a defamation action against the student. *Id.* at 944. The district court granted summary judgment in favor of the student on the basis of judicial privilege because the statement "served as the catalyst" for the hearing that led to the teacher's termination. *Id.* at 945.

On appeal, the Third Circuit certified the following question for resolution by the Pennsylvania Supreme Court: "Does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was made prior to the commencement of any quasi-judicial proceeding and without an intent that the allegation lead to a quasi-judicial proceeding." *Id.* In response, the Supreme Court held that "the judicial privilege does not apply to an allegation made . . . before commencement of any quasi-judicial proceeding and without an intent that it lead to a quasi-judicial proceeding." *Id.* at 952. The Court explained that "[t]he judicial privilege serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims" and does apply where those policy considerations are not implicated. *Id.* at 947-48. The Court further declared that the policy underlying the privilege is not

7

implicated and the privilege does not apply when the speaker is not seeking to

initiate a legal proceeding:

> [T]he judicial privilege operates by incentivizing
> individuals to speak freely within a judicial (or quasi-
> judicial context)—or more to the point here, to speak
> freely in *seeking to initiate* judicial or quasi-judicial
> proceedings.  Where a declarant has no intention of
> initiating proceedings or otherwise obtaining a remedy,
> clothing his or her statement with immunity cannot serve
> this goal.

*Id.* at 949 (emphasis in original).  Accordingly, communications made prior to

commencement of any judicial proceeding and without an intent to initiate any

such proceeding are not protected by the judicial privilege.  *Id.* at 952.[6]

Schanne squarely applies and requires the conclusion that Eckert's pre-

litigation denial of involvement in litigation matters adverse to POM is not

privileged.[7]  The communication at issue—Eckert's false statement to its own

---

[6]  Because the student in *Schanne* did not reveal the personal relationship with
the intention of initiating legal proceedings, the Third Circuit reversed the grant of
summary judgment.  *Schanne v. Addis*, 615 F. App'x 759 (3d Cir. 2015).

[7]  The cases on which Eckert principally relies predate *Schanne* and involved
statements made to a court or law enforcement official.  *See, e.g., Panitz v.
Behrend*, 632 A.2d 562, 566 (Pa. Super. 1993) (privilege applied to testimony of
expert witness in personal injury action); *Pawlowski v. Smorto*, 588 A.2d 36, 41
(Pa. Super. 1991) (privilege applied to statements made to law enforcement
officials for purpose of inducing criminal charges); *Ganassi v. Buchanan Ingersoll,
P.C.*, 540 A.2d 272, 278 (Pa. Super. 1988) (privilege applied to letters from
counsel to judge and to affidavits filed in bankruptcy case); *Brown v. Delaware
Valley Transplant Program*, 539 A.2d 1372, 1374-75 (Pa. Super. 1988) (privilege
applied to petition prepared by counsel and filed with court); *Smith v. Griffiths*, 476

client that it was not involved in litigation adverse to its client's interests—was not made in the course of a legal proceeding and was not related to any effort by Eckert to seek legal relief. To the contrary, Eckert's profession of no involvement and puppeteering the Hawke McKeon & Sniscak, LLP firm were intended *to lull and deter POM from pursuing legal relief*. *See, e.g.*, Am. Compl. ¶¶ 36-39, 41-43, 46-48. As in *Schanne*, the privilege does not protect Eckert's false denials of a conflict because the denials are not made in the regular course of a judicial proceeding and were not related to any effort by Eckert to access the courts or otherwise initiate a legal proceeding. *See Schanne*, 121 A.3d at 952 ("[T]he judicial privilege does not apply to an allegation made . . . before commencement of any []judicial proceeding and without an intent that it lead to a []judicial proceeding."); *see also Miller v. County of Centre*, 702 F. App'x 69, 73 (3d Cir. 2017) (where speaker "made statements for purposes other than to start or aid a criminal prosecution, those statements are not protected by judicial privilege"); *Doe v. Garabedian*, No. 19-1539, 2020 WL 1244126, at *3 (E.D. Pa. Mar. 13, 2020) ("Where a declarant has no intention of initiating proceedings or otherwise

---

A.2d 22, 25 (Pa. Super. 1984) (privilege applied to letters from counsel on behalf of party to quasi-judicial officer appointed to hear issues in pending divorce proceeding). None of these cases have any application here.

9

obtaining a remedy, the judicial immunity privilege does not apply.") (citation and internal quotation marks omitted).[8]

As Eckert noted in its brief, the purpose of the judicial privilege is to foster the search for the truth. Br. at 9. Eckert's false denials of an active ongoing conflict did just the opposite. The judicial privilege does not apply to Eckert's efforts to conceal its conflict from POM and its motion to dismiss Count III must be denied.

