## APPENDIX OF UNPUBLISHED OPINIONS

1.  *Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, No. 19-1600, 2021 WL 431475 (D. Del. Feb. 8, 2021) *recommendation adopted*, 2021 WL 1152982 (D. Del. Mar. 26, 2021)

2.  *Doe v. Garabedian*, 2020 WL 1244126 (E.D. Pa. Mar. 13, 2020)

3.  *Hammonds v. Aigeldinger*, No. 20-657, 2021 WL 3022633 (M.D. Pa. July 26, 2021)

4.  *Michtavi v. Scism*, No. 12-1196, 2013 WL 371643 (M.D. Pa. Jan. 30, 2013)

5.  *Motorup Corp. v. Galland, Kharasch & Garfinkle, P.C.*, No. 00-CV-2212, 2001 WL 34368760 (E.D. Pa. Dec. 4, 2001)

1

2021 WL 431475
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

The AMERICAN INSTITUTE FOR CHARTERED
PROPERTY CASUALTY UNDERWRITERS,
and The Institutes, LLC, Plaintiffs,
v.
Adam POTTER, et al., Defendants.

Civil Action No. 19-1600-CFC-SRF
|
Signed 02/08/2021

**Attorneys and Law Firms**

Barry M. Klayman, Cozen & O'Connor, Wilmington, DE, David J. Walton, Pro Hac Vice, Matthew J. Siegel, Pro Hac Vice, Robert W. Hayes, Pro Hac Vice, for Plaintiffs.

Seth Andrew Niederman, Katelyn M. Crawford, Fox Rothschild LLP, Matthew Denn, DLA Piper LLP (US), Wilmington, DE, Andrew P. Cooper, Pro Hac Vice, Christopher G. Oprison, Pro Hac Vice, for Defendants.

**REPORT AND RECOMMENDATION**

Sherry R. Fallon, United States Magistrate Judge

**I. INTRODUCTION**

*1 Presently before the court in this breach of contract case are a joint motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants PBIH, LLC ("PBIH") and Adam Potter ("Potter," together with PBIH, "Moving Defendants") (D.I. 51),[1] and a separate motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Business Insurance Holdings, Inc. ("BIH").[2] (D.I. 65) For the following reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART Moving Defendants' motion and GRANTING-IN-PART and DENYING-IN-PART BIH's motion.

**II. BACKGROUND**[3]

**a. Procedural History**

On August 28, 2019, plaintiffs The American Institute for Chartered Property Casualty Underwriters ("AICPCU") and The Institutes, LLC ("Institutes," together with AICPCU, "Plaintiffs") initiated this action by filing a complaint against defendants Potter and Business Insurance Holdings, LLC. (D.I. 1) On March 27, 2020, Plaintiffs filed an unopposed motion for leave to file an amended and supplemental complaint (the "amended complaint"), which the court so ordered. (D.I. 46) On the same date, Plaintiffs filed the amended complaint, which, *inter alia*, added BIH as a defendant in this case. (D.I. 48)

**b. The Parties**

AICPCU is a Pennsylvania non-profit corporation with its principal place of business in Pennsylvania. (D.I. 48 at ¶ 1) Institutes is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. (*Id.* at ¶ 2) Both provide nationwide educational services on risk management and property-casualty insurance topics directed to insurance professionals and the general public. (*Id.* at ¶ 8)

Potter is a citizen of and resides in Connecticut. (*Id.* at ¶ 3) PBIH is a Florida limited liability company with its principal place of business in Illinois, and Potter is its only member. (*Id.* at ¶ 4) BIH was formerly known as C&E MGMT and Planning, Inc. and is a Florida corporation with its principal place of business in Illinois. (*Id.* at ¶ 5) The court refers to Potter, PBIH, and BIH collectively as "Defendants." (*See* D.I. 48 at 1)

**c. Facts**

*2 This action stems from the alleged breach of the non-compete and non-solicitation provisions ("restrictive covenants") of an Asset Purchase Agreement ("the APA").[4] (*Id.* at ¶¶ 151–79) On or about June 1, 2018, Plaintiffs entered into the APA with Claims Pages, LLC ("CP"), C&E MGMT and Planning, Inc. ("C&E"), CLM Group, Inc. ("CLM"), Potter, and Moxie HC, LLC ("Moxie"). (*Id.* at ¶ 9) At the time, Moxie owned CP and CLM, and Potter owned C&E.[5] (*Id.* at ¶ 10) In addition, Potter owned PBIH, either directly or through C&E. (*Id.* at ¶ 11) On June 7, 2018, C&E changed its name to Business Insurance Holdings, Inc.[6] (*Id.* at ¶ 12)

Pursuant to the APA, Plaintiffs paid Potter $17,329,098 at closing along with an additional $2,655,049 for substantially all of the assets of CP, C&E, and CLM. (*Id.* at ¶ 14) In relevant

part, the APA contains the following non-compete and non-solicitation clauses:

> (a) During the period beginning on the Closing Date and ending the fifth (5th) anniversary of the Closing Date (the "Non-Compete Period"), each Selling Party[7] covenants and agrees not to, and shall cause its Affiliates[8] not to, directly or indirectly, and anywhere in the United States, conduct, manage, operate, engage in or have an ownership interest in any business or enterprise engaged in any activities that are otherwise competitive with any of the Sellers' Businesses as conducted as of the Closing Date, except that during the Non-Compete Period any Selling Party, or any other party listed on Schedule 6.12, may undertake the activities set forth on Schedule 6.12 attached hereto (collectively, the "Permitted Activities").

> (b) With the exception of Permitted Activities, during the Non-Compete Period, each Selling Party shall not, and shall cause its Affiliates not to, directly or indirectly, call-on, solicit or induce, or attempt to solicit or induce, any customer or other business relation of Buyer for the provision of products or services related to any of Sellers' Businesses or in any other manner that would otherwise interfere with the business relationship between Buyer and its customers and other business relations.

(D.I. 53, Ex. A at § 6.12(a)–(b)). As of the closing date, the APA defines CLM's business to include "various products and services ranging from an annual conference to various other conferences offered throughout the year ... not limited to any specific topics or segments within the claims and litigation management industries."[9] (*Id.* at ¶ 22) However, Schedule 6.12 of the APA defines the "Permitted Activities" carved out for PBIH within its business defined as follows:

> [A] news and information source for executives concerned about risk and the impact on their business, including risk managers, insurers, brokers and other providers of insurance products and services. Business Insurance delivers in-depth analysis on new and emerging risks, case studies of successful programs, market intelligence on trends, and guidance on how to capitalize on opportunities and overcome

challenges. Business Insurance covers core risk management and insurance areas such as property/casualty insurance, captive insurance and other alternative risk transfer vehicles, and enterprise risk management.

**\*3** (*Id.* at ¶ 28) Schedule 6.12 also expressly permits PBIH to conduct a limited number of events.[10] (*Id.* at ¶¶ 29–30)

Before the parties entered into the APA in June of 2018, "Business Insurance"[11] did not offer or promote conferences related to claims and litigation management. (*Id.* at ¶ 42) In July 2019, Plaintiffs learned that Defendants were promoting a Cannabis & Hemp Conference ("the C&H Conference") and an Intellectual Property Conference ("the IP Conference" and, together with the C&H Conference, "the BI Conferences"), both of which were scheduled to occur in October 2019. (*Id.* at ¶¶ 46–47) Neither conference was listed as a "Permitted Activity" in Schedule 6.12. (*Id.* at ¶ 48) The C&H Conference was described as a "new conference centered on cannabis insurance and risk management" for insurance and cannabis industry professionals "grappling with complex coverage and liability issues." (*Id.* at ¶ 49) When this lawsuit was filed in August of 2019, approximately 200 individuals had registered to attend the C&H Conference. (*Id.* at ¶ 50) The IP Conference was described as an exploration of "business exposure" resulting from intellectual property that aims to educate insurance professionals about "risk management and insurance strategies to protect intellectual property assets" and identify "established and new insurance protections" available to insurance professionals. (*Id.* at ¶ 51)

**\*4** After learning of the BI Conferences, Plaintiffs sent a letter to Potter on July 29, 2019, in which Plaintiffs demanded cancellation and notified Potter that the BI Conferences constituted a breach of the APA. (*Id.* at ¶ 53) On August 12, 2019, Plaintiffs repeated their demand in a follow up letter to Potter. (*Id.* at ¶ 55) In response to both letters, Defendants refused to cancel the events. (*Id.* at ¶¶ 54, 56) Instead, Potter offered three concessions to alleviate Plaintiffs' concerns:

> (1) Defendants added a statement on the landing page for the C&H Conference, stating that "This Conference was not developed and is not intended for claims and litigation management professionals"; (2) Defendants modified one of the session titles for the C&H Conference to indicate

that it does not address claims; and (3) Defendants would not knowingly allow any claims and litigation management professionals to attend the conference.

(*Id.* at ¶ 56)

In August 2019, Potter sold BIH to Beacon International Group, Inc. ("Beacon"),[12] which is owned and operated by Stephen Acunto, Sr., and Carole Acunto (collectively, "the Acuntos"). (*Id.* at ¶¶ 97–98) A press release announcing the sale highlighted "Business Insurance's growing annual conference schedule." (*Id.* at ¶ 105) (internal quotations and emphasis omitted) After the sale, Potter remained active within BIH. (*Id.* at ¶¶ 107, 110–16)

Potter's sister, Sydney Posner ("Posner"),[13] started The Claims Xchange, Inc. ("ClaimsX"), which directly competes with CLM. (*Id.* at ¶¶ 123, 128) Posner worked for CLM until she was terminated for misconduct on September 20, 2019. (*Id.* at ¶ 134) Before her termination, and with Potter's help, Posner began working to establish ClaimsX to compete with CLM. (*Id.* at ¶¶ 135, 138) ClaimsX "connects innovative and collaborative professionals who share a passion for advancing the claims industry." (*Id.* at ¶ 124) ClaimX's "membership includes claims professionals, risk professionals, corporate counsel, defense attorneys, and service providers." (*Id.* at ¶ 125) In addition, ClaimsX has become one of Business Insurance's strategic partners and has "scheduled events throughout 2020 and beyond" targeting the same professionals as CLM. (*Id.* at ¶¶ 126, 129, 131–32)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See* Umland v. Planco Fin. Servs., 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

*Twombly*, 550 U.S. 544, 570 (2007); *see also* Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See* Iqbal, 556 U.S. at 663; Twombly, 550 U.S. at 555–56.

*5 The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## IV. DISCUSSION

### a. PBIH

The court first addresses the motion to dismiss Plaintiffs' breach of contract, tortious interference, and unjust enrichment claims against PBIH. PBIH advances several arguments as to why the court should dismiss Plaintiffs' claims against it. (D.I. 52) The court recommends that all counts should be dismissed as to PBIH because the Plaintiffs fail to plead any substantive claims against PBIH individually. (D.I. 48 at ¶¶ 4, 11, 38) Only three substantive allegations in the amended complaint mention PBIH individually. (*Id.*) None of those three[14] relate to any of the elements[15] required to plead claims of breach of contract, tortious interference, or unjust enrichment. (*See id.*)

In response, Plaintiffs argue that the amended complaint does not "simply group[ ] PBIH together with its co-defendants." (D.I. 54 at 11) Instead, without citing a specific allegation, Plaintiffs generally assert that the amended complaint "specifically allege[s] each defendants' involvement." (*Id.* at 12) Plaintiffs acknowledge that

the amended complaint "frequently refer[s] to defendants collectively;" however, they argue such collective referral is "grounded in the allegations that they were acting together." (*Id.*) Plaintiffs fail to direct the court to any factual allegation in the complaint plausibly stating that PBIH acted in concert with any co-defendant to satisfy any element of any claim in issue. Nor did Plaintiffs cite any facially plausible factual allegation in the amended complaint indicating individual conduct by PBIH that would satisfy any element of the causes of action at issue.

Moreover, a complaint will not survive a Rule 12(b)(6) motion if it "combine[s] allegations against multiple defendants" in a manner that fails to provide each defendant with adequate notice of the basis for the underlying claims against them. *See T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017); *Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, C.A. No. 18-073-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019). Under the heading, "Preliminary Statement," the amended complaint identifies the various defendants in this case as follows: Plaintiffs "bring this action against Defendants Adam Potter ('Potter'), PBIH, LLC f/k/a Business Insurance Holdings, LLC ('PBIH'), and Business Insurance Holdings, Inc. ('BIH') (collectively, 'Defendants')." (D.I. 48 at 1) Thereafter, the amended complaint frequently refers to "Business Insurance" without ever defining it. (*See, e.g., id.* at ¶¶ 42, 45, 96) Referring to an undefined "Business Insurance" is ambiguous in this case because the abbreviated names used to identify two co-defendants, BIH and PBIH, both include "Business Insurance." (D.I. 48 at 1) The amended complaint also refers to "Defendants" generally at various points without identifying which entity is responsible for the relevant conduct. (*See, e.g., id.* at ¶¶ 54, 59, 165, 168) Because of the ambiguity resulting from the failure to define "Business Insurance" and the generalized group pleading of conduct by "Defendants," the amended complaint fails to provide notice to PBIH of the basis for the underlying claims against it. *See T-Jat*, 2017 WL 896988, at *7; *Adverio*, 2019 WL 581618, at *6 ("[A]llegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard."). Therefore, the court recommends granting PBIH's motion to dismiss Counts I, II, and III of the amended complaint against it.

