# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,      :
                         :
        Plaintiff,      :
                         :
     v.                 :      NO. 20-CV-292
                         :
ECKERT, SEAMANS CHERIN & :
MELLOTT, LLC, MARK S.      :
STEWART and KEVIN M.      :      JUDGE WILSON
SKJOLDAL,               :
                         :      ELECTRONICALLY FILED
        Defendants.      :

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

# TABLE OF CONTENTS

INTRODUCTION..................................................................................... 1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..... 2

QUESTIONS PRESENTED .................................................................. 13

ARGUMENT ....................................................................................... 13

CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Adler Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175 (Pa. 1978) ...................................................................................... 17

*American Dredging Co. v. City of Philadelphia*, 389 A.2d 568 (Pa. 1978) ........... 20

*American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975) ............................ 16

*Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005) ................. 15

*Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082 (Pa. Super. 2014) ... 21

*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973) ........................... 19

*Estate of Pew*, 655 A.2d 521 (Pa. Super. 1994) ..................................................... 20

*Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116 (3d Cir. 2020) .................................................................................... 16

*Hyman Cos., Inc. v. Brozost*, 964 F. Supp. 168 (E.D. Pa. 1997) ........................... 18

*Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978) ............................. 17

*Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992) ......................................................... 13, 14, 15, 16, 17, 18, 19, 21

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578 (3d Cir. 2002) ......................................... 17

*Office of Disciplinary Counsel v. Baldwin*, No. 2587 Disciplinary Docket No. 3, 2020 WL 808757 (Pa. 2020) .................................................. 15

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) .................................... 13

*Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382 (3d Cir. 1972) ...................... 18

*Rosenberg v. Commonwealth of Va.*, 181 S.E. 368 (Va. 1935) ................................ 5

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ................................................. 17

## STATUTES

Pa. R. Prof. Conduct 1.0(e) ................................................................. 15

Pa. R. Prof. Conduct 1.7, Comment [24] ............................................ 20

Pa. R. Prof. Conduct 1.10 .................................................................. 21

## INTRODUCTION

Defendant Eckert, Seamans, Cherin & Mellott, LLC ("Eckert") has been impermissibly playing both sides. For years, Eckert represented Plaintiff Pace-O-Matic, Inc. ("POM") in advocating, defending and promoting the continued legality of POM's electronic skill games. While still representing POM, however, Eckert took up arms *against* POM and began to advocate on behalf of another Eckert client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino"), that POM's skill games should be outlawed as gambling devices. Eckert's attack on POM products is a clear breach of fiduciary duty. Accordingly, POM seeks a preliminary injunction to enjoin Eckert from representing clients adverse to POM in matters substantially related to its representation of POM.

Discovery conducted since POM filed its original motion has uncovered additional breaches of fiduciary duty by Eckert. While Eckert initially denied involvement in actions brought by POM in Pennsylvania Commonwealth Court, POM learned during discovery that Eckert—while representing POM—actively collaborated and conspired with counsel for POM's litigation adversaries and participated in the litigation surreptitiously through another law firm. That other firm, Hawke McKeon & Sniscak, LLP, entered its appearance and represented itself as counsel for Parx Casino although Eckert lawyers, including Defendants Mark S. Stewart and Kevin M. Skjoldal, drafted court filings, suggested legal

strategies, communicated with counsel for POM's adversaries and otherwise supported the defense of those actions—all in violation of fiduciary duties owed to POM.

There is continuing, compelling need for injunctive relief. Eckert continues to represent Parx Casino and other casino interests in matters adverse to POM and continues to advocate against the legality of the same POM games that it was retained by POM to defend. Accordingly, Eckert and Messrs. Stewart and Skjoldal should be preliminarily enjoined from representing, advising or otherwise supporting any client adverse to POM in any matter substantially related to Eckert's representation of POM, including advocacating against the continued legality of electronic games of skill in any legislative, lobbying, governmental relations and/or public relations context.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

POM develops and produces electronic skill games sold in Pennsylvania, Virginia and elsewhere. POM's skill games are predominantly dependent upon skill and therefore are not subject to regulation as gambling devices. In the only decision on the subject in Pennsylvania or Virginia, the Court of Common Pleas of Beaver County, Pennsylvania ruled that POM's games are not illegal gambling devices because they are "predominantly . . . game[s] of skill rather than . . . game[s] of chance" and therefore are not subject to seizure by law enforcement

officials. *In re Pace-O-Matic, Inc. Equip.*, M.D. 965-2013, slip op. at 11-12 (Ct. Common Pleas Beaver Cnty. Dec. 23, 2014).[1]

