# Exhibit G

From:          Richard Gmerek <RGmerek@ggrgov.com>
Sent:          Tuesday, December 31, 2019 11:12 AM
To:            Mark S. Stewart
Cc:            Bob Green
Subject:       [External] Re: Tomlinson letter to Barasch
Attachments:   TOMLINSON LETTER TO BARASCH RE SKILL GAMES (L0849115xA35AE).docx;
               ATT00001.htm

I can't remember if I told you guys the Bears told me he was leaving around Christmas and he is out of the country I believe it was for the entire month of January

Please excuse brevity and typos as this message was likely dictated


On Dec 27, 2019, at 4:05 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:

Bob & Dick

Hope you guys had a great Christmas. Attached is a draft of the letter that you wanted from Tommy to Barasch. It's still probably too lawyerly, but I tried to keep it somewhat succinct. Once you have commented, we can provide it others like Sean, Ryan and whomever else needs to see it. For anyone working for the state, we should not provide it by email. Someone can take a flash drive over. RTKL requests and all.

Thanks.

**Mark Stewart, Esquire**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237-7191 | Mobile (717) 579-7358
mstewart@eckertseamans.com

------------------------------------------------------------------
This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT01431

December 30, 2019

David M. Barasch
Chairman, Gaming Control Board
Commonwealth of Pennsylvania
P.O. Box 69060
Harrisburg, PA 17106

Dear Chairman Barasch,

I am writing about a grave and growing problem regarding the proliferation of illegal slot machines in the Commonwealth. You have no doubt seen these machines, as there is one in operation in plain sight in the entry of the Hallmark store adjacent to your offices in Strawberry Square, Harrisburg. Similar illegal slot machines can now be found in convenience stores, gas stations, restaurants, bars, taverns, smoke shops, barber shops, tattoo parlors, thrift shops, shopping malls and many more locations.

These illegal slot machines are a direct threat to, and undermine the public's confidence in, the integrity of licensed gaming in Pennsylvania. As the agency charged by the General Assembly with protecting that integrity, I am asking the Gaming Control Board, and you, specifically, as its chairman, to issue a strong and unequivocal statement against the spread of these illegal slot machines.

The harm being inflicted on the public by illegal slot machines, which their purveyors refer to as "skill games," is clear. Unlike licensed gaming overseen by the Board, with these illegal slot machines:

- No protections are in place to prevent minors from playing the slot machines and from being on what amounts, in many instances, to a mini-gaming floor;

- No protections are in place for compulsive or problem gamblers;

- No investigations are done into the criminal backgrounds of the manufacturers, owners and suppliers of the slot machines;

- No measures are in place to prevent money laundering, loan sharking and other corrupt practices and crimes;

- No testing is performed to provide consumer protections as to the play and payout odds of the slot machines; and

- No surveillance or security measures are in place to prevent potential criminal activity involving the machines or those who play them.

{L0849115.1}

ECKERT01432

All of these facts decrease the public's confidence in Pennsylvania's licensed gaming industry, a confidence that the Legislature and the Board have expended great effort to instill and maintain.

Moreover, these illegal slot machines directly undermine many of the priorities and initiatives embraced in the Pennsylvania Race Horse Development and Gaming Act. Each time someone plays one of these illegal slot machines funding is lost for property tax relief, rent rebate programs for senior citizens, Pennsylvania's horse racing industry and related agricultural enterprises, economic development and tourism initiatives and local share support for host communities and counties. Under the Gaming Act, the Gaming Control Board is charged with advancing and maximizing the success of each of these important priorities.

Recently, representatives of the Gaming Control Board testified on this topic before the House Gaming Oversight Committee. I was deeply disappointed in their statements. In particular, as to their testimony on the legality of so-called skill games and the lack of clarity from the courts and the General Assembly on that topic, I could not disagree more. I can assure you that our intention in enacting Act 42 of 2017 was to make clear that any machine that accepts money to play and provides a payout is a slot machine, regardless of whether its outcome is determined by skill, chance or both.

Since the testimony of Board staff, the Commonwealth Court has provided even greater clarity as to the illegality of these machines. As you are no doubt aware, despite the clever marketing of their distributors, the court determined that the machines manufactured and sold by POM of Pennsylvania, LLC are "slot machines" as defined in the Gaming Act. *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania*, No. 418 M.D. 2018 (Opinion at 11-12).

