## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| **Plaintiff,** | : | NO. 20-CV-292 |
| | : | |
| v. | : | **JUDGE WILSON** |
| | : | |
| ECKERT, SEAMANS, CHERIN & | : | **ELECTRONICALLY FILED** |
| MELLOTT, LLC, MARK S. | : | |
| STEWART AND KEVIN M. | : | |
| SKJOLDAL, | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT
## OF AMENDED MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Defendants' opposition brief is remarkable for what it continues to ignore: the attacks by Defendants Eckert Seamans Cherin & Mellott, LLC ("Eckert"), Mark S. Stewart and Kevin M. Skjoldal (referred to collectively herein as "Eckert") on their own client. Eckert does not deny—because it cannot deny—that it attacked and continues to attack Plaintiff Pace-O-Matic, Inc.'s ("POM") electronic games even though it was retained by POM to provide legal services in relation to those very same games. Eckert undermined and, unless enjoined, will continue to undermine its own work in plain breach of the duty of undivided loyalty owed to POM. While Eckert has withdrawn from litigation matters adverse to POM, it continues to advocate against POM's games—the same games it was

retained to defend—in legislative and other forums.  POM seeks preliminary injunctive relief to preclude such plain breaches of fiduciary duty.

None of Eckert's arguments negate or lessen the continuing, compelling need for preliminary injunctive relief.  Eckert suggests that its (albeit late) voluntary withdrawal from state court litigation adverse to POM eliminates any continuing harm, but this argument was already rejected.  This Court determined that Eckert's "pinky promise" not to re-engage with POM's adversaries in Pennsylvania state courts does not moot POM's motion for preliminary injunction. ECF 116 at 6 & n.3.  In addition, Eckert's "pinky promises" do not address its advocacy against POM in non-judicial forums which POM also properly seeks to enjoin.[1]  Further, Eckert argues that POM's motion is untimely, but POM filed its preliminary injunction motion in March 2020, within a month of bringing this action.  While intervening discovery disputes have prevented disposition of POM's motion, there was no delay in seeking relief.

Eckert's other arguments likewise lack merit.  Eckert claims that Stewart believed that Eckert had an advance conflict waiver, but there was no valid waiver. Eckert concedes as much.  ECF 164 at 3, 8, 9.  Moreover, what one Eckert lawyer

---

[1]  Eckert claims in its brief that it "has agreed not to take a position adverse to POM. . . ."  ECF 164 at 9.  This is not what Stewart's declaration says.  Paragraph 10 states: "Eckert and I will not advocate legislatively, judicially or publicly that POM's devices are not based predominantly on skill."  ECF 164-8, ¶ 10.  There is no authority or precedent for parsing client representations as Eckert proposes.

now claims to have believed is not relevant. Eckert also repeatedly claims to have implemented an ethical screen, *id.* at 3, 5, 7, 14, 16, 18, 19, but any confidentiality measures were implemented more than two-and-a-half years after Eckert undertook the conflicting representations and after Eckert commenced litigation seeking to have POM's games declared a public nuisance. In any event, an ethical screen is not a defense to a conflict of interest.

In short, Ecker has no defense to POM's well-supported motion for preliminary injunctive relief. As demonstrated below and in POM's opening brief, and as will be further demonstrated at the hearing scheduled for December 20, 2021 (ECF 152), POM has established all requirements for a preliminary injunction[2] and, consequently, Eckert should be enjoined from representing Parx Casino and others adverse to POM in matters adverse to POM.

## A.    *Maritrans* Establishes POM's Right to Relief on the Merits.

Eckert concedes that *Maritrans* is the "seminal case" concerning the duty of loyalty, but urges the Court not to follow *Maritrans* because it claims to have an ethical screen and denies sharing POM's confidential information. ECF 164 at 12-14. The Supreme Court rejected similar arguments in *Maritrans*.

---

[2] The correct standard for preliminary injunctive relief is set forth in *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). As *Reilly* noted, the *ECRI* case on which Eckert relies is part of "an inconsistent line of cases" which "appear to be the product of compounded subtle misinterpretations of [Third Circuit] longstanding jurisprudence." *Id.* at 177.

