*EXHIBIT "A"*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

      Plaintiff,

      v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

      Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## ORDER

AND NOW, this 16th day of November, 2021, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT**:

1.    With respect to the documents at issue on remand (*see* Doc. 114), the motion to compel discovery by plaintiff POM[1] (Doc. 50) is **GRANTED**, and the motion for a protective order by defendant Eckert[2] (Doc. 44), the motion to quash subpoena by non-party subpoena recipient Parx[3] (Doc. 48), and the motion for a protective order or to quash subpoena by non-party subpoena recipient HMS[4] (Doc. 52) are **DENIED**;

---

[1] Pace-O-Matic, Inc.
[2] Eckert Seamans Cherin & Mellott, LLC.
[3] Greenwood Gaming & Entertainment d/b/a Parx Casino.
[4] Hawke McKeon & Sniscak LLP.

and

2.      Based on our *in camera* review, the movants' objections are

**OVERRULED**, and the following documents shall be **PRODUCED** to

the plaintiffs without redaction **within twenty-one (21) days**:

- 2019_12_13_13_45_48.pdf;
- 2019_12_13_15_24_35.pdf;
- 2019_12_13_16_58_02.pdf;
- 2019_12_13_17_04_24.pdf;
- 2019_12_13_17_05_37.pdf;
- 2019_12_14_11_06_16.pdf;
- 2019_12_16_16_56_58.pdf;
- 2019_12_18_02_55_49.pdf;
- 2019_12_18_12_12_16.pdf;
- 2019_12_18_12_57_27.pdf;
- 2019_12_18_14_04_35.pdf;
- 2019_12_18_14_12_23.pdf;
- 2019_12_18_14_42_06.pdf;
- 2019_12_18_15_14_03.pdf;
- 2019_12_19_16_22_36.pdf;
- 2020_01_13_13_05_02.pdf;
- 2020_01_13_13_26_46.pdf;
- 2020_01_13_13_39_23.pdf;
- 2020_01_13_17_16_53.pdf;
- 2020_01_13_18_05_01.pdf;
- 2020_01_14_15_49_07.pdf;
- 2020_01_14_15_55_27.pdf;
- 2020_01_14_16_24_06.pdf;
- 2020_01_14_17_37_03.pdf;
- 2020_01_14_19_46_34.pdf;
- 2020_01_14_23_55_57.pdf;
- 2020_01_15_07_49_00.pdf;
- 2020_01_15_07_50_51.pdf;
- 2020_01_15_07_51_56.pdf;
- 2020_01_16_18_09_26.pdf;

- 2020_01_16_19_41_46.pdf;
- 2020_01_17_16_23_45.pdf;
- 2020_01_17_16_39_22.pdf;
- 2020_01_17_16_45_14.pdf;
- 2020_01_17_16_51_18.pdf;
- 2020_01_19_16_01_31.pdf;
- 2020_01_22_16_28_25.pdf;
- 2020_01_22_18_44_52.pdf;
- 2020_01_23_07_21_42.pdf;
- 2020_01_23_09_19_41.pdf;
- 2020_01_23_09_40_35.pdf;
- 2020_01_23_10_54_41.pdf;
- 2020_01_23_10_58_33.pdf;
- 2020_01_23_11_19_43.pdf;
- 2020_01_23_11_29_40.pdf;
- 2020_01_26_22_47_08.pdf;
- 2020_01_26_22_45_37.pdf;
- 2020_01_27_19_04_50.pdf;
- 2020_01_30_11_34_32.pdf;
- 2020_01_30_11_34_33.pdf;
- 2020_01_30_12_03_36.pdf;
- 2020_01_30_13_04_55.pdf;
- 2020_01_30_13_06_10.pdf;
- 2020_02_04_12_05_21.pdf;
- 2020_02_04_12_53_05.pdf;
- 2020_02_04_16_21_41.pdf;
- 2020_02_05_10_24_31.pdf;
- 2020_02_06_08_19_01.pdf;
- 2020_02_06_09_56_51.pdf;
- 2020_02_07_14_10_16.pdf;
- 2020_02_07_14_10_56.pdf;
- 2020_02_07_16_11_26.pdf;
- 2020_02_07_16_19_05.pdf;
- 2020_02_07_16_47_19.pdf;
- 2020_02_10_14_38_15.pdf;
- 2020_02_10_17_48_35.pdf;
- 2020_02_12_11_58_58.pdf;

- 2020_02_12_11_59_15.pdf;
- 2020_02_13_17_35_37.pdf;
- 2020_02_18_10_57_43.pdf;
- 2020_02_20_16_10_20.pdf;
- 2020_02_20_16_16_24.pdf;
- 2020_02_27_15_07_59.pdf;
- 2020_04_07_11_31_00.pdf;
- 2020_05_01_14_25_10.pdf;
- 2020_05_01_14_33_41.pdf;
- 2020_05_01_17_12_49.pdf;
- 2020_05_01_23_09_28.pdf;
- 2020_05_04_09_49_02.pdf;
- 2020_05_04_12_24_38.pdf;
- 2020_05_04_12_26_39.pdf;
- 2020_05_04_12_28_31.pdf;
- 2020_05_07_10_48_18.pdf;
- 2020_05_07_11_23_40.pdf;
- 2020_05_07_11_24_31.pdf;
- 2020_05_07_17_02_24.pdf;
- 2020_05_11_12_53_48.pdf;
- 2020_05_12_10_26_15.pdf;
- 2020_05_12_17_19_04.pdf;
- 2020_05_14_11_42_01.pdf;
- 2020_05_15_10_13_45.pdf;
- 2020_05_15_16_12_26.pdf;
- HMS-000088–HMS-000112;
- HMS-000113;
- HMS-000114–HMS-000193;
- HMS-000194–HMS-000198;
- HMS-000199–HMS-000200;
- HMS-000201–HMS-000202;
- HMS-000203–HMS-000205;
- HMS-000206–HMS-000208;
- HMS-000209–HMS-000249;
- HMS-000250–HMS-000253;
- HMS-000254–HMS-000257;
- HMS-000258–HMS-000261;

