IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PACE-O-MATIC, INC., | : |
|                   Plaintiff, | : |
| v. | :   Docket No. 1:20-cv-00292 |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | :   (Judge Jennifer P. Wilson) |
| | :   (Judge Joseph F. Saporito, Jr.) |
|                   Defendant. | : |

**BRIEF OF DEFENDANT,
ECKERT SEAMANS CHERIN & MELLOTT, LLC, IN
SUPPORT OF ITS APPEAL OF JUDGE SAPORITO'S
NOVEMBER 16, 2021 ORDER AND MEMORANDUM**

Defendant, Eckert Seamans Cherin & Mellott, LLC ("Eckert"), by and through its counsel, Fox Rothschild LLP, hereby files this Brief in Support of its Appeal from Judge Joseph F. Saporito, Jr.'s November 16, 2021 Order and Memorandum related to the misapplication of judicial estoppel with respect to certain discovery requests for privileged communications from plaintiff, Pace-O-Matic, Inc. ("POM").

## INTRODUCTION

On November 16, 2021, after remand on the issue of judicial estoppel, Judge Saporito entered his Order and Memorandum concerning various motions filed by the parties, including Eckert's motion for protective order. The Order relates exclusively to certain discovery requests for privileged communications between Eckert and

1

another client. Eckert objects to Judge Saporito's Order and Memorandum finding that judicial estoppel applies as a basis to override the attorney-client privilege of another Eckert client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino"), a non-party to this action. Respectfully, Eckert believes that judicial estoppel is still inapplicable, and there is no basis for any implied waiver of Parx Casino's attorney-client privilege. As a result, this Court should reverse and vacate Judge Saporito's November 16, 2021 Order and Memorandum.

## FACTUAL BACKGROUND

POM brought a breach of fiduciary duty action against Eckert, who previously represented POM in Virginia, subject to an advance conflict waiver and other representational limitations, including the inability to represent POM in Pennsylvania. At the outset of the representation, Eckert advised POM of Eckert's long-standing and separate representation of certain gaming clients in Pennsylvania. Indeed, POM has always known that Eckert previously represented certain gaming clients in Pennsylvania, including Parx Casino, as Eckert disclosed that fact to POM in connection with Eckert's Engagement Letter and its agreement to represent POM in Virginia subject to an advance conflict waiver.

Through other counsel, POM filed two (2) Petitions for Review in the Commonwealth Court of Pennsylvania seeking certain declarations about the use of its games in Pennsylvania. POM put those legal issues – and, specifically, the legality

2

of its games – directly before the courts in Pennsylvania. Indeed, the gaming client for which POM seeks the requested discovery is one of its potential adversaries in those Commonwealth Court actions, as Parx Casino has sought to intervene in the Commonwealth Court cases.[1] As Eckert has stated throughout, Eckert is not counsel of record to any party in those actions, and Parx Casino is not a party regardless.

Notwithstanding the fact that Eckert properly disclosed its prior existing representation to POM and that Eckert could not represent POM in Pennsylvania, POM began to raise concerns about Eckert's representation of its gaming clients in Pennsylvania in October 2019. Eckert discussed the concerns and sought confirmation of its prior advance conflict waiver in order to continue to represent POM in Virginia. Not only did POM refuse to acknowledge its prior waiver, POM then took the position that Eckert had to limit its representation of other pre-existing clients in order to satisfy POM's concern. Because of POM's insistence that Eckert withdraw from its other representations in Pennsylvania and its refusal to acknowledge its prior waiver, Eckert was left with no alternative but to withdraw as POM's counsel in Virginia in early 2020.

At no time did any of the Eckert attorneys working on the POM matters in Virginia discuss those matters with the Eckert attorneys who were representing

---

[1] As of this date, the Commonwealth Court has not granted Parx Casino leave to intervene, and thus, Parx Casino is not a party in that action.

3

gaming clients in Pennsylvania. The Eckert attorneys who represented POM did not disclose any of POM's confidential information to anyone.

