# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff | : | No. 1:20-cv-00292 |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | (Magistrate Judge Joseph F. Saporito, |
| ECKERT SEAMANS CHERIN & | : | Jr.) |
| MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Electronically Filed Document |

## HAWKE MCKEON & SNISCAK, LLP's
## BRIEF IN SUPPORT OF
## STATEMENT OF APPEAL

## (From November 16, 2021 Opinion and Order)

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon &*
*Sniscak, LLP*

**TABLE OF CONTENTS**

I.     INTRODUCTION..................................................................................1

II.    PROCEDURAL HISTORY ....................................................................2

III.   FACTS.................................................................................................4

IV.    QUESTION PRESENTED ....................................................................7

V.     STANDARD OF REVIEW .....................................................................7

VI.    ARGUMENT.........................................................................................8

       A.    The statements HMS made in Commonwealth Court in
             response to POM's motion to disqualify HMS from
             representing Parx in its Petition to Intervene in the
             Commonwealth Court litigation are not inconsistent with
             Eckert's statements to this court and as to whether Eckert
             has an attorney-client relationship with Parx. ...................................10

       B.    Even if the positions taken by Eckert on its relationship with
             Parx could be deemed inconsistent and attributed to Parx
             through HMS, Eckert has not prevailed on either in any court.........14

       C.    Neither HMS' positions on behalf of Parx nor Eckert's
             positions, even if deemed inconsistent, were taken in bad faith. .......15

       D.    POM will not be harmed if the privilege is sustained. ......................18

VII.   CONCLUSION ...................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

*Bensalem Racing Ass'n v. Pa. State Harness Racing Comm'n*,
  19 A.3d 549 (Pa. Cmwlth. 2011) .................................................................... 5

*Chao v. Roy's Constr., Inc.*,
  517 F.3d 180 (3d Cir.2008) ........................................................................... 8

*G-I Holdings,Inc. v. Reliance Ins. Co.*,
  586 F.3d 247 (3d Cir. 2009) ........................................................... 8, 14, 18

*Greenwood Gaming and Entertainment, Inc. v. Com., Dept. of Revenue*,
  90 A.3d 699 (Pa. 2014) .................................................................................. 5

*Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*,
  15 A.3d 884 (Pa. 2011) .................................................................................. 5

*Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*,
  2013 WL 3984742 (Pa. Cmwlth. 2013) ....................................................... 5

*In re Kane*,
  628 F.3d 631 (3d Cir. 2010) .......................................................................... 7

*In re O'Brien*,
  188 F.3d 116 (3d Cir. 1999) .......................................................................... 7

*MD Mall Associates, LLC v. CSX Transp., Inc.*,
  715 F.3d 479 (3d Cir. 2013) .......................................................................... 9

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ...................................................................................... 9

*SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Bd.*,
  162 A.3d 353 (Pa. 2017) ................................................................................ 5

*SugarHouse HSP Gaming, LP v. Pennsylvania Gaming Control Bd.*,
  136 A.3d 457 (Pa. 2016) ................................................................................ 5

**Rules**

Fed. R. Civ. P. 72(a) ........................................................................................... 2

L.R. 72.2.......................................................................................................... 2, 8

ii

## I.    INTRODUCTION

This is the second appeal filed to this court by non-party subpoena recipient Hawke McKeon & Sniscak LLP (HMS) from a second decision by Magistrate Judge Joseph F. Saporito, Jr., in which he found that HMS's assertion of attorney-client privilege is defeated by the application of the doctrine of judicial estoppel. Eckert, Seamans, Cherin & Mellot LLP (Eckert), defendant in the underlying litigation, and non-party Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx), which is represented in various capacities by both Eckert and HMS, also are here for the second time for the same reasons.

Magistrate Judge Saporito's first misapplication of judicial estoppel to the facts of this matter was appealed to this court by HMS, Eckert and Parx. Following review of the briefs filed, this court found that "Judge Saporito erred procedurally by failing to notify the parties that judicial estoppel would be applied or providing an opportunity for argument or briefing on this issue . . ." and recommitted the matter to him to allow for such.

