

December 13, 2021

**VIA ECF**

Honorable Jennifer P. Wilson
U.S. District Court for the Middle District of Pennsylvania
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

      Re:    Pace-O-Matic, Inc. v. Eckert, Seamans, Cherin & Mellott, LLC, Mark S. Stewart
              and Kevin J. Skjoldal – No. 20-292

Dear Judge Wilson:

      This office represents Plaintiff Pace-O-Matic, Inc. ("POM") in the above-referenced matter. Pursuant to the Order dated December 8, 2021 (ECF 178), I write to summarize discovery disputes that have arisen relating to the hearing on POM's pending motion for preliminary injunction.

### Internal Eckert Communications Relating to Its Conflict of Interest

      The first area of dispute relates to internal communications at Defendant Eckert, Seamans, Cherin & Mellott, LLC ("Eckert") concerning its conflicting representations of POM and, *inter alia*, Parx Casino. POM served a Rule 30(b)(6) notice requiring Eckert to designate a witness to testify concerning "[i]nternal communications among Eckert lawyers and personnel relating to the existence of or potential for a conflict of interest," POM's "objection to Eckert's continued representation of Parx Casino" and POM's "request that Eckert cease representing Parx Casino." *See* Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) (attached as Exhibit "A") ¶ 17. POM also served document requests on Eckert and Defendants Mark S. Stewart and Kevin M. Skjoldal pursuant to Rule 34 seeking documents relating to conflicts arising from Eckert's representation of POM and communications relating to the subject matter of this litigation. *See* Eckert's Responses to POM's 3d Request for Production of Documents (attached as Exhibit "B") ¶ 1; Responses of Stewart & Skjoldal to POM's Request for Production of Documents (attached as Exhibit "C") ¶¶ 3, 4, 6, 7. Without providing a privilege log as required by Rule 26(b)(5)(A), Eckert objected to producing a witness concerning its internal communications and Eckert, Stewart and Skjoldal objected to the requests for production of the communications on the basis of the attorney-client privilege and work product doctrines.

425 Spruce Street, Suite 200 • Scranton, PA 18503   |   240 North Third Street, 5th Floor • Harrisburg, PA 17101
P: 570-342-6100 • F: 570-342-6147   |   P: 717-553-6251

www.mbklaw.com

*Honorable Jennifer P. Wilson*
*December 13, 2021*
*Page 2*

These objections are not sustainable. Internal law firm communications relating to a conflict of interest or other issues concerning representation of a client are not protected by the attorney-client privilege or work product doctrine. *See, e.g., Koen Book Distribs., Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.*, 212 F.R.D. 283, 286-87 (E.D. Pa. 2002) (holding that no privilege applies to internal law firm communications concerning "if and how to continue to represent the clients and how to respond to the clients' communications" after ethical and legal issues because "the law firm was in a conflict of interest relationship with its clients"); *In re Sunrise Secs. Litig.*, 130 F.R.D. 560, 597 (E.D. Pa. 1989) (explaining in decision on denial of motion for partial reconsideration: "[A] law firm's communication with in house counsel is not protected by the attorney client privilege if the communication implicates or creates a conflict between the law firm's fiduciary duties to itself and its duties to the client seeking to discover the communication.").

In addition, to the extent Eckert is asserting privilege over communications with its in house legal officer, any privilege has been waived. Eckert and Messrs. Stewart and Skjoldal continue to defend themselves by claiming they believed they had an advance conflict waiver. *See, e.g.*, Defs.' Br. in Opp'n to Am. Mot. for Prelim. Inj. (ECF 164) at 3, 8, 18, 19. They plainly placed their internal communications concerning the existence of a conflict and any waiver directly at issue and therefore cannot at the same time cloak those communications in the mantle of privilege. *See, e.g., Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991). Moreover, Eckert already selectively produced some internal communications concerning the conflict. *See, e.g.*, "December 2016 and February-April 2017 e-mails between Mr. Stewart and Mr. [Thomas A.] Lisk attached" to Defs.' Br. in Opp'n to Am. Mot. for Prelim. Inj. as Exhibit C (referenced on page 5 of brief). Eckert cannot cherry pick which internal communications it produces and which it withholds.

Further, the Honorable Joseph F. Saporito, Jr. determined that Eckert acted in bad faith in clandestinely participating in litigation matters adverse to POM "with full knowledge that the conflict asserted by POM precluded [Eckert's] active and continuing representation of Parx in the Commonwealth Court litigation." *See* Nov. 16, 2021 Mem. (ECF 166) at 27-28. As support for this conclusion, Judge Saporito cited a December 17, 2019 text message from Mr. Stewart advising Kevin McKeon at Hawke, McKeon & Sniscak, LLP: "I may need you to be solo name on this brief. Will explain." *Id.* at 28. Internal Eckert communications concerning Eckert's "need" for another law firm to put its name on a brief that Eckert drafted do not implicate the attorney-client privilege or work product doctrine and therefore are properly discoverable. At a minimum, POM is entitled to discover when, how and why Eckert and Mr. Stewart designed and implemented the subterfuge that they utilized to hide their clandestine adversity with POM while Eckert was still representing POM. While POM maintains that these communications are not privileged, if Eckert's in house counsel was involved in or aware of the scheme to disguise Eckert's misconduct, then the crime-fraud exception alone would vitiate any claim of privilege. *See generally In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir. 2000) (crime-fraud exception to attorney-client privilege applies when legal advice "gives direction for the commission of future fraud or crime") (citation omitted).

