

2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel 215.299.2000  Fax 215.299.2150
www.foxrothschild.com

ROBERT S. TINTNER, ESQUIRE
Direct Dial: 215-299-2766
Email Address: rtintner@foxrothschild.com

December 16, 2021

**VIA ECF FILING**

The Honorable Jennifer P. Wilson
United States District Court for the
Middle District of Pennsylvania
Ronald Reagan Federal Building & US Courthouse
228 Walnut Street
Harrisburg, PA  17101

   Re: **Pace-O-Matic, Inc. v. Eckert Seamans Cherin Mellott, LLC,** *et al.*
      **U.S.D.C., Middle District of Pennsylvania, Docket No. 1:20-cv-00292**

Dear Judge Wilson:

  As Your Honor is aware, I represent defendants, Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart and Kevin M. Skjoldal (collectively, "Eckert"), in the above-referenced matter. In accordance with Your Honor's Civil Practice Rules, I write in opposition to the December 13, 2021 correspondence of Daniel T. Brier, Esquire, who is counsel to plaintiff, Pace-O-Matic, Inc. ("POM"), and who wrote about this discovery dispute for potential resolution.

## These Issues Are Premature.

  Before addressing the substance of Mr. Brier's correspondence, I write to express concern about the prematurity of Mr. Brier's correspondence. I raised that issue on our recent status call. There are several reasons why the dispute is premature. First, there has been no meaningful opportunity to meet-and-confer in order to resolve these issues substantively or practically before submitting them to the Court for some type of disposition. That is no one's fault; it is an issue of timing. We just served our responses to POM's recent document requests on Monday, December 13, 2021. As I explained to Mr. Brier, we will be providing a substantial document production. We also will be providing a privilege log as to documents for which we intend to assert the attorney-client privilege or work product. Second, while I e-mailed Mr. Brier

A Pennsylvania Limited Liability Partnership

California Colorado Connecticut Delaware District of Columbia Florida
Illinois Minnesota Nevada New Jersey New York Pennsylvania Texas

128852446.1



about certain possible objections to limited topics contained in POM's Rule 30(b)(6) corporate designee notice, those objections were only informal because we were never able to agree on a date to move forward with that deposition. I would point out that, significantly, we never stated that we would not produce any witness to cover the topics contained on POM's Rule 30(b)(6) notice; instead, as Mr. Brier cites in his correspondence, we suggested that there may be individual questions to which we might object. Of course, without knowing the questions, the issue is entirely premature. Third, many of the issues – as referenced in Mr. Brier's correspondence – overlap with the issues that the Court will address concerning Eckert and the non-parties' appeal of Judge Saporito's recent Order and Memorandum. Fourth, even with respect to certain document requests where we objected, we never stated that we would not produce responsive documents. In some circumstances, the requests are extremely overbroad[1], and if limited appropriately in time, scope and manner, we may not have any objection. In other circumstances, there may not be responsive documents and, therefore, we would consider withdrawing any objection. In the past, counsel has been successful in limiting the scope of certain document requests, withdrawing our objections and responding in full to the document request at issue – without the need for court intervention.

Thus, while of course I welcome the opportunity to raise and discuss these issues with the Court on Monday, I believe that further discussion among counsel may obviate the need for a decision from the Court at this time. I respectfully request further opportunity to discuss limiting and/or resolving some of the other objections.

With respect to the substance of Mr. Brier's correspondence, in order to state Eckert's positions clearly for the Court, I will follow the headings adopted by POM in Mr. Brier's correspondence:

### Internal Eckert Communications Relating to the Conflict of Interest

As Mr. Brier correctly identifies for the Court, Eckert has produced internal communications concerning the conflict of interest issue raised by POM. In fact, much of the e-mails attached in response to POM's preliminary injunction motion and simultaneously provided in discovery, are relevant and responsive to that request. They have been produced. POM claims that it constitutes some type of a waiver, but Eckert has not blanketly asserted any objection to the internal documents involving the conflict issue or the scope of the conflict waiver. Those communications also did not involve the procurement of any legal advice from Timothy Coon, Eckert's in-house lawyer. Therefore, there certainly has been no waiver, and

---

[1] By way of example, POM's request no. 7 directed to Messrs. Stewart and Skjoldal asks for "[a]ny and all documents that refer or relate or otherwise embody communications between you and anyone else relating to this litigation." This request could easily be tailored or limited in time, scope, person and manner.



Eckert has attempted in good faith to provide all responsive, non-privileged documents requested throughout this litigation, including those.

Further, the problem with POM's most recent document requests are that they are extremely broad and do not provide either a cut off in time for the request or sufficient specificity as to which attorneys or staff such requests are directed. To the extent that either outside or in-house legal counsel is not involved in the communication at all, there would be no objection asserted. To the extent that legal counsel is involved in the communication, there is still a potential objection to raise given that the Court must consider whether the e-mail relates to legal advice in this matter for purposes of defending the case as opposed to discussions about how to deal with the purported conflict of interest *while Eckert still represented POM*. Either way, the Court would potentially need to conduct an *in camera* review.

