# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff, | : | NO. 20-CV-292 |
| | : | |
| v. | : | JUDGE WILSON |
| | : | |
| ECKERT, SEAMANS, CHERIN & | : | MAGISTRATE JUDGE SAPORITO |
| MELLOTT, LLC, MARK S. | : | |
| STEWART and KEVIN M. | : | |
| SKJOLDAL, | : | |
| | : | ELECTRONICALLY FILED |
| Defendants. | : | |

## PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION TO APPEALS (ECF NOS. 168, 169, 170, 171, 172, 173)

Daniel T. Brier
Donna A. Walsh
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................... 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ....................... 2

ARGUMENT ..................................................................................................... 6

    A.    Judge Saporito Properly Invoked Judicial Estoppel ............................ 7

        1.    Eckert, HMS and Parx adopted irreconcilably inconsistent positions ...................................................................................10

        2.    The inconsistent positions were advanced in bad faith ............ 10

        3.    No lesser sanction will remedy the affront to the Court ...................................................................................... 12

    B.    Eckert, HMS and Parx Did Not Identify Any Reversible Error ......... 13

    C.    Eckert, HMS and Parx Did Not Appeal Judge Saporito's Ruling That the Work Product Doctrine Does Not Apply ............................. 18

    D.    The Crime-Fraud Exception Vitiates the Assertion of Privilege ....... 19

    E.    Eckert Waived Any Applicable Privilege .......................................... 20

CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Aetna, Inc. v. Mednax, Inc.*, No. 18-CV-02217, 2019 WL 5566705 (E.D. Pa. Oct. 29, 2019) .................................................................................... 20

*Anderson v. Bessemer City*, 470 U.S. 564 (1985) ...................................... 6

*In re Berks Behav. Health, LLC,* 500 B.R. 711 (E.D. Pa. Oct. 21, 2013) .............. 17

*Bowman v. American Homecare Supply, LLC*, No. 07-3945, 2009 WL 1873667 (E.D. Pa. June 25, 2009) ................................................................. 21

*In re Conrad's Estate*, 3 A.2d 697 (Pa. 1938) .......................................... 18

*First Fidelity Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 90-1866, 1992 WL 55742 (E.D. Pa. Mar. 13, 1992) ........................... 21

*G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009) ...... 7, 9, 15, 16

*In re Grand Jury Proc.*, 604 F.2d 798 (3d Cir. 1978) ................................. 19

*In re Grand Jury Subpoena*, 223 F.3d 213 (3d Cir. 2000) ........................... 20

*Haines v. Liggett Grp., Inc.*, 975 F.2d 81 (3d Cir. 1992) ............................ 6

*In re Kane*, 628 F.3d 631 (3d Cir. 2010) ............................................... 7

*Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681 (W.D. Pa. 2011) ............. 18

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, 2010 WL 4537002 (M.D. Pa. Nov. 3, 2010) ...................... 21

*Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir. 1972) ..................................... 6

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors, Corp.*, 337 F.3d 314 (3d Cir. 2003) ............................................ 7, 8, 11, 15, 17

*Lease v. Fishel*, No. 07-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2013) ........... 7

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) ................................................................................ 15

*United States v. Purcell,* 667 F. Supp. 2d 498 (E.D. Pa. 2009) ................ 21

*United States v. Waterman*, 755 F.3d 171 (3d Cir. 2014) ........................ 6

*United States v. Zolin*, 491 U.S. 554 (1989) ........................................ 19

*United Steelworkers of Am. v. New Jersey Zinc Co., Inc.*, 828 F.2d 1001 (3d Cir. 1987) ...................................................................... 19

## STATUTES

28 U.S.C. § 636(b)(1)(A) ...................................................................... 6

## RULES

Fed. R. Civ. P. 26(b)(3) ........................................................................ 18

Fed. R. Civ. P. 72(a) ............................................................................ 6

Pa. R. Prof. Conduct 1.7(b)(3) .............................................................. 16

Pa. R. Prof. Conduct 8.4(a) .................................................................. 11

