## APPENDIX OF UNPUBLISHED OPINIONS

1.  *Aetna, Inc. v. Mednax, Inc.*, No. 18-CV-02217, 2019 WL 5566705 (E.D. Pa. Oct. 29, 2019)

2.  *Bowman v. American Homecare Supply, LLC*, No. 07-3945, 2009 WL 1873667 (E.D. Pa. June 25, 2009)

3.  *First Fidelity Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 90-1866, 1992 WL 55742 (E.D. Pa. Mar. 13, 1992)

4.  *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CV-09-1685, LLC, 2010 WL 4537002 (M.D. Pa. Nov. 3, 2010)

5.  *Lease v. Fishel*, No. 07-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2013)

1

Aetna Inc. v. Mednax, Inc., Slip Copy (2019)

2019 WL 5566705

2019 WL 5566705
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

AETNA INC., et al., Plaintiffs,

v.

MEDNAX, INC. et al., Defendants.

CIVIL ACTION NO. 18-cv-02217-WB
|
Filed 10/29/2019

**Attorneys and Law Firms**

Frederick P. Santarelli, Aimee L. Kumer, Gregory S. Voshell, Mark Joseph Schwemler, Elliott Greenleaf & Siedzikowski PC, Blue Bell, PA, Howard L. Pierce, Pierce LLC, West Hartford, CT, for Plaintiffs.

Alison Barnes, Gary A. Orseck, William J. Trunk, Jennifer S. Windom, Robbins Russell Englert Orseck Untereiner & Sauber LLP, Washington, DC, Darren Mitchell Goldman, John Chun, Luke Nikas, Michael B. Carlinsky, Michael Jacob Pemstein, Jennifer J. Barrett, Quinn Emanuel Urquhart & Sullivan LLP, New York, NY, Howard M. Klein, Andrew Kabnick Garden, Robert N. Feltoon, Conrad O'Brien, PC, Philadelphia, PA, Jonathan E. Feuer, Lorelei J. Vanwey, Martin B. Goldberg, Lash & Goldberg LLP, Miami, FL, for Defendants.

**MEMORANDUM AND ORDER CONCERNING**

RICHARD A. LLORET, U.S. MAGISTRATE JUDGE

**I. Doc. No. 56: Plaintiffs' motion to quash the subpoena to Dr. Makuch.**

*1 The plaintiffs (referred to collectively as "Aetna") have filed a motion to suppress or quash a subpoena directed to their expert witness, Dr. Makuch. Doc. No. 56. I have reviewed the parties' submissions. I have also reviewed *in camera* the engagement letter concerning Dr. Makuch's services. Dr. Makuch supplied a regression analysis of defendants' billing practices. The primary motivating purpose behind the creation of this analysis was to aid in negotiations and potential litigation with defendants. This means that Dr. Makuch's analysis is protected by the attorney work-product doctrine. *See United States v. Rockwell Intern.*, 897 F.2d 1255, 1266 (3d Cir. 1990) (file

was maintained to aid in future negotiations and potential litigation with IRS). I find that Aetna has produced significant discovery concerning the regression analysis performed by Dr. Makuch. That regression analysis formed a basis for the plaintiffs' complaint, and is therefore discoverable, as discussed below. While some discovery into the data used to prepare the regression analysis is appropriate, discovery will be conducted between the parties, not by subpoena directed to Dr. Makuch. I will order that the subpoena be quashed.

**II. Doc. No. 64: Defendants' cross-motion to compel production of discovery.**

The defendants (collectively referred to as "Mednax") filed a cross-motion to compel discovery pursuant to Fed. R. Civ. Pro. 37(a). Doc. No. 64. They seek information concerning Dr. Makuch's regression analysis, performed for Aetna, which forms a basis for the complaint. I have reviewed the parties' submissions, and I will grant the cross-motion in part, and deny the rest.

**A. Documents and information previously produced will be identified by Aetna.**

Aetna objects that it has provided much of the information to Mednax concerning Dr. Makuch's study. Doc. No. 66 at 3-4. Additionally, Aetna objects that some of the information sought in Mednax's cross-motion has never been requested before the time of the cross-motion. Before and at the time of the meet and confer ordered below, Aetna may simply identify compliance with a particular request by supplying the specific Bates stamp number(s) where the information can be found.

**B. Dr. Makuch's analysis is subject to the attorney work-product doctrine.**

I have reviewed *in camera* the retainer agreement signed by Dr. Makuch, as well as the other relevant circumstances. I find that Dr. Makuch was retained and did his analysis in "the course of preparation for possible litigation." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 505 (1947)); *see United States v. Rockwell Intern.*, 897 F.2d 1255, 1266 (3d Cir. 1990) (a file maintained to aide in future negotiations and potential litigation was protected work-product). At the time Dr. Makuch was retained there may well have been insufficient proof to justify filing a complaint alleging fraud. That does

Aetna Inc. v. Mednax, Inc., Slip Copy (2019)

2019 WL 5566705

not mean his analysis cannot be subject to the attorney work-product doctrine. This was not a routine, in-house review of records. A party can anticipate possible litigation without having a sufficient basis, then and there, to satisfy the pleading standards of Fed. R. Civ. Pro. 8, 9 and 11.

**\*2** Obtaining the required factual basis to file a complaint alleging fraud may require a complex and time-consuming investigation that involves attorneys, their work, and the work of experts hired by the attorneys to assist them in the task. A complex, long-term business relationship is not like an automobile accident. Fraudulent billing may not be obvious. If it were, it likely would not be fraud, which inherently relies upon concealment and deception to succeed. Unlike an automobile accident, there may be substantial doubt at the outset of a fraud investigation about whether a fraud occurred, or whether a loss was caused by fraud. Notwithstanding the suspicions or facts that triggered the investigation, a party may conclude, after conducting such an investigation, that no fraud occurred, or that litigation alleging fraud is not warranted. The fact that litigation is not initiated, in that instance, does not mean the investigative work was not in anticipation of litigation.

Certainly where, as here, a complaint is filed, there should be no penalty attached to pre-suit investigation of whether there is an adequate factual basis for alleging fraud. An alternative rule would tend to encourage parties to file suit on mere suspicion, rather than proper investigation. That is not a tendency that should be encouraged. The rule Mednax suggests would force a choice between two unacceptable alternatives: violating an attorney's professional obligation to diligently represent a client by ensuring that "factual allegations have evidentiary support" (Fed. R. Civ. Pro. 11(b) (3)) or surrendering work-product protection. I find that Dr. Makuch's regression analysis was prepared in anticipation of possible litigation and is subject to protection under the attorney work-product doctrine. That, however, is not the end of the matter.

### C. The "at issue" exception applies and requires production of some, but not all, of the information sought by Mednax.

Plaintiffs have used Dr. Makuch's regression analysis as a basis for filing their complaint, and therefore have put the regression analysis at issue. There is a compelling need for discovery, because the regression analysis and its data are within Aetna's sole possession and are the basis of Aetna's claims against Mednax. *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 568–69 (E.D. Pa. 1989). Nevertheless, plaintiffs have not waived all work-product protection, only the protection that extends to the information put "at issue." *Financial Guaranty Insurance Company v. Putnam Advisory Company, LLC*, 314 F.R.D. 85, 90-91 (S.D.N.Y. 2016). Plaintiffs have conceded that the regression analysis itself must be produced, and allege they have produced it, though Mednax contends the production has been deficient in some respects. The defendants want additional information that ties the regression analysis clearly to Aetna's underlying data, so that the accuracy of the analysis can be tested against its premises.

