# In the United States District Court for the Middle District of Pennsylvania

|  |  |  |
|---|---|---|
| PACE-O-MATIC, INC. | ) | |
| | ) | |
| Plaintiff, | ) | [ELECTRONICALLY FILED] |
| | ) | |
| vs. | ) | Docket No. 20-292 |
| | ) | |
| ECKERT, SEAMANS, CHERIN & MELLOT, LLC | ) | JUDGE WILSON |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF OF GREENWOOD GAMING & ENTERTAINMENT, D/B/A PARX CASINO, IN SUPPORT OF ITS APPEAL PURSUANT TO L.R. 72.2

### GA BIBIKOS LLC

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for*
*Greenwood Gaming & Entertainment*
*d/b/a Parx Casino*

January 27, 2022

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   REPLY ARGUMENT............................................................................1

      A.    The Documents are protected by attorney-client privilege and work-product immunity.....................................1

            1.    The Documents are privileged........................................2

            2.    The work-product doctrine applies.................................2

      B.    Judicial estoppel does not apply. .............................................3

            1.    Parx did not make any statements, let alone any irreconcilably inconsistent statements, that would justify the sanction of judicial estoppel..........................3

            2.    Parx is not bound by allegedly inconsistent statements made by lawyers in other proceedings........5

            3.    Conclusory statements about "bad faith" are not "facts" and certainly not sufficient to impose the judicial-estoppel sanction on Parx.................................8

      C.    The crime-fraud exception does not apply. ...........................11

III.  CONCLUSION....................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972)..................6

*In re Conrad's Estate*, 3 A.2d 697, 699 (Pa. 1938) .....................................6

*In re Kasbee*, 466 B.R. 719, 723 (Bankr. W.D. Pa. 2010) .........................7

*Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681 (W.D. Pa. 2011)................................................................................................6

*States v. Zolin*, 491 U.S. 554, 562–63 (1989) ..........................................12

**Rules**

Local Rule 72.2 .......................................................................................3

## I. INTRODUCTION

Greenwood Gaming & Entertainment, d/b/a Parx Casino ("Parx"), files its reply brief in support of its appeal of the order and opinion of Magistrate Judge Saporito, Jr., following remand which denied motions of Parx; Eckert, Seamans, Cherin & Mellot, LLC ("Eckert"); Hawke McKeon & Sniscak ("HMS") to quash subpoenas issued by Pace-O-Matic, Inc. ("POM") and/or for a protective order in the above matter.

## II. REPLY ARGUMENT

Parx's opening brief adequately disposes of virtually all of POM's misguided legal and factual arguments. Parx submits this short reply to address several points.

### A. *The Documents are protected by attorney-client privilege and work-product immunity.*

At the outset, POM argues in a footnote that the magistrate judge never concluded that the Documents are protected by attorney-client privilege. *See* POM Op. Br. at 10, n.6.  POM also argues that the parties did not challenge the magistrate judge's determination regarding work-product protection.  POM is wrong.

### 1. The Documents are privileged.

If, as POM suggests, the magistrate judge concluded that the Documents are not privileged, query, then, why he *sua sponte* raised and applied judicial estoppel at all.

Recall that POM never raised judicial estoppel as a basis to order the disclosure of the Documents. The magistrate judge raised and applied that doctrine in his initial order that the Court remanded for failing to give parties an opportunity to address its application. The magistrate judge then doubled down after remand and additional briefing on the doctrine of judicial estoppel. If, as POM suggests, the magistrate judge concluded that the Documents are not protected by privilege, he could have denied the motions to quash or for protective order on that basis on two separate occasions without invoking judicial estoppel. He did not.

Accordingly, the magistrate judge had to have concluded that the Documents are privileged. The Court should reject POM's suggestion that the magistrate judge ever concluded otherwise.

### 2. The work-product doctrine applies.

POM argues that Parx, Eckert, and HMS waived any argument that the work-product doctrine protects the Documents from disclosure by forgoing an appeal of that ruling. POM is wrong for three reasons.

