# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff | : | No. 1:20-cv-00292 |
| | : | |
| v. | : | (Judge Jennifer P. Wilson) |
| | : | (Magistrate Judge Joseph F. Saporito, |
| ECKERT SEAMANS CHERIN & | : | Jr.) |
| MELLOTT, LLC, | : | |
| | : | |
| Defendant. | : | Electronically Filed Document |

## HAWKE MCKEON & SNISCAK, LLP's
## REPLY BRIEF IN SUPPORT OF
## STATEMENT OF APPEAL

### (From November 16, 2021 Memorandum and Order)

Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon &*
*Sniscak, LLP*

1

**TABLE OF CONTENTS**

I.     **INTRODUCTION AND SUMMARY** .......................................................4

II.    **ARGUMENT: JUDICIAL ESTOPPEL IS INAPPLICABLE**................5

      A.     Eckert, HMS and Parx did not adopt irreconcilable positions. ...........6

      B.     There was no bad faith........................................................................8

      C.     The reversable errors are manifest. ...................................................9

      D.     HMS's appeal includes the application of
           the work-product doctrine.................................................................11

      E.     The Crime Fraud Exception does not apply and was waived. ..........11

III.   **CONCLUSION** ..............................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
   586 F.3d 247 (3d Cir. 2009) ........................................................................... 9, 10

*MD Mall Associates, LLC v. CSX Transp., Inc.*,
   715 F.3d 479 (3d Cir. 2013) ...............................................................................9

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)........................................................................................ 9, 10

**Rules**

Fed. R. Civ. P. 72(a)............................................................................................4

Middle District Local Rule 72.2..........................................................................11

## I.    INTRODUCTION AND SUMMARY

Hawke McKeon & Sniscak, LLP (HMS) files this reply brief to plaintiff Pace-O-Matic, Inc.'s (POM) brief in opposition to HMS's appeal (Doc. 185).

Magistrate Judge Saporito's conclusion in the November 16 Memorandum (Doc. 166), that HMS must disclose the privileged information of its client Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino (Parx), based on the doctrine of judicial estoppel, is clearly erroneous and contrary to law, as set forth in detail in HMS's opening brief. (Doc. 173). POM's answering brief contributes nothing beyond inflammatory descriptions to support the November 16 Memorandum's unsupported conclusion that any of the elements of judicial estoppel are present here. For example, POM's characterization of email and text discussions among the lawyer group representing Parx and the other casinos seeking to intervene in the Commonwealth Court litigation as "incriminating documents" (Doc 185 at 5) is but one example of many of its arguments being based as much in histrionics as in history.

Before addressing the specifics of POM's erroneous argument that Magistrate Judge Saporito properly invoked judicial estoppel, POM's assertion that the November 16 Memorandum was a "fact-based decision" that is "undeniably correct and should be affirmed" (Doc 185 at 11) requires rebuttal. As explained below, the November 16 Memorandum's factual findings are based on suppositions of alleged motivations and the misreading of plain statements of objective fact. In addition, POM again repeats

the raft of allegations against Eckert from POM's complaint, most of which are irrelevant to the specific issues in this appeal, and which are included merely to smear Eckert and by association HMS and Parx. The only factual issue here related to HMS is whether HMS attempted to fool either this court or the Commonwealth Court about Eckert's role in the Commonwealth Court litigation. The answer, unequivocally, is no.

## II.   ARGUMENT: JUDICIAL ESTOPPEL IS INAPPLICABLE

As explained in HMS's opening brief (Doc 173 at 11-21), none of the elements of judicial estoppel are present here: the statements HMS made in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx[1] are not inconsistent with Eckert's statements to this court as to whether Eckert has an attorney-client relationship with Parx; even if the positions taken on the issue by Eckert could be deemed inconsistent and attributed to HMS, Eckert has not prevailed on either; neither HMS' positions nor Eckert's positions, even if deemed inconsistent, were taken in bad faith; and POM will not be harmed if the privilege is sustained. Magistrate Judge

---

[1] To move the Commonwealth Court litigation forward, Mr. McKeon on December 13, 2021 filed praecipes to withdraw his appearance on behalf of the proposed casino intervenors including Parx and indicated therein that the undersigned was remaining in the cases only because the application to disqualify was still pending. By order dated January 11, 2022, the presiding judge: 1) denied POM's application to disqualify Mr. McKeon from representing the proposed casino intervenors as moot; 2) directed that the undersigned and HMS withdraw their appearances as counsel for the proposed intervenors; 3) struck the proposed casino intervenors' amicus briefs filed December 18, 2019; and, 4) struck the proposed casino intervenors' applications for intervention and supporting briefs without prejudice to them submitting new applications to intervene, prepared by counsel without a conflict of interest as described by Judge Saporito in his November 16, 2021 decision. A true and correct copy of the January 11, 2022 Order is attached hereto as **Exhibit A**.

