# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                  :
                                     :
            **Plaintiff,**           :
                                     :
     v.                              :        **NO. 20-CV-292**
                                     :
ECKERT, SEAMANS, CHERIN & :          **JUDGE WILSON**
MELLOTT, LLC, MARK S.                :
STEWART and KEVIN M.                 :
SKJOLDAL,                            :
                                     :        **ELECTRONICALLY FILED**
            **Defendants.**          :

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE BRIEF SUR REPLY IN FURTHER OPPOSITION TO APPEALS FROM MAGISTRATE JUDGE DECISION

Nearly two years after Defendant Eckert Seamans Cherin & Mellott, LLC ("Eckert")[1] represented to this Court that it was not counsel in or involved in litigation adverse to Plaintiff Pace-O-Matic, Inc. ("POM"), ECF 9, ¶ 18 & Seventeenth Defense; ECF 21, p.2, and after the Honorable Joseph F. Saporito, Jr. twice determined that Eckert's denials were in bad faith and evidenced intent "to play fast and loose with the courts," ECF 166 at 29; ECF 87 at 37-38, Eckert produced an additional ten thousand pages of email communications that expose

---

[1] For convenience, Defendants Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart and Kevin M. Skjoldal are referred to collectively herein as "Eckert," unless otherwise specifically noted.

and confirm its indefensible involvement in a litigation and public relations campaign expressly designed to destroy POM's—its own client's—business. Appellants argue that the damning new evidence should not be considered in relation to the appeals from Judge Saporito's decision because the evidence is relevant to liability only and the request to supplement the record is too late and procedurally flawed.  ECF 199, 200.  Appellants are wrong on all points.  The new evidence of Eckert's implementation of the "skills game initiative" and "PR campaign"—while plainly relevant to liability—is also directly relevant to the assertion of privilege and therefore to application of judicial estoppel and this Court has authority to consider new evidence not previously available to POM.

While the clearly erroneous standard generally precludes consideration of evidence not considered by a magistrate judge in an appeal on a non-dispositive matter, *see Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992), district courts retain discretion to revise an interlocutory ruling at any time, Fed. R. Civ. P. 54(b), and such discretion is properly exercised to consider new evidence not available when a ruling was made, *see generally Max's Seafood Café, by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration appropriate due to "availability of new evidence that was not available when the court granted the motion. . ."). Further, there is authority in this Circuit for supplementing the record. *See, e.g., de la Cruz v. Virgin Islands Water & Power Auth.*, No. 1:07-CV-

9, 2012 WL 1648318, at *4 n.2 (D.V.I. May 8, 2012) ("we shall not be so doctrinaire as to refuse to consider" new evidence in motion to supplement record on appeal from magistrate judge) (Jones, J.), *aff'd*, 597 F. App'x 83 (3d Cir. 2014).[2]  Further, POM's motion was procedurally compliant.  Appellants complain that the motion was filed hours after their concurrence was sought, but they have not concurred and therefore the motion remains disputed.

By way of background, the emails attached to POM's proposed Sur Reply as Exhibits A-F were first produced on January 28, 2022, one day after briefing on the appeals concluded.[3]  The new emails show that, while Eckert was representing POM, it was developing, coordinating and leading a broad-based effort by various casino interests to destroy POM's business.  In brazen emails sent to non-client casinos in July and August 2019—while Eckert was representing POM— Defendant Mark S. Stewart, the co-chair of Eckert's gaming practice, announced

---

[2]  Pursuant to L.R. 7.8(a), the unpublished decisions cited herein are reproduced in the attached Appendix.

[3]  Certain emails should have been produced long ago.  On April 7, 2020, POM served its first request for production of documents seeking, *inter alia*, all communications involving Eckert and any other person or entity concerning the Commonwealth Court litigation.  *See* First Request for Prod. of Docs. ¶ 2 (ECF 51-6).  As just one example, the email dated March 18, 2019 from a government relations consultant to Mr. Stewart and the Chairman of Parx Casino and others specifically references "the Commonwealth Court cases."  *See* March 18, 2019 email at 4:19 pm (attached to proposed Sur Reply as Exhibit F).  It should have been produced in 2020.

"a skill games initiative . . . being undertaken by some of the casinos in PA." *See* August 28, 2019 email at 9:54 am (attached to proposed Sur Reply as Exhibit A); July 31, 2019 email at 5:05 pm (attached to proposed Sur Reply as Exhibit B).

