# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff, | : | NO. 1:20-cv-292 |
| | : | |
| v. | : | ELECTRONICALLY FILED |
| | : | |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, MARK S. STEWART and KEVIN M. SKJOLDAL, | : | JUDGE WILSON |
| | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

**PACE-O-MATIC, INC.'s BRIEF IN SUPPORT OF**
<u>**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**</u>

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………………………...ii

FACTUAL AND PROCEDURAL BACKGROUND…………………………………………….2

STATEMENT OF QUESTIONS INVOLVED…………………………………………………...3

ARGUMENT……………………………………………………………………………….....…3

      I.      Conforming Count I to the Court's March 31, 2022 Order………………………….4

      II.     Specifying the Categories of Monetary Relief Sought by POM…………………....5

      III.    Repleading the Fraud Claim that the Court Previously Dismissed Without Prejudice……………………………………………………………………………..5

      IV.    Asserting an Abuse of Process Claim………………………………………………...8

      V.     Additional Factual Background……………………………………………….…10

CONCLUSION……………………………………………………………………………...10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*BDB & Sons Moving, Inc. v. Transguard Ins. Co.*, No. 08-3465, 2010 WL 4659155 (E.D. Pa. Nov. 16, 2010) .................................................................................................................. 12

*Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989) ............................................................................ 7

*Dole v. Arco Chemical Co.*, 921 F.2d 484 (3d Cir. 1990) ................................................................. 7

*Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107 (3d Cir. 2003) ............................................... 6

*Gibbs v. Ernst*, 538 Pa. 193 (1994) .................................................................................................. 9

*Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419 (3d Cir. 1981) ............................................................................................................................................ 7

*Hunt v. United States Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008) .................................................... 9

*Long v. Holtry*, 673 F. Supp. 2d 341 (M.D. Pa. 2009) ................................................................... 11

*Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802 (E.D. Pa. 2015) ................................................... 8

**Rules**                                                                                                                    **Page(s)**

Fed. R. Civ. P. 15 .............................................................................................................................. 6

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff Pace-O-Matic, Inc. ("POM") respectfully requests leave to file a Second Amended Complaint ("SAC") against the Defendants. A copy of POM's proposed SAC is attached as Exhibit 1 to the Motion for Leave to Amend. Counsel for POM request Defendants' position regarding this Motion, and counsel for Defendants declined to concur in the Motion.[1]

As reflected in the exhibits to the Motion, the proposed SAC would make five general changes to the existing pleadings. ***First***, the SAC would conform Count I (seeking declaratory relief) to the Court's March 31, 2022 Order by limiting the request for declaratory and injunctive relief to *prospective* relief. ***Second***, the SAC carefully specifies the categories of monetary relief that POM seeks, providing the parties with substantially greater clarity regarding the relief at issue in this litigation. ***Third***, the SAC would replead the fraud claim that the Court previously dismissed without prejudice. ***Fourth***, the SAC would add a new abuse of process claim, the factual basis of which POM became aware of no earlier than January 28, 2022. ***Fifth***, the SAC would provide additional specificity regarding the factual background of the case that, among other things, buttresses the plausibility and particularity of POM's fraud and abuse of process claims.

As described in more detail below, no basis exists to deny POM's request to amend its complaint. None of the requested amendments would materially expand the scope of discovery or the issues to be addressed at trial. POM did not unduly delay in seeking to amend, particularly given that many of its amendments arise from information that Defendants produced only since late January. And none of the proposed amendments would unfairly prejudice Defendants in any way.

---

[1] Counsel for Defendants indicated that they would not concur in any amendment without reviewing the amended complaint itself, as opposed to a substantive description of the proposed amendments.

1

## FACTUAL AND PROCEDURAL BACKGROUND

As described in more detail in POM's prior filings, POM retained the law firm Eckert Seamans Cherrin & Mellott, LLC ("Eckert") in late 2016 to represent it in some of the company's most critical legal matters. As would any client, POM expected its lawyer to serve as a loyal advocate and advisor. But after paying more than $800,000 in legal fees to Eckert, POM discovered that Eckert was anything but loyal. In fact, during the course of the firm's representation of POM, several senior partners at Eckert—Defendants Mark Stewart and Kevin Skjoldal—orchestrated a sprawling effort intended to (in their *own words*) "kill" and "outlaw" POM, which they described as their "mortal enemy." Stewart and Skjoldal aggressively sought criminal and regulatory actions against POM, Eckert's own client. They relentlessly lobbied for state and local legislation that would prohibit the business of POM. They led an extensive PR effort to tarnish POM's reputation and cast it as an illegal, socially harmful actor. And they plotted (and ultimately executed) a "coordinated litigation strike" aimed at forcing POM to expend resources and deterring potential business partners from working with POM. Defendants did not disclose any of these facts to their client, POM. To the contrary, they actively concealed these highly material facts from POM, with many of them becoming known only through discovery in this case.

