IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| Plaintiff, | : | |
| v. | : | Judge Jennifer P. Wilson |
| ECKERT, SEAMANS CHERIN & MELLOTT, LLC, | : | |
| Defendant. | : | Magistrate Judge Joseph Saporito, Jr. |

# MEMORANDUM

Before the court are three separate appeals of United States Magistrate Judge Joseph Saporito, Jr.'s memorandum and order directing that some of Plaintiff's discovery requests be granted as to documents and information in which Defendants and third parties have asserted attorney-client privilege.[1] (Docs. 168, 170, 172.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Neither party appeals the facts or procedural history stated in Judge Saporito's memorandum. As such, the court will only restate the factual background and procedural history necessary for clarity in this opinion. Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Defendant, Eckert, Seamans Cherin & Mellot, LLC ("Eckert"), for an alleged

---

[1] Also pending is a motion for leave to file a second amended complaint filed by Plaintiff on June 29, 2022. (Doc. 220.) However, this motion is not yet ripe, and the court will not consider it at this time.

1

breach of fiduciary duties to POM.  (Doc. 1.)  POM alleges that this breach stems from Eckert's representation of both POM and a third-party competitor, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania.  (Doc. 166, pp. 1–2.)[2]

Eckert's representation of POM began in 2016 in Virginia, and was limited to the state of Virginia despite POM's similar activity in Pennsylvania.  That was because Eckert represented Parx, a market competitor, in Pennsylvania.  (*Id.* at 3–4.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania through other counsel relating to the seizure and removal of some of its skill games in Pennsylvania.[3]  (*Id.* at 3.)  During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in opposition to POM's position, and motions to intervene, which reportedly remain pending with the Commonwealth Court.  (*Id.* at 4–5.)  In January 2020, POM learned that Eckert was allegedly involved in some capacity with Parx's

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018.  (Doc. 166, p. 4.)

representation in the Commonwealth Court cases, assuming positions materially adverse to POM's position despite Eckert's ongoing representation of POM in Virginia. (*Id.* at 5.) After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew from representing POM in Virginia. (*Id.*)

Thereafter, on the basis of these facts, POM initiated the present lawsuit in February 2020, alleging that Eckert attorneys had been working behind the scenes to aid litigation efforts for Parx's adverse position in POM's Commonwealth Court cases despite a clear conflict of interest, and that these efforts breached Eckert's professional duties of loyalty and confidentiality to POM. (*Id.*) In an attempt to support its theory, POM served interrogatories and requests for document production on Eckert, and corresponding non-party subpoenas on Parx, HMS, and their agents regarding communications concerning the Commonwealth Court cases involving POM and Parx. (*Id.* at 6.) Eckert, Parx, and HMS objected to these requests, asserting attorney-client and work-product privileges. (*Id.*) POM moved to compel the production of these documents and information, and Eckert, Parx, and HMS moved for a protective order. (*Id.*)

This discovery dispute has been extensively briefed and Judge Saporito allowed oral argument on these issues on October 20, 2020, during which the parties agreed to allow Judge Saporito to conduct an in camera review of the

subject documents. (*Id.* at 6–7.) Thereafter, the parties met and conferred to determine the documents to be submitted to Judge Saporito. (*Id.* at 7.) These documents were provided to Judge Saporito in December 2020, and Judge Saporito issued his memorandum and order on February 16, 2021. (Docs. 87, 88.)

On March 2, 2021, Eckert, HMS, and Parx filed separate appeals of Judge Saporito's decision, each only appealing section III. I. of Judge Saporito's memorandum and paragraph 4 of Judge Saporito's order pertaining to judicial estoppel. (Docs. 93, 95, 97.) The court granted this appeal, finding that Judge Saporito erred procedurally by raising the issue of judicial estoppel sua sponte without the benefit of briefing from counsel and remanded the matter for further consideration. (Docs. 113, 114.) On remand, Judge Saporito allowed the parties to brief the issue of judicial estoppel.[4] (Doc. 166, p. 8.) Following further consideration, including a re-review of the allegedly privileged documents, Judge Saporito again concluded that the attorney-client privilege invoked by Eckert was inapplicable on judicial estoppel grounds and that the work product doctrine was likewise inapplicable. (*Id.* at 35–36.)

