# In the United States District Court for the Middle District of Pennsylvania

| | | |
|---|---|---|
| PACE-O-MATIC, INC. | ) | |
| | ) | |
| Plaintiff, | ) | [ELECTRONICALLY FILED] |
| | ) | |
| vs. | ) | Docket No. 20-292 |
| | ) | |
| ECKERT, SEAMANS, CHERIN & MELLOT, LLC | ) | JUDGE WILSON |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF OF GREENWOOD GAMING & ENTERTAINMENT, INC., D/B/A PARX CASINO, IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR CERTIFICATION OF APPEAL PURSUANT TO 28 U.S.C. § 1292

## I. INTRODUCTION

Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), files its reply brief in support of its motion for reconsideration or certification pursuant to 28 U.S.C. § 1292 of the Court's order and opinion affirming Magistrate Judge Saporito, Jr.'s decision that Eckert, Seamans, Cherin & Mellot, LLC ("Eckert") and Hawke McKeon & Sniscak ("HMS") must produce documents in their custody that contain

Parx's privileged communications to Pace-O-Matic, Inc. ("POM") in connection with the underlying dispute between Eckert and POM.

## II.   REPLY

Parx's opening brief adequately disposes of virtually all of POM's arguments.  Parx submits this reply to address certain points raised by POM that the Court should reject.

### A.   *The Court should reject POM's arguments and reconsider its decision to order the disclosure of Parx's privileged documents.*

Despite POM's attempt to argue otherwise, (1) the Court's application of judicial estoppel to compel the disclosure of a non-party's privileged documents is unprecedented; (2) POM has no legitimate basis to oppose Eckert's willingness to accept a harsher judicial-estoppel sanction; and (3) Parx should not suffer the severe sanction adopted by the Court when Parx has always acknowledged that Eckert served as Parx's counsel, including in matters adverse to POM.

#### 1.   The Court's application of judicial estoppel to compel the disclosure of a non-party's privileged documents is unprecedented.

*First*, buried in a footnote, POM asserts that there is a "well-established" principle that judicial estoppel applies to punish a non-party

for the conduct of its lawyers and cites opinions from the Fifth and Sixth Circuit Courts of Appeal in support. *Hall v. GE Plastic Pacific PTE Ltd.,* 327 F.3d 391, 396 (5th Cir. 2003); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 483 (6th Cir. 2010).

These cases are inapposite. As a threshold matter, neither *Hall* nor *White* binding on this Court. In any event, none of the cases cited by POM involve using judicial estoppel to order the disclosure of privileged documents.

*Hall* involved a party alleging in a previous case (through his lawyer in various motions and other papers) that the defendant manufactured a defective product that caused injuries. After settlement with that defendant, the party sued a different defendant in a new case and argued that the new defendant manufactured the defective product that caused injuries. The party in *Hall* never really backed away from his inconsistent statements or positions, arguing instead that judicial estoppel only applies to inconsistent "sworn" statements of a party or "concessions" of his lawyer. The court rejected those arguments and applied judicial estoppel to prevent the party from arguing that the new defendant manufactured the product that caused injuries.

Likewise, *White* involved a bankruptcy debtor who failed to disclose a pre-existing sexual harassment claim in her bankruptcy petition, later sued her employer in the district court for sexual harassment, and then blamed her lawyer for the omission in the bankruptcy proceeding as a means to justify the non-disclosure. The court applied judicial estoppel against the debtor/plaintiff to preclude her from pursuing her sexual harassment claim and merely held that the attorney's alleged mistake did not excuse her intentional omissions. *White*, 617 F.3d at 483.

Finally, POM"s passing reference to the Supreme Court's statement in *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962), fares no better. *Link* involved a lawyer who failed to appear at a pre-trial conference and engaged in other dilatory behavior in the course of representing his client. The Court upheld the *sua sponte* dismissal of the case for lack of prosecution, noting the unremarkable proposition that a client may suffer consequences of his or her lawyer's failure to appear at scheduled conferences or failure to prosecute the case. This case did not involve judicial estoppel at all.

Simply put, none of the cases cited by POM involve using judicial estoppel to order the disclosure of privileged documents. None of the

courts in the cases POM cites applied judicial estoppel to a non-party. None of the courts in the cases POM cites applied judicial estoppel to take away a non-party's attorney-client privilege. In the cases cited by POM, ***the party in the case*** made inconsistent statements or took inconsistent positions or made material omissions. That is not the case here.

POM therefore cites to no precedent from any court (and, further, Parx is unaware of any) to support the proposition that a court may take away the attorney-client privilege belonging to a non-party in an effort to sanction one of the non-party's law firms for its conduct as a defendant in separate litigation. If the case law on which POM relies applied so neatly, query why POM placed those citations in a footnote as opposed to the body of its brief.

Unlike the cases on which POM relies, the Court here applied judicial estoppel to punish a non-party (represented by separate counsel here) based on inconsistent statements that another of Parx's law firms made as a party-defendant ***in this case***. Neither *Hall, White*, nor *Link* held that a law firm's inconsistent statements justify the disclosure of its non-party client's privileged communications. Moreover, neither *Hall, White*, nor *Link* condone an order punishing an innocent non-party that

did not engage in any bad faith by stripping away its attorney-client privilege. That result compels another look.

> ### 2. POM has no legitimate basis to oppose Eckert's willingness to accept a harsher judicial-estoppel sanction.

