# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

PACE-O-MATIC, INC.,                                 :
                                                    :
                        Plaintiff,                  :
            v.                                      :          Docket No. 1:20-cv-00292
                                                    :
ECKERT SEAMANS CHERIN &                             :
MELLOTT, LLC,  MARK S. STEWART,                     :          (Judge Jennifer P. Wilson)
and KEVIN M. SKJOLDAL,                              :
                                                    :
                        Defendants.                 :
_____             :


## BRIEF OF DEFENDANTS IN SUPPORT OF
## THEIR MOTION TO DISMISS PORTIONS OF SECOND
## <u>AMENDED COMPLAINT OF PLAINTIFF, PACE-O-MATIC, INC.</u>


ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2766/2854 (telephone)
(215) 299-2150 (facsimile)
rtintner@foxrothschild.com
pbuckley@foxrothschild.com

**Counsel for Defendants,**
**ECKERT SEAMANS CHERIN & MELLOTT,**
**LLC, MARK S. STEWART, KEVIN M.**
**SKJOLDAL**

Date:   August 30, 2022

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

    Facts Underlying This Dispute ..................................................... 3

    Other State-Court Actions ......................................................... 4

    Procedural History ................................................................. 5

STANDARD OF REVIEW .................................................................... 6

LEGAL ARGUMENT ......................................................................... 7

    A. POM's Request for Declaratory Relief Should Be Dismissed. ................. 7

    B. The Court Should Dismiss POM's Implausible Fraud Claim. ................. 8

    C. POM's Abuse of Process Claim is Fatally Flawed. ............................ 11

    D. POM Cannot Recover any Alleged Attorneys' Fees. .......................... 14

        1. The American Rule Bars Recovery of Attorneys' Fees in this
          Case. ...................................................................... 15

        2. POM Cannot Recover Attorneys' Fees Incurred by Other
          Entities and Not POM. ................................................... 17

CONCLUSION ............................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................6, 7

*AVCO Corp. v. Veronica Saltz Turner*,*
2022 WL 2902115 (3rd Cir. July 22, 2022) ....................................16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................6

*Bucci v. Wachovia Bank, N.A.*,
591 F. Supp. 2d 773 (E.D. Pa. 2008) .................................................8

*Cameron v. Graphic Mgmt. Assocs., Inc.*,
817 F. Supp. 19 (E.D. Pa. 1992) ......................................................12

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016) ...............................................................6

*Corace v. Balint*,
210 A.2d 882 (Pa. 1965) ...................................................................16

*Delahanty v. First Pennsylvania Bank, N.A.*,
464 A.2d 1243 (Pa. Super. 1983) .......................................................8

*Drelles v. Manufacturers Life Ins. Co.*,
881 A.2d 822 (Pa. Super. 2005) .........................................................9

*Gen. Nutrition Corp. v. Gardere Wynne Sewell, LL*P,
727 F. Supp. 2d 377 (W.D. Pa. 2010) .........................................19, 20

*Hart v. O'Malley*,
647 A.2d 542 (Pa. Super. 1994) .......................................................13

*Hart v. O'Malley*,
781 A.2d 1211 (Pa. Super 2001) ......................................................16

*J.W. Hall, Inc. v. Nalli*,*
  2017 WL 626715 (Pa. Super. Feb. 15, 2017) ...............................................18, 19

*Joyce v. Super Fresh Food Markets, Inc.*,
  815 F.2d 943 (3d Cir. 1987) ..................................................................................20

*Larry Pitt & Assocs. v. Lundy Law, LLP*,*
  2013 WL 6536739 (E.D. Pa. Dec. 13, 2013)........................................................13

*Lavelle v. Koch*,
  617 A.2d 319 (Pa. 1992)........................................................................................16

*Lin v. Rohm & Haas Co.*,*
  2015 WL 273035 (E.D. Pa. Jan. 20, 2015)............................................................20

*McGee v. Feege*,
  535 A.2d 1020 (Pa. 1987).....................................................................................12

*N. Penn Towns, LP v. Concert Golf Partners, LLC*,
  554 F. Supp. 3d 665 (E.D. Pa. 2021)......................................................................8

*Project Mgmt. Inst., Inc. v. Ireland*,*
  2003 WL 23162399 (E.D. Pa. Dec. 30, 2003)......................................................13

