IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PACE-O-MATIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-292-JPW |
| | ) | |
| v. | ) | Judge Wilson |
| | ) | |
| ECKERT SEAMANS CHERIN & | ) | |
| MELLOTT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PACE-O-MATIC, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

STANDARD OF REVIEW…………………………………………………………...1

ARGUMENT……………………………………………………………………………1

   I.  The Court Should Deny the Motion as Untimely………………………………1

   II.  Count I Is Not Moot…………………………………………………………4

   III. The SAC Plausibly Pleads a Fraud Claim……………………………………..5

      A.  Eckert owed a duty to disclose material facts to its client, POM……………..5

      B.  POM justifiably relied on Eckert's material omissions………………………8

   IV.  The SAC Plausibly Pleads an Abuse of Process Claim……………………11

   V. POM Can Recover Its Fees Incurred in This Litigation as Compensatory Damages…………………………………………………………………...16

   VI.  POM Can Recover Fees Incurred in Connection with Collateral Litigation Necessitated by Eckert's Unlawful Conduct…………………………………17

CONCLUSION………………………………………………………………...20

i

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aetna Cas. Sur. Co. v. Nationwide Mut. Ins.*, 471 F. Supp. 1059 (M.D. Pa. 1979) 17

*Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 WL 3046586 (E.D. Pa. Aug. 3, 2010) ..................................................................................16

*Avco Corp. v. Turner*, No. 2:20-cv-4073, 2020 WL 5630543 (E.D. Pa. Sept. 21, 2020)..................................................................................................................16

*Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015 (3d Cir. July 22, 2022)...16

*Axcan Scandipharm, Inc. v. Reed Smith LLP*, No. 03827, 2007 Phila. Ct. Com. Pl. LEXIS 78 (Pa. Com. Pl. Mar. 26, 2007) ............................................................17

*Bell v. Township of Concord*, 759 F. Supp. 2d 621 (E.D. Pa. 2011).......................13

*Berne Corp. v. Gov't of The Virgin Islands*, 570 F.3d 130 (3d Cir. 2009)...............8

*De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, No. 06-cv-2319, 2008 WL 4348074 (E.D. Pa. Sept. 23, 2008)................................................................17

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) ............................................11

*Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010)..................................................2

*Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604 (3d Cir. 1995)...7

*Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP*, 727 F. Supp. 2d 377 (W.D. Pa. 2010).................................................................................................................19

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297 (3d Cir. 2003). 12, 14

*Gibbs v. Ernst*, 647 A.2d 882 (Pa. 1994)................................................................7

**Cases (Continued)**                                                                 **Page(s)**

*J.W. Hall, Inc. v. Nalli*, No. 771-WD-2016, 2017 WL 626715 (Pa. Super. Ct. Feb. 15, 2017) ........................................................................................................19

*Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d 943 (3d Cir. 1987) .................19

*Levert v. Philadelphia Int'l Records*, No. 04-cv-1489, 2005 WL 2789099 (E.D. Pa. Oct. 26, 2005) ...................................................................................................14

*Long v. Holtry*, 673 F. Supp. 2d 341 (M.D. Pa. 2009) ...........................................13

*Marcum v. Columbia Gas Transmission LLC*, 423 F. Supp. 3d 115 (E.D. Pa. 2019) ..................................................................................................................................6

*Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992) .......7

*Myers v. Shinseki*, No. 09-1558, 2012 WL 2149922 (Ct. Veterans Appeals June 14, 2012) .......................................................................................................................3

*Orabi v. Attorney General*, 738 F.3d 535 (3d Cir. 2014) .......................................15

*Perry v. McGee*, No. 04-74481, 2006 WL 8459653 (E.D. Mich. Aug. 8, 2006) ......3

*Phillips-Kerley v. City of Fresno*, No. 1:18-cv-438, 2018 WL 5255224 (E.D. Cal. Oct. 19, 2018) .........................................................................................................6

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993).........................3

*Rivera v. Monko*, 37 F.4th 909 (3d Cir. 2022)....................................................1, 14

