Jeff B. Jensen
Partner

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Direct: 314.345.6464
Fax: 314.480.1505
jeff.jensen@huschblackwell.com

February 23, 2023

Hon. Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania

> **Re:    Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, No. 1:20-cv-292 – Letter Regarding Discovery Disputes**

Dear Judge Wilson:

Plaintiff Pace-O-Matic, Inc. ("POM") respectfully notifies the Court of two discovery disputes relating to the privilege logs prepared by Defendants Eckert Seamans Cherin & Mellott, LLC; Mark S. Stewart; and Kevin M. Skjoldal (together, "Eckert").  Counsel for POM raised the issues discussed below in a January 6, 2023 deficiency letter.  Counsel for the parties conferred regarding these issues by telephone on January 24, 2023, as well as in a series of emails.  Despite these discussions, the parties have been unable to reach an agreed resolution.

> **I.    Where Eckert has withheld documents based on the work-product doctrine, Eckert must identify which litigation the documents relate to.**

Eckert has withheld hundreds of emails based on the work-product doctrine.  It is well-established that the work-product doctrine applies only to materials prepared "in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3); *Public Interest Legal Foundation v. Chapman*, 595 F. Supp. 3d 296, 308 (M.D. Pa. 2022).[1]  "To meet the anticipation of litigation standard, the party must show more than a remote prospect or likely chance of litigation." *TransWeb, LLC v. 3M Innovative Properties Co.*, No. 10-4413, 2012 WL 2878075, at *2 (D.N.J. July 12, 2012) (quotation omitted). "Generally, the party must demonstrate the existence of an identifiable specific claim or impending litigation at the time the materials were prepared . . . ." *Id.* (quotation omitted).  Where a party withholds a document based on "the work-product doctrine, it must provide a sufficient description

---

[1] Federal law—rather than Pennsylvania law—governs the application of the work-product doctrine, even in this diversity case. *See, e.g.*, *Home Repair, LLC v. Church Mutual Ins. Co.*, 342 F.R.D. 209, 212 (M.D. Pa. 2022).

on its privilege log to demonstrate that the material was prepared because of the prospect of litigation." *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. 19-cv-4016, 2021 WL 229400, at \*8 n.7 (E.D. Pa. Jan. 22, 2021)

A party (and a court) ordinarily cannot assess whether a document was prepared in anticipation of litigation without knowing ***what*** litigation it was prepared for. "The details of the ongoing or allegedly anticipated litigation underlying an assertion of work product protection are often important, because a court must be able to tell when a document is sufficiently related to actual potential litigation as opposed to mere general issues of compliance or a purely speculative concern." *Grae v. Corrections Corp. of Am.*, No. 3:16-cv-2267, 2020 WL 3035915, at \*9 (M.D. Tenn. June 5, 2020). Thus, in many cases, a privilege log cannot establish that a document was prepared in anticipation without specifying what litigation is at issue. *See Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 93 (E.D.N.Y. 2019) ("That a document is related to litigation, even if prepared by an attorney, does not establish that it is work product. What litigation was it prepared for?").

For these reasons, courts have often required a party asserting the work-product doctrine to identify with specificity—on the party's privilege log—the litigation for which the document was prepared. *See, e.g.*, *Sulaymu-Bey*, 372 F. Supp. 3d at 94 (compelling production of a privilege log that "include[s] information about what particular litigation the document relates"); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-cv-3577, 2017 WL 134764, at \*1 (N.D. Ala. Jan. 13, 2017) (ordering that "any assertion of the work product doctrine, in particular, shall be accompanied by an identification of the specific litigation that was anticipated in creating the document at issue"); *In re Braga*, No. 10-mc-23973, 2011 WL 13349581, at \*2 (S.D. Fla. Mar. 15, 2011) ("To the extent that the privilege log asserts a work product privilege, it must list the name of the litigation (or threatened or anticipated litigation) . . . ."); *R.B. v. Ford Motor Co.*, No. 4:05-cv-481, 2006 WL 8444738, at \*1 (N.D. Fla. Sept. 22, 2006) (enumerating the elements required on a privilege log asserting work product, including that the log should "identify the litigation or anticipated litigation as to which it pertains"). Here, several factors make identification of the litigation at issue particularly necessary when assessing the applicability of the work-product doctrine.

First, many of the communications withheld by Eckert occurred long before the initiation of any litigation in which Eckert or its clients would have participated. On October 9, 2019, Eckert filed (on behalf of its client, Parx) a series of lawsuits directly alleging the illegality of POM's skill games. And on December 18, 2019, Parx (surreptitiously represented by Eckert) first attempted to participate in the Commonwealth Court litigation brought by POM against the State. A large number of emails withheld by Eckert as work product substantially predate either of those litigation efforts. Eckert has logged 20 communications in 2017 as work product, including communications as early as February 1, 2017—more than two and a half years before Eckert launched its "coordinated litigation strike" against POM in October 2019) and less than two months after Eckert started representing POM). Eckert has also logged 24 communications from 2018 as work product. The substantial temporal distance between these communications and any litigation involving Eckert raises significant questions about whether the communications were

actually prepared in anticipation of litigation. Without knowing what litigation these communications allegedly relate to, POM cannot assess the validity of Eckert's assertion of work product.

