

Fox Rothschild LLP
ATTORNEYS AT LAW

2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel 215.299.2000  Fax 215.299.2150
www.foxrothschild.com

ROBERT S. TINTNER, ESQUIRE
Direct Dial: 215-299-2766
Email Address: rtintner@foxrothschild.com

March 2, 2023

**VIA CM/ECF**

The Honorable Jennifer P. Wilson
United States District Judge
United States District Court for the Middle District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

> **Re:** ***Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 1:20-cv-00292-JPW (M.D. Pa.) – Response to Plaintiff's Letter re Discovery Disputes**

Dear Judge Wilson:

Pursuant to the Court's Rules, defendants, Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal (collectively, "Eckert"), write to respond to the letter filed by plaintiff, Pace-O-Matic, Inc. ("POM"), on February 23, 2023 (ECF No. 289) (the "Letter"). In the Letter, POM requests that the Court compel Eckert to amend or supplement its privilege logs in various respects. Letter at 1, 3, 4. Eckert addresses each of POM's demands below.

## I.    POM's own privilege log lacks the categories of information that POM has demanded from Eckert.

In the Letter, POM demands that Eckert supplement its privilege logs by (i) "identify[ing, for each document withheld on the basis of the work-product doctrine,] which litigation the document[] relate[s] to"; (ii) "stat[ing, for each such document,] the specific date on which Eckert anticipated each litigation"; and (iii) identifying, for each "attorney-client privilege[d] communication[ exchanged] solely among Eckert personnel," the specific "client whose confidences support the application of the privilege." Letter at 1-2, 3, 4.

A Pennsylvania Limited Liability Partnership

California     Colorado     Connecticut     Delaware     District of Columbia     Florida
Illinois     Minnesota     Nevada     New Jersey     New York     Pennsylvania     Texas



Not surprisingly, POM's own privilege log contains no such detail.  Although POM withheld all but one of the documents listed on its log on the basis of, *inter alia*, the work-product doctrine, POM has not, for *any* of those records, "identif[ied] which litigation the document[] relate[s] to," nor has it "stat[ed] the specific date on which [it] anticipated each litigation."  *See* POM's privilege log, attached hereto as Exhibit A, *passim*.  Yet POM demands such disclosures from Eckert.

POM also asserts that all fourteen of the documents listed on its privilege log are protected from disclosure by the attorney-client privilege.  *Id*.  POM has not, for any of those records, identified the specific "client whose confidences support the application of the privilege."  *See id. passim*.  Yet POM demands that Eckert do so.

That POM itself declined to include, in its own privilege log, the very categories of information it now demands from Eckert betrays the weakness of its position.  POM cannot reasonably ask the Court to hold Eckert to one standard regarding the content of its privilege logs while POM itself fails to meet that standard.  *See, e.g.*, *Chiaradonna v. Rosemont Coll.*, No. CIV A 06-1015, 2007 WL 925897, at *1 (E.D. Pa. Mar. 23, 2007) ("We find it ironic that the Plaintiff is now referring to documents *en masse,* when, just three months ago, the Plaintiff was complaining in a Motion to Compel that the Defendant was guilty of the same sin. . . . What is good for the goose is good for the gander."); *Eck v. Yellow Transp., Inc.*, No. CIV.A. 05-6716, 2007 WL 4440959, at *1 (E.D. Pa. Oct. 16, 2007) ("Defendant points out that the Plaintiff has enlisted the aid of two medical experts who will offer their opinion . . . . What is good for the goose is good for the gander-two experts each on the subject of cardiac condition contributing to the accident."); *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016) ("After all, in the law, what is sauce for the goose is normally sauce for the gander.").  The Court should deny POM's request to impose unequal treatment on Eckert.

## II.    Neither the law nor the facts support POM's assertion that Eckert must, for each assertion of work product, identify the specific litigation in anticipation of which the withheld document was prepared.

POM's first demand is that "the Court . . . compel Eckert to produce a privilege log that, for each assertion of work product, identifies which litigation the withheld document was prepared in anticipation of."  Letter at 3.  POM asserts that it is entitled to this relief because "[a] party (and a court) ordinarily cannot assess whether a document was prepared in anticipation of litigation without knowing *what* litigation it was prepared for."  *Id.* at 2.  POM cites no binding authority in support of this proposition.  Instead, it relies on a handful of aberrant decisions, all but one of which are unpublished.  *See id.* at 2-3.  POM misstates the law.

