**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ECKERT, SEAMANS CHERIN & | : | |
| MELLOTT, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a partial motion to dismiss the second amended

complaint filed by Defendants Eckert, Seamans Cherin & Mellott, LLC; Kevin M.

Skjoldal; and Mark S. Stewart (collectively, "Eckert").  (Doc. 254.)  For the

reasons that follow, the court will grant in part and deny in part Defendants'

motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Pace-O-Matic, Inc. ("POM") initiated this action in February 2020

against Eckert, Seamans Cherin & Mellott, LLC for an alleged breach of the

fiduciary duties owed to POM.  (Doc. 220-1.)  POM alleges that this breach stems

from Eckert's representation of both it and a third-party competitor, Greenwood

Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"), in matters in which

---

[1] Any additional factual recitation that is necessary for the discussion of each specific issue is
included in the Discussion section of this memorandum.

POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania.  (*Id.* at 1–3, 5–8.)[2]

Eckert's representation of POM, insofar as it is at issue in this case, began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania.  (*Id.* at 3, 5.)  That was because Eckert represented Parx, a market competitor, in Pennsylvania.  (*Id.* at 5–6.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania (the "Commonwealth Court Cases") through other counsel relating to the seizure and removal of some of its skill games in Pennsylvania.[3]  (Doc. 87, pp. 2–3.)  During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS"), filed amicus briefs in opposition to POM's position, and motions to intervene.  (*Id.* at 3–4.)

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018.  Eckert alleges that the Commonwealth Court Cases also include a third case commenced in 2022 at docket number 222 MD 2022.  (Doc. 258, p. 9; Doc. 258-3.)  Per Third Circuit opinion, "[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."  *S. CrossOverseas Agencies, Inc. v. Wah Kwong Shipping Grp.*, 181 F.3d 410, 426 (3d Cir. 1999) (citation omitted).

In 2019, Eckert filed 21 actions in Montgomery and Bucks Counties, where the cases were consolidated, on behalf of Parx.  (Doc. 220-1, ¶¶ 53–56; Doc. 258, p. 10.)  POM alleges that these consolidated "State Court Cases" were brought against retail locations hosting skill games, including those of POM.  (Doc. 220-1, ¶ 53.)  POM's second amended complaint asserts that Defendant Stewart's emails show that the merits of the State Court Cases was at most a secondary concern for Eckert.  (*Id.* at ¶ 48.)  It is alleged that in the emails, Defendant Stewart stated that the cases would put POM "on the defensive, having to run around, spend money, and dedicate time and personnel resources to defending the numerous suits."  (*Id.*) It would also give businesses with POM's skill games "pause about keeping" them and "certainly would chill the desire of business who don't have them from getting them."  (*Id.*)  POM alleges that, in furtherance of the State Court Cases, Eckert used legal process including "initial court filings, summons, and other filings that necessitate a response or argument from POM."  (*Id.* at 33.)  POM's allegations about the State Court Cases are the basis of an abuse of process claim described below.

In January 2020, POM learned that Eckert was allegedly involved with Parx's representation in the Commonwealth Court Cases, assuming positions materially adverse to POM despite Eckert's ongoing representation of POM in Virginia.  (*Id.* at 4.)  After POM requested that Eckert withdraw from representing

Parx in adverse litigation in Pennsylvania, Eckert and instead withdrew from representing POM.  (*See id.* at 14, 21.)

Thereafter, on the basis of these facts, POM initiated the present lawsuit in February 2020, alleging that Eckert attorneys had been working behind the scenes to aid litigation efforts for Parx in the Commonwealth Court Cases despite this conflict of interest, and that these efforts breached Eckert's professional duties of loyalty and confidentiality to POM.  (Doc. 1.)  Shortly after POM filed its complaint, it also filed a motion for a preliminary injunction seeking to enjoin Eckert from representing Parx "in matters adverse to [POM]."  (Doc. 12.)  At the request of the parties during a March 31, 2020 telephonic status conference, the court allowed limited discovery to proceed in order to assist in resolving the motion.  (*See* Docs. 17, 24, 27.)

