# HUSCH BLACKWELL

Jeff B. Jensen
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Direct: 314.345.6464
Fax: 314.480.1505
jeff.jensen@huschblackwell.com

June 23, 2023

**VIA ECF**

Hon. Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania

> Re:   ***Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*, No. 1:20-cv-292 - Response to Defendants' June 20, 2023 Discovery Dispute Letter**

Dear Judge Wilson:

Plaintiff Pace-O-Matic, Inc. ("POM") respectfully submits this response to the discovery dispute letter filed by Defendants (collectively, "Eckert") on June 20, 2023. Eckert seeks to compel production of "[a]ll documents and/or communications and/or tangible things . . . that reflect the revenues generated by POM from POM skill machines in Pennsylvania for each year from 2016 through and including 2021." For the reasons described below, the Court should deny Eckert's request.

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party moving to compel bears the initial burden of showing the relevance of the requested information." *Birl v. Ski Shawnee, Inc.*, No. 3:22-cv-1598, 2023 WL 3743576, at *2 (M.D. Pa. May 31, 2023). Thus, to obtain the highly sensitive financial information at issue here, Eckert must first establish that the information is relevant either to POM's claims or to Eckert's defenses. Eckert has failed to do so.

Eckert has not pointed to any claim asserted by POM that would be affected in any way by the sensitive financial information that Eckert seeks. POM's revenues have no bearing on any element of any claim pled by POM. Moreover, POM's operative complaint significantly limited the compensatory damages at issue in this case, seeking *only* recovery of the attorneys' fees expended by POM and disgorgement of attorneys' fees received by Eckert. *See* ECF No. 243, at pp. 30, 33, 34. The operative complaint makes clear—and counsel for POM has confirmed multiple times—that POM is not seeking damages for lost revenues or lost profits. *See id.*; ECF

1

No. 221 (Brief in Support of Motion for Leave to Amend), at ECF p. 8 (explaining that the Second Amended Complaint narrowed the damages sought by POM); ECF No. 306-4 (email from counsel for POM) ("I can confirm that POM is not seeking lost profits or lost revenues as part of its damages in this litigation."). Sensitive information about POM's revenues has no bearing on any of the damages actually at issue in this case. Instead, these damages theories depend exclusively on information about fees that POM paid and fees that Eckert received. Notably, Eckert's discovery letter does not seek information at all relevant to those issues.

The financial information at issue is also not relevant to any of Eckert's affirmative defenses. Prior to the filing of its discovery letter, Eckert had never claimed that revenue information was relevant to any of its defenses. *See* ECF No. 306-3. In its discovery letter, Eckert identifies only two affirmative defenses to which the information is allegedly relevant: the Seventh Defense and the Eighth Defense. *See* Eckert Letter, at 2, 5. The Seventh Defense reads, in its entirety, "POM has suffered no damages." ECF No. 210, at 16. The Eighth Defense reads, in its entirety, "Eckert did not cause any damages that POM allegedly sustained." *Id.*[1]

Neither of these defenses justifies discovery of POM's revenue information. As noted above, POM is not seeking damages for lost profits or lost revenues. Thus, decreases in POM's revenues are not "damages" whose existence Eckert would ever seek to disprove under the Seventh Defense. Nor would Eckert ever have occasion to disprove (under the Eighth Defense) a causal relationship between its misconduct and lost revenues that POM is not seeking to recover. The only "damages" plausibly encompassed by Eckert's Seventh and Eighth defenses are the damages actually at issue in this case, *i.e.*, attorneys' fees paid by POM as a result of Eckert's misconduct. And the sensitive POM financial information sought by Eckert has no bearing at all on those damages.

