# HUSCH BLACKWELL

Michael P. Nolan
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
michael.nolan@huschblackwell.com

July 18, 2023

Hon. Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania

> **Re:** ***Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC, et al.*, No. 1:20-cv-292 - Response to Discovery Letter of Peter Shelly**

Dear Judge Wilson:

For the reasons stated below, Plaintiff Pace-O-Matic, Inc. ("POM") respectfully requests that the Court deny Peter Shelly's request to quash his deposition.

## I.    Shelly's Arguments Regarding the July 15 Deposition Date Are a Red Herring.

Shelly complains about the specific deposition date set by POM.  But his argument omits several critical details.  During a telephonic meet and confer with the undersigned counsel, Shelly's counsel made clear that they would not be producing Shelley for a deposition on ***any*** date, due to the other issues cited in Shelly's discovery letter.  For similar reasons, Shelly's counsel refused to provide alternate deposition dates, despite requests from the undersigned counsel.  Based on the approach taken by Shelly's counsel, it became clear that Shelly would not be testifying—on ***any*** date—without intervention by the Court.  To ensure that Shelly could not defer this issue indefinitely, POM set a date certain for the deposition of July 15.  However, given the discussions between counsel for Shelly and POM, both sides were aware that Shelly would be filing a motion for protective order rather than attending a deposition on July 15.  Thus, Shelly's stated concerns about that particular deposition date ring hollow.  Subject to the Court's resolution of the other issues raised by Shelly, POM is willing to proceed with any reasonable deposition date.

## II.    Shelly's Deposition Is Very Likely to Elicit Highly Relevant Information, and POM Is Not Required to Depose the Defendants Before Deposing Shelly.

The Complaint alleges that, while representing POM, Eckert engaged in several courses of conduct aimed at destroying POM's business.  *See generally* ECF No. 243.  One of those courses of conduct involved "extensive lobbying efforts at both the state and local level seeking the enactment of legislation that would outlaw POM's games."  *Id.* ¶ 32.  In a related course of

conduct, Eckert "coordinated and led a 'PR campaign' on behalf of multiple casinos aimed at destroying POM's business." *Id.* ¶ 99. These courses of conduct are bases for liability for both POM's breach of fiduciary duty claim and POM's fraud claim. *See id.* ¶ 116 (predicating breach of fiduciary duty liability on, among other things, "advocating for legislation banning POM games" and "developing, implementing and leading a public relations campaign aimed at destroying POM's business"); *id.* ¶ 123 (predicating fraud liability on failure to disclose that Eckert "would launch extensive lobbying and/or PR efforts"). Thus, discovery regarding these issues is of core and indisputable relevance to this case.

Discovery in this litigation makes clear that Shelly played a central role in Eckert's lobbying and PR efforts aimed at destroying POM. For example, one email chain produced by Eckert shows Shelly ghostwriting a communication from Mark Stewart to members of the Pennsylvania General Assembly, claiming that POM's "machines should be removed from every convenience store, bar, thrift shop and pizza parlor in the state." Exhibit 1, ECKERT01137. In another example, Shelly drafted a press release—for Stewart's and Parx's review—calling "for law enforcement at the state and local levels to confiscate [POM] machines and prosecute those responsible for manufacturing, distributing, leasing, or owning these machines." Exhibit 2, ECKERT01014-01015. Other examples of such conduct—apparently taken at the direction of Eckert attorneys—are too numerous to catalog here. Moreover, discovery indicates that there may be key meetings or discussions in which Shelly participated, but in which other likely witnesses (such as Defendants Stewart and Skjoldal) did not participate. *See, e.g.*, Exhibit 3 (submitted under seal), ECKERT013963 (1/7/2020 12:08pm email); Exhibit 4, ECKERT008998 ("I'm meeting Penn Live editorial board tomorrow"); Exhibit 5, ECKERT012941 (submitted under seal). Thus, not only does Shelly have direct knowledge of the misconduct of Eckert, he likely has first-hand knowledge about the implementation of Eckert's plan—at Eckert's direction—that even Eckert might not possess. Shelly clearly possesses highly relevant and discoverable information that would be elicited during a deposition.

