

Fox Rothschild LLP
ATTORNEYS AT LAW

2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Tel 215.299.2000  Fax 215.299.2150
www.foxrothschild.com

NATHAN HUDDELL, ESQUIRE
Direct Dial: 215-444-7166
Email Address: nhuddell@foxrothschild.com

September 19, 2023

**VIA ECF**

The Honorable Jennifer P. Wilson
United States District Judge
United States District Court for the Middle District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

> Re: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 1:20-cv-00292-JPW (M.D. Pa.) – Plaintiff's Motion to Exceed Ten-Deposition Limit

Dear Judge Wilson:

As Your Honor is aware, the undersigned represent defendants Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal (collectively, "Eckert") in the above-captioned action (the "Action"). Pursuant to the Court's Rules, we write in response to plaintiff Pace-O-Matic, Inc.'s ("POM") September 14, 2023 request for "leave to take three additional depositions beyond F.R.C.P. Rule 30's presumptive limit of ten." (ECF 329) (the "Request"). As set forth below, POM has failed to show that the "additional" discovery it seeks is reasonable and necessary. Nor has POM shown that such discovery would be relevant and proportional to the needs of this case. In fact, the depositions POM has noticed and taken to date show that POM has abused the discovery process in this case to obtain testimony that is irrelevant to this Action and clearly intended instead for use in *other* litigations. The "additional" depositions POM seeks leave to take appear calculated to further this strategy. Accordingly, the Court should deny POM's meritless and premature Request.

I. **POM Has Failed to Show that the Additional Depositions It Seeks to Take Are Reasonable and Necessary**

"'[A] party seeking more than ten depositions must overcome th[e] presumptive limit by demonstrating that the additional depositions are reasonable and necessary.'" *Chabot v. Walgreens Boots All., Inc.*, No. 1:18-CV-2118, 2021 WL 949443, at *2 (M.D. Pa. Mar. 12, 2021)

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia    Florida
Illinois    Minnesota    Nevada    New Jersey    New York    Pennsylvania    Texas

(quoting *Alaska Elec. Pension Fund v. Pharinacia Corp.*, No. 03-1519(AET), 2006 WL 6487632, at *3 (D.N.J. 2006)). Additionally, "[p]arties should ordinarily exhaust their allowed number of depositions before making a request for additional depositions." *Chabot*, 2021 WL 949443, at *2 (citations omitted); *Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*, No. 3:14-CV-853, 2021 WL 5863997, at *1 (M.D. Pa. Mar. 30, 2021) (same) (citation omitted). *See also Bobrick*, 2021 WL 5863997, at *1 ("The reason for th[e exhaustion requirement] is sound: 'failure to exhaust [the] available depositions before moving for leave to take additional depositions precludes . . . an informed determination of whether [the] proposed additional depositions would satisfy the [requisite] standard.'" (quoting *Alaska*, 2006 WL 6487632, at *6).

POM has satisfied neither of these requirements. First, POM has failed to exhaust its ten-deposition allotment. Letter at 1. In fact, even though this case is more than three-and-a-half years old, POM has taken only three depositions to date. *Id.* Second, POM has failed to show why the additional depositions it seeks are reasonable and necessary. For instance, POM's Letter does not identify even one subject area—nor even one *single fact*—that it purportedly will be unable to explore by way of its ten allotted depositions. Instead, POM vaguely asserts only that "there were certain details that [the PA Gaming Control Board's corporate designee] would not have had access to from Mr. Sherman and Mr. Barash." *Id.* at 2. Vague, unspecified assertions of this sort are inadequate to establish the requisite need and reasonableness. *Alaska*, 2006 WL 6487632, at *4 ("a party generally must make a '*particularized*' showing of need for additional depositions to satisfy the standard of Federal Rule 26(b)(2).") (emphasis added) (citations omitted).

