# EXHIBIT 1
# FILED UNDER SEAL

# EXHIBIT 2

Received 9/12/2023 5:13:06 PM Commonwealth Court of Pennsylvania

Filed 9/12/2023 5:13:00 PM Commonwealth Court of Pennsylvania
707 CD 2023

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

IN RE: THREE PENNSYLVANIA SKILL     :     No. 707 CD 2023
AMUSEMENT DEVICES, ONE GREEN    :
BANK BAG CONTAINING $525.00 IN U.S.  :
CURRENCY, AND SEVEN RECEIPTS    :
                                    :
APPEAL OF: COMMONWEALTH OF       :
PENNSYLVANIA                        :

---

### BRIEF OF *AMICUS CURIAE* PACE-O-MATIC, INC

---

Appeal from the Order of the Court of Common Pleas of Dauphin County,
entered March 23, 2023, at No. 2022-CV-06333-MD

---

**McCormick Law Firm**

Marc Lovecchio, No. 41244
835 West Fourth Street
Williamsport, PA 17701
Ph:   (570) 326-5131
Fax:  (570) 326-5529
Counsel for Amicus Curiae

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF CITATIONS ............................................................................. ii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ............................... 1

INTRODUCTION AND SUMMARY ......................................................... 3

ARGUMENT ............................................................................................... 6

    I.    The POM Machines Are Legal Games of Skill, Not Illegal Gambling Devices Criminalized Under 18 Pa.C.S. §5513 ................................... 6

    II.    The *POM* Decision Held That the POM Machines Are *Not* "Slot Machines." ...................................................................................... 9

CONCLUSION ......................................................................................... 18

Pa.R.A.P. 531(b)(3) and 2135(d) CERTIFICATE OF COMPLIANCE ................. 19

Pa.R.A.P. 127(a) CERTIFICATE OF COMPLIANCE ......................................... 20

# TABLE OF CITATIONS

Cases

*Com. v. Dent,*
  992 A.2d 190 (Pa. Super. Ct. 2010) ....................................................... 6
*Com. v. One Elec. Poker Game Mach.,*
  448 A.2d 1077 (Pa. Super. 1982) ........................................................... 8
*Com v. Two Elec. Poker Game Machs.,*
  465 A.2d 973 (Pa. 1983) ..................................................................... 6, 7
*Pinnacle Amusement, LLC v. Bureau of Liquor Control Enforcement,*
  298 A.3d 447 (Pa. Commw. Ct. 2023) ......................................... 7, 8, 17
*POM of Pa., LLC v. Dep't of Revenue,*
  221 A.3d 717 (Pa. Commw. Ct. 2019) ........................... 3, 4, 5, 9, 10, 17

Statutes

4 Pa.C.S. §§ 1101-1904 ............................................................................. 17
4 Pa.C.S. § 1102(8) .................................................................................... 10
4 Pa.C.S. §1103 ............................................................................................ 1
18 Pa.C.S. §5513 ........................... i, 1, 3, 4, 6, 7, 8, 9, 11, 12, 13, 15, 16, 17

Rules

Pa.R.A.P. 127(a) ........................................................................................ 20
Pa.R.A.P. 531(b)(3) and 2135(d) .............................................................. 19
Pa.R.A.P. 2135(b) ...................................................................................... 19

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

Pace-O-Matic, Inc. ("POM") is a corporation organized and existing under the laws of the State of Wyoming. POM developed, produced, and licenses legally compliant electronic games of skill that are sold in Pennsylvania and elsewhere. POM's games are located in restaurants and bars that are not licensed gambling facilities and where no gambling occurs. POM developed and licensed the use of the game machines that are at issue in this case ("POM Machines"), which were located in Champions Sports Bar in Highspire, Pennsylvania at the time they were seized.

As explained in this Brief, POM urges this Court to affirm the decision of the Court of Common Pleas of Dauphin County. As that court held, the POM Machines are games of skill and, therefore, are not illegal gambling devices under the Crimes Code, 18 Pa.C.S. §5513. Nor does the definition of "slot machine" found in the Race Horse Development and Gaming Act, as amended in 2017, 4 Pa.C.S. §1103 ("Gaming Act"), apply to the POM Machines. The Gaming Act instead relates exclusively to games that are licensed by the Pennsylvania Gaming Control Board ("PGCB") and located in PGCB-licensed establishments.

To hold otherwise would be to ignore the legislative prerogatives of Pennsylvania's General Assembly and unreasonably expand the scope of the Crimes Code, thereby subjecting owners and operators of lawful games of skill to the same

1

punitive scheme designed for the true purveyors of gambling the Crimes Code was intended to target.

POM submits this Brief in order to protect its interest in the sale, use, operation, ownership, and licensing of its game machines and to ensure that those who purchase, lease, and operate those game machines are free from fear that they will be prosecuted or that the machines will be seized.

## INTRODUCTION AND SUMMARY

The decision reached by the Court of Common Pleas in *POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717 (Pa. Commw. Ct. 2019), lies at the heart of this case. In *POM*, the Department of Revenue argued that the POM games that had been seized by the City of Philadelphia were slot machines under the definition contained in §1103 of the Gaming Act. The *POM* court rejected that argument and similarly rejected the argument that the Gaming Act superseded the Crimes Code regulation of unlicensed gambling devices under §5513. *Id.* at 731-36. Significantly, the court also specifically noted that whether POM's games qualify as illegal gambling devices under §5513 is a "separate question" from whether they are subject to the Gaming Act. *Id.* at 735, fn. 17. As the *POM* court recognized, the Crimes Code and the Gaming Act are separate regulatory schemes, one regulating illegal gambling, the other regulating lawful gaming in PGCB-licensed establishments.

Appellant and several *amici curiae*—including most notably PGCB and the casino group headed by Parx Casino ("Parx")—have relied on arguments before this Court that depend on a clear misrepresentation of the *POM* decision. Contrary to the express language used by the *POM* court, these parties now claim that *POM* held that the POM Machines are "slot machines" under the Gaming Act. Based on this mischaracterization, they argue that the definition of "slot machines" found in the Gaming Act, which, again, regulates licensed gaming, should also be used to

3

determine what games should be criminalized and seized under the criminal provisions of §5513.

This argument, which both twists the holding of *POM* and ignores prior case law, was crafted in the immediate aftermath of the *POM* decision, when Parx and its attorneys and allies began a public campaign to misrepresent the *POM* holding and influence government officials to adopt a litigation and law-enforcement strategy more closely aligned with Parx's interests. Two of the architects of that campaign were Mark Stewart and Kevin Skjoldal, attorneys at Eckert Seamans Cherin & Mellott, LLC during the time period that Eckert represented POM and who are now being sued by POM because, while claiming to pursue POM's interests, they were instead undermining those interests in favor of Parx. *See Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*, No. 1:20-cv-292, in the U.S. District Court for the Middle District of Pennsylvania. On Parx's behalf, Stewart and Skjoldal have systematically attempted to destroy POM's business by arguing that POM's games are gambling devices that should be seized and outlawed, and they continue that campaign here.

That these parties' misrepresentation of the *POM* decision is intentional is clear from their communications produced in the *Eckert* case. The early development of this argument can be seen in emails Stewart and Skjoldal exchanged with others in their sphere immediately after the *POM* court issued its opinion. As discussed in

4

more detail below, Stewart and Skjoldal did not confine their communications to internal strategizing with Parx employees and representatives, but also reached out to government officials charged with enforcing the law, attempting to sway their opinions and change their litigation and law-enforcement strategies in connection with POM's game machines and others like them—all to further Parx's interests and hinder POM's. Their persistent mischaracterization of the *POM* decision was part of this plan.

