# HUSCH BLACKWELL

Michael P. Nolan
Partner

November 16, 2023

Hon. Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania

> Re:  *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC, et al.*, No. 1:20-cv-292: Discovery Dispute Regarding Deposition of Peter Shelly

Dear Judge Wilson:

Plaintiff Pace-O-Matic, Inc. ("POM") respectfully notifies the Court of a discovery dispute between POM and third party Peter Shelly, stemming from Shelly's September 20, 2023 deposition.[1] Shelly is a public relations consultant hired by Parx Casino to "develop[] a communications plan" for the purpose of "shutting down skill games" in Pennsylvania, including POM's skill games. *See* Exhibit A, Shelly Depo., at 27-28, 31, 57, 94, 97-98. In that capacity, Shelly worked closely with Defendants Stewart, Skjoldal, and other attorneys at Defendant Eckert Seamans Cherin & Mellot, LLC ("Eckert") in their effort to destroy POM's business. Shelly's job was not to interpret data or explain foreign concepts to these attorneys to help them provide legal advice to Parx. Instead, he "interface[d] with the public" through media campaigns and pursued "legislation or enforcement measures to shut down skill games." Ex. A, Shelly Depo., at 57, 97-98.

At his deposition, Shelly repeatedly refused to answer relevant questions based on assertions of the attorney-client privilege. These questions fall into four general categories: (1) Shelly's conversations with Parx regarding Eckert's conflict of interest in trying to kill skill games on Parx's behalf while also representing POM; (2) his conversations with attorneys and others, including Parx's lobbyists, regarding the public-relations implications of the decision in *POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717 (Pa. Commw. Ct. 2019) ("*POM* decision"), in which the court held that POM's games are not "slot machines" under Pennsylvania's Gaming Act; (3) his conversations with Defendant Stewart regarding efforts to convince municipalities to outlaw skill games; and (4) his conversations with attorneys regarding their advocacy with Pennsylvania legislators. A table citing the deposition testimony that falls within each of these categories is attached as Exhibit B. These communications go to the heart of POM's case against Eckert.

None of these communications is privileged, because they reflect PR concerns rather than legal advice. Under Pennsylvania law, for the attorney-client privilege to apply, "[t]he communications must be for the purpose of obtaining legal advice." *In re Ford Motor Co.*, 110

---

[1] Counsel for POM conferred telephonically with counsel for Shelly regarding these issues on November 8 & 14, 2023 as well as via e-mail, but were not able to resolve the outstanding dispute.

1

# HUSCH BLACKWELL

F.3d 954, 965 (3d Cir. 1997).[2] A communication that does not provide legal advice is not privileged. *Id.* The party invoking the privilege bears the burden of establishing that it applies. *BouSamra v. Excela Health*, 210 A.3d 967, 982-83 (Pa. 2019). In addition, communications are not privileged if made in the presence of or disclosed to third parties. Disclosures made to a third-party consultant waive any applicable privilege *unless* "the third-party's presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *BouSamra*, 210 A.3d at 985. Courts—including the Pennsylvania Supreme Court in *BouSamra*—routinely decline to extend the privilege to communications with public relations professionals like Shelly, because those communications predominantly relate to public messaging issues rather than legal advice. *See, e.g., In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658, 2021 WL 3140050, *12-14 (D.N.J. July 22, 2021); *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics*, No. 14-cv-585, 2014 WL 7238354, *2 (S.D.N.Y. Dec. 19, 2014); *Haugh v. Schroder Inv. Mgmt. N. Am., Inc.*, No. 02 Civ. 9755, 2003 WL 21998674, *3 (S.D.N.Y. Aug. 25, 2003). Unlike accountants, for example, whose input is sometimes needed to educate lawyers about unfamiliar and complex questions that are essential to providing legal advice, public relations consultants are rarely in that position. "A media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that does not transform their coordination of a campaign into legal advice." *Haugh*, 2003 WL 21998674, *3.

For this very reason, in a prior discovery dispute, Magistrate Judge Saporito ordered the production of many of Eckert's emails that included Shelly as a recipient, finding that no privilege attached. *See* ECF No. 87, at 26-31. As discussed below, several of those emails were, in fact, the exhibits at issue when Shelly refused to answer questions at his deposition. Shelly's counsel, William Cruse, referenced the Court's order several times, thereby demonstrating his understanding that the privilege did not apply, but still instructed Shelly not to answer the questions posed to him. Ex. A, Shelly Depo., at 223-24, 228-29, 246-47, 280-81, 313-14, 393.

As noted above, Shelly's refusals fall into four general categories, none of which involves a legitimate invocation of the privilege. As to the first category—regarding Shelly's communications with Parx about Eckert's conflict of interest—the communications represent classic PR concerns. *See* Ex. A, Shelly Depo., at 61:14-62:10, 63:25-66:10. Shelly himself acknowledged that his interest in Eckert's conflict related to the "communications challenges" it presented for him and its impact on his "audiences," not to any legal advice being provided to Parx. Ex. A, Shelly Depo., at 59, 64, 66-67.

