# EXHIBIT C

# EXHIBIT 3

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

POM of Pennsylvania, LLC,  :
      Petitioner  :
            :  No. 418 M.D. 2018
    v.  :
            :  Argued: May 8, 2019
Commonwealth of Pennsylvania,  :
Department of Revenue, and City  :
of Philadelphia,  :
      Respondents  :

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE ROBERT SIMPSON, Judge[1]
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE McCULLOUGH        FILED: November 20, 2019

Before this Court is the Commonwealth of Pennsylvania, Department of Revenue's (Department) application for summary relief in the nature of a motion for partial judgment on the pleadings with respect to the Department's counterclaim to the petition for review in the nature of a complaint seeking a declaratory judgment and injunctive relief, filed in this Court's original jurisdiction by POM of Pennsylvania, LLC (POM). For the reasons set forth, we deny the Department's application for summary relief.

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.



## I. Procedural History

On June 8, 2018, POM filed a petition for review in this Court's original jurisdiction seeking a declaratory judgment and injunctive relief, naming as respondents the Department and the City of Philadelphia (City). According to POM's petition for review, POM "distributes software for a skill-based video game machine, called the Pennsylvania Skill™ Amusement Device 402.49 PEN" (POM Game) throughout Pennsylvania. (Petition ¶1.) The POM Game is primarily located in taverns, restaurants, and social clubs that serve alcohol under license from the Pennsylvania Liquor Control Board. (Petition ¶12.) The POM Game is a coin-operated video machine that offers several games including a tic-tac-toe style puzzle, a potentially unlockable bonus session, and a "Follow Me™ colored dot-matching second phase of game play." (Petition ¶¶13-14.) If a player is ultimately successful playing the POM Game he or she is awarded with a combined total of 105% of the original amount spent to play. (Petition ¶28.) POM asserts that the POM Game is not an illegal gambling device under Pennsylvania criminal law, but rather, that it is a legal game of skill. (Petition ¶29.)

POM avers that from March 2017 until June 2018, the City conducted 11 separate seizures of the POM Game and arrested employees and seized funds at each location. (Petition ¶30.) POM alleges that the City's illegal seizures of the POM Games have interfered with the Department's mission to fairly, efficiently, and accurately administer the tax laws and other revenue programs of the Commonwealth. (Petition ¶36.) POM contends that the POM Game generates revenue for the Commonwealth in various ways. (Petition ¶37.)

POM maintains that the POM Game is not an illegal game of chance under the relevant statute of the Pennsylvania Crimes Code[2] governing illegal gambling devices. (Petition ¶¶38-39.) POM also alleges that in *In re Pace-O-Matic, Inc. Equipment, Terminal I.D. No. 142613* (C.P. Beaver, No. M.D. 965-2013, filed December 23, 2014), the Court of Common Pleas of Beaver County determined that a similar POM game was a game in which skill predominated and, thus, not a gambling device *per se* under Pennsylvania law.[3, 4] (Petition ¶48.) Consequently, POM requests that this Court enter a declaratory judgment in its favor and (1) declare that the POM Game is a legal device under Pennsylvania law; (2) declare that the City lacks the power and authority to seize or threaten to seize POM Games or initiate administrative or criminal proceedings regarding POM Games; (3) permanently enjoin the City from seizing or threatening to seize POM Games and/or initiating administrative or criminal proceedings regarding POM Games; and (4) grant any other relief deemed appropriate. (Petition ¶67.) POM also requests that we enter a preliminary injunction enjoining the

---

[2] 18 Pa.C.S. §§101-7707.

[3] In *Pace-O-Matic*, agents of the Pennsylvania Bureau of Liquor Control Enforcement seized coin-operated video devices from a social club. *Id.*, slip op. at 1-2. Like the POM Game at issue, the devices contained tic-tac-toe style puzzles that were played for money and offered rewards and dot-matching bonus games. *Id.*, slip op. at 2-4. The court of common pleas concluded that a machine is a gambling device *per se* where three elements are present: (1) consideration; (2) a result determined by chance, instead of skill; and (3) a reward. *Id.*, slip op. at 5. Because the court of common pleas determined that the outcome of both the tic-tac-toe and bonus games was determined predominantly by skill, rather than chance, it held that the Commonwealth failed to prove that the seized devices were gambling devices *per se*. *Id.*, slip op. at 10-12.

[4] Additionally, POM alleges that after the Beaver County decision, the District Attorney for Centre County issued a letter stating that, in light of the decision, her office would not confiscate POM machines. Similarly, POM avers that the District Attorney for Lancaster County issued a letter stating that for the reasons set forth in the Beaver County decision, the POM machine was not considered a game of chance under Pennsylvania gaming laws. (Petition ¶49.)

City from (1) seizing or threatening to seize POM Games; (2) initiating administrative or criminal proceedings regarding the POM Game; and (3) arresting or prosecuting persons in connection with operation of the POM Game. *Id.*

The Department filed an answer, new matter, and counterclaim in response to POM's petition for review.[5] In its counterclaim, the Department alleges that the POM Game is considered a slot machine under section 1103 of the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa.C.S. §1103. (Counterclaim ¶18.) The Department also avers that the POM Game has not been inspected or certified by the Pennsylvania Gaming Control Board (Gaming Control Board) and that POM has been acting in violation of the Gaming Act.[6] (Counterclaim ¶¶20-21.) The Department also maintains that POM is a manufacturer of slot machines under section 1103 of the Gaming Act, 4 Pa.C.S. §1103, and that it has violated the Gaming Act by manufacturing slot machines without a manufacturer's license. (Counterclaim ¶¶25-27, 29-30.) Similarly, the Department contends that POM is a supplier of slot machines under the Gaming Act and that POM has violated the Gaming Act by distributing slot machines without a supplier license. (Counterclaim ¶¶37-40, 42.)

The Department seeks a declaration that (1) the Gaming Act regulates the manufacture, possession, and operation of slot machines; (2) the Gaming Act and its regulations prohibit any person from possessing a slot machine unless lawfully manufactured by a licensed manufacturer; (3) the Gaming Act prohibits the possession and operation of any slot machines unless on the premises of a licensed casino facility; (4) the POM Game is an illegal gambling device under the Gaming Act; (5) the POM

---

[5] The City also filed a separate answer and new matter in response to POM's petition for review.

[6] 4 Pa.C.S. §§1101-1904.

4

Game is a slot machine under the Gaming Act and subject to a daily tax of 34% of its revenue; and (6) POM is a manufacturer and/or supplier of slot machines and is required to obtain a license from the Gaming Control Board. (Counterclaim ¶51.) The Department also requests that POM be ordered to remove its machines from all Pennsylvania establishments and cease further sale and distribution of its machines within Pennsylvania unless and until POM obtains the proper licenses from the Gaming Control Board. (Counterclaim ¶52.) While the Department repeatedly argues that the POM Games are subject to the Gaming Act and the authority of the Gaming Control Board, the Gaming Control Board has not sought to intervene in this matter.

POM filed a reply to the Department's new matter and counterclaim. Thereafter, the Department filed an application for summary relief in the nature of a motion for partial judgment on the pleadings with respect to its counterclaim.

The Department raises the following issues in its application for summary relief in the nature of a motion for judgment on the pleadings:[7] (1) The POM Game is a slot machine under the Gaming Act; (2) POM is a manufacturer and/or a supplier of

---

[7] Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, which is titled "Summary relief," provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "A motion for judgment on the pleadings is in the nature of a demurrer"; thus, "all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him." *Trib Total Media, Inc. v. Highlands School District*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010).

In reviewing a motion for judgment on the pleadings we "may only consider the pleadings themselves and any documents properly attached thereto." *Id.* The motion should only be granted "when the pleadings show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Further, "the party moving for judgment on the pleadings must admit the truth of all the allegations of his adversary and the untruth of any of his own allegations that have been denied by the opposing party." *Pfister v. City of Philadelphia*, 963 A.2d 593, 597 (Pa. Cmwlth. 2009). Where "material issues of fact are in dispute, judgment on the pleadings cannot be entered." *Id.*

slot machines under the Gaming Act; and (3) POM is acting in violation of the Gaming Act.

## II. The Department's Argument

In support of its application, the Department argues that the Gaming Act sets forth a comprehensive regulatory structure that controls every aspect of gaming in the Commonwealth, including the manufacture, possession, and operation of slot machines. The Department notes that section 1102(1) of the Gaming Act provides that the primary objective of the Gaming Act is to "protect the public through the regulation and policing of all activities involving gaming and practices that continue to be unlawful." 4 Pa.C.S. §1102(1).[8] Consequently, the Department asserts that the General Assembly intended for the Gaming Act to regulate **all gaming** in Pennsylvania, including all slot machines, regardless of their location or whether they are "licensed" by the Gaming Control Board. The Department asserts that the Gaming Act regulates both legal and illegal gambling, including POM Games, which it contends constitute illegal gambling devices. It also avers that the General Assembly entrusted the Gaming Control Board with the authority to establish procedures for the inspection and certification of compliance of **all** slot machines, but that the POM Game has never been inspected or certified.

The Department argues that under the Gaming Act, a slot machine is defined as any mechanical device that is played for consideration and, whether by reason of skill or chance, provides anything of value. The Department argues that because POM admits in its petition for review that the POM Game is a skill-based

---

[8] Section 1102(1) of the Gaming Act provides, in full, as follows: "The primary objective of this part to which all other objectives and purposes are secondary is to protect the public through the regulation and policing of all activities involving gaming and practices that continue to be unlawful." 4 Pa.C.S. §1102(1).

game, the game is available to play upon payment of money/consideration, and the game provides a reward, POM's game is, by definition, considered a slot machine under the Gaming Act. The Department notes that in 2017 the definition of slot machine was amended to include both games of skill and of chance. Accordingly, it asserts that POM's game of skill fits squarely within the definition of slot machine under the Gaming Act. The Department alleges that POM is violating the Gaming Act because the POM Game is not being regulated and is not subject to monitoring or enforcement controls, and that POM's violations have prevented the Commonwealth from protecting the public from unregulated gaming activities, which is the primary intent of the Gaming Act.

The Department also argues that POM is, by definition, a manufacturer and supplier of slot machines under the Gaming Act. Because sections 1317 and 1317.1 of the Gaming Act, 4 Pa.C.S. §§1317, 1317.1,[9] require manufacturers and suppliers of slot machines to obtain licenses and POM does not hold the required licenses, the Department maintains that POM is violating the Gaming Act. Because it

---

[9] Section 1317 of the Gaming Act provides, in relevant part, the following:

> A manufacturer that elects to contract with a supplier under section 1317.1(d.1) (relating to manufacturer licenses) shall ensure that the supplier is appropriately licensed under this section. A person seeking to provide slot machines, table game devices or associated equipment, interactive gaming devices or associated equipment or multi-use computing devices to a slot machine licensee, an interactive gaming certificate holder or an interactive gaming operator within this Commonwealth through a contract with a licensed manufacturer shall apply to the board for the appropriate supplier license.

4 Pa.C.S. §1317. Section 1317.1 of the Gaming Act provides, in pertinent part, as follows: "A person seeking to manufacture slot machines, table game devices and associated equipment or interactive gaming devices and associated equipment for use in this Commonwealth shall apply to the board for a manufacturer license." 4 Pa.C.S. §1317.1.

7

alleges that there are no facts in dispute relating to its counterclaim, the Department asserts that it is entitled to judgment as a matter of law on its counterclaim.

### III. POM's Argument

In contrast, POM argues that its game is not a regulated gaming device under the Gaming Act because its game is not a regulated "skill slot machine," as defined by the statute, and the amended Gaming Act was never intended to change existing Pennsylvania law regarding what is an illegal gambling device. (POM's Br. at 7.) POM attempts to distinguish "gaming" from "gambling." POM contends that "gaming" occurs in licensed facilities regulated by the Gaming Control Board pursuant to the Gaming Act, whereas the Pennsylvania Crimes Code regulates alleged illegal "gambling" devices. POM also asserts that the 2017 amendments to the Gaming Act did not expand the scope of the Gaming Act, but continued to only regulate gaming in licensed facilities. POM contends that several well-established principles of statutory construction support its interpretation of the Gaming Act.

POM maintains that the POM Game is entirely outside of the regulatory scheme of the Gaming Act because the Gaming Act only applies to licensed games located in regulated gaming locations, such as casinos and horse racing tracks. Thus, POM argues that the Gaming Act does not regulate the types of places that operate the POM Game, including taverns, bars, restaurants and convenience stores. Moreover, POM alleges that if the POM Game is subject to the Gaming Act and, hence, illegal, so are arcade games located at establishments such as Chuck E. Cheese or Dave & Buster's. In addition, POM maintains that if the Department is correct that the POM Game is subject to the Gaming Act, then the Department has failed to join an indispensable party to the counterclaim, i.e., the Gaming Control Board and, therefore, the counterclaim is jurisdictionally defective.

8

## IV. Analysis

### A. "Slot Machine," "Manufacturer," and "Supplier" of Slot Machines Under the Gaming Act.

We first address the definitions of "Slot machine," "Manufacturer," and "Supplier" under the Gaming Act to determine whether—if the Gaming Act applies to unlicensed slot machines—the POM Game would be considered a slot machine and POM a manufacturer and/or supplier of slot machines. Thus, at the outset, we are merely deciding whether, based on the factual allegations, the POM Games are slot machines pursuant to the definitions in the Gaming Act. If the POM Games do not fit within the definitions, our analysis ends at this stage because the Gaming Act would not apply to the POM Game under any circumstances. On the other hand, if the POM Game does fit within the slot machine definitions, we will next determine whether the Gaming Act applies to unlicensed slot machines like the POM Game.

The Department argues that, based on POM's factual allegations, POM's activities vis-à-vis its game fit squarely within the definitions of "Slot Machine," "Manufacturer," and "Supplier." If the Department is correct that, based on the factual allegations in the pleadings, POM's activities fit within these definitions, then the question of whether the Gaming Act applies to POM's activities would be a pure question of law.

"Slot machine" is defined under the Gaming Act as follows:

(1) The term includes:

> (i) **Any mechanical, electrical or computerized contrivance, terminal, machine or other device approved by the Pennsylvania Gaming Control Board** which, upon insertion of a coin, bill, ticket, token or similar object therein or upon payment of any consideration whatsoever, . . . is available to play or operate, **the play or operation of which, whether by**

**reason of skill or application of the element of chance or both:**

**(A) May deliver or entitle the person or persons playing or operating the contrivance, terminal, machine or other device to receive cash, billets, tickets, tokens or electronic credits to be exchanged for cash or to receive merchandise or anything of value whatsoever, . . . .**

. . .

(iii) **A skill slot machine, hybrid slot machine** . . . .

(iv) A slot machine used in a multistate wide-area progressive slot machine system and devices and associated equipment as defined by the Pennsylvania Gaming Control Board through regulations.

(v) A multi-use computing device which is capable of simulating, either digitally or electronically, a slot machine.

Section 1103 of the Gaming Act, 4 Pa.C.S. §1103 (emphasis added). Further, a "Skill slot machine" is defined as "[a] slot machine in which the skill of the player, rather than the element of chance is the predominant factor in affecting the outcome of the game," and "Hybrid slot machine" is defined as "[a] slot machine in which a combination of the skill of the player and elements of chance affect the outcome of the game." *Id.* Therefore, if a player must primarily use skill to affect the game's result, it is considered a "Skill slot machine." If the skill of the player is not the primary factor, but outcome of the game is affected by both skill and chance, it is a "Hybrid slot machine."

In its petition, POM alleges that the POM Game is a coin-operated video machine that provides a reward of up to a combined total of 105% of the original

10

amount spent to play. (Petition ¶¶13, 28.) POM also states that for the purposes of its petition it does not dispute that its game requires consideration to play and provides a reward. (Petition ¶44.) POM avers that the POM Game is a game of skill because the element of skill predominates over the element of chance. (Petition ¶¶29, 47, 50.)

