# BLANKROME

One Logan Square
130 North 18th Street | Philadelphia, PA 19103-6998

| | |
|---|---|
| *Phone:* | *(215) 569-5397* |
| *Fax:* | *(215) 832-5397* |
| *Email:* | *rebecca.ward@blankrome.com* |

November 21, 2023

**VIA ECF**

The Honorable Jennifer P. Wilson
United States District Court for the Middle District of Pennsylvania
Max Rosenn U.S. Courthouse
197 South Main Street
Wilkes-Barre, PA 18701

> Re:  **Peter Shelly's Response to Plaintiff's November 16, 2023 Letter:** *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC et al.*, **No. 1:20-cv-292-JPW**

Dear Judge Wilson:

This firm represents nonparty Peter Shelly in response to a subpoena for his deposition issued by Plaintiff Pace-O-Matic, Inc. ("POM") in the above-referenced matter.[1] We write in response to POM's letter dated November 16, 2023 requesting that the Court compel a second deposition of Mr. Shelly. That request should be denied because (1) POM (although it carefully fails to note this fact in its letter) has already taken a full seven hours of testimony and reserved *no* time for follow-up, (2) many of the questions that elicited objections and instructions not to answer either sought information that was provided in response to *other* questions, or information irrelevant to any claims in this case, and (3) the remaining questions invade the attorney-client privilege held by Greenwood Gaming and Entertainment Inc. d/b/a Parx.[2]

### A. Rule 30(d)(1) Presumptively Permits Only Seven Hours of Deposition – and Plaintiff Has Already Used Up *All* of Its Available Time.

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Additional time is permitted *only* when "needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." *Id.* POM – which did not even inform the Court it is seeking additional time – bears the burden of showing "'good cause' for the extension." *Carroll v. Acme Truck Line, Inc.*, 2013 WL 2237691 at *1 (W.D. Pa. May 21, 2013). In weighing this request, the Court "should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception, not the rule." *PlayUp, Inc. v. Mintas*, 2023 WL 6859193 at *2 (D. Nev. Oct. 18, 2023). "This concern is heightened" where, as here, the deponent is a nonparty. *Servis One, Inc. v. OKS Group International Pvt. Ltd.*, 2022 WL 605439 at *6 (E.D. Pa. Feb 28, 2022); *see also Rollstock, Inc. v. SupplyOne, Inc.*, No. 22-MC-20, 2022 WL 1443389, at *2 (E.D. Pa. May 6, 2022) ("For non-party discovery, it is widely accepted that a

---

[1] The undersigned is a member in good standing of the bar of the Commonwealth of Pennsylvania whose application for admission to the Middle District of Pennsylvania is pending, with the next available swearing-in ceremony scheduled for January 5, 2024.  My colleague and co-signor, Danielle Hudson, is a member of this Court, and this letter is submitted with her approval under her filing credentials.

[2] Parx, as the holder of the privilege, is filing its own letter motion for protective order to protect its privilege and/or work product rights. Thus, Mr. Shelly will not further substantively address this final point herein.

# BLANKROME

The Honorable Jennifer P. Wilson
November 21, 2023
Page 2

stronger showing of relevancy is required and …[and] broader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience.") (internal quotations omitted). Moreover, under Rule 26(b)(2)(C), the Court should not allow a party to depose a witness for more than seven hours if the testimony sought "is unreasonably cumulative or duplicative or can be more conveniently … obtained from some other source, if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or if the proposed discovery is outside the scope permitted by 26(b)(1)." *Servis One, Inc. v. OKS Group, LLC*, 2022 WL 1399087 at *2 (E.D. Pa. May 4, 2022).

During the course of the deposition, the videographer noted each time the parties went on and off the record. *See* Transcript of Deposition of Peter Shelly ("Dep.") at 7:9-11, 85:24-25, 86:2-3, 149:25-150:1, 219:12-13 and 16-17, 324:12-13 and 15-17, 380:1-2 and 4-6, and 409:22-24. The total time (as noted by Mr. Shelly's counsel at 409:12-13) was seven hours. Under Rule 30, to exceed that limit, POM must show "good cause" to impose the burden of additional testimony upon Mr. Shelly, a nonparty witness.

