# EXHIBIT C

**Exhibit C to Nonparty Witness Peter Shelly's Letter Brief in Response/Opposition to November 16, 2023 Letter Motion of Plaintiff to Overrule Objections and Grant Extension of Deposition Time in Excess of Seven Hours**

| Start Time | End Time | Page Range | Questioning Relevant Only to Claims Against Mr. Shelly in Lycoming County |
|---|---|---|---|
| 9:08 am | 10:24 am | Pages 1 - 85 | **32:14 – 42:22, 43:9 – 53:7, and 81:15 – 85:23** (questions about (a) code of ethics of Professional Society of Journalists, of which Mr. Shelly is not a member, and whose code – marked as Exhibit 1 – Mr. Shelly had never seen; (b) general obligations to print "tell the truth," or correct inaccuracies; (c) how or whether such standards apply to public relations work beyond journalism, and (d) "lessons" learned from his mother who was also a journalist) |
| | | | **Total Pages: 24** |
| | | | **67:11 – 81:13** (questions about Mr. Shelly's understanding of current law and bases for any opinion that POM's skill games are or are not "illegal" under current law) |
| | | | **Total Pages: 14** |
| **Part I Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 38/85 pages, or 45%** | | | |
| 10:33 am | 11:42 am | Pages 86-149 | **86:5 – 93:2** (questions about (a) code of ethics of Public Relations Society of America, of which Mr. Shelly is not a member and whose code – marked as Exhibit 2 -- Mr. Shelly had never seen; (b) whether Mr. Shelly agrees with certain statements set forth in Exhibit 2 regarding, *inter alia*, "honesty" and "integrity" for journalists; (c) whether Mr. Shelly believes it is important for him to "conduct yourself consistent with those statements when acting as a PR professional"; and the like) |

1

| Start Time | End Time | Page Range | Questioning Relevant Only to Claims Against Mr. Shelly in Lycoming County |
|---|---|---|---|
| | | | **Total pages: 7** |
| | | | **101:16 – 108:22** (questions about (a) Mr. Shelly's compensation from Parx, *see also* **113:11 – 114:20**, (b) whether his contract with Parx includes an indemnification clause, (c) whether and why Parx is providing representation in connection with his deposition in this matter; (d) whether he made a claim under his own liability insurance policy for the Lycoming County suit against him; (e) whether he made any statements to his carrier about the Lycoming County suit; (f) who the carrier is; (g) the name and location of the people he communicated with regarding his insurance coverage in the Lycoming County suit; (h) the means by which he had such communications) *Note*: Mr. Shelly's counsel offered to go off the record to discuss the relevance of such questioning (which would have stopped the running of the clock on the seven hour limitation, but Plaintiff's counsel refused. *Id.* at 106:8-11. |
| | | | **Total Pages: 8** |
| | | | **117:2 – 123:11** (questions about(a)  Mr. Shelly's representation by his former partner and attorney, Charley Lyons in an unrelated matter, (b) Mr. Shelly's transfer (and the reasons for and terms of that transfer) a few weeks before the deposition of his ownership interests in his prior company, (c) who owns the company and in what percentages as a result of that transfer; (d) the compensation at his current employer in the form of salary, benefits, and bonuses; (e) his compensation at his prior firm before he transferred his ownership interests; and (f) whether his work as a PR consultant for Parx is also funded by other casinos). |
| | | | **Total Pages: 6** |

| Start Time | End Time | Page Range | Questioning Relevant Only to Claims Against Mr. Shelly in Lycoming County |
|---|---|---|---|
|  |  |  | **123:13 – 132:9** (questions about Mr. Shelly's firm's document retention, document management and email systems, and how Mr. Shelly does or does not organize the contents of his own inbox).[1] |
|  |  |  | **Total Pages: 9** |
|  |  |  | **133:22-136:7** (questions about (a) whether Mr. Shelly took any steps to gather documents for *this* action prior to his deposition, although the subpoena served upon him did *not* include any document requests; and (b) what steps, if any, Mr. Shelly has taken to collect and preserve documents for the Lycoming County action against him) |
|  |  |  | **Total Pages: 3** |
|  |  |  | **136:9 – 149:21** (questions about (a) Mr. Shelly's interactions with the Pennsylvania state police, district attorneys, the Pennsylvania Gaming Control Board, the House Gaming Control Board, or other public entities/personnel as an agent of Parx, without any mention of any Defendant in this case; (b) interactions with other casinos, without any mention of any Defendant, and how various casinos viewed skill games or various iterations of legislation about skill games). |
|  |  |  | **Total Pages: 13** |

