

GA BIBIKOS LLC

relentless. advocacy. period.

**VIA ECF**

George A. Bibikos
(717) 580-5305
gbibikos@gabibikos.com
www.gabibikos.com

The Honorable Jennifer P. Wilson
United States District Court
   for the Middle District of Pennsylvania
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

November 21, 2023

Re:     Response to Plaintiff's November 16, 2023 Discovery Dispute Letter: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC et al.*, No. 1:20-cv-292-JPW

Dear Judge Wilson:

I represent Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). Via ECF, I received a copy of a letter filed by Pace-O-Matic, Inc. ("POM"), dated November 16, 2023 (Doc. 347). The letter requests that the Court compel a second deposition of Mr. Peter Shelly, a nonparty in the above- captioned matter, who is and at all times relevant to this action was an agent of Parx.

**I.       Preliminary Statements**

Please accept this as Parx's response to POM's letter, for Your Honor's benefit, before the Court schedules a conference. As Your Honor knows, Parx is not a party, but the Court has allowed Parx to participate in this case in connection with requests by POM during discovery for information from the defendants and third parties (now including Mr. Shelly) that is privileged and confidential to Parx.

As holder of the privilege, Parx requests the opportunity to participate in any status conference the Court schedules regarding this latest dispute. Parx also reserves its right to respond to any ensuing motion from POM regarding this dispute or to seek relief from the Court in response to POM's request for an additional deposition of Mr. Shelly because POM's requested relief implicates Parx's privileges.

**II.      Summary**

As described in more detail below, the Court should deny POM's request to depose Mr. Shelly a second time.

The information POM seeks to elicit from Mr. Shelly in another deposition is protected by the attorney-client privilege and work-product immunity. If the Court grants leave to POM to depose Mr. Shelly again, the Court should limit POM's questions to avoid inquiries into privileged matters. Parx also requests the opportunity to attend and participate to invoke attorney-client privilege or work-product immunity where necessary so Mr. Shelly does not divulge any privileged communications or attorney work-product.

In addition to cases cited below in support of Parx's position, Parx includes a Declaration of Thomas C. Bonner, Parx's former Group Vice President of Legal and Chief Counsel and current Executive Vice President and Special Counsel, attached hereto as **Exhibit A,** to help with the Court's analysis.

+lawyer | innovations
rethink everything.



GA BIBIKOS LLC
relentless. advocacy. period.

### III.     Background

As it relates to this latest discovery dispute, Mr. Shelly is a lobbyist and communications consultant for Parx. *See* **Ex. A.,** Bonner Decl. at ¶ 7. Mr. Shelly and Parx's in-house counsel and outside counsel work closely on various matters.  *See* **Ex. A.,** Bonner Decl. at ¶¶ 7-16.  Mr. Shelly's communications with Parx and its counsel invariably involve legal advice and strategy, and much of his input informs the mental impressions and litigation strategies of Parx's in-house attorneys and outside counsel. *See* **Ex. A.,** Bonner Decl. at ¶¶ 7-16.

During his deposition, POM asked many questions that call for information that is covered by the attorney-client privilege and protected by the attorney work-product doctrine. *See, e.g.*, POM's November 16 letter, Ex. B. Because the privilege belongs to Parx, not Mr. Shelly, counsel properly lodged privilege and work-product objections during Mr. Shelly's deposition and appropriately instructed him not to answer to avoid any inadvertent waiver of Parx's privileges and immunities.

POM's letter now asks the Court for leave to re-depose Mr. Shelly in order to inquire about matters that are attorney-client privileged and protected by attorney work-product and therefore immune from discovery.

### IV.     Analysis

The Court should reject POM's request.

As the Court has previously noted (ECF 87 at p. 29), communications among a client, the client's attorney, and the client's communications consultant may be privileged. *See Sandoz Inc. v. Lannett Co., Inc.*, 570 F. Supp. 3d 258, 266 (E.D. Pa. 2021) (finding the communication was privileged because the consultant was an "active participant" in the relationship with the attorney-client to assist the lawyer giving legal advice).

It is well-settled under Pennsylvania law that "privilege[d] persons for purposes of the attorney-client privilege include not only the lawyer and the client, but also *agents of either who facilitate communications between them*." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 255 F. Supp. 3d 561, 572–73 (M.D. Pa. 2017) (emphasis added; internal quotations omitted). Accordingly, communications made in the presence of a third party other than the attorney or the client, such as a client's communications consultant, are privileged "where that party is the client's agent or possesses a commonality of interest with the client." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476–77 (E.D. Pa. 2005).

The attorney-client privilege will therefore attach where "the third-party's presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019); *see also In re Lincoln Nat'l COI Litig.*, No. 16-CV-06605-GJP, 2020 WL 1157172, at *3 (E.D. Pa. Mar. 9, 2020) (applying *BouSamra*); *Audi*, 255 F. Supp. 3d at 572-73 (concluding that the defendant was not compelled to produce emails between the defendant's outside counsel and the defendant's "automobile-dealership broker" because the broker "was engaged for purposes of assisting the client and its counsel"); *SmithKline*, 232 F.R.D. at 477 (declining to order production of communications between the plaintiff's counsel and its third-party consultants because the consultants "assist[ed] in obtaining facts and information needed to provide legal advice and assistance").

