# HUSCH BLACKWELL

Michael P. Nolan
Partner

December 4, 2023

Hon. Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania

> **Re:** ***Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC, et al.***, **No. 1:20-cv-292: Discovery Dispute Regarding Deposition of Peter Shelly**

Dear Judge Wilson:

Pursuant to the Court's November 28, 2023 Order (ECF No. 352), Plaintiff Pace-O-Matic, Inc. ("POM") respectfully submits this reply in support of its November 26, 2023 discovery letter (ECF No. 347). For the reasons stated below and in the original discovery letter, the Court should overrule the privilege objections to the specific deposition questions at issue and order Peter Shelly to answer those questions pursuant to Rule 37(a)(3)(B)(i), as well as answers to reasonable follow-up questions.

## I.   The attorney-client privilege does not apply to the questions at issue in this discovery dispute.

Third party Parx Casino has filed a response, contending that the questions at issue implicate Parx's attorney-client privilege. *See* ECF No. 351. Parx's contentions lack merit. Under Pennsylvania law, for the attorney-client privilege to apply, "[t]he communications must be for the purpose of obtaining legal advice." *In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997). A communication involving a non-lawyer consultant like Shelly does not fall within the attorney-client privilege unless the consultant's "presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *BouSamra v. Excela Health*, 653 Pa. 365, 396 (2019) (holding that communications with a public relations consultant were not privileged).

In his deposition, Shelly made clear that his involvement did not meet this standard. He emphasized that his "job, again, was to do communications work to prevent skill games from continuing to explode across Pennsylvania." Shelly Depo. 58:2-5. He explained that he is "a communications consultant. Virtually every conversation would have been regarding the impact on the key audiences we were trying to communicate with." *Id.* 63:10-15. He concisely described his role working work Parx and Eckert as "[s]trategic communications first, public relations second." *Id.* 136:13-14. Importantly, he emphasized that he would not "speculate about a legal document opinion, because I am not an attorney. My opinion is worthless to [Parx] Casino in this regard." *Id.* 163:2-6. At no point during his deposition did Shelly give any indication that he was indispensable to the giving of legal advice or that he ever facilitated giving legal advice.

1

HB: 4871-3533-6341.1

# HUSCH BLACKWELL

Parx seeks to overcome Shelly's sworn deposition testimony on these points by submitting a declaration of Thomas Bonner, the former general counsel of Parx. *See* ECF No. 351-1. Bonner's declaration does not satisfy Parx's burden of establishing that the attorney-client privilege applies (including that the privilege has not been waived). *BouSamra*, 653 Pa. at 392. As an initial matter, Bonner's declaration is entirely conclusory and general, simply asserting without explanation critical points such as that Shelly's participation in certain discussions was "necessary to that legal analysis and legal advice." ECF No. 351-1, ¶ 11. A conclusory declaration does not meet a party's burden to establish the applicability of the privilege. *See, e.g.*, *Alexander v. F.B.I.*, 192 F.R.D. 42, 45-46 (D.D.C. 2000); *Gables Condominium & Club Ass'n v. Empire Indem. Ins. Co.*, No. 18-23659, 2019 WL 1317824, at *6 (S.D. Fla. Mar. 22, 2019) (collecting cases).

Moreover, a party asserting the attorney-client privilege must "prov[e] that the privilege applies ***to a particular communication***." *Fouad v. Milton Hershey Sch. & Tr.*, No. 1:19-CV-253, 2020 WL 3265245, at *13 (M.D. Pa. June 17, 2020) (emphasis added). That focus on the content and context of ***particular*** communications is especially important here, where it is clear that many of Shelly's communications plainly do not implicate legal advice. For example, last week, Magistrate Judge Saporito overruled privilege objections to several communications involving Shelly, because those communications did not involve legal advice. *See* ECF No. 353, at 72 (finding that communication involving Shelly "concern[ed] legislative, political or policy advice only—not *legal* advice—and thus they are not protected by attorney-client privilege"); 82 (same); 87-88 (same). More broadly, given Shelly's own characterization of his work for Parx and Eckert, it would be implausible to suggest that ***all*** of his communications are privileged. Yet the Bonner declaration rests entirely on broad generalizations, without providing the context or content of any of the specific communications implicated by the questions at issue in this dispute.

