Tab "A" (Bonner Declaration)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PACE-O-MATIC, INC., : <br> : <br>     Plaintiff  : <br> : <br> v.   : <br> : <br> ECKERT, SEAMANS, CHERIN & : <br> MELLOT, LLC, *et al.*   : <br> : <br>     Defendants.   : <br> : | [FILED ELECTRONICALLY] <br><br> No. 1:20-00292 |

## DECLARATION OF THOMAS C. BONNER

I, Thomas C. Bonner, Esquire, hereby declare, subject to the penalties of 18 Pa. C.S. § 4904 and 28 U.S.C. § 1746, relating to unsworn falsification to authorities, as follows:

1. From 2006 until mid-2022, I served as Group Vice President of Legal and Chief Counsel of Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx").

2. In mid-2022, Karin Ashford assumed the position of Group Vice President of Legal and Chief Counsel and I became Executive Vice President and Special Counsel for Parx, a position which I hold today.

3. I am authorized to make this declaration on behalf of Parx.

4. I have personal knowledge of the matters set forth herein.

5. During my tenure as Group Vice President of Legal and Chief Counsel, the company engaged a number of individuals (and their respective companies) to act as the company's agents in lobbying and related activities in the Commonwealth of Pennsylvania.

6. Those individuals, and their related companies, included, but are not limited to, Richard "Dick" Gmerek of Gmerek Government Relations, Inc. ("GGR"); Sean Schafer of Schafer

1

Government Affairs, Inc.[1]; and Peter Shelly, previously with ShellyLyons Public Affairs & Communications ("ShellyLyons") and now with Clearpoint Communications ("Clearpoint").

7. Although Messrs. Gmerek, Schafer and Shelly have been engaged for lobbying (and, in Mr. Shelly's case, for public relations work), all three of them have also engaged, as agents of Parx, in substantive legal discussions with both Parx's outside counsel such as Mark Stewart of Eckert, Seamens, Cherin & Mellot, LLC ("Eckert") and Parx's in-house counsel such as myself in which the attorneys have provided legal analysis, legal advice, and their mental impressions about the issues under discussion.

8. Those communications, both written and oral, have included Parx's outside and in-house attorneys' analysis of existing and proposed legislation at both the state and local level. Mr. Shelly's, Mr. Gmerek's and/or Mr. Schafer's participation in such communications was necessary so that both Parx's outside and in-house counsel could provide legal advice to Parx regarding its legal options under existing law or proposed new legislation.

9. Those communications, both written and oral, have included a discussion of public relations topics (including but not limited to with Mr. Shelly) in connection with, but not limited to, on-going litigation in the Commonwealth Court of Pennsylvania, which I understand is at issue in the claims brought by Plaintiff Pace-O-Matic, Inc. ("Plaintiff") in this case against Eckert and individual attorneys. Such discussions about public relations in connection with that on-going litigation have been directed at utilizing Mr. Shelly's (and at times, Mr. Gmerek's and Mr. Schafer's) expertise in supporting Parx's outside and in-house counsel's analysis and advancement

---

[1] Prior to starting his company in 2017, Mr. Schafer was Director of Government Relations at Parx for approximately eight months.

of Parx's legal position as an *amicus* or prospective intervenor in various dockets, and have involved both outside and in-house counsel's mental impressions about such litigation.

10. Those communications, both written and oral, have also included input from Messrs. Shelly, Schafer and Gmerek otherwise necessary for both outside and in-house counsel to provide legal advice to Parx about matters *other than* "skill games" or legislation or litigation involving "skill games."

11. To the extent Messrs. Gmerek, Shelly or Schafer had any communications with Parx's outside or in-house counsel about the import or meaning of any court opinion (or any judge issuing any such opinion) regarding skill games or gaming in the Commonwealth of Pennsylvania or elsewhere, those communications included or contributed to the formation of legal analysis, legal advice and the outside and in-house counsel's mental impressions about such opinions and proceedings. Messrs. Shelly's, Gmerek's and Schafer's participation in such communications occurred as agents of Parx, acting on its behalf, and providing input necessary to that legal analysis and legal advice.

12. Any drafting by Mr. Shelly (or Messrs. Gmerek or Schafer) of documents regarding the meaning or import of any court opinion, or any revisions thereafter, as directed by either Parx's outside counsel or Parx's in-house counsel, was done as part of the process of counsel providing legal advice to Parx about such court opinions and reflected outside or in-house counsel's mental impressions about such court opinions.

13. To the extent Messrs. Gmerek, Shelly or Schafer had any communications with outside or in-house counsel regarding this litigation, about Eckert's or any of its attorney's "conflicts of interest," those communications were for purposes of enabling Parx's outside and in-

3

house counsel to provide legal advice to Parx about this litigation and its impact on Parx's legal rights, and involved outside and/or in-house counsel's mental impressions about this litigation.

14. To the extent Messrs. Gmerek, Shelly or Schafer had any communications with Parx's outside or in-house counsel about whether "skill games" are "legal" or "illegal", those communications included discussions about or contributed to the formation of the attorneys' legal analysis, legal advice and mental impressions about, *inter alia*, the numerous court proceedings in the Commonwealth, in many of which Parx has sought to intervene or participate as an *amicus*.

15. Parx authorized the participation of Messrs. Gmerek, Shelly and/or Schafer in such communications as described above for purposes of obtaining legal advice from its outside and in-house counsel.

16. Such communications described above with Parx's outside or in-house counsel involved information relayed to or from Parx for the purpose of Parx securing either an opinion of law, legal services or assistance in such legal matters.

17. Parx intended and believed that the communications described above were and would remain confidential.

18. Parx has not authorized and does not authorize any participant in the communications described above – including but not limited to Messrs. Shelly, Gmerek or Schafer to disclose the contents of such communications.

19. Parx has instructed Messrs. Shelly, Gmerek and Schafer that Parx holds the rights to any attorney-client privilege, and/or any work product protections that may apply to the content of the various communications described above, and that they are not to disclose those communications to anyone.

4

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2023

Thomas C. Bonner
Executive Vice President and Special Counsel