Tab "B" (Unreported Opinions)

Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC, Not Reported in Fed....

2023 WL 7491133

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 2 of 26

2023 WL 7491133
Only the Westlaw citation is currently available.
**NOT PRECEDENTIAL**
United States Court of Appeals, Third Circuit.

PACE-O-MATIC, INC.

v.

ECKERT, SEAMANS CHERIN & MELLOTT, LLC; Mark S. Stewart; Kevin M. Skjoldal, Appellants in No. 22-2958
*Hawke McKeon & Sniscak, LLP,
Appellant in Nos. 22-2445 and 22-2902
*Greenwood Gaming and Entertainment, Inc., Appellant in Nos. 22-2446 and 22-2959
*(Pursuant to Rule 12(a), Fed. R. App. P.)

Nos. 22-2445, 22-2446, 22-2902, 22-2958, and 22-2959
|
Argued September 20, 2023
|
Filed November 13, 2023

On Appeal from the United States District Court for the Middle District of Pennsylvania (District Court No. 1-20-cv-00292), District Judge: Honorable Jennifer P. Wilson

**Attorneys and Law Firms**

Peter C. Buckley, Abraham C. Reich, Robert S. Tintner [ARGUED], Fox Rothschild, 2000 Market Street, 20th Floor, Philadelphia, PA 19103, Counsel for Appellants Eckert, Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal.

Melissa A. Chapaska, Dennis Whitaker [ARGUED], Hawke McKeon & Sniscak, 100 N Tenth Street, P.O. Box 1778, Harrisburg, PA 17101, Counsel for Appellant Hawke McKeon & Sniscak, LLP.

George A. Bibikos [ARGUED], #6330, 5901 Jonestown Road, Harrisburg, PA 17112, Counsel for Appellant Greenwood Gaming and Entertainment, Inc..

Michael Martinich-Sauter [ARGUED], Jeffrey B. Jensen, Michael Nolan, Spencer Tolson, Husch Blackwell, 8001 Forsyth Boulevard, Suite 1500, St. Louis, MO 63105, Counsel for Appellee Pace-O-Matic, Inc.

Before: RESTREPO, McKEE, RENDELL, Circuit Judges.

OPINION *

*

This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RENDELL, Circuit Judge.

**\*1** Eckert Seamans Cherin & Mellott, LLC ("Eckert"), Hawke McKeon & Sniscak, LLP ("HMS"), and Greenwood Gaming and Entertainment, Inc., d/b/a Parx Casino ("Parx") appeal from the District Court's order requiring disclosure of allegedly privileged material under the doctrine of judicial estoppel. Because the District Court erred in implementing the standard for application of judicial estoppel under our caselaw, we will vacate the order and remand.

I [1]

1

Because we write only for the parties, we will recite only the facts necessary to our decision.

Pace-O-Matic, Inc. ("POM") develops, produces, and licenses electronic games sold, as relevant here, in Pennsylvania and Virginia. In 2016, Eckert began representing POM solely in Virginia regarding certain regulatory matters. At that time, Eckert also represented Parx, POM's market competitor, in Pennsylvania.

In 2018, POM, through other counsel, filed two lawsuits in the Commonwealth Court of Pennsylvania (the "Commonwealth Court Cases") against state agencies, challenging the seizure of some of its games in Pennsylvania. [2] Parx, represented by counsel of record HMS and Ballard Spahr, LLP, filed amicus briefs in opposition to POM's position and moved to intervene in the action.

2

See *POM of Pa., LLC v. Pa. State Police, Bureau of Liquor Control Enforcement*, No. 503 MD 2018 (Pa. Commw. Ct.); *POM of Pa., LLC v. Commonwealth of Pa., Dep't of Revenue*, No. 418 MD 2018 (Pa. Commw. Ct.).

In January 2020, POM learned that Eckert was involved in drafting Parx's filings in the Commonwealth Court Cases. POM requested that Eckert withdraw from representing

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 3 of 26

Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC, Not Reported in Fed....

2023 WL 7491133

Parx in the Commonwealth Court Cases, but Eckert instead withdrew from its representation of POM in Virginia.

In February 2020, POM brought the instant action against Eckert in federal court, alleging a breach of fiduciary duties. POM served interrogatories and requests for document production on Eckert and non-party subpoenas on Parx and HMS seeking communications that Eckert had with Parx and HMS in the Commonwealth Court Cases. Eckert, Parx, and HMS objected, asserting attorney–client and work-product privilege. POM moved to compel production; Eckert, Parx, and HMS moved for a protective order. The Magistrate Judge heard oral argument and conducted an *in camera* review of the documents at issue. The Judge then issued a memorandum and order invoking the doctrine of judicial estoppel to preclude Eckert's assertion of an attorney–client relationship with Parx. The Magistrate Judge concluded that Eckert, HMS, and Parx had each, explicitly or implicitly, mischaracterized Eckert's role in the Commonwealth Court Cases by asserting that Eckert did not represent a party adverse to POM in the Commonwealth Court Cases.

Eckert, HMS, and Parx appealed to the District Court, which affirmed the Magistrate Judge's memorandum and order on July 5, 2022 (the "July 5 Order") and ordered the appellants to turn over the allegedly privileged documents and communications. Eckert, HMS, and Parx filed motions for reconsideration and permission to take an interlocutory appeal under § 1292(b). The District Court denied the motions for reconsideration but granted permission for the interlocutory appeal to decide whether judicial estoppel may be applied as an exception to or waiver of the attorney–client privilege of a non-party for interlocutory appeal.[3] The appellants timely filed petitions for interlocutory review of the July 5 Order under § 1292(b). A motions panel of this court granted the petition, and we consolidated the appeals.

[3]     The District Court stayed the order requiring production of discovery materials pending this appeal.

II[4]

[4]     The District Court has jurisdiction over this matter pursuant to [28 U.S.C. § 1332(a)](), and we have appellate jurisdiction under [28 U.S.C. § 1292(b)](). The District Court determined that the July 5

Order "(1) involve[s] a 'controlling question of law,' (2) offer[s] 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance[s] the ultimate termination of the litigation.' " *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (quoting [28 U.S.C. § 1292(b)]()). We will exercise our discretion in permitting this appeal to be taken from the July 5 Order, 29 U.S.C. § 1292(b), and do not address the appellants' or appellee's arguments regarding the *Perlman* doctrine or the collateral order doctrine.

**\*2**  The appellants urge, first, that judicial estoppel cannot be applied as a waiver of, or exception to, attorney–client privilege held by a non-party and, second, that the District Court abused its discretion in applying the doctrine of judicial estoppel to the facts before it. Because we agree that the District Court misapplied the law, we need not address the first argument.[5] We review the District Court order invoking judicial estoppel "only for abuse of discretion," inquiring whether its "ruling is founded on an error of law or a misapplication of law to the facts." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (internal quotation marks omitted).

[5]     Although appellants' first argument aligns with the question certified by the District Court, when we exercise jurisdiction under [§ 1292(b)](), we "may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.' " *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (quoting 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 110.25[1] (2d ed. 1995)).

The concept of judicial estoppel stems from the courts' intrinsic authority to prevent parties from "playing fast and loose with the courts" by asserting inconsistent positions to gain an unfair advantage. *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). In order to apply judicial estoppel, a district court must satisfy itself that:

(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted [previously]; (2) the party changed his or her position in bad

Case 1:20-cv-00292-JPW  Document 366-2  Filed 01/12/24  Page 4 of 26

Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC, Not Reported in Fed....

2023 WL 7491133

faith ...; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Montrose*, 243 F.3d at 777–78. "[J]udicial estoppel is appropriately applied in a narrow category of cases because it 'is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice.' " *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 559–60 (3d Cir. 2002) (quoting *Montrose*, 243 F.3d at 784).

The District Court reasoned that judicial estoppel was appropriate because the appellants had presented fundamentally different positions in bad faith to obstruct discovery and no lesser sanction would address the resulting harm. We conclude that the requirements for applying judicial estoppel have not been met.

### A

The Magistrate Judge viewed Eckert's assertion that it did "not represent any party adverse to POM in [the Commonwealth Court] litigation" as irreconcilably inconsistent with its invocation of the attorney–client privilege to shield its communications with Parx. JA 13–14. But Eckert's counsel explained to the Magistrate Judge that Eckert has maintained that it has a longstanding attorney–client relationship with Parx but did not appear as *counsel of record* for Parx in the Commonwealth Court Cases. And Eckert did not view itself as representing a party adverse to POM when Parx was not a party in either Commonwealth Court Case but only had a motion to intervene pending. The Magistrate Judge did not appear to appreciate Eckert's nuanced view of its role. As we read the record, Eckert's position was perhaps "hyper-technical," *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 378 (3d Cir. 2007), but it was not wholly incompatible with its assertion of the attorney–client privilege. Eckert readily conceded that it represented Parx in connection with the Commonwealth Court Cases, but Parx was not a party and Eckert never entered an appearance in the case.

### B

**\*3** Second, even if there were irreconcilable tension between Eckert's positions, the District Court abused its discretion in finding that Eckert, HMS, and Parx acted in bad faith. To satisfy the bad faith requirement, (1) a litigant must behave culpably (2) in a way that "assault[s] the dignity or authority of the court." *Montrose*, 243 F.3d at 781. In other words, "judicial estoppel may not be used to punish litigants for how they treat other litigants or third parties; its *only* legitimate purpose is to remedy an affront to the court's integrity." *Id.* at 785 (footnote omitted).

Our focus is on whether the appellants' conduct assaulted the District Court's authority. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position," *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009), because "[u]nlike the concept of equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system." *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990). Here, no court accepted Eckert's, HMS's, or Parx's allegedly inconsistent positions that Eckert was not representing an entity adverse to POM in litigation. Absent that clear threat to judicial authority, the District Court lacked "an integral factor justifying the application of judicial estoppel." *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005).

POM urges that judicial estoppel may apply even where no court accepted a litigant's prior position. *See G-I Holdings*, 586 F.3d at 262. But that exception was applied in a bankruptcy case, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003), and is quite limited. There, the Bankruptcy Court had not accepted representations in the debtor's disclosure statement, but the Court cited "the reliance placed upon the [debtor's] disclosure statement by the creditors and the court" as justifying the application of judicial estoppel to bar the later taking of a later inconsistent position. *Id.* at 320–22 (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). Nondisclosure there harmed creditors, "undermining the bankruptcy process by weakening their bargaining position." *G-I Holdings*, 586 F.3d at 262 (discussing *Krystal Cadillac*, 337 F.3d at 324–25). No such systemic threat lurks behind the appellants' positions, so "applying judicial estoppel here presents a greater threat to judicial integrity." *Id.*

Moreover, in routine litigation, defendants are permitted flexibility in asserting positions in early stages of litigation "because a defendant ought to have the opportunity to put up the best possible defense in light of all the claims against it." *Id.*; *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically ...."). Here, there really was no "earlier position" that the District Court accepted or that was relied on. It was all part and parcel of the same discovery proceeding, so there was no assault on the court's authority.

