# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Docket No. 1:20-cv-00292 |
| | : | |
| ECKERT SEAMANS CHERIN & | : | |
| MELLOTT, LLC, MARK S. STEWART, | : | (Judge Jennifer P. Wilson) |
| and KEVIN M. SKJOLDAL, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' BRIEF IN SUPPORT OF APPEAL
## FROM AND OBJECTION TO DECEMBER 1, 2023 ORDER
## AND MEMORANDUM ISSUED BY MAGISTRATE JUDGE SAPORITO

ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
NATHAN HUDDELL, ESQUIRE (No. 321472)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2766/2854 (telephone)
(215) 299-2150 (facsimile)
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
nhuddell@foxrothschild.com

*Counsel for Defendants Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal*

Date:  January 12, 2024

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................iv

I.    INTRODUCTION .................................................................... 1

II.   PROCEDURAL HISTORY OF THE CASE ............................... 2

III.  STATEMENT OF FACTS ...................................................... 4

IV.  STATEMENT OF QUESTIONS INVOLVED .......................... 4

V.   LEGAL ARGUMENT ............................................................ 5

     A.    Rule 72(a) Requires the Court to Review and Set Aside the Portions of the Order that Are Clearly Erroneous or Contrary to Law. ............................................ 5

     B.    The Attorney-Client Privilege Is Sacrosanct and May Extend to Inter-Attorney Communications, Such an Intra-Firm Memoranda, and Draft Memoranda Prepared for Disclosure to Third Parties. ............................................ 6

     C.    The Order Is Clearly Erroneous and Contrary to Law Because It Assumes that "Legislative" Advice Never Can Fall Within the Scope of the Attorney-Client Privilege. ........................ 9

     D.    The Order Is Clearly Erroneous and Contrary to Law Because It Repeatedly Misapplies the Standards for Determining Whether an Inter-Attorney Legal Memorandum Is Privileged. ................... 12

     E.    The Order Is Clearly Erroneous and Contrary to Law Because It Misapplies the Standard for Determining Whether the Requisite Confidentiality Exists. ............................. 14

     F.    PRIV-00949 Is Protected from Disclosure by the Attorney-Client Privilege. ...................................... 16

     G.    The Fourth, Fifth, and Sixth Paragraphs of PRIV-00366 Are Protected from Disclosure by the Attorney-Client Privilege. ...... 19

**H.**    **PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 Are Protected from Disclosure by the Attorney-Client Privilege.** ...... 20

**VI.**  **CONCLUSION** ............................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arcelik A.S. v. E.I. DuPont de Nemours & Co.*,
  856 F. App'x 392 (3d Cir. 2021) .......................................................................5

*Bro-Tech Corp. v. Thermax, Inc.*,
  No. CIV. 05-CV-2330, 2008 WL 724627 (E.D. Pa. Mar. 17, 2008) .............6, 12

*Cedrone v. Unity Sav. Ass'n*,
  103 F.R.D. 423 (E.D. Pa. 1984).........................................................6, 8, 17, 19

*Chore-Time Equip., Inc. v. Big Dutchman, Inc.*,
  255 F. Supp. 1020 (W.D. Mich. 1966) .................................................................6

*Harrington v. Freedom of Info. Comm'n*,
  323 Conn. 1 (2016) ........................................................................................8, 11

*Karoly v. Mancuso*,
  619 Pa. 486 (2013) ...........................................................................................18

*In re Lindsey*,
  148 F.3d 1100 (D.C. Cir. 1998) .........................................................................10

*Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*,
  No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023) ...................................6

*Republican Party of N. Carolina v. Martin*,
  136 F.R.D. 421 (E.D.N.C. 1991) .......................................................................10

*In re Rutter's Data Sec. Breach Litig.*,
  No. 1:20-CV-382, 2021 WL 3733137 (M.D. Pa. July 22, 2021)...................8, 13

*SmithKline Beecham Corp. v. Apotex Corp.*,
  232 F.R.D. 467 (E.D. Pa. 2005)...............................................................7, 18, 19

*U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*,
  809 F. Supp. 355 (M.D. Pa. 1992)......................................................................20

*In re U.S. Healthcare, Inc. Sec. Litig.*,
  Master File No. 88–0559, 1989 WL 11068, 1989 U.S. Dist. LEXIS
  1043 (E.D. Pa. Feb. 7, 1989) ...........................................................7, 13, 15, 21

*Vacco v. Harrah's Operating Co.*,
  No. CIV. A 1:07-CV-0663, 2008 WL 4793719 (N.D.N.Y. Oct. 29,
  2008) ...................................................................................................................8

*Van Every v. Ambrozyak*,
  No. 797 MDA 2017, 2018 WL 1886724 (Pa. Super. Ct. Apr. 20,
  2018) .................................................................................................................17

