# EXHIBIT 1

# (UNREPORTED OPINION)

Pace-O-Matic, Inc. v. Eckert, Seamans Cherin & Mellott, LLC, Not Reported in Fed....
2023 WL 7491133

2023 WL 7491133
Only the Westlaw citation is currently available.
**NOT PRECEDENTIAL**
United States Court of Appeals, Third Circuit.

PACE-O-MATIC, INC.

v.

ECKERT, SEAMANS CHERIN &
MELLOTT, LLC; Mark S. Stewart; Kevin
M. Skjoldal, Appellants in No. 22-2958
*Hawke McKeon & Sniscak, LLP,
Appellant in Nos. 22-2445 and 22-2902
*Greenwood Gaming and Entertainment,
Inc., Appellant in Nos. 22-2446 and 22-2959
*(Pursuant to Rule 12(a), Fed. R. App. P.)

Nos. 22-2445, 22-2446, 22-2902, 22-2958, and 22-2959
|
Argued September 20, 2023
|
Filed November 13, 2023

On Appeal from the United States District Court for the
Middle District of Pennsylvania (District Court No. 1-20-
cv-00292), District Judge: Honorable Jennifer P. Wilson

**Attorneys and Law Firms**

Peter C. Buckley, Abraham C. Reich, Robert S. Tintner
[ARGUED], Fox Rothschild, 2000 Market Street, 20th Floor,
Philadelphia, PA 19103, Counsel for Appellants Eckert,
Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin
M. Skjoldal.

Melissa A. Chapaska, Dennis Whitaker [ARGUED], Hawke
McKeon & Sniscak, 100 N Tenth Street, P.O. Box 1778,
Harrisburg, PA 17101, Counsel for Appellant Hawke McKeon
& Sniscak, LLP.

George A. Bibikos [ARGUED], #6330, 5901 Jonestown
Road, Harrisburg, PA 17112, Counsel for Appellant
Greenwood Gaming and Entertainment, Inc..

Michael Martinich-Sauter [ARGUED], Jeffrey B. Jensen,
Michael Nolan, Spencer Tolson, Husch Blackwell, 8001
Forsyth Boulevard, Suite 1500, St. Louis, MO 63105,
Counsel for Appellee Pace-O-Matic, Inc.

Before: RESTREPO, McKEE, RENDELL, Circuit Judges.

OPINION [*]

RENDELL, Circuit Judge.

**\*1** Eckert Seamans Cherin & Mellott, LLC ("Eckert"),
Hawke McKeon & Sniscak, LLP ("HMS"), and Greenwood
Gaming and Entertainment, Inc., d/b/a Parx Casino ("Parx")
appeal from the District Court's order requiring disclosure of
allegedly privileged material under the doctrine of judicial
estoppel. Because the District Court erred in implementing
the standard for application of judicial estoppel under our
caselaw, we will vacate the order and remand.

I [1]

Pace-O-Matic, Inc. ("POM") develops, produces, and
licenses electronic games sold, as relevant here, in
Pennsylvania and Virginia. In 2016, Eckert began
representing POM solely in Virginia regarding certain
regulatory matters. At that time, Eckert also represented Parx,
POM's market competitor, in Pennsylvania.

In 2018, POM, through other counsel, filed two lawsuits in the
Commonwealth Court of Pennsylvania (the "Commonwealth
Court Cases") against state agencies, challenging the seizure
of some of its games in Pennsylvania. [2] Parx, represented by
counsel of record HMS and Ballard Spahr, LLP, filed amicus
briefs in opposition to POM's position and moved to intervene
in the action.

In January 2020, POM learned that Eckert was involved in
drafting Parx's filings in the Commonwealth Court Cases.
POM requested that Eckert withdraw from representing
Parx in the Commonwealth Court Cases, but Eckert instead
withdrew from its representation of POM in Virginia.

In February 2020, POM brought the instant action against
Eckert in federal court, alleging a breach of fiduciary
duties. POM served interrogatories and requests for document
production on Eckert and non-party subpoenas on Parx and
HMS seeking communications that Eckert had with Parx and
HMS in the Commonwealth Court Cases. Eckert, Parx, and
HMS objected, asserting attorney–client and work-product
privilege. POM moved to compel production; Eckert, Parx,
and HMS moved for a protective order. The Magistrate
Judge heard oral argument and conducted an *in camera*

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

review of the documents at issue. The Judge then issued a memorandum and order invoking the doctrine of judicial estoppel to preclude Eckert's assertion of an attorney–client relationship with Parx. The Magistrate Judge concluded that Eckert, HMS, and Parx had each, explicitly or implicitly, mischaracterized Eckert's role in the Commonwealth Court Cases by asserting that Eckert did not represent a party adverse to POM in the Commonwealth Court Cases.

