IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-292-JPW |
| | ) | |
| v. | ) | Judge Wilson |
| | ) | |
| ECKERT SEAMANS CHERIN & | ) | |
| MELLOTT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE OBJECTIONS FILED BY
DEFENDANTS AND GREENWOOD GAMING & ENTERTAINMENT, INC. TO THE
<u>MAGISTRATE JUDGE'S DECEMBER 1, 2023 DISCOVERY-DISPUTE RULING</u>**

## **TABLE OF CONTENTS**

STANDARD OF REVIEW....................................................................................................1

ARGUMENT.......................................................................................................................1

I.    Parx and Eckert Bear the Burden of Establishing That the Documents at Issue Fall Within the Attorney-Client Privilege...............................................................................................1

II.   The Magistrate Judge Applied the Correct Legal Standard to Determine Whether the Documents at Issue Involve "Legal Advice."......................................................................2

III.  The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to PRIV-00679, PRIV-00684, or PRIV-00685................................................................10

IV.   Eckert Has Not Shown That the Magistrate Judge Committed Clear Error or Acted Contrary to Law with Respect to the Applicable Confidentiality Standards......................11

V.    The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to PRIV-00949.................................................................................................................15

VI.   The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to the Fourth, Fifth, and Sixth Paragraphs of PRIV-00366................................................17

VII.  The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.........................................18

VIII. Eckert Has Not Provided Any Basis for Overturning the Magistrate Judge's Rulings Regarding Work Product.................................................................................................19

CONCLUSION..................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-cv-3577, 2016 WL 9781826 (N.D. Ala. Mar. 24, 2016)..................................................................................................................4

*Blair v. Professional Transp., Inc.*, No. 3:14-cv-18, 2015 WL 1013566 (S.D. Ind. Mar. 9, 2015) 4

*Bolus v. Carnicella*, 4:15-cv-1062, 2020 WL 930329 (M.D. Pa. Feb. 26, 2020) .......................10

*Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481 (D. Kan. 1997)........................................4

*Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470 (Pa. Super. 2023)....3, 12, 14, 15

*Cedrone v. Unity Savings Ass'n*, 103 F.R.D. 423 (E.D. Pa. 1984)..............................................12

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004) ....................................................7

*Doe v. Schuylkill Cty. Courthouse*, 343 F.R.D. 289 (M.D. Pa. 2023) .........................................10

*Gillard v. AIG Ins. Co.*, 15 A.3d 44 (Pa. 2011) ......................................................... 3, 12, 13, 15

*Haines v. Liggett Grp., Inc.*, 975 F.2d 81 (3d Cir. 1992)......................................................1, 16

*Harrington v. Freedom of Information Commission*, 144 A.3d 405 (Conn. 2016)......................8

*Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239 (W.D. Pa. 2007)...........................20

*In re Estate of McAleer*, 248 A.3d 416 (Pa. 2021) .......................................................................5

*In re Fortieth Statewide Investigating Grand Jury*, 220 A.3d 558 (Pa. 2019).............................2

*In re Investigating Grand Jury of Philadelphia Cty.*, 593 A.2d 402 (Pa. 1991) ...........................2

*In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007).........................................5

*In re U.S. Healthcare, Inc. Sec. Litig.*, No. 88-559, 1989 WL 11068 (E.D. Pa. Feb. 8, 1989)....11, 13, 14, 16

*Lefta Assocs. v. Hurley*, 1:09-cv-2487, 2011 WL 2456616 (M.D. Pa. June 16, 2011) ...... 2, 12, 15

*Levy v. Senate of Pa.*, 65 A.3d 361 (Pa. 2013) .................................................................2, 3, 11

**Cases (Continued)**                                                    **Page(s)**

*N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511 (M.D.N.C. 1986)................................................................................................................4

*P&B Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50 (E.D.N.Y. 1991) ......................................4

*Philips v. Ford Motor Co.*, No. 14-cv-2989, 2015 WL 4111448 (N.D. Cal. July 7, 2015)...........9

*Sandoz Inc. v. Lannett Co.*, 570 F. Supp. 3d 258 (E.D. Pa. 2021)..................................................3

*Sky Angel U.S., LLC v. Discovery Communications, LLC*, 28 F. Supp. 3d 465 (D. Md. 2014)......9

*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467 (E.D. Pa. 2005)............... 13, 14, 16

*Stevens v. Sullum*, No. 3:20-cv-1911, 2023 WL 3077844 (M.D. Pa. April 25, 2023) ...................1

*Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467 (Pa. Super. 2018).......1, 2, 15

*U.S. Fidelity & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355 (M.D. Pa. 1992) ...........17, 18

*U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156 (E.D.N.Y. 1994).............4

*United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156 (E.D.N.Y. 1994) ..9

*United States v. Loften*, 518 F. Supp. 839 (S.D.N.Y. 1981).........................................................7

*Wachtel v. Health Net, Inc.*, 482 F.3d 225 (3d Cir. 2007) ..........................................................7

*Wahlig v. Kijakazi*, No. 1:20-cv-2310, 2022 WL 4473594 (M.D. Pa. Sept. 26, 2022)...............19

*Weissman v. Fruchtman*, No. 83 Civ 8958, 1986 WL 15669 (S.D.N.Y. Oct. 31, 1986)............8, 9

*Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978)................6, 7

*Westinghouse Electric Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991) ..............5

**Statutes**                                                             **Page(s)**

13A Pa. C.S. § 13A03 ....................................................................................................6

