# In the United States District Court for the Middle District of Pennsylvania

| | | |
|---|---|---|
| PACE-O-MATIC, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | [ELECTRONICALLY FILED] |
| | ) | |
| *vs.* | ) | Docket No. 20-292 |
| | ) | |
| ECKERT, SEAMANS, CHERIN | ) | WILSON, J. |
| & MELLOT, LLC, *et al.,* | ) | SAPORITO, JR., M.J. |
| | ) | |
| *Defendants.* | ) | |

---

**REPLY BRIEF OF GREENWOOD GAMING & ENTERTAINMENT, INC., d/b/a PARX CASINO IN SUPPORT OF ITS APPEAL**

---

**GA BIBIKOS LLC**

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for*
*Greenwood Gaming & Entertainment, Inc.*
*d/b/a Parx Casino*

February 23, 2024

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................1

II.   REPLY ARGUMENT...................................................................2

    A.    Parx met its burden of proving that the attorney-client privilege applies to the documents; POM did not...................3

    B.    The magistrate applied the wrong standard. .........................7

III.  CONCLUSION...........................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. 2018).................................................................................5

*Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 208 (E.D. Pa. 2008) ..............................................................................8

*In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997)..................8, 9, 12

*In re Investigating Grand Jury of Philadelphia Cnty.*, 593 A.2d 402, 407 (Pa. 1991) ...............................................................5

*Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001)................................................................................3

*Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1266 (Pa. Super. 2007)..........................................................................5

*N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009)................................................................................12

*SEPTA v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) .............................................................................8

*Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018) ............................................................3

*Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2013 WL 2252729, at *4 (M.D. Pa. May 22, 2013) .......................................12

**Other Authorities**

1 Paul R. Rice, Attorney Client Privilege in the United States § 7:2 (2019)...............................................................8

Greenwood Gaming & Entertainment, d/b/a Parx Casino ("Parx"), files its reply brief in support of its appeal from an order issued by Magistrate Judge Saporito compelling one of Parx's law firms – the defendant Eckert, Seamans, Cherin & Mellot, LLC ("Eckert") – to turn over Parx's privileged documents to Pace-O-Matic, Inc. ("POM").

## I.    INTRODUCTION

The Court should reverse. As Parx explained in its opening brief, POM has (yet again) requested from Eckert numerous documents that are protected by the attorney-client privilege. That privilege belongs to Parx, a non-party in this case.  The magistrate judge (yet again) took a novel approach to circumvent the privilege and satisfy POM's requests. The magistrate judge concluded in *per se* fashion that communications involving "legislative advice" are not protected by the attorney-client privilege.  But the magistrate judge erred. The attorney-client privilege applies to confidential communications between lawyers and clients (and their respective agents) reflecting legal advice on legislative matters.

The arguments in POM's opposition brief do not compel a different conclusion. In fact, POM does not meaningfully advance *any* arguments that compel the Court to affirm the magistrate judge (even though POM

1

obtained leave to exceed page limitations and used 12-pt. font in violation

of local rules to further exceed its allotted space). To illustrate:

- POM argues that Parx bears the burden to demonstrate the privilege applies. That point is unremarkable. Parx met its burden with sworn testimony from a declaration and legal argument. The burden shifted to POM to demonstrate that the privilege does not apply or that an exception to the privilege applies, and POM has shown neither. Consequently, Parx should prevail without further analysis.

- POM also argues that the magistrate judge applied the correct legal standard to determine whether "legislative advice" is protected by privilege. However, the magistrate judge contrived this "legislative advice" rule and applied it categorically to scores of documents to justify the disclosure to POM. That was error.

Accordingly, the Court should reject POM's arguments, reverse the

magistrate judge, and hold that Parx's attorney-client privilege precludes

POM's discovery of the documents at issue in this appeal.

## II.    REPLY ARGUMENT

Parx's opening brief is straightforward and disposes of virtually all

of POM's legal arguments. Parx submits this short reply brief to make

two points in response to arguments in sections I-II of POM's opposition.[1]

---

[1] The rest of POM's brief addresses arguments that Eckert made in its opening brief about specific documents. Parx defers to Eckert's briefs on those points and urges the Court to reject POM's contrary arguments.

