**HUSCH BLACKWELL**

Jeff B. Jensen
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Direct: 314.345.6464
Fax: 314.480.1505
jeff.jensen@huschblackwell.com

March 26, 2024

**VIA ECF**

Hon. Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania

> Re: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*, No. 1:20-cv-292 – Discovery Dispute Regarding Eckert Invoices

Dear Judge Wilson:

Plaintiff Pace-O-Matic, Inc. ("POM") respectfully presents to the Court the outstanding discovery dispute described below. POM previously served requests for production of documents on Defendants (together, "Eckert") that sought copies of invoices relating to work that Eckert performed for Parx Casino and other casino clients that was adverse to POM (the "Invoices"). Eckert has refused to produce the Invoices on two broad grounds. First, Eckert contends that the Invoices are not relevant. Second, Eckert contends that the attorney-client privilege and/or the work-product doctrine warrant withholding the Invoices. The parties have conferred about these issues by telephone several times but have not reached agreement on their dispute. For the reasons described below, Eckert's positions lack merit, and the Invoices should be produced, subject to limited redaction as described in Part II below.

**I.      The Invoices Are Highly Relevant, Particularly With Respect to POM's Request for Disgorgement.**

In its Second Amended Complaint, POM seeks as relief "[d]isgorgement of all legal fees and other payments to Eckert relating to any representation that was adverse to POM, including but not limited to representations of Parx." ECF No. 243, at p.30. In a breach-of-fiduciary-duty claim based on a lawyer's impermissible conflicts of interest, disgorgement is an appropriate remedy. *See, e.g.*, *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1285 (Pa. 1992) ("Courts throughout the country have ordered the disgorgement of fees paid or the forfeiture of fees owed to attorneys who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interests."). As the Third Circuit has explained in another context,

1

"disgorgement claims seek not to compensate for a loss, but to deprive wrong-doers of ill-gotten gains." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) (cleaned up). The Invoices are highly relevant to POM's request for disgorgement: the Invoices provide direct evidence of the legal fees that Eckert earned from representations adverse to POM, and POM seeks disgorgement of all such fees. Thus, the Invoices are highly relevant to a central issue in this litigation.

In response, Eckert claims that POM cannot recover disgorgement of legal fees paid by clients other than POM. The Third Circuit rejected precisely this contention in *Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015 (3d Cir. July 22, 2022) (applying Pennsylvania law).[1] In *Avco*, the plaintiff sued its former counsel, arguing that the lawyer had represented another party adverse to the plaintiff in violation of the attorney's fiduciary duties. *Id.* at *1. Among other remedies, the plaintiff sought disgorgement of fees that the lawyer was paid for the representation adverse to the plaintiff. The lawyer claimed that the plaintiff was "not entitled to disgorgement because it did not pay her for her work in [the] case [adverse to the plaintiff] and a party cannot seek disgorgement of monies it has not paid." *Id.* at *2 (cleaned up). The Third Circuit rejected this argument, explaining that "disgorgement need not be a refund of fees paid; it can, for example, consist of an accounting of profits wrongfully made." *Id.* As the Third Circuit noted, "disgorgement centers on the wrongdoer's gain, not the plaintiff's loss." *Id.*

This case presents the same situation as *Avco*: POM is suing its former lawyers—Eckert—for engaging in conflicted representations that were adverse to POM. *See generally* ECF No. 243. Like the plaintiff in *Avco*, POM seeks disgorgement of the fees that Eckert earned from engaging in its conflicted representations. Under *Avco* (and the generally applicable principles of disgorgement on which the Third Circuit relied), POM can seek disgorgement of such fees. Because the Invoices are highly relevant to that disgorgement theory, they are discoverable and should be produced.

## II.    Neither the Attorney-Client Privilege Nor the Work-Product Doctrine Justifies the Wholesale Withholding of the Invoices.

