

# GA BIBIKOS LLC
r e l e n t l e s s .   a d v o c a c y .   p e r i o d .

**VIA ECF**

George A. Bibikos
(717) 580-5305
gbibikos@gabibikos.com
www.gabibikos.com

The Honorable Jennifer P. Wilson
United States District Court
    for the Middle District of Pennsylvania
Ronald Reagan Federal Bldg. & U.S. Courthouse
228 Walnut Street
Harrisburg, PA 17101

April 5, 2024

Re:      Response to Plaintiff's November 16, 2023 Discovery Dispute Letter: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC et al.*, No. 1:20-cv-292-JPW

Dear Judge Wilson:

I represent Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). Via ECF, I received a copy of a letter filed by Pace-O-Matic, Inc. ("POM"), dated March 26, 2024 (Doc. 347). The letter requests that the Court compel the defendants in this case to produce invoices reflecting the work of Eckert Seamans Cherin & Mellot, LLC ("Eckert") for Parx.

Please accept this as Parx's response to POM's letter, for Your Honor's benefit, before the Court schedules a conference. As Your Honor knows, Parx is not a party, but the Court has allowed Parx to participate in this case in connection with repeated requests by POM during discovery for information from the defendants and third parties that is privileged and confidential to Parx.

As the privilege holder, Parx requests the opportunity to participate in any status conference the Court schedules regarding this latest dispute. Parx also reserves its right to respond to any ensuing motion from POM regarding this dispute or to seek relief from the Court in response to POM's request for invoices because POM's requested relief implicates Parx's privileges.

By way of background, POM requested invoices reflecting Parx's payment for Eckert's legal services. Eckert objected to the request years ago based on relevance and privilege. In its letter to the Court, POM argues the invoices are relevant because POM broadly requested disgorgement of legal fees as a remedy. POM also claims that the attorney-client privilege and work-product doctrine do not apply to invoices because they contain both privileged and non-privileged information.

The invoices are not subject to discovery for several reasons. Rule 26(b) sets forth the limits on discovery: "Parties may obtain discovery regarding any **nonprivileged** matter that is **relevant** to any party's **claim or defense** and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit**." Fed. R. Civ. Pro. 26(b) (emphasis added).

First, the invoices are not relevant. Under Pennsylvania law, disgorgement is a remedy for breach of a fiduciary duty. *See Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1285 (Pa. 1992). The remedy is designed to compensate a plaintiff for the defendant's wrongful conduct. But it is equitable in nature. *See, e.g., Kars 4 Kids Inc. v. America Can!,* 8 F.4th 209, 217 (3d Cir. 2021); *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. CV


19-513, 2024 WL 169659, at *1 (E.D. Pa. Jan. 16, 2024). Neither the Pennsylvania Supreme Court nor any lower state court, to Parx's knowledge, has expressly held that a plaintiff in such a case is entitled to disgorgement of all fees paid by *other clients* with alleged adverse interests in order to address allegedly wrongful conduct of the defendant. That result would be inequitable. To the extent it is available to the plaintiff, the disgorgement remedy should be limited to fees paid by the plaintiff to the defendant law firm. *See, e.g., Maritrans*, *supra*.

This case is about whether Eckert properly secured a conflict waiver from POM and, if one was not so in place, continued to represent two clients with adverse business interests. For its part, Parx waived any potential conflict with POM at the outset of Eckert's representation of both clients. To Parx's knowledge, there is no dispute that Eckert walled off any Pennsylvania lawyers working for Parx from any information about POM. Parx did not receive any of POM's client information from Eckert in the course of the firm's concurrent representation of the two clients. Parx's payment of fees to Eckert, even during the concurrent representation, is not an amount that Eckert wrongfully gained from Parx. The fees, let alone the invoices, are not subject to discovery. To the extent POM proves it is entitled to disgorgement, that remedy should be limited to refund of fees that POM paid to Eckert. Consequently, the invoices reflecting legal fees that Parx paid to Eckert are not relevant under Rule 26. POM is not entitled to rummage through invoices reflecting Eckert's work for Parx based solely on a threadbare request for disgorgement in its complaint.

The case on which POM relies for a contrary proposition, *Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015 (3d Cir. July 22, 2022), is misplaced. *Avco* is an unpublished opinion that is not binding on this Court. The opinion does not address the relevancy under Rule 26 of legal invoices of other clients in the context of a discovery dispute. Moreover, the opinion admittedly relies exclusively on *dicta* from the Pennsylvania Supreme Court regarding the disgorgement remedy. Even a cursory reading of that *dicta* reveals that the case does not stand for the proposition that plaintiffs in fiduciary duty cases are presumptively entitled to disgorgement of legal fees paid by other clients such that they are relevant in the Rule 26 sense. The fees Parx paid Eckert, let alone the invoices revealing confidential information, are not subject to discovery.

