## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ECKERT, SEAMANS CHERIN & | : | |
| MELLOTT, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

Before the court are two appeals from United States Magistrate Judge Joseph Saporito, Jr.'s memorandum and order resolving one of many discovery disputes in this case. (Docs. 361, 362.) Following an *in camera* review of 120 purportedly privileged documents, Judge Saporito's order determined which documents were protected by privilege and which were not. (Doc. 354.) Judge Saporito ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*) Defendants Eckert, Seamans Cherin & Mellott, LLC; Kevin M. Skjoldal; and Mark S. Stewart (collectively, "Eckert") timely appealed the decision. (Doc. 361.) So did third-party Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). (Doc. 362.) For the reasons that follow, the court will grant in part and deny in part the appeals.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Neither party appeals the factual or procedural history stated in Judge Saporito's memorandum.  As such, the court will only restate the factual background and procedural history necessary for clarity in this opinion.  Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Eckert for an alleged breach of fiduciary duties to POM.  (Doc. 1.)  POM alleges that this breach stems from Eckert's representation of both POM and third-party competitor, Parx, in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania.  (Doc. 166, pp. 1–2.)[2]

Eckert's representation of POM began in 2016 in Virginia and was limited to the state of Virginia despite POM's similar activity in Pennsylvania.  That was because Eckert represented Parx, a market competitor, in Pennsylvania.  (*Id.* at 3–4.)  In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania through other counsel relating to the seizure and removal of

---

[1] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this Memorandum.

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

some of its skill games in Pennsylvania.[3]  (*Id.* at 3.)   During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in opposition to POM's position, as well as motions to intervene.  (*Id.* at 4−5.)  In January 2020, POM learned that Eckert was allegedly involved in some capacity with Parx's representation in the Commonwealth Court cases, assuming positions materially adverse to POM's position despite Eckert's ongoing representation of POM in Virginia.  (*Id.* at 5.)  After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew from representing POM in Virginia.  (*Id.*)

In his December 1, 2023 memorandum, Judge Saporito described the procedural history of the discovery dispute underlying the instant appeals:

> This is one of a series of discovery disputes that the parties have been unable to resolve without a court ruling. *See, e.g., Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021), *rev'd in part & remanded*, 2021 WL 1264323 (M.D. Pa. Apr. 6, 2021), *on remand*, 2021 WL 5330641 (M.D. Pa. Nov. 16, 2021), *aff'd*, 2022 WL 2441556 (M.D. Pa. July 5, 2022), *rev'd*, No. 22-2445, 2023 WL 7491133 (3d Cir. Nov. 13, 2023).

> In response to Rule 34 requests for production served by POM, Eckert produced a 116-page privilege log describing 1,010 responsive email messages withheld from disclosure, including the legal basis for withholding each document. Based on the information set forth in that privilege log, POM filed a letter challenging Eckert's assertion of attorney-client privilege and work-product protection with respect to

---

[3] These cases are located at docket numbers 418 MD 2018 and 503 MD 2018.  (Doc. 166, p. 4.)

120 of these documents. (Doc. 295.) Eckert filed a responsive letter. (Doc. 298.)

Upon review of these letters, the presiding United States district judge granted the plaintiff's request for an *in camera* review of the documents at issue. She directed Eckert to submit copies of the challenged documents for in camera review. She also directed POM to file a reply letter. (Doc. 300.)

As directed, POM filed its reply letter (Doc. 304), and Eckert submitted a tabbed binder containing copies of the 120 challenged documents for in camera review (see Doc. 305). Shortly thereafter, the discovery dispute was referred to the undersigned United States magistrate judge for resolution. (Doc. 313.)

(Doc. 353, pp. 2–3.)

