IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| Plaintiff, | : | |
| v. | : | |
| ECKERT, SEAMANS CHERIN & MELLOTT, LLC, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a longstanding discovery dispute regarding 182 documents purportedly protected by attorney-client privilege. United States Magistrate Judge Joseph Saporito, Jr. previously found that Defendants and third party Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx") were judicially estopped from exercising attorney-client privilege with respect to these documents. (Doc. 167.) This court affirmed Judge Saporito's decision. (Doc. 223.) The Third Circuit reversed and then issued a mandate vacating this court's order and remanding the instant dispute. (Doc. 356.) After remand, the court conducted an *in camera* review of the documents. Based on that *in camera* review, the court finds that the vast majority of these documents are protected by attorney-client privilege.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

There have been multiple opinions written on the immediate discovery issue and there is not a dispute about the factual or procedural history. As such, the court will only restate the factual background and procedural history necessary for clarity in this opinion. Plaintiff, Pace-O-Matic, Inc. ("POM"), initiated this action in February 2020 against Defendants Eckert, Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal (collectively, "Eckert") for an alleged breach of Eckert's fiduciary duties to POM. (Doc. 1.) POM alleges that this breach stems from Eckert's representation of both POM and third-party competitor, Parx, in matters in which POM and Parx had competing and adverse commercial interests in the Commonwealth Court of Pennsylvania relating to POM's development, production, and licensure of electronic "skill games" sold in Pennsylvania. (Doc. 166, pp. 1–2.)[2]

Eckert's representation of POM began in 2016 in Virginia and was limited to Virginia despite POM's similar activity in Pennsylvania. That was because Eckert represented Parx in Pennsylvania. (*Id.* at 3–4.) In the summer of 2018, POM filed two lawsuits in the Commonwealth Court of Pennsylvania through

---

[1] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this memorandum.

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

other counsel relating to the seizure and removal of some of its skill games in Pennsylvania.³ (*Id.* at 3.) During this litigation in the Commonwealth Court, Parx, purportedly through its counsel, Hawke McKeon & Sniscak ("HMS") and Ballard Spahr, LLP ("Ballard"), filed amicus briefs in opposition to POM's position, and motions to intervene. (*Id.* at 4–5.) In January 2020, POM learned that Eckert was allegedly involved in some capacity with Parx's representation in the Commonwealth Court cases, assuming positions materially adverse to POM's position despite Eckert's ongoing representation of POM in Virginia. (*Id.* at 5.) After POM requested that Eckert withdraw from representing Parx in adverse litigation in Pennsylvania, Eckert instead withdrew from representing POM in Virginia. (*Id.*)

> This discovery dispute has been extensively briefed and Judge Saporito allowed oral argument on these issues on October 20, 2020, during which the parties agreed to allow Judge Saporito to conduct an in camera review of the subject documents. ([Doc. 166, p.] 6−7.) Thereafter, the parties met and conferred to determine the documents to be submitted to Judge Saporito. (*Id.* at 7.) These documents were provided to Judge Saporito in December 2020, and Judge Saporito issued his memorandum and order on February 16, 2021. (Docs. 87, 88.)
>
> On March 2, 2021, Eckert, HMS, and Parx filed separate appeals of Judge Saporito's decision, each only appealing section III. I. of Judge Saporito's memorandum and paragraph 4 of Judge Saporito's order pertaining to judicial estoppel. (Docs. 93, 95, 97.) The court granted this appeal, finding that Judge Saporito erred procedurally by raising the issue of judicial estoppel sua sponte without the benefit of briefing

---

³ These cases are located at docket numbers 418 MD 2018 and 503 MD 2018. (Doc. 166, p. 4.)

3

> from counsel and remanded the matter for further consideration. (Docs. 113, 114.) On remand, Judge Saporito allowed the parties to brief the issue of judicial estoppel. (Doc. 166, p. 8.) Following further consideration, including a re-review of the allegedly privileged documents, Judge Saporito again concluded that the attorney-client privilege invoked by Eckert was inapplicable on judicial estoppel grounds and that the work product doctrine was likewise inapplicable. (*Id.* at 35−36.)

