IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-292-JPW |
| | ) | |
| v. | ) | Judge Wilson |
| | ) | |
| ECKERT SEAMANS CHERIN & | ) | |
| MELLOTT, LLC; et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION
FOR A STAY AND RECONSIDERATION OR CERTIFICATION OF
APPEAL PURSUANT TO 28 U.S.C. § 1292(b) FILED BY GREENWOOD
GAMING & ENTERTAINMENT, INC. d/b/a PARX CASINO**

# **TABLE OF CONTENTS**

I.   The Court Should Deny Parx's Request for Reconsideration.............................1

II.  The Court Should Deny Parx's Request for Certification Under 28 U.S.C. § 1292(b)..................................................................................................7

   A.  The April 29 Order Does Not Involve a Controlling Question of Law............7

   B.  Parx Has Not Identified Substantial Grounds for Difference of Opinion as to Any Question Presented by the April 29 Order...............................................11

   C.  Immediate Appellate Review of the April 29 Order Would Not Materially Advance the Ultimate Termination of This Litigation....................................13

III. The Court Should Deny Parx's Request for a Stay Pending Appeal................17

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ahrenholz v. Bd. of Trustees*, 219 F.3d 674 (7th Cir. 2000) ................................ 9, 10

*Buskirk v. Apollo Metals*, 307 F.3d 160 (3d Cir. 2002) .............................................18

*Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470 (Pa. Super. 2023) ........................................................................................................................11

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ......................................11, 12

*Cuttic v. Crozer-Chester Med. Ctr.*, 806 F. Supp. 2d 796 (E.D. Pa. 2011) ..............12

*Electronic Frontiers Found. v. Office of Dir. of Nat'l Intelligence*, No. 08-1023, 2009 WL 10710750 (N.D. Cal. Oct. 7, 2009) ................................................................17

*In re Cnty. of Erie*, 473 F.3d 413 (2d Cir. 2007) .........................................................3

*In re Estate of McAleer*, 248 A.3d 416 (Pa. 2021) ....................................................13

*In re Flor*, 79 F.3d 281 (2d Cir. 1996) ......................................................................12

*In re Gaming Lottery Secs. Litig.*, No. 96-cv-5567, 2000 WL 1171166 (S.D.N.Y. Aug. 17, 2000) .......................................................................................................6

*In re Pac. Forest Prods. Corp.*, No. 05-23268, 2006 WL 8433477 (S.D. Fla. May 24, 2006) ........................................................................................................................10

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) ...................................... 18, 19, 20

*Janesch v. Pennsylvania House of Representatives*, 299 A.3d 1030 (Pa. Cmwlth. 2023) ..........................................................................................................................4

*Jicarilla Apache Nation v. United States*, 91 Fed. Cl. 489 (2010) ..........................19

*Johnson v. Alldredge*, 488 F.2d 820 (3d Cir. 1973) ...................................................9

**Cases (Continued)**                                                                 **Page(s)**

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974) (en banc)....................8, 9

*King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713 (5th Cir. 2011) ..........................10

*Kostik v. ARS Nat'l Servs., Inc.*, No. 3:14-cv-2466, 2016 WL 69904 (M.D. Pa. Jan. 5, 2016) .......................................................................................................................12

*Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860 (3d Cir. 1977) (en banc) ........9

*Mathis v. Zant*, 708 F. Supp. 339 (N.D. Ga. 1989) ....................................................17

*McCoy v. Favata*, No. 17-1046, 2020 WL 5891898 (D. Del. Oct. 5, 2020) .............9

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251 (11th Cir. 2004) ................. 10, 13

*Nken v. Holder*, 556 U.S. 418 (2009).......................................................................17

*Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319 (E.D. Pa. 1994)............. 7, 16

*Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, No. 3:11-cv-617, 2021 WL 3511122 (M.D. Pa. Aug. 10, 2021) ..........................................................................................2

*Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331 (E.D.N.Y. 1996) ....................................6

*Simmons v. Akanno*, No. 1:09-cv-659, 2011 WL 1566583 (E.D. Cal. April 22, 2011) ..............................................................................................................................17

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465 (D. Md. 2014) ...................................................................................................................................9

*Small v. Lower Paxton Twp.*, No. 1:22-cv-1146, 2024 WL 691360 (M.D. Pa. Feb. 20, 2024)............................................................................................................11, 14

*Stockton v. Wetzel*, No. 1:16-cv-613, 2023 WL 1805211 (M.D. Pa. Feb. 7, 2023) ...1

*Summy-Long v. Penn. State Univ.*, 715 F. App'x 179 (3d Cir. 2017) ........................8

iii

**Cases (Continued)**                                                    **Page(s)**

*Sydykov v. Immigration & Customs Enforcement*, No. 1:21-cv-575, 2021 WL 5903915 (M.D. Pa. Aug. 10, 2021) ....................................................................4, 6

*Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643 (8th Cir. 2008)..........................13

*Union Pac. R. Co. v. ConAgra Poultry Co.*, 189 F. App'x 576 (8th Cir. 2006) ........8

*United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162 (D.D.C. 2014).16, 17

*United States v. Agnew*, 385 F.3d 288 (3d Cir. 2004) ...............................................2

*United States v. Dish Network, LLC*, No. 09-cv-3073, 2012 WL 13012614 (C.D. Ill. July 9, 2012) .........................................................................................................4

*United States v. Sciarra*, 851 F.2d 621 (3d Cir. 1988)..............................................19

*White v. Nix*, 43 F.3d 374 (8th Cir. 1994).................................................................16

**Statutes**                                                       **Page(s)**

28 U.S.C. § 1292 ...............................................................................................7, 11, 13

**Other Authorities**                                          **Page(s)**

PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES (Dec. 2023).6

On May 13, 2024, Greenwood Gaming & Entertainment, Inc. ("Parx") filed a motion requesting that the Court reconsider its April 29, 2024 Order (ECF No. 381) (the "April 29 Order") or, in the alternative, certify that Order for immediate appeal under 28 U.S.C. § 1292(b).  *See* ECF No. 388.  For the reasons stated below, Plaintiff Pace-O-Matic, Inc. ("POM") respectfully requests that the Court deny Parx's motion in its entirety.

## I.    The Court Should Deny Parx's Request for Reconsideration.

Parx contends that the Court should reconsider its April 29 Order, because the Order "is based on manifest errors of law and fact."  ECF No. 388, at 10.[1]  None of Parx's putative grounds for reconsideration has any merit.

In Part III.A of its Brief, Parx simply reiterates arguments that it has presented previously and contends that the Court erred by rejecting them.  ECF No. 388, at 10-14.  "Motions for reconsideration cannot be used to reargue issues that the court has already considered and disposed of."  *Stockton v. Wetzel*, No. 1:16-cv-613, 2023 WL 1805211, at *1 (M.D. Pa. Feb. 7, 2023) (quotation omitted).    Moreover, Parx's arguments lack merit on their own terms.  *See* ECF No. 373, at 7-15.

In Part III.B of its Brief, Parx contends that the Court "erred by overlooking Parx's sworn declaration to support the privilege claim."  ECF No. 388, at 14.  The

---

[1] All page numbers refer to the page numbering added by the CM/ECF system at the top of documents in the version accessible on the Court's electronic docket.

Court did not "overlook" Parx's declaration. To the contrary, the Court expressly noted that Parx had referenced the declaration. ECF No. 382, at 7 n.5. Parx's argument boils down to disagreement with the Court over whether and how the declaration should have informed the Court's analysis. "A mere disagreement with a court's legal conclusion is not a sufficient basis for reconsideration." *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, No. 3:11-cv-617, 2021 WL 3511122, at *2 (M.D. Pa. Aug. 10, 2021) (quotation omitted).

