

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

July 11, 2024

Nicole J. Boland, Esquire
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110
Phone (717) 678-9654
nboland@pa.gov

The Honorable Jennifer P. Wilson
United States Judge
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N. 6th Street
Harrisburg, Pennsylvania 17102
***Via Electronic Filing***

Re: ***Pace-O-Matic, Inc. v. Eckert Seamans
Cherin & Mellott, LLC*, 1:20-cv-292**

Dear Honorable Judge Wilson,

On behalf of the Pennsylvania State Police (PSP), I am writing to notify the Court regarding PSP's intent to seek protective relief related to two subpoenas (for documents and testimony, respectively) that were served by POM over a year ago. POM is overtly attempting to use the subpoenas to obtain documents and materials that the Commonwealth Court protected from disclosure, and is subjecting PSP to undue burden and harassment, including by making misrepresentations to Commonwealth Court about PSP's subpoena response.

By way of background, POM issued a document subpoena to PSP in November 2022, and later, a subpoena for corporate designee testimony in May 2023 (attached, with PSP's objections, as Exhibits "A" and "B"). It appears that the intent of POM's subpoenas is to explore whether Eckert, Seamans, Cherin & Mellott, LLC ("Eckert Seamans") and/or various individuals working in the casino industry,

1



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

corresponded with or influenced the decisions of PSP to investigate liquor licensed establishments allowing the operation of POM's "PA Skill" machines.

The document subpoena contained 13 requests, and the latest subpoena received from POM's counsel contains 25 separately enumerated items. Despite propounding objections to the majority of these requests, and not being a party to this litigation, PSP proceeded, in good faith, to provide POM with over six thousand pages of documents, including e-mail correspondence between PSP and specific individuals requested by POM, in addition to copies of closed and adjudicated investigative case files involving POM's devices.[1]. Those documents evidence *no link* between PSP and Eckert Seamans law firm. Notwithstanding, over a year later, POM continues to demand more from PSP. Particularly, unadjudicated investigative case files and documents that are directly protected by a protective order entered by the Commonwealth Court in a state court action in which PSP *is* a party, docketed at 503 M.D. 2018 (the protective order is attached as Exhibit "C").

Since last year, PSP has maintained its objections to further production of documents. PSP articulated to POM its concern that POM is using this litigation to end-run the protective order entered against it in Commonwealth Court, requesting a proffer from POM as to why it would need additional information protected by the protective order, when over six thousand pages of documents, including correspondence involving PSP, have already been produced, establishing no

---

[1] For the Court's knowledge, it is the statutory responsibility of PSP's Bureau of Liquor Control Enforcement ("BLCE") to enforce the liquor laws of the Commonwealth and issue administrative citations for unlawful conduct that occurs within establishments that are licensed by the Pennsylvania Liquor Control Board ("PLCB"). Citations are heard and adjudicated by an Administrative Law Judge of the PLCB. The BLCE has historically cited licensees which operate or allow the operation of gambling within their premises, including the operation of gambling devices. The BLCE has administratively cited hundreds of licensees which have operated so-called "skill games" that were made by various manufactures, including POM, Banilla Games, IGS, Jenka Labs, Prominent Games, and others (in many situations, an establishment will have a mix of devices from different manufacturers). There are currently less than a dozen or so pending citation cases involving POM devices which have been stayed, at the request of the licensees, until the legality of the devices are decided by various appeals. Accordingly, those citation cases remain "open" or unadjudicated.



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

connection, as alleged, between PSP and Eckert Seamans. The only proffer provided is speculative assertions that, perhaps, there is something discoverable in the file.

The outstanding requests are not proportional to the needs of the case and are a thinly veiled attempt at discovery for the state court litigation. POM has subpoenaed unadjudicated investigative files, PSP internal training materials involving gambling devices, grant applications submitted by other government agencies, any and all testing or analyses involving POM devices, "exculpatory evidence regarding POM games or POM software", the identity of which PSP personnel authorized a seizure of POM devices on March 14, 2023, and correspondence between PSP and the District Attorney of Clearfield County regarding POM devices. Many of these same requests were made in discovery requests by POM directed to PSP in the state court case, which prompted PSP to file a Motion for Protective Order.[2]  In its Order dated May 25, 2023, the Commonwealth Court specifically directed that PSP was not required to produce open or unadjudicated investigative files involving POM devices, communications with other law enforcement agencies regarding such devices, or any training materials. In fact, other than adjudicated investigative files involving POM devices, PSP's Motion for Protective Order was granted in all other respects by the Commonwealth Court.

