SUBPOENA FILE# 1111-2022 CMG

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Pennsylvania

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:20-CV-292-JPW |
| | ) | |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, et al. | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:     Colonel Robert Evanchick, Pennsylvania State Polic Commissioner, 1800 Elmerton Ave., Harriburg, PA 17110

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A

| Place: | Date and Time: |
|---|---|
| Via email to jeff.jensen@huschblackwell.com, or via an alternate mutually agreed to by the parties. | 11/30/2022 at 5:00 p.m. EST |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/3/2022

|  | OR | |
|---|---|---|
| | | /s/ Jeff Jensen |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Pace-O-Matic, Inc. _____ , who issues or requests this subpoena, are:

Jeff Jensen, Husch Blackwell LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

SUBPOENA FILE# 1111-2022 CMG

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-CV-292-JPW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                          .

☐ I served the subpoena by delivering a copy to the named person as follows:

_____    on *(date)*                          ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

HAND-DELIVERED DOCUMENTS
11-3-2022
Date/Time Rec'd: 1:45    Name: C McDonald

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

## DEFINITIONS

"**Communication**" includes every expression, statement, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, medium, or kind. "Communication" includes but is not limited to oral and written communications of any kind, including telephone conversations, discussions, meetings, notes, letters, agreements, emails and other electronic communications, facsimiles, and all other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any communication that falls within the definition of "document" shall constitute both a document and a communication for purposes of this Subpoena. To the extent that any item constitutes a "Communication" under this definition, all attachments to that item also constitute "Communications," regardless of whether those items would independently constitute "Communications."

"**Document**" encompasses and includes every item, material, file, expression, document, and other thing that would constitute a "document" as that term is used in Federal Rule of Civil Procedure 34. "Document" includes every item, whether in electronic or tangible form, upon which any expression or communication has been recorded by any means, including but not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar entries, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, and metadata. The term "document" includes every draft of any other material that falls within the definition of "document."

"**Eckert**" means Eckert, Seamans, Cherin & Mellott, LLC.

A person is "**party to**" a Communication if the person is involved in any way in the Communication, including but not limited to any speaker, listener, writer, drafter, reader, sender, or recipient (whether directly, via "cc," via "bcc," or via forward or similar mechanism).

"**Parx**" means Greenwood Gaming and Entertainment, Inc. d/b/a Parx Casino.

"**POM**" means Pace-O-Matic, Inc.

"**Pennsylvania State Police**" includes any employee, agent or representative of the Pennsylvania State Police as well as any component or subdivision thereof, including but not limited to the Bureau of Liquor Control Enforcement and the Bureau of Gaming Enforcement.

"**You**," and "**your(s)**" refers to the Pennsylvania State Police and includes every component and subdivision, including but not limited to Bureau of Liquor Control Enforcement and Bureau of Gaming Enforcement.

1

HB: 4865-4225-6698.1

SUBPOENA FILE# 1111-2022 CMG

## REQUESTS

1.    All Communications relating to POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia."

2.    All Communications relating to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming to which any of the following persons was a party:

   a.    Mark Stewart;
   b.    Kevin Skjoldal;
   c.    David (a/k/a Neil) Hittinger;
   d.    Kristine Marsilio;
   e.    Any other employee, officer, or owner of Eckert, including but not limited to any individual whose email address includes the domain "@eckertseamans.com."
   f.    Robert ("Bob") Green;
   g.    Thomas Bonner;
   h.    Bryan Schroeder;
   i.    Any other employee, officer, or agent of Parx;
   k.    Richard Gmerek.

3.    All Communications relating to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that mention or discuss any of the following:

   a.    Mark Stewart;
   b.    Kevin Skjoldal;
   c.    David (a/k/a Neil) Hittinger;
   d.    Kristine Marsilio;
   e.    Any other employee, officer, or owner of Eckert;
   f.    Parx Casino and/or Greenwood Gaming;

4.    Documents reflecting all meetings, telephone calls, and videoconferences relating in any way to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that were attended by any of the following or to which any of the following were invited:

   a.    Mark Stewart;
   b.    Kevin Skjoldal;
   c.    David (a/k/a Neil) Hittinger;
   d.    Kristine Marsilio;
   e.    Any other employee, officer, or owner of Eckert;
   f.    Robert ("Bob") Green;

2

HB: 4865-4225-6698.1

g.      Thomas Bonner;

h.      Bryan Schroeder;

j.      Any other employee, officer, or agent of Parx.

5.      All Documents (including all Communications) relating to any actual or proposed joint or coordinated efforts with casinos or participants in the gaming industry relating to:

a.      POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or

b.      games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

6.      All Documents (including all Communications) relating to any actual or proposed target or focus of Pennsylvania State Police related to:

a.      POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or

b.      games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

7.      All Documents (including all Communications) relating to Captain James Jones and Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia.

