# HUSCH BLACKWELL

Michael Nolan
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Direct: 314.480.1770
Fax: 314.480.1505
michael.nolan@huschblackwell.com

July 22, 2024

Judge Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

   Re: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*
     **Civil No. 1:20-CV-00292**

Dear Judge Wilson:

  The undersigned represents Plaintiff Pace-O-Matic, Inc. ("POM") in the above-referenced lawsuit against its former law firm – Eckert Seamans Cherin & Mellott ("Eckert") – relative to Eckert's surreptitious campaign to destroy POM while POM was one of Eckert's clients. Eckert orchestrated this campaign on behalf of its casino clients, utilizing a team of attorneys (eg. Mark Stewart, Kevin Skjoldal, Niel Hittinger, and Adrian King, lobbyists (eg. Richard Gmerek), and public relation professionals (eg. Peter Shelly) to manipulate governmental agencies such as the Pennsylvania State Police ("PSP") to illegally and maliciously seize POM games and harass and prosecute POM's clients in order to drive POM out of business.

  This letter is in response to PSP's letter filed July 11, 2024, objecting to POM's subpoenas for documents and deposition testimony and asserting that it intends to seek protective relief from the Court [Doc. 400]. POM is surprised by the filing, given it has worked diligently with PSP over the last year to obtain the discovery POM needs to establish Eckert's influence over the PSP, while at the same time working to minimize the risk of any undue burden on the PSP. In fact, the last communication which precipitated the PSP's filing was an e-mail exchange between POM's undersigned counsel and PSP counsel, Nicole Boland, in which the undersigned requested dates for the deposition of the PSP corporate representative to testify on topics listed in POM's May 2023 subpoena. *See* **Exhibit 1**, attached hereto. To be clear, POM was <u>not</u> seeking further documents from the PSP, but rather simply dates for the deposition.

  In response, Ms. Boland stated:

> We stand on our objections and our existing protective order in Commonwealth
> Court as long indicated. So long as you agree to the bounds of the protective order,

**HUSCH BLACKWELL**

Judge
July 22, 2024
Page 2

we can proceed in scheduling dates. If we need to seek a protective order, please advise.

Ex. 1.

In response, the undersigned stated:

Thanks for your response, Nicole. Please let us know **which specific cases** you are talking about. My understanding is that there are a number of cases where the machines in question have been returned, which suggests that the investigations are no longer active or ongoing. It would be helpful to know which ones PSP claims are still a part of an active ongoing investigation. **Once we have that specific information, we will be in a better position to evaluate whether to stipulate or take the matter up with the court**. Thanks.

*Id*. (Emphasis added.)

Ms. Boland *never* responded or advised which specific cases the PSP claims are still active and ongoing. Instead, she filed the letter, repeatedly claiming that there is "no link between PSP and Eckert Seamans Law firm." Letter, p. 2.

POM respectfully disagrees with PSP's denial of link between Eckert and the PSP. POM has uncovered direct and circumstantial evidence showing communications between Eckert and its agents on the one hand and the PSP on the other regarding skill games and POM, giving rise to an inference of Eckert's undue influence on the PSP. POM has a right to obtain all non-privileged information reasonably calculated to lead to the discovery of admissible evidence on that very issue. Furthermore, there is a strong public interest in discovering Eckert's influence over a governmental agency tasked with enforcing the law for the sole benefit of private corporate interests like those of Eckert and its casino clients.

I. **Evidence of Eckert's Undue Influence Over the PSP To Illegally Seize POM Games and Enact Anti-Skill Game Legislation**

The e-mails and documents summarized below show ongoing direct contact between Eckert and the PSP regarding skill games and POM:

On March 7, 2018, Bob Green, President of Parx Casino e-mailed Defendant Mr. Stewart, copying Mr. Gmerek and others under the subject line "Skill Games," stating "I think we have to go on the offensive and get a successful prosecution that reverses the original lower court edict of 'definition'." *See* **Exhibit 2,** attached hereto. Mr. Gmerek forwarded the e-mail to only Mr. Stewart, stating "See? It worked…." *Id*. To which, Mr. Stewart responded:

Judge
July 22, 2024
Page 3

> LOL. Thanks. Hope you didn't mind my reference of your relationship with Shapiro. I wasn't trying to make it your problem to fix, etc., but knew you have a good relationship there and wanted to recognize its importance.

