# EXHIBIT 11

Monroe County Prothonotary Filed May 19, 2023 8:38 AM

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: FOUR PENNSYLANIA SKILL AMUSEMENT DEVICES AND ONE TICKET REDEMPTION TERMINAL CONTAINING $18,692 IN U.S. CURRENCY** : | **No. 6673 CV 2021** |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | **APPEAL** |

## STATEMENT PURSUANT TO Pa.R.A.P. 1925(a)

This matter comes before us on Commonwealth's appeal from our February 8, 2023 order granting L&M Music Company, Inc. and Smokin' Joe's Tobacco Shop, Inc.'s (Petitioners, collectively) Joint Omnibus Petition to Return Seized Property and to Suppress Evidence. For the reasons set forth below, we respectfully request that the Commonwealth's appeal be denied and our February 8, 2023 order affirmed.

## History

This is the second appeal taken in this matter by the Commonwealth to the Pennsylvania Superior Court. On May 16, 2022, the Commonwealth filed a Notice of Appeal from our order filed May 17, 2022 denying the Commonwealth's Motion for Recusal. On July 11, 2022, we filed our Statement Pursuant to Pa.R.A.P. 1925(a) (First 1925(a) Statement) with respect to the Commonwealth's appeal. In our First 1925(a) Statement, we thoroughly recited the factual and procedural history of this case from its inception until May 16, 2022. We incorporate that history and will not reiterate it here.

1

Accordingly, we will begin with a review of the facts and procedural history relevant to the Commonwealth's current appeal that have transpired from May 16, 2022 to present.

On May 16, 2022, we proceeded to hearing on Petitioners' Joint Omnibus Petition to Return Seized Property and to Suppress Evidence.  At the conclusion of the hearing, the Commonwealth requested 30 days to file a memorandum in support of its position.  We gave the parties 21 days to file briefs. To date, the Commonwealth has not filed a brief in support of its position.  Instead, the Commonwealth filed an application to stay the trial court proceedings in this Court while it litigated its appeal from our denial of its motion for recusal.  The Superior Court stayed the matter before this court on May 20, 2022.

On January 24, 2023, the Superior Court, at docket number 1218 EDA 2022, quashed the Commonwealth's appeal.  In its opinion, the Superior Court stated that "[a]s a preliminary matter, we must address whether we have jurisdiction to consider this interlocutory appeal." *In re Four Pennsylvania Skill Amusement Devices & One Ticket Redemption Terminal Containing $18,692 in U.S. Currency*, 1218 EDA 2022, 2023 WL 371788, at *7 (Pa. Super. Ct. Jan. 24, 2023), *reargument denied* (Apr. 5, 2023).  Further, the Superior Court reasoned,

> [i]n this case, the Commonwealth is seeking to recuse the trial judge from considering whether to return the four gambling devices. If the trial judge orders that the devices be returned, double jeopardy principles would not be implicated and that decision could be appealed, including the trial judge's denial of the recusal motion.
> Accordingly, the appeal from the denial of the recusal motion is from an interlocutory order and is quashed.

*Id*. at 9.

2

On February 7, 2023, the Commonwealth filed an Application for Reargument with the Superior Court. On April 5, 2023, the Superior Court denied the Commonwealth's request. In the interim, on February 8, 2023, we issued an order granting the Petitioners' Joint Omnibus Petition to Return Seized Property and to Suppress Evidence. In our February 8th order, we wrote:

> 1. Petitioners' Petition to Suppress Evidence is **GRANTED**. The court finds that the Commonwealth improperly withheld and misrepresented material evidence relative to the issuance of the search warrant in this matter, and that such conduct warrants the suppression of the seized property.
>
> 2. Petitioners' Petition to Return Seized Property is **GRANTED**. The court finds that the devices at issue are legal games of skill, and that the Commonwealth has failed to establish that the devices, as designed, are games of chance.
>
> 3. The Commonwealth shall, within 48 hours of the issuance of this Order, **RETURN** the seized Skill Games and TRT to Petitioners. Petitioners shall retain the monies previously returned to them pursuant to prior order of court.

The next day, the Commonwealth filed a Motion to Strike our February 8th order on jurisdictional grounds. On February 13, 2023, Petitioners filed an answer to the Commonwealth's Motion to Strike.

We held a hearing on the Commonwealth's motion on February 17, 2023. At the conclusion of the hearing, we issued an order and denied the Commonwealth's Motion to Strike. In our order, we found "consistent with the Superior Court's decision entered in this matter on January 24, 2023 and Pa.R.A.P. 1701(b)(6), that we have jurisdiction to issue our February 8, 2023 final order in this matter." We further found "that Pa.R.A.P. 2572 is not dispositive of jurisdiction with respect to a quashed, interlocutory appeal."

3

On March 7, 2023, the Commonwealth filed a Notice of Appeal from our February 8th order.[1] On March 17, 2023, we directed the Commonwealth to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days.  The Commonwealth complied with our order by filing its concise statement on April 12, 2023 raising the following two alleged errors:

1. The Court made an error of law and abused its discretion in entering an order on February 8, 2023 returning property and suppressing evidence in a matter in which it has no jurisdiction, due to a pending appeal, and when the record had not been returned by the Superior Court, contrary to established case law, and the Pennsylvania Rules of Appellate Procedure.

2. Assuming, *arguendo*, that the Court had jurisdiction, which is not conceded, the Court made an error of law and abused its discretion in issuing its Order of February 8, 2023, returning property and suppressing evidence, without explaining its reasoning, by issuing an opinion, or a statement of findings of fact and conclusions of law, which is contrary to established case law and the Pennsylvania Rules of Criminal Procedure.[2] [3]

For the reasons that follow, we find no merit to the Commonwealth's claims.  We will address each of the Commonwealth's claims in turn.

---

[1] At this time, the Commonwealth has yet to return the property to Petitioners. On February 17, 2023, Petitioners filed a Motion to Hold The Monroe County District Attorney in Contempt of this Court's Order of February 8, 2023. On February 24, 2023, we issued a Rule Returnable for Answer and Hearing upon Assistant District Attorney Andrew Throckmorton to show cause why the Petition or Motion should not be granted, and he should not be held in indirect contempt of court for failure to comply with our February 8, 2023 Order directing the return of the seized devices to Petitioners. A contempt hearing is scheduled for July 2, 2023.

[2] The Commonwealth has NOT alleged any substantive error of law and thus has waived any possible issue on those grounds. Pa.R.A.P. 1925(b)(4)(vii), *Com. v. Hill*, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011) *citing Com. v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998).

[3] Petitioners filed a Motion to Vacate Automatic Supersedeas on April 27, 2023.  We scheduled hearing on the motion for May 19, 2023.  In the interim, the Commonwealth filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court from the Superior Court's quashing of its appeal concerning its recusal motion.  The Petition is still pending before the Supreme Court.

4

## Discussion

### Jurisdiction

In its first statement of error, the Commonwealth contends that we lacked jurisdiction to enter our February 8, 2023 final order directing the Commonwealth to return the seized devices to Petitioners. We do not agree.

In its January 24, 2023 decision, the Superior Court explicitly stated, "[a]s a preliminary matter, we must address whether we have jurisdiction to consider this interlocutory appeal." *In re Four Pennsylvania Skill Amusement Devices & One Ticket Redemption Terminal Containing $18,692 in U.S. Currency*, 1218 EDA 2022, 2023 WL 371788, at *7 (Pa. Super. Ct. Jan. 24, 2023), *reargument denied* (Apr. 5, 2023). The Superior Court concluded that "the appeal from the denial of the recusal motion is from an interlocutory order" and quashed the Commonwealth's appeal. *Id.* at 9. Finding that it lacked jurisdiction, there was nothing to relinquish to this court.

Even if the Commonwealth's interlocutory appeal had not been quashed, the appeal would not prevent the entry of our February 8th final order. Pa.R.A.P. 1701(b)(6) states in relevant part:

> (b)    Authority of a trial court or other government unit after appeal.—
> After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:
>
> *    *    *    *    *    *
>
> (6)    Proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.

5

Pa.R.A.P. 1701(b)(6) specifically authorizes the trial court to proceed in matters where an appeal is pending.  Furthermore, both the Pennsylvania Superior Court and Pennsylvania Commonwealth Court have consistently held that under Pa.R.A.P. 1701(b)(6), a trial court does not lose jurisdiction to proceed in a matter, despite the filing of an appeal from an interlocutory order. (*See Melani v. Nw. Eng'g, Inc.*, 2006 PA Super 281, 909 A.2d 404 (Pa. Super. Ct. 2006), PA.Super.2006) (Appeal from trial court's order and opinion, making findings on exact location of right-of-way and ordering that landowner who brought the action to quiet title pay legal costs, was an appeal from an interlocutory order and, thus, did not divest the trial court of jurisdiction to rule on landowner's post-trial motion; record showed that no judgment was ever entered in the case.); (*See also E.O.J., Inc. v. Tax Claim Bureau of Schuylkill Cnty.*, 721 A.2d 79 (Pa.Cmwlth. 1998), Cmwlth.1998) (Trial court had authority to adjudicate plaintiff's petition for relief from judgment of *non pros*, notwithstanding plaintiff's filing of notice of appeal in the case, since plaintiff's notice of appeal was an appeal from a nonappealable interlocutory order); (*Com. v. Tourscher*, 453 Pa.Super. 1, 682 A.2d 1275 (1996)) (Fact that defendant's appeal from order denying his petition to dismiss for double jeopardy was pending in Superior Court at start of trial did not preclude trial court from exercising jurisdiction to commence trial on criminal charges, where Superior Court subsequently quashed appeal as interlocutory); and (*Com. v. Cameron*, 445 Pa.Super. 165, 664 A.2d 1364 (1995)) (Trial court was not precluded from proceeding with trial pending appeal of ruling on defendant's motion to suppress and Commonwealth's motion to quash).  Accordingly, we had jurisdiction to enter our February 8th order, and did not commit error in doing so.

6

Despite the clear language of Pa.R.A.P. 1701(b)(6) and the clear holdings

of the appellate case law interpreting Pa.R.A.P. 1701(b)(6), the Commonwealth

contends that we lacked jurisdiction to issue our February 8th order because the

Superior Court had not "relinquished jurisdiction" and had not "remanded" the matter

back to us.  The Commonwealth cites Pa.R.A.P. 2572 in support of its position.

Pa.R.A.P. 2572 states, in relevant part:

> (a) General rule. Except as provided in paragraphs (b) or (c),
> the record shall be   remanded after the entry of the
> judgment or other final order of the appellate court
> possessed of the record.
> (b) Effect of pending post-decision applications on remand.
> Remand is stayed until disposition of: (1) an application for
> reargument; (2) any other application affecting the order; or
> (3) a petition for allowance of appeal from the order. The
> court possessed of the record shall remand 30 days after
> either the entry of a final order or the disposition of all post-
> decision applications, whichever is later.
> \*      \*      \*      \*      \*      \*      \*      \*      \*
> (e) Docket entry of remand. The prothonotary of the
> appellate court shall note on the docket the date on which
> the record is remanded and give written notice to all parties
> of the date of remand.

Pa.R.A.P. 2572(a), (b) and (e).

We find Pa.R.A.P. 2572 inapplicable to this case.  By its own language,

Pa.R.A.P. 2572 pertains only to the record and when it is to be remanded after the entry

of a judgment or other final order of the appellate court possessed of the record.  It does

not pertain to or address a trial court's ability to proceed in matters in which an appeal

has been filed from a non-appealable interlocutory order.  Nor does it pertain to matters

which the Superior Court quashes for lack of jurisdiction.  If we were to follow the

Commonwealth's reading of Pa.R.A.P. 2572, Pa.R.A.P. 1701(b), which specifically

governs when a trial court may proceed further in any matter in which a non-appealable

interlocutory order has been entered, would be moot.  For these reasons, we find no merit to the Commonwealth's argument and ask to be affirmed.

### Failure to issue Opinion

In its second statement of alleged error, the Commonwealth contends that, even if we did have jurisdiction to enter our order, we erred by failing to issue an opinion or findings of fact and conclusions of law.  We find that this issue is both waived and meritless.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).  It is well settled that issues not raised before the trial court cannot be raised for the first time on appeal or in a Pa.R.A.P. 1925(b) Concise Statement of Claims Raised on Appeal. *Orange Stones Co. v. City of Reading, Zoning Hearing Bd.*, 32 A.3d 287, 291 (Pa.Cmwlth. 2011) *citing Irwin Union Nat. Bank & Tr. Co. v. Famous*, 2010 PA Super 145, 4 A.3d 1099 (Pa. Super. Ct. 2010).

We issued our February 8, 2023 order granting Petitioners' Joint Omnibus Petition to Return Seized Property and to Suppress Evidence and directing the Commonwealth to return the seized devices to Petitioners within 48 hours.  The Commonwealth filed a Motion to Strike our February 8th order.  In its motion, the Commonwealth does not cite any legal authority but contends that we erred in entering our order because we did not have jurisdiction.  On February 14, 2023, we issued an order scheduling hearing on the Commonwealth's Motion to Strike for February 17, 2023 at 10: 30 am and directing the Commonwealth to cite to specific authority in support of its motion.  The Commonwealth filed its revised motion on February 17, 2023

at 10:49 am, claiming only that we lacked jurisdiction to enter our February 8th order, and citing to Pa.R.A.P. 2572 in support. At the hearing on February 17th, the sole argument made by the Commonwealth in support of its motion was that we lacked jurisdiction under Pa.R.A.P. 2572 to issue our February 8th order. At no time prior to the filing of its 1925(b) Statement has the Commonwealth ever raised the issue of an opinion, finding of facts, or conclusions of law. The issue is waived.

Although the issue is waived and we need not address its merits, even on the merits, the Commonwealth's argument fails. To begin, the Commonwealth cites none and we know of no law that requires us to issue an opinion, findings of fact, or conclusions of law in order to enter an order for return of property. *See* Pa.R.Crim.P. 588.

Regarding suppression of evidence, Pa.R.Crim.P. 581(I) states:

> (I)     At the conclusion of the hearing, the judge shall enter
> on the record a statement of findings of fact and
> conclusions of law as to whether the evidence was
> obtained in violation of the defendant's rights, or in
> violation of these rules or any statute, and shall make
> an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I). However, the Superior Court has found that when a trial judge provides adequate subsequent explanation for their ruling in their Pa.R.A.P. 1925(a) opinion as to not impeded their appellate review, remand is not necessary. *Commonwealth v. Cabbagestalk*, 1230 WDA 2017, 2018 WL 4496627, at *2 (Pa. Super. Ct. Sept. 20, 2018) *citing Com. v. Millner*, 585 Pa. 237, 888 A.2d 680, 688–89 (2005) (explaining the purpose of the Rule and "recogniz[ing] that, unfortunately, it is not uncommon for suppression judges to fail to comply with this directive[,]" but declining to

9

remand for compliance with Pa.R.Crim.P. 581(I) where review was not hampered, and for judicial economy).

Our February 8, 2023 order states that;

1. Petitioners' Petition to Suppress Evidence is **GRANTED**. The court finds that the Commonwealth improperly withheld and misrepresented material evidence relative to the issuance of the search warrant in this matter, and that such conduct warrants the suppression of the seized property.

2. Petitioners' Petition to Return Seized Property is **GRANTED**. The court finds that the devices at issue are legal games of skill, and that the Commonwealth has failed to establish that the devices, as designed, are games of chance.

3. The Commonwealth shall, within 48 hours of the issuance of this Order, **RETURN** the seized Skill Games and TRT to Petitioners. Petitioners shall retain the monies previously returned to them pursuant to prior order of court.

See February 8, 2023 Order. We believe our February 8th order satisfies the mandates of Pa.R.Crim.P. 581(I). To the extent it does not, we provide the following:

L & M Music Company, Inc. is lawfully incorporated and authorized to conduct business within the Commonwealth of Pennsylvania. Smokin' Joe's Tobacco Shop, Inc. is a lawful entity authorized to conduct business within the Commonwealth of Pennsylvania. On October 28, 2021, the Commonwealth of Pennsylvania, acting through the Monroe County District Attorney's Office, executed a search warrant and seized property belonging to Petitioners. Specifically, the Commonwealth conducted a search and seized video Pennsylvania skill amusement devices and one ticket redemption terminal (devices, collectively). L & M is the lawful owner of the devices,

10

and Smokin' Joe's has a lawful possessory interest in the devices through a business arrangement with L & M. The devices were seized from Smokin' Joe's premises located at 15 N. 3rd St., Stroudsburg, PA 18360. The TRT contained $18,692 in US currency.

On November 24, 2021, Petitioners filed their Joint Omnibus Petition to Return Seized Property, to Suppress Evidence, and to Unseal Search Warrant.[4] In their filing, Petitioners seek the return of the devices pursuant to Pa.R.Crim.P. 588 because 1) L & M is the owner of the devices and Smokin' Joe's has a possessory interest in the devices at the time they were seized; and 2) the devices are not contraband. Petitioners contend that the devices are not gambling devices as that term is defined in Pennsylvania law. Petitioners also seek suppression of the seized devices pursuant to Pa.R.Crim.P. 581. Petitioners contend the devices should be suppressed because they were unlawfully seized based on an invalid search warrant. Specifically, Petitioners contend that the Commonwealth intentionally and or recklessly withheld or misrepresented information material to the search warrant application.

On May 16, 2022, we held a hearing on Petitioners' Joint Omnibus Petition. At the conclusion of the hearing, the Commonwealth requested 30 days to file a memorandum in support of its position. We gave the parties 21 days to file briefs. To date, the Commonwealth has not filed a brief in support of its position.

A petition for the return of property is governed by Pa.R.Crim.P. 588 which states:

---

[4] For the reasons set forth in our First 1925(a) Statement, Petitioners' Petition to Unseal Search Warrant is now moot.

11

(A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

(C) A motion to suppress evidence under Rule 581 may be joined with a motion under this rule.

Pa.R.Crim.P. 588. Under this rule, the moving party must first establish that it is entitled to lawful possession of the property by a preponderance of the evidence. *Commonwealth v. Trainer*, 287 A.3d 960, 964 (Pa.Cmwlth. 2022)(citations omitted). Once that is established, the burden then shifts to the Commonwealth to show, by a preponderance of the evidence, that the property is either contraband per se, or derivative contraband, and should not be returned to the moving party. *Id.*(citations omitted). Contraband *per se* is property that is unlawful to possess, and derivative contraband is property that can be lawfully possessed, but is used in the perpetration of an unlawful act. *Commonwealth v. Irland*, 153 A.3d 469, 473 (Pa.Cmwlth. 2017), *aff'd,* 648 Pa. 380, 193 A.3d 370 (2018)(citations omitted).

The statute that makes gambling devices illegal, 18 Pa.C.S.A. § 5513, provides as follows:

Gambling devices, gambling, etc.

12

**(a) Offense defined.**--A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

*See* 18 Pa.C.S.A. § 5513(a).

Unlawful gambling is defined as "gambling not specifically authorized by the Commonwealth." *Com. v. Betres*, 237 Pa.Super. 361, 368, 352 A.2d 495, 498 (1975). It is undisputed that the devices at issue in the instant matter were not specifically authorized by the Commonwealth. However, the question remains as to whether the devices at issue are gambling devices.

A machine is a gambling device per se if it can be used for no purpose other than gambling. *Com. v. Irwin*, 535 Pa. 524, 527, 636 A.2d 1106, 1107 (1993) (citations omitted). The three elements of gambling are 1) consideration; 2) a result determined by chance rather than skill; and 3) reward. *Id.* (citations omitted). Where all three of these elements are present, the machine will be considered "so intrinsically connected with gambling" as to be a gambling device *per se*. *Id.* (citations omitted). The

13

Commonwealth has the burden of showing that the machines are per se gambling devices. *Id.* (citations omitted).

In determining whether a machine is a gambling device, the court must examine the characteristics of the machine itself and whether the three elements are present. *Com. v. Two Elec. Poker Game Machines*, 502 Pa. 186, 194, 465 A.2d 973, 977 (1983). With respect to the element of chance versus skill, Pennsylvania courts have employed the "predominant factor test" stating that "for a game to constitute gambling, it must be a game where chance predominates rather than skill." *Com. v. Dent*, 2010 PA Super 47, 992 A.2d 190, 193 (Pa. Super. Ct. 2010) (citations omitted). Simply because a machine involves a large element of chance, without more, is insufficient to find the machine to be a gambling device *per se*. *Two Electronic Poker Game Machines*, 502 Pa. at 195. Moreover, the outcome of a game does not need to be wholly determined by skill in order for the machine to fall out of the *per* se gambling device category. *Id.* Rather, courts must determine whether chance or skill predominates in any given machine.

At the outset of the May 16th hearing, the parties stipulated that Petitioners were the lawful owners of the devices. Accordingly, the burden shifted to the Commonwealth to establish that the devices were illegal gambling devices. For purposes of their petition, Petitioners do not dispute that the devices satisfy the elements of consideration and reward. Consequently, the only issue before us was whether the Commonwealth had established that the devices constitute games of chance and not games of skill.

14

The Commonwealth called two witnesses to testify: Detective Thomas McMahon as a fact witness and David Schoppe as an expert witness in the analysis of game play of the devices at issue. Petitioners called Rick Goodling as an expert witness in the field of Pennsylvania law enforcement, gambling investigations, and operation of the devices at issue. Petitioners also called Dr. Olaf VanCura as an expert witness in gaming technologies, design, and mathematics.

Based upon the evidence presented, we found each of the devices at issue is a video game machine that utilizes POM of Pennsylvania, LLC (POM), software. The devices are puzzle based games consisting of three phases. The first phase consists of a preview feature. In this phase, the player may preview the next game puzzle. No payment or purchase is required for the player to exercise the ability to cause the electronic system to disclose the next game puzzle for the game theme and play level selected. The player can then choose to play the puzzle displayed or exit the game. The player also has the option to cycle through the dozens of other available game themes and play levels, preview the associated puzzles, and select which, if any, to play.

The second phase of the game is a "tic-tac-toe" style puzzle, featuring different graphical themes that a player can select. While the graphics and some award amounts differ among the various themes, the gameplay is functionally equivalent in all themes. When the tic-tac-toe phase of the game is initiated, nine reels arranged in a 3 x 3 grid are spun. When the wheels stop spinning, nine symbols based on the player's chosen theme are displayed. The pattern that is displayed is selected from a finite pool of puzzles. Once the reels are spun, the player has limited time to replace one of the

15

symbols with a "wild" symbol in order to complete one or more rows in the grid.  Failure to place the "wild" symbol at all within the time limit will result in a loss because the devices do not generate automatic wins.

The third phase of the game - the "follow me" phase can be triggered under certain circumstances by successful completion of the tic-tac-toe phase of the game.  If a player executes the necessary skill during the tic-tac-toe phase of the game and still fails to win at least 105% of the amount paid to play the game, the player is given the option of entering the "follow me" phase of play.  The "follow me" third phase of gameplay begins with a 3 x 3 grid of colored dots.  The dots flash in a random sequence that the player must repeat. The player needs to follow the sequences for multiple rounds of play, with each sequence adding another circle. If ultimately successful, the player is awarded with a combined total of 105% of the original amount spent to play.

Once gameplay is complete, a player has the option of redeeming any remaining credits by pressing the redeem button. Pressing this button will cause the machine to dispense a ticket, reflecting the dollar amount that is equivalent to the remaining credits. For instance, if a player has 1000 credits, pressing the redeem button, will result in a player getting a ticket for $10 which they can then exchange for cash. The devices only award whole dollar amounts. Thus, pressing the redeem button rounds the player's credits down to the nearest whole dollar and leaves any excess credits on the device. For instance, if a player has 1050 credits, pressing the redeem button will result in a player getting a ticket for $10. The excess 50 credits worth $.50

16

will remain on the machine and may be used by that player or another player on future gameplay.

Based upon the evidence that was presented at the hearing, we found that the devices at issue in this case are predominantly games of skill. Specifically, we find that the Commonwealth has failed to meet its burden of establishing that the devices are predominantly games of chance. Further, we find that the petitioners have established that the machines are predominantly games of skill.

With respect to the Petitioners' Petition for Return of Property, both of the Commonwealth's witnesses testified that the devices were games of chance based upon their own playing of the devices and their watching of others play the game. The Commonwealth did not present any testimony whatsoever as to how the devices or their software are designed, but rather focused its presentation solely on how various individuals chose to play the games. We do not find the Commonwealth's evidence compelling or even relevant as the central issue in this case is the design of the games, not how individuals may choose to play them. The manufacturer, owner, or possessor of the devices cannot control how an individual chooses to play the game. Admittedly, they can make certain aspects of the game more "tantalizing" to play, but ultimately have no control over how one chooses to play the devices. Thus, while we find the testimony of the Commonwealth's witness, David Schoppe, to be truthful, his analysis was based only on his observations, was not performed to any scientific or professional standard, and is not relevant to our analysis. In this regard, we adopt the reasoning of our brethren court, the Honorable Andrew H. Dowling of the Dauphin County Court of Common Pleas in *In re: Three Pennsylvania Skill Amusement Devices, One Green*

17

*Bank Bag Containing $525.00 in US Currency, and Seven Receipts*, 2022-CV-06333-MD.

Moreover, while we found Mr. Schoppe's testimony to be truthful and based upon hours of watching game play – however irrelevant we find it to be, we did not find the testimony of Detective Thomas McMahon's to be relevant, trustworthy, or based upon any acceptable modicum of knowledge, observation, or experience. Detective Mc Mahon testified that his training with respect to determining whether a gaming device is an illegal gambling machine consisted of one course lasting somewhere between four and six hours in length, and informal discussions with members of another law enforcement department. He testified that prior to submitting the search warrant in this case, he watched individuals play the POM devices for 1 to 2 hours and played the device himself for "like one hour." Detective McMahon based all of his opinions and testimony about the devices upon less than 2 hours of observation of others playing the game and less than 1 hour of his own play. Detective McMahon knew of, but never played to completion, the follow me phase of the game. Instead, he played it "for like a couple seconds" and opined that because he did not see people play the follow me feature in the short time that he observed others, the devices were games of chance.

He acknowledged that the Commonwealth did not have an expert analyze the devices' software to determine how the devices are designed. He admitted that he was not interested in determining how the devices were designed or determining if they could be played to win utilizing skill, as opposed to chance. He stated, "I mostly just

18

went in there and I just wanted to play the slot machine style game."  May 16, 2022 Hearing N.T. page 64.

His testimony was also self-contradictory, at one-point testifying that the devices did not contain instructions on the follow me feature, but later acknowledging that the devices do in fact contain instructions on the feature. May 16, 2022 Hearing N.T. page 54, 58-9.  He testified that the devices contain a "knock-off" feature which renders them a gambling device, but later conceded that the devices do not "knock-off" points, May 16, 2022 Hearing N.T. page 60-1.  He also testified to knowing of the Beaver County Court of Common Pleas case which found POM devices to be legal, but testified that the Beaver County Case was not dispositive of this case because it involved a "different terminal and different software numbers" – only to acknowledge moments later that he did not know how the terminals differed.  May 16, 2022 Hearing N.T. page 69.

It was clear from the outset of Detective McMahon's testimony that the Commonwealth did not understand the design of the game, its software, the available options to play the devices, or even how the devices physically operated.  It was equally clear that counsel for the Commonwealth did not either.  Probably most telling of the Commonwealth's lack of knowledge regarding the devices was when Detective McMahon demonstrated the device functions in open court.  Upon questioning by the assistant district attorney, Detective McMahon inserted paper currency into the device multiple times in order to demonstrate its operation for the court, including how the preview feature worked.  It was clear to us that neither he nor the assistant district attorney knew that the device allows one to preview the games to play without inserting

19

any money into the machine. This fact did not become known to the court until Attorney Lovecchio's summation with respect to Petitioners' suppression motion when Attorney Lovecchio pointed out the functionality to the court.

Additionally, we found the opinion of Petitioners' expert, Dr. Olaf Vancura, to be compelling. Dr. Vancura has worked as a designer, inventor, and consultant in the gaming industry since 1995. He testified that a skillful player that plays the POM devices can win, which is defined as making a net profit, on each and every play of the game. Additionally, he opined that there is no feature or functionality of the game that could prevent a skillful and patient player from achieving that result in every single play. He gave this opinion with 100% mathematical certainty.

Adding to the persuasive opinion of Dr. Vancura is the fact that all of the witnesses who testified, including the Commonwealth's two witnesses, agreed that it is possible for a patient and skillful player to win 105% of their wager on each play utilizing the follow me feature. While the determination of which puzzle will be displayed is predominantly chance, the playing of the tic-tac-toe game requires some skill – however slight it may be. Even though the determination of the puzzle may be by chance, the preview feature allows a player to elect to play a different, winning game, or not play at all for a full refund, thus eliminating the element of chance. Moreover, it is undisputable that the follow me feature can only be completed by a skillful player who plays with skill and is not dependent on chance. Further, the follow me feature is available every time a player wins the same as or less than their wager. This, too, eliminates the element of chance by giving a player the opportunity to win more than they wagered by utilizing skill each and every play of the device.

20

For all of these reasons, we found that the Commonwealth did not meet its burden of proof to establish that the devices at issue – as designed – are games of chance, and we ordered the devices returned to Petitioners. We stand by our decision and ask to be affirmed.

With respect to Petitioners' Suppression Motion, we granted the motion because we found that the Commonwealth had improperly withheld and misrepresented material evidence relative to the issuance of the search warrant in this matter, and that such conduct warrants the suppression of the seized property. We adopt the reasoning set forth by Attorney Lovecchio in his summation with regard to this issue.

Further, we find that Detective McMahon – and by extension the Commonwealth - either knowingly or recklessly misstated in his affidavit in support of the search warrant the law defining games of chance. Specifically, Detective McMahon wrote that the chance element of gambling is defined as "[t]he randomness of some act, e.g. the spinning of slot machine reels." This is not an accurate recitation of the law and is misleading to the issuing authority. To the extent this error should not be held against the Commonwealth because Detective McMahon is not an attorney, this argument fails because the warrant application was approved and signed for by an attorney – ADA Andrew Throckmorton.

In addition to the various factors discussed above, Detective McMahon knew that the devices contained a preview function – even though he did not know it could be operated without inserting currency. He did, however, know that if a player utilized the preview function but chose not to play the device at all, all currency that had

21

been inserted would be refunded in full.  The Commonwealth withheld all this information from the affidavit.

Detective McMahon also knew that any credits that are left on a device when one chooses to cash out are not cleared out or knocked off the device.  He testified that the credits remain on the device and may be played by the current player or the next player to use the device.  Again, the Commonwealth withheld all this information from the affidavit.

Moreover, Detective McMahon knew – or should have known – that players can – with skill - earn 105% of their bet every time by using the follow me function.  Once again, the Commonwealth withheld all this information from the affidavit.  Further, at no time during the 18 months that this case was pending before this court did counsel for the Commonwealth ever make the court aware of this function, yet the Commonwealth continued to insist it was entitled to retain possession of the Petitioners' property.

Finally, we incorporate our comments stated above regarding the Commonwealth's lack of knowledge concerning the design of the game, its software, the available options to play the devices, and how the devices physically operate.  We find that the Commonwealth's application for a search warrant based upon inaccurate and incomplete facts, while also knowingly withholding critical facts, is reckless at best, intentional at worst, and warrants suppression.  We also find that the seizure by the Commonwealth of the Petitioners' property without adequate and accurate knowledge of the devices, their design, and function is even worse, and also warrants suppression. Simply put, the Commonwealth did not have adequate knowledge to determine the

22

devices were illegal, and it withheld critical information that it should have disclosed in its search warrant application.  For all of the reasons stated above, we believe our suppression order was properly entered and does not constitute error.

We respectfully request the Superior Court affirm our order February 8, 2023 order granting the Petitioners' Joint Omnibus Petition to Return Seized Property and to Suppress Evidence.

BY THE COURT:

JENNIFER HARLACHER SIBUM, Judge

Dated:  May 18, 2023

cc:    District Attorney (AT)
       George Westervelt, Esq.
       Matthew Haverstick, Esq.
       Edward Butkovitz, Esq.
       Marc Lovecchio, Esq.
       James Gorman, III, Esq.
       Court Administration