# EXHIBIT 12

## AFFIDAVIT OF PETER NIKIPER

I, Peter Nikiper, a competent adult being duly sworn according to law, depose and say:

1. My name is Peter Nikiper. I am the Director of Technical Compliance at BMM Testlabs (BMM).

2. In 2022, BMM was hired by the Commonwealth of Pennsylvania and the City of Philadelphia to provide an expert opinion on whether the Pace-o-Matic (POM) Pennsylvania Skill Game (POM Game) is a game of skill or a game of chance.

3. I participated in the initial discussions with principals of each of the Commonwealth and City about the scope and nature of BMM's expert review.

4. Throughout the engagement I communicated multiple times with these principals, including Commonwealth attorneys Chris Herrington, Karen Romano and Andrew Jarbola, and the City of Philadelphia's outside counsel Tim Ford.

5. As part of my expert review, I anticipated making a physical examination of the POM Games, including imaging game components, attempting to decompile the software. The point of these examinations was to reverse engineer the POM Game to better understand how it worked.

6. In March of 2022 I physically examined POM Games in Harrisburg and Philadelphia.

7. A Pennsylvania State Police trooper (working with the Attorney General's Office) offered to provide me dongles from POM Games. Later, 3 POM Game

1

dongles—including one from a POM Game not in the group of games I examined—were provided.

8.  The next day, I did a similar examination of POM Games in storage in Philadelphia. I made 3-5 forensic images of hard drives from those games and took those images to my laboratory for further examination.

9.  Later, at my lab, I continued to investigate the POM Game by examining the forensic image I made from the Harrisburg POM Games. I attempted to decompile the software of the POM Game and also to analyze one of the dongles. During this investigation, it was discovered that the software that drove the game was located on an encrypted partition of the media.

10. I was unable to complete the efforts by the time of my testimony for the Commonwealth in a hearing in Dauphin County (after which BMM stopped all work on the POM Games). But for this hearing, and the subsequent work stoppage, next steps would have been to seek permission and authorization to attempt to decrypt the partition and to decompile the software as I was contracted to do.

11. Typically, when BMM does forensic work like I performed for the Commonwealth and Philadelphia, BMM has the permission and authority from the relevant entities. BMM believed that the contracting entities had the proper authority to search the machines and agreed to let BMM follow where the evidence points.

12. At all times, BMM and I believed that the Commonwealth and Philadelphia had the legal authority to authorize BMM to access the POM Game, make forensic images and attempt to decompile the software and decrypt the dongle.

2

13. If at any time BMM and I had been informed that the Commonwealth and Philadelphia potentially lacked that authority, we would have stopped all work and referred the matter to BMM's legal department for clarification as to what rights BMM had to search and inspect the POM Games I examined.

I understand that the statements herein are made subject to 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities and that criminal penalties are provided thereunder for false statements.

_____
Peter Nikiper

STATE OF NEVADA
COUNTY OF CLARK
Sworn to and Subscribed
before me this 16ᵀᴴ day
of ~~June~~ JULY 2024.

CARL ROSS
Notary Public, State of Nevada
No. 04-93270-1
My Appt. Exp. Nov. 5, 2024

3