# HUSCH BLACKWELL

Jeff B. Jensen
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Direct: 314.345.6464
Fax: 314.480.1505
jeff.jensen@huschblackwell.com

July 24, 2024

Judge Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

> Re:    *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*
>         **Civil No. 1:20-CV-00292**

Dear Judge Wilson:

Plaintiff Pace-O-Matic, Inc. ("POM") respectfully submits this response to the discovery letter filed by non-party Downs Racing LP ("Mohegan"),[1] ECF No. 404. POM has not served any discovery on Mohegan. Mohegan currently has no obligations to produce any documents, provide any testimony, or take any other steps in connection with this litigation. Instead, Mohegan seeks relief regarding a subpoena directed to Richard Gmerek, a lobbyist who worked alongside Eckert to provide lobbying services to both Mohegan and Parx Casino. Mr. Gmerek has not sought any relief relating to the subpoena. Instead, POM and Mr. Gmerek's counsel have spent months conferring regarding the subpoena and have reached agreement on mutually acceptable email search parameters. The effect—and perhaps the intent—of Mohegan's belated discovery letter is to disrupt the agreement reached by POM and Mr. Gmerek on the eve of Mr. Gmerek's July 31 deposition. As described below, Mohegan has not established a basis to obtain any relief.

First, Mohegan has cited no legal or factual basis for the primary relief it seeks, *i.e.*, a stay of Mr. Gmerek's production obligations pending resolution of the purported direct appeal filed by Parx. There is no plausible basis for this relief. Parx's appeal arises from an entirely different discovery dispute, involving different documents and different issues. In addition, Parx's appeal rests entirely on the application of the attorney-client privilege. Mohegan is not even sure that this discovery dispute implicates the attorney-client privilege at all. Mohegan claims only that the documents at issue "***potentially*** [involve] attorney-client privileged information." ECF No. 404 at 1 (emphasis added). Finally, there is no realistic prospect that Parx will prevail in its appeal, and thus there would be no basis for a stay even if the issues in the Parx appeal had any bearing at all

---

[1] Downs Racing, L.P. appears to be a "subsidiary" of the Mohegan Tribal Gaming Authority that operates the Mohegan Pennsylvania Casino. *See* https://moheganpa.com/about-mohegan-pennsylvania.html.

# HUSCH BLACKWELL

on this discovery dispute. *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). The Court should deny the requested stay, which would allow Mohegan to impede the progress of discovery in this litigation.

Second, Mohegan has entirely failed to show that any document at issue here falls within the attorney-client privilege. Most fundamentally, Mohegan has not produced a privilege log or other document identifying what specific communications are at issue and providing basic facts that would establish a *prima facie* claim of privilege. Such information is indispensable to an assertion of the attorney-client privilege. *See, e.g.*, Fed. R. Civ. P. 26(b)(5); *Metz Culinary Mgmt., Inc. v. OAS, LLC*, No. 3:21-cv-1023, 2022 WL 17978793, at *2 (M.D. Pa. Dec. 28, 2022) ("Courts in the Third Circuit have always held that a privilege log is required to assert objections on the basis of privilege and that boilerplate or general [objections] are disfavored and do not preserve an objection." (quotation omitted)). For this reason alone, Mohegan cannot rely on the attorney-client privilege. Moreover, Mohegan specifically asserts that Gmerek was "not retained as an attorney for Downs Racing." ECF No. 404 at 3. Where a "person is not acting as an attorney," "attorney-client privileges do not attach" to communications involving that person. *Cheltenham Township v. Pa. Labor Relations Bd.*, 846 A.2d 173, 179 (Pa. Cmwlth. 2004). The attorney-client privilege applies only to communications "made for the purpose of obtaining or providing professional legal advice." *Carlino E. Brandywine, L.P. v. Brandywine Village Assocs.*, 301 A.3d 470, 479 (Pa. Super. 2023). Thus, by Mohegan's own admission, communications with Gmerek are not privileged. Finally, as noted above, Mohegan contends only that the documents at issue "potentially [involve] attorney-client privileged information." ECF No. 404 at 1. The mere possibility that some documents—which Mohegan has never identified or logged—"potentially" might implicate the privilege provides no basis to halt Gmerek's compliance with the subpoena.

Third, Mohegan has also entirely failed to show that any document at issue here constitutes protected work product. As noted above, Mohegan has not produced a privilege log or otherwise established a *prima facie* case that any document falls within the work-product doctrine. Mohegan's assertion of work product is thus deficient. Fed. R. Civ. P. 26(b)(5); *Metz Culinary Mgmt.*, 2022 WL 17978793, at *2. Moreover, Mohegan only claims that the documents at issue constitute work product under **Pennsylvania law**. ECF No. 404 at 3 (citing *Bousamra v. Excela Health*, 653 Pa. 365 (Pa. 2019)). But federal law—not Pennsylvania law—governs assertions of work product in this case. *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Mohegan does not claim to rely on, or satisfy, the federal work-product standard. Finally, under federal law, the work-product doctrine applies only to materials "prepared in anticipation of litigation." *In re Grand Jury Matter #3*, 847 F.3d 157, 165 (3d Cir. 2017). Mohegan does not even claim—let alone demonstrate—that any document at issue was prepared in anticipation of litigation. For all these reasons, Mohegan's assertion of work product entirely lacks merit.

Fourth, Mohegan's complaints regarding relevance and the scope of the subpoena are meritless. As an initial matter, because the subpoena is not directed at Mohegan, the purported breadth of the subpoena imposes no burden on Mohegan. The party that did have to perform some work to respond to the subpoena—Mr. Gmerek—has not sought any relief from this Court.

Mohegan's remaining arguments regarding relevance mischaracterize the relevant facts. Mohegan entirely ignores the fact that POM has reached an agreement with Mr. Gmerek to refine

# HUSCH BLACKWELL

the scope of the subpoena through stipulated email search parameters. Those search parameters are reflected in Exhibit A to this letter. There can be no serious dispute that materials responsive to those search parameters are relevant to POM's claims. *See S.M. v. Tamaqua Area Sch. Dist.*, No. 3:22-cv-525, 2023 WL 3689607, at *1 (M.D. Pa. May 26, 2023) ("[T]he federal rules' relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation."). Mohegan's objections focus only on the text of the subpoena itself, not to the agreed email search parameters that have narrowed the scope of the subpoena. Thus, Mohegan's arguments are irrelevant and provide no basis for any relief.[2]

Mohegan also inaccurately suggests that POM's claims are limited to Eckert's conflicted work on behalf of Parx, and that Mr. Gmerek's work on behalf of Mohegan against POM is irrelevant to this litigation. Eckert's misconduct was not limited to work on behalf of Parx. In the operative Complaint, POM specifically alleges that Eckert was working on behalf of the Mohegan Tribal Gaming Authority in an effort to destroy POM. ECF No. 243, ¶¶ 81-82. This allegation is corroborated by internal Eckert emails, as well as by invoices showing that Eckert billed the Mohegan Tribal Gaming Authority for hundreds of thousands of dollars of work that Eckert itself has identified as adverse to POM. Downs Racing appears to be a "subsidiary" of the Mohegan Tribal Gaming Authority that operates the Mohegan Pennsylvania Casino. *See* https://moheganpa.com/about-mohegan-pennsylvania.html. Moreover, publicly filed lobbyist disclosures indicate that Eckert served as a registered lobbying firm for Mohegan Pennsylvania from 2012 until 2023. As the documents at issue in prior discovery disputes in this case reflect, Eckert worked closely with Mr. Gmerek to implement its improper efforts to attack POM (its then-client) in the legislative, regulatory, and other governmental arenas. *See also, e.g.*, Exhibits B, C, D, E (filed provisionally under seal). Thus, communications and invoices relating to Mr. Gmerek's work for Mohegan relating to skill games are highly relevant to this case. Mohegan has identified no basis to interfere with Mr. Gmerek's production pursuant to the subpoena.

Mohegan's discovery letter manifestly lacks merit. The Court should not permit non-party Mohegan to disrupt the progress of discovery in this litigation. POM respectfully requests that the Court deny all relief sought by Mohegan's discovery letter.

Regards,

HUSCH BLACKWELL LLP

*/s/ Jeff B. Jensen*

Jeff B. Jensen

---

[2] Mohegan's arguments would lack merit even if POM and Mr. Gmerek had not agreed to narrow the scope of the subpoena's requests. But that issue is irrelevant in light of the agreed email search parameters, which Mohegan entirely ignores.