### B. POM has adequately pled justifiable reliance.

In challenging the allegations of reliance, Eckert urges the Court to disregard the allegations in the Amended Complaint in favor of its argument that POM must not have relied on the denial of a conflict because it initiated this action. Br. at 12. This argument necessarily fails under *Iqbal* and *Twombly*.

The false statement that forms the basis for the fraud claim in Count III is Eckert's denial of involvement in litigation adverse to POM. The Amended Complaint alleges that "Eckert knowingly misrepresented the firm's involvement in the Commonwealth Court litigation in the January 17, 2020 letter sent by" its Chief Legal Officer, Timothy S. Coon. Am. Compl. ¶ 72. The letter states that

---

[8] Furthermore, the issue of whether a privilege applies is a fact-based issue not properly resolved by way of a motion to dismiss. *See generally Schanne*, 121 A.3d at 951-52.

"Eckert is not counsel for a party in a litigation where POM is an adverse party. . . ." *Id.* ¶ 39. The Amended Complaint alleges that the denial was false, that Eckert intended to conceal from POM its advocacy against POM's interests in Commonwealth Court and that POM suffered significant harm as a result of reliance on the false denial. *Id.* ¶¶ 72, 74. Specifically, "Eckert personnel secretly continued to communicate and collaborate with parties in litigation adverse to POM and met with government officials concerning POM's games after Eckert denied involvement in such matters" and "[a]ll of this was discovered after this litigation was commenced." *Id.* ¶ 75. These allegations, which must be accepted as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009), plausibly allege the required reliance.

Further, justifiable reliance implicates issues of fact that are appropriate for resolution by a jury rather than a motion to dismiss under Rule 12(b)(6). *See, e.g., Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 141 (3d Cir. 2005) ("This case like most others raising the issue of justifiable reliance, presents disputed issues of material fact that are simply more appropriate for resolution by a jury than by a judge"); *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F. Supp. 2d 517, 534 (M.D. Pa. 1999) ("The question of justifiable reliance is most appropriately left to the jury. Reasonableness of reliance involves all of the elements of the transaction, and is rarely susceptible of summary disposition.");

11

*DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 593 (Pa. Super. 2013) ("[J]ustifiable reliance is typically a question of fact for a fact-finder to decide.") (citations omitted); *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 841 (Pa. Super. 2005) ("The right to rely upon a representation is generally held to be a question of fact.").

\* \* \* \* \*

Because Eckert's false statements to POM are not privileged and POM has sufficiently alleged reliance, Eckert's motion to dismiss Count III must be denied.

## III. Eckert's Flagrant Breaches of Fiduciary Duty and Intentional Misrepresentations to Its Own Client To Conceal Its Conflict of Interest Are More Than Sufficient to Support a Demand for Punitive Damages.

Eckert contends that punitive damages are not available because the Amended Complaint fails to allege conduct that is outrageous. Br. at 12-15. Respectfully, this is not a fair reading of the Amended Complaint.

The Amended Complaint alleges that, in reliance on the duties of undivided loyalty and confidentiality owed to POM as a client of the Eckert firm, POM entrusted Eckert with highly confidential, proprietary and non-public information about its products and business operations as well as confidential and privileged communications concerning its legal strategies. Am. Compl. ¶¶ 15-16, 22. The Amended Complaint alleges that Eckert deliberately and knowingly breached the duty of undivided loyalty to POM by representing Parx Casino in matters adverse

12

to POM's interests. *Id.* ¶¶ 11-12, 20-30, 34. Eckert knew, but failed to disclose, at the time it accepted the POM engagement that it would engage in legislative action and potentially litigation on behalf of Parx Casino adverse to POM but did not inform POM of the conflict. *Id.* ¶¶ 11-13, 34.

As forecasted in internal emails not shared with POM, Eckert, while representing POM, advocated against the legality of POM games, including by commencing actions against establishments that offer POM games and seeking a declaratory judgment that those games constitute a public nuisance. *Id.* ¶¶ 20-21. Eckert also engaged in legislative and lobbying efforts to undermine the legality of POM games while representing POM. *Id.* ¶¶ 23, 25. Among other things, while representing POM, Eckert wrote to hundreds of municipalities to encourage them to adopt ordinances banning POM games. *Id.* ¶ 23. In addition, Eckert covertly supported and assisted POM's adversaries in litigation matters pending in Pennsylvania Commonwealth Court, *id.* ¶¶ 42-45, and tried to conceal its advocacy against POM by soliciting Hawke McKeon to enter its appearance for Parx Casino while Eckert directed the opposition behind the scenes, *id.* ¶¶ 46-48.[9]

---

[9] Eckert's effort to conceal this latter act of duplicity prompted the Honorable Joseph F. Saporito, Jr. to *sua sponte* declare that Eckert is judicially estopped from asserting the attorney-client privilege and work product doctrines to shield its communications concerning the conflicted representation. ECF 87 at 36-40. In a decision appealed to this Court and later remanded to Judge Saporito for additional argument, Judge Saporito found that, based on his *in camera* review of Eckert's

13

When POM questioned Eckert about its representation of Parx, Eckert denied any involvement in the Commonwealth Court litigation although it was contemporaneously actively conspiring with POM's adversary against POM in Commonwealth Court. *Id.* ¶¶ 39, 41-42. But there is more. Eckert dropped POM like the proverbial "hot potato" in favor of its more lucrative business relationship with Parx and continues to advocate on behalf of Parx and against POM in multiple fora. *Id.* ¶¶ 37, 51-52. While Eckert eventually came clean and admitted that it never secured an advance waiver that would have permitted it to represent Parx in matters adverse to POM, (ECF 91), it did so only after it got caught and still refuses to concede that it cannot attack the same POM games it was retained by POM to defend. Eckert acted and continues to act for its own conflicted interest and continues to elevate the interests of Parx Casino over the interests of POM in plain violation of its fiduciary duties. *Id.* ¶¶ 29, 37, 51. As detailed in the Amended Complaint, Eckert's conduct was "malicious, wanton and willful and done with reckless indifference to the rights of POM." Am. Compl. ¶¶ 70, 76.

There is no serious question that the conduct alleged in the Amended Complaint is sufficient to warrant an award of punitive damages. "Punitive damages may be awarded for conduct that is outrageous, because of the

---

communications, Eckert's invocation of the privilege while denying involvement in the litigation was "arguably adopted in bad faith." *Id.* at 37.

14

defendant's evil motive or his reckless indifference to the rights of others." *See generally Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citation omitted). Here, Eckert knowingly advanced the interests of Parx Casino over POM, tried to destroy the Pennsylvania market for POM's games and concealed its duplicity by mispresenting its role to POM and by hiding behind another law firm. Eckert's conduct is outrageous and cries out for an award of punitive damages. Indeed, federal and state courts in Pennsylvania have consistently held that intentional misrepresentations and knowing breaches of fiduciary duty in circumstances less egregious than these are sufficient to support a demand for punitive damages. *See, e.g., Motorup Corp. v. Galland, Kharasch & Garfinkle, P.C.*, No. 00-2212, 2001 WL 34368760, at *5 (E.D. Pa. Dec. 4, 2001) (plaintiff entitled to pursue claim for punitive damages based on allegation that lawyer had "divided loyalties" and "placed the interests of [another client] above and in conflict with the interests of [plaintiff]"); *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1263 (Pa. Super. 1983) ("[I]t is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages."); *Rizzo v. Haines*, 555 A.2d 58, 69 (Pa. 1989) ("[B]reaches of fiduciary duty, intentional withholding of critical information and fraudulent misrepresentation[] were more than sufficient to justify the punitive damage award."); *McClellan v. Health Maint. Org. of Pa.*,

15

604 A.2d 1053, 1061 (Pa. Super. 1992) ("[O]f course, a cause of action for misrepresentation can support a claim for punitive damages.") (citations omitted).

While Eckert continues to posit that it mistakenly believed it had acquired an advance waiver, *see, e.g.*, Br. at 13, this argument has no relevance in evaluating a motion under Rule 12(b)(6) and does not in any way undermine the sufficiency of the allegations in the Amended Complaint concerning Eckert's outrageous, reckless and willful conduct.

Because POM has alleged a factual basis sufficient to warrant an award of punitive damages, Eckert's motion to dismiss the demands for punitive damages must be denied.

## CONCLUSION

For the reasons above, the allegations in the Amended Complaint establish plausible claims for declaratory judgment and fraud and are sufficient to support POM's demand for punitive damages. Eckert's partial motion to dismiss should be denied. Alternatively, POM should be afforded an opportunity to amend its pleading. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must

16

permit a curative amendment unless such an amendment would be inequitable or

futile.") (citation omitted).

Respectfully submitted,

s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Dated:  September 24, 2021

17

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)</u>

I, Donna A. Walsh, hereby certify that the foregoing Memorandum of Law in Opposition to Motion To Dismiss is in compliance with Local Rule 7.8(b)(3). The brief contains 3940 words as computed by Microsoft Office Word.

<u>/s/ Donna A. Walsh</u>

Date:  September 24, 2021

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Opposition to Motion To Dismiss was served upon the following counsel of record via the Court's ECF system on this 24th day of September 2021:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

/s/ Donna A. Walsh
Donna A. Walsh