### b. Count I – Breach of Contract Against BIH

**\*6** "To state a claim for breach of contract under Delaware law,[16] a plaintiff must allege facts sufficient to enable a defendant to plausibly infer: (1) the existence of a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff." *Tendyne Holdings, Inc. v. Abbott Vascular, Inc.*, C.A. No. 18-1070-CFC, 2019 WL 2717857, at *2 (D. Del. Jun. 28, 2019) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

BIH advances several arguments as to why the court should dismiss Plaintiffs' breach of contract claim against it. First, BIH argues that Plaintiffs' breach of contract claim against it should be dismissed because it is not a party or otherwise subject to the APA while it is under Beacon's ownership.[17] (D.I. 66 at 3–6, 10) C&E was a "Selling Party" subject to the restrictive covenants at issue. (D.I. 67, Ex. 1 at § 6.12; D.I. 48 at ¶ 13) After the APA was executed, C&E changed its name to BIH. (D.I. 48 at ¶¶ 5, 9, 12) BIH does not dispute that its name change did not extinguish its obligations under the APA's restrictive covenants. (11/17/20 Tr. at 18:14–18) Instead, BIH argues that its obligations under the APA ceased fifteen months after the APA was executed when Potter relinquished his control over BIH by selling it to Beacon via a Stock Purchase Agreement ("the SPA"). (*Id.* at 18:19–21:20) However, BIH's argument is a factual dispute that ignores allegations in the amended complaint. (*See* D.I. 48 at ¶¶ 97–120) For example, the amended complaint alleges that Potter "stayed involved with [BIH] and helped to build the business" after BIH was sold to Beacon. (D.I. 48 at ¶ 107) BIH's reliance on disputed facts fails at this stage to warrant dismissal of all or a portion of Plaintiffs' breach of contract claims against it. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 1991 WL 138431, at *2 (Del. Super. Ct. July 15, 1991) (quoting *Bankers Life & Cas. Co. v. Kirtley*, 338 F.2d 1006, 1013 (8th Cir. 1964) ("Neither a change in name of a corporation nor a change in its stock or stockholders ordinarily will affect its rights and obligations.").

BIH also argues that the amended complaint lacks factual allegations of breach and damages. (D.I. 66 at 10–14) With respect to breach, BIH argues that the C&H Conference complies with the APA because "the C&H Conference ... excluded any 'claims and litigation management professionals.' " (D.I. 66 at 12 (quoting D.I. 48

at ¶ 56)) BIH argues that it cured any violation of the non-compete by limiting the attendees, which impermissibly calls for the court to make a factual finding against Plaintiffs at the pleading stage. (*See id.* at 12–13) Contrary to BIH's argument, the amended complaint contains plausible factual allegations demonstrating that the C&H Conference targeted insurance professionals and addressed topics "centered on cannabis insurance and risk management" in direct competition with CLM, a "Seller's Business" under the APA. (D.I. 48 at ¶¶ 46–50) The amended complaint defines CLM's pre-APA business as "provid[ing] educational conferences and other live delivery events, for the benefit of its member community, which consists of corporate counsel, risk managers, claims managers, litigation managers, adjusters, brokers, service providers, and defense counsel, as well as other industry professionals." (*Id.* at ¶ 61) In addition, between 2014 and 2017, CLM offered at least eight cannabis-related presentations. (*Id.* at ¶ 70) BIH also argues that the amended complaint lacks any factual allegations indicating its involvement with ClaimsX. (D.I. 66 at 14) BIH's argument ignores factual allegations in the amended complaint, namely: BIH's owners served as members of the ClaimsX board, and ClaimsX is "promoted by" and is a "strategic partner" of Business Insurance. (D.I. 48 at ¶¶ 130–32) Accepting these plausible factual allegations as true, the amended complaint states a breach of the APA.

**\*7** With respect to damages, BIH argues that the amended complaint lacks factual allegations to state a breach of contract claim. (D.I. 66 at 13–14; D.I. 73 at 7–8) In response, Plaintiffs argue (1) the APA permits Plaintiffs to seek injunction relief without alleging actual damages;[18] and (2) Plaintiffs have sufficiently alleged that BIH caused them injury. (D.I. 71 at 12–15) The APA states in relevant part as follows:

> Each Selling Party shall not contest that Buyer's remedies at law for any breach or threat of breach by any Selling Party or any of its affiliates of the provisions of this Section 6.12 will be inadequate, and that Buyer shall be entitled to seek an injunction or injunctions to prevent breaches of the provisions of this Section 6.12, without proving actual damages, and to enforce specifically such terms and provisions, in addition to any

other remedy to which Buyer may be entitled at law or equity.

(D.I. 67, Ex. 1 at § 6.12(d)) The amended complaint seeks both injunctive and legal relief as a result of BIH's alleged breach of the APA. (D.I. 48 at 38) Plaintiffs' "need not allege an exact monetary figure in order to sufficiently plead that [they] suffered damages from the breach of contract." *See Weyerhaeuser Co. v. Domtar Corp.*, C.A. No. 14-024-SLR, 61 F. Supp. 3d 445, 453 (D. Del. 2014) (citing *VLIW Tech.*, 840 A.2d at 613). However, Plaintiffs must do more than state, in conclusory fashion, that they have been damaged. *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (citing *Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 F. App'x 224, 231 (3d Cir. 2007)).

The amended complaint contains facially plausible allegations of Plaintiffs' damages resulting from BIH's alleged breach of the APA. (D.I. 48 at ¶¶ 147–49) For example, the amended complaint states that "[a]s a direct result of Defendants' conduct in violation of the restrictive covenants, [Plaintiffs] face future losses of customers and sponsors, loss of good will, loss of revenues, and dilution and confusion in the marketplace." (*Id.* at ¶ 147) The amended complaint also states that, as a result of BIH's alleged breach, Plaintiffs have been forced to retain counsel and incur costs to "investigate and remedy Defendants' conduct." (*Id.* at ¶ 148) BIH challenges these allegations only on the basis that they are "conclusory." (D.I. 66 at 13–14) However, considering the facially plausible breaches alleged with respect to the C&H Conference and BIH's involvement with ClaimsX, and the allegations that Plaintiffs sustained commercial losses as a result (D.I. 48 at ¶¶ 147–48), the amended complaint plausibly alleges that Plaintiffs have suffered an injury connected to BIH's alleged breach of the APA. *Cf. Hydrogen Master Rights*, 228 F. Supp. 3d at 333 (dismissing a breach of contract claim based on insufficient damages allegations where the plaintiff had merely alleged that "[it] ha[d] been damaged").

In sum, the court finds that the amended complaint contains sufficient plausible factual allegations to state a breach of contract claim against BIH. Therefore, the court recommends denying BIH's motion to dismiss Count I of the amended complaint against it.

### c. Count II – Tortious Interference Against BIH

*8 To plead a tortious interference claim, a plaintiff must allege "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." See Truinject Corp. v. Nestle Skin Health, S.A., C.A. No. 19-592-LPS-JLH, 2020 WL 70981, at *16 (D. Del. Jan. 7, 2020), report and recommendation adopted, 2020 WL 1270916 (D. Del. Mar. 17, 2020) (quoting Enzo Life Sci., Inc. v. Digene Corp., 295 F. Supp. 2d 424, 429 (D. Del. 2003)).

As a preliminary matter, the parties dispute the level of specificity required to successfully plead tortious interference. (D.I. 66 at 16; D.I. 71 at 15–17; D.I. 73 at 9–10) As Plaintiffs argue, they do "not need to identify the prospective business relationship with which the defendant tortiously interfered" to survive a motion to dismiss.[19] See Dynamis Therapeutics, Inc. v. Alberto-Culver Int'l Inc., C.A. No. 09-773-GMS, 2010 WL 3834405, at *5 (D. Del. Sept. 24, 2010) (citing Enzo, 295 F. Supp. 2d at 429–30). Instead, Plaintiffs must allege factual allegations that plausibly " 'establish some basis of a bona fide expectancy' of [their] relationship with a third party." See Truinject, 2020 WL 70981, at *16 (quoting World Energy Ventures, LLC v. Northwind Gulf Coast LLC, 2015 WL 6772638, at *7 (Del. Super. Ct. Nov. 2, 2015)). Plaintiffs must also "allege that the third party 'was prepared to enter into a business relationship but was dissuaded from doing so by the defendant.' " Id. (quoting GWO Litig. Trust v. Sprint Sols., Inc., 2018 WL 5309477, at *12 (Del. Super. Ct. Oct. 25, 2018)).

*9 BIH argues that the court should dismiss the tortious interference claim against it because the amended complaint fails to identify Plaintiffs' potential customers that BIH interfered with in holding the C&H Conference.[20] (D.I. 66 at 14–17) In response, Plaintiffs argue that they are not required to "identify any actual customers" to state a claim for tortious interference. (D.I. 71 at 15–17)

No attempt has been made by Plaintiffs to plead the elements of a claim for tortious interference. The amended complaint does not contain plausible factual allegations stating Plaintiffs' "basis of a bona fide expectancy" or

that some third party "was prepared to enter into a business relationship but was dissuaded from doing so by [BIH]." See Truinject, 2020 WL 70981, at *16. The amended complaint contains conclusory allegations that Plaintiffs "have a reasonable expectation that CLM's business relationships will continue and that they will continue to be the leading provider of educational services to their target market." (D.I. 48 at ¶ 166) The amended complaint concludes that "Defendants have knowingly and intentionally interfered with CLM's existing and prospective contractual and business relationship" based on "their attempt to offer conferences that directly compete with CLM's past, current, and future offerings." (Id. at ¶ 167) The amended complaint recites conclusions but lacks factual allegations of any actions by BIH to dissuade a potential customer from entering into a business relationship with Plaintiffs. Therefore, the court recommends dismissing Count II of the amended complaint against BIH. See Truinject, 2020 WL 70981, at *17 (recommending dismissal of a tortious interference claim because "the Amended Complaint ... fail[ed] to allege facts suggesting that the [defendants] dissuaded any third parties from doing business with [the plaintiff]").

### d. Count III – Unjust Enrichment

"The elements of unjust enrichment under Delaware law are: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.' " Well Thrive Ltd. v. Semileds Corp., C.A. No. 17-794-MN, 2020 WL 7490109, at *9 (D. Del. Dec. 21, 2020) (quoting Nemec v. Shrader, 991 A.2d 1120, 1130 (Del. 2010)). "In evaluating a party's claim for an equitable remedy based on unjust enrichment, however, 'courts inquire at the threshold as to whether a contract already governs the parties' relationship.' " Id. (quoting Vichi v. Koninklijke Philips Elecs. N.V., 62 A.3d 26, 58 (Del. Ch. 2012)). "It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim." Id. (quoting Vichi,, 62 A.3d at 58) However, if a contract does not govern the relationship between the parties, "under Federal Rule of Civil Procedure 8(e), a plaintiff is permitted to plead [unjust enrichment] in the alternative." MIG Investments LLC v. Aetrex Worldwide, Inc., C.A. No. 11-039-LPS, 852 F. Supp. 2d 493, 513 (D. Del.

2012) (citing *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 295 F. Supp. 2d 430, 438 (D. Del. 2003)).

### i. Potter

**\*10** Moving Defendants argue that Plaintiffs' unjust enrichment claim should be dismissed because it impermissibly overlaps with Plaintiffs' breach of contract claim. (D.I. 52 at 17–20) In response, Plaintiffs argue the amended complaint properly alleges unjust enrichment in the alternative. (D.I. 54 at 14–18)

Plaintiffs unjust enrichment claim against Potter fails if the APA "governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009); *see also Moon Express, Inc. v. Intuitive Machs., LLC*, C.A. No. 16-344-LPS-CJB, 2017 WL 4217335, at \*9 (D. Del. Sept. 22, 2017), *report and recommendation adopted*, 2017 WL 11554232 (D. Del. Oct. 30, 2017). Plaintiffs argue that their unjust enrichment claim against Potter extends beyond the scope of the APA because it addresses conduct—misappropriation of trade secrets, for example—that the law deems unfair regardless of whether a contract exists between the parties.

(D.I. 54 at 16–17) Plaintiffs cite *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405 (Del. Ch. Dec. 22, 2010) to support this argument. (*Id.*) In *Narrowstep*, the court found that the plaintiff had pleaded enough plausible facts "to infer that the [contracts at issue] and other documents incorporated in them d[id] not comprehensively govern the relationship between the parties with respect to at least the exchange of equipment so as to preclude [the plaintiff] from pleading unjust enrichment as an alternative remedial theory."

*Id.* at \*16. Unlike *Narrowstep*, the amended complaint lacks facially plausible allegations that the APA did not "comprehensively govern the relationship" between Plaintiffs and Potter. *See id.*

Plaintiffs argue that the amended complaint alleges that "Potter is assisting Sydney Posner[21] in the development of a competitive business that is using trade secret and highly confidential information misappropriated from Plaintiffs." (D.I. 54 at 17) However, Plaintiffs' factual, non-conclusory allegations of trade secret and confidential information misappropriation relate to only Posner, a non-party to this litigation. (D.I. 48 at ¶¶ 136, 138–39) The

amended complaint lacks non-conclusory allegations that Potter misappropriated Plaintiffs' trade secrets or violated any extra-contractual legal obligation. *Cf. Narrowstep*, 2010 WL 5422405, at \*16–17 (finding the complaint alleged sufficient facts to state a claim for unjust enrichment where the plaintiff had alleged "misuse of its confidential information" in a fraud claim, which extended beyond the contract at issue). Accordingly, the court recommends granting Moving Defendants' motion and dismissing Count III with respect to Potter.[22] *See id.* (noting that "a right to plead alternative theories does not obviate the obligation to provide factual support for each theory") (quoting *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at \*8 (Del. Ch. Feb. 3, 2009)).

### ii. BIH

**\*11** BIH argues, and the court agrees, that Plaintiffs' unjust enrichment claim against it should be dismissed because the amended complaint lacks factual allegations of the elements required to state such a claim. (D.I. 66 at 17–21) Plaintiffs argue that the "crux" of their claim is "that it is fundamentally unfair to allow BIH to retain profits generated from its competition against [P]laintiffs and involvement with ClaimsX, which competes with the businesses Plaintiffs paid nearly $20 million to acquire, and with which BIH agreed not to compete." (D.I. 71 at 20) Plaintiffs cite several allegations in the complaint to support this contention. (*See* D.I. 48 at ¶¶ 14, 37, 122–33, 136, 173–75) However, none of those paragraphs in the amended complaint, nor any other paragraph in the amended complaint, contains a plausible factual allegation regarding an enrichment by BIH related to Plaintiffs' impoverishment beyond a conclusory allegation that "Defendants have unfairly gained a competitive advantage over Plaintiffs." (*Id.* at ¶ 173)

Plaintiffs also argue their unjust enrichment claim should survive because the amended complaint states that BIH unlawfully benefitted from Plaintiffs' trade secrets and confidential information. (D.I. 71 at 19–20) Plaintiffs' argument fails, however, because no allegation in the amended complaint states that BIH used Plaintiffs' trade secrets or confidential information to unfairly compete. (D.I. 48) As already stated, the amended complaint alleges that Posner, a non-party to this litigation, and not BIH, "improperly accessed a copy of CLM's entire file-share

database containing hundreds of files containing CLM's proprietary, confidential, and trade-secret information." (*Id.* at ¶ 136) Therefore, the court recommends granting BIH's motion and dismissing Count III against it.

### e. Count IV – Declaratory Relief Against Potter [23]

"A declaratory judgment is appropriate where it will: '(1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to present action.' " *Well Thrive*, 2020 WL 7490109, at *9 (D. Del. Dec. 21, 2020) (quoting *Delaware State Univ. Student Housing Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008). "The real value of the judicial pronouncement ... is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Id.* (quoting *Delaware State*, 556 F. Supp. 2d at 374) (emphasis omitted). "A declaration interpreting contractual relationships when the relief sought could affect present behavior of the contracting parties is an appropriate claim for declaratory relief." *Id.* (citing *Delaware State*, 556 F. Supp. 2d at 374).

Moving Defendants argue that Count IV of the amended complaint should be dismissed because it impermissibly seeks a declaration regarding Potter's past conduct. (D.I. 52 at 7–8, 20–21) In response, Plaintiffs first argue that Count IV of the amended complaint seeks appropriate relief. (D.I. 54 at 18–21)

Moving Defendants cite several authorities [24] supporting the proposition that a plaintiff may not request declaratory relief based solely on past conduct. (D.I. 52 at 20–21) Plaintiffs argue that the authorities Moving Defendants cite are not dispositive of the issue before the court because they addressed isolated incidents of alleged constitutional rights violations. (D.I. 54 at 19) Although some of the relevant authorities arose in the context of alleged constitutional rights violations, none limited their respective statements regarding the scope of permissible declaratory relief solely to constitutional rights issues. *See O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016) (citing *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004)); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citing *Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993); *In re Noble*, C.A. No. 18-111-

RGA, 2018 WL 2012903, at *2 (D. Del. Apr. 30, 2018); *see also Swain v. Wilmington Trust, N.A.*, C.A. No. 17-71-RGA, 2018 WL 934598, at *4 (D. Del. Feb. 16, 2018) (dismissing claim for declaratory relief after concluding that the plaintiffs lacked standing to pursue such relief because they "did not adequately allege 'a real and immediate threat of future injury' " and because "[s]peculation, by itself, is not sufficient"); *Benson v. Amguard Ins. Co.*, C.A. No. 16-196-LPS, 2017 WL 2672078, at *3 (D. Del. June 21, 2017) (quoting *Corliss*, 200 F. App'x at 84) ("[A] declaratory judgment is inappropriate when it is brought solely to adjudicate past conduct.") (internal quotations and alterations omitted).

**\*12** The purpose of a declaratory judgment is "to define the legal rights and obligations of the named parties in anticipation of future conduct, not to proclaim their liability for past actions." *O'Callaghan*, 661 F. App'x at 182 (citing *Utah Animal Rights Coal.*, 371 F.3d at 1266; *Corliss*, 200 F. App'x at 84 (citing *Gruntal*, 837 F. Supp. at 89) ("Declaratory judgment is inappropriate solely to adjudicate past conduct."); *see also In re Noble*, 2018 WL 2012903, at *2 ("Asking a court to proclaim that one's rights were violated is not a proper basis for declaratory relief."). Accordingly, Plaintiffs may not seek declaratory relief based on Potter's past conduct alone. *See Benson*, 2017 WL 2672078, at *3 (quoting *Corliss*, 200 F. App'x at 84). The amended complaint states the relevant scope of relief sought as follows:

> [Plaintiffs] seek a declaration that Defendant Potter has violated the terms of the Agreement and that they are entitled to an offset of the sums paid under the Agreement in an amount equal to the damages caused by Defendant Potter's conduct, which upon information and belief will be far in excess of $75,000.

(D.I. 48 at ¶ 179) The amended complaint's prayer for relief seeks "[a] declaration that Defendant Potter has violated the terms of the [APA]." (*Id.* at 38) Plaintiffs argue that the amended complaint "seeks to prevent Defendants from unfairly competing *in the future*." (D.I. 54 at 20) (emphasis in original). The amended complaint states that "Defendants' actions reflect their blatant disregard for contractual and

legal obligations and evinces intent to continue with these violations." (D.I. 48 at ¶ 149) Plaintiffs also note that the restrictive covenants in APA extend until June 2023. *See Well Thrive*, 2020 WL 7490109, *9 (citing *Delaware State*, 556 F. Supp. 2d at 374) ("A declaration interpreting contractual relationships when the relief sought could affect present behavior of the contracting parties is an appropriate claim for declaratory relief."). Construing the facially plausible allegations in the amended complaint in Plaintiffs' favor, the amended complaint contains sufficient allegations that Potter's allegedly breaching conduct "continues or is likely to continue in the future." *See Benson*, 2017 WL 2672078, at *4. Therefore, the court recommends denying Potter's motion to dismiss Count IV of the amended complaint.

## V. CONCLUSION

For the foregoing reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART Moving Defendants' motion to dismiss for failure to state a claim (D.I. 51) and GRANTING-IN-PART and DENYING-IN-PART BIH's motion to dismiss for failure to state a claim (D.I. 65) as follows:

1) GRANTING Moving Defendants' motion and dismissing Counts I, II, and III of the amended complaint against PBIH without prejudice;

2) DENYING BIH's motion with respect to Count I of the amended complaint;

3) GRANTING BIH'S motion with respect to Counts II and III of the amended complaint without prejudice;

4) GRANTING Moving Defendants' motion and dismissing Count III of the amended complaint against Potter without prejudice; and

5) DENYING Moving Defendants' motion with respect Count IV of the amended complaint.

Following the expiration of the objections period and in the event the District Court adopts the recommendation to allow amendment, the court recommends that the District Court thereafter permit Plaintiffs ten (10) days to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

**\*13** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

**All Citations**

Slip Copy, 2021 WL 431475

## Footnotes

1 Moving Defendants seek dismissal of the entire amended complaint as to PBIH. (D.I. 51) However, Moving Defendants seek dismissal of only Counts III and IV as to Potter. (*Id.*) Count IV is a claim for declaratory relief only against Potter. (D.I. 48 at ¶¶ 176–79; D.I. 51; D.I. 52) Accordingly, Counts I and II of the amended complaint survive and are unaffected by Potter's motion. The briefing for the pending motion is as follows: Moving Defendants' opening brief (D.I. 52), Plaintiffs' answering brief (D.I. 54), and Moving Defendants' reply brief (D.I. 59).

2 BIH seeks dismissal of all Counts against it in the amended complaint—Counts I, II, and III. (D.I. 65) The briefing for the pending motion is as follows: Defendant's opening brief (D.I. 66), Plaintiffs' answering brief

(D.I. 71), and Defendant's reply brief (D.I. 73). Moving Defendants also filed a "Response" in support of BIH's motion. (D.I. 70)

The facts in this section are based upon allegations in the amended complaint, which the court accepts as true for the purposes of the present motion to dismiss. See Umland v. Planco Fin. Servs., 542 F.3d 59, 64 (3d Cir. 2008).

The amended complaint incorporates the APA by reference. (D.I. 48) The APA has been separately filed with the court. (D.I. 53, Ex. A; D.I. 67, Ex. 1)

CP provided information as a reference source for insurance claims adjusters; C&E identified and secured conference and event locations, hotel contracts, and outside locations as a service; and CLM operated a national insurance claim and litigation management professional trade association. (D.I. 48 at ¶¶ 15–17)

Business Insurance Holdings, Inc. ("BIH"), formerly C&E, is a named defendant in this case. (D.I. 48)

The APA defines the term "Selling Parties" as "the Companies, Adam Potter and Moxie." (D.I. 67, Ex. 1 at 46) "[T]he Companies" are CP, C&E, and CLM. (*Id.* at 1) On or about June 7, 2018, C&E changed its name to BIH. (D.I. 48 at ¶¶ 5, 9, 12) In August 2019, Potter sold BIH to Beacon International Group, Inc. ("Beacon"). (*Id.* at ¶¶ 97–98)

The APA defines "Affiliate" to mean "with respect to any Person, any Person directly or indirectly controlling, controlled by, or under common control with, such other Person." (D.I. 48 at ¶ 24; D.I. 67, Ex. 1 at 38)

Since the close of the APA, Plaintiffs have used CLM only as a trade name. (D.I. 48 at ¶ 18)

Permitted events include: "(1) World Captive Forum, (2) U.S. Insurance Awards, (3) Break Out Awards, (4) Innovation Awards, (5) Risk Management Roundtable: invitation only roundtable meeting of senior-level risk managers to discuss hot topics), and (6) Women to Watch (EMEA and USA)." (D.I. 48 at ¶¶ 29–30) However, Schedule 6.12 prohibits the "Selling Parties" from engaging in the following activities: (1) "Work/create/develop/offer/promote educational content related to claims and litigation management, unless in partnership with CLM and CP;" (2) "Produce live delivery, such as events, networking, seminars, award programs, and conferences targeted to claims and litigation management professionals;" (3) Undertake any involvement with newsletters, publications, emails, communication, sponsorships, research papers with cannot directly be targeted for claims and litigation professionals;" and (4) "Target or create information that relates to the CP business." (*Id.* at ¶ 32)

"Business Insurance" is not a defined term or entity in the amended complaint. (D.I. 48)

BIH avers that Beacon's proper name is Beacon Intercontinental Group, Inc. (D.I. 66 at 1 n.2)

Plaintiffs have initiated a separate lawsuit against Posner in the United States District Court of the Eastern District of Pennsylvania for her alleged misconduct, *The American Institute For Chartered Property Casualty Underwriters d/b/a The Institutes, et al. v. Sydney Posner, et al.*, Civil Action No. 2:19-cv-05369-NIQA. (D.I. 48 at ¶ 137)

The three allegations are: "Upon information and belief, Defendant PBIH is a Florida limited liability company with its principal place of business in Illinois, and its sole member is Defendant Potter." (D.I. 48 at ¶ 4) "At the time of the Purchase Agreement, upon information and belief, Defendant Potter owned all of the membership interests of Defendant PBIH either directly or through C&E." (*Id.* at ¶ 11) "At some point, Business Insurance Holdings, LLC changed its name to PBIH, LLC and/or PBIH, LLC is the successor-in-interest to Business Insurance Holdings, LLC. In either event, it is equally bound to the terms of the Non-Compete." (*Id.* at ¶ 38)

The required elements for each of Plaintiffs' causes of action are discussed, *infra. See* sections IV.b–d, *infra.*

The APA contains a State of Delaware choice of law provision. (D.I. 67, Ex. 1 at § 10.3) BIH notes that the parties have cited Delaware law as governing the disputes in this litigation, but also highlights that Plaintiffs are located in Pennsylvania. (D.I. 66 at 15 n.10) However, choice of law disputes, if any exist in this case, are not ripe for decision by the court on this motion.

BIH also argues that it does not meet the APA's definition of "Affiliate." (D.I. 66 at 3–6) Plaintiffs concede in their answering brief that they "are not attempting to argue that BIH is an 'Affiliate' of Potter." (D.I. 71 at 3) Therefore, the court focuses its analysis on whether BIH is bound by the APA as a "Selling Party." (*See* D.I. 66 at 4)

American Institute for Chartered Property Casualty Underwriters v...., Slip Copy (2021)

2021 WL 431475

Plaintiffs cite several cases that, they argue, support such a contention: *Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104, at *20 (Del. Ch. June 20, 2019); *Brace Indus. Contracting, Inc. v. Peterson Enter., Inc.*, 2015 WL 5097240, at *2 (Del. Ch. Aug. 28, 2015); *TP Group–CI, Inc. v. Vetecnik*, C.A. No. 16-623-RGA, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016).

BIH argues that the authorities Plaintiffs rely on for such a proposition, like *Corning Inc. v. SRU Biosystems*, 292 F. Supp. 2d 583 (D. Del. 2003) and *Abbot Labs v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006), are unavailing because those cases predate *Twombly* and *Iqbal*. (D.I. 73 at 10 n.2) However, the court does not rely on *Corning* or *Abbot Labs*; the court relies on *Dynamis*, a post *Twombly/Iqbal* district court case. *Dynamis*, 2010 WL 3834405, at *5 (citing *Enzo*, 295 F. Supp. 2d at 429–30) BIH also erroneously argues that *Orthopaedic Associates of S. Delaware, P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018), a Delaware Superior Court case applying a state law pleading standard to a tortious interference claim, articulates the pleading standard the court should apply here. (D.I. 66 at 16; D.I. 73 at 9–10) *Orthopaedic Associates* incorporated the holding of this district court in *Gunn*, a case in which the district court was stating the legal standard for tortious interference at the summary judgment stage, not the Rule 12(b)(6) stage. See *Orthopaedic Associates*, 2018 WL 822020, at *2 (quoting *U.S. Nat'l Bank Ass'n v. Gunn*, C.A. No. 11-1155-RGA, 23 F. Supp. 3d 426, 436 (D. Del. 2014)) ("[A] plaintiff 'must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm.' "). Therefore, the court does not apply the standard articulated in *Gunn* to the present motion to dismiss. *See Enzo*, 295 F. Supp. 2d at 429–30 (noting that differences exist between the pleading standard and the summary judgment standard for tortious interference claims).

BIH also argues that its involvement in the C&H Conference was justified for reasons already described; mainly, BIH rehashes its view that it has not breached the APA. (D.I. 66 at 17) For the reasons described in section IV.b., *supra*, BIH's argument fails.

Sydney Posner ("Posner") is Potter's sister. (D.I. 48 at ¶ 128)

In their reply brief, Moving Defendants also argue that the amended complaint lacks allegations that Potter was enriched by Posner's alleged misappropriations. (D.I. 59 at 10) Moving Defendants' argument on this point with respect to Potter could have been raised in their opening brief and is, therefore, inappropriately made for the first time in their reply brief and not considered by the court. *Progressive Sterilization, LLC v. Turbett Surgical LLC*, C.A. No. 19-627-CFC, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) (citing *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014)).

Count IV seeks declaratory relief against Potter only. (D.I. 48 at ¶ 179) Neither the amended complaint nor Plaintiffs' answering brief cites the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. (D.I. 48; D.I. 54) The parties did not discuss the elements required to successfully state a claim for declaratory relief. (D.I. 52; D.I. 54; D.I. 59)

*O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006); *In re Noble*, C.A. No. 18-111-RGA, 2018 WL 2012903, at *2 (D. Del. Apr. 30, 2018) ("Asking a court to proclaim that one's rights were violated is not a proper basis for declaratory relief.").

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

2021 WL 1152982
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

The AMERICAN INSTITUTE FOR CHARTERED
PROPERTY CASUALTY UNDERWRITERS
and The Institutes, LLC, Plaintiff,
v.
Adam POTTER, PBIH, LLC and Business
Insurance Holdings, Inc., Defendants.

Civil Action No. 19-1600-CFC
|
Signed 04/09/2021
|
Filed 03/26/2021

**Attorneys and Law Firms**

Barry M. Klayman, Cozen & O'Connor, Wilmington, DE, David J. Walton, Pro Hac Vice, Matthew J. Siegel, Pro Hac Vice, Robert W. Hayes, Pro Hac Vice, for Plaintiff.

Seth Andrew Niederman, Katelyn M. Crawford, Fox Rothschild LLP, Matthew Denn, DLA Piper LLP, Wilmington, DE, Christopher G. Oprison, Pro Hac Vice, for Defendants.

MEMORANDUM ORDER

Colm F. Connolly, United States District Judge

*1 Pending before me are objections (D.I. 128) filed by Defendant Business Insurance Holdings, Inc. (BIH) to the Magistrate Judge's February 8, 2021 Report and Recommendation (D.I. 126). The Magistrate Judge recommended in the Report and Recommendation that I grant in part and deny in part BIH's motion to dismiss the Amended Complaint. D.I. 126 at 23. Specifically, she recommended that I grant BIH's motion to dismiss Counts II and III of the Amended Complaint and deny BIH's motion to dismiss Count I. BIH objects to the Magistrate Judge's recommendation that I deny BIH's motion to dismiss Count I.

The Magistrate Judge had the authority to make her recommendation under 28 U.S.C. § 636(b)(1)(B). I review her recommendation de novo. § 636(b)(1); *see also* Fed.

R. Civ. P. 72(b)(3); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

Count I is a contract claim. Plaintiffs allege that BIH and its co-defendants breached a noncompete provision in an Asset Purchase Agreement (APA). BIH is a corporation. When it executed the APA in 2018, BIH had another name—C&E MGMT and Planning, Inc. (C&E). The APA required C&E to change its name after the APA closed, D.I. 53 at 31, and C&E changed its name to BIH before Plaintiffs filed this suit.

The APA explicitly states that its noncompete restrictions apply to "each Selling Party." D.I. 53 at 32. Under the express terms of the APA, BIH (i.e., C&E) and Defendant Adam Potter, who owned BIH when the APA was executed, are each a Selling Party. D.I. 53 at 5, 44, 51. A little over a year after the APA was executed, Potter sold BIH to its current owner, Beacon Intercontinental Group.

In its opening brief filed in support of its motion to dismiss, BIH argued that it "is not a party to the APA" and that "[t]he APA says what it says." D.I. 66 at 1. In BIH's words: " 'Selling Party' is defined to include only 'the *Companies*, Adam Potter, and [another entity not relevant to Defendant's motion to dismiss]" and "[n]owhere does the APA define 'Companies' to include successor entities[ ] or 'renamed' entities." D.I. 66 at 4 (emphasis in original).

In response to this argument, Plaintiffs stated: "The proposition that a party cannot obviate its contractual obligations by merely changing its name hardly needs citation." D.I. 71 at 8. Plaintiffs then gave a list of numerous citations for Delaware cases that flatly reject what Plaintiffs fairly characterized as BIH's "remarkable suggestion" that a company can avoid its contractual obligations by changing its name. D.I. 71 at 8–9. (Delaware law governs the APA.)

In its reply brief, BIH (not surprisingly) changed tack. It conceded that "changing its corporate name did not eliminate its duties under the APA," D.I. 73 at 1; and it argued that, notwithstanding the fact that the APA explicitly defines BIH as a "Selling Party" and explicitly says that the noncompete restriction apply to "each Selling Party," the "context" of the APA showed that BIH is not subject to the noncompete provision because BIH is no longer controlled by Potter. In BIH's words:

American Institue for Chartered Property Casualty Underwriters v. Potter, Slip Copy (2021)

2021 WL 1152982

**\*2** Read in the context of the entire APA, which contains granular detail about the post-transaction activities of Potter but few details about post-transaction activities of [BIH and two other Potter-controlled companies designated as Sellers in the APA], the non-compete provisions were written to prevent Potter from competing with Plaintiffs in an area of the market where the APA recognized that he still intended to actively participate, either directly or through entities that he might control.

D.I. 73 at 4. According to BIH, the APA "reflects the reality that the competitor with which Plaintiffs were concerned was Potter and the various corporate entities he controlled," D.I. 73 at 1–2, and, "read in that context," the noncompete provision does not apply to BIH since it is no longer controlled by Potter, D.I. 73 at 6–7.

BIH also argued in support of its motion to dismiss that the Amended Complaint lacked factual allegations from which it could plausibly be inferred either that BIH violated a noncompete restriction of the APA or that Plaintiffs suffered any damages because of BIH's alleged conduct. D.I. 66 at 13–14.

In analyzing the merits of BIH's contention that it is not a party to the APA the Magistrate Judge did not address Plaintiffs' argument that the express language of the APA subjected BIH to the APA's noncompete restrictions. Instead, the Magistrate Judge focused solely on BIH's argument that BIH is not subject to the noncompete restrictions because it is no longer controlled by Potter. The Magistrate Judge found that this "argument is a factual dispute that ignores allegations [of Potter's control] in the amended complaint." D.I. 126 at 11. The Magistrate Judge also found that the Amended Complaint alleged facts that plausibly imply that BIH breached its contractual obligations and caused Plaintiffs damages. D.I. 126 at 11–13. Based on these findings, the Magistrate Judge recommended that I deny BIH's motion to dismiss Count I. D.I. 126 at 23.

BIH makes two objections to the Magistrate Judge's recommendation. It argues first that "the Magistrate Judge erred as a matter of law in concluding that the non-compete and non-solicitation provisions of the APA applied to BIH after its sale to Beacon Intercontinental Group in August, 2019." D.I. 128 at 1–2. According to BIH, "the plain language of the APA is sufficient to determine that th[e] [noncompete] provisions [of the APA] did not apply to BIH after August, 2019" and therefore the Magistrate Judge never should have "found that there were disputed facts with respect to whether the APA applied to BIH." D.I. 128 at 2.

I agree with BIH that the Magistrate Judge should have considered and applied the plain language of the APA. But the plain language of the APA makes clear that its noncompete restrictions *do* apply to BIH. BIH had it right in its opening brief filed in support of its motion to dismiss: "The APA says what it says." D.I. 66 at 1. Indeed, it's hard to see how the APA could be clearer. It explicitly says that BIH (i.e., C&E) is a "Selling Party" and it explicitly says that the noncompete restrictions apply to "each Selling Party." Nothing in the APA says or suggests in any way that BIH's status as a Selling Party is contingent on either the makeup of its ownership or its relationship with Potter.

The clear and unambiguous language of the APA puts an end to the matter. Under Delaware law, "[w]hen the contract is clear and unambiguous, [the court] will give effect to the plain-meaning of the contract's terms and provisions without resort to extrinsic evidence." *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (internal quotation marks and citation omitted). The clear and unambiguous language of the APA provides that BIH is subject to the noncompete restrictions of the APA.

**\*3** BIH's second objection is that "the Magistrate Judge erred in allowing Plaintiffs' contract claim to stand even though the Plaintiffs failed to allege damages in anything other than a conclusory fashion." D.I. 128 at 2. I agree, however, with the Magistrate Judge's findings that the allegations in the Amended Complaint plausibly imply that Plaintiffs have been damaged by BIH's alleged contractual breaches. Plaintiffs allege, for example, that BIH's conduct has caused them to incur legal fees, investigative costs, and losses of revenue, customers, and sponsors, and to suffer from confusion in the marketplace. D.I. 48 ¶¶ 147–49.

NOW THEREFORE, at Wilmington this Twenty-sixth day of March in 2021, it is HEREBY ORDERED that:

American Institue for Chartered Property Casualty Underwriters v. Potter, Slip Copy (2021)

2021 WL 1152982

1. BIH's objections to the Magistrate Judge's Report and Recommendation (D.I. 128) are OVERRULED;

2. The recommended disposition of the Report and Recommendation (D.I. 126) is ADOPTED;

3. BIH's motion to dismiss (D.I. 65) is GRANTED IN PART AND DENIED IN PART;

4. Counts II and III against BIH are DISMISSED without prejudice; and

5. Should Plaintiffs wish to further amend their complaint against BIH, they must do so no later than April 9, 2021.

**All Citations**

Slip Copy, 2021 WL 1152982

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2

Doe v. Garabedian, Slip Copy (2020)
_____
2020 WL 1244126

2020 WL 1244126
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

John DOE, Plaintiff,
v.
Mitchell GARABEDIAN, Esquire, Mitchell
Garabedian, Esquire, doing business as
"Law Offices of Mitchell Garabedian,"
and Kurtis N. Poulos, Defendants.

CIVIL ACTION NO. 19-1539
|
Signed 03/12/2020
|
Filed 03/13/2020

**Attorneys and Law Firms**

James E. Beasley, Jr., Lane R. Jubb, Jr., Louis Tumolo, The Beasley Firm, LLC, Philadelphia, PA, for Plaintiff.

Candidus K. Dougherty, Jeffrey B. McCarron, Swartz Campbell LLC, Philadelphia, PA, for Defendants.

Kurtis N. Poulos, Milwaukee, WI, pro se.

**MEMORANDUM**

DuBois, District Judge

**I. INTRODUCTION**

*1  This is an action for defamation and intentional infliction of emotional distress, arising out of allegations that plaintiff, John Doe, sexually abused defendant, Kurtis Poulos, when Poulos was plaintiff's student twenty-five years ago. Defendants Mitchell Garabedian, Esq., and Mitchell Garabedian, Esq. d/b/a Law Offices of Mitchell Garabedian ("Garabedian defendants"), represented Poulos at that time. During his representation of Poulos, on April 11, 2018, Garabedian sent a settlement demand letter to the headmaster at plaintiff's employer, Poulos's former school, describing Poulos's allegations of sexual abuse by plaintiff and demanding $1 million to settle the claim. On December 26, 2018, the Garabedian defendants sent a letter to the school's attorney in which they further described Poulos's allegations of sexual abuse in response to a request for additional information from the attorney.

Presently before the Court is Plaintiff's Motion for Reconsideration of this Court's 2 October 2019 Order (ECF #39), or, Alternatively, for Amendment of Said Order to Redenominate it Final and Appealable. In that Memorandum and Order, this Court ruled that the absolute privilege of judicial immunity applied to the statements made by the Garabedian defendants in the two letters. *Doe v. Garabedian*, No. CV 19-1539, 2019 WL 4885969, at *1 (E.D. Pa. Oct. 2, 2019), Document Nos. 38, 39 [hereinafter, "October 2, 2019 Memorandum and Order"]. In his Motion, plaintiff seeks reconsideration of the Court's ruling in the October 2, 2019 Memorandum and Order that the statements made by the Garabedian defendants in the April 11, 2018 letter and the December 26, 2018 letter were subject to the judicial immunity privilege and were therefore absolutely privileged.

**II. BACKGROUND** [1]
On April 11, 2018, the Garabedian defendants sent a settlement demand letter to the headmaster at plaintiff's employer, Poulos's former boarding school, that stated in relevant part:

> Please be informed that this office represented Kurtis Nicholas Poulos. This letter is an attempt to settle and compromise claims.... Kurtis Nicholas Poulos ... was repeatedly sexually molested by [plaintiff] from approximately 1993 ... until approximately 1995.... Mr. Poulos's demand for settlement is $1,000,000.00. I await your response.

Second Am. Compl. Ex. A. In response to the April 11, 2018 letter, the school hired a law firm to investigate the claims. Second Am. Compl. ¶ 21. The school's law firm responded to the Garabedian defendants, seeking additional information about Poulos's claim. *Id.* ¶ 22.

On December 26, 2018, the Garabedian defendants sent a letter to the school's attorney, providing more details of Poulos's claim, in response to her request. Second Am. Compl. Ex. B. The second letter stated, among other

things, that "[d]uring the course of Mr. Poulos's sophomore year, [plaintiff] sexually abused Mr. Poulos in [plaintiff]'s geometry classroom between approximately 10 and 15 times." *Id.* Following the second letter, the school and the law firm it retained attempted to contact the Garabedian defendants, to no avail. *Id.* ¶ 27-28. Finally, the school sent the Garabedian defendants a final notice, warning them that if they did not contact the school or the law firm it retained by March 1, 2019, the school would assume that the Garabedian defendants did not intend to pursue Poulos's claim. *Id.* ¶ 29. The Garabedian defendants failed to respond. *Id.* ¶ 30. The Second Amended Complaint avers that the Garabedian defendants never intended to file a lawsuit against the school. Second Am. Compl. ¶¶ 58, 65.

**\*2** On June 20, 2019, plaintiff filed the Second Amended Complaint asserting that the Garabedian defendants and Poulos defamed him in the two letters (Counts I & III) and that the Garabedian defendants and Poulos's intentional acts caused him emotional distress (Counts II & IV). *Pro se* defendant Poulos filed an Answer to the Second Amended Complaint on July 3, 2019. The Garabedian defendants filed a Motion to Dismiss the Second Amended Complaint on July 5, 2019.

By Memorandum and Order dated October 2, 2019, the Court ruled that the absolute privilege of judicial immunity applied to the statements made by the Garabedian defendants in the April 11, 2018 letter and the December 26, 2018 letter because "[b]oth communications [sent by the Garabedian defendants] were pertinent and material to the contemplated proceeding —a suit against the school for plaintiff's alleged misconduct —and both communications were sent in the regular course of preparing for a contemplated legal proceeding." *Doe,* 2019 WL 4885969, at \*6. The Court dismissed plaintiff's defamation claim against the Garabedian defendants (Count I) without prejudice. With respect to the intentional infliction of emotional distress ("IIED") claim, the Court ruled that the statements made by the Garabedian defendants in the two letters was "not so extreme or outrageous as to go beyond all possible bounds of human decency," and dismissed plaintiff's IIED claim against the Garabedian defendants (Count II) with prejudice. *Id.* at 7.

On October 10, 2019, plaintiff filed a motion for reconsideration of the Court's ruling with respect to the defamation claim in Count I of the Second Amended Complaint (Document No. 40). Plaintiff did not move the Court to reconsider its ruling with respect to the IIED claim

in Count II of the Second Amended Complaint. Defendants responded on October 24, 2019 (Document No. 41). Plaintiff filed a reply on November 4, 2019 (Document No. 42). The Motion is thus ripe for decision.

### III. LEGAL STANDARD

Only three situations warrant granting reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). The moving party has the burden of establishing one of these grounds. *Blystone v. Horn,* 664 F.3d 397, 415 (3d Cir. 2011). The grant or denial of reconsideration lies within the discretion of the district court. *N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995).

The scope of a motion for reconsideration is "extremely limited" and should not be used to relitigate the case. *Blystone,* 664 F.3d at 415. A motion for reconsideration "addresses only factual and legal matters that the Court might have overlooked." *Glendon Energy Co. v. Borough of Glendon,* 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation omitted). "It is improper on a motion for reconsideration to ask the Court to rethink what it already thought through—rightly or wrongly." *Id.* (citation omitted).

### IV. DISCUSSION

In his Motion, plaintiff argues that this Court made a clear error of law and fact when it concluded that the statements made by the Garabedian defendants in the April 2018 letter and the December 2018 letter were subject to the judicial immunity privilege. *Doe,* 2019 WL 4885969, at \*6. In his motion for reconsideration, plaintiff asserts that "the Second Amended Complaint avers clearly and repeatedly, [that] the Garabedian Defendants never intended or contemplated ... any 'proceedings' " in this case. Mot. Recons. at 2. Thus, plaintiff argues, the judicial immunity privilege is inapplicable at this stage of the proceedings. The Court agrees.

**\*3** Under Pennsylvania law, "statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged

Doe v. Garabedian, Slip Copy (2020)

2020 WL 1244126

and, therefore, cannot form the basis for liability for defamation." *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991). The judicial immunity privilege applies to " 'communications made prior to the institution of proceedings' if such communications were 'pertinent and material' and 'had been issued in the regular course of preparing for contemplated proceedings.' " *Greenberg v. McGraw*, 161 A.3d 976, 982 (Pa. Super. Ct. 2017) (quoting *Post v. Mendel*, 507 A.2d 351, 356 (Pa. 1986)); *see also Smith v. Griffiths*, 476 A.2d 22, 25 (Pa. Super. Ct. 1984) ("[T]he [judicial immunity] privilege extends to and includes preliminary demands, as well as informal conferences and negotiations conducted after litigation has been commenced or when litigation is seriously contemplated."). Thus, statements made prior to the commencement of judicial proceedings are privileged if the declarant intends "to initiate judicial or quasi-judicial proceedings. Where a declarant has no intention of initiating proceedings or otherwise obtaining a remedy" the judicial immunity privilege does not apply. *Schanne v. Addis*, 121 A.3d 942, 949 (Pa. 2015) ("[W]e hold that the judicial privilege does not apply to an allegation made by an adult before commencement of any quasi-judicial proceeding and without an intent that it lead to a quasi-judicial proceeding.").

In this case, the Second Amended Complaint avers that "[t]he Garabedian Defendants never actually intended to file a suit." Second Am. Compl. ¶ 58; *see also* Second Am Compl. ¶ 65 ("The Garabedian Defendants never intended to file any suit."). The Court was required to accept this factual allegation as true when ruling on defendants' motion to dismiss plaintiff's Second Amended Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court now concludes that there is a factual dispute as to the application of the judicial immunity privilege to the statements made by the Garabedian defendants in the two letters because, according to the Second Amended Complaint, the statements were not made "in the regular course of preparing for contemplated proceedings." *Greenberg*, 161 A.3d at 982. Accordingly, the Court grants the motion for reconsideration and vacates that part of the Order dated October 2, 2019 in which Count I of the Second Amended Complaint was dismissed.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is granted with respect to whether, as stated in this Court's Memorandum and Order dated October 2, 2019, the judicial immunity privilege applies to the statements made by the Garabedian defendants in the April 11, 2018 and December 26, 2018 letters at this stage of the proceedings and requires dismissal of Count I of the Second Amended Complaint. The Court now concludes that there is a factual dispute as to the application of the judicial immunity privilege. Accordingly, the dismissal of Count I of the Second Amended Complaint is vacated and that count is reinstated. This determination is without prejudice to defendants' right to raise the judicial immunity privilege as a defense at a later stage of the proceedings. The Court's remaining rulings in the Memorandum and Order dated October 2, 2019 are unaffected by this Memorandum and Order.

An appropriate order follows.

## All Citations

Slip Copy, 2020 WL 1244126

## Footnotes

1       The facts are drawn from this Court's October 2, 2019 Memorandum and Order, dismissing plaintiff's Second Amended Complaint. *Doe*, 2019 WL 4885969, at *1-2. The Court repeats only those facts necessary to explain its ruling.

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

3

2021 WL 3022633
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Chante HAMMONDS, Plaintiff
v.
Robert AIGELDINGER, Defendant

CIVIL ACTION NO. 3:20-657
|
Signed 07/16/2021

**Attorneys and Law Firms**

James J. Conaboy, Abrahamsen Conaboy & Abrahamsen, P.C., Scranton, PA, for Plaintiff.

Lawrence J. Kansky, Kansky Law Office LLC, Wilkes-Barre, PA, for Defendant.

**MEMORANDUM**

MALACHY E. MANNION, United States District Judge

**\*1** In her Amended Complaint, filed September 23, 2020, Plaintiff Chante Hammonds asserted three claims against Defendants, the Commonwealth of Pennsylvania, the Pennsylvania State Police ("PSP"), hereinafter "Commonwealth Defendants", and Robert Aigeldinger, a PSP Motor Carrier Enforcement Officer during the relevant times of this case. (Doc. 15). Plaintiff alleged that Aigeldinger forced her to perform a sexual act on him in order to pass her tractor trailer for inspection and she raised claims for civil rights violations under 42 U.S.C. § 1983 against all Defendants. Specifically, in Count I, Plaintiff alleged that Commonwealth Defendants violated her rights under the Fourth and Fourteenth Amendments, and "also her rights to personal security, freedom from assault and battery, sexual assault, sexual abuse, false imprisonment, the application of excessive force and to due process of law." Plaintiff alleged that Aigeldinger, acting within the scope of his employment with the PSP, violated her rights "to be secure in her person and free from unreasonable force, sexual assault, sexual abuse and false imprisonment." In Count II, Plaintiff raised claims against the Commonwealth Defendants under the 14th Amendment for failing to implement policies and procedures, and for failing to properly train and supervise all PSP personnel, particularly members of the Commercial Vehicle Safety Division. In the two federal law claims, Counts I and II, Plaintiff seeks compensatory damages as relief as well as punitive damages and attorney's fees under 42 U.S.C. § 1988. In Count III, Plaintiff raised state law claims against all three Defendants for official oppression, threat of an official act, and false imprisonment. As relief for her state law claims, Plaintiff seeks compensatory and punitive damages as well as attorney's fees. (Doc. 15, ¶¶ 47, 57, 63-65).

In addition to monetary relief, Plaintiff sought a declaratory judgment for the court to "declare that the [past] actions of the Defendants were in violation of the [stated] laws." [1] (Doc. 15, ¶ 66).

**\*2** On October 7, 2020, Commonwealth Defendants filed a motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 18). These Defendants submitted a brief in support thereof on October 21, 2020. (Doc. 21).

On December 28, 2020, Defendant Aigeldinger filed a motion to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6), and submitted a brief in support thereof on January 10, 2021. (Docs. 28 & 29).

On January 13, 2021, Plaintiff filed a stipulation, pursuant to Fed.R.Civ.P. 41(a)(1)(A), voluntarily dismissing, with prejudice, her claims against Defendants Commonwealth of Pennsylvania and PSP. (Doc. 30). Defendants Commonwealth of Pennsylvania and PSP were then terminated as parties in this action. No doubt that "the Eleventh Amendment bars claims for damages against the PSP, a state agency that did not waive its sovereign immunity." Atkin v. Johnson, 432 Fed.Appx. 47, 48 (3d Cir. 2011) (citing 71 P.S. §§ 61, 732–102; Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009)). Thus, Plaintiff's remaining claims are contained in Counts I and III of her amended complaint against Defendant Aigeldinger.

Plaintiff submitted a brief in opposition to Defendant Aigeldinger's motion to dismiss her amended complaint on March 23, 2021. (Doc. 33). Defendant Aigeldinger did not file a reply brief in support of his motion to dismiss and the time within which it was due has expired. Defendant Aigeldinger's motion to dismiss Plaintiff's amended complaint for failure to state a claim is now ripe for the court's disposition.

Accepting Plaintiff's allegations as true, the court will **GRANT IN PART** and **DENY IN PART** the motion. Specifically, the court will **GRANT** Defendant's motion to dismiss as to Count I to the extent that Defendant is sued in his official capacity, and the court will **DENY** Defendant's motion as to Count I to the extent that Defendant is sued in his individual capacity. Also, the court will **GRANT** Defendant's motion to dismiss as to the official oppression and threat of official act claims included in Count III, and **DENY** Defendant's motion to dismiss as to the false imprisonment claim in Count III, to the extent that Defendant is sued in his individual capacity. Further, the court will **GRANT** Defendant's motion to dismiss the false imprisonment claim in Count III, to the extent that Defendant is sued in his official capacity.

## I. BACKGROUND

According to the amended complaint, Plaintiff is an adult African American female from Antioch, Tennessee, who on August 23, 2018 was employed as a truck driver for Schneider Trucking and was operating a tractor trailer on Interstate 81 North in Luzerne County, Pennsylvania. (Doc. 15, ¶¶ 3, 14-15). On that day, Plaintiff was stopped at a rest area in Dorrance Township, PA, to undergo a motor carrier inspection by the Commonwealth of Pennsylvania. (Id., ¶ 16). At the rest stop, Defendant Aigeldinger, a uniformed PSP Motor Carrier Enforcement Officer, approached Plaintiff and asked her if she was ready for a truck inspection. (Id., ¶ 18). Defendant then made sexually explicit remarks to Plaintiff and implied that he would provide a good inspection report if Plaintiff performed oral sex on him. (Id., ¶¶ 19-22). After completing the report, Defendant entered the cab of Plaintiff's truck, unzipped his pants, and forced Plaintiff to climb into the cab and perform oral sex on him. (Id., ¶ 24).

*3 Plaintiff also alleges that Defendant's actions were motivated by her race and gender, and that the acts constituted official oppression, threat of an official act, and false arrest. (Doc. 15, ¶'s 27-28, 31-33).

After the incident, Plaintiff reported Defendant's conduct to law enforcement officials, and Defendant was arrested and charged with, and plead guilty to, threat of an official act, (18 Pa. C.S.A. § 2906(a)(4)), and official oppression, (18 Pa. C.S.A. 5301(1)). (Id., ¶¶ 24-25). Defendant was sentenced to 24 months in the Luzerne County Accelerated Rehabilitation Program and ordered to perform 60 hours of community service. (Id., ¶ 25). Plaintiff asserts that during the relevant time period, Defendant was acting in his official capacity as a PSP Officer. (Id., ¶ 60).

## II. STANDARDS OF REVIEW

Defendant's motion to dismiss with respect to Count I is brought pursuant to Fed.R.Civ.P. 12(b)(1). The court can dismiss claims brought under 42 U.S.C. § 1983 against the PSP and a PSP trooper, "to the extent he was acting in his official capacity—for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that they were immune from suit under the Eleventh Amendment." Atkin v. Johnson, 432 Fed.Appx. 47, 48 (3d Cir. 2011). The Eleventh Amendment bars claims for damages against a PSP Trooper "[t]o the extent [he] [is] sued in his official capacity, [and] he too [is] immune from suit [under the Eleventh Amendment]." (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989)). "Although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983, the federal law under which [plaintiff] proceeds." Id. (citing Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139 (1979)).

Defendant's motion to dismiss is also brought pursuant to Fed.R.Civ.P. 12(b)(6), which provides for the dismissal of a claim, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. A defendant moving to dismiss bears the burden of showing the plaintiff's failure to state a claim. Lesher v. Zimmerman, 822 Fed.Appx.116, 119 (3d. Cir. 2020) (citing Hedges v. U.S., 303 F.3d 744, 750 (3d Cir. 2005)). Dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Legal conclusions, unlike factual allegations, are disregarded. Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016).

The facts alleged must be sufficient to "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, a requirement that "calls for enough facts[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.

Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. at 555). Finally, at this stage, courts "accept all factual allegations as true," and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. at 233.

**\*4** In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record, in addition "undisputedly authentic documents" if they form part of the claims' basis. Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016). Other parts of the record are generally not considered. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3rd Cir. 1994).

## III. DISCUSSION

Initially, the court has jurisdiction over Plaintiff's constitutional claims under § 1983 pursuant to 28 U.S.C. §§ 1331 and 1342. The court can exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. Venue is proper in this district since the alleged unlawful conduct occurred here and Defendant is located here. 28 U.S.C. § 1391.

### 1. Count I, § 1983 Claims

Under Section 1983, one who deprives others within U.S. jurisdiction of federal constitutional or statutory rights "under color of any statute, ordinance, regulation, custom, or usage" of a state is subject to liability. 42 U.S.C. § 1983; Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). For purposes of Section 1983, the term "under color of [law]" is construed to also mean "state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). A plaintiff thus seeking to "hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a

state actor." Id. (citing Benn v. Universal Health Sys., 371 F.3d 165, 169-70 (3d Cir. 2004)).

Defendant argues that Plaintiff's § 1983 claims in Count I are barred by Eleventh Amendment immunity since Plaintiff only sues him in is official capacity. He thus seeks dismissal of Count I under Fed.R.Civ.P. 12(b)(1) arguing that the court lacks subject matter jurisdiction over the federal claims against him since they are barred by sovereign immunity under the Eleventh Amendment. The Eleventh Amendment shields state governments and their subsidiaries from suit in federal court. U.S. CONST. amend. XI; Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008) (citing Hans v. Louisiana, 134 U.S. 1 (1890)) ("[T]he Supreme Court extended the Eleventh Amendment's reach to suits by *in-state* plaintiffs, thus barring all suits against non-consenting States in federal court."). "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)). See also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ").

In determining whether a defendant was sued in their official or individual capacity, courts first look to the complaint and the "course of proceedings." Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990), aff'd 502 U.S. 21 (1991). The fact that a public official acted under the color of law does not automatically yield the conclusion that he was sued in his official capacity. Id. at 636. Indeed, the distinction between an official-capacity suit and a personal-capacity suit turns not on the capacity in which the state officer acted, but on the capacity in which the officer was sued. Hafer v. Melo, 502 U.S. 21, 27 (1991).

**\*5** For a suit to be brought against a state officer in his official capacity, a state "policy or custom must have played a part in the violation of federal law." Hafer, 502 U.S. at 25 (1991). Therefore, a "plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom" suggests that the defendant is sued in their individual

capacity. Stief v. Robeson Twp., 2021 WL 2137588, at *5 (E.D. Pa. 2021) (quoting Jones v. Culinary Manager II, 30 F.Supp.2d 491, 496 (E.D. Pa. 1998)). In addition, a request for punitive damages is indicative of an individual capacity suit, see Ellis v. Horn, 37 Fed.Appx. 38, 39 (3d Cir. 2002) (citing Gregory v. Chechi, 843 F.2d 111, 119-20 (3d Cir. 1988)), because state officials may not be sued for punitive damages in their official capacities. Keller v. Crawford, 465 F.Supp.3d 472, 485 (E.D. Pa. 2020) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 263 (1981)). A defendant's assertion of a personal immunity defense, too, tends to demonstrate that the suit was an individual capacity one. Stief, 2021 WL 2137588 at *5; see also Melo, 912 F.2d at 636 ("It appears that [the defendant] understood that plaintiffs sought to sue her in her personal capacity because she raised a defense of qualified immunity throughout the course of these proceedings, a defense available only for governmental officials when they are sued in their personal, and not in their official, capacity.").

To support his Eleventh Amendment defense, Defendant relies on the amended complaint's assertions that "[a]t all times material and relevant," he acted "within the course and scope of his employment" and "in his official capacity." (Doc. 15, ¶¶ 7-8, 37, 49, 60, 61). In response, Plaintiff argues that those assertions serve only to satisfy the prerequisite for a § 1983 claim— that Defendant was acting under the color of law—and do not prove that Defendant was acting within the scope of his employment as necessary to qualify for immunity. Acting within the scope of one's employment, however, is a requirement for Pennsylvania sovereign immunity, 1 Pa.C.S.A. § 2310, which "applies to Commonwealth employees in both their official and individual capacities," Larsen v. State Emp.'s Ret. Sys., 553 F.Supp.2d 403, 420 (M.D. Pa. 2008), not Eleventh Amendment Immunity. See Id. at 411, 420. By arguing this issue, Plaintiff begs the question of whether Defendant was sued in his official or individual capacity.

As previously noted, the amended complaint states that Defendant acted in his "official capacity" during the relevant period. (Doc. 15, ¶ 60-61). It also describes Defendant as one of the "workmen, agents, and/or employees" of the Commonwealth and the Pennsylvania State Police. (Doc. 15 ¶ 9). On the other hand, the amended complaint asserts that Defendant acted "individually and in concert with others",

first identifies him as an "adult and competent individual" and provides his home address, suggesting an individual-capacity suit. (Doc. 15, ¶¶ 5, 47-48). Another factor indicating that Defendant is sued in his individual capacity is Plaintiff's request for punitive damages. (Doc. ¶ 2).

Weighing in favor of an official-capacity suit are the facts that the amended complaint alleges Defendant Aigeldinger acted "in furtherance" of Pennsylvania's and the PSP's "customs, policies, and interests," (Doc. 15 ¶ 49), and names Pennsylvania and the PSP as co-defendants. Moreover, Plaintiff's Count III state law claims seek to assign liability to the Commonwealth Defendants for the conduct of Defendant Aigeldinger; imputing Aigeldinger's conduct to his employers suggests that he is sued in his official capacity. Finally, Defendant's only immunity defense is an Eleventh Amendment one, which is not available to a state official sued in his individual capacity.

The relevant factors here do not yield a clear result: both an individual-capacity suit and an official capacity suit are reasonably read from the amended complaint and the course of proceedings. In similar circumstances, where plaintiffs sought punitive damages and other facts supported either side of the distinction, courts in this circuit have held at the motion to dismiss stage that defendants were sued in both capacities. See, e.g., Thorpe v. Upper Makefield Twp., 2015 WL 6810837, at *5 (E.D. Pa. 2015); Moore v. Cuttre, 2010 WL 2557682, at *3 (D. N.J. 2010). Likewise, accepting the allegations in the amended complaint as true, the court concludes that Defendant is sued in both his individual and official capacity. The court finds that Defendant is not sued only in his official capacity as he argues. As such, Plaintiff's federal claims against Defendant Aigeldinger in his official capacity will be dismissed, see Kentucky v. Graham, 473 U.S. at 166 ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"), but the claims in Count I against this Defendant in his individual capacity are not barred by the Eleventh Amendment and will proceed. [2]

### 2. Count III, State Law Claims

*6 In Count III of her amended complaint, Plaintiff asserts state law claims of official oppression, threat of an official act, and false imprisonment. (Doc. 15, ¶'s 63-65). These first two claims mirror the Pennsylvania criminal statutes, 18 Pa.C.S.A. § 5301(1) (official oppression) (M2) and § 2906(a)(4) (coercion/threat of official act) (M2), which

**Hammonds v. Aigeldinger, Slip Copy (2021)**

2021 WL 3022633

Defendant was charged with violating for his actions taken against Plaintiff.[3] Plaintiff also alleges that on March 11, 2019, Defendant Aigeldinger "plead (sic) guilty to both charges" and, as a result, was sentenced to 24 months in the Luzerne County Accelerated Rehabilitative Disposition ("ARD") Program and was ordered to perform 60 hours of community service. (Doc. 15, ¶'s 25-26).

Defendant argues that Plaintiff's state law claims of official oppression and threat of an official act must be dismissed under Rule 12(b)(6) for failure to state a claim since they are not civil causes of action. Defendant states that the criminal charges against him were "resolved without any admission of guilt" since he entered the ARD program, (Doc. 29 at 10), despite Plaintiff's allegation that he pled guilty to the charges.

Plaintiff misstates the ARD program and Defendant did not plead guilty to the criminal charges. As the PA Commonwealth Court in <u>Reading Area Water Auth. v. Unemployment Comp. Bd. of Review</u>, 137 A.3d 658, n. 5 (Pa. Comwlth. 2016), noted:

> Acceptance into an ARD program requires neither an admission nor a denial of guilt. Rather, in accordance with Pa.R.Crim.P. 315, when a defendant is accepted into an ARD program, all proceedings on the charges are deferred until the program has been completed. Moreover, Pa.R.Crim.P. 319 and 320 provide that upon successful completion of an ARD program, the charges against the defendant are dismissed and the defendant's arrest record is expunged.

Thus, since it appears from the Criminal Dockets that Defendant successfully completed the 24 months of probation, the criminal charges against him were expunged.

Although Plaintiff argues that she is entitled to raise common law claims against Defendant for his conduct that gave rise to the criminal charges, official oppression and criminal coercion (threat of an official act)[4] have been rejected as bases for civil liability. <u>Wilson v. Marrow</u>, 917 A.2d 357, 365 n. 9 (Pa. Comwlth. Ct. 2007) ("[O]fficial oppression is

a state criminal offense. Pennsylvania's official oppression statute does not give rise to a private cause of action."); <u>Filby v. Colebrookdale Twp</u>, 2018 WL 5533989, *3 (Pa. Comwlth. 2018); <u>Simpson v. City of Coatesville</u>, 2015 WL 7251546, at *5-6 (E.D. Pa. 2015) (holding that the Pennsylvania criminal coercion statute does not provide for a private cause of action); <u>Booze v. Wetzel</u>, 2017 WL 2991801, *11 (M.D. Pa. May 25, 2017) (holding that "[plaintiff's] claims for criminal coercion and official oppression fail as a matter of law since criminal statutes do not generally give rise to civil liability.").

Therefore, the court finds that Plaintiff has failed to state cognizable claims of official oppression and criminal coercion (threat of an official act) against Defendant.

**\*7** False imprisonment, by contrast, is recognized as a common law tort. <u>Gagilardi v. Lynn</u>, 285 A.2d 109, 111 (Pa. 1971).[5] Defendant contends that Plaintiff's false imprisonment claim should be dismissed since he is entitled to Eleventh Amendment immunity.

The court in <u>Justice v. Lombardo</u>, 239 A.3d 1142, 2020 WL 4590537, *5 (Pa. Comwlth. 2020), explained:

> Pennsylvania law affords sovereign immunity to "[t]he Commonwealth, and its officials and employees acting within the scope of their duties." <u>1 Pa. C.S. § 2310</u>. Pursuant to <u>Section 8521 of the Judicial Code</u>, <u>42 Pa. C.S. § 8521</u>, "[a]n employee of the Commonwealth (such as [a PSP trooper]), *acting within the scope of his employment or duties*, is protected from the imposition of liability for intentional tort claims by sovereign immunity." <u>Holt v. Nw. Pa. Training P'ship Consortium, Inc., 694 A.2d 1134, 1140 (Pa. Cmwlth. 1997)</u> (emphasis added). Further, "willful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee *acting within the scope of his or her employment* from liability, even for intentional acts which cause emotional distress." <u>Holt, 694 A.2d at 1140</u> (emphasis added). Whether a person acted within the scope of employment is ordinarily a question for the jury. <u>Orr v. William J. Burns Int'l Detective Agency, 12 A.2d 25, 27 (Pa. 1940)</u>.

The court has found that Defendant is only entitled to Eleventh Amendment immunity for claims against him in his official capacity. Thus, to the extent that Plaintiff's false

Hammonds v. Aigeldinger, Slip Copy (2021)

2021 WL 3022633

imprisonment claim is raised against Defendant in his official capacity, it will be dismissed. However, as discussed above, insofar as Defendant is sued in his individual capacity, at this stage of the case, he is not protected by Eleventh Amendment immunity with respect to Plaintiff's state law false imprisonment claim since Plaintiff has sufficiently alleged that Defendant was not acting within the scope of his employment or duties. As Plaintiff points out, (Doc. 33 at 10), her amended complaint alleges that "the Defendant unlawfully detained her in the cab of her truck when he forced her into the cab and sexually assaulted her."

Defendant also notes that he was not criminally charged with the false imprisonment of Plaintiff, leaving the court to infer that he intends this lack of a corresponding criminal charge to serve as a defense to Plaintiff's tort claim. However, because the court knows of no rule that a false imprisonment tort claim be coupled with a criminal charge, and because Defendant does not offer one, this defense fails. As Defendant presents no other arguments for dismissing Plaintiff's false imprisonment claim, the court will allow this claim to proceed against him in his individual capacity.

Therefore, Plaintiff's official oppression and threat of official act claims in Count III will be dismissed, while her state law false imprisonment claim will be allowed to proceed to the extent that she sues Defendant in his individual capacity.

## IV. CONCLUSION

*8 Defendant Aigeldinger's motion to dismiss, (Doc. 28), Plaintiff's amended complaint, (Doc. 15), will be **GRANTED IN PART** and, **DENIED IN PART**, as specified above. Plaintiff's claim for declaratory relief will be **DISMISSED**. An appropriate Order will issue.

## All Citations

Slip Copy, 2021 WL 3022633

## Footnotes

1    The court notes that Plaintiff's claim for declaratory relief must be dismissed, as she does not allege that she will be subjected to the alleged conduct by the remaining Defendant in the future. The Third Circuit has held that "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is not "meant simply to proclaim that one party is liable to another." Corliss v. O'Brien, 200 Fed.Appx. 80, 84 (3d Cir. 2006); see also, Brown v. Fauver, 819 F.2d 395, 400 (3d. Cir. 1987) (holding plaintiff in a 1983 action lacks standing to pursue declaratory relief where plaintiff "has done nothing more than allege past exposure to unconstitutional state action."); Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009) (holding that "even if defendants violated [plaintiff's] rights in the past as he alleges, he is not entitled to a declaration to that effect."); O'Callaghan v. Hon. X, 661 Fed.Appx. 179, 182 (3d Cir. 2016) (holding that request for declaration that defendant judge previously violated plaintiff's rights is "not a proper use of a declaratory judgment, which is meant to define the legal rights and obligations of the named parties in anticipation of future conduct, not to proclaim their liability for past actions.").

2    The court notes that Defendant Aigeldinger does not move to dismiss Count I of plaintiff's amended complaint against him, to the extent it is deemed as suing him in is individual capacity, under Rule 12(b)(6) for failure to state a claim. In any event, Plaintiff plausibly states federal claims against Defendant Aigeldinger in Count I and they shall proceed.

3    The court takes judicial notice of the state court Criminal Dockets in Defendant Aigeldinger's case, Numbers: MJ-11306-CR-0000136-2018 and MJ-11304-CR-0000251-2018. https://ujsportal.pacourts.us/CaseSearch.

4    18 Pa. C.S.A. § 2906(a)(4) subjects to criminal liability any person who "with intent unlawfully to restrict freedom of action of another to the detriment of the other... threatens to... take or withhold action as an official, or cause an official to take or withhold action." The court finds that Plaintiff's "threat of an official act" claim is equivalent to the criminal coercion statute.

**Hammonds v. Aigeldinger, Slip Copy (2021)**

2021 WL 3022633

5    A prima facie claim of false imprisonment under state law requires showing "(1) the detention of another person (2) that is unlawful." Braswell v. Wollard, 243 A.3d 973, 979-80 (Pa. Super. Ct. 2020) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).

**End of Document**                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

4

Michtavi v. Scism, Not Reported in F.Supp.2d (2013)

2013 WL 371643

2013 WL 371643
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Shemtov MICHTAVI, Plaintiff,
v.
William SCISM, et al., Defendants.

No. 1:12–cv–1196.
|
Jan. 30, 2013.

**Attorneys and Law Firms**

Shemtov Michtavi, White Deer, PA, pro se.

*ORDER*

JOHN E. JONES III, District Judge.

**\*1  THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Report and Recommendation ("R & R") of Magistrate Judge Thomas M. Blewitt (Doc. 31) filed on October 9, 2012, which makes several recommendations regarding *pro se* Plaintiff Shemtov Michtavi's ("Plaintiff" or "Michtavi") claims. After being granted an extension of time to do so, Plaintiff filed objections to the R & R on November 27, 2012. (Doc. 35). Accordingly, the R & R is ripe for our review.

**I. STANDARD OF REVIEW**

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b) (1); *United States v. Raddatz,* 447 U.S. 667, 674–75, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo,* 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz,* 447

U.S. at 674–75; *see also Mathews v. Weber,* 423 U.S. 261, 275, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984).

**II. BACKGROUND**

On June 22, 2012, Plaintiff, an inmate at the Low Security Correctional Institution at Allenwood, Pennsylvania, filed a complaint asserting *Bivens* [1] civil rights claims against several defendants as well as a Federal Tort Claims Act ("FTCA") claim. Plaintiff also filed an application to proceed *in forma pauperis.* Magistrate Judge Blewitt recommended in a previous R & R that the *in forma pauperis* application be denied and that Plaintiff's complaint be dismissed without prejudice because this Court has previously barred Plaintiff from filing any further suits *in forma pauperis* under the PLRA's three-strike rule. Rather than dismiss the complaint, we ordered that Plaintiff pay the filing fee within a specific period of time or face dismissal of the complaint. Plaintiff paid the requisite fee, and this matter was remanded to Magistrate Judge Blewitt for pre-trial management.

Thereafter, on October 9, 2012, Magistrate Judge Blewitt issued the instant R & R. Magistrate Judge Blewitt reviewed the Plaintiff's complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, which requires the Court to screen complaints in civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. Pursuant to 28 U.S.C. § 1915A(b), courts must dismiss any portion of the complaint that is (1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief against from a defendant who is immune from such relief. After screening Plaintiff's complaint, the Magistrate Judge makes the following recommendations within his R & R.

> **\*2**  (1) That all claims for money damages against Defendants in their official capacities be dismissed because they are barred by the doctrine of sovereign immunity; [2]

> (2) That the Plaintiff's FTCA claim against Defendant U.S. Public Health Service be dismissed because only the United States is a proper defendant in an FTCA claim and that Plaintiff's *Bivens* claims be dismissed as against U.S. Public Health Service;

Michtavi v. Scism, Not Reported in F.Supp.2d (2013)
_____

2013 WL 371643

(3) That Plaintiff's *Bivens* claims against Dr. Chopra be dismissed because Dr. Chopra was a private physician working in private practice when he operated on Plaintiff in 2010;

(4) That Plaintiff's claims arising out of his January 20, 2010 surgery be dismissed as time-barred;

(5) That Plaintiff's FTCA claim be dismissed because Plaintiff failed to file a timely certificate of merit ("COM") regarding the medical negligence claims;

(6) That Plaintiff's Eighth Amendment denial of medical care claims pertaining to his post-operative care and his retrograde ejaculation and impotence claims be permitted to proceed against all Defendants with the exception of Defendant Dr. Chopra;

(7) That Plaintiff's Eighth Amendment denial of medical care claims pertaining to his ankle pain (Claim III) and foot pain (Claim IV) be dismissed without prejudice but with leave to amend; and

(8) That Plaintiff's request for declaratory relief, to the extent that he is seeking to have *past* conduct of the Defendants be declared unconstitutional, be dismissed. Prospective requests for declaratory relief shall be permitted to proceed.

The Plaintiff agrees with some portions and objects to other parts of the Magistrate Judge's recommendations. Plaintiff requests leave to amend his complaint to correct pleading deficiencies highlighted by the Magistrate Judge in the R & R. We shall discuss each recommendation and the Plaintiff's response thereto *in seriatim*.

## III. DISCUSSION

### A. Claims against U.S. Public Health Services

Magistrate Judge Blewitt recommends that Plaintiff's claims against U.S. Public Health Services ("USPHS") be dismissed because Plaintiff's FTCA claim can only be asserted against the United States.[3] Plaintiff agrees with this recommendation, however, he asserts that he should be given leave to assert *Bivens* claims against individual employees of ("USPHS") in their individual capacity, essentially arguing that these individuals are tantamount to BOP employees and thus can be sued under *Bivens*.

In *Hui v. Castaneda,* —— U.S. ——, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010), the United States Supreme Court squarely held that "PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of" [or] ... "harms caused in the course of their employment." Thus it is clear that Plaintiff cannot maintain a *Bivens* claim against a USPHS employee. Plaintiff contends in his objections that "some of the U.S. Public Health Service employees" are simultaneously employees of the Federal Bureau of Prisons." (Doc. 36, p. 2). We sincerely doubt the veracity of this speculation made by Plaintiff, however, in the interest of fairness and caution, in the event Plaintiff ascertains the identity of a potential individual defendant who was employed by both USPHS and the BOP and involved in the wrongdoings against him that Plaintiff alleges, he may seek leave to add claims against such an individual to this action. However, based on the clear holding of *Hui,* we shall adopt Magistrate Judge Blewitt's recommendation that all claims against USPHS and any individual employees thereof be dismissed.

### B. *Bivens* Claims Against Private Physician Dr. Chopra

*3 Plaintiff names Dr. Chopra, a Urologist working in private practice at Bloomsburg Hospital, as a Defendant in this action. Plaintiff alleges that Dr. Chopra, who performed laser surgery on Plaintiff's prostate on January 20, 2010, failed to use proper anesthesia during the surgery causing him pain. Plaintiff further alleges that during the surgery, Dr. Chopra created a hole which caused Plaintiff's sperm to leak into his bladder (i.e. retrograde ejaculation). Dr. Chopra saw Plaintiff twice regarding the retrograde ejaculation issue and prescribed medicine for him to alleviate the condition, however Plaintiff alleges that prison staff would not authorize either medication prescribed by Dr. Chopra.

Magistrate Judge Blewitt recommends that Plaintiff's *Bivens* claims against Dr. Chopra be dismissed with prejudice because Dr. Chopra is a private individual and is not amenable to suit under *Bivens*. *See Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 66–67, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). We agree. In *Malesko,* the Supreme Court refused to extend liability under *Bivens* to private individuals, noting that "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Id.* at 70. The Plaintiff does not dispute that Dr. Chopra was a private physician employed at a private hospital when he performed

the surgery on Plaintiff. Accordingly, he cannot be subject to liability under *Bivens.* All constitutional claims against Dr. Chopra shall, therefore, be dismissed.

### C. Timeliness of Claims Related to January 20, 2010 Surgery

Claim I in Plaintiff's complaint asserts an Eighth Amendment deliberate indifference claim against Defendants for an alleged failure to use general anesthesia during Plaintiff's January 20, 2010 prostate surgery. The instant action was filed on June 22, 2012. Thus, Magistrate Judge Blewitt recommends that this claim be dismissed because it is barred by the 2–year statute of limitations applied to civil rights actions in Pennsylvania. 42 Pa. Cons.Stat. Ann. § 5524(7); *Kost v. Kozakiewicz,* 1 F.3d 176, 190 (3d Cir.1993).

In his objection to this recommendation, Plaintiff essentially submits that the statute of limitations for this claim should be tolled while he attempted to administratively exhaust the claim. While the Third Circuit has not spoken directly on this issue, it is the trend of courts in this and other circuits to toll the applicable statute of limitations while a prisoner completes the mandatory exhaustion process. *See Paluch v. Sec'y Pennsylvania Dep't of Corrections,* 442, Fed. Appx. 690 (3d Cir.2011); *see also Shakuur v. Costello,* 230 Fed. Appx. 199 (3d Cir.2007); *Brown v. Valloff,* 422 F.3d 926 (9th Cir.2005); *Johnson v. Rivera,* 272 F.3d 519 (7th Cir.2001); *Brown v. Morgan,* 209 F.3d 595 (6th Cir.2000); *Harris v. Hegmann,* 198 f.3d 153 (5th Cir.1999). Thus, we shall reject the Magistrate Judge's recommendation to dismiss this claim based on statute of limitations grounds.[4]

### D. Dismissal of FTCA Claim—Failure to File COM

*\*4* Magistrate Judge Blewitt recommends that we dismiss Plaintiff's FTCA medical negligence/malpractice claims for failure to use general anesthesia in his 2010 surgery and for alleged improper post-surgery treatment for his retrograde ejaculation and impotence conditions based on Plaintiff's failure to file a Certificate of Merit ("COM"). It is undisputed that the Plaintiff has not filed a COM. Plaintiff contends that because he is a *pro se* incarcerated litigant, he has no access to an independent medical expert to provide a COM for him.

It is well-recognized that to pursue a medical negligence/malpractice claim in the federal courts in Pennsylvania, a

plaintiff must file a COM pursuant to Pa. R.C.P. 1042.3(a) (1). *See Iwanejko v. Cohen & Grigsby, P. C.,* 249 Fed. Appx. 938, 944 (3d Cir.2007) (holding that district courts must "appl[y] Rule 1042.3 as a substantive state law"). This rule applies equally to both *pro se* and represented Plaintiffs. *See Hodge v. United States,* 2009 U.S. Dist. LEXIS 78146 (M.D.Pa. Aug. 31, 2009); *Maruca v. Hynick,* 2007 U.S. Dist. LEXIS 13302 (M.D.Pa. Feb. 27, 2007). The Third Circuit has recognized that this rule may well cause a significant "dilemma" for *pro se* prisoner-plaintiffs who cannot proceed in a civil action with out an expert witness, but that the rule applies to this type of litigant nonetheless. *See Boring v. Kozakiewicz,* 833 F.2d 468, 474 (3d Cir.1987). Furthermore, while F.R.E. 706(a) provides that the "court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection," the policy behind this rule is promote the jury's factfinding ability" and does not permit the Court to appoint an expert "for the purposes of aiding an indigent litigant, incarcerated or not." *Brown v. James,* 2008 U.S. Dist. LEXIS 17665, *5 (M.D.Pa. Mar. 6, 2008); *Kerwin v. Varner,* 2006 U.S. Dist. LEXIS 90691, *7 (M.D.Pa. Dec. 15, 2006).

Accordingly, based on the foregoing, we shall dismiss Plaintiff's FTCA claims for medical negligence/malpractice for failure to file a COM.

### E. Eighth Amendment Claim—Retrograde Ejaculation and Impotence

We agree with the Magistrate Judge, and Plaintiff does not object, that Plaintiff's Eighth Amendment claims for deliberate indifference to serious medical needs as set forth in Claim II as against Defendants Dr. Miller, PA Mutchler, Spotts and former Warden Scism be permitted to proceed. Plaintiff does object to the Magistrate Judge's recommendation that this claim be dismissed as against Dr. Chopra. However, for the reasons set forth above, we find that Plaintiff cannot maintain a *Bivens* claim against Dr. Chopra, and as such this claim shall be dismissed as against him.

### F. Claims III and IV—Leave to Amend

We agree with Magistrate Judge Blewitt's recommendation to dismiss Claims III and IV of Plaintiff's complaint with leave to amend. These claims concern ankle pain (Claim III) and foot pain (Claim IV) allegedly suffered by Plaintiff and the Defendants' alleged deliberate indifference to Plaintiff's needs concerning these ailments. As currently stated, Plaintiff's

Michtavi v. Scism, Not Reported in F.Supp.2d (2013)
_____
2013 WL 371643

allegations amount to little more than his disagreement with the course of treatment prescribed by the Defendants. However, disagreement with treatment plans do not establish an Eighth Amendment claim. *White v. Napoleon,* 897 F.2d 103 (3d Cir.1990). Plaintiff's amended complaint must sufficiently describe how these conditions were serious medical needs and precisely how the Defendants were deliberate to these needs. Accordingly, Claims III and IV will be dismissed with leave to amend.

### G. Requests for Declaratory Judgment

**\*5** Magistrate Judge Blewitt recommends that Plaintiff's requests for declarations that past conduct of the Defendants was unconstitutional be dismissed but that he be permitted to pursue a declaration his constitutional rights are being violated by the Defendants' failure to provide him with Psuedofel, medication prescribed by Dr. Chopra for his retrograde ejaculation condition, inasmuch as that complaint is ongoing. We agree. It is well established that plaintiffs are not entitled to declarations that past conduct of defendants was unconstitutional. *See Brown v. Fauver,* 819 F.2d 395, 399–400 (3d Cir.1987). However, to the extent that Plaintiff is alleging that the conduct is ongoing and that he is still being subjected to unconstitutional treatment, such as the alleged denial to provide him with Psuedofel, he is entitled to pursue declarations to that effect.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation (Doc. 31) of Magistrate Judge Blewitt is **ADOPTED** in part and **REJECTED** in part to the following extent:

   a. All claims for money damages against the Defendants in their official capacities are **DISMISSED.**

   b. Plaintiff's *Bivens* claims against Defendant Dr. Chopra are **DISMISSED.** Dr. Chopra shall be **TERMINATED** as a party to this action.

   c. Plaintiff's *Bivens* claims against U.S. Public Health Service are **DISMISSED.** In the event Plaintiff ascertains the identity of a potential individual defendant who was employed by both USPHS and the BOP and involved in the wrongdoings against him that Plaintiff alleges, he may seek leave to add claims against such an individual to this action.

   d. Plaintiff's FTCA claims against U.S. Public Health Services and employees thereof are **DISMISSED.** These claims shall be pursued as against the United States.

   e. Plaintiff's FTCA medical negligence/malpractice claims are **DISMISSED** for failure to file a COM.

   f. Claim II is **DISMISSED** as against Dr. Chopra only.

   g. Claims III and IV are **DISMISSED** with leave to amend.

   h. Plaintiff's requests for declaratory judgment with respect to past conduct of the Defendants are dismissed.

2. The Plaintiff shall file an amended complaint in conformity with the rulings hereinabove within thirty (30) days of the date of this Order.

3. This matter is **REMANDED** to Magistrate Judge Blewitt for pre-trial management.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 371643

### Footnotes

1    *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2    Plaintiff concedes that this recommendation is correct, and as such it shall be adopted without further discussion.

**Michtavi v. Scism, Not Reported in F.Supp.2d (2013)**

2013 WL 371643

3    When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act, 28 U.S.C.S. §§ 1346, 2671–2680, generally authorizes substitution of the United States as the defendant.

4    If, as this litigation progresses, it becomes evident that Plaintiff cannot seek the protection of equitable tolling (if, for instance, he was not pursuing administrative remedies), then the Defendants are free to argue that this claim is barred by the statute of limitations.

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

5

2001 WL 34368760

2001 WL 34368760
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

MOTORUP CORPORATION, et al. Plaintiffs,

v.

GALLAND, KHARASCH &
GARFINKLE, P.C., Defendants.

No. Civ.A. 00–CV–2212.
|
Dec. 4, 2001.

**Attorneys and Law Firms**

David M. Ginsberg, Ginsberg LLC, Robert J. Haurin, Saul H. Krenzel & Associates, Philadelphia, PA, for Plaintiffs.

Michael J. Burns, William F. McDevitt, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for Defendants.

*MEMORANDUM AND ORDER*

TUCKER, J.

**\*1** Presently before this Court is a Motion to Dismiss (Document No. 12) filed by Defendants on December 15, 2000. For the reasons set forth below, upon consideration of the motion and Plaintiffs' Response (Document No. 18), this Court DENIES Defendant's Motion to Dismiss in the above-captioned action.

*BACKGROUND*

This cause of action arises from a legal malpractice claim against Defendants Galland, Kharasch & Garfinkle, P.C., et al. ("Galland"). Plaintiff filed their Complaint in the Philadelphia Court of Common Pleas in April, 2000. Defendants removed this action on April 28, 2000 pursuant to 28 U.S.C. § 1332(a), due to diversity of the parties and Plaintiff's representation that the amount in controversy exceeds the sum or value of $75,000.

The facts are somewhat complex and sometimes confusing. In July of 1995, Plaintiff MotorUp entered into a marketing and distribution agreement with National Media. Pursuant to this agreement, National Media would sell MotorUp's automotive engine oil additives in an infomercial. At this time, National Media was already a signatory to a consent decree with the Federal Trade Commission (FTC). Under the decree, National Media faced significant penalties for non-compliance with obligations relating to advertising claims substantiation. National Media's legal counsel was, and still is, Defendants Galland et al. After Plaintiff entered into the marketing and distribution agreement with National Media, Defendants worked closely with both National Media and Plaintiff MotorUp. National Media promised Plaintiff that Defendants would ensure compliance with applicable laws, rules and regulations in creating Plaintiff's infomercial. Plaintiff relied on the legal advice, services, and opinions communicated directly to National Media by Defendants, and indirectly to Plaintiff. Plaintiff had no control over the infomercial and received an indemnification agreement from National Media for any claims arising out of the infomercial.

After the infomercial began airing, the FTC requested information relating to substantiation of claims made in the infomercial. On October 28, 1996, Defendant formally agreed to represent MotorUp as well as National Media. Defendant never advised Plaintiff MotorUp when in fact the infomercial did not comply with applicable laws, rules and regulations. Moreover, Defendant never advised Plaintiff that they faced the risk of legal action by the FTC or that they faced civil exposure, including the filing of class action lawsuits against it.

In May of 1997, National Media requested that MotorUp release it from any liability for indemnification, and instead, requested that MotorUp agree to indemnify National Media. Plaintiff MotorUp consulted Defendants, their attorneys, as to the risks and exposure of such a transaction. Upon advice of the Defendants that MotorUp faced little risk in agreeing to indemnify National Media, Plaintiff signed the agreement. Subsequently, in 1998, Plaintiff MotorUp became the defendant in an enforcement action with the FTC and has also been sued in two class action suits in Texas and Illinois. Plaintiff has spent hundreds of thousands of dollars in legal fees and costs, and faces millions of dollars in liability.

**\*2** During the defense of the FTC investigation in 1998, Plaintiff began to take a more active role in instructing Defendant as to how to defend it. Defendant began refusing to comply with Plaintiff's instructions. Plaintiff alleges that Defendant did not follow their instructions because they were not advantageous to Defendant's other client, National Media.

2001 WL 34368760

Finally, Defendant "abruptly" and "without just cause" terminated its attorney-client relationship with Plaintiff.

*LEGAL STANDARD*

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To prevail on a motion to dismiss, defendants must establish that the plaintiffs can prove no set of facts which would entitle them to relief. *See id.* The court can only dismiss the complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwest Bell Telephone Co.,* 492 U.S. 229, 249–250, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Under the Federal Rules of Civil Procedure, all that is required of a plaintiff is " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, a court need not credit a complaint's legal conclusions that lack factual support. *In re Burlington Coat Factory Sec. Litig.,* 90 F.3d 617, 628 (3d Cir.1997).

In a motion to dismiss, the court must accept as true all well-pleaded factual allegations contained in the complaint and draw all reasonable inferences in plaintiff's favor. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). Therefore, where the issues in dispute on a motion to dismiss are purely factual, the court should deny the motion and allow further proceedings for factual development. *See* Fed.R.Civ.P. 12(b) advisory committee's note. It is not the duty of the court, upon a motion to dismiss, to decide the merits where an issue of material fact is in dispute. The briefs of the parties in the instant case reveal that the issues and disputes involved in this Motion to Dismiss are purely factual. It is for this reason that the Defendant's Motion to Dismiss is DENIED.

*DISCUSSION*

Defendant Galland moves to dismiss the five counts of Plaintiff MotorUp's Amended Complaint. Defendant moves to dismiss Count I of the Amended Complaint alleging acts of negligence that occurred during an implied attorney-client relationship; Count II alleging acts of negligence that occurred during an express attorney-client relationship; Count III alleging negligent advice given to Plaintiff regarding their risk of exposure arising out of an FTC investigation of their infomercial; Count IV alleging breach of contract; and Count V alleging breach of fiduciary duty to Plaintiff. Defendant also asserts that Plaintiff cannot set forth a claim based upon the above-mentioned counts for punitive damages in the absence of malice. This Court DENIES the Motion to Dismiss in the above-captioned action as to all counts.

*I. Count I: Negligence Acts During an Implied Attorney–Client Relationship.*

**\*3** An attorney-client relationship can be implied from the conduct of the parties even when there is no explicit agreement between the parties. *Connelly v. Wolf Blocke, Schorr, and Solis–Cohen,* 463 F.Supp. 914, 919 (E.D.Pa.1978) (citing *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.1978). Plaintiff admits that prior to October 28, 1996, they were not explicitly represented by Defendants. Rather, Defendants represented National Media. Plaintiff argues that they relied on Defendants through representations made to National Media regarding Plaintiff's infomercial. Defendants now argue that Galland never agreed to provide legal advice directly to Plaintiff, and that no attorney-client relationship existed between them. According to Defendants, Plaintiff therefore lacks the requisite privity to bring their claim against Defendants.

Pennsylvania law recognizes that an attorney can be held liable to non-client third parties in certain limited circumstances. *Harad v. The Aetna Casualty and Surety Co.,* 839 f.2d 979, 983 n.5 (3d Cir.1988) Proving liability in these circumstances generally requires a showing that the acting attorney knew that a non-client was relying on his or her services. *Id.* Liability may also arise where a third party is an intended beneficiary of an attorney's services, relies on those services, and is injured by the attorney's negligence. *Id.* Demonstrating that either of these situations exists in this case is a factual issue that should not be determined by this court upon a motion to dismiss. *See* Fed. R.Civ.P. 12(b) advisory committee's note. The resolution of the issue is one which ultimately should be decided by the fact finder at trial.

Further, an implied attorney-client relationship will be found if: 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or implicitly agreed to render such assistance; 4) it is reasonable for the putative client to believe the attorney was representing him. *Atkinson v. Haug,* 424 Pa.Super. 406, 622 A.2d 983, 986 (Pa.Super.1993). Plaintiff has asserted a set of facts that may entitle them to relief by alleging that the above four elements existed. *See In re Meridian Securities Litigation,* 772 F.Supp. 223, 225–226 (E.D.Pa.1991); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Plaintiff should therefore be given the opportunity to prove that, under their facts, they qualify as an implied attorney-client relationship.

### II. *Count II: Negligence Acts During an Express Attorney–Client Relationship.*

Plaintiff and Defendants had an express attorney-client relationship after October 28, 1996. This relationship is evidenced by a written agreement. Defendants argue that even though there was an express attorney-client relationship after this date, that the alleged negligent acts of Defendant occurred prior to the formation of this relationship. Construing all inferences in Plaintiff's favor, the Amended Complaint adequately states a cause of action for negligence. On this factual dispute Plaintiff should be given the opportunity to prove that the negligent act(s) occurred after October 28, 1996, and that the negligent act(s) proximately caused damage to them.

### III *Count III: Negligent Advice Given Relating to an Indemnification Agreement*

*4 Count III relates to advice given by Defendant to Plaintiff regarding National Media's request that Plaintiff release National Media from any liability for indemnification as set forth in the First Indemnification Agreement. National Media had requested that Plaintiff sign a Second Indemnification Agreement indemnifying National from any and all claims arising from the non-compliance of laws, rules, and regulations in making the infomercial. Defendants advised Plaintiff that there was little risk in agreeing to this arrangement. Plaintiff is now involved in extensive litigation

with the FTC and in two class action suits. Defendants argue that Plaintiff is alleging negligence because they ended up with an outcome they do not like. Under Pennsylvania law, however, counsel has a duty to advise a client as to the relevant considerations before the client enters and signs a complex legal agreement. *McMahon v. Shea,* 547 Pa. 124, 688 A.2d 1179, 1182 (Pa.1997). Whether the advice rendered by Defendants warrants a finding of negligence is not for this court to consider under a motion to dismiss. Construing all inferences in Plaintiff's favor, Plaintiff has asserted a set of facts under which relief may be granted.

Defendants further argue that it is Plaintiff's general counsel who should be blamed because he was the one who drafted the Second Indemnification Agreement and handled the settlement discussion. This, too, is a factual argument to be pursued in further proceedings. Plaintiff has set forth an adequate cause of action for negligence.

### IV. *Count IV: Breach of Contract*

Under Pennsylvania law, to sustain a claim of legal malpractice that arises from a breach of contract, a plaintiff must show that there was a contract, and "that the defendant breached a specific provision thereof." *Lactaid, Inc. v. Youtie,* 1986 U.S. Dist. LEXIS 28055, *5 (E.D.Pa. March 18, 1986), *aff'd* 806 F.2d 253 (3d cir.1986). Defendants argue that Plaintiff's breach of contract action is based on a contract between MotorUp and National Media, not between MotorUp and Defendant. This contract relates to an agreement delegating to MotorUp the right to control the defense of MotorUp against the FTC. Defendants further argue factual discrepancies relating to the agreement between National Media and MotorUp. It is not the duty of this court to rule on factual discrepancies upon a motion to dismiss. *See* Fed.R.Civ.P. 12(b) advisory committee's note. These facts are therefore irrelevant at this time. Finally, Defendants argue that MotorUp's right to control the defense dissolved upon the development of a conflict of interest between Defendant's representation of National Media, and Defendant's representation of Plaintiff. Defendants state that they were required to withdraw when a conflict arose, and therefore were no longer required to follow Plaintiff's instructions and directions. Again, this is a factual issue that should be resolved in a later proceeding.[1] Plaintiff has asserted a set of facts under which relief may be granted

**Motorup Corp. v. Galland, Kharasch & Garfinkle, P.C., Not Reported in F.Supp.2d (2001)**

2001 WL 34368760

by alleging a breach of the attorney-client relationship in a manner that harmed Plaintiff.

### V. *Count V: Breach of Fiduciary Duties*

**\*5** "An attorney owes a fiduciary duty to his or her client to conduct the representation of that client with undivided loyalty and to avoid engaging in undisclosed conflicts of interest." *Maritrans, GP Inc. v. Pepper, Hamilton, & Sheetz,* 529 Pa. 241, 602 A.2d 1277, 1282 (Pa.1992). Plaintiff asserts that Defendants owed a fiduciary duty to MotorUp and breached that duty by having divided loyalties and by placing the interests of National Media above and in conflict with the interests of MotorUp, to the detriment of MotorUp. Plaintiff has therefore adequately pled a cause of action for breach of fiduciary duty. Defendants once again challenge factual allegations regarding the Second Indemnification Agreement. As well stated in Plaintiff's Reply Brief to Defendant's Motion to Dismiss, "[t]hese diametrically opposed versions of the facts must be tested after full and complete discovery, not by a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."

### VI. *Punitive Damages*

Punitive damages may be awarded in Pennsylvania for conduct that is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 747

(Pa.1984)(citing *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355 (Pa.1963)). Punitive damages must be based on conduct that is "malicious, wanton, reckless, willful, or oppressive...." *Id.* at 747–48. Whether or not Defendants engaged in such reckless conduct is not a matter for this court to decide upon a motion to dismiss. Plaintiff has pled sufficient facts to support their allegation and are entitled to pursue their claim.

### *CONCLUSION*

In conclusion, this Court denies Defendant's Motion to Dismiss in the above-captioned action as to all counts. Defendant's motion is based on disputed factual issues that should not be resolved by this court at this time. An appropriate order follows.

### *ORDER*

AND NOW, this 28th day of November, 2001, upon consideration of Defendant Galland, Kharasch & Garfinkle's Motion to Dismiss (Doc. 12), and Plaintiff's Response thereto (Doc. 18), it is hereby ORDERED and DECREED that Defendant's Motion is DENIED.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 34368760

---

**Footnotes**

1    As to Defendant's final argument on the conflict of interest, it should be noted that, under the Professional Rules of Conduct, it is the duty of an attorney to alert a client when a conflict arises and to explain the situation completely. The client may then consent to continued representation. The attorney may withdraw, but only after explaining the situation to the client and giving them time to adjust their situation accordinglythe attorney must not do anything that will adversely affect the circumstances of the client from whom they are withdrawing. MODEL RULES OF PROF'L CONDUCT R.1.7 and cmt. Defendants cite this rule, but apply it in a way such that Plaintiff is harmed by their withdrawal by claiming that Plaintiff's rights under the contract with National Media are no longer valid.

---

**End of Document**                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.