Despite the manifest correctness of this ruling, POM has over the years faced legal challenges to the sale and use of its games. In connection with a potential challenge, POM retained Eckert in 2011 to provide legal services relating to distribution of its "Palmetto Gold" skill game in Pennsylvania. (Cline Decl. ¶ 5.)[2] Pursuant to a written engagement letter dated September 13, 2011, Eckert agreed to provide legal services to POM in relation to "distribution of [POM]'s 'Palmetto Gold' skill games or similar devices within the Commonwealth of Pennsylvania, and any legal issues which may arise from the distribution of any such devices within the Commonwealth of Pennsylvania." (*Id.* ¶ 6 & Ex. A.)[3]

POM and Eckert entered into a second engagement letter dated December 20, 2016 pursuant to which Eckert agreed to provide legal services to POM relating to "legal, regulatory and possible legislative matters in Virginia" concerning "sales and marketing of [POM's] electronics and software." (*Id.* ¶ 8.)[4]

---

[1] The opinion is attached as Exhibit "A."

[2] The Declaration of B. Greg Cline ("Cline Declaration") is attached as Exhibit "B."

[3] The letter is appended to the Cline Declaration as Exhibit A.

[4] The letter is appended to the Cline Declaration as Exhibit B.

POM's electronic skill games have remained functionally equivalent over the years and provide essentially the same game play. (*Id.* ¶ 9.) Therefore, Eckert's representation of POM and its affiliates pursuant to the December 20, 2016 engagement letter relates to substantially the same skill game product that was the subject of the September 13, 2011 engagement. (*Id.*)

Since the engagement letter was signed in late 2016, Eckert handled a variety of legal matters for POM and its affiliates.[5] (*Id.* ¶¶ 10, 15, 18.) Among other things: Eckert represented POM and its affiliates in meetings with law enforcement and government personnel concerning POM's skill games; Eckert represented POM and its affiliates in litigation matters concerning the legality of POM's skill games; Eckert negotiated and drafted agreements between POM and its affiliates and third parties; and Eckert provided advice and counsel relating to legal, legislative and litigation strategies for marketing and selling POM skill games. (*Id.* ¶ 15.) In furtherance of these legal services requested from Eckert, and in reliance on the duties of undivided loyalty and confidentiality owed by Eckert, POM provided Eckert with highly sensitive, proprietary, confidential and non-public information concerning its skill games and business operations and participated with Eckert in confidential and privileged communications concerning

---

[5] The nature of Eckert's years-long representation of POM and its affiliates is described in only general terms to protect and preserve the attorney-client privilege and privileged attorney work product.

the development and execution of legal strategies to preserve and defend the legality of POM's games and address other legal matters. (*Id.* ¶¶ 11-12.) As legal counsel for POM with respect to matters involving POM skill games, Eckert was intimately involved in POM's affairs. (*Id.* ¶ 13.) POM paid substantial fees to Eckert for those legal services. (*Id.* ¶ 14.)

As counsel for POM and its affiliates, Eckert secured legal and governmental opinions attesting that POM's products are games of skill and not gambling devices. (*Id.* ¶¶ 16-17.) Among other things, Eckert obtained an opinion from the Deputy Chief of the Commonwealth of Virginia Department of Alcoholic Beverage Control that POM's electronic skill games are not subject to administrative sanction because they are not gambling devices. (*Id.* ¶ 17.)[6] The Deputy Chief noted that his decision was based, in part, on the determination that POM's skill games are legal in Pennsylvania: "As we discussed, this game is currently being widely used in Pennsylvania . . . and has been found to be a game of skill by the Court of Common Pleas of Beaver County, Pennsylvania." (*Id.* & Ex. D.)[7]

---

[6] The opinion is appended to the Cline Declaration as Exhibit D.

[7] The opinion from the Deputy Chief concludes that POM's skill games do not satisfy the chance element which, in addition to placing a bet and the opportunity to win a prize, is necessary to qualify as illegal gambling under Virginia law. *See* July 7, 2017 letter at p.1; *see also Rosenberg v. Commonwealth of Va.*, 181 S.E. 368, 370 (Va. 1935). The standard for determining whether a device is an illegal

In addition to meeting with and obtaining opinions from government officials and others, Eckert filed an action on behalf of POM's affiliates, Queen of Virginia Skill & Entertainment, LLC and POM of Virginia, LLC, against the Commonwealth's Attorney for the City of Charlottesville in the Circuit Court for the City of Charlottesville, Virginia seeking declaratory and other relief to ensure the continued undisturbed sale and use of POM skill games. (*Id.* ¶ 16.) Citing legal and governmental opinions attesting that POM's products are games of skill and not gambling devices, Eckert accurately asserted in the complaint filed on June 28, 2019 that POM's games "are not illegal gambling" because "skill is determinative of successful play." (*Id.* & Ex. C, ¶ 1.)[8] On this basis, Eckert sought, *inter alia*, a temporary and permanent injunction prohibiting the Commonwealth's Attorney from prosecuting or attempting to prosecute the use of POM skill games as illegal gambling. (*Id.*, Ex. C at pp. 19-20.)

In direct opposition to the correct position which Eckert regularly advanced on behalf of POM, Eckert subsequently openly and publicly attacked POM actions

---

gambling device is the same in Pennsylvania. In other words, a machine is a gambling device if it: (1) involves payment of consideration, (2) the result is determined by chance rather than skill, and (3) the player can receive a reward. *See In re Pace-O-Matic, Inc. Equip.*, slip op. at 5.

[8] The Verified Complaint in the *Queen of Virginia Skill & Entm't, LLC, POM of Virginia, LLC and Miele Manufacturing, Inc. v. Joseph D. Platania* action, which was removed to the U.S. District Court for the Eastern District of Virginia and later remanded, is appended to the Cline Declaration as Exhibit C.

filed on behalf of Parx Casino in Bucks County and Montgomery County, Pennsylvania against establishments that offer POM skill games. (*Id.* ¶¶ 19, 22.)[9] Parx Casino, which declares itself "the #1 casino in Pennsylvania," operates a gaming facility with thousands of slot machines outside Philadelphia.[10] In a brief filed on December 3, 2019 in one of the establishment cases, while Eckert was representing POM, Eckert posited on behalf of Parx Casino that skill games "manufactured by POM of Pennsylvania, LLC/d/b/a Pace-O-Matic d/b/a Miele Manufacturing ('POM')" are "illegal slot machine[s]" and that Parx Casino "has a substantial interest in quelling the spread" of those machines. (*Id.* ¶ 20 & Ex. E at pp. 5, 10.)[11] Eckert wrote: "Despite the manufacturers' clever marketing campaigns, these machines are nothing more than unlicensed slot machines. . . . Manufacturers of 'skill games,' and the establishments that offer them, deceptively market these games as 'legal,' when, in fact, they are not." (*Id.*, Ex. E at p. 4.) Eckert further advocated that the allegedly "illegal gambling devices" manufactured by POM "compete directly with the licensed gaming offered by Parx Casino" and, on behalf of Parx Casino, Eckert sought, *inter alia*, a judicial

---

[9] A list of the actions is appended to the Cline Declaration as Exhibit F.

[10] *See* https://www.parxcasino.com/bensalem/about (last visited Oct. 1, 2020).

[11] The brief filed in *Greenwood Gaming & Entm't, Inc. v. Smoker's Express*, docketed at No. 2019-6832 in the Court of Common Pleas of Bucks County, is appended to the Cline Declaration as Exhibit E.

declaration that POM skill games constitute a "public nuisance" and an injunction barring the defendant tobacco shop from offering POM games to its customers. (*Id.* at pp. 11, 14-20.)

Eckert's direct attack on POM in the Bucks and Montgomery County litigation matters is part of a larger campaign by Eckert on behalf of Parx Casino to secure a ban against *the very same POM skill games* that Eckert was retained to defend and promote in Virginia. (Cline Decl. ¶¶ 22-24.) In furtherance of that campaign, in or around November 2019, while Eckert was representing POM, Mr. Stewart, the co-chair of Eckert's gaming practice, issued a press release on behalf of the Eckert firm declaring that "POM and any person who makes, sells, leases, maintains or offers for play one of their games should be immediately subject to criminal enforcement by local and state law enforcement authorities."[12] On or about January 10, 2020, while Eckert was representing POM, Mr. Stewart sent letters on behalf of Parx Casino to hundreds of Pennsylvania municipalities advocating that skill games including those manufactured by POM are "illegal slot machines" and should be outlawed through a local ordinance which Eckert drafted and enclosed with the letter. (Cline Decl. ¶ 23 & Ex. G.) In addition, while still representing POM, Eckert planned a gaming industry meeting and legislative

---

[12] The press release is attached as Exhibit "C."

reception in Harrisburg (held on February 4, 2020, a few days after Eckert declared its intention to drop POM as a client) at which Eckert advocated for legislation banning skill games like POM's. (Cline Decl. ¶ 24.) These activities by Eckert on behalf of Parx Casino are attempts to secure judicial and/or legislative determinations that POM's skill games—the same games that Eckert simultaneously and correctly promoted in Virginia as *legal* games of skill—should be declared unlawful in Pennsylvania.

POM confronted Eckert with its impermissible conflict and demanded that Eckert withdraw from representing Parx Casino in matters adverse to POM. (*Id.* ¶ 25 & Ex. H.) Eckert refused. In a letter dated January 17, 2020, Eckert misrepresented to POM that it was "not counsel for a party in a litigation where POM is an adverse party."[13] Shortly thereafter, Eckert dropped POM like a "hot potato" in favor of its more lucrative relationship with Parx Casino. (*Id.*)[14] Eckert continues to represent Parx Casino and continues to advocate against the legality of POM games in legislative, government relations and regulatory contexts. (*Id.* ¶ 27; *see also* Am. Compl. (ECF 145) ¶ 52.)

POM filed the instant action for declaratory and other relief on February 18, 2020. (ECF 1.) POM filed its motion for preliminary injunction and supporting

---

[13] The letter is attached as Exhibit "D."

[14] The letter is appended to the Cline Declaration as Exhibit H.

brief on March 24, 2020. (ECF 12, 13.) The Stipulated Order dated May 18, 2020 set a schedule for discovery and the filing of briefs. (ECF 24, 27.) During the course of discovery, POM discovered that, despite Eckert's earlier denials and even though Parx Casino was nominally represented by Hawke McKeon, Messrs. Stewart and Skjoldal had been actively collaborating with POM's adversaries in actions that POM brought in Pennsylvania Commonwealth Court seeking declaratory judgments that its skill games are legal devices and not subject to seizure by law enforcement officials.[15] For example, on January 23, 2020, while Eckert was representing POM, Mr. Stewart sent to counsel for POM's adversaries a draft response to an application which POM filed in Commonwealth Court, and wrote: "We'd appreciate the chance to coordinate our filing timing-with yours."[16] On January 28, 2020, while Eckert was representing POM, Mr. Skjoldal sent an email to counsel for POM's adversaries attacking POM's latest court filing as "very misleading" and suggesting arguments that might be raised in opposition to POM's arguments.[17]

---

[15] The matters are captioned *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, No. 503 MD 2018, and *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Department of Revenue, and City of Philadelphia*, No. 418 MD 2018.

[16] The email is attached as Exhibit "E."

[17] The email is attached as Exhibit "F."

10

POM sought, *inter alia*, communications between Eckert and Hawke McKeon concerning the Commonwealth Court litigation. Eckert objected, claiming that the communications at issue were protected from discovery by the attorney-client privilege and work product doctrines, although Eckert previously represented to POM that it was "not counsel for a party in a litigation where POM is an adverse party." The discovery disputes were referred to the Honorable Joseph F. Saporito, Jr. for resolution. (ECF 30, 31.)

Following extensive briefing and oral argument, Judge Saporito issued a Memorandum and Order on February 16, 2021 directing Eckert and Hawke McKeon to produce, *inter alia*, certain additional communications between them concerning the Commonwealth Court litigation and certain communications with Parx Casino representatives that included third parties. (ECF 87, 88.) Eckert and Hawke McKeon appealed Judge Saporito's determination that Eckert "is estopped from asserting attorney-client privilege" over its communications with Hawke McKeon "based on its express statements in pleadings and other papers before this court that it does not represent an adverse party . . . and it is not otherwise 'involved' in the POM Commonwealth Court cases." (ECF 87, p. 36.)[18] On March 9, 2021, Eckert produced the other communications required to be

---

[18] The matter, which was remanded to Judge Saporito for additional argument on April 6, 2021 (ECF 113, 114), remains pending.

11

produced under the February 16, 2021 Memorandum and Order. The March 2021 production yielded additional evidence that Eckert lobbied Pennsylvania state government officials to ban POM skill games both while Eckert represented POM and continuing after Eckert terminated its relationship with POM.[19]

On February 26, 2021, after its duplicity was exposed, Eckert offered "not to communicate" with counsel for POM's adversaries in the Commonwealth Court litigation and withdrew from the cases filed in Bucks County and Montgomery County and, on this basis, moved to dismiss POM's preliminary injunction motion as moot. (ECF 91, 92.) The Court denied Eckert's motion on April 26, 2021, finding that "Eckert has not satisfied its 'heavy burden of persua[ding] the court that there is no longer a live controversy' with respect to POM's motion for a preliminary injunction." (ECF 116, p. 7.) Pursuant to the Orders dated August 20, 201 and September 7, 2021 (ECF 152, 155), POM filed an amended motion for preliminary injunction on September 17, 2021 accounting for developments that occurred since the original motion was filed. (ECF 157.)[20]

A hearing on POM's motion for preliminary injunction is set for December 20, 2021 at 9:30 am. (ECF 152.)

---

[19] Examples of communications are attached as Exhibit "G."

[20] POM submitted an amended proposed order based on developments since the original proposed order was submitted. (ECF 158.)

Whether Eckert and Messrs. Stewart and Skjoldal should be preliminarily enjoined from representing any client in any matter adverse to POM relating to POM's skill games, including in any legislative, lobbying, government relations and public relations context?

Suggested answer: Yes.

## ARGUMENT

In Pennsylvania, attorneys owe a fiduciary duty to their clients to act with undivided loyalty and to avoid conflicts of interest. *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). Eckert and Messrs. Stewart and Skjoldal breached fiduciary duties owed to POM by attacking POM's games on behalf of other clients and by advocating on behalf of other clients that POM's games should be banned. Preliminary injunctive relief is appropriate and necessary to restrain the manifest and ongoing breaches of fiduciary duty.

In determining whether to grant a motion for injunctive relief, district courts consider four factors: (1) a reasonable probability of eventual success in the litigation; (2) whether the movant will be irreparably harmed if relief is not granted; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citation omitted). The "most critical" factors are probability of success on the merits and irreparable harm. *Id.* at 179. To establish

a reasonable probability of success on the merits, the movant must demonstrate that "it can win on the merits," which requires a showing that is "significantly better than negligible but not necessarily more likely than not." *Id.* With respect to irreparable harm, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* If the likelihood of success and irreparable harm factors—the "gateway factors"—are satisfied, the district court proceeds to consider the third and fourth factors and to "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

POM is entitled to preliminary injunctive relief because all four factors are satisfied and the balance of the factors tips decisively in favor of such relief.

*First*, given Eckert's undeniable conflict of interest, POM is likely to prevail on the merits of its breach of fiduciary duty claim. The Supreme Court made clear in *Maritrans* that attorneys in Pennsylvania owe a common law fiduciary duty to their clients to avoid conflicting representations and refrain from misusing client confidences. *Maritrans*, 602 A.2d at 1283-85. *Maritrans* holds that an attorney breaches his fiduciary duty by representing a former client's competitor in a matter substantially related to the representation of the former client. *Id.* Eckert did just that. Although Eckert was engaged by POM to defend and promote the legality of POM's skill games, Eckert and Messrs. Stewart and Skjoldal simultaneously

advocated against and continue to advocate against the legality of those very same POM skill games. Their attack on their own client is an inarguable violation of the duty of undivided loyalty. *Maritrans* squarely applies and establishes POM's likelihood of success on the merits.[21]

*Second*, Eckert's conflict causes irreparable harm that is properly remedied by injunctive relief. *Maritrans* holds that an injunction is "just and proper" to remedy a breach of fiduciary duty because a client's "competitive position could be irreparably injured if [its counsel] continued to represent [its] competitors" and any damage remedy in these circumstances "would be difficult if not impossible to sustain." *Maritrans*, 602 A.2d at 1287; *see also id.* at 1283-84. Here, as in *Maritrans*, Eckert was intimately involved in developing legal strategies concerning the operation and sale of POM's skill games and, in the process, Eckert acquired substantial confidential information concerning the very same POM skill

---

[21] Eckert tried to defend its double-dealing by claiming that POM waived future conflicts, but there was no valid waiver. (*See* Cline Decl. ¶ 29.) An advance waiver is effective only if the client gives "truly informed consent" after a consultation in which the attorney explains the areas of potential conflict that might arise. *See generally Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675, 691 (3d Cir. 2005); *Office of Disciplinary Counsel v. Baldwin*, No. 2587 Disciplinary Docket No. 3, 2020 WL 808757, at *18 (Pa. 2020) ("informed consent" requires "full disclosure of all possible conflicts"); *see also* Pa. R. Prof. Conduct 1.0(e). Eckert did not provide any such consultation and consequently there was no effective advance waiver. *See* Cline Decl. ¶ 29; *see also* Declaration of Thomas A. Lisk (attached hereto as Exhibit "H") ¶¶ 5-7. Eckert now concedes as much. (ECF 92, p. 3.)

games that Eckert is now attacking on behalf of Parx Casino and other clients.

(*See* Cline Decl. ¶¶ 8-13, 15-18, 27-28.) The ongoing attacks on POM's products
and the opportunity for misuse of its confidential information constitute irreparable
harm which is properly abated by a preliminary injunction. *See generally*
*Maritrans*, 602 A.2d at 1287-88; *see also American Roller Co. v. Budinger*, 513
F.2d 982, 986 (3d Cir. 1975) ("It is the possibility that confidences might be
breached and not the fact of their disclosure or use that dictates disqualification
once a substantial relationship between two representations has been established.").

   *Third*, no interested person will be harmed if injunctive relief is granted.
The only harm relevant to the preliminary injunction analysis is irreparable harm.
*See generally Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949
F.3d 116, 133 (3d Cir. 2020). Eckert will not be irreparably or otherwise harmed if
enjoined from advocating against POM. The only potential loss to Eckert is
monetary—reduced opportunity to bill its casino clients for attacking POM—and
any lost billing opportunity will most likely be fully mitigated by assigning firm
personnel to work on other client matters. Nor will Parx Casino or any of Eckert's
other casino clients suffer any harm. Indeed, Parx Casino already has other
counsel in the state court actions. (Cline Decl., Ex. E.) There is no risk of

irreparable harm to any interested person that weighs against injunctive relief.[22]

*Fourth*, an injunction restraining Eckert from breaching its fiduciary duty to POM is in the public interest. The public interest is served by enforcing fiduciary duties owed by lawyers to their clients and by protecting attorney-client confidences. *See, e.g., Maritrans*, 602 A.2d at 1282 (reasoning that "[t]he public's trust in the legal profession undoubtedly would be undermined" if preliminary injunction barring law firm from conflicted representation were not reinstated); *Adler Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1186 (Pa. 1978) (recognizing "special responsibility" of courts to "assure that persons seeking professional legal assistance receive the quality advocacy and fair treatment they justifiably expect"); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (attorney-client privilege "promote[s] . . . public interests in the observance of law and administration of justice"); *Int'l Bus. Machs. Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) ("The maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so

---

[22] Even if Eckert's fees were relevant to the preliminary injunction analysis— and they are not—Eckert cannot be heard to complain about a reduction in income resulting from its knowing decision to engage in conflicting representations. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself.").

important a consideration that we have held that a court may disqualify an attorney for failing to avoid even the appearance of impropriety.") (citations omitted).

All four factors are thus satisfied and those factors tip sharply in favor of granting injunctive relief. Eckert knowingly embarked on a campaign to attack POM's products on behalf of Parx Casino while receiving confidential information from and participating in privileged conversations with POM about those *very same products*. Its attacks on its own client constitute irreparable harm. Further, as in *Maritrans*, Eckert's continued representation of Parx Casino and other casino clients in matters adverse to POM "create[s] too great a danger that [POM's] confidential relationship with [Eckert] would be breached" and consequently injunctive relief is "just and proper" to avoid further irreparable harm to POM resulting from Eckert's divided loyalty. *See Maritrans*, 602 A.2d at 1287; *see also Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972) (lawyer is not "permitted to place himself in a position where, even unconsciously, he will be tempted, or it appears to the public and his former clients that he might be tempted, in the interests of his new client, to take advantage of information derived from confidences placed in him by [former clients]"); *Hyman Cos., Inc. v. Brozost*, 964 F. Supp. 168, 173 (E.D. Pa. 1997) ("[I]f [the lawyer] could divulge specific, valuable, confidential information learned while [working for the client], information that, if disclosed, could injure [the client's] economic health to the

18

point of irreparable harm, a fiduciary duty has been breached and the conduct may be enjoined.").[23]

Eckert has no defense. Its self-serving attempt to moot this dispute by withdrawing from the Bucks and Montgomery County actions and offering not to communicate with POM's Commonwealth Court adversaries is too little, too late and has already been rejected by the Court. (ECF 116.) Moreover, to feed its rapacious appetite for more fees from its gaming clients, Eckert continues to advocate—publicly, privately, legislatively and otherwise—that POM's games should be outlawed as illegal gambling devices in plain breach of the fiduciary duties owed to POM. Contrary to Eckert's argument, this is not a permissible "positional" conflict. Eckert is attacking and actively undermining the work that it performed for POM. As in *Maritrans*, which involved a law firm's representation of a former client's competitors in their negotiations with a different labor union, Eckert's and Parx Casino's interest is to eliminate competition from POM's games and therefore a breach of fiduciary duty, not a "business" conflict. *Maritrans*, 602

---

[23] The Second Circuit explained the rationale for this "strict prophylactic rule" as follows: "A lawyer's good faith . . . is . . . an inadequate safeguard when standing alone. Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation. . . ." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973).

A.2d at 1280-81; *see also* Pa. R. Prof. Conduct 1.7, Comment [24] ("A conflict of interest exists . . . if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case, for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client."). Continued advocacy by Eckert and Messrs. Stewart and Skjoldal on behalf of Parx Casino and their other casino clients is intentionally aimed at destroying POM's business in Pennsylvania and potentially elsewhere. This is a clear breach of fiduciary duty. Their priority is plain: the fees derived from continued representation of gaming interests justify prioritizing Parx Casino's interests and continued breaches of fiduciary duties owed to POM.

Eckert's conflict affects the entire firm and requires that the entire firm be enjoined from advocating against POM. Confidential information acquired by one member of a law firm "is imputable to other members of the same law firm." *Estate of Pew*, 655 A.2d 521, 545 (Pa. Super. 1994). Consequently, the entire Eckert firm, including Messrs. Stewart and Skjoldal, must be restrained from representing Parx Casino in matters adverse to POM. *See American Dredging Co. v. City of Philadelphia*, 389 A.2d 568, 572 (Pa. 1978) ("[W]hen one attorney is prohibited by ethical considerations from undertaking to represent a certain client, all members of the firm to which that attorney belongs are also prohibited from

serving as counsel to that client."); *see also Maritrans*, 602 A.2d at 1287 (both law firm and law firm partner enjoined from representing competitor based on conflict of interest); Pa. R. Prof. Conduct 1.10.[24]

## CONCLUSION

For the reasons set forth above, Eckert and Messrs. Stewart and Skjoldal should be preliminarily enjoined from representing any party adverse to POM in any matter substantially related to Eckert's representation of POM in accordance with the proposed order submitted by POM.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
570-342-6100

Date: October 1, 2021

---

[24] Eckert claimed to have implemented an ethical screen but a screen was suggested long after Eckert engaged in the conflicting representations. In any event, even a properly implemented ethical screen cannot remedy a breach of fiduciary duty. *See, e.g., Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1094 (Pa. Super. 2014) (Donohue, J., concurring) (observing that "the existence of an ethical screen does not overcome a conflict of interest").

21

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)

I, Donna A. Walsh, hereby certify that the foregoing Memorandum of Law in Support of Amended Motion for Preliminary Injunction is in compliance with Local Rule 7.8(b)(3). The brief contains 4977 words as computed by Microsoft Office Word.

/s/ Donna A. Walsh

Date: October 1, 2021

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Support of Amended Motion for Preliminary Injunction

was served upon the following counsel of record by first-class mail, postage

prepaid, on this 1st day of October 2021:

> Abraham C. Reich, Esquire
> Robert S. Tintner, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103-3291

> /s/ Daniel T. Brier
> Daniel T. Brier