Pennsylvania's Crimes Code expressly prohibits making, selling, owning, offering for play, etc., "any . . . slot machine." 18 Pa.C.S. § 5513(a). It is beyond dispute that the phrase "any slot machine" includes a slot machine as defined in the Gaming Act – a definition which Commonwealth Court says includes these so-called skill games (at least those made by POM of Pennsylvania, LLC).

Indeed, the only exception in the Crimes Code whereby conduct involving a "slot machine" is not illegal is when that conduct is performed consistent with the Gaming Act. 18 Pa.C.S. § 5513(e.1). To the extent you or the Board desire further explanation as to the illegality of these slot machines under the Crimes Code, I direct your attention to a recent Brief of Amicus Curiae filed by four of the Board's licensed casinos in the *POM of Pennsylvania, LLC* case.

Given all that is at stake, the time has passed for tepid remarks by Board staff. Strong leadership is needed from you and the Board against illegal slot machines and in defense of Pennsylvania's licensed and regulated gaming industry, including its thousands of hard-working, licensed employees.

Thank you for your attention to these concerns. I look forward to hearing from you about your plans to address this pressing matter.

Sincerely,

ECKERT01433

| From: | Mark S. Stewart |
|---|---|
| Sent: | Friday, March 20, 2020 10:10 AM |
| To: | 'Bob Green'; RGmerek@ggrgov.com; pshelly@shelly-lyons.com; Eric Hausler |
| Subject: | RE: Skill |

One last comment on the last piece re skills still being open. Adrian said that Penn had shut down all their VGTs in truck stops. Said it was Rutters' decision. That may be something to bring up at some point because it's virtually the same circumstance as skill games in gas stations/convenience stores.

As to legal timing, an update. Wednesday, POM sent subpoenas for all 7 casinos seeking to intervene. They are looking to depose people (next week; yeah, right), and seek the production of documents related to our financial interest in the proceeding. We have conferred with Kevin and Adrian, and a response is in the works. No one is going to appear or produce documents, and it will be raised with the Court given our plain, statutory financial interests ($50M plus iGaming fees to boot) and the vexatious nature of their antics.

Nonetheless, to Bob's point, they are clearly going to object and attempt to delay interventions. The April 6 hearing on intervention has been postponed with no date noted. I don't see it happening until May, with us being in the case by late May or June. Given this, there's no way to get our summary relief on the June argument court list, which means the earliest it could be argued is Sept., with a decision sometime between December and Apri 2021.

Let's discuss what all we want in a bill, and we can get to work on drafting. When I say what all, I am referring to the many concepts we've batted around from the grand deal to other ideas. We could produce multiple versions, as we have in the past, so we can bolt different ideas on as we go. For example, Title 18 only; a package of bills to accomplish the big deal; a bill that plans for the worst should VGTs expand so have increased buffers, casino-only route operators, prohibition on anyone who made or had skill games, etc.

Mark Stewart, Esquire
ECKERT SEAMANS CHERIN & MELLOTT, LLC
213 Market Street • 8th Floor • Harrisburg, PA 17101 Direct (717) 237-7191 | Mobile (717) 579-7358
mstewart@eckertseamans.com


-----Original Message-----
From: Bob Green [mailto:RGreen@parxcasino.com]
Sent: Thursday, March 19, 2020 8:19 PM
To: RGmerek@ggrgov.com; pshelly@shelly-lyons.com; Mark S. Stewart <MStewart@eckertseamans.com>;
Eric Hausler <EHausler@parxcasino.com>
Subject: [External] Skill

The way I read it is that General Merchandise Stores (convenience stores) and gas stations can stay open. If there's no specific directive to turn them off, why would they ? Maybe the same goes for pizza parlors, ie while you're waiting for your take out pizza, you can play a 'skill game" ? As I said to Dick earlier, there's bound to be a court case log jam, thus pushing our hope of a judicial remedy farther down the road. Let's get a fucking bill passed. Thanks, Bob.

ECKERT01792

Sent from my iPhone

2

ECKERT01793