*Maritrans* held that "a court may restrain conduct which it feels may develop into a breach of ethics; it is not bound to sit back and wait for a probability to ripen into a certainty." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992) (citation and internal quotation marks omitted). *Maritrans* further held that it is "just and proper" to preliminarily enjoin a law firm from representing a client's competitors even absent a breach of confidentiality where the law firm, like Eckert in this case, acquired confidential information from its client concerning matters that were the subject of the law firm's representation of the client's competitors. *Id.* at 1287. The Third Circuit likewise recognized that "[i]t is the possibility that confidences might be breached and not the fact of their disclosure" that requires disqualification when a conflict of interest has been established. *See American Roller Co. v. Budinger*, 513 F.2d 982, 986 (3d Cir. 1975); *see also Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972) (lawyer is not "permitted to place himself in a position where, even unconsciously, he will be tempted . . . in the interests of his new client, to take advantage of information derived from confidences placed in him by [a former client]"). Similarly, Eckert's breaches of the duty of loyalty while in possession of POM's confidential information justify preliminary injunctive relief.

4

Contrary to Eckert's argument, an alleged ethical screen is no defense. ECF 164 at 3, 16. Even if Eckert had timely implemented a screen—and it did not[3]—an ethical screen does not excuse or enable conflicting representations. Ethical screens are effective only when a lawyer changes firms or leaves government employment. Pa. R. Prof. Conduct 1.10(b)(1), 1.11(b)(1). An ethical screen does not remedy or excuse a conflict of interest. *See*, *e.g.*, *Dougherty v. Philadelphia Newspapers, LLC*, 85 A.3d 1082, 1094-95 (Pa. Super. 2014) (Donohue, J., concurring) (observing that "the existence of an ethical screen does not overcome a conflict of interest"). Moreover, as the Supreme Court recognized in enjoining the conflicting representation in *Maritrans* rather than just the disclosure of client confidences, anything less than a preliminary injunction barring the conflicting representation "would create too great a danger" that the confidential attorney-client relationship would be breached and any confidentiality order "would be difficult if not impossible" to police. *Maritrans*, 602 A.2d at 1287.

---

[3] While Eckert's Chief Legal Officer, Timothy S. Coon, alludes to a conversation about the need for a confidentiality screen in March 2017, Coon Decl. (ECF 164-9) ¶ 6, Lisk testified that he was never made aware of a confidentiality screen while at Eckert, Lisk Dep. at 77, ll.9-17; *see also* Lisk Decl. (ECF 13-3) ¶ 9. Lisk further attested that Stewart invited a member of Eckert's POM team from Virginia to Harrisburg to solicit additional work from Parx Casino at a time when he had access to POM confidential information. Lisk Decl. ¶ 9; *see also* Lisk Dep. (Exhibit "A") at 59, ll.4-15; *id.* at 61, ll.5-24. Eckert does not claim to have implemented a "formal confidentiality screen" until September 2019 when Eckert sought to have POM's skill games declared a public nuisance. Coon Decl. ¶ 7. There was no effective screen.

More fundamentally, Eckert misunderstands the duty of undivided loyalty which lawyers owe to their clients in positing that "there has been no breach of any fiduciary duty." ECF 164 at 19. *Maritrans* holds that the fiduciary duty which lawyers owe to their clients "demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." 602 A.2d at 1283 (citations omitted). There is no doubt that Eckert breached and continues to breach the duty of undivided loyalty owed to POM and this alone compels preliminary injunctive relief.

Eckert also tries to avoid the consequence of straightforward application of *Maritrans* by denying that its work for Parx Casino is "substantially related" to its work for POM. ECF 164 at 14. This is just not credible. Eckert was and still is on both sides of the *very same issu*e. Eckert advocated on behalf of POM that POM's electronic games are "skill game[s]" and not "gambling device[s]"[4] and advocated and continues to advocate on behalf of Parx Casino that those very same POM products are misbranded as "skill games" and instead constitute "gambling

---

[4]  On behalf of POM, prior to terminating the attorney-client relationship, Eckert sought a declaratory judgment that POM's product "is a skill game the outcome of which is determined predominantly by the player's skill with pattern recognition and memory retention." *See* Compl. ¶ 68 in *Queen of Virginia Skill & Entm't, LLC, POM of Va., LLC and Miele Mfg., Inc. v. Platania* (attached to Cline Decl. (ECF 13-2) as Ex. C).

activities."[5]  While Eckert withdrew from litigation matters adverse to POM, it continues to advocate and lobby against POM skill games.  *See*, *e.g.*, Pl.'s Supp. Br. (ECF 160) at Ex. G.  Eckert's advocacy for POM's skill games and its advocacy against those same games are "substantially related matters" within the meaning of Rule 1.9(a) of the Rules of Professional Conduct and therefore Eckert is properly barred from continuing to represent Parx Casino in matters adverse to POM's interests relating to POM's same skill games products.  *See Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n*, 909 F. Supp. 287, 291 (E.D. Pa. 1995) ("Two matters are 'substantially related' under RPC Rule 1.9(a) when an attorney might have acquired confidential information as counsel in one matter which is also relevant to the other matter.") (citations omitted).[6]

Contrary to Eckert's argument, its attack on POM is not a permissible "positional" conflict and it is not insulated from liability because "the framework for gambling" is different in Virginia and Pennsylvania.  ECF 164 at 14, 19 n.7. The reality is that Eckert, acting on behalf of Parx Casino, is seeking a ban on the

---

[5]  On behalf of Parx Casino, and while also representing POM, Eckert sought a declaration that POM's games constitute "illegal gambling activities" and a "public nuisance."  *See* Compl. ¶ 66 & WHEREFORE clause on pp. 10-11 in *Greenwood Gaming & Entm't, Inc. v. Smoker's Express* (attached to Cline Decl. as Ex. E.).

[6]  Pursuant to Local Rule 7.8(a), *Mylan* is reproduced in the attached appendix.

same POM games that it was retained to defend.  Its ongoing advocacy for Parx is aimed at eliminating competition from POM.  This is an actual, not a positional or business, conflict.  As Comment 3 to Rule 1.9 illustrates, conflicting relationships are substantially related where, as here, there is "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  Pa. R. Prof. Conduct 1.9, Comment [3].  Comment 3 offers as an example that a lawyer who previously represented a client in securing an environmental permit to build a shopping center is precluded from representing neighbors seeking to oppose rezoning of the property based on environmental considerations.  *Id.* That is exactly the problem here: as an advocate of Parx Casino, Eckert is attacking the very same POM games that it defended and about which it acquired substantial confidential information in its role an advocate for POM.[7]  This is a clear breach of the duty of undivided loyalty owed to POM.

---

[7]  As support for its argument that this is a positional conflict, Eckert cites part of Comment 24 to Rule 1.7 of the Rules of Professional Conduct (ECF 164 at 19 n.7) but ignores the very next sentence which warns: "A conflict of interest exists . . . if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case, for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client."  Pa. R. Prof. Conduct 1.7, Comment [24].  Eckert, on behalf of Parx Casino, was and is seeking to destroy POM's business in Pennsylvania in plain breach of the duty of undivided loyalty.

Eckert claims that it "obtained an advance conflict waiver in order for [it] to represent POM in Virginia subject to certain limitations."  ECF 164 at 13-14.[8] This appears to be a holdover from Eckert's opposition to POM's original filing. Indeed, Eckert concedes elsewhere in its brief that "it did not have a fully informed advance conflict waiver."  ECF 164 at 3; *see also id.* at 8 (Eckert "did not have such an informed conflict waiver"); *id.* at 9 ("Mr. Lisk did not obtain the conflict waiver requested").  In fact, in his deposition on September 1, 2020, the Eckert partner in charge of the POM relationship, Thomas A. Lisk, verified what he said in his Declaration filed with this Court on March 21, 2020: he never advised POM that Eckert planned to represent Parx Casino in matters adverse to POM and it was not a condition of Eckert's engagement that POM agree that Eckert could represent Parx Casino in matters adverse to POM.  *See* Lisk Decl. (ECF 13-3) ¶¶ 5-7; Lisk Dep. (attached as Exhibit "A") at 57, ll.4-20; *id.* at 58, ll.15-20; *id.* at 84, l.11 to 85, l.16.  In addition to verifying the lack of informed consent, Lisk confirmed that the boilerplate advance waiver language in the engagement letter referenced conflicting representations that were not substantially related and did not involve confidential information that might be used to one client's disadvantage.  Lisk

---

[8] Contrary to Eckert's suggestion, ECF 164 at 5, the internal Eckert emails appended to Eckert's opposition brief do not contemplate or confirm a consultation with POM about Parx Casino's plan to attack POM's games.  Absent actual consultation about the conflict and potential risks, of course, there is no waiver.

Dep. at 69, ll.4-24.  Neither condition is satisfied here.  For multiple reasons, there was no valid advance waiver.  *See*, e.g., *Mylan, Inc. v. Kirkland & Ellis, LLP*, No. 15-581, 2015 WL 12733414, at *19 (W.D. Pa. June 9, 2015) ("If [a law firm] intended to retain a right to act as an advocate against [its own clients] . . ., it was incumbent upon it to make certain that the clients knew and agreed to such an arrangement.") (magistrate judge recommending that motion for preliminary injunction be granted); *see also Int'l Longshoremen's Ass'n,* 909 F. Supp. at 293 (informed consent requirement "calls for more than mere 'awareness' of a possible conflict of interest"; "[a]ctual consultation is required").

Eckert's opposition brief in no way undermines POM's compelling showing that Eckert breached its fiduciary duty by attacking POM's products.  POM has amply established that it "can win on the merits." *Reilly*, 858 F.3d at 179.

### B.    Eckert's Representation of Other Clients in Matters Adverse to POM Constitutes Irreparable Harm.

Eckert argues that POM is not suffering irreparable harm because it voluntarily withdrew from the state court matters earlier this year and because POM is seeking disgorgement of the legal fees which it paid.  ECF 164 at 16-18. Neither argument annuls the proven irreparable harm.

This Court has already rejected Eckert's argument that its voluntary withdrawal from the Montgomery and Bucks County actions and its offer to refrain from communicating with counsel for POM's adversary in the Commonwealth

Court actions preclude a finding of irreparable harm.  In denying Eckert's motion to dismiss the preliminary injunction motion as moot, the Court ruled that "Eckert has not satisfied its 'heavy burden of persua[ding] the court that there is no longer a live controversy' with respect to POM's motion for a preliminary injunction." ECF 116 at 7 (citations omitted).  Moreover, POM is not only seeking to enjoin Eckert from appearing in litigation matters challenging POM games, but also to prevent Eckert from continuing to advocate that POM's games should be outlawed as illegal gambling devices.  POM's motion is not moot.

Further, Eckert's argument ignores *Maritrans* which made clear that a lawyer's breach of the duty of undivided loyalty threatens irreparable harm which is properly abated by a preliminary injunction.  602 A.2d at 1284.  The Supreme Court explained that injunctive relief is "just and proper" because a client's "competitive position could be irreparably injured if [its law firm] continued to represent [its] competitors" and any "remedy at law . . . would be difficult if not impossible to sustain. . ." given the privilege between the law firm and the client's competitors.  *Id.* at 1287.  Eckert's continuing breach of the duty of undivided loyalty owed to POM undoubtedly satisfies the irreparable harm requirement.[9]

---

[9]  The cases cited by Eckert on page 17 of its brief are materially different in that they do not involve a lawyer's breach of the duty of undivided loyalty.  None of those cases endorse or in any way suggest that a lawyer entrusted with confidential information concerning its client's products may properly represent the client's competitor in seeking to prohibit sale and use of those same products.

11

Eckert is wrong in arguing that the availability of disgorgement as a remedy for a breach of fiduciary duty undermines POM's right to a preliminary injunction. ECF 174 at 17-18. The relevant question is not whether money damages are available but rather whether they are adequate to compensate for a lawyer's breach of the duty of undivided loyalty. *See Loretangeli v. Critelli,* 853 F.2d 186, 196 n.17 (3d Cir. 1988) ("irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate"). The answer is clearly no. *Maritrans,* 602 A.2d at 1284, 1287.[10]

Eckert is also wrong in suggesting that POM should be denied relief because it did not immediately move for a preliminary injunction after confronting Eckert with its conflict. ECF 164 at 16. As the record demonstrates, POM addressed the conflict with Eckert when Eckert sought a judicial declaration that POM's games constitute a public nuisance. *See* Cline Decl. ¶ 25 & Ex. H. POM thereafter conferred several times with Eckert in an effort to remedy the conflict and commenced this action and sought injunctive relief when it became apparent that Eckert would not withdraw from its adverse representation of Parx Casino. *Id.*

---

[10]   The cases cited by Eckert on page 18 of its brief are not on point. *Doe* involved a claim for injunctive relief requiring an insurer to pay disability benefits without monthly statements or physician reports. *Doe v. Provident Life and Acc. Ins. Co.,* 936 F. Supp. 302 (E.D. Pa. 1996). *Tudor* involved an effort by a bank to exercise the common law remedy of equitable subrogation. *Tudor Dev't Grp. v. U.S.F.&G.,* 968 F.2d 357 (3d Cir. 1992). Neither case has any application here.

12

The law in the Third Circuit is clear that such attempts to resolve a dispute do not negate irreparable harm. *See Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 169 (3d Cir. 2000); *see also Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 726-27 (3d Cir. 2004).[11]

In short, Eckert offers nothing to defeat POM's showing of irreparable harm.

### C.    Granting Preliminary Injunctive Relief Poses No Risk of Irreparable Harm to Others.

Eckert does not claim that any other party will suffer irreparable (or any other) harm if POM's request for preliminary injunctive relief is granted. Eckert asserts that it should not be "punish[ed]" with an injunction after withdrawing from the state court litigation matters, ECF 164 at 20, but enforcement of the duty of undivided loyalty is POM's right, not a punishment. Eckert also asserts that Parx Casino should be permitted to choose its own counsel, *id.* at 21, but this is not a concern. Parx Casino is represented by other counsel in the state court litigation matters and will suffer no interruption in representation if Eckert is enjoined from advocating against POM. Eckert also mistakes the relevant status quo in arguing that its representation of Parx Casino should not be disturbed. *Id.* at 20. Conflict-free representation is "the status quo as it existed prior to the wrongful conduct"

---

[11]    The cases cited by Eckert are easily distinguished in that the movants waited for years before seeking injunctive relief. *See Lanin v. Borough of Tenafly*, 515 F. App'x at 114 (3d Cir. 2013); *Skehan v. Bd. of Trustees of Bloomsburg State College*, 353 F. Supp. 542 (M.D. Pa. 1975). There was no delay here.

and the status that is properly restored by an injunction. *Maritrans*, 602 A.2d at 1288.

Eckert makes much of the fact that POM sought declaratory judgments actions in Pennsylvania Commonwealth Court concerning the legality of its skill games. ECF 164 at 20. This is true and it changes nothing. Eckert's attacks on POM while representing POM constitute an impermissible conflict and require disqualification regardless of POM's claims for declaratory relief against other parties. Nonetheless, it is highly probative of Eckert's breach of loyalty that Stewart and Skjoldal covertly opposed POM in Commonwealth Court.

The harm to POM resulting from Eckert, first secretly and then overtly, playing both sides far outweighs any unarticulated inconvenience to Parx Casino or Eckert and the third factor thus favors granting preliminary injunctive relief.

### D.      The Public Interest Favors Preliminary Injunctive Relief.

As demonstrated in POM's opening brief, the public interest will be served by enforcing POM's right to conflict-free counsel. *See* ECF 160 at 17-18. Unable to distinguish the authority cited by POM, Eckert makes a naked assertion that POM moved for a preliminary injunction "as a tactical weapon." ECF 164 at 21. This accusation is baseless. Granting injunctive relief will confer no tactical advantage in the pending state court matters because Parx Casino is already

14

represented by other counsel in those matters.  The public interest favors granting preliminary injunctive relief.

> **E.    POM Is Entitled to a Preliminary Injunction Barring Eckert From Representing Other Clients in Matters Adverse to POM.**

All four preliminary injunction factors are satisfied and those factors weigh overwhelmingly in favor of granting relief.  Because Eckert represented POM concerning challenges to its skill games products and acquired confidential information from POM relating to those games, Eckert, Stewart and Skjoldal, must be enjoined from attacking those same games.

## CONCLUSION

For the reasons above and in POM's opening brief, Eckert, Stewart and Skjoldal should be preliminarily enjoined from representing any party adverse to POM in any matter substantially related to Eckert's representation of POM in accordance with the proposed order submitted by POM.

Respectfully submitted,
s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Dated:  November 5, 2020

15

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Reply Brief was served upon the following counsel of record via the Court's ECF

filing system on this 5th day of November 2021:

> Abraham C. Reich, Esquire
> Robert S. Tintner, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103-3291

> /s/ Daniel T. Brier
> Daniel T. Brier