- HMS-000262–HMS-000555;
- HMS-000556–HMS-000557;
- HMS-000558;
- HMS-000559–HMS-000592;
- HMS-000593–HMS-000594;
- HMS-000595–HMS-000628;
- HMS-000629–HMS-000630;
- HMS-000631–HMS-000633;
- HMS-000634–HMS-000637;
- HMS-000638–HMS-000671;
- HMS-000672;
- HMS-000673–HMS-000708;
- HMS-000710;
- HMS-000723–HMS-000724;
- HMS-000733–HMS-000736;
- HMS-000737–HMS-000739;
- HMS-000740–HMS-000741;
- HMS-000742;
- HMS-000743–HMS-000744;
- HMS-000812–HMS-000813;
- HMS-000814;
- HMS-000817–HMS-000818;
- HMS-000819–HMS-000820;
- HMS-000821–HMS-000823;
- HMS-000824–HMS-000831;
- HMS-000832–HMS-000833;
- HMS-000834–HMS-000839;
- HMS-000840–HMS-000842;
- HMS-000843–HMS-000846;
- HMS-000847;
- HMS-000848–HMS-000860;
- HMS-000861–HMS-000865;
- HMS-000866–HMS-000914;
- HMS-000915–HMS-000923;
- HMS-000924;
- HMS-000925;
- HMS-000927–HMS-000928;

- HMS-000929;
- HMS-000930;
- HMS-000931–HMS-000933;
- HMS-000934–HMS-000935;
- HMS-000939–HMS-000941;
- HMS-000942–HMS-000945;
- HMS-000946–HMS-000948;
- HMS-000985–HMS-000997;
- HMS-000998–HMS-001007;
- HMS-001008–HMS-001012;
- HMS-001013–HMS-001016;
- HMS-001017–HMS-001020;
- HMS-001021–HMS-001022;
- HMS-001023–HMS-001029;
- HMS-001030–HMS-001048;
- HMS-001057–HMS-001061;
- HMS-001062–HMS-001064;
- HMS-001065–HMS-001066;
- HMS-001067–HMS-001076;
- HMS-001077–HMS-001080;
- HMS-001081–HMS-001082;
- HMS-001120–HMS-001129;
- HMS-001130;
- HMS-001133–HMS-001161;
- HMS-001162–HMS-001194;
- HMS-001195–HMS-001197;
- HMS-001198;
- HMS-001201–HMS-001202;
- HMS-001203–HMS-001204;
- HMS-001205–HMS-001220;
- HMS-001221–HMS-001222;
- HMS-001223–HMS-001251;
- HMS-001252–HMS-001253;
- HMS-001254–HMS-001281;
- HMS-001282–HMS-001298;
- HMS-001299–HMS-001301;
- HMS-001302–HMS-001306;

- HMS-001307–HMS-001310;
- HMS-001311–HMS-001315;
- HMS-001316–HMS-001319; and
- HMS-001326–HMS-001330.


*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,

    Plaintiff,

    v.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC,

    Defendant.

CIVIL ACTION NO. 1:20-cv-00292

(WILSON, J.)
(SAPORITO, M.J.)

## MEMORANDUM

This is a diversity action in which the plaintiff, Pace-O-Matic, Inc. ("POM") has brought a state-law breach of fiduciary duty action against the defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"). POM, a Wyoming corporation with a principal place of business in Georgia, is a former client of Eckert, a law firm based in Harrisburg, Pennsylvania. POM claims that Eckert breached its professional duties of loyalty and confidentiality by undertaking the concurrent representation of another client in litigation against POM. For relief, POM seeks an award of compensatory and punitive damages plus declaratory and injunctive relief against Eckert.

We previously considered and ruled on several discovery motions

by POM, Eckert, and two subpoena recipients, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), and Hawke McKeon & Sniscak, LLP ("HMS"). (Doc. 44; Doc. 48; Doc. 50; Doc. 52.) Following written briefing, oral argument, and an *in camera* review of an agreed-upon selection of purportedly privileged or protected documents, we sustained in part and overruled in part various objections by Eckert, Parx, and HMS, directing that various categories of documents be produced to POM in response to its discovery requests and subpoenas. (Doc. 87, *as amended by* Doc. 105; Doc. 88, *as amended by* Doc. 105.)[1]

Eckert, Parx, and HMS appealed that discovery ruling to the district judge presiding over this case. (Doc. 93; Doc. 95; Doc. 97.) The appeal was limited to a single category of documents, as to which we had found attorney-client privilege inapplicable on judicial estoppel grounds. (*See* Doc. 87, at 32–42; Doc. 93; Doc. 95; Doc. 97.)[2] The appellants did not challenge our ruling with respect to the other categories of documents. (*See* Doc. 93; Doc. 95; Doc. 97.) Following an exchange of briefs (Doc. 94;

---

[1] *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC,* Civil Action No. 1:20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part and remanded,* 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021).

[2] *Pace-O-Matic,* 2021 WL 602733, at *11–*15.

Doc. 96; Doc. 98; Doc. 107; Doc. 108; Doc. 109; Doc. 110), the presiding district judge reversed our estoppel ruling on procedural grounds and recommitted the matter for additional briefing and further consideration. (Doc. 113; Doc. 114.)[3]

POM, Eckert, Parx, and HMS have now submitted additional briefing on the issue of judicial estoppel. (Doc. 128; Doc. 129; Doc. 130; Doc. 131; Doc. 134; Doc. 135; Doc. 136; Doc. 137.) Upon consideration of the parties' arguments, and reinspection *in camera* of the purportedly privileged or protected documents at issue, we reach the same conclusion for essentially the same reasons.

## I.   BACKGROUND

POM develops, produces, and licenses electronic "skill games" sold in Pennsylvania and elsewhere. Beginning in 2016, POM engaged Eckert to represent it in Virginia with respect to litigation over whether those skill games were illegal gambling devices under Virginia law. That representation was limited to Virginia, as Eckert represented other clients with adverse commercial interests in Pennsylvania. One of those

---

[3] *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, Civil No. 1:20-CV-00292, 2021 WL 1264323 (M.D. Pa. Mar. 6, 2021).

- 3 -

other clients was Parx, with which Eckert had a prior existing attorney-client relationship.

In June 2018, POM filed a lawsuit concerning its skill games in the Commonwealth Court against the City of Philadelphia and the Pennsylvania Department of Revenue; that case was assigned Docket No. 418 MD 2018. In July 2018, POM filed a second lawsuit concerning its skill games in the Commonwealth Court against the Pennsylvania State Police; that case was assigned Docket No. 503 MD 2018. On November 20, 2019, the Commonwealth Court issued an opinion in Case No. 418 denying a motion for summary disposition by the Pennsylvania Department of Revenue, which had the effect of placing both actions on an active litigation schedule.

On December 12, 2019, POM filed a motion for a preliminary injunction against the Pennsylvania State Police in Case No. 503. POM sought to enjoin the state police from seizing its skills games from its customers. On December 18, 2019, Parx and another casino filed an amicus brief in opposition to POM's motion for a preliminary injunction. Parx appeared through counsel of record Kevin McKeon of HMS and

Adrian King of Ballard Spahr, LLP ("Ballard").[4] On January 15, 2020, the Commonwealth Court held a hearing on POM's application for a preliminary injunction. On February 14, 2020, the casinos filed applications to intervene in both of POM's Commonwealth Court cases.[5]

At some point in January 2020, POM learned that Eckert was involved in representing Parx in connection with the Commonwealth Court cases and requested that it withdraw from that representation. Eckert declined and instead withdrew from representing POM in the Virginia matters. On February 20, 2020, POM filed the complaint in this action, alleging that Mark Stewart and other attorneys at Eckert had been behind the litigation efforts of Parx in both Commonwealth Court cases, despite a conflict of interest. POM claimed that Eckert's representation of Parx in the Commonwealth Court cases, directly adverse to POM, amounted to a breach of its fiduciary duties to POM as its client—namely, its professional duties of loyalty and confidentiality.

---

[4] King is co-counsel with McKeon in both Commonwealth Court cases. It is our understanding that he represents the other casino entity, Penn National, which joined Parx in filing the amicus brief and, later, the motions to intervene.

[5] It is our understanding that Parx's applications to intervene remain pending.

POM has served interrogatories and requests for production seeking information and documents reflecting communications concerning the Commonwealth Court cases exchanged between Eckert attorneys on the one hand and Parx, HMS, and their agents on the other hand. Eckert has objected, asserting attorney-client privilege and work-product protection with respect to various documents identified on a 30-page privilege log. POM has moved to compel the production of these documents, and Eckert has moved for a protective order precluding production of these documents.

POM also served non-party subpoenas on HMS and Parx, seeking any similar documents that were in their possession. HMS and Parx have entered their appearances here and moved to quash the subpoenas or for a protective order, asserting attorney-client privilege and work-product protection with respect to documents identified on their own privilege logs. Parx has further adopted the privilege logs of Eckert and HMS with respect to any documents in the possession of the two law firms, but which might belong to Parx as client.

Following oral argument, the parties met and conferred to winnow the list of documents to be submitted for *in camera* review. Those

- 6 -

documents were submitted and reviewed by the court *in camera*. Based on that review, we granted each of the motions in part and denied each in part. Among the documents produced for *in camera* inspection were email messages and SMS text messages concerning the POM Commonwealth Court litigation, exchanged between Stewart and other Eckert attorneys on the one hand and other attorneys or corporate representatives for Parx on the other hand. These communications all concerned efforts by Parx to participate in the Commonwealth Court litigation—first as an amicus curiae with respect to a motion by POM for preliminary injunctive relief, and then later as an intervenor seeking full party status, but at all times in direct opposition to the interests of the petitioner, POM, which was also a client of Eckert at the time.

In our prior ruling with respect to these documents, we found attorney-client privilege inapplicable on judicial estoppel grounds. Eckert, Parx, and HMS appealed that portion of our ruling, but they did not challenge our ruling with respect to other categories of documents. On appeal, the presiding district judge reversed our estoppel ruling on procedural grounds and recommitted the matter to us for further consideration.

- 7 -

On remand, we directed the parties to brief the issue of judicial estoppel, which they have done. We have also reinspected the purportedly privileged documents *in camera*.

## II. APPLICABLE STANDARDS

### A. Attorney-Client Privilege

This is a diversity case. Therefore, Pennsylvania state law governs whether attorney-client privilege applies to the documents at issue. *See* Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988). *See generally* 42 Pa. Cons. Stat. Ann. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991); *see also Harrisburg Auth. v. CIT Capital USA, Inc.*, 716 F. Supp. 2d 380, 387 (M.D. Pa. 2010) (noting that, under Pennsylvania law, the attorney-client privilege is generally disfavored and should be narrowly construed). For the

attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, "*Restatement (3d) Lawyers*"]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Id.* at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *Id.* at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984). "These exceptions are consistent with the goal underlying the privilege because

- 9 -

[this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

### B. Work-Product Doctrine

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

- 11 -

[t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost

absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated*

- 13 -

*in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

## III. DISCUSSION

### A. The Purportedly Privileged Documents

The Eckert documents are not Bates-labeled.[6] Instead, each separate email message appears to have been saved to a "pdf" file labeled with the time and date it was sent, down to the second (i.e., "2017_02_14_15_34_42.pdf" appears to be an email sent at 3:34 p.m. on February 14, 2017). In populating the "sent time" column of its privilege log, however, we note that Eckert appears to have used inconsistent time zones—some of the entries are logged using Coordinated Universal Time instead of the Eastern Standard Time or Eastern Daylight Time recorded on the header of the email message itself. Each email message has been produced for *in camera* review together with a blue slip-sheet on which

---

[6] We do not mean to suggest that the Eckert *in camera* production is defective. The federal rules impose no obligation to Bates-label non-privileged responsive documents produced to the other party, much less purportedly privileged documents produced for *in camera* review by the Court. *See Cmty. Ass'n Underwriters of America, Inc. v. Queensboro Flooring Corp.*, Civil Action No. 3:10-CV-1559, 2014 WL 12603510, at *5 (M.D. Pa. June 24, 2014). But the convention for our identification of documents in this opinion bears explanation.

- 14 -

the associated filename is printed, and we will often refer to each of the Eckert documents by this filename.[7]

## B. Application of Judicial Estoppel

Eckert has repeatedly, and unequivocally, denied that it has represented an adverse party in litigation against POM. In its answer and affirmative defenses in this case, Eckert expressly pleaded that: (1) "Eckert does not represent a party adverse to POM in litigation," (Doc. 9 ¶ 18); and (2) "Eckert is not counsel in any litigation where POM is an adverse party," (*id.* at 13 (Seventeenth Affirmative Defense)). In the Joint Case Management Plan submitted by both parties, Eckert stated that: "Eckert is not involved in [POM's Commonwealth Court] case." (Doc. 18 § 1.1.) In its brief in opposition to the plaintiff's motion for a preliminary injunction, Eckert stated that: "Eckert is not representing parties in litigation adverse to POM." (Doc. 21, at 2.) At oral argument on the instant motions, Eckert specifically took the position that it had not represented any party adverse to POM in the Commonwealth Court litigation. (Doc. 81, at 36 ("COURT: . . . Eckert is taking the position that it is not representing POM. It is not representing anyone that is adverse

---

[7] HMS and Parx have Bates-labeled their documents.

to POM in that litigation. [COUNSEL FOR ECKERT]: Right.").) Eckert

conceded that it was "involved with a team of lawyers" in that case, but

then expressly represented that "Eckert was not leading that charge."

(*Id.*) In its brief on appeal from our prior order, Eckert has suggested that

its role in the Commonwealth Court litigation amounts to nothing more

than mere *consultation* on a pending litigation matter where it did not

become counsel of record. (Doc. 94, at 11 n.3.)

POM has sought to test these representations through discovery,

requesting the production of documents by Eckert that

> refer or relate to or otherwise embody communications
> with any person or entity concerning the matter
> captioned *POM of Pennsylvania, LLC v. Commonwealth
> of Pennsylvania, Department of Revenue and City of
> Philadelphia*, docketed at 418 M.D. 2018 in the
> Commonwealth Court of Pennsylvania, or the matter
> captioned *POM of Pennsylvania, LLC v. Pennsylvania
> State Police, Bureau of Liquor Control Enforcement*,
> docketed at 503 M.D. 2018 in the Commonwealth Court
> of Pennsylvania, including, but not limited to,
> communications with any *amicus* counsel representing
> [Parx] and communications to municipal, government
> and regulatory bodies that reference or relate to either
> action.

(Doc. 51-6, at 3.) POM has also served an interrogatory requesting that

Eckert

> [i]dentify and describe with particularity all

- 16 -

communications that any Eckert lawyer, including Mark S. Stewart, had with any *amicus* counsel for [Parx] in the matter captioned *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, docketed at No. 503 M.D. 2018 in the Commonwealth Court, including, but not limited to, at the hearing in the Commonwealth Court on January 15, 2020.

(Doc. 51-7, at 3.) Eckert has withheld responsive documents and refused to answer the interrogatory on the ground that such documents and information are protected from disclosure by attorney-client privilege.[8] In both cases, Parx has moved to intervene as a full party-opponent of POM,[9] and in one of these cases, it has appeared as *amicus curiae* in opposition to a motion for a preliminary injunction by POM as well. In both cases, Parx has appeared through counsel of record McKeon and King. The withheld documents—and presumably any information responsive to the interrogatory response as well—involve communications between Stewart and other Eckert attorneys, on the one hand, and King, McKeon, and Parx on the other.

Perhaps it goes without saying, but "[f]irst and foremost, the attorney-client privilege applies only if an attorney-client relationship

---

[8] Eckert has also invoked the work-product doctrine.
[9] The motions to intervene remain pending in both cases.

exists." *Bare v. Cruz*, Civil Action No. 10-4546, 2012 WL 1138591, at *3 (E.D. Pa. Apr. 2, 2012). "The privilege requires the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer; the key is whether there has been a professional consultation with an attorney, who acts or advises as such." *Constand v. Cosby*, 232 F.R.D. 494, 502 (E.D. Pa. 2006) (quoting *Okum v. Unemployment Compensation Bd. of Review*, 465 A.2d 1324, 1325 (Pa. Commw. Ct. 1983)). Here, in this litigation, Eckert has taken the position that it is not involved in any other litigation where POM is an adverse party. At the same time, Eckert has taken the position that its communications with counsel representing Parx and other clients actively opposing POM in the Commonwealth Court cases are protected by attorney-client privilege, which necessarily requires an attorney-client relationship between Eckert and those adverse parties. The two positions cannot be reconciled.[10]

Judicial estoppel is an equitable doctrine that entails "the intrinsic

---

[10] As we noted above, on appeal from our prior decision, Eckert has suggested that its role in the Commonwealth Court litigation was one of mere *consultation* with counsel of record. But our *in camera* inspection of purportedly privileged documents belies this characterization.

- 18 -

ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." *In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010). "Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) 'irreconcilably inconsistent positions;' (2) 'adopted . . . in bad faith;' and (3) 'a showing that . . . estoppel address[es] the harm and . . . no lesser sanction [is] sufficient.'" *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (quoting *Chao v. Roy's Constr., Inc.*, 517 F.3d 180 186 n.5 (3d Cir. 2008)) (alterations in original).

Based on our *in camera* review, and under the circumstances presented in this case, we find the defendant is estopped from asserting attorney-client privilege with respect to the following documents based on its express statements in pleadings and other papers before this court that it does not represent an adverse party, such as Parx, and it is not otherwise "involved" in the POM Commonwealth Court cases. *See G-I Holdings*, 586 F.3d at 262 (noting that judicial estoppel may be applied to neutralize threats to judicial integrity even if a court has not accepted

- 19 -

the initial position);[11] *In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (E.D. Pa. Bankr. 2013) (estopping a debtor-plaintiff in an adversary action from recharacterizing his son's role with the company to assert privilege when he had previously contended that his son had no role with the company). Moreover, to the extent Parx has adopted Eckert's privilege log and seeks to interpose attorney-client privilege on its own

---

[11] Eckert, Parx, and HMS make much of a comment in *G-I Holdings* that "judicial estoppel is *generally* not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings*, 586 F.3d at 262 (emphasis added). But, in that same opinion, the Third Circuit went on to state: "We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply. We will apply it to neutralize threats to judicial integrity however they may arise." *Id.* Thus, contrary to the crux of the arguments advanced by Eckert, Parx, and HMS, judicial acceptance of the earlier position is *not* a prerequisite to judicial estoppel in cases such as this one, but rather it is merely a relevant fact to be considered when evaluating the second factor—whether the inconsistent positions have been adopted in bad faith. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) ("[A]pplication of judicial estoppel does not turn on whether the estopped party actually benefited from its attempt to play fast and loose with the court. . . . [T]he presence or absence of any such benefit is merely a factor in determining whether the evidence would support a conclusion of bad faith."); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) ("Whether the party sought to be estopped benefitted from its earlier position or was motivated to seek such a benefit may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel.").

behalf with respect to documents in Eckert's possession, Parx is likewise estopped from asserting attorney-client privilege with respect to these documents based on its papers filed in the Commonwealth Court cases, in which Parx and its counsel of record there (HMS) have expressly represented that "Eckert is not counsel in this case" and implicitly represented that Eckert played no substantial role in Parx's activities in those cases. (*See* Doc. 82, at 162–68.) Indeed, in papers filed in this case, HMS has mischaracterized its role in the Commonwealth Court litigation as having "step[ped] in as conflict counsel," and it has expressly represented that the purportedly privileged documents submitted for *in camera* review were merely "preparatory to Eckert handing off the Parx representation to HMS." (Doc. 53, at 2, 9.)

We find that, based on our *in camera* review of these purportedly privileged documents, Eckert and Parx have adopted irreconcilably inconsistent positions with respect to whether Eckert represented and provided legal advice and services to Parx in connection with the Commonwealth Court cases, where POM and Parx were directly adverse, by denying liability or opposing disqualification on the one hand while invoking attorney-client privilege in this case in an attempt to shield

documents concerning that (non-)representation from disclosure. For example, POM moved for a preliminary injunction in one of the Commonwealth Court cases on December 12, 2019. Six days later, on December 18, 2019, Parx filed an amicus brief in opposition to that motion, with HMS-attorney McKeon as its counsel of record. Although HMS-attorney McKeon was counsel of record and later presented oral argument at a motion hearing, based on our *in camera* review of the purportedly privileged documents, it was Eckert-attorney Stewart who— far from merely consulting or handing the matter off to conflict counsel— *quarterbacked* Parx's litigation efforts in the Commonwealth Court cases, and he continued to do so in the months to follow.[12] Indeed, although formally signed and filed by McKeon as counsel of record, the amicus brief itself was, in essence, *wholly authored* by Stewart and other Eckert attorneys, with minimal substantive input from McKeon or any other non-Eckert attorneys, and it was Stewart who coordinated the entire

---

[12] We do not mean to suggest that McKeon was a mere cardboard cutout, signing and filing papers prepared entirely by Stewart and other Eckert attorneys. It is clear from our *in camera* review of the purportedly privileged documents that he played a real and significant role as legal counsel to Parx, but it is equally clear that Stewart and Eckert did not step away from the representation, and that their role in opposing POM in the Commonwealth Court litigation was *far* from minimal.

- 22 -

effort, including communications with Parx and with co-counsel representing a second casino entity that joined the brief.[13] Long after this

_____

[13] *See* 2019_12_18_02_55_49.pdf (email message from Stewart to McKeon sent at 2:56 a.m. on December 18, 2019, forwarding first draft of amicus brief); HMS-000559 to -000592 (same); HMS-000629 to -000630 (email message from Stewart to McKeon and Eckert-attorneys Kevin Skjoldal and David Hittinger sent at 9:44 a.m. on December 18, 2019, coordinating work assignments for revisions to draft amicus brief); HMS-000593 to -000594 (email message from McKeon to Stewart, Skjoldal, and Hittinger sent at 11:46 a.m. on December 18, 2019, providing "[o]ne substantive thought" and noting that, otherwise, all of his "not many" edits were "punctuation nits and such"); HMS-000634 to -000637 (email message from Stewart to McKeon sent at 11:54 a.m. on December 18, 2019, noting that Stewart planned to cut the section on which McKeon provided a substantive comment anyhow); 2019_12_18_12_12_16.pdf (email message from Skjodal to Stewart, McKeon, and Hittinger sent at 12:12 p.m. on December 18, 2019, circulating draft language to add if a second casino entity, Penn National, decided to join the amicus brief, which it ultimately did); 2019_12_18_12_57_27.pdf (email message from Stewart to Parx executive Bob Green, Parx in-house counsel Tom Bonner, and attorney-lobbyist Richard Gmerek sent at 12:57 p.m. on December 18, 2019, forwarding most recent draft amicus brief); 2019_12_18_14_04_35.pdf (email message from Stewart to McKeon sent at 2:04 p.m. on December 18, 2019, forwarding near-final draft of amicus brief and noting that Penn National had decided to join Parx in filing the amicus brief); HMS-000638 to -000671 (same); 2019_12_18_14_12_23.pdf (email message from Stewart to Bonner and Parx in-house counsel Robert B. Mulhern, Jr., and Grace Flanagan sent at 2:12 p.m. on December 18, 2019, forwarding near-final draft of amicus brief and noting that Penn National had decided to join Parx in filing the amicus brief); 2019_12_18_14_42_06.pdf (email message from McKeon to Stewart sent at 2:42 p.m. on December 18, 2019, forwarding revised draft amicus brief with no apparent substantive revisions by McKeon); HMS-000595 to -000628 (same); 2019_12_18_15_14_03.pdf (email message
*(continued on next page)*

initial salvo by Parx in the Commonwealth Court litigation, Stewart continued to actively coordinate Parx's litigation strategy, communicating extensively not only with conflict counsel, McKeon, but also with attorneys representing the state agency defendant directly adverse to POM, the plaintiff and preliminary injunction movant in the Commonwealth Court litigation.[14] As the January 15, 2020, oral argument on POM's motion approached, rather than stepping away from the representation, Stewart and other Eckert attorneys continued their

---

from Stewart to McKeon sent at 3:14 p.m. on December 18, 2019, forwarding final draft of amicus brief for filing); HMS-000673 to -000708 (same). We note that, with respect to the 2:42 p.m. revisions by McKeon, upon close examination and comparison of McKeon's "revised" draft, Stewart's prior draft sent at 2:04 p.m., and Stewart's final draft sent at 3:14 p.m., we are unable to identify *any* substantive revisions whatsoever by McKeon.

[14] *See, e.g.* HMS-000714 to -000722 (previously produced email message from Stewart to McKeon, King, and state agency attorneys Karen Romano, Theron Perez, and Kenneth Joel sent at 5:59 p.m. on January 13, 2020, sharing legal analysis in support of the agency-defendant's opposition to POM's motion for a preliminary injunction); HMS-001093 to -001105 (previously produced email message from Stewart to Romano, McKeon, King, and Skjoldal sent at 5:00 p.m. on January 23, 2020, coordinating the filing of papers by Parx and the defendant agency in opposition to a motion by POM to clarify or amend the Commonwealth Court's order denying a preliminary injunction); HMS-001089 to -001092 (previously produced email message from Stewart to Romano, McKeon, and King sent at 5:26 p.m. on January 28, 2020, sharing legal analysis in support of the agency-defendant's opposition to POM's motion for to clarify or amend).

robust participation in McKeon's preparation for oral argument as counsel of record.[15] Stewart and other Eckert attorneys actively participated in ongoing fact investigation on behalf of Parx, rather than leaving it to conflict counsel.[16] Although McKeon was counsel of record

---

[15] *See* HMS-000843 to -000846 (email message from Stewart to McKeon, King, and Skjoldal sent at 3:10 p.m. on January 14, 2020, discussing legal precedent anticipated to be at issue at oral argument); 2020_01_14_15_49_07.pdf (email message from Skjoldal to Stewart, McKeon, and King sent at 3:49 p.m. on January 14, 2020, discussing same legal precedent); HMS-000861 to -000865 (same); HMS-000840 to -000842 (email message from Stewart to McKeon, King, and Skjoldal sent at 4:10 p.m. on January 14, 2020, discussing same legal precedent); 2020_01_14_16_24_06.pdf (email message from Stewart to McKeon, King, and Skjoldal sent at 4:24 p.m. on January 14, 2020, discussing same legal precedent); HMS-000834 to -000839 (same); 2020_01_14_17_37_03.pdf (email message from Skjoldal to McKeon, Stewart, King, and Eckert-attorney Tara Burns discussing different legal precedent anticipated to be at issue at oral argument); HMS-000848 to -000860 (same); 2020_01_14_19_46_34.pdf (email message from McKeon to Stewart, King, and Skjoldal sent at 7:47 p.m. on January 14, 2020, soliciting comments on attached notes for oral argument); HMS-000915 to -000923 (same); HMS-000866 to -000914 (email message from Burns to McKeon, Stewart, King, and Skjoldal sent at 9:24 p.m. on January 14, 2020, forwarding a summary and analysis of case law pertinent to oral argument); 2020_01_14_23_55_57.pdf (email message from Stewart to McKeon, King, and Skjoldal sent at 11:56 p.m. on January 14, 2020, providing robust analysis and commentary on McKeon's notes for oral argument); HMS-000821 to -000823 (same).

[16] *See* 2020_01_17_16_39_22.pdf (email message from Stewart to Skjoldal and McKeon sent at 4:39 p.m. on January 17, 2020, asking Skjoldal to contact and interview a potential witness, and advising Skjoldal to inform the witness that he was "assisting" McKeon in the litigation).

- 25 -

and provided substantive input as the case moved forward, Stewart and other Eckert attorneys participated extensively in preparing Parx's response in opposition to a motion by POM to clarify or amend an adverse decision by the Commonwealth Court on its preliminary injunction motion.[17] Stewart and other Eckert attorneys were the primary authors of Parx's subsequent applications to intervene in the two Commonwealth Court cases as full parties directly adverse to POM, the plaintiff.[18] Based

---

[17] *See* 2020_01_22_16_28_25.pdf (email message from Skjoldal to Stewart, McKeon, and King sent at 4:28 p.m. on January 22, 2020, forwarding first draft of answer by amici in opposition to POM's application to clarify or amend); HMS-0001067 to -001076 (same); 2020_01_23_09_19_41.pdf (email message from Skjoldal to Stewart, McKeon, and King sent at 9:20 a.m. on January 23, 2020, proposing additional text for inclusion in amici's answer); HMS-001057 to -001061 (same); 2020_01_30_11_34_32.pdf (email message from Skjoldal to McKeon, Stewart, and King sent at 11:35 a.m. on January 30, 2020, forwarding most recent draft of amici's answer to POM's application to clarify or amend); 2020_01_30_11_34_33.pdf (same).

[18] *See* 2020_01_26_22_45_37.pdf (email message from Stewart to Gree, Bonner, McKeon, Gmerek, and Hittinger sent at 10:46 p.m. on January 26, 2020, forwarding a draft application and brief in support of intervention by Parx and Penn National as full parties in the POM Commonwealth Court cases); HMS-001254 to -001281 (same); 2020_01_26_22_47_08.pdf (email message from Stewart to McKeon, King, and Hittinger, sent at 10:47 p.m. on January 26, 2020, forwarding the same draft application and brief); 2020_01_27_19_04_50.pdf (email message from McKeon to Stewart, King, and Hittinger, sent at 7:05 p.m. on January 27, 2020, providing comments and minor substantive changes to the draft brief); 2020_02_04_12_05_21.pdf (email message
*(continued on next page)*

from Stewart to McKeon, King, and Hittinger sent at 12:05 p.m. on February 4, 2020, forwarding most recent draft of intervention application); HMS-001282 to -001298 (same); 2020_02_04_12_53_05.pdf (email message from Hittinger to McKeon, King, and Stewart sent at 12:53 p.m. on February 4, 2020, forwarding most recent draft of brief in support of intervention application); HMS-001223 to -001251 (same); 2020_02_04_16_21_41.pdf (email message from Hittinger to McKeon, King, and Stewart sent at 4:22 p.m. on February 4, 2020, forwarding proposed intervenors' answer to POM's petitions for review, intended to be attached as an exhibit to the intervention applications); HMS-001205 to -001220 (same); 2020_02_06_08_19_01.pdf (email message from Stewart to Green, Bonner, and Gmerek sent at 8:19 a.m. on February 6, 2020, forwarding current drafts of intervention application, brief in support, and proposed intervenors' answer to POM's petition for review); 2020_02_06_09_56_51.pdf (email message from Hittinger to McKeon, King, and Stewart sent at 9:57 a.m. on February 6, 2020, forwarding draft of intervention application revised for filing in the second Commonwealth Court case); HMS-001162 to -00194 (same); HMS-001133 to -001161 (email message from Hittinger to McKeon, King, and Stewart sent at 10:07 a.m. on February 6, 2020, forwarding draft of brief in support of intervention revised for filing in the second Commonwealth Court case); 2020_02_10_14_38_15.pdf (email message from Hittinger to McKeon, King, and Stewart sent at 2:38 p.m. on February 10, 2020, forwarding draft of proposed intervenors' answer to petition for review revised for filing as an exhibit to an intervention application in the second Commonwealth Court case); 2020_02_12_11_58_58.pdf (email message from Hittinger to McKeon, King, Bonner, and Stewart sent at 11:59 a.m. on February 12, 2020, forwarding near-final drafts of intervention papers for filing in one of the two Commonwealth Court cases); 2020_02_12_11_59_15.pdf (email message from Hittinger to McKeon, King, Bonner, and Stewart sent at 11:59 a.m. on February 12, 2020, forwarding near-final drafts of intervention papers for filing in the other Commonwealth Court case); 2020_02_13_17_35_37.pdf (email message from Hittinger to McKeon and Stewart sent at 5:36 p.m. on February 13, 2020, forwarding final drafts of intervention papers for filing in both Commonwealth Court cases).

on our *in camera* review of the purportedly privileged documents, Stewart and other Eckert attorneys remained active and substantial participants in the representation of Parx in the Commonwealth Court litigation.

We also find that, based on our *in camera* review of these purportedly privileged documents, these inconsistent positions were adopted in bad faith. It is undisputed that Stewart and Eckert learned that POM had raised a potential conflict of interest before the amicus brief was filed. Nevertheless, Eckert continued to actively represent Parx in the Commonwealth Court proceedings where it affirmatively interposed itself—first as an amicus curiae and later as a proposed intervenor—and advanced litigation positions *directly adverse* to the legal interests of its other client, POM, the plaintiff and movant in those proceedings. As described above, in response to this potential conflict, Eckert did not step side and transition the matter to conflict counsel, as it has previously represented. Rather, it actively and *clandestinely* managed and participated in the representation of Parx in the Commonwealth Court litigation against its other client, POM. Moreover, based on our *in camera* review of the purportedly privileged documents,

- 28 -

it did so with full knowledge that the conflict asserted by POM precluded its active and continuing representation of Parx in the Commonwealth Court litigation. *See, e.g.*, HMS-000558 (text message from Stewart to McKeon sent at 9:31 p.m. on December 17, 2019) ("I will have a draft of this brief out to you either later tonight or first thing tomorrow. We can discuss but I may need you to be solo name on this brief. Will explain."). We have considered the fact that the representations at issue have not previously been accepted by this or the state court, but in light of the clear and obviously intentional subterfuge demonstrated in the purportedly privileged documents, we have no difficulty concluding that these documents evidence an intent by Stewart and Eckert to play fast and loose with the courts, and that this case is one of those rare ones where it is necessary to apply judicial estoppel to neutralize a threat to judicial integrity.

Finally, we find that, under the particular circumstances of this case, the estoppel addresses the harm to POM, Eckert's other client, and no lesser sanction would suffice. We find the alternative proposed by Eckert, Parx, and HMS that POM litigate its claims based on privilege logs alone to be patently insufficient to address the harm to POM. We

find only two feasible alternatives that might address the harm to POM: (1) To enter default judgment against Eckert; or (2) To judicially estop Eckert from denying POM's allegation that it has represented a party adverse to POM in litigation. But neither of these alternatives is a lesser sanction; either would be categorically determinative of the outcome on the merits of this litigation

Accordingly, we find that, under the particular circumstances of this case, the defendant is estopped from asserting attorney-client privilege with respect to the documents at issue on remand.

We further find that these documents are not protected by the work-product doctrine. "Many courts faced with the issue of the production of opinion work product have recognized an exception to Rule 26(b)(3) protection for work product which concerns the activities of counsel that are directly in issue. *Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127, 130 (M.D.N.C. 1989); *see also Hartman v. Banks*, 164 F.R.D. 167, 170 (E.D. Pa. 1995) ("[O]pinion work product can be discovered in cases in which the opinions of an attorney or his agent are themselves at issue."); *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 567 (E.D. Pa. 1989) ("Allegations of . . . misconduct while rendering legal advice

also can place attorneys' mental impressions and opinions directly at issue and eliminate work product protection."); *Truck Ins. Exch. v. St. Paul Fire & Marine Ins. Co.*, 66 F.R.D. 129, 136 (E.D. Pa. 1975) ("[T]he materials in [counsel's] file are sought here because they are at issue in this action before the Court. The activities of counsel in the underlying lawsuit are the basis of the [defendant's] defense in this case."); *Sec. & Exch. Comm'n v. Nat'l Student Mktg. Corp.*, 18 Fed. R. Serv. 2d 1302, 1974 WL 415, at *3 (D.D.C. June 25, 1974) (no work-product protection where production requests were served on law firm as defendants and activities of counsel were at issue in the action before the court). *See generally* 8 Richard L. Marcus, *Federal Practice and Procedure* § 2026 (3d ed. 2020) ("[C]ourts have found such disclosure justified principally where the material is directly at issue, particularly if the lawyer or law firm is a party to the litigation."); 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.70[6][c] (3d ed. 2020) ("A party . . . impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue."). Courts have also held that the work-product doctrine cannot shield a lawyer's papers from discovery where that work product implicates or creates a conflict of interest. *See*

*Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 286 (E.D. Pa. 2002); *cf. Sunrise Sec. Litig.*, 130 F.R.D. at 597 (no attorney-client privilege where law firm's communication with in-house counsel implicated or created a conflict between law firm's fiduciary duties to itself and to the client seeking to discover the communication); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 368–70 (E.D. Pa. 1975) (finding attorney-client privilege did not apply where a conflicted attorney subordinated one client's interest to another's).[19]

---

[19] We note that the last two opinions cited here, *Valente* and *Sunrise*, further suggest that the purportedly privileged communications at issue may not be protected by attorney-client privilege in the first instance because Eckert faced a conflict of interest in undertaking the representation of one client in a litigation matter *directly adverse* to another current client. Generally, in situations involving such a conflict of interest, a "court will not allow the attorney to protect the interest of one client by refusing to disclose information received from that client, to the detriment of another client or former client. The fiduciary obligations of an attorney are not served by his later selection of the interests of one client over another." *Valente*, 68 F.R.D. at 368; *see also Sunrise*, 130 F.R.D. at 597. We are, however, reluctant to make a definitive ruling that Eckert's concurrent representation of Parx in the Commonwealth Court litigation (whether openly as counsel of record or clandestinely behind the scenes), which was *directly adverse* to another then-current client, POM, constituted an impermissible conflict of interest under Rule 1.7 of the Pennsylvania Rules of Professional Conduct, as that is a central issue of dispute on the merits of this case, over which we do not preside.

Accordingly, the objections of Eckert, HMS, and Parx are overruled, and the following documents shall be produced to the plaintiffs:

| | | | |
|---|---|---|---|
| 1) | 2019_12_13_13_45_48.pdf | 33) | 2020_01_17_16_39_22.pdf |
| 2) | 2019_12_13_15_24_35.pdf | 34) | 2020_01_17_16_45_14.pdf |
| 3) | 2019_12_13_16_58_02.pdf | 35) | 2020_01_17_16_51_18.pdf |
| 4) | 2019_12_13_17_04_24.pdf | 36) | 2020_01_19_16_01_31.pdf |
| 5) | 2019_12_13_17_05_37.pdf | 37) | 2020_01_22_16_28_25.pdf |
| 6) | 2019_12_14_11_06_16.pdf | 38) | 2020_01_22_18_44_52.pdf |
| 7) | 2019_12_16_16_56_58.pdf | 39) | 2020_01_23_07_21_42.pdf |
| 8) | 2019_12_18_02_55_49.pdf | 40) | 2020_01_23_09_19_41.pdf |
| 9) | 2019_12_18_12_12_16.pdf | 41) | 2020_01_23_09_40_35.pdf |
| 10) | 2019_12_18_12_57_27.pdf | 42) | 2020_01_23_10_54_41.pdf |
| 11) | 2019_12_18_14_04_35.pdf | 43) | 2020_01_23_10_58_33.pdf |
| 12) | 2019_12_18_14_12_23.pdf | 44) | 2020_01_23_11_19_43.pdf |
| 13) | 2019_12_18_14_42_06.pdf | 45) | 2020_01_23_11_29_40.pdf |
| 14) | 2019_12_18_15_14_03.pdf | 46) | 2020_01_26_22_47_08.pdf |
| 15) | 2019_12_19_16_22_36.pdf | 47) | 2020_01_26_22_45_37.pdf |
| 16) | 2020_01_13_13_05_02.pdf | 48) | 2020_01_27_19_04_50.pdf |
| 17) | 2020_01_13_13_26_46.pdf | 49) | 2020_01_30_11_34_32.pdf |
| 18) | 2020_01_13_13_39_23.pdf | 50) | 2020_01_30_11_34_33.pdf |
| 19) | 2020_01_13_17_16_53.pdf | 51) | 2020_01_30_12_03_36.pdf |
| 20) | 2020_01_13_18_05_01.pdf | 52) | 2020_01_30_13_04_55.pdf |
| 21) | 2020_01_14_15_49_07.pdf | 53) | 2020_01_30_13_06_10.pdf |
| 22) | 2020_01_14_15_55_27.pdf | 54) | 2020_02_04_12_05_21.pdf |
| 23) | 2020_01_14_16_24_06.pdf | 55) | 2020_02_04_12_53_05.pdf |
| 24) | 2020_01_14_17_37_03.pdf | 56) | 2020_02_04_16_21_41.pdf |
| 25) | 2020_01_14_19_46_34.pdf | 57) | 2020_02_05_10_24_31.pdf |
| 26) | 2020_01_14_23_55_57.pdf | 58) | 2020_02_06_08_19_01.pdf |
| 27) | 2020_01_15_07_49_00.pdf | 59) | 2020_02_06_09_56_51.pdf |
| 28) | 2020_01_15_07_50_51.pdf | 60) | 2020_02_07_14_10_16.pdf |
| 29) | 2020_01_15_07_51_56.pdf | 61) | 2020_02_07_14_10_56.pdf |
| 30) | 2020_01_16_18_09_26.pdf | 62) | 2020_02_07_16_11_26.pdf |
| 31) | 2020_01_16_19_41_46.pdf | 63) | 2020_02_07_16_19_05.pdf |
| 32) | 2020_01_17_16_23_45.pdf | 64) | 2020_02_07_16_47_19.pdf |

65)  2020_02_10_14_38_15.pdf
66)  2020_02_10_17_48_35.pdf
67)  2020_02_12_11_58_58.pdf
68)  2020_02_12_11_59_15.pdf
69)  2020_02_13_17_35_37.pdf
70)  2020_02_18_10_57_43.pdf
71)  2020_02_20_16_10_20.pdf
72)  2020_02_20_16_16_24.pdf
73)  2020_02_27_15_07_59.pdf
74)  2020_04_07_11_31_00.pdf
75)  2020_05_01_14_25_10.pdf
76)  2020_05_01_14_33_41.pdf
77)  2020_05_01_17_12_49.pdf
78)  2020_05_01_23_09_28.pdf
79)  2020_05_04_09_49_02.pdf
80)  2020_05_04_12_24_38.pdf
81)  2020_05_04_12_26_39.pdf
82)  2020_05_04_12_28_31.pdf
83)  2020_05_07_10_48_18.pdf
84)  2020_05_07_11_23_40.pdf
85)  2020_05_07_11_24_31.pdf
86)  2020_05_07_17_02_24.pdf
87)  2020_05_11_12_53_48.pdf
88)  2020_05_12_10_26_15.pdf
89)  2020_05_12_17_19_04.pdf
90)  2020_05_14_11_42_01.pdf
91)  2020_05_15_10_13_45.pdf
92)  2020_05_15_16_12_26.pdf
93)  HMS-000088–HMS-000112
94)  HMS-000113
95)  HMS-000114–HMS-000193
96)  HMS-000194–HMS-000198
97)  HMS-000199–HMS-000200
98)  HMS-000201–HMS-000202
99)  HMS-000203–HMS-000205
100) HMS-000206–HMS-000208
101) HMS-000209–HMS-000249
102) HMS-000250–HMS-000253

103) HMS-000254–HMS-000257
104) HMS-000258–HMS-000261
105) HMS-000262–HMS-000555
106) HMS-000556–HMS-000557
107) HMS-000558
108) HMS-000559–HMS-000592
109) HMS-000593–HMS-000594
110) HMS-000595–HMS-000628
111) HMS-000629–HMS-000630
112) HMS-000631–HMS-000633
113) HMS-000634–HMS-000637
114) HMS-000638–HMS-000671
115) HMS-000672
116) HMS-000673–HMS-000708
117) HMS-000710
118) HMS-000723–HMS-000724
119) HMS-000733–HMS-000736
120) HMS-000737–HMS-000739
121) HMS-000740–HMS-000741
122) HMS-000742
123) HMS-000743–HMS-000744
124) HMS-000812–HMS-000813
125) HMS-000814
126) HMS-000817–HMS-000818
127) HMS-000819–HMS-000820
128) HMS-000821–HMS-000823
129) HMS-000824–HMS-000831
130) HMS-000832–HMS-000833
131) HMS-000834–HMS-000839
132) HMS-000840–HMS-000842
133) HMS-000843–HMS-000846
134) HMS-000847
135) HMS-000848–HMS-000860
136) HMS-000861–HMS-000865
137) HMS-000866–HMS-000914
138) HMS-000915–HMS-000923
139) HMS-000924
140) HMS-000925

141) HMS-000927–HMS-000928
142) HMS-000929
143) HMS-000930
144) HMS-000931–HMS-000933
145) HMS-000934–HMS-000935
146) HMS-000939–HMS-000941
147) HMS-000942–HMS-000945
148) HMS-000946–HMS-000948
149) HMS-000985–HMS-000997
150) HMS-000998–HMS-001007
151) HMS-001008–HMS-001012
152) HMS-001013–HMS-001016
153) HMS-001017–HMS-001020
154) HMS-001021–HMS-001022
155) HMS-001023–HMS-001029
156) HMS-001030–HMS-001048
157) HMS-001057–HMS-001061
158) HMS-001062–HMS-001064
159) HMS-001065–HMS-001066
160) HMS-001067–HMS-001076
161) HMS-001077–HMS-001080

162) HMS-001081–HMS-001082
163) HMS-001120–HMS-001129
164) HMS-001130
165) HMS-001133–HMS-001161
166) HMS-001162–HMS-001194
167) HMS-001195–HMS-001197
168) HMS-001198
169) HMS-001201–HMS-001202
170) HMS-001203–HMS-001204
171) HMS-001205–HMS-001220
172) HMS-001221–HMS-001222
173) HMS-001223–HMS-001251
174) HMS-001252–HMS-001253
175) HMS-001254–HMS-001281
176) HMS-001282–HMS-001298
177) HMS-001299–HMS-001301
178) HMS-001302–HMS-001306
179) HMS-001307–HMS-001310
180) HMS-001311–HMS-001315
181) HMS-001316–HMS-001319
182) HMS-001326–HMS-001330

## IV.  CONCLUSION

For the foregoing reasons, with respect to the purportedly privileged documents at issue on remand, the motion to compel by POM will be granted, the motion for a protective order by Eckert will be denied, the motion to quash subpoena by Parx will be denied, and the motion for a protective order or to quash subpoena by HMS will be denied. With respect to the foregoing documents identified as communications for which any attorney-client privilege has been judicially estopped and

work-product doctrine does not apply, the objections of Eckert, HMS, and

Parx are overruled and said documents shall be produced to the plaintiff.

An appropriate order follows.


Dated: November 16, 2021                    *s/Joseph F. Saporito, Jr.*
                                            JOSEPH F. SAPORITO, JR.
                                            United States Magistrate Judge