The Eckert attorneys working for Parx Casino did not discuss the matters on which they were working for their gaming clients in Pennsylvania with the Eckert attorneys who were representing POM in Virginia. Those Eckert attorneys did not disclose any of his gaming clients' confidential information to anyone.

## OVERVIEW OF THE ISSUE/THIS DISCOVERY DISPUTE

In connection with its discovery requests addressed to Eckert, POM made two (2) requests in the form of a document request and an interrogatory seeking documents and information obviously protected by the attorney-client privilege, the attorney work product doctrine and client confidentiality. There is no dispute that the information sought is privileged on its face and relates to another Eckert client and not POM. POM also served a subpoena directly upon Parx Casino and its other counsel, Hawke McKeon & Sniscak LLP ("Hawke McKeon"), seeking the same information.

Eckert filed a motion for protective order. POM filed a motion to compel. Parx Casino and Hawke McKeon filed motions to quash subpoenas and for a protective order. Substantial briefing and argument on these issues occurred and, on February 16, 2021, Judge Saporito issued his initial Order and Memorandum. Eckert, Parx Casino and Hawke McKeon objected and requested that the District Court reverse and vacate only that portion of Judge Saporito's Order and Memorandum that applied

judicial estoppel and found an implied waiver of the privilege. Because the issue of judicial estoppel had been raised *sua sponte*, the District Court remanded the matter back to Judge Saporito for further consideration.

After further briefing, but no hearing or requests for additional evidence, Judge Saporito issued his November 16, 2021 Order and Memorandum again finding that judicial estoppel applied, and that the parties engaged in bad faith.

## **LEGAL ARGUMENT/BASIS FOR OBJECTION**

Judge Saporito correctly acknowledges the application of the attorney-client privilege and the work product doctrines to the information sought. Where Eckert respectfully objects to Judge Saporito's Order and Memorandum is where he declines to apply the attorney-client privilege in order to shield what are absolutely privileged communications and where he finds, inexplicably, judicial estoppel as a basis to find the privilege waived. Neither proposition is true and, worse, it is Parx Casino's privilege not Eckert's privilege to maintain. There is no precedent for a court using judicial estoppel as a basis to override a third-party's attorney-client privilege.

### **The Attorney-Client Privilege Protects Production of These Documents.**

The attorney-client privilege is the most sacrosanct of all the privileges recognized under the law. It is based upon both statute and common law. Indeed, 42 Pa. C.S.A. §5928 states:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the

5

>client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. §5928. Here, Eckert seeks to protect from disclosure attorney-client privileged communications of another client and its own work product materials.

The Supreme Court of Pennsylvania recently clarified the application and scope of both the attorney-client privilege and the attorney work product doctrine in *Bousamra v. Excela Health, et al.*, 210 A.3d 967 (Pa. 2019). In *Bousamra*, the plaintiff argued that Excela Health had waived the work product doctrine and the attorney-client privilege when its in-house counsel forwarded an email he received from its outside counsel to Excela's public relations and crisis management advisors. 210 A.3d at 969. The Court noted that the work product doctrine, codified in Pennsylvania Rule of Civil Procedure 4003.3, belongs to the attorney as opposed to the client and is intended to keep the files of counsel free from examination by the opponent. *Id.* at 974 (citing comment to Pa.R.C.P. 4003.3). Indeed, "[t]he purpose of the work product doctrine is to protect the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation." *Id.* at 976.

*Bousamra* ultimately held that "the work product doctrine is waived when the work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." *Id.*

Bousamra also argued that Excela had waived the attorney-client privilege by forwarding the email to a third party, Excela's outside public relations consultant.

What is abundantly clear is that the purpose of the attorney-client privilege is "'to foster the free and open exchange of relevant information between the lawyer and client.'" *Id.* at 982, citing *Gillard v. AIG Ins. Co.,* 15 A.3d 44, 47 (Pa. 2011). The attorney-client privilege is a "two-way street" that protects both communications from the client to the attorney as well as from the attorney to the client in connection with legal advice being provided. *Id.* at 59. In order to invoke properly, which was done here entirely, a party must show the following:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made is a member of the bar of a court, or his subordinate;

(3) the communication related to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort;

(4) the privilege has been claimed and is not waived.

*Id.* at 983; *see also Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007), *aff'd* 992 A.2d 65 (2010). Once the moving party has made that

showing, the party seeking disclosure has the burden of explaining why the attorney-client privilege does not apply to the particular document or communication. *Id.*

Here, there is no dispute that Parx Casino is an Eckert client and that the communications that POM seeks are between Eckert and Parx Casino, as well as between Eckert, Parx Casino and Parx Casino's other counsel. Eckert asserts – and Parx Casino has confirmed – that the information sought is for purposes relating to securing legal advice. Eckert on Parx Casino's behalf has properly asserted the privilege, and there has been no waiver. If, in fact, Eckert is forced to turn over the documents at issue, Eckert will be waiving Parx Casino's attorney-client privilege.

Although the Supreme Court in *Bousamra* found that Excela had waived the attorney-client privilege when its in-house counsel forwarded the email to its public relations firm, the Court in *Bousamra* noted that Pennsylvania courts have extended the application of the attorney-client privilege to third parties who are agents of the client or the lawyer. *Id., citing Commonwealth v. Noll*, 662 A.2d 1123, 1126 (1995). Specifically, in cases where a third party's "presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client," the third party's receipt of information that would otherwise be protected by the attorney-client privilege would not result in a waiver. *Id.* at 986. Here, there has been no waiver, and the purported misapplication of judicial estoppel does not create any basis to eviscerate the privilege or the work product doctrine regardless.

## Judicial Estoppel is Inapplicable Here.

In order for a District Court to apply judicial estoppel to purportedly inconsistent statements, there must be the following three (3) factors present: (1)"irreconcilably inconsistent positions"; (2) "adopted . . . in bad faith"; (3) "a showing that . . . estoppel . . . addresses the harm and . . . no lesser sanction [is] sufficient." *See GI Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3rd Cir. 2009), citing *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3rd Cir. 2008). Of critical significance to application of judicial estoppel is that the party must have convinced the District Court to accept its earlier position. Judge Saporito ignores this issue and relies entirely on limited Third Circuit cases that find that judicial estoppel may be utilized in general to "threats to judicial integrity." What Judge Saporito also ignores is that the bad faith must be made in connection with representations to the Court itself – not the other parties.[2] Thus, the absence of any Court acceptance of these purportedly inconsistent statements is fatal to application of judicial estoppel.

Moreover, none of the elements of judicial estoppel are present here. Indeed, the purported statements upon which Judge Saporito relies are the statements in Eckert's Answer with Affirmative Defenses that it has not represented an adverse

---

[2] Judge Saporito attempts to confuse this issue by relying upon his *in camera* review of the privileged documents which were exchanged mostly between non-parties to this case and were primarily before this litigation commenced.

party in litigation against POM and specifically, "Eckert does not represent a party adverse to POM in litigation," and "Eckert is not counsel in any litigation where POM is an adverse party." *See* Eckert's Answer with Affirmative Defenses at ¶18 and Seventeenth Affirmative Defense (Docket No. 9). Those statements are not "irreconcilably inconsistent"; indeed, they are consistent and true. Moreover, they are affirmative defenses that Eckert may prove at the time of trial. Further, they have now been mostly mooted by POM's Amended Complaint.[3] And aside from the fact that those statements were true then and remain true (Parx Casino is not a party in the Commonwealth Court cases and Eckert is not counsel of record in Parx Casino's request to intervene in those cases; and, in the cases in which Parx Casino sued businesses conducting unlicensed gambling, POM is not a party), they are not inconsistent with Eckert's assertion that it represents Parx Casino.[4] Indeed, Eckert has since withdrawn in the matters in which Parx Casino is adverse to the businesses conducting unlicensed gambling, and Eckert is no longer involved in any capacity in

---

[3] POM filed an Amended Complaint in this case after Judge Saporito's February 16, 2021 Order and the District Court's remand of that decision. Eckert (and the other individual defendants) filed a partial motion to dismiss, which is still pending. Regardless of the outcome of that motion, Eckert will need to file a new Answer with Affirmative Defenses to the Amended Complaint mooting the prior Answer with Affirmative Defenses.

[4] The fact that an attorney represents a client does not require that the attorney *represent that client in a pending litigation.* It is also untrue, as Judge Saporito suggests, that no attorney-client relationship can exist because an attorney consults on a pending litigation matter but does not become counsel of record.

the Commonwealth Court cases. Therefore, Eckert's representations are truthful, and Eckert has not engaged in any bad faith.[5] Indeed, the fact that Eckert voluntarily withdrew from any actions in which POM has an interest demonstrates that it has neither attempted to nor would it engage in any bad faith.

More importantly, the District Court has not accepted these statements as facts or otherwise relied upon them in ruling. Indeed, in this case, the District Court has not made any factual findings or ruled upon any pending motions as of yet where those facts were relevant to the outcome.[6] Therefore, based upon the well-established Third Circuit precedent, in the absence of the District Court's prior acceptance of a fact or position, judicial estoppel is inapplicable to this discovery dispute. *See United States v. Pelullo*, 399 F.3d 197, 223 (3rd Cir. 2005), citing *New Hampshire v. Maine*, 532 U.S. 742, 750-751, 121 S.Ct. 1808 (2001); *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 559 n. 16 (3rd Cir. 2002) (the assertions in the case would not be subject to judicial estoppel because "the statements were not adopted by the

---

[5] Moreover, the statement relied upon in Eckert's Joint Case Management Plan ("Eckert is not involved in [POM's Commonwealth Court] cases", while certainly not clear, is no admission at all. *See* Local Rule 16.3 ("[t]**he information in the case management form will not be deemed an admission by any party**") (emphasis added). Eckert has also ensured that it is now entirely true.

[6] It should be noted for the Court that POM does not dispute that Eckert is not counsel of record in any case or adverse to POM in a case where POM is a party; POM maintains that Eckert, due to a potential conflict of interest, cannot take *any legal positions adverse to POM*, which is an entirely different concept and will be addressed at a later point in this case.

court in the course of litigation, and therefore bad faith is not evidenced"); *Montrose Medical Group v. Bulger*, 243 F.3d 773, 782 (3rd Cir. 2001) (judicial estoppel is inappropriate unless the earlier position was accepted by the court).

In addition, Judge Saporito's Order and Memorandum overtly states that Eckert has engaged in bad faith and intentionally tried to mislead POM and/or the Court. That is simply not true. Eckert has represented consistently to the Court (including to Judge Saporito) and to POM that it represents Parx Casino. POM is fully aware of that fact. As such, Eckert's positions are not being asserted in bad faith when the issue here is whether Eckert must assert on another client's behalf the protection of that client's [Parx Casino's] attorney-client privilege. After all, these are not Eckert's privileged communications; they are Parx Casino's.

Indeed, since POM first approached Eckert about representing POM in Virginia in late 2016-early 2017, POM was fully aware of Eckert's prior attorney-client relationship with Parx Casino, and POM understood and consented to the fact that Eckert could not represent POM in Pennsylvania. *See, e.g.,* Thomas Lisk Deposition at pages 28-29, 39, 41-42. To suggest, somehow, that there is bad faith merely because Eckert is seeking to protect another client's attorney-client privileged communications or its own related work product is incorrect and inconsistent with Pennsylvania law. Further, because the Court has not relied upon such statements, there can be no bad faith regardless. *See Bulger*, 243 F.3d at 773.

Further, Judge Saporito wholly ignores the fact that Eckert believed that it had a fully informed, advance conflict waiver at the time that it consulted on the Commonwealth Court cases and during the time that the e-mails referenced in the Order and Memorandum were exchanged. Later, Eckert learned that it did not have a fully informed conflict waiver although it did have the executed advance waiver in its Engagement Letter. Eckert's in-house counsel and POM's counsel exchanged letters discussing this issue pre-litigation but, at no time prior to the initiation of this lawsuit, did POM take the position that it had not given Eckert a fully informed advance conflict waiver. All of these facts are relevant – and Judge Saporito should have considered them – in determining whether there was any purported bad faith.

Finally, no sanction would be appropriate here either with respect to a properly-filed motion for protective order or even POM's motion to compel. Certainly, the waiver of a non-party's attorney-client privilege is not an appropriate sanction even if the Court determines that the other elements of judicial estoppel are present, which they are not. Judge Saporito went too far and made inappropriate conclusions not supported by the record. Thus, as Judge Saporito relies exclusively upon judicial estoppel as a basis to order the production of certain documents as a waiver of the attorney-client privilege, this Court should reverse and vacate Judge Saporito's Order and Memorandum and permit Eckert to assert properly the attorney-client privilege and work product doctrine so as to shield these limited documents from production.

### Putting Aside the Various Privileges, the Information Sought is Irrelevant.

Putting aside the obviously privileged nature of the communications sought, and the fact that judicial estoppel is inapplicable here, the documents should be properly withheld because POM cannot demonstrate a need for the *actual content of these communications*. Eckert, Hawke McKeon and Parx Casino already provided POM with privilege logs concerning these documents with sufficient description.

Separately, POM has sought Eckert's communications *with third parties* about the issues related to its Commonwealth Court actions. Eckert has already provided that information to POM, and pursuant to other subpoenas, POM has received documents responsive to those requests as well.

More importantly, to the extent that POM believes that Eckert's mere communication or discussion with its existing client about its games in Pennsylvania is disloyal or part of its breach of fiduciary duty claim – which is exactly what POM asserts in its Amended Complaint – then POM can make that argument through the privilege logs and other third party documents. It has already done so. POM does not need to view or invade what is clearly attorney-client privileged communications and documents protected by the work product doctrine to make its legal arguments.

Moreover, Eckert has already confirmed by several attorney declarations that an ethical screen was in place and that Eckert did not share any of POM's confidential information. Thus, the actual communications between Eckert, Parx Casino and Parx

Casino's other counsel are irrelevant to these proceedings and are not at all likely to lead to the discovery of any admissible information. Accordingly, this Court also should reverse and vacate Judge Saporito's Order and Memorandum because the requested information is not designed to lead to the discovery of admissible evidence.

## CONCLUSION

For all of the foregoing reasons, defendant, Eckert Seamans Cherin & Mellott, LLC, respectfully requests that this Court sustain its objection and reverse and vacate Judge Saporito's November 16, 2021 Order and Memorandum dealing with judicial estoppel and waiver of the attorney-client privilege.

Respectfully submitted,

ABRAHAM C. REICH, ESQUIRE (No. 20060)
ROBERT S. TINTNER, ESQUIRE (No. 73865)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
(215) 299-2090/2766 (telephone)
(215) 299-2150 (facsimile)
areich@foxrothschild.com
rtintner@foxrothschild.com

**Counsel for Defendant,
ECKERT SEAMANS CHERIN & MELLOTT,
LLC, MARK S. STEWART and KEVIN M.
SKJOLDAL**

Date:  November 30, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PACE-O-MATIC, INC., | |
| Plaintiff, | |
| v. | Docket No. 1:20-cv-00292 |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, | (Judge Jennifer P. Wilson) (Judge Joseph F. Saporito, Jr.) |
| Defendant. | |

**CERTIFICATE OF SERVICE**

I, Robert S. Tintner, Esquire, hereby certify that, on this 30th day of November, 2021, I served a true and correct copy of the foregoing Brief, via ECF, upon all counsel of record and the following by e-mail:

Daniel T. Brier, Esquire
Donna A. Walsh, Esquire
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

**Counsel for Plaintiff
PACE-O-MATIC, INC.**

Judge Joseph F. Saporito, Jr.
Magistrate Judge
U.S.D.C., Middle District of Pennsylvania
Max Rosenn U.S. Courthouse
197 South Main Street
Wilkes-Barre, PA 18701

ROBERT S. TINTNER, ESQUIRE