Unfortunately, following briefing on whether the extraordinary remedy of judicial estoppel applied here, Magistrate Judge Saporito "reach[ed] the same conclusion [as the prior ruling reviewed by this court] for essentially the same reasons." This most recent ruling misapplies judicial estoppel where the elements thereof are not present, i.e., HMS' privilege claims are not based on inconsistent

1

positions in this court and in Commonwealth Court, HMS has not engaged in bad faith, and plaintiff Pace-O-Matic, Inc. (POM) will not be harmed if the privilege is sustained. Moreover, the factual basis for Magistrate Judge Saporito's application of judicial estoppel is entirely lacking. The court should reverse the November 16, 2021 Order and Memorandum.

## II.    PROCEDURAL HISTORY

HMS, pursuant to Fed. R. Civ. P. 72(a) and L.R. 72.2, appeals from Magistrate Judge Saporito, Jr.'s November 16, 2021 Order and accompanying Memorandum, (Docs. 166, 167), in which he overruled HMS's objections to POM's non-party subpoena and ordered production of documents identified in HMS's privilege log as to which HMS has claimed attorney-client privilege.

The procedural history prior to this appeal is described in HMS' previous brief to this court (Doc. 98 at 1-3) on appeal from Ordering Paragraph 4 of Magistrate Judge Saporito's February 16, 2021 Order and accompanying Memorandum, Section III.I (Judicial; Estoppel and Implied Waiver of Privilege) (Doc. 87 at 32-42) and need not be repeated in full here.

POM served a non-party subpoena on HMS in June 2020, seeking: (1) any document that reflects communications between HMS and Eckert relating to the Commonwealth Court litigation; (2) any document HMS received from Eckert for use or reference relating to the Commonwealth Court litigation; (3) any communications

between HMS partner Kevin McKeon or any other HMS employee and any person at Eckert relating to either the Commonwealth Court litigation or POM's complaint against Eckert in this court; and (4) any communications or documents relating to any potential or actual conflict between Eckert and POM. HMS objected on grounds that all documents requested are subject to the attorney-client privilege because the requests seek communications between and among Parx's lawyers at Eckert, Parx's lawyers at HMS, and Parx, including legal advice that Parx's lawyers and law firms provided to Parx. POM also served a subpoena on Parx, and addressed discovery to Eckert, in both seeking similar information deemed privileged, to which Parx and Eckert also objected. Those objections again are at issue in these appeals.

After reviewing appeals by Eckert, by HMS, and by Parx from the February 16, 2021 Memorandum and Order, this Court in an April 6, 2021 Memorandum (Doc. 113) found: that "Judge Saporito erred procedurally by failing to notify the parties that judicial estoppel would be applied or providing an opportunity for argument or briefing on this issue . . ." *id*. at 1; granted the appeals; overruled Section III.I of Judge Saporito's Memorandum and Paragraph 4 of his Order; and recommitted the matter to him for further consideration. More specifically, the court found that that "in light of the importance of the attorney-client privilege and the harshness of the judicial estoppel sanction, it was a procedural error for Judge Saporito to apply judicial

3

estoppel without affording the parties notice and an opportunity to address this issue," (Doc. 113 at 10).

On remand, following a conference call with the parties and the non-parties, Magistrate Judge Saporito ordered (Doc. 122) the filing of simultaneous briefs limited to the issue of judicial estoppel by May 26, 2021 and the filing of responsive briefs by June 9, 2021. HMS argued (Doc. 128) that the elements of judicial estoppel are not present here where HMS's attorney-client privilege claim does not involve an inconsistent position for purposes of judicial estoppel, where HMS has not engaged in bad faith and that POM will not be harmed if the privilege is sustained. In his November 16 2021 Memorandum, Magistrate Judge Saporito summed up his review on remand as follows: "Upon consideration of the parties' arguments, and reinspection in camera of the purportedly privileged or protected documents at issue, we reach the same conclusion [as in the February 16, 2021 Memorandum] for essentially the same reasons." (Doc. 166 at 3) HMS again seeks review and reversal.

## III.   FACTS

POM alleges in the underlying case that Eckert breached its fiduciary duty to POM by taking positions adverse to POM's skill games in litigation in Pennsylvania while at the same time representing POM on issues related to POM's skill games in the Commonwealth of Virginia. POM initiated litigation in the Commonwealth Court of Pennsylvania at Docket Nos. 418 MD 2018 and 502 MD 2018, seeking declarations

concerning the legal status of its skill games, which litigation is active and ongoing (Commonwealth Court litigation). HMS represents Parx (and other casinos, hereinafter "the casino group") in the casinos' attempt to intervene in the Commonwealth Court litigation. On behalf of Parx and other casinos, HMS filed an amicus brief opposing POM's request for a preliminary injunction, and presently has pending a request to intervene[1].

As examples, POM alleged in its complaint that Eckert appeared and collaborated with HMS and the casinos' other counsel of record at a January 2020 hearing in the Commonwealth Court litigation, at which the casinos as amici opposed the relief POM was seeking. Eckert's answer in this case filed in March 2020 stated among other defenses that "Eckert does not represent a party adverse to POM in litigation, and POM agreed to a prospective waiver" (Doc. 9 ¶ 18). Eckert subsequently learned, however, through a deposition on September 1, 2020, that although Eckert's management and its lawyers who have long represented Parx in Pennsylvania were led

---

[1] Eckert is Parx's usual counsel, but HMS has appeared for the Parx companies on multiple occasions for well over a decade, particularly in Pennsylvania's Commonwealth Court and Supreme Court. *See, e.g., SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353 (Pa. 2017); *SugarHouse HSP Gaming, LP v. Pennsylvania Gaming Control Bd.*, 136 A.3d 457 (Pa. 2016); *Greenwood Gaming and Entertainment, Inc. v. Com., Dept. of Revenue,* 90 A.3d 699 (Pa. 2014); *Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*, 2013 WL 3984742 (Pa. Cmwlth. 2013); *Bensalem Racing Ass'n v. Pa. State Harness Racing Comm'n*, 19 A.3d 549 (Pa. Cmwlth. 2011); *Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*, 15 A.3d 884 (Pa. 2011).

to believe by their former partner Mr. Lisk, who began representing POM in Virginia in 2016, that Lisk had discussed with POM the proposed conflict waiver allowing Eckert to be adverse to POM in Pennsylvania, he never did.  See Doc 91-5; Doc. 21-5.

In applying the doctrine of judicial estoppel to bar Eckert's (and Parx's) assertion of the attorney-client privilege, Magistrate Judge Saporito finds in his November 16 Memorandum (much as he did the in prior February 16 Memorandum) that Eckert's assertion of the attorney-client privilege in response to POM's discovery requests in this case takes a position that is in irreconcilable conflict with Eckert's statement that Eckert does not represent a party adverse to POM in litigation. (Doc. 166 at 15-22). He further relies on pleadings filed in the Commonwealth Court litigation, supplied by POM (Doc. 82) after the close of briefing and argument on the discovery motions at issue. Those documents are the direct result of POM moving in December 2020 to disqualify HMS from representing Parx in the Commonwealth Court litigation, arguing that Eckert is barred from taking positions adverse to POM in Pennsylvania, and therefore so too is HMS to the extent that Eckert has assisted HMS to do so in any way. After HMS responded to the motion to disqualify in the Commonwealth Court, POM filed in this proceeding, via December 16, 2020 letter to Magistrate Judge Saporito, a collection of documents that included HMS's answer to POM's disqualification application. (Doc. 82). Interpreting that answer, Magistrate

6

Judge Saporito finds that Parx is estopped from asserting attorney-client privilege based on HMS's statement that Eckert is not counsel in that case and the "implicit" representation that Eckert did not have a substantial role therein, as the filing is in irreconcilable conflict with an attorney-client relationship between Eckert and Parx. These statements, the Memorandum concludes, implicitly represent that Eckert played no substantial role in Parx's activities in those cases. Asserting that that these allegedly conflicting positions were adopted in bad faith, the Memorandum concludes that Eckert and Parx are estopped from asserting attorney-client privilege. (Doc. 166. at 20-22).

## IV.    QUESTION PRESENTED

Is Magistrate Judge Saporito's finding that judicial estoppel defeats the application of the attorney-client privilege as to those HMS documents ordered to be produced at pages 34-36 of the November 16, 2021 Memorandum and Ordering Paragraph 2 an abuse of discretion where said ruling is clearly erroneous, contrary to law and not supported by the facts?

Suggested answer: Yes

## V.    STANDARD OF REVIEW

The application by a court of judicial estoppel is reviewed for abuse of discretion. *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010). A court abuses its discretion where its "ruling is founded on an error of law or a misapplication of law to the facts . . . ." *In re O'Brien*, 188 F.3d 116, 125 (3d Cir. 1999). Moreover, Middle

7

District Local Rule 72.2 provides that this court may review any non-dispositive order of a magistrate judge in a case in which the magistrate is not presiding: "A judge of the court shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. The judge may also reconsider *sua sponte* any matter determined by a magistrate judge under this rule."

## VI.    ARGUMENT

**THE ELEMENTS OF JUDICIAL ESTOPPEL ARE NOT PRESENT WHERE HMS' PRIVILEGE CLAIMS ARE NOT BASED ON INCONSISTENT POSITIONS IN THIS COURT AND IN COMMONWEALTH COURT, HMS HAS NOT ENGAGED IN BAD FAITH, AND POM WILL NOT BE HARMED IF THE PRIVILEGE IS SUSTAINED.**

"Under the doctrine of judicial estoppel, a court can defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of litigation." *G-I Holdings,Inc. v. Reliance Ins. Co*., 586 F.3d 247, 261 (3d Cir. 2009) (*G-I Holdings*). "Three factors inform a federal court's decision whether to apply it: there must be (1) 'irreconcilably inconsistent positions;' (2) 'adopted ... in bad faith;' and (3) 'a showing that ... estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.'" *G-I Holdings* at 262, *quoting Chao v. Roy's Constr., Inc*., 517 F.3d 180, 186 n. 5 (3d Cir.2008) (internal quotation marks omitted). The law in the Third Circuit is that "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings*

at 262. Thus, "courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *MD Mall Associates, LLC v. CSX Transp., Inc.,* 715 F.3d 479, 487 (3d Cir. 2013) *quoting New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "Because judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase,' *id.* at 749, 121 S.Ct. 1808 (internal quotation marks omitted), '[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity,' *id.* at 750–51, 121 S.Ct. 1808 (citation and internal quotation marks omitted)." *Id.* HMS recognizes that there are circumstances where the application of judicial estoppel is appropriate to guard judicial integrity regardless of a party's success in persuading a court to accept previously an inconsistent position. *G-I Holdings* at 262. However, the threat to judicial integrity perceived by Magistrate Judge Saporito lacks a basis in fact and therefore application of judicial estoppel is contrary to law and an abuse of discretion.

Indeed, Magistrate Judge Saporito's finding that judicial estoppel applies and results in a waiver of HMS's right to assert the attorney-client privilege on behalf of its client Parx is error where none of the elements of judicial estoppel is present: the

statements HMS made in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx in its Petition to Intervene in the Commonwealth Court litigation are not inconsistent with Eckert's statements to this court as to whether Eckert has an attorney-client relationship with Parx; even if the positions taken on the issue by Eckert could be deemed inconsistent and attributed to HMS, Eckert has not prevailed on either; neither HMS' positions nor Eckert's positions, even if deemed inconsistent, were taken in bad faith; and POM will not be harmed if the privilege is sustained.

    **A.**    **The statements HMS made in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx in its Petition to Intervene in the Commonwealth Court litigation are not inconsistent with Eckert's statements to this court and as to whether Eckert has an attorney-client relationship with Parx.**

Magistrate Judge Saporito drew an erroneous conclusion regarding statements HMS made in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx. As set forth below, that conclusion is unsupportable based on any reasoned reading of the statement at issue. In the November 16 Memorandum at 20-21, Magistrate Judge Saporito states:

> Moreover, to the extent that Parx has adopted Eckert's privilege log and seeks to interpose attorney-client privilege on its own behalf with respect to documents in Eckert's possession, Parx is likewise estopped from asserting attorney-client privilege with respect to these documents based on papers filed in the Commonwealth Court cases, in

10

which Parx and its counsel of record there (HMS) have expressly represented that "Eckert is not counsel in this case" and implicitly represented that Eckert played no substantial role in Parx's activities in those cases. (See Doc. 82, at 162-68) Indeed, in papers filed in this case, HMS has mischaracterized its role in the Commonwealth Court litigation as having "step[ped] in as conflict counsel," and it has expressly represented that the purportedly privileged documents submitted for *in camera* review were merely "preparatory to Eckert handing off the Parx representation to HMS." (Doc. 53, at 2, 9.)

Memorandum at 20-21.

These statements are erroneous for several reasons, not the least of which is that they rest on two misrepresentations of the facts. When Eckert said in pleadings it did "not represent a party adverse to POM in litigation", that it "is not counsel in any litigation where POM is an adverse party", and that Eckert is not involved in [POM's Commonwealth Court] case, Eckert was *not* telling this court that it was not involved at all – POM and everyone else involved has known since before POM filed its complaint in this court that Eckert continued to be involved representing Parx in matters adverse to POM, just not on the record in the Commonwealth Court on behalf of Parx. After all, that is one basis of POM's complaint. Magistrate Judge Saporito's statement refuses even to recognize the distinction Eckert has always made – and it is a crucial distinction, because in fact, Eckert was still representing Parx in an advisory role, so its communications were privileged because it had an attorney client relationship. That distinction has never been an attempt at subterfuge, and is not

11

irreconcilable with saying that Eckert had not entered its appearance on behalf of Parx, or that Parx was not a "party" to the POM Commonwealth Court cases – the Casino group that includes Parx has moved to intervene, but intervention has yet to be granted.

As to the references to the Commonwealth Court litigation, Magistrate Judge Saporito states in the November 16 Memorandum at 21 that "Parx and its counsel of record there (HMS) have expressly represented that 'Eckert is not counsel in this case' and implicitly represented that Eckert played no substantial role in Parx's activities in those cases. (See Doc. 82, at 162–68.)" The cited portion of Doc. 82,[2] however, proves exactly the opposite – in defending against POM's attempt to disqualify HMS in Commonwealth Court, HMS expressly represented that Eckert, while not counsel of record, was involved as part of the lawyer group representing Parx and the other casinos seeking to intervene in developing strategy and even writing the first drafts of pleadings:

> *Although Eckert did not sign the amicus brief filed in this case in December 2019 or otherwise enter its appearance* in this case, Mr. Stewart and Eckert believed in December 2019 and continued to believe thereafter that Eckert had obtained a conflict waiver from POM. Accordingly, *Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and assisted in creating first drafts of filings or editing the first drafts created by other casino group lawyers for filings in this case.* It was not until September 2020, that Eckert learned

---

[2] Doc. 82 is POM's uninvited letter to Magistrate Judge Saporito, submitted post-argument, transmitting various documents, including selected portions of HMS' filings in the Commonwealth Court.

definitively in a deposition of Mr. Lisk, the former Eckert partner who represented POM in the Commonwealth of Virginia, that although Mr. Lisk had represented to Mr. Stewart and others at Eckert that POM had given a conflict waiver, POM had not given a conflict waiver.

Doc. 82 at 164 (emphasis added).

Contrary to Magistrate Judge Saporito's conclusion, the statement that "Eckert is not counsel in this [*i.e.*, the Commonwealth Court] case" is merely a statement of objective fact – Eckert did not enter an appearance. HMS's explanation of Eckert's role in the litigation, however, can only be seen as a frank acknowledgement of Eckert's substantial involvement, not an implicit representation to the contrary. Thus, there is no inconsistency in HMS's representations on behalf of Parx to the Commonwealth Court about Eckert's role as one of the lawyers advising Parx and the other casinos, on one hand, and the assertion of attorney-client privilege in this court as to communications among Parx and its lawyers, on the other.

The references to Doc. 53 in the November 16 Memorandum also fail to support the conclusions drawn. POM counsel's unsolicited filing (Doc. 82) drew responses from counsel for Eckert, Parx and HMS. HMS' response (Doc 85) specifically addresses the statements made in Doc. 53, noting that the references to "conflict counsel" while perhaps inartfully stated were meant only to convey the general idea that Eckert chose to not be a signatory to the amicus brief because of its awareness of POM's allegation of a conflict, resulting in a larger litigation role for HMS. Read

13

through a lens not predisposed to find a basis for judicial estoppel, the statements cited in the November 16 Memorandum convey exactly the opposite of the conclusion erroneously drawn.

> **B.  Even if the positions taken by Eckert on its relationship with Parx could be deemed inconsistent and attributed to Parx through HMS, Eckert has not prevailed on either in any court.**

POM's application to disqualify HMS in the Commonwealth Court remains undecided, so that even if HMS had taken an inconsistent position (it did not) it has not yet prevailed. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings* at 262. As described above, it should be clear that Eckert, and Parx through HMS, did not mislead this court or the Commonwealth Court and never intended to do so. Hence Magistrate Judge Saporito's finding of bad faith lacks any basis in fact or in law, and the exception to the rules stated above does not apply here.

To the extent the November 16 Memorandum can be read to attribute vicarious liability to Parx and HMS for the perceived infractions of Eckert, the same rationales defeat triggering of judicial estoppel: there is no inconsistency, and even if there were, Eckert has not to date prevailed on the merits. As to consistency, Eckert correctly stated in pleadings in this case that "Eckert does not represent a party adverse to POM in litigation," (Doc. 9 ¶ 18) cited in the November 16 Memorandum at 15.  Parx was not at the time, and has not yet, been granted status as a "party" in the Commonwealth

14

Court litigation; Eckert has never entered an appearance on behalf of Parx in that litigation. Moreover, at argument before Magistrate Judge Saporito in this discovery dispute, Eckert conceded that Eckert was part of the attorney group advising the casinos adverse to POM, based on the belief as of the time of that representation in late 2019 and early 2020 that POM had waived any associated conflict. (Doc. 81 at 32-33, 36-39). As to Eckert having already prevailed on the merits against POM in this proceeding by taking a position contrary to the position it has taken in the present discovery dispute, Eckert has not prevailed – the present status is that Eckert has now acknowledged that, contrary to Mr. Stewart's and Eckert's leadership's understanding that former Eckert partner Lisk had obtained an informed, advanced conflict waiver that consented to Eckert representing clients in matters adverse to POM in Pennsylvania, Mr. Lisk did not actually discuss a conflict waiver with POM. (Doc. 91-5 at ¶¶ 4-5).

**C.    Neither HMS' positions on behalf of Parx nor Eckert's positions, even if deemed inconsistent, were taken in bad faith.**

Relying on his *in camera* review of the privileged documents at issue[3] Magistrate Judge Saporito concludes that the alleged inconsistent positions were

---

[3] The November 16 Memorandum cites numerous emails and communications that it alleges reinforce the erroneous conclusions already drawn regarding inconsistent positions intended to deceive the court. However, the emails serve only to show that prior to it becoming clear that former Eckert partner Lisk did not get the conflict waiver he claimed to have obtained, Eckert remained an active part of the group of lawyers advising the casino group but had not entered an appearance in Commonwealth Court.

15

adopted in "bad faith", hardening his earlier stance of "arguable bad faith" in the February 16, 2020 Memorandum. While required for his application of judicial estoppel to pass muster on review, the facts in the record do not support the conclusion. Indeed, they demonstrate the opposite – that HMS's positions asserted on behalf of Parx, and its representation of Eckert's role in pleadings to the Commonwealth Court were in fact made in good faith. During the entire time the emails and other communications Magistrate Judge Saporito cites were exchanged, HMS had a good faith belief that Eckert had obtained the appropriate waivers to allow Eckert to take positions adverse to POM in Pennsylvania, and had chosen to do so through the casino lawyer group rather than on-the-record representation. Moreover, HMS candidly disclosed to the Commonwealth Court Eckert's substantial ongoing involvement in the casino lawyer group during the late December 2019 and into 2020. Doc. 82, the basis for the incorrect conclusions about HMS's inconsistency of positions vis-à-vis Eckert, provides insight into HMS's good faith in working with Eckert as part of the lawyer group representing Parx and the other casinos. Mr. McKeon's declaration filed in opposition to POM's application to disqualify HMS in the Commonwealth Court litigation states:

> Mr. Stewart represented to me in December 2019 and again in February 2020 after POM sued Eckert in federal district court, that Mr. Stewart (a) believed Eckert had obtained a conflict waiver from POM concerning Eckert's anticipated adverse representation against POM's interests in Pennsylvania, and (b) that Mr. Stewart had no access to any

16

information that Eckert lawyers representing POM in the Commonwealth of Virginia may have obtained. He stated that Eckert had a conflict screen in place between its lawyers working on POM's matters in Virginia and Mr. Stewart and other Eckert lawyers working on Parx matters, such that neither the Eckert POM lawyers nor the Eckert Parx lawyers had access to their respective clients' information.

Doc. 82 at 177, ¶ 12;[4] *see also* Doc. 82 at 173-176, ¶¶ 1-11 (explaining background of HMS involvement in the Commonwealth Court litigation).

Similarly, the pages of HMS's pleading to which the declaration is attached, cited *supra* at 12, candidly admit Eckert's substantial involvement.

Again, to the extent the Memorandum attributes vicarious liability to HMS and thus Parx for the perceived arguable bad faith of Eckert, Doc. 91 makes it clear that Eckert was acting in good faith. Mr. Stewart and Eckert's leadership reasonably believed that former Eckert partner Lisk had obtained an informed, advanced conflict waiver that consented to Eckert representing clients in matters adverse to POM in Pennsylvania and did not learn to the contrary that Mr. Lisk never actually discussed a conflict waiver with POM until Lisk's deposition in September 2020. (Doc. 91-5 at ¶¶ 4-5).

There is zero basis to conclude that Eckert took contrary positions in bad faith, or that HMS through its representation of Parx in Commonwealth Court "aided and abetted" a fraud on the court. Rather, a fair reading of the documents cited for that

---

[4] These representations by Mr. Stewart are again confirmed in Doc. 91-5.

17

proposition actually show the opposite.

### D.    POM will not be harmed if the privilege is sustained.

The third element of judicial estoppel requires a showing that "estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.' *G-I Holdings* at 262. Here, POM seeks "information and documents reflecting communications concerning the Commonwealth Court cases exchanged between Eckert" and HMS, *see supra* at 4, in order to prove that Eckert was involved in activities adverse to POM in Pennsylvania. Eckert has conceded that it was involved in such activities, however, has explained why it reasonably believed Eckert was permitted to do so because of waivers Mr. Lisk told his former partners POM had provided, and has represented that its actions adverse to POM's interests in Pennsylvania have ceased. Doc. 91. Given this, even assuming that other elements that give rise to judicial estoppel were present here (they are not), compelling disclosure of documents protected by the attorney-client privilege is neither necessary nor appropriate. Disclosure will disadvantage Parx, allowing POM to rummage through privileged communications, allegedly to prove a point that is no longer contested, while improperly advantaging POM by providing it access to Parx's privileged documents that would prove useful to POM in its Commonwealth Court litigation.

18

## VII.  CONCLUSION

HMS respectfully requests that the court reverse the November 16, 2021 order and direct that HMS is not required to produce the associated documents that Paragraph 2 of the Order directs HMS to produce.

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com
*Counsel for Hawke McKeon & Sniscak*
*LLP*

Dated: November 30, 2021

## CERTIFICATION OF COUNSEL

The undersigned certifies, subject to Fed. R. Civ. P. 11, that the foregoing brief contains 4,629 words and, therefore, complies with the word-count limit set forth by local rule 7.8(b). This certification is based upon the word count feature of Microsoft Word, the software used to prepare the brief.

/s/ *Dennis A. Whitaker*
Dennis A. Whitaker

Dated: November 30, 2021

1

# CERTIFICATE OF SERVICE

I hereby certify that, on November 30, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

*/s/ Dennis A. Whitaker*