*Honorable Jennifer P. Wilson*
*December 13, 2021*
*Page 3*

  Eckert's latest claim of privilege over internal communications concerning the very conflict of interest that is at the heart of this dispute is part of its ongoing delay strategy that has hampered POM's ability to discover how Eckert and Messrs. Stewart and Skjoldal protected and exalted their own interests at the expense of POM in violation of their fiduciary duties. Their objections should be overruled and Eckert should be compelled to designate a witness to testify concerning internal communications relating to its conflict and response thereto. Further, Eckert, Stewart and Skjoldal should be compelled to produce documents relating to these communications.

### Services Provided by Eckert to Clients Adverse to POM

  The evolving record reveals that Eckert surreptitiously advocated on behalf of, *inter alia*, Parx Casino against POM and the continued legality of POM's games. POM seeks to depose an Eckert designate concerning "[s]ervices provided by Eckert to or for the benefit of any client . . . relating to challenges to or legislation concerning the legality of skill games . . . ." *See* Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) ¶ 18. Eckert objected on the basis of the attorney-client privilege and work product doctrines. Again, the objections are not well supported.

  Importantly, Eckert is attempting to defend against POM's motion for preliminary injunction by arguing that it has withdrawn from representing Parx Casino in litigation matters adverse to POM in Pennsylvania Commonwealth Court and in nuisance actions challenging the legality of POM games in Bucks and Montgomery Counties. *See* Defs.' Br. in Opp'n to Am. Mot. for Prelim. Inj. at 9. But these are not the only breaches of fiduciary duty by Eckert. The communications disclosed as a result of Judge Saporito's February 16, 2021 ruling (ECF 87, 88) revealed that Eckert participated in advocating against the legality of POM games in a variety of other forums, including in meetings with government officials, public relations campaigns and communications with government officials. POM is entitled to depose an Eckert designate concerning the general ways in which Eckert breached and continues to breach the duty of loyalty owed to POM by advocating against POM and POM's games. *See, e.g., Levy v. Senate of Pa.*, 65 A.3d 361, 373-74 (Pa. 2013) (generic descriptions of legal services not protected by the attorney-client privilege). Likewise, the identity of Eckert's clients is not protected and is a legitimate subject for discovery. *See id.* at 371-72 ("a client's identity is generally not privileged").

  Eckert should be compelled to designate a witness to testify concerning legal services provided by Eckert to or for clients adverse to POM or POM's skill games.

### Other Information Concerning Eckert's Conflicted Representations

  Eckert objected to other subjects in the 30(b)(6) notice on the grounds that "there are attorney-client privilege issues, and we may need to object in part to certain questions related to those topics." The deposition subjects and other discovery sought by POM, however, do not involve or implicate the attorney-client privilege or work product doctrine.

*Honorable Jennifer P. Wilson*
*December 13, 2021*
*Page 4*

      Specifically, POM seeks to depose an Eckert designate concerning: (1) disclosures made to other clients in connection with requesting informed consent for any representation involving an actual or potential conflict of interest with POM; (2) the identity of Eckert's "gaming clients" referenced in Paragraphs 7, 8, 14 and 24 of its Answer filed in this action (ECF 9); (3) fees paid to Eckert by those "gaming clients"; and (4) communications between Eckert and Parx Casino concerning Eckert's decision to withdraw from representing POM. *See* Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) ¶¶ 2, 8, 15, 16. POM also requested that Eckert produce copies of invoices (redacted to exclude privileged communications and work product) for legal services provided by Eckert to Parx Casino during the period of time that Eckert also represented POM. *See* POM's 3d Request for Production of Documents Propounded Upon Eckert ¶ 2. None of the deposition topics implicate privileged legal advice or attorney work product and therefore Eckert should be compelled to designate a witness to testify concerning each of these topics. Further, no privilege applies to amounts billed by an attorney to his client. *See In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969) ("In the absence of unusual circumstances, . . . the amount of the fee do[es] not come within the privilege of the attorney-client relationship."); *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. 2004) (attorney's invoices billed to client do not implicate attorney-client privilege); *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005) (testimony regarding fee charged is not subject to attorney-client privilege).

      Therefore, Eckert should be compelled to designate a witness to testify concerning these topics and to produce the requested invoices.

* * * * * *

      We look forward to addressing these matters in more detail on December 20, 2021.

                                               Respectfully,

                                               Daniel T. Brier

cc:    Robert S. Tintner, Esquire (via ECF)