Indeed, in the case cited by POM, *Koen Book Distributors v. Powell, Trachtman*, 212 F.R.D. 283 (E.D. Pa. 2002), the Court ordered production of documents, pre-litigation, that involved discussions of a conflict of interest *while the law firm still represented the plaintiff*. There was no discussion of – nor consideration of – the production of any communications between lawyers and their in-house lawyer from the period after the relationship between the law firm and the client ended or whether the law firm would need to produce any such communications, post-commencement of the malpractice litigation. POM's request makes no such distinction in time or category. Of course, it is possible that POM is not seeking any post-January 2020 communications between Eckert's attorneys and its in-house counsel or me. However, POM should so limit its requests.

The Memorandum on Partial Reconsideration in *In re Securities Litigation*, 130 F.R.D. 560 (E.D.Pa. 1989) addresses that issue and makes the appropriate distinction between several categories of documents. In doing so, the Court recognized that the documents would need to be reviewed *in camera* to ensure that they were properly being asserted as attorney-client privilege and also that such documents did not implicate a Rule of Professional Conduct 1.7 (conflict) issue with respect to a possible conflict as between the client and the law firm. *Id.* at 588.

Here, the conflict at issue is not between POM and Eckert, and the issue does not implicate Eckert's potential fiduciary responsibility to itself. This case involves a potential conflict as between POM and another Eckert client, Parx Casino. There is no prohibition against Eckert's attorneys seeking legal advice from their in-house attorney (or their outside attorney) as to how to handle the situation.

In sum, POM should potentially limit and/or modify its request to reflect an appropriate time period, and to exclude communications, post-termination of the Eckert/POM relationship and the commencement of this litigation (January 2020), and to consider limiting its request to exclude communications with Eckert's in-house attorney for the purpose of procuring legal advice (as opposed to dealing with the conflict issue alone). In the meantime, Eckert will



provide its responsive document production, which is being prepared, and a privilege log to the extent that it is seeking to withhold any documents based upon privilege or work product with request to document request no. 1 and requests nos. 4 and 7 addressed to Messrs. Stewart and Skjoldal.[2]

Finally, to the extent that POM asserts that Eckert is trying to delay or impede discovery, such an assertion is without merit. Eckert has produced thousands of pages of documents already in this case, and it did not appeal Judge Saporito's original Order and Memorandum with respect to several categories and additional set of hundreds of documents that had previously been logged on the Eckert privilege log. Those documents also have been produced.

As to any remaining documents for which legitimate claims of attorney-client privilege and work product exist, most of those documents are subject to the appeal currently pending before the Court. As to any additional documents to which Eckert has asserted objections, those documents were requested for the first time by POM on November 12, 2021. Eckert provided dates for all of the depositions to take place in mid-December, 2021, but POM's counsel was unavailable the week that such dates were provided. There has been no delay or effort on the part of Eckert to impede the discovery process here.

### Services Provided by Eckert to Clients Adverse to POM

Eckert did not, as POM seems to suggest, blanketly object to categories of information and documents that POM sought without agreeing either: (1) to provide a witness to answer questions on the topics suggested; or (2) to provide relevant and responsive documents, if applicable. If POM, for example, were to agree to limit its questions and requests to "generic descriptions of legal services" or merely to identify certain clients that Eckert was providing services to, Eckert could respond. To date, other than its implied suggestion at page 3 of its Mr. Brier's letter, POM has never offered that compromise. Eckert would certainly entertain such an appropriate limitation.

### Other Issues Raised

Similarly, the other issues raised by POM are both premature and likely to be resolved through some appropriate limitation in scope.

With respect to disclosures made to other clients, if POM seeks to know whether such disclosures were actually made, Ecker would not have asserted an objection. If POM is seeking (which its Rule 30(b)(6) disclosure suggests) the actual content of the communications between Eckert and another client, Eckert would assert that other client's attorney-client privilege.

---

[2] I note for the Court that there were no objections asserted to request nos. 3 and 6 in the requests addressed to Messrs. Stewart and Skjoldal.



With respect to disclosures made to Parx Casino about Eckert's decision to withdraw from representing POM, Eckert (and Parx Casino) have already responded that there were no such documents.  As to any actual communications, if limited to generic description of the communications, an Eckert witness could testify to such communication.

With respect to the identity of Eckert's gaming clients as referenced in its initial Answer, Eckert is willing to provide that information.

With respect to the request for the amount paid by Parx Casino to Eckert in legal fees, if POM would agree to withdraw its request for the actual invoices (the majority of which have nothing to do with POM or the issues in this case), Eckert could agree to provide the amount, which is not privileged.

For all of those reasons, I respectfully suggest that the Court permit the parties to meet-and-confer meaningfully in a way that could avoid Court intervention.  I also respectfully request that the Court permit Eckert sufficient time – in light of the holidays – to provide its supplemental document production and any corresponding privilege log related to certain communications that Eckert seeks to withhold from production.

Thank you for Your Honor's consideration of my request.

                                                               Respectfully,

                                                               Robert S. Tintner

RST/ebm

cc:    Daniel T. Brier, Esquire (via ECF and e-mail)
        Donna A. Walsh, Esquire (via ECF and e-mail)