L.R. 16.3 ............................................................................................ 8

## INTRODUCTION

Informed by his granular *in camera* study of incriminating documents, U.S. Magistrate Judge Joseph F. Saporito, Jr. has now twice decided that Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert") played "fast and loose" with the Court by denying involvement in litigation adverse to Plaintiff Pace-O-Matic, Inc. ("POM") while at the same time asserting privilege over communications concerning its conflicted representation of another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), in the same matter. Judge Saporito described in painstaking detail how Eckert clandestinely managed Parx's litigation strategy notwithstanding its obvious conflict of interest and how Eckert, Parx and co-counsel Hawke McKeon & Sniscak, LLP ("HMS") knowingly denied and misstated Eckert's role both to this Court and the Commonwealth Court in a concerted effort to hide Eckert's wrongdoing. ECF 166, pp.19-29. Judge Saporito—the only objective person to have made findings after reviewing the withheld material[1]—"ha[d] no difficulty concluding" that Eckert and the co-chair of its gaming practice, Defendant Mark S. Stewart, intended "to play fast and loose with the courts" and that "it is necessary to apply judicial estoppel to neutralize a threat to judicial integrity." ECF 166, p.29. Full stop.

---

[1] The documents have since been provided to this Court for *in camera* review.

Eckert, HMS and Parx failed to identify any reversible error in Judge Saporito's well-reasoned and well-supported decision. They do not and cannot credibly challenge Judge Saporito's factual findings that Eckert had "full knowledge that the conflict asserted by POM precluded [Eckert's] active and continuing representation of Parx in the Commonwealth Court litigation," that Eckert nevertheless "affirmatively interposed itself . . . and advanced litigation positions *directly adverse* to the legal interests of . . . POM. . .," and that Eckert "managed and participated" in the litigation "*clandestinely*" to fool the courts and avoid detection. ECF 166, pp.28-29. Unable to deny the deception, their appeals amount to attempts to walk back inconsistencies in their Court filings, self-serving professions of good faith, disagreement with controlling authority and general arguments about the sanctity of the attorney-client privilege. None of their arguments undermine Judge Saporito's decision that Eckert is properly precluded from benefitting by its duplicitous representations.

The appeals should be denied and the withheld communications should be produced forthwith.

## **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

POM retained Eckert in 2011 and 2016 to provide legal services concerning POM's electronic skill games. Am. Compl. (ECF 145) ¶¶7-10. Pursuant to the 2016 engagement, Eckert handled a variety of legal matters for POM, including

2

advocating on behalf of POM and its affiliates with government officials, handling litigation, negotiating and drafting contracts and providing advice concerning legal, legislative and litigation strategies. *Id.* ¶¶16-18. In furtherance of these legal services, POM provided Eckert with highly sensitive, proprietary, confidential and non-public information relating to its products and business operations. *Id.* ¶15. POM paid substantial fees to Eckert for those legal services. *Id.* ¶14. About this, there is no dispute.

While Eckert was representing POM and advocating the legality of POM's skill games, Eckert undertook to attack those same games on behalf of its other client, Parx. In the fall of 2019, as counsel for Parx and while also representing POM, Eckert commenced more than a dozen actions in Pennsylvania state courts against establishments that offer POM's games seeking a declaratory judgment that those games constitute a public nuisance. *Id.* ¶¶20-21. This coordinated attack on POM was part of a broader campaign by Eckert acting for Parx to secure a statewide ban against the very same POM skill games that Eckert was at the same time defending and promoting as counsel for POM. *Id.* ¶¶19, 23-26. Again, this is not disputable.

In late 2019, POM confronted Eckert over its impermissible conflict and demanded that Eckert withdraw from representing Parx in matters adverse to

POM.  *Id.*  ¶36.  Eckert refused and dropped POM like the proverbial "hot potato"

on January 29, 2020 in favor of its more lucrative relationship with Parx.  *Id.*  ¶37.

On February 18, 2020, POM commenced this action against Eckert asserting

breach of fiduciary duty.  ECF 1.  On March 10, 2020, Eckert filed its Answer and

Affirmative Defenses in which it asserted that it "does not represent a party

adverse to POM in litigation."  ECF 9, ¶18; *see also id.* at Seventeenth Defense.

On March 24, 2020, POM moved for a preliminary injunction to enjoin Eckert

from representing Parx in matters adverse to POM.  ECF 12, 13.  In its opposition

filed on April 21, 2020, Eckert again represented to the Court that it "is not

representing parties in litigation adverse to POM."  ECF 21, p.2.

To test Eckert's denials in the documents filed in this action, POM served

interrogatories and requests for documents on Eckert and third-party subpoenas on

Parx and HMS seeking, *inter alia*, communications between Eckert and HMS

concerning Eckert's involvement in two pending Commonwealth Court litigation

matters brought by POM against government agencies.  Notwithstanding prior

representations to the Court that it had no involvement, Eckert moved for a

protective order, claiming that its communications with Parx and Parx's counsel of

record, HMS, were protected by the attorney-client privilege and work product

doctrine.  ECF 44, 45.  HMS also sought a protective order and represented to the

Court in its brief that it "stepp[ed] in as conflict counsel" in the Commonwealth

Court litgation "upon referral from Eckert due to Eckert's alleged conflict with POM . . . ." ECF 53, pp.2, 4. POM moved to compel complete responses to the discovery requests. ECF 50, 51, 61. The motions were referred to Judge Saporito, ECF 31, who directed HMS and Parx to provide privilege logs, ECF 35. The logs (attached as Exhibits A-C) identify more than 200 communications to and from Eckert relating to the Commonwealth Court litigation in which it denied involvement.

After reviewing the withheld communications *in camera*, on February 16, 2021, Judge Saporito ruled *sua sponte* that Eckert, HMS and Parx are judicially estopped from asserting privilege because Eckert represented to the Court that it was not involved in the litigation. Judge Saporito Ordered Eckert and HMS to produce 182 communications withheld as purportedly privileged. ECF 87, pp.36-38, 40-43.[2]

On March 2, 2021, Eckert, Parx Casino and HMS filed separate appeals from this portion of the decision. ECF 93, 85, 97. By Memorandum and Order dated April 6, 2021, the Court recommitted the matter to Judge Saporito for further consideration after affording the parties an opportunity to address judicial estoppel. ECF 113, 114.

---

[2]  The decision resolved other discovery disputes not at issue in this appeal.

After submission of additional briefs, Judge Saporito issued a Memorandum and Order on November 16, 2021 finding without qualification that Eckert and Stewart "play[ed] fast and loose" with the courts and as a result are properly judicially estopped from asserting attorney-client privilege with respect to communications concerning the Commonwealth Court litigation. ECF 166, pp.29-30. Judge Saporito also determined that Eckert's conduct is "directly in issue" and "implicates or creates a conflict of interest" and therefore Eckert cannot invoke the work product doctrine to shield the communications from discovery. *Id.*, pp.30-32.

On November 30, 2021, Eckert, HMS and Parx filed notices of appeal.

## **ARGUMENT**

A district court sitting on appeal may reverse a magistrate judge ruling only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). A factual determination is clearly erroneous if it "(1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). A ruling is "contrary to

law" if it misinterpreted or misapplied applicable law. *Lease v. Fishel*, No. 07-0003, 2010 WL 4318833, at *3 (M.D. Pa. Oct. 22, 2013).

Judge Saporito's fact-based decision is undeniably correct and should be affirmed.

### A.   Judge Saporito Properly Invoked Judicial Estoppel.

Eckert, HMS and Parx repeatedly denied Eckert's involvement in the Commonwealth Court litigation in a calculated and coordinated effort to conceal Eckert's breach of loyalty and, as a result, are properly estopped from asserting privilege over Eckert's communications concerning the litigation.

Federal courts[3] possess "intrinsic ability" to dismiss a claim or defense to prevent a litigant from "playing fast and loose with the courts." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (citation omitted). "Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010). The doctrine is properly invoked where: (1) the party to be estopped has taken positions that are irreconcilably inconsistent; (2) the inconsistent positions were advanced in bad faith, *i.e.* "with intent to play fast and loose with the court"; and (3) no lesser

---

[3]   Parx suggests that state law controls. ECF 171, p.12. This is not correct. In this diversity case, federal law governs "[a] federal court's ability to protect itself from manipulation by litigants . . . ." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009) (citation omitted).

sanction would adequately remedy the damage done by the party's misconduct. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 319.

These criteria are easily satisfied here and Judge Saporito "ha[d] no difficulty" concluding that the doctrine applies. ECF 166, p.29. Both equity and the integrity of the judicial process justify invocation of judicial estoppel.

### 1. Eckert, HMS and Parx adopted irreconcilably inconsistent positions.

There is no serious question that Eckert, HMS and Parx asserted irreconcilably inconsistent positions with respect to whether Eckert represented Parx in the Commonwealth Court litigation.

Judge Saporito found that Eckert "repeatedly, and unequivocally, denied that it has represented an adverse party in litigation against POM." ECF 166, p.15. Eckert represented in the Answer filed in this action that it "does not represent a party adverse to POM in litigation," ECF 9, ¶18, and "is not counsel in any litigation where POM is an adverse party," *id.* at Seventeenth Defense. Eckert asserted to the Court in its opposition to POM's motion for preliminary injunction that it "is not representing parties in litigation adverse to POM." ECF 21, p.2. Eckert stated in the Joint Case Management Plan that it "is not involved in [the Commonwealth Court] case." ECF 18, §1.1.[4] At oral argument on the discovery

---

[4] Eckert tries to justify its misrepresentation in the plan by pointing to Local Rule 16.3 which provides that statements in the plan "will not be deemed an

motions, counsel for Eckert took the position that Eckert "is not representing anyone that is adverse to POM in that litigation." ECF 81, p.36. Eckert's counsel further stated that Eckert was "involved with a team of lawyers" and "was not leading that charge." *Id.* In addition, Judge Saporito found that Eckert suggested in its brief filed in the first appeal that "its role in the Commonwealth Court litigation was one of mere *consultation* with counsel of record." ECF 166, p.18 n.10 (emphasis in original).[5]

HMS played along and also denied and minimized Eckert's leadership role. In support of its motion for a protective order, HMS misrepresented to this Court that it "step[ped] in as conflict counsel" "due to Eckert's alleged conflict with POM" and that Eckert's work was "preparatory to . . . handing off the Parx representation to HMS." ECF 53, pp.2, 4, 9. In Parx's opposition to POM's motion to disqualify HMS, HMS doubled down again and represented to the Commonwealth Court that "Eckert is not counsel in this case." ECF 82, p.166. Judge Saporito found that, in that same court filing, HMS "implicitly represented

---

admission." ECF 169, p.11 n.5. This misses the point. Eckert's denial in the plan is a misrepresentation ***to the Court*** and therefore a threat to judicial integrity regardless of the evidentiary uses to which the plan may be put by a party. *See G-I Holdings, Inc.,* 586 F.3d at 262 ("We will apply [judicial estoppel] to neutralize threats to judicial integrity however they may arise.").

[5]  Eckert made the same representation in its brief in this appeal. *Compare* ECF 94, p.11 n.3 *with* ECF 169, p.10 n.4.

that Eckert played no substantial role in Parx's activities in those cases." ECF 166, p.21.

The repeated dissembling and outright denials of involvement in the litigation cannot be squared with Eckert's assertion that its involvement is shielded from discovery by the attorney-client privilege. As Judge Saporito concluded, "[t]he two positions cannot be reconciled." ECF 166, p.18.[6] The first criteria for judicial estoppel is satisfied.

### 2. The inconsistent positions were advanced in bad faith.

Based on *in camera* review of the withheld documents, Judge Saporito determined that the "inconsistent positions were adopted in bad faith" to conceal Eckert's breach of loyalty. ECF 166, p.28. This ruling is unassailable under the record facts and established law.

Judge Saporito found that Eckert surreptitiously "*quarterbacked* Parx's litigation efforts in the Commonwealth Court" for months "with full knowledge that the conflict asserted by POM precluded its active and continuing representation of Parx in the Commonwealth Court litigation." ECF 166, pp.22 (emphasis in original), 29. As support for this conclusion, Judge Saporito quoted a

---

[6]   Contrary to the repeated assertion by appellants, Judge Saporito did ***not*** find that the communications at issue are privileged. Rather, Judge Saporito repeatedly referred to the communications as "purportedly privileged." ECF 166, pp.2, 8, 14 & n.6, 18 n.10, 21-22, 28-29, 32 n.19.

text from Stewart to Kevin J. McKeon at HMS at 9:31 pm December 17, 2019

concerning the *amicus* brief that Eckert prepared on behalf of Parx.  Stewart wrote:

"***I may need you to be solo name on this brief.  Will explain.***"  ECF 166, p.29.

The communications that are at issue occurred largely ***after*** the text and after HMS

agreed to "step in as conflict counsel" "due to Eckert's alleged conflict with

POM."  ECF 53, pp.2, 4.[7]

  Deliberately circumventing the prohibition against conflicts of interest is

itself a sanctionable breach of professional ethics,[8] and therefore lying to the Court

about that circumvention is most certainly bad faith.  *See generally Krystal*

*Cadillac-Oldsmobile*, 337 F.3d at 321 ("a rebuttable inference of bad faith arises

when averments . . . demonstrate both knowledge . . . and a motive to conceal. . .")

(citation omitted).  Accordingly, based on "the clear and obviously intentional

subterfuge demonstrated in the purportedly privileged documents" reviewed *in*

*camera*, Judge Saporito "ha[d] no difficulty concluding" that Stewart and Eckert

---

[7]  The Eckert privilege log identifies emails by time and date.  ECF 166, p.14.
At least 48 of the withheld communications occurred while Eckert represented
***both*** POM and Parx.  *Id.*, pp.33-35.

[8]  Rule 8.4 states that "[i]t is professional misconduct for a lawyer to . . . violate
or attempt to violate the Rules of Professional Conduct, knowingly assist or induce
another to do so, or do so through the acts of another . . . ."  Pa. R. Prof. Conduct
8.4(a) (emphasis added).  Because Eckert was prohibited from representing Parx in
any matter adverse to POM, it was an ethical violation for Eckert to represent Parx
indirectly through HMS, for HMS to assist Eckert in that conduct and for HMS and
Eckert to hide Eckert's involvement.

intended "to play fast and loose with the courts." ECF 166, p.29. This conclusion is undeniably correct.

### 3.    No lesser sanction will remedy the affront to the Court.

Judge Saporito properly determined that no lesser sanction will suffice to remedy Eckert's fraud on the Court. ECF 166, pp.29-30.

The self-serving alternative proposed by Eckert—that POM should be left to make its case "through the privilege logs and other third party documents," ECF 169, p.14—is no sanction at all but instead would *reward* Eckert. The privilege logs conceal the depth and breadth of Eckert's contemptuous adversity to its own client which Judge Saporito found included "coordinat[ing] the entire [*amicus*] effort," serving as "primary authors" of Parx's applications to intervene and "affirmatively interpos[ing] itself . . . and advance[ing] litigation positions *directly adverse* to" POM. ECF 166, pp.22-23, 26, 28 (emphasis in original). Allowing Eckert to continue to deny and minimize its involvement while at the same time concealing proof of that involvement will prevent POM from establishing the full extent of the harm and from demonstrating to the jury the sheer outrageousness of the conduct by Eckert and Stewart that justifies substantial punitive damages.[9]

---

[9]   It is noteworthy that Eckert moved to strike POM's demand for punitive damages while seeking to shield the very evidence that puts the lie to Eckert's denial that it acted outrageously and its claim that it had a "mistaken belief" that there was a conflict waiver. ECF 156, p.12.

Ordering production of the communications is necessary to remedy the attempted fraud and prevent Eckert and Parx from profiting by the deception. No lesser sanction will suffice.

**B.     Eckert, HMS and Parx Did Not Identify Any Reversible Error.**

Unable to deny Judge Saporito's factual findings informed by the withheld communications, Eckert, Parx and HMS argue that judicial estoppel is not an appropriate remedy because the positions they advanced are technically consistent and were not accepted by any court and because judicial estoppel cannot overcome an assertion of privilege. Each argument fails.

The denials of inconsistency are the product of magical thinking. HMS posits that, when Eckert represented to this Court that it "is not involved in [POM's Commonwealth Court] case, Eckert was *not* telling this court that it was not involved at all . . . just not on the record . . . ." ECF 173, p.11. This is pure sophistry. Eckert did not deny an "on the record" appearance but rather denied any involvement at all. Along the same lines, Parx suggests that Judge Saporito failed to appreciate the distinction between "entering a formal appearance" and "being part of a team of lawyers," ECF 171, p.5, but there was no misunderstanding. It was just the opposite. Judge Saporito found that Eckert's deliberate avoidance of an on-the-record role was "clear and obviously intentional subterfuge." ECF 166, p.29. His *in camera* study of the purportedly privileged documents "belies

[Eckert's] characterization" that its role "was one of mere *consultation* with counsel of record." ECF 166, p.18 n.10 (emphasis in original).[10] The evolving euphemisms offered to minimize Eckert's role are themselves incriminating. Eckert lawyers were ethically barred from representing parties adverse to POM in *any* capacity—on- or off-the-record, visibly or invisibly, as a consultant or advisor and as part of a "team." The continuing hypocrisy concerning Eckert's role further underscores the appropriateness of judicial estoppel.

In any event, the belated efforts to harmonize Eckert's positions with reality are too little, too late. Even if Eckert had come clean by withdrawing its false denials of involvement—and it still has not[11]—this would not remedy the lack of candor to the Court or restore the integrity of these judicial proceedings. As the Third Circuit recognized, allowing a party to avoid application of judicial estoppel by withdrawing one of two inconsistent positions after its duplicity is discovered

---

[10] Parx continues to downplay and minimize Eckert's involvement. For example, Parx still maintains that Eckert was "part of a team of lawyers representing Parx" and "assisted" "behind the scenes." ECF 171, pp.5, 16, 19, 21. This characterization conflicts with Judge Saporito's findings that Eckert "quarterbacked," "coordinated," "managed" and "authored" Parx's litigation strategy. ECF 166, pp.22, 26, 28.

[11] Rather than own up to and correct its numerous material misrepresentations in prior court filings, Eckert reasserts them. It claims that its denials that it represented a party adverse to POM "were true then and remain true." ECF 169, p.10.

"would only diminish the necessary incentive" to be truthful and therefore belated disclosure will not stave off judicial estoppel. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 320-21 (citation omitted).

Eckert, HMS and Parx are likewise wide of the mark in arguing that acceptance of an inconsistent position by a court is a necessary prerequisite for judicial estoppel. As Judge Saporito confirmed, ECF 166, p.20 n.11, and as HMS expressly acknowledges, there is no such requirement. The Third Circuit has held that "application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Krystal Cadillac-Oldsmobile*, 337 F.3d at 324; *see also G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) ("We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply."); *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) ("Whether the party sought to be estopped benefitted from its earlier position . . . may be relevant insofar as it evidences an intent to play fast and loose with the courts. It is not, however, an independent requirement for application of the doctrine of judicial estoppel.").[12] The doctrine may be applied "to neutralize

---

[12] While some of the referenced authorities declined to apply judicial estoppel, the facts and circumstances are materially different from this case and as a result they do not undermine application of judicial estoppel to the unique and egregious facts found by Judge Saporito.

threats to judicial integrity however they may arise." *G-I Holdings, Inc.*, 586 F.3d at 262.[13]

Eckert argues that Judge Saporito's finding of bad faith is unsupportable because it believed that POM provided an advance conflict waiver, ECF 169, p.13, but Eckert knew all along there was no valid waiver. The Eckert partner in charge of the POM relationship, Thomas A. Lisk, never made the disclosures necessary for an effective waiver. ECF 13-3, ¶¶5-7.[14] Eckert continued to falsely deny involvement in litigation adverse to POM even after Lisk's sworn declaration was filed of record. Eckert's claim that it believed it had a waiver is just not credible and, in any event, cannot justify its false denials of involvement in litigation adverse to POM. And, contrary to Eckert's argument, ECF 169, p.11, its decision to withdraw from the public nuisance suits that it filed against its own client evidences consciousness of guilt and an effort to cabin liability, not good faith.

---

[13]   Eckert, HMS and Parx appear to be conflating inconsistent *legal* claims, where a change in position after acceptance of an earlier position by a court or judge demonstrates a litigant's bad faith, and inconsistent *factual* assertions like the ones at issue here. There is no question that a litigant "plays fast and loose with the court" when he knowingly makes directly conflicting statements about a factual matter. This is what Eckert, HMS and Parx did here. Over and over again. And they got caught. They denied Eckert's involvement in the Commonwealth Court litigation and at the same time claimed that Eckert was acting as counsel. Acceptance by a court of one of these inconsistent assertions is not necessary to conclude that asserting both at the same time is bad faith.

[14]   An advance waiver would not have enabled Eckert to be adverse to POM in the same litigation. Pa. R. Prof. Conduct 1.7(b)(3).

Finally, Eckert and Parx argue that the assertion of privilege prevents application of judicial estoppel. This is not correct. Judicial estoppel is a sanction applied to avoid a miscarriage of justice. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 319. The doctrine admits of no exception where fraud on the court involves an assertion of privilege. As Judge Saporito noted, ECF 166, p.20, there is authority for applying judicial estoppel to prevent a litigant like Eckert from asserting inconsistent positions concerning an attorney-client relationship to obtain a litigation advantage. *See In re Berks Behav. Health, LLC*, 500 B.R. 711, 721-22 (E.D. Pa. Oct. 21, 2013) (applying judicial estoppel to prevent party from claiming attorney-client relationship which it previously denied). Parx argues that judicial estoppel should not be applied to prevent Eckert from asserting Parx's privilege, ECF 171, pp.23-24, but Parx is not an innocent non-party. Judge Saporito expressly found that Parx knowingly downplayed Eckert's role in the Commonwealth Court litigation. ECF 166, pp.20-21.[15] Indeed, HMS, serving as Parx's counsel, misrepresented to the Commonwealth Court that "Eckert is not counsel in this case" and misrepresented to this Court that Eckert's involvement was "preparatory" to "handing off the Parx representation to HMS." *Id.* p.21.

---

[15] Eckert kept Parx and Parx's government relations personnel informed of its ongoing efforts to influence the Commonwealth Court litigation in Parx's favor. *See, e.g.*, ECKERT01214-16 (attached as Exhibit D).

These misrepresentations are attributable to and binding on Parx. *See, e.g., In re Conrad's Estate*, 3 A.2d 697, 699 (Pa. 1938) ("[A]n attorney has power to bind his client by his admissions and acts in the course of suit, or in management of the regular course of litigation. . . ."). Therefore, Eckert, Parx and HMS are properly estopped from asserting privilege over the withheld communications.[16]

In short, there is no clear error of fact or misapplication of law that might justify reversal of Judge Saporito's decision.

## C.   Eckert, HMS and Parx Did Not Appeal Judge Saporito's Ruling That the Work Product Doctrine Does Not Apply.

As an alternative and separate basis for his decision, Judge Saporito concluded that the work product doctrine does not protect communications between Eckert and HMS concerning the Commonwealth Court litigation. ECF 166, pp.30-32. Judge Saporito found that, because Eckert's involvement in this litigation is "directly in issue," its communications and activities are excepted from the work product doctrine in Rule 26(b)(3). *Id.* p.30. Further, Judge Saporito ruled that the doctrine does not shield Eckert's activities because its purported work

---

[16] Parx's attempted analogy to *Killmeyer* fails. The issue in *Killmeyer* was whether a bankruptcy trustee should be estopped from pursuing a cause of action that the debtor failed to disclose in her bankruptcy petition. *Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681 (W.D. Pa. 2011). Whereas the trustee in *Killmeyer* was not bound by statements made by the debtor, Parx is bound by representations made by its counsel and further was aware of and participated in the subterfuge. *Killmeyer* is not in any way analogous.

18

product implicates a conflict of interest.  *Id.* p.31.  Because Eckert, HMS and Parx

did not object to this part of the decision, any objection has been waived.  *United*

*Steelworkers of Am., AFL-CIO v. New Jersey Zinc Co., Inc.*, 828 F.2d 1001, 1006

(3d Cir. 1987).  Therefore, all communications in the list on pages 33-35 of the

decision that do not involve Parx and therefore are not protected by attorney-client

privilege must be produced regardless of the outcome of this appeal.

### D.   The Crime-Fraud Exception Vitiates the Assertion of Privilege.

Separate and apart from judicial estoppel, the crime-fraud exception requires

production of the withheld communications.  The crime-fraud exception vitiates

application of the attorney-client privilege and work product doctrine where the

communications or work product are in furtherance of a crime or fraud.  *See*

*United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (attorney-client

privilege "ceases to operate . . . where the desired advice refers . . . to future

wrongdoing") (citations and internal punctuation omitted); *In re Grand Jury Proc.*,

604 F.2d 798, 802 (3d Cir. 1978) ("The work product privilege is perverted if it is

used to further illegal activities . . . .").  Here, there is no doubt that the

communications at issue were in furtherance of an attempted fraud on the Court

and POM.[17]  Judge Saporito's *in camera* analysis confirmed a "clear and obviously

---

[17]   POM's Amended Complaint includes a fraud claim against Eckert.  ECF
145, ¶¶71-76.

intentional subterfuge" aimed at concealing Eckert's conflicted representation of Parx. ECF 166, p.29. The communications and work product that are being withheld were necessarily in furtherance of that intentional subterfuge and therefore the crime-fraud exception applies and requires disclosure. *See In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir. 2000) ("crime-fraud exception applies . . . when the legal advice gives direction for the commission of future fraud . . ."). For this alternative reason, the withheld communications should be produced.

### E.    Eckert Waived Any Applicable Privilege.

There is a fourth independent basis to require production of the communications itemized in the November 16, 2021 Order: Eckert asserts defenses that implicate the content of those communications. Eckert is attempting to defend against POM's breach of fiduciary duty claims by denying that it "represent[s] a party adverse to POM in litigation," ECF 9, ¶18, by professing to have implemented an ethical screen, *id.* ¶25 & Sixteenth Defense, and by denying misuse of POM's confidential information, *id.* at Eighteenth Defense. Having placed its activities and communications at issue, Eckert cannot also assert privilege or work product as a shield to prevent discovery of those very same matters. *See Aetna, Inc. v. Mednax, Inc.*, No. 18-CV-02217, 2019 WL 5566705, at *2 (E.D. Pa. Oct. 29, 2019) (work production protection waived for information

put "at issue"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
No. CV-09-1685, 2010 WL 4537002, at *2 (M.D. Pa. Nov. 3, 2010) ("justice
requires" that party has right to work product "to defend itself" where work
product is "at issue"); *Bowman v. Am. Homecare Supply, LLC*, No. 07-3945, 2009
WL 1873667, at *5 (E.D. Pa. June 25, 2009) (ordering production of work product
put "directly at issue"); *United States v. Purcell*, 667 F. Supp. 2d 498, 520 (E.D.
Pa. 2009) (work product privilege waived by placing "thought processes and
litigation strategy at issue"); *First Fidelity Bancorporation v. Nat'l Union Fire Ins.
Co. of Pittsburgh, PA*, No. 90-1866, 1992 WL 55742, at *2 (E.D. Pa. Mar. 13,
1992) (work product privilege waived when lawyer makes selective disclosure of
protected documents).[18]

For this additional reason, the withheld communications should be produced.

---

[18]   Unpublished decisions cited herein are reproduced in the appendix.

## **CONCLUSION**

For the reasons above, Judge Saporito's decision should be affirmed.

Respectfully submitted,

 /s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  January 6, 2022

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)</u>

I, Donna A. Walsh, hereby certify that the foregoing Consolidated Brief in Opposition to Appeals is in compliance with Local Rule 7.8(b)(3).  The brief contains 4995 words as computed by Microsoft Office Word.

/s/ Donna A. Walsh

Date:  January 6, 2022

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the

foregoing Consolidated Brief in Opposition to Appeals was served upon the

following counsel of record via the Court's ECF filing system on this 6th day of

January 2022:

> Abraham C. Reich, Esquire
> Robert S. Tintner, Esquire
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103-3291
>
> Dennis A. Whitaker, Esquire
> Hawke McKeon & Sniscak, LLP
> 100 North Tenth Street
> Harrisburg, PA  17101
>
> George A. Bibikos, Esquire
> 5901 Jonestown Road, #6330
> Harrisburg, PA  17112

/s/ Donna A. Walsh

Donna A. Walsh