The scope of the "at issue" waiver is committed to the sound discretion of the trial judge. *Id.* I find that the scope of the waiver is limited to needs that are "compelling," that is, information that bears directly on the reliability of the regression analysis and is within the exclusive control of the plaintiffs. *See In re Sunrise Securities Litigation*, 130 F.R.D. at 568–69; *Bird v. Penn Central Co.*, 61 F.R.D. 43, 47 (E.D. Pa. 1973) (excluding information from waiver where it did not bear directly on the legal theory put at issue by the pleadings). I have applied this standard to the information sought by Mednax and have granted discovery requests where I found that the information bears directly on the reliability of the regression analysis. Where the information does not bear directly, I have denied discovery.

### ORDER

Accordingly, it is on this 29th day of October, 2019 ORDERED, that Mednax's motion to compel (Doc. No. 64) is **GRANTED**, in part. Within 15 days of the date of this Order the parties' counsel will meet and confer to determine which of the items listed below have been produced. To the extent not already produced, within 30 days of the date of this Order Aetna will produce the following information:

**\*3** 1. Aetna's original data from claim forms from which Aetna created the raw data files used by Dr. Makuch to perform the regression analysis referred to in the complaint. This data will include (but not be limited to)

a. Each patient name;

b. Each patient identification number as listed in Box 26 of the CMS 1500 Claim Form;

c. Each insurance policy subscriber name;

d. Each insurance policy subscriber number;

e. Each claim number;

f. Each patient's date of birth;

g. Each date of service;

h. Each CPT code or codes for the respective dates of service;

i. Each provider name, with Taxpayer Identification Number;

j. The complete regression analysis referenced by Aetna and relied upon by Aetna in its complaint;

k. All provider fee schedules used by Aetna in connection with the regression analysis.

2. The dates upon which Aetna created the raw data files from the internal system or systems.

3. The methodology used to create a) the raw data files used by Dr. Makuch, b) the regression analysis, and c) its results.

**IT IS FURTHER ORDERED**, as follows:

4. With respect to information to be supplied in conformance with this order, Aetna will comply with the court's previously entered ESI order. With respect to information already supplied, Aetna will comply with the court's ESI order if it has not already done so.

5. Aetna's motion to quash the subpoena to Dr. Makuch (Doc. No. 56) is **GRANTED**, and the subpoena is **QUASHED**. Mednax will communicate to Dr. Makuch that the subpoena has been quashed and is withdrawn.

6. Mednax's cross-motion to compel (Doc. No. 64) is otherwise **DENIED**. In particular, communications by and between counsel for Aetna and Dr. Makuch will not be produced.

**All Citations**

Slip Copy, 2019 WL 5566705

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2

2009 WL 1873667

2009 WL 1873667
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Alan C. BOWMAN Christina Bowman, Plaintiffs,

v.

AMERICAN HOMECARE SUPPLY, LLC, Defendant.

Civil Action No. 07–3945.
|
June 25, 2009.

West KeySummary

**1**    **Federal Civil Procedure** ⟸ Waiver

Successor owner of a home healthcare
company was obligated to disclose work-
product documents in the predecessor company's
action seeking a declaratory judgment that the
predecessor was not required to indemnify
the successor. The successor had placed the
subject matter of the work product of its
counsel in the underlying suit at issue. Counsel's
opinions, mental impressions, and legal theories
regarding the strength of the indemnifiable
versus non-indemnifiable claims were critical to
determining the reasonableness of the cost of
settling the underlying suit, and apportioning
among all claims the amount for which each
party was responsible.

**Attorneys and Law Firms**

Mark S. Halpern, Lisanne L. Mikula, Halpern and Levy, P.C.,
Drexel Hill, PA, for Plaintiffs.

Troy S. Brown, Margaret E. Rodgers Schmidt, Morgan Lewis
& Bockius LLP, Philadelphia, PA, for Defendant.

***MEMORANDUM***

BAYLSON, District Judge.

**\*1**    The issue presented concerns the extent to which
the attorney work product must be disclosed in an
indemnification claim, arising out of the settlement of
underlying litigation. Pending before this Court is Defendant
American Homecare Supply's Motion for a Protective
Order (Doc. No. 37) and Plaintiffs Alan and Christine
Bowman's Cross–Motion to Compel (Doc. No. 40) in this
indemnification suit between predecessor and successor
corporate owners of a business. Plaintiffs argue that
Defendant has waived the privilege as to certain documents
related to an underlying lawsuit defended and settled by
Defendant under the "advice at issue" and "common interest"
doctrines. For the following reasons, Defendant American
Homecare Supply's Motion is GRANTED in part, as to
all attorney-client privileged documents, and DENIED in
part as to certain work-product protected documents as
explained in this Memorandum. Plaintiffs Alan and Christina
Bowman's Motion will be DENIED in part, as to attorney-
client privileged documents, and GRANTED in part as to
certain work-product protected documents.

**I. *Factual and Procedural Background***

**A. Facts**
The Court more fully described the facts of this case in
its Memorandum Opinion granting Defendant's Motion for
Summary Judgment dated October 30, 2008, Doc. No. 34.
However the Court will briefly review the relevant facts for
the purposes of this Motion. On February 12, 2003, Plaintiffs
and Defendant entered into a Stock Purchase Agreement
("Agreement") for Defendant to purchase Plaintiffs' home
health care business, C.O.P.D. (Mem.Summ. J. 1.) Under the
Agreement, Plaintiffs were required to indemnify Defendant
for any product liability or faulty workmanship claims arising
from or related to "any event, condition, fact or circumstance"
prior to the closing date of the Agreement. (*Id.* at 2.)

On January 24, 2005, a fire occurred in the home of Ms.
Connor, killing Ms. Connor's mother Mertle Steves. (*Id.* at
3.) Ms. Steves rented and used a C.O.P.D. electric home
healthcare bed. (*Id.* at 3.) C.O.P.D. purchased the bed in 1998,
prior to the closing date of the Agreement. (*Id.*) The bed was
suspected to be a cause of the fire. (*Id.*) On July 22, 2005,
the Estate of Ms. Steves filed a survival and wrongful death
suit against C.O.P.D. and other defendants. (*Id.* at 6.) Ms.
Connor's insurance company also filed suit against C.O.P.D.
on August 22, 2005. (*Id.*) Both suits were later consolidated
("Fire Suit").

Bowman v. American Homecare Supply, LLC, Not Reported in F.Supp.2d (2009)
_____
2009 WL 1873667

Attorneys for Plaintiffs and Defendant exchanged numerous communications regarding the Fire Suit, but Plaintiffs' attorney took no part in defending the suit. (*Id.* at 4–6.) Defendant settled the Fire Suit for $490,000 on July 12, 2007. (*Id.* at 6) On September 11, 2007, Defendant demanded indemnification from Plaintiffs for the $490,000 settlement plus $624,936.86 in attorneys' fees to be paid from money being held in escrow following Plaintiffs' sale of C.O.P.D. to Defendant. (*Id.*) Plaintiffs refused to indemnify and filed this declaratory judgment action to release the entire $1.75 million in escrow. (*Id.*)

### B. Procedural History

*2 Plaintiffs filed a Complaint on September 20, 2007 (Doc. No. 1). Defendant filed a Motion for Summary Judgment on June 9, 2008 (Doc. No. 21), and Plaintiff filed a Cross–Motion for Summary Judgment on June 30, 2008 (Doc. No. 27). The Court granted Defendant's Motion as to Plaintiff's duty to defend and indemnify and denied Plaintiff's Motion on October 30, 2008. (Doc. No. 34). The Court found that Plaintiffs had a duty to defend and indemnify Defendant as to the product defect count of the Fire Suit but not as to the other three counts (implied warranty, negligent maintenance and repair, and reckless disregard). (Memo.Summ. J. 16.) Therefore, the remaining issues to be resolved was apportionment of the settlement amount and attorneys' fees between the indemnifiable and non-indemnifiable claims.

On April 29, 2009, Defendant filed a Motion for Protective Order (Doc. No. 37), seeking to limit its production obligations to documents not protected by the attorney-client privilege and/or work product doctrine, relying on the seventeen boxes of documents it had already produced to Plaintiffs. On May 6, 2009, Plaintiffs filed a Response and Cross–Motion to Compel (Doc. No. 40), seeking responses to certain interrogatories and document requests withheld by Defendant and unredacted versions of previously produced documents. The Court held a recorded telephone hearing on May 8, 2009, in which it advised the parties that it was holding the matter under advisement pending production of a revised and expanded privilege log, *in camera* inspection of purportedly privileged documents, and supplemental briefing (Doc. No. 42). The parties submitted supplemental briefs on June 9, 2009 (Doc. No. 46, 47).

The Court held an additional hearing on the arguments raised in the parties' supplemental briefs on June 22, 2009. At the hearing, after arguments, the Court advised the parties that

it was denying Defendant's Motion and granting Plaintiffs' Motion but only as to documents in which work product protection was claimed (in whole or part) that specifically relate to (1) settlement amount and/or apportionment and (2) counsel's evaluation of the Fire Suit claims. As to all other documents, the Court granted Defendant's Motion and denied Plaintiffs' Motion. This Memorandum contains supporting legal analysis for this ruling, and outlines the procedure to be followed..

### II. *Discussion*

Plaintiffs concede that the disputed documents listed on the privilege log and produced to the Court *in camera* are generally privileged. Instead, Plaintiffs' Supplemental Brief argues for waiver of the privilege based on the advice at issue doctrine and the common interest doctrine. The party challenging the privilege has the burden of proving that a waiver of the privilege occurred. *See Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 390 (W.D.Pa.2005). In addition, Plaintiffs argue that communications between Defendant's Fire Suit counsel and indemnification counsel were not privileged. However, at oral argument on June 22, after the Court expressed doubt as to the discovery of privileged communications, plaintiffs voluntarily withdrew their common interest doctrine argument and their advice at issue argument as to documents protected by the attorney-client privilege. Therefore, the Court will not consider this issue but will confine its analysis to documetns which contain attorney work product, in whole or part.

### A. Work Product Waiver Based on Advice at Issue

*3 In *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir.1994), the Third Circuit articulated the standard for the advice at issue doctrine: "The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.* at 863. Courts within the Third Circuit continue to apply the standard enunciated in *Rhone–Poulenc. See Nesselrotte v. Allegheny Energy, Inc.*, 2008 WL 2858401, at *6 (W.D.Pa. July 22, 2008); *Saltern v. Nor–Car Federal Credit Union*, 2003 WL 21250578, at *1 (E.D.Pa. Apr.17, 2003). However, this standard applies to waiver of the attorney-client privilege, and in *Rhone–Poulenc*, the Third Circuit stated that waiver of the privilege does not necessarily lead to waiver of work product protection. 32 F.3d at 866. *See also Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 421 (D.Del.2003) (stating

Bowman v. American Homecare Supply, LLC, Not Reported in F.Supp.2d (2009)
2009 WL 1873667

that the waiver of the privilege did not necessarily mean waiver of work product protection); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486–87 n. 17–18 (3d Cir.1995) (applying the *Rhone–Poulenc* standard but noting that had the advice at issue argument been made as to work-product protected documents, as opposed to privileged documents, a different analysis would be required); *but see SmithKline Beecham Corp. v. Apotex Corp.,* 2005 WL 2436662, at *2 (E.D.Pa.2005) (stating that if a defendant raises an advice of counsel defense, it waives both the attorney-client and work product privileges as to that defense); *Novartis Pharm. Corp. v. EON Labs Mfg., Inc.,* 206 F.R.D. 396, 399 (D.Del.2002) (finding that invoking a reliance on advice of counsel as a defense constitutes an express waiver of both attorney-client privilege and work product doctrine); *Northwood Nursing & Convalescent Home, Inc. v. Continental Ins. Co.,* 161 F.R.D. 293, 298 (E.D.Pa.1995) (applying the *Rhone–Poulenc* standard to assess work product waiver and finding that it was not met).

The work product doctrine is a qualified, not absolute, privilege, and "like other qualified privileges, it may be waived." *Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1098 (D.N.J.1996) (quoting *United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (internal quotations omitted)). Attorney work product is discoverable when the party seeking discovery has a "substantial need" for the information, and there is no other source available to obtain the substantial equivalent of the material sought without undue hardship. Fed.R.Civ.P. 26(b) (3) (A)(ii). In considering waiver of work product protection, the Third Circuit in *Rhone–Poulenc* stated that "the protection stemming from the work product doctrine belongs to the professional, rather than the client, and [ ] efforts to obtain disclosure of opinion work product should be evaluated with particular care." 32 F.3d at 866 (citations omitted). Based on this standard, the Court must carefully balance the competing interests in evaluating waiver of the work product protection.

*4 Plaintiffs argue that Defendant has placed the subject matter of the work product of Defendant's Fire Suit counsel, of Archer & Greiner, principally Christopher Gibson, Esq. at issue. They assert that Mr. Gibson's opinions, mental impressions, and legal theories regarding the strength of the indemnifiable versus non-indemnifiable claims will be critical to both determining the reasonableness of Fire Suit settlement costs and attorneys' fees, and apportioning among all claims, the amount for which each party is responsible. Plaintiffs' Supplemental Brief relies heavily on two cases

outside of the Third Circuit for this argument: *Abbott Labratories v. Alpha Therapeutic Corp.,* 200 F.R.D. 401 (N.D.Ill.2001) and *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726 (2002).

Although the Third Circuit has not spoken squarely on the applicability of the advice at issue waiver as to work product protection, this Court is persuaded that Plaintiff is correct for two reasons. First, as in *Abbott,* Plaintiffs' and Defendant's Agreement contained a cooperation clause:

> The parties hereto agree to render to each other such assistance as they may reasonably require of each other in order to ensure the proper and adequate defense of any such claim, action, suit or proceeding .... the Indemnitee shall cooperate with the Indemnitor and provide such assistance ... as the Indemnitor may reasonably request in connection with the defense of any such claim, action, suit or proceeding, including providing the Indemnitor with access to and use of all relevant corporate records ...

(Def.'s Mot. Summ. J. Ex. 16 ¶ 9.3(a)(iii).) The *Abbott* court relied on strikingly similar language to find that the purchasing company in that case was contractually obligated to produce documents to the selling company in an indemnification suit following the purchasing company's defense of an underlying suit. 200 F.R.D. at 410 (using the cooperation clause to find both the attorney client privilege and work-product protection inapplicable). Although this Court is not prepared to find that Defendant is breaching a contractual duty to share Fire Suit attorney work product with Plaintiffs, it finds the contractual provision persuasive as to the parties' duty to share all (including attorney work product) documents related to the Fire Suit.

Second, the Court is convinced that fairness and equity dictate production of all work-product protected documents to Plaintiffs relevant on the indemnification issue. The *Abbott* court reasoned that in the interest of fairness, the entire case should not be allowed to "turn on an issue upon which one party has no knowledge and is barred from accessing the necessary information while the other party is able to use

Bowman v. American Homecare Supply, LLC, Not Reported in F.Supp.2d (2009)

2009 WL 1873667

the information to establish its claim while shielding it from disclosure." *Id.* at 410–11. The court continued that since issues surrounding conduct in the underlying litigation are central to the question of indemnification, documents relating to that conduct were not only vital, but also the only means by which the seller could evaluate the validity of the purchaser's indemnification claim and the reasonableness of the costs claimed. *Id.* at 411. This Court is similarly persuaded by fairness and policy arguments, that in such an indemnification suit based on multiple claims, some indemnifiable and some not, the Fire Suit counsel's work product is central to the indemnification damages that this Court must determine.

**\*5** In addition, the Court finds the Eighth Circuit's reasoning in *Padima* persuasive. There the Eighth Circuit stated that in evaluating the waiver of work-product protection, the court must look to "whether the interests [of] fairness and consistency mandate a finding of waiver." 281 F.3d at 732. "When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way." *Id.* (quoting *In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982) (internal quotations omitted)). In that case, the Eighth Circuit determined that the indemnitor waived work product protection where the discovery sought involved "crucial issues in the indemnification action," including the reasonableness of attorneys' fees in the underlying litigation. *Id.* Therefore, the court concluded that "[f]airness requires that the work product privilege must give way...." *Id.* Following the court's assessments of fairness in *Abbott* and *Padima,* this Court is persuaded that fairness requires production of attorney work product from the Fire Suit.

Although this Court notes Judge Joyner's assessment that "[e]ven if the attorney's work product is highly relevant to the present litigation [this] does not necessarily mean that the work product is at issue," *Northwood,* 161 F.R.D. at 298, the Court believes that the specific facts of this indemnification claim dictate that Fire Suit work product is directly at issue. In *Northwood,* the insured brought a declaratory judgment action against its insurer that the insurer had a duty to defend two third-party suits, where the insurer had only agreed to defend against one. Judge Joyner reasoned that the insured's work product in the underlying litigation was not directly at issue to the indemnification suit, which was essentially a breach of insurance contract claim. However, in this case, the Court has already construed the Agreement to determine that an indemnifiable claim, one of the four claims in the Fire Suit, exists. The sole remaining

issue requires assessing and apportioning damages between the multiple claims in the Fire Suit, and Mr. Gibson's work product regarding his assessment of the claims is directly at issue in determining such damages. As Plaintiffs argued, the Court expects that Mr. Gibson will be a witness for Defendant, and therefore Plaintiffs' effective cross-examination of him necessarily depends on access to the documentation about his Fire Suit representation, which has now terminated. Further, this Court finds that Plaintiffs have sufficiently shown "substantial need" and no other means to procure these documents under Rule 26(b)(3)(A)(ii).

Based on the above analysis, the Court finds that Plaintiffs are entitled to Fire Suit counsel's work product documents that specifically discuss: (1) the Fire Suit settlement amount and/or allocation and (2) Fire Suit counsel's evaluation of the Fire Suit claims. Plaintiffs should identify such documents from the privilege log within one week. However, Plaintiffs are not entitled to documents that contain communications to the client. If a document contains attorney work product which was communicated to the client, defendant may redact portions which show the communication, but must produce the portion containing work product. Defendants may redact any other information which does not fall within the two items stated above. Following Plaintiffs' identification, Defendant shall assert any objections to Plaintiffs' document request, and the parties should confer to resolve their disputes. If disputes remain, the parties are to advise the Court by July 17, 2009, and the Court will then review disputed documents one-by-one to determine whether they are discoverable, possibly at a hearing.

**B. Communications Between Fire Suit and Indemnification Counsel**

**\*6** Plaintiff also argued that certain communications were not privileged and therefore were discoverable. Specifically, Plaintiff asserted that communications between Defendant's indemnification counsel and Fire Suit counsel regarding the indemnification suit, which are listed on the privilege log, are not privileged because the Fire Suit counsel was never retained to defend the indemnification suit and therefore is not Defendant's counsel in this matter.

The Court disagrees. As Judge Joyner articulated in *Northwood,* the attorney-client privilege extends to communication between attorneys and their agents, so communications between the underlying litigation counsel and indemnification counsel are privileged. 161 F.R.D. at 297. Since indemnification counsel may communicate with

Bowman v. American Homecare Supply, LLC, Not Reported in F.Supp.2d (2009)
2009 WL 1873667

Fire Suit counsel as an agent, regardless of whether the Fire Suit counsel was retained in the indemnification matter, their communications remain protected by the attorney-client privilege.

### III. *Conclusion*

Based on the above analysis, the Court finds that Plaintiffs are entitled to production of certain work-product protected documents that relate specifically to counsel's mental impressions, legal opinions, and theories regarding settlement and an evaluation of the claims in the underlying Fire Suit.

An appropriate Order follows.

### *ORDER*

AND NOW, this 25th day of June, 2009, upon consideration of the parties' cross-motions for discovery, it is hereby ORDERED as follows:

(1) Defendant American Homecare Supply's Motion for a Protective Order (Doc. No. 37) is GRANTED in part as to attorney-client privileged documents and DENIED in part as to certain work-product protected documents, as explained in the accompanying Memorandum;

(2) Plaintiffs Alan and Christina Bowman's Motion to Compel (Doc. No. 40) is DENIED in part as to attorney-client privileged documents and GRANTED in part as to certain work-product protected documents that specifically discuss (1) the Fire Suit settlement amount and/or allocation and (2) counsel's evaluation of the Fire Suit claims;

(3) Plaintiffs shall provide Defendant within one week of this Order, from the privilege log, a list of the documents described in (2) that it seeks Defendant to produce; Defendant shall promptly produce those documents, or object.

(4) If after counsel confer, disputes remain over documents requested by Plaintiffs, Plaintiffs shall advise this Court by July 17, 2009, of those documents, which Plaintiffs assert should be produced. Defendant shall, by July 21, 2009, provide the Court by letter (which need not be sent to Plaintiffs' counsel) the reasons as to why each document requested by Plaintiffs should not be produced. The Court may schedule a further hearing to resolve the disputes on a document-bydocument basis.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1873667

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

3

1992 WL 55742

1992 WL 55742
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

FIRST FIDELITY BANCORPORATION, Plaintiff,
v.
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA and Financial Institutions
Reserve Risk Retention Group, Inc., Defendants.

Civ. A. No. 90–1866.
|
March 13, 1992.

**Attorneys and Law Firms**

Gary R. Battistoni, Stuart A. Law, Jr., Daniel J. Dalton, Richard E. Ruffee, Drinker, Biddle & Reath Philadelphia, Pa., for plaintiff.

Judy L. Leone, Michael F.R. Harris, Seymour Kurland, Jeffrey G. Weil, Jan P. Levine, Gerald D. Wixted, Dechert, Price & Rhoads, Philadelphia, Pa., Mark P. Denbeaux, Westwood, N.J., Nancy J. Gellman, William J. O'Brien, Conrad, O'Brien, Gellman, De Stefano & Rohn, P.C., Philadelphia, Pa., Sandra L. Spear, Washington, D.C., Joel R. Marcus, Bruce A. Baird, Robert D. Fram, David V. Gourevitch, Covington & Burling, Washington, D.C., Gary R. Battistoni, Stuart A. Law, Jr., Drinker, Biddle & Reath, Philadelphia, Pa., for defendants.

*MEMORANDUM*

ROBERT F. KELLY, District Judge.

*1 Plaintiff First Fidelity Bancorporation ("Fidelity") and defendant National Union Fire Insurance Company of Pittsburgh, PA ("National") have each filed objections to certain discovery orders entered by Magistrate Judge Hall on January 14, 1992. Fidelity objects to the Order granting National's Motion to Compel the Production of Documents, alleging that the documents are protected by the work product doctrine and attorney-client privilege ("Privileged Discovery"). National objects to the Order granting Fidelity's Motion to Compel Answers to Interrogatories and Production of Documents Concerning Bad Faith Pattern and Practice ("Pattern and Practice Discovery"), claiming that compliance is unduly burdensome. I affirm the Order granting Privileged Discovery but on somewhat different grounds, and I reverse the Order granting Pattern and Practice Discovery.

I. *BACKGROUND:*
Fidelity, its directors and its officers are insureds under a director and officer insurance policy issued by National (the "Policy")[1]. Fidelity's coverage is determined by the allocation of liability. Specifically, National is obligated to reimburse Fidelity only to the extent that Fidelity indemnifies its directors and officers, up to a limit of 25 million dollars. The Policy does not insure Fidelity for its own liability. The Policy also contains a cooperation clause, which provides that "[t]he Insurer's consent [to settlements] shall not be unreasonably withheld, but the insurer shall be entitled to full information and all particulars it may request in order to reach a decision as to reasonableness." Policy at ¶ 6. National has no duty or right to defend Fidelity.

On December 13, 1988, Fidelity issued a press release announcing its intent to add about 300 million dollars to loan loss reserves. This announcement spawned a one day drop in Fidelity's aggregate share value of over 400 million dollars. Numerous class and derivative actions followed, naming Fidelity and its directors and officers as defendants (the "underlying litigation"). Given the allocation of liability issues, Fidelity wished to position itself against National as well as against the underlying plaintiffs. This led Fidelity to obtain its own counsel in the underlying litigation, and it also set the stage for the present lawsuit. While the defendants in the underlying litigation pursued settlement, National had trouble acquiring information it requested from Fidelity. When the underlying plaintiffs' eventually made a settlement offer of 45 million dollars, Fidelity notified both National and FIRG of its belief that this represented a reasonable settlement. FIRG consented to the settlement, but National did not. Fidelity accepted the settlement and indemnified its directors and officers, and then brought this action.

Fidelity alleges that National violated the Policy and its fiduciary obligations by failing to promote a reasonable settlement of the underlying litigation, and by unreasonably refusing to consent to the settlement offer. Fidelity seeks to recover 25 million dollars under the Policy, punitive damages, costs, attorneys' fees and prejudgment interest. National has filed a cross-claim, alleging that Fidelity breached its duty under the Policy's cooperation clause to share all information.

II. *Order Granting Privileged Discovery:*

1992 WL 55742

*2 Judge Hall's Order granted National's request for essentially all documents generated in connection with the underlying litigation by Fidelity, its attorneys and third party consultants. Fidelity objected on the grounds of work product and attorney-client privilege. Judge Hall rejected the attorney-client objection because Fidelity failed to develop an adequate privilege log, and he found that Fidelity waived the work product objection by bringing this suit and therefore putting the documents at issue. Although I agree with this result, I do not believe it should be based on the sufficiency of Fidelity's privilege log since the parties' submissions dealt exclusively with Fidelity's right to assert the privilege as a matter of law.

It is clear that Fidelity has put the Privileged Discovery at issue by bringing this suit, and it has therefore waived its right to raise both work product *and* attorney-client objections. *See* National Union's Response to Fidelity's Sur-Reply at 8–18 (cases cited therein). Fidelity disputes this, arguing that the issue is not its decision to settle, but rather whether settlement was objectively reasonable given the risks of going to trial. Consequently, Fidelity claims that the only relevant discovery would consist of the events giving rise to the underlying litigation and any evidence which would have been adduced at trial had the case not settled. I agree that a primary focus of this suit is whether the settlement was objectively reasonable. However, to make this determination, all relevant information must be examined. This especially includes the information contained in the Privileged Discovery since it is extremely probative in assessing whether a reasonable person would have settled under the circumstances. Moreover, the reasonableness issue raised in this suit necessarily contains certain subjective aspects. The risks of going to trial and the reasonableness of settlement are immensely influenced by how vigorous a defense Fidelity mounted. The Privileged Discovery will also reveal whether Fidelity met its burden under the Policy to prepare a defense, and whether there was improper collusion among the interested parties.

Additionally, there is a sharp dispute over whether the Policy's cooperation clause requires disclosure of the Privileged Discovery. I find that as to the sophisticated parties involved in the present case, the Policy's language is clearly all encompassing and would normally include privileged documents, for otherwise an insurer could not reasonably assess the proposed settlement. This result is fully supported by the fact that the policy issued by FIRG specifically exempted privileged documents. Thus, the Privileged Discovery is also placed at issue by Fidelity's

allegation of compliance with the Policy's provisions, and National's cross-claim.

Fidelity has also waived its right to object by making selective disclosures of certain protected documents. The rule of law is clear. In order to protect against self-serving disclosure, a party who discloses protected documents waives the right to assert work product or attorney-client protections for all documents dealing with the same subject matter. *See* cases cited in Briefs. Fidelity has skirted National's claim of selective disclosure by merely pointing to certain "discovery compromises" it has unilaterally agreed to. Given Fidelity's failure to address the pertinent issues, I find that Fidelity has waived its right to object to the Privileged Discovery. For the reasons stated above, I affirm[2].

### III. *Order Granting Pattern and Practice Discovery:*

*3 By Order and Memorandum dated January 14, 1992, Judge Hall granted Fidelity's requests for Pattern and Practice Discovery. Balancing the extreme burden and expense required to comply with this Order with the relatively minor probative value of this discovery, I will reverse. The only relevance of the Pattern and Practice Discovery is Fidelity's hope to establish National's habit of dealing in bad faith with its insureds, and that National acted in conformity with this habit in the present case. Fed.R.Evid. 406. In this regard, National previously produced the following: (1) all pleadings since 1987 in which insureds alleged bad faith or in which bad faith was a factor; (2) approximately 75 claim files involving the same type of claims as the underlying litigation[3] ; (3) and 200 director and officer liability policies. Further, National has already produced documents totaling over 30,000 pages in response to other discovery requests.

The Order would require the *additional* production of almost 20,000 insurance policies and almost 3,000 claim files. It would take years to implement compliance at a horrendous expense. None of these files even contain bad faith actions because, as explained above, National has already produced the pleadings of such actions. Accordingly, I find that the burden and expense of this discovery clearly outweighs its relevance. This ruling is also based on the fact that at trial, the scope of this discovery request far exceeds what would be reasonably admissible under Fed.R.Evid. 406. This is especially so considering National's understandable desire to have a "mini-trial" over each and every instance of bad faith claimed by Fidelity. Thus, it is clear that the Order is also over broad. I find that the type and quantity of production to

First Fidelity Bancorporation v. National Union Fire Ins. Co...., Not Reported in...

1992 WL 55742

date draws a proper balance between discovery opportunities Fidelity genuinely deserves, and the ridiculous desires of counsel. Accordingly, I reverse.

I shall therefore issue the following order.

*ORDER*

AND NOW, this 13th day of March, 1992, upon consideration of the parties' objections and all responses thereto, it is hereby ORDERED as follows:

1. Magistrate Judge Hall's Order entered January 14, 1992 granting Fidelity's Motion to Compel is REVERSED and MODIFIED. Within 30 days of receipt of this Order, National Union shall make the 75 claim files already produced available for Fidelity's inspection and copying in complete and unredacted form. Upon compliance, National Union is deemed to have satisfied Interrogatories nos. 4, 5 and 10 and Document Requests nos. 1 and 2.

2. Magistrate Judge Hall's Order entered January 14, 1992 granting National Union's Motion to Compel is AFFIRMED although on somewhat different grounds as explained in the attached Opinion.

3. The Order directing pretrial motions in the above-captioned case to Magistrate Judge Hall is hereby VACATED, and it is FURTHER ORDERED that all future filings shall be submitted to this Court.

**All Citations**

Not Reported in F.Supp., 1992 WL 55742

Footnotes

1     Defendant Financial Institutions Reserve Risk Retention Group, Inc. ("FIRG") is an excess carrier and is not a party to the present discovery dispute.

2     This ruling makes it unnecessary to settle the complicated factual issues raised by the common interest doctrine.

3     These files were incomplete, and the parties' submissions in connection with FIRG's Second Motion to Compel and FIRG's Motion to Enlarge the Scope clearly show that the 75 files must be produced in complete and unredacted form for Fidelity.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

4

Case 1:20-cv-00292-JPW   Document 185-5   Filed 01/06/22   Page 17 of 24

Kimberly-Clark Worldwide, Inc. v. First Quality Baby..., Not Reported in...

2010 WL 4537002
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

KIMBERLY–CLARK WORLDWIDE, INC., Plaintiff

v.

FIRST QUALITY BABY PRODUCTS, LLC,
First Quality Products, Inc., First Quality
Retail Services, LLC, First Quality Hygienic,
Inc., Defendants and Counterclaim Plaintiffs

v.

Kimberly–Clark Corporation, Kimberly–
Clark Worldwide, Inc., Kimberly–Clark
Global Sales, LLC, Counterclaim Defendants.

Civil No. 1:CV–09–1685.
|
Nov. 3, 2010.

## Attorneys and Law Firms

Andrew G. Klevorn, Chad J. Doellinger, Eimer Stahl Klevorn & Solberg LLP, Janice V. Mitrius, Jason S. Shull, Jeffrey M. Cox, Katherine L. Fink, Marc S. Cooperman, Michael L. Krashin, Thomas J. Lerdal, Banner & Witcoff Ltd., Bradley F. Rademaker, Jeffrey M. Cox, Chicago, IL, Bridget E. Montgomery, Adam M. Shienvold, Eckert Seamans Cherin & Mellott, LLC, Harrisburg, PA, David J. Schertz, Harrisburg, PA, Vicki Margolis, Kimberly-Clark Corporation, Neenah, WI, for Plaintiff and Counterclaim Defendants.

Aden A. Allen, Jose C. Villarreal, Michele K. Connors, Wilson Sonsini Goodrich & Rosati, PC, Austin, TX, David A. Barrett, Boies, Schiller & Flexner LLP, Ira E. Silfin, Brian A. Comack, Kenneth P. George Amster, Rothstein & Ebenstein LLP, New York, NY, Brian P. Downey, Frederick Alcaro, Pepper Hamilton LLP, Harrisburg, PA, D. Michael Underhill, Evan A. Parke, Michael A. Brille, Boies, Schiller & Flexner LLP, Washington, DC, Julie M. Holloway, Wilson, Sonsini, Goodrich & Rosati, San Francisco, CA, Kalina V. Laleva, Michael A. Ladra, Ron E. Shulman, Thomas T. Carmack, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Thomas B. Schmidt, III, Pepper Hamilton, LLP, Harrisburg, PA, for Defendant and Counterclaim Plaintiffs.

## MEMORANDUM

MARTIN C. CARLSON, United States Magistrate Judge.

### I. Introduction

**\*1** Presently before the court is First Quality's motion to compel discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure seeking production of all test data on which Kimberly–Clark ("KC") relies to support its claims of patent infringement, and all documents that support or refute said test data. In support of its motion, First Quality argues that the testing data and related documents are not protected by the attorney-client privilege nor as attorney work product. In addition, even if a privilege applies, First Quality contends that KC waived any privilege by disclosing and relying on the information in its infringement contentions. Finally, claiming a substantial need for the materials, First Quality argues that attorney work product immunity should not apply. After review of the parties' submissions, we will deny the motion.

### II. Discussion

Rule 26(b) (1) of the Federal Rules of Civil Procedure provides that any party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." It is well settled that Rule 26 establishes a liberal discovery policy. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). As a result of this liberal discovery policy, the burden of demonstrating the existence of a privilege and that it has not been waived rests on the party asserting the privilege. *In re Grand Jury (OO–2H),* 211 F.Supp.2d 555, 557 (M.D.Pa.2001) (Judge Rambo). Likewise, the party claiming work product immunity bears the burden of showing that "the materials in question 'were prepared in the course of preparation for possible litigation.' " *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir.2000). Here, in both instances, the burden rests on KC.

Communications are protected under the attorney-client privilege when "(1) the legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived." *In re Impounded,* 241 F.3d 308, 316 n. 6 (3d Cir.2001).

Case 1:20-cv-00292-JPW   Document 185-5   Filed 01/06/22   Page 18 of 24

Kimberly-Clark Worldwide, Inc. v. First Quality Baby..., Not Reported in...

The work product doctrine, in turn, is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that:

(A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**\*2**  (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3). Generally, "voluntary disclosure to one's adversary of documents protected by the work-product privilege waives the privilege." *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir.1999) (citing *Westinghouse v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir.1991)).

The test for determining whether a document was prepared in anticipation of litigation is "where in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir.1993). Courts generally divide this test into two prongs: the documents were prepared (1) at a time when litigation was reasonably foreseeable; and (2) primarily for the purpose of litigation. *See United States v. Rockwell International*, 897 F.2d 1255, 1266 (3d Cir.1990); *see also Muse–Freeman v. Bhatti*, No. 07–3638, 2008 WL 2165147, at \*1 (D.N.J. May 21, 2008). However, the Third Circuit makes clear that the materials must be prepared in anticipation of litigation, and not in the ordinary course of business. *Id.* Otherwise, the privilege does not apply. *Id.*

Here, the testing data and related documents in question are not protected by the attorney-client privilege. As we previously indicated, KC carries the burden of showing the materials are covered by the privilege. In this instance, KC fails to sufficiently demonstrate that the testing materials in question were confidential communications between attorney and client.

Nevertheless, the materials in question are protected as attorney work product prepared in anticipation of litigation. In support of its position, KC offers the declaration of H. Michael Kubicki, counsel for KC since 2001. In his declaration, Mr. Kubicki states, under penalty of perjury, that the materials at issue were made in anticipation of litigation between KC and First Quality. In addition, the submitted privilege logs show that testing data was prepared during a time when litigation was contemplated. (*See* doc. 298.) In fact, First Quality filed its original declaratory judgment action a mere eight months after KC received its first product analysis results. *See First Quality Baby Prods., LLC v. Kimberly–Clark Worldwide, Inc.*, No. 09–0354, 2009 WL 1675088 (M.D.Pa. June 15, 2009); (doc. 298.) In light of these facts, we conclude that the information in question was prepared in anticipation of litigation. Thus, the attorney work product privilege applies to the materials.

In spite of this, we conclude that KC will be deemed to waive attorney work product protection if it relies upon and discloses the testing data at issue in support of its infringement contentions. Indeed, First Quality argues that KC has already relied on the testing data by employing the material in its preliminary infringement contentions. However, preliminary infringement contentions provide notice of the accusing party's specific infringement theories, and are not considered evidence. *Fast Memory Erase, LLC v. Spansion, Inc.*, No. 08–977, 2009 WL 4884091, at \*2 (N.D.Tex. Dec. 16, 2009). Thus, KC using testing data to put First Quality on notice is not relying on the materials as evidence in support of its infringement theories. However, like the court in *Tillotson Corporation v. Shijiazhuang Hongray Plastic Products, LTD.*, 244 F.R.D. 683, 693 (N.D.Ga.2007), we conclude that if KC relies on the testing data at issue as evidence to support its infringement claims, justice requires that First Quality has a right to the material in order to defend itself. Thus, in such a situation if KC actually relies upon this data, First Quality will have shown a substantial need for the testing information and disclosure would be required. Likewise, by voluntarily disclosing the materials in such a situation, KC would be waiving the privilege.

*III. Conclusion*

**\*3** Based on the preceding, and to the extent that KC relies on the factual information acquired from any testing, we conclude that plaintiff must disclose that information even if it requires separating mental impressions from factual information. However, we will not require KC to produce the materials in question unless it relies on that information to support its infringement claims or will use said data in the future. We will afford KC fourteen (14) days from the date of this order to determine whether it will rely on the testing data in support of its claims. If it chooses to rely on the data, KC will have ten (10) days thereafter to disclose the information to First Quality. Nonetheless, if KC chooses not to rely on the testing data and then thereafter attempts to use said data in any manner against First Quality, we will not allow such evidence to be admitted.

We will issue an appropriate order.

*ORDER*

AND NOW, this 3rd day of November, 2010, upon consideration of First Quality's motion to compel (doc. 263), and pursuant to the accompanying Memorandum, it is ordered that:

1. The motion to compel is denied.

2. Plaintiff is afforded fourteen (14) days from the date of this order to determine whether it will rely on the testing data in support of its claims and report its decision to the court.

3. If plaintiff chooses to rely on the data, it will have ten (10) days thereafter to disclose its test results to defendants.

4. Failure to comply with this order will result in mandatory disclosure, and any later attempt to rely on said testing data will not be allowed.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4537002

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

5

Lease v. Fishel, Not Reported in F.Supp.2d (2010)

2010 WL 4318833

2010 WL 4318833
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

David R. LEASE, Plaintiff
v.
Douglas FISHEL et al., Defendants.

Civil Action No. 1:07–CV–0003.
|
Oct. 22, 2010.

**Attorneys and Law Firms**

Don A. Bailey, Harrisburg, PA, Sheri D. Coover, Law Office
of Sheri D. Coover, Carlisle, PA, for Plaintiff.

Christopher P. Gerber, Eric M. Brown, Siana, Bellwoar &
Mcandrew, LLP, Chester Springs, PA, for Defendants.

*MEMORANDUM*

YVETTE KANE, Chief Judge.

**\*1** Before the Court are motions for attorneys' fees by
Defendants George Taughinbaugh ("Taughinbaugh") and
Ron Plank ("Plank") (Doc. No. 64), and for recusal of the
undersigned and Magistrate Judge Martin C. Carlson filed by
Attorney Don Bailey (Doc. No. 93). Judge Carlson has issued
a memorandum and order granting the motion for attorneys'
fees in part and denying the motion to recuse as to himself.
(Doc. Nos.105–06.) Judge Carlson's ruling is now before this
Court for review as Mr. Bailey has filed timely objections
(Doc. No. 111), which Taughinbaugh and Plank have opposed
(Doc. No. 115). For the reasons that follow, the Court will
deny the motion to recuse the undersigned and affirm Judge
Carlson's ruling on the two motions.

**I. BACKGROUND**

On October 5, 2009, the Court referred Defendant
Taughinbaugh and Defendant Plank's pending motion for
attorneys' fees to Magistrate Judge Carlson. The request
for attorneys' fees was based on this Court's finding that
attorney Don Bailey had violated Rule 11(b) of the Federal
Rules of Civil Procedure by bringing frivolous claims against
these Defendants in the original complaint.[1] (Doc. No.

63.) Upon receiving the Court's referral, Judge Carlson set
a supplemental briefing schedule to allow Mr. Bailey to
specifically dispute fees and costs claimed by Defendants.
(Doc. No. 87.) Mr. Bailey sought an extension of time
to submit this supplemental brief, which was granted.
(Doc. Nos.88–89.) After Mr. Bailey failed to submit any
supplemental response over a month past his extended
deadline, Judge Carlson issued an order directing Mr. Bailey
to show cause for the delay. (Doc. No. 90.) In lieu of a
response to Judge Carlson's order to show cause, Mr. Bailey
filed a motion for recusal of both Judge Carlson and the
undersigned. (Doc. No. 93.) In his ruling on these matters,
Judge Carlson rejected Mr. Bailey's motion for recusal as
to him and directed Mr. Bailey to pay $10,000 in attorneys'
fees for Barley–Snyder, LLC. (Doc. Nos 105–06.) Mr. Bailey
has filed an objection to Judge Carlson's order. (Doc. No.
111.) Before reviewing Judge Carlson's ruling, the Court will
address the pending motion for recusal.

**II. MOTION FOR RECUSAL**[2]

The central theme of Mr. Bailey's motion for recusal is put
forward in the first paragraph of the motion: he disagrees
with the sanctions imposed against him and believes the
Court "did not act objectively to begin with. [sic] Or at least
evidence so indicates." (Doc. No. 93 ¶ 1.) Unfortunately,
the so-called evidence of bias to which he refers is far
from clear. Mr. Bailey's first apparent piece of evidence
relates to events occurring several years ago during an
unrelated lawsuit ("Brown Lawsuit"), in which Mr. Bailey
represented the plaintiff and the undersigned was named
as a defendant. (*Id.* ¶¶ 2–8.) Mr. Bailey explains that after
deposing the undersigned, he "concluded that Judge Kane
was not responsible" and moved to dismiss the claims against
her. (*Id* .¶ 6.) Almost a decade later, on June 26, 2009, the
undersigned spoke at a continuing legal education course
regarding trial practice and advocacy in the Middle District
of Pennsylvania. (*Id* . ¶ 9.) Mr. Bailey alleges that the
undersigned improperly referred to him in some comments
made to the audience during the course. (*Id.*) Mr. Bailey
apparently did not attend the course in question, as he supports
this allegation with an attached document purporting to be a
statement authored and signed by attorney Karen R. Grigsby.
(Doc. No. 93–2, Ex. A.) According to Ms. Grigsby's account
of the course, the undersigned, in the midst of a discussion
about the benefits of cases moving faster in federal court,
referred to the Brown Lawsuit:

**\*2** [Judge Kane] began by stating to the audience that
she was sued in district court several years ago and that

Lease v. Fishel, Not Reported in F.Supp.2d (2010)

2010 WL 4318833

the case was removed to the Delaware District Court. She further stated, 'Don Bailey filed all these motions. And I had nothing to do with getting the women fired.'

(*Id.*) Ms. Grigsby further noted that she believed the remarks were made with sarcasm and that the audience laughed at the comments. (*Id.*) Mr. Bailey argues that these comments were made "to denigrate and attack Don Bailey as a lawyer in front of his colleagues, casting him in a false light." (Doc. No. 93 ¶ 9.)

Beyond the allegations related to the above comments, Mr. Bailey also relies on assertions made in another document attached to his motion. Though the document purports to be an affidavit from Andrew Ostrowski, it is unsigned and contains numerous blank spaces. (Doc. No. 93–2, Ex. B.) Mr. Ostrowski asserts in this document that, on an undisclosed date in 2009, he and Mr. Bailey had a scheduled telephone conference on an unrelated case before this Court. Mr. Ostrowski states in the document that "[w]hen Judge Kane entered the telephone conference, the first thin [sic] she said, in what can only be described a[sic] sing-songy and childish manner 'hello Mr. Bailey, how are you today.' " (*Id.*) Mr. Ostrowski goes on to comment that the undersigned "sounded like a schoolgirl" when greeting Mr. Bailey. (*Id.*)

Title 28 U.S.C. § 455(a)[3] requires that a judge must recuse "in any proceeding in which his impartiality might reasonably be questioned." The litigant seeking recusal does not need to show actual bias under this standard. *Selkridge v. United of Omaha Life Ins. Co.,* 360 F.3d 155, 167 (3d Cir.2004). Rather, "if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." *Id.* On this issue, the Supreme Court has held:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a

deep-seated favoritism or antagonism that would make fair judgment impossible.

Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

**\*3** *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Of course, a party's displeasure with legal rulings does not form an adequate basis for recusal. *Securacomm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 279 (3d Cir.2000). The Court does not find that a reasonable person, knowing all the circumstances that could be gleaned from reviewing the unsworn, incomplete, and careless submissions of counsel, would reasonably harbor doubts about the undersigned's impartiality. Though the undersigned does not recall making the purported references at the seminar in question, none of the alleged, offhanded comments display any hostility or prejudice towards Mr. Bailey.

The remainder of the fanciful assertions in support of recusal, criticizing the tone and quality of the undersigned's voice and then comparing it to that of a "schoolgirl," are utterly irrelevant. Indeed, a reasonable person could easily conclude that these assertions border on being an offensive gender-based attack designed to provoke the Court's recusal. Of course, such a strategy cannot be indulged. *See, e.g., In re United States,* 158 F.3d 26, 35 (1st Cir.1998) ("[A] judge must avoid yielding in the face of unfounded insinuations. A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex proprio vigore,* create a cloud on her impartiality."). The Court therefore finds no basis for recusal. Considering its timing and tenor, the Court has no difficulty finding that the motion was not advanced for a proper purpose, but rather to avoid expected adverse rulings in this matter. *See Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 162 (3d Cir.1993). Accordingly, the motion will be denied.

## II. REVIEW OF MAGISTRATE RULING

Judge Carlson rescinded his report and recommendation after determining that the Magistrate Act, 28 U.S.C. §

2010 WL 4318833

636(b)(1)(A), authorized him to rule on these motions directly as nondispositive matters. (Doc. No. 105 at 1 n. 1.) Despite this, Mr. Bailey titles his opposition to Judge Carlson's order as "Objections to the Magistrates Report and Recommendation." (Doc. No. 111.) While the Court can assume that Mr. Bailey disagrees that these motions present nondispositive matters, he does not appear to address the issue in his briefing. Considering the issues presented and authority cited in Judge Carlson's ruling, the Court agrees with his determination that the motions involved nondispositive issues and that a report and recommendation was not required. [4]

When a party objects to a magistrate order resolving nondispositive matters, the Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72. "A magistrate judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J.2008). A ruling is contrary to law when the magistrate judge "has misinterpreted or misapplied applicable law." *Id.*

**A. Recusal**

**\*4** In his memorandum opinion, Judge Carlson extensively reviewed Mr. Bailey's motion for recusal and concluded "the grounds for recusal posited by Mr. Bailey are untimely, expedient, procedurally flawed, and illegitimate." (Doc. No. 105 at 31.) With regard to Mr. Bailey's objections to this determination, the Court must agree with Defendants Plank and Taughinbaugh that they "deserve little response." (Doc. No. 115 at 2.) Mr. Bailey almost exclusively devotes his 23–page brief to challenging and re-characterizing the background information set out by Judge Carlson in his memorandum and by this Court in its initial order finding a violation of Rule 11(b). It suffices to say that Mr. Bailey's challenges are dubious, containing several sweeping assertions and contentions with no accompanying factual support. Most of Mr. Bailey's contentions mirror the style and substance of the allegations in his recusal motion, which Judge Carlson aptly dismissed as "legally and factually bankrupt." (Doc. No. 115 at 27.) Additionally, Mr. Bailey fails to articulate how any of his contentions undermine Judge Carlson's ruling on the motion for recusal. Indeed, Mr. Bailey does not even bother to put forward any legal standard of review or cite to any relevant authority on the issue of recusal. Accordingly, Mr. Bailey's objections will be overruled.

**B. Sanctions**

In his order, Judge Carlson found that "\$10,000 represents an appropriate fee to be imposed as a sanction in this case, based upon both the lodestar analysis, and in consideration of the equitable factors that the Third Circuit has identified as relevant to calculating attorney's fees imposed as a sanction against a lawyer found in violation of Rule 11." (Doc. No. 105 at 52.) Mr. Bailey has not addressed Judge Carlson's analysis in his objections. Mr. Bailey's only apparent reference to Judge Carlson's reasonable fee determination comes at the conclusion of his brief: "Mr. Bailey does not have the money to pay the \$10,000 sanction for the filing of a mere motion and brief." (Doc. No. 111 at 23.) As Judge Carlson explained in his opinion, a sanctioned attorney's ability to pay is a "particularly important consideration in determining an appropriate fee." (Doc. No. 105 at 36.) This is because "courts must be careful not to impose monetary sanctions so great that they are punitive—or that might even drive the sanctioned party out of practice." *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 195–96 (3d Cir.1988). Despite this, Mr. Bailey failed to raise any such defense with Judge Carlson:

> [D]espite being given numerous opportunities to do so, Mr. Bailey has never advised the Court that he is without the means of paying the legal fees claimed by defendants' counsel, or that satisfying the sanction imposed will be particularly deleterious to his practice. Indeed, Mr. Bailey has completely refused to address this matter at all, despite repeated invitations from the Court to do so.

**\*5** (Doc. No. 105 at 50.) Given no basis to find otherwise, Judge Carlson concluded that the \$10,000 sanction was within Mr. Bailey's ability to pay and was not excessive or punitive under the circumstances. (*Id.*) In his objections to Judge Carlson's ruling, Mr. Bailey has still not provided any basis to find that this sanction would be punitive in light of his ability to pay. Mr. Bailey's lone, conclusory remark on this issue at the end of his brief, much like the other assertions discussed above, is completely undeveloped. It is unaccompanied by any factual support. Having failed to raise

**Lease v. Fishel, Not Reported in F.Supp.2d (2010)**

2010 WL 4318833

this issue at all in proceedings before Judge Carlson, and now having failed to raise it meaningfully in his objections to Judge Carlson's ruling, the Court finds no basis to reduce the $10,000 sanction on the ground of an inability to pay. Further, Mr. Bailey has not raised any other objections with regard to Judge Carlson's fee calculation. Accordingly, Mr. Bailey's objections are overruled.

### III. CONCLUSION

Based on the foregoing, the Court will reject the motion for recusal and affirm Judge Carlson's memorandum and order awarding $10,000 in attorneys' fees against attorney Don Bailey. An order consistent with this memorandum will follow.

### ORDER

**AND NOW,** this 22nd day of October 2010, having reviewed the pending motions for attorneys' fees by Defendants George

Taughinbaugh and Ronald Plank (Doc. No. 64), and for recusal by attorney Don Bailey (Doc. No. 93), Magistrate Judge Martin C. Carlson's memorandum and order addressing these issues (Doc. Nos.105–06), and attorney Don Bailey's objections thereto (Doc. No. 111), and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT:**

1. The motion for recusal of the undersigned is **DENIED.** Judge Carlson's order denying the motion to recuse himself is **AFFIRMED.**

2. Judge Carlson's order granting Defendants' motion for attorneys' fees and ordering attorney Don Bailey to pay $10,000 as a sanction for his violation of Rule 11(b) is **AFFIRMED.**

### All Citations

Not Reported in F.Supp.2d, 2010 WL 4318833

### Footnotes

| | |
|---|---|
| 1 | A more complete recitation of the pertinent factual and procedural background of this case prior to referral of the case to Judge Carlson can be found in the Court's order addressing Defendants' motions to dismiss and for sanctions. (Doc. No. 63.) |
| 2 | Mr. Bailey never filed a brief in support of his motion for recusal. He filed the motion without a supporting brief on January 20, 2010. Judge Carlson subsequently directed that Mr. Bailey file a supporting brief by February 3, 2010, as required by Middle District Local Rule 7.5. (Doc. No. 95.) On the day his brief in support was due, Mr. Bailey sought an extension of this deadline. (Doc. No. 96.) After an extensive review of the motion and record in this matter, Judge Carlson denied this request. (Doc. No. 97.) Since the matter has been back before this Court, Mr. Bailey has neither requested the Court review Judge Carlson's denial of an extension nor sought leave to file a further brief arguing in support of this Court's recusal. Accordingly, the Court will rule on the motion as filed. |
| 3 | While the discussion will focus on Section 455, another statute governing recusal is 28 U.S.C. § 144, which provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein ...." While not specific about which recusal provision is at issue, the present motion is deficient under either standard. The Court agrees with Judge Carlson's determination that the motion's procedural flaws would preclude relief to the extent Mr. Bailey seeks recusal under 28 U.S.C. § 144. (*See* Doc. No. 105 at 25–26.) |
| 4 | In any event, the Court would not reach a different outcome from Judge Carlson if were it to treat these matters as dispositive under 28 U.S.C. § 636(b)(1)(B) and to conduct a *de novo* review. |