- First, if the Court agrees (as it should) that the attorney-client privilege applies to the Documents and the magistrate judge erred by using judicial estoppel to circumvent the privilege, the application of the work-product doctrine to protect those documents is moot.

- Second, the magistrate judge applied the judicial-estoppel rationale to circumvent the application of the work-product doctrine as well such that the issue is fairly subsumed within the issue presented by Parx in this appeal.

- Third, the District Court has the inherent authority to resolve any issue decided by the magistrate judge under Local Rule 72.2 ("The judge may also reconsider *sua sponte* any matter determined by a magistrate judge under this rule.").

Accordingly, the Court should reject POM's arguments that the work-product doctrine does not protect the Documents from disclosure.

## B.    *Judicial estoppel does not apply.*

POM argues throughout its brief that judicial estoppel applies because *Parx* made irreconcilably inconsistent statements or took irreconcilably inconsistent positions regarding the Parx/Eckert attorney-client relationship. POM is wrong.

### 1.    **Parx did not make any statements, let alone any irreconcilably inconsistent statements, that would justify the sanction of judicial estoppel.**

First, Parx has not taken any position on the merits of Eckert's defense to POM's claims in this litigation from which the alleged inconsistency arises. Parx was not involved in this matter until POM sent

Parx a subpoena. Parx is a non-party in this case compelled by subpoena to appear and defend against the Court's disclosure of Parx's privileged communications with two law firms with which Parx has longstanding relationships. Parx fully acknowledged Eckert's representation of Parx and other casinos in state cases and certainly never represented to this Court anything to the contrary, let alone in an effort to play "fast and loose" with or trick the court in to thinking otherwise. *See* Parx Briefs (Docs. 49, 60, 76, 84) and Tr. 43-47, 56-57.

Second, both POM and the magistrate judge – by necessity – rely almost exclusively on alleged inconsistent statements made by Eckert or HMS about their representation of Parx in other proceedings to justify the application of judicial estoppel and thereby order Parx's lawyers to disclosure Parx's privileged communications. It makes absolutely no difference here what Parx through its counsel did or did not represent in papers filed in Commonwealth Court. The only question here is whether *Parx engaged in behavior toward this Court* to justify an order compelling the disclosure of Parx's privileged communications based on judicial estoppel. As discussed in Parx's opening brief and throughout this reply, the answer indisputably is no.

4

In the end, there is nothing other than the mere *ipse dixit* of POM's counsel suggesting that Parx adopted allegedly inconsistent statements of Eckert or HMS. Certainly, the *ipse dixit* of counsel in a brief is insufficient to support a conclusion that Parx engaged in bad faith with the intent to mislead the Court into thinking the attorney-client privilege should apply here while allegedly disavowing a Parx/Eckert attorney-client relationship in Commonwealth Court.

**2. Parx is not bound by allegedly inconsistent statements made by lawyers in other proceedings.**

Even if Eckert or HMS allegedly made inconsistent statements, a point that Parx disputes for the reasons identified in its opening brief, Parx is not and should not be vicariously liable for any such statements.

At the outset, there is no authority cited anywhere in POM's brief or otherwise to ascribe upon Parx allegedly inconsistent statements made by others for purposes of judicial estoppel. As Parx pointed out in its opening brief at pages 15-17, the case law suggests the opposite: judicial estoppel does not apply based on the alleged bad-faith conduct of others. *See, e.g.*, *Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681 (W.D. Pa. 2011) (declining to apply judicial estoppel against trustee for debtor's bad-faith omission of claim in bankruptcy).

POM argues, nevertheless, that Parx is somehow bound by in this proceeding in which Parx is not a party based on statements of HMS or Eckert, citing *In re Conrad's Estate*, 3 A.2d 697, 699 (Pa. 1938), for that proposition. But POM misunderstands the law.

Leaving aside the fact that *Conrad's Estate* involved a question of whether a lawyer's letter constituted proper evidence against the client (the court held it did not bind the client), POM omits the fact that the court in *Conrad's Estate* concluded that not all statements of a lawyer about a client are binding on the client.

These so-called judicial admissions rarely occur and only ever occur if a lawyer makes unequivocal statements on the client's behalf in the proceeding in which the lawyer represents the client. *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) (judicial admissions must be "unequivocal" and only binding "for the purpose o*f the case in which the admissions are made*") (emphasis added).

Here, there is no way Parx could have made any judicial admission in this proceeding based on statements of Eckert or HMS. Parx is not a party in this proceeding. Neither Eckert nor HMS represent Parx *in this Court* as a third-party recipient of a subpoena in this Court. Neither

Eckert nor HMS have made any statements *in this proceeding* as lawyers for Parx as a third party. The alleged inconsistent statements made by Eckert or HMS – whether made here or elsewhere – are not judicial admissions of Parx *in this case* and therefore cannot be attributed to Parx for purposes of judicial estoppel or otherwise.

In any event, Eckert, HMS, and Parx repeatedly have explained any perceived inconsistency in statements. The Court must give due weight to a party's explanation and resolve doubts against a judicial admission. *See, e.g.*, *In re Kasbee*, 466 B.R. 719, 723 (Bankr. W.D. Pa. 2010) ("[W]hen a party making a judicial admission subsequently provides a timely explanation as to the error, the trial court must accord the explanation due weight.").

Here, neither POM nor the magistrate judge have accepted "yes" as the repeated answer to the question of whether Eckert represents Parx in Commonwealth Court. At oral argument, Parx, Eckert, and HMS all made it clear to the magistrate judge that Eckert has long represented Parx and assisted Parx in the litigation pending in Commonwealth Court despite not having entered an appearance as counsel of record. In addition, counsel for Eckert in particular explained that Eckert produced

non-privileged documents demonstrating Eckert's involvement in Commonwealth Court on behalf of Parx and other casinos and that there is "no question" Eckert assisted Parx in that court. *See* Tr. at 30-40.

Although POM and the magistrate judge incorrectly consider the distinction irrelevant, counsel repeatedly explained the distinction between entering a formal appearance on behalf of Parx in the case *versus* being part of a team of lawyers representing Parx in casino-related matters both on the policy and law side of the issue, including advice on positions favorable to all casinos (not just Parx) in Commonwealth Court. *See* Tr. at 30-40.

In short, counsel explained any perceived inconsistency in statements in pleadings and joint case-management plan and elsewhere. That explanation is entitled to weight and militates against a judicial admission for purposes of judicially estopping Parx from asserting its privilege and protecting the Documents from disclosure to POM.

### 3. Conclusory statements about "bad faith" are not "facts" and certainly not sufficient to impose the judicial-estoppel sanction on Parx.

In an effort to show "bad faith," POM cherry picks conclusory statements from the magistrate judge's opinion that Eckert

"quarterbacked" the effort in Commonwealth Court and created "clear and obviously intentional subterfuge" to "conceal" Eckert's role there and passes off these inflammatory statements as "findings" that *Parx* somehow engaged in bad faith. *See* POM Opp. Br. at 10, 13. Likewise, POM repeats unsupported statements that Parx is "profiting by the deception"; is "not an innocent non-party"; "knowingly downplayed Eckert's role in Commonwealth Court litigation"; was "aware of and participated in the subterfuge"; and played "fast and loose with the court … over and over again." *See id.* at 16 n.13, 17 & n.15, and 18 n.16.

But there is no evidence that *Parx* engaged in this sort of behavior, notably proven by the fact that POM has not identified any such conduct by Parx, has chosen instead to rely on the magistrate judge's conclusory statements, make unsupported assertions, and nominally attribute to Parx the alleged bad acts of HMS and Eckert by lumping all three together. Contrary to what POM would have the Court believe, the extent of Parx's involvement in this case is limited and surely does not match the more colorful renditions of POM and the magistrate judge.

Parx's participation in this case is unremarkable. Parx received a subpoena in June 2020 calling for communications between Parx and

Eckert. Parx lodged objections based on privilege. Parx produced a privilege log. Parx briefed the privilege, work-product, and other legal issues involved in this discovery dispute. Parx argued before the Court and submitted documents for *in camera* review as requested. The magistrate judge then quashed the subpoena directed to Parx.

Simply put, there is no bad faith here. There is no outrageous conduct here. There is no effort to deceive a sitting magistrate judge or a district judge or anyone else. The suggestion is absurd and offensive. Parx has always maintained that it has a longstanding relationship with Eckert and Eckert assisted Parx and other casinos as part of the team that represented their interests in Commonwealth Court while HMS served as counsel of record.

By contrast, POM by necessity knew about the Eckert/Parx relationship before it filed its complaint given that POM's entire case on the merits rests on the assumption that Eckert represented Parx in matters in which Parx and POM had interests adverse to one another. Query, then, whether POM is playing "fast and loose" with the Court by (on one hand) feigning ignorance of Eckert's representation of Parx in matters in which Parx and POM have adverse interests while (on the

other) basing its entire claim on Eckert's representation of Parx in matters in which Parx and POM have adverse interests.

Ironically, POM is engaging in bad-faith conduct. At every turn, POM weaponizes anything that the magistrate judge says in this case to curry favor with and gain advantage in the Commonwealth Court litigation. POM recently submitted the magistrate judge's opinion to the Commonwealth Court (on which the judge there purported to rely) even though this Court on appeal has yet to address the conclusions of the magistrate judge in an opinion that is neither final nor binding on this Court or on any other court in the country. This is not the first time POM has used this proceeding in an attempt to gain advantages in other proceedings. *See* Doc. 110 (Parx Reply Brief, First Appeal, at 10-11).

Accordingly, the Court should reject the conclusory statements that Parx engaged in any bad faith because there is no indication whatsoever that Parx engaged in any such behavior towards this Court.

### C.    *The crime-fraud exception does not apply.*

In a final act of desperation, POM raises for the first time in a reply brief the "crime-fraud" exception as a basis for this Court to order the disclosure of the Documents.

11

First, POM never raised any crime-fraud exception to privilege in its motions to compel (or in responses to motions to quash or for protective order). At a minimum, POM as the moving party had the obligation to raise that exception as a basis for disclosure during the extensive briefing in this case. In short, POM waived that argument, the magistrate judge never considered it, and this Court should reject it outright without further analysis.

In any event, the crime-fraud exception does not apply unless a party asserting privilege is committing or about to commit a crime or fraud and seeks out the attorney's advice to further that conduct. *United States v. Zolin*, 491 U.S. 554, 562–63 (1989) (observing that the attorney-client privilege "ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing"). The question here would be whether the Documents show that Parx intended to commit a fraud upon the magistrate judge or this Court, sought out Eckert and HMS for advice on how to do that, and then invoked the privilege to protect the Documents from disclosure. That is simply impossible.

The Documents predate this litigation, including the allegations of bad faith *sua sponte* invoked by the magistrate judge.  The Documents have nothing to do with this litigation.  Yet, POM would have the Court believe that Parx embarked on a scheme to defraud the magistrate judge and this Court – *before* Parx even knew about the case or got involved – and then sought out the advice of Eckert or HMS to perpetrate that allege fraud in response to POM's subpoena for the Documents. The allegation of fraud upon the magistrate judge or this Court is as preposterous as raising the crime-fraud exception in this case.

Accordingly, the Court should reject POM's argument that the crime-fraud exception somehow applies in this case.

## III. CONCLUSION

WHEREFORE, the Court should grant the appeal, reverse and vacate the magistrate judge's opinion and order, and order such other and further relief as the Court deems necessary or appropriate.

January 27, 2022

Respectfully submitted,

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment d/b/a Parx Casino*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that counsel and the magistrate judge will be served automatically.

/s George A. Bibikos
George A. Bibikos

**WORD-COUNT CERTIFICATION**

Pursuant to L.R. 7.8, I hereby certify that the foregoing document contains 2,923 words based on the word-count feature of Microsoft Word.

/s George A. Bibikos
George A. Bibikos