Saporito's conclusions to the contrary are an abuse of discretion, clearly erroneous and contrary to law.

### A.     Eckert, HMS and Parx did not adopt irreconcilable positions.

HMS's representations to both this court and to Commonwealth Court have been both internally consistent and entirely consistent with Eckert's representations to this court. POM counters as before that HMS "misrepresented" because it described HMS's role in the Commonwealth Court litigation as "conflict counsel" when in fact Eckert remained involved as part of the casino lawyer group. But as HMS has previously explained, (Doc. 85), the references to "conflict counsel," while perhaps technically imprecise, were meant only to convey the general idea that Eckert chose to not be a signatory to the amicus brief because of its awareness of POM's allegation of a conflict, resulting in a larger litigation role for HMS.

POM next relies on a quoted snippet from Doc. 82 that "Eckert is not counsel in this case" (the full sentence from the cited pleading filed in response to POM's application to disqualify HMS in the Commonwealth Court is "Admitted that Eckert is not counsel in this case." [Doc. 82 at 57]), in support of Magistrate Judge Saporito's conclusion that HMS "implicitly represented that Eckert played no substantial role in Parx's activities in [the Commonwealth Court litigation]." (Doc. 185 at 13-14). HMS demonstrated in its opening brief that this "implicit representation" inference is unsupported and unsupportable. (Doc. 173 at 13-17). Any reasoned reading of the cited

statement in context, along with the numerous other statements in HMS's pleading and supporting declarations in response to POM's application to disqualify (Doc. 82 at 159-229) reveals that HMS was forthright about Eckert's involvement. As just one example, Mr. McKeon's declaration supporting HMS's answer to POM's application to disqualify openly acknowledged Eckert's substantial involvement in the casino lawyer group before and after HMS and Ballard filed the amicus brief:

> 10.    Although Eckert did not sign the amicus brief, Mr. Stewart and Eckert continued to believe that Eckert had a valid conflict waiver from POM, and **Eckert continued to participate in the casino group** that was addressing POM's illegal slot machines in Pennsylvania, and continued to be involved in the casino lawyer group, **including creating first drafts of filings or editing the first drafts of documents created by other casino group lawyers** for use in this case.

> 11.    Contrary to POM's representations in its Application, Eckert did not act as my puppeteer in my representation of the Casino Intervenors in this case. I was involved in helping to draft the document that became the amicus brief; I was solely responsible for preparing for and presenting the arguments offered at the preliminary injunction hearing on behalf of the Casino Intervenors (although I welcomed comments from the team of casino lawyers), and I participated in the drafting, research and editing of every document I filed on behalf of the Casino Intervenors. **Eckert lawyers produced first drafts of some of the documents, I produced others, but I was involved with all**; nothing was filed without my review, input, editing and approval.

(Doc. 82 at 176)(emphasis added).

7

**B.    There was no bad faith.**

HMS comprehensively rebutted Magistrate Judge Saporito's erroneous conclusion that representations to this court and to Commonwealth Court were made in bad faith in its opening brief (Doc. 173 at. 18-21). POM now argues in support of Magistrate Judge Saporito's suppositions that HMS acted in bad faith because it assisted Eckert in "[d]eliberately circumventing the prohibition against conflicts of interest" and then "lying to the court about that circumvention." (Doc. 185 at 15). However, both POM and the Magistrate Judge have consistently ignored the salient fact (Doc. 82 at 164 Para. 10) that at the time HMS filed the Commonwealth Court amicus brief in December 2019, Eckert reasonably believed, and represented to HMS, that it had the requisite waivers from POM to remain involved in the casino group that was adverse to POM. It was not until the September 2020 deposition of former Eckert lawyer Lisk (who represented POM in the Commonwealth of Virginia) that Eckert learned for certain that Lisk had failed to obtain the waivers. Following the Lisk deposition Eckert ceased participating in the lawyer group advising the casinos, including Parx. As such, allegations of bad faith lack support in the record.

For the same reasons, POM's assertion that "no lesser sanction [than forcing Eckert and HMS to turn over Parx's privileged documents] will remedy the affront to the court" is inapposite; no such affront occurred under any reasonable reading of the statements at issue.

### C.   The reversable errors are manifest.

HMS explained in its opening brief that Magistrate Judge Saporito misapplied judicial estoppel. None of the elements of judicial estoppel are present here, and Magistrate Judge Saporito's conclusion to the contrary is factually unsupported, an abuse of discretion, clearly erroneous, and contrary to law. POM has adopted "fast and loose" as its mantra, perhaps hoping that if it says it often enough it will become true. HMS's opening brief establishes that Eckert, HMS and Parx were straightforward with the tribunals involved regarding their respective roles. Put simply, neither Eckert nor HMS have attempted to fool this court or the Commonwealth Court concerning the period of Eckert's ongoing involvement as part of the casino lawyer group in the Commonwealth Court litigation, and the scope of that involvement.

POM also mischaracterizes the law (and HMS's position) regarding the necessity that an inconsistent position be adopted by a court before judicial estoppel can be applied. The law in this circuit is that "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings,Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009). Thus, "courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *MD Mall Associates, LLC v. CSX Transp., Inc.*, 715 F.3d 479, 487 (3d Cir. 2013) *quoting New Hampshire v. Maine*, 532 U.S. 742, 750

(2001) (internal quotation marks omitted). "Because judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase,' *id*. at 749, 121 S.Ct. 1808 (internal quotation marks omitted), '[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity,' *id.* at 750–51, 121 S.Ct. 1808 (citation and internal quotation marks omitted)." *Id*.

POM further mischaracterizes HMS as "expressly acknowledge[ing]" that the above rubric does not exist.  As stated in its opening brief, (Doc. 173 at 12) while HMS recognizes that there are circumstances where the application of judicial estoppel is appropriate to guard judicial integrity regardless of a party's success in persuading a court to accept previously an inconsistent position, the threat to judicial integrity perceived by Magistrate Judge Saporito lacks a basis in fact and therefore application of judicial estoppel is contrary to law and an abuse of discretion.

POM next attempts to argue (Doc. 185 at n. 13) that *G-I Holdings* applies only to inconsistent legal positions and that HMS, Eckert and Parx instead made inconsistent factual statements regarding Eckert's involvement in the Commonwealth Court litigation. Again, HMS has effectively rebutted the inconsistent statement argument at length in its opening brief. POM subsequently repeats the canard that HMS made inconsistent statements regarding Eckert's involvement in the

10

Commonwealth Court litigation (Doc. 185 at 17) to argue that Parx, Eckert and HMS are barred from asserting privilege as a defense. It is no truer here than the myriad other times POM (and Magistrate Judge Saporito) makes the assertion.

### D. HMS's appeal includes the application of the work-product doctrine.

HMS's appeals of the November 16 Memorandum and its briefs are sufficiently broad in assertions of privilege to cover the work product doctrine. Moreover, Middle District Local Rule 72.2 provides that this court may review any non-dispositive order of a magistrate judge in a case in which the magistrate is not presiding: "A judge of the court shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. The judge may also reconsider *sua sponte* any matter determined by a magistrate judge under this rule." As such, the work product doctrine is at issue here.

### E. The Crime Fraud Exception does not apply and was waived.

POM's concluding argument asserting the crime fraud exception as an independent basis to support Magistrate Judge Saporito's result is meritless. Even if evidence in the record established a fraud on the court (which it does not), POM failed to raise this issue before Magistrate Judge Saporito and it is not discussed in the November 16 Memorandum. As such, it is waived.

## III.    CONCLUSION

HMS respectfully requests that the court reverse the November 16, 2021 order finding that judicial estoppel applies and direct that HMS is not required to produce the associated documents that Paragraph 2 of the Order directs HMS to produce.

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841
dawhitaker@hmslegal.com

*Counsel for Hawke McKeon & Sniscak LLP*

Dated: January 27, 2022

12

## CERTIFICATE OF SERVICE

I hereby certify that, on January 27, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the Middle District of Pennsylvania by using the ECF system. Pursuant to LR 5.7, participants in the case who are registered ECF users will be served by the ECF system.

*/s/ Dennis A. Whitaker*