Mr. Stewart explained that "the idea was developed for PA casinos (or at least a group of them) to launch a coordinated litigation strike on the same day against a significant number of establishments hosting skill games across the state." *See* August 28, 2019 email at 9:54 am. Admittedly, the intent was not to pursue legitimate legal objectives, but rather to "put PA Skill[4] on the defensive, having to run around the state, spend money, and dedicate time and personnel resources to defending the numerous suits on behalf of their clients," to "draw public and political attention" to the issue of the legality of the machines and to "give businesses we don't sue pause about keeping their machines and . . . chill the desire of businesses who don't have them from getting them. . . ." *Id.* Mr. Stewart wrote that Appellant Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx Casino") and another casino "are currently working on this effort, and three other operators are considering it" and offered to send "[a] template complaint"[5]

---

[4]  "PA Skill" is the name under which POM games are distributed.

[5]  The "template complaint" referenced in the email is believed to be the same complaint filed by Eckert in Pennsylvania county courts seeking a judicial declaration that POM's games constitute a public nuisance. *See*, *e.g.*, Am. Compl. (ECF 145) ¶¶ 20-21.

that the casinos could use to initiate legal actions against entities that offer skill games.  *Id.*  With regard to a third named casino, Mr. Stewart suggested in a later email in the same chain that "they could be the plaintiff and we could just handle it for them."  *See* August 28, 2019 email at 9:56 am.

The "skill games initiative" ramped up in the fall of 2019 when Parx Casino retained a public relations consultant "to assist with a PR effort on skill games."  *See* November 18, 2019 email at 1:48 pm (attached to proposed Sur Reply as Exhibit C).  Mr. Stewart wrote the following about the "skill games initiative": "This is something that we need to get all of those casinos who are going to engage more fully to get on."  *Id.*

In December 2019, Eckert interjected itself into litigation commenced by POM in Pennsylvania Commonwealth Court seeking declaratory relief confirming the legality of POM's skill games.  On December 16, 2019, Mr. Stewart proposed to a government relations consultant and representatives of a non-client casino that "we may have an opportunity to file an amicus brief in support of the Commonwealth . . . .  I believe that Parx [Casino] will be doing so.  Would you be open to joining in that filing?  We think it would be helpful to have more than one casino on the filing."  *See* December 16, 2019 email at 10:15 am (attached to

proposed Sur Reply as Exhibit D).[6]  In the same email chain, the government

relations consultant claimed credit for himself and Mr. Stewart for causing the

Pennsylvania State Police to seize POM games earlier that week.  *See* December

14, 2019 email at 9:04 am.  The *amicus* brief, which Judge Saporito found was

"*wholly authored*" by Eckert but filed under the name Hawke McKeon & Sniscak,

LLP, ECF 166 at 22, a "clear and obviously intentional subterfuge," *id*. at 29, was

in opposition to POM's then-pending motion for a preliminary injunction to enjoin

further seizure of its games.

In other words, Eckert covertly incited the State Police's seizure of POM's

games and, while still acting covertly, Eckert "*quarterbacked*," *inter alia*, the

opposition to POM's motion for injunctive relief challenging the seizures, ECF

166 at 22.  Then, in this litigation, Eckert falsely professed non-involvement in the

Commonwealth Court litigation while attempting to shield its conduct by a

pretextual assertion of privilege.  Playing "fast and loose with the courts" barely

begins to describe Eckert's conduct in these proceedings.

---

[6]  The "amicus brief" referenced in the email is the brief that Eckert prepared and Hawke McKeon & Sniscak, LLP filed on December 18, 2019.  *See* Am. Compl. ¶ 46.  With regard to the filing, Judge Saporito found that "the amicus brief itself was, in essence, *wholly authored* by Stewart and other Eckert attorneys, with minimal substantive input from McKeon or any other non-Eckert attorneys, and it was Stewart who coordinated the entire effort . . . ."  ECF 166 at 22-23.

The financial terms of the casinos' shared participation in the "PR campaign" were outlined in an email from the Chairman of Parx Casino on February 12, 2020 (attached to proposed Sur Reply as Exhibit E). He set forth "a proposal for participation in the next round of the PR campaign as outlined at the recent industry meeting" and suggested financial contributions commensurate with the various casinos' revenues. *See* February 12, 2020 email at 11:51 am. Just two days later, four casinos named in the *amicus* brief and three additional casinos sought to intervene in the Commonwealth Court matter based on documents prepared by Eckert[7] and filed by Hawke McKeon & Sniscak, LLP. (A copy of the docket in No. 503 MD 2018 in Commonwealth Court is attached as Exhibit "A.") Of the intervenors, only Parx Casino has asserted privilege over Eckert's communications concerning the litigation.[8]

These newly disclosed emails are directly relevant to the pending appeals from Judge Saporito's decision that Eckert and Mr. Stewart "play[ed] fast and loose with the courts," ECF 166 at 29, in at least two ways.

First, the new evidence reveals that Eckert's involvement in the litigation and public relations campaign adverse to POM was on behalf of casinos that were

---

[7]  Judge Saporito found that "Stewart and other Eckert attorneys were the primary authors" of the application to intervene. ECF 166 at 26.

[8]  Neither Eckert nor anyone else asserted any other client's privilege over the withheld documents. The only assertion of privilege was on behalf of Parx Casino.

not clients of the Eckert firm. The so-called "skill games initiative" was a "PR campaign" developed with public relations and government relations personnel, the intent was to destroy the skill game business rather than pursue or enforce any legal right, Mr. Stewart solicited casinos who were not Eckert clients to participate, and he drafted documents which were filed in Commonwealth Court on behalf of casinos with whom Eckert did not have an attorney-client relationship. The conclusion is inescapable that communications relating to such efforts on behalf of non-clients could not have been for the purpose of providing legal advice and consequently are not privileged. *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011) (holding that, "in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice"). Therefore, the Court should require production of withheld communications detailing Eckert's involvement in litigation and other matters on behalf of casinos adverse to POM without even reaching judicial estoppel.

Second, the new emails are further proof that Eckert played "fast and loose" with the Court in asserting privilege over litigation in which it falsely claimed not to have been involved. Both Eckert and Parx Casino have advocated that communications between them relating to the Commonwealth Court litigation were for the purpose of securing legal advice and did not involve third parties.

8

ECF 169 at 8; ECF 171 at 10-11.  The newly disclosed emails, however, reveal

that Eckert encouraged and pursued litigation not only for its own client and for

legitimate legal ends but instead as part of a broad-ranging public relations

campaign for the benefit of casino entities that Eckert did not represent.  There is

no privilege over communications relating to actions taken on behalf of non-clients

and, given Eckert's previous denials of involvement in litigation adverse to POM,

assertion of privilege over the "PR campaign" is further evidence of bad faith that

warrants invocation of judicial estoppel.  *Krystal Cadillac-Oldsmobile GMC*

*Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (judicial

estoppel properly applied "to avoid a miscarriage of justice").[9]

There are unusual, but compelling, procedural circumstances surrounding

the allegedly privileged documents that are the subject of this appeal.  Those

documents have been reviewed by Judge Saporito who has ruled, twice, that

regardless of whether they are privileged, the conduct of Eckert before this court

has been so egregious as to require the remedy of their production under the

doctrine of judicial estoppel.  After those rulings, after Eckert's appeals to this

---

[9] In addition, as explained in POM's proposed sur reply brief, the new evidence also shows that the lawyer-client relationship has been misused to perpetuate a fraud on POM and therefore the crime-fraud exception provides an alternate basis for compelling production of the withheld communications.  *See In re Grand Jury Subpoena*, 223 F.3d 213, 217 (3d Cir. 2000) ("crime-fraud exception applies . . . when the legal advice gives direction for the commission of future fraud . . .") (citation and internal quotation marks omitted).

Court, and after briefing, Eckert then produced even more documents compounding the evidence that they played "fast and loose" with the courts.  When POM asked this Court to consider those newly available documents, Eckert objected, arguing that the Court has seen enough and should consider no more evidence of its misconduct.  These circumstances, however, compel a review of this newly produced evidence and a decision based on a further developed record. There are ample grounds to affirm Judge Saporito's decision without this additional evidence.  Based on the conduct as further revealed, however, it is apparent that even the assertion of privilege lacks a credible basis and Eckert should not be allowed to continue to camouflage its behavior.

For these reasons, POM's motion for leave to file a brief sur reply addressing new evidence disclosed by Eckert should be granted.

Respectfully submitted,

/s/ Donna A. Walsh
Daniel T. Brier
Donna A. Walsh

Attorneys for Plaintiff,
Pace-O-Matic, Inc.

Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Dated:  March 2, 2022

## CERTIFICATE OF SERVICE

I, Donna A. Walsh, hereby certify that a true and correct copy of the

foregoing Memorandum of Law in Support of Motion for Leave To File Brief Sur

Reply Memorandum was served upon the following counsel of record via the

Court's ECF filing system on the 2nd day of March 2022:

Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

Dennis A. Whitaker, Esquire
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA  17101

George A. Bibikos, Esquire
5901 Jonestown Road, #6330
Harrisburg, PA  17112

/s/ Donna A. Walsh
Donna A. Walsh