POM filed this litigation on February 18, 2020. The original complaint named only one defendant, Eckert. *See* ECF No. 1. In the course of litigating its motion for preliminary injunction, POM learned that Eckert's unlawful conduct stretched much more broadly than POM had realized. Discovery and other factual investigation disclosed that Stewart and Skjoldal had undertaken a vast effort to destroy POM and its business. In light of this newly discovered evidence, on July 1, 2021, POM moved to file an amended complaint adding Stewart and Skjoldal individually as defendants. *See* ECF No. 140.

On November 16, 2021, Magistrate Judge Saporito issued a Memorandum and Order overruling Defendants' privilege objections regarding a number of key documents relating to Defendants' efforts to hide their attacks on POM, Eckert's client. In the wake of that decision, Defendants agreed to produce a large volume of documents that had previously been withheld. Beginning on January 28, 2022, Defendants began producing those documents. These new documents revealed new levels of Defendants' conspiracy against POM. The documents also disclosed disturbing internal deliberations about how Defendants (on behalf of their other client, Parx Casinos) could use litigation to accomplish improper purposes. *See* Argument, Section IV, below.

On March 31, the Court granted in part and denied in part Defendants' motion to dismiss the First Amended Complaint. *See* ECF No. 204. With regard to POM's request for declaratory relief, the Court dismissed the claim to the extent that it sought a declaration that past conduct was unlawful, but the Court denied the motion as to the remainder of the count. *Id.*, at 6-8. With regard to POM's fraud claim, the Court dismissed the claim without prejudice to file an amended complaint. *Id.* at 8-10. The Court set a June 30, 2022 deadline for POM to file an amended complaint. ECF No. 206.

## STATEMENT OF QUESTIONS INVOLVED

Whether POM should be permitted to file its proposed Second Amended Complaint.

## ARGUMENT

Rule 15(a) permits a plaintiff to seek leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires." *Id.* Courts ordinarily deny a motion for leave to amend only if "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the

3

amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). The touchstone for denying leave to amend is prejudice to the non-moving party. *See, e.g.*, *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990); *Heyl & Patterson Intern., Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981). To oppose amendment based on prejudice, a defendant "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (ellipsis and quotation omitted). Here, POM's proposed amendments would not prejudice Defendants, and there is no basis to deny POM's requested amendments.

### I. Conforming Count I to the Court's March 31, 2022 Order.

Count I of POM's First Amended Complaint asserted a claim for declaratory and injunctive relief. In the Court's March 31, 2022 Order, the Court dismissed Count I in part, to the extent that Count I sought wholly retrospective relief declaring entirely past conduct unlawful. *See* ECF No. 204, at 6-8. However, the Court declined to dismiss Count I to the extent that the claim sought prospective relief. *See id.*

POM's proposed SAC would amend the relief sought by Count I to conform that Count to the Court's March 31, 2022 Order, restricting the requested relief to prospective relief only. This proposed amendment would not prejudice Defendants in any way. Indeed, if this amendment affects Defendants in any way at all, it actually reduces the scope of relief sought against them and perhaps incrementally restricts the scope of the issues in this case.

## II. Specifying the Categories of Monetary Relief Sought by POM.

POM's First Amended Complaint pled POM's requested monetary relief in relatively general terms. Such generalized pleading is common in federal court, particularly where the pleading party has not yet had access to detailed discovery. However, at this stage of the litigation, POM believes that all parties would benefit from greater specificity regarding precisely what categories of damages are at issue. Providing greater specificity will help the parties target their discovery and any dispositive motions. It may also provide greater advance notice of the scope of issues to be presented at trial, the evidence that will be adduced, and the witnesses whose attendance will be necessary.

POM's proposed SAC would provide substantially more clarity regarding what forms of monetary relief are—and are not—at issue in this litigation. For the reasons described above, these amendments do not prejudice Defendants but actually benefit them by narrowing the scope of litigation, providing greater advance notice of the contours of POM's theories, and removing certain categories that in principle POM might have been entitled to seek.

## III. Repleading the Fraud Claim that the Court Previously Dismissed Without Prejudice.

In the Court's March 31, 2022 Order, the Court dismissed POM's fraud claim without prejudice. *See* ECF No. 204, at 8-10. In particular, the Court held that POM had failed to plausibly plead that POM had relied on Defendants' alleged misrepresentations. *Id.* However, the Court dismissed the fraud count "without prejudice to POM filing an amended complaint." *Id.* at 10. The Court set a deadline of June 30, 2022 for POM to file its amended complaint. ECF No. 206.

POM's proposed SAC seeks to replead a fraud claim that is consistent with the Court's March 31 Order. The prior iteration of POM's fraud claim focused on express misrepresentations made by Defendants. In contrast, the SAC's fraud count rests on Defendants' intentional omission

5

of highly material facts. "Concealment or non-disclosure is a long-established tort in the Commonwealth." *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 816 (E.D. Pa. 2015). A fraud claim premised on material omissions "has the same elements as the tort of intentional misrepresentation except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation." *Id.* (quoting *Gibbs v. Ernst*, 538 Pa. 193, 207 n.12 (1994)). As the Court has previously explained, a fraud claim requires a plaintiff to establish "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." ECF No. 204, at 8 (quoting *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008)).

Here, the SAC plausibly alleges each of these elements. First, the SAC identifies numerous highly material facts regarding Defendants conduct: that from the beginning of Eckert's representation of POM, Defendants knew that they would have direct adversity to POM; that Defendants actively led a wide-ranging conspiracy aimed at destroying POM's business; that Defendants aggressively sought criminal and regulatory action against POM and its machines; that Defendants relentlessly lobbied in favor of state and local legislation that would have banned POM's business; that Defendants plotted a "coordinated litigation strike" aimed at forcing POM to expend resources and deterring potential business partners from working with POM. *See, e.g.*, SAC, ¶¶ 7-55, 122-123. And Defendants intentionally did not disclose these highly material facts to POM. *See, e.g.*, *id.*, ¶¶ 17-18, 56, 89, 124, 125.

Second, the SAC pleads numerous facts showing that Defendants intentionally withheld these material facts based on an intent to deceive and defraud. The SAC alleges that Defendants specifically intended to withhold these material facts from POM. SAC, ¶¶ 17, 18, 65-76, 124.

6

Defendants went to great lengths to hide their involvement in matters adverse to POM, demonstrating both an awareness of wrongdoing and a specific intent to deceive. *Id.*, ¶¶ 65-76. The evidence shows extensive internal deliberation at Eckert about the known conflict involving POM, making it impossible that these omissions occurred inadvertently. *See, e.g., id.*, ¶¶ 8-16, 51-53. Indeed, decisions about the conflict that was hidden from POM were apparently escalated all the way to Eckert's chairman, Michael Flammia. *Id.*, ¶¶ 51-53.

Third, the SAC alleges that "Defendants omitted these material facts for the specific purpose of causing POM to remain a client of Eckert and continue paying substantial fees to Eckert." SAC, ¶ 124. This is also the only plausible conclusion based on the totality of the facts pled in the SAC.

Fourth, the SAC pleads that POM reasonably relied on Defendants' material omissions. POM would never have willingly hired a law firm to handle its most sensitive matters, provided to that firm much of POM's most confidential business information, and paid more than $800,000 if POM had known that the law firm was in fact leading a sprawling conspiracy designed to ***destroy*** POM. *See, e.g.*, ¶¶ 20, 21, 22, 27, 126-128. Indeed, ***no client*** would ever hire a lawyer who was actively seeking to destroy the client. In reliance on Defendants' material omissions, POM paid more than $800,000 to Eckert and entrusted Eckert with POM's most confidential information. *Id.*

Fifth, as a direct and proximate result of Defendants' material omissions, POM sustained substantial harm. At the very least, this harm includes paying more than $800,000 to Eckert that POM would never have paid had Defendants been truthful, as their legal and ethical obligations required. For the foregoing reasons, the SAC adequately pleads a claim for fraud under Pennsylvania law.

POM seeks to assert this repleaded fraud claim in a timely fashion. In particular, POM is seeking to amend within the time allotted by the Court for repleading the fraud claim in response to the Court's March 31 Order. *See* ECF No. 206. In addition, permitting POM to assert the repleaded fraud claim will not unfairly prejudice Defendants. The fraud claim arises from the same course of conduct as POM's other claims. The assertion of a fraud claim will not meaningfully increase the scope of discovery in any way, nor will it materially expand the scope of issues to be addressed at trial.

### IV.   Asserting an Abuse of Process Claim.

The SAC would add a new Count IV that asserts a claim for abuse of process under Pennsylvania law. *See* SAC, ¶¶ 128-133. To plead an abuse of process claim, a plaintiff must plausibly allege that "(1) the defendant used a legal process against plaintiffs, (2) the action was primarily to accomplish a purpose for which the process was not designed, and (3) harm was caused to the plaintiff." *Long v. Holtry*, 673 F. Supp. 2d 341, 355 (M.D. Pa. 2009). Here, the SAC plausibly alleges facts that establish each of these elements.

First, the SAC alleges that Defendants initiated a "coordinated litigation strike" of lawsuits specifically targeting establishments that hosted POM machines, as well as the use of additional process within that litigation. *See, e.g.*, SAC ¶¶ 45-54, 129.

Second, the SAC alleges that Defendants engaged in this use of process primarily to accomplish improper purposes. *See id.*, ¶¶ 48, 130-131. Indeed, a contemporaneous email sent by Defendant Mark Stewart provides clear insight into the purposes that Defendants hoped to accomplish:

- "[The lawsuits] would put PA Skill [*i.e.*, the trade name under which POM operates in Pennsylvania] on the defensive, having to run

> around, spend money, and dedicate time and personnel resources to defending the numerous suits;"

- "[The lawsuits] would draw public and political attention to the illegality of the machines;" and

- "[The lawsuits] could give businesses we don't sue pause about keeping their [POM] machines and certainly would chill the desire of businesses who don't have them from getting them[.]"

SAC, ¶ 48. These purposes, wholly unrelated to the merits of the litigation, are not the purposes for which any litigation-related process is designed.

Third, the SAC alleges that POM incurred substantial legal fees and litigation expenses responding to the "coordinated litigation strike" and the use of further process within that litigation. *Id.*, ¶¶ 132. Thus, the SAC adequately alleges a claim for abuse of process.

POM did not unduly delay in asserting this claim. Most abuse of process cases principally turns on the second element, that is, whether the defendant used legal process principally for an improper purpose. That element can be very difficult to prove or plausibly allege without direct evidence of the defendant's intentions. Before Eckert's January 28, 2022 document production, POM did not have direct evidence of Defendants' principal purposes in filing the state-court litigation on behalf of Parx. However, the January 28, 2022 document production included the email quoted in the SAC that explains—in Stewart's own words—precisely what Defendants' purposes were. *See* SAC ¶ 48. Only access to that email enabled POM to plead its abuse of process claim. Now, almost exactly five months after receiving that email, POM has timely asserted its abuse of process claim. *See BDB & Sons Moving, Inc. v. Transguard Ins. Co.*, No. 08-3465, 2010 WL 4659155, at *5 (E.D. Pa. Nov. 16, 2010) (holding that a delay of "four to seven months"

between receiving evidence and asserting a new claim based on that evidence did not constitute undue delay).

Moreover, the abuse of process claim arises out of precisely the same course of conduct as POM's existing claims. Adding the abuse of process claim will not meaningfully increase the scope of discovery in any way, nor will it materially expand the scope of issues to be addressed at trial. Adding this new claim will not unfairly prejudice Defendants in any way.

### V.     Additional Factual Background.

Finally, the SAC would add additional factual background to the Complaint.[2] Most of these additional facts were not available to POM until Defendants' document productions in January and February of 2022, long after POM filed its First Amended Complaint. In addition, these additional facts are intended to provide greater clarity, specificity, and context to POM's repleaded fraud claim and its new abuse of process claim. Adding these facts to the Complaint will not prejudice Defendants in any way.

### CONCLUSION

For the reasons stated, POM respectfully requests that the Court grant it leave to file the SAC.

---

[2] The SAC also makes certain stylistic and wording changes from prior versions of the Complaint. These changes stem principally from the stylistic preferences of POM's new counsel and on their own would not warrant amending the Complaint.

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Jeffrey B. Jensen*
Jeffrey B. Jensen*
Michael Nolan*
Michael Martinich-Sauter#
Bola Adeniran#
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com

\* Appearing by special admission
\# Application for special admission forthcoming

George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

**Counsel for Plaintiff Pace-O-Matic, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Second Amended Complaint was served upon the following counsel of record via the Court's ECF filing system on this 29th day of June 2022:

>Abraham C. Reich, Esquire
>Robert S. Tintner, Esquire
>Fox Rothschild LLP
>2000 Market Street, 10th Floor
>Philadelphia, PA  19103-3291

>*/s/ Jeffrey B. Jensen*