On November 30, 2021, Eckert, Parx, and HMS filed the instant appeals of Judge Saporito's decision, accompanied by supporting briefs. (Docs. 168, 169,

---

[4] No party requested additional argument or an evidentiary hearing on the issue of judicial estoppel. (*See* Docs. 128, 129, 130, 131, 134, 135, 136, 137.)

170, 171, 172, 173.)  POM filed a consolidated brief in opposition on January 6, 2022.  (Doc. 185.)  Eckert, Parx, and HMS timely filed reply briefs.  (Docs. 192, 193, 194.)  These appeals are thus ripe for review.

### STANDARD OF REVIEW

The application of judicial estoppel is reviewed for an abuse of discretion. *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010); *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 108 (3d Cir. 1999); *Danise v. Saxon Mortg. Servs.*, No. 17-1732, 738 F. App'x 47, *49–50 (3d Cir. June 7, 2018) ("As the doctrine of judicial estoppel is 'always factually driven,' this Court reviews a district court's application of judicial estoppel for abuse of discretion.") (citation omitted).  "[A] court 'abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts[.]'" *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (quoting *In re O'Brien*, 188 F.3d 116, 125 (3d Cir. 1999)).

### DISCUSSION

The substance of these appeals turns on the application of the judicial estoppel doctrine.  "'Judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," is a judge-made doctrine' that bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Danise*, 738 F. App'x at 50 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)).  As Judge

5

Saporito noted, there is no rigid test for determining whether judicial estoppel is appropriately applied. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that "[a]dditional considerations may inform the doctrine's application in specific factual contexts"). However, the Court of Appeals for the Third Circuit has set forth factors for consideration before a court may apply judicial estoppel. *Montrose*, 243 F.3d at 779. These factors are as follows:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith—i.e., with intent to play fast and loose with the court." *Id.* Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. *Klein*, 185 F.3d at 108 (quotation marks and citation omitted).

*Id.* at 779–80.

As the Third Circuit has explained, "[i]nconsistencies are not sanctionable unless a litigant has taken one or both positions 'in bad faith.'" *Id.* at 780–81. However, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003). Thus:

> A finding of bad faith "must be based on more than" the existence of an inconsistency, *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 111 (3d Cir. 1999) (emphasis added); indeed, a litigant has not

6

acted in "bad faith" for judicial estoppel purposes unless two requirements are met. First, he or she must have behaved in a manner that is somehow culpable. *See Ryan Operations*, 81 F.3d at 362 (stating that judicial estoppel may not be employed unless "'intentional self contradiction is . . . used as a means of obtaining unfair advantage'" (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)); *id.* ("An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing."); *see also In re Chambers Dev. Co. Inc.*, 148 F.3d 214, 229 (3d Cir. 1998) (quoting this language from *Ryan Operations*).

Second, a litigant may not be estopped unless he or she has engaged in culpable behavior vis-a-vis the court. As we have stressed time and time again, judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other. *See, e.g.*, *Ryan Operations*, 81 F.3d at 360 ("Judicial estoppel 'is intended to protect the courts rather than the litigants.'" (quoting *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121–22 (3d Cir. 1992))); *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990) (same). Accordingly, judicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court.

*Montrose*, 243 F.3d at 781.

As part of this analysis, and in order to find bad faith, the Third Circuit has long held that the court applying judicial estoppel must be satisfied that the initial inconsistent statement was accepted or adopted by a court or agency. *Id.* In other words, "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court or agency. Because the practice is specifically sanctioned by the Federal Rules, asserting inconsistent claims within a single action obviously does not constitute misconduct that threatens the court's integrity." *Id.* at 782. However, the Third

7

Circuit has also held that there may be cases where judicial estoppel is applicable "where no court has accepted an initial position" if there is otherwise a threat to judicial integrity. *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) ("We do not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply. We will apply it to neutralize threats to judicial integrity however they may arise."); *see also Krystal Cadillac-Olds GMC Truck*, 337 F.3d at 320–25 (applying judicial estoppel even though no court had accepted the initial position because creditors had likely relied on the initial position which weakened their bargaining position and undermined the bankruptcy process). Thus, the application and appropriateness of judicial estoppel remains a case-specific inquiry confined to the judge's discretion based on the facts and circumstances of the case.

Finally, in exercising discretion to apply judicial estoppel, courts must remain mindful of the fact that "judicial estoppel 'is often the harshest remedy' that a court can impose for inequitable conduct, [and therefore] a district court may not invoke the doctrine unless: (1) 'no sanction established by the Federal Rules or a pertinent statute is up to the task of remedying the damage done by a litigant's malfeasance;' and (2) 'the sanction [of judicial estoppel] is tailored to address the harm identified.'" *Montrose*, 243 F.3d at 784 (quoting *Klein*, 185 F.3d at 108, 110).

In this case, Eckert, HMS, and Parx object to the application of judicial estoppel because they assert that: 1) the doctrine is inapplicable to this case; 2) the positions taken earlier in litigation were not inconsistent with later representations; 3) the court has not relied upon or adopted an original position from Eckert or Parx; 4) there has been no bad faith; and 5) because judicial estoppel would be too harsh a sanction. (Doc. 169, pp. 9–13; Doc. 171, pp. 16–28; Doc. 173, pp. 11–21.) Eckert also asserts that the information sought is otherwise not required to be produced because POM has already received "privilege logs concerning these documents with sufficient description." (Doc. 169, pp. 14–15.)

Judge Saporito applied the judicial estoppel doctrine following two rounds of extensive briefing from the parties, oral argument, and two in camera examinations of purportedly privileged documents. Judge Saporito's consideration of the record and the circumstances presented in the case was thorough, and the court finds that he did not abuse his discretion in applying the doctrine of judicial estoppel.

Initially, the court agrees with Judge Saporito's conclusion that Eckert has presented two fundamentally different and irreconcilable positions in the instant litigation. On one hand, Eckert has taken the position that it does not represent any party adverse to POM in litigation, including Parx. On the other hand, Eckert invokes the attorney-client privilege to oppose the production of documents

9

maintained by Eckert involving Parx, a party with interests adverse to POM.[5]  As stated by Judge Saporito, "[p]erhaps it goes without saying, but '[f]irst and foremost, the attorney-client privilege applies only if an attorney-client relationship exists.'"  (Doc. 166, pp. 17–18 (citation omitted).)  In addition, it is a foundational concept that attorney-client relationships are formed when an attorney represents a client.  As Eckert well knows, litigation and representation are not concepts which are confined to the entry of appearance on a court docket.  Thus, implicit in Eckert's statement that it does not represent a party adverse to POM in litigation is the notion that Eckert does not represent Parx in any capacity, consultative or otherwise,[6] in the Commonwealth Court litigation initiated by POM.  It is therefore fundamentally inconsistent for Eckert to state that it does not represent Parx in the Commonwealth Court litigation, but to nevertheless assert the attorney-client privilege as to Parx with respect to documents created during the course of the Commonwealth Court litigation when such documents were clearly created for Parx's benefit and Eckert is asserting the privilege on Parx's behalf.

---

[5] There is no dispute that Parx's interests as an amicus and potential intervenor in the Commonwealth Court litigation instituted by POM were directly adverse to POM's interests in litigating these cases.

[6] Judge Saporito's review of the purportedly privileged documents at issue makes clear that Eckert did not merely serve in a consultative role during POM's Commonwealth Court litigation. (*See* Doc. 166, pp. 18, 22–28.)  However, for the purpose of resolving the instant appeals, it is sufficient to conclude that the statements that Appellants expected the court to accept were fundamentally irreconcilable.

Despite this clear inconsistency, Eckert asked the court to reconcile these positions during oral argument on the discovery dispute raised by Eckert in which it asserted the attorney-client privilege. (Doc. 166, pp. 15–16 ("At oral argument on the instant motions, Eckert specifically took the position that it had not represented any party adverse to POM in the Commonwealth Court litigation.").) While not explicitly stated by Judge Saporito, implicit in his decision is the notion that in order to resolve the issue of whether the attorney-client privilege should shield certain documents from discovery, the court was required to assess which of Eckert's two inconsistent positions should be relied upon in order to conduct the privilege analysis. As explained by Judge Saporito, the court could either rely on Eckert's statement that it represented Parx during the Commonwealth Court litigation, which would likely result in the entry of default judgment in POM's favor, or it could rely on Eckert's statement that it did not represent Parx during the Commonwealth Court litigation resulting in the attorney-client privilege being inapplicable. By choosing to litigate the discovery dispute and involving the court, Eckert forced the court to choose one of these positions. It was not an abuse of discretion for Judge Saporito to rely on Eckert's representation that it does not

represent a party adverse to POM in litigation in order to resolve the discovery dispute that Eckert decided to place before the court.[7]

The court also finds that Judge Saporito did not err in concluding that these inconsistent positions were adopted in bad faith. Indeed, in making inconsistent representations to the court, Eckert has attempted to obstruct the discovery process as to the central issue in this case: whether Eckert breached its fiduciary duty to POM by representing Parx, a party with adverse interests, at the same time that it represented POM. While Eckert was content to maintain its broad stance that it did not represent a party adverse to POM in litigation before such assertions would be subject to the discovery process, Eckert's position shifted once its internal documents were at risk of disclosure by way of a motion to compel sought by POM. Once that discovery issue was raised, Eckert modified its position to state that "the communications that POM seeks are between Eckert and Parx Casino, as well as between Eckert, Parx Casino, and Parx Casino's other counsel[,]" and that such information is therefore privileged and exempt from disclosure because there was an attorney-client relationship between these entities. (Doc. 169, p. 8.) As the Third Circuit has explained, "one cannot casually cast aside representations, oral or written, in the course of litigation" for one's own benefit. *Trotter v. 7R Holdings,*

---

[7] The court likewise agrees with Judge Saporito's analysis that Parx has also presented inconsistent positions to the court.

*LLC*, 873 F.3d 435, 443 (3d Cir. 2017) (quoting *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993)).  Yet, this is what Eckert seeks to do here at the expense of the discovery process.  In light of the Third Circuit's application of the judicial estoppel doctrine to "neutralize threats to judicial integrity however they may arise[,]" and Judge Saporito's finding that Eckert's representation of Parx in the Commonwealth Court litigation was undertaken "with full knowledge that the conflict asserted by POM precluded its active and continuing representation of Parx[,]" the court finds that Judge Saporito did not abuse his discretion in finding bad faith.  (Doc. 166, pp. 28–29); *see G-I Holdings, Inc.*, 586 F.3d at 262; *see also Krystal Cadillac-Olds GMC Truck*, 337 F.3d at 320–25 (applying judicial estoppel to avoid undermining the bankruptcy process).

    Finally, the court agrees with Judge Saporito that the lesser sanctions proposed by Eckert are inadequate to address the harm in this case and that there are no lesser sanctions available than the invocation of the judicial estoppel doctrine.  Forcing POM to rely only on privilege logs to litigate this case would be akin to asking counsel to litigate the central issue in this case blindfolded, albeit with a slightly opaque blindfold since POM has been provided with a description of the documents in the privilege log and in Judge Saporito's opinion.  Indeed, it is unclear how POM could prove its breach of fiduciary duty claim when it has not had the opportunity to review the documents that may substantiate this claim.

Moreover, by choosing to litigate the issue of attorney-client privilege, and by placing the issue before the court, Eckert has forced the court to choose between one of its two inconsistent positions in order to resolve the discovery dispute. There are necessary consequences that flow from the court's choice between these options, as explained by Judge Saporito: "We find only two feasible alternatives that might address the harm to POM: (1) To enter default judgment against Eckert; or (2) To judicially estop Eckert from denying POM's allegation that it has represented a party adverse to POM in litigation.  But neither of these alternatives is a lesser sanction; either would be categorically determinative of the outcome on the merits of this litigation[.]"  (Doc. 166, p. 30.)  Therefore, the court finds that Judge Saporito did not abuse his discretion in concluding that no lesser sanction would be appropriate in this case.[8]

---

[8] Because none of the appellants appealed Judge Saporito's decision that these documents are not protected by the work-product doctrine, *see* Docs. 169, 171, 173, the court does not address this aspect of Judge Saporito's decision.

## CONCLUSION

For the reasons stated herein, the court will deny the appeals and affirm Judge Saporito's memorandum and order. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 5, 2022