*Second*, and inexplicably, POM resists the harsher judicial-estoppel "sanction" – which the Court suggested in its opinion – that instead of ordering the disclosure of Parx's privileged documents, Eckert instead should be estopped from denying that it represented Parx in litigation matters in which Parx and POM were adverse to one another at the same time. Presumably, POM would welcome that admission as it establishes a fact POM otherwise would be compelled to prove. If the Court estops Eckert, that fact is established for trial, there is no need for further discovery on that point, there will be fewer issues for trial, and there is no need to subject a non-party to the harsh sanction of losing its privilege.

POM's curious position suggests that it is not interested in establishing a fact for purposes of this case but motivated instead by a desire to review Parx's privileged documents for some other purpose. The privileged documents no doubt involve sensitive communications between lawyers and the client, legal theories, strategies, mental

impressions, and other information that the attorney-client privilege indisputably protects. POM's position leads to the inevitable conclusion that POM seeks these sensitive, privileged documents for purposes other than, and outside of, this litigation.

Indeed, Parx has informed the Court multiple times that POM has a history of using documents produced in this case for purposes other than this litigation despite the Supreme Court's admonition against doing so. *See, e.g.*, Docs. 76, 96, 110; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352–53 & n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").

On balance, moreover, the harm to Parx (a non-party) engendered by the Court's decision to order the disclosure of attorney-client communications far outweighs the limited utility to POM to review those privileged documents for purposes of its dispute with Eckert. If the Court reconsiders the sanction imposed by the magistrate judge (as adopted by the Court) and estops Eckert from taking a contrary position, the fact is

established for trial and the disclosure of Parx's privilege documents becomes a moot point.

### 3. Parx should not suffer the unprecedented sanction adopted by the Court when Parx has always acknowledged in this Court that Eckert served as Parx's counsel, including in matters adverse to POM.

*Finally*, POM suggests that the Court made or adopted a finding that *Parx* made inconsistent statements or took inconsistent positions in bad faith. That is incorrect. Parx asked the Court to reconsider its decision adopting the magistrate judge's "analysis" that Parx made inconsistent statements to this Court in bad faith because that conclusion is based on manifest errors of fact as reflected in Tab "A" accompanying Parx's supporting brief.

As Parx illustrated with specific references to the record, Parx repeatedly and consistently stated that Eckert and Parx have a longstanding and pre-existing attorney-client relationship, including in matters in which Parx and POM are adverse. Parx never made a statement or took the position in this Court or anywhere else that "Eckert does not represent Parx at all." Absent such a statement to this Court, there cannot be any inconsistency in Parx's statements or positions here, let alone any "bad-faith" or "fast-and-loose" conduct before this Court.

POM has no meaningful response to that. POM makes no references to the record. POM points to no evidence that Parx disavowed its attorney-client relationship with Eckert. POM merely parrots the falsehood that "Parx made bad faith inconsistent statements" without ever pointing to evidence supporting that conclusory statement. The *ipse dixit* of POM's counsel is insufficient, manifestly incorrect, and contradicts the record. Parx rightly asked the Court for a second look.

The Court therefore should reject POM's arguments, grant reconsideration, and vacate the decision to the extent it compels the disclosure of any of Parx's privileged documents.

### B. The Court should reject POM's arguments and certify an appeal.

POM argues that the Court should not certify an appeal, suggesting that judicial estoppel is a discretionary, fact-based doctrine that is ill-suited for prompt review; there are no competing cases on the topic to establish any disagreement over its application here; and the resolution of this issue will not advance this case.

POM is incorrect. First, the controlling question of law is whether judicial estoppel operates as an exception to or waiver of a non-party client's attorney-client privilege under Pennsylvania law, particularly

when the Court applied judicial estoppel based on the inconsistent statements of a law firm made in its capacity as a defendant in a separate federal proceeding.

Second, POM's argument – that there are no competing cases expressing divergent views on that issue – proves Parx's point. The privilege issue is sufficiently novel to justify an appeal as noted by the Supreme Court in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) (novel issues are most likely to qualify for certified appeal "when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.").

POM also ignores the fact that the resolution of this novel issue now will advance the case by avoiding a situation in which the Court may be compelled to retry the case without the privilege documents after the Third Circuit weighs in at a later time. If the Court orders Parx's law firms to disclose privileged documents now without a resolution of an adverse privilege determination affecting a non-party, Parx's privilege is lost while the trial proceeds even if the Third Circuit rules in Parx's favor. The Court then would be compelled to retry the case without any of the

10

privileged documents as part of the record. An appeal now avoids the prospect of two trials.

*Finally*, and most importantly, POM suffers no prejudice if the Court certifies an appeal. As reflected in the privilege logs, the privileged documents would reveal Eckert's simultaneous representation of Parx and POM in matters in which those clients were adverse to one another. POM is fully aware of that fact for purposes of this litigation without access to Parx's privileged documents.

Again, if the Court reconsiders the sanction imposed by the magistrate judge (as adopted by the Court) and estops Eckert from taking a contrary position, the fact is established for trial and the disclosure of Parx's privilege documents is moot. By contrast, the adverse privilege ruling indisputably harms Parx by ordering the disclosure of its privileged documents without any meaningful recourse except for an appeal and a stay.

The Court therefore should reject POM's arguments and certify an appeal under 28 U.S.C. § 1292(b).

## III.  CONCLUSION

WHEREFORE, the Court should grant Parx's motion for reconsideration or certify the order for appeal and order such other and further relief as the Court deems necessary or appropriate.

July 28, 2022                                Respectfully submitted,

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that counsel and the magistrate judge will be served automatically.

/s George A. Bibikos
George A. Bibikos