*Rosen v. Am. Bank of Rolla*,
  627 A.2d 190 (1993)..............................................................................................12

*Sams v. Redevelopment Auth. of City of New Kensington*,
  244 A.2d 779 (Pa. 1968).........................................................................17, 18, 19

*Scaife Co. v. Rockwell-Standard Corp.*,
  285 A.2d 451 (Pa. 1971).........................................................................................8

*Sevin v. Kelshaw*,
  611 A.2d 1232 (Pa. Super. 1992) ...........................................................................8

*Shaffer v. Stewart*,
  473 A.2d 1017 (Pa. Super. 1984) .........................................................................13

*Shanks v. Alderson*,
  582 A.2d 883 (Pa. Super. 1990) ...........................................................................16

*Shiner v. Moriarty*,
   706 A.2d 1228 (Pa. Super. 1998) .......................................................12

*Sondesky v. Cherry Scaffolding, Inc.*,*
   2017 WL 3873578 (E.D. Pa. Sept. 5, 2017).......................................12

*Toy v. Metropolitan Life Ins. Co.*,
   863 A.2d 1 (Pa. Super 2004)................................................................9

**Statutes**

28 U.S.C. §2201 ......................................................................................7

28 U.S.C. §2202 ......................................................................................7

**Other Authorities**

Fed.R.Civ.P. 8(a)(2)................................................................................6

Fed.R.Civ.P. 12(b)(6)...........................................................................2, 6

Local Rule 7.8(b)(2)................................................................................1

\* All unreported decisions are attached to the Brief as Exhibit "E".

Defendants, Eckert Seamans Cherin & Mellott, LLC ("Eckert"), Mark S. Stewart, and Kevin M. Skjoldal ("defendants"), through counsel, file their Brief in Support of Motion to Dismiss Counts I, III, IV and all requests for attorneys' fees from the Second Amended Complaint of plaintiff, Pace-O-Matic, Inc. ("POM").

## **INTRODUCTION**

POM brought this breach of fiduciary duty action against Eckert based upon a purported conflict of interest involving Eckert's separate representation of gaming clients in Pennsylvania, including Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). POM filed a Motion for Preliminary Injunction on March 24, 2020, which ultimately was amended and then fully resolved by a Stipulated Order entered by the Court on January 27, 2022.

POM sought leave to file a Second Amended Complaint by motion on June 29, 2022. Defendants did not oppose that motion, and on July 14, 2022, the Court granted POM leave to file its Second Amended Complaint, which was docketed and served on August 2, 2022.

Now, defendants seek to dismiss the declaratory judgment, fraud and abuse of process claims, and all requests for attorneys' fees. POM's request for a declaratory judgment is entirely resolved and should be dismissed. POM's fraud and abuse of process claims are legally insufficient. POM's fraud claim is based on purported omissions concerning Eckert's other representations. Regardless of the nature of the

omissions, POM did not rely upon them, and there was no reliance as a matter of law. POM's abuse of process claim is legally insufficient because it involves state claims – which have been dismissed – against entities other than POM.  Indeed, to the extent that POM had any involvement whatsoever in those state claims, the proper party-in-interest was POM of Pennsylvania, LLC ("POM-PA"), which Eckert did not represent.  Further, simply because POM believes that defendants' "motives" in pursuing claims may have been improper does not give POM a basis to assert an abuse of process claim as there was no perversion of the legal process.

Finally, POM's requests for attorneys' fees are legally insufficient for two (2) reasons.  To the extent that POM seeks its attorneys' fees in this case, such fees are not recoverable under the American Rule as there is no statute or agreement that would provide for the recovery of attorneys' fees.  To the extent that POM seeks to recover attorneys' fees associated with other cases, POM is not the party-in-interest and cannot recover any attorneys' fees.  The plaintiff in the Commonwealth Court cases is POM-PA, a different corporate entity altogether.  In the state cases, neither POM nor POM-PA was a party, and therefore, POM cannot recover any of those attorneys' fees.  Accordingly, this Court should grant defendants' motion, and enter defendants' proposed order dismissing with prejudice Count I, Count III, Count IV, and all requests for attorneys' fees from the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL AND PROCEDURAL BACKGROUND

### Facts Underlying This Dispute

In late 2016 and early 2017, Eckert undertook the representation of POM in Virginia, subject to an advance conflict waiver in the engagement letter and other representational limitations including, but not limited to, an agreement that Eckert would not represent POM in Pennsylvania. *See, e.g.,* Second Amended Complaint at ¶7. Contrary to POM's allegations, there was no overlap between the work that Eckert was doing for its gaming clients in Pennsylvania and the work that Eckert did for POM in Virginia.[1]

POM began to raise concerns about Eckert's representation of its gaming clients in Pennsylvania in the fall of 2019. *Id.* at ¶¶56-58. POM by its own admission "confronted Eckert concerning its impermissible conflict and requested that Eckert withdraw from any representation of Parx Casino adverse to POM." *Id.* at ¶91. Ultimately, in early 2020, when POM would not affirm the prior representational limitation and the advance conflict waiver, Eckert was left with no alternative but to withdraw as counsel for POM in Virginia.[2] *Id.* at ¶¶91-92, 94.

---

[1] In Virginia, there was no legalized gambling; while in Pennsylvania, the use of POM's games must be viewed in the context of this highly regulated industry.

[2] POM accuses Eckert of "misrepresenting" that Eckert had obtained an advance waiver of any conflict despite the fact that POM is in possession of the e-mails evidencing that the Eckert attorney who had the relationship with POM made the waiver request a condition of the representation and the engagement letter itself contains an advance conflict waiver.

POM also accuses Eckert of dropping POM like a "hot potato." *Id.* at ¶91.

POM fails to allege or acknowledge that Eckert's representation of Parx preceded its

representation of POM, and Eckert only withdrew from that representation after POM

demanded that Eckert withdraw from its representation of Parx. *Id.* POM further

takes issue with certain affirmative defenses pled in Eckert's initial answer and

statements made by counsel during the pendency of this litigation or in anticipation

of it that are no longer at issue. *Id.* at ¶¶94-95.

### Other State-Court Actions

POM-PA commenced three (3) actions in the Commonwealth Court of

Pennsylvania – 2 in 2018 and one in 2022: *POM-PA v. Commonwealth of*

*Pennsylvania, Department of Revenue and City of Philadelphia* (418 MD 2018)

(docket entries for this action are attached as Exhibit "A"), *POM-PA v. Pennsylvania*

*State Police, Bureau of Liquor Control Enforcement* (503 MD 2018) (docket entries

for this action are attached as Exhibit "B"), and *POM-PA v. Bureau of Liquor*

*Control Enforcement of Pennsylvania State Police, et al.* (222 MD 2022) (docket

entries for this action are attached as Exhibit "C").[3]  These cases will be collectively

referred to as the "Commonwealth Court Cases."  POM is not a party to those cases,

---

[3] This Court may take judicial notice of the docket entries for these matters particularly as POM
has referenced them as part of its purported damages.

and neither is Parx.  POM references these cases in its Second Amended Complaint.
*See* Second Amended Complaint at ¶60.

Separately, Eckert on behalf of Parx filed 21 actions in Montgomery and
Bucks Counties (where the cases were consolidated).  These actions are collectively
referred to as the "State Court Cases."  Neither POM-PA nor POM was a party to
those cases.  *See* docket entries for 21 cases attached collectively as Exhibit "D".[4]
POM references these actions in its Second Amended Complaint.  *See* Second
Amended Complaint at ¶¶53-56.

### Procedural History

POM filed its Complaint in this action on February 18, 2020.  Eckert timely
answered the Complaint on March 10, 2020.  POM also filed a motion for
preliminary injunction and an amended motion for preliminary injunction.  By
Stipulated Order, approved by the Court on January 27, 2022, POM's motion and
amended motion for preliminary injunction were fully and finally resolved, and the
Court entered a permanent injunction.

Following leave of Court, POM filed an Amended Complaint on August 3,
2021.  Defendants moved to dismiss Counts I and III and the punitive damages from
the Amended Complaint.  By March 31, 2022 Order, the Court granted in part and

---

[4] This Court may also take judicial notice of the docket entries for these matters particularly as
POM has referenced them as part of its purported damages.

5

denied in part defendants' motion to dismiss, and the Court dismissed the fraud claim and portions of the declaratory judgment claim.  On June 13, 2022, defendants filed their Answer to POM's Amended Complaint.

On June 29, 2022, POM sought leave to file a Second Amended Complaint. The Court granted POM leave, and the Second Amended Complaint was docketed and filed on August 2, 2022.  Defendants filed this motion to dismiss on August 16, 2022.

## STANDARD OF REVIEW

A complaint or cause of action may be dismissed for the "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the targeted claim(s) must be "plausible on its face"—meaning that the plaintiff must plead sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed.R.Civ.P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief").

The plausibility determination is context-specific, requiring a plaintiff to allege "some factual allegations in those contexts where . . . needed to render the claim plausible."  *Iqbal*, 556 U.S. at 678; *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *Bell Atlantic Corp. v. Twombly*,

6

550 U.S. 544, 556 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). A plausible claim must state "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. POM's claims for declaratory judgment, fraud, abuse of process and attorneys' fees fail to satisfy this threshold pleading standard and must be dismissed.

## LEGAL ARGUMENT

### A. POM's Request for Declaratory Relief Should Be Dismissed.

In Count I, POM purports to restate a claim for declaratory relief. POM's declaratory judgment claim has been fully and finally resolved, rendering Count I entirely moot. The parties voluntarily entered into a Stipulated Order approved by the Court on January 27, 2022, and that Stipulated Order provided POM with a permanent injunction consistent with the entirety of the relief sought in this claim. Because the parties entered into a permanent injunction, there is no longer any actual controversy or need for any judicial declaration or determination pursuant to 28 U.S.C. §2201 or §2202. To the extent that POM sought such relief previously, the Court granted full and final relief *with both parties' consent*.

Thus, there is no longer any basis to assert a declaratory judgment claim. To the extent that POM seeks damages arising from any alleged breach of fiduciary claim, that issue will be decided by the jury when considering POM's entitlement to relief as

7

to the breach of fiduciary duty claim contained in Count II. For these reasons, POM

cannot maintain a plausible claim against defendants for declaratory judgment. Thus,

the Court should dismiss with prejudice Count I as entirely mooted by the Court's

January 27, 2022 Order.

### B. **The Court Should Dismiss POM's Implausible Fraud Claim.**

Under Pennsylvania law, in order to state a claim for fraud and/or

misrepresentation, a plaintiff must allege:

(1)    a misrepresentation of an existing fact;
(2)    a fraudulent utterance thereof;
(3)    intention by the maker so that the recipient will thereby be induced to act;
(4)    justifiable reliance by the recipient upon the misrepresentation; and
(5)    damage to the recipient as the proximate result.

*Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1252 (Pa. Super. 1983);

*Sevin v. Kelshaw*, 611 A.2d 1232 (Pa. Super. 1992); *Scaife Co. v. Rockwell-Standard*

*Corp.*, 285 A.2d 451, 454 (Pa. 1971). *See also N. Penn Towns, LP v. Concert Golf*

*Partners, LLC*, 554 F. Supp. 3d 665, 701 (E.D. Pa. 2021), citing *Bucci v. Wachovia*

*Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008). Moreover, "a fraud claim

based on an omission has the same elements as fraud, 'except that an omission is

actionable as fraud only where there is an independent duty to disclose the omitted

information.'" *N. Penn Towns*, 554 F. Supp. 3d at 701, quoting *Bucci*, 591 F. Supp.

2d at 783. Here, POM cannot establish the elements of a fraud claim under

Pennsylvania law.

As a threshold question, while Eckert had an affirmative obligation to disclose information *related to the potential conflict and advance conflict waiver* (which is part of POM's breach of fiduciary duty claim), Eckert had no obligation to disclose strategy or confidential information related to another Eckert representation. That appears to be exactly what POM is alleging. *See* Second Amended Complaint at ¶123. There is no affirmative duty to disclose another client's confidential information or potential strategy contrary to POM's allegations.

Further, a plaintiff must plead with specificity justifiable reliance to sustain a cause of action for fraudulent misrepresentation. *See Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 840 (Pa. Super. 2005) (recognizing that a fraudulent misrepresentation claim requires justifiable reliance). Whether a plaintiff is able to demonstrate justifiable reliance rests on the following:

> It is the fundamental principal of the law of fraud, regardless of the form of the relief sought, that in order to secure redress, the representee must have relied upon the statement or representation as an inducement to his action or injurious change of position. The recipient of a fraudulent transaction can recover against its maker if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable.

*Id.*, quoting *Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 11 (Pa. Super 2004).

Here, putting aside the question of whether Eckert had a duty to disclose *specific strategy related to its representation of another client to POM*, there is no question that POM did not rely upon any purported omissions by Eckert. Indeed,

9

there could be <u>no</u> reliance at all upon the alleged omissions by Eckert that purportedly give rise to POM's fraud claim.  In spite of any actions taken by Eckert with respect to Parx, POM was fully aware that Eckert would not represent POM in Pennsylvania.[5]  POM continued its lobbying efforts to legalize its games in Pennsylvania.  POM-PA proceeded with filing the Commonwealth Court Cases to determine the legality of its games in Pennsylvania.  POM later commenced this action alleging a breach of fiduciary duty claim against Eckert *before receipt of the alleged e-mails and information that purportedly give rise to POM's fraud claim*. Thus, POM did not rely upon any statements or omissions of Eckert with respect to what it did here in Pennsylvania as, during the entirety of the period referenced in its fraud count (January 2017- October 2019), POM was represented by other counsel.

Presumably, had POM "relied" upon any of Eckert's purported omissions, POM would not have filed this lawsuit or its motion for preliminary injunction before receiving any of the purported e-mails.  Nevertheless, POM proceeded with its extensive lobbying efforts and the filing of POM-PA's Commonwealth Court Cases without receiving a single e-mail referenced in its pleading.  POM did not rely upon any purported omissions by Eckert in connection with POM's filing of this lawsuit,

---

[5] To the extent that POM relies upon omissions concerning the purported conflict and advance waiver, those alleged omissions are subsumed within POM's breach of fiduciary duty claim.

the motion for preliminary injunction, and frankly, any other actions taken by POM either before or during this litigation.

Even to the extent that POM alleges that, had it been aware of the purported omissions, it would not have continued to use Eckert in Virginia, such an argument is belied by POM's own allegations, which stated:

> 91.     POM confronted Eckert [in the fall of 2019] concerning its impermissible conflict and requested that Eckert withdraw from any representation of Parx Casino adverse to POM. Eckert refused to withdraw on behalf of Parx Casino and misrepresented that Eckert obtained an advance waiver of any conflict.

*See* Second Amended Complaint, ¶91.

Contrary to what POM states in order to try to plead a fraud claim, POM wanted Eckert to withdraw from representing Parx when it allegedly learned about Eckert's "impermissible conflict."  POM certainly did not rely upon the alleged omissions to continue to have Eckert represent POM in Virginia; instead, POM wanted Eckert to continue so long as Eckert withdrew as counsel for Parx.  There was no justifiable reliance here.  As POM cannot plead or establish justifiable reliance in connection with this case, POM's fraud claim is implausible and fatally flawed. Accordingly, this Court should dismiss Count III with prejudice.

### C. **POM's Abuse of Process Claim is Fatally Flawed.**

POM's allegations fail to give rise to an abuse of process claim under well-established common law. Under Pennsylvania law, "abuse of process" is defined as

"the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998), quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (1993). To establish an abuse of process claim it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. *Id.* Abuse of process is the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. *See McGee v. Feege,* 535 A.2d 1020, 1023 (Pa. 1987). Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question. *See Rosen,* 627 A.2d at 192.

POM rests its abuse of process claims entirely on *the initiation of the State Court Cases* filed *by Eckert against entities other than POM*. The crux of POM's abuse of process claim is <u>not</u> the perversion of any actual legal process within those cases after initiation of the process. Courts in the Third Circuit, however, have routinely dismissed such abuse of process claims in the absence of allegations that the process itself was perverted or used for an improper purpose. *See, e.g., Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 22 (E.D. Pa. 1992) (dismissing abuse of process counterclaim because defendant failed to allege that plaintiff "abused the process ***after*** its issuance."); *Sondesky v. Cherry Scaffolding, Inc.*, 2017

12

WL 3873578, at *4 (E.D. Pa. Sept. 5, 2017) (holding that plaintiff "cannot maintain a claim for abuse of process when she has failed to allege any act by the Defendants ***after the process was initiated***."); *Larry Pitt & Assocs. v. Lundy Law, LLP*, 2013 WL 6536739, at *8 (E.D. Pa. Dec. 13, 2013) (dismissing abuse of process claims that only alleged improper motive in filing lawsuit); *Project Mgmt. Inst., Inc. v. Ireland*, 2003 WL 23162399, at *7 (E.D. Pa. Dec. 30, 2003) (denying summary judgment on plaintiffs' abuse of process claim because they "do not allege, or produce any evidence, that defendant was responsible for a perversion of a process after it had issued.")

Moreover, under Pennsylvania law, simply because the motive may have been improper or mixed, as POM alleges, offers no basis to assert an abuse of process claim under Pennsylvania law.  It is well-established that an "attorney cannot be liable for doing nothing more than carrying out the process to its authorized conclusion, even though with bad intentions."  *See, e.g. Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. 1984); *Hart v. O'Malley*, 647 A.2d 542, 552 (Pa. Super. 1994).  Indeed, in *Hart*, the Court stated that "[i]t is not enough that the process employed was used with a collateral purpose in mind," as similarly alleged by POM. *Id.  See also* Second Amended Complaint at ¶131. Review of the docket entries in these actions show that Eckert, on behalf of Parx, litigated the State Court Cases against a number of entities that had POM games, and those cases were carried out to

13

their authorized conclusion.  *See* Exhibit "D".  Neither POM nor POM-PA was a party to those cases.  Complaints were filed; preliminary objections were asserted and ultimately *overruled by the Courts.  Id.*  Later, the cases were voluntarily discontinued.  *Id.* There was no abuse of process as to POM because POM was neither sued nor subpoenaed in those cases, and POM has not alleged any perversion of the legal process in any of the State Court Cases.  POM merely asserts that the motive in prosecuting those cases was improper.  *See* Second Amended Complaint at ¶¶130-131. POM freely concedes that the State Court Cases were filed for a "declaration that POM's machines constitute a public nuisance as illegal gambling machines," which was the purpose for which the declaratory judgment actions were filed and what those complaints stated.  *Id.* at ¶129.  Thus, in the absence of any perversion of the legal process, POM's abuse of process claim is implausible, and accordingly, the Court should dismiss with prejudice Count IV.

### D. <u>POM Cannot Recover any Alleged Attorneys' Fees.</u>

In connection with its breach of fiduciary duty claim (Count II) and its abuse of process claim (Count IV), POM seeks attorneys' fees.  POM characterizes the attorneys' fees, as follows:

> b. An award of compensatory damages equal to the fees, expenses and costs incurred by POM in litigating this case, which has been necessary to enforce the fiduciary duties owed by Defendants to POM;

14

c.      An award of compensatory damages equal to the fees, expenses,

and costs incurred by POM in litigating those state-court actions [the

Commonwealth Court Cases brought by POM-PA] that were

necessitated by Defendants' efforts to orchestrate the law-enforcement

and/or regulatory actions against POM and/or its machines;

d.      An award of compensatory damages equal to the fees, expenses,

and costs incurred by POM in litigating the state-court actions [the State

Court Cases] filed by Defendants on behalf of Parx that were adverse to

the interests of POM and/or its machines (identical to the damages

sought in the abuse of process claim).

*See* Second Amended Complaint, whereas clause to Count II.

POM is not entitled to any of the aforementioned attorneys' fees as an alleged

measure of its compensatory damages in this case. [6]

## 1. The American Rule Bars Recovery of Attorneys' Fees in this Case.

Under the American Rule, POM is not entitled to attorneys' fees incurred in

connection with this case – even in the context of an alleged breach of fiduciary duty

claim.  In Pennsylvania, attorneys' fees are recoverable only in a case involving an

---

[6] Defendants are not challenging POM's right to seek disgorgement of legal fees that it paid to Eckert in connection with Eckert's representation of POM in Virginia as part of its breach of fiduciary duty claim.

agreement by the parties that provides for such recovery or based upon a statute permitting the recovery of attorneys' fees. *See, e.g., Corace v. Balint*, 210 A.2d 882, 887 (Pa. 1965); *Shanks v. Alderson*, 582 A.2d 883, 885 (Pa. Super. 1990) (even where conduct is alleged to have been fraudulent or outrageous, a litigant is still responsible for counsel fees incurred in prosecuting his own case); *Hart v. O'Malley,* 781 A.2d 1211, 1217 (Pa. Super 2001) (even in *Dragonetti* case where a litigant is entitled to recover her fees in defending the underlying action, she may not recover the attorneys' fees in the prosecution of the case). Neither situation is present here.

Recently, in an unpublished decision, the Third Circuit looked at the recovery of potential damages in a breach of fiduciary duty action. See *AVCO Corp. v. Veronica Saltz Turner*, 2022 WL 2901015 at *4 (3rd Cir. July 22, 2022). In *AVCO*, the Third Circuit affirmed the district court's refusal to permit recovery of attorneys' fees in prosecuting the breach of fiduciary duty claim holding, "the Pennsylvania Supreme Court has 'consistently reaffirmed' the American Rule: 'in this Commonwealth, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Id.*, citing *Lavelle v. Koch*, 617 A.2d 319, 323 (Pa. 1992). Accordingly, there is simply no basis for POM to request attorneys' fees in connection with this case, and the Court should dismiss the request.

16

### 2. POM Cannot Recover Attorneys' Fees Incurred by Other Entities and Not POM.

With respect to POM's request to seek attorneys' fees associated with the various state-court cases, there is no basis for such relief.

With respect to the State Court Cases, neither POM entity were parties to those cases, and they were not subpoenaed. *See* Exhibit "D". The cases were voluntarily discontinued. Moreover, to the extent that a POM entity had any interest in those cases and/or was required to incur legal fees, it would be POM-PA and not POM.

With respect to the Commonwealth Court Cases, POM-PA and not POM is the plaintiff. POM-PA is not a party here, and there are no allegations that Eckert represented POM-PA. As such, POM cannot recover the attorneys' fees incurred by a different corporate entity in separate actions. *See, e.g. Sams v. Redevelopment Auth. of City of New Kensington*, 244 A.2d 779 (Pa. 1968).

In *Sams*, the Redevelopment Authority sought to condemn a parcel of real property owned by two individuals "as copartners." *Id*. at 781. In response, those individuals—who, via a separate legal entity, also owned a second parcel of land near their condemned property—invoked the "doctrine of unity of use," which required them to show that the condemned parcel and the second parcel were owned by the same entity. *Id*. The landowners argued that the Court should pierce the corporate veil in order to find unity of use, since the two landowners at issue

17

ultimately controlled both parcels, albeit via different legal structures. *Id*. The

Pennsylvania Supreme Court, invoking traditional veil-piercing rules, refused:

> Here the corporate shareholders are requesting that the corporate enterprise, voluntarily formed for certain business advantages, ought to be disregarded for their benefit in order to receive increased damages as a result of the present condemnation proceedings. This we refuse to do.
>
> **In our view, one cannot choose to accept the benefits incident to a corporate enterprise and at the same time brush aside the corporate form when it works to their (shareholders') detriment**. The advantages and disadvantages of the corporate structure should be seriously considered and evaluated at the time such organization is contemplated and after incorporation has been selected, the **shareholders cannot be heard to argue that the courts should not treat them as a corporation for some purposes and as a corporation for other purposes, whichever suits their present economic interest**.

*Id*. at 781 (emphasis added).

Both state and federal courts have cited *Sams* in decisions rejecting

plaintiffs' efforts to recover against law firms for damages allegedly incurred by

entities other than the respective plaintiff(s). In *J.W. Hall, Inc. v. Nalli*, 2017 WL

626715 (Pa. Super. Feb. 15, 2017), plaintiff brought claims for legal malpractice

and breach of fiduciary duty. The Court "agree[d] that the rationale expressed [in

*Sams*] is directly on point and represents controlling precedent" where the plaintiff

"formed a new corporate entity, JoeWillRoger, LLC, that was separate and distinct

from both Plaintiff J.W. Hall, Inc., and themselves in their individual capacities" in

order to effectuate the re-purchase of restaurant after a bankruptcy and default that

18

plaintiff blamed, in part, on the purported failure of defendant lawyer to include sufficient protective terms in the purchase agreement plaintiff signed.  *Id*. at *6.  As the Supreme Court did in *Sams*, the Superior Court invoked traditional veil-piercing principles in *Nalli* as follows:

> **It was the Halls' election to re-purchase the restaurant with their own personal monies and the funds of a newly-incorporated JoeWillRoger LLC, exclusively. Restaurant seller, Appellant/Plaintiff J.W. Hall, Inc., a separate legal entity, expended no funds in the re-purchase effort, and so it may not now identify the re-purchase payment as an actual loss it sustained for purposes of satisfying a necessary element to its legal malpractice claim**. Because the trial court's finding to this effect was dispositive of the action, it properly granted Defendants/Appellees' motion for summary judgment, and we affirm for this reason.

*Id*. (emphasis added).

Similarly, in *Gen. Nutrition Corp. v. Gardere Wynne Sewell, LL*P, 727 F. Supp. 2d 377 (W.D. Pa. 2010), the Western District Court cited *Sams* and relied on traditional veil-piercing principles to reject plaintiff's attempt to recover, in connection with its claim for legal malpractice, "an actual loss incurred by a separate and distinct corporate entity."  *Id*. at 385, 387.  The Court summarized its reasoning as follows:

> **The Court will not disregard the corporate structure that the GNC family created**.
>
> In conclusion, **the Plaintiff corporate entity, General Nutrition Corporation, has not suffered any "actual loss" itself and under Pennsylvania law, it may not pursue a legal malpractice claim for an actual loss incurred by a separate and distinct corporate entity**.

19

> Accordingly, Defendant Gardere's Motion for Summary Judgment will
> be GRANTED . . . .

*Id*. at 387-88 (emphasis added).  *See also Joyce v. Super Fresh Food Markets, Inc.*,
815 F.2d 943, 946 (3d Cir. 1987) (Third Circuit similarly rejected a party's attempt
to obtain damages incurred by another corporate entity and refused to pierce the
corporate veil to maintain damages by that different entity).

In sum, the Court should not condone POM's attempt to create damages
associated with the legal fees of another separate corporate entity, POM-PA, which
Eckert did not represent.  Rather, the Court should dismiss POM's attempts to
recover attorneys' fees allegedly incurred by POM-PA in connection with the
Commonwealth Court or State Court Cases consistent with Pennsylvania law and
the district court cases applying Pennsylvania law.  *See, e.g.*, *Lin v. Rohm & Haas
Co.*, 2015 WL 273035, at *4, 6 (E.D. Pa. Jan. 20, 2015) (Court refused to permit
plaintiff "to collect damages that belong to" her single-member Pennsylvania LLC,
and reasoning that "When she structured EverNu in this way, she forfeited her
rights to any property acquired by EverNu, such as EverNu's MAA patent[ and]
her right to sue for damages that belong to EverNu. . . . She therefore cannot now
try to avoid that cost because it suits her economic interests in this litigation.").
Accordingly, this Court should grant defendants' motion and dismiss with
prejudice all requests for attorneys' fees by POM.

20

## <u>CONCLUSION</u>

For all of the foregoing reasons, defendants, Eckert Seamans Cherin & Mellott, LLC, Mark S Stewart and Kevin M. Skjoldal, respectfully request that this Court enter its proposed form of Order, grant their motion and dismiss Counts I, III, IV, and all requests for attorneys' fees, from the Second Amended Complaint of plaintiff, Pace-O-Matic, Inc.

Respectfully submitted,

_____

ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2766/2854 (telephone)
(215) 299-2150 (facsimile)
rtintner@foxrothschild.com
pbuckley@foxrothschild.com

**Counsel for Defendants,**
**ECKERT SEAMANS CHERIN & MELLOTT,**
**LLC, MARK S. STEWART, KEVIN M.**
**SKJOLDAL**

Date:   August 30, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Docket No. 1:20-cv-00292 |
| | : | |
| ECKERT SEAMANS CHERIN & | : | |
| MELLOTT, LLC, | : | (Judge Jennifer P. Wilson) |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Robert S. Tintner, Esquire, hereby certify that, consistent with Local Rule
7.8(b)(2), this Brief in Support of Motion to Dismiss has 4,991 words using the
word-count feature.

_____
ROBERT S. TINTNER, ESQUIRE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                          :
                                             :
                Plaintiff,    :
                                             :
    v.                                       :        Docket No. 1:20-cv-00292
                                             :
ECKERT SEAMANS CHERIN &                      :
MELLOTT, LLC,                                :        (Judge Jennifer P. Wilson)
                                             :
               Defendant.    :
                                             :

## CERTIFICATE OF SERVICE

I, Robert S. Tintner, Esquire, hereby certify that, on this 30th day of August, 2022, I served a true and correct copy of the foregoing Brief in Support of Motion to Dismiss, via ECF, upon all counsel of record in this case.

_____
ROBERT S. TINTNER, ESQUIRE