*Segal v. Strausser Enters., Inc.*, No. 07-cv-4647, 2019 WL 2450416 (E.D. Pa. June 12, 2019) ...............................................................................................................15

*Shiner v. Moriarty*, 706 A.2d 1228 (Pa. Super. 1998)..................................... 13, 14

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007) ............................................11

*Tran v. Metro. Life Ins. Co.*, 408 F.3d 130 (3d Cir. 2005) .....................................11

**Other Authorities**                                                    **Page(s)**

Restatement (Second) of Torts § 551.........................................................................7

Restatement (Second) of Torts § 914........................................................................17

**Rules**                                                                **Page(s)**

Fed. R. Civ. P. 15 ....................................................................................................1

Fed. R. Civ. P. 6 .....................................................................................................2

Fed. R. Civ. P. 8 .....................................................................................................6

LR 15.1.................................................................................................................1, 3

The Court should deny the partial motion to dismiss filed by Defendants (collectively, "Eckert"), ECF No. 254.

## STANDARD OF REVIEW

When considering a motion to dismiss, the Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) (quotation omitted).

## ARGUMENT

### I.      The Court Should Deny the Motion as Untimely.

On July 14, 2022, the Court granted POM's motion for leave to file the Second Amended Complaint ("SAC").  ECF No. 229.  Pursuant to Local Rule 15.1(a), Eckert was deemed to have been served with the SAC on July 14 for purposes of its response deadline under Federal Rule of Civil Procedure 15(a).  LR 15.1(a) ("Unless otherwise ordered, an amended pleading that does not add a new defendant shall be deemed to have been served for the purpose of determining the time for response under Fed. R. Civ. P. 15(a), on the date the court grants leave for its filing.").  Rule 15(a)(3) required Eckert to respond to the SAC within 14 days after service, *i.e.*, by July 28.  *See* Fed. R. Civ. P. 15(a)(3).  That deadline passed without Eckert filing

either an answer or a Rule 12 motion.  POM's counsel raised this issue with Eckert's counsel by email on August 1, 2022.

More than two weeks later, on August 16, Eckert filed its motion to dismiss. ECF No. 254.  Under Local Rule 15.1(a) and Federal Rule 15(a)(3), that motion is untimely.  Eckert never filed a motion for extension under Rule 6(b).  Courts should deny dispositive motions that are untimely under the Federal Rules absent a formal motion under Rule 6(b)(1)(B).  *See Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010) (reversing grant of untimely summary-judgment motion, because movant did not comply with Rule 6(b)(1)(B)).  "[A] party must make a formal motion for extension of time and the district court must make a finding of excusable neglect . . . before permitting an untimely motion." *Id.*  Here, Eckert did not meet the response deadline, nor did it comply with Rule 6(b)(1)(B) by filing a formal motion for extension of time.  Thus, the Court should deny the motion. *Id.*

Rule 6(b)(1)(B) permits the extension of a deadline after that deadline has passed only where "the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  Because Eckert has not even claimed that excusable neglect justifies its untimely filing, POM will not address that issue in detail.  However, the motion asserts that "there was an unexpected delay in the docketing of the Second Amended Complaint following the Court's grant of POM's motion for leave," and thus "Defendants used the docketing date and receipt of the Court's e-mail serving

the Second Amended Complaint on August 2, 2022 to calculate their response deadline." ECF No. 254, at 3 n.3.

Even if properly raised in a formal motion under Rule 6(b)(1)(B), this explanation would not establish excusable neglect. The Local Rules clearly provide that the response deadline runs from "the date the court grants leave," not the date on which the amended complaint is docketed as a separate docket entry. LR 15.1(a); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 387 (1993) (explaining that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").[1] Moreover, Eckert has had access to the SAC since June 29, when POM filed a copy of the SAC as an exhibit to its motion for leave to amend. ECF No. 220-2. Thus, no delay in formally docketing the SAC as a separate docket entry should have had a practical impact on Eckert's ability to prepare a response. And to the extent that Eckert believed that

---

[1] The motion to dismiss does not claim that Eckert relied on guidance from court personnel, though POM had previously understood that to be Eckert's position. To the extent that Eckert relies on such an argument, it does not provide a basis for considering the merits of Eckert's untimely motion. *See, e.g.*, *Perry v. McGee*, No. 04-74481, 2006 WL 8459653, at *1-2 (E.D. Mich. Aug. 8, 2006) (striking untimely summary-judgment motion despite counsel's purported reliance on guidance from court staff, and explaining that "[r]eliance upon the advice and counsel of staff personnel, while understandable, does not, and shall not, ever serve as an unofficial basis for the modification of any substantive or procedural ruling by the Court"); *Myers v. Shinseki*, No. 09-1558, 2012 WL 2149922, at *2-3 (Ct. Veterans Appeals June 14, 2012) (holding that filing was untimely under court rules despite counsel's purported reliance on guidance from the clerk's office, noting that "[a]ny deviation from this Court's Rules was undertaken at counsel's peril").

the lack of a separate docket entry somehow prevented it from filing a motion to dismiss, it could have filed a motion for extension of time under Rule 6(b).  Because Eckert failed to timely respond to the SAC and also failed to comply with Rule 6(b), the Court should deny the motion to dismiss.

## II.     Count I Is Not Moot.

Eckert claims that Count I—seeking declaratory and injunctive relief—is moot in light of the stipulated injunction entered on January 27, 2022, ECF No. 191.  However, the stipulated injunction states that it "resolve[s] issues raised in the motion for preliminary injunctive relief," not all issues raised by Count I of the complaint.  ECF No. 191, at 2.  The stipulated injunction further states that "[n]othing contained herein shall be deemed a waiver of any other claims." *Id.* at 5.  By its own terms, the stipulated injunction does not purport to moot the entirety of POM's request for permanent injunctive relief.

This effect makes sense.  At the time of the stipulation, POM had received only minimal documentary evidence from Eckert.  POM needs the ability to seek all appropriate injunctive relief supported by the evidence uncovered in discovery, which remains ongoing.  Moreover, POM needs to ability to seek further tailoring of injunctive relief in light of any factual developments, such as if Defendants Stewart and/or Skjoldal were to depart Eckert Seamans for a new law firm.  The Court should deny the request to dismiss Count I.  POM also notes that Eckert does

4

not argue for the dismissal of POM's request for injunctive relief as part of Count II. *See* SAC, Count II, Prayer for Relief (h).

### III.    The SAC Plausibly Pleads a Fraud Claim.

Count III of the SAC asserts a claim for fraud based on Eckert's intentional concealment of highly material facts to POM.  *See generally* SAC, Count III. Eckert's motion to dismiss asserts two broad arguments against Count III.  First, Eckert denies that it had an obligation to disclose material facts to POM.  *See* ECF No. 258, Brief in Support of Motion to Dismiss ("Brief"), at 9.  Second, Eckert claims that the SAC does not allege facts showing that POM justifiably relied on Eckert's material omissions. *See id.* at 9-11.  Neither of these arguments has merit.

### A.    Eckert owed a duty to disclose material facts to its client, POM.

Eckert begins with what it describes as "[a] threshold question," claiming that "while Eckert had an affirmative obligation to disclose information related to the potential conflict and advance conflict waiver (which is part of POM's breach of fiduciary duty claim), Eckert had no obligation to disclose strategy or confidential information related to another Eckert representation." Brief at 9. This contention— which is not supported by citations of any authority and which Eckert does not meaningfully develop—lacks merit.

First, Eckert concedes that it "had an affirmative obligation to disclose information related to the potential conflict and advance conflict waiver."  Brief at

5

9. The bulk of the material omissions underlying POM's fraud claim relate to the "potential" conflict. *See, e.g.*, SAC ¶ 123. In fact, many of them are *central* to Eckert's conflict, such as "that Defendants were engaged in a representation directly adverse to POM's interests" and "that Defendants would contend that POM's machines constitute illegal gambling machines and/or games of chance." *Id.* Eckert concedes that it had an obligation to disclose such facts, Brief at 9, and the SAC alleges that Eckert did not disclose those facts to POM, SAC ¶ 124. Under Eckert's own logic, these material omissions would support a fraud claim.[2]

Second, Eckert erroneously conflates two distinct issues: whether Eckert owed a duty to disclose material facts to POM; and whether Eckert owed a duty to maintain certain confidences of Parx or other casino clients. Eckert clearly had an independent duty to disclose material facts to POM. Under Pennsylvania law, such a "duty to speak" arises when there is a fiduciary relationship between the plaintiff and defendant. *Marcum v. Columbia Gas Transmission LLC*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019). An attorney-client relationship constitutes a fiduciary

---

[2] Eckert implies that these material omissions cannot support a fraud claim because they *also* support a breach of fiduciary duty claim. No authority supports such an argument. To the contrary, "[l]itigants often bring multiple claims based on the same conduct." *Phillips-Kerley v. City of Fresno*, No. 1:18-cv-438, 2018 WL 5255224, at *6 (E.D. Cal. Oct. 19, 2018). Moreover, even if there were some incompatibility between these claims—which there is not—Rule 8 expressly permits plaintiffs to plead claims in the alternative, even if those claims are inconsistent. *See* Fed. R. Civ. P. 8(d)(2), (3).

relationship. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). Thus, Eckert indisputably had a "duty to speak" under Pennsylvania law. And that duty required Eckert to disclose all "material fact[s]" to POM. *Gibbs v. Ernst*, 647 A.2d 882, 889 n.12 (Pa. 1994). In particular, Eckert owed a duty to disclose to POM facts that were material to whether POM would hire Eckert, continue to retain Eckert, and pay legal fees to Eckert. *See* Restatement (Second) of Torts § 551 (explaining that fraud liability arises where a defendant conceals a fact that the defendant "knows may justifiably induce the [plaintiff] to act or refrain from acting in a business transaction"); *see also Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 611 (3d Cir. 1995) (noting that Pennsylvania courts follow § 551).

Eckert does not dispute that the omissions underlying the fraud claim are material, nor could it do so plausibly. It is difficult to imagine *any* client who would hire or continue paying a law firm engaged in such wide-ranging and ruthless efforts to destroy the client. Instead, Eckert claims that a different legal obligation—its duty of confidentiality to Parx—prevented Eckert from disclosing these material facts to POM. This contention does not affect the materiality of the facts Eckert concealed or its duty to disclose them. At best, it constitutes something akin to an impossibility defense. But that purported impossibility was of Eckert's own making: *Eckert* chose to knowingly take on a client that another client hired Eckert to destroy. That choice

7

by Eckert—unlawful in its own right—caused the dilemma Eckert claims to face. Eckert does not cite any case supporting the notion that a defendant's own misconduct provides an impossibility defense (or any similar defense) to a fraudulent-omission claim. To the contrary, "a party may not rely on impossibility if it is a condition of the party's own making." *Berne Corp. v. Gov't of The Virgin Islands*, 570 F.3d 130, 140 (3d Cir. 2009) (contempt case). If Eckert believes that there is any inconsistency between its disclosure obligations to POM and its confidentiality obligations to other clients, it should not have accepted representations that it *knew* would generate such a conflict. *See* SAC, ¶¶ 9-16.

### B.    POM justifiably relied on Eckert's material omissions.

Eckert also argues that POM failed to plead justifiable reliance on Eckert's material omissions. Brief at 9-11. As pled in the SAC, POM's fraud claim alleges that Eckert failed to disclose a number of highly material facts, including "that Defendants were engaged in a representation directly adverse to POM's interests; that Defendants would contend that POM's machines constitute illegal gambling machines and/or games of chance; that Defendants would aggressively seek criminal and regulatory actions against POM; that Defendants would launch extensive lobbying and/or PR efforts that would severely harm POM; that Defendants would ghostwrite legislation whose intent and effect would be to outlaw POM's business; or that Defendants intended to participate in litigation directly adverse to POM

8

and/or to POM's interests."  SAC, ¶ 123.  The SAC further alleges that, "[h]ad Defendants disclosed these material facts to POM, POM would not have continued as a client of Eckert and would not have continued to pay substantial fees to Eckert." SAC ¶ 126.  But "[i]n reliance on these highly material omissions, POM continued as a client of Eckert and continued to pay substantial legal fees to Eckert, ultimately paying $820,554 in fees to Eckert."  SAC ¶ 127.

Little of Eckert's argument responds to the fraud claim actually pled in the SAC.  Eckert first states that "POM was fully aware that Eckert would not represent POM in Pennsylvania."  Brief at 10.  This is irrelevant.  POM's fraud claim does not rest on Eckert's failure to disclose whether it would represent POM in Pennsylvania. *See* SAC ¶¶ 121-127.  Nor does POM allege that it would have taken different lobbying or communications actions in Pennsylvania had Eckert disclosed all material facts. *See id.*  Instead, the SAC alleges that POM would not have used Eckert as its lawyer—and would not have paid Eckert more than $800,000 in fees— had it known the material facts that Eckert concealed.  SAC ¶¶ 126-127.  POM also would not have disclosed its "highly sensitive, proprietary, confidential, and non-public information" to a law firm actively seeking to destroy POM.  SAC ¶ 22.

Next, Eckert claims that POM could not have relied on any material omissions, because POM did not receive Eckert's internal emails until discovery in this litigation.  Brief at 10-11.  This contention misunderstands the relevance of

9

Eckert's incriminating internal emails. Eckert had an obligation to disclose all material facts to POM, regardless of whether Eckert personnel sent internal emails memorializing those material facts. Eckert's internal emails constitute evidence of the fact that Eckert knowingly concealed material facts. But the SAC does not claim that POM relied on those emails; it alleges that POM relied on the omission of certain highly material facts, several of which happen to be evidenced in Eckert's internal emails. SAC ¶¶ 121-127.

Finally, Eckert claims that justifiable reliance is somehow inconsistent with the fact that, when POM first learned of Eckert's conflict, POM demanded that Eckert withdraw from its representation of Parx. Brief at 11 (discussing SAC ¶ 91). In Eckert's telling, this demand indicates that "POM certainly did not rely upon the alleged omissions to continue to have Eckert represent POM in Virginia; instead, POM wanted Eckert to continue so long as Eckert withdrew as counsel for Parx." *Id.* This claim has several flaws. For one thing, when POM made this demand, it did not yet know of the numerous ways in which Eckert had attempted to destroy POM. Not until discovery in this case did POM learn the full scope of Eckert's misconduct, including most of the material omissions underlying the fraud claim. *See* SAC, ¶ 123. Thus, POM's response at that time does not reflect how POM would have acted had it known the material facts that Eckert concealed.

10

In addition, the SAC *does not* allege that POM wanted Eckert to continue representing POM.  Instead, it alleges that POM wanted Eckert to stop representing Parx in matters adverse to POM.  SAC ¶ 91.  Those are two distinct concepts, as illustrated by the fact that POM sought an injunction against Eckert's continued representation of Parx in cases adverse to POM (an injunction to which Eckert ultimately stipulated, ECF No. 191), even though Eckert no longer represented POM.  Eckert's argument rests on a purported fact that does not appear in the SAC.  At best, this argument raises a factual dispute.  *Cf. Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 139 (3d Cir. 2005) ("We stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury."); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) ("[J]ustifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction.").  A motion to dismiss is not "[t]he proper place to resolve factual disputes."  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).  The Court should deny the motion to dismiss.

### IV.    The SAC Plausibly Pleads an Abuse of Process Claim.

Count IV of the SAC asserts an abuse of process claim based on the "coordinated litigation strike" that Eckert launched against locations hosting POM

11

games.  *See* SAC ¶¶ 45-55, 128-133.  Unlike many abuse of process cases, here, the primary purposes for Eckert's conduct are clear, because Defendant Mark Stewart memorialized them in a contemporaneous email:

> a. "[The lawsuits] would put [POM] on the defensive, having to run around, spend money, and dedicate time and personnel resources to defending the numerous suits;"
>
> b. "[The lawsuits] would draw public and political attention to the illegality of [POM's] machines;"
>
> c. "[The lawsuits] could give businesses we don't sue pause about keeping their [POM] machines and certainly would chill the desire of businesses who don't have them from getting them[.]"

SAC, ¶ 131.  Eckert seeks to dismiss Count IV based on three arguments.

First, Eckert claims that POM has failed to allege a use of legal process.  "In Pennsylvania, the word process as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 310 (3d Cir. 2003) (quotation omitted).  Eckert asserts that POM's claim rests "entirely on the initiation of [certain] State Court Cases" and that the initiation of a case does not support an abuse of process claim.  Brief at 12.  As an initial matter, the abuse of process claim rests not merely on the fact that Eckert initiated litigation but instead on "initial court filings, summons, and other filings that necessitated a response or argument from POM." SAC ¶ 129.  Thus, unlike the cases cited by

12

Eckert, *see* Brief at 12-13, Court IV does not rest solely on the mere initiation of litigation.

Moreover, cases applying Pennsylvania law have recognized that the filing and pursuit of litigation might support an abuse of process claim where the primary purpose is to accomplish improper post-initiation purposes. *See Shiner v. Moriarty*, 706 A.2d 1228, 1236-37 (Pa. Super. 1998) (upholding abuse of process claim based in part on the filing and continued litigation of an equity action); *cf. Bell v. Township of Concord*, 759 F. Supp. 2d 621, 631 (E.D. Pa. 2011) ("Here, the question is whether Plaintiff has pointed to facts of record sufficient to show that Defendant Kavadias initiated the DJ Complaint for a purpose for which the Code was not intended but instead was a purpose of coercion or extortion."). Here, Eckert could not have accomplished its intended purposes until after the initiation of litigation. *See* SAC ¶ 131.

Second, Eckert claims that, although its "motive may have been improper or mixed," POM nevertheless has failed to allege an improper purpose underlying Eckert's use of process. *See* Brief at 13-14. Abuse of process requires that the defendant's use of process "was ***primarily*** to accomplish a purpose for which the process was not designed." *Long v. Holtry*, 673 F. Supp. 2d 341, 355 (M.D. Pa. 2009) (emphasis added). The term "primarily" is critical: the mere existence of purportedly mixed motives does not immunize a defendant from an abuse of process

13

claim. "A court must look at the legal process used and determine whether it was used primarily—not exclusively—to achieve a goal unauthorized by the procedure in question. If [a defendant's] *primary* purpose in [using legal process] was not legitimate, [an] abuse of process claim can survive, even if [the defendant's] *secondary* purpose was legitimate." *Levert v. Philadelphia Int'l Records*, No. 04-cv-1489, 2005 WL 2789099, at *5 (E.D. Pa. Oct. 26, 2005) (internal citation omitted).

The SAC alleges that Eckert filed the state-court lawsuits "primarily" for the purposes set out in the email sent by Mark Stewart and produced by Eckert during discovery. SAC, ¶ 131.[3] At the motion to dismiss stage, the Court must take these allegations as true. *Rivera*, 37 F.4th at 914. POM has alleged that these were Eckert's primary purposes for filing the state-court lawsuits. SAC, ¶ 131. And these are improper purposes for the use of legal process. *Compare, e.g.*, *Shiner*, 706 A.2d at 1236 (finding abuse of process where legal process was used to cause financial injury to plaintiff); *Gen. Refractories*, 337 F.3d at 308 (explaining that "draining [an] opponent's] resources" can constitute an improper purpose supporting abuse of

---

[3] Eckert asserts that "POM freely concedes that the State Court Cases were filed for a 'declaration that POM's machines constitute a public nuisance as illegal gambling machines.'" Brief at 14 (quoting SAC ¶ 129). The passage quoted by Eckert describes the relief sought by Eckert; it does not concede that Eckert had a good-faith belief that it was entitled to such relief or that such a belief constituted the primary motivation for filing the cases.

14

process); *Segal v. Strausser Enters., Inc.*, No. 07-cv-4647, 2019 WL 2450416, at *14-15 (E.D. Pa. June 12, 2019) (finding that filing litigation to interfere with a business transaction constituted abuse of process). Thus, POM has adequately pled that Eckert used legal process primarily for improper purposes.

The state-court dockets attached to Eckert's brief only buttress this position.[4] Those dockets show that Eckert filed a number of lawsuits, necessitating the expenditure of legal fees responding to the lawsuits, and then Eckert dismissed those lawsuits without litigating them to a resolution of the merits. Such a pattern is exactly what one would expect if Eckert had filed the lawsuits primarily to force POM to expend legal fees, draw negative attention to POM's business, and deter other companies from doing business with POM in the future.

Third, Eckert observes that the state-court cases at issue were filed against companies that hosted POM games, not directly against POM itself. *See, e.g.*, Brief at 12, 14. Eckert does not clearly articulate the relevance of this observation. To the extent that Eckert believes this fact impacts the third element of abuse of process—harm caused to the plaintiff—such an argument would lack merit. POM has alleged that it incurred substantial legal fees to oppose the lawsuits. SAC ¶ 132. Moreover, that allegation is perfectly plausible. Business partners routinely agree

---

[4] The Court has authority to take judicial notice of the state courts' dockets. *Orabi v. Attorney General*, 738 F.3d 535, 537 (3d Cir. 2014).

to indemnify one another's legal fees, such as when a manufacturer agrees to indemnify its retailers or distributors for claims related to the manufacturer's products. There would be nothing surprising about POM paying the legal fees of its distributors for litigation involving the legality of POM's products. The Court should deny the motion to dismiss.

## V. POM Can Recover Its Fees Incurred in This Litigation as Compensatory Damages.

A number of federal district courts have held that Pennsylvania law permits a plaintiff in POM's position to recover attorneys' fees incurred remedying a breach of fiduciary duty by a former lawyer who engaged in a conflicted representation. *See, e.g.*, *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 WL 3046586, at \*5-6 (E.D. Pa. Aug. 3, 2010). However, on July 22, 2022, the Third Circuit issued an unpublished opinion rejecting that categorical rule. *Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015, at \*4 (3d Cir. July 22, 2022). While POM respectfully submits that cases like *Airgas* correctly applied Pennsylvania law, *Avco* also differs from this case in a key respect. In *Avco*, the defendant's conflicted representation had already ended by the time the federal lawsuit was filed. *Avco Corp. v. Turner*, No. 2:20-cv-4073, 2020 WL 5630543, at \*1, \*2 (E.D. Pa. Sept. 21, 2020). Here, in contrast, Eckert did not cease its representations directly adverse to POM until it was forced to stipulate to an injunction in this litigation. Indeed, Eckert refused even to acknowledge the conflict—to POM or to the Court—until discovery

16

motions practice forced its hand. *See* ECF Nos. 222 & 166. Thus, the fees incurred by POM in this litigation are akin to fees incurred to having a conflicted lawyer disqualified from an adverse representation, which are recoverable as compensatory damages. *See Axcan Scandipharm, Inc. v. Reed Smith LLP*, No. 03827, 2007 Phila. Ct. Com. Pl. LEXIS 78, at *8-11 (Pa. Com. Pl. Mar. 26, 2007). *Avco* is thus inapposite.

## VI. POM Can Recover Fees Incurred in Connection with Collateral Litigation Necessitated by Eckert's Unlawful Conduct.

Eckert also claims that POM cannot recover fees incurred in connection with collateral state-court cases caused by Eckert's breach of fiduciary duty. Brief at 17-20. Eckert does not dispute that fees in those separate cases could be recoverable (at least in principle) based on the third-party litigation rule.[5] Instead, Eckert asserts that neither POM nor its corporate affiliates were direct parties in the state-court

---

[5] "Pennsylvania recognizes the Restatement (Second) of Torts § 914, which provides that 'one who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for the loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.'" *De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, No. 06-cv-2319, 2008 WL 4348074, at *14 (E.D. Pa. Sept. 23, 2008) (quoting Restatement (Second) of Torts § 914) (brackets omitted); *see also, e.g., Aetna Cas. Sur. Co. v. Nationwide Mut. Ins.*, 471 F. Supp. 1059, 1067 (M.D. Pa. 1979) ("Under Pennsylvania law, where the wrongful acts of the Defendant have involved the Plaintiff in litigation with others or placed him in such relations with others as to make it necessary to incur costs and expenses to protect his interests, such costs and expenditures should be treated as legal consequences of the original wrongful act.").

litigation filed by Parx, and that only a POM subsidiary—not POM itself—was a party in the litigation filed in the Pennsylvania Commonwealth Court. *See id.* To support this argument, Eckert cites a number of cases that it claims stand for the proposition that "POM cannot recover the attorneys' fees incurred by a different corporate entity." *Id.* at 17.

As an initial matter, the Complaint alleges that **POM** paid legal fees in these collateral state-court actions, and the SAC seeks recovery of legal fees ***paid by POM***. *See* SAC ¶¶ 43, 118, 132; Count II, Request for Relief (c), (d); Count IV, Request for Relief (a). Eckert cites no authority for the proposition that POM cannot recover amounts that POM itself incurred. There would be nothing surprising about POM itself paying for legal fees incurred in litigation where a POM subsidiary is the party, nor (as noted above) if POM itself were to pay the legal fees incurred by entities that host POM games. Those expenditures by POM are direct losses of POM.

Moreover, the cases cited by Eckert do not support its expansive argument. It is true that each of those cases declined to allow an entity to recover for losses sustained by a corporate affiliate. But those cases do not stand for the proposition that an entity can *never* recover for losses sustained by a corporate affiliate. Instead, many of the cases focused on case-specific facts regarding whether the plaintiff itself had sustained any financial loss. For example, in *General Nutrition Corp. v. Gardere Wynne Sewell, LLP*, the court emphasized that it was "undisputed that

18

Plaintiff General Nutrition Corporation has not paid its inter-company liability to General Nutrition Incorporated. Plaintiff General Nutrition Corporation has not paid anything to any entity or person as a result of, or related to, [the defendant's tortious activity]." *Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP*, 727 F. Supp. 2d 377, 384 (W.D. Pa. 2010). Similarly, in *J.W. Hall, Inc. v. Nalli*, the court focused on the fact that the plaintiff entity "expended no funds in the re-purchase effort, and so it may not now identify the re-purchase payment as an actual loss." *J.W. Hall, Inc. v. Nalli*, No. 771-WD-2016, 2017 WL 626715, at *6 (Pa. Super. Ct. Feb. 15, 2017). Here, in contrast, the SAC alleges that POM "expend[ed] legal fees and other litigation expenses opposing these improper lawsuits." SAC, ¶ 132. Other cases cited by Eckert have focused on the specifics of the corporate organization and the relationship between entities. *See, e.g.*, *Joyce v. Super Fresh Food Markets, Inc.*, 815 F.2d 943, 946 (3d Cir. 1987) (emphasizing, among other things, that the entities "have separate management and are held out to the public and their employees as separate entities"). Here, the SAC does not allege comparable facts regarding the relationship between POM and its affiliates. Given the fact-intensive nature of the inquiries in the cases cited by Eckert, it is noteworthy that all of those cases involved either summary judgment or trial, not motions to dismiss under Rule 12(b)(6). The Court should deny Eckert's motion.

## **CONCLUSION**

The Court should deny the partial motion to dismiss.


Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Jeffrey B. Jensen*
Jeffrey B. Jensen\*
Michael Nolan\*
Michael Martinich-Sauter\*
Bola Adeniran\*
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com

\* Appearing by special admission

George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

***Counsel for Plaintiff Pace-O-Matic, Inc.***

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon counsel of record for all parties via the Court's ECF filing system on September 12, 2022.


*/s/ Jeffrey B. Jensen*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.8(b)(2), I certify that this brief contains 4,949 words based on the word-count feature of Microsoft Word, excluding the caption, cover, tables of contents and authorities, signature block, and certificates of service and compliance.

*/s/ Jeffrey B. Jensen*

22