Second, the subject lines for many of the privilege-log entries—the only characterization of the substance of any of the emails—provide little support for the notion that the communications were prepared in anticipation of litigation. For some emails, the subject lines are merely uninformative. Examples include emails with no subject line, as well as emails with subject lines such as "Yes? No?"; "Skill Games"; or "[External] Scranton_Times-Tribune." Other emails suggest purposes wholly unrelated to litigation. Examples include emails with subject lines like "Draft Legislation"; "[External] Skill Games Meeting w/ Local Legislators"; "industry letter"; and "Draft Skill Game Public Nuisance Ordinance." Without identification of the litigation to which such communications relate, there is no way to assess whether the communications were actually prepared in anticipation of litigation. For these reasons, the Court should compel Eckert to produce a privilege log that, for each assertion of work product, identifies which litigation the withheld document was prepared in anticipation of. *See Sulaymu-Bey*, 372 F. Supp. 3d at 94; *Alabama Aircraft*, 2017 WL 134764, at *1; *Braga*, 2011 WL 13349581, at *2; *R.B.*, 2006 WL 8444738, at *1.

Moreover, for each litigation on which Eckert relies, the Court should also require Eckert to state the specific date on which Eckert anticipated each litigation. "[W]ork product protection is only available when there is a 'reasonable anticipation' of litigation; this requires a court to determine at what point in time litigation could reasonably have been anticipated." *State Farm Mut. Auto. Ins. Co. v. Sanders*, No. 12-cv-3052, 2014 WL 12618078, at *5 (E.D. Pa. Mar. 27, 2014) (quotation omitted). As noted above, many of the emails at issue substantially predate the filing of any potentially relevant litigation, raising questions about whether litigation reasonably could have been anticipated at the time of the communications.

In addition, in its Answer to the First Amended Complaint, Eckert contended that, "[a]t the time that Eckert undertook the representation of POM in Virginia, there was no adverse legislative action *or potential litigation* against POM on behalf of Parx Casino or any other casino." ECF No. 210, at 4 (emphasis added). Eckert began representing POM in late December 2016. Yet Eckert has withheld 13 emails from February 2017 based on work product. That position would be potentially viable only if Eckert anticipated litigation against POM less than two months after Eckert's representation of POM began. It is difficult to understand what could have happened by February 1, 2017 to lead Eckert to anticipate litigation against POM, when only weeks before "there was no . . . potential litigation against POM."

To enable POM to test the validity of Eckert's assertions of work product, the Court should require Eckert to state the specific date on which Eckert anticipated each litigation. *See, e.g.*, *Braga*, 2011 WL 13349581, at *2 (holding that where privilege log asserted the work-product doctrine, it must "state the specific date on which [the party asserting privilege] contend[s] the work product protection arose for the specific document"); *Twin City Fire Ins. Co. v. Canons Regular of Order of the Holy Cross*, No. 15-cv-4437, 2017 8315884, at *5 (D. Minn. April 11,

2017) (holding that a privilege log asserting work product "must provide the date by which [the party asserting privilege] could have anticipated litigation"); *cf. Crestek, Inc. v. IRS*, 322 F. Supp. 3d 188, 198 (D.D.C. 2018) (finding an assertion of work product sufficient because party asserting privilege "stat[ed] the date on which [it] first anticipated that litigation").

## II.    Where Eckert has asserted the attorney-client privilege over communications solely among Eckert personnel, Eckert must identify the client whose confidences support the application of the privilege.

Eckert's privilege logs indicate that it has withheld hundreds of emails solely among Eckert personnel (*i.e.*, without including any outside client representatives) based on the attorney-client privilege. For these hundreds of withheld communications, the sole explanation given for why the privilege applies is "Communication providing legal advice and/or transmitting or discussing information for the purpose of providing legal advice." These privilege-log entries fall far short of identifying a prima facie basis for applying the attorney-client privilege.

To be sure, an email solely among outside counsel may qualify for the attorney-client privilege where it discloses the contents of an otherwise privileged attorney-client communication. But here, the privilege log provides no basis for concluding that those conditions apply. Among other deficiencies, the privilege log does not even identify the client whose confidences are allegedly disclosed in the communication. This is particularly problematic here, because Eckert has claimed that it represented multiple casinos in its efforts to harm POM. Moreover, POM understands that Eckert may have withheld at least some emails based on purported attorney-client privilege belonging to Eckert itself. Even more troublingly, Eckert's description of the withheld emails (quoted above) does not even assert that the outside-counsel-only emails actually disclose client confidences.

Because Eckert's privilege log fails to identify the applicable client and explain whether that client's confidences are disclosed, the privilege log is insufficient as to communications solely among Eckert personnel. *See, e.g.*, *Siegmund v. Xuelian Bian*, No. 16-cv-62506, 2018 WL 3725775, at *6 (S.D. Fla. Aug. 1, 2018) (finding that similar privilege log entries did not establish that "a communication between two [outside] attorneys constitutes privileged information," particularly where the attorneys' law firm had handled "several engagements, representing five different clients"); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-cv-5560, 2007 WL 473726, at *6-7 (S.D.N.Y. Feb. 14, 2007) (compelling production of a document created by outside counsel where "no client name was provided in the privilege log"); *see also Braga*, 2011 WL 13349581, at *2 (requiring that a privilege log must include "an identification of the client or clients whose status generated the attorney-client claim"). For the foregoing reasons, where Eckert has withheld communications solely among Eckert personnel based on the attorney-client privilege, Eckert should be required to identify the client whose confidences are disclosed within that attorney-only communication.

Respectfully,

*/s/ Jeff B. Jansen*

Jeff B. Jensen

cc: All counsel of record (via CM/ECF)