To invoke the protection of the work-product doctrine, the party's anticipation of litigation must be 'objectively reasonable.'"  *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 308 (M.D. Pa. 2022) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d

2



Cir. 1993)).[1]  In *this* Court, "[h]owever, the threat does not have to be a specific threat from a specific party."  *Chapman*, 595 F. Supp. 3d at 308 (citation omitted).  Thus, "the gravamen of a claim of work product protection necessarily requires an assessment of when litigation was anticipated, which is a determination not subject to a bright-line rule."  *Home Repair, LLC v. Church Mut. Ins. Co.*, 342 F.R.D. 209, 214 (M.D. Pa. 2022).  Accordingly, "[o]ur court has long adopted a case-by-case approach."  *Id.* (citing *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985)).  "Such a determination is a product of the nature of the document *and the factual situation in a particular case*."  *State Farm Mut. Auto. Ins. Co. v. Sanders*, No. CV 12-3052, 2014 WL 12618078, at *5 (E.D. Pa. Mar. 27, 2014) (emphasis added) (citing *Martin*, 983 F.2d at 1260).  *See also Sanders*, 2014 WL 12618078, at *5 ("[E]ven if documents were prepared for a different case, work product protection may apply as long as the cases 'are closely related in parties or subject matter.'") (quoting *Louisiana Mun. Police Employees Ret. Svs. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008)).

Neither Federal Rule of Civil Procedure 26 nor this Court's Local Rules require a party to "identif[y] which litigation [a] withheld document was prepared in anticipation of."  Nor has the Third Circuit recognized any such requirement.  Rather, the weight of the authority rejects that position.  *See, e.g.*, *Jud. Watch, Inc. v. United States Dep't of Hous. & Urb. Dev.*, 20 F. Supp. 3d 247, 258 (D.D.C. 2014) ("A defendant is not required, as plaintiff argues, to identify a specific case to which a document relates in order to invoke the work product privilege.") (citing *Judicial Watch Inv. v. Reno,* 154 F. Supp. 2d 17, 18 (D.D.C. 2001)); *United States v. Fresenius Med. Care Holdings, Inc.*, No. 3:20-CV-00158, 2020 WL 3956647, at *6 (M.D. Tenn. July 6, 2020) ("DOJ has not pointed to any controlling authority for the proposition that Fresenius must identify a particular litigation matter in order to claim work product protection."); *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *4 (N.D. Fla. Dec. 29, 2017) (finding that "Defendants' privilege logs are not deficient because Defendants did not identify specific litigation" and relying instead on examination of other information provided by defendants to assess validity of work-product assertions).

---

[1] It bears noting for the Court that, under Pennsylvania law—*i.e.*, the law that governs the work-product analysis for litigation pending in Pennsylvania's courts—"[m]aterials do not need to be prepared in anticipation of litigation for work-product privilege to attach."  *Bagwell v. Pennsylvania Dep't of Educ.*, 103 A.3d 409, 417 (Pa. Commw. Ct. 2014) ("hold[ing that] the work-product privilege is not limited to the litigation context").  While that standard may not govern here, it would apply in the litigation that POM alleges Eckert already had anticipated at the time of the communications in question and would certainly be controlling upon the attorneys in Pennsylvania whose work product is at issue.  *See, e.g.*, Second Amended Complaint (ECF No. 243) ("SAC") at ¶ 9 (alleging that "from the very beginning of [POM's] 2016 engagement [of Eckert], Eckert knew and planned that it would advocate on behalf of its other client, Parx, against POM's interests, specifically through adverse legislative action and potential litigation."); *id.* at ¶ 64 (alleging that "Eckert, Stewart, and Skjoldal quarterbacked the representation of Parx in the Commonwealth Court litigation" in Pennsylvania).

3



Even POM's own authority undercuts its argument. In *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2020 WL 3035915 (M.D. Tenn. June 5, 2020), for instance, the court did the *opposite* of what POM urges the Court to do here. While the movant challenged the sufficiency of the defendants' privilege logs and claimed that they were deficient insofar as they "rely on boilerplate language mentioning 'litigation' but not identifying the litigation involved," *id.* at *9, both the Magistrate Judge and the District Court refused to order the defendants to supplement their privilege logs. The Magistrate Judge "held . . . that the privilege logs generally provided sufficient information to assert privilege," *id.* at *3, and the District Court agreed, reasoning that "the totality of available information [made clear] that further investigation was unnecessary." *Id.* at *10. *See also id.*:

> [T]he court cannot conclude that the magistrate judge's treatment of the matter amounted to clear error. Although the defendants' descriptions test the boundaries of how generic a privilege log description can be while still satisfying Rule 26, they do not clearly cross it. Moreover, the magistrate judge did not clearly err in concluding, *based on the totality of available information*, that further investigation was unnecessary. Despite the court's concerns, therefore, it finds no grounds for reversal related to the work product assertions.

(Emphasis added.)

POM's other authorities are equally unavailing. *See Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 93-94 (E.D.N.Y. 2019) (noting that the privilege log in question failed to identify, *inter alia*, "to whom [each document] was . . . sent" and pointing to inadequate "descriptions" and a lack of "context" that would provide "the kind of information necessary to evaluate the privilege"); *Alabama Aircraft Indus., Inc., v. Boeing Co.*, No. 2:11-CV-03577-RDP, 2017 WL 134764, at *1 (N.D. Ala. Jan. 13, 2017) (providing zero explanation for order directing Boeing to identify "specific litigation that was anticipated in creating the document at issue" and citing no authority in support); *In re Braga*, No. 10-MC-23973, 2011 WL 13349581, at *2 (S.D. Fla. Mar. 15, 2011) (same); *R. B. v. Ford Motor Co.*, No. 4:05cv481-SPM/WCS, 2006 WL 8444738, at *1 (N.D. Fla. Sept. 22, 2006) (citing no authority for proposition regarding identification of "litigation or anticipated litigation" to which withheld document pertains).

An analysis guided by the law binding *this* Court—*i.e.*, one informed by "the factual situation in the particular case," *Martin*, 983 F.2d at 1260 (citation and internal quotation marks omitted)—lays bare the lack of merit in POM's request. POM asserts, for instance, that Eckert's privilege log is deficient because forty-four of the documents withheld on work-product grounds are from 2017 or 2018, "long before the initiation of any litigation in which Eckert or its clients would have participated." Letter at 2. Any claim of work-product protection with respect to documents from 2017 or 2018 "would be potentially viable," POM argues, "only if Eckert anticipated litigation against POM" then, a possibility that POM now argues is "difficult to understand." Letter at 3. POM's own pleadings belie that argument. Indeed, POM's own Second

4



Amended Complaint alleges that "from the very beginning of [POM's] 2016 engagement [of Eckert], Eckert knew and planned that it would advocate on behalf of its other client, Parx, against POM's interests, specifically through adverse legislative action and potential litigation." SAC at ¶ 9. Thus, one need look no further than the factual allegations in POM's own pleading to "understand" that even prior to the creation of the 2017 and 2018 documents in question, Eckert and its client had an objectively reasonable anticipation of litigation concerning the presence of so-called "skill games"—such as those sold by POM—in Pennsylvania.

Additional factual allegations in POM's most recent pleading aver that Eckert and its client anticipated—by no later than January 2017—that they would become involved in litigation concerning the introduction of so-called "skill games" into new jurisdictions such as Pennsylvania:

> 10. In a January 25, 2017 internal email, Mr. Stewart straightforwardly explained that his work for *Parx would "be adverse [to POM] in VA and PA*."
>
> 11. In a February 1, 2017 internal email discussing the conflict between POM and Parx, Mr. Stewart emphasized that "*we will definitely be affirmatively going after" skill games like POM's*.
>
> 12. In a February 6, 2017 internal email, Mr. Stewart explained that his expected *work for Parx would involve "actively opposing [POM] on legal and legislative fronts*."
>
> 13. In a February 8, 2017 internal email, Mr. Skjoldal noted that Eckert—on behalf of Parx—"*would likely contend [that POM's game] is a gambling devise* [sic]."

SAC ¶¶ 10-13 (emphasis added). (To be clear, no party alleges that Eckert's work relating to so-called "skill games" in Pennsylvania concerned POM exclusively. *See, e.g.*, *id.* at ¶ 78 ("These and other activities by Eckert were intended to . . . generate negative publicity and animosity towards POM *and other skill game manufacturers* . . . .") (emphasis added).)

In the face of these—*i.e.*, its *own*—factual allegations, POM cannot credibly argue that it is unable to determine whether, as of 2017 and 2018, Eckert and/or its client anticipated litigation involving so-called "skill games" in Pennsylvania. Accordingly, POM's argument that it cannot, in the absence of a supplemental privilege log, determine "whether the [forty-four] communications [from 2017 and 2018] were actually prepared in anticipation of litigation," Letter at 2-3, simply is not plausible.

The same is true of POM's argument that the "subject lines for many of the privilege log entries provide little support for the notion that the communications were prepared in anticipation of litigation." *Id.* at 3. In fact, several of the purportedly inadequate subject lines highlighted by POM include explicit references to the phrase "Skill Games." *Id.* POM's Second Amended



Complaint makes clear that the phrase "skill games" references POM and its distinct type of "skill game" devices, which compete against conventional gaming businesses. *See, e.g.*, SAC at p. 1-2:

> For years, POM relied on Eckert for legal advice concerning the marketing and sale of *its electronic skill games* and, in the course of that years-long representation, entrusted Eckert with highly proprietary and confidential information concerning the design, development and operation of its *skill games* and its legal, business and marketing strategies. Eckert's representation of POM was extensive and multi-dimensional and included the defense of *POM's skill games* in litigation as well as development and implementation of government relations strategies to educate public officials and otherwise advocate the legality of *POM's skill games*.

> While representing POM, however, Eckert took up arms **against** POM on behalf of another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). While Eckert advocated on behalf of POM that *its devices* are *games of skill* and not illegal gambling devices, Eckert **at the same time** argued on behalf of Parx that the **same POM games** should be outlawed as illegal gambling devices.

(Emphasis added.)

All told, POM's Second Amended Complaint includes no fewer than thirty-four references to the phrase "skill games" (in addition to fourteen more references to "skill" in other contexts) and avers unambiguously that Eckert's purportedly actionable representation adverse to POM is, at a minimum, "'closely related in parties or subject matter'" to its work regarding so-called "skill games." *Sanders*, 2014 WL 12618078, at *5 ("[E]ven if documents were prepared for a different case, work product protection may apply as long as the cases 'are closely related in parties or subject matter.'") (quoting *Sealed Air Corp.*, 253 F.R.D. at 309). Accordingly, the document descriptions at issue are not, as POM asserts, so vague that "there is no way [for POM] to assess whether the communications were actually prepared in anticipation of litigation." Letter at 3. Thus, POM's argument fails.

POM's subsidiary argument that "for each litigation on which Eckert relies, the Court should also require Eckert to state the specific date on which Eckert anticipated each litigation," *id.* at 3, fails for the same reasons. First, neither Rule 26 nor any decision binding on this Court requires such disclosures.[2] Second, and as set forth above, POM itself pleaded—at length and in

---

[2] In support of this argument, POM cites three out-of-Circuit District Court cases including, *inter alia*, *Crestek, Inc. & Subsidiaries v. Internal Revenue Serv.*, 322 F. Supp. 3d 188 (D.D.C. 2018). Letter at 3. *Crestek* does not help POM. Rather, in that case, the court concluded that "[e]ven without this supplemental declaration *and without specific dates* on which the IRS anticipated litigation, the IRS provided sufficient information to determine that several documents constituted attorney work product." *Id.* at 198 n.5 (emphasis added). The same is true here because POM



its own Second Amended Complaint—that "from the very beginning of [POM's] 2016 engagement [of Eckert], Eckert knew and planned that it would advocate on behalf of its other client, Parx, against POM's interests, specifically through adverse legislative action and potential litigation." SAC at ¶ 9. *See also id.* at ¶¶ 10-13 (listing specific communications allegedly sent in January and February 2017 in which Eckert purportedly stated that it "'will definitely be affirmatively going after' skill games like POM's" and that its "expected work for Parx would involve 'actively opposing [POM] on legal and legislative fronts.'"). Thus, POM already has the information that it purports to lack—namely, that by no later than late 2016 or early 2017, Eckert anticipated litigation adverse to the purveyors of so-called "skill games" in Pennsylvania. Accordingly, POM's demand is moot and meritless.

**III.    Neither the law nor the facts support POM's assertion that the Court should force Eckert to "identify the client whose confidences are disclosed within" each "withheld communication[] solely among Eckert personnel."**

POM also asserts that "Eckert must identify the client whose confidences support the application of the privilege" in each entry on Eckert's privilege logs relating to "withheld communications solely among Eckert personnel." Letter at 4. POM argues that the absence of such information from the logs "is particularly problematic" because "Eckert has claimed that it represented multiple casinos," and because Eckert—a law firm—"*may* have withheld at least some emails based on purported attorney-client privilege belonging to Eckert itself." *Id.* (emphasis added). POM does not cite a single authority explaining, nor does it otherwise attempt to explain, why it is "problematic" for Eckert to protect the confidences of two or more of its "multiple casino[]" clients. Nor does POM attempt to explain why a law firm, such as Eckert (or any other business entity that employs its own lawyers), must meet a different standard in order to invoke the attorney-client privilege to protect confidences between it and its own in-house attorneys. Eckert itself is aware of no such authority.

Instead, POM relies on innuendo, speculation, and three unavailing and unpublished cases. None of that is sufficient.

First, neither Pennsylvania law, nor this Court's Local Rules, nor any decision binding on this Court requires a party to "identify the applicable client" for each entry on its privilege log. Letter at 4. Rather, in this Court a producing party invoking the privilege need only "provide the requesting party with a privilege log that provides a sufficiently-detailed basis for withholding each responsive document that is not produced." *AVCO Corp. v. Turn & Bank Holdings, Inc.*, No.

---

itself pleaded that Eckert, as of 2016, anticipated litigation "against POM's interests." SAC at ¶ 9. Thus, there is no need for Eckert to identify any such date.



4:12-CV-01313, 2015 WL 12834519, at *2 (M.D. Pa. Oct. 7, 2015) (citation omitted).  *See also id.*:

> "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log, and not on conclusory invocations of the privilege or work-product rule...."

(Quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 406 (D. Md. 2005).)  That Eckert may have "represented multiple casinos" or received in-house legal advice does not change these requirements.  To the extent POM wishes to challenge any entry on Eckert's privilege logs, it can do so on the basis of the information already included therein, which includes, *inter alia*, the sender and recipient of *every single* document withheld.

Second, the cases POM cites do not support a different outcome.  *Siegmund v. Xuelian Bian*, No. 16-CV-62506, 2018 WL 3725775, (S.D. Fla. Aug. 1, 2018), is distinguishable because in that case the defendant law firm, Sidley Austin LLP, represented "five different clients" in matters relating to the transaction and subsequent derivative suit at issue, including both the "buyer and seller" in the business transaction and two individuals associated with the seller in the subsequent derivative litigation.  *Id.* at *4-5.  As a result, the court could not determine whether certain of the withheld communications were privileged or were merely "advice rendered in a business transaction [that is not] privileged."  *Id.* at *5 (citation omitted).  No such problem exists here because no party alleges that Eckert provided purely transactional advice of the sort provided in *Siegmund*.  Moreover, all of the communications at issue here post-date the point at which POM alleges that "Eckert knew and planned that it would advocate on behalf of its other client, Parx, against POM's interests, specifically through adverse legislative action and potential litigation."  SAC at ¶ 9.  Even POM does not speculate that those communications were transactional rather than litigation-focused in nature.

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03Civ.5560(RMB)(HBP), 2007 WL 473726 (S.D.N.Y. Feb. 14, 2007), is distinguishable because in that case, the document at issue was "undated" and neither the sender nor recipient was identified.  *Id.* at *6.  Here, by contrast, Eckert's log identifies both sender and recipient—and date—for each of the withheld documents.  *In re Braga* also is unavailing, as that decision cites no authority and provides no explanation for its order that "the privilege log . . . include . . . an identification of the client or clients whose status generated the attorney-client claim."  *Id.* at *2.

In short, neither the law nor the facts support POM's requests.  Accordingly, the Court should deny POM such relief and permit discovery to proceed among the parties.



Finally, Eckert submits that the Court should also consider POM's incentive to engage in costly, meritless, and unnecessary discovery disputes of this sort. In its Second Amended Complaint, POM demands, *inter alia*, "[a]n award of compensatory damages equal to the fees, expenses, and costs incurred by POM in litigating this case . . . ." SAC at 30. Putting aside the questionable nature of such damages (which itself is the subject of a pending motion to dismiss before this Court), the incentive for POM to inflate attorneys' fee in this case is obvious and concerning. POM—at least according to its view of the law and the facts—increases the damages to which it purportedly is entitled each time it chooses to drag Eckert and the Court into a discovery dispute like this one, *regardless of how the Court ultimately resolves the dispute*. In the likely event that POM eventually moves to compel production of the privileged records reflected on the logs at issue here, it will—according to its view of the law and the facts—increase its purported damages even further. Eckert respectfully submits that the Court should not reward POM's self-serving and wasteful practice of forcing the Court and Eckert to expend significant resources on meaningless discovery disputes such as this one instead of focusing on third-party depositions or the depositions of party representatives.

Respectfully submitted,

ROBERT S. TINTNER, ESQUIRE
PETER C. BUCKLEY, ESQUIRE

RST/nmh
Attachment

cc:    All counsel of record (via CM/ECF)

9

# EXHIBIT A

## PACE-O-MATIC, INC. v. ECKERT SEAMANS CHERIN & MELLOTT, LLC
### NO. 20-CV-292
### PRIVILEGE LOG

| Date | From | To | cc | Subject | Privilege |
|---|---|---|---|---|---|
| 12/23/19 @ 10:08 am | Matt Haverstick | Tom Lisk<br>Dan Brier | Paul Goldean<br>Lee Wesson<br>Ryan Wood<br>Danny Warren<br>Michael Barley | Eckert | Attorney-Client Privilege;<br>Work Product Doctrine |
| 12/23/19 @ 10:20 am | Paul Goldean | Matt Haverstick<br>Tom Lisk<br>Dan Brier | Lee Wesson<br>Ryan Wood<br>Danny Warren<br>Michael Barley<br>Mark Poovey | Eckert | Attorney-Client Privilege;<br>Work Product Doctrine |
| 12/23/19 @ 10:21 am | Matt Haverstick | Paul Goldean | Tom Lisk<br>Dan Brier<br>Lee Wesson<br>Ryan Wood<br>Danny Warren<br>Michael Barley<br>Mark Poovey | Eckert | Attorney-Client Privilege;<br>Work Product Doctrine |
| 12/23/19 @ 10:36 am | Dan Brier | Paul Goldean<br>Tom Lisk | Lee Wesson<br>Ryan Wood<br>Danny Warren<br>Michael Barley<br>Mark Poovey<br>Carol Kelleher | Eckert | Attorney-Client Privilege;<br>Work Product Doctrine |
| 12/23/19 @ 10:49 am | Tom Lisk | Dan Brier<br>Paul Goldean | Lee Wesson<br>Ryan Wood<br>Danny Warren<br>Michael Barley<br>Mark Poovey<br>Carol Kelleher | Eckert | Attorney-Client Privilege;<br>Work Product Doctrine |
| 12/23/19 @ 11:06 am | Paul Goldean | Dan Brier<br>Tom Lisk | Lee Wesson<br>Ryan Wood<br>Danny Warren<br>Michael Barley<br>Mark Poovey<br>Carol Kelleher | Eckert | Attorney-Client Privilege;<br>Work Product Doctrine |

## PACE-O-MATIC, INC. v. ECKERT SEAMANS CHERIN & MELLOTT, LLC
## NO. 20-CV-292
## PRIVILEGE LOG

| Date | From | To | cc | Subject | Privilege |
|---|---|---|---|---|---|
| 12/23/19 @ 1:05 pm | Paul Goldean | Dan Brier Tom Lisk | Lee Wesson Ryan Wood Danny Warren Michael Barley Mark Poovey Carol Kelleher | Eckert | Attorney-Client Privilege; Work Product Doctrine |
| 12/23/19 @ 1:06 pm | Dan Brier | Paul Goldean Tom Lisk | Lee Wesson Ryan Wood Danny Warren Michael Barley Mark Poovey Carol Kelleher Donna Walsh | Eckert | Attorney-Client Privilege; Work Product Doctrine |
| 12/26/19 @ 8:41 pm | Greg Cline | Paul Goldean | Mark Poovey Greg Cline Dan Brier Michael Barley Lee Wesson Tom Lisk | Tentative-Eckert Matter-New Counsel Introduction | Attorney-Client Privilege; Work Product Doctrine |
| 01/30/20 @ 1:39 pm | Dan Brier | Tom Lisk | Greg Cline | POM | Attorney-Client Privilege; Work Product Doctrine |
| 01/31/20 | Donna Walsh | POM File | | Discussion w/ Tom Lisk | Attorney-Client Privilege; Work Product Doctrine |
| 02/07/20 @ 3:20 pm | Greg Cline | Tom Lisk | | Dan Brier | Attorney-Client Privilege; Work Product Doctrine |
| 02/07/20 @ 3:24 pm | Tom Lisk | Greg Cline | | Dan Brier | Attorney-Client Privilege; Work Product Doctrine |
| 02/07/20 @ 4:14 pm | Greg Cline | Tom Lisk Greg Cline | | Dan Brier | Attorney-Client Privilege |