On February 26, 2021, Eckert filed a motion to dismiss the motion for preliminary injunction as moot with various declarations in support thereof.  (Doc. 91.)  The court denied this motion on April 26, 2021.  (Doc. 116.)  On July 1, 2021, POM filed a motion for leave to file an amended complaint, which the court granted on August 2, 2021.  (Docs. 140, 144.)  The amended complaint added two members of Eckert, Mark S. Stewart and Kevin M. Skjoldal, who were allegedly responsible for the conflict of interest between POM and Parx, as well as a claim for fraud against Eckert.  (Doc. 145.)  As a result of the amended complaint, POM

filed an amended motion for a preliminary injunction.  (Doc. 157.)  The parties agreed to a stipulated order resolving the issues raised in the amended motion for preliminary injunction, which the court entered on January 27, 2022.  (Doc. 191.) Portions of the stipulated injunction were permanent insofar as they would continue to bind Eckert beyond the resolution of the present suit.  (*Id.* at ¶¶ 2–8.)

The stipulated injunction included provisions that Eckert will not represent any party, directly or indirectly in any matters adverse to POM or any POM affiliate.  (*Id.* ¶ 5.)  Nor would Eckert represent any party in a legal proceeding against an entity that hosts POM's skill games if the skills games are at issue.  (*Id.*) It also provided that Eckert will not counsel or communicate with Parx, any Parx affiliate, or any defendant or intervenor, regarding "the actions in Montgomery or Bucks County or any similar action," or lobby against POM or a POM affiliate with respect to games of skill.  (*Id.* ¶¶ 4, 6.)

On August 27, 2021, Eckert filed a motion to dismiss portions of the first amended complaint.  (Docs. 153.)  The court granted in part and denied in part Eckert's motion.  It dismissed POM's claim for declaratory judgment insofar as POM was seeking declarations for Eckert's past conduct, dismissed POM's fraud claim without prejudice, and denied Eckert's motion to dismiss POM's claim for punitive damages.  (Doc. 204.)

On June 29, 2022, POM moved for leave to file a second amended complaint.  (Doc. 220.)  The court granted the motion on July 14, 2022.  (Doc. 229.)  On September 13, 2022, following a conference call with the parties, the court issued an order designating August 2, 2022 as the operative date of the filing of the second amended complaint for purposes of Defendants filing a responsive pleading.  (Doc. 260.)

On August 16, 2022, Eckert filed the instant motion to dismiss.  (Doc. 254.) POM filed a brief in opposition on September 12, 2022.  (Doc. 259.)  Eckert timely filed a reply brief.  (Doc. 261.)  Thus, this motion is ripe for review.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Eckert moves to dismiss four portions of the second amended complaint: Count I (Declaratory Judgment); Count III (Fraud); Count IV (Abuse of Process); and all requests for attorneys' fees. (Doc. 258, p. 6.) First, Eckert argues that POM's request for declaratory judgment has been entirely resolved by the stipulated injunction and should be dismissed. (*Id.*) Second, Eckert posits that POM's fraud claim fails because POM did not rely on Eckert's purported omissions. (*Id.* at 6–7.) Third, Eckert asserts that POM's abuse of process claim fails because they are based on state court proceedings in which POM was not a party. (*Id.* at 7.) Eckert also asserts that POM cannot show that these claims were a perversion of the legal process. (*Id.*) Finally, Eckert asserts that POM cannot recover attorneys' fees for two reasons. (*Id.*) With respect to fees for the present lawsuit, Eckert submits that attorneys' fees are only recoverable by agreement of the parties or where a statute provides for their recovery. (*Id.*) Finally, Eckert posits that POM cannot seek attorneys' fees for other cases in which it was not the party-in-interest. (*Id.*)

POM counters by first arguing that its claim for declaratory judgment is not moot because the stipulated injunction resolved the issues raised in its motion for injunctive relief, not all issues raised in the complaint.[4]  (Doc. 259, p. 9.)  It also points out that the stipulated injunction states that nothing "contained [t]herein shall be deemed a waiver of any other claims."  (*Id.*)  POM submits that, because discovery is ongoing, it must retain its ability to seek further injunctive relief based on newly discovered evidence or in light of new developments.  (*Id.* at 9–10.)

With respect to POM's fraud claim, POM argues that Eckert failed to fulfill its obligation to disclose material facts to POM.  (*Id.* at 10.)  POM asserts that it relied on that omission in paying over $800,000 to Eckert.  (*Id.* at 10–14.)

Regarding its abuse of process claim, POM submits that it is valid because Eckert's own contemporaneous emails show that it brought the state court proceedings primarily to further improper purposes.  (*Id.* at 17–18.)  POM also argues that the fact that the proceedings were not initiated against POM is not dispositive—as a result of them, POM still incurred substantial legal fees.  (*Id.* at 20–21.)

As for its seeking attorneys' fees, POM contends that district court cases support, and Third Circuit precedent does not preclude, such a remedy in breach of

---

[4] In addition to the substantive arguments that this memorandum addresses, POM's brief raises a procedural argument, which the court resolved in its order of September 13, 2023.  (Doc. 260.)

fiduciary duty claims.  (*Id.* at 21.)  Although not a party to the Commonwealth and State Court Cases, POM alleges that it incurred substantial legal fees because of Eckert's actions.

The court addresses each of these arguments below.

**A. The Court will Deny Eckert's Motion to Dismiss POM's Claim for Declaratory Judgment (Count I).**

For cases brought under the Declaratory Judgment Act, the Supreme Court has held that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  In addition, the Third Circuit has held that, as a jurisdictional prerequisite, "a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)).  Thus, "[d]eclaratory judgment is an inappropriate remedy if it is used solely to adjudicate past conduct." *Ridge v. Campbell*, 984 F. Supp. 2d 364, 373 (M.D. Pa. 2013) (citing *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006)); *see also Wenzig v. SEIU Local 668*, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019) ("Declaratory judgment is not meant to adjudicate alleged past unlawful activity.").

9

Eckert does not dispute that POM has properly pleaded a claim for declaratory judgment. Instead, it argues the issue is moot. Eckert posits that the stipulated injunction it entered with POM has fully resolved any declaratory judgment request, and has rendered Count I moot. (Doc. 258, p. 12.) In Eckert's view, there is no longer any controversy which requires a judicial declaration. (*Id.*)

The court disagrees. The declaratory relief which POM seeks is broader than the relief provided in the stipulated injunction. POM's second amended complaint largely requests declaratory and injunctive relief on a prospective basis and lays out a substantial controversy from which there is a likelihood it will suffer injury in the future. (*See, e.g.*, Doc. 220-1, p. 26 (POM seeks a judicial declaration that Eckert's fiduciary duties preclude it from "communicating, directly or indirectly, with any party, *amicus curiae*, intervenor or proposed intervenor or counsel for any party, *amicus curiae*, intervenor or proposed intervenor regarding the litigation matters initiated by POM in Pennsylvania Commonwealth Court, and an injunction implementing this decree.").)

The relief sought by POM is both prospective and broader than the language included in the stipulated injunction. (*See* Doc. 191, ¶ 3.) For example, the second amended complaint seeks to foreclose Eckert's contact with *amicus curiae*, which is not addressed by the stipulated injunction. (Doc. 220-1, p. 26.)

Further, fact discovery is ongoing.  Until fact discovery closes on August 31,

2023, new facts may come to light which could lead POM's request for "further

relief as the Court deems appropriate" to extend beyond the stipulated injunction.

(*Id.* at 27.)  Finally, even if the declaratory judgment POM ultimately seeks is no

broader than that already established by the stipulated injunction, Eckert will not

be prejudiced by this claim remaining in the case in the interim.  Therefore, the

motion to dismiss will be denied with respect to Count I.

## B. The Court will Deny Eckert's Motion to Dismiss POM's Claim for Fraud (Count III).

"[T]o establish common law fraud, a plaintiff must prove: (1)

misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to

induce action; (4) justifiable reliance by the party defrauded upon the

misrepresentation; and (5) damage to the party defrauded as a proximate result."

*Hunt v. United States Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008) (quoting

*Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)).  "Fraud consists of

anything calculated to deceive," and "may induce a person to assent to something

which he would not otherwise have done."  *Delahanty v. First Pennsylvania Bank*,

464 A.2d 1243, 1251–52 (1983).  When, as here, the fraud claim is based on an

omission, the claim is only actionable where "there is an independent duty to

11

disclose the omitted information." *N. Penn Towns, LP v. Concert Golf Partners*, 554 F. Supp. 3d 665, 701 (E.D. Pa. 2021) (citation omitted).

POM alleges that Eckert "knowingly, intentionally, and willfully omitted to disclose to POM highly material facts regarding Eckert's representation of Parx and its plot to destroy POM." (Doc. 220-1, p. 31.)  Nor did Eckert disclose its intentions to participate in legal actions directly adverse to POM and/or POM's interests.  (*Id.*)  POM asserts that Eckert had a duty to disclose these facts under common law and the Rules of Professional Conduct, but failed to do so in order to keep charging POM substantial legal fees.  (*Id.* at 32.)  POM asserts that, if Eckert had informed POM of these material facts, it would have stopped paying fees to Eckert.  (*Id.*)

Eckert argues that POM's fraud claim fails for two reasons.  First, Eckert submits that, while it had an affirmative obligation to disclose information related to actual or potential conflicts, it "had no obligation to disclose strategy or confidential information related to another" of its representations.  (Doc. 258, p. 14 (emphasis omitted).)  Eckert asserts that POM's allegations rest on Eckert failing to disclose the latter rather than the former.

POM submits that Eckert's argument conflates two separate issues.  (Doc. 259, p. 11.)  POM asserts that, as its fiduciary, Eckert had an affirmative duty to POM. (*Id.*)  This duty obligated Eckert to disclose all material facts to POM.  (*Id.*

at 12.)  This included material facts related to Eckert's potential conflicted

representation in which Eckert was pursuing outcomes directly adverse to POM's

interests.  (*Id.* at 11.)  POM points out that Eckert does not dispute its obligation to

disclose information regarding conflicts to POM.  Instead, POM asserts, Eckert's

argument hinges on characterizing information regarding a potential conflict as

confidential information related to another of Eckert's clients.  (*Id.* at 12.)  POM

submits that Eckert's argument is, in essence, an impossibility defense which

rendered Eckert incapable of notifying POM of the conflict.  (*Id.*)  But, POM

points out that "a party may not rely on impossibility if it is a condition of the

party's own making."  (*Id.* at 13 (quoting *Berne Corp. v. Gov't of The Virgin

Islands*, 570 F.3d 130, 140 (3d Cir. 2009)).)

   POM is correct that Eckert's argument conflates the issues at hand.  The

court concludes that POM has adequately pleaded its fraud claim by contending

that Eckert's material omissions related to its failure "disclose to POM that [it was]

engaged in a representation directly adverse to POM's interest."  (Doc. 220-1,

¶ 123.)  POM's second amended complaint includes the additional alleged facts

and confidential strategy to further support its claim.

   Next, Eckert argues that POM has failed to plead with specificity that it

justifiably relied on Eckert's omission.  (Doc. 258, p. 14.)  Eckert argues that POM

knew Eckert would not represent it in Pennsylvania.  (*Id.* at 15.)  Also, at the time

13

of its alleged reliance, POM was unaware of the omissions which underlie its fraud claim.  Eckert points out that, even when POM filed commenced this legal action against Eckert, it did so before receiving the emails that now provide the factual foundation for its fraud claim.  (*Id.*)  Therefore, Eckert argues, POM did not rely on any statements or omissions that Eckert made with respect to its actions in Pennsylvania.  At the time of the alleged fraud, POM was represented by other counsel in Pennsylvania.  (*Id.*)  If POM had been relying on Eckert's omissions, POM "would not have filed this lawsuit or its motion for preliminary injunction before receiving any of the purported emails."  (*Id.*)

Eckert asserts that POM's arguments do not align with the facts.  Eckert points to POM's assertion that, if Eckert had made the mandatory disclosures, POM would have stopped using Eckert.  (*Id.* at 16.)  But when POM learned of the conflict, Eckert argues that POM took a different course of action.  Instead of distancing itself from Eckert, POM sought for Eckert to withdraw from representing Parx.  (*Id.*)  From this fact, Eckert argues that POM "wanted Eckert to continue [representing it] so long as Eckert withdrew as counsel for Parx."  (*Id.*)

POM counters that it has sufficiently pleaded reliance and Eckert's arguments to the contrary are flawed.  POM alleges that if Eckert had disclosed all facts material to its representation of POM, it would not have paid Eckert over $800,000 and would not have disclosed "'highly sensitive, proprietary,

confidential, and non-public information' to a law firm actively seeking to destroy"

it.  (Doc. 220-1, p. 32; Doc. 259, p. 14.)

POM argues that Eckert's argument that POM would not have dropped

Eckert even if it knew that Eckert was directly seeking to harm it fails for multiple

reasons.  When POM demanded that Eckert stop representing Parx, it was not yet

aware of the "numerous ways in which Eckert had attempted to destroy POM.  Not

until discovery in this case did POM learn the full scope of Eckert's misconduct,

including most of the material omissions underlying the fraud claim."  (*Id.* at 15.)

POM also points out that Eckert's argument is based on a fallacious inference—it

assumes that because POM wanted Eckert to withdraw from representing Parx that

POM also wished for Eckert to continue to represent POM.  (*Id.* at 16.)  POM

submits that the facts which Eckert relies upon do not appear in the second

amended complaint and are, at best, a factual dispute.  (*Id.*)

POM is correct on every point.  The second amended complaint adequately

pleads a fraud claim, including justifiable reliance.  POM asserts that, because of

Eckert's material omissions, it paid Eckert $820,554 in fees.  (Doc. 220-1, ¶ 127.)

And the factual allegations that POM makes regarding Eckert's allegedly improper

omissions do not undercut POM's claim that it relied on those omissions.  Nor

does the fact that, when it became aware of an actual or potential conflict, POM

demanded that Eckert stop representing Parx.  For these reasons, the motion to dismiss will be denied with respect to Count III.

### C. The Court will Grant Eckert's Motion to Dismiss POM's Claims for Abuse of Process (Count IV).

Under Pennsylvania law, to establish an abuse of process claim, a plaintiff must show that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998) (citation omitted).  In this context, the word process "has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 310 (3d Cir. 2003) (quoting *Shiner*, 706 A.2d at 1237).

The Superior Court of Pennsylvania has defined "abuse of process" as "the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, § 682).

Eckert argues that POM's abuse of process claim fails for three reasons. First, Eckert asserts that POM has failed to establish that Eckert's primary motive in the alleged abuse of process was for an improper purpose.  (Doc. 258, p. 18.) Second, POM's claim rests solely on the *initiation* of State Court Cases, while a valid claim requires perversion of legal process subsequent to the initiation of

16

process. (*Id.* at 16–17.) Third, Eckert argues that POM's claim fails because neither POM nor POM's Pennsylvania affiliate ("POM-PA") were parties to the State Court Cases. (*Id.* at 18–19.)

For Eckert's first argument, it points out that, under Pennsylvania law, improper or mixed motives are an insufficient basis to raise an abuse of process claim. (*Id.* (citing *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984); *Hart v. O'Malley*, 674 A.2d 542, 552 (Pa. Super. Ct. 1994)).) POM responds by arguing that its allegations go beyond showing mixed motives. Instead, it alleges that the facts contained in its second amended complaint show that Eckert brought the State Court Cases primarily for improper purposes. (Doc. 259, p. 19.) POM argues that, under Pennsylvania law, causing financial injury to an opponent or draining them of their resources can constitute an improper purpose for an abuse of process claim. (*Id.* (citing *Shiner*, 702 A.2d at 1236; *Gen. Refractories*, 337 F.3d at 308; *Segal v. Strausser Enters., Inc.*, No. 07-cv-4647, 2019 WL 245016, at *14–15 (E.D. Pa. June 12, 2019)).)

The court finds that POM has adequately pleaded the second element of abuse of process—use primarily for an improper purpose. In its second amended complaint, POM has presented sufficient facts to plausibly argue that Eckert's motives in filing the State Court Cases were primarily to accomplish a purpose for which such legal action was not designed. Specifically, the complaint plausibly

asserts that Eckert's motives in bringing the claims were not primarily to vindicate legal rights, but instead to stunt POM's business and strengthen that of Parx.

Eckert's second argument presents the key issue with respect to the viability of this claim—whether Eckert's use of legal process, as alleged in the second amended complaint, is sufficient to satisfy the first element of the claim. Eckert argues that, in the Third Circuit, courts routinely dismiss abuse of process claims where a plaintiff fails to allege abuse *after* a suit was commenced. *See* Doc. 258, p. 17.)

Eckert cites a variety of cases, applying Pennsylvania law, to support the proposition that a defendant's filing of a lawsuit alone is insufficient to bring a claim for abuse of process. (*Id.* at 17–18 (citing *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 22 (E.D. Pa. 1992); *Larry Pitt & Assocs. v. Lundy Law, LLC*, 2013 WL 6536739, at *8 (E.D. Pa. Dec. 13, 2013); *Project Mgmt. Inst., Inc. v. Ireland*, 2003 WL 23162399, at *7 (E.D. Pa. Dec. 30, 2003)).) Eckert has submitted the docket sheets for the State Court Cases. (Doc. 258–4.) Eckert argues that the docket sheets show, as in *Cameron*, insufficient facts to raise an abuse of process claim. (*See* Doc. 258, p. 17–19.)

POM responds that the cases which Eckert cites are distinguishable insofar as POM's claim rests on "initial court filings, summons, and other filings that necessitated a response or argument from POM." (Doc. 259, p. 17.) Further, POM

argues that there is case law to suggest that filing and pursuing litigation alone

might support an abuse of process claim.  (*Id.* at 18 (citing *Shiner*, 706 A.2d at

1236–1237; *Bell v. Twp. of Concord*, 759 F. Supp. 2d 621, 631 (E.D. Pa. 2011)).)

The first element of abuse of process presents a counterintuitive wrinkle.

That is because a claim for abuse of process is about process *subsequent* to the

commencement of litigation rather than service of initial process.  In this respect, it

is distinguishable from a claim for wrongful use of civil process, which, "has to do

with the wrongful *initiation* of such process, while abuse of civil process is

concerned with a perversion of a process *after* it has been issued."  *Cameron*, 817

F. Supp. at 21 (emphasis in original) (quoting *McGee v. Feege*, 535 A.2d 1020,

1023 (Pa. 1987)).  As applicable here, the broad interpretation of the term process

excludes the initial process of filing suit and serving process upon defendants.  *See*

*McGee*, 535 A.2d at 1024 (citations omitted) ("*Garland* like *Publix* is a case

involving an improper initiation of a lawsuit as opposed to a perversion of a

lawfully entered action. Each case then deals with a claim of malicious use of

process, not abuse of process.").

In Pennsylvania, abuse of process can be based on the process of "discovery

proceedings, the noticing of depositions and the issuing of subpoenas."  *Rosen*, 627

A.2d at 192 (citation omitted).  It can also be based on motions practice.  *See Gen.*

*Refractories*, 337 F.3d at 310 (citation omitted).

The court has reviewed Eckert's exhibit showing the docket sheets of the State Court Cases. The docket sheets give no indication of any docketed events in the State Court Cases that would constitute process. Therefore, the court will dismiss POM's abuse of process claim without prejudice. If POM elects to amend its abuse of process claim, it will have to show not only the existence of process beyond initial filing and service of process on the named defendants, but also how such process harmed POM.[5]

### D. The Court will Grant in part and Deny in part Eckert's Motion to Dismiss POM's Pursuit of Attorneys' Fees.

Eckert seeks to establish that POM cannot recover attorneys' fees incurred in this case for its breach of fiduciary duty claim or in the State and Commonwealth Court Cases.[6] (Doc. 258, pp. 19–20.)

### 1. POM cannot recover attorneys' fees incurred in this case.

Eckert submits that in Pennsylvania, even in breach of fiduciary duty cases, a plaintiff can only recover attorneys' fees where such recovery is provided by statute or agreement of the parties. (*Id.* at 20–21 (citing *Corace v. Balint*, 210 A.2d 882, 887 (Pa. 1965); *Shanks v. Alderson*, 582 A.2d 883, 885 (Pa. Super. 1990)).)

---

[5] In POM's brief, it implies that it was harmed because, as a result of indemnification agreements with its customers, it had to pay legal fees to defend the State Court Cases. (Doc. 259, pp. 20–21.) But the second amended complaint contains no such factual allegations.

[6] Eckert does not deny POM's right to seek disgorgement of legal fees which POM paid to Eckert for its representation of POM as damages arising from the breach of fiduciary duty claim. (Doc. 258, p. 20 n.6.)

With respect to POM's claims, neither statute nor agreement of the parties provide for recovery of attorneys' fees.  (*Id.* at 21.)

Eckert argues that this position is bolstered by a Third Circuit unpublished opinion.  (*Id.* (citing *Avco Corp. v. Turner*, 2022 WL 2901015, at *4 (3d Cir. July 22, 2022)).)  In *Avco*, the Third Circuit found that the district court had not erred in holding that the plaintiff could not recover its attorneys' fees as compensatory damages for its breach of fiduciary duties claim.  2022 WL 2901015, at *4.  It concluded that the state's supreme court has repeatedly affirmed the rule that "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception."  *Id.*  (quoting *Lavelle v. Koch*, 617 A.2d 319, 323 (Pa. 1992)).  The court also noted that the plaintiff, arguing to the contrary, only cited cases from other jurisdictions and four federal district court cases in Pennsylvania that, in turn, cited no binding precedent.  *Id.*

In response, POM cites one of the four cases with which the court in *Avco* disagreed.  (Doc. 259, p. 21 (citing *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, 2010 WL 3046586 (E.D. Pa. Aug. 3, 2010)).)  *Airgas*, in turn rests on *Fidelity Bank v. Com. Marine and Gen. Assur. Co., Ltd.*, 592 F. Supp. 513, 529–30 (E.D. Pa. 1984).  The court in *Fidelity Bank* concluded that attorneys' fees in a breach of

fiduciary duty claim formed cognizable damages.  But in coming to that conclusion, it cited no authority as support.

POM seeks to distinguish *Avco* from the present case because in *Avco* the conflicted representation had ended at the time that the plaintiff filed suit.  (Doc. 259, p. 21.)  By contrast, POM brought suit while Eckert was still engaging in a conflicted representation.  (*Id.*)  In fact, Eckert would not even acknowledge the conflict until it was forced to do so through discovery.  (*Id.* at 21–22.)  POM argues that this distinction is significant.  It means that "the fees incurred by POM in this litigation are akin to fees incurred to having a conflicted lawyer disqualified from an adverse representation, which are recoverable as compensatory damages." (*Id.* at 22 (citing *Axcan Scandipharm, Inc. v. Reed Smith LLP*, No. 03827, 2007 Phila. Ct. Com. Pl. LEXIS 78, at *8–11 (Pa. Com. Pl. Mar. 26, 2007)).)

The court in *Axcan* accepted the general rule that Eckert argues—that attorneys' fees are only available when provided for by agreement, statute, or exception.  2007 Phila. Ct. Com. Pl. LEXIS 78, at *7.  And the court noted that while New Jersey common law has created an exception for clients who successfully sue their attorneys for legal malpractice, Pennsylvania has adopted no such exception.  *Id.* at *7 n.11.  All the same, the court concluded that the plaintiff in that action was able to seek attorneys' fees as compensable damages because it would "never be made whole without payment of those attorneys' fees it was

forced to incur to disqualify" its conflicted counsel.  *Id.* at *9 & n.13.  The court observed that, under Pennsylvania law, a client may seek compensatory damages for breach of fiduciary duty.  *Id.*  Such duties are "those which will make the client 'whole.'"  *Id.* (citation omitted).  Therefore, because the plaintiff could not be made whole without attorneys' fees, the court concluded that it could recover them as compensable damages.

While none of these interpretations of Pennsylvania law are binding, *Avco* is the most directly tied to Pennsylvania precedent.  The court will adopt the *Avco* interpretation.  Because this case does not involve a statutory, contractual, or precedential exception to allow POM to seek attorneys' fees, the court will dismiss POM's claims insofar as they seek to recover attorneys' fees incurred in litigation this case.

### 2.  POM may pursue attorneys' fees related to the Commonwealth and State Court Cases.

Eckert also argues that POM cannot recover attorneys' fees for the Commonwealth Court Cases, in which no POM entity was a party, or the State Court Cases, in which cases POM-PA, and not POM, was a party.  (*Id.* at 22.) Eckert argues that under Pennsylvania law, POM may not recover attorneys' fees

"incurred by a different corporate entity in separate actions." (*Id.* (citing *Sams v. Redevelopment Auth. of New Kensington*, 244 A.2d 779 (Pa. 1968)).)[7]

In response, POM points to the second amended complaint, which specifically alleges that POM paid legal fees in the State Court Cases, and it is those legal fees which POM now seeks to recover. (Doc. 259, p. 23.) POM argues that Eckert has not cited any authority to support the argument that POM may not recover fees that POM itself incurred. (*Id.*) It further submits that there would be "nothing surprising about POM itself paying for legal fees incurred in litigation where a POM subsidiary is the party, nor (as noted above) if POM itself were to pay the legal fees incurred by entities that host POM games." (*Id.*) It asserts that such fees would be direct losses to POM. (*Id.*)

POM concedes that, in the cases Eckert cites, courts have declined to "allow an entity to recover for losses sustained by a corporate affiliate." (*Id.*) But they do not support the proposition that an entity can never recover for losses which a corporate affiliate sustains—instead, the issue in those cases was whether the plaintiff itself had sustained losses. (*Id.*) POM also points out that the issue is fact-intensive, which is why none of the cases which Eckert cites made the

---

[7] Eckert cites various state and federal cases for similar propositions. (Doc. 258, pp. 22–25.) But, as POM argues, none of them are similar to the facts POM alleges—that POM itself incurred legal expenses. Instead, they address circumstances in which the plaintiff itself suffered no losses and sought to recover on behalf of losses of a different entity.

determination at the motion to dismiss stage—they all involved either summary judgment or trial.  (*Id.* at 24.)

In sum, POM asserts that it has directly incurred fees in litigating the Commonwealth and State Court Cases.  Eckert counters that POM cannot seek to recover fees incurred by other entities.  POM argues that the cases Eckert cites do not apply because POM is seeking to recover its own fees and not those of other entities.

POM is correct.  At the motion to dismiss stage, the court must take the facts alleged in the complaint as true and make all reasonable inferences in favor of the plaintiff.  In so doing, the court concludes that POM pleads a plausible case for attorneys' fees related to the Commonwealth and State Court Cases.  While discovery may show that the cases which Eckert cites apply—and the fees were actually incurred by other entities—that is not apparent at this pleading stage.  The court will deny Eckert's motion insofar as it attempts to preclude attorneys' fees related to the Commonwealth and State Court Cases.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part

Defendants' motion to dismiss.  An implementing order will follow.

<div style="margin-left:50%">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

</div>

Dated: June 12, 2023