Because the information at issue in Eckert's discovery letter is not relevant to any party's claim or defense, that information is not discoverable, and the Court should deny Eckert's request. *See, e.g.*, *Muhammad v. Sills Cummis & Gross PC*, 621 F. App'x 96, 99 (3d Cir. 2015) (affirming denial of discovery of financial records where those records were not relevant to any claim or defense); *Osagie v. Borough of State College*, 586 F.Supp. 3d 314, 325 (M.D. Pa. 2022) ("Because this information is not relevant to any party's claim, it is not discoverable, and Osagie's motion to compel will be denied as to this requested evidence." (quotation omitted)); *see also* Fed. R. Civ. P. 26(b)(1).

Much of Eckert's letter wholly ignores the claims and defenses in this case, instead focusing on a handful of general background allegations cherrypicked from the complaint. In

---

[1] Strictly speaking, neither the Seventh Defense nor Eighth Defense is actually an affirmative defense. Instead, each "merely negates an element of [POM's] prima facie case" and thus "is not an affirmative defense." *Sterten v. Option One Mortgage Corp.*, 479 F. Supp. 2d 479, 483 (E.D. Pa. 2007). For this reason, these purported "defenses" necessarily cannot implicate issues that POM's affirmative claims do not implicate. And as noted above, the information at issue here has no relevance to POM's claims.

particular, Eckert focuses on two sets of allegations.  First, Eckert cites allegations that describe the purpose or intent of Eckert's misconduct, such as allegations that Eckert engaged in conduct "aimed at destroying POM's business," Second Amended Complaint ("SAC") ¶¶ 99, 116, or that Eckert attorneys "were actually working to destroy" POM, *id.* ¶ 56.  Second, Eckert points to two paragraphs alleging that Eckert's misconduct "threaten[s]" POM's business.  *See* SAC, ¶¶ 5, 84.

As an initial matter, the mere fact that the complaint mentions a fact does not render that fact a legitimate target of discovery.  "A court need not permit discovery as to every statement within a pleading.  Demanding extensive discovery as to facts which are not critical to the ultimate decision . . . is not proportionate to the needs of the case.  If an allegation in a pleading is merely background information, previously admitted, and/or irrelevant surplusage, that allegation does not support a discovery request merely because it was recited in a pleading." *CFGenome, LLC v. Streck, Inc.*, No. 4:16-cv-3130, 2019 WL 3969178, at *8 (D. Neb. Aug. 22, 2019) (holding that discovery regarding the plaintiff's funding sources was irrelevant and thus not discoverable, despite the fact that the complaint included allegations implicating that issue).  It is not enough to link a discovery request to a phrase plucked from the complaint.  Instead, a party seeking discovery must link its discovery request to a "claim or defense" in the case.  Fed. R. Civ. P. 26(b)(1).  As described above, Eckert has failed to do so.

Perhaps more importantly, Eckert's letter misconstrues both sets of allegations.  The first set of allegations relate to ***Eckert's intent***, not to the effects that Eckert actually obtained.  Eckert's intent is directly relevant to POM's claims.[2]  But evidence about POM's revenues and profits have no impact on Eckert's intent.  Instead, Eckert's intent would be reflected in documents and information in Eckert's possession, not POM's.  Discovery in this case has provided ample evidence that Eckert acted with the specific intent of harming POM.

Eckert has also misconstrued the second set of allegations, relating to whether Eckert's misconduct "threaten[s]" POM's business.  The threat at issue is not the risk of incremental decreases in revenues.  Instead, the threat described throughout the complaint is the risk that Eckert would succeed in having POM's games entirely excluded from Pennsylvania, either through a court declaration that the games were illegal under existing law or through lobbying to enact new laws that would ban the games.  There can be no serious dispute that the outright prohibition of POM's games would "threaten" POM's business, and nothing in POM's confidential financial records would shed additional light on that obvious threat.  Moreover, Eckert's efforts to exclude POM from the market failed: Pennsylvania courts have unanimously and repeatedly found that POM's games are legal under existing law, and the Pennsylvania legislature has rejected the casino industry's lobbying campaigns to ban POM games.  Because the "threat" to POM's existence— the outright prohibition of POM games in Pennsylvania—never materialized, POM's financial

---

[2] For example, a breach of fiduciary duty claim requires proof that the defendant "negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff." *Stoudt v. BCA Indus.*, No. 5:22-cv-1900, 2022 WL 17547576, at *3 (E.D. Pa. Dec. 9, 2022) (quotation omitted).  The fact that Eckert surreptitiously acted with the intent to destroy POM certainly has bearing on whether Eckert acted "solely for the benefit of [POM]" and "in good faith."

3

records provide no insight whatsoever into that threat.  For the foregoing reasons, the sensitive financial information sought by Eckert is not relevant to any claim or defense in this case and thus is not discoverable.  *Muhammad*, 621 F. App'x at 99; Fed. R. Civ. P. 26(b)(1).

There is a second reason for denying Eckert's requested discovery.  It is not enough for requested discovery to have some minimal relevance to the case.  The discovery must also be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Eckert's request for POM's sensitive revenue information is not proportional to the needs of this case.

For one thing, the information at issue has absolutely no "importance . . . in resolving the issues."  Fed. R. Civ. P. 26(b)(1).  As described in detail above, the financial information at issue has absolutely no bearing on any claim or defense implicated by this case.  Thus, almost any burden at all on POM would be disproportionate to the legitimate value of the discovery.  *See Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 241 (D.N.J. 2022) (holding that discovery seeking financial information having "minimal relevancy" to the case was not proportional under Rule 26(b)(1)).  In addition, Eckert's irrelevant request sweeps extremely broadly, seeking "[a]ll documents and/or communications and/or tangible things . . . that reflect the revenues generated by POM from POM skill machines in Pennsylvania for each year from 2016 through and including 2021."  Collecting all materials responsive to this expansive request would force POM to expend considerable resources, all to compile and produce materials having no bearing on any issue actually implicated by this litigation.

The sensitivity of the information at issue also cuts against Eckert in the proportionality analysis.  *See, e.g.*, *In re EthiCare Advisors, Inc.*, Civ. No. 20-1886, 2020 WL 4670914, at *4 (D.N.J. Aug. 12, 2020) (finding request for financial information not to be proportional, and noting that "[t]he confidentiality of the information is a further reason to deny the discovery").  That is particularly true here, given that Defendants Stewart and Skjoldal apparently have been trying for years to obtain information about revenues from POM games for collateral purposes, at the behest of senior leadership at Parx Casino.  *See* Exhibit 1, ECKERT01298-01300.[3]  In particular, Parx leadership emphasized their desire "to get into some detailed discovery on" the revenues of POM and POM games in discovery in another lawsuit.  *Id.*, ECKERT01299; *see also* ECKERT01300 ("the only way we'll be able to get this info is via discovery").  This prior effort to use civil discovery to obtain information about POM's revenues for improper purposes makes it particularly concerning that Eckert now seeks to use discovery to obtain POM's revenue information despite that information having no relevance to this case.  Moreover, Defendant Mark Stewart is now the General Counsel and Executive Vice President of Cordish, one of the casino companies that Eckert represented in its efforts to destroy POM.  Giving a senior decision maker at Cordish access to POM's sensitive financial information creates significant risk of further competitive and business harm to POM.  Moreover, it is unclear to what degree Eckert Seamans and/or Kevin Skjoldal continue to represent other casinos on matters that could harm POM's interests.  In light of the

---

[3] In addition to mentioning "POM" and its revenues, Exhibit 1 also mentions "Pa Skill" (the trade name under which POM's games are offered to the public) and "Miele" (the manufacturer of POM's Pennsylvania Skill games).

irrelevance of the financial information at issue, the burdens imposed by Eckert's request, and the sensitivity of that information, Eckert's request for materials relating to POM's revenues is not proportional to the needs of the case. *See EthiCare Advisors*, 2020 WL 4670914, at *4.

For the foregoing reasons, the Court should deny Eckert's request to compel production of POM's revenue information.

Respectfully,

*/s/ Jeff B. Jensen*

cc:     All counsel of record (via ECF)