Shelly seemingly contends that POM must depose Defendants Stewart and Skjoldal before deposing Shelly. That contention lacks merit. "While depositions of non-parties sometimes are deferred until after party depositions, there is no rule that requires doing so." *Vallair Solutions SARL v. 321 Precision Conversions LLC*, No. 21-cv-7507, ECF No. 118 at 2 (S.D.N.Y. Mar. 10, 2023) (denying motion to quash third-party depositions pending completion of first-party discovery), attached as Exhibit 6.[1] Here, several factors strongly support permitting POM to conduct the depositions in the order it has chosen. First, as described above, Shelly has extensive and highly relevant knowledge regarding Eckert's misconduct. Moreover, Shelly likely has first-hand knowledge of certain meetings or discussions that implemented Eckert's strategies but that Eckert personnel did not participate in directly. Shelly's testimony on those topics necessarily could not be duplicative of testimony from the Eckert Defendants. More broadly, even where

---

[1] *Vallair Solutions* did defer the depositions of two senior executives of the third-party entities involved. However, the court delayed those individual depositions pending the third-party corporate-representative depositions, in the event that those third-party entity depositions obviated the need for the third-party individual depositions. *Vallair Solutions* did not defer the third-party individual depositions pending completion of first-party depositions.

Shelly's testimony might theoretically overlap with Defendants', deposing Shelly on these critical issues "ensures the discovery is full and complete," which is "a reasonable justification for the subpoena" even if "that information can be obtained from a different source." *Prudential Defense Solutions, Inc. v. Graham*, 517 F. Supp. 3d 696, 702 n.2 (E.D. Mich. 2021). Thus, POM is entitled to depose Shelly ***at some point***. The only question is ***when***. Under those circumstances, Shelly has provided no justification for dictating that POM complete all party depositions before deposing Shelly.

Second, POM has strong and legitimate reasons for deposing Shelly before the Eckert Defendants. The scope of the testimony that will be sought from the Eckert Defendants will be broader than the testimony sought from Shelly. For example, POM will inquire into the profits earned by Eckert from its misconduct, since those amounts would be subject to disgorgement. As another example, while Shelly was intimately involved with some aspects of Eckert's misconduct, there appear to be other aspects in which Shelly may have had little involvement. POM is still pursuing document discovery relevant to certain topics that will be included in the depositions of Eckert witnesses. And POM has reasonably determined that it will not proceed with the Eckert depositions until it has received those additional documents. In contrast, POM has reasonably determined that it has all the documentary evidence it needs to depose Shelly. Given this, it is reasonable and appropriate for POM to depose Shelly before deposing the Eckert witnesses.

### IV.    Shelley Has Not Shown Any Basis for an AEO Provision, Nor Has He Even Requested the Entry of Such an Order.

Finally, Shelly seeks to quash the deposition because POM has not agreed to an attorneys' eyes only ("AEO") provision. It is telling that Shelly's letter does not actually ask the Court to enter an AEO order; instead, he seeks to avoid his deposition entirely because POM has not consented to one. Given that Shelly has not asked for the entry of an AEO provision, this issue provides no basis for any relief at all. Moreover, Shelly has failed to identify any plausible basis for an AEO provision. A party seeking AEO protection "must detail the alleged harm that it is likely to suffer absent the requested protection with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTD Ltd.*, No. 3:16-cv-621, 2019 WL 2612710, at *3 (M.D. Pa. June 26, 2019) (quotation omitted). Shelly has not provided ***any*** explanation of the harm that would occur if POM personnel were to know the contents of his deposition testimony, let alone "a particular and specific demonstration of fact." Thus, he has not shown a basis for the entry of an AEO provision. *See id.; Alarmax Distributors, Inc. v. Honeywell Int'l Inc.*, No. 14-1527, 2015 WL 11112432, at *2 (W.D. Pa. Oct. 28, 2015) (denying AEO protection where proponent did "not clearly define an injury that would befall [proponent] should [the opposing party] have access to the information requested"). Moreover, Shelly has not even identified with any specificity what categories of information he believes are sensitive enough to warrant AEO protection. Shelly has failed to provide any basis for believing that the existing protective order is insufficient to protect whatever legitimate confidentiality interests he (or his casino clients) may have. There is no basis for the entry of an AEO provision. For the reasons stated above, the Court should deny Shelly's request to quash his deposition.

Respectfully submitted,

HUSCH BLACKWELL LLP

/s/ *Michael P. Nolan*