## II.     POM Has Failed to Show that the Additional Depositions It Seeks to Take Are Relevant and Proportional to the Needs of the Action

A party seeking to take more than ten depositions must also show that the additional discovery it seeks "is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues . . . ." FED. R. CIV. P. 26(b)(1); FED. R. CIV. P. 30(a)(2). POM failed to make even this baseline showing. Instead, it asserts—with zero explanation—that the deposition testimony it seeks "is certainly within the scope of Rule 26(b)(1)." Letter at 2. Conclusory statements like this are inadequate. *Alaska*, 2006 WL 6487632, at *4 ("[T]he moving party must go beyond general assertions regarding the potential relevance of the proposed deponents' testimony to demonstrate that the probable testimony of each proposed deponent is essential to the moving party's case.") (citation omitted).

## III.    POM Is Abusing the Discovery Process to Obtain Deposition Testimony that Is Irrelevant to this Action and Clearly Intended Instead for Use in Other Litigations

"[A] court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978) (citations omitted). *See also In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2009 WL 10736425, at *2 (E.D. Pa. Dec. 4, 2009) ("I must quash the subpoena because the purpose of the discovery is for use in a proceeding other than the pending suit.").

This is precisely what POM has done in the depositions it already has noticed and taken in this case. For instance, during the deposition of Kevin Hall, a former official with the Virginia

Lottery, POM spent most of the deposition—including a continuous period spanning *more than sixty pages* of the transcript—asking questions wholly irrelevant to this Action, but which clearly were calculated to elicit testimony relevant to pending Virginia litigation regarding the legality of a legislative ban on POM's games in that state. Eckert cannot quote all of that irrelevant testimony herein. Instead, Eckert respectfully refers the Court to pages 76 – 143 of the transcript of Mr. Hall's deposition, which are attached hereto as Exhibit A. Particularly irrelevant topics explored by POM during that deposition include the following: Whether Mr. Hall is "one of those anti-gambling people" (76:10-20); a presentation Mr. Hall gave to a Virginia legislative committee (76:21-102:18); how Virginia regulates so-called "skill games" and the effects of such regulations (102:19-118:4); and the financial performance of the Virginia Lottery (118:18-129:5). Meanwhile, Mr. Hall confirmed early in the deposition that he has no recollection of ever coming into contact with Mark Stewart, nor "anyone [else] from Eckert." Ex. A at 12:10-15.

POM engaged in similar tactics during the Rule 30(b)(6) deposition of the Pennsylvania Gaming Control Board (the "PGCB"). POM spent the bulk of that deposition asking questions irrelevant to this Action but clearly intended to elicit testimony relevant to POM's separate litigation concerning the legality and regulatory classification of its games under Pennsylvania law. Illustrative excerpts of that deposition transcript are attached hereto as Exhibit B. Particularly irrelevant topics explored by POM during that deposition include the following: Whether certain so-called "skill games," including one manufactured by an entity *other than POM*, require skill to play, and tests performed to determine same (133:2-150:9); whether lining up three bananas takes skill (137:15-25); and the accuracy of deposition testimony the witness gave "six months ago" in a separate legal proceeding concerning the legality of POM's games and the PGCB's authority to regulate them (81:5-93:13). During that testimony, the PGCB's counsel stated that he "absolutely agree[d]" with Eckert's objection that POM was "trying to use the deposition . . . for purposes that go way beyond any legitimate use in this litigation." (92:5-20).

POM appears poised to pursue the same strategy during the forthcoming deposition of the Pennsylvania State Police (the "PSP"). In the list of deposition topics POM attached to the subpoena it served on the PSP, POM included several topics that are irrelevant to this Action and clearly intended to elicit testimony for use in POM's separate litigations involving the PSP. Those topics, which are listed in the subpoena attached hereto as Exhibit C, include the following: "16. A description of any evidence . . . regarding . . . the presence or absence of skill[ in] a POM game or POM software"; "18. A description of any and all exculpatory evidence regarding the POM games or POM software and when it became known to the P[SP]"; and "19. An identification of the highest ranking member of the P[SP] who authorized or directed the seizure of POM games in Dauphin County on March 14, 2023[.]" These topics are irrelevant to this case and POM should not be granted leave so that it can explore them during unnecessary and costly depositions.

For all of these reasons, Eckert respectfully requests that the Court deny POM's Request.

Respectfully submitted,

*/s/ Nathan Huddell*
Nathan Huddell

cc:     All counsel of record (via ECF)

3