*Amicus* PGCB was a target of this campaign, and PGCB took the bait. In its *amicus* brief here, PGCB offers the very argument suggested by those communications, despite the Board's clear knowledge that those arguments are wrong. In fact, at his deposition in the *Eckert* case, PGCB's corporate representative, Kevin O'Toole, testified to an understanding of the *POM* decision that is directly at odds with PGCB's current position.

As discussed more fully below, the arguments these parties have offered to this Court do not reflect their genuine opinions as to the true state of the law. Rather, they are instead the disingenuous product of conflicted and partisan interests and should be treated accordingly. The opinion of the Court of Common Pleas of Dauphin County should be affirmed.

## ARGUMENT

I.    **The POM Machines Are Legal Games of Skill, Not Illegal Gambling Devices Criminalized Under 18 Pa.C.S. §5513.**

The POM Machines were seized on the theory that they were gambling devices and therefore illegal and subject to seizure under §5513(b). The Dauphin County Court of Common Pleas rejected that theory, correctly holding that the POM Machines are legal games of skill, not illegal gambling devices. (Appellant's Exhibit A, Memorandum and Order, pp. 7 & 10.)

As relevant here, §5513 makes it illegal for a person to "make[], assemble[], set[] up, maintain[], sell[], lend[], lease[], give[] away, or offer[] for sale, loan, lease or gift, any punch card, slot machine or any device to be used for gambling purposes, except playing cards." 18 Pa.C.S. §5513(a)(1). Section 5513(b) requires the seizure of any "gambling devices" that are possessed or used in violation of subsection (a). 18 Pa.C.S. §5513(b).

Because the terms used in these sections are not defined in the Crimes Code, Pennsylvania courts have, just as the Dauphin County Court of Common Pleas did here, applied the predominate-factor test to determine whether a machine is a gambling device for §5513 purposes. Under that test, "for a game to constitute gambling, it must be a game where chance predominates rather than skill." *Com. v. Dent*, 992 A.2d 190, 193 (Pa. Super. Ct. 2010) (citing *Com v. Two Elec. Poker Game Machs.*, 465 A.2d 973, 977 (Pa. 1983)). That a machine involves a large element of

6

chance, without more, is insufficient to turn it into a gambling device. *Two Elec. Poker Game Machs.*, 465 A.2d at 977. The outcome of the game need not be wholly determined by skill in order to fall outside the gambling device category. *Id.* The question is whether chance or skill predominates in a given machine.

POM Machines and others like them have also previously been evaluated under this same framework and on each occasion found to be games of skill, not of chance, and therefore not illegal gambling devices. For example, in *In re Pace-O-Matic, Inc. Equip., Terminal I.D. No. 142613* (C.P. Beaver, No. M.D. 965-2013, slip op. filed December 23, 2013), a POM game had been seized as an allegedly illegal gambling device. In response to POM's Petition for Return of Seized Property, that court applied the predominate-factor test to determine that POM's device included games of skill, not of chance, and ordered the return of POM's property. *Id.* at 11-13.

Skill games offered by another manufacturer were at issue in *Pinnacle Amusement, LLC v. Bureau of Liquor Control Enforcement*, 298 A.3d 447, 452-55 (Pa. Commw. Ct. 2023). That court also applied the predominate-factor test and also found these games to be games of skill not subject to seizure and forfeiture under §5513(b). The court ordered the return of those games.

In this case, the Dauphin County court applied this same test and reached the same conclusion as to all three of the games on the POM Machines. Those machines

7

are not "gambling devices" and are not subject to seizure under §5513(b). The court correctly ordered their return to Appellees.

Appellant argues that the predominate-factor test should not be applied to the POM Machines because they are "slot machines," which, unlike the other unspecified "device[s] used for gambling purposes," are expressly identified in §5513(a)(1). This position is simply wrong.

Even if Appellant were correct in arguing that "slot machines" should be treated differently than other devices under §5513(a) (which POM denies), that would not affect the outcome of this case because POM Machines are not "slot machines." There is nothing in §5513, or the Crimes Code generally, or Pennsylvania case law that defines them as such. As discussed above, the only courts to make any determination as to whether the POM Machines or machines like them fall within the scope of §5513 have answered that question in the negative, after applying the predominate-factor test that is applied to all other devices. *Pinnacle*, 298 A.3d at 452-55; *In re Pace-O-Matic*, slip op. at 11-13.

To the extent "slot machines" might be treated differently under §5513(a), it is only because, as noted in *Com. v. One Elec. Poker Game Mach.*, 448 A.2d 1077, 1079 (Pa. Super. 1982), they "operate by pure chance[.]" In contrast here, the Dauphin County Court of Pleas made a factual determination that the POM Machines were predominately games of skill. They are not "slot machines."

8

It is against this backdrop—in which "slot machines" have never been defined for §5513 purposes and under which the POM Machines have never been considered to be either "slot machines" or "gambling devices"—that Stewart and Skjoldal hatched their plan, for Parx's benefit, to use language from the *POM* decision to muddy the waters. If they could (incorrectly) characterize the *POM* decision as having determined that the POM Machines were "slot machines" under the Gaming Act, that decision could then be used to leverage an argument that POM Machines are also "slot machines"—and therefore, according to this new theory, illegal *per se*—under §5513.

But a key problem with this theory is that the *POM* decision did not hold that POM Machines are "slot machines" under the Gaming Act, but in fact held the exact opposite. As discussed below, nothing about the *POM* decision changed the legal landscape for how the POM Machines, or any games, are or should be treated under §5513.

## II.    The *POM* Decision Held That the POM Machines Are *Not* "Slot Machines."

As discussed above, the *POM* court held that the POM Machines did not fall within the definition of "slot machine" found in the Gaming Act, and, further, that the Gaming Act did nothing to supersede the criminal gambling regime imposed under the Crimes Code, §5513. "[S]ection 5513 of the Crimes Code, rather than any

9

relevant provision of the Gaming Act, remains the preeminent statute governing illegal and unlicensed gaming in the Commonwealth." 221 A.3d at 736.

But Appellant, along with Parx and PGCB, latched onto one sentence in the *POM* decision to craft their current anti-POM argument. In the process of determining that POM's games were *not* subject to the Gaming Act, the *POM* court noted that, "*if* POM's activities are subject to the Gaming Act, then the POM Game fits within the definition of 'Slot machine' under the Gaming Act." 221 A.3d at 725 (emphasis added). That "if" made all the difference when the court then determined that POM's activities and machines fell outside the scope of the Gaming Act because they were not licensed by PGCB.

> The legislative intent outlined in the Gaming Act also demonstrates that the General Assembly only intended the Gaming Act to regulate **legal** and **licensed** gaming. Of particular importance, section 1102(8) provides that one of the objectives of the Gaming Act is to **provide strict monitoring "and enforced control over all limited gaming authorized**" by the Gaming Act. 4 Pa.C.S. § 1102(8) (emphasis added). Section 1102(8) does **not** state that it is the General Assembly's intention to provide strict monitoring and enforced control **over all gambling in the Commonwealth, whether legal or illegal**, but merely that the General Assembly intended to strictly control the limited gaming authorized by the Gaming Act.

*Id.* at 731 (emphasis in original).

This clarification by the POM court did nothing to deter Stewart, Skjoldal, and Parx from cherry-picking the language they liked from the *POM* decision—eliding the conditional "if" in the court's statement about the "slot machine"

10

definition—to misstate *POM's* holding for the purpose of promoting Parx's interests with the public and with government officials charged with enforcing the law. (This, again, was happening at a time when Eckert was still pretending to represent POM's interests.)

Their plan was twofold. Parx and its allies would first incorrectly represent that the *POM* court had determined that the POM Machines were "slot machines" for Gaming Act purposes, then they would argue from that foundation that the Gaming Act's definition of "slot machine" should be injected into the §5513 gambling-device analysis. This approach would be used to support the seizure of POM's games.

These parties began scrambling to put their plan into action immediately after the *POM* decision was issued. The following emails represent only a small sample of those flying among them in the first hours after the decision.

At 9:09 am on the morning the *POM* decision came out, Skjoldal emailed it to Stewart (ECKERT010203, see attached Ex. B), who then, at 9:28 am, forwarded it to Parx representatives and their lobbyist, Richard Gmerek, under the subject line, "COMMONWEALTH COURT DECISION OUT – **NOT GOOD**" (ECKERT010190, emphasis added, see attached Ex. C). At 10:19 am, Stewart again emailed Parx representatives and Gmerek, setting forth a preliminary litigation strategy to get the Attorney General to make the "right argument," and, tellingly, a

11

legislative strategy to amend either §5513 or the Gaming Act to define "slot machine" in a manner that would include the POM Machines (ECKERT010190). In an email with Gmerek at 12:40 pm, Stewart suggested the potential for using the decision to convince state police to "pull" the [POM] machines (ECKERT010185, see attached Ex. D).

At 10:21 that same morning, Stewart received an email about the *POM* decision from Karin Ashford, who is now Chief Legal Officer for a Parx entity but was at the time in-house at Penn National Gaming. She said, "Just saw this. ***The skill games won***—court ruled the gaming act's definition of slot machines ***does not*** apply" (ECKERT010196, emphasis added). In his 11:16 am response, Stewart proposed exactly the argument Parx, PGCB, and Appellant are promoting here— that the Gaming Act definition of "slot machines" should be applied under §5513 (ECKERT010195). But, in her 11:20 am reply, Ms. Ashford continued to push back on his reading of *POM*. According to Ms. Ashford, the court said that "the definition in the gaming act is not the same as the definition under the crimes code" (ECKERT010194, see attached Ex. E). At 11:26 am, Stewart responded that he understood the negative aspects of the POM decision, including the court's suggestion in footnote 17 of the decision that a §5513 analysis would involve a "skills vs. chance test," but went on again to propose that the decision be used, by the Attorney General, for its "slot machine" language (ECKERT010194).

12

At 6:09 that evening, Stewart circulated with Parx representatives and Skjoldal a one-page draft press release titled "COMMONWEALTH COURT DECISION PAVES WAY FOR CRIMINAL ENFORCEMENT AGAINST ILLEGAL SKILL SLOT MACHINES" (ECKERT01023-1024, see attached Ex. F). Of note, the "one-pager" incorporated the misrepresentation of the *POM* court's conditional holding regarding the applicability of the definition of "slot machines" to POM's games:

> [T]he [*POM*] court concluded that the so-called 'skill games' manufactured by POM of Pennsylvania, LLC are slot machines under the definition of that term used by the Legislature in the Gaming Act" . . . . The Commonwealth Court has now definitively concluded that POM's 'skill games' are nothing more than slot machines.

(ECKERT01024.)

This draft press release went on to articulate the same argument that Parx, *et al.*, promote here, that the Gaming Act definition should be judicially inserted into the reading of §5513 (ECKERT01024). Stewart also suggested arguments using the *POM* decision that could be made "on the Hill," to the effect that legislators had been "played" when told that POM skill games were not slot machines (ECKERT01038, see attached Ex. A).

By 9:00 pm that same day, Gmerek had forwarded Parx's press release to Dan Stambaugh, PGCB's legislative liaison (PGCB2181, see attached Ex. G).

13

But, contrary to the position taken by PGCB before this Court, the Board was not actually fooled by the Parx's hype, but instead understood the court's true ruling in *POM*. Kevin O'Toole, PGCB's corporate representative for the *Eckert* case, see attached Ex. H, testified to that effect:

Q [by POM's counsel]: . . . And what I read [in the *POM* decision] says the definition of a slot machine requires that it be approved by the Pennsylvania Gaming Control Board. If it's not approved, then it doesn't meet the definition of a slot machine under the Gaming Act. True?

A:     The definition limits slot machines to slot machines that are inside a licensed casino.

(O'Toole Depo. at 159.)

And then again later:

Q:     . . . So let's break this sentence down a little bit. You understand how the words if and then work together in combination in a sentence like this. When the Court says if POM's activities are subject to the Gaming Act, then the POM game fits within the definition of slot machine.

You understand that it would only fit within the definition of slot machine if POM's activities are subject to the Gaming Act. Correct?

14

A:    And conversely, if POM's activities are subject to the Gaming Act, then — then they would be slot machines and are slot machines.

Q:    . . . But this Court held at the end of the day — at the end of its analysis, it held that POM's activities are not subject to the Gaming Act. Correct?

A:    Correct.

(O'Toole Depo. at 165-66.)

And again:

Q:    Would you agree with me that the Court held in this case that the Gaming Act only applies to licensed slot machines and licensed entities and facilities and does not apply to unlicensed and illegal devices?

A:    Yes, I agree with you.

(O'Toole Depo. at 170-71.)

Mr. O'Toole further agreed that the Gaming Act does not apply to §5513 determinations:

Q:    Do you see in Footnote 17 the [POM] Court states, Of course, we do not answer the separate question of whether the POM game qualifies as an illegal gambling devices under Section 5513 of the Crimes Code,

15

which both parties appear to acknowledge presents a question of fact that requires factual discovery to resolve.

Did I read that correctly?

A:  Yes, you did.

Q:  Do you agree with that?

A:  I do, yes.

Q:  In other words, that analysis of whether a machine is an illegal gambling device under 5513 of the Crimes Code is completely separate and apart from whether it is a slot machine as defines in the Gaming Act. Yes?

A:  I believe that to be correct.

(O'Toole Depo. at 171-72.)

The false narrative that Stewart, Skjoldal, and Parx crafted and promoted, that the *POM* court found that the POM Machines were "slot machines" as defined in the Gaming Act, and their further argument that this definition of "slot machines" in the Gaming Act should be used for §5513 purposes, has now been rejected by the Commonwealth Court.

In *Pinnacle*, cited above, the Bureau of Liquor Control Enforcement ("BLCE") had similarly used §5513 as a basis for seizing the skill games offered by another manufacturer. The owner of those machines petitioned for their return, and the BLCE petitioned for forfeiture. The Commonwealth Court applied the predominate-factor test to determine that the owner's games were not gambling devices under §5513, and ruled that the trial court had not erred in ordering the return of the games to the owner. 298 A.2d at 452-55.

In reaching this conclusion, the court expressly approved the trial court's rejection of Parx, *et al.*'s, current argument:

> In the proceedings below, the trial court explicitly rejected BLCE's reliance on the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904 (Gaming Act) for the proposition that the seized machines were contraband. Trial Ct. Op. at 17. Rather, the instant controversy must be decided under the framework that stems from Section 5513 of the Crimes Code. *See* Trial Ct. Op. at 17 (citing *POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717, 731 (Pa. Cmwlth. 2019) ("[T]he Gaming Act does not apply to unlicensed and/or illegal slot machines."); *see also POM of Pa*, 221 A.3d at 736 ("[S]ection 5513 of the Crimes Code, rather than any relevant provision of the Gaming Act, remains the preeminent statute governing illegal and unlicensed slot machines in the Commonwealth.")). The trial court noted that, at the hearing, BLCE acknowledged the inapplicability of the Gaming Act to the instant controversy, but later attempted to re-raise those arguments. Trial Ct. Op. at 17. Regardless, BLCE has abandoned arguments regarding the Gaming Act on appeal before this Court.

*Pinnacle*, 298 A. 2d at 451, n. 3.

The arguments advanced by Appellant and these *amici curiae*, including Parx and PGCB, should be rejected by this Court because they misstate Pennsylvania law,

17

contradict these parties' own understanding of this issue, and suggest the criminalization of skill games the General Assembly never intended to criminalize.

## CONCLUSION

WHEREFORE, for the foregoing reasons, *Amicus Curiae* Pace-O-Matic, Inc. respectfully requests that the Commonwealth Court of Pennsylvania AFFIRM the March 23, 2023 Order of the Court of Common Pleas of Dauphin County.

Respectfully submitted,

**McCORMICK LAW FIRM**

Dated: September 12, 2023      By: /s/Marc F. Lovecchio
                                   Marc Lovecchio, No. 41244
                                   835 West Fourth Street
                                   Williamsport, PA 17701
                                   Ph:    (570) 326-5131
                                   Fax:   (570) 326-5529

                                   *Counsel for Amici Curiae Pace-O-Matic, Inc.*

## Pa.R.A.P. 531(b)(3) and 2135(d) CERTIFICATE OF COMPLIANCE

It is hereby certified that the foregoing Brief of *Amicus Curiae* complies with the word count limit contained in Pa.R.A.P. 531(b)(3) because it contains 4,270 words, as computed by the "Word Count" function in Microsoft Word 2013, excluding the parts exempted by Pa.R.A.P. 2135(b).

### McCORMICK LAW FIRM

Dated: September 12, 2023

By: /s/Marc F. Lovecchio
Marc Lovecchio, No. 41244
835 West Fourth Street
Williamsport, PA  17701
Ph:    (570) 326-5131
Fax:   (570) 326-5529

*Counsel for Amici Curiae Pace-O-Matic, Inc.*

19

## Pa.R.A.P. 127(a) CERTIFICATE OF COMPLIANCE

It is hereby certified by the undersigned that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

**McCORMICK LAW FIRM**

Dated: September 12, 2023

By: /s/Marc F. Lovecchio
Marc Lovecchio, No. 41244
835 West Fourth Street
Williamsport, PA  17701
Ph:    (570) 326-5131
Fax:   (570) 326-5529

*Counsel for Amici Curiae Pace-O-Matic, Inc.*

20

# EXHIBIT A

2019_11_20_18_42_52.pdf

ECKERT01037

| From: | Mark S. Stewart |
|---|---|
| Sent: | Wednesday, November 20, 2019 6:43 PM |
| To: | Richard Gmerek |
| Cc: | Bob Green; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com); Sean Schafer; Pete Shelly; Kevin M. Skjoldal; clyons@shelly-lyons.com |
| Subject: | RE: One pager |

Sorry. That was a paraphrase of a message that could be delivered to people on the Hill. Given the way the PA Skill people played you and told you the machines weren't slot machines, you [legislators] ought to want to close off any loopholes.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Wednesday, November 20, 2019 6:36 PM
**To:** Mark S. Stewart
**Cc:** Bob Green ; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) ; Sean Schafer ; Pete Shelly ; Kevin M. Skjoldal ; clyons@shelly-lyons.com
**Subject:** [External] Re: One pager

I don't understand your last sentence and to whom that's directed. Otherwise, I'm OK if you're OK

Please excuse brevity and typos as this message was likely dictated

On Nov 20, 2019, at 6:31 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

On #1 – sure.

On #2 – That could be a risk. The one pager glosses over the fact that 5513 doesn't define slot machine, and it does not get into the cases and statutory cite that says you look to the Gaming Act's definition to determine what "slot machine" means in 5513. My thought would be:

(a) We use this one pager and our take on it to pressure PSP, DAs, etc., to act now; and

(b) We capitalize on how people are upset about Mike & Todd & Company running around saying the games weren't gambling when the Court has said they are slot machines by having the legislature put the final nail in the coffin with a simple definition amendment to 5513 (if

1

**ECKERT01038**

possible). Like the one we drafted for Corman. Given the way they played you, you should want to close off any potential weasel room for them.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Wednesday, November 20, 2019 6:19 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** [External] Re: One pager

I really like it. I have two comments:

1. Should we put quotes around the word skill in the title?
2. Are we sort of saying that there's no need for legislation so that if the police don't go get the machines....we are shit out of luck...... Politically?

Please excuse brevity and typos as this message was likely dictated

On Nov 20, 2019, at 6:09 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

All,

Attached for your review and comment is the draft one-pager. Please let us know of any comments, etc.

The focus is 5513. The Gaming Act criminal provisions (including 5518(a)(9)-(10) and (f)) ended up being too complicated. Each of them are contingent on a finding that the device was made, used, sold, etc., "in violation of the part" or the Gaming Act. While the Court found that the machines are slot machines and POM is a manufacturer as defined in Gaming Act, it repeatedly (and wrongly in some ways) held that the Gaming Act didn't apply to them – which makes the "in violation of the part" prerequisite hard to establish and at the very least muddies it too much for our purposes.

2

**ECKERT01039**

Notably, the Court goes through many provisions of 5518, finding that they don't apply and don't empower the PGCB to regulate POM. But, the Court never addresses the powers of the DAs/AG/PSP to enforce the noted criminal provisions (which apply to "persons", not just licensees), and the Court never addresses 1518(f).

All the enforcement powers of these agencies, including confiscation, are the same under 18 PaCS 5513. Given that the Crimes Code is free of the cloud created by the Court over any Gaming Act enforcement provisions, it was more effective to focus on 5513.

FYI, we have also spoken with the AG unit handling the litigation. They have an internal meeting coming up to discuss how to handle, and we asked to meet with them. Despite our past efforts at giving them written arguments, etc., it was clear that they still had not grasped the 5513 point here and the significance of the Court's finding about the games being "slot machines." They were still talking like they would have to prove each machine was predominately skill. The light seemed to come on during the conversation, but we will need to keep on the dialogue to make sure.

Thanks.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

---

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

---

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

**ECKERT01040**

# EXHIBIT B

| | |
|---|---|
| **From:** | Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST] |
| **Sent:** | Wednesday, November 20, 2019 9:26:04 AM |
| **To:** | King, Jr., Adrian R. |
| **Subject:** | FW: POM decision from Commonwealth Court |
| **Importance:** | High |

Decision out. Not good. Denied on merits; not procedural context. On first glance, appears OAG argued case wrong and tried to say Gaming Act applies to them, as opposed to you use the definition of slots from the Act in interpreting 5513 of Crimes Code, but have to read it.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Kevin M. Skjoldal
**Sent:** Wednesday, November 20, 2019 9:09 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Casey Coyle <ccoyle@eckertseamans.com>; Kristine Marsilio <kmarsilio@eckertseamans.com>
**Subject:** POM decision from Commonwealth Court

http://www.pacourts.us/assets/opinions/Commonwealth/out/418MD18_11-20-19.pdf?cb=1

Before this Court is the Commonwealth of Pennsylvania, Department of Revenue's (Department) application for summary relief in the nature of a motion for partial judgment on the pleadings with respect to the Department's counterclaim to the petition for review in the nature of a complaint seeking a declaratory judgment and injunctive relief, filed in this Court's original jurisdiction by POM of Pennsylvania, LLC (POM). For the reasons set forth, we deny the Department's application for summary relief.

**Kevin M. Skjoldal**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.6039
kskjoldal@eckertseamans.com

eckertseamans.com | bio | vCard | LinkedIn

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

ECKERT010203

# EXHIBIT C

| | |
|---|---|
| **From:** | Pete Shelly [pshelly@shelly-lyons.com] |
| **Sent:** | Wednesday, November 20, 2019 11:38:43 AM |
| **To:** | Mark S. Stewart |
| **CC:** | Richard Gmerek |
| **Subject:** | [External] RE: COMMONWEALTH COURT DECISION OUT |

Got it, thanks. We're trying to pull together a one-pager (per Bob Green's comments when we met) as well as the outline for website. Meeting with the media planner tomorrow to start developing a plan. For the outside push, I think we just want to pound home three messages:

We have a problem when ...


- PSP says Illegal machines and casinos are popping up all over the state.
- PSP says Kids are gambling in pizza joints, convenience stores
- PA Lotters says seniors are losing out on $138 million a year in revenue

Here's the question we have to decide: what do we want people who see the spots to do? Calling their lawmaker doesn't really do much so we need to figure this out. I will have materials for meeting with Bob on Friday. Charlie Lyons will be joining as well.



**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Wednesday, November 20, 2019 11:29 AM
**To:** Pete Shelly <pshelly@shelly-lyons.com>
**Cc:** Richard Gmerek <RGmerek@ggrgov.com>
**Subject:** FW: COMMONWEALTH COURT DECISION OUT
**Importance:** High

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT PROTECTED

Hi, Pete. Lot's going on today. Please see below re Cmmw Court decision on skill games. Sure we will be discussing.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 10:19 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Cc:** 'Sean Schafer' <sean@schafergovaffairs.com>
**Subject:** RE: COMMONWEALTH COURT DECISION OUT
**Importance:** High

A full synopsis will be coming today.  Short story:

ECKERT010190

- AG made the same mistake it did in the Dauphin County/McNally case. It argued that Title 4 applies. It did not make our argument – that this is a question under Title 18 and the only import of Title 4 is that it provides the meaning of slot machine the Court should use in interpreting 5513.

- Court expressly says it is not commenting on whether the machines are violation of 5513. This means it does not put us out of court on our cases.

- Court found that their machines are slot machines under Title 4. This should be very good for our cases.

- But, the Court basically held that Title 4 has no mechanism for dealing with unlicensed activity (slots, manufacturing, etc.). As discussed many times, this is an absurd analysis. Plus, it's factually and legally incorrect. The district attorneys and the AG have criminal enforcement powers under 1517 and 1518, including the ability to seize property in violation of the Act.

- We will provide thoughts on how this can move forward positively from a legal standpoint; e.g., AG files another application for summary relief based on the right argument; we try to get right to Supreme Court review and then file an amicus, etc.

- Legislatively, I see this as leading to two potential scenarios:

  1. It's ammunition for a simple amendment to 5513 to add a definition of slot machine. We have this drafted (thought Jake would use it). Tommy could introduce it. Others like Martin or the like could introduce it. If that definition is in 5513, there is no argument that can defeat us since the Court found the machines satisfy the definition.

  2. This could conceivably lead to a push to open and amend Title 4. The Court finds the machines are slots, it finds they are an unlicensed manufacturer, but says nothing can be done about it. Even with all the politics and the connections, etc., how can they let that situation go unfixed? And, to fix it directly and completely, you need to amend Title 4 – which, as well know, means all hell breaks loose on other amendments.

These are the quick thoughts based on discussions with those reading. Full report is coming and governs to extent there's a conflict with what I've said here. But, I wanted to get some thoughts/analysis out to you asap.

Sean – if you scroll down, there is a link to the decision.

By the way, the decision is by arguably the worst judge on the Court.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 9:43 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Subject:** RE: COMMONWEALTH COURT DECISION OUT -- NOT GOOD

Hold ... may actually be pretty positive ...

ECKERT010191

Mark S. Stewart, Esq. | Member
ECKERT SEAMANS CHERIN & MELLOTT, LLC

213 Market Street · 8th Floor · Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


From: Mark S. Stewart
Sent: Wednesday, November 20, 2019 9:28 AM
To: 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
Subject: COMMONWEALTH COURT DECISION OUT -- NOT GOOD
Importance: High

Guys

Link below is to Commonwealth Court decision. Lengthy. Denied on the merits; not procedural context. Need to
review. On first glance, appears OAG did not argue/Court did not decide the precise argument we are making, but need
to read the whole thing.

Mark S. Stewart, Esq. | Member
ECKERT SEAMANS CHERIN & MELLOTT, LLC

213 Market Street · 8th Floor · Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


From: Kevin M. Skjoldal
Sent: Wednesday, November 20, 2019 9:09 AM
To: Mark S. Stewart <MStewart@eckertseamans.com>; Casey Coyle <ccoyle@eckertseamans.com>; Kristine Marsilio
<kmarsilio@eckertseamans.com>
Subject: POM decision from Commonwealth Court

http://www.pacourts.us/assets/opinions/Commonwealth/out/418MD18_11-20-19.pdf?cb=1


Before this Court is the Commonwealth of Pennsylvania, Department of Revenue's (Department)
application for summary relief in the nature of a motion for partial judgment on the pleadings with
respect to the Department's counterclaim to the petition for review in the nature of a complaint
seeking a declaratory judgment and injunctive relief, filed in this Court's original jurisdiction
by POM of Pennsylvania, LLC (POM).  For the reasons set forth, we deny the Department's
application for summary relief.

Kevin M. Skjoldal
ECKERT SEAMANS CHERIN & MELLOTT, LLC

213 Market Street · 8th Floor · Harrisburg, PA 17101
Direct (717) 237.6039
kskjoldal@eckertseamans.com

eckertseamans.com | bio | vCard | LinkedIn

This communication may contain federal tax advice.  Recent IRS regulations require us to advise you that any discussion
of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any
penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein.  Only
formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related

ECKERT010192

penalties.  Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

-----------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT010193

# EXHIBIT D

**From:**    Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP
             (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST]
**Sent:**    Wednesday, November 20, 2019 12:40:54 PM
**To:**      Richard Gmerek
**CC:**      pshelly@shelly-lyons.com
**Subject:** RE: COMMONWEALTH COURT DECISION OUT

If we can convince them to do so, then those are options. The DA would have to make the case we are trying to make, tho. They may wait for us to prevail or for the law to be fixed. If OAG or we make it in the Commw Ct case, and win, it would be the quickest way. But, they could start doing it. We will have a lot to explain to them tho since even our own people (like inhouse Penn) are reflexively reading/assuming POM won.

**Mark S. Stewart, Esq. | Member
ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Wednesday, November 20, 2019 12:19 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** pshelly@shelly-lyons.com
**Subject:** [External] Re: COMMONWEALTH COURT DECISION OUT

I don't see any administrative actions and here do I?

Like having DAs tell police to pull them or having the state police pull them or other such administrative remedies other than legal or legislative.


Please excuse brevity and typos as this message was likely dictated


> On Nov 20, 2019, at 11:28 AM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:


ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT PROTECTED

Hi, Pete. Lot's going on today. Please see below re Cmmw Court decision on skill games. Sure we will be discussing.

**Mark S. Stewart, Esq. | Member
ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 10:19 AM

ECKERT010185

**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Cc:** 'Sean Schafer' <sean@schafergovaffairs.com>
**Subject:** RE: COMMONWEALTH COURT DECISION OUT
**Importance:** High

A full synopsis will be coming today.  Short story:

- AG made the same mistake it did in the Dauphin County/McNally case.  It argued that Title 4 applies.  It did not make our argument – that this is a question under Title 18 and the only import of Title 4 is that it provides the meaning of slot machine the Court should use in interpreting 5513.

- Court expressly says it is not commenting on whether the machines are violation of 5513.  This means it does not put us out of court on our cases.

- Court found that their machines are slot machines under Title 4. This should be very good for our cases.

- But, the Court basically held that Title 4 has no mechanism for dealing with unlicensed activity (slots, manufacturing, etc.).  As discussed many times, this is an absurd analysis.  Plus, it's factually and legally incorrect.  The district attorneys and the AG have criminal enforcement powers under 1517 and 1518, including the ability to seize property in violation of the Act.

- We will provide thoughts on how this can move forward positively from a legal standpoint; e.g., AG files another application for summary relief based on the right argument; we try to get right to Supreme Court review and then file an amicus, etc.

- Legislatively, I see this as leading to two potential scenarios:

  (1)  It's ammunition for a simple amendment to 5513 to add a definition of slot machine.  We have this drafted (thought Jake would use it).  Tommy could introduce it.  Others like Martin or the like could introduce it.  If that definition is in 5513, there is no argument that can defeat us since the Court found the machines satisfy the definition.

  (2)  This could conceivably lead to a push to open and amend Title 4.  The Court finds the machines are slots, it finds they are an unlicensed manufacturer, but says nothing can be done about it.  Even with all the politics and the connections, etc., how can they let that situation go unfixed?  And, to fix it directly and completely, you need to amend Title 4 – which, as well know, means all hell breaks loose on other amendments.

These are the quick thoughts based on discussions with those reading.  Full report is coming and governs to extent there's a conflict with what I've said here.  But, I wanted to get some thoughts/analysis out to you asap.

Sean – if you scroll down, there is a link to the decision.

By the way, the decision is by arguably the worst judge on the Court.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

ECKERT010186

eckertseamans.com | bio |vCard


**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 9:43 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Subject:** RE: COMMONWEALTH COURT DECISION OUT -- NOT GOOD


Hold ... may actually be pretty positive ...

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 9:28 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Subject:** COMMONWEALTH COURT DECISION OUT -- NOT GOOD
**Importance:** High


Guys

Link below is to Commonwealth Court decision.  Lengthy.  Denied on the merits; not procedural context.
Need to review.  On first glance, appears OAG did not argue/Court did not decide the precise argument we
are making, but need to read the whole thing.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard


**From:** Kevin M. Skjoldal
**Sent:** Wednesday, November 20, 2019 9:09 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Casey Coyle <ccoyle@eckertseamans.com>;
Kristine Marsilio <kmarsilio@eckertseamans.com>
**Subject:** POM decision from Commonwealth Court

http://www.pacourts.us/assets/opinions/Commonwealth/out/418MD18_11-20-19.pdf?cb=1

Before this Court is the Commonwealth of Pennsylvania, Department of Revenue's (Department)
application for summary relief in the nature of a motion for partial judgment on the pleadings with
respect to the Department's counterclaim to the petition for review in the nature of a complaint
seeking a declaratory judgment and injunctive relief, filed in this Court's original jurisdiction
by POM of Pennsylvania, LLC (POM).  For the reasons set forth, we deny the Department's
application for summary relief.

ECKERT010187

**Kevin M. Skjoldal**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.6039
kskjoldal@eckertseamans.com

eckertseamans.com | bio | vCard | LinkedIn

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

-------------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT010188

# EXHIBIT E

**From:**    Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST]
**Sent:**    Wednesday, November 20, 2019 11:26:59 AM
**To:**    King, Jr., Adrian R. (Phila)
**Subject:**    FW: Commonwealth ruling in on grey machines.

FYI. She's copying you on every other one it would seem.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 11:26 AM
**To:** 'Ashford, Karin' <Karin.Ashford@pngaming.com>
**Subject:** RE: Commonwealth ruling in on grey machines.

I think fn 17 says they are not speaking to 5513, and they say the parties acknowledge that's a fact question. That can be both good and bad. The good saying their decision does not apply to the claim that the devices are under 5513. The bad being that the fact comment suggests they are talking about the skill vs. chance test. But, that is the test for devices generically. The claim would not be that the machines are gambling devices, the claim would be that the machines are slot machines under 5513. And, no one argued that point or the follow up point to the Court on this motion. The issue is in play, though, as a result of what POM pleaded in its complaints. As such, the AG could move for summary relief on those claims on grounds noted below.

There's no way to jump right to an appeal on this decision unless you either convert this decision to a final judgment or seek interlocutory appeal by permission, which isn't likely to happen. And, as noted, in our view, we don't want this claim – that they are violating Title 4 – to be the question on appeal. We want a declaration of what the term slot machine means in 5513. If the court gets that wrong, then we'd want to appeal that.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Ashford, Karin [mailto:Karin.Ashford@pngaming.com]
**Sent:** Wednesday, November 20, 2019 11:20 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Subject:** [External] RE: Commonwealth ruling in on grey machines.

But Mark, they practically decided the same thing—that the definition in the gaming act is not the same as the definition under the crimes code because the gaming act only applied to licensed regulated gaming facilities' slot machines. I think your argument is a nuanced argument that can be made on appeal on the same legal issue that was facing the court.

ECKERT010194

Karin Ashford
610 378 8305

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Wednesday, November 20, 2019 11:16 AM
**To:** Ashford, Karin <Karin.Ashford@pngaming.com>
**Subject:** RE: Commonwealth ruling in on grey machines.

It's not appealable at this stage at least, absent permission to do so interlocutory. But, we don't want them to do so b/c it's not the right argument. We'd want them to file a new application for summary relief on the grounds that POM's claim (declaratory judgment cannot take machines) should be denied or, stated in reverse, that state should get declaratory judgment that machines are slots under Title 18. We may draft for them and send to them.

If they refuse, we should consider intervening and doing it.

It's an incredibly straightforward argument. 5513 references slot machines but does not define them. Title 1 statutory construction rules and case law says you can and should look to how the term is defined in other state laws, especially if on the same subject (i.e., gambling). Court finds the Title 4 definition applies in 18 PaCS 5513, and it's done b/c Court already found that the machines fall within Title 4 definition.

If they deny that, then they are holding that the same word – slot machine – means one thing under one law and something totally different under another law.

**Mark S. Stewart, Esq.** | Member
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Ashford, Karin [mailto:Karin.Ashford@pngaming.com]
**Sent:** Wednesday, November 20, 2019 10:59 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Subject:** [External] RE: Commonwealth ruling in on grey machines.

Will the government defendants let you know if they are appealing?

Karin Ashford
610 378 8305

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Wednesday, November 20, 2019 10:29 AM
**To:** Ashford, Karin <Karin.Ashford@pngaming.com>; King, Jr., Adrian R. (Phila) <kinga@ballardspahr.com>
**Subject:** RE: Commonwealth ruling in on grey machines.

Karin

Have a different read. Court did not say definition doesn't apply. Court said it is not ruling on 5513's application to machines (our claims). OAG argued case incorrectly, as it did before Dauphin County and focused on violations of Title 4. They did not make a claim for violations of 5513 (as it is criminal).

ECKERT010195

Court did find the machines are slot machines as defined in Title 4.  But said that Title does not provide mechanism for unlicensed activity.

As such, if a court accepts the legal proposition, which is directly in the rules of statutory construction, that you look to other laws on the same subject to ascertain the meaning of terms, and uses the Title 4 definition to define slot in 5513, then we already have a court finding that the machines fall within that definition and are a slot, which makes all of the activity a violation of 5513.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Ashford, Karin [mailto:Karin.Ashford@pngaming.com]
**Sent:** Wednesday, November 20, 2019 10:21 AM
**To:** King, Jr., Adrian R. (Phila) <kinga@ballardspahr.com>; Mark S. Stewart <MStewart@eckertseamans.com>
**Subject:** [External] Commonwealth ruling in on grey machines.
**Importance:** High

Just saw this. The skill games won—court ruled the gaming act's definition of slot machines does not apply.

Karin Ashford
610 378 8305

---------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.
---------------------------------------------------------------
This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT010196

# EXHIBIT F

2019_11_20_18_09_05.pdf

ECKERT01022

| | |
|---|---|
| **From:** | Mark S. Stewart |
| **Sent:** | Wednesday, November 20, 2019 6:09 PM |
| **To:** | Bob Green; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com); Richard Gmerek; Sean Schafer; Pete Shelly |
| **Cc:** | Kevin M. Skjoldal |
| **Subject:** | One pager |
| **Attachments:** | IMPACT OF POM V PA DECISION (L0843423-2xA35AE).docx |

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

All,

Attached for your review and comment is the draft one-pager. Please let us know of any comments, etc.

The focus is 5513. The Gaming Act criminal provisions (including 5518(a)(9)-(10) and (f)) ended up being too complicated. Each of them are contingent on a finding that the device was made, used, sold, etc., "in violation of the part" or the Gaming Act. While the Court found that the machines are slot machines and POM is a manufacturer as defined in Gaming Act, it repeatedly (and wrongly in some ways) held that the Gaming Act didn't apply to them – which makes the "in violation of the part" prerequisite hard to establish and at the very least muddies it too much for our purposes.

Notably, the Court goes through many provisions of 5518, finding that they don't apply and don't empower the PGCB to regulate POM. But, the Court never addresses the powers of the DAs/AG/PSP to enforce the noted criminal provisions (which apply to "persons", not just licensees), and the Court never addresses 1518(f).

All the enforcement powers of these agencies, including confiscation, are the same under 18 PaCS 5513. Given that the Crimes Code is free of the cloud created by the Court over any Gaming Act enforcement provisions, it was more effective to focus on 5513.

FYI, we have also spoken with the AG unit handling the litigation. They have an internal meeting coming up to discuss how to handle, and we asked to meet with them. Despite our past efforts at giving them written arguments, etc., it was clear that they still had not grasped the 5513 point here and the significance of the Court's finding about the games being "slot machines." They were still talking like they would have to prove each machine was predominately skill. The light seemed to come on during the conversation, but we will need to keep on the dialogue to make sure.

Thanks.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

1

**ECKERT01023**

### COMMONWEALTH COURT DECISION PAVES WAY FOR
### CRIMINAL ENFORCEMENT AGAINST ILLEGAL SKILL SLOT MACHINES

A recent Commonwealth Court decision is a major development in the eradication of illegal gambling in Pennsylvania. In *POM of Pennsylvania, LLC v. Commonwealth of Pa., et al.,* No. 418 M.D. 2018, the Court concluded that the so-called "skill games" manufactured by POM of Pennsylvania, LLC are slot machines under the definition of that term used by the Legislature in the Gaming Act. Opinion at 11. The Court further found that, unlike licensed gaming activity which is governed by the regulations of the Pennsylvania Gaming Control Board, illegal slot machines are primarily governed by Pennsylvania criminal law, specifically 18 Pa.C.S. § 5513.

Section 5513 of the Crimes Code expressly makes it illegal in Pennsylvania for a person to make, assemble, sell, lease or maintain a slot machine. Section 5513 also makes it a crime for a person or business to use their property, or allow persons to assemble at their property, to play slot machines. Conduct by licensed casinos is excepted from this provision.

The Commonwealth Court has now definitively concluded that POM's "skill games" are nothing more than slot machines. With this ruling, POM and any person who makes, sells, leases, maintains or offers for play one of their games should be immediately subject to criminal enforcement by local and state law enforcement authorities. In addition to criminal prosecution, Section 5513(b) of the Crimes Code empowers law enforcement to seize any slot machine that is not in a licensed casino. 18 Pa.C.S. § 1513(b).

The Pennsylvania State Police have testified that one manufacturer alone is responsible for more than 10,000 of these illegal slot machines in operation in Pennsylvania – and that five or six manufacturers are active in the state. The clarity provided by the Court will enable law enforcement to rid the Commonwealth of these and all similar illegal slot machines.

{L0843423.2}

**ECKERT01024**

# EXHIBIT G

Message

**From:**      Richard Gmerek [RGmerek@ggrgov.com]
**Sent:**      11/20/2019 9:00:20 PM
**To:**        Stambaugh, Dan (PGCB) [dastambaug@pa.gov]
**Subject:**   [External] Commonwealth Court/Skill Games Decision

***ATTENTION:*** *This email message is from an external sender. Do not open links or attachments from unknown sources. To report suspicious email, forward the message as an attachment to CWOPA_SPAM@pa.gov.*

Dan,

I wanted to share with you the below press release regarding the decision made earlier today by the PA Commonwealth Court, ruling that skill game machines are slot machines.

Please let me know if you have any questions.

Thanks,
Dick

# PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

Parx Casino urges law enforcement to take action

NEWS PROVIDED BY
Parx Casino
Nov 20, 2019, 18:51 ET

HARRISBURG, Pa., Nov. 20, 2019 /PRNewswire/ -- In a blow to illegal gambling and a victory for families and communities in Pennsylvania, the Pennsylvania Commonwealth Court confirmed in a ruling today that video game machines manufactured and distributed by the company POM under the name "Pennsylvania Skill" are considered "slot machines" under Pennsylvania law.

"With this decision, we urge the Pennsylvania State Police, the Office of Attorney General, police departments and District Attorneys across the state to enforce Pennsylvania law to halt the proliferation of thousands of illegal Pennsylvania Skill slot machines now in convenience stores, bars, restaurants and other establishments in communities across the state," said Thomas C. Bonner Group VP / Legal & Chief Counsel for Parx Casino.

Branded by Plaintiff                                                           PGCB2181

"We know that illegal slot machines and full-blown illegal casinos are popping up all over Pennsylvania. We know that minors are gambling, and we know that the state Lottery is losing tens of millions of dollars that should be going to our seniors because of these illegal machines. It's time to confiscate these machines and put these illegal casinos out of business," Bonner added.

POM had argued that their machines were a "game of skill" and therefore not a slot machine under Pennsylvania law. The manufacture, set up, sale, lease, or ownership of a "slot machine" for gambling purposes is illegal under the Pennsylvania Crime Code, Title 18 Section 5513, and these machines are subject to forfeiture under the law.

The Commonwealth Court's clarification that the "Pennsylvania Skill" games are "slot machines" under Pennsylvania law provides concrete and clear legal justification for law enforcement at the state and local levels to confiscate such machines and prosecute those responsible for manufacturing, distributing, leasing, or owning these machines.

The ruling is POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania.

SOURCE Parx Casino

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - x

PACE-O-MATIC, INC.,          :

     PLAINTIFF,               :

  v.                         :    NO. 1:20-cv-292-JPW

ECKERT SEAMANS CHERIN        :

& MELLOTT, LLC,  et          :    JUDGE WILSON

al.,                         :

     DEFENDANTS.              :

- - - - - - - - - - - - x

Videotaped Deposition of KEVIN O'TOOLE

HARRISBURG, PENNSYLVANIA

Friday, July 21, 2023

9:04 A.M.

Job No.: 498725

Pages: 1 - 334

Reported By:  Denise L. Travis, RPR

Pennsylvania Gaming Control Board.  Correct?                    12:52:21

MR. HUDDELL:  Object to form.  Beyond the                    12:52:23
scope of the deposition notice.                    12:52:25

THE WITNESS:  A slot machine that is                    12:52:26
located in a casino facility has to be approved by                    12:52:28
the casino -- by the Pennsylvania Gaming Control                    12:52:33
Board.                    12:52:36

BY MR. NOLAN:                    12:52:36

Q  That's not my question.                    12:52:36

A  Then I, you know, don't understand your                    12:52:38
question other than you can -- you can read what                    12:52:42
you read.                    12:52:45

Q  Right.  And what I read says the                    12:52:46
definition of a slot machine requires that it be                    12:52:48
approved by the Pennsylvania Gaming Control Board.                    12:52:52
If it's not approved, then it doesn't meet the                    12:52:54
definition of a slot machine under the Gaming Act.                    12:52:57
True?                    12:53:00

MR. HUDDELL:  Object to the form.  Beyond                    12:53:01
the scope of the deposition notice.                    12:53:03

THE WITNESS:  The definition limits slot                    12:53:06
machines to slot machines that are inside a                    12:53:09
licensed casino.                    12:53:14

BY MR. NOLAN:                    12:53:14

Q  Can you tell me where those words are in                    12:53:14

MR. HUDDELL:  Objection.  Beyond the scope of the deposition notice.  Object to form.

THE WITNESS:  Correct.

BY MR. NOLAN:

Q  Okay.  So let's break this sentence down a little bit.  You understand how the words if and then work together in combination in a sentence like this.  When the Court says if POM's activities are subject to the Gaming Act, then the POM game fits within the definition of slot machine.

You understand that it would only fit within the definition of slot machine if POM's activities are subject to the Gaming Act. Correct?

MR. HUDDELL:  Object to form.  Object, beyond the scope of the deposition notice.

THE WITNESS:  And conversely, if POM's activities are subject to the Gaming Act, then -- then they would be slot machines and are slot machines.

BY MR. NOLAN:

Q  Okay.  But this Court held at the end of the day -- at the end of its analysis, it held that POM's activities are not subject to the

Transcript of Kevin O'Toole, Designative Representative
Conducted on July 21, 2023                    166

Gaming Act.  Correct?

    MR. HUDDELL:  Objection.  Beyond the scope of the deposition notice.

    THE WITNESS:  Correct.

BY MR. NOLAN:

    Q   So how does that support what you told me earlier under oath that this opinion held that POM's games are slot machines under the Gaming Act?

    MR. HUDDELL:  Objection.  Beyond the scope of the deposition notice.

    THE WITNESS:  If -- if -- if I used the word held -- I don't know if I used the word held. You just used the word held.  But they -- they -- they state that these machines are slot machines.

BY MR. NOLAN:

    Q   Where?

    A   It's -- it's unfair to ask me to read this thing from beginning to end.  If you had put into your 21 topics, you know, provide your source for -- for any conclusion that you may have made that these are slot machines under this opinion, I'd be -- I would have been able to answer that in your first -- in your first question.  But it's -- you know, depositions are depositions.  I'm glad that

13:06:38
13:06:40
13:06:41
13:06:42
13:06:43
13:06:43
13:06:45
13:06:48
13:06:51
13:06:51
13:06:53
13:06:54
13:06:57
13:07:01
13:07:07
13:07:11
13:07:12
13:07:13
13:07:17
13:07:20
13:07:28
13:07:31
13:07:36
13:07:39
13:07:42

Transcript of Kevin O'Toole, Designative Representative
Conducted on July 21, 2023                    170

because I don't think there's any issue in there that would reduce our current regulatory authority. So, no, it -- it's not a threat to our authority.

If they want to rule that these should be regulated and -- and -- and should be licensed, then they can find that and they can say over the course of a certain time frame, I want all of these machines to be tested and approved by the Gaming Control Board and within a certain time frame, I want all of the owners of these commercial establishments to file an application and be approved of the Gaming Control Board. And that would be an expansion of -- of our current responsibilities; but we would -- we would do it and we would do it as successfully as we've done the other areas that are under our authority.

BY MR. NOLAN:

Q  Would you agree with me that the Court held in this case that the Gaming Act only applies to licensed slot machines and licensed entities and facilities and does not apply to unlicensed and illegal devices?

MR. HUDDELL: Objection. Beyond the scope of the deposition notice.

13:11:07
13:11:09
13:11:16
13:11:20
13:11:21
13:11:24
13:11:29
13:11:33
13:11:37
13:11:39
13:11:43
13:11:45
13:11:48
13:11:53
13:11:55
13:11:58
13:12:01
13:12:05
13:12:06
13:12:08
13:12:12
13:12:17
13:12:20
13:12:22
13:12:24

Transcript of Kevin O'Toole, Designative Representative
Conducted on July 21, 2023                                    171

MR. COOK:  Objection calls for --                      13:12:25

THE WITNESS:  Yes, I agree with you.                   13:12:26

BY MR. NOLAN:                                           13:12:30

Q   Would you agree with me that the Court did         13:12:32
not address in this opinion whether or not POM's        13:12:34
games would be legal or illegal under Section 5513       13:12:38
of the Crimes Code?                                     13:12:44

MR. HUDDELL:  Objection.  Beyond the scope             13:12:49
of the deposition notice.                               13:12:52

THE WITNESS:  Would I agree with you that             13:12:53
the opinion does what?                                  13:12:55

BY MR. NOLAN:                                           13:13:00

Q   Would you turn to page 27 of the opinion?          13:13:01

A   Certainly.  Okay.                                  13:13:04

Q   Do you see in Footnote 17 the Court               13:13:11
states, Of course, we do not answer the separate        13:13:14
question of whether the POM game qualifies as an         13:13:15
illegal gambling device under Section 5513 of the        13:13:18
Crimes Code, which both parties appear to               13:13:22
acknowledge presents a question of fact that            13:13:25
requires factual discovery to resolve.                  13:13:28

Did I read that correctly?                         13:13:31

A   Yes, you did.                                      13:13:32

Q   And you agree with that?                           13:13:33

A   I do, yes.                                         13:13:35

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Kevin O'Toole, Designative Representative
Conducted on July 21, 2023                    172

Q   In other words, that analysis of whether a machine is an illegal gambling device under 5513 of the Crimes Code is completely separate and apart from whether it is a slot machine as defined in the Gaming Act.  Yes?

MR. HUDDELL:  Objection.  Beyond the scope of the deposition notice.

THE WITNESS:  I believe that to be correct.

BY MR. NOLAN:

Q   And the Court went on to hold that they rejected the argument that the Gaming Act impliedly repealed the Crime Codes' regulation of illegal gambling devices and slot machines. Agreed?

A   I don't --

MR. HUDDELL:  Objection.  Beyond the scope of the deposition notice.

THE WITNESS:  I don't know where that's contained in the opinion.

BY MR. NOLAN:

Q   Would you turn to page 30 of the opinion? Do you see the conclusion section?

A   Yes.

Q   Okay.  Would you look in the paragraph

13:13:37
13:13:42
13:13:49
13:13:50
13:13:53
13:13:55
13:13:57
13:13:57
13:13:59
13:13:59
13:14:00
13:14:09
13:14:17
13:14:20
13:14:24
13:14:24
13:14:25
13:14:26
13:14:27
13:14:28
13:14:29
13:14:30
13:14:35
13:14:37
13:14:37