The second category relates to Shelly's conversations with Defendant Stewart and others regarding the meaning and related PR implications of the *POM* decision. Ex. 3 to the Shelly Depo., attached as part of <u>Exhibit C</u> hereto. Shelly was included on the Parx team that discussed, often by email, how best to portray the *POM* holding to the public and to the Pennsylvania legislature and law enforcement. Several of those emails were the exhibits being discussed when Shelly refused

---

[2] *In re Ford* was abrogated in part on unrelated grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). In this diversity case, Pennsylvania law governs the applicability of the attorney-client privilege to the communications in question. Fed. R. Evid. 501.

2

# HUSCH BLACKWELL

to answer counsel's questions based on the attorney-client privilege. *See* Ex. C, Shelly Exhs. 4-8, 10 & 11. As to four of those exhibits (5, 6, 7 & 11), Magistrate Judge Saporito had already overruled attorney-client privilege objections due to Shelly's inclusion in the communications. ECF No. 87, at 26-31. Shelly nonetheless refused to answer any of the many questions posed on this subject, including questions about press releases he drafted. Ex. A, Shelly Depo., at 152:11-153:1, 153:3-12, 169:13-170:5, 178:15-25, 208:5-16, 212:11-213:14, 218:13-219:7, 223:19-225:7, 229:23-230:18, 246:9-247:11, 270:6-25, 283:4-20, 284:16-285:4, 285:24-286:8, 293:2-15, 329:17-330:17, 334:4-23, 351:9-352:23; Ex. C, Shelly Exhs. 5, 6, 7 & 11. Shelly acknowledged that these communications concerned his PR strategy. *See* Ex. A, Shelly Depo., at 198, 226-27, 235. And his own testimony confirms that his input regarding the *POM* decision was not indispensable to counsel's legal advice: "You're asking – my answer is, lawyers interpret. I write. That's my forte. I'm not gonna speculate about a legal document opinion, because I am not an attorney. ***My opinion is worthless to [Parx] Casino in this regard***." Ex. A, Shelly Depo., at 162:25-163:6 (emphasis added).

The third category about which Shelly refused to testify relates to Parx's attempts to persuade municipalities to prohibit skill games and the need to fund those efforts, as reflected in in a series of emails on this subject. Ex. A, Shelly Depo., at 300:5-19; Ex. C, Shelly Ex. 9. Shelly testified that this issue was important for PR reasons: "To make the public aware of the threat that illegal Skill games posed in the Commonwealth and have them urge lawmakers to take action." Ex. A, Shelly Depo. at 314.

The fourth category relates to Shelly's communications with Defendant Stewart regarding his and Parx's advocacy to legislators and the public for the prohibition of skill games in Pennsylvania. Shelly refused to answer questions on this issue, including a question about a press release that Shelly had drafted, notwithstanding the clear PR purpose of these communications. Ex. A, Shelly Depo., at 386:24-387:16, 390:15-24, 393:8-23; Ex. C, Shelly Exhs. 16, 18 & 19.

The attorney-client privilege does not apply to any of the questions at issue. Thus, POM respectfully requests that the Court compel a second deposition under Rule 37(a)(3)(B)(i), during which Shelly must answer the questions at issue, as well as all reasonable follow-up questions based on his answers. In addition, during the September 20 deposition, Shelly's counsel repeatedly made speaking objections and presented argument in response to POM's questions. Indeed, Shelly's counsel opened the deposition with a two-page, argumentative opening statement, before any questions had been asked. Ex. A., Shelly Depo., at 8:13-10:15. Shelly's counsel also repeatedly interfered questioning based on spurious objections relating to relevance or duplication, in several instances preventing Shelly from providing an answer or even instructing him not to answer on those bases. *See, e.g.*, *id.* 71:7-22 (instructing Shelly not to answer based on "asked and answered" objection); 287:1-288:7. "The fact that a question is repetitive or irrelevant is not an appropriate ground for instructing a witness not to answer a question." *Wabote v. Ude*, No. 5:21-cv-2214, 2022 WL 684844, at *6 (M.D. Pa. Mar. 8, 2022) (cleaned up). And lawyers may not "present argument or make speaking objections during a deposition." *Id.* at *7. POM respectfully requests that Shelly's counsel be prohibited from engaging in similar conduct during any second deposition of Shelly.

3

**HUSCH BLACKWELL**

Respectfully,

HUSCH BLACKWELL LLP

*/s/ Michael P. Nolan*

Michael P. Nolan

Attachments

cc:    All counsel of record (via ECF)

HB: 4873-4760-9233.1                                                                          Husch Blackwell LLP