Section 1103 of the Gaming Act defines "Slot machine" as any mechanical or computerized machine, which upon payment of a coin or any consideration provides something of value. The definition includes what are termed "Skill slot machines," which are defined as slot machines where the skill of the player is the predominant factor in determining the outcome of the game. Because POM alleges that its game requires consideration to play, provides something of value, and is skill-based, if POM's activities are subject to the Gaming Act, then the POM Game fits within the definition of "Slot machine" under the Gaming Act. Similarly, since POM alleges that players of the POM game must use skill, if the Gaming Act applies to unlicensed games then the POM Game would fit within the definition of "Skill slot machine" under the Act.

"Manufacturer" is defined, in pertinent part, under section 1103 of the Gaming Act as, "A person who **manufactures, builds, rebuilds, fabricates, assembles, produces, programs, designs or otherwise makes modifications to any slot machine . . . .** *Id.* (emphasis added). Under this definition, if the Gaming Act applies to POM's activities, POM is a "Manufacturer" of slot machines because it alleges that it "designs . . . the essential components" of the POM Game. (Petition ¶56.)

"Supplier" is defined, in relevant part, as follows: "A person that **sells, leases, offers or otherwise provides, distributes or services any slot machine . . .** in this Commonwealth. *Id.* (emphasis added). Likewise, if the Gaming Act were to apply to POM's activities, POM's factual allegations would also establish POM as a "Supplier" of slot machines. For example, POM avers that it "sells the essential

11

components" of the POM Game, that it distributes software for the POM Game, (Petition ¶¶1, 56), and admits that it does not hold a manufacturer's license under the Gaming Act (Reply to Counterclaim ¶30). The definition of "Supplier" includes anyone that sells or distributes slot machines. As POM alleges it sells and distributes the POM Game, it would also be considered a supplier of slot machines under the Gaming Act.

Accordingly, there is one dispositive question remaining before us, which is a pure question of law: whether the Gaming Act applies to POM's conduct.[10] As argued by the Department, the Gaming Act sets forth a comprehensive regulatory regime that applies to both legal and illegal gambling, including POM's allegedly illegal game. To answer the question of whether the Gaming Act applies to the POM Game, we must analyze the language of the Gaming Act to determine the overall intent of the General Assembly in enacting the Gaming Act and its amendments.

**B. Whether, As a Matter of Law, the Gaming Act Applies to POM's Activities.**

**1. Gaming Act Statutory Framework.**

We now turn to the crux of the matter, *i.e.,* whether the Gaming Act applies to the unlicensed POM Game. In order to answer this question we must first conduct a review of the statutory framework of the Gaming Act.

Section 1102 of the Gaming Act, titled "Legislative intent," provides, in part, as follows:

---

[10] POM argues that there are certain material issues of fact that preclude summary relief for the Department. In particular, POM maintains that (1) the Department makes several **policy** arguments that are predicated on unsupported factual assertions and (2) the Gaming Act has historically not been applied to similar circumstances, which necessitates discovery of pertinent formal guidance documents and interpretive rules in the possession of the Department and the Gaming Control Board. However, questions of policy and the potential existence of interpretive guidelines do not present genuine issues of material fact with respect to the fundamental question of whether, given the facts alleged by POM, the Gaming Act should be interpreted to apply to the POM Game.

12

The General Assembly recognizes the following public policy purposes and declares that the following objectives of the Commonwealth are to be served by this part:

(1) The primary objective of this part to which all other objectives and purposes are secondary is to protect the public through the regulation and policing of all activities involving gaming and practices that continue to be unlawful.

(2) **The authorization of limited gaming by the installation and operation of slot machines as authorized in this part** is intended to enhance live **horse racing, breeding programs, entertainment and employment** in this Commonwealth.

. . .

(4) The authorization of limited gaming is intended to positively assist the Commonwealth's horse racing industry, support programs intended to foster and promote horse breeding and improve the living and working conditions of personnel who work and reside in and around the stable and backside areas of racetracks.

. . .

(8) **Strictly monitored and enforced control over all limited gaming authorized by this part** shall be provided through regulation, licensing and appropriate enforcement actions of specified locations, persons, associations, practices, activities, licensees, permittees, registrants and certificate holders.

. . .

(12) It is the intent of the General Assembly to authorize the operation and play of slot machines, table games and interactive gaming **under a single slot machine license issued to a slot machine licensee <u>when</u> a slot machine licensee has been issued a table game operation certificate and an interactive gaming certificate under this part.**

13

4 Pa.C.S. §1102 (emphasis added). Therefore, based on the language of section 1102, the intent of the Gaming Act is to protect the public from unlawful gaming activity, enhance live horse racing, breeding programs, entertainment and employment, and to regulate **licensed** slot machines when the licensee has been issued a table game operation certificate and an interactive gaming certificate. The POM Games are not used for any of the noted activities intended to be monitored by the Gaming Board.

Section 1103 of the Gaming Act, the Act's "definitions" provision, defines a "Licensed entity," as "[a]ny slot machine licensee, manufacturer licensee, supplier licensee or other person **licensed by the Pennsylvania Gaming Control Board under this part**," 4 Pa.C.S. §1103 (emphasis added). "Licensed facility" is defined, in part, as "[t]he physical land-based location at which **a licensed gaming entity is authorized to place and operate slot machines**." *Id.* (emphasis added). Section 1103 also provides that a "Licensed gaming entity" or "slot machine licensee" is "[a] person that **holds a slot machine license** pursuant to this part." *Id.* (emphasis added). Thus far, we see that, a licensed entity is an entity that has **obtained a license** from the Gaming Control Board, and a licensed facility is a location where a licensed entity has been **authorized** by the Gaming Control Board to operate slot machines. These definitions, when applied here, stand in stark contrast to POM's status as an unlicensed entity.

A closer look at several of the provisions of the Gaming Act indicates the type of slot machine activities the Act is intended to regulate. Section 1301 of the Gaming Act provides for three distinct classifications of slot machine licenses. 4 Pa.C.S. §1301. Section 1302, titled "Category 1 slot machine license," permits licensed slot machines at certain "**licensed racetrack facilit[ies]**" that have been issued licenses by the State Horse Racing Commission or State Harness Racing Commission to conduct thoroughbred or harness races. 4 Pa.C.S. §1302 (emphasis added). Section 1304, titled "Category 2 slot machine license," allows applicants, not otherwise available to apply for Category 1 licenses, to "seek[] to locate a **licensed facility** in a

14

city of the first class, a city of the second class or a revenue—or tourism—enhanced location." 4 Pa.C.S. §1304 (emphasis added).[11]  A "licensed facility," includes any "area of a **licensed racetrack**," "board-approved interim facility or temporary facility," "area of a **hotel** which the [Board] determines is suitable to conduct table games," or "area of a licensed facility where casino simulcasting is conducted, as approved" by the Board.  Section 1103 of the Gaming Act, 4 Pa.C.S. §1103 (emphasis added). Section 1305, titled "Category 3 slot machine license," allows applicants that have not applied for or been approved or issued a Category 1 or 2 license to obtain a Category 3 license for a "licensed facility in a well-established **resort hotel having no fewer than 275 guest rooms** under common ownership and having substantial year-round recreational guest amenities." 4 Pa.C.S. §1305 (emphasis added). *Id.*[12, 13]  The Gaming Act permits, with certain exceptions, no more than seven Category 1 licensed facilities, five Category 2 licensed facilities, and two Category 3 facilities.  Section 1307 of the

---

[11] The Gaming Act permits Category 1 and 2 licensees to operate up to **3,000 slot machines** at any one licensed facility and, under certain circumstances, apply to operate an additional **2,000 slot machines** at a licensed facility; such licensees, however, are required to operate and make available to play a minimum of **1,500 slot machines** at a licensed facility.  Section 1210 of the Gaming Act, 4 Pa.C.S. §1210.  Successful Category 1 and Category 2 license applicants are required to pay a one-time slot machine license fee in the amount of $50,000,000.  Section 1209 of the Gaming Act, 4 Pa.C.S. §1209.

[12] A maximum of **500 slot machines** are permitted at a Category 3 licensed facility, unless the licensee also holds a table game operation certificate, which entitles the licensee to operate up to **600 slot machines**.  Section 1305 of the Gaming Act, 4 Pa.C.S. §1305.  Under certain circumstances, Category 3 licensees may obtain approval for an additional 250 slot machines.  *Id.*  Successful applicants must pay a one-time fee of $5,000,000, and an additional fee of $2,500,000 if additional slot machines are approved.  *Id.*

[13] In 2017, the General Assembly amended the Gaming Act to permit current slot machine licensees to submit bids for so-called "Category 4 slot machine license[s]." Section 1305.1 of the Act of October 30, 2017, P.L. 419, 4 Pa.C.S. §1305.1.  Only ten of these licenses are permitted and they may not be placed within 25 linear miles of the winning bidder's preexisting licensed facility.  *Id.*

Gaming Act, 4 Pa.C.S. §1307. Clearly, the above enumerated sections indicate that the Gaming Act was intended to authorize and regulate large-scale slot machine operations involving hundreds or thousands of slot machines, and there is no suggestion that the Act was ever intended to apply to devices in taverns, and/or social clubs, such as the game in question.

Further, section 1202(a)(1) of the Gaming Act states that the Gaming Control Board "shall have general and sole regulatory authority over the **conduct of gaming and related activities <u>as described in this part</u>**" and that the Gaming Control Board "shall ensure the integrity of the acquisition and operation of slot machines . . . and shall have sole authority over every aspect of the authorization, operation, and play of slot machines." 4 Pa.C.S. §1202(a)(1). "Conduct of gaming" is defined in the Gaming Act as "[t]he **licensed** placement, operation and play of slot machines . . . **under this part, as authorized and approved by the Pennsylvania Gaming Control Board.**" 4 Pa.C.S. §1103 (emphasis added). The Gaming Control Board further has the specific power and duty "[a]t its discretion, to issue, approve, renew, revoke, suspend, condition or deny issuance or renewal of slot machine licenses." Section 1202(b)(12) of the Gaming Act, 4 Pa.C.S. §1202(b)(12). While these sections state that the Gaming Control Board has general and regulatory authority over slot machines, such authority must be viewed through the lens of the limiting clause stating that the Board has authority over the "conduct of gaming," **as described in this part** and which is defined as the **licensed** placement and operation of slot machines **as authorized and approved by the Board.**

The Gaming Control Board is also given the power to, *inter alia,*

(1) Deny, deny the renewal, revoke, condition or suspend any license, permit, certificate, registration or other authorization provided for in this part . . .

. . .

16

(3) Prescribe and require periodic financial reporting and internal control requirements for **all licensed entities**.

. . .

(9) Establish procedures for the inspection and certification of compliance of each slot machine . . . prior to being placed into use by a **slot machine licensee. . . .**

. . .

(11) **Require each slot machine <u>license applicant</u>** to provide detailed site plans of its **proposed licensed facility** which shall be reviewed and approved by the board for the purpose of determining the adequacy of the proposed security and surveillance measures inside and outside the facility. . . .

. . .

(21.1) Authorize, at its discretion, **a slot machine licensee** to place slot machines that are used in a multistate wide-area progressive slot machine system, skill slot machines or hybrid slot machines and **make them available for play at licensed facilities**.

(21.2) Adopt and promulgate regulations to govern the operation and placement of skill slot machines and hybrid slot machines by slot machine licensees at **licensed facilities** in the same manner as provided in section 13B03 (relating to regulations).

Section 1207 of the Gaming Act, 4 Pa.C.S. §1207 (emphasis added). As already noted, the license applicants for slot machines under the Gaming Act are those that are operating or intend to operate licensed racetrack facilities, large hotels and resort hotels with casinos and section 1207 further underscores that the Board's authority mainly applies to these licensed slot machines, rather than unlicensed or otherwise illegal devices.

17

The Gaming Act also establishes within the Gaming Control Board a "Bureau of Investigations and Enforcement" (Bureau), which is given the power to, *inter alia*, "[i]nvestigate and review **all applicants and applications for a license, permit or registration**" and "[i]nvestigate **licensees, permittees, registrants and other persons regulated by the board for noncriminal violations** of this part." Section 1517(a.1)(2)-(3) of the Gaming Act, 4 Pa.C.S. §1517(a.1)(2)-(3) (emphasis added). The Gaming Act further provides that the Bureau has the power to "[i]nspect and examine **licensed entities** as provided in subsection (e)." Section 1517(a.1)(5) of the Gaming Act, 4 Pa.C.S. §1517(a.1)(5) (emphasis added). Section 1518(a)(3), titled "Prohibited acts; penalties," makes it a criminal offense for "any **licensed entity**. . . or any other person to permit a slot machine to be operated, transported, repaired or opened **on the premises of a licensed facility** by a person other than a person licensed or permitted by the [Board] pursuant to this part." 4 Pa.C.S. §1518(a)(3) (emphasis added).[14] Further, section 1518(a)(4) makes it a criminal offense "for any licensed entity or other person to manufacture, supply or place slot machines into play or display slot machines **on the premises of a licensed facility** without the authority" of the

---

[14] *Compare* Section 1518(a)(3) of the Gaming Act, 4 Pa.C.S. §1518(a)(3), *with* section 3501 of the Gaming Act, 4 Pa.C.S. §3501 (titled "General Prohibition," and providing that "**[n]o person** may offer or otherwise **make available for play in this Commonwealth** a video gaming terminal **unless the person is licensed** under this part" (emphasis added)), *and* section 13C04 of the Gaming Act, 4 Pa.C.S. §13C04 (titled "Unauthorized sports wagering," and making it a criminal offense "for any person to operate, conduct, offer or expose sports wagering for play or to accept a bet or wager associated with sports wagering from any person physically located in this Commonwealth which at the time of play that is not within the scope of a valid sports wagering certificate issued by the [Gaming Control Board] . . . ."), *and* section 13C71 of the Gaming Act, 4 Pa.C.S. §13C71 (titled "Criminal activity," and providing that "Sports wagering conducted by a sports wagering certificate holder in accordance with this chapter shall not constitute a criminal activity under 18 Pa.C.S. §5514 (relating to pool selling and bookmaking).").

18

Board.  4 Pa.C.S. §1518(a)(4) (emphasis added).[15]  These provisions demonstrate that although the Bureau has the authority to investigate and inspect licensees, permittees, and licensed entities it does not have the authority to investigate and inspect unlicensed entities.  More importantly, however, is the fact that although the Act makes it unlawful to place slot machines on the **premises of a licensed facility** without the authority of the Gaming Control Board, it does not make it unlawful to place a slot machine in an **unlicensed location**.

The Department's position is that the above statutory framework authorizes it to regulate both legal and illegal gambling. But POM argues that the Department has no such authority as the Gaming Act only repeals any provisions in the Crimes Code that are inconsistent with it.  *See* section 1903(a)(2) of the Gaming Act, 4 Pa.C.S. §1903(a)(2) (providing that "[t]he provisions of 18 Pa.C.S. §5513(a) are repealed insofar as they are inconsistent with this part").  The Crimes Code, under section 5513(a), titled "Gambling devices, gambling, etc.," states that a person is guilty of a first degree misdemeanor if he does any of the following:

> (1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;
> (2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;
> (3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or
> (4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

---

[15] *Compare* Section 1518(a)(4) of the Gaming Act, 4 Pa.C.S. §1518(a)(4), *with* section 3508(a) of the Gaming Act, 4 Pa.C.S. §3508(a) ("A person seeking to manufacture video gaming terminals, redemption terminals and associated equipment for use in this Commonwealth must apply to the [Board] for a manufacturer license.").

18 Pa.C.S. §5513(a). Moreover, the Pennsylvania State Police, Bureau of Liquor Control Enforcement, when investigating whether "there are reasonable grounds to believe liquor, alcohol or malt or brewed beverages are being sold on premises not licensed," has the power to arrest any person in violation of section 5513 of the Crimes Code. Section 211 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §2-211. Thus, the Crimes Code defines what constitutes illegal gambling, and the Liquor Code gives the Pennsylvania State Police primary enforcement duties with respect to illegal gambling occurring at premises where unlicensed liquor sales are also taking place.

**2. Whether the Gaming Act was Intended to Regulate All Unlicensed and/ or Illegal Slot Machines and Other Gambling Devices in the Commonwealth.**

In light of the above statutory framework, we are faced with the question of whether the General Assembly intended that the regulation of all illegal slot machines and other gambling devices in the Commonwealth is within the purview of the Gaming Act. In other words, we must decide whether the General Assembly intended for the Gaming Act to comprehensively regulate all gambling in the Commonwealth and, thus, apply to both legal and illegal gambling.

When interpreting the Gaming Act our paramount objective must be to ascertain and effectuate the intention of the General Assembly. *See* Section 1921 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. §1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). Moreover, "[e]very statute must be construed, if possible, to give effect to all its provisions." *Id.* Thus, when construing a statute, a court "must attempt to give meaning to every word in a statute, as we cannot assume that the legislature intended any words to be mere surplusage." *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board*

20

*(Sladek)*, 195 A.3d 197, 207 (Pa. 2018). Additionally, "[i]n construing and giving effect to the text, 'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.'" *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016) (quoting *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 822 (Pa. 2003)).

For the following reasons, however, we conclude that the Gaming Act does not apply to unlicensed and/or illegal slot machines. First, the Gaming Act does not give the Gaming Control Board the jurisdiction or authority it now claims. As indicated by sections 1301-1302 and 1304-1305 of the Gaming Act, 4 Pa.C.S. §§1301-1302, 1304-1305, the Gaming Act was intended to license slot machine operations at racetracks, casinos, hotels, and established resort hotels. Thus, its intent was to provide licenses to large, individual slot machine operations that raise millions of dollars in revenue. The POM Games are not located at any of these types of facilities and there is absolutely no suggestion in these provisions of the Gaming Act, or any other provisions of the Act, that the Gaming Act was intended to apply to the facilities where the POM Games are located, *e.g.*, taverns and social clubs, or that the Gaming Act regulates the placement of slot machines at such facilities.

Moreover, the Gaming Act specifically regulates **licensed** slot machines in **licensed facilities.** In particular, section 1103 of the Gaming Act defines slot machines as devices that are **approved** by the Gaming Control Board. 4 Pa.C.S. §1103. Section 1103 also defines licensed entities as persons **licensed by the Gaming Control Board under the Gaming Act** and gaming facilities as the locations at which **licensed gaming entities are authorized to place and operate slot machines.** *Id.* The definitional provisions of the Gaming Act clearly demonstrate that the General Assembly intended for the Gaming Act to regulate slot machines that are **licensed and approved by the Gaming Control Board**, not those that are illegal or unlicensed. The Department argues that the POM Games are illegal; however, even if we were to

21

assume *arguendo* they are illegal and thus in violation of the Crimes Code, there is nothing in the Gaming Act to suggest the General Assembly intended for the Gaming Control Board to also have the authority to regulate gambling devices that are unlawful pursuant to the Crimes Code.

Further, while section 1202(a)(1) of the Gaming Act, 4 Pa.C.S. §1202(a)(1), provides that the Gaming Control Board has sole authority over every aspect of the authorization and operation of slot machines, the preceding clause in that provision states that the Gaming Control Board only has general and sole regulatory authority over the **conduct of gaming**, which is defined in section 1103, as the "**licensed** placement" and "operation" of slot machines, "**under this part, as authorized and approved by the . . . Gaming Control Board**," 4 Pa.C.S. §1103 (emphasis added). As it is a basic principle of statutory construction that a particular provision controls the general, *see* Section 1933 of the Statutory Construction Act, 1 Pa.C.S. §1933, under section 1202 of the Gaming Act the Gaming Control Board only has regulatory authority with respect to the **licensed** placement of slot machines as authorized under the Act and, thus, does not have regulatory authority over **all** slot machines in the Commonwealth.

The legislative intent outlined in the Gaming Act also demonstrates that the General Assembly only intended the Gaming Act to regulate **legal** and **licensed** gaming. Of particular importance, section 1102(8) provides that one of the objectives of the Gaming Act is to **provide strict monitoring "and enforced control over all limited gaming authorized"** by the Gaming Act. 4 Pa.C.S. §1102(8) (emphasis added). Section 1102(8) does **not** state that it is the General Assembly's intention to provide strict monitoring and enforced control **over all gambling in the Commonwealth, whether legal or illegal**, but merely that the General Assembly intended to strictly control the limited gaming authorized by the Gaming Act.

The conclusion that the Gaming Act only regulates licensed slot machines

22

is further bolstered by section 1517(a.1)(5) of the Gaming Act, which gives the Bureau the power to inspect and examine "**licensed entities**," 4 Pa.C.S. §1517(a.1)(5) (emphasis added), and section 1517(a.1)(3), 4 Pa.C.S. § 1517(a.1)(3), which gives the Bureau the authority to investigate **license applicants**, **licensees**, and **permittees**. If the General Assembly had intended for the Gaming Act to regulate illegal gambling, in addition to licensed, legal gaming, the General Assembly would likely have given the Bureau the power to inspect, examine, and investigate **unlicensed entities**, such as taverns, bars, restaurants and convenience stores, where the POM Games are present. However, the General Assembly did not do so. Courts cannot assume that an agency has been bestowed additional powers that are not present in or inferable from statutory language.

Section 1518 of the Gaming Act also provides strong evidence that the General Assembly did not intend for the Gaming Act to regulate unlicensed/illegal slot machines. Section 1518, 4 Pa.C.S. §1518, makes it unlawful for any person to permit a slot machine to be opened on the premises of a **licensed facility** unless licensed by the Board, and makes it illegal to manufacture, supply, or place slot machines into play at a **licensed facility** without the authority of the Gaming Control Board. However, neither section 1518 nor any other provision in the Gaming Act makes it unlawful for any person to manufacture, supply, or place slot machines at **unlicensed facilities** or generally unlawful to display or operate slot machines when **not authorized** by the Gaming Control Board. In contrast, section 3501 of the Gaming Act, 4 Pa.C.S. §3501, makes it unlawful for any person to make available for play video gaming terminals unless that person is licensed by the Gaming Control Board, section 3508, 4 Pa.C.S. §3508, requires a person seeking to manufacture video gaming terminals to apply for a license with the Board, and section 13C71, 4 Pa.C.S. §13C71, states that sports wagering conducted by an entity that holds a sports wagering certificate does not constitute criminal activity. Accordingly, whereas the provisions of the Gaming Act

dealing with video gaming terminals and sports wagering indicate that the General Assembly intended for the Board to have exclusive regulatory authority over such activities, section 1518 indicates the opposite with respect to slot machines.

Moreover, the Gaming Act bestows the Gaming Control Board with the power to, *inter alia*, deny or suspend slot machine licenses; establish procedures and financial reporting requirements for **slot machine licensees**; and adopt and promulgate regulations to govern the operation and placement of slot machines by slot machine licensees at **licensed facilities**. Section 1207 of the Gaming Act, 4 Pa.C.S. §1207. There is no indication in section 1207 that the Gaming Control Board was given comprehensive authority over all illegal gambling activities in the Commonwealth, nor can we create such authority. Therefore, even if the POM Games were considered illegal gambling devices, illegal devices have been historically regulated by the Crimes Code and the Gaming Act does not provide any authority for regulating such devices.

Due to the language in the Gaming Act discussing the regulation of licensed slot machines and facilities, we simply cannot glean any intention by the General Assembly for the Gaming Act to regulate all unlicensed and illegal slot machines in the Commonwealth. Moreover, the various references to racetracks, hotels, and casinos in the Gaming Act indicate that it only regulates slot machines at these types of licensed facilities/locations, and not the locations at issue, such as taverns, social clubs, and restaurants. In addition, were we to accept the Department's argument that the Gaming Act applies to unlicensed slot machines, it would render the multiple references in the Gaming Act to **licensed** slot machines, **approved** slot machines, **licensed** entities, and **licensed** facilities mere surplusage, which is not permissible under basic statutory construction principles. *See, e.g., City of Philadelphia Fire Department*, 195 A.3d at 207 (holding that pursuant to section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921(a), when "construing a statute, the courts must attempt to give meaning to every word in a

24

statute, as we cannot assume that the legislature intended any words to be mere surplusage"). Accordingly, based on the overall framework and context of the Gaming Act, we hold that it only applies to licensed slot machines in licensed entities/facilities and does not apply to unlicensed and illegal devices.

Our conclusion that the Gaming Act does not apply to the unlicensed POM Game is further bolstered by comments made during the 2004 Senate floor debate for the Gaming Act.[16] During the debate, Senator Vincent Fumo made the following prepared statement:

> [A]t no time has this bill's original purpose changed. This bill was originally introduced to provide for a manner of regulating the Pennsylvania horseracing industry. This purpose has not changed. The amendment we offered furthers the regulation of the Pennsylvania horseracing industry and funds many of the horse development functions with a direct subsidy from the legalization of gaming operations throughout the Commonwealth. The original purpose has never changed. . . . [T]his bill embraces only one subject as expressed in its drafting as an amendment to Title 4 of the Pennsylvania Consolidated Statutes, in this case, the subject of amusements or more specifically, Pennsylvania horseracing. A new chapter to Title 4 has been added, entitled, the Pennsylvania Racehorse Development and Gaming Act, of which slot machine operations are the revenue engine through which Pennsylvania may enhance horseracing opportunities. Simply stated, though the media simplification of this issue is slot machines, the public policy

---

[16] The Statutory Construction Act specifically authorizes consideration of legislative history when construction of a statute, beyond its plain language, is required. *See* 1 Pa.C.S. §1921(c)(7). Although lawmakers' statements during debate are generally not dispositive of legislative intent, they may properly be considered as part of the contemporaneous legislative history. *Arneson v. Wolf*, 117 A.3d 374, 384 n.10 (Pa. Cmwlth.), *aff'd*, 124 A.3d 1225 (Pa. 2015); *see also Board of Revision of Taxes v. City of Philadelphia*, 4 A.3d 610, 624 n.10 (Pa. 2010) (noting that although legislators' statements during floor debate are not dispositive, they can be instructive to our analysis and persuasive evidence of the General Assembly's intent).

25

> purpose that carries throughout every provision of this Act is the development of the horseracing industry.

Legislative Journal—Senate, 188th Sess., July 1, 2004, at 1992. Thus, the legislative history demonstrates that when the Gaming Act was first enacted, its intent was to further regulate the horse racing industry and support the industry by providing it revenue from slot machines. The legislative history does not demonstrate that the General Assembly intended for the Gaming Act to regulate all unlicensed and/or illegal slot machines then existing in the Commonwealth.

Additionally, during the same floor debate, Senator Robert Tomlinson stated that although it would take several years before all of the racetrack facilities were up and running, the projected revenue from those facilities was $2.4 billion to $2.9 billion. *Id.* at 1954. Senator Fumo also explained that the bill would "generate an economic development fund that [would] yield $2 billion in money for projects throughout the State" and that in Philadelphia, alone, it was projected that as much as $200 million to $300 million would be spent on each slot machine operation. *Id.* at 1990-1991. He noted that under the bill, Pennsylvania would be the first state to charge a $50 million fee for a gambling license. *Id.* at 1991. Senator Fumo also stated that although gambling is a problem, "We already have gambling. We have gambling at the very racetracks we are trying to save. We have gambling with the Pennsylvania Lottery, and if you have not looked in your local bar, go take a look at the illegal machines that are in there." *Id.* Senator Fumo further stated that, "As far as our horsemen are concerned, they do need help." *Id.* Thus, according to the legislative history, the Gaming Act was meant to legalize slot machines at large-scale facilities in order to aid the horse racing industry and there is no indication that the Gaming Act was intended to apply to or regulate illegal machines already existing at bars and taverns.

This conclusion is further corroborated by remarks made during the floor debate for the 2017 amendments to the Gaming Act. Specifically, during the floor debate, the following exchange occurred with Representative Jason Ortitay, the prime sponsor of the 2017 amendments:

> Mr. STURLA: Mr. Speaker, will the prime sponsor of the bill rise for brief interrogation?
> The SPEAKER. Representative Ortitay. He will stand for interrogation. He is glad to do so.
> Mr. STURLA. Thank you, Mr. Speaker. Mr. Speaker, the previous speaker said that **he believes that the language in this bill will make illegal all games of skill in the State of Pennsylvania that currently exist, all the ones that exist currently at truckstops and convenience stores and social clubs and taverns throughout the State of Pennsylvania.** Would you agree with that assessment?
> Mr. ORTITAY. **I do not believe so,** Mr. Speaker.

Legislative Journal—House, 201st Sess., October 25, 2017, at 1174 (emphasis added).

Therefore, based on both the plain language of the Gaming Act, as well as its legislative history, we conclude that unlicensed slot machines and/or slot machines that **are not approved** by the Gaming Control Board, such as the POM Game, are not subject to the Gaming Act.[17] Consequently, we hold that even if the POM Game were considered an illegal gambling device, the Gaming Act does not give the Gaming Control Board the power to regulate illegal gambling devices.

---

[17] Of course, we do not answer the separate question of whether the POM Game qualifies as an illegal gambling device under section 5513 of the Crimes Code, which both parties appear to acknowledge presents a question of fact that requires factual discovery to resolve.

### 3. Whether the Gaming Act Supersedes the Crimes Code's Regulation of Unlicensed Gambling Devices.

Our conclusion is enhanced by an analysis of whether the General Assembly intended the Gaming Act to supplant the Crimes Code's regulation of unlicensed slot machines and illegal gambling devices. The Department contends that "[t]he Gaming Act sets forth a comprehensive regulatory structure that controls and provides oversight for every aspect of gaming in the Commonwealth." (Department's Br. at 9.) It argues that the General Assembly intended the Gaming Act to regulate all gaming in the Commonwealth and that, regardless of the Crimes Code, the POM Game is a slot machine pursuant to the Gaming Act. Conversely, POM maintains that there is a strong presumption that a statute does not impliedly repeal another statute and, therefore, that the Gaming Act did not displace section 5513 of the Crimes Code, as it pertains to gambling devices. We agree with POM.

Under section 1971 of the Statutory Construction Act of 1972, when a statute "purports to be a revision of all statutes upon a particular subject, [] sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute," or "purports to establish a uniform and mandatory system covering a class of subjects," the statute will be construed to supply and to repeal any preexisting local or special statutes on the same class of subjects. 1 Pa.C.S. §1971. However, "in all other cases, a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable." *Id.*

Thus, "[w]hen a statute sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statutes upon the same subject, the former statute is impliedly repealed." *Licensed Beverage Association of Philadelphia v. Board of Education of School District of Philadelphia*, 669 A.2d 447, 450 (Pa. Cmwlth. 1995), *abrogated on different grounds*

28

*by Buffalo Township v. Jones*, 813 A.2d 659 (Pa. 2002). Yet, "there is a very strong presumption that a statute does not impliedly repeal another statute." *Borough of Emmaus v. Pennsylvania Labor Relations Board*, 156 A.3d 384, 398 n.9 (Pa. Cmwlth. 2017); *see also In re Delinquent Tax Sale*, 477 A.2d 603, 605 (Pa. Cmwlth. 1984) (noting that "implied repeals are not favored by the law"); *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 284 A.2d 808, 811 (Pa. Cmwlth. 1971) (concluding "there is a presumption against implied repeal"). "The question of whether a statute has been impliedly repealed by a later statute is exclusively a question of legislative intent." *HSP Gaming, L.P. v. City of Philadelphia*, 954 A.2d 1156, 1175 (Pa. 2008). Because repeals by implication are not favored, they "will not be implied unless there be an irreconcilable conflict between statutes embracing the same subject matter." *Id.* Moreover, since implied repeals are not favored, "legislative intent to repeal a statute by enacting another must be clearly shown." *Id.*

Here, section 5513(a) of the Crimes Code makes it illegal to "intentionally or knowingly make[], assemble[], set[] up, maintain[], sell[], lease[], give[] away, or offer[] for sale, loan, lease or gift any . . . slot machine or any device to be used for gambling purposes." 18 Pa.C.S. §5513(a). Further, section 211 of the Liquor Code, 47 P.S. §2-211, gives the Pennsylvania State Police, Bureau of Liquor Control Enforcement, the power and duty to enforce section 5513 of the Crimes Code in the course of investigating Liquor Code violations. Additionally, section 1903(a)(2) of the Gaming Act, 4 Pa.C.S. §1903(a)(2), mandates that provisions of section 5513(a) of the Crimes Code are only repealed to the extent they are inconsistent with the Gaming Act.

The Department essentially argues that the Gaming Act establishes a uniform system for all gambling in the Commonwealth, regardless of whether the gambling is legal or illegal. Under this interpretation, the Gaming Act would effectively supersede and displace section 5513(a)'s prohibition of illegal gambling. In effect, illegal gambling would be governed by the Gaming Act instead of the Crimes

29

Code, as has historically occurred. This reading of the Gaming Act would also significantly curtail the Bureau of Liquor Control's enforcement activities with respect to illegal gambling, because many such activities would be entrusted to the Gaming Control Board.

However, there is nothing in the Gaming Act that suggests that it purported to revise all statutes governing illegal gambling, set up a general or exclusive system covering the entire subject matter of gambling, or establish a uniform and mandatory system encompassing all gambling. *See* 1 Pa.C.S. §1971. The Gaming Act does not demonstrate that the General Assembly intended to repeal section 5513 of the Crimes Code, to the extent it continued to regulate illegal gambling. Given the strong presumption against implied repeals of statutes and the lack of an irreconcilable conflict between the Gaming Act's regulation of licensed slot machines and the Crimes Code's regulation of illegal slot machines, we decline to conclude that the Gaming Act impliedly repealed the Crimes Code's regulation of illegal gambling devices and slot machines. Therefore, pursuant to our rules of statutory construction we hold that section 5513 of the Crimes Code, rather than any relevant provision of the Gaming Act, remains the preeminent statute governing illegal and unlicensed slot machines in the Commonwealth.

## V. Conclusion

Because the plain language of the Gaming Act indicates that the General Assembly did not intend for the Gaming Act to regulate unlicensed slot machines which fall outside the ambit of the licensed facilities clearly delineated by the Gaming Act, and/or supplant the Crimes Code's regulation of the same, we conclude that the

POM Game is not subject to the Gaming Act.[18]  We therefore deny the Department's application for summary relief in the nature of a motion for a judgment on the pleadings.[19]

PATRICIA A. McCULLOUGH, Judge

Judge Cohn Jubelirer dissents.
Judge Brobson did not participate in this decision.
Judge Covey concurs in the result only.

---

[18] Because we hold that the Gaming Act is inapplicable to the POM Game, we concomitantly conclude that the Department did not fail to join the Gaming Control Board as an indispensable party to the counterclaim, as argued by POM. "A party is generally regarded to be indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *HYK Construction Company, Inc., v. Smithfield Township*, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010) (internal quotation marks omitted).  The relevant analysis of whether a party is indispensable requires consideration of the following factors: (1) whether "absent parties have a right or interest related to the claim"; (2) "[i]f so, what is the nature of that right or interest"; (3) whether that right or interest is "essential to the merits of the issue"; and (4) whether justice can "be afforded without violating the due process rights of absent parties." *Rachel Carson Trails Conservancy, Inc. v. Department of Conservation and Natural Resources*, 201 A.3d 273, 279 (Pa. Cmwlth. 2018).  Moreover, regarding cases involving the Commonwealth, "[a] Commonwealth party may be declared an indispensable party when meaningful relief cannot conceivably be afforded without the Commonwealth party's direct involvement in the action." *Id.* at 280.

Here, because the POM Game does not fall under the purview of the Gaming Act, the Gaming Control Board has no regulatory authority regarding the POM Game.  Thus, the Gaming Control Board does not have a right or interest related to the counterclaim and meaningful relief can be afforded without its involvement.  It is also notable that the Gaming Control Board is aware of this matter, has not sought to intervene, and takes the position that unlicensed "skill games" are not subject to the Gaming Control Board's regulation.  *See* Department's Reply Br. at 17; Video, *Pennsylvania House Appropriations Committee Budget Hearing, FY 2019-20*, (February 27, 2019), https://s3.us-east-2.amazonaws.com/pagopvideo/106913203.mp4 (last visited October 15, 2019).

[19] Our denial of the Department's application, however, does not decide the separate question raised in POM's claim, *i.e.*, whether the POM Game is an illegal gambling device under the Crimes Code, which both parties appear to acknowledge requires discovery in order to resolve.

31

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

POM of Pennsylvania, LLC,  :
            Petitioner  :
                               :  No.  418 M.D. 2018
      v.  :
                               :
Commonwealth of Pennsylvania,  :
Department of Revenue, and City  :
of Philadelphia,  :
            Respondents  :

## ***ORDER***

AND NOW, this 20th day of November, 2019, the Commonwealth of Pennsylvania, Department of Revenue's (Department) application for summary relief in the nature of a motion for partial judgment on the pleadings, with respect to the Department's counterclaim, is denied.

 

                                                             _____
                                                    PATRICIA A. McCULLOUGH, Judge

# EXHIBIT 4

| | |
|---|---|
| **From:** | Charlie Lyons [clyons@shelly-lyons.com] |
| **Sent:** | Wednesday, November 20, 2019 2:29:08 PM |
| **To:** | RGmerek@ggrgov.com; Mark S. Stewart |
| **CC:** | Pete Shelly |
| **Subject:** | [External] RE: COMMONWEALTH COURT DECISION OUT |

Shooting you my email so you can send that one pager to both of us once you have it. Thanks.

**From:** Pete Shelly <pshelly@shelly-lyons.com>
**Sent:** Wednesday, November 20, 2019 1:17 PM
**To:** Charlie Lyons <clyons@shelly-lyons.com>
**Subject:** FW: COMMONWEALTH COURT DECISION OUT
**Importance:** High

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Wednesday, November 20, 2019 11:29 AM
**To:** Pete Shelly <pshelly@shelly-lyons.com>
**Cc:** Richard Gmerek <RGmerek@ggrgov.com>
**Subject:** FW: COMMONWEALTH COURT DECISION OUT
**Importance:** High

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT PROTECTED

Hi, Pete. Lot's going on today. Please see below re Cmmw Court decision on skill games. Sure we will be discussing.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 10:19 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Cc:** 'Sean Schafer' <sean@schafergovaffairs.com>
**Subject:** RE: COMMONWEALTH COURT DECISION OUT
**Importance:** High

A full synopsis will be coming today. Short story:

- AG made the same mistake it did in the Dauphin County/McNally case. It argued that Title 4 applies. It did not make our argument – that this is a question under Title 18 and the only import of Title 4 is that it provides the meaning of slot machine the Court should use in interpreting 5513.

- Court expressly says it is not commenting on whether the machines are violation of 5513. This means it does not put us out of court on our cases.



DEPOSITION
EXHIBIT
Shelly 4
JW 9·20·23
PENGAD 800-631-6989

ECKERT010135

- Court found that their machines are slot machines under Title 4. This should be very good for our cases.

- But, the Court basically held that Title 4 has no mechanism for dealing with unlicensed activity (slots, manufacturing, etc.).  As discussed many times, this is an absurd analysis.  Plus, it's factually and legally incorrect. The district attorneys and the AG have criminal enforcement powers under 1517 and 1518, including the ability to seize property in violation of the Act.

- We will provide thoughts on how this can move forward positively from a legal standpoint; e.g., AG files another application for summary relief based on the right argument; we try to get right to Supreme Court review and then file an amicus, etc.

- Legislatively, I see this as leading to two potential scenarios:

  1. It's ammunition for a simple amendment to 5513 to add a definition of slot machine.  We have this drafted (thought Jake would use it).  Tommy could introduce it.  Others like Martin or the like could introduce it.  If that definition is in 5513, there is no argument that can defeat us since the Court found the machines satisfy the definition.

  2. This could conceivably lead to a push to open and amend Title 4.  The Court finds the machines are slots, it finds they are an unlicensed manufacturer, but says nothing can be done about it.  Even with all the politics and the connections, etc., how can they let that situation go unfixed?  And, to fix it directly and completely, you need to amend Title 4 – which, as well know, means all hell breaks loose on other amendments.

These are the quick thoughts based on discussions with those reading.  Full report is coming and governs to extent there's a conflict with what I've said here.  But, I wanted to get some thoughts/analysis out to you asap.

Sean – if you scroll down, there is a link to the decision.

By the way, the decision is by arguably the worst judge on the Court.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 9:43 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Subject:** RE: COMMONWEALTH COURT DECISION OUT -- NOT GOOD

Hold ... may actually be pretty positive ...

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

ECKERT010136

**From:** Mark S. Stewart
**Sent:** Wednesday, November 20, 2019 9:28 AM
**To:** 'Bob Green' <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>
**Subject:** COMMONWEALTH COURT DECISION OUT -- NOT GOOD
**Importance:** High

Guys

Link below is to Commonwealth Court decision. Lengthy. Denied on the merits; not procedural context. Need to review. On first glance, appears OAG did not argue/Court did not decide the precise argument we are making, but need to read the whole thing.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Kevin M. Skjoldal
**Sent:** Wednesday, November 20, 2019 9:09 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Casey Coyle <ccoyle@eckertseamans.com>; Kristine Marsilio <kmarsilio@eckertseamans.com>
**Subject:** POM decision from Commonwealth Court

http://www.pacourts.us/assets/opinions/Commonwealth/out/418MD18_11-20-19.pdf?cb=1

Before this Court is the Commonwealth of Pennsylvania, Department of Revenue's (Department) application for summary relief in the nature of a motion for partial judgment on the pleadings with respect to the Department's counterclaim to the petition for review in the nature of a complaint seeking a declaratory judgment and injunctive relief, filed in this Court's original jurisdiction by POM of Pennsylvania, LLC (POM).  For the reasons set forth, we deny the Department's application for summary relief.

**Kevin M. Skjoldal**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.6039
kskjoldal@eckertseamans.com
eckertseamans.com | bio | vCard | LinkedIn

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

-----------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without

ECKERT010137

making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT010138

# EXHIBIT 5

2019_11_20_16_48_14.pdf



DEPOSITION
EXHIBIT
Shelly 5
JW 9 20 23

ECKERT01013

| | |
|---|---|
| **From:** | Richard Gmerek <RGmerek@ggrgov.com> on behalf of Richard Gmerek |
| **Sent:** | Wednesday, November 20, 2019 4:48 PM |
| **To:** | Bob Green; 'Tom Bonner (TBonner@parxcasino.com)' |
| **Cc:** | Mark S. Stewart |
| **Subject:** | [External] FW: ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT PROTECTED |
| **Attachments:** | Stop Illegal Gambling Statement 11.20.19 DRAFT .docx |

**From:** Pete Shelly
**Sent:** Wednesday, November 20, 2019 4:12 PM
**To:** Mark S. Stewart ; Richard Gmerek
**Cc:** Charlie Lyons
**Subject:** ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT PROTECTED

This is a working DRAFT for review only – with some blanks. I wanted to get you something sooner rather than later. Please let me know. We need to decide who this statement will come from. I used the coalition name BUT we can delete and have it come from atty/Parx .... Whatever makes sense. I am in the office for remainder of the day: 717.645.3934.


Peter J. Shelly
ShellyLyons Public Affairs & Communications
Office: 717.724.1681
Cell: 717.645.3934
pshelly@shelly-lyons.com
219 State Street
Harrisburg, PA 17101

1

ECKERT01014

# PA COMMONWEALTH COURT RULES THAT PENNSYLVANIA SKILL GAMES ARE ILLEGAL

*The Stop Pennsylvania's Illegal Gambling Coalition (STOP PIG) Urges Law Enforcement Agencies to Act*

HARRISBURG (NOVEMBER 20, 2019) -- In a blow to illegal gambling and a victory for families and communities in Pennsylvania, the Pennsylvania Commonwealth Court confirmed in a ruling today that video game machines manufactured and distributed by the company POM under the name "Pennsylvania Skill" are considered "slot machines" under Pennsylvania law.

"With this decision, we urge the Pennsylvania State Police, the Office of Attorney General, police departments and District Attorneys across the state to enforce Pennsylvania law to halt the proliferation of thousands of illegal Pennsylvania Skill slot machines now in convenience stores, bars, restaurants and other establishments in communities across the state," said _____.

"We know that illegal slot machines and full-blown illegal casinos are popping up all over Pennsylvania. We know that minors are gambling, and we know that the state Lottery is losing tens of millions of dollars that should be going to our seniors because of these illegal machines. It's time to confiscate these machines and put these illegal casinos out of business," ____ added.

POM had argued that their machines were a "game of skill" and therefore not a slot machine under Pennsylvania law. The manufacture, set up, sale, lease, or ownership of a "slot machine" for gambling purposes is illegal under the Pennsylvania Crime Code, Title 18 Section 5513, and these machines are subject to forfeiture under the law.

The Commonwealth Court's clarification that the "Pennsylvania Skill" games are "slot machines" under Pennsylvania law provides concrete and clear legal justification for law enforcement at the state and local levels to confiscate such machines and prosecute those responsible for manufacturing, distributing, leasing, or owning these machines.

The ruling is POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania.

-30-

ECKERT01015

# EXHIBIT 6

2019_11_20_17_26_23.pdf



DEPOSITION
EXHIBIT
Shelly 6
JW 9.20.23

ECKERT01016

| From: | Pete Shelly <pshelly@shelly-lyons.com> on behalf of Pete Shelly |
|---|---|
| Sent: | Wednesday, November 20, 2019 5:26 PM |
| To: | TBonner@parxcasino.com |
| Cc: | Richard Gmerek; Mark S. Stewart; Bob Green (RGreen@parxcasino.com); Charlie Lyons |
| Subject: | [External] RE: Statement |
| Attachments: | parx final 11.20.19.docx |

Dick and I spoke and agreed that statement should come from Tom and w/ Parx logo. Please let me know ASAP if Parx team can issue statewide or should we manage distribution. I assume Parx has an industry media list that we should hit as well. Thanks, Pete S.

Peter J. Shelly
ShellyLyons Public Affairs & Communications
Office: 717.724.1681
Cell: 717.645.3934
pshelly@shelly-lyons.com
219 State Street
Harrisburg, PA 17101

1

ECKERT01017

## PA COMMONWEALTH COURT RULES THAT PENNSYLVANIA SKILL GAMES ARE SLOT MACHINES

HARRISBURG (NOVEMBER 20, 2019) -- In a blow to illegal gambling and a victory for families and communities in Pennsylvania, the Pennsylvania Commonwealth Court confirmed in a ruling today that video game machines manufactured and distributed by the company POM under the name "Pennsylvania Skill" are considered "slot machines" under Pennsylvania law.

"With this decision, we urge the Pennsylvania State Police, the Office of Attorney General, police departments and District Attorneys across the state to enforce Pennsylvania law to halt the proliferation of thousands of illegal Pennsylvania Skill slot machines now in convenience stores, bars, restaurants and other establishments in communities across the state," said Thomas C. Bonner Group VP / Legal & Chief Counsel.

"We know that illegal slot machines and full-blown illegal casinos are popping up all over Pennsylvania. We know that minors are gambling, and we know that the state Lottery is losing tens of millions of dollars that should be going to our seniors because of these illegal machines. It's time to confiscate these machines and put these illegal casinos out of business," Bonner added.

POM had argued that their machines were a "game of skill" and therefore not a slot machine under Pennsylvania law. The manufacture, set up, sale, lease, or ownership of a "slot machine" for gambling purposes is illegal under the Pennsylvania Crime Code, Title 18 Section 5513, and these machines are subject to forfeiture under the law.

The Commonwealth Court's clarification that the "Pennsylvania Skill" games are "slot machines" under Pennsylvania law provides concrete and clear legal justification for law enforcement at the state and local levels to confiscate such machines and prosecute those responsible for manufacturing, distributing, leasing, or owning these machines.

The ruling is POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania.

-30-

ECKERT01018

# EXHIBIT 7

2019_11_20_18_09_05.pdf



DEPOSITION
EXHIBIT
Shelly 7
9.20.23  JW

**ECKERT01022**

From:           Mark S. Stewart
Sent:           Wednesday, November 20, 2019 6:09 PM
To:             Bob Green; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
                (tbonner@parxcasino.com); Richard Gmerek; Sean Schafer; Pete Shelly
Cc:             Kevin M. Skjoldal
Subject:        One pager
Attachments:    IMPACT OF POM V PA DECISION (L0843423-2xA35AE).docx

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

All,

Attached for your review and comment is the draft one-pager. Please let us know of any comments, etc.

The focus is 5513. The Gaming Act criminal provisions (including 5518(a)(9)-(10) and (f)) ended up being too complicated. Each of them are contingent on a finding that the device was made, used, sold, etc., "in violation of the part" or the Gaming Act. While the Court found that the machines are slot machines and POM is a manufacturer as defined in Gaming Act, it repeatedly (and wrongly in some ways) held that the Gaming Act didn't apply to them – which makes the "in violation of the part" prerequisite hard to establish and at the very least muddies it too much for our purposes.

Notably, the Court goes through many provisions of 5518, finding that they don't apply and don't empower the PGCB to regulate POM. But, the Court never addresses the powers of the DAs/AG/PSP to enforce the noted criminal provisions (which apply to "persons", not just licensees), and the Court never addresses 1518(f).

All the enforcement powers of these agencies, including confiscation, are the same under 18 PaCS 5513. Given that the Crimes Code is free of the cloud created by the Court over any Gaming Act enforcement provisions, it was more effective to focus on 5513.

FYI, we have also spoken with the AG unit handling the litigation. They have an internal meeting coming up to discuss how to handle, and we asked to meet with them. Despite our past efforts at giving them written arguments, etc., it was clear that they still had not grasped the 5513 point here and the significance of the Court's finding about the games being "slot machines." They were still talking like they would have to prove each machine was predominately skill. The light seemed to come on during the conversation, but we will need to keep on the dialogue to make sure.

Thanks.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

1

**ECKERT01023**

### *COMMONWEALTH COURT DECISION PAVES WAY FOR CRIMINAL ENFORCEMENT AGAINST ILLEGAL SKILL SLOT MACHINES*

A recent Commonwealth Court decision is a major development in the eradication of illegal gambling in Pennsylvania. In *POM of Pennsylvania, LLC v. Commonwealth of Pa., et al.*, No. 418 M.D. 2018, the Court concluded that the so-called "skill games" manufactured by POM of Pennsylvania, LLC are slot machines under the definition of that term used by the Legislature in the Gaming Act. Opinion at 11. The Court further found that, unlike licensed gaming activity which is governed by the regulations of the Pennsylvania Gaming Control Board, illegal slot machines are primarily governed by Pennsylvania criminal law, specifically 18 Pa.C.S. § 5513.

Section 5513 of the Crimes Code expressly makes it illegal in Pennsylvania for a person to make, assemble, sell, lease or maintain a slot machine. Section 5513 also makes it a crime for a person or business to use their property, or allow persons to assemble at their property, to play slot machines. Conduct by licensed casinos is excepted from this provision.

The Commonwealth Court has now definitively concluded that POM's "skill games" are nothing more than slot machines. With this ruling, POM and any person who makes, sells, leases, maintains or offers for play one of their games should be immediately subject to criminal enforcement by local and state law enforcement authorities. In addition to criminal prosecution, Section 5513(b) of the Crimes Code empowers law enforcement to seize any slot machine that is not in a licensed casino. 18 Pa.C.S. § 1513(b).

The Pennsylvania State Police have testified that one manufacturer alone is responsible for more than 10,000 of these illegal slot machines in operation in Pennsylvania – and that five or six manufacturers are active in the state. The clarity provided by the Court will enable law enforcement to rid the Commonwealth of these and all similar illegal slot machines.

{L0843423.2}

**ECKERT01024**

# EXHIBIT 8

**From:**     Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP
              (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST]
**Sent:**     Friday, November 22, 2019 10:42:03 AM
**To:**       Ashford, Karin
**Subject:**  RE: PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

Talking to them about both. No decision yet. If the Court says that, then they'd have to find the term has a different
meaning in different statutes. If so, then we're stuck with amending the law to add a definition.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com  |  bio  |vCard


**From:** Ashford, Karin [mailto:Karin.Ashford@pngaming.com]
**Sent:** Friday, November 22, 2019 9:43 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Subject:** [External] RE: PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

Ok, I will read the briefs now which will help me with the context. After reading the opinion I
fear that the ruling rejects the argument that the Gaming Act's definition even applies to these
unregulated games, so if the state were to argue regular statutory construction principles and
bring in the gaming act definition as evidence, the Court will say we already ruled that the
Gaming Act's definition is irrelevant.

Do you know if the state is planning a reconsideration motion, or just moving forward on an
MSJ?

Karin Ashford
610 378 8305


**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Friday, November 22, 2019 9:37 AM
**To:** Ashford, Karin <Karin.Ashford@pngaming.com>
**Subject:** RE: PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

Yep. Of course, those quotes are attributed to him. We have spoken with the AG, and they now understand our
argument. It is not a fact question and it is not a skill/chance equation. It is a legal question of whether "slot machine"
in 5513 means the same thing it means in Title 4. We are hopeful they will move for summary relief against POM's initial
claim on that basis.

**Mark S. Stewart, Esq.  |  Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237.7191  |  Mobile (717) 579.7358
mstewart@eckertseamans.com



eckertseamans.com | bio |vCard

**From:** Ashford, Karin [mailto:Karin.Ashford@pngaming.com]
**Sent:** Thursday, November 21, 2019 10:19 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Subject:** [External] RE: PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

Did Tom read the same opinion I did? Quote from last page of companion opinion " However, for the same reasons discussed in *POM I*, our denial of the PSP's application does not decide the separate question of whether the POM Game is an illegal gambling device under the Crimes Code, which both parties appear to acknowledge requires discovery in order to resolve."

Karin Ashford
610 378 8305

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Thursday, November 21, 2019 9:57 AM
**To:** King, Jr., Adrian R. (Phila) <kinga@ballardspahr.com>; Ashford, Karin <Karin.Ashford@pngaming.com>
**Subject:** FW: PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

FYI

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**Subject: PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines**

# PA Commonwealth Court Rules That Pennsylvania Skill Games Are Slot Machines

Parx Casino urges law enforcement to take action

NEWS PROVIDED BY
**Parx Casino**

ECKERT013993

Nov 20, 2019, 18:51 ET

HARRISBURG, Pa., Nov. 20, 2019 /PRNewswire/ -- In a blow to illegal gambling and a victory for families and communities in Pennsylvania, the Pennsylvania Commonwealth Court confirmed in a ruling today that video game machines manufactured and distributed by the company POM under the name "Pennsylvania Skill" are considered "slot machines" under Pennsylvania law.

"With this decision, we urge the Pennsylvania State Police, the Office of Attorney General, police departments and District Attorneys across the state to enforce Pennsylvania law to halt the proliferation of thousands of illegal Pennsylvania Skill slot machines now in convenience stores, bars, restaurants and other establishments in communities across the state," said Thomas C. Bonner Group VP / Legal & Chief Counsel for Parx Casino.

"We know that illegal slot machines and full-blown illegal casinos are popping up all over Pennsylvania. We know that minors are gambling, and we know that the state Lottery is losing tens of millions of dollars that should be going to our seniors because of these illegal machines. It's time to confiscate these machines and put these illegal casinos out of business," Bonner added.

POM had argued that their machines were a "game of skill" and therefore not a slot machine under Pennsylvania law. The manufacture, set up, sale, lease, or ownership of a "slot machine" for gambling purposes is illegal under the Pennsylvania Crime Code, Title 18 Section 5513, and these machines are subject to forfeiture under the law.

The Commonwealth Court's clarification that the "Pennsylvania Skill" games are "slot machines" under Pennsylvania law provides concrete and clear legal justification for law enforcement at the state and local levels to confiscate such machines and prosecute those responsible for manufacturing, distributing, leasing, or owning these machines.

The ruling is POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania.

SOURCE Parx Casino

-----------------------------------------------------------------
This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.
-----------------------------------------------------------------
This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail

ECKERT013994

message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT013995

# EXHIBIT 9

**From:**      Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP
                   (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST]
**Sent:**       Wednesday, January 08, 2020 10:30:51 AM
**To:**          Pete Shelly; Richard Gmerek
**Subject:**   RE: Story re municipal attempt to prohibit skill games

Play it cheap, you weep.  We're in it to win, so whatever needs to be done needs to be done.  $600k still sounds low.

**Mark Stewart, Esquire**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237-7191  |  Mobile (717) 579-7358
mstewart@eckertseamans.com


**From:** Pete Shelly <pshelly@shelly-lyons.com>
**Sent:** Tuesday, January 7, 2020 12:08 PM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Mark S. Stewart <MStewart@eckertseamans.com>
**Subject:** [External] RE: Story re municipal attempt to prohibit skill games

At the first meeting I attended at Tony's office, I suggested $400,000 total – which does not include the media but that Bob has already paid for. Given that the other guys have been working at this for over a year, I think we should suggest a total campaign of $600,000. In short:

- We've rec'd no help from the other casinos is helping turn up the noise. I am talking to a few people about helping out on contract basis w/ the grassroots and that will cost money.
- Everywhere I go, PA SKILLS has been in and seen folks and pitched them. They're throwing money around all over the state and we're playing catch up.
- We still don't really know where we are with lawmakers so we need to think about a media blitz in, say, Rep. Marshall's district to move him: print, radio and digital.
- We talked about bringing in Jane Earll to serve as the 'voice' for Protect Our Lottery BUT I have not heard anything back so am not sure who we will hire for that role and how much we'll have to pay them.


**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Tuesday, January 7, 2020 11:58 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Pete Shelly <pshelly@shelly-lyons.com>
**Subject:** RE: Story re municipal attempt to prohibit skill games

Pete…I'm assuming, based on what we talked about jusy a few minutes ago, that we should up the amount??

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Tuesday, January 7, 2020 11:44 AM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; 'Pete Shelly' <pshelly@shelly-lyons.com>
**Subject:** FW: Story re municipal attempt to prohibit skill games



CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

As Dick knows, I am sending out today an email to the others with suggested donation amounts. What Bob had pulled together was relatively modest. Know you guys are talking so wanted to reach out to see if you think we need to up the suggestions. His suggestions total $250k, but not all of the casinos on his list are even participating in our meetings and not all will give.

**Mark Stewart, Esquire**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237-7191 | Mobile (717) 579-7358
mstewart@eckertseamans.com


**From:** Pete Shelly <pshelly@shelly-lyons.com>
**Sent:** Tuesday, January 7, 2020 11:35 AM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Mark S. Stewart <MStewart@eckertseamans.com>; Bob Green (RGreen@parxcasino.com) <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>
**Subject:** [External] RE: Story re municipal attempt to prohibit skill games

I am pulling together a plan for a grassroots push because I really don't think we can afford to wait for the other guys to step up.


**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Tuesday, January 7, 2020 11:26 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Bob Green (RGreen@parxcasino.com) <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>
**Subject:** RE: Story re municipal attempt to prohibit skill games

And this is the difference between "them" and our teammates........how did they know about this? How were they able to somewhat quickly organized "protest".......meanwhile our teammates don't even seem to want to do a vote count. If we Parx weren't pushing.....nothing would happen!!!


**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Tuesday, January 7, 2020 11:09 AM
**To:** Bob Green (RGreen@parxcasino.com) <RGreen@parxcasino.com>; Richard Gmerek <RGmerek@ggrgov.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; 'Pete Shelly' <pshelly@shelly-lyons.com>
**Subject:** Story re municipal attempt to prohibit skill games

All,

A short note about a meeting held last evening by the Borough Council of Middletown, PA. We are their solicitors, and they had on their agenda last evening our ordinance to declare skill games a public nuisance. A colleague was handling the meeting, and he said that there was a crowd out the door of people who wanted to speak during public comment in favor of skill games. He said that the speakers were predominantly from the clubs, and seemed to be part of a coordinated effort. The comments ranged from, we need the machines to survive, to we have to give 40% of what we take in to charity, to commenting about their donations to the fire company from machine proceeds, to people stating that their groups had received donations from the skill games people. It was all, we're veterans and wrapping themselves in the flag, etc. I know a few bars were also voicing opposition, at least prior to the meeting, and may also

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ECKERT013964

have been there last night.

A decision had already been made to table the ordinance and for me to come into their next executive session to provide more information and background. This borough has received hundreds of thousands of dollars in local share, which we will compare to the "we gave $6 grand to the fire company" type of comments. I will also share the PSP testimony about the games and the criminality (and the recent Steelton burglary as the borough is next door to Steelton). My guess is we will need to make this ordinance part of the local share grant process for 2020 in order to get real traction, which I will work on since we handle that process for Dauphin County. Some of the Council members are still interested in moving forward. The mayor stated last night he will veto any ordinance, so it will need to pass by a big enough majority to override.

Sharing this to show the type of challenge we are and will face at least in some places on the ground.

**Mark Stewart, Esquire**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237-7191  | Mobile (717) 579-7358
mstewart@eckertseamans.com

-------------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.
-------------------------------------------------------------------
This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 10



EXHIBIT
Shelly 10
9.20.23
PENGAD8008-46

| From: | Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST] |
|---|---|
| Sent: | Thursday, November 21, 2019 3:40:10 PM |
| To: | Charlie Lyons; Sean Schafer; RGmerek@ggrgov.com; Kevin M. Skjoldal |
| CC: | Pete Shelly |
| Subject: | RE: Pennsylvania Skill Wins PA Commonwealth Court Decision |
| Attachments: | image001.jpg; image002.jpg |

Charlie

It's a good question. I think the most we can say would be implicitly b/c of the slot machine finding. But, the Court's finding was based on the slot definition in Title 4. The Beaver case was about whether the machines are gambling devices under 5513. The two courts were addressing different statutes. In truth, it's the next case/decision on our argument that will fully overrule the Beaver case. If a court finds that the machines are slot machines under 5513 (because the term has the same meaning in both laws and the Court found the games fit it), then the Beaver decision is completely toast.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street · 8th Floor · Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Charlie Lyons [mailto:clyons@shelly-lyons.com]
**Sent:** Thursday, November 21, 2019 2:31 PM
**To:** Sean Schafer <sean@schafergovaffairs.com>; Mark S. Stewart <MStewart@eckertseamans.com>;
RGmerek@ggrgov.com; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Cc:** Pete Shelly <pshelly@shelly-lyons.com>
**Subject:** [External] RE: Pennsylvania Skill Wins PA Commonwealth Court Decision

Mark, a question on Haverstick's letter:
He brings up the Beaver County ruling and the games of skill distinction. But didn't the Commonwealth Court ignore that distinction in ruling that PA Skills machines were slot machines? Or implicitly overrule Beaver County's decision?

**From:** Sean Schafer <sean@schafergovaffairs.com>
**Sent:** Thursday, November 21, 2019 11:35 AM
**To:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; Richard Gmerek <RGmerek@ggrgov.com>; Mark S. Stewart
<MStewart@eckertseamans.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>; Pete Shelly <pshelly@shelly-
lyons.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Subject:** FW: Pennsylvania Skill Wins PA Commonwealth Court Decision

**See below:**

**To:** Sean Schafer <sean@schafergovaffairs.com>
**Subject:** FW: Pennsylvania Skill Wins PA Commonwealth Court Decision

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ECKERT017944



Dear Legislators,

Good afternoon. I wanted to bring to your attention some breaking news. I recently represented Pace-O-Matic of Pennsylvania (POM of PA) in litigation we brought against the Commonwealth of Pennsylvania, Department of Revenue and the City of Philadelphia in Commonwealth Court. Today, we received the decision that you can view by clicking here.

**We won the case decisively.** This opinion, from a statewide appellate court, states that our Pennsylvania Skill games are **NOT** regulated by the Gaming Act as argued by the state.

Further, in the court decision released today, Pennsylvania's Commonwealth Court ruled that the enforcement of illegal gambling devices is a criminal matter and is the responsibility of the Pennsylvania State Police, Bureau of Liquor Control & Enforcement. Our company welcomes strong enforcement of this industry as there are currently many illegal gambling devices on the streets masquerading as skill games.

The Beaver County Court of Common Pleas previously ruled Pace-O-Matic's Pennsylvania Skill as legal games of predominant skill. Click here to read that decision. It is important to remember that Pace-O-Matic never distributed any games until their devices were adjudicated by a court of law. Additionally, the Beaver County decision was never appealed by the Commonwealth.

*These two rulings put our games on solid ground. With that being said, Pennsylvania Skill would welcome additional legislation to regulate, tax and provide strong enforcement of the industry.*

Thank You,

Matt Haverstick, Esq.

Kleinbard LLC | Three Logan Square, 1717 Arch Street, 5th Floor, Philadelphia, PA 19103

Unsubscribe thenness@pahousegop.com

Update Profile | About Constant Contact

Sent by hbondiskey@kleinbard.com in collaboration with

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

ECKERT017945



Try email marketing for free today!

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 11

2019_11_22_11_57_40.pdf



DEPOSITION EXHIBIT

Shelly 11

JW 9.20.23

ECKERT01197

| From: | Kevin M. Skjoldal |
|---|---|
| Sent: | Friday, November 22, 2019 11:58 AM |
| To: | Richard Gmerek; Pete Shelly; Sean Schafer; Mark S. Stewart; Charlie Lyons |
| Cc: | Bob Green; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) |
| Subject: | RE: One pager |

For what it's worth, here is a link to the casino.org article on the Commonwealth Court's recent opinion in the POM matter. https://www.casino.org/news/pennsylvanias-skill-games-machines-not-regulated-by-gaming-act/

The article goes a little bit into our back and forth with POM on the meaning of the opinion:

"In a press release issued Wednesday in the wake of the ruling, Parx, which was not a party in the case, called on authorities to immediately "halt the proliferation of thousands of illegal Pennsylvania Skill slot machines." POM says nothing could be further from the truth and the casino's "outrageous claim" was no more than a "desperate attempt to paint this decision in a false light."

So what did the court actually say? Judge Patricia McCullough wrote that the machines found in convenience stores, bars and restaurants throughout the Keystone State fitted the definition of slots as described in the Gaming Act. But she declined to grant a summary judgment to the state that the company was in violation of the Gaming Act. That's because the Gaming Act is not applicable to unlicensed slot machines, she ruled. She also declined to be drawn on whether the machines constituted "illegal gambling devices.""

Thanks,
Kevin


**Kevin M. Skjoldal**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.6039
kskjoldal@eckertseamans.com

eckertseamans.com | bio | vCard | LinkedIn

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

---

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Thursday, November 21, 2019 4:01 PM
**To:** Pete Shelly ; Sean Schafer ; Mark S. Stewart ; Charlie Lyons
**Cc:** Bob Green ; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) ; Kevin M. Skjoldal
**Subject:** [External] RE: One pager

1

ECKERT01198

Ok great

**From:** Pete Shelly <pshelly@shelly-lyons.com>
**Sent:** Thursday, November 21, 2019 3:36 PM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Sean Schafer <sean@schafergovaffairs.com>; Mark S. Stewart <MStewart@eckertseamans.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

YES. DONE,

**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Thursday, November 21, 2019 3:21 PM
**To:** Sean Schafer <sean@schafergovaffairs.com>; Mark S. Stewart <MStewart@eckertseamans.com>; Pete Shelly <pshelly@shelly-lyons.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

Pete I called you...are you sending to all 253??

**From:** Sean Schafer <sean@schafergovaffairs.com>
**Sent:** Thursday, November 21, 2019 3:10 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Richard Gmerek <RGmerek@ggrgov.com>; Pete Shelly <pshelly@shelly-lyons.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

Agreed. Get it out.

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Thursday, November 21, 2019 3:00 PM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Pete Shelly <pshelly@shelly-lyons.com>; Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

Let's release it!

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Thursday, November 21, 2019 2:59 PM

2

ECKERT01199

**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Pete Shelly <pshelly@shelly-lyons.com>; Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** [External] RE: One pager

Is this done????? Cause they are wrapping up an d we need to get this out

---

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Thursday, November 21, 2019 2:57 PM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Pete Shelly <pshelly@shelly-lyons.com>; Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager
**Importance:** High

Suggestions below. I get wanting to say "lose in Court" but I think it undermines credibility since technically the court denied the AG's motion. The suggested verbiage plays right into our theory, though.

One pager attached.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

---

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Thursday, November 21, 2019 2:29 PM
**To:** Pete Shelly <pshelly@shelly-lyons.com>; Mark S. Stewart <MStewart@eckertseamans.com>; Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** [External] RE: One pager

Great job....couple edits

---

**From:** Pete Shelly <pshelly@shelly-lyons.com>
**Sent:** Thursday, November 21, 2019 2:20 PM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Mark S. Stewart <MStewart@eckertseamans.com>; Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

Dick and I just huddled: recommendation is that Mark's one-pager go up to hill from Mark – it makes sense for our atty to respond to their atty. We also want to hit them hard for trying to pull a fast one like this – w/ message in the email. The memo does not have to be changed.

3

**ECKERT01200**

This will need some word-smithing BUT I would use the following for email:

Subject line: Pace-O-Matic of Pennsylvania's Shell Game

Dear Legislators,

I am sharing the attached analysis of the Commonwealth Court's ruling earlier this week in the Pace-O-Matic of Pennsylvania (POM of PA) litigation. Let me make this perfectly clear: The Court confirmed in its a-ruling today that video game machines manufactured and distributed by the company POM under the name "Pennsylvania Skill" are considered "slot machines" under Pennsylvania law.

As such, these machines should be removed from every convenience store, bar, thrift shop and pizza parlor in the state. There's zero ambiguity: it is illegal to operate a slot machine anywhere in Pennsylvania other than in a licensed, regulated and supervised casino.

Pace-O-Matic's offer to allow the state the privilege of regulating and taxing these machines – which are operating illegally - strains credulity. You don't ignore state law, lose inget called out by the Court for making and selling slot machines, and then come and ask to be regulated. Illegal casino operations are popping up all over the state. Minors are gambling. The State Lottery is losing $138 million a year.

We're calling on the PA State Police and all law enforcement officials to enforce the law and shut these illegal slot machinesoperations down.

---

**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Thursday, November 21, 2019 1:45 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

See my comments below....WRITTEN QUICKLY

---

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Thursday, November 21, 2019 1:10 PM
**To:** Sean Schafer <sean@schafergovaffairs.com>; Charlie Lyons <clyons@shelly-lyons.com>; Richard Gmerek <RGmerek@ggrgov.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager
**Importance:** High

4

ECKERT01201

Is it time to release our legal one pager? YES Do you want us to revise to address anything in their statement? (it'll likely make it longer). For instance, we could say things like, "What PA Skill isn't telling you ... " Etc. Also, do we need to try to counter Haverstick being identified (that is, should we put our names on it, etc.)? YES

There is a second and important piece to counter and I think it needs to be done separately. Their last sentence says they would welcome legislation to regulate their games. Should we send something out to counter that? The letter I drafted for Tommy re Yaw's bill and the picture, with something similar in the House? WHY NOT SAY THAT THEY WANT REGULATION?...WELL WE DO NOT SUPPORT SLOT MACHINES IN FACILITIES OTHER THAN CASINOS...... SO THEY SHOULD REMOVE THEIR MACHINES ESP BEC THEY HURT KIDS AND SENIORS AMD BEC OF WHAT THE ST POLICE AT THE RECENT HOUSE GAMING COMMITTEE HEARING ......AND THEN TALK ABOUT WHAT THEY WOULD LIKE.....NOT PLACE MACHINES WHERE KIDS CAN PLAY THEM (SEE PICTURE) AND THEN COME HAT IN HAND TO THE LEGISLATURE WHEN THEY LOSE IN COURT BY SUGGESTING REGULATION. MAYBE A REFERENCE TO VIOLATING THE LAW AND THEN ASKING FOR LEGISLATIVE FORGIVENESS

With rumblings of a VGT bill coming before year end, we need to start beating that drum and the same arguments apply to both VGTs and skill games. Is this the PA you want? Slots everywhere, teenagers playing them, a toddler on a stool in front of game, etc.

Let us know if you want changes to the one pager to respond to theirs.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Sean Schafer [mailto:sean@schafergovaffairs.com]
**Sent:** Thursday, November 21, 2019 11:34 AM
**To:** Charlie Lyons <clyons@shelly-lyons.com>; Richard Gmerek <RGmerek@ggrgov.com>; Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** [External] RE: One pager

They sent out an email, but they removed members that are close to us. I got one anway. Look for the email from me forwarding it over.

**From:** Charlie Lyons <clyons@shelly-lyons.com>
**Sent:** Thursday, November 21, 2019 10:40 AM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Mark S. Stewart <MStewart@eckertseamans.com>; Sean Schafer <sean@schafergovaffairs.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** RE: One pager

OK from here. One-pager is all good from this end.

5

ECKERT01202

**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Thursday, November 21, 2019 10:09 AM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>; Sean Schafer <sean@schafergovaffairs.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal
<KSkjoldal@eckertseamans.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Subject:** RE: One pager

OK...I'm thinking that since we sent out Pete's press release yesterday....... that maybe we hold this for a few hours to
see what the other side might release first...... and that this 1 pager would then be in response to that.....e.g. the Miele
website says that they are the only legal skill games and that they are not games of chance (slot machines) ........and
we use this 1 pager as a counter punch....boom

If they release nothing, I'm suggesting that we would send this later today to the same "100 people on the Hill" noted in
my email below

OK??

Dick

**From:** Mark S. Stewart <MStewart@eckertseamans.com>
**Sent:** Thursday, November 21, 2019 9:59 AM
**To:** Richard Gmerek <RGmerek@ggrgov.com>; Sean Schafer <sean@schafergovaffairs.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc.
(tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal
<KSkjoldal@eckertseamans.com>; clyons@shelly-lyons.com
**Subject:** RE: One pager

I think it is finished. Did not get any comments or revisions. Dick and Sean replied they were good. Unless Bob, Tom or
Peter or Charlie have any comments, you can let it fly.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Wednesday, November 20, 2019 9:22 PM
**To:** Sean Schafer <sean@schafergovaffairs.com>
**Cc:** Mark S. Stewart <MStewart@eckertseamans.com>; Bob Green <RGreen@parxcasino.com>; Tom Bonner -
Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Pete Shelly
<pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>; clyons@shelly-lyons.com
**Subject:** [External] Re: One pager

We circulated the press release to about 100 people on the Hill tonight so that when we get Marks finished with
his "legal paper" we can just hit reply to each attach it and send it out

Please excuse brevity and typos as this message was likely dictated

6

**ECKERT01203**

On Nov 20, 2019, at 9:18 PM, Sean Schafer <sean@schafergovaffairs.com> wrote:

Haha. It was a little confusing. Looks good. Dick let me know how you want circulate, who you want to hit personally, etc...

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Wednesday, November 20, 2019 6:45:30 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>; clyons@shelly-lyons.com <clyons@shelly-lyons.com>
**Subject:** Re: One pager

Ohhhhhhhhhhhh....I thought YOU meant ME 😃😃

Please excuse brevity and typos as this message was likely dictated

> On Nov 20, 2019, at 6:43 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:
>
> Sorry. That was a paraphrase of a message that could be delivered to people on the Hill. Given the way the PA Skill people played you and told you the machines weren't slot machines, you [legislators] ought to want to close off any loopholes.
>
> **Mark S. Stewart, Esq. | Member**
> **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
>
> 213 Market Street • 8th Floor • Harrisburg, PA 17101
> Direct (717) 237.7191 | Mobile (717) 579.7358
> mstewart@eckertseamans.com
>
> eckertseamans.com | bio | vCard
>
> **From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
> **Sent:** Wednesday, November 20, 2019 6:36 PM
> **To:** Mark S. Stewart <MStewart@eckertseamans.com>
> **Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>; clyons@shelly-lyons.com
> **Subject:** [External] Re: One pager

7

ECKERT01204

I don't understand your last sentence and to whom that's directed. Otherwise, I'm OK if you're OK

Please excuse brevity and typos as this message was likely dictated

On Nov 20, 2019, at 6:31 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

On #1 – sure.

On #2 – That could be a risk. The one pager glosses over the fact that 5513 doesn't define slot machine, and it does not get into the cases and statutory cite that says you look to the Gaming Act's definition to determine what "slot machine" means in 5513. My thought would be:

(a) We use this one pager and our take on it to pressure PSP, DAs, etc., to act now; and

(b) We capitalize on how people are upset about Mike & Todd & Company running around saying the games weren't gambling when the Court has said they are slot machines by having the legislature put the final nail in the coffin with a simple definition amendment to 5513 (if possible). Like the one we drafted for Corman. Given the way they played you, you should want to close off any potential weasel room for them.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Wednesday, November 20, 2019 6:19 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** [External] Re: One pager

I really like it. I have two comments:

8

**ECKERT01205**

1. Should we put quotes around the word skill in the title?
2. Are we sort of saying that there's no need for legislation so that if the police don't go get the machines....we are shit out of luck...... Politically?

Please excuse brevity and typos as this message was likely dictated

On Nov 20, 2019, at 6:09 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

All,

Attached for your review and comment is the draft one-pager. Please let us know of any comments, etc.

The focus is 5513. The Gaming Act criminal provisions (including 5518(a)(9)-(10) and (f)) ended up being too complicated. Each of them are contingent on a finding that the device was made, used, sold, etc., "in violation of the part" or the Gaming Act. While the Court found that the machines are slot machines and POM is a manufacturer as defined in Gaming Act, it repeatedly (and wrongly in some ways) held that the Gaming Act didn't apply to them – which makes the "in violation of the part" prerequisite hard to establish and at the very least muddies it too much for our purposes.

Notably, the Court goes through many provisions of 5518, finding that they don't apply and don't empower the PGCB to regulate POM. But, the Court never addresses the powers of the DAs/AG/PSP to enforce the noted criminal provisions (which apply to "persons", not just licensees), and the Court never addresses 1518(f).

All the enforcement powers of these agencies, including confiscation, are the same under 18 PaCS 5513. Given that the Crimes Code is free of the cloud created by the Court over any Gaming Act enforcement provisions, it was more effective to focus on 5513.

FYI, we have also spoken with the AG unit handling the litigation. They have an internal meeting coming up to discuss how to handle, and we asked to meet with them. Despite our past efforts at giving them written arguments, etc., it was clear that they still had not grasped the 5513 point here and the significance of the

9

ECKERT01206

Court's finding about the games being "slot machines."
They were still talking like they would have to prove
each machine was predominately skill. The light seemed
to come on during the conversation, but we will need to
keep on the dialogue to make sure.

Thanks.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio |vCard

---------------------------------------------------------------
-----

This e-mail message and any files transmitted with
it are subject to attorney-client privilege and contain
confidential information intended only for the
person(s) to whom this email message is addressed.
If you have received this e-mail message in error,
please notify the sender immediately by telephone
or e-mail and destroy the original message without
making a copy. Thank you.

Neither this information block, the typed name of
the sender, nor anything else in this message is
intended to constitute an electronic signature unless
a specific statement to the contrary is included in
this message.

---------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to
attorney-client privilege and contain confidential information
intended only for the person(s) to whom this email message is
addressed. If you have received this e-mail message in error, please
notify the sender immediately by telephone or e-mail and destroy
the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor
anything else in this message is intended to constitute an electronic
signature unless a specific statement to the contrary is included in
this message.

---------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client
privilege and contain confidential information intended only for the person(s) to
whom this email message is addressed. If you have received this e-mail message
in error, please notify the sender immediately by telephone or e-mail and destroy
the original message without making a copy. Thank you.

ECKERT01207

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

---

**From:** Richard Gmerek <RGmerek@ggrgov.com>
**Sent:** Wednesday, November 20, 2019 6:45:30 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>; clyons@shelly-lyons.com <clyons@shelly-lyons.com>
**Subject:** Re: One pager

Ohhhhhhhhhhh....I thought YOU meant ME 😊 😊

Please excuse brevity and typos as this message was likely dictated

> On Nov 20, 2019, at 6:43 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:
>
> Sorry. That was a paraphrase of a message that could be delivered to people on the Hill. Given the way the PA Skill people played you and told you the machines weren't slot machines, you [legislators] ought to want to close off any loopholes.
>
> **Mark S. Stewart, Esq. | Member**
> **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
>
> 213 Market Street • 8th Floor • Harrisburg, PA 17101
> Direct (717) 237.7191 | Mobile (717) 579.7358
> mstewart@eckertseamans.com
>
> eckertseamans.com | bio |vCard
>
> **From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
> **Sent:** Wednesday, November 20, 2019 6:36 PM
> **To:** Mark S. Stewart <MStewart@eckertseamans.com>
> **Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood Gaming and Entertainment, Inc. (tbonner@parxcasino.com) <tbonner@parxcasino.com>; Sean Schafer <sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>; clyons@shelly-lyons.com
> **Subject:** [External] Re: One pager
>
> I don't understand your last sentence and to whom that's directed. Otherwise, I'm OK if you're OK
>
> Please excuse brevity and typos as this message was likely dictated

11

ECKERT01208

On Nov 20, 2019, at 6:31 PM, Mark S. Stewart
<MStewart@eckertseamans.com> wrote:

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

On #1 – sure.

On #2 – That could be a risk. The one pager glosses over the fact that
5513 doesn't define slot machine, and it does not get into the cases and
statutory cite that says you look to the Gaming Act's definition to
determine what "slot machine" means in 5513. My thought would be:

   (a) We use this one pager and our take on it to pressure PSP, DAs,
       etc., to act now; and

   (b) We capitalize on how people are upset about Mike & Todd &
       Company running around saying the games weren't gambling
       when the Court has said they are slot machines by having the
       legislature put the final nail in the coffin with a simple definition
       amendment to 5513 (if possible). Like the one we drafted for
       Corman. Given the way they played you, you should want to
       close off any potential weasel room for them.

**Mark S. Stewart, Esq. | Member**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

**From:** Richard Gmerek [mailto:RGmerek@ggrgov.com]
**Sent:** Wednesday, November 20, 2019 6:19 PM
**To:** Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Bob Green <RGreen@parxcasino.com>; Tom Bonner - Greenwood
Gaming and Entertainment, Inc. (tbonner@parxcasino.com)
<tbonner@parxcasino.com>; Sean Schafer
<sean@schafergovaffairs.com>; Pete Shelly <pshelly@shelly-
lyons.com>; Kevin M. Skjoldal <KSkjoldal@eckertseamans.com>
**Subject:** [External] Re: One pager

I really like it. I have two comments:

1. Should we put quotes around the word skill in the title?
2. Are we sort of saying that there's no need for legislation so that if the
police don't go get the machines.....we are shit out of luck...... Politically?

12

**ECKERT01209**

Please excuse brevity and typos as this message was likely dictated

On Nov 20, 2019, at 6:09 PM, Mark S. Stewart <MStewart@eckertseamans.com> wrote:

ATTORNEY-CLIENT PRIVILEGED/CONFIDENTIAL WORK PRODUCT

All,

Attached for your review and comment is the draft one-pager. Please let us know of any comments, etc.

The focus is 5513. The Gaming Act criminal provisions (including 5518(a)(9)-(10) and (f)) ended up being too complicated. Each of them are contingent on a finding that the device was made, used, sold, etc., "in violation of the part" or the Gaming Act. While the Court found that the machines are slot machines and POM is a manufacturer as defined in Gaming Act, it repeatedly (and wrongly in some ways) held that the Gaming Act didn't apply to them — which makes the "in violation of the part" prerequisite hard to establish and at the very least muddies it too much for our purposes.

Notably, the Court goes through many provisions of 5518, finding that they don't apply and don't empower the PGCB to regulate POM. But, the Court never addresses the powers of the DAs/AG/PSP to enforce the noted criminal provisions (which apply to "persons", not just licensees), and the Court never addresses 1518(f).

All the enforcement powers of these agencies, including confiscation, are the same under 18 PaCS 5513. Given that the Crimes Code is free of the cloud created by the Court over any Gaming Act enforcement provisions, it was more effective to focus on 5513.

FYI, we have also spoken with the AG unit handling the litigation. They have an internal meeting coming up to discuss how to handle, and we asked to meet with them. Despite our past efforts at giving them written arguments, etc., it was clear that they still had not grasped the 5513 point here and the significance of the Court's finding about the games being "slot machines." They were still talking like they would have to prove each machine was predominately skill. The light seemed to come on during the conversation, but we will need to keep on the dialogue to make sure.

Thanks.

13

ECKERT01210

Mark S. Stewart, Esq. | Member
ECKERT SEAMANS CHERIN & MELLOTT, LLC

213 Market Street • 8th Floor • Harrisburg, PA 17101
Direct (717) 237.7191 | Mobile (717) 579.7358
mstewart@eckertseamans.com

eckertseamans.com | bio | vCard

----------------------------------------------------------------
-----

This e-mail message and any files transmitted with
it are subject to attorney-client privilege and contain
confidential information intended only for the
person(s) to whom this email message is addressed.
If you have received this e-mail message in error,
please notify the sender immediately by telephone
or e-mail and destroy the original message without
making a copy. Thank you.

Neither this information block, the typed name of
the sender, nor anything else in this message is
intended to constitute an electronic signature unless
a specific statement to the contrary is included in
this message.

----------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to
attorney-client privilege and contain confidential information
intended only for the person(s) to whom this email message is
addressed. If you have received this e-mail message in error, please
notify the sender immediately by telephone or e-mail and destroy
the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor
anything else in this message is intended to constitute an electronic
signature unless a specific statement to the contrary is included in
this message.

----------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client
privilege and contain confidential information intended only for the person(s) to
whom this email message is addressed. If you have received this e-mail message
in error, please notify the sender immediately by telephone or e-mail and destroy
the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in
this message is intended to constitute an electronic signature unless a specific
statement to the contrary is included in this message.

----------------------------------------------------------------
This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential
information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail

14

ECKERT01211

message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

--------------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

--------------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

--------------------------------------------------------------------

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

ECKERT01212

# EXHIBIT 16

| | |
|---|---|
| **From:** | Mark S. Stewart [/O=ECKERTSEAMANS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3792455D4FAD4724874BB7F444057D20-MARK S. ST] |
| **Sent:** | Wednesday, December 11, 2019 12:04:42 PM |
| **To:** | Pete Shelly |
| **Subject:** | RE: media call(s) -- INDUSTRY LETTER |
| **Attachments:** | INDUSTRY LETTER TO LEGISLATURE RE SKILL GAMES (L0807063-3xA35AE).docx |

Pete – attached is the letter from May.   Lottery losses are an old number, as you know.

Thanks.

**Mark Stewart, Esquire**
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

213 Market Street  •  8th Floor  •  Harrisburg, PA 17101
Direct (717) 237-7191  | Mobile (717) 579-7358
mstewart@eckertseamans.com

**From:** Pete Shelly <pshelly@shelly-lyons.com>
**Sent:** Wednesday, December 11, 2019 12:00 PM
**To:** Bob Green <RGreen@parxcasino.com>; 'Richard Gmerek' <RGmerek@ggrgov.com>; Mark S. Stewart <MStewart@eckertseamans.com>
**Cc:** Thomas St. Hilaire <tsthilaire@shelly-lyons.com>; Charlie Lyons <clyons@shelly-lyons.com>
**Subject:** [External] media call(s)

Brad Bumsted at The Caucus/Lancaster Newspapers, is working on a piece for next week on our issue. The Caucus is a print publication for capitol insiders but it is owned by Lancaster and they will sometimes run his stuff in their print editions. Brad would like to use the photo of minor gambling and woman w/ child – the photoshopped version – as well as language from our email to all lawmakers and I told him that was just fine.

He would also like to interview someone on the record – and I agreed to provide some quotes. It's no secret that Parx has engaged ShellyLyons – since we issued the original news release in response to court ruling AND the blast e-mails to all lawmakers come from me. In short order, I will explain to Brad:

Slot machines are popping up in stores, restaurants, gas stations and thrift shops across the state – and that's against the law. You don't have to take our word for it – just read the PA State Police testimony. Illegal gambling is a growing problem in our state. Period.

We're trying to do something about it. We've been hired to help educate the public and lawmakers about the impact that these illegal casinos are having on minors – who should not be gambling at a slots machine while they're waiting for a slice of pizza; seniors who rely on Meals on Wheels, PACE and other lottery programs. Casinos are licensed, regulated and supervised. It's time to shut these shady, illegal operations down.

I am confident Brad will treat us fairly and I'll let you all know how the interview goes. Thanks, Pete S.

Peter J. Shelly
ShellyLyons Public Affairs & Communications
Office: 717.724.1681
Cell: 717.645.3934
pshelly@shelly-lyons.com
219 State Street
Harrisburg, PA 17101



DEPOSITION
EXHIBIT
Shelly 16
9.2023

ECKERT009679

   

    

   

May 2, 2019

Honorable Joseph Scarnati III
Senate President Pro Tempore
292 Main Capitol
Senate Box 203025
Harrisburg, PA 17120-3025

Honorable Mike Turzai
Speaker of the House
139 Main Capitol
PO Box 202028
Harrisburg, PA 17120-2028

Honorable Jay Costa
Minority Leader
535 Main Capitol
Senate Box 203043
Harrisburg, PA 17120-3043

Honorable Frank Dermody
Minority Leader
423 Main Capitol Building
PO Box 202033
Harrisburg, PA 17120-2033

### *ILLEGAL "SKILL" GAMES STEAL HUNDREDS OF MILLIONS OF DOLLARS FROM THE COMMONWEALTH EACH YEAR*

<u>Despite rejection by Legislature, slot machines found on virtually every street in Pennsylvania</u>

Dear Honorable Senators and Representatives:

We are writing on behalf of all thirteen (13) licensed Pennsylvania casinos regarding the proliferation of so-called "skill" games ("SGs") throughout the Commonwealth. You have surely seen these gambling machines infesting the convenience stores, bars, gas stations, thrift shops, malls and other locations in the communities in your districts. These games, which frequently invoke "Pennsylvania" in their name, claim to be based on such "skills" as guessing when a spinning wheel will stop. Other games may offer players the opportunity to play a high speed memory game, but only after the players first win a pure game of chance. The allure of the games is summed up by the ubiquitous signs that accompany them: "Play Here, We Pay Here!"

{L0807063.3}

ECKERT009680

President Pro Tempore Joseph Scarnati III
Minority Leader Jay Costa
Speaker of the House Mike Turzai
Minority Leader Frank Dermody
May 2, 2019
Page [Page]

In reality and as a matter of law, these *"skill" games are illegal when operated outside of a licensed casino* and represent the very expansion of gambling down Main Street that the General Assembly rejected when enacting Act 42 of 2017. In addition, the operation of SGs affords the public none of the protections that were mandated in conjunction with the legalization of casino gaming, and is robbing the Commonweal th of gaming tax revenue to support property tax relief, among other important initiatives, and Lottery revenue to support programs for senior citizens.

To be clear, SGs that pay out anything of value are illegal right now when operated outside of a licensed casino. Nonetheless, Pennsylvania law enforcement is supporting an amendment to the Pennsylvania Crimes Code that would facilitate enforcement actions against "skill" games. Because of the harm SGs inflict on the public and the substantial threat they pose to Commonwealth gaming tax revenue, we join in support of law enforcement's call for a Crimes Code amendment.

## I.   SGs are Illegal When Operated Outside a Licensed Gaming Facility

In 2017, the General Assembly amended the Gaming Act with the passage of Act 42, which, among other things, expanded the definition of a slot machine to include skill based games when the games payout cash or anything of value (specifically referred to as "skill slot machines" and "hybrid slot machines"). As such SGs are, by law, presently deemed to be slot machines, and the only legal place in which they can be operated is at a licensed casino. The placement of SGs (aka, skill slot machines) in locations other than licensed casinos constitutes illegal gambling, and is a first degree misdemeanor under the Pennsylvania Crimes Code.[1]

Notwithstanding this statutory change, manufacturers and peddlers of illegal SGs continue to assert that their games are legal because the result of the game is allegedly determined predominantly by the skill of the player rather than chance. They even cite to a decision from a county court in Beaver County as "proof" of this claim.

Setting aside this highly questionable claim as to skill, and the non-precedential nature of the referenced trial court decision, *the "predominant factor test" was rendered invalid* as to these games when the General Assembly enacted Act 42, which specifically defines an SG as a slot machine. *There can be no dispute that the only legal place to operate a slot machine is in a licensed casino.* As a result of Act 42, the Beaver County trial court decision is no longer relevant or of any legal effect – just like any other court decision that is effectively reversed after the Legislature changes the law.

---

[1]      Both the Pennsylvania Department of Revenue and the State Police believe SGs are illegal. *See* DOR Secretary Daniel Hassell and Lottery Executive Director Drew Svitko's House of Representatives Appropriations Committee Budget Hearing February 11, 2019 testimony and Lieutenant Colonel Evanchick's PSP/Office of Homeland Security's House of Representatives Appropriations Committee testimony of February 25, 2019.

{L0807063.3}

ECKERT009681

President Pro Tempore Joseph Scarnati III
Minority Leader Jay Costa
Speaker of the House Mike Turzai
Minority Leader Frank Dermody
May 2, 2019
Page [Page]

The relentless promotion of illegal gambling by the companies behind these illegal SGs has caused confusion among retailers, bar owners and other businesses being enticed by claims of easy, untaxed money, as well as hesitation among the law enforcement community about the unlawful status of the games. All of which compels action by the General Assembly to stop the scourge of illegal "skill" games.

## II.    SGs are an Illegal Expansion of Gaming

The rampant proliferation of SGs throughout the Commonwealth constitutes an illegal expansion of gaming and is fundamentally inconsistent with the express intent of the General Assembly.

The General Assembly has been contemplative and deliberate in its expansion of gambling in the Commonwealth. After the Gaming Act's enactment in 2004, the General Assembly waited six (6) years before it expanded gaming to include table games, and an additional seven (7) years before expanding gaming again – after substantial debate – with the passage of Act 42 of 2017. In the process, the General Assembly considered many options and proposals for expanded gaming, including some that would have led to gambling machines on every Main Street in every town across Pennsylvania. The Legislature, however, rejected that approach, specifically declining to allow gambling devices in a limitless number of locations, irrespective of whether the games are determined by chance, skill or both.

Instead, the General Assembly intentionally limited the expansion of gaming to the development of up to ten additional smaller licensed gaming establishments, known as Category 4 facilities, the authorization of interactive gaming, the placement of Video Gaming Terminals ("VGTs") at licensed truck stop locations, and the operation of Keno and Xpress Sports games by the Lottery in retail establishments, including bars and taverns. In doing so, the General Assembly adopted the same cautious, pragmatic approach found in the original Gaming Act from 2004, including vesting municipalities and certain counties with opt out rights as to different forms of expanded gaming. Additionally, contrary to what has occurred with illegal SGs, the Legislature built into Act 42 specific requirements that businesses had to meet in order to host VGTs at qualified truck stop establishments.

Notwithstanding these clear legislative choices, illegal SGs are surfacing in locations where the General Assembly had specifically elected not to allow slot machine gaming, including bars, convenience stores, gas stations, consignment shops, grocery stores, restaurants and even retail malls. During the Pennsylvania State Senate Appropriations Committee's February 19, 2019 Budget Hearing, the Department of Revenue and Lottery reported that almost 18% of their retailers had at least one SG machine, a figure that had *doubled within the past year* – a trend that shows no signs of abating.

{L0807063.3}

ECKERT009682

President Pro Tempore Joseph Scarnati III
Minority Leader Jay Costa
Speaker of the House Mike Turzai
Minority Leader Frank Dermody
May 2, 2019
Page [Page]

This proliferation of illegal SGs is against the public interest and directly contrary to the cautious and thoughtful approach that Pennsylvania has always taken on the subject of gambling. The General Assembly should not allow its will to be flaunted and should give law enforcement the tools it believes it needs to crack down on illegal SGs.

### III.    Illegal SGs Siphon Revenue from the Commonwealth

Illegal SGs do not generate any gaming tax revenue for the Commonwealth and, in fact, quite literally steal revenue from the General Assembly's top priorities of property tax relief and support for senior citizens. The proliferation of SGs cannibalizes existing legal gaming revenue of the Commonwealth's licensed casinos and has undermined the financial condition of the Pennsylvania Lottery. The significant harm caused by SGs is widespread:

- Since 2006, legalized casino gaming has contributed more than $12 billion in gaming tax revenues to the State Treasury. As the Commonwealth is the 54% stakeholder in casino slot machine revenues, it risks the biggest loss from the decline in gaming revenue caused by illegal SGs.

- In addition, gaming facilities in the Commonwealth directly employ nearly 18,000 people, approximately 90% of whom are Pennsylvanians and many of whom are union members. Every measure should be taken to shut down illegal gambling, like SGs, which threaten these employees and their family-sustaining jobs.

- Local companies and small businesses, which typically sell approximately $230 million of goods and services to our casinos each year, will have a vital source of business put at risk, and senior citizens and homeowners will feel the pain of reductions in gaming revenue that would otherwise have gone toward property tax relief and rent rebate programs.

- Finally, county and local governments will also feel the ripple effects from decreased local share revenue as a result of illegal SGs, diminishing funds for first responders, human services programs, transportation and infrastructure improvements, and other economic development projects.

The harm from illegal SGs does not stop there, though. Illegal SGs are proving to be a direct and powerful competitor to the Lottery. With the lure of easy money that will far exceed Lottery agent commissions, the Department of Revenue has been challenged in its attempts to expand new Lottery games, as SGs are popping up in the exact environments that the Lottery is trying to place its Keno and Xpress Sports games – *e.g.,* bars, convenience stores, gas stations, grocery stores, etc. The Department of Revenue has estimated the negative impact of SGs on

{L0807063.3}

ECKERT009683

President Pro Tempore Joseph Scarnati III
Minority Leader Jay Costa
Speaker of the House Mike Turzai
Minority Leader Frank Dermody
May 2, 2019
Page [Page]

Pennsylvania Lottery sales at *$95 million a year in scratch-off sales alone*.[2] These funds are, thus, not available to older Pennsylvania residents, who receive 100% of Lottery proceeds, for such things as care services, property tax and rent rebates, transportation services and prescription drug programs.

### IV.    Illegal SGs Provide <u>None</u> of the Public Protections of Legalized Gaming

Beyond the damage done to the Commonwealth and its programs, SGs pose substantial risk of harm to the public. When the General Assembly authorized limited gaming in the Commonwealth, it did so with the primary objective of protecting the public. *See* Gaming Act, Section 1102. These so-called "skill" games, however, afford the public <u>none</u> of the protections of legalized gaming contemplated by the General Assembly and imposed on all other forms of legalized gaming.

- No responsible gaming safeguards are in place to protect the public, such as a self-excluded list available to compulsive and problem gamblers.

- No precautions or restrictions are in place to prevent underage gambling on SGs by minors. Indeed, the placement of some SGs appear designed to *encourage underage gambling*.

- Businesses that manufacture and sell SGs, and those that host and offer them for play to the public, are not regulated in any way or required to complete a background investigation and demonstrate that they, and their principals, are of good character, honesty and integrity. No investigation is conducted to ensure their prior activities, criminal record, reputation, and associations do not pose a threat to the public interest.

- SG operations do not comply with anti-money laundering regulations, designed to protect against organized crime and efforts by terrorist groups.

- SG devices are not independently tested or verified, like slot machines are, nor are patrons assured of any quantum of fairness with respect to the play of the game or the payout odds.

- SGs deceptively resemble Lottery machines and traditional slot machines, often confusing customers into believing the games are legitimate and regulated machines.

---

[2]    Statements of Department of Revenue/Lottery Executive Director Drew Svitko, House and Senate Appropriations Hearings February 11 and 19, 2019.

{L0807063.3}

ECKERT009684

President Pro Tempore Joseph Scarnati III
Minority Leader Jay Costa
Speaker of the House Mike Turzai
Minority Leader Frank Dermody
May 2, 2019
Page [Page]

- SGs are placed in locations without the presence of police, security officers or regulators to oversee operations, resulting in a heightened risk of crime and public safety issues. The illegal SG promise of "Play Here, We Pay Here" is an enticing invitation to criminals looking to make a quick score – a scenario that just occurred this April when three (3) men stole money from illegal SGs in a convenience store in Hamburg, Pennsylvania.[3]

Finally, unlike with the expansion of legal gaming under Act 42 of 2017, *local and county governments have no "opt-out"* or ability to ban these illegal gambling devices from their communities. As a result, some SG facilities have been established in local communities containing rooms full of SG machines, creating "de-facto mini casinos," irrespective of whether the municipality opted out of expanded gaming within its borders.[4]

In conclusion, as articulated by Pennsylvania State Police spokesman, Ryan Tarkowski, "illegal gambling is far from a victimless crime. It diverts proceeds from legal gambling, that among other things, allow seniors to age in their homes and reduces the burden of property taxes on our citizens."[5] While there is no question that SGs are illegal under present law, Pennsylvania law enforcement has indicated they desire a clearer mandate. We, therefore, join in law enforcement's request that the General Assembly enact legislation expressly declaring that SGs are unlawful.

---

[3]    "Hamburg police seeking to identify 3 who stole money from skill-game video machines." *Reading Eagle* (April 11, 2019), https://www.readingeagle.com/news/article/hamburg-police-seeking-to-identify-3-who-stole-money-from-skill-game-video-machines

[4]    "Unregulated Gambling Finds a Corner in the Corner Store (and Bar, and Lots of Other Places, too)." *Penn Live* (June 2018), https://www.pennlive.com/news/2018/06/back-of-the-room_gambling_find.html#incart_river_index. and "It's Not Gambling: Company Plans 'Skill-Based Gaming Venue on Baldwin Street," *Bridgeville, Pennsylvania*, https://www.bridgeville.org/2018/04/its-not-gambling-company-plans-skills-based-gaming-venue-on-baldwin-street/.

[5]    "Games of Skill' Popping up, but are they Legal?" *AP News* (Jan. 23, 2019), https://www.apnews.com/dc643bdd6fb34f5c886e6cf35657824d.

{L0807063.3}

ECKERT009685

President Pro Tempore Joseph Scarnati III
Minority Leader Jay Costa
Speaker of the House Mike Turzai
Minority Leader Frank Dermody
May 2, 2019
Page [Page]

Thank you for your attention to and consideration of this important issue. We look forward to addressing any questions you may have.

Sincerely,

Anthony Carlucci
President & General Manager
**Mohegan Sun Pocono**

Robert W. Green
Chairman
**Parx Casino**

Chris Albrecht
Senior VP & General Manager
**Harrah's Philadelphia Casino and Racetrack**

Kevin O'Sullivan
VP & General Manager
**Presque Isle Downs & Casino**

Tony Frabbiele
VP & General Manager
**Meadows Racetrack & Casino**

Todd Greenberg
Chief Operating Officer & General Manager
**Mount Airy Casino Resort**

Daniel Ihm
VP & General Manager
**Hollywood Casino at Penn National Race Course**

Brian Carr
President & Chief Operating Officer
**Sands Casino Resort Bethlehem**

Gary Hendricks
VP & General Manager
**Lady Luck Casino Nemacolin**

David Zerfing
CEO
**Valley Forge Casino Resort**

Rob Long
General Manager
**SugarHouse Casino**

Rob Norton
President
**Stadium Casino**

Bill Keena
General Manager
**Rivers Casino**

Copies to:

Governor Tom Wolf
Mike Brunelle, Chief of Staff to the Governor
Will Danowski, Secretary of Legislative Affairs
All Members of the Pennsylvania State Senate
All Members of the Pennsylvania House of Representatives

{L0807063.3}

ECKERT009686

# EXHIBIT 18

| | |
|---|---|
| **From:** | Pete Shelly [pshelly@shelly-lyons.com] |
| **Sent:** | Tuesday, January 07, 2020 12:29:54 PM |
| **To:** | Richard Gmerek; Mark S. Stewart |
| **Subject:** | [External] you'll need to review!! |
| **Attachments:** | sponsorship memo 01.07 DRAFT.docx |

Peter J. Shelly
ShellyLyons Public Affairs & Communications
Office: 717.724.1681
Cell: 717.645.3934
pshelly@shelly-lyons.com
219 State Street
Harrisburg, PA 17101

DEPOSITION
EXHIBIT
18
PENGAD 800-631-6989

ECKERT009008

**To: All Lawmakers**
**Re: Illegal Slot Machines**
**From: Pennsylvanians Against Illegal Gambling**

We recently received the co-sponsorship memo from Representative Jeff Wheeland regarding "dominant skill video game regulations" and we felt it necessary to respond.

This legislation would reward the operators of tens of thousands of illegal slot machines with what is effectively a license to operate mini casinos in unlimited numbers of gas stations, convenience stores, gift shops, bars and taverns and social clubs across PA. The fact is that the PA State Police is right now battling these operators in Commonwealth Court in a bid to protect our communities from the impacts of illegal, unsupervised and un-regulated gambling.

Please keep in mind that current law is very clear that slot machines can only be in a casino......otherwise they are illegal. In fact, any device commonly called "a skill game" is also defined as a slot machine and can only be in the casino, per amendments you put in Act 42 of 2017. Again, it appears that the purpose of this legislation is to reward the illegal operation of slot machines.

The co-sponsorship also notes that these dominant skill game devices are supporting thousands of "small businesses," VFWs, American legions and other fraternal clubs. The fact that these machines are in wide use in "clubs" does not change the fact that they are illegal.

In addition, it is apparent that the manufacturers and operators of these machines are attempting to shield the fact that the vast majority of these machines are not in clubs, but rather are in convenience stores, pizza parlors, laundromats and other public venue where minors are now gambling. I would encourage you to visit the card shop on the ground floor at Strawberry Square where one of these machines is in active use. These machines can be found in at least two other stores within walking distance of the state Capitol in stores where, again, minors and children buy candy bars. There are absolutely no precautions in place to prevent minors from gambling. We would be happy to provide photos of such activities. These machines are also often times located right next to a lottery kiosk, which means our senior citizens are suffering because these businesses are operating illegal slot machines. As you are well aware, Lottery officials have testified that these machines have drained more than $150 million in revenue from senior programs.

Additionally, the memo suggests that the Commonwealth should regulate and reasonably tax these machines. Please recall that the Legislature recently enacted sweeping changes to our Commonwealth's Gaming Act. We can find no other state in the nation that has experienced an expansion of gambling this large. In fact, some elements of that statute have yet to be fully enacted. Any further expansion of gaming at this point would be premature.

Finally, it is difficult to fathom why lawmakers would agree to the "demands" that representatives of the skill game industry have stated publicly they would not accept in any legislation. The draft legislation, and testimony provided by former Congressman Marino before the House Gaming Oversight Committee makes it clear that these operators view themselves as being above state law. Pennsylvania Casinos are subject to through background checks. These operators are refusing to undergo any background checks. Every legal slot machine in this state is connected to a central control computer managed by the state. These operators do not want this level of oversight. In fact – they want no oversight. Casinos pay a $50

ECKERT009009

million license fee. The skill games cartel does not want to pay any fee. Casinos maintain a 24 hour a day state police presence in the casino and have numerous safeguards in place to prevent underage gaming. No pizza parlor or convenience store in the state has these safeguards in place.

The skill games industry is wagering that lawmakers will cede to their outrageous demands because of the sheer number of illegal machines that they are operating across our state. We encourage you to reject their cynical ploy. Illegal machines should be confiscated, and their operators should be put out of business.

ECKERT009010

# EXHIBIT 19

| From: | Pete Shelly [pshelly@shelly-lyons.com] |
|---|---|
| Sent: | Tuesday, January 14, 2020 11:01:46 AM |
| To: | Richard Gmerek; Mark S. Stewart |
| Subject: | [External] FW: ILLEGAL GAMBLING HURTS EVERYBODY |
| Attachments: | gambling 1.jpg; gambling 2.jpg |

This is going out in the next hour or so.

Dear Legislators,

I am sharing for your consideration the attached photographs taken at a convenience store in Berks County. The child, apparently wearing new Christmas pajamas, would not be allowed on the gaming floor of any licensed, regulated and supervised casino in PA. Period. Kids should not be sitting at slot machines. Period. (We have blurred the faces of the child and the adult.)

As you are well aware, Commonwealth Court has ruled that the gaming devices in this photo are slot machines. Specifically, Commonwealth Court has definitively concluded that POM's "skill games" are nothing more than slot machines. The Court also further found that, unlike licensed gaming activity which is governed by the regulations of the Pennsylvania Gaming Control Board, illegal slot machines are governed by Pennsylvania criminal law, specifically 18 Pa.C.S. § 5513.

Section 5513 of the Crimes Code expressly makes it illegal in Pennsylvania for a person to make, assemble, sell, lease or maintain a slot machine. Section 5513 also makes it a crime for a person or business to use their property, or allow persons to assemble at their property, to play slot machines. Slot machines operated by licensed casinos are excepted from this provision.

These machines should be removed from every convenience store, bar, thrift shop and pizza parlor in the state. There's zero ambiguity: it is illegal to operate a slot machine anywhere in Pennsylvania other than in a licensed, regulated and supervised casino

Illegal gambling hurts everyone. And it is a growing problem in our state. The PA State Police testified before the House Gaming Oversight Committee that ...

*"Illegal gambling is growing in the Commonwealth, outside traditional venues of clubs, restaurants, and bars to conveniences stores, shopping malls, and store fronts."*

The PA Lottery has lost $200 million in revenues for Meal on Wheels, senior centers, PACE and other senior programs to illegal gambling.

For more information, please visit Pennsylvanians Against Illegal Gambling at INSERT FACEBOOK LINK

Peter J. Shelly

ShellyLyons Public Affairs & Communications
Office: 717.724.1681

pshelly@shelly-lyons.com

DEPOSITION
EXHIBIT
Shelly 19
9.20 23

ECKERT008798

ECKERT008799



ECKERT008800



ECKERT008801