**B. POM Has Not Shown and Cannot Show "Good Cause" to Extend Mr. Shelly's Deposition Beyond the Limits of Rule 30(d)(1).**

Unfortunately, given the broad-brush assertions of POM's letter – which create the impression that Mr. Shelly refused to provide any substantive testimony about exhibits presented to him – it is necessary to delve into the mundane minutiae of the testimony, at times question-by-question and answer-by-answer. Mr. Shelly provides the Court with the charts attached hereto as Exhibits A, B and C to facilitate the Court's review of the record. As shown therein and in the transcript, and as summarized below, POM has not shown "good cause" to justify additional time beyond the seven hours granted under Rule 30(d)(1).

**1. There is no "good cause" to extend Mr. Shelly's deposition for questions seeking information already provided in other portions of his testimony.**

First, none of questions that were subject to objections/instructions not to answer (identified by POM in Exhibit B to its letter) merit extending Mr. Shelly's deposition. For at least *ten* of the cited questions, Mr. Shelly either has already provided the information sought *or* testified explicitly that he knows nothing about the topics at issue. *See* **Exhibit A hereto, table entries highlighted in light green with citations to testimony.** In short, requiring Mr. Shelly – a nonparty – to appear for additional time to answer questions that seek information *already* provided to POM would run afoul of the admonition of Rule 26(b)(2)(C) to avoid "unreasonably cumulative or duplicative" discovery, or information that POM has already had "ample opportunity" to – *and did* obtain.

**2. There is no "good cause" to extend Mr. Shelly's deposition for questions seeking information that – if nonprivileged, relevant and discoverable – can be obtained from the Defendants themselves.**

As to those *and twelve others*, the questions were not (as POM implies in its letter) about communications already found to be nonprivileged. Rather, they sought information *beyond* the face of nonprivileged emails – and even if that information is also relevant, nonprivileged and discoverable, it can be obtained *from the Defendants* because POM inquired about discussions involving the Defendants or what the Defendants meant when they made certain statements in various documents. *See* **Exhibit A**

BLANKROME

The Honorable Jennifer P. Wilson
November 21, 2023
Page 3

**hereto, table entries highlighted in light orange.** There is no reason to give POM more than seven hours with a nonparty witness when it can seek discovery *from the Defendants*. Because any relevant and discoverable information sought by these questions can be "obtained from some other source," and because POM has "ample opportunity to obtain the information" by discovery *from Defendants* (*see* Rule 26(b)(2)(C)), there is no "good cause" to extend Mr. Shelly's deposition beyond the seven hours allotted by Rule 30(d)(1).

> **3. There is no "good cause" to extend Mr. Shelly's deposition to respond to two questions seeking irrelevant information about Mr. Shelly's discussions with Parx's *in-house counsel* about this litigation, for which Parx holds the rights to the attorney-client privilege and work product.**

Finally, only *two* of the questions Mr. Shelly was instructed not to answer inquired into communications with someone *other than* a Defendant. *See* **Exhibit A hereto**, **first two entries on page 1 highlighted in light red.** And *those* questions asked Mr. Shelly to disclose conversations with Parx's *in-house* attorneys *about this very lawsuit*. Simply put, Mr. Shelly's and Parx's in-house attorneys' discussions about POM's claims against Defendants *are not relevant* to the merits of those claims – such information, wholly unknown to Defendants, has no bearing on Defendants' state of mind, knowledge, intent, or notice (*i.e.,* any claim of breach of fiduciary duty, fraud, punitive damages or the like). Further, the Court made no prior determination that POM can conduct discovery into what nonparties said to one another in privileged communications about this lawsuit. And it should not do so without *Parx's counsel at the table*, for all the reasons stated in Parx's own letter response to POM's motion.

In sum, as to those two questions – the *only* ones which sought information that, if relevant and discoverable, cannot be obtained from the Defendants themselves – seek "proposed discovery [that] is outside the scope permitted by 26(b)(1)." *Servis One,* 2022 WL 1399087 at *2.

> **4. POM was not precluded, in any way, from taking fulsome testimony from Mr. Shelly on each of the exhibits presented to him.**

Further, Mr. Shelly's counsel did not prolong the deposition by "open[ing] the deposition with a two-page, argumentative opening statement" *See* POM Letter, at 3. Questioning had not even begun when counsel merely stated on the record that (a) the witness intended to exercise the right to seek to designate portions of the transcript as "confidential" or "attorneys' eyes only" and (b) the witness could not and would not waive, the attorney-client or any other privilege belonging to his principal, nonparty Parx. *See* Dep. at 8:13–11:4. Counsel also stated that Mr. Shelly *would* answer questions about emails with Defendants (and his own actions relating thereto) that would be presented to him during the deposition. As shown by the transcript, Mr. Shelly answered all such questions about the content of those documents. *See* **Exhibit B hereto**, chart with page/line citations to Mr. Shelly's testimony about each such exhibit. There was no objection/instruction not to answer about the communications *contained in those emails*, what Mr. Shelly understood them to mean, and/or his actions/conduct relating to those communications or the facts set forth in them.

BLANKROME

The Honorable Jennifer P. Wilson
November 21, 2023
Page 4

> **5.  POM wasted significant time asking Mr. Shelly to interpret court opinions and to speculate about Defendants' state of mind, and there is no "good cause" to extend Mr. Shelly's deposition to accommodate that misuse of time.**

After Mr. Shelly's counsel's "opening statement," POM took a *full seven hours* of testimony, without having to split the time with any other party,[3] and declined to reserve any additional time for follow-up questions. POM had "ample opportunity" to obtain relevant information within the seven hours allotted to it under Rule 30," *Servis One*, 2022 WL 1399087 at *2, but instead elected to waste time. For instance, much of POM's questioning about Exhibits 4 – 24 wasted time by asking Mr. Shelly to speculate about what Defendants intended, meant, or thought, or to offer an opinion about whether Defendants' legal positions were consistent with state statutes or court opinions. *See, e.g.,* **Exhibit B hereto** (providing citations to only Exhibits 4 and 7 in the interests of brevity); *see also* **Exhibit C hereto** (providing page/line citations to lines of questioning that asked Mr. Shelly to offer his own legal analysis of court opinions, judicial precedent and state statutes).

Further, the example POM cites in its letter as evidence of Mr. Shelly's counsel "repeatedly ma[king] speaking objections and present[ing] argument in response to POM's questions" (*see* POM Letter, at 3) in fact demonstrates POM's own unreasonable delay and waste of time. Prior to Mr. Shelly's counsel's objection, POM asked *four times* for Mr. Shelly's opinion on the legal status of skill games in Pennsylvania, despite him giving a full answer the first time. *See* Shelly Dep., at 68:8–22, 68:24–69:19, 69:21–70:21, 71:7–8. Only after the fourth time did Mr. Shelly's counsel intervene in POM's clear attempt to harass Mr. Shelly into adopting *its* opinion about Pennsylvania law. *See id.* at 71:25–72:1. A similar exchange occurred at 249:16–265:7, in which POM asked the same or substantially the same question *at least ten times* and repeatedly asked Mr. Shelly for legal opinions about whether a court decision declared skill games "illegal" and *seven* times whether it declared skill games to be "slot machines." POM then repeatedly asked Mr. Shelly to (a) critique Mr. Stewart's interpretation of the same decision (*id.* at 265:11-275-6; *see also* 330:18-334:14) and (b) agree with POM's interpretation of an email by Mr. Stewart as an "admi[ssion]." *Id.* at 278:8-283:2. *See also id.* at 372:7-379:7 (same or substantially same question asked *eight* times). POM's counsel was not permitted to ask questions that are "unreasonably cumulative or duplicative" or "interposed for any improper purpose, such as to harass" Mr. Shelly, Fed. R. Civ. P. 26(b)(2)(C), (g)(1)(B)(ii), and it certainly should not be rewarded for that conduct with additional time.

> **6.  POM misused its opportunity to depose Mr. Shelly in this case *about Defendants'* conduct and state of mind by taking testimony relevant only to its *subsidiary's* claims against *Mr. Shelly* in Lycoming County state court.**

POM's request for additional time also should be rejected because the transcript demonstrates that POM used nearly *half* of the 409 pages of testimony on questions relevant only to its subsidiary's case

---

[3] Notably, generally when deposing a nonparty such as Mr. Shelly, a litigant such as POM is required to *share* the seven hours with other parties to the action. *See, e.g., Servis One,* 2022 WL 1399087 at *2. Here, POM had the full seven hours to itself – more than the total of *five hours* per side that the *Servis One* court found was appropriate for a nonparty witness in that case.

# BLANKROME

The Honorable Jennifer P. Wilson
November 21, 2023
Page 5

against Mr. Shelly pending in the Lycoming County Court of Common Pleas, *see POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic v. Peter J. Shelly et al.*, No. CV22-00305 (Lycoming Cnty. C.P.) (the "Shelly Action"), where its subsidiary claims that Mr. Shelly's lobbying activities on behalf of the licensed casino industry "tortiously interfered" with POM's actual or prospective business relations. *See* **Exhibit C hereto**, providing page/line citations to questions and testimony about, *inter alia*,

- journalistic or public relations code of ethics and whether *Mr. Shelly*'s actions were in accord with those codes;

- whether *Mr. Shelly's* understanding of case law, state statutes or judicial precedent was well-founded or whether *he* personally should have taken additional steps to understand the law, rather than *Defendants'* actions or knowledge/state of mind;

- *Mr. Shelly's* insurance coverage for the claims asserted against him in Lycoming County and his dealings with his insurer;

- *Mr. Shelly's* company's document management system and how he organizes his email inbox, *though no document subpoena was served on him in **this** action;*

- who the owners of *Mr. Shelly's* company are, in what percentages, and the details of the transaction by which he transferred his ownership interests to others;

- his compensation for and the details of his work for Parx *regardless* of any connection to Defendants.

POM justifies such questioning because its subsidiary's claims in Lycoming County are factually related to the claims asserted here. But POM has not articulated why Mr. Shelly's state of mind, his compliance or lack of compliance with journalist or public relations codes of ethics, his insurance coverage, or the like, are relevant to proving claims *against Defendants* for their own alleged breaches of attorneys' professional obligations, or to prove what *Defendants* thought, knew, or were on notice of. And it is difficult to conceive of how such testimony could even be admissible against Defendants on the claims and defenses asserted in this Court.[4]

It is improper of POM to use a deposition in this case to take discovery for the Shelly Action, *even if the two cases are related. See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. (1978) ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2009 WL 10736425, at *2 (E.D. Pa. Dec. 4, 2009) ("I must quash the subpoena because the purpose of the discovery is for use in a proceeding other than the pending suit."); *Harry F. Ortlip Co. v. The George Hyman Constr. Co.*, 126 F.R.D. 494, 497-98 (E.D. Pa. 1989) (citing *Oppenheimer* and precluding

---

[4] And to the extent POM *previously* sought relief in *this* case on the tenuous theory that other lawsuits or law enforcement activities were caused, in some way, by Mr. Shelly's actions *beyond* his direct dealings with Defendants, POM has now *withdrawn* its demand for any such damages. *See* ECF 348, filed on November 17, 2023.

# BLANKROME

depositions that were sought for use in proceedings other than the one pending before the court).[5] Yet POM chose to spend the entire time before the lunch break – and nearly half of the seven hours – on such testimony and deliberately chose *not* to reserve any of its time for follow-up questions. Again, POM's misuse of the discovery process, and its seven hours, should not be rewarded by granting it additional time.

### C. Conclusion.

POM burned up a full seven hours *on its own*, and reserved no time for follow-up. It has not shown "good cause" to require this nonparty to appear for additional testimony to answer questions that, if nonprivileged, relevant, and discoverable, *can be posed to the Defendants*.

The motion should be denied.

Respectfully submitted,

 *s/ Rebecca D. Ward*

Rebecca D. Ward
(application for admission to M.D. Pa. pending)

*s/ Danielle C. Hudson*

Danielle C. Hudson
(admitted to M.D. Pa. bar)

cc:    All counsel of record (via ECF)

---

[5] That impropriety is heightened by the fact that Mr. Shelly's Lycoming County counsel – retained by his insurer – does *not* represent him in connection with his deposition here, and therefore was not present at the time his client was deposed.