---

[1]When Mr. Shelly's counsel questioned the relevance of such testimony, Plaintiff justified its inquiry by stating, "We may want to subpoena you for documents related to this case." *Id.* at 130:11-13. But to the extent Plaintiff wants documents relating to Mr. Shelly's communications (or testimony about his unwritten communications) with Defendants – which is information relevant to *Defendants'* conduct and what information was known to Defendants at any given time and thus influenced *Defendants'* state of mind – those documents (and any testimony about unwritten communications) are available (if not privileged) *from Defendants.*

| Start Time | End Time | Page Range | Questioning Relevant Only to Claims Against Mr. Shelly in Lycoming County |
|---|---|---|---|
| **Part II Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 46/63 pages, or 73%** | | | |
| 11:51 am | 1:05 pm | Pages 150 - 219 | **150:5 – 151:3; 154:17 – 156:6, 156:17 – 169:11; 170:14 – 173:14; 175:4 – 178:13; 179:2 – 182:17; 182:22 – 195:18** (series of questions about Exhibit 3, an opinion from the Commonwealth Court in *POM v. Department of Revenue*, and (a) Mr. Shelly's reading of it, (b) his knowledge of the criminal code or judicial precedent, and (c) after counsel read numerous passages from the opinion, whether he agreed with Plaintiff's counsel's multiple statements about the legal effect of the opinion, ultimately culminating in the question of whether Mr. Shelly could identify anywhere in the opinion where the court said that skill games were illegal)<br><br>*Note*: When Mr. Shelly stated in response to questions about his interpretation of the opinion that he would defer to Mr. Stewart, Plaintiff's counsel twice responded "That's not my question." *Id.* at 162:21 – 24; 168:13-20. |
| | | | **Total Pages: 38** |
| | | | **210:20 – 212:7** (questions about whether journalism code of ethics required Mr. Shelly to take steps to further read/understanding court opinion) |
| | | | **Total Pages: 2** |
| **Part III Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 40/69 pages, or 58%** | | | |
| 1:55 pm | 3:41 pm | Pages 220 - 324 | **249:16 – 265:7, 275:8 – 277:3** (series of the same or substantially the same questions, at least ten times, about whether the Commonwealth Court opinion marked as Exhibit 3 could be interpreted to say that skill |

| Start Time | End Time | Page Range | Questioning Relevant Only to Claims Against Mr. Shelly in Lycoming County |
|---|---|---|---|
| | | | games were "illegal" or "slot machines," and if any statements by Mr. Shelly to that effect were truthful / untruthful or accurate/inaccurate) |
| | | | **Total Pages: 18** |
| | | | **306:3 – 312:17** (questions about (a) *Mr. Shelly's* knowledge of any criminal acts occurring in vicinity of skill games, (b) whether Mr. Shelly contends skill games "caused" the crimes or whether skill games "control people's minds" and cause them to commit crimes) |
| | | | **Total Pages: 6** |
| **Part IV Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 24/104 pages, or 23%** | | | |
| 3:51 pm | 4:52 pm | Pages 324-379 | **324:21- 329:3** (questions about a press release, Exhibit 10, by Plaintiff's counsel, Matt Haverstick regarding Commonwealth Court opinion marked as Exhibit 3 and a Beaver County trial court opinion, and (a) Mr. Shelly's knowledge of the opinion, which he has not read; and (b) his knowledge – or lack of knowledge – of judicial precedent on the skill vs. chance test) |
| | | | **Total Pages: 5** |
| | | | **331:5 – 333:20** (questions asking Mr. Shelly to again interpret Exhibit 3, the Commonwealth Court decision) |
| | | | **Total Pages: 2** |
| | | | **351:9 – 352:23** (questions about what Mr. Shelly did, if anything, to resolve what Plaintiff's counsel characterized as a difference in opinion between Messrs. Stewart and Skjoldal) |

| Start Time | End Time | Page Range | Questioning Relevant Only to Claims Against Mr. Shelly in Lycoming County |
|---|---|---|---|
| | | | **Total Pages: 1** |
| | | | **363:18 – 369:12** (questions about Exhibit 14, email chain, and whether Mr. Shelly was on "notice that the opinion [Exhibit 3] did not hold that the POM games were illegal") |
| | | | **Total Pages: 6** |
| **Part V Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 14/55 pages, or 25%** | | | |
| 4:59 pm | 5:34 pm | Pages 380- 409 | 398:13 – 403:14 (questions about (a) Exhibit 21, an email from Mr. Shelly to a Parx executive regarding messaging to send to lawmakers, a proposal for a mobile billboard, and communications to the American Federation of State, County and Municipal Employees; (b) Exhibit 22, a document drafted by Mr. Shelly for Parx; and (c) whether statements in draft documents confirmed there is no current state law banning skill games; no questions about any interactions with Defendants) |
| | | | **Total Pages: 5** |
| **Part VI Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 5/29 pages, or 17%** | | | |
| **OVERALL TOTAL:** **Number of Pages / Percentage For Questioning Relevant Only to Claims Against Mr. Shelly: 167/409 pages, or 41%** | | | |