Likewise, the work-product doctrine prohibits discovery of "mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research, or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics." *See* Pa.R.C.P. 4003.3.  Work-product immunity can only be waived "when the work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." *BouSamra*, 210 A.3d at 384.



GA BIBIKOS LLC
relentless. advocacy. period.

### A.    The attorney-client privilege applies.

Here, the attorney-client privilege belongs to the principal for which Mr. Shelly is an agent, *i.e.,* Parx. *See* **Ex. A**, Bonner Decl. at ¶¶ 7, 17-19.  Mr. Shelly is a lobbyist and communications consultant for Parx. *See* **Ex. A.,** Bonner Decl. at ¶¶ 7. Mr. Shelly and Parx's in-house counsel and outside counsel work closely on various matters.  *See* **Ex. A.,** Bonner Decl. at ¶¶ 7-16.  Mr. Shelly's communications with Parx and its lawyers invariably involve legal advice and strategy and help inform the mental impressions and litigation strategies of Parx's in-house attorneys and outside counsel. *See* **Ex. A.,** Bonner Decl. at ¶¶ 7-16.

As Mr. Bonner stated unequivocally in his declaration regarding communications with Mr. Shelly, "Parx intended and believed that the communications described [] were and would remain confidential," *id.* at ¶ 17; and Mr. Shelly's "participation in such communications occurred as [an] agent[] of Parx, acting on its behalf, and providing input necessary to that legal analysis and legal advice." *Id.* ¶ at 11.

The privilege further attaches to communications among Mr. Shelly, employees of Parx, and Parx's in-house and outside counsel because Mr. Shelly's presence as a third-party communications consultant was essential to counsel's provision of legal advice *to Parx. See id.* at ¶¶ 8-16. For instance, in *Sandoz*, the court held that email chains involving a client, its counsel, and the client's communications consultant were privileged because the consultant was "an active participant" in discussions with counsel. *Sandoz*, 570 F. Supp. 3d at 266. Because the consultant sent his work product to the client's counsel, and counsel replied with comments related to legal strategy, the court concluded that "the obvious active engagement between the attorney and consultant for the purpose of legal advice" rendered the communications privileged. *See id.*

Likewise, here, Mr. Shelly's communications with Parx and Parx's in-house and outside counsel are subject to the attorney-client privilege because Mr. Shelly was an active participant in the solicitation and provision of legal advice to Parx. *See* **Ex. A**, Bonner Decl. at ¶¶  8, 10-14. Mr. Shelly's "participation in such communications occurred as [an] agent[] of Parx, acting on its behalf, and providing input necessary to that legal analysis and legal advice." *Id.* ¶ at 11. Mr. Shelly, among other lobbyists, "engaged as agents of Parx, in substantive legal discussions with both Parx's outside counsel… and in-house counsel… in which the attorneys have provided legal analysis [and] legal advice" which was "necessary so that both Parx's outside and in-house counsel could provide legal advice to Parx." *Id.* at ¶¶ 7-8. Such advice was communicated both in writing and orally, including topics not limited to this action, and "public relations in connection with that on-going litigation have been directed at utilizing Mr. Shelly's [] expertise in supporting Parx's outside and in-house counsel's analysis and advancement, of Parx's legal position as an *amicus* or prospective intervenor in various dockets[.]" *Id.* at ¶ 9.  Such communications included drafting of documents, and "input from [Mr. Shelly was] otherwise necessary for both outside and in-house counsel to provide legal advice to Parx about matters *other than* 'skill games' or legislation or litigation involving 'skill games.'" *Id.* at ¶¶ 10, 12 (emphasis in original).

Therefore, like the consultant in *Sandoz*, Mr. Shelly actively solicited and facilitated legal advice from Parx's counsel such that the privilege attaches and falls into the exception examined by the Pennsylvania Supreme Court in *BouSamra*. Most importantly, "Parx intended and believed that the communications described above were and would remain confidential," and "Parx has not authorized and does not authorize any participant in the communications described above—including but not limited to [Mr. Shelly] to disclose the contents of such communications." *Id.* at ¶¶ 17-18.

### B.    The word-product doctrine applies.

Likewise, given the nature of Mr. Shelly's involvement that helped Parx's lawyers provide legal advice and strategy, the work-product doctrine precludes Mr. Shelly from testifying about communications he had with Parx attorneys. Parx instructed its lawyers and agents (including Mr. Shelly) to not disclose any information

GA BIBIKOS LLC
relentless. advocacy. period.

discussed that formulated legal advice and strategy and protected the information from disclosure to adversaries. *See* **Ex. A.,** Bonner Decl. at ¶¶ 17-19.  There is no indication that Parx or its attorneys or others shared any protected information with any adversary, let alone POM, or otherwise disclosed any such work-product "in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." Under Pennsylvania law, POM is not entitled to work product that benefits Parx as the client.

In short, the questions that POM asked during his deposition, including for example the ones identified on exhibit B that POM wishes to ask (again) in a second deposition of Mr. Shelly, invariably involve legal advice, strategy, and related information that is privileged to Parx and immune from discovery under the work-product doctrine. Mr. Shelly should not be compelled to disclose the content of communications he had with Parx's outside counsel and in-house counsel, including (without limitation) any of the communications implicated by the questions POM seeks to ask as identified on Exhibit B to POM's letter.

### C.   The Court should reject POM's arguments.

Notwithstanding that straightforward analysis, POM insists on pursing a second deposition of Mr. Shelly that indisputably calls for information that is privileged and confidential to Parx.  *See* POM November 16 letter, Ex. B. POM also argues that  privilege objections and instructions not to answer somehow precluded POM from inquiring into Mr. Shelly's non-privileged communications.

First,  POM places significant reliance on cases from other jurisdictions over those of the state and federal courts in the Commonwealth of Pennsylvania to argue that the privilege does not apply here. The Court should reject POM's reliance on out-of-state cases to analyze a Pennsylvania privilege issue.

The only case cited by POM from the Pennsylvania Supreme Court supports Parx's position.  As noted above, the court in *BouSamra* noted that the attorney-client privilege *can* attach to communications shared with third parties, such as public relations consultants. *BouSamra*, 210 A.3d at 985. Rather than creating an absolute rule precluding application of the privilege, the court held that the presence of a third party does not waive privilege if that person's "presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *Id.* at 985.  That is precisely the case here.

In addition, the *BouSamra* court concluded that the attorney work-product doctrine applies to the same types of documents or communications (even if not attorney-client privileged) as long as they are not shared with POM or disclosed in a way that would make it likely for POM to acquire the information, neither of which are at play here. *See* **Ex. A.,** Bonner Decl. at ¶¶ 17-19.

The Court should therefore reject POM's argument that Parx's privileges and immunities disappear merely because a third-party lobbyist or public relations professional is involved in helping formulate legal advice and strategy.

Second, POM suggests that objections lodged by Mr. Shelly's counsel coupled with instructions not to answer certain questions somehow precluded POM from taking testimony about exhibits reflecting some of Mr. Shelly's non-privileged communications.  That is incorrect.

During his deposition, Mr. Shelly answered questions about exhibits, his understanding of those exhibits, and his actions relating to those exhibits.  *See* Shelly Dep., at 8:13 – 11:4 and Exhibit B to Mr. Shelly's response in opposition to POM's letter. Mr. Shelly could testify regarding the exhibits shown to him at his deposition because the Court already concluded the exhibits are not privileged. Mr. Shelly's testimony about those documents, per his counsel's statements, were justified and could not act as a waiver of privilege or work-product protections.

+lawyer | innovations
rethink everything.

# GA BIBIKOS LLC
relentless. advocacy. period.

By contrast, the questions identified in exhibit B to POM's letter are ones that sought information about discussions *not* reflected in the emails already reviewed by the Court for privilege and presented to Mr. Shelly during his deposition. Counsel for Mr. Shelly lodged objections and instructions in response to questions asking for information about *other* communications not reflected in the exhibits presented to him – communications that the Court never reviewed or deemed non-privileged.

Even if, for example, the Court determined a particular email predominately involves matters unrelated to legal advice strategies, that determination does not mean that *every* discussion Mr. Shelly had with any attorney is presumptively nonprivileged. Thus, when POM sought testimony about communications *other than* those set forth in the documents presented to him at his deposition, those questions called for answers that would be protected by privilege or work-product immunity (or both) and, in turn, could clearly elicit a valid objection and instruction not to answer.

Counsel's objections and instruction not to answer were particularly appropriate – and especially important to uphold – in response to POM's questions for irrelevant information about Mr. Shelly's communications with Parx's in-house counsel (outside the presence of any outside counsel such as the defendants) *after this suit was filed. See* Transcript of Mr. Shelly's Deposition at 61:14-62:10 and 63:25-66:20; *see also* Exhibit A to Mr. Shelly's own response in opposition at p. 1, addressing POM's "Category 1" questions as listed on its own Exhibit B.

The Court should therefore reject POM's argument that privilege objections and instructions not to answer somehow precluded POM from inquiring into Mr. Shelly's non-privileged communications.

## V.    Conclusion

For all these reasons, the Court should deny the relief sought in POM's letter. If the Court elects to grant POM additional time to depose Mr. Shelly to repeat its questions, the Court should (a) instruct POM on precisely the questions it may ask so as not to inquire into any privileged matters or matters protected by work-product immunity and (b) grant Parx leave to appear at the deposition through its undersigned counsel and allocate a sufficient amount of time for questioning the witness so that Parx may, if necessary, assess, ask questions to establish the bases for privileges and immunities, lodge proper objections, and instruct the witness not to answer based on the attorney-client privilege and/or work product doctrine.

Thank you for your consideration of this letter.

Very truly yours,

**GA BIBIKOS LLC**

George A. Bibikos

c:    Counsel (via ECF)

Enclosures

+lawyer | innovations
rethink everything.