*Sandoz Inc. v. Lannett Co.*, 257 F. Supp. 3d 258 (E.D. Pa. 2021), does not support Parx's position. To the contrary, *Sandoz* emphasizes the necessity of considering the specific context and content of each communication to assess whether the privilege applies. The *Sandoz* Court looked at each communication at issue to assess whether the third-party consultant's involvement was necessary to the provision of legal advice. *Id.* at 265-66. With respect to two documents, "it is patent from the face of these two documents that legal advice is in fact involved." *Id.* But with respect to eight other communications, the court found that the communications were not necessary for the provision of legal advice. Here, the Bonner declaration fails to provide a factual basis to conclude that any of the particular questions at issue in POM's discovery letter implicate communications that were necessary for the provision of legal advice. Instead, Bonner merely discusses generalities using conclusory judgments. Bonner's declaration does not provide anywhere near the level of factual information that would be necessary to conduct the particularized analysis conducted in *Sandoz*. Thus, Parx has failed to carry its burden of proving that the attorney-client privilege applies to the questions at issue in this discovery dispute.

2

## HUSCH BLACKWELL

**II.     The work-product doctrine does not apply to the questions at issue in this discovery dispute.**

Parx also contends that the questions at issue in this discovery dispute implicate the work-product doctrine.  As an initial matter, Parx apparently invokes the Pennsylvania work-product doctrine, not the federal work product doctrine.  *See* ECF 351, at 4 ("Under Pennsylvania law, POM is not entitled to work product that benefits Parx as the client."); *see also id.* at 2 (citing, as purported legal authority for application of work-product doctrine, a Pennsylvania Rule of Civil Procedure and a Pennsylvania state court case applying the Pennsylvania work-product doctrine).  There are material differences between the federal and Pennsylvania work-product doctrines.  *See* ECF No. 353, at 19.  But only the federal work-product doctrine applies here.  *See, e.g.*, *Home Repair, LLC v. Church Mutual Ins. Co.*, 342 F.R.D. 209, 212 (M.D. Pa. 2022).  Because Parx has invoked only the Pennsylvania work-product doctrine—which does not apply in this case—the Court should overrule Parx's work-product objections.

Even if Parx had invoked the federal work-product doctrine, it has failed to carry its burden of establishing that any of the questions at issue in this discovery dispute involve work product. *United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, No. 3:13-cv-2940, 2019 WL 5829535, at *4 (M.D. Pa. Nov. 7, 2019).  The work-product doctrine applies only to materials prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *Public Interest Legal Foundation v. Chapman*, 595 F. Supp. 3d 296, 308 (M.D. Pa. 2022).  Parx has not explained how any of the specific questions at issue in this discovery dispute were "in anticipation of litigation."  "General public relations advice, even if it bears on litigation, does not qualify for work-product protection.  A media campaign is not a litigation strategy." *Stevens v. Sullum*, No. 3:20-cv-1911, 2022 WL 4472464, at *5 (M.D. Pa. Sept. 26, 2022) (quotation omitted); *see also Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013) ("A media campaign in not a litigation strategy." (alteration and quotation omitted)).  Parx has failed to provide any basis to conclude that Shelly's involvement went beyond the public relations and communications work that Shelly claims to have done.  For this reason, the work product doctrine does not apply.  *See id.*

Moreover, it is also doubtful that Parx has even preserved its work-product objections.  No work-product objection was interposed to any of the questions at issue in this dispute.  To be sure, Parx was not formally represented at Shelly's deposition.  But Shelly's counsel represents Parx in related litigation brought by Parx against POM,[1] and Parx is paying those lawyers' fees incurred representing Shelly.  Shelly Depo. 103:17-25, 104:1-12.  Shelly's counsel repeatedly asserted Parx's purported attorney-client privilege in response to questions, and he raised the work-product doctrine in response to one question. Shelly Depo. 23:15-17.  Because the work-product doctrine was not asserted in response to any of the questions at issue in this dispute, any protections that might have been applicable have been waived.

---

[1] *See Greenwood Gaming & Entertainment, Inc. v. POM of Pa., LLC., et al.*, No. 2:22-cv-4434 (E.D. Pa.) (in which Parx is represented by counsel from Blank Rome LLP, including Will Cruse and Danielle Hudson).

3

## HUSCH BLACKWELL

### III.    Shelly has not identified any other basis to deny the requested relief.

Shelly's opposition to POM's discovery letter does not address whether or not the questions at issue implicate privilege.  None of Shelly's contentions justify denying the relief requested by POM.  First, Shelly characterizes POM's request as seeking to extend the duration of Shelly's deposition.  That is not the relief that POM has sought.  Instead, POM has moved for relief under Rule 37(a)(3)(B)(i), which permits the Court to "compel[] an answer . . . if . . . a deponent fails to answer a question asked under Rule 30."  Fed. R. Civ. P. 37(a)(3)(B)(i).  Here, POM seeks an order compelling Shelly to provide answers to specific questions that he refused to answer during his deposition.  In addition, when compelling a deponent to answer previously unanswered questions, courts also routinely permit the party conducting the deposition to ask reasonable follow up questions that flow from the answers to the previously unanswered questions.  *See, e.g.*, *O'Boyle v. Sweetapple*, No. 14-cv-81250, 2016 WL 9559954, at *3 (S.D Fla. July 8, 2016) ("Plaintiff is required to answer all of these questions, as well as any related and reasonable follow-up questions. So there is no confusion, Plaintiff is ordered to fully, completely, and specifically respond to the above-cited questions and any reasonable follow-up questions."); *Smith v. Jefferson Cty. Comm'n*, No. 3:10-cv-106, 2012 WL 112345, at *3 (Jan. 12, 2012) ("Accordingly, these questions should be answered, as well as any reasonable follow-up questions that would flow from the responses to these questions.").  The relief sought by POM is precisely the relief that the Federal Rules of Civil Procedure contemplate under these circumstances, and there is nothing inappropriate about that request.[2]

Second, Shelly claims that, in some (but not all) instances, he ultimately responded to the question at issue at a different place in the deposition.  That claim is not accurate.  Rather, the questions that Shelly actually answered were similar to, but distinct from, those he refused to answer based on his claim of privilege.  For example, Shelly cites the question and refusal at Depo. pp. 223:19-225:7 and his supposed answer to that question at Depo. p. 224:16-22.  But the question Shelly refused to answer was whether Mark Stewart was the one who told him that the Commonwealth Court decision held that POM's skill games were illegal, whereas the answer Shelly points to relates to the source of information for a specific document discussing that holding.  That Shelly's counsel knew the original question had not been answered is clear from his reassertion of his privilege objection—and Shelly's renewed refusal to answer—just a few pages later, when counsel for POM tried once again to get Shelly to answer that question. Depo. at 229:23-230:18. POM is entitled to know about each interaction between Stewart and Shelly regarding this central issue, not just those Shelly unilaterally decides to discuss.

For the foregoing reasons, POM respectfully requests that the Court order Shelly to provide answers to the questions at issue in this dispute pursuant to Rule 37(a)(3)(B)(i), as well as answers to reasonable follow up questions.

---

[2] In addition, Rule 30 provides that "[t]he court must allow additional time [in a deposition] consistent with Rule 26(b)(1) and (2) . . . if the deponent, another person, or any other circumstance impedes or delays the examination."  Fed. R. Civ. P. 30(d)(1).  By refusing to answer questions based on improper privilege objections, Shelly has impeded his deposition.

4

**HUSCH BLACKWELL**

Respectfully,

HUSCH BLACKWELL LLP

*/s/ Michael P. Nolan*

Michael P. Nolan

Attachments

cc:     All counsel of record (via ECF)

HB: 4871-3533-6341.1