C

Third, the remedy is not sufficiently tailored. Courts should not apply judicial estoppel unless (1) "no sanction established by the Federal Rules or a pertinent statute is 'up to the task' of remedying the damage done by a litigant's malfeasance," *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)), and (2) "the sanction is 'tailored to address the harm identified,' " *Klein*, 185 F.3d at 108 (quoting *Republic of the Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994)).

**\*4** The Magistrate Judge concluded that only two alternative sanctions were available, both of which were "categorically determinative of the outcome on the merits of th[e] litigation": (1) entering default judgment against Eckert or (2) judicially estopping Eckert from denying its representation of a party adverse to POM in litigation. JA 18 (internal quotation marks omitted). Neither the Magistrate Judge nor the District Court appear to have contemplated the use of "Rule-or statute-based sanctions" more proportionate to the misconduct alleged, which alone was error. *Montrose*, 243 F.3d at 785. The sanction ultimately seized upon by the Magistrate Judge was fundamentally inappropriate because it goes to the very heart of the underlying suit—the nature of the relationships between Eckert and POM and Eckert and Parx. The novel application of judicial estoppel to effectively eviscerate a non-party's privilege after the fact was unwarranted when the Magistrate Judge might simply have ruled on the privilege issue on the merits and used more temperate sanctions to deter counsel from any future gamesmanship. [6]

[6]    Parties rely on the privilege as essential to open communications with counsel. To have it denied after the fact, and with little evidence of the role of Parx, the client, in the positions Eckert was taking, gives us serious pause.

Finally, the District Court did not tailor the remedy because it focused its analysis on the alleged bad faith of Eckert, discussing minimally any malfeasance by HMS or Parx. But Parx, as holder of the attorney–client privilege, would suffer the brunt of the penalty imposed by the July 5 Order. *Cf. id.* at 786 (concluding remedy was not tailored where non-party plan participants, not plaintiff hospital and savings plan, were harmed when district court invoked judicial estoppel to dismiss case). In sum, the District Court sought to force a square peg into a round hole by selecting judicial estoppel as an appropriate sanction for appellants. That was an abuse of discretion.

III

On remand, the District Court should consider whether the appellants' perceived misconduct merits sanctions and, if so, whether sanctions available under the Federal Rules or pertinent statutes are appropriate. Accordingly, we will vacate the District Court's July 5 Order and remand for further proceedings consistent with this opinion.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 7491133

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by  Madanes v. Madanes,   S.D.N.Y.,  March 8, 2001

🔺 KeyCite Overruling Risk - Negative Treatment

Overruling Risk  Jones v. R.R. Donnelley & Sons Co.,   U.S.,   May 3, 2004

1986 WL 15669

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

ALAN B. WEISSMAN and

VIVIEN K. WEISSMAN, Plaintiffs,

v.

IRWIN FRUCHTMAN, ROBERT ESNARD, IRVING
E. MINKIN, HERBERT STURZ, CORNELIUS F.
DENNIS, RONALD SILVER, MAURICE BEANE,
JOSEPH AGUIRRE, GEORGE C. SAKONA, JEROME
DE CANIO, BETSY HAGGARTY, JUDITH SPEKTOR,
WILLIAM VALLETTA, JEFFREY GLEN, LEO
WEINBERGER, LOUIS MUNOZ, MELVIN SOKAL,
JOSEPH THOMAS, CHARLES KAROLY, DANIEL
HASKELL, MICHAEL TSITIRIS, ALI MURTAZA,
LASCELLE WRIGHT, DUANE WOOD, DENNIS
NEVILLE, HERMAN GREENBERG, PATRICK
COONEY, MANUAL TENORIO, PETER KAZINS,
JOHN HIRSCHAUER, MATILDA DUGAN, WILLIE
SHEPARD, JOHN L. SOTOS, ANTONIO REYES,
OLGA SHANAHAN, ANTHONY CARPENTIER,
PAUL CHARLTON, JUDITH FINKELSTEIN,
COLISEUM VACUUM CLEANER & SERVICE
COMPANY, INC., DAMUS, INC., FRANK
HERNANDEZ and KATHY HERNANDEZ, Defendants.

No. 83 Civ. 8958 (PKL).
|
October 31, 1986.

**Attorneys and Law Firms**

Alan S. Liebman, Alan S. Liebman & Associates, P.C., New York City, for plaintiffs.

Nora Freeman, Ass. Corp. Counsel, Law Dep., New York City, Wayne Saitta, Brooklyn Legal Services Corp. 'A', Brooklyn, N. Y., Deborah Rand, Rutgers School of Law, Newark, N. J., for defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, UNITED STATES MAGISTRATE.

**\*1** The matter before this Court stems from a five year long conflict between the City of New York and the plaintiffs, Alan and Vivian Weissman. Until recently the Weissmans were the owners, as tenants by the entirety, of a building or buildings [1] located at 400–404, 406 West 57th Street, New York, New York. In part, this building is used for Single Room Occupancy ('SRO') housing. SRO housing is generally availed by lower income people. Often the use of property as SRO housing does not maximize the economic return of that property and thus there is an inherent conflict between the City who seeks housing for the poor and the owners of SRO Housing who seek to maximize their earnings. See New York Times, August 13, 1982, at B2, col.1; Id., July 25, 1982, § 4 at 6, col.4. This conflict has created a long and bitter history between the parties, which we briefly summarize here. [2]

Plaintiffs, having tried but failed to obtain certificates of eviction in order to demolish or alter their building, filed an application with the Department of Buildings ('DOB') for a permit to perform alterations. The DOB approved the application, issued the alteration permit on December 23, 1981, and plaintiffs began work on the alterations. After gutting the building, plaintiffs discovered what they believed to be substantial structural defects. By letter dated April 16, 1982, plaintiffs notified the DOB that it was their opinion that the building was unsafe and in imminent danger of collapse, and requested demolition of the building. In response, DOB conducted an inspection on April 22, 1982. During that inspection substantial violations of the Building Code were discovered and three Notices of Violation were issued. The Notices required plaintiffs to make extensive repairs after obtaining the necessary permits and approvals.

On April 30, 1982, plaintiffs were notified that the alteration permit which had been issued the previous December was revoked. Defendant Sakona, Manhattan Superintendent of the DOB, wrote and explained that the original approval had been erroneously granted because the building was located in the 'Preservation Area of the Special Clinton District.' There was no hearing held by the DOB either before or after the permit was revoked.

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

Throughout the month of June, the DOB inspected the building and concluded that while immediate repair was needed, a vacate order was not warranted. Plaintiffs responded by initiating the first of several lawsuits in New York State Supreme Court.[3] In that proceeding, the Weissmans sought an order vacating the premises and staying the enforcement of the Notices of Violation. This order was granted by the trial court, but was later reversed by the Appellate Division for lack of jurisdiction over the subject matter of plaintiffs' claim since plaintiffs had failed to exhaust their administrative remedies by appealing the permit revocation to the New York Board of Standards and Appeals ('BSA').

Following the Appellate Division's order, the plaintiffs filed an appeal with the BSA which refused to hear the appeal from the revocation of the alteration permit as untimely. The State Supreme Court, in a separate action, upheld the determination of the BSA regarding the alteration permit and affirmed the decision, on the merits, of the DOB regarding the denial of the demolition permit. Moreover, the City sought sanctions for the safety violations, and criminal penalties for the plaintiffs' alleged harassment of tenants.

 **2** Believing themselves to be in an administrative 'Catch-22,' the plaintiffs sought relief in this Court by filing a Civil Rights action under to 42 U.S.C. § 1983 for the refusal on the part of the defendants, various administrative officials of the City of New York, to permit the demolition and/or vacation of their building.

The Original and Amended Complaint alleged, in relevant part, that the

> defendants made determinations not within their jurisdiction, and in violation of established and lawful standards and procedures and in an arbitrary and capricious manner, that have deprived plaintiffs of a property right in violation of due process of law as afforded under the Fifth and Fourteenth Amendments of the Constitution of the United States.

(Amended Complaint ¶23). The factual allegations supporting this claim recount the efforts of the plaintiffs

to obtain a demolition permit and the revocation of the previously issued alteration permit.

Judge Brieant, to whom this case was originally assigned, granted in part and denied in part defendants' motion for summary judgment. He found that the revocation of plaintiffs' alteration permit without a hearing stated a due process claim. But Judge Brieant further found that the doctrine of res judicata barred relitigation of the issues related to the denial of a demolition permit because the State Supreme Court had upheld the DOB determination on the merits.

After Judge Brieant's decisions of June 24, 1985 and October 31, 1985, familiarity with which is assumed, plaintiffs proceeded with discovery. But despite the opportunity and the issuance by this Court of an order, dated November 26, 1985, scheduling depositions, plaintiffs have taken only one deposition during the past sixteen months. Plaintiffs now seek to amend their complaint for a second time in order to allege a new theory of conspiracy and to add additional defendants.

The essential difference between plaintiffs' proposed Second Amended Complaint and the First Amended Complaint is that plaintiffs have added a conspiracy claim. That conspiracy claim is based on a formal public policy of the City of New York which attempts to prohibit a reduction in SRO housing. See New York Times, Oct. 1, 1986, at 26, col.1. The conspiracy alleged is the formulation of this official policy and the acts in furtherance thereof are the effectuation of this policy by City officials.

17. In or about the Summer of 1981 the City of New York, acting through the Mayor's SRO Office, DOB, DCP, HPD, and the Office of Corporation Counsel, including defendants and other municipal officials who make policies for the foregoing, established an unconstitutional official policy known as the 'tenant protection plan' to protect single room occupancy tenants.

18. To carry out this policy, the defendants and other municipal officials who make policies for the Mayor's SRO office, DOB, DCP, HPD and the Office of Corporation Counsel, conspired to prevent plaintiffs and other owners of property in the City of New York that contained single room occupancy ('SRO') housing from lawfully using or developing their property in any manner that would interfere with the possession of tenants or reduce the availability of such housing, and in furtherance of this conspiracy made other unconstitutional official policies as described herein.

**\*3** (Second Amended Complaint ¶¶17–18). The factual allegations supporting this cause of action detail City officials implementing this official policy by performing various acts within the scope of their responsibility, such as inspecting buildings, denying permits, and issuing orders.

Specifically, plaintiffs' motion before this court seeks to:
(i) serve a second amended complaint:

(a) to allege the existence of a conspiracy by municipal officials and employees to deprive plaintiffs of their constitutional rights;

(b) to allege the formulation and implementation of unconstitutional official policies by municipal officials and employees to prevent plaintiffs from using or developing their property in order to protect single room occupancy tenants;

(c) to eliminate any request for injunctive relief compelling the City defendants to immediately vacate the buildings and permit demolition of same;

(ii) add as defendants the City of New York and two additional attorneys with the Office of Corporation Counsel;

(iii) drop the tenants as defendants and discontinue the action as to them;

(iv) correct the misspellings of two defendants' names from 'Silver' to 'Silvers' and 'Haggarty' to 'Haggerty', and

(v) disqualify Corporation Counsel from continuing its representation of the City defendants.

For the following reasons plaintiffs' motion is granted as to parts (i)(b) (which we treat as the taking claim) and (c), (ii) as to the City of New York only, (iii) and (iv). The motion is denied as to parts (i)(a), (ii) as to attorneys Taussig and Mohr only, and (v). A second separate motion involving discovery will be addressed in part IV of this opinion.

## I.

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND

[1] Plaintiffs' motion for leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure which expressly

provides that leave 'shall be freely given when justice so requires.' In this Circuit, 'if the plaintiff has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party.' S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

Among the grounds upon which defendants oppose plaintiffs' motion to amend is that plaintiffs do not have 'colorable grounds' for relief. In interpreting the 'colorable grounds' requirement the courts have used an analysis comparable to that required by a Fed. R. Civ. P. 12(b)(6) motion to dismiss. CBS, Inc. v. Ahern, 108 F.R.D. 14, 18 (S.D.N.Y. 1985). See Silberblatt v. East Harlem Pilot Block, 608 F.2d at 42; Valdan Sportswear v. Montgomery Ward & Co., 591 F.Supp. 1188, 1190 (S.D.N.Y. 1984). In this Circuit to dismiss a complaint for failure to state a claim upon which relief can be granted a court must accept plaintiff's allegations at face value, Heit v. Weitzen, 402 F.2d 909, 913 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969), must construe the allegations in the complaint in plaintiff's favor, Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and must dismiss the complaint only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). See generally Wade v. Johnson Controls, Inc., 693 F.2d 19 (2d Cir. 1982).

**\*4** Rapf v. Suffolk County of New York, 755 F.2d 282, 290 (2d Cir. 1985). Following this standard we have accepted, for the purposes of this motion, all of plaintiffs' allegations as true and have drawn all reasonable inferences in favor of the plaintiffs. We now apply the standards just discussed to each of the claims in plaintiffs' proposed amended complaint attacked by defendants as legally insufficient.

Count I: The Conspiracy Claim

[2–6] The case law with respect to pleading conspiracy charges under §§ 1983 and 1985 of Title 42 of the United States Code is well developed in this Circuit.[4] Those cases require that a civil rights complaint must contain more than conclusory, vague or general allegations. See, e.g., Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981); Koch v. Yunich, 533 F.2d 80, 85 (2d Cir. 1976); Fine v. City of New York, 529 F.2d 70 (2d Cir. 1975). In order to prove the

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

element of combination the plaintiffs must show that the conspirators "had a meeting of the minds' and thus reached an understanding to achieve the conspiracy's objectives.' Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979), rev'd on other grounds, 446 U.S. 1301, 100 S.Ct. 1987, 64 L.Ed.2d 670, reh. den., 448 U.S. 913, 101 S.Ct. 33, 65 L.Ed.2d 1176 (1980) (citing Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The complaint, therefore, must allege facts which would lead to a reasonable inference that the parties in fact agreed to the illegal course of action. Morpurgo v. Board of Higher Education, 423 F.Supp. 704, 711 (S.D.N.Y. 1976). Although the plaintiffs need not provide direct evidence of conspiracy, they must allege that the 'acts [complained of] were reasonably related to the claimed conspiracy,' Seneca Constitutional Rights Organization v. George, 348 F.Supp. 51, 57 (W.D.N.Y. 1972), and that the actions of the defendant caused the unconstitutional deprivation. DiGiovanni v. City of Philadelphia, 531 F.Supp. 141 (E.D.Pa. 1982).

[7] Moreover, to survive a motion to dismiss, the complaint must also include some specific allegations of fact indicating a deprivation of civil rights. Plaintiffs may not merely allege an act which is not wrongful on its face and assert that the act was done in bad faith and for an ulterior motive. Landesman v. City of New York, 501 F.Supp. 837, 839 (E.D.N.Y. 1980). To illustrate, in Landesman, Mayor Koch was accused of conspiring to deprive plaintiff of his civil rights by causing plaintiff's false arrest. The complaint, however, alleged only that the mayor publicly denounced the underlying criminal event and initiated an investigation of the matter. Granting the motion to dismiss, the court there held that the complaint was based on pure surmise that the purpose of the mayor's action was for an ulterior motive. Id. at 841. Similarly, plaintiffs' complaint in the instant action merely alleges that defendants carried out their lawful duties with improper motives.

[8] As noted, the alleged conspiracy is the enactment of an official policy of the City of New York to maintain the current level of SRO housing and the acts alleged to be in furtherance of the conspiracy are those of City employees implementing this policy. For example, plaintiffs allege that defendants Silvers, Aguirre, DeCanio and Dennis, all employees of the DOB, inspected the building, issued housing code violations, refused in 1982 to issue a vacate order and then did so in 1983. (Proposed Second Amended Complaint ¶¶34, 35, 40, 41, 43 and 45). While plaintiffs quarrel with the substance of defendants' decisions, they do not allege that they acted outside the scope of their employment.

*5 [9] Plaintiffs' allegations against the supervisory level defendants are equally lacking: defendant Esnard, Commissioner of the DOB, is accused of attempting to enforce correction of the housing code violations (Id. at ¶¶ 54–58); [5] Fruchtman, former Commissioner of the DOB is accused of receiving a letter from plaintiffs explaining that 406 was unsafe (Id. at ¶33); Sturz, Director of City Planning, is accused of having made a determination that 406 was outside of the preservation area and then later reversing himself (Id. at ¶¶48–49); Sokal, Director of the Clinton Neighborhood Preservation District, is accused of advising the DOB of Sturz's determination (Id. at ¶59); Spektor [6] and Haggerty, Director and Assistant Director of the Mayor's SRO Office, are accused of informing the DOB that plaintiffs were convicted of criminal harassment and recommending revocation of the alteration permit (Id. at ¶¶60–61); and, Minkin, First Deputy Commissioner of the DOB, is accused of revoking that permit (Id. at ¶¶62–64). All of these allegations, taken as true, describe acts well within the scope of these officials' responsibilities.

The allegations against Glen, and proposed defendants Mohr and Taussig, all attorneys in the office of the Corporation Counsel, are limited to an assertion that each consulted with various municipal officials about revoking plaintiffs' alteration permit. (Id. at ¶65). No specific allegation is made that any of these attorneys suggested, counseled or advocated violation of plaintiffs' constitutional rights.

Similarly, defendant Valletta, counsel to the Board of Standards and Appeals, is alleged to have 'refused' to let plaintiffs file an application with the Board to review the revocation of their alteration permit (Id. at ¶73). Presumably it is Munoz' legal advice to the Board which is being challenged, but, in any event, the Board's decision was upheld in state court as not being arbitrary or capricious. And, likewise, defendant Weinberger, Records Access Officer of the DOB, and defendant Munoz, General Counsel to the DOB and Records Appeal Officer, are alleged to have arbitrarily and capriciously denied plaintiffs' Freedom of Information Act request. (Id. at ¶¶76–77). Once again, plaintiffs had a right, which they exercised, to challenge this administrative decision in court. Apparently, the case was settled. Memorandum and Order, dated June 24, 1985, at 10.

In sum, the allegations against all the defendants describe actions taken by them within the scope of their official duties. Plaintiffs' attempt to color those actions with conclusory ulterior motives is simply insufficient to convert them to an

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 10 of 26

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

actionable claim. The Second Circuit has specifically held that

> certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule of Conley v. Gibson, 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80] (1957), detailed fact pleading is required to withstand a motion to dismiss. A claim of a conspiracy to violate civil rights is a clear example. Fine v. New York, 529 F.2d 70, 73 (2d Cir. 1975); Powell v. Workmen's Compensation Board, 327 F.2d 131, 133 (2d Cir. 1964). Nor have we permitted litigants to precipitate hearings into the motives of law enforcement agencies simply on an allegation that the motive was improper.

*6 Angola v. Civiletti, 666 F.2d at 4. See also Harlow v. Fitzgerald, 457 U.S. 800, 816–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982) ('bare allegations of malice should not suffice to subject government officials either to the costs of trial or the burdens of broad-reaching discovery.')

For the reasons just discussed, plaintiffs' motion for leave to amend to assert a conspiracy claim is denied. However, plaintiffs may plead as predicate facts the establishment by the City of official policies to deal with SRO housing.

As to the remaining named defendants not discussed in this section, we assume that these are the tenant defendants and find no cause of action stated against any of them. Finding no claim stated against them, and agreement among the parties that they should be dismissed, plaintiffs' motion to amend and drop the following tenants should be granted: Joseph Thomas, Charles Karoly, Daniel Haskell, Michael Tsitiris, Ali Murtaza, Lascelle Wright, Duane Wood, Dennis Neville, Herman Greenberg, Patrick Cooney, Manual Tenorio, Peter Kazins, John Hirschauer, Matilda Dugan, Willie Shepard, John L. Sotos, Antonio Reyes, Olga Shanahan, Anthony Carpentier, Paul Charlton, Judith Finkelstein, Colisuem Vacuum Cleaner & Service Company, Inc., Damus, Inc., Frank Hernandez and Kathy Hernandez.

Count II: The 'Taking' and Due Process Claim

Apart from the conspiracy claim just discussed, the remainder of plaintiffs' complaint alleges a combination of due process violations and a taking of plaintiffs' property without just compensation based upon the granting and subsequent revocation of the alteration permit and related actions by the City. Since the due process allegations in the Second Amended Complaint are similar to those sustained by Judge Brieant's earlier decisions, the City has only challenged plaintiffs' 'taking' claim.

[10] Plaintiffs assert that their property was taken without just compensation by actions of the defendants which 'prevented plaintiffs from using or developing their property in any manner that would interfere with the possession of tenants or reduce the availability of SRO Housing.' (Second Amended Complaint ¶47). The defendants object to this claim as not being ripe since plaintiffs failed to secure a final determination from the City as to what could be done with the property. [7] See Kohlasch v. New York State Thruway Authority, 460 F.Supp. 956, 960 (S.D.N.Y. 1978).

We are of the opinion that for the purpose of this motion plaintiffs have sufficiently exhausted all reasonable means of securing the necessary permits to repair their buildings. Judge Brieant's June 24, 1985 opinion and the complaint provide ample support for this conclusion. It will be recalled that plaintiffs brought an action in state court to compel the City to issue the alteration permit and that plaintiffs prevailed at the trial level. This order was later reversed by the Appellate Division for want of jurisdiction because plaintiffs had not exhausted their administrative remedies. Thereafter, upon applying to the proper administrative authorities plaintiffs' application for review was denied as untimely. While plaintiffs may well have been permitted to commence additional administrative and court proceedings, in the context of a motion for leave to amend, plaintiffs' taking claim is ripe for decision. We also find, based on Judge Brieant's earlier decisions, that the plaintiffs have alleged the three necessary elements of a 'taking' claim: '(1) a property interest (2) that has been taken under the color of state law (3) without due process or just compensation.' Port Chester Yacht Club, Inc. v. Iasillo, 614 F.Supp. 318, 321 (S.D.N.Y. 1985); Kohlasch, 460 F.Supp. at 960.

*7 [11] As noted earlier, Judge Brieant held that plaintiffs' demolition claim could not be relitigated in federal court. Thus, defendants object to the plaintiffs repleading a cause

Case 1:20-cv-00292-JPW  Document 366-2  Filed 01/12/24  Page 11 of 26

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

of action for the rejection of a demolition permit for 400 and 404. The Weissmans assert a right to replead because Judge Brieant referred only to 406 in his dismissal of the demolition claim. We reject the contention that in referring to 406 Judge Brieant was limiting his decision. In this connection, we are counselled by Judge Friendly's opinion in Fogel v. Chestnutt, 668 F.2d 100, 108 (2d Cir. 1981), cert. denied, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982), that law of the case 'applies as well to everything decided by necessary implication.'

Thus, we read 406 as a shorthand for the entire structure especially since Judge Brieant noted that there was some question as to whether the structure was one building or three. See Opinion, dated June 24, 1985. Judge Brieant's October 31, 1985 opinion clearly holds that no relief, constitutional or otherwise, may be sought for failure to issue a demolition permit. Judge Brieant's opinion is the law of the case and should be followed. [8] Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); Zdanok v. Glidden Company, Dur kee Famous Foods Division, 327 F.2d 944, 953 (2d Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

Additional Defendants

[12] We turn now to that aspect of plaintiffs' motion seeking to add as defendants Gabriel Taussig and Larraine Mohr, attorneys with the Corporation Counsel's office during the relevant time period, and the City of New York. If the complaint as amended fails to state a cause of action against the proposed defendants, leave to amend need not be given. State Teachers Retirement Board v. Fluor Corporation, 654 F.2d 843, 855 (2d Cir. 1981).

[13] In order to state a cause of action against Taussig or Mohr the plaintiffs 'must demonstrate some 'affirmative link' between the misconduct complained of' and the actions of the proposed defendants. DiGiovanni v. City of Philadelphia, 531 F.Supp. at 144–45; see Rizzo v. Goode, 423 U.S. 362, 375–77, 96 S.Ct. 598, 606–07, 46 L.Ed.2d 561 (1976). Plaintiffs have failed to do so.

The Second Amended Complaint only mentions defendants Taussig and Mohr twice: once to identify them in paragraphs 15(b) and (c), respectively, and again in paragraph 65, which we quote:

> In furtherance of the conspiracy herein, defendants Glen, Taussig and Mohr

consulted with defendants Sturz, Minkin, Fruchtman and the Mayor's SRO Office about revoking plaintiffs' alteration permit prior to its revocation.

Accepting the factual allegations as true, they amount to nothing more than city attorneys consulting with their statutorily authoritized clients about actions of those agencies within their statutory authority. See New York City Charter § 394(a) ('the corporation counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested.') Thus, we find the allegations against Taussig and Mohr totally insufficient to support a claim and we, therefore, deny the motion to amend as to these proposed defendants.

*8  This Court does find, however, the allegations against the proposed defendant, City of New York, sufficient to state a cause of action. The complaint against the original defendants, all city officials, involves actions within the scope of their employment for the benefit of the City. The City does not seriously contest this point. Rather, the City asserts that its addition as a defendant is barred by the statute of limitations and that the plaintiffs' claim is not preserved by relation back to the original complaint. They further argue that if the one year statute of limitations applies [9] the plaintiffs' original claim is time barred and thus any claim relating back is likewise time barred.

The interrelationship between the statute of limitations and relation back issues may be structured analytically as follows:
—If the claim against the City does not relate back, the plaintiffs' claim is time barred under either the one year or three year statute of limitations.

—If the claim against the City does relate back and the applicable statute of limitations is three years the plaintiffs' claim is not time barred.

—If the claim against the City does relate back and the applicable statute of limitations is one year and is retroactively applied, the plaintiffs' claim is time barred.

—If the claim against the City does relate back and the applicable statute of limitations is one year and is not retroactively applied, the plaintiffs' claim is not time barred.

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 12 of 26

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

Because of the pivotal significance of the relation back question, we discuss it first.

[14] The doctrine of relation back is governed by Fed. R. Civ. P. 15(c), which provides in relevant part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

See Morrison v. LeFevre, 592 F.Supp. 1052, 1057 (S.D.N.Y. 1984); Sounds Express International Limited v. American Themes and Tapes, Inc., 101 F.R.D. 694, 696 (S.D.N.Y. 1984). Rule 15(c) covers both a change or addition in parties. State Teachers Retirement Board v. Fluor Corporation, 500 F.Supp. 278, 187 (S.D.N.Y. 1980), aff'd in relevant part, 654 F.2d 843 (2d Cir. 1981).

Without the conspiracy claims, which we have found insufficient, the plaintiffs' Second Amended Complaint is essentially the same as the First Amended Complaint and the original Complaint. The one exception is that it adds a new legal theory of a taking without just compensation, a theory which we have found legally sufficient and which does not expand the scope of the litigation. Thus, it is clear to this Court that 'the claim . . . asserted in the [second] amended pleading arose out of the conduct . . . set forth . . . in the original pleading.' Rule 15(c); Holdridge v. Heyer-

Schulte Corporation of Santa Barbara, 440 F.Supp. 1088, 1093 (N.D.N.Y. 1977).

**\*9** Since the Second Amended Complaint arises from the same facts alleged in the First Amended Complaint, the plaintiffs must next show that the City received notice of the institution of the action so that it will not be prejudiced in maintaining its defense on the merits. Morrison, 592 F.Supp. at 1057; Holdridge, 440 F.Supp. at 1093 ('The major consideration in deciding whether an amendment relates back is whether adequate notice is given to the opposing party . . ..'). Given that the Corporation Counsel, which represents the City, its agencies and its officials, knew of this lawsuit since its commencement and continuously provided representation to the other defendants, there can be no doubt that the City has had adequate notice and will be put to no extra expense, discovery or loss of substantive rights if it is added as a defendant. Strauss v. Douglas Aircraft, 404 F.2d 1152 (2d Cir. 1968). Finding no prejudice or surprise caused by adding the City of New York as a defendant, we find that the claim relates back to the original filing. [10] See Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380, 385 (2d Cir. 1968) ('if a meritorious claim is offered, and there will be little resultant prejudice to defendant, plaintiff is normally entitled to a hearing on the merits').

[15] The question of whether a three year statute of limitations, pursuant to C.P.L.R. § 214(5), or a one year statute of limitations, pursuant to C.P.L.R. § 215(3), is appropriate in a 42 U.S.C. § 1983 action is currently before the Second Circuit in Okure v. Owen, No. 86–7343 (2d Cir. filed May 6, 1986). Since the Second Circuit's decision will bind this court, it would not be appropriate or productive for us to decide this issue independently. Cf. United States of America v. Salerno and Cafaro, 794 F.2d 64 (2d Cir. 1986) (staying mandate until the Supreme Court decides a similar case previously appealed). If the Second Circuit determines that a three year statute of limitations is applicable, the plaintiffs' claim would not be time barred. Alternatively, if the Second Circuit chooses the one year limitations period, we would need to address the issue of whether it should be retroactively applied. We therefore assume for discussion a one year limitation, realizing that the Second Circuit's selection of a three year limitations period would moot the following discussion although it would not change our conclusion.

The Supreme Court has set forth factors which must be considered in determining whether a new rule of law should be applied retroactively.

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe v. United Shoe Machinery Corp., supra [392 U.S. 481], at 496 [88 S.Ct. 2224, at 2233, 20 L.Ed.2d 1231 (1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, supra [393 U.S. 544], at 572 [87 S.Ct. 817, at 835, 22 L.Ed.2d 1 (1969)]. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Linkletter v. Walker, supra [381 U.S. 618], at 629 [85 S.Ct. 1731, at 1738, 14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.' Cipriano v. City of Houma, supra [395 U.S. 701], at 706 [89 S.Ct. 1897, at 1900, 23 L.Ed.2d 647 (1969).

**\*10** Chevron Oil Co. v. Huson, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

The Court in Chevron Oil refused to apply retroactively a decision rendered after the plaintiff filed suit which, inter alia, changed the limitation period in which to bring suit from a laches doctrine to a fixed state statute of limitations. The Supreme Court reasoned:

> It would also produce the most 'substantial inequitable results,' to hold that the respondent 'slept on his rights' at a time when he could not have known the time limitation that the law imposed upon him.

Id. at 108, 92 S.Ct. at 356 (citation omitted).

In Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that § 1983 actions are personal injury actions to which the appropriate state statute of limitations should apply. It is clear that prior to Wilson

the statute of limitations in New York for actions brought under 42 U.S.C. § 1983 was three years, the limitation period applicable to actions created by statute. Pauk v. Board of Trustees, 654 F.2d 856, 866 (2d Cir. 1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). The plaintiff had no way of foreseeing a change in the law when he filed his complaint prior to the Wilson decision. Even after Wilson, if the district courts were a barometer of what could be foreseen as a result of Wilson, the three year period would still be appropriate. See, e.g., Saunders v. State of New York, 629 F.Supp. 1067 (N.D.N.Y. 1986); Testa v. Gallagher, 621 F.Supp. 476 (S.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653 (E.D.N.Y. 1985); Ladson v. New York City Police Dept., 614 F.Supp. 878 (S.D.N.Y. 1985); Snell v. Suffolk County, 611 F.Supp. 521 (E.D.N.Y. 1985), aff'd, 782 F.2d 1094 (2d Cir. 1986). Therefore, applying the Chevron factors, any decision applying a one year statute of limitations would be a clear break in precedent. [11]

The Chevron factors lead us to conclude that a decision to utilize a one year statute should not be applied retroactively. Our decision not to apply retroactively a one year statute of limitations is supported by Nell v. Waring, Cv. 79–0177, slip op. at 9 (E.D.N.Y. June 11, 1986) (Sifton, J.). As one of the only courts to hold the one year statute of limitations applicable, Judge Sifton raised sua sponte the issue of retroactive application. Applying the Chevron Oil analysis he found that the purpose of Wilson would not be furthered by dismissing § 1983 actions which were 'brought by plaintiffs acting under the reasonable good faith understanding that the statute of limitations for § 1983 in New York is three years.' Nell, slip op. at 10.

Having previously concluded that the plaintiffs' claim relates back to the original date of filing, we find that whether a three year or a one year statute of limitations period is decided upon by the Second Circuit, the claim against the City should not be time barred. [12] Therefore, the motion for leave to amend the complaint to add the City as a defendant is granted.

## II.

## PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**\*11** Plaintiffs move to disqualify the Corporation Counsel pursuant to Disciplinary Rule ('DR') 5–102(A) and (B) of the Code of Professional Responsibility, which governs when a

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 14 of 26

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

lawyer must withdraw as counsel because he will be a witness in the case. [13]

[16, 17] Both parties agree, and we concur, that Bottaro v. Hatton Associates, 680 F.2d 895 (2d Cir. 1982), requires a restrained approach in deciding this motion.

> This Court has adopted 'a restrained approach,' Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir. 1980), which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case. Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979); McAlpin, 625 F.2d at 444–446.

Id. at 896. Indeed, DR 5–102 is not to be literally applied in each instance, rather its application depends on the attending facts of each case and lies within the sound discretion of the trial court. See Freschi v. Grand Coal Venture, 564 F.Supp. 414, 417 (S.D.N.Y. 1983); Ross v. Great Atlantic & Pacific Tea Co., 447 F.Supp. 406, 409 (S.D.N.Y. 1978); see also International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1293 (2d Cir. 1975). Moreover, the moving party bears the heavy burden of showing that the continued representation would violate the Code of Professional Responsibility. Evans v. Artek Systems Corporation, 715 F.2d 788, 794 (2d Cir. 1983); MacArthur v. Bank of New York, 524 F.Supp. 1205, 1209 (S.D.N.Y. 1981).

[18] The threshold question is whether any member of the Office of the Corporation Counsel 'ought be called as a witness.' Whether that lawyer actually testifies is not controlling. J.P. Foley & Co., Inc. v. Vanderbilt, 523 F.2d 1357, 1359 (2d Cir. 1975); MacArthur, 524 F.Supp. at 1208. We note at the outset that one of the three attorneys mentioned in the plaintiffs' Second Amended Complaint has not been affiliated with the Corporation Counsel's office since September, 1983, and, thus, does not implicate the rule. Accordingly, we turn to the other named members of the Corporation Counsel, Glen and Taussig.

[19] Whether Glen or Taussig 'ought to be called as a witness' for their clients is governed by the following test: 'whether the attorney's testimony could be significantly useful to his client; if so, he ought to be called.' MacArthur v. Bank of New York, 524 F.Supp. 1205, 1208 (S.D.N.Y. 1981).

The allegations, which we have already found to be legally deficient, against Glen and Taussig involve consultations with various city officials. Therefore, defendants can obtain all the necessary testimony from those officials without having to call the attorneys as witnesses. While in some cases corroborative witnesses or cumulative testimony might be necessary, plaintiffs have not carried their burden of establishing that this is such a situation.

This rule, of course, requires a careful evaluation of the relevant issues in the case and of other available testimony. An additional corroborative witness would almost always be of some use to a party, but might nevertheless be essentially cumulative. At some point, the utility of additional corroboration is de minimus and does not require the attorney's disqualification. EC 5–10 ('It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue.')

**\*12** MacArthur, 524 F.Supp. 1208–09.

[20] Plaintiffs also seek disqualification of the Corporation Counsel under DR5–102(B) claiming that one or more of these attorneys will be called as witnesses for the plaintiffs. Motions made pursuant to DR 5–102(B) have been subjected to particularly strict judicial scrutiny to prevent an attorney from disqualifying his adversary merely by calling him to the witness stand. See Rice v. Baron, 456 F.Supp. 1361, 1370 (S.D.N.Y. 1978); see also Kroungold v. Triester, 521 F.2d 763, 766 (3d Cir. 1975). For testimony to be prejudicial within the meaning of the disciplinary rule, the 'projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.' Rice, 456 F.Supp. at 1371 (quoting Freeman v. Kulicke & Soffa Industries, Inc., 449 F.Supp. 974, 977 (E.D.Pa. 1978), aff'd, 591 F.2d 1334 (3d Cir. 1979)).

[21] In the instant case, plaintiffs have not met their burden of demonstrating prejudice. The only proffer made on this point is found on page 18 of plaintiffs' supporting brief.

> Since Corporation Counsel's staff members were intimately involved in

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 15 of 26

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

> formulating and implementing the policy for which plaintiff seeks redress, they ought to be and will be called by plaintiffs as witnesses at trial, they either will be able to confirm or to disavow the existence of the conspiracy.

Because plaintiffs have failed to state a claim for conspiracy, any need 'to confirm or to disavow the existence of the conspiracy' is obviated. [14]

[22] Finally, plaintiffs have argued at great length that the Corporation Counsel's 'duplicitous behavior' demands disqualification. In deciding this point, we are not unaware of judicial perception of a trend of using motions to disqualify counsel as a litigation strategy. See Allegaert v. Perot, 565 F.2d 246, 251 (2d Cir. 1977); J.P. Foley & Co. v. Vanderbilt, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J. concurring). Judicial concern is particularly acute where counsel is employed by the government and disqualification would substantially increase the cost of litigation. See Rubino v. City of Mount Vernon, et al., No. 82 Civ. 3101, slip op. at 4–5 (S.D.N.Y. April 25, 1984) (Sweet, J.) [Available on WESTLAW, DCTU database], aff'd on rehearing, slip op. (S.D.N.Y. June 18, 1984). We are also mindful of this Circuit's refusal to disqualify an entire government law department on the ground of one attorney's potential conflict. [15] Matter of Grand Jury Subpoena of Jean Ford v. United States, 756 F.2d 249, 254 (2d Cir. 1985).

As factual support plaintiffs cite the Corporation Counsel's office taking a litigation position in a related state case in contrast to that which was advocated in a letter to State Senator Manfred Ohrenstein. We find this argument neither well-founded nor relevant. First, it is neither uncommon nor improper to have a public attorney assert contrasting views as to what the law is in a litigation context as opposed to what the law ought to be in a legislative context. Second, the relevant inquiry on a disqualification motion, is one of fairness, i.e., if these attorneys testify, will the trial be 'tainted,' W.T. Grant Company v. Haines, 531 F.2d 671, 677 (2d Cir. 1976); Rubino, slip op. at 5, and can the litigation be conducted in fairness to all with all parties properly represented. Freschi v. Grand Coal Venture, 564 F.Supp. 414, 417 (S.D.N.Y. 1983); Rubino, slip op. at 5; Wolk v. Wolk, 70 Misc. 2d 620, 333 N.Y.S.2d 942 (N.Y. Sup. Ct. 1972). On the facts presented, we have concluded that a fair untainted trial can be held

and, therefore, disqualification of the Corporation Counsel is not appropriate. See Committee on Ethics and Professional Responsibility of the American Bar Association, Formal Opinion No. 339 (Jan. 31, 1975); Ross v. Great Atlantic & Pacific Tea Co., Inc., 447 F.Supp. 406, 409 (S.D.N.Y. 1978). See also International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1293 (2d Cir. 1975).

III.

## PLAINTIFFS' MOTION TO DROP TENANT DEFENDANTS AND CLAIM FOR INJUNCTIVE RELIEF

**\*13** The remaining issues in the original motion are not in controversy and therefore will not be dealt with in depth. Plaintiffs' motion to drop the tenants as defendants and to eliminate any request for injunctive relief is granted. See Morgan v. McDonough, 726 F.2d 11, 14–15 (1st Cir. 1984). Likewise, plaintiffs' motion to correct the spelling of two of the defendants' names is granted: 'Silver' to 'Silvers' and 'Haggarty' to 'Haggerty.'

IV.

## PLAINTIFFS' DISCOVERY MOTIONS

Plaintiffs have filed an additional motion with this court seeking to compel certain discovery, appoint a Special Master and assess the costs of this motion against defendants. [16] We address these issues seriatim.

Document Production

The plaintiffs seek to compel the production of 46 documents withheld or redacted by the defendants. The defendants assert governmental privilege as to 44 of these documents, attorney-client privilege as to 14 of the documents (including one not claimed to be within the governmental privilege), and privilege under Rule 408 of the Federal Rules of Evidence as to one document. The defendants have provided this Court with all 46 documents for in camera review. We discuss here the law applicable to defendants' privilege claims. In this connection, we note that defendants need only prevail on a single claim of privilege for each document.

Predecisional Privilege

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

[23] The predecisional privilege is a subcategory of the governmental privilege. Mobil Oil Corporation v. Department of Energy, 102 F.R.D. 1, 4–5 (N.D.N.Y. 1983). This privilege 'protects from disclosure those agency documents which reflect 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'' Id. at 5 (citations omitted).

The purpose of this privilege is to create an atmosphere in which governmental officials can hold frank and open discussions in reaching decisions without fearing public disclosure of the process.

> Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed. Accordingly, the lower courts have uniformly drawn a distinction between predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not.

N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151–52, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975) [citations and footnotes omitted].

*14 The most detailed discussion to date of the procedure to invoke the predecisional privilege is found in Mobil Oil Corp.

v. Department of Energy, 102 F.R.D. 1 (N.D.N.Y. 1983). That court held that

To support its privilege claim, an agency must establish that '1) the materials were part of a deliberative process by which policies or decisions are formulated . . ., and 2) that the materials were truly of a predecisional, or advisory or recommendatory nature, or expressed an opinion on a legal or policy matter, or otherwise were reflective of a deliberative process.'

Id. at 5 [citations omitted].

Moreover, the claim of privilege must be made in a very specific manner.

> First, the claim of the privilege must be lodged by the head of the agency which has control over the matter, after personal consideration of the allegedly privileged nature of the information. This power to claim the privilege may be delegated by the head of the agency, but only to a subordinate with high authority . . .. The second procedural requirement is that a claim of privilege must specifically designate and describe the information that is purportedly privileged. And third, the agency must provide 'precise and certain' reasons for preserving the confidentiality of the requested information.

Mobil Oil Corp. v. Department of Energy, 520 F.Supp. 414, 416 (N.D.N.Y. 1981), rev'd on other grounds, 659 F.2d 150 (TECA), cert. denied, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) [citations omitted].

[24] Despite plaintiffs' strong protest, we hold that the defendants have properly invoked this privilege. Affidavits were submitted by the head of each agency claiming the privilege. [17] While each of these affidavits is very similar in nature, that does not change the facts sworn to under oath, which include the affirmation of personal knowledge and familiarity with the withheld documents. We also reject plaintiffs' claim that these affidavits were filed untimely because they were not furnished before the motion to compel

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

Case 1:20-cv-00292-JPW Document 366-2 Filed 01/12/24 Page 17 of 26

was made. See Fed. R. Civ. P. 37(a). Finally, any arguable substantive deficiency is eliminated by the submission of the documents for in camera review. See Mobil Oil, 102 F.R.D. at 7.

In fact, our in camera inspection of each of the documents for which defendants have claimed deliberative privilege confirmed our initial determination, made without the benefit of such a review, that the protection of the deliberative privilege has been properly invoked. Indeed, the withheld documents fall well within the most traditional parameters of governmental privilege.

Attorney-Client Privilege

The rules governing attorney-client privilege are summed up in Judge Friendly's oft cited opinion in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961). The privilege attaches:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived . . ..

**\*15** Id. at 921; In re Grand Jury Subpoena Duces Tecum (Marc Rich), 731 F.2d 1032, 1036 (2d Cir. 1984); United States v. Bein, 728 F.2d 107, 112 (2d Cir. 1984),cert. denied, 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984).

[25] Applying these standards, we find the defendants have properly invoked the attorney-client privilege. The relationship between the Corporation Counsel and the City agencies is that of attorney-client. See New York City Charter § 394(a); Smith v. City of New York, 611 F.Supp. 1080, 1084 (S.D.N.Y. 1985). An in camera review of the documents in question reveals communications between City agencies and the Corporation Counsel's office seeking legal advice on pending legislation. The challenge that these communications were not made in confidence is pure surmise. In any event, communication of legal advice between City agencies would not waive the privilege. See Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir. 1985).

Having found that both the predecisional privilege and the attorney-client privilege have been properly raised, we now must decide whether defendants have waived those privileges or whether the documents come within any recognized exception to those privileges.

[26] First, plaintiffs assert that defendants have impliedly waived any applicable privilege by having pled the affirmative defense of good faith. In support of their implied waiver argument, plaintiff cites Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), where the court held that the assertion of an affirmative defense of good faith immunity constituted an implied waiver of the attorney-client privilege. In arriving at that conclusion the Hearn court relied on the Supreme Court's definition of good faith in Wood v. Stickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The test of good faith enunciated in Wood v. Strickland included subjective and objective elements. Subsequently, however, the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), reacting to the proliferation and burdens of suits against governmental officials, replaced the subjective/objective test of Wood v. Strickland with an essentially objective test.

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

Id. at 818, 102 S.Ct. at 2738.

Thus, utilizing the Harlow v. Fitzgerald definition of good faith, subjective intent or knowledge is not relevant to the assertion of a good faith immunity defense. Therefore, its assertion does not constitute an implied waiver of the attorney-client privilege.[18]

[27] Plaintiffs also rely on the crime or fraud exception to the attorney-client privilege asserting that the exception extends to intentional torts as well.[19] Having decided that the plaintiffs failed to state a claim for civil conspiracy, we reject outright their claim that a prima facie criminal conspiracy has

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 18 of 26

1986 WL 15669

been established. And since fraud has not been alleged, we address the only possible exception, that of intentional tort.

**\*16** The genesis of the assertion that there is a tort exception to the attorney-client privilege for torts is the oft quoted case of United States v. United Shoe Machinery Corporation, 89 F.Supp. 357 (D.Mass. 1950). In setting out the elements of the attorney-client privilege the Court added 'and not (d) for the purpose of committing a crime or tort . . ..' Id. at 358. While courts in many jurisdictions have quoted this passage, most of those courts, as the United Shoe court itself, did not have before them an issue of a tort exception. In short, the references to a tort exception were dicta.

It is clear, however, that the Second Circuit has not added torts to the crime or fraud exception. Only recently the Second Circuit had the occasion to review the crime or fraud exception and formulated it as follows:

> It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.

In re Grand Jury Subpoena (Marc Rich & Co.), 731 F.2d 1032, 1038 (2d Cir. 1984) and cases cited therein; United States v. Bob, 106 F.2d 37, 40 (2d Cir. 1939), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939).

Further evidence of judicial unwillingness to extend the crime or fraud exception to torts may be found in the rejection, by the Advisory Committee to the Federal Rules of Evidence, of the Uniform Rule of Evidence 26(2)(a) which included 'tort' in the formulation of its crime or fraud exception to the attorney-client privilege. 2 J. Weinstein, Evidence ¶503(d) (1)[01] (1982). [20] The Advisory Committee's report only excludes from the ambit of the attorney-client privilege advice 'sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud . . ..' 56 F.R.D. at 236.

The plaintiffs find support in two opinions by Judge Sand specifically extending the privilege exception to intentional

torts. Diamond v. Stratton, 95 F.R.D. 503, 505 (S.D.N.Y. 1982) and Irving Trust Co. v. Gomez, 100 F.R.D. 273 (S.D.N.Y. 1983). It is clear from Judge Sand's opinions that he was extending existing law. See e.g., Diamond, 95 F.R.D. at 505. We express no opinion as to the propriety of extending the crime or fraud exception to torts as we are bound by the Second Circuit's decision in Marc Rich which post-dated Judge Sand's innovative analysis.

[28] Finally, even were this court to accept the proposition that intentional torts should be added to the crime or fraud exceptions to the attorney-client privilege, we would nonetheless find that plaintiffs have failed to meet their burdens in overcoming the privilege. Apart from showing probable cause to believe that a crime or fraud [or tort] had been committed, the party attempting to defeat the privilege must show that 'the communications were in furtherance thereof' and 'that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud. . . .' In re Grand Jury Subpoena (Marc Rich & Co.), 731 F.2d at 1039.

**\*17** The plaintiffs have not provided a proffer of how the documents relate to the alleged tort. While plaintiffs often mention that Judge Brieant's opinion denying, in part, defendants' motion for summary judgment establishes plaintiffs' prima facie case, a proposition with which we have no disagreement, what plaintiffs have failed to do is make a prima facie showing that the documents which they seek somehow furthered the alleged due process violations.

> The attorney-client privilege is withdrawn upon a prima facie showing that the lawyer's advice was designed to serve his client in commission of a fraud or crime. United State v. Bob, 106 F.2d 37, 40, 125 A.L.R. 502 (2d Cir. 1939), cert. denied 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939).

Union Camp Corporation v. Lewis, 385 F.2d 143, 144 (4th Cir. 1967).

As the Second Circuit noted in United States v. Bob, 106 F.2d at 40, 'There must, of course, be first established a prima facie case; the mere assertion of an intended crime or fraud is not enough to release the attorney.' See also

Case 1:20-cv-00292-JPW Document 366-2 Filed 01/12/24 Page 19 of 26
Weissman v. Fruchtman, Not Reported in F.Supp. (1986)
1986 WL 15669

Coleman v. American Broadcasting Companies, Inc., 106 F.R.D. 201, 203 (D.C.D.C. 1985) ('In order to defeat this important privilege, more is necessary than mere allegations of wrongdoing on the part of the attorney or naming the attorneys as defendants in the litigation.') More recently, in In re Grand Jury Subpoena (Marc Rich & Co.), 731 F.2d at 1038–39, the Second Circuit took care to distinguish between those documents giving legal advice used in the business and those giving legal advice used in the fraudulent activity. Only that advice which actually furthered the ongoing fraud was exempted from the protection of the attorney-client privilege. Finally, our in camera inspection of the documents confirms our conclusion, reached without the benefit of such a viewing, that there is no basis to overturn the assertion of the attorney-client privilege claim.

Although we find that the attorney-client and governmental privilege have been properly asserted, we address plaintiffs' assertion that the policy considerations behind 42 U.S.C. § 1983 override those privileges. While we agree with the plaintiffs that § 1983 has an important federal purpose, we cannot agree that it trumps all claims of privilege. See, e.g., Ghandi v. Police Department of City of Detroit, 747 F.2d 338 (6th Cir. 1984) (balancing informant's qualified privilege over civil rights claimant); Black v. Sheraton Corporation of America, 564 F.2d 550 (D.C. Cir. 1977) (same).

[29] We recognize that the governmental privilege is qualified, not absolute. Skibo v. City of New York, 109 F.R.D. 58, 63 (E.D.N.Y. 1985); Mobil Oil, 102 F.R.D. at 5. Thus, the Court must balance the competing interests of full disclosure with the rationale underlying the privilege. In re Franklin National Bank Securities Litigation, 478 F.Supp. 577, 582 (E.D.N.Y. 1979). Chief Judge Weinstein articulated a five part test.

> In this balancing of competing interests, some of the factors that assume significance are (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

**\*18** In re Franklin National Bank Securities Litigation, 478 F.Supp. at 583 [citations omitted].

Applying Judge Weinstein's balancing test we find parts three (the seriousness of the issues) and four (the role of the government) favor the plaintiffs.

> The Congressional policy in favor of broad enforcement of the civil rights laws supports complete discovery when their violation is alleged. Similarly, when the case involves colorable claims of official misconduct the Courts are reluctant to permit officials to withhold relevant material by claiming privilege.

Kinoy v. Mitchell, 67 F.R.D. 1, 12 (S.D.N.Y. 1975) [footnotes omitted]. In addition, the government body claiming the privilege is the very body accused of violating the plaintiffs' rights. See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 329 (D.D.C. 1966), aff'd on op. below, 384 F.2d 979 (D.C. Cir.), cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

Counterbalancing these factors is the fundamental rationale for the governmental privilege, which would clearly be served by upholding the privilege given the specific nature of the documents withheld, and parts one and two of the balancing test which strike decidedly against disclosure.

It is obvious that the more relevant the documents are to the issues in the case, the greater the reason for disclosure. In re Franklin National Bank, 478 F.Supp. at 586 ('The information in the reports is relevant to numerous issues in the litigation; the litigant's claim of need is concrete, not abstract'). Here, however, no proffer of relevancy has been made and an in camera inspection shows no specific relevancy to the matter at bar. See United States v. Harley, 682 F.2d 1018, 1020 (D.C.Cir. 1982). As previously explained, this case is very straight forward. The plaintiffs either received due process or not, and either there was a taking or not. The communications between the Corporation Counsel and the various City agencies do not change the process which plaintiffs were due or the process they received. Similarly, if there was a property interest taken without just compensation, the communications would remain irrelevant. Where the denial of access to

1986 WL 15669

documents 'would not significantly deprive them of relevant evidence . . . the argument for disclosure is not compelling.' In re Franklin National Bank, 478 F.Supp. at 588.

Weighing equally against disclosure is the availability of other evidence. In each case where production has been ordered the evidence was not otherwise available. See, e.g., Kinoy, 67 F.R.D. at 12 ('In this case plaintiffs have made the strongest possible showing of need for the documents requested.'); In re Franklin National Bank, 478 F.Supp. at 586 ('This factor is powerful in a situation like that presented here, where no satisfactory alternative source of information exists.'). Plaintiffs have shown neither a need, nor an unavailability of alternative sources. Plaintiffs' showing on this prong might have been stronger had they conducted extensive discovery. However, despite urging from this Court, plaintiff has taken only one deposition. In these circumstances, we will not breach a recognized privilege in order to compensate for plaintiffs' lack of diligence in discovery.

*19 In sum, we find that the defendants have properly invoked the attorney-client and governmental privileges, and that these privileges have neither been waived nor is any exception been found applicable. We therefore deny plaintiffs' motion to compel production of the 45 documents as to which attorney-client and/or governmental privilege was asserted.

Settlement Document

[30] Plaintiffs have moved to compel production of a settlement agreement entered into between the City and the new owners of the property involved in this litigation. [21] Defendants have resisted production on the ground that this settlement document is privileged under Rule 408 of the Federal Rules of Evidence. [22]

In advancing their claim of privilege defendants rely on affidavits from the signatories to the settlement agreement which state that the maintenance of confidentiality was an integral part of their agreement. The intention of the parties to the agreement, even if reflected in a confidentiality clause (which was not included here), is not controlling. Magnaleasing, Inc. v. Staten Island Mall, 76 F.R.D. 559, 562 (S.D.N.Y. 1977). We note, moreover, that defendants' reliance on affidavits is compelled by the parties' failure to take the appropriate and surer measure of requesting the court to seal the settlement agreement. See Palmieri v. State of New York, 779 F.2d 861 (2d Cir. 1985).

In any event, defendants' reliance on Fed. R. Evid. 408 as a privilege to prevent disclosure is equally unavailing. This evidence rule limits a document's relevance at trial; not its disclosure during discovery. [23] NAACP Legal Defense and Educational Fund, Inc. v. Department of Justice, 612 F.Supp. 1143, 1146 (D.D.C. 1985); Center for Auto Safety v. Department of Justice, 576 F.Supp. 739, 749 (D.D.C. 1983).

Rule 408, which is designed to encourage frank and open discussions in order to encourage settlements rather than protracted litigation, accomplishes its purpose in a limited fashion.

> The protection afforded by Rule 408 is far less broad that the [defendant] asserts. While its intent is to foster settlement negotiations, the sole means chosen to effectuate that end is a limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial, not the application of a broad discovery privilege. Otherwise parties would be unable to discover compromise offers which could be offered for a relevant purpose, i.e., proving bias or prejudice of a witness, opposing a claim of undue delay, proving an effort to obstruct a criminal investigation or prosecution, or enforcing a settlement agreement.

Center For Auto Safety, 576 F.Supp. at 749. See also Olin Corporation v. Insurance Company of North America, 603 F.Supp. 445, 449 (S.D.N.Y. 1985); J. Weinstein and M. Berger, 2 Weinstein's Evidence, ¶408[01] (1982).

[31] Nevertheless, our rejection of defendants' claim of privilege under Rule 408 does not end the inquiry. In order to compel production the plaintiffs must show that the material they seek to discover comes within the scope of discovery allowed by Rule 26(b) of the Federal Rules of Civil Procedure, i.e., plaintiffs must show that the settlement agreement sought will be admissible or lead to admissible evidence. Bottaro v. Hatton Associates, 96 F.R.D. 158, 159 (E.D.N.Y. 1982). Plaintiffs have failed to make such a showing.

**\*20** **[32]** Plaintiffs assert that they seek the settlement agreement 'to determine whether [plaintiffs] have been treated discriminatorily compared to the treatment afforded by [sic] the new owners of the property.' (Plaintiffs' brief at 40). With such a stated purpose, the settlement agreement would not be admissible at trial, since its introduction would violate Rule 408 as it would be utilized to prove liability. Nor have the plaintiffs articulated any reasonable connection between the settlement agreement entered into in 1986 and the events of 1982 which could lead to evidence admissible in this action. Finally, plaintiffs suggest in their reply brief that 'the Settlement Agreement can be used to impeach witnesses called to the stand by the defendants.' (Plaintiffs' Reply at 29). No further explanation is provided of how or to whom plaintiffs refer. Such broad, unsubstantiated allegations are not sufficient to enable plaintiffs to come within the permissible uses of settlement agreements accorded by Rule 408. See Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 486 F.Supp. 414, 423 n.10 (S.D.N.Y. 1980).

In sum, we believe that the policy considerations behind Fed. R. Evid. 408 require the type of relevance analysis we have just undertaken when settlement documents are sought in discovery. In this connection we find Judge Neaher's characterization of this process instructive.

> The question in this case, however, is whether an inquisitor should get discovery into the terms of the agreement itself based solely on the hope that it will somehow lead to admissible evidence on the question of damages. Given the strong public policy of favoring settlements and the congressional intent to further that policy by insulating the bargaining table from unnecessary intrusions, we think the better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement. Since the terms of settlement do not appear to be reasonably calculated to lead to discovery of admissible evidence and the defendants have not made any showing to the contrary, this justification for a Rule 37 order must fail.

Bottaro, 96 F.R.D. at 160.

Accordingly, having concluded that plaintiffs have made no showing that discovery of the settlement agreement is admissible or will lead to admissible evidence, we find that the settlement agreement is outside the scope of discovery and therefore deny the motion to compel.

Deposition Questions

Plaintiffs have moved to compel defendant Irving E. Minkin to answer questions that his counsel directed him not to answer during his deposition and for an order directing Minkin to answer questions regarding demolition. In response to a request from chambers, plaintiff's counsel selected certain examples of questions and answers and categorized them by the nature of the objection. We have read each question and objection submitted under cover of counsel's letter of October 23, 1986. Having done so, we make the following observations and rulings.

**\*21** First, while these transcripts do not necessarily represent the nadir of deposition decorum, they certainly do not approach the level of civilized, courteous professionalism which this and every court can properly expect from counsel. See Manual on Discovery, United States District Court, Eastern District of New York (including Standing Orders of the Court on Effective Discovery in Civil Cases), 1984. It is hoped that future depositions will be conducted in a cooperative and courteous spirit and that counsel will recognize, at a minimum, that it is in their and their client's self-interest to have meaningful and rapid discovery, which is not sidetracked by colloquy and improper questioning.

Second, plaintiffs have contended that the City's assertion of the attorney-client privilege was improper because there was no attorney-client relationship between Mr. Minkin and the Corporation Counsel. We reject that argument for the reasons stated in our discussion earlier on the attorney-client privilege. Supra at 4___–4___.

[33] Third, we have reviewed the other cited examples of directions to the witness not to answer and regretably find them well-founded. While as a general rule witnesses ought not to be directed not to answer questions on grounds other than privilege, see Order dated December 18, 1985, we cannot say that there are not some occasions when a defending attorney is left with no truly viable alternaive. Unfortunately, some of those occasions occurred here. We cite two examples:

1986 WL 15669

'Mr. Minkin, do you feel oppressed?' (p. 122) and 'What are you telling me, plan examiners are idiots; they approved the first one and made a mistake on the other one?' (p. 722).

Finally, plaintiffs' requested a direction that Minkin answer questions about the demolition issue. Try as they might, plaintiffs have not persuaded us that they seek to inquire about an issue other than the one which may not be relitigated in federal court because of the doctrine of <u>res judicata</u>.

Accordingly, plaintiffs' motion to compel is denied in its entirety.

Additional Depositions

[34] Plaintiffs seek an order compelling the depositions of certain 'senior official' defendants, Fruchtman, Esnard and Sturz, and members of the Corporation Counsel's office. The subject of the depositions of senior City officials has already been addressed in a Memorandum and Order, dated September 12, 1985, and on a motion for reconsideration, which was denied on November 13, 1985. In relevant part, the September 12, 1985 order read:

> The depositions of numerous City employees and officials which have not been objected to should commence. The conduct of this discovery may obviate the need for the objected to discovery of senior City officials and counsel as well as the need for tenant discovery. During the depositions of the City employees, plaintiffs should pose questions concerning the involvement of senior officials and the terms of tenant relocation. In addition to possibly reducing the need for additional depositions, those questions should create a record upon which the City's objections may be resolved more intelligently. Thus, a ruling on the objections posed by the City to the depositions of senior officials and counsel, except as otherwise noted below, is reserved at this time.

**\*22** While we find it somewhat unusual that plaintiffs should renew this request again after having taken only a single deposition, we nevertheless have reviewed plaintiffs' presentation, including the deposition transcript references, and have concluded that plaintiffs have adequately supported their request for the deposition of Sturz, since he was directly involved in the decision to revoke the alteration permit. With respect to all the other depositions sought, plaintiffs have failed to show at this stage the involvement of the desired deponent with a viable cause of action and/or the absence of an attorney-client privilege barrier.

Appointment of a Special Master

[35] For a second time plaintiffs have moved this Court to appoint a Special Master to supervise discovery. Plaintiffs complain that during the five days of Irving Minkin's deposition defense counsel made 116 speaking objections, 55 directions not to answer, had 15 discussions with the witness after the question and had 8 discussions with the witness before the answer. The inability of counsel to resolve routine discovery disputes amongst themselves has already required this Court to enter an order, dated December 18, 1985, establishing behavior rules to be followed at depositions in this case. [24] Nevertheless, as the discussion below sets out, the appointment of a special master is a most unusual remedy and wholly inappropriate here.

A court may appoint a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure. This reference is limited by subsection (b). 'A reference to a master shall be the exception and not the rule . . .. [A] reference shall be made only upon the showing that some exceptional condition requires it.' <u>See generally</u> 5A <u>Moore's Federal Practice</u> ¶53.05.

The plaintiffs cite only one case in either their moving or reply brief to support their request. That case, In re Agent Orange Product Liability Litigation, 97 F.R.D. 427 (E.D.N.Y. 1983), is readily distinguishable from the one at bar. The <u>Agent Orange</u> litigation concerned some four million documents and thousands of claims of privilege. The instant action pales in comparison.

The Supreme Court has held that neither calendar considerations, complexity of issues, nor the possibility of long trials are exceptional conditions warranting a Special Master. LaBuy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). The circuit courts have interpreted this rule as 'sharply limiting' the use of Special Masters. Liptak v. United States, 748 F.2d 1254, 1257 (8th Cir. 1984). See Jack Walters & Sons Corp. v. Morton

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

Case 1:20-cv-00292-JPW Document 366-2 Filed 01/12/24 Page 23 of 26

Building, Inc., 737 F.2d 698, 712 (7th Cir. 1984), cert. denied, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). Indeed, only recently the Second Circuit admonished District Courts against using Special Masters to avoid performance of judicial duty. Madrigal Audio Laboratories, Inc. v. Cello, Ltd., 799 F.2d 814, 230 U.S.P.Q. 764, 766 n.2 (2d Cir. 1986).

*23 Having found no special circumstances in this case, we therefore deny the plaintiffs request to appoint a Special Master.

Request For Attorney's Fees

[36] Having rejected plaintiffs' challenges to defendants' privilege assertions, their motion to compel Minkin to answer deposition questions, and only having partially granted their request for additional depositions, we find no basis for an award of attorney's fees. We therefore deny plaintiffs' request.

1    Whether this structure is one building or more than one building has been an issue in dispute throughout this proceeding. See Judge Brieant's June 24, 1985 opinion. In fact, plaintiffs allege that the three buildings were originally built as one. Amended Complaint, ¶24. We use the term building for the entire structure in dispute and discuss this issue in more depth infra.

2    For a more detailed discussion of the procedural history of this case see the two earlier opinions of Judge Brieant, dated June 24, 1985 and October 31, 1985.

3    Weissman v. City of New York, No. 14180/82 (N.Y. Sup.Ct.), rev'd, 96 A.D.2d 454, 464 N.Y.S. 2d 764 (1st Dep't), appeal dismissed, 60 N.Y.2d 815, 469 N.Y.S. 2d 700, 457 N.E. 2d 807 (1983) ('Weissman I').

4    A civil conspiracy is a combination of two or more persons to do an unlawful act by unlawful means or for an unlawful purpose.' Powell v. Kopman, 511 F.Supp. 700 (S.D.N.Y. 1981). Section 1985 explicitly requires that a conspiracy be between 'two or more persons.' This Court recognizes that a municipality is a person for purposes of 42 U.S.C. §§ 1983 and 1985, Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); Heimbach v. Village of Lyons, 597 F.2d 344, 346 (2d Cir. 1979), but we do question whether a second person has been alleged in this conspiracy. 'It is the law

of this Circuit that that requirement is not met where a conspiracy is alleged to have occurred among a corporation and its directors, 'all of whom acted solely within their official capacities.'' Legal Aid Society v. Association of Legal Aid Attorneys of the City of New York, 554 F.Supp. 758, 766 (S.D.N.Y. 1982). The same rule has been applied when the conspiracy was alleged to have been perpetrated by a law school, its trustees and members of its faculty, Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978), or a union and its officials. Gilliard v. New York Public Library, 597 F.Supp. 1069, 1075 (S.D.N.Y. 1984). Similarly, plaintiffs here have alleged only acts by city employees within their official capacity. While not deciding the matter on this basis, this court is hard pressed to find more than one 'person' involved in this alleged conspiracy.

5    Curiously, the allegations against Esnard include the following: 'On January 30, 1986, a corporation owned by the plaintiffs was sentenced in the Criminal Court of the City of New York to pay a fine of $20,000 because of the violations, and such fine has been paid.' (Proposed Amended Complaint, ¶49).

6    The allegations against Ms. Specktor appear in the Amended Complaint, but are absent from the proposed Second Amended Complaint.

7    As a separate ground for their opposition, defendants correctly point out that whether state and local governments must pay damages to a landowner who claims a temporary 'taking' by regulation is an open question. Given the open status of the legal issue raised, we decline to deny the motion to amend on this ground, since the defendants have not established that under no circumstances could relief be awarded. McLain v. Real Estate Board of New Orleans, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Nor do we find any prejudice to the defendants from plaintiffs pleading this new legal theory as it does not change the scope of discovery nor concern any additional facts.

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

Case 1:20-cv-00292-JPW Document 366-2 Filed 01/12/24 Page 24 of 26

1986 WL 15669

8     We have been furnished with plaintiffs' motion before Judge Leisure seeking reconsideration of the dismissal of plaintiffs' claim for damages based upon the denial of the demolition permit. In their motion plaintiffs rely exclusively on Davidson v. Capuano, 792 F.2d 275 (2d Cir. 1986), a case which we believe to be readily distinguishable from the case at bar. In Davidson, the Second Circuit held that a successful plaintiff in a state Article 78 proceeding where damages are not available should not be barred from seeking damages in federal court in a § 1983 action. We find Finkelstein and its progeny to create three classes of potential federal plaintiffs. The first are those who were successful in their Article 78 proceeding and are entitled to bring a damage action in federal court. See, e.g., Giano v. Flood, 803 F.2d 769 (2d Cir. 1986); Davidson, 792 F.2d at 275; Catten v. Coughlin, 644 F.Supp. 1228 (S.D.N.Y. 1986) (Duffy, J.). The second category of potential plaintiffs are those who lost their Article 78 proceeding on procedural grounds. Having never had an opportunity to have their claim judged on the merits, under traditional res judicata principles, these plaintiffs still have a right to bring an action in federal court. J. Moore, 1B Moore's Federal Practice, ¶0.409 (2d ed. 1984). See, e.g., Fay v. South Colonie Central School District, 802 F.2d 21 (2d Cir. 1986); Leonardi v. Board of Fire Commissioners of Mastic Beach Fire District, 643 F.Supp. 610 (E.D.N.Y. 1986); Lundy v. Coughlin, No. 85 Civ. 5945, slip op. (S.D.N.Y. June 25, 1986) (Sand, J.) [Available on WESTLAW, DCTU database]. The third category of potential plaintiffs, and the one applicable to the instant matter, are those who have lost their Article 78 proceeding on the merits. Here the traditional policies of res judicata apply as well, see J. Moore, 1B Moore's Federal Practice ¶0.409 (2d ed. 1984), and remain unaffected by the Davidson doctrine. We see no suggestion in Davidson that having been unsuccessful on the merits in state court, a plaintiff is entitled to a second bite at the apple in federal court. Of course, should Judge Leisure disagree, we will adjust this opinion accordingly.

9     The issue of the statute of limitation for 42 U.S.C. § 1983 actions is now before the Second Circuit in Okure v. Owens, 625 F.Supp. 1568 (N.D.N.Y. 1986), appeal docketed, No. 86–7343

(2d Cir. May 6, 1986). We note plaintiffs' counsel's failure to include the pending appeal in their citation, contrary to the obligation imposed by ethical responsibility of giving all subsequent history of a cited case including a pending appeal. Model Code of Professional Responsibility EC 7–23 (1979). We also note that that there were numerous errors in citations (including case names, subsequent history, volume and page numbers and jurisdictions) in the memoranda of both parties which obviously imposed an unwarranted burden on the Court.

10     Query whether the City is not required to be joined as the real party in interest under Fed. R. Civ. P. 17(a) since any judgment under the 'taking' claim would be payable by the City? See Unilever (Raw Materials) Ltd. v. M/T Stolt Boel, 77 F.R.D. 384, 388 (S.D.N.Y. 1977).

11     The circuits are split as to whether the statute of limitations should be applied retroactively. Compare Gibson v. United States, 781 F.2d 1334 (9th Cir. 1986); Jackson v. City of Bloomfield, 731 F.2d 652 (10th Cir. 1984), applying Wilson prospectively only with Wycoff v. Menke, 773 F.2d 983, 986 (8th Cir. 1985), cert. denied, 3en U.S. 4en, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986); Fitzgerald v. Larson, 769 F.2d 160, 163 (3rd Cir. 1985); Smith v. City of Pittsburgh, 764 F.2d 188, 1985 (3d Cir.), cert. denied, 3en U.S. 4en, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) applying Wilson retroactively.

12     We realize that the Second Circuit, in Okure, may address the issue of retroactivity of the statute of limitations. Obviously, if the Second Circuit decides the retroactivity question differently than we have, a motion for reconsideration could be made.

13     13 DR 5–102 reads as follows:
Withdrawal as Counsel When a Lawyer Becomes a Witness
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 25 of 26

1986 WL 15669

trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

14    It is also possible that Taussig's or Mohr's testimony would be privileged. However, that possibility is not the basis of our decision.

15    The defendants assert that 'where it is not the trial counsel, but another attorney in a large government office whose testimony is allegedly likely to be necessary, the possibility that counsel will have to argue his own credibility to the jury, one of the traditional concerns underlying the rule, does not arise.' Defendants' Brief at 41. We agree, but remain perplexed by the listing of Gabriel Taussig, a proposed defendant and potential witness, as lead counsel for the defendants. See also Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 151–52 (2d Cir. 1985) (approving a 'Chinese Wall' to insulate counsel).

16    Plaintiffs' motion reads in full:
A. pursuant to Fed. R. Civ. P. 37(a):
(i) compelling the City defendants to produce documents requested by plaintiffs that the City defendants have withheld and redacted based on:
(a) the supposed applicability of the predecisional privilege and/or the attorney-client privilege;
(b) the supposed applicability of Rule 408 of the Federal Rules of Evidence;
(c) the requests supposedly being overly broad or vague;
(ii) compelling defendant Irving E. Minkin to answer questions posed during his deposition that Corporation Counsel directed him not to answer, and to answer questions regarding demolition;
(iii) compelling certain of the defendants who are 'senior officials' and attorneys to appear for deposition;

(iv) directing the City defendants to pay to plaintiffs the reasonable expenses, including attorneys fees, incurred by plaintiffs on this motion;
(v) granting plaintiffs such other, further or different relief as seems just and proper to the Court.
B. pursuant to Fed. R. Civ. P. 53(a) appointing a Special Master to supervise all examinations before trial and all other aspects of pre-trial discovery.

17    Specifically, affidavits were submitted by: Charles M. Smith, Commissioner of the Department of Buildings; Alan H. Kleinman, Acting Director of the Mayor's Office of Single Room Occupancy Housing; Paul A. Crotty, Commissioner of the Housing Preservation Department and Robert Esnard, Deputy Mayor for Physical Development.

18    We note that the few courts which have adopted the implied waiver of the attorney-client privilege doctrine have agreed that it is to be narrowly applied. Hearn v. Rhay, 68 F.R.D. at 582; Connell v. Bernstein-Macaulay, Inc., 407 F.Supp. 420, 423 (S.D.N.Y. 1976).

19    For a more complete discussion see Silbert, Crime Fraud Exception, 23 Am. Crim. L. Rev. 351, 354–55 (1986).

20    Uniform Rule of Evidence 26(a) provides:
the 'privilege shall not extend (a) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the client to commit or plan to commit a crime or a tort.'
Reprinted in 2 J. Weinstein, Evidence ¶503(d)(1) [01] n.9 (1982).

21    On January 6 1986, the plaintiffs sold the property located at 400–404, 406 West 57th Street to a group headed by Toa Construction and Rikya Yamagata. As part of this sale, the plaintiffs assigned any and all rights in their pending litigation in Weissman v. City of New York, Index No. 08019/83. Thereafter, the City and the new owners entered into a written agreement settling the assigned action.

22    Rule 408 of the Federal Rules of Evidence provides:

Case 1:20-cv-00292-JPW   Document 366-2   Filed 01/12/24   Page 26 of 26

Weissman v. Fruchtman, Not Reported in F.Supp. (1986)

1986 WL 15669

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

23   The legislative and judicial reluctance to extend the 'settlement privilege' doctrine of Rule 408 to the discovery phase of a litigation is understandable. First, since the 'settlement privilege' was not a privilege recognized at common law, the usual parallel between privilege law for discovery and evidentiary purposes is not controlling. Oliver v. Committee for Re-Election of the President, 66 F.R.D. 553 (D.D.C. 1975). Second, there would appear to be little need for such an extension. In most cases, statements made for, or in the course of, settlement negotiations have been communicated to the adversary and need not be 'discovered.' For non-communicated settlement statements or documents, the attorney-client and work product privileges would often supply sufficient protection.

24   We note that this motion has not been premised, as indeed it could not have been, on judicial unavailability.

**All Citations**

Not Reported in F.Supp., 1986 WL 15669

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.