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*,
  580 F.2d 1311 (7th Cir. 1978) .........................................................................11

*Wojdak v. First W. Gov't Sec., Inc.*,
  No. CIV.A. 83-1076, 1991 WL 160249 (E.D. Pa. Aug. 16, 1991) ...............7, 13

**Rules**

Fed R. Civ. P. 26(b)(3)(A)(ii) ..................................................................................22

Fed. R. Civ. P. 72 .................................................................................................1, 5

Fed. R. Evid. 501 ......................................................................................................6

Local Rule 72.2 .........................................................................................................1

**Other Authorities**

24 Charles Alan Wright & Arthur R. Miller, Fed. Prac. &
  Proc. Evid. § 5495 (1st ed.)......................................................................17, 19

Graham Moomaw, *Outlook for skill games darkens as Va. House
  panel votes for ban*, Virginia Mercury (Jan. 28, 2020, 8:20 PM),
  https://www.virginiamercury.com/2020/01/28/outlook-for-skill-
  games-darkens-as-va-house-panel-votes-for-ban/.............................................12

Paul R. Rice, 1 Attorney-Client Privilege in the U.S. ........................11, 15, 21

*All unpublished decisions are attached to the Brief as Exhibit 1.

Pursuant to Federal Rule of Civil Procedure 72 and Rule 72.2 of the Local Rules of this Court, Defendants, Eckert Seamans Cherin & Mellott, LLC ("Eckert"), Mark S. Stewart, and Kevin M. Skjoldal (collectively, "Defendants"), by and through their counsel, Fox Rothschild LLP, hereby file this brief in support of their appeal from and objection to portions of the non-dispositive Order issued on December 1, 2023 by Magistrate Judge Saporito (ECF No. 354) (the "Order").

## I.    **INTRODUCTION**

The Order directs Defendants to produce all but one of the more than one hundred privileged documents they submitted to the Court for *in camera* review. However, the Order fundamentally misstates and misapplies Pennsylvania privilege law in multiple respects.  First, the Order mistakenly assumes—with no clear basis in Pennsylvania law—that legislative advice of the sort at issue in this case can *never* fall within the scope of the attorney-client privilege.  Yet no Pennsylvania court has ever embraced such a rule, which would be contrary to relevant authority on the issue. Second, the Order repeatedly misunderstands and misapplies the relevant confidentiality standard.  Third, the Order repeatedly misapplies the standards for determining whether inter-attorney legal memoranda are privileged.  Even beyond these systemic failures to identify and apply the proper legal principles, the Order misreads the substance of several of the withheld documents and ignores clear signs supporting Defendants' privilege assertions.  Moreover, and for the second time in this

matter, these unsupportable and inappropriate invasions of the attorney-client privilege come at the expense of a *non-party* privilege holder, notwithstanding the Third Circuit's grave concerns regarding that issue. Because the Order is clearly erroneous and contrary to law in these respects and others, the Court should reverse it.

## II.   **PROCEDURAL HISTORY OF THE CASE**[1]

POM has filed three complaints in this action. (ECF 1, 145, 243). POM's Second Amended Complaint, its most recent, alleges that Defendants "breach[ed a] fiduciary duty" owed to POM, a former client, by "t[aking] up arms ***against*** POM on behalf of another client, Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ('Parx')." ECF 243 at 2.

During discovery, POM propounded on Eckert requests for the production of documents. Memorandum (ECF 353) (the "Memorandum") at 2. In response, Eckert produced thousands of documents and, *inter alia*, a detailed "privilege log describing 1,010 responsive email messages withheld from disclosure" on the basis of the attorney-client privilege and/or the work-product doctrine. *Id*. at 2, 18-19.

On May 25, 2023, POM filed a sealed letter-motion requesting, *inter alia*, *in camera* review of more than 100 of the withheld documents identified on Eckert's privilege log. *Id*. On June 6, 2023, Defendants filed a sealed letter-brief in opposition

---

[1] In the interest of brevity, and because the full procedural history of this case is set forth in the parties' prior submissions to the Court, Defendants recite herein only those portions of the procedural history of this case pertinent to this appeal.

to POM's request.  *Id*.  On June 8, 2023, the Court granted POM's request for *in camera* review and ordered Defendants to submit to chambers copies of the withheld documents at issue.  ECF 300 at 1-2; Memorandum at 2.  Defendants did so.  ECF 305.

The Court thereafter referred to Judge Saporito the dispute regarding the propriety of Eckert's assertions of privilege.  Memorandum at 3; ECF 313.  On December 1, 2023, Judge Saporito issued the Order, which, in relevant part, states as follows:

> 2.    With respect to PRIV-00366 (Control No. 304699), the objection to production on attorney-client privilege grounds is **OVERRULED** . . . this document shall be produced, but with the first three paragraphs (following the salutation "Guys,") redacted.
>
> *        *        *
>
> 5.    With respect to all other documents challenged by POM and submitted for in camera review, the objections to production on attorney-client privilege and federal or state work-product protection grounds are **OVERRULED**—these documents shall be produced without redaction . . . .

Order at 2-3.

Defendants appealed from and objected to those portions of the Order.  ECF 361.  Parx, a non-party, also appealed from and objected to the same portions of the Order.  ECF 362.  Pursuant to an Order entered by Court, the deadline for Defendants' and Parx's submission of briefs in support of their respective objections was extended to January 12, 2024.  ECF 360 at 1.

## III.    <u>STATEMENT OF FACTS</u>

The facts pertinent to the issues on appeal are set forth in the Order; the Memorandum; the unredacted copies of the documents submitted for *in camera* review; and Eckert's Supplemental Privilege Log, which POM filed, under seal, as Exhibit 1 to POM's sealed May 25, 2023 letter motion.  Accordingly, Defendants cite those portions of the record where appropriate herein.

## IV.    <u>STATEMENT OF QUESTIONS INVOLVED</u>

<u>Question 1</u>:  Is the Order clearly erroneous and contrary to law because it assumes that "legislative" advice never can fall within the scope of the attorney-client privilege?

<u>Proposed Answer</u>:  *Yes*.

<u>Question 2</u>:  Is the Order clearly erroneous and contrary to law because it repeatedly misapplies the standards for determining whether an inter-attorney legal memorandum is privileged?

<u>Proposed Answer</u>:  *Yes*.

<u>Question 3</u>:  Is the Order clearly erroneous and contrary to law because it repeatedly misapplies the standards for determining whether the requisite confidentiality exists?

<u>Proposed Answer</u>:  *Yes*.

Question 4:   Is PRIV-00949 protected from disclosure by the attorney-client privilege?

Proposed Answer:  *Yes.*

Question 5: Are the fourth, fifth, and sixth paragraphs of PRIV-00366 protected from disclosure by the attorney-client privilege?

Proposed Answer:  *Yes.*

Question 6: Are PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 protected from disclosure by the attorney-client privilege?

Proposed Answer:  *Yes.*

## V.   **LEGAL ARGUMENT**

### A.   **Rule 72(a) Requires the Court to Review and Set Aside the Portions of the Order that Are Clearly Erroneous or Contrary to Law.**

"Upon objection from a party, the district court must review [a] Magistrate Judge's decision under a 'clearly erroneous or contrary to law' standard when the matter is non-dispositive . . . ." *Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 395 (3d Cir. 2021) (citing 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(a)–(b)).  *See also* FED. R. CIV. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").

District Courts regularly sustain objections made pursuant to Rule 72(a) where the underlying order erroneously compels production of privileged material.

*See, e.g.*, *Bro-Tech Corp. v. Thermax, Inc.*, No. CIV. 05-CV-2330, 2008 WL 724627, at *3 (E.D. Pa. Mar. 17, 2008) ("[T]he Court must overrule as contrary to law that portion of the February 7 Order which compels Thermax to produce to Plaintiffs the entire India and Michigan servers for Plaintiffs' review, without regard for privilege, on Rule 26(a)(2)(B) grounds.").

### B. The Attorney-Client Privilege Is Sacrosanct and May Extend to Inter-Attorney Communications, Such an Intra-Firm Memoranda, <u>and Draft Memoranda Prepared for Disclosure to Third Parties.</u>

"It generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously." *Chore-Time Equip., Inc. v. Big Dutchman, Inc.,* 255 F. Supp. 1020, 1021 (W.D. Mich. 1966). The courts' responsibility to guard the privilege is critical because "[p]arties rely on the privilege as essential to open communications with counsel." *Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC*, No. 22-2445, 2023 WL 7491133, at *4 (3d Cir. Nov. 13, 2023) ("To have [Parx's privilege] denied after the fact . . . gives us serious pause."). Thus, "the general rule in the attorney-client privilege area is that 'all professional communications are sacred.'" *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 427 (E.D. Pa. 1984) (quoting *Moore v. Bray*, 10 Pa. 519, 524 (1849)).

As a matter of Pennsylvania law, which applies in this diversity action pursuant to Federal Rule of Evidence 501, the attorney-client "'privilege also

attaches . . . to *inter-attorney* communications . . . which include legal advice or confidential information received from the client.'" *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005) (emphasis added) (quoting *In re U.S. Healthcare, Inc. Sec. Litig.*, Master File No. 88–0559, 1989 WL 11068, at *1, 1989 U.S. Dist. LEXIS 1043, at *3 (E.D. Pa. Feb. 7, 1989)).

"Furthermore, it is well settled that information shared with an attorney does not lose its confidential status simply because it was shared in the course of preparing a document which was to be disclosed to third persons." *U.S. Healthcare*, 1989 WL 11068, at *2. *See also id.*:

> [T]he attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons. Thus, the only discoverable information is that which is contained in the publicly filed documents. *The attorney-client privilege still attaches to the withheld memoranda, which is comprised of confidential disclosures and legal advice.*

(emphasis added) (internal quotation marks, citations, and footnote omitted). *See also, e.g.*, *Wojdak v. First W. Gov't Sec., Inc.*, No. CIV.A. 83-1076, 1991 WL 160249, at *2 (E.D. Pa. Aug. 16, 1991) ("[P]laintiffs are entitled to obtain copies of the final opinion letter [prepared by outside counsel]. Plaintiffs are not, however, entitled to study the various drafts to determine the mental processes of the attorneys

7

as disclosed by the confidential communications to the client in developing the final version."); *Cedrone*, 103 F.R.D. at 429:

> [I]t is inconceivable that an internal memorandum between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client, could be anything but protected by the privilege. It is likewise inconceivable that oral discussion between those same attorneys for the same reasons and utilizing the same information could be otherwise.

Moreover, "'privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services.'" *In re Rutter's Data Sec. Breach Litig.*, No. 1:20-CV-382, 2021 WL 3733137, at *3–4 (M.D. Pa. July 22, 2021) (quoting *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984)).

Finally, "the fact that an attorney also engages in lobbying does not automatically divest communications between that individual and his or her client of attorney-client protection." *Vacco v. Harrah's Operating Co.*, No. CIV. A 1:07-CV-0663 (TJM/DEP), 2008 WL 4793719, at *7 (N.D.N.Y. Oct. 29, 2008) (citation omitted). The privilege "analysis as it relates to such documents, then, is entirely contextual and depends upon the nature of the services as illuminated by the contents of those communications and other relevant factors shedding light on the parties' relationship." *Id.* (citations omitted). *See also, e.g.*, *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 24 (2016) ("If a lawyer who is also a lobbyist gives advice

8

that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect.") (citation and internal quotation marks omitted).

**C.     The Order Is Clearly Erroneous and Contrary to Law Because It Assumes that "Legislative" Advice Never Can Fall Within the <u>Scope of the Attorney-Client Privilege.</u>**

The Order and Memorandum overrule dozens of Defendants' privilege assertions on the basis that "[t]he subject matter of th[e involved] communication[s] concerns legislative, political, *or* policy advice only—not *legal* advice—and thus . . . is not protected by attorney-client privilege."   Memorandum *passim* (emphasis added).   The Memorandum invokes this rationale as to more than forty categories of withheld documents.   *See id.*[2]

---

[2] Those categories include PRIV-00040, PRIV-00056, PRIV-00057, PRIV-00062, PRIV-00065, PRIV-00066, PRIV-00067, PRIV-00068, PRIV-00069, PRIV-00071, PRIV-00072, PRIV-00074, PRIV-00075, PRIV-00076, PRIV-00077, PRIV-00079, PRIV-00081, PRIV-00084, PRIV-00089, PRIV-00090, PRIV-00092, PRIV-00101, PRIV-00105, PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00175, PRIV-00189, PRIV-00232, PRIV-00262, PRIV-00263, PRIV-00264, PRIV-00265, PRIV-00271, PRIV-00305, PRIV-00308, PRIV-00321, PRIV-00322, PRIV-00323, PRIV-00329, PRIV-00333, PRIV-00334, PRIV-00335, PRIV-00366, PRIV-00493, PRIV-00495, PRIV-00496, PRIV-00497, PRIV-00554, PRIV-00597, PRIV-00614, PRIV-00651, PRIV-00653, PRIV-00654, PRIV-00655, PRIV-00656, PRIV-00657, PRIV-00660, PRIV-00677, PRIV-00679, PRIV-00684, PRIV-00692, PRIV-00701, PRIV-00703, PRIV-00711, PRIV-00722, PRIV-00740, PRIV-00751, PRIV-00760, PRIV-00761, PRIV-00762, PRIV-00763, PRIV-00755, PRIV-00782, PRIV-00783, PRIV-00784, PRIV-00786, PRIV-00787, PRIV-00788, PRIV-00804, PRIV-00806, PRIV-00807, PRIV-00810, PRIV-00816, PRIV-00817, PRIV-00830, PRIV-00832, PRIV-00843, PRIV-00874, PRIV-00881, PRIV-00900, PRIV-00902, PRIV-00911, PRIV-00913, PRIV-00919, PRIV-00935, PRIV-00949, PRIV-00950, PRIV-00958, PRIV-00960,

But Pennsylvania law does not support this proposition, and decisions from other jurisdictions have rejected it, as well. Indeed, Defendants have found no Pennsylvania decision holding that "legislative . . . advice" can never be legal advice within the scope of the attorney-client privilege. The two cases on which the Memorandum appears to rely for this point are inapposite, too. While *In re Lindsey* concluded that an attorney's "advice on political, strategic, or policy issues . . . would not be shielded from disclosure by the attorney-client privilege," 148 F.3d 1100, 1106 (D.C. Cir. 1998), it did not purport to hold that "legislative" advice cannot fall within the privilege. Similarly, while *Republican Party of N. Carolina v. Martin* concluded that "[i]f the communication essentially involves the giving of political advice, then it is not privileged," 136 F.R.D. 421, 426 (E.D.N.C. 1991) (citation omitted), it did not hold that "legislative" analysis or other "legislative" advice cannot fall within the privilege.

In fact, one authoritative treatise describes the state of the law on this question quite differently:

> Legislative services of a general lobbying nature have been recognized as legal advice or assistance in proceedings to disqualify an attorney for conflict of interests with a prior client. The legal nature of the service, however, has not been addressed in the context of the application of the attorney-client privilege to confidential communications involved in the assessment of a client's legislative needs, the interpretation of

---

PRIV-00971, PRIV-00973, PRIV-00987, PRIV-00988, PRIV-00996, PRIV-00998, and PRIV-01008.

existing laws, the assessment of the implications of legislative proposals, or the drafting of alternative proposals.

PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE U.S., § 7:20 (footnote omitted). Indeed, multiple courts have rejected the notion that legislative advice never can fall within the scope of the attorney-client privilege. *See, e.g.*, *id.* (citing, *inter alia*, *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), in which "[t]he work considered legal assistance by the court included preparation for possible testimony[ and] analysis of the probable legal consequences and antitrust considerations of the proposed legislation"); *Harrington*, 323 Conn. at 24 ("If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect.") (citation and internal quotation marks omitted).

Here, as in *Westinghouse*, the relevant attorneys' legislative work included, *inter alia*, "analysis of the probable legal consequences . . . of [certain] proposed legislation," *see, e.g.*, PRIV-0074 (analyzing whether proposed legislation would satisfy particular legal standard), and the "preparation [of] possible testimony" before a legislative body. *E.g.*, PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900. Thus, under the approach followed by the Seventh Circuit in *Westinghouse* and that described by the Supreme Court of Connecticut in *Harrington*, the legislative advice in question here could qualify as legal advice. Yet Judge Saporito

11

overruled dozens of Defendants' privilege assertions on the mistaken premise that such advice can never qualify as legal advice. This is clear error and contrary to the law, and it requires reversal. *See, e.g.*, *Thermax*, 2008 WL 724627, at *3 (E.D. Pa. Mar. 17, 2008). Accordingly, this Court should reverse Judge Saporito's Order.[3]

### D. The Order Is Clearly Erroneous and Contrary to Law Because It Repeatedly Misapplies the Standards for Determining Whether an Inter-Attorney Legal Memorandum Is Privileged.

The Order and Memorandum also overrule several of Defendants' privilege assertions relating to inter-attorney legal memoranda and the emails to which they are attached. *See* Memorandum at 66-67; PRIV-00679, PRIV-00684, PRIV-00685, PRIV-00755. Judge Saporito based those rulings on, *inter alia*, the conclusion that each draft of the memorandum "concerns legislative, political, or policy advice only—not *legal* advice—and thus [is] not protected by the attorney-client privilege," Memorandum at 66-67, and on the conclusion that "the memorandum itself merely summarized pertinent case law without factual application to any client whatsoever." *Id.* at 67 (citations omitted).

---

[3] POM, meanwhile, has invoked *its* attorney-client privilege as the basis for withholding from production multiple communications shared with Tom Lisk, POM's own attorney lobbyist. *See* POM privilege log, attached hereto as Exhibit 2, at 1-2 (listing nine withheld communications sent to or by Mr. Lisk); *see also* Graham Moomaw, *Outlook for skill games darkens as Va. House panel votes for ban*, Virginia Mercury (Jan. 28, 2020, 8:20 PM), https://www.virginiamercury.com/2020/01/28/outlook-for-skill-games-darkens-as-va-house-panel-votes-for-ban/ (quoting "Tom Lisk, a lobbyist representing" POM).

Both conclusions are clearly erroneous.  Rather, all four versions of the memorandum contain *explicit* legal advice and analysis.  *See* PRIV-000679 at 6 (making recommendations with respect to one approach; making predictive and evaluative statement regarding likelihood that particular approach would withstand judicial scrutiny; opining on whether particular approach would comply with law); PRIV-00684 at 2, 6 (same); PRIV-00685 at 2, 6 (same); PRIV-00755 at 2, 6 (same).  Moreover, all four versions of the memorandum make clear that Eckert had been asked—by a client in a specific industry and competitive posture, as the text and context indicate—to perform such an analysis with an eye towards maximizing that client's interests.  *See* PRIV-000679 at 1; PRIV-00684 at 1; PRIV-00685 at 1; PRIV-00755 at 1.  These considerations support Defendants' invocation of the attorney-client privilege with respect to these documents.  *See, e.g.*, *In re Rutter's*, 2021 WL 3733137, at *4 ("For the assistance to be 'legal' in nature, the lawyer must guide future conduct by interpreting and applying legal principles to specific facts.") (citation omitted); *Wojdak*, 1991 WL 160249, at *2 ("[P]laintiffs are entitled to obtain copies of the final opinion letter [prepared by outside counsel]. Plaintiffs are not, however, entitled to study the various drafts to determine the mental processes of the attorneys . . . .").

Nor do confidentiality concerns preclude Defendants' assertion of the attorney-client privilege with respect to these memoranda.  *See, e.g.*, *U.S.*

*Healthcare*, 1989 WL 11068, at *2 ("The attorney-client privilege still attaches to the withheld memoranda . . . .") (internal quotation marks, citations, and footnote omitted).

In short, by concluding that these documents "concern[] legislative, political, or policy advice only," and that they "merely summarize[] pertinent case law without factual application to any client whatsoever," Judge Saporito clearly erred and acted contrary to law.  Accordingly, the Court should reverse the Order.

**E.   The Order Is Clearly Erroneous and Contrary to Law Because It Misapplies the Standard for Determining Whether the Requisite Confidentiality Exists.**

The Order and Memorandum overrule certain of Defendants' privilege assertions relating to attorney-client communications that even the Memorandum admits were "conveyed in confidence."  Memorandum at 89; PRIV-00958, PRIV-00960.   While Judge Saporito conceded that both such communications were "prepared with some client input and conveyed in confidence," he nonetheless concluded that the communications were not protected by the attorney-client privilege because, *inter alia*, "there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney."  Memorandum at 89.

This reasoning is self-evidently backward:   The conclusion that the communications in question lack the requisite confidentiality is belied by Judge

Saporito's own admission that both communications were, in fact, "conveyed in confidence." This alone suffices to show that the rulings with respect to these two documents constitute clear error as a factual matter.

These conclusions also show that Judge Saporito applied the wrong confidentiality standard as a legal matter. In fact, "[t]he attorney-client privilege applies to *all information* conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons." *U.S. Healthcare*, 1989 WL 11068, at *2 (emphasis added) (citation and internal quotation marks omitted). The information conveyed need not be "confidential facts," as Judge Saporito concluded. *See, e.g.*, RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE U.S., § 6:2:

> The confidentiality that must be expected by the client relates to the client's communication with an attorney. . . . It is not necessary that the information *within* the communication be confidential. This distinction between confidential communications and confidential information is commonly misunderstood. The communication from the client to the attorney may contain nonconfidential information such as business information, public or technical information, or pre-existing documents that were not created for the purpose of communicating with the attorney. This is not relevant to the issue of whether confidentiality can reasonably be expected *in the communications that contain that information*.

(emphasis added) (footnotes omitted). By applying a rule that inverts this legal standard and instead requires some measure of secrecy in the *substance* of the

information exchanged between attorney and client, Judge Saporito committed clear

error and acted contrary to the law.  Judge Saporito repeated this error as to dozens

of the withheld documents.[4]  Accordingly, the Order must be reversed with respect

to all of those documents.

### F.    PRIV-00949 Is Protected from Disclosure by the Attorney-Client Privilege.

In the Memorandum, Judge Saporito overruled Eckert's assertion of the

attorney-client privilege with respect to PRIV-00949, "an email exchange between

Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban

enacted in Virginia and related implications for the casino groups' legislative efforts

---

[4] *See* Memorandum *passim* (finding an absence of "confidential client information" as to PRIV-00040, PRIV-00056, PRIV-00065, PRIV-00066, PRIV-00067, PRIV-0074, PRIV-00075, PRIV-00081, PRIV-00101, PRIV-00105, PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00189, PRIV-00232, PRIV-00262, PRIV-00263, PRIV-00264, PRIV-00265, PRIV-00271, PRIV-00305, PRIV-00308, PRIV-00321, PRIV-00322, PRIV-00323, PRIV-00329, PRIV-00333, PRIV-00334, PRIV-00335, PRIV-00366, PRIV-00493, PRIV-00495, PRIV-00496, PRIV-00497, PRIV-00554, PRIV-00597, PRIV-00614, PRIV-00651, PRIV-00653, PRIV-00654, PRIV-00655, PRIV-00656, PRIV-00657, PRIV-00660, PRIV-00677, PRIV-00679, PRIV-00684, PRIV-00692, PRIV-00701, PRIV-00703, PRIV-00711, PRIV-00722, PRIV-00740, PRIV-00755, PRIV-00760, PRIV-00761, PRIV-00762, PRIV-00763, PRIV-00782, PRIV-00783, PRIV-00784, PRIV-00786, PRIV-00787, PRIV-00788, PRIV-00804, PRIV-00806, PRIV-00807, PRIV-00810, PRIV-00816, PRIV-00817, PRIV-00830, PRIV-00832, PRIV-00843, PRIV-00874, PRIV-00881, PRIV-00900, PRIV-00902, PRIV-00911, PRIV-00912, PRIV-00913, PRIV-00919, PRIV-00935, PRIV-00938, PRIV-00942, PRIV-00949, PRIV-00950, PRIV-00971, PRIV-00973, PRIV-00987, PRIV-00988, PRIV-00996, PRIV-00998, and PRIV-01008).

in Pennsylvania." Memorandum at 86. Judge Saporito based this conclusion on, *inter alia*, the absence of "any communication whatsoever to or from a client." *Id.*

This was error. Contrary to the view apparently adopted by Judge Saporito, state and federal courts applying Pennsylvania privilege law have concluded that the attorney-client privilege protected against compelled disclosure of communications among attorneys on which no client was present. *See, e.g.*, *Cedrone*, 103 F.R.D. at 429 (E.D. Pa. 1984):

> [I]t is inconceivable that an internal memorandum between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client, could be anything but protected by the privilege. It is likewise inconceivable that oral discussion between those same attorneys for the same reasons and utilizing the same information could be otherwise.

*See also Van Every v. Ambrozyak*, No. 797 MDA 2017, 2018 WL 1886724, at *3-4 (Pa. Super. Ct. Apr. 20, 2018) (holding that the seven withheld documents at issue "are protected by the attorney-client privilege," including, *inter alia*, both "communications . . . between representatives of [the client] and attorneys" *and* communications "among attorneys or paralegals of" law firm representing client); 24 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. EVID. § 5495 n.11 (1st ed.) ("Under Pennsylvania law, a memorandum between two attorneys in the same office using communications in confidence of the client are privileged.") (citing *Cedrone*, 103 F.R.D. at 429). In fact, the Pennsylvania Supreme Court has recognized that even communications between a client's current and former counsel—but on which the

client himself or herself is not present—"may be protected by the attorney-client privilege." *Karoly v. Mancuso*, 619 Pa. 486, 507–08 (2013) (citations omitted).

Another District Court within this Circuit reached the same conclusion when applying federal privilege law. *Apotex Corp.*, 232 F.R.D. at 481 (citing cases and noting that "[t]here is no bar to extending attorney-client privilege to inter-attorney communications.") (citations omitted). The court's analysis of the relevant privilege issue in *Apotex* is highly apt to PRIV-00949:

> The majority of the challenged documents meet th[ese] criteria and may be protected under attorney-client privilege. They are: *confidential communications where an attorney is providing information to co-counsel in order to request or secure legal services or legal advice*; confidential communications where counsel is providing or rendering legal advice to co-counsel; confidential communications from an attorney for the purpose of requesting or securing legal advice or legal services from co-counsel; confidential communications from an attorney requesting information for the purpose of providing legal advice or legal services to co-counsel; or *confidential communications between co-counsel forwarding information and legal advice for the purpose of formulating further legal advice and providing legal services*. These documents need not be produced by Plaintiff.

*Id.* (emphasis added). In PRIV-00949, as in the communications described in *Apotex*, all emails other than the lowermost email in the chain are "confidential communications where an attorney is providing information to co-counsel in order to request or secure legal services or legal advice" and/or "confidential communications between co-counsel forwarding information . . . for the purpose of formulating further

legal advice and providing legal services." *Id*.  Accordingly, here, as in *Apotex*, those communications are protected from disclosure by the attorney-client privilege.

*Cedrone* compels the same conclusion, as PRIV-00949 is a communication "between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client."  103 F.R.D. at 429.  The "confidential information provided by th[e] client" in PRIV-00949 appears in the three uppermost emails in the chain, in which Messrs. Stewart and Hittinger answer a question regarding what Defendants' "clients" would accept.  There is no plausible source of that information other than the referenced clients themselves.  Thus, *Cedrone* applies and PRIV-00949 is protected from disclosure.  *Id.* at 429; *see also* 24 WRIGHT & MILLER, FED. PRAC. & PROC. EVID. § 5495 n.11 (1st ed.) (citing *Cedrone*, 103 F.R.D. at 429).

### G. The Fourth, Fifth, and Sixth Paragraphs of PRIV-00366 Are Protected from Disclosure by the Attorney-Client Privilege.

In the Memorandum, Judge Saporito concluded that only the first three paragraphs of PRIV-00366, an email between Mr. Stewart and several Cordish executives, are immune from disclosure.  Memorandum at 57.  Judge Saporito found that the last four paragraphs must be produced.  *Id*.

This was error.  First, paragraphs four, five, and six of the email discuss strategic considerations relating to proposed legislation, which, as set forth above, is not a subject matter excluded from the scope of the attorney-client privilege.  Second, the

sixth paragraph of the email explicitly "present[s] opinions and set[s] forth defense tactics," which weighs in favor of finding that that privilege extends to that portion of the document.  *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992) (privilege applies where lawyer is "presenting opinions and setting forth defense tactics as to the procedures to be utilized for an effective defense.").  In concluding otherwise, Judge Saporito clearly erred and acted contrary to law.

**H.   PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 Are Protected from Disclosure by the Attorney-Client Privilege.**

In the Memorandum, Judge Saporito concluded that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497—all of which are "email messages exchanged between Eckert attorney Stewart and Cordish executives"—are not protected by the attorney-client privilege because their "subject matter . . . concerns legislative, political, or policy advise only—not *legal* advice," and because they lack an indication that they "involved any confidential client information."  Memorandum at 58.

This, too, was error.  First, and as set forth above, "legislative advice" is not a subject matter excluded from the scope of the attorney-client privilege.  Second, Mr. Stewart's emails in the chain "present[] opinions and set[] forth defense tactics," which, as noted above, weighs in favor of finding that that privilege extends to these emails.  *Barron*, 809 F. Supp. at 364 (M.D. Pa. 1992); *see also* PRIV-00497 at 1 (setting forth the plan to undertake); PRIV-00493 (noting need to step up efforts and proposing particular next steps).

Third, the purported lack of "confidential client information" cited by Judge Saporito misstates the legal standard. Rather, the privilege "applies to *all information* conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons." *U.S. Healthcare*, 1989 WL 11068, at *2 (emphasis added) (citation and internal quotation marks omitted). The information conveyed need not be "confidential facts," as Judge Saporito concluded. *See, e.g.*, RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE U.S., § 6:2 ("The confidentiality that must be expected by the client relates to the client's communication with an attorney. . . . It is not necessary that the information within the communication be confidential.") (footnotes omitted). By concluding otherwise and ordering the production of these four privileged communications, Judge Saporito clearly erred and acted contrary to the law. Accordingly, this Court should reverse the Order.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court reverse and vacate the portions of paragraph 2 and paragraph 5 of the Order

overruling Defendants' assertions of the attorney-client privilege and work-product

doctrine[5] with respect to the documents referenced therein.

Respectfully submitted,

_____
ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
NATHAN HUDDELL, ESQUIRE (No. 321472)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2766/2854 (telephone)
(215) 299-2150 (facsimile)
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
nhuddell@foxrothschild.com

*Counsel for Defendants Eckert Seamans Cherin &*
*Mellott, LLC, Mark S. Stewart, and Kevin M.*
*Skjoldal*

Date:   January 12, 2024

---

[5] Whether POM has a "substantial need for the materials" withheld on the basis of the work product doctrine should be considered. FED R. CIV. P. 26(b)(3)(A)(ii). POM has no need for any of those materials, as disclosure of the *substance and content* of Defendants' communications with any client purportedly adverse to POM is not necessary to establish the alleged fact of a purported adversity between POM and such other client. The information is plainly irrelevant to any issue of liability or damages in this case.

## CERTIFICATE OF COMPLIANCE WITH
## <u>WORD-COUNT LIMIT PURSUANT TO LOCAL RULE 7.8(b)(2)</u>

I, Robert S. Tintner, Esquire, hereby certify, pursuant to Local Rule 7.8(b)(2),

that this brief complies with Local Rule 7.8(b)(2) because it contains 4,998 words,

excluding the unnumbered title page, the Table of Contents, the Table of Authorities,

this Certificate, and the Certificate of Service.  In making this certification, I relied

on Microsoft Word's "Word Count" tool.

_____
ROBERT S. TINTNER, ESQUIRE

Date:  January 12, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Docket No. 1:20-cv-00292 |
| | : | |
| ECKERT SEAMANS CHERIN & | : | |
| MELLOTT, LLC,  MARK S. STEWART, | : | (Judge Jennifer P. Wilson) |
| and KEVIN M. SKJOLDAL, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Robert S. Tintner, Esquire, hereby certify that on this 12th day of January, 2024, I served a true and correct copy of the foregoing upon all counsel of record via email.

_____
ROBERT S. TINTNER, ESQUIRE