Eckert, HMS, and Parx appealed to the District Court, which affirmed the Magistrate Judge's memorandum and order on July 5, 2022 (the "July 5 Order") and ordered the appellants to turn over the allegedly privileged documents and communications. Eckert, HMS, and Parx filed motions for reconsideration and permission to take an interlocutory appeal under § 1292(b). The District Court denied the motions for reconsideration but granted permission for the interlocutory appeal to decide whether judicial estoppel may be applied as an exception to or waiver of the attorney–client privilege of a non-party for interlocutory appeal.[3] The appellants timely filed petitions for interlocutory review of the July 5 Order under § 1292(b). A motions panel of this court granted the petition, and we consolidated the appeals.

## II[4]

 **\*2** The appellants urge, first, that judicial estoppel cannot be applied as a waiver of, or exception to, attorney–client privilege held by a non-party and, second, that the District Court abused its discretion in applying the doctrine of judicial estoppel to the facts before it. Because we agree that the District Court misapplied the law, we need not address the first argument.[5] We review the District Court order invoking judicial estoppel "only for abuse of discretion," inquiring whether its "ruling is founded on an error of law or a misapplication of law to the facts." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (internal quotation marks omitted).

The concept of judicial estoppel stems from the courts' intrinsic authority to prevent parties from "playing fast and loose with the courts" by asserting inconsistent positions to gain an unfair advantage. *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). In order to apply judicial estoppel, a district court must satisfy itself that:

(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted [previously]; (2) the party changed his or her position in bad faith ...; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Montrose*, 243 F.3d at 777–78. "[J]udicial estoppel is appropriately applied in a narrow category of cases because it 'is an extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice.' " *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 559–60 (3d Cir. 2002) (quoting *Montrose*, 243 F.3d at 784).

The District Court reasoned that judicial estoppel was appropriate because the appellants had presented fundamentally different positions in bad faith to obstruct discovery and no lesser sanction would address the resulting harm. We conclude that the requirements for applying judicial estoppel have not been met.

## A

The Magistrate Judge viewed Eckert's assertion that it did "not represent any party adverse to POM in [the Commonwealth Court] litigation" as irreconcilably inconsistent with its invocation of the attorney–client privilege to shield its communications with Parx. JA 13–14. But Eckert's counsel explained to the Magistrate Judge that Eckert has maintained that it has a longstanding attorney–client relationship with Parx but did not appear as *counsel of record* for Parx in the Commonwealth Court Cases. And Eckert did not view itself as representing a party adverse to POM when Parx was not a party in either Commonwealth Court Case but only had a motion to intervene pending. The Magistrate Judge did not appear to appreciate Eckert's nuanced view of its role. As we read the record, Eckert's position was perhaps "hyper-technical," *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 378 (3d Cir. 2007), but it was not wholly incompatible with its assertion of the attorney–client privilege. Eckert readily conceded that it represented

Parx in connection with the Commonwealth Court Cases, but Parx was not a party and Eckert never entered an appearance in the case.

## B

**\*3** Second, even if there were irreconcilable tension between Eckert's positions, the District Court abused its discretion in finding that Eckert, HMS, and Parx acted in bad faith. To satisfy the bad faith requirement, (1) a litigant must behave culpably (2) in a way that "assault[s] the dignity or authority of the court." *Montrose*, 243 F.3d at 781. In other words, "judicial estoppel may not be used to punish litigants for how they treat other litigants or third parties; its *only* legitimate purpose is to remedy an affront to the court's integrity." *Id.* at 785 (footnote omitted).

Our focus is on whether the appellants' conduct assaulted the District Court's authority. "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position," *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009), because "[u]nlike the concept of equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system." *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990). Here, no court accepted Eckert's, HMS's, or Parx's allegedly inconsistent positions that Eckert was not representing an entity adverse to POM in litigation. Absent that clear threat to judicial authority, the District Court lacked "an integral factor justifying the application of judicial estoppel." *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005).

POM urges that judicial estoppel may apply even where no court accepted a litigant's prior position. *See G-I Holdings, 586 F.3d at 262*. But that exception was applied in a bankruptcy case, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003), and is quite limited. There, the Bankruptcy Court had not accepted representations in the debtor's disclosure statement, but the Court cited "the reliance placed upon the [debtor's] disclosure statement by the creditors and the court" as justifying the application of judicial estoppel to bar the taking of a later inconsistent position. *Id.* at 320–22 (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). Nondisclosure there harmed creditors, "undermining the bankruptcy process by weakening their bargaining position." *G-I Holdings*, 586 F.3d at 262 (discussing *Krystal Cadillac*, 337 F.3d at 324–25). No such systemic threat lurks behind the appellants' positions, so "applying judicial estoppel here presents a greater threat to judicial integrity." *Id.*

Moreover, in routine litigation, defendants are permitted flexibility in asserting positions in early stages of litigation "because a defendant ought to have the opportunity to put up the best possible defense in light of all the claims against it." *Id.*; *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically ...."). Here, there really was no "earlier position" that the District Court accepted or that was relied on. It was all part and parcel of the same discovery proceeding, so there was no assault on the court's authority.

## C

Third, the remedy is not sufficiently tailored. Courts should not apply judicial estoppel unless (1) "no sanction established by the Federal Rules or a pertinent statute is 'up to the task' of remedying the damage done by a litigant's malfeasance," *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)), and (2) "the sanction is 'tailored to address the harm identified,' " *Klein*, 185 F.3d at 108 (quoting *Republic of the Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994)).

**\*4** The Magistrate Judge concluded that only two alternative sanctions were available, both of which were "categorically determinative of the outcome on the merits of th[e] litigation": (1) entering default judgment against Eckert or (2) judicially estopping Eckert from denying its representation of a party adverse to POM in litigation. JA 18 (internal quotation marks omitted). Neither the Magistrate Judge nor the District Court appear to have contemplated the use of "Rule-or statute-based sanctions" more proportionate to the misconduct alleged, which alone was error. *Montrose*, 243 F.3d at 785. The sanction ultimately seized upon by the Magistrate Judge was fundamentally inappropriate because it goes to the very heart of the underlying suit—the nature of the relationships between Eckert and POM and Eckert and Parx. The novel application of judicial estoppel to effectively eviscerate a non-party's privilege after the fact was unwarranted when the Magistrate Judge might simply have ruled on the privilege

Case 1:20-cv-00292-JPW Document 369-1 Filed 01/26/24 Page 5 of 6

issue on the merits and used more temperate sanctions to deter counsel from any future gamesmanship. [6]

Finally, the District Court did not tailor the remedy because it focused its analysis on the alleged bad faith of Eckert, discussing minimally any malfeasance by HMS or Parx. But Parx, as holder of the attorney–client privilege, would suffer the brunt of the penalty imposed by the July 5 Order. *Cf. id.* at 786 (concluding remedy was not tailored where non-party plan participants, not plaintiff hospital and savings plan, were harmed when district court invoked judicial estoppel to dismiss case). In sum, the District Court sought to force a square peg into a round hole by selecting judicial estoppel as an appropriate sanction for appellants. That was an abuse of discretion.

III

On remand, the District Court should consider whether the appellants' perceived misconduct merits sanctions and, if so, whether sanctions available under the Federal Rules or pertinent statutes are appropriate. Accordingly, we will vacate the District Court's July 5 Order and remand for further proceedings consistent with this opinion.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 7491133

## Footnotes

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1 Because we write only for the parties, we will recite only the facts necessary to our decision.

2 *See POM of Pa., LLC v. Pa. State Police, Bureau of Liquor Control Enforcement*, No. 503 MD 2018 (Pa. Commw. Ct.); *POM of Pa., LLC v. Commonwealth of Pa., Dep't of Revenue*, No. 418 MD 2018 (Pa. Commw. Ct.).

3 The District Court stayed the order requiring production of discovery materials pending this appeal.

4 The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), and we have appellate jurisdiction under 28 U.S.C. § 1292(b). The District Court determined that the July 5 Order "(1) involve[s] a 'controlling question of law,' (2) offer[s] 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance[s] the ultimate termination of the litigation.' " *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (quoting 28 U.S.C. § 1292(b)). We will exercise our discretion in permitting this appeal to be taken from the July 5 Order, 29 U.S.C. § 1292(b), and do not address the appellants' or appellee's arguments regarding the *Perlman* doctrine or the collateral order doctrine.

5 Although appellants' first argument aligns with the question certified by the District Court, when we exercise jurisdiction under § 1292(b), we "may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.' " *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (quoting 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 110.25[1] (2d ed. 1995)).

6 Parties rely on the privilege as essential to open communications with counsel. To have it denied after the fact, and with little evidence of the role of Parx, the client, in the positions Eckert was taking, gives us serious pause.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.