13A Pa. C.S. § 13A04 ....................................................................................................6

13A Pa. C.S. § 13A07 ....................................................................................................6

28 U.S.C. § 636..............................................................................................................1

iii

**Other Authorities**                                                                                  **Page(s)**

McCormick on Evidence (July 2022 Update) ......................................................................8

Paul R. Rice, Attorney-Client Privilege in the United States (December 2022)...........5, 8

Securities & Exchange Comm'n, *Commission Guidance Regarding Disclosure Related to Climate Change*, S.E.C. Release No. 9106, 2010 WL 2199526 (Feb. 2, 2010).......................6

**Rules**                                                                                             **Page(s)**

Fed. R. Civ. P. 26 .......................................................................................................20

Fed. R. Civ. P. 72 ....................................................................................................1, 14

M.D. Pa. L.R. 72.2 .........................................................................................................1

Plaintiff Pace-O-Matic, Inc. ("POM") respectfully submits this response to the appeals filed by Defendants (together, "Eckert") and third-party Parx Casino. For the reasons described below, the Court should deny those appeals and affirm the Magistrate Judge's December 1, 2023 ruling. *See* ECF Nos. 353, 354.

## STANDARD OF REVIEW

Because this appeal involves the Magistrate Judge's resolution of non-dispositive issues, the Court will reverse only "if the ruling is clearly erroneous or contrary to law." *Stevens v. Sullum*, No. 3:20-cv-1911, 2023 WL 3077844, at *1 (M.D. Pa. April 25, 2023) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); M.D. Pa. L.R. 72.2). Eckert and Parx "must clear a high hurdle to compel this court to overturn a magistrate judge's decision of a non-dispositive pretrial matter." *Id.* at *2 (quotation omitted). "A ruling is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at *1 (quotation omitted). "This means the court must accept the [magistrate] judge's factual determination unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Id.* (quotation omitted). "[T]he phrase 'contrary to law' indicates plenary review as to matters of law." *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).

## ARGUMENT

### I. Parx and Eckert Bear the Burden of Establishing That the Documents at Issue Fall Within the Attorney-Client Privilege.

As the parties asserting the attorney-client privilege, Eckert and Parx bear the burden of establishing that the documents at issue fall within the scope of the privilege. "The party asserting the privilege has the initial burden to prove that it is properly invoked . . . ." *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018) (quotation omitted).

1

"To sustain this burden of proof, the party asserting the privilege must show, by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of the privilege." *Id.* (alteration, brackets, and quotation omitted).

Parx seemingly suggests that POM bears a burden to show that the privilege does not apply. *See* ECF No. 366, at 12.[1]  To be sure, "once it is established that records are privileged from disclosure to third parties, the burden shifts to the party seeking disclosure to establish that an exception to the privilege exists which would allow the disclosure." *In re Fortieth Statewide Investigating Grand Jury*, 220 A.3d 558, 568 (Pa. 2019) (citing *In re Investigating Grand Jury of Philadelphia Cty.*, 593 A.2d 402 (Pa. 1991)).  But this dispute does not address whether any exception to the attorney-client privilege applies.  Instead, this dispute addresses whether Eckert and Parx have established the baseline requirements for the privilege to apply, including the requirements that the communications at issue involve "legal advice" and meet the applicable confidentiality standards. *Lefta Assocs. v. Hurley*, 1:09-cv-2487, 2011 WL 2456616, at *6 (M.D. Pa. June 16, 2011) (enumerating elements of prima facie privilege under Pennsylvania law).  The burden would shift to POM only if Eckert and Parx had established that each of these requirements is satisfied.  Eckert and Parx have failed to do so, and this dispute does not involve any exception to the attorney-client privilege.

## II.     The Magistrate Judge Applied the Correct Legal Standard to Determine Whether the Documents at Issue Involve "Legal Advice."

Not every communication involving a lawyer is privileged. *See Levy v. Senate of Pa.*, 65 A.3d 361, 368-69 (Pa. 2013) (noting that "not all information passed between client and attorney is privileged").  Instead, the attorney-client privilege applies only to communications "made for

---

[1] All page numbers refer to the page numbering added by the CM/ECF system and printed at the top of documents in the version accessible on the Court's electronic docket.

the purpose of obtaining or providing professional legal advice." *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa. Super. 2023); *see also Levy*, 65 A.3d at 369 (noting that "the privilege is limited to communications related to the legal advice sought by the client"). Communications with a lawyer that do not predominantly involve *legal* advice—such as communications predominantly involving "business advice" or "factual investigations"—do not fall within the attorney-client privilege. *Sandoz Inc. v. Lannett Co.*, 570 F. Supp. 3d 258, 264 (E.D. Pa. 2021) (quoting *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52 n.8 (Pa. 2011)).

The Magistrate Judge found that the documents at issue in this appeal were not made for the purpose of obtaining or providing *legal* advice and thus do not fall within the attorney-client privilege. As noted above, a document that is not prepared for the purpose of *legal* advice is not privileged. *Carlino E. Brandywine*, 301 A.3d at 479. The Magistrate Judge found that, rather than providing *legal* advice, the documents at issue in this appeal involved only "legislative, political, or policy advice." Parx and Eckert claim that by distinguishing between "legal advice" and "legislative advice," the Magistrate Judge "appl[ied] an improper, *per se* rule precluding application of the privilege altogether simply because a communication discussed legislation or legislative matters." ECF No. 366, at 16 (Parx Brief); *see also* ECF No. 367, at 14 (Eckert Brief) (claiming that that the Magistrate Judge erred by "assum[ing] that 'legislative' advice never can fall within the scope of the attorney-client privilege." (capitalization removed)). Parx and Eckert misunderstand the Magistrate Judge's analysis.

The Magistrate Judge did not hold categorically that the privilege can never apply to communications involving legislation. To the contrary, he specifically recognized that some communications in the legislative context *can* involve legal advice and thus fall within the privilege. *See* ECF No. 353, at 25-26. But the Magistrate Judge also recognized that

communications arising in the legislative context—like any other communications—are privileged only if they predominantly relate to *legal* advice. *See id.* at 26 (describing the ultimate inquiry as "whether the primary or predominant purpose of the communication was to procure *legal advice*"). Importantly, advice does not constitute legal advice merely because it involves legislation. Numerous cases have held that advice regarding lobbying or legislative strategy does not constitute *legal* advice. *See, e.g.*, *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege."); *P&B Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 59 (E.D.N.Y. 1991) ("Summaries of legislative meetings, progress reports, and general updates on lobbying activities do not constitute legal advice . . . ."); *N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986) (holding that documents relating to "coordinating" opposition to a proposal and providing "updates on lobbying activities" did not fall within the scope of the attorney-client privilege); *U.S. Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994) (finding that a "communication [was] not privileged since the letter simply describes the current status of certain matters to disclose in lobbying efforts and specifically in response to concerns raised by a legislator"); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-cv-3577, 2016 WL 9781826, at *4 (N.D. Ala. Mar. 24, 2016) ("[I]t is well established that lobbying and public relations communications do not come within the privilege on their own accord."), *adopted by* 2016 WL 9782375 (May 3, 2016); *Blair v. Professional Transp., Inc.*, No. 3:14-cv-18, 2015 WL 1013566, at *3 (S.D. Ind. Mar. 9, 2015) (overruling privilege objections to documents that "outline a lobbying strategy, solicit information to be used in lobbying, or relay the results of a lobbying effort").

This distinction flows from the purposes underlying the attorney-client privilege. "Because [the attorney-client privilege] has the effect of withholding relevant evidence from the factfinder, courts construe the privilege narrowly to apply only where necessary to achieve its purpose." *In re Estate of McAleer*, 248 A.3d 416, 425-26 (Pa. 2021) (cleaned up).[2]  The purpose of the attorney-client privilege is to "encourag[e] attorney-client communication to enhance compliance with the law and facilitat[e] the administration of justice." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 360 (3d Cir. 2007).  But "[i]t is not apparent how the attorney-client privilege's policy of effectuating greater compliance with the law . . . is furthered in the legislative context." PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7:20 (December 2022).  Because communications about self-serving efforts to shape changes to the law do not advance the privilege's core purpose—that is, enhancing compliance with existing law—the privilege does not extend to such communications.

As noted above, this analysis does not mean that the attorney-client privilege can *never* apply to communications involving legislation.  Instead, communications arising in the legislative context can fall within the privilege if they predominantly relate to legal advice, as opposed to lobbying advice, legislative strategy, or other non-legal subjects.  For example, in some cases, companies may have an obligation under the federal securities laws to disclose the impact of pending legislation.  *See, e.g.*, Securities & Exchange Comm'n, *Commission Guidance Regarding Disclosure Related to Climate Change*, S.E.C. Release No. 9106, 2010 WL 2199526, at *10-11

---

[2] Parx asserts that "[t]he privilege is broad."  ECF No. 366, at 10.  To the contrary, both the Pennsylvania Supreme Court and the Third Circuit have emphasized that the privilege should be construed "narrowly."  *See Estate of McAleer*, 248 A.3d at 425-26 (quoted in the text above); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) ("Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly.").

(Feb. 2, 2010). Thus, in some cases, legal advice regarding the impact of proposed legislation may constitute legal advice when a client seeks to assess its SEC reporting obligations relating to that proposed legislation. This advice regarding proposed legislation facilitates compliance with *existing* obligations under the securities laws. Similarly, a client may seek guidance from a lawyer regarding whether certain interactions with legislators constitute "lobbying" and, if so, what registration obligations and other legal consequences may be triggered. *See, e.g.*, 13A Pa. C.S. § 13A03 (defining "lobbying" and "lobbyist"); *Id.* § 13A04 (imposing registration requirements on both lobbyists and those on whose behalf lobbyists act); *Id.* § 13A07 (imposing various legal restrictions on "lobbyists"). That advice constitutes legal advice, because it facilitates compliance with *existing* obligations under the lobbying regulations. This *legal* advice, which arises in the legislative context, is categorically distinct from advice regarding efforts to change existing law (or to oppose such changes).

The cases cited by Parx and Eckert do not undermine the well-recognized distinction between legal advice and advice regarding lobbying or legislative strategy. Both Eckert and Parx cite the Seventh Circuit's decision in *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978). Importantly, *Westinghouse* did not involve a dispute regarding the attorney-client privilege. Instead, *Westinghouse* involved an attempt to disqualify the law firm Kirkland & Ellis from an antitrust lawsuit brought by Westinghouse against a number of defendants in the energy sector. *Id.* at 1313-16. Three of the defendants were members of a trade association that had hired Kirkland to assist in opposing a federal legislative proposal to reduce concentration in portions of the energy sector. *Id.* at 1313. In conjunction with that project, each of the three companies provided confidential information about their business operations to Kirkland to assist the firm in opposing the congressional proposal. *Id.* at 1316. They viewed this legislative work

as creating a conflict of interest that prevented Kirkland from working adverse to them in the antitrust litigation, and they moved to disqualify Kirkland on that basis. In assessing the disqualification issue, the Seventh Circuit rejected the district court's focus on whether a formal attorney-client relationship existed between Kirkland and the three companies. *Id.* at 1317-18. The Seventh Circuit instead focused on the fact that each company had "entertained a reasonable belief that it was submitting confidential information regarding its involvement in the uranium industry to a law firm which had solicited the information upon a representation that the firm was acting in the undivided interest of each company." *Id.* at 1321. In light of that "reasonable belief," *id.*, the Seventh Circuit found that Kirkland had a conflict of interest and thus could not represent Westinghouse adverse to those companies, *id.* at 1322.

*Westinghouse* does not support Parx's and Eckert's position here. As noted above, *Westinghouse* did not even address a privilege dispute. This fact alone undermines the relevance of *Westinghouse* here. Moreover, the opinion in *Westinghouse* gives no indication that the parties or the court considered the issue of whether Kirkland's legislative work involved "legal" advice. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation omitted).[3] For these reasons,

---

[3] The Seventh Circuit did state that "[t]he lobbying-type functions undertaken by Kirkland in this case are not foreign to lawyers." *Westinghouse*, 580 F.2d at 1320. But the fact that a task is "not foreign" to a lawyer does not make that task legal advice. It is not unusual for clients to solicit advice from their trusted attorneys regarding business questions. *See, e.g.*, *United States v. Loften*, 518 F. Supp. 839, 846 (S.D.N.Y. 1981) ("Of course, it is not unusual, or in any way improper, for a commercial attorney to proffer business advice; however, such conversations are not within the privilege."). But "[w]here a lawyer provides non-legal business advice, the communication is not privileged." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). Similarly, some clients ask their attorneys to serve as the client's representative in contract negotiations. "It is not a legal service, however, when legal counsel negotiates the terms of a contract with a prospective customer." RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED

*Westinghouse* does not support Parx's and Eckert's position. The cases that have cited *Westinghouse* confirm this conclusion. According to Westlaw, 368 cases have cited *Westinghouse*. Based on a review by POM's counsel, not one of those cases has cited *Westinghouse* for the proposition that legislative or lobbying advice fell within the attorney-client privilege. Eckert and Parx have not identified any reason why this Court should do so either.

Eckert and Parx also both cite the Connecticut Supreme Court's decision in *Harrington v. Freedom of Information Commission*, 144 A.3d 405 (Conn. 2016). But *Harrington* does not support the broad proposition that "legislative advice" constitutes legal advice. To the contrary, *Harrington* specifically rejects the notion that lobbying, legislative strategy, or political advice constitute legal advice protected by the attorney-client privilege. *Id.* at 419-20. *Harrington* merely acknowledges the uncontroversial proposition that communications arising in the legislative context—like all other communications—can be privileged if they convey legal advice but are not privileged if they convey non-legal advice. *Id.* The Magistrate Judge adopted precisely the same approach, even relying on several of the same cases as *Harrington* did. *See* ECF No. 353, at 25-26. *Harrington* does not support the conclusion that the Magistrate Judge committed clear error or acted contrary to law.

Finally, Parx cites *Weissman v. Fruchtman*, No. 83 Civ 8958, 1986 WL 15669 (S.D.N.Y. Oct. 31, 1986). *Weissman* upheld an assertion of privilege regarding certain "communications between City agencies and the Corporation Counsel's office seeking advice on pending legislation." *Id.* at *15. *Weissman* provides no further analysis or explanation regarding why the

---

STATES § 7:23. Thus, communications regarding such negotiations ordinarily would not be privileged. *Id.*; *see also* MCCORMICK ON EVIDENCE § 88 (July 2022 Update) (noting that "where one consults an attorney not as a lawyer but as a . . . negotiator, . . . the consultation is not professional nor the statement privileged"). In both of these examples, services that "are not foreign" to attorneys do not involve legal advice and thus support application of the privilege.

documents at issue constituted legal advice falling within the attorney-client privilege. *Id.* Nor does the opinion provide additional detail on the nature of the communications, the nature of the advice, precisely which "City agencies" were involved, or the pending legislation at issue. The limited analysis in *Weissman* makes it difficult to assess how its holding would apply here, or even whether it would support Parx's position. Given the cursory nature of *Weissman*'s analysis, it provides no basis for departing from the weight of authority that excludes lobbying and legislative strategy from the attorney-client privilege. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14-cv-2989, 2015 WL 4111448, at *15 (N.D. Cal. July 7, 2015) (declining to follow a case where "the weight of the persuasive authority fall[s] against" that case's holding and that case's "analysis is itself cursory").

For the reasons described above, the Magistrate Judge applied the correct legal standard. And his 97-page opinion reflects a painstaking effort to apply this correct legal standard to each document to determine whether the communication predominantly involved legal advice. *See generally* ECF No. 353. "Whether a document was prepared for primarily a legal purpose is a factual determination for which the magistrate judge's determination will be upheld unless clearly erroneous." *Sky Angel U.S., LLC v. Discovery Communications, LLC*, 28 F. Supp. 3d 465, 484-85 (D. Md. 2014). Eckert and Parx have not provided any basis to conclude that the Magistrate Judge's detailed, document-specific findings are clearly erroneous. Importantly, when assessing whether a lawyer's advice in the legislative context constitutes "legal advice," "the inquiry is fact-specific." ECF No. 353, at 25 (quoting *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994)). Yet Parx and Eckert effectively offer no "fact-specific," document-specific, or context-specific argument at all regarding the legal-advice issue. Their failure to provide the sort of detail that the applicable legal standard requires further demonstrates

that they have failed to establish that the Magistrate Judge committed clear error or acted contrary to law. *Cf. Doe v. Schuylkill Cty. Courthouse*, 343 F.R.D. 289, 295 (M.D. Pa. 2023) ("[W]hen addressing legal questions regarding whether the attorney client privilege applies to particular documents, we are cautioned to eschew any categorical approach which cloaks or rejects the privilege in a wholesale fashion without regard to the specific content of particular documents."). Thus, the Court should affirm the Magistrate Judge's decision.

### III. The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to PRIV-00679, PRIV-00684, or PRIV-00685.

In Part V.D of its brief, Eckert contends that the Magistrate Judge erred with respect to PRIV-00679, PRIV-00684, and PRIV-00685. *See* ECF No. 367, at 17-19. The Magistrate Judge identified two independent bases for refusing to apply the attorney-client privilege to these documents: the documents did not involve legal advice; and the documents did not "involve[] any confidential client information, nor any communication whatsoever to or from a client." ECF No. 353, at 66-67. Eckert has not shown that either of these determinations was clearly erroneous or contrary to law.

With respect to the subject matter of the documents, Eckert simply asserts without argument that the documents "contain *explicit* legal advice and analysis." ECF No. 367, at 18. Because it has not seen the documents at issue, POM cannot respond with specificity to this assertion. However, when invoking the attorney-client privilege, "mere conclusory or ipse dixit assertions do not suffice for a party to meet its burden." *Bolus v. Carnicella*, 4:15-cv-1062, 2020 WL 930329, at *6 (M.D. Pa. Feb. 26, 2020) (quotation and alteration omitted).

With respect to the confidentiality issue, the entirety of Eckert's argument on this point consists of the following: "Nor do confidentiality concerns preclude Defendants' assertion of the attorney client privilege with respect to these memoranda. *See, e.g.*, *U.S. Healthcare*, 1989 WL

11068, at *2 ('The attorney-client privilege still attaches to the withheld memoranda . . . .')." ECF No. 367, at 18-19.  It is difficult to discern precisely what Eckert is arguing.  To the extent that Eckert contends that *every* inter-attorney memorandum is privileged, *U.S. Healthcare* itself refutes that position.  That case explains that communications solely among attorneys are privileged only if they "include legal advice or confidential information received from the client."  *In re U.S. Healthcare, Inc. Sec. Litig.*, No. 88-559, 1989 WL 11068, at *1 (E.D. Pa. Feb. 8, 1989).[4]  As noted above, the Magistrate Judge found that the documents at issue did not constitute "legal advice," ECF No. 353, at 66-67, and Eckert has not shown this finding to be clearly erroneous.  Similarly, the Magistrate Judge specifically found that none of the documents "involved any confidential client information."  *Id.* at 67.  Eckert has provided no basis for concluding that that conclusion was clearly erroneous.  Thus, even under the standard in *U.S. Healthcare*—the case that Eckert contends is controlling—the Magistrate Judge correctly refused to apply the attorney-client privilege to these documents.

IV.   **Eckert Has Not Shown That the Magistrate Judge Committed Clear Error or Acted Contrary to Law with Respect to the Applicable Confidentiality Standards.**

In Part V.E of its brief, Eckert argues that the Magistrate Judge applied the incorrect confidentiality standard in assessing whether certain documents fall within the attorney-client privilege.  *See* ECF No. 367, at 19-21.  In particular, Eckert claims that the Magistrate Judge incorrectly inquired whether the documents contained "confidential facts," rather than whether the documents were "conveyed in confidence."  *See id.*  While the main text of Part V.E addresses

---

[4] The legal advice must be "legal advice ***sought by the client***."  *Levy*, 65 A.3d at 369 (emphasis added).

only two documents, PRIV-00958 and PRIV-00960, Footnote 14 claims that the Magistrate Judge committed the same error as to 93 other documents.  *See* ECF No. 367, at 19-21.

As an initial matter, the Court need not even consider this confidentiality issue.  The Magistrate Judge found that none of these documents involved legal advice.  *See, e.g.*, ECF No. 353, at 89 (discussing PRIV-00958 and PRIV-00960).  The attorney-client privilege applies only if a document *both* involves legal advice *and* satisfies the applicable confidentiality standard.  *See, e.g.*, *Lefta*, 2011 WL 2456616, at *6.  Because these documents do not involve legal advice, they are not privileged, regardless of their confidentiality.  *Carlino E. Brandywine*, 301 A.3d at 479.

Even if the Court does consider the confidentiality issue, Eckert has not shown clear error or a decision contrary to law.  At the outset, it is necessary to distinguish among several types of communications potentially impacted by Eckert's argument.  As relevant here, the attorney-client privilege can potentially apply to three kinds of communications: (1) communications from clients to attorneys; (2) communications from attorneys to clients; and (3) communications solely among attorneys.  Under current Pennsylvania law, substantially the same standard applies to both categories (1) and (2).  *See Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011) ("[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing legal advice."); *see also Lefta*, 2011 WL 2456616, at *6 (discussing *Gillard*).[5]  For documents in categories (1) and (2),

---

[5] Eckert objects to the Magistrate Judge's use of the phrase "confidential facts."  The Magistrate Judge used the phrase "confidential facts" only in his analysis of two documents, PRIV-00958 and PRIV-00960.  *See* ECF No. 353, at 89.  Prior to the Pennsylvania Supreme Court's decision in *Gillard*, Pennsylvania courts generally had held that communications from attorneys to clients (*i.e.*, category (2) documents) fell within the privilege only if they included "confidential facts."  *See Gillard*, 15 A.3d at 61-62 (McCaffery, J., dissenting) (quoting representative cases).  Even *Cedrone v. Unity Savings Association*—a case that Eckert cites multiple times—endorses this "confidential facts" standard.  *See Cedrone v. Unity Savings Ass'n*, 103 F.R.D. 423, 429 (E.D. Pa. 1984).  While these numerous cases referring to a "confidential facts" standard may not have

the relevant inquiry ordinarily is the confidentiality of the attorney-client communication, not the confidentiality of the information contained within the communication.  *Cf. Gillard*, 15 A.3d at 59.

However, communications in category (3) are governed by a different standard.  As noted in *U.S. Healthcare* (on which Eckert relies), communications solely among attorneys are privileged only if they "include legal advice or confidential information received from the client." *U.S. Healthcare*, 1989 WL 11068, at *1; *see also, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 481 (E.D. Pa. 2005).  For inter-attorney communications to be privileged, then, both the communication *and* the information within the communication must be confidential.  *Id.*

Between the two documents discussed in the main text and the documents cited in Footnote 14, Eckert purports to contest the confidentiality finding as to 95 documents.  However, the vast majority of the documents cited in the footnote are category (3) documents, *i.e.*, communications solely among Eckert personnel.[6]  As the authority cited by Eckert makes clear, whether these

_____

been expressly overruled, the "confidential facts" formulation is in significant tension with *Gillard*, which sought to harmonize the privilege standards applicable to client-to-attorney communications and attorney-to-client communications.  *Gillard*, 15 A.3d at 59.  As described in the text above, the focus for attorney-to-client communications ultimately should be on the confidentiality of the communication rather than the confidentiality of the information within the communication.  Nevertheless, plucking a stray use of the "confidential facts" formulation out of a 97-page opinion does not establish that the Magistrate Judge applied the wrong confidentiality standard to the 95 documents purportedly addressed in Part V.E of Eckert's brief.

[6] Based on Eckert's privilege log, the following communications cited in Footnote 14 are solely among Eckert personnel: PRIV-00040; PRIV-00056; PRIV-00065; PRIV-00066; PRIV-00067; PRIV-00074; PRIV-00075; PRIV-00101; PRIV-00105; PRIV-00189; PRIV-00232; PRIV-00262; PRIV-00263;  PRIV-00264; PRIV-00265; PRIV-00271; PRIV-00305; PRIV-00308; PRIV-00321; PRIV-00322; PRIV-00323; PRIV-00329; PRIV-00333; PRIV-00334; PRIV-00335; PRIV-00554; PRIV-00651; PRIV-00653; PRIV-00654; PRIV-00655; PRIV-00656; PRIV-00657; PRIV-00660; PRIV-00677; PRIV-00679; PRIV-00684; PRIV-00692; PRIV-00701; PRIV-703; PRIV-00711; PRIV-00722; PRIV-00755; PRIV-00760; PRIV-00761; PRIV-00762; PRIV-00763; PRIV-00782; PRIV-00783; PRIV-00784; PRIV-00786; PRIV-00787; PRIV-00788; PRIV-804; PRIV-00810; PRIV-00816; PRIV-00817; PRIV-00830; PRIV-00832; PRIV-00874; PRIV-00881; PRIV-00900; PRIV-00902; PRIV-00911; PRIV-00912; PRIV-00913; PRIV-00919;

documents are privileged *does* depend on whether they contain confidential information conveyed by the client. *See U.S. Healthcare*, 1989 WL 11068, at *1; *SmithKline Beecham*, 232 F.R.D. at 481. With regard to these documents, Eckert has failed to explain why it was erroneous for the Magistrate Judge to consider whether the documents contained "confidential client information." To the contrary, the applicable law required the Magistrate Judge to consider that issue. *See U.S. Healthcare*, 1989 WL 11068, at *1; *SmithKline Beecham*, 232 F.R.D. at 481. Thus, Eckert has provided no basis for overturning the Magistrate Judge's determination with respect to those documents.

With regard to PRIV-00740 (cited in Footnote 14 of Eckert's brief), the Magistrate Judge found that the communication was not a confidential communication, because it included two different clients (Cordish and Parx) who did not share a common legal interest. ECF No. 353, at 70-71. For this reason, the communication itself was not confidential, regardless of whether the information contained within the communication was confidential, and any potentially applicable privilege would have been waived. Neither Eckert nor Parx has challenged this finding in this appeal. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). This unchallenged finding by the Magistrate Judge provides an independent basis for finding that the attorney-client privilege does not apply to PRIV-00740. In addition, as noted above, the Magistrate Judge correctly found that this document did not involve legal advice. ECF No. 353, at 70. For that reason as well, this document is not privileged, regardless of whether the communication was confidential. *Carlino E. Brandywine*, 301 A.3d at 479.

---

PRIV-00935; PRIV-00938; PRIV-00942; PRIV-00949; PRIV-00950; PRIV-00973; PRIV-00987; PRIV-00988; PRIV-00996; PRIV-00998; and PRIV-01008.

With regard to the remaining documents—PRIV-00958 and PRIV-00960, discussed in the main text, along with 15 documents cited cursorily in Footnote 14[7]—the relevant confidentiality inquiry is whether the communications themselves were confidential, not whether the information contained within the communication was independently confidential. *See Gillard*, 15 A.3d at 59. Because POM does not have access to the documents in question, it cannot address this issue in detail with respect to each document. However, POM notes that Eckert bears the burden of establishing the requisite confidentiality as to these communications. *See, e.g. Lefta*, 2011 WL 2456616, at *6. And "to sustain this burden of proof, [Eckert] must show, by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of the privilege." *Township of Neshannock*, 181 A.3d at 474 (quotation omitted; cleaned up). It does not appear that Eckert has carried this burden. And in any event, as noted above, the Magistrate Judge correctly found that none of these documents involved legal advice. For that reason, none of these documents is privileged, regardless of whether the communications were confidential. *Carlino E. Brandywine*, 301 A.3d at 479.

### V. The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to PRIV-00949.

In Part V.F of its brief, Eckert contends that the Magistrate Judge erred by holding that PRIV-00949 does not fall within the attorney-client privilege. *See* ECF No. 367, at 21-24. Eckert's argument lacks merit. As an initial matter, the Magistrate Judge found that PRIV-00949 did not involve legal advice. ECF No. 353, at 86-87. This alone defeats an assertion of privilege. *Carlino E. Brandywine*, 301 A.3d at 479. Eckert has not specifically explained how this document

---

[7] These documents are PRIV-00081; PRIV-00106; PRIV-00107; PRIV-00108; PRIV-00366; PRIV-00493; PRIV-00495; PRIV-00496; PRIV-00497; PRIV-00597; PRIV-00614; PRIV-00806; PRIV-00807; PRIV-00843; and PRIV-00971.

involves legal advice.  Thus, the Court should reject Eckert's appeal without reaching Eckert's contentions regarding confidentiality.

Turning to the confidentiality issue, PRIV-00949 is a communication solely among outside counsel.  Thus, it is potentially privileged only if it "include[s] legal advice or confidential information received from the client."  *U.S. Healthcare*, 1989 WL 11068, at *1; *see also SmithKline Beecham*, 232 F.R.D. at 481.  As noted above, the Magistrate Judge found that the document did not involve legal advice.  ECF No. 353, at 86-87.  And the Magistrate Judge specifically found that "there is nothing in the record before us to suggest that these communications involved any confidential client information." *Id.* at 87.  Under the applicable legal standard, then, these inter-attorney communications are not privileged.  *U.S. Healthcare*, 1989 WL 11068, at *1; *see also SmithKline Beecham*, 232 F.R.D. at 481.  Contesting the Magistrate Judge's factual finding, Eckert asserts that the document contains certain information for which "[t]here is no plausible source . . . other than the referenced clients themselves."  ECF No. 367, at 24.  Because POM does not have access to PRIV-00949, it cannot respond with specificity to that assertion.  However, POM observes that it is not enough for Eckert to argue that the client was the source of that information.  Eckert must show that the information received from the client was "*confidential*."  *U.S. Healthcare*, 1989 WL 11068, at *1 (emphasis added); *see also SmithKline Beecham*, 232 F.R.D. at 481.  And Eckert must show that the Magistrate Judge's factual finding on this issue was clearly erroneous.  *Haines*, 975 F.2d at 91.  Eckert does not appear to have cleared this high bar.  For this reason as well, the Court should reject Eckert's appeal with respect to PRIV-00949.

**VI.     The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to the Fourth, Fifth, and Sixth Paragraphs of PRIV-00366.**

In Part V.G of its brief, Eckert contends that the Magistrate Judge erred by finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 do not fall within the attorney-client privilege. *See* ECF No. 367, at 24-25.   In particular, Eckert appears to identify two purported bases for concluding that the paragraphs at issue involve legal advice.   First, Eckert asserts that those paragraphs "discuss strategic considerations relating to proposed legislation."   *Id.* at 24.   As described in Part II above, strategic advice regarding legislation is privileged only if that advice constitutes *legal* advice.   Eckert does not even assert that that the paragraphs involved *legal* advice, let alone present an argument to that effect.   *See* ECF No. 367, at 24.   Eckert has thus failed to show that the Magistrate Judge committed clear error or acted contrary to law by finding—after detailed review—that the paragraphs involved non-legal advice.   *See* ECF No. 353, at 56-57.

Second, Eckert asserts that "the sixth paragraph of the email explicitly 'presents opinions and sets forth defense tactics,' which weighs in favor of finding that the privilege extends to that portion of the document."   ECF No. 367, at 25 (quoting *U.S. Fidelity & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992) (brackets omitted)).   As an initial matter, this argument only applies to "the sixth paragraph," *id.*, and thus it provides no basis for finding that the fourth or fifth paragraphs are privileged.   In addition, it is unclear from Eckert's arguments whether the "opinions" and "tactics" discussed in the sixth paragraph involve legislative or lobbying strategy, as opposed to legal advice.   If those opinions involve lobbying or legislative strategy rather than legal advice, then they do not fall within the attorney-client privilege.   *See generally* Part II, *supra*. Nothing in *U.S. Fidelity* alters this conclusion: the documents at issue in that case appear to have related directly to litigation, and there is no indication that either of the documents related to proposed legislation.   *See* 809 F. Supp. at 363 (describing Exhibits 2C and 2D, the documents at

17

issue in the discovery dispute).  Eckert has failed to show that the Magistrate Judge committed clear error or acted contrary to law with respect to the fourth, fifth, or sixth paragraphs of PRIV-00366.

**VII.    The Magistrate Judge Did Not Commit Clear Error or Act Contrary to Law With Respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.**

In Part V.H of its brief, Eckert contends that the Magistrate Judge erred by finding that the attorney-client privilege does not apply to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.  *See* ECF No. 367, at 25-26.  First, Eckert asserts that "'legislative advice' is not a subject matter excluded from the scope of the attorney-client privilege."  *Id.* at 25.  As described in Part II above, whether advice regarding legislation is privileged depends on whether that advice constitutes *legal* advice.  Here, Eckert does not even assert that these documents involve legal advice, let alone provide an argument to that effect.  The mere fact that these documents contain "legislative advice" does not suffice to show that they include legal advice.  *See generally* Part II, *supra*.

Second, Eckert asserts that "Stewart's emails in the chain 'present opinions and set forth defense tactics,' which, as noted above, weighs in favor of dinging that that privilege extends to these emails."  ECF No 367, at 25 (quoting *U.S. Fidelity*, 809 F. Supp. at 364 (brackets omitted)).  It is unclear from Eckert's argument whether the "opinions" and "tactics" in these documents involve legislative or lobbying strategy, as opposed to legal advice.  If those opinions involve lobbying or legislative strategy rather than legal advice, then they do not fall within the attorney-client privilege.  *See generally* Part II, *supra*.  As noted above, *U.S. Fidelity* involved documents directly related to litigation, as opposed to legislative strategy.  809 F. Supp. at 363.

Third, Eckert contends that the Magistrate Judge applied the incorrect confidentiality standard to these documents.  *See* ECF No. 367, at 26.  The discussion in the last paragraph of Part

IV above addresses confidentiality issues with respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.

### VIII.  Eckert Has Not Provided Any Basis for Overturning the Magistrate Judge's Rulings Regarding Work Product.

With a few exceptions, the Magistrate Judge overruled the assertions of the federal work-product doctrine as to the documents at issue.  *See* ECF No. 353, at 95-97.  In a short footnote to the very last sentence of its brief, Eckert asserts that "[w]hether POM has a 'substantial need for the materials' withheld on the basis of the work product doctrine should be considered."  ECF No. 367, at 27 n.5.  The Court should not even consider this cursory argument.  Eckert does not develop the argument at all, making it only in passing, in a footnote and without citing a single case to support the argument.  *Id.*  Eckert does not even identify any specific portion of the Magistrate Judge's analysis that Eckert believes is erroneous.  *Id.*  By raising this argument only in cursory and undeveloped fashion, in a footnote and without citing meaningful authority in support, Eckert has waived this argument.  *See, e.g.*, *Wahlig v. Kijakazi*, No. 1:20-cv-2310, 2022 WL 4473594, at *5 n.7 (M.D. Pa. Sept. 26, 2022) (collecting cases).  It is also telling that none of the six questions included in Eckert's Statement of Questions Involved (required by Local Rule 7.8(a)) address the work-product doctrine; all of them relate to the attorney-client privilege.  ECF No. 367, at 9-10.

Moreover, even if the Court were to consider Eckert's work-product argument, that argument lacks merit.  The crux of Eckert's cursory argument seems to be that "the *substance and content* of Defendants' communications with any client purportedly adverse to POM is not necessary to establish the alleged fact of a purported adversity between POM and such other client."  ECF No. 367, at 27 n.5 (emphasis in original).  This contention is erroneous in several ways.  As an initial matter, Eckert's argument appears to invoke the "substantial need" component of the work-product doctrine.  Under that rule, a party can obtain discovery of otherwise protected

work product if it "shows that it has substantial need for the materials." Fed. R. Civ. P. 26(b)(3)(A)(ii). But the "substantial need" inquiry arises only if the document was "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). "[T]he party opposing discovery bears the initial burden of proving that the material in question was in fact prepared in anticipation of litigation." *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 246 (W.D. Pa. 2007). Eckert does not even claim that the documents at issue were prepared in anticipation of litigation, let alone provide an argument that satisfies its burden to show that these lobbying and legislative documents were prepared in anticipation of litigation. *See* ECF No. 367, at 27 n.5. Eckert having failed to meet its initial burden, there is no need to consider the substantial-need issue. *Highland Tank*, 246 F.R.D. at 246.

The substantial-need argument also fails on its own terms. The substance of POM's work for Parx and other casino clients *is* essential to proving that such work was adverse to POM. Unless Eckert is prepared to concede that its work was directly adverse to POM, it will be necessary for POM to determine the subject matter of those representations and how they impacted POM and its interests. The documents at issue are highly relevant to this issue and others.

For all these reasons, the Court should reject Eckert's conclusory arguments regarding the work-product doctrine.

## <u>CONCLUSION</u>

For the reasons described above, the Court should deny the appeals filed by Eckert and Parx and should affirm the Magistrate Judge's December 1, 2023 decision.

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Jeffrey B. Jensen*
Jeffrey B. Jensen*
Michael Nolan*
Michael Martinich-Sauter*
Bola Adeniran*
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com

* Appearing by special admission

George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

**Counsel for Plaintiff Pace-O-Matic, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served upon counsel of record for all parties via the Court's ECF filing system on February 9, 2024.

*/s/ Jeffrey B. Jensen*