**A.    *Parx met its burden of proving that the attorney-client privilege applies to the documents; POM did not.***

First, POM argues that Parx bears the burden of proving the privilege applies, not POM. *See* POM's Opp. Br. at 1-2. The point is unremarkable.

Parx understands its burden to demonstrate (in the first instance) that the privilege applies, and Parx knows how to satisfy its initial burden. *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Super. 2018). That is, "[t]he party asserting the privilege has the initial burden to prove that it is properly invoked, and the party seeking to overcome the privilege has the burden to prove an applicable exception to the privilege." *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001).

Despite POM's suggestion to the contrary, Parx satisfied its burden of proof. (In fact, Parx is the only litigant to submit evidence in this ancillary proceeding.) As soon as the magistrate judge ordered Eckert to turn over Parx's privileged documents, Parx filed an appeal, submitted its brief, and submitted a sworn affidavit supporting its privilege assertion. *See Neshannock*, 181 A.3d at 474 ("To sustain this burden of proof, the party asserting the privilege must show, by record evidence

3

such as affidavits, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege.") (cleaned up).

Parx submitted sworn testimony in the form of a declaration from its then Chief Counsel, Mr. Thomas C. Bonner. *See* Parx Opening Br. Tab "A" (cited as "Bonner Decl. ¶ __"). As Mr. Bonner explained, these communications predominantly involve legal advice even though they may also involve advice on legislative, lobbying, or public relations matters. *See* Bonner Decl. ¶ 8 (third party consultants' participation in such communications "***was necessary so that both Parx's outside and in-house counsel could provide legal advice to Parx regarding its legal options under existing law or proposed new legislation***.") (emphasis added).

Mr. Bonner also explained that (a) Parx engages third-party professionals to speak and act on its behalf; (b) communications among Parx, its counsel (both in-house and outside counsel), and their respective agents are for purposes of Parx obtaining *legal* advice; and (c) Parx expects the communications among its lawyers and consultants to be confidential. *See* Bonner Decl. ¶¶ 7-19. As the Court is aware, the client's perspective on privilege and waiver controls the analysis, not the

4

characterizations of lawyers, judges, or opposing parties and their counsel. *See, e.g., Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. 2018) (privilege holder's decision on privilege or waiver controls).

In the end, Parx submitted evidence demonstrating that it has satisfied each element of the test for applying the attorney-client privilege under Pennsylvania law. Parx thereby met its burden of demonstrating that it sought out and discussed legal advice from its lawyers and consultants such that their communications embodied in documents should be privileged and protected from disclosure.

Once Parx met its burden, POM then had the obligation to demonstrate that the privilege does not apply or an exception to the privilege applies. *In re Investigating Grand Jury of Philadelphia County*, 593 A.2d 402, 407 (Pa. 1991) (burden of proof is upon party asserting that disclosure of information would not violate privilege); *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1266 (Pa. Super. 2007) (affirmed by equally divided court at 605 Pa. 468, 992 A.2d 65 (2010) (setting forth the burden-shifting analysis developed by both Pennsylvania state and federal courts).

5

POM has done neither. As a threshold matter, POM did not assert any exception to the privilege. Indeed, there are no exceptions that remotely apply here, and POM concedes that has not raised any exceptions. *See* POM's Opp. Br. at 2 ("But this dispute does not address whether any exception to the attorney-client privilege applies. Instead, this dispute addresses whether Eckert and Parx have established the baseline requirements for the privilege to apply, including the requirements that the communications at issue involve "legal advice" and meet the applicable confidentiality standards.").

More importantly, POM did not submit any evidence to contradict Parx's evidence that the documents at issue contain communications about legal advice. In fact, POM has failed to come forward with anything – let alone evidence – to show that the privilege does not apply or that an exception does. Based on the burdens, Parx should prevail without further analysis. *See In re Grand Jury, supra*; *Nationwide, supra.*

Accordingly, the Court should reject POM's argument, reverse the magistrate judge, and hold that the privilege precludes discovery of the documents at issue.

6

### B.    *The magistrate applied the wrong standard.*

Second, POM argues that the magistrate judge did not create a *per se* rule as Parx pointed out in its opening brief (*see, e.g.*, pp. 9, 11-12, and 14), arguing instead that the magistrate judge engaged in "a painstaking effort to apply the correct legal standard to each document to determine whether the communication predominantly involved legal advice." *See* POM's Opp. Br. at 3, 7 n.3, & 9. POM is wrong. The magistrate judge categorically declined to apply the privilege to documents containing or seeking legal advice because they also touch on legislative, policy, public relations, or communications advice. This is not the right standard.

The attorney-client privilege applies to mixed communications – ones between lawyers and clients (or their respective agents) that involve legal and other advice, such as business advice, lobbying, public relations advice, or other professional advice – when the primary purpose of the communication is legal in nature:

> The Third Circuit has held that even when "the decision includes consideration of" various business concerns, the attorney-client privilege still applies to the communications if the decision "was infused with legal concerns and was reached only after securing legal advice."

7

*See, e.g., SEPTA v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) (citing *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997); *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 208 (E.D. Pa. 2008); 1 Paul R. Rice, *Attorney Client Privilege in the United States* § 7:2 (2019).

In *Ford*, the court addressed documents containing information discussed during a "Policy and Strategy Committee" for Ford Motor Company. The meeting included top executives, counsel, and other professionals. Among non-legal information, the communications involved counsel's opinion on the legal implications of proposed courses of action. The Third Circuit held that the privilege applied to protect the documents that embodied these communications from disclosure:

> Our review of the final minutes, the draft minutes, the report Nolte summarized at the meeting, and relevant affidavits, leads us to conclude that ***the communications in the meeting were made for the purpose of securing legal advice***. Ford clearly had concerns about the Bronco II; this is not surprising given that the product was in the early stages of its development. ***Nolte examined the legal implications of some of those concerns and proposed a particular course of action, contained in his report to the Policy and Strategy Committee, to address them.*** The Policy and Strategy Committee meeting itself was called in part to discuss Nolte's proposal. The discussion at the meeting, then, was intended to secure Nolte's legal advice.
>
> The court later stated that the minutes were "business records" that memorialized "essentially business and safety

8

decisions." We disagree with the district court's conclusions as to the nature of the documents. ***The documents do not contain merely factual material nor do they detail mere business decisions; in that respect, the district court clearly erred in describing these documents***. ***Certainly, the ultimate decision reached by the Policy and Strategy Committee could be characterized as a business decision, but the Committee reached that decision only after examining the legal implications of doing so.*** Even if the decision was driven, as the district court seemed to assume, principally by profit and loss, economics, marketing, public relations, or the like, ***it was also infused with legal concerns, and was reached only after securing legal advice***. At all events, ***disclosure of the documents would reveal that legal advice***. We thus hold that the minutes of the 1982 meeting are protected from discovery by the attorney-client privilege.

*See Ford*, 110 F.3d at 966 (emphasis added).

There is no material difference between the facts here and the situation in *Ford.*  Here, for example, a corporate client has questions about the legal implications of pending legislation as well as related lobbying and public relations efforts. *See* Bonner Decl. ¶ 8. The client engaged the services of lawyers to answer those legal and other questions, from time to time engaging other professionals to discuss these matters confidentially to aid the lawyers in providing legal advice to the client so the client may make informed business decisions. *See* Bonner Decl. ¶¶ 7-19.

9

Like the overruled trial judge in *Ford* (who categorized the documents as containing "business advice" and categorically declined to apply the privilege on that basis), the magistrate judge here basically looked for anything in the documents that touched on "legislative" or "political" topics and repeated the mantra that the privilege does not apply to such documents because they involve "legislative advice" not "legal advice." *See, e.g.*, Slip. Op. at 33 ("The subject matter of these communications concerns legislative, political, or policy advice only—not legal advice—and thus they are not protected by attorney-client privilege.") (repeated verbatim more than 40 times in the opinion).

In other words, the magistrate judge did not explain whether the predominant purpose of the communication for the client was legal in nature as opposed to something else. The magistrate judge also did not appreciate that the communications are all infused with legal advice. *See* Bonner Decl. ¶ 7-8. Instead, the magistrate judge treated discussions among Parx, its lawyers, and/or its third-party lobbyists and consultants about legislative matters essentially as a "poison pill" of sorts that destroys the privilege even though the predominant purpose of these

10

communications is to obtain legal advice. The magistrate judge erred.
*See Ford,* 110 F.3d at 966.

In fact, POM effectively concedes that the magistrate judge applied
the wrong rule to communications involving "legislative advice."   *See*
POM's Opp. Br. at 10 ("communications arising in the legislative context
*can* fall within the privilege if they predominantly relate to legal advice,
as opposed to . . . other non-legal subjects.") (emphasis added).  Yet this
is not what the magistrate judge did.  Rather, he categorically declined
to apply the privilege to any documents containing "legislative, political,
or policy advice."  This was error.[2]

Ironically, POM argues that "Parx and Eckert effectively offer no
'fact-specific,' document-specific, or context-specific argument at all
regarding the legal-advice issue."  *See* POM's Opp. Br. at 9.  That is the
magistrate judge's obligation when deciding whether the predominant

---

[2] POM also concedes that the magistrate judge applied the wrong
rule when assessing the confidentiality of the documents at issue.  *See*
POM Opp. Br. at 17-18 n.5 (acknowledging that Pennsylvania law
requires a court assessing a withheld attorney-client communication to
"focus" on "the confidentiality of the communication rather than the
confidentiality of the *information within* the communication.") (emphasis
added).  But the magistrate judge did not do this, either.  *See, e.g.*, Slip.
Op. at 89 ("there is nothing in the record before us to suggest that this
communication involved *confidential facts*") (emphasis added).

purpose of a communication is for legal advice. *Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2013 WL 2252729, at *4 (M.D. Pa. May 22, 2013). The magistrate judge seemingly did not engage in that analysis.

In the end, Parx is not seeking advice from its attorneys on buying lawn furniture. When Parx is engaged in discussions with its lawyers and third-party consultants and lobbyists, or when the lawyers and professionals engage in discussions on Parx's behalf, ***Parx wants advice on legal matters.*** Sometimes, the advice that Parx needs also includes legal advice on pending legislative or policy matters that affect (or may affect) its rights and obligations under existing and future law and wants to know how to conform its behavior accordingly.[3] But that does not automatically destroy the privilege. *See Ford*, 110 F.3d at 966.

The Court should not park its common sense at the door when reviewing these privilege issues. *See N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009). The communications embodied in the

---

[3] POM would no doubt make the same arguments as Parx if roles were reversed and the Court ordered POM to turn over to Parx all of its communications among its lawyers, lobbyists, public relations consultants, and other third parties who help POM's lawyers advise the company on existing and future legislation involving the legality or illegality of so-called "skilled games."

12

documents at issue involve advice on legal matters regardless of whether the communications also involve ancillary discussions regarding legislative, policy, politics, business, or public relations. The magistrate judge erred by concluding otherwise, and POM's arguments do not compel a different result.

Accordingly, the Court should reject POM's argument, reverse the magistrate judge, and hold that the privilege protects the documents from disclosure.

## III.  CONCLUSION

WHEREFORE, the Court should reverse the order and opinion of the magistrate judge and hold that the attorney-client privilege precludes disclosure of the documents at issue to POM.

February 23, 2024                        Respectfully submitted,

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Counsel for Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino*

14

## CERTIFICATE OF SERVICE

I hereby certify that I filed and served the foregoing electronically through the Court's ECF system such that counsel will be served automatically.

/s George A. Bibikos
George A. Bibikos

## WORD-COUNT CERTIFICATION

Pursuant to L.R. 7.8, I hereby certify that the foregoing document contains 3,005 words based on the word-count feature of Microsoft Word.

/s George A. Bibikos
George A. Bibikos