Eckert has also withheld the Invoices based on assertions of the attorney-client privilege and the work-product doctrine, though Eckert has never included the invoices on any privilege log. Neither of these objections justifies withholding the Invoices in their entirety. With regard to the attorney-client privilege, legal billing records are privileged only to the extent that "the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege." *Levy v. Senate of Pa.*, 65 A.3d 361, 373 (Pa. 2013). Under this standard, a single invoice often includes both privileged and non-privileged content. *See Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, No. 2:18-cv-345, 2022 WL 1642394, at *7 (W.D. Pa. May 24, 2022).

---

[1] Eckert previously relied on *Avco* in its motion to dismiss the Second Amended Complaint. *See* ECF No. 258 at 16.

"For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege." *Levy*, 65 A.3d at 373. On the other hand, "[g]eneral descriptions of legal services, *e.g.*, that a lawyer made a telephone call, sent an e-mail, drafted a pleading, or sat in conference with other lawyers or the client are not protected." *Janesch v. Pa. House of Representatives*, 299 A.3d 1030, 1040-41 (Pa. Cmwlth. 2023); *see also, e.g.*, *Valenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 218 (M.D. Pa. 2003) ("The general nature of the privileged matter, the occasion and circumstances of any communications, actual circumstances of the attorney-client relationship remain discoverable, even when the underlying communication itself may be privileged."); *see also id.* at 218-20 (identifying time entries that did not warrant any redaction at all). In addition, the amount of legal fees incurred or paid is not privileged. *See, e.g.*, *Valenti*, 243 F. Supp. 2d at 218 ("In general, the facts of . . . attorney's fees . . . are not privileged."); *United States v. Castro*, No. 94-223, 1995 WL 563808, at *1 (E.D. Pa. Sept. 21, 1995) ("Generally there is no attorney-client privilege concerning payment of legal fees."); *In re Slaughter*, 694 F.2d 1258, 1259-60 (11th Cir. 1982) (rejecting assertion of privilege regarding "records of attorney's fees paid").

"Where privileged and non-privileged information may exist side-by-side in billing records, courts have reconciled these privilege concerns by directing that the records be released subject to redaction." *Prime Energy*, 2022 WL 1642394, at *7; *see also Levy*, 65 A.3d at 373 (affirming order requiring production of invoices, subject to certain redactions). Where any portion of the invoice is redacted based on privilege, the producing party must log the redaction on a privilege log. *Prime Energy*, 2022 WL 1642394, at *7. POM respectfully requests that the Court compel Eckert to produce the Invoices, with any redactions of purportedly privileged information logged on a privilege log.[2]

The federal work-product doctrine similarly does not justify the wholesale withholding of the Invoices. As an initial matter, as Magistrate Judge Saporito explained in the context of an earlier discovery dispute, the work-product doctrine does not protect "work product which concerns the activities of counsel that are directly in issue" and "cannot shield a lawyer's papers from discovery where that work product implicates or creates a conflict of interest." ECF No. 166 at 30, 31. Here, the Invoices directly relate to Eckert's conduct that is at issue in this case, and the Invoices reflect and describe conduct that implicates conflicts of interest. Thus, the work-product doctrine does not apply to the Invoices. To the extent that the work-product doctrine potentially applies to the Invoices, courts permit the redaction of only those portions of attorney billing records that would disclose information covered by the work-product doctrine. *See, e.g.*, *Prime Energy*, 2022 WL 1642394, at *7. POM respectfully requests that the Court compel Eckert to produce the Invoices, with any redactions of purported attorney work product logged on a privilege log. *See Prime Energy*, 2022 WL 1642394, at *7.

---

[2] Without access to the redacted invoices and privilege log, POM cannot assess whether any exceptions to the attorney-client privilege may apply. Based on POM's understanding of Eckert's conduct at issue in this case, the crime-fraud exception may apply to certain redactions that Eckert may make, and POM reserves the right to raise that issue at the appropriate time.

3

Respectfully,

*/s/ Jeff B. Jensen*

cc:     All counsel of record (via ECF)