Furthermore, even if *Avco* stood for the proposition POM claims – which it does not – POM misunderstands that equity would require the fees to be paid back to Parx, not POM, if in fact disgorgement of fees paid proved to be the equitable remedy in this case. In other words, POM would receive an unjustified windfall if the Court ordered Eckert to pay the disgorged fees to POM instead of Parx. In turn, the Court may simply order that fees should be paid back to Parx in an unspecified amount, and only Parx would have standing to complain if it disputed that amount. Accordingly, POM has no reason to know the amount that Parx paid to Eckert for legal services, let alone any entitlement to the invoices supporting them.

Second, the invoices contain information that is privileged. Under Pennsylvania law, the privilege protects lawyer-client communications made in confidence regarding legal matters. *Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007) (affirmed by equally divided court at 605 Pa. 468, 992 A.2d 65 (2010)). The courts have held that legal invoices are not subject to discovery when they reveal client confidences. *See, e.g., Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, No. 2:18-CV-0345, 2022 WL 1642394, at *7 (W.D. Pa. May 24, 2022) ("It is well settled that such records may contain privileged information, 'because they reveal the nature of the services … rendered.' *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999)). Here, the invoices inherently reveal the nature of the legal advice sought or given. Giving POM unfettered access to invoices that Parx paid for Eckert's services most certainly will reveal Parx's motivations for seeking legal advice, the specific legal matters discussed, the focus of the legal strategy, and the intensity of the legal services. None of this is subject to discovery under Rule 26.

Third, the invoices implicate attorney work-product. Rule 26 precludes the discovery of the mental impressions of attorneys in anticipation of litigation. Indeed, invoices should sufficiently describe the work as a matter of professional responsibility to inform clients of the precise services rendered. *See* Pa. R.P.C. 1.4 (communication with client). As Your Honor may recall from private practice, corporate clients in particular tend to require more



detailed information in legal invoices. To that end, time entries in invoices invariably describe a lawyer's work to develop litigation strategies and reveal other mental impressions of counsel. Rule 26 expressly precludes discovery of this type of information except in the most compelling of circumstances, *see Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 592 (3d Cir. 1984), and there are no such circumstances here. The Court should reject POM's argument that work-product immunity does not apply.

Fourth, the request for all of Eckert's invoices that Parx has paid is disproportionate to the needs of the case. To the extent the amount of fees paid is relevant, the only discoverable information in legal invoices includes the fact that Parx paid fees to Eckert (which is not in dispute) and the total amount paid during the concurrent representation. That is it. The total fees may be calculated and produced subject to the standing protective order to avoid the thorny relevance and privilege issues implicated by POM's latest request for Parx's privileged information. Moreover, it would violate proportionality principles in Rule 26 to order the production of all invoices that reveal far more information than necessary to determine the amount of fees Parx paid to Eckert during the concurrent representation.

Finally, POM argues in a footnote that it has the right to review details in the invoices to determine whether the crime-fraud exception to privilege applies. The suggestion is as offensive as it is absurd. POM played this card before (Doc. 185 at 19), Parx addressed it (Doc. 192 at 11-13), and the Court already declined to address such an ill-conceived argument, *see* Doc. 222.

Ultimately, it appears that POM is determined to keep this case alive as long as possible to pursue Parx's privileged and confidential materials through discovery and use those materials in other pursuits (assuming the Court grants POM relief). This is not conjecture. Since this case began almost four years ago, POM served document requests and subpoenas expressly calling for Parx's privilege and confidential materials and used materials received during discovery in other proceedings. POM requested invoices years ago, yet POM only now is claiming a dispute in an attempt to acquire them. POM has sued Parx's confidential consultants and used discovery obtained here in those cases. POM also has deposed or seeks to depose Parx's confidential consultants in this matter and inquired into matters that are undoubtedly privileged. (POM even attempted a second deposition to inquire into those topics further, but this Court correctly declined POM's request).

In short, the obsession with Parx's privileged information needs to end. The Court should no longer be used as a staging ground for POM to pursue Parx's privileged and confidential information, particularly so when POM unapologetically uses discovery obtained here for purposes other than this case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352–53 & n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); *see also Hall v. Harleysville Ins. Co.*, 164 F.R.D. 172, 173 (E.D. Pa. 1995) (no discovery of class member names that were only relevant for other actions); *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D.N.C. 2005) (court quashed subpoenas because defendants intended to use the information requested to defend other actions). The Court should decline POM's requests.

Very truly yours,

GA BIBIKOS LLC

George A. Bibikos

c:      Counsel (via ECF)