On December 1, 2023, following an *in camera* review of the disputed documents and the parties' briefs, Judge Saporito issued a thorough, clear, and well-organized memorandum and order resolving the dispute. (Docs. 353, 354.) Judge Saporito's order resolved which documents were protected by privilege and which were not. (Doc. 354.) In his order, Judge Saporito sustained in part the assertions of privilege regarding four documents. (*Id.*) He determined that the majority of documents were not protected from production and ordered the unprotected documents to be produced within 21 days unless the ruling was appealed. (*Id.*)

On December 15, 2023, Eckert and Parx appealed Judge Saporito's decision. (Docs. 361, 362.) In their appeals, they assert that Judge Saporito's order was clearly erroneous and contrary to law in ruling that the documents were not

protected from disclosure by attorney-client privilege and the federal work-product doctrine.  (Doc. 361, pp. 2–3; Doc. 362, p. 3.)  The appeals were briefed and are ripe for disposition.  (Docs. 366, 367, 373, 374.)

## STANDARD OF REVIEW

When a party appeals from a non-dispositive order issued by a United States Magistrate Judge, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law."  *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting Fed. R. Civ. P. 72(a)).  "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo."  *Id.* (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)).  The party appealing the non-dispositive order has the burden of proof to establish that the order was clearly erroneous or contrary to law.  *See NLRB v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992) (noting that under 28 U.S.C. § 636, "a district judge may reconsider a magistrate judge's decision where it has been shown to be clearly erroneous or contrary to law"); *accord Haines*, 975 F.2d at 91 (citing 28 U.S.C. § 636(b)(1)(A)).

### DISCUSSION

The appeals filed by Eckert and Parx contest Judge Saporito's findings with respect to attorney-client privilege.[4]  They argue both that he applied the wrong legal standard, and that he applied the standard incorrectly to the instant facts.

There is one threshold matter in which all parties agree that Judge Saporito was correct.  Because this is a diversity case, Pennsylvania law governs whether attorney-client privilege attaches to a particular document.  (Doc. 353, p. 10 (citing Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988)).

The Supreme Court of Pennsylvania courts has stated that, "[b]ecause it 'has the effect of withholding relevant information from the factfinder,' courts construe the privilege narrowly to 'appl[y] only where necessary to achieve its purpose.'" *In re Estate of McAleer*, 248 A.3d 416, 425–26 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also Twp. Of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Commw. Ct. 2018) ("Our federal courts have held that [t]o sustain this burden of proof, the party asserting the privilege must show,

---

[4] In their appeals, Eckert and Parx also assert that Judge Saporito was incorrect in finding that work-product doctrine did not protect the disputed documents.  (Doc. 361, pp. 2–3; Doc. 362, p. 3.)  Parx did not address this at all in its supporting brief.  (Doc. 366.)  Eckert only raised work-product doctrine in the last sentence of its brief.  (Doc. 367, pp. 26–27.)  It further explained its argument in a footnote.  (*Id.* at 27 n.5.)  But "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

by record evidence such as affidavits, sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege.")[5] (cleaned up).

Under Pennsylvania law, "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard*, 15 A.3d at 59.  Attorney-client privilege extends to confidential communications between lawyers and agents of a client where those agents are indispensable to or facilitate the lawyer's ability to provide legal advice. *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019).

The issues raised on appeal generally fall into two categories.  The first is whether an attorney's communication is made for the purpose of obtaining or providing legal advice.  Specifically, the court addresses to what extent attorney-client privilege applies to communications that, as a matter of content, primarily contain lobbying or legislative advice, and either entirely lack or only include a relatively small portion of legal advice.   The second category relates to whether a communication is sufficiently confidential for the privilege to apply.

---

[5] Of note, in their central arguments, Eckert and Parx make no reference to affidavits regarding privilege.  Parx does in its reply brief.  (Doc. 374, pp. 6–7.)  But as a general matter, "[a]rguments raised for the first time in a reply brief are generally waived."  *Loving v. FedEx Freight, Inc.*, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

With respect to the first category of issues, there is a dearth of factually analogous and binding case law.  As a result, the parties and Judge Saporito rely heavily on persuasive authority.

Eckert raises six arguments in support of reversal of Judge Saporito's order. First, Judge Saporito assumed that legislative advice can never fall within the scope of attorney-client privilege.  (Doc. 367, p. 2.)  Second, Judge Saporito misapplied the standards for determining whether an inter-attorney legal memorandum is privileged.  (*Id.*)  Third, Judge Saporito misapplied the law when determining whether requisite confidentiality existed.  (*Id.*)  Fourth, the document PRIV-00949 is protected by attorney-client privilege.  (*Id.*)  Fifth, paragraphs three, five, and six of PRIV-00366 are protected by attorney-client privilege.  (*Id.*) Sixth, documents PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are protected by attorney-client privilege.  (*Id.* at 3.)  Parx joins in Eckert's first and second arguments.  (Doc. 366, pp. 10–19.)

The court addresses each of these arguments below.

**A. Judge Saporito's ruling was not contrary to law because it did not apply an incorrect standard regarding what constitutes legal advice. Nor did he clearly err in applying the standard to the specific documents that Eckert and Parx dispute.**

Eckert and Parx argue that Judge Saporito's memorandum and order were contrary to law because he assumed that when an attorney provides legislative advice, such advice can never be legal advice within the scope of attorney-client

privilege.  (Doc. 367, p. 15.)  They argue that Judge Saporito applied a non-existent *per se* rule.  (Doc. 366, p. 13.)  In addition to generally asserting that Judge Saporito used the wrong legal rule,[6] they also argue that Judge Saporito misapplied the rule with respect to five documents: PRIV-00106, PRIV-00107, PRIV-00108, PRIV-00900, and PRIV-0074.  (Doc. 366, p. 15; Doc. 367, p. 16.)  The court will first address the rule Judge Saporito applied and will then address the specific documents argued by Eckert and Parx.

### 1. Judge Saporito applied the correct legal standard.

Contrary to the arguments of Eckert and Parx, POM argues that Judge Saporito did not apply a per se rule.  Instead, he applied the correct legal standard. (Doc. 373, p. 7–15.)  Judge Saporito's own language shows that POM is correct:

> It is axiomatic that "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (footnotes omitted).  "Lawyers sometimes act as lobbyists, and thus the issue has arisen as to whether the attorney-client and work-product privileges protect communications made and materials prepared in the course of a lawyer's lobbying efforts." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001).  "Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege."  *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994).

---

[6] In a footnote, Eckert provides a list of documents to which it argues Judge Saporito applied this erroneous rule.  (Doc. 367, p. 14 n.2.)

Of course, the inquiry is fact-specific. The fact that a lawyer occasionally acts as a lobbyist does not preclude the lawyer from acting as a lawyer and having privileged communications with a client who is seeking legal advice. . . . On the other hand, "[i]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, lobbying efforts." *Grand Jury Subpoenas*, 179 F. Supp. 2d at 285.

"Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice." *Robinson*, 214 F.R.D. at 445; *see also Phelps Dodge*, 852 F. Supp. at 164. But "[i]f a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect." *Robinson*, 214 F.R.D. at 446. Ultimately, we must look to see whether the primary or predominant purpose of the communication was to procure legal advice, as opposed to legislative, lobbying, or public relations services. *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege.") (citations omitted); *see also Chevron*, 749 F. Supp. 2d at 165; *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126, 129 (N.D.N.Y. 2007); *Robinson*, 214 F.R.D. at 446.

(Doc. 353, pp. 25–27.)

Judge Saporito then applied these rules to communications concerning

proposed legislation and other legislative, lobbying, and policy communications.

(Doc. 353, pp. 30–92.) In doing so, Judge Saporito concluded that the subject

matter of the communications at issue "concern[ed] legislative, political, or policy

advice only—not *legal* advice—and thus . . . is not protected by attorney client

privilege." (*Id.* at 30 (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)).)

Judge Saporito did not apply a *per se* rule. This argument, raised by Eckert

and Parx, fails. It is not supported by Judge Saporito's explicit language. Nor is it

supported implicitly by Judge Saporito's analysis. Instead, the court finds that

Judge Saporito conducted a fact-specific inquiry to determine whether each of the

communications at issue concerned legal advice. In doing so, Judge Saporito

distinguished legal advice from legislative, political, or policy advice. But he did

not state or imply that legal advice and the latter categories of advice are mutually

exclusive. Rather, he merely found that certain at-issue communications contained

various types of advice—none of them legal.

### 2. Judge Saporito did not err in finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in not finding that attorney-client

privilege protected documents in which Eckert engaged in preparing for possible

testimony before a legislative body. (Doc. 367, pp. 16–17.) Specifically, he erred

in not finding that PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900 were

protected on this basis. (*Id.*) Citing a treatise, which in turn cited *Westinghouse*

*Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), Eckert argues

that other courts have found such communications privileged. (*Id.* (quoting Paul

R. Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("The work considered legal assistance by the court included preparation for possible testimony [and] analysis of the probable legal consequences and antitrust considerations of the proposed legislation.")).)  Eckert also points out that the same treatise has relied on *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1 (2016).  (*Id.* (quoting Rice, 1 Attorney-Client Privilege in the U.S., § 7.20 ("If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect.")).)

POM distinguishes *Westinghouse* in two important ways.  (Doc. 373, pp. 11–13.)  First, *Westinghouse* did not center on attorney-client privilege.  Instead, it concerned an attempt to disqualify a law firm from representing a client in antitrust litigation.  580 F.2d at 1312–13.  The attempt to disqualify was rooted in a conflict of interest which arose from the firm's prior legislative efforts.  *Id.* at 1313–14.

Second, *Westinghouse* does not stand for the proposition that legislative or lobbying advice qualifies as legal advice.  (Doc. 373, pp. 12–13.)  Rather, in *Westinghouse,* in preparing for the possible testimony, the law firm was "analyzing the probable legal consequences."  *Id.* at 1313.  That is to say, the conflict of interest did not arise because the firm was helping a client prepare for testimony.

12

Rather, the conflict arose because the firm was providing legal advice. That advice took the form of analyzing probable legal consequences of the proposed legislation, though it may have been interwoven with the firm's preparation for possible testimony.

Eckert does not raise any specific factual error that Judge Saporito purportedly committed with respect to PRIV-00106, PRIV-00107, and PRIV-00108. It merely asserts that these documents related to the preparation of possible testimony before a legislative body. (Doc. 367, p. 16.) That alone is not the basis for attorney-client privilege. And Eckert does not raise any other argument to convince this court that Judge Saporito erred.

Eckert raises the same argument regarding PRIV-00900. But PRIV-00900 contains no legal advice, nor was it conveyed for the purpose of providing or obtaining legal advice. It is correspondence seeking feedback on proposed written testimony to be provided to a state legislative committee. The correspondence does not include, seek, or relate to legal advice. Neither does the attached proposed testimony. And, unlike in *Westinghouse*, here the preparation for testimony does not involve or contain legal advice or analysis. Although preparation for testimony before a legislative body can be protected by attorney-client privilege, such is not the case here. For these reasons, the court will deny

Eckert's appeal with respect to PRIV-00106, PRIV-00107, PRIV-00108, and PRIV-00900.

### 3. Judge Saporito did not err in finding that PRIV-0074 was not protected by attorney-client privilege.

Eckert argues that PRIV-0074 should be protected by attorney-client privilege because it analyzes whether proposed legislation would satisfy a particular legal standard.  (Doc. 367, p. 16.)  As Judge Saporito noted, PRIV-0074 consists of "email messages exchanged between Eckert attorneys Stewart, Burns, and Yocum concerning draft electronic skill game legislation."  (Doc. 353, p. 33.) It also "forwards an email message from Stewart to two Parx executives and attorney-lobbyists Gmerek and Schafer describing the 'gist of the bill.' The attached draft legislation proposed amending 18 Pa. Cons. Stat. Ann. § 5513 to ban electronic skill games altogether."  (*Id.*)

The court finds that the majority of this communication does not relate to legal advice or analysis.  Instead, it solely "concerns legislative, political, or policy advice only—not *legal* advice—and thus [is] not protected by attorney-client privilege."  (*Id.*)  There is an exception to this characterization. The sixth bullet point on the first page of PRIV-0074 does pertain to a legal analysis of the proposed legislation.

However, under the standard Judge Saporito applied, it was appropriate to conclude that attorney-client privilege did not apply.  Under the standard set forth

in *Burton v. R.J. Reynolds Tobacco Co., Inc.*, "[l]egal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. Lobbying services performed by an attorney on behalf of a client do not constitute legal services for purposes of the attorney-client privilege." 170 F.R.D. 481, 484 (D. Kan. 1997). Judge Saporito expressly relied on that standard. (Doc. 353, p. 26.)

Eckert and Parx have not asserted that such reliance is incorrect. Eckert relies on a case that implicitly invokes the same standard. (Doc. 367, p. 13 (citing *Vacco v. Harrah's Operating Co.*, No. CIV. A 1:07-CV-0663, 2008 WL 4703719 (N.D.N.Y. Oct. 29, 2008); *see Vacco's*, 2008 WL 4703719, at *8 (finding that attorney-client privilege applied in part because the law firm's services to the client were primarily legal in nature).) And Parx explicitly relies on the predominant purpose standard:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. ***So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.*** . . . [I]t should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be

15

rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

(Doc. 366, pp. 13–14 (emphasis added by Parx) (quoting *In re Cty. Of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007)).)

Eckert and Parx have not contested the validity of the predominant purpose standard. The predominant purpose of PRIV-0074 was not legal advice. Therefore, attorney-client privilege does not apply. The court will deny the appeals with respect to PRIV-0074.

## B. Judge Saporito erred in finding that attorney-client privilege did not apply to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

Parx and Eckert argue that Judge Saporito missapplied the legal standard with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6. (Doc. 366, p. 15; Doc. 367, pp. 17–19.)[7] A review of these documents shows that Parx and Eckert are correct. Judge Saporito was correct in finding that these communications concerned legislative strategies for outlawing skill games. (Doc. 353, p. 66.) But he was incorrect in finding that they concerned legislative, political, or policy advice only—not legal advice. (*Id.* at 66–67.) Rather, in the context of providing legislative advice, these communications do

---

[7] Of note, the page numbers that Parx and Eckert use appear to correspond to the page numbers of the memorandum attached to the email correspondence. Parx and Eckert seek to shield the first, sixth, and occasionally second, pages of the legislative strategy memorandum.

provide legal analysis and advice.  These communications circulate a legislative strategy memorandum.  That memorandum addresses how to achieve legislative objectives within the context of existing state law.  The memorandum's application of legislative objectives to the existing legal framework constitutes legal advice.  Furthermore, legal advice was the predominant purpose of the specific pages that Parx and Eckert identify.  No other portions of these documents consist of legal advice.  Nor do Parx or Eckert explain any reason for why the other portions should be protected.

Because they have shown that Judge Saporito erred with respect to these communications, the court will grant the appeals with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6; and PRIV-00755 at 1–2, 6.

### C. Judge Saporito did not err in finding that PRIV-00958 and PRIV-00960 were not protected by attorney-client privilege.

Next, Eckert argues that Judge Saporito applied the wrong confidentiality standard.  (Doc. 367, pp. 19–20.)  As a result, when he applied this incorrect standard to PRIV-00958 and PRIV-00960, he improperly found that they were not protected by attorney-client privilege.[8]  (*Id.*)  Specifically, Judge Saporito found that these communications were email messages from an Eckert attorney to Parx executives and a Parx lobbyist and they related to legislative strategy.  (Doc. 353,

---

[8] In a footnote, Eckert asserts that Judge Saporito applied this incorrect standard to a large number of other documents.  (Doc. 367, p. 21 n.4.)

pp. 88–89.)  Judge Saporito concluded that, although the legislative strategy outline attached to the emails "was prepared with some client input and conveyed in confidence," the subject matter was not legal advice and therefore not protected by attorney-client privilege.  (*Id.* at 89.)  He also noted that "there is nothing in the record before us to suggest that this communication involved confidential facts disclosed by the client to the attorney."  (*Id.*)  Eckert argues that Judge Saporito erred by requiring a communication to involve "confidential facts disclosed by the client" for it to be protected by attorney-client privilege.  (Doc. 367, pp. 19–20.)

Eckert argues that attorney-client privilege "applies to *all* information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons."  (*Id.* at 20 (quoting *U.S. Healthcare, Inc. Sec. Litig.*, 1989 WL 11068, at *2 (E.D. Pa. Feb. 7, 1989)).)  For that reason, Eckert asserts that Judge Saporito was incorrect when he found that communications were not privileged because "nothing in the record" suggested that the communications "involved confidential facts disclosed by the client to the attorney."  (Doc. 353, pp. 88–89; Doc. 367, pp. 20–21.)

POM argues that Eckert's arguments fail for two reasons.[9]  First, Eckert has failed to bear its burden and show that the communications at issue were confidential.  (Doc. 373, p. 20 (citing *Gillard*, 15 A.3d at 59.)  To "sustain this burden . . . [Eckert] must show, by record evidence such as affidavits, sufficient facts as to bring the communications at issue within the narrow confines of privilege." *Twp. of Neshannock*, 181 A.3d at 474.  Second, because neither of these documents involved legal advice, they are not privileged.  (Doc. 373, p. 20 (citing *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa. Super. Ct. 2023)).)

PRIV-00958 and PRIV-00960 do not concern legal advice.  And Eckert has not pointed to any binding Pennsylvania appellate court decision finding that attorney-client privilege extends to communications beyond those made for the purpose of obtaining or providing legal advice.  Rather, Pennsylvania courts apply attorney-client privilege to confidential communications "made for the purpose of obtaining or providing professional legal advice."  Gillard, 15 A.3d at 59; *Carlino*,

---

[9] More generally, POM also argues that Judge Saporito did not err in applying the confidentiality standard.  POM concedes that the "confidential facts" requirement which Judge Saporito used, although not explicitly overruled, is no longer used by Pennsylvania courts.  (Doc. 373, p. 17–18 & n.5.)  Even so, POM argues that Eckert has not shown clear error or a decision contrary to law.  The "confidential facts" phrasing that Judge Saporito used is quite similar to the "confidential information" language that comes from *U.S. Healthcare*—the only legal authority upon which Eckert relies.

301 A.3d at 479.  Because attorney-client privilege does not attach to PRIV-00958

and PRIV-00960, the court will deny Eckert's appeal with respect to them.

### D. Judge Saporito did not err in finding that PRIV-00949 is not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred by overruling its assertion of

attorney-client privilege to PRIV-00949.  (Doc. 367, pp. 21–22.)  Omitting

footnotes, Judge Saporito analyzed the communication as follows:

> PRIV-00949 [] is an email exchange between Eckert attorneys Stewart and Hittinger regarding the status of the skill games ban enacted in Virginia and related implications for the casino groups' legislative efforts in Pennsylvania.  The subject matter of these communications concerns legislative, political, or policy advice only—not legal advice—and thus they are not protected by attorney-client privilege.  *See In re Lindsey*, 148 F.3d at 1106; *Martin*, 136 F.R.D. at 426.  Moreover, there is nothing in the record before us to suggest that these communications involved any confidential client information, nor any communication whatsoever to or from a client.  *See Chmiel*, 889 A.2d at 599; *Slusaw*, 861 A.2d at 273.  Accordingly, the objection to production of PRIV-00949 [] on attorney-client privilege grounds is overruled.

(Doc. 353, pp. 86–87.)

Eckert argues that Judge Saporito erred in determining that the

communication was not privileged due to the absence of "any communication

whatsoever from a client."  (Doc. 367, p. 22.)  It further argues that the emails in

this communication were "between attorneys in the same office concerning the

representation of a client, utilizing confidential information provided by that

client."  (*Id.* at 24 (quoting *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 429 (E.D.

20

Pa. 1984)).)  Eckert asserts that confidential client information appears in the uppermost emails of the thread.  (*Id.* at 24.)  According to Eckert, in those emails, Eckert attorneys pose and answer a question regarding what Eckert's clients would accept.  (*Id.*)  Eckert argues that "there is no plausible source of that information other than the referenced clients themselves." (*Id.*)

POM counters that Eckert's assumption about the source of the information is insufficient to show that Judge Saporito's factual findings were clearly erroneous.  (Doc. 373, p. 21.)  Eckert must show that the client was the source of the information, and that information was confidential.  (*Id.*)

Having reviewed the communications contained in PRIV-00949, the court finds that Eckert has not met its burden.  There is no indication that the emails contained in this thread include any information that came from an Eckert client. Moreover, a review of PRIV-00949 does not support Eckert's assertion that Judge Saporito erred in concluding that the communications did not concern legal advice. Because Eckert has failed to bear its burden, the court will deny Eckert's appeal insofar as it relates to PRIV-00949.

### E. Judge Saporito did not err in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in concluding that the fourth, fifth, and sixth paragraphs of PRIV-00366 were outside the scope of attorney-client

privilege.  (Doc. 367, pp. 24–25.)  Eckert argues that these paragraphs "discuss strategic considerations relating to proposed legislation, which . . . is not a subject matter excluded from the scope of attorney-client privilege." (*Id.* at 24.) Additionally, Eckert asserts that the sixth paragraph presents opinions and sets forth defense tactics, which weighs in favor of finding that privilege extends to that portion of the document.  (*Id.* at 24–25 (quoting *U.S. Fid. & Guar. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 (M.D. Pa. 1992)).)

The court finds that Judge Saporito was correct in finding that the fourth, fifth, and sixth paragraphs of PRIV-00366 do not concern legal advice.  The court denies Eckert's appeal insofar as it relates to the fourth, fifth, and sixth paragraphs of PRIV-00366.

### F. Judge Saporito did not err in finding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 are not protected by attorney-client privilege.

Eckert argues that Judge Saporito erred in concluding that PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497 were not protected by attorney-client privilege.  (Doc. 367, p. 25.)  Eckert asserts that Judge Saporito erred in three ways.  First, he concluded that legislative advice was categorically excluded from the scope of attorney-client privilege.  (*Id.*)  Second, he failed to appreciate that the email thread contained in this communication presented opinions and set forth defense tactics, which suggest the finding of privilege.  (*Id.* (citing *Barron*, 809 F.

Supp. at 364).)  Third, Judge Saporito applied a "confidential client information"

standard rather than recognizing that privilege "applies to all information conveyed

by clients to their attorneys for the purpose of drafting documents to be disclosed

to third persons and all documents reflecting such information, to the extent that

such information is not contained in the document published and is not otherwise

disclosed to third persons."  (*Id.* at 26 (quoting *U.S. Healthcare*, 1989 WL 11068,

at *2).)

With respect to Eckert's first argument, as noted above, Judge Saporito did

not exclude legislative advice from the scope of attorney-client privilege.  He

merely distinguished between the two types of advice.  Nothing in Judge

Saporito's memorandum or order suggested that legislative advice cannot overlap

with legal advice.  And in these documents, he properly determined that their

contents did not include or concern legal advice.

POM points out that Eckert does not assert that these communications

contain legal advice.  (Doc. 373, p. 23.)  Rather, it asserts that they contain

confidential information provided for the purpose of presenting opinions and

defense tactics.  (*Id.*)  But Eckert has not presented authority applying attorney-

client privilege to information unrelated to legal advice.

The court finds that these communications do not relate to legal advice.

Eckert has failed to show clear error.  These communications represent updates

regarding legislative affairs and strategy, lobbying, and public relations.  They

neither contain nor implicate legal advice.  The court will deny Eckert's appeal

with respect to PRIV-00493, PRIV-00495, PRIV-00496, and PRIV-00497.

<div align="center">CONCLUSION</div>

For the reasons stated above, the court will grant in part and deny in part the

appeals to Judge Saporito's order.  Specifically, the court will grant the appeals

with respect to PRIV-00679 at 1, 6; PRIV-00684 at 1–2, 6; PRIV-00685 at 1–2, 6;

and PRIV-00755 at 1–2, 6, but will otherwise deny the appeals.  An appropriate

order will follow.

<div style="margin-left: 50%;">s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania</div>

Dated: April 29, 2024