(Doc. 222, pp. 3–4.)

On November 30, 2021, Eckert, Parx, and HMS appealed Judge Saporito's decision. (Docs. 168, 170, 172.) On July 5, 2022, this court issued an opinion and order affirming Judge Saporito's decision. (Docs. 222, 223.) Eckert, Parx, and HMS moved for reconsideration. (Docs. 230, 232, 234.) While these motions were pending, the court granted a joint motion by Eckert, Parx, and HMS to stay production of the disputed documents until their motions for reconsideration were resolved. (Doc. 239.) On August 11, 2022, the court denied the motions for reconsideration but granted a request to certify the issue for interlocutory appeal. (Doc. 252.)

Eckert, Parx, and HMS petitioned for interlocutory review under § 1292(b). (Doc. 356, p. 9.) A motions panel of the Third Circuit granted the petition, and the Circuit consolidated the appeals. (*Id.*) The Circuit concluded that this court erred and abused its discretion by applying judicial estoppel. (*Id.* at 9, 14–15.)

On January 12, 2024, the court held an on-the-record status conference with the parties. (Doc. 363.) Per the parties' request, the court issued a briefing

schedule for them to address whether Judge Saporito had determined whether, notwithstanding the application of judicial estoppel, the documents at issue were protected by attorney-client privilege. The issue was briefed, and this discovery dispute is ripe for review. (Docs. 369, 372, 375.)

## DISCUSSION

As a preliminary matter, the court finds that Judge Saporito never decided whether, absent judicial estoppel, the documents at issue would be protected by attorney client privilege. During the on-the-record status conference, Eckert, HMS, and Parx asserted that Judge Saporito had found the documents would be protected by attorney-client privilege. (Doc. 363.) But they were unable to point to any part of his memorandum or order stating that. Their briefs have the same shortcoming. (Docs. 369, 376.) In fact, neither Judge Saporito nor this court have ever determined whether attorney-client privilege applies to these 182 documents. Therefore, the court will do so now.

Because this is a diversity case, Pennsylvania law governs whether attorney-client privilege attaches to a particular document. (Doc. 353, p. 10 (citing Fed. R. Evid. 501; *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988)). The Supreme Court of Pennsylvania has stated that, "[b]ecause it 'has the effect of withholding relevant information from the factfinder,' courts construe the privilege narrowly to 'appl[y] only where necessary to achieve its purpose.'" *In re*

*Estate of McAleer*, 248 A.3d 416, 425–26 (Pa. 2021) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

Under Pennsylvania law, "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). Attorney-client privilege extends to confidential communications between lawyers and agents of a client where those agents are indispensable to or facilitate the lawyer's ability to provide legal advice. *BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019).

As this court has noted, "communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of 'professional legal services.'" (Doc. 382, p. 9 (citation omitted) (quoting *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010)).) Sometimes lawyers provide non-legal advice or services, which does not give rise to attorney-client privilege. (*Id.* (citing *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994)) ("Lobbying conduct by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege.").)

Determining whether a privilege applies is a fact-specific inquiry. "Ultimately, we must look to see whether the primary or predominant purpose of

the communication was to procure legal advice, as opposed to legislative, lobbying, or public relations services." (Doc. 353, p. 26; *See Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.").)

Of the documents at issue, one is a text message exchange, HMS-000558.[4] The other 181 consist of email threads and attachments. The documents generally relate to POM's Commonwealth Court cases including Parx's amicus briefs and motions to intervene. The communications at issue most often involve outside counsel for Parx, including HMS attorneys, such as Kevin McKeon ("McKeon"), Ballard Spahr, LLP attorney Adrian King ("King"), and Eckert attorneys Defendant Mark Stewart ("Stewart") and Defendant Kevin Skjoldal ("Skjoldal"). Occasionally, they include Parx in-house counsel and external lobbyists. Some lobbyists are also attorneys, such as Richard Gmerek and Sean Schafer. (Doc. 87, p. 26.) Others are solely lobbyists, such as Charlie Lyons and Pete Shelly. (*Id.*) Some communications are with third parties, such as Mike Allen, about whom no

---

[4] The documents at issue are identified by two distinct naming protocols. Documents produced by Eckert are identified by a series of numbers separated by underscores and terminate with .pdf. Documents produced by HMS are bates labeled with the letters HMS followed by the bates number.

additional information is provided. Lastly, some communications are with Pennsylvania state employees, such as Karen Romano.

Based on the court's *in camera* review, attorney-client privilege protects from disclosure the vast majority of the documents at issue. In these documents, Parx's counsel coordinated Parx's legal strategy to intervene in POM's Commonwealth Court cases. Other documents are not protected. They are transmittal communications, relate to public relations and not legal advice, or consist of communications which have already been deemed unprivileged. Lastly, some documents are partially protected by attorney-client privilege. The court will address these categories in turn.

### A. Documents Protected by Attorney-Client Privilege

Based on the court's *in camera* review, the following documents are protected by attorney-client privilege. They were made for the purpose of providing or obtaining legal advice related to the POM Commonwealth Court cases and are properly withheld. The following documents shall be withheld from production:

1) 2019_12_13_13_45_48.pdf;
2) 2019_12_14_11_06_16.pdf;
3) 2019_12_16_16_56_58.pdf;
4) 2019_12_18_02_55_49.pdf;
5) 2019_12_18_12_12_16.pdf;
6) 2019_12_18_12_57_27.pdf;
7) 2019_12_18_14_04_35.pdf;
8) 2019_12_18_14_12_23.pdf;
9) 2019_12_18_14_42_06.pdf;
10) 2019_12_18_15_14_03.pdf;

11) 2019_12_19_16_22_36.pdf;
12) 2020_01_13_13_05_02.pdf;
13) 2020_01_13_13_26_46.pdf;
14) 2020_01_13_13_39_23.pdf;
15) 2020_01_13_17_16_53.pdf;
16) 2020_01_14_15_49_07.pdf;
17) 2020_01_14_15_55_27.pdf;
18) 2020_01_14_16_24_06.pdf;
19) 2020_01_14_17_37_03.pdf;
20) 2020_01_14_19_46_34.pdf;
21) 2020_01_14_23_55_57.pdf;
22) 2020_01_15_07_49_00.pdf;
23) 2020_01_15_07_50_51.pdf;
24) 2020_01_15_07_51_56.pdf;
25) 2020_01_22_16_28_25.pdf;
26) 2020_01_22_18_44_52.pdf;
27) 2020_01_23_07_21_42.pdf;
28) 2020_01_23_09_19_41.pdf;
29) 2020_01_23_09_40_35.pdf;
30) 2020_01_23_10_54_41.pdf;
31) 2020_01_23_10_58_33.pdf;
32) 2020_01_23_11_19_43.pdf;
33) 2020_01_23_11_29_40.pdf;
34) 2020_01_26_22_47_08.pdf;
35) 2020_01_26_22_45_37.pdf;
36) 2020_01_27_19_04_50.pdf;
37) 2020_01_30_11_34_32.pdf;
38) 2020_01_30_11_34_33.pdf;
39) 2020_01_30_12_03_36.pdf;
40) 2020_01_30_13_04_55.pdf;
41) 2020_01_30_13_06_10.pdf;
42) 2020_02_04_12_05_21.pdf;
43) 2020_02_04_12_53_05.pdf;
44) 2020_02_04_16_21_41.pdf;
45) 2020_02_05_10_24_31.pdf;
46) 2020_02_06_08_19_01.pdf;
47) 2020_02_06_09_56_51.pdf;
48) 2020_02_07_14_10_16.pdf;
49) 2020_02_07_14_10_56.pdf;
50) 2020_02_07_16_11_26.pdf;
51) 2020_02_07_16_19_05.pdf;
52) 2020_02_07_16_47_19.pdf;
53) 2020_02_10_14_38_15.pdf;
54) 2020_02_10_17_48_35.pdf;
55) 2020_02_12_11_58_58.pdf;
56) 2020_02_12_11_59_15.pdf;
57) 2020_02_13_17_35_37.pdf;
58) 2020_02_18_10_57_43.pdf;
59) 2020_02_20_16_10_20.pdf;
60) 2020_02_20_16_16_24.pdf;
61) 2020_02_27_15_07_59.pdf;
62) 2020_05_01_14_25_10.pdf;

63) 2020_05_01_14_33_41.pdf;
64) 2020_05_01_17_12_49.pdf;
65) 2020_05_01_23_09_28.pdf;
66) 2020_05_04_09_49_02.pdf;
67) 2020_05_04_12_24_38.pdf;
68) 2020_05_04_12_26_39.pdf;
69) 2020_05_04_12_28_31.pdf;
70) 2020_05_07_10_48_18.pdf;
71) 2020_05_07_11_23_40.pdf;
72) 2020_05_07_11_24_31.pdf;
73) 2020_05_07_17_02_24.pdf;
74) 2020_05_12_10_26_15.pdf;
75) 2020_05_12_17_19_04.pdf;
76) 2020_05_14_11_42_01.pdf;
77) 2020_05_15_10_13_45.pdf;
78) 2020_05_15_16_12_26.pdf;
79) HMS-000088–HMS-000112;
80) HMS-000113;
81) HMS-000114–HMS-000193;
82) HMS-000194–HMS-000198;
83) HMS-000199–HMS-000200;
84) HMS-000201–HMS-000202;
85) HMS-000203–HMS-000205;
86) HMS-000206–HMS-000208;
87) HMS-000209–HMS-000249;
88) HMS-000250–HMS-000253;
89) HMS-000254–HMS-000257;
90) HMS-000258–HMS-000261;
91) HMS-000262–HMS-000555;
92) HMS-000558;
93) HMS-000559–HMS-000592;
94) HMS-000593–HMS-000594;
95) HMS-000595–HMS-000628;
96) HMS-000629–HMS-000630;
97) HMS-000631–HMS-000633;
98) HMS-000634–HMS-000637;
99) HMS-000638–HMS-000671;
100) HMS-000672;
101) HMS-000673–HMS-000708;
102) HMS-000710;
103) HMS-000723–HMS-000724;
104) HMS-000733–HMS-000736;
105) HMS-000737–HMS-000739;
106) HMS-000740–HMS-000741;
107) HMS-000742;
108) HMS-000743–HMS-000744;
109) HMS-000812–HMS-000813;
110) HMS-000814;
111) HMS-000817–HMS-000818;
112) HMS-000819–HMS-000820;
113) HMS-000821–HMS-000823;
114) HMS-000824–HMS-000831;

115) HMS-000832–HMS-000833;
116) HMS-000834–HMS-000839;
117) HMS-000840–HMS-000842;
118) HMS-000843–HMS-000846;
119) HMS-000847;
120) HMS-000848–HMS-000860;
121) HMS-000861–HMS-000865;
122) HMS-000866–HMS-000914;
123) HMS-000915–HMS-000923;
124) HMS-000924;
125) HMS-000925;
126) HMS-000927–HMS-000928;
127) HMS-000929;
128) HMS-000930;
129) HMS-000985–HMS-000997;
130) HMS-000998–HMS-001007;
131) HMS-001008–HMS-001012;
132) HMS-001013–HMS-001016;
133) HMS-001017–HMS-001020;
134) HMS-001021–HMS-001022;
135) HMS-001023–HMS-001029;
136) HMS-001030–HMS-001048;
137) HMS-001057–HMS-001061;
138) HMS-001062–HMS-001064;
139) HMS-001065–HMS-001066;
140) HMS-001067–HMS-001076;
141) HMS-001077–HMS-001080;
142) HMS-001081–HMS-001082;
143) HMS-001120–HMS-001129;
144) HMS-001130;
145) HMS-001133–HMS-001161;
146) HMS-001162–HMS-001194;
147) HMS-001195–HMS-001197;
148) HMS-001198;
149) HMS-001201–HMS-001202;
150) HMS-001203–HMS-001204;
151) HMS-001205–HMS-001220;
152) HMS-001221–HMS-001222;
153) HMS-001223–HMS-001251;
154) HMS-001252–HMS-001253;
155) HMS-001254–HMS-001281;
156) HMS-001282–HMS-001298;
157) HMS-001299–HMS-001301;
158) HMS-001302–HMS-001306;
159) HMS-001307–HMS-001310;
160) HMS-001311–HMS-001315;
161) HMS-001316–HMS-001319.

## B. Transmittal Messages

Certain documents at issue are merely transmittal messages. As Judge Saporito noted in an uncontested portion of a prior opinion, "'[t]ransmittal documents themselves are not privileged unless they reveal the client's confidences." (Doc. 87, p. 22 (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 (S.D.N.Y. 2010).) Based on the court's *in camera* review, the following documents are non-privileged transmittal messages. They contain neither legal advice nor confidential client information. Accordingly, these documents are not protected from disclosure and shall be produced to POM:

1) 2020_01_16_18_09_26.pdf;
2) 2020_01_16_19_41_46.pdf;
3) 2020_01_17_16_45_14.pdf;
4) 2020_05_11_12_53_48.pdf;
5) HMS-000939–HMS-000941.

## C. Public Affairs Communications

Certain purportedly privileged communications are correspondence between "lobbyists and public relations professionals. In particular, these include emails exchanged with Richard Gmerek and Sean Schafer, both of whom are lawyer-lobbyists, and with Pete Shelly and Charlie Lyons, both of whom are non-lawyer public affairs professionals." (Doc. 87, p. 26.)

As Judge Saporito noted in a prior opinion, "[w]ith respect to the lawyer-lobbyists, Gmerek and Schafer, it is axiomatic that communications, even between lawyer and client, are not privileged unless they are made for the purpose of rendering legal advice or, to use another formulation, unless they related to the rendition of professional legal services." (*Id.* (quoting *In re Chevron*, 749 F. Supp. 2d at 165) (internal quotation marks omitted).)

These communications were not made for the purpose of obtaining or rendering legal advice. Rather, their purpose is public relations. As a result, the following documents are not protected by attorney-client privilege and shall be produced:

1) 2019_12_13_15_24_35.pdf;
2) 2019_12_13_16_58_02.pdf;
3) 2019_12_13_17_04_24.pdf;
4) 2019_12_13_17_05_37.pdf;
5) HMS-000556–HMS-000557.

### D.  Communications Previously Found Not Privileged

Certain documents consist of a reply to a document previously found to not be protected by privilege. Such is the case with the documents identified as 2020_01_19_16_01_31.pdf and HMS-000931–HMS-000933. These documents consist of email threads in which the most recent email is a reply to the document identified as HMS-000950-HMS-000951. HMS-000950-HMS-000951 was found

to not be protected by privilege and was ordered to be produced. (Doc. 87, pp. 23–24; Doc. 88.) The most recent email in 2020_01_19_16_01_31.pdf and HMS-000931–HMS-000933 were not made for the purpose of providing or obtaining legal advice. They are not protected by attorney-client privilege and the court will order them produced.

Likewise, the document identified as HMS-000934–HMS-000935 consists of a portion of the communication, identified as HMS-000950–HMS-000951, which was previously found to be unprotected and was ordered produced. (Doc. 87, pp. 23–24; Doc. 88.) Because it is not privileged, the court will order the production of HMS-000934–HMS-000935.

Finally, the document identified as HMS-000946–HMS-000948 consists of an email thread. But the majority of the thread is comprised of the document identified as HMS-000957–HMS-000958, which was previously found not protected and ordered produced. (Doc. 87, pp. 23–24; Doc. 88.) No portion of HMS-000946–HMS-000948 which has not previously been produced was made to obtain or provide legal services. It is not protected and the court shall order it produced.

Accordingly, the following documents are not privileged and the court will order their production without redaction:

    1) 2020_01_19_16_01_31.pdf;

2) HMS-000931–HMS-000933;

3) HMS-000934–HMS-000935;

4) HMS-000946–HMS-000948.

### E. Partially Protected Documents

Certain documents at issue are email threads in which portions are protected by attorney-client privilege and other portions are not. The most common example is one in which Stewart or McKeon have unprivileged communications with third parties, which often but not always include state employees. Stewart or McKeon then forward the unprivileged communication which provides the basis for subsequent confidential communications made for the purpose of providing legal advice. These subsequent communications are protected by attorney-client privilege.

The document identified as 2020_01_13_18_05_01.pdf is an email thread with an attachment. The most recent email in the thread and the attachment are protected by attorney-client privilege. But the earlier email in the thread is unprivileged correspondence with multiple state employees. Accordingly, the court will order the production of 2020_01_13_18_05_01.pdf with the attachment and the most recent email in the thread redacted.

The documents identified as 2020_01_17_16_39_22.pdf and 2020_01_17_16_51_18.pdf are email threads in which the most recent email was

sent on January 17, 2020.  Both threads include two unprivileged emails, dated January 16, 2020.  Specifically, they include an unsolicited message from a third party, Mike Allen, to attorney Kevin McKeon and another unidentified HMS recipient.  They also include a transmittal message in which McKeon forwarded Mike Allen's email to Mark Stewart.  The subsequent portions of the email thread dated January 17, 2020 are privileged.  Therefore, the court will order disclosure of 2020_01_17_16_39_22.pdf and 2020_01_17_16_51_18.pdf with those portions originally sent on January 17, 2020 redacted.

The document identified as 2020_01_17_16_23_45.pdf is comprised of an email thread with the most recent email correspondence between Kevin McKeon, Mark Stewart, Adrian King, and Richard Gmerek.  The most recent email in the thread is protected by attorney-client privilege.  But all earlier emails in the thread are non-privileged.  They essentially consist of correspondence with Karen Romano in her official capacity, transmittal of that correspondence, and acknowledgement of receipt.  Therefore, the court shall order production of 2020_01_17_16_23_45.pdf with the most recent email in each document redacted.

The documents identified as 2020_04_07_11_31_00.pdf and HMS-0001326–HMS-001330 consist of email threads with privileged correspondence between Eckert and HMS attorneys as well as Adrian King.  But they also consist of non-privileged correspondence between Kevin McKeon and Karen Romano and

McKeon's transmission of that correspondence, dated April 6, 2020 at 3:01 p.m., to attorneys Stewart, Hittinger, and King.  McKeon's correspondence with Romano and his transmission of that correspondence are not privileged.  Therefore, the court will order the production of 2020_04_07_11_31_00.pdf and HMS-0001326–HMS-001330 with the portions subsequent to McKeon's transmittal message redacted.

The document identified as HMS-000942–HMS-000945 is an email thread between Stewart, McKeon, King, and Gmerek.  The two most recent emails in the thread are protected by attorney-client privilege.  But this thread is continuation of HMS-000946–HMS-000948.  As noted above, HMS-000946–HMS-000948 is not protected.  Therefore, the court will order production of HMS-000942–HMS-000945 with the two most recent emails in the thread redacted.

Accordingly, the following documents are partially protected and the court will order redacted versions to be produced in accordance with this memorandum:

    1) 2020_01_13_18_05_01.pdf;
    2) 2020_01_17_16_39_22.pdf;
    3) 2020_01_17_16_51_18.pdf;
    4) 2020_01_17_16_23_45.pdf;
    5) 2020_04_07_11_31_00.pdf;
    6) HMS-001326–HMS-001330;
    7) HMS-000942–HMS-000945.

## CONCLUSION

For the reasons stated above, the court will order the production of the documents described above. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: May 9, 2024