Parx also does not clearly explain how the declaration would have dictated a different result. The Court performed a careful, document-by-document review to determine whether each document falls within the attorney-client privilege. Parx does not explain how the vague, conclusory statements in the declaration undermine the conclusions reached by the Court after conducting its careful review of the documents themselves.

Finally, *United States v. Agnew*, 385 F.3d 288 (3d Cir. 2004), is entirely inapposite. That case addressed the need for a district court to explain the basis for its evidentiary rulings at trial. *Id.* at 291-92. *Agnew* did not hold that, in resolving a discovery dispute, the district court must respond in detail to every contention made by a party. Moreover, *Agnew* found that the district court had adequately explained its ruling with the statement: "I have read the [government's] motion and your brief. I am going to sustain the objection." 385 F.3d at 292. Here, the Court

provided a much more detailed and comprehensive justification for its discovery rulings, including a specific reference to arguments relating to the declaration. Parx's arguments in Part III.B of its Brief do not support reconsideration of the April 29 Order.

In Part III.C of its Brief, Parx contends that the Court erred by ordering the production of PRIV-0074. ECF No. 388, at 17. Parx seemingly contends that the entirety of the document should have been withheld merely because the Court found one small passage to involve legal analysis. *See id.* at 18. Parx cites no authority to support that extraordinary proposition. The Court found that "[t]he predominant purpose of PRIV-0074 was not legal advice." ECF No. 382, at 16. Parx does not contest that factual finding. Thus, under the predominant-purpose standard, PRIV-0074 is not privileged as a whole. *See In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) (explaining that, under the predominant-purpose standard, a document is privileged only if "the predominant purpose of the communication is legal advice"). Parx has identified no plausible basis for withholding the entirety of PRIV-0074, whose predominant purpose is not legal advice.

As a fallback position, Parx argues for the first time that the Court should at least have ordered the redaction of the sixth bullet point on the first page of the document. ECF No. 388, at 18-19. In its prior briefing, Parx never argued for the redaction of any portion of any document at all, even in the alternative. *See generally*

3

ECF No. 366; ECF No. 374. Nor did Parx raise any argument that specifically addressed PRIV-0074. *See id.* "[A] motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the original motion." *Sydykov v. Immigration & Customs Enforcement*, No. 1:21-cv-575, 2021 WL 5903915, at *2 (M.D. Pa. Aug. 10, 2021) (quotation omitted). Parx cannot raise its redaction argument for the first time in a motion for reconsideration. *See id.*; *United States v. Dish Network, LLC*, No. 09-cv-3073, 2012 WL 13012614, at *2 (C.D. Ill. July 9, 2012) ("Dish's request for reconsideration and redaction of certain documents is denied because Dish waived the redaction argument by not raising the issue in its response to the Motion to Compel."). Moreover, the only case cited by Parx to support its belatedly asserted redaction theory—*Janesch v. Pennsylvania House of Representatives*, 299 A.3d 1030 (Pa. Cmwlth. 2023)—is inapposite. *Janesch* involved the redaction of discrete portions of billing records, engagement letters, and expense reports. *Id.* at 1040-41. *Janesch* did not consider what redactions, if any, can be made to a communication whose predominant purpose is not legal advice. *See id.* Parx has fallen far short of establishing that its position has any merit at all, let alone showing that the Court committed manifest error, as necessary to warrant reconsideration.

In Part III.D of its Brief, Parx contends that the Court "misunderstood" its arguments regarding certain documents. ECF No. 388, at 19. In particular, Parx

4

suggests that the Court erroneously believed that Parx was only asserting privilege as to certain pages of the documents. *Id.* at 20. Not so. The Court's April 29 Order makes clear that the Court reviewed the entirety of the documents but found that only certain, discrete portions of the documents fell within the privilege. *See* ECF 382, at 16-17. Parx misunderstands the Court's analysis and has presented no basis for reconsidering the Order.

Parx also asserts that "[a]s the holder of the privilege, Parx's intent controls. *See Commonwealth v. McCullough . . . .*" ECF No. 388, at 19. It is unclear how this contention fits into Parx's argument, but the contention is erroneous. The privilege holder's intent controls **the waiver** of the privilege; the *McCullough* case cited by Parx is a waiver case. But Parx cites no authority to show that its subjective intent controls whether a communication constitutes legal advice. That is not the law. If it were, a party could transform **any** communication into a privileged communication merely by believing it to be so.

In Part III.E of its Brief, Parx asserts that "the Court did not address the privilege as it relates to communications about requirements for licensing applications such as PRIV-0925." ECF No. 388, at 21. Parx never raised this argument until its motion for reconsideration. *See, e.g.*, ECF No. 366; ECF No. 374. "[A] motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the

5

original motion." *Sydykov*, 2021 WL 5903915, at *2 (quotation omitted). Parx has waived this argument. Moreover, the only case cited by Parx in support of its newfound argument addressed whether certain communications providing legal advice regarding a ***patent*** application were privileged. *See Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 336 (E.D.N.Y. 1996). Parx provides no argument at all that a case involving patent applications—a category of privilege disputes that has created diverging results and a distinct body of case law—has any bearing here. *Cf.* PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7:24 (Dec. 2023). Moreover, *Saxholm* does not hold that ***all*** communications regarding patent applications are privileged. Instead, it concludes that communications regarding patent applications should not be categorically excluded from the privilege so long as "the other elements of the privilege obtain." 164 F.R.D. at 336. Cases involving communications about other kinds of licenses—including gaming licenses— similarly require that a communication satisfy each requirement of the privilege. *See In re Gaming Lottery Secs. Litig.*, No. 96-cv-5567, 2000 WL 1171166, at *6 (S.D.N.Y. Aug. 17, 2000) (overruling assertion of attorney-client privilege as to communications involving gaming license, noting that the communications had "not been shown to have been made to obtain legal advice"). Here, Parx provides no argument at all that any purported communication regarding a license or permit

6

application satisfies all of the requirements of the attorney-client privilege. Parx has identified no basis to reconsider the April 29 Order.

## II.    The Court Should Deny Parx's Request for Certification Under 28 U.S.C. § 1292(b).

Section 1292(b) permits the certification of an order for interlocutory review only where three conditions are satisfied: (1) the order must "involve[] a controlling question of law"; (2) there must be "substantial ground for difference of opinion" as to that controlling question of law; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). "[T]he burden is on the movant to demonstrate that a 1292(b) appeal is warranted." *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994).  As described below, Parx has not shown that the April 29 Order satisfies ***any*** of the three statutory requirements.  Thus, the Court should not certify the Order for immediate appellate review.

### A.    The April 29 Order Does Not Involve a Controlling Question of Law.

Section 1292(b) permits immediate appellate review of an order only if that order "involves a controlling question of law."  28 U.S.C. § 1292(b).  The text of this requirement reflects two subcomponents: the question must be "***controlling***," and it must be a "question of ***law***."  *See id.*  Parx has not identified a question presented by the April 29 Order that satisfies either of these criteria.

7

With regard to the first criterion, the Third Circuit has explained that "'controlling' means serious to the conduct of the litigation, either practically or legally." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc). Most often, this inquiry looks to whether the order, "if erroneous, would be reversible error on final appeal." *Id.* Here, the discovery dispute resolved by the April 29 Order is not serious to the conduct of this litigation. It will not impact whether a trial occurs, or what claims or theories of recovery are presented at trial. *Compare Union Pac. R. Co. v. ConAgra Poultry Co.*, 189 F. App'x 576, 579 (8th Cir. 2006) (explaining that certification under § 1292(b) is improper when appellate review would "not resolve any of the substantive claims or eliminate the need for trial"). Moreover, even if the Court's discovery ruling were incorrect—which it is not—it would not constitute reversible error. The Third Circuit "has held that a district court's discovery ruling will not be reversed without determining that it resulted in actual and substantial prejudice and was a gross abuse of discretion resulting in fundamental unfairness." *Summy-Long v. Penn. State Univ.*, 715 F. App'x 179, 184 (3d Cir. 2017) (quotation omitted). Parx has not shown ***any*** of these requirements for reversal. Parx has made no effort to show that the April 29 Order would impose "actual and substantial prejudice." Nor has it made any effort to show that the Order would result in "fundamental unfairness." Nor has it shown that the Court engaged in a "gross abuse of discretion." Thus, even assuming *arguendo* that

8

the Court of Appeals might disagree with the Court's privilege analysis, Parx has provided no basis to conclude that the Third Circuit would reverse on that basis on a final appeal. *Cf. Katz*, 496 F.2d at 755. Parx has not identified any controlling issue that warrants immediate appellate review.

Turning to the second criterion, Parx also has not identified a "question of *law*" (controlling or otherwise) that warrants appellate review. In the context of § 1292(b), the phrase "question of law" refers to "a 'pure' question of law." *Ahrenholz v. Bd. of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000). Section "1292(b) is not designed for review of factual matters but addresses itself to a 'controlling question of law.'" *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977) (en banc). Thus, even a mixed question of law and fact falls outside the scope of § 1292(b). *See, e.g.*, *Johnson v. Alldredge*, 488 F.2d 820, 822 (3d Cir. 1973) (indicating that an issue would be inappropriate for interlocutory appeal if it "comprehends factual as well as legal matters"); *McCoy v. Favata*, No. 17-1046, 2020 WL 5891898, at *2 (D. Del. Oct. 5, 2020) ("An order involves a 'controlling question of law' when it concerns a question of law, as opposed to one of fact or a mixed question of law and fact." (quotation omitted)).

This discovery dispute does not present the sort of pure question of law required by § 1292(b). *Cf. Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 484-85 (D. Md. 2014) ("Whether a document was prepared for

9

primarily a legal purpose is a factual determination . . . ."); *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) ("The application of the attorney-client privilege is a question of fact . . . ." (quotation omitted)).  The Court did not determine, on a categorical basis, whether any particular class of communications is, or is not, privileged.  *See* ECF No. 382, at 9-11.  Instead, the Court and the Magistrate Judge painstakingly reviewed the 116 documents at issue *in camera* to make a factual determination regarding whether each document was made predominantly for the purpose of providing legal advice.  To review the Court's decision, the Court of Appeals similarly would have to conduct an arduous, document-by-document review of the materials at issue, focusing on case-specific and document-specific factual questions.  "The term 'question of law' . . . does not mean any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004); *see also Ahrenholz*, 219 F.3d at 677 (explaining that § 1292(b) does not permit review of an issue whose resolution "requires hunting through the record").  "[A] controlling question of law cannot be one that depends upon issues of fact." *In re Pac. Forest Prods. Corp.*, No. 05-23268, 2006 WL 8433477, at *10 (S.D. Fla. May 24, 2006).  Parx has not identified a "question of law" presented by the Court's April 29 Order and therefore has not identified a basis for certification under § 1292(b).

10

**B.    Parx Has Not Identified Substantial Grounds for Difference of Opinion as to Any Question Presented by the April 29 Order.**

Section 1292(b) permits immediate appellate review only if there is "substantial ground for difference of opinion" as to a controlling question of law. 28 U.S.C. § 1292(b). "[A] substantial ground for difference of opinion exists when there is genuine doubt or conflicting precedent as to the correct legal standard to be applied in the order at issue." *Small v. Lower Paxton Twp.*, No. 1:22-cv-1146, 2024 WL 691360, at *7 (M.D. Pa. Feb. 20, 2024) (quotation omitted). Here, there is neither doubt nor conflicting authority regarding the legal standard that governs this dispute: under Pennsylvania law, the attorney-client privilege applies only to communications predominantly made for the purpose of obtaining or providing professional legal advice. *See, e.g.*, *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa. Super. 2023). To be sure, Parx disagrees with how the Court applied that standard. However, the mere fact "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quotation omitted). "[A] party's disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion' within the meaning of the statute." *Small*, 2024 WL 691360, at *7.

Parx has implied that a substantial ground for difference of opinion exists because no Pennsylvania case has considered whether the attorney-client privilege

11

encompasses materials that provide "legislative advice."  The fact that no prior Pennsylvania litigant has had the audacity to assert the privilege as to its legislative and lobbying strategy does not provide a basis for interlocutory appeal.  "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *see also, e.g.*, *Cuttic v. Crozer-Chester Med. Ctr.*, 806 F. Supp. 2d 796, 805 (E.D. Pa. 2011) (rejecting argument that substantial grounds for difference of opinion existed where order presented "a matter of first impression"); *Kostik v. ARS Nat'l Servs., Inc.*, No. 3:14-cv-2466, 2016 WL 69904, at *4 (M.D. Pa. Jan. 5, 2016) ("The fact that this case may involve an issue of first impression does not warrant certification pursuant to § 1292(b)." (cleaned up)).  "If questions of first impression alone were sufficient to warrant certification for an immediate appeal, our Court of Appeals would be besieged with piecemeal interlocutory appeals."  *Kostik*, 2016 WL 69904, at *4 (quotation omitted).

At a minimum, Parx must point to a basis in Pennsylvania law making it reasonably foreseeable that Pennsylvania courts would apply the attorney-client privilege to advice regarding legislative, lobbying, or public-relations strategy.  Parx has pointed to no such authority, from Pennsylvania or elsewhere. The absence of such authority further undermines its claim that a substantial ground for difference of opinion exists.  *See Couch*, 611 F.3d at 633 (finding no substantial ground for

12

difference of opinion were moving parties had "not provided a single case that conflicts with the district court's construction of application of [the statute at issue]"); *Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (finding no substantial ground for difference of opinion, and noting that "[w]hile identification of a sufficient number of conflicting and contradictory opinions would provide substantial ground for disagreement, the County offered no such Iowa opinions, statutes or rules" (cleaned up)).  Moreover, Parx's proposed expansion of the attorney-client privilege—which, again, is supported by no authority from any jurisdiction—would run headlong into the bedrock principle of Pennsylvania law that courts must "construe the privilege narrowly."  *In re Estate of McAleer*, 248 A.3d 416, 426 (Pa. 2021).  Parx has failed to identify a substantial ground for difference of opinion as to any question of law presented by the April 29 Order, and § 1292(b) does not authorize immediate appellate review of that Order.

## C.    Immediate Appellate Review of the April 29 Order Would Not Materially Advance the Ultimate Termination of This Litigation.

Section 1292(b) applies only if "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "This is not a difficult requirement to understand.  It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation."  *McFarlin*, 381 F.3d at 1259.  "Several factors are pertinent in determining whether an immediate appeal would materially advance the ultimate

13

termination of the litigation, including: (1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties." *Small*, 2024 WL 691360, at *8 (quotation omitted).

None of these factors supports immediate appellate review here. Situating this discovery dispute within the broader context of the litigation helps demonstrate why. As described in the operative Complaint, Eckert assumed fiduciary duties owed to POM by virtue of forming an attorney-client relationship with POM. *See, e.g.*, ECF No. 243, ¶ 105. Notwithstanding those fiduciary duties, Eckert knowingly engaged in several distinct courses of conduct aimed at harming—indeed, destroying—its own client, POM. In one course of conduct, Eckert attorneys surreptitiously represented Parx in litigation before the Commonwealth Court directly against POM, contending that POM's games were illegal. *See id.*, ¶¶ 59-76. In another course of conduct, Eckert attorneys represented Parx in litigation against locations hosting POM games, again contending that POM's games were illegal. *See id.*, ¶¶ 45-58. In yet another course of conduct, Eckert attorneys aggressively lobbied law-enforcement and regulatory agencies to go after POM and its games— including through criminal proceedings—on the baseless theory that POM's games were illegal. *See id.*, ¶¶ 36-42. And in yet another course of conduct, Eckert attorneys implemented a relentless lobbying and PR blitz in an effort to persuade

14

Pennsylvania legislators to ban skill games, particularly POM's games. *See id.*, ¶¶ 29-34.

Discovery in this case has provided extensive, concrete, and compelling evidence that Eckert pursued each of these courses of conduct against its own client, POM. Smoking gun email after smoking gun email shows, in Eckert's own words, how the Defendants worked tirelessly to destroy POM. Eckert's own emails also demonstrate that Eckert attorneys were acutely aware of their egregious conflict of interest almost from the moment they signed POM up as a client. Yet rather than disclosing the issue to POM and permitting it to make an informed decision about the representation, Eckert instead went to extraordinary lengths to hide the conflict from POM.

This broader context demonstrates that immediate appellate review would not materially advance the termination of this litigation. While POM has not seen the documents at issue in this dispute, POM understands those materials to relate principally to Eckert's lobbying and PR efforts against POM. As described above, those efforts constitute only one of several courses of misconduct at issue in this litigation. Thus, this discovery dispute bears on only one subset of a much broader case. Moreover, as noted above, discovery in this case has already revealed extensive evidence of each of Eckert's courses of misconduct. Thus, even if an immediate appeal were to reverse the April 29 Order, POM still would be able to

15

procced to trial.[2]  In addition, an immediate appeal of the April 29 Order—which addresses only a discovery dispute—will not impact which claims, defenses, or damages theories are presented at trial.

Ultimately, this litigation would proceed in much the same way regardless of whether the Court of Appeals would affirm or reverse the April 29 Order.  "When litigation will be conducted in substantially the same manner regardless of [the Court of Appeals's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation."  *White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994); *see also, e.g.*, *Orson*, 867 F. Supp. at 322 (rejecting certification where "a trial will most likely occur on the remaining issues in this action regardless of the outcome of any interlocutory appeal").

For these reasons, immediate appellate review will not materially advance the termination of this litigation.  To the contrary, "if the interlocutory appeal is permitted, it would prolong rather than hasten the termination of the litigation." *United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 167 (D.D.C. 2014). The parties will be unable to complete a number of key depositions and other important discovery until they know whether the materials at issue in this dispute will be produced.  An immediate appeal will indefinitely delay those steps and thus

---

[2] To be sure, POM expects that the documents at issue would strengthen its case at trial.  But the documents at issue are not indispensable to proceeding with this case.

indefinitely delay the ultimate termination of this case. That fact further counsels against certification under § 1292(b). *See, e.g., id.*; *Simmons v. Akanno*, No. 1:09-cv-659, 2011 WL 1566583, at *4 (E.D. Cal. April 22, 2011) (denying certification where "a section 1292(b) appeal would increase chances of delay"). The Court should deny the request for certification under § 1292(b).

### III.    The Court Should Deny Parx's Request for a Stay Pending Appeal.

In the event that the Court denies Parx's request for certification under § 1292(b), the Court should deny Parx's request for a stay pending appeal. "A stay pending appeal [would] not [be] warranted, since no appeal [would be] pending." *Mathis v. Zant*, 708 F. Supp. 339, 340 (N.D. Ga. 1989); *see also, e.g., Electronic Frontiers Found. v. Office of Dir. of Nat'l Intelligence*, No. 08-1023, 2009 WL 10710750, at *1 (N.D. Cal. Oct. 7, 2009) (holding that "[a] motion for a stay pending appeal would be premature and [was] not properly before the Court" where no appeal had been filed).

Even if the Court does certify the matter for immediate appellate review, it should deny Parx's request for a stay pending appeal. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify the exercise of [the Court's] discretion [to enter a stay]." *Id.* at 433-34. Parx does not even acknowledge the factors that govern whether to enter

17

a stay, let alone carry its burden of establishing that the careful balancing of those factors justifies a stay. *See* ECF No. 388, at 21-22. That failure alone warrants denying the stay.

"The most critical factors" in the stay analysis are "whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm—the latter referring to harm that cannot be prevented or fully rectified by a successful appeal." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (cleaned up). "Though both are necessary, the former is arguably the more important piece of the stay analysis." *Id.* Here, Parx has provided no basis to believe that it has any chance at all of prevailing on appeal. This dispute turns largely on the Court's factual findings, which are clearly correct and which would be reviewed only for clear error by the Third Circuit. *See Buskirk v. Apollo Metals*, 307 F.3d 160, 173 (3d Cir. 2002). Moreover, Parx has cited no authority to support its unprecedented position that legislative and lobbying strategy *per se* constitutes legal advice. No such authority exists, and there is no reason to believe that the Third Circuit will become the first court to adopt that position.

The Third Circuit employs a "sliding-scale approach" to the stay inquiry. *See Revel*, 802 F.3d at 569. "Under [that approach], the necessary level or degree of possibility of success [on the merits] will vary according to the court's assessment of the other stay factors." *Id.* (cleaned up). "Stated another way, the more likely the

18

[movant] is to win, the less heavily need the balance of harms weigh in its favor; the less likely it is to win, the more need it weigh in its favor." *Id.* (cleaned up). The Third Circuit has suggested, at least in dicta, that the disclosure of privileged information may constitute irreparable harm. *See United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988); *but see Jicarilla Apache Nation v. United States*, 91 Fed. Cl. 489, 493-95 (2010) (explaining why the disclosure of purportedly privileged materials does not constitute irreparable harm warranting a stay pending appeal). However, "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, serious questions going to the merits." *Revel*, 802 F.3d at 570 (cleaned up). As described above, Parx has offered no plausible argument that it has any chance of prevailing on appeal. It cannot muster any authority, from any jurisdiction, to support its novel theories. Its arguments necessarily require contesting the Court's factual findings, which were reached after a careful *in camera* review of each relevant document, and which will be reviewed only for clear error. Even assuming that Parx could show irreparable harm, "it isn't enough that the failure to obtain a stay will be a disaster for the stay movant but only a minor inconvenience to the [opposing party], as equity jurisdiction exists only to remedy legal wrongs; thus, without some showing of a probable right, there is no basis for

19

invoking it." *Id.* at 568 (cleaned up). Parx has no "probable right" and thus cannot obtain a stay pending appeal.

## CONCLUSION

For the reasons stated above, the Court should deny all of the relief sought in Parx's May 13, 2024 motion.

20

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Jeffrey B. Jensen*
Jeffrey B. Jensen*
Michael Nolan*
Bola Adeniran*
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Jeff.jensen@huschblackwell.com


Michael Martinich-Sauter*
JAMES OTIS LAW GROUP LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(314) 949-3018 (Telephone)
michael.martinich-sauter@james-otis.com

* Appearing by special admission


George W. Westervelt, Jr.
Attorney ID No. 18195
706 Monroe Street, PO Box 549
Stroudsburg, Pennsylvania 18360
570-421-6100
geowwest@ptd.net

**Counsel for Plaintiff Pace-O-Matic, Inc.**

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served on

counsel of record for all parties via the Court's ECF filing system on May 24, 2024.

*/s/ Jeffrey B. Jensen*