Instead of bringing its demands for more information related to the year-old subpoenas to this Court's attention, last week, POM filed a motion in Commonwealth Court requesting "clarification" that the protective order is not applicable to this matter, and indicating to the Commonwealth Court, falsely, that PSP has "refused to comply with third-party discovery by a different party in federal court" due to the protective order (attached hereto as Exhibit "D"). Standing alone, Commonwealth Court will have the impression that PSP did not produce *any* documents in response to the subpoena in reliance on the protective order.

---

[2]    For example, in discovery requests filed by POM in 503 MD 2018, POM had similarly asked for "all PSP training materials concerning or relating to gambling devices, including but not limited to investigating, identifying, and/or seizing said devices"; "all communications between PSP and any local law enforcement or District Attorney's Office concerning or relating to gambling devices; " and "identify the person(s) who ordered/directed the Philipsburg raid on February 18, 2020 at K&H Beverage … where Pace-O-Matic Games were seized."



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

According to Federal Rule of Civil Procedure 45(d)(1), POM is required to make efforts to avoid imposing an undue burden on the person subject to the subpoena. In this case, PSP objected to both subpoenas and articulated bases for protective relief. Nevertheless, PSP worked in good faith to produce thousands of pages of documents in response to the subpoena. This effort took dozens of hours to complete over the course of weeks. Although none of those documents show a connection between PSP and Eckert Seamans, POM seeks to continue the fishing expedition against PSP, including by asking for all unadjudicated cases involving POM devices, which will also serve the purpose of obtaining the protected discovery in the Commonwealth Court litigation.[3] POM should not be permitted to continue its unreasonable and oppressive efforts against PSP.

Notably, while POM is now using this case to seek relief from the state court protective order against it, PSP has not solely relied on the order in objecting to further production. Several grounds were asserted, including that producing certain requested records may implicate state law confidentiality rules and independent privacy interests, among other concerns. Further, PSP has already absorbed significant burden connected with its extensive production, which even included producing and redacting closed and adjudicated case files. Providing information from administrative investigations in which evidence has not yet been presented to an Administrative Law Judge present further logistical challenges and legal issues.

Any notion that POM's true intention here was not to end-run the protective order in Commonwealth Court was put to rest last week. POM has never sought relief from this Court regarding the subpoenas issued under the above-caption. Instead, POM is now using the subpoena as a vehicle to seek relief from the protective order, and to cast PSP in a negative light, in the case where it is a party. Moreover, even if the Commonwealth Court indicates that its order only applies in

---

[3]    POM has also sued PSP and former PSP personnel in a separate state court matter, docketed at 222 MD 2022, alleging that PSP has caused POM reputational damages. Discovery and proceedings in that case were stayed pending a related PA Supreme Court appeal, currently docketed at 7 MAL 2024. On January 16, 2024, the Commonwealth Court denied POM's application to vacate the stay, which will remain in place until the Supreme Court's decision.

4



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

state court—that still does not resolve PSP's objections and grounds for protective relief, which are maintained and are appropriately vetted by this Court.

In sum, PSP has produced over six thousand pages in documents. There is no connection between PSP and Eckert Seamans because PSP has never had a joint venture with Eckert Seamans regarding POM seizures. Rather, PSP is a law enforcement agency that operates according to its duty of public protection. Ordering PSP to produce all of its files (or discuss the same during a deposition), including unadjudicated files, is unduly burdensome, offends the Commonwealth Court protective order, implicates state law privacy interests, is harassing, and causes prejudice and imposition against third-party PSP. PSP, thus, requests assistance to resolve this dispute before formally filing a motion for a protective order.

Thank you very much for your time and attention to this matter.


Very Truly Yours,

*s/ Nicole J. Boland*

Nicole J. Boland
Assistant Counsel
Pennsylvania State Police


cc: Counsel of record