8.      All Documents (including all Communications) relating to any investigation of Captain James Jones.

9.      All Documents (including all Communications) related to Captain James Jones, Sergeant Fischer, or any of your employees, agents, or officers providing direction or instruction or suggestion to anyone to look for, find, or target Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia games ("POM games") including but not limited calendar entries, notes, records, or minutes of meetings or briefings, descriptions or depictions of the POM games logo, descriptions regarding distinguishing POM games from Banilla games, instructions on writing reports related to seizure of POM games, instruction or descriptions characterizing the legality or illegality of the POM games, or instructions regarding communication with licensees of the POM games.

10.      All Documents related to any training received by the Vice Unit or other specific Pennsylvania State Police Units related to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training.

11.      All Documents related to the seizure of POM games from Country Garden Six-Pack in Clearfield County including but not limited to any draft reports.

12.      All Documents relating to any grant application submitted by the Monroe County District Attorney's Office to the Pennsylvania Gaming Control Board.

3

HB: 4865-4225-6698.1

13.    All prepared remarks, slide decks, Powerpoint presentations, handouts, outlines, agendas, and other Documents reflecting or memorializing any aspect of the content of a training event delivered on or about September 28, 2021 by the Pennsylvania State Police's CAGE Unit.

2022 NOV -4 P 1:50

RECEIVED
RIGHT-TO-KNOW LAW OFFICE

4

SUBPOENA FILE# 1111-2022 CMG

SUBPOENA FILE# 1111-2022 CMG



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

Jeff Jenson
Husch Blackwell LLP
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105
Via U.S Mail and E-mail
jeff.jenson@huschblackwell.com

November 17, 2022

Good Afternoon Attorney Jenson,

I'm in receipt of your subpoena directed to the Pennsylvania State Police (PSP) for *POM v. Eckert*, 20-292 (M.D. Pa.). Please be informed that the Pennsylvania State Police objects to the subpoena as providing an insufficient response time, seeking privileged and/or protected documents, and for imposing undue burden, as more specifically explained for each individual request in the attached objections.

Federal Rule of Civil Procedure 45(d)(1) requires you to make efforts to avoid imposing an undue burden on the person subject to the subpoena. Without waiving the objections, we are willing to work together with you to negotiate a production that provides you with responsive documents without causing undue burden or harm to PSP. On the part of PSP, an initial search is being conducted for identifiable documents that are responsive to the subpoena for immediate production.

While PSP is making a good faith effort to provide identifiable documents, we will need to confer to resolve the objections. For e-mail searches, time parameters must be provided, as well as custodians and agreed-upon search terms. Necessarily, an extension will be required to conduct e-mail searches and document review. For certain other documents requested—such as "training" documents and "all" communications regarding POM—privileges apply, as more fully noted in the attached objections.

I look forward to working with you to resolve PSP's objections and to provide to you responsive documents.

Very truly yours,

*/s/ Nicole J. Boland*

Nicole J. Boland
Assistant Counsel



**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PACE-O-MATIC, INC.,** | **:** | |
| **Plaintiff** | **:** | **No. 1:20-CV-292** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **ECKERT SEAMANS CHERIN &** | **:** | |
| **MELLOT, LLC, et al.** | **:** | |
| | **:** | |
| **Defendant** | **:** | |

**OBJECTIONS OF THE PENNSYLVANIA STATE POLICE TO THE SUBPONEA
TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT
INSPECTION OF PREMISES IN A CIVIL ACTION**

1. All communications relating to POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia."

   **Objection. This request is overly broad and creates an undue burden. First, there is no specific time restriction for conducting a search for records. Second, as "communication" is defined in this request, this would include privileged and/or protected information  such as attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an undue, if not impossible, burden. POM has already been provided discovery responses and Right to Know Law responses from PSP in the pending Pennsylvania Commonwealth Court cases involving the legality of POM's devices in 503 MD 2018 and 418 MD 2018. PSP is willing to reproduce those documents, or, alternatively, is willing to respond to a more targeted request for relevant documents**

2. All communications relating to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming to which any of the following persons was a party:  a) Mark Stewart; b) Kevin Skjoldal; c) David (a/k/a Neil) Hittinger; d) Kristine Marsilio; e) any other employee, officer, or owner of Eckert, including but not limited to any individual whose email address includes the domain

1

"@eckertseamans.com"; f) Robert ("Bob") Green; g) Thomas Bonner; h) Bryan Schroeder; i) any other employee, officer, or agent of Parx; k) Richard Gmerek.

**Objection.  This request creates an undue burden because it is not cabined by a time restriction nor does it limit the search to any specific PSP employee or group of employees. As defined, "Pennsylvania State Police" refers to every employee, agent or representative of PSP including but not limited to employees of the Bureau of Liquor Control Enforcement and the Bureau of Gaming Enforcement.  There are approximately 6,500 employees of PSP.  Thus, based on the request as drafted, searches of emails and physical files would need to be effectuated for every employee and member of PSP for an unknown number of years.  Without waiving the foregoing, a search will be conducted and responsive documents produced.**

3. All communications relating to POM, "Pennsylvania Skill," "PA Skill," " Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that mention or discuss any of the following:  a) Mark Stewart; b) Kevin Skjoldal; c) David (a/k/a Neil) Hittinger; d) Kristine Marsilio; e) any other employee, officer, or owner of Eckert, f) Parx Casino and/or Greenwood Gaming.

**Objection.  This request creates an undue burden because it is not cabined by a time restriction nor does it limit the search to any specific PSP employee or group of employees. As defined, "Pennsylvania State Police" refers to every employee, agent or representative of PSP including but not limited to employees of the Bureau of Liquor Control Enforcement and the Bureau of Gaming Enforcement.  There are approximately 6,500 employees of PSP.  Thus, based on the request as drafted, searches of email records would need to be effectuated for every employee and member of PSP for an unknown number of years.  Without waiving the foregoing, a search will be conducted and responsive documents produced.**

4. Documents reflecting all meetings, telephone calls, and videoconferences relating in any way to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that were attended by any of the following or to which any of the following were invited:  a) Mark Stewart; b) Kevin Skjoldal; c) David (a/k/a Neil) Hittinger; d) Kristine Marsilio; e) any other employee, officer, or owner of Eckert; f) Robert ("Bob") Green; g) Thomas Bonner; h) Bryan Schroeder; i) any other employee, officer, or agent of Parx.

**Objection.  This request creates an undue burden because it is not cabined by a time restriction nor does it limit the search to any specific PSP employee or group of employees. As defined, "Pennsylvania State Police" refers to every employee, agent or representative of PSP including but not limited to employees of the Bureau of Liquor Control Enforcement and the Bureau of Gaming Enforcement.  Thus, searches of calendars (whether via Microsoft Outlook or physical calendars) and telephone logs would need to be effectuated for the more than 6,500 members and civilian employees of PSP for an unknown number of years.  Without waiving the foregoing, a search will be conducted and responsive documents produced.**

2

000002

5. All documents (including all Communications) relating to any actual or proposed joint or coordinated efforts with casinos or participants in the gaming industry related to: a) POM, "Pennsylvania Skill, "PA Skill," or "Queen of Virginia"; or b) games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

**Objection. This request is vague, overly broad and creates an undue burden. It is unclear what the terms "joint" or "coordinated efforts" mean, and "participants in the gaming industry" is not further defined. Further, POM already makes more specific requests, as noted above, for communications regarding POM devices between specific individuals in the casino industry and PSP employees, which would be included in this overly broad and vague request. Further, there is no specific time restriction for conducting a search for these requested records.**

6. All documents (including all Communications) relating to any actual or proposed target or focus of Pennsylvania State Police related to: a) POM, "Pennsylvania Skill, "PA Skill," or "Queen of Virginia"; or b) games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

**Objection. This request is vague, overly broad and creates an undue burden. It does not contain a time restriction. It is unclear what the terms "target" or "focus" mean. Moreover, this request appears to seek privileged or protected information, such as pending investigative information protected by CHRIA. By way of further response, PSP's Bureau of Liquor Control Enforcement has initiated administrative citations against licensees for allowing gambling to occur within their licensed premises as a result of setting up, maintaining or allowing the operation of various gambling devices, regardless of the developer or manufacturer of the device, including POM devices. The citations themselves and any adjudications issued by the Office of Administrative Law Judge can be made available. More specific requests including those noted above regarding communications between members of the casino industry and PSP personnel are more tailored to this issue.**

7. All documents (including all Communications) relating to Captain James Jones and Pace-O-Matic, POM, "Pennsylvania Skill," PA Skill" or Queen of Virginia."

**Objection. This request is overly broad and creates an undue burden. First, there is no specific time restriction for conducting a search for records .Second, this request encompasses attorney-client communications. Without waiving the foregoing, a search will be conducted and responsive documents provided.**

3

000003

8. All documents (including all Communications) relating to any investigation of Captain James Jones.

**Objection. This request is overly broad and vague and creates an undue burden. First, First, there is no specific time restriction for conducting a search for documents. Second, it is unclear whether the request is seeking any and all investigations in which former Captain Jones was involved during his approximately 30-year career with PSP, or any investigation by PSP of former Captain James Jones. In either case, given the nature of the lawsuit in this matter, this request is irrelevant and not proportionate to the needs of the case. The request itself does not attempt to limit the scope of the request and it appears to relate to the pending lawsuit against PSP, docketed at 222 MD 2022, in which POM named former Captain James Jones as a defendant in its claim for reputational damages given PSP's position on the illegality of POM's devices, rather than the underlying federal lawsuit.**

9. All documents (including all Communications) related to Captain James Jones, Sergeant Fischer, or any of your employees, agents or officers providing direction or instruction or suggestion to anyone to look for, find, or target Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia" games ("POM Games") including but not limited [sic] calendar entries, notes, records, or minutes of meetings or briefings, descriptions or depictions of the POM games logo, descriptions regarding distinguishing POM games from Banilla games, instructions on writing reports related to seizure of POM games, instruction or description characterizing the legality or illegality of the POM games, or instructions regarding communication with licensees of the POM games."

**Objection. This request is broad, vague and creates an undue burden. While it makes references initially to former Captain Jones and Sgt. Fischer, it then asks for all documents of any PSP employee who provided "direction or instruction or suggestion" to look for POM devices, find, or "target" POM's devices. This is yet another broad attempt, similar to request #6 asking about "targeting," which is vague and ambiguous. Further, the request asks for such records related to the differences between POM's devices and a competitor's devices (namely Banilla Games), instructions or writing reports related to POM devices, and communications to licensees regarding POM's devices, all of which would go far beyond the scope of the federal litigation at issue, and it is irrelevant and not proportionate to the needs of the case.**

**POM has requested instructional and training materials from PSP in the case of 503 MD 2022, and this request is currently the subject of a yet unresolved Motion for Protective Order filed in the Pennsylvania Commonwealth Court. PSP maintains its objections and confidentiality concerns to these documents, and they will not be produced at this juncture. A protective order will be sought in this Court, if necessary.**

4

000004

10. All Documents related to any training received by the Vice Unit or other specific Pennsylvania State Police Units related to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training.

**Objection. This request creates an undue burden. As drafted, the request is overly broad and not relevant to the lawsuit in this matter and is not proportionate to the needs of the case. It should be noted that POM has requested such training materials from PSP in the case of 503 MD 2022, and this request is currently the subject of a yet unresolved Motion for Protective Order filed in the Pennsylvania Commonwealth Court. PSP maintains its objections and confidentiality concerns to these documents, and they will not be produced at this juncture. A protective order will be sought in this Court, if necessary.**

11. All Documents related to the seizure of POM games from Country Garden Six-Pack in Clearfield County including but not limited to any draft reports.

**Objection to the extent that this request seeks attorney-client privileged communications. A search will be conducted, and responsive documents provided.**

12. All Documents relating to any grant application submitted by the Monroe County District Attorney's office to the Pennsylvania Gaming Control Board.

**Objection. This request creates an undue burden. Documents which PSP may have in its possession regarding a grant application submitted by the Monroe County District Attorney's Office to the Pennsylvania Gaming Control Board would more properly be obtained directly from the Pennsylvania Gaming Control Board or the Monroe County District Attorney's Office.**

13. All prepared remarks, slide decks, PowerPoint presentations, handouts, outlines, agendas, and other Documents reflecting or memorializing any aspect of the content of a training event delivered on or about September 28, 2021 by the Pennsylvania State police's CAGE Unit.

**Objection. This request creates an undue burden. This is not relevant to the lawsuit in this matter and is not proportionate to the needs of the case. It should be noted that POM has requested such training materials from PSP in the case of 503 MD 2022, and this request is currently the subject of a yet unresolved Motion for Protective Order filed by PSP in the Pennsylvania Commonwealth Court. PSP maintains its objections and confidentiality concerns to these documents, and they will not be produced at this juncture. A protective order will be sought in this Court, if necessary.**

5

000005

As to objections,

**By:**   *s/ Nicole J. Boland*
_____
**NICOLE J. BOLAND**
**Pennsylvania State Police**   **PSP Assistant Counsel**
**1800 Elmerton Ave.**   **Attorney ID 314061**
**Harrisburg, PA 17110**

**nboland@pa.gov**

**Date:  November 17, 2022**

6

## <u>CERTIFICATE OF SERVICE</u>

I, Nicole J. Boland, Assistant Counsel, Pennsylvania State Police, hereby

certify that on November 17, 2022, I caused to be served a true and correct copy of

the foregoing Subpoena Objections to the following:

**<u>VIA US Mail & Email</u>**

**Jeff Jenson**
**Husch Blackwell LLP**
**190 Carondelet Plaza**
**Suite 600**
**St. Louis, MO 63105**
**jeff.jenson@huschblackwell.com**

       *s/ Nicole J. Boland*
       **NICOLE J. BOLAND**

000007