*Id.*

Not long thereafter, Mr. Gmerek forwarded Mr. Green a press release issued by the PSP regarding seizures it made of alleged "illegal gambling devices" in Beaver County, Pennsylvania. *See* **Exhibit 3**, attached hereto. In the subject line, Mr. Gmerek typed "how'd we do???", implying that Eckert and Mr. Gmerek were responsible for the PSP seizures. *Id.*

On December 13, 2019, defendants Mr. Stewart and Mr. Skjoldal were e-mailing with Mr. Green, Mr. Gmerek and others regarding a preliminary injunction filed by POM of Pennsylvania, LLC in a lawsuit against PSP, involving the legality of POM's games. *See* **Exhibit 4**, attached hereto. Mr. Stewart stated that he had sent his analysis to the Attorney General's office and sent the same to Mr. Gmerek to share with Major Miller, the Director of the PSP's Bureau of Liquor Control Enforcement. *Id.*

On or around January 6 & 7, 2020, Mr. Stewart, Theron Perez (PA Governor's Office of General Counsel), Kenneth Joel (same), Kevin McKeon, and Mr. King e-mailed each other to set up a call with attorneys from several Commonwealth agencies including the PSP regarding a preliminary injunction hearing in a case involving POM's games. *See* **Exhibit 5**, attached hereto.

On February 25, 2020, Mr. Stewart sent an e-mail to Mr. Gmerek, regarding skill games, in which he admitted "On the issue re LCE [Liquor Control Enforcement], Adrian [presumably King] was talking to PSP. They told him that LCE troopers do all the gambling enforcement cases regardless of whether the machines are in a bar or not." *See* **Exhibit 6**, attached hereto.

On March 18, 2020, Mr. Stewart, Mr. Gmerek, and a lobbyist, Sean Shafer met with the PSP regarding skill game legislation. *See* **Exhibit 7**, attached hereto.

On March 25, 2021, in e-mail correspondence with Mr. Stewart, Mr. Gmerek, and Mr. Shelly regarding skill games, Mr. Shelly admitted that they had been sending information about skill games to the "local PSP barracks." *See* **Exhibit 8**, attached hereto.

Defendants have admitted in their supplemental discovery responses that they have been actively involved in work adverse to skill games, including "(e) outreach on behalf of client(s) to regulators, elected officials, government employees **and law enforcement personnel relating to skill game oversight and regulation**…" *See* **Exhibit 9**, attached hereto (emphasis added).

Eckert's campaign of influence over the PSP was effective. Despite the fact that the Court of Common Pleas in Beaver County had previously held in 2014 that POM's games were legal

Judge
July 22, 2024
Page 4

games of skill, beginning in or around 2018, PSP began training its officers to differentiate POM games from competitors' games, including training its officers on the colors and logos of the POM games, so as to be able to pinpoint locations with only POM games for selective enforcement and prosecution. *See* Affidavit of Leann Needham, attached hereto as **Exhibit 10**. PSP told its officers to look for the blue POM logo to be sure they were seizing POM games. *Id*.

The PSP then trained and gave technical support to the Monroe County District Attorney's office related to skill games, including providing them with a template search warrant for POM games. Thomas J. McMahon (a member of the Criminal Investigations Division of the Monroe County District Attorney's Office) adapted the PSP search warrant, without making any material changes for use in Monroe County, misrepresenting the state of the law and portraying a version of gameplay on the POM game that purposefully ignored key skill related features of which the PSP and Commonwealth were well aware. Relying on this inaccurate and incomplete affidavit of probable cause, a search warrant was issued on October 26, 2021, and POM games were seized. The owner and operator of the games filed motions for return of property, which were granted. In its Rule 1925 Opinion, the Monroe County Court of Common Pleas elaborated on the reasoning underlying its decision. A copy of the Opinion is attached hereto as **Exhibit 11**.

With respect to the legality of the POM games, the court found that, based on an analysis of the game's characteristics, it was predominantly a game of skill. *Id*. Further, the court found Mr. McMahon's testimony – which was based on the PSP training and materials – was "not relevant, trustworthy, or based upon any acceptable modicum of knowledge, observation of experience." *Id*. at 18. As for the Commonwealth's conduct in the proceedings, the court found that the investigators knowingly and recklessly misstated the relevant law for search warrants and the assistant district attorneys approved and signed off on those errors. *Id*.

In another case before the Dauphin County Court of Common Pleas, the PSP and Office of Attorney General hired BMM Testlabs (BMM) to provide expert testimony related to POM games. Even though PSP never obtained a search warrant to allow it to invasively search the POM machines in a manner to decompile the game's source code or to decrypt encrypted POM game hardware, BMM attempted to do so. *See* Affidavit of Peter Nikiper, attached hereto as **Exhibit 12**. Such actions grossly violated POM's intellectual property rights. BMM has since revealed that had it known there was no search warrant authorizing such an examination and analysis, BMM would have stopped all work until BMM's legal department had evaluated whether PSP and BMM had any lawful basis to do so. *Id*.

II. **POM Is Conducting Discovery Relevant and Necessary to Prosecute Its Claims Against Eckert in This Case**

Contrary to the conclusory and unsubstantiated assertions made by Ms. Boland in her letter, the discovery sought by POM in this case is relevant to its attempt to discover the full scope and breadth of Eckert's campaign to "kill skill," in violation of Eckert's fiduciary duties to POM and to identify and quantify all the fees that should be disgorged from Eckert. Based on the evidence developed to date, it appears that Eckert, through its agents and co-conspirators manipulated the PSP to maliciously target and seize POM Games, knowing full well that the games had already been adjudicated as legal skill games. PSP's purported expert, BMM, tried to decompile the POM game's source code and to decrypt encrypted POM Game hardware, even though the PSP had no legal authority to do so. Such abuses of power are outside the normal course of conduct of a law enforcement agency, which begs the question – what prompted the wrongful conduct? POM submits that a jury could reasonably infer from the evidence that PSP was acting under the direct influence of Eckert in Eckert's campaign to destroy POM.

### III. PSP Has Failed to Establish That Any Privilege Applies to the Issues to Be Addressed at the PSP Corporate Representative Deposition

The PSP states at the end of its letter that the production of "unadjudicated files" "implicates state law privacy interests" without citing any authority for that proposition or providing any detail as to which cases or matters it is referring. PSP Letter, p. 5. To be clear, POM is not currently requesting further documents from PSP. However, it does intend to question PSP's corporate representative on the topics listed in its subpoena for deposition testimony, which will certainly include the PSP's communications with Eckert and its agents and court rulings as summarized above. Because the PSP failed to articulate the cases or matters to which it might be referring or to cite to any controlling authority, POM is unable to further respond to this conclusory argument. If the PSP raises any such argument, authority, or detail in a reply letter, POM requests the opportunity to respond.

### IV. PSP Admits That the Protective Order in the Commonwealth Case Is Inapplicable to This Proceeding

The PSP makes reference in its letter to the May 2023 protective order entered in the Commonwealth case involving POM of Pennsylvania, LLC and the PSP, No. 503 M.D. 2018. *See* PSP Letter, p. 3. However, that case involves different parties, different claims, and different issues than those being litigated in this case. In fact, the PSP admits that the Commonwealth Court's rulings in that case have no bearing on discovery matters in this case. *Id*. at p. 5. The PSP concedes the Commonwealth court's rulings "do[] not resolve PSP's objections and grounds for protective relief, which are maintained and are appropriately vetted by this Court." *Id*. Therefore, the protective order is inapplicable to this dispute and should be disregarded.

### V. POM's Deposition of the PSP's Corporate Representative Will Not Be Unduly Burdensome

# HUSCH BLACKWELL

Judge
July 22, 2024
Page 6

      The PSP has engaged in improper and abusive conduct relative to POM and its games. POM is entitled to discover the basis for such conduct and find out who directed it and why. Deposition is the best vehicle for uncovering such information. POM has been working diligently with Ms. Boland to minimize any risk of undue burden. The PSP has had ample time to conduct its investigation and prepare its corporate representative to testify as to the topics listed in POM's subpoena. POM has been very deferential in allowing the PSP to pick a convenient date, time, and location for the deposition.

      Based on the foregoing, POM respectfully requests that this Court deny the PSP's requested relief and that it direct the PSP to provide dates for the deposition of the PSP's corporate representative.

Regards,

HUSCH BLACKWELL LLP

*/s/ Michael Nolan*

Michael Nolan