Received 7/31/2024 1:59:32 PM Commonwealth Court of Pennsylvania

Filed 7/31/2024 1:59:00 PM Commonwealth Court of Pennsylvania
503 MD 2018

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| POM OF PENNSYLVANIA, LLC, | : | |
| Petitioner | : | No. 503 MD 2018 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| BUREAU OF LIQUOR CONTROL | : | |
| ENFORCEMENT, | : | |
| Respondent | : | |

### RESPONSE TO APPLICATION FOR LIMITED RELIEF FROM STAY AND CLARIFICATION OF THE COURT'S MAY 25, 2023 ORDER

Respondent, Pennsylvania State Police (PSP), Bureau of Liquor Control Enforcement (BLCE), through its undersigned counsel and responds to Petitioner's, POM of Pennsylvania, LLC (POM), Application for Limited Relief from Stay and Clarification of the Court's May 25, 2023 Order, and avers as follows:

## I.    INTRODUCTION

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Denied. By way of further answer, Pace-O-Matic, Inc. issued a document subpoena to PSP in November 2022, and later, a subpoena for corporate designee testimony in May 2023 related to Pace-O-Matic, Inc.'s federal lawsuit against its former law firm, Eckert, Seamans, Cherin & Mellott, LLC. Many of the subpoenaed

documents and items required to be brought with the corporate representative in the Pace-O-Matic. Inc. lawsuit, were made in discovery requests by POM directed to PSP in the instant matter. The discovery requests by POM directed to PSP are subject to the Protective Order entered by this Honorable Court.  PSP propounded various objections to the majority of the subpeona requests, including, but not limited to the fact that the items were subject to the Protective Order. Nevertheless PSP provided thousands of pages of documents to counsel for Pace-O-Matic, Inc. in response to the subpoenas from November 2022.

5.    This paragraph is a request for relief to which no response is required. To the extent a response is required, it is denied.

## II.    BACKGROUND

6.    Admitted. The averments of this paragraph refer to this Honorable Court's May 25, 2023 Order, which is a written document that speaks for itself. By way of further answer, however, the Order related to both POM's Motion to Compel **and** BLCE's Motion for Protective Order.

7.    Denied as stated. The averments of this paragraph refer to this Court's May 25, 2023 Order, which is a written document that speaks for itself. Specifically, this Court granted POM's Motion to Compel Discovery and denied BLCE's Motion for Protective Order with respect to "investigative reports" involving POM devices "for matters in which the investigation is concluded **and the administrative process is**

**completed** (*i.e.*, **an adjudication has been issued by an Administrative Law Judge on the pending administrative citation involving gambling, and no appeal has been filed**).” (May 25, 2023 Protective Order ¶ 1.a. (emphasis added).)

8.      Denied as stated.  The averments of this paragraph refer to this Court's May 25, 2023 Order, which is a written document that speaks for itself. Specifically, this Court granted BLCE's Motion for Protective Order with respect to “investigative information related to unlawful gambling devices manufactured by POM . . . for matters in which the investigation is ongoing **or the administrative process is not completed**.” (May 25, 2023 Protective Order ¶ 2.b. (emphasis added).)

9.      Admitted.

10.     It is admitted only that this matter was stayed pending the outcome of the appeal in the return of property matter in Dauphin County. By way of further answer, this matter remains stayed pending the appeal of that matter to the Pennsylvania Supreme Court, as the high court granted BLCE's petition for allowance of appeal.  *In re: Three Pennsylvania Skill Amusement Devices, One Green Bag Containing $525.00 in U.S. Currency, and Seven Receipts*, 306 A.3d 432 (Pa. Cmwlth. 2023), *petition for allowance of appeal granted*, 50 MAP 2024 (Pa.) (“*Champions*” case).

11.     Admitted in part and denied in part. It is admitted that *Pace-o-Matic, Inc. v. Eckert Seamans, et al.*, No. 1:20-cv-292 (M.D. Pa.) (“Federal Litigation”) is active in federal court. However, BLCE is not a party to that action and the allegations in that

action pertaining to BLCE are expressly denied.  Further, while PSP is without sufficient knowledge to admit or deny the legal relationship between POM of Pennsylvania, LLC and Pace-O-Matic, Inc., as PSP sets forth in its New Matter, this distinction is immaterial for purposes of deciding the merits (or lack thereof) of this Application.  Further, PSP denies the characterization that PSP is an "adversary" "working to destroy POM's business by collaborating with" Eckert Seamans.

12.     Denied. As BLCE is not a party to the Federal Litigation, BLCE is without sufficient information to respond to what discovery in the Federal Litigation has revealed relating to the casinos, law firms, and lobbyists. BLCE specifically denies that there was a "high level of close contact" between any of those parties and BLCE as it specifically relates to the claims of the Federal Litigation.

13.     Denied. By way of further answer, BLCE continues to abide by the Joint Protective Order entered into with POM and which was filed with the Court on April 4, 2023.

14.     Admitted in part and denied in part. It is admitted that BLCE officers are trained to identify and differentiate between various so-called "skill" devices which are used for gambling purposes.  By way of further answer, BLCE has seized devices made by more than ten different manufacturers of so called "skill" devices, including Pace-O-Matic devices, in the Commonwealth. It is specifically denied that BLCE engages in selective enforcement against Pace-O-Matic devices.  The remaining averments are

denied, and the May 17, 2022, Affidavit of Leann Needham is a written document that speaks for itself. For the Court's information, POM previously attached this Needham Affidavit to its October 20, 2022 Brief in Opposition to BLCE's Preliminary Objections in 222 MD 2022. This Court granted BLCE's Preliminary Objection based on lis pendens and stayed that case "until the POM Games' legality is adjudicated either in [503 MD 2018 (this case)] or one of the several cases on appeal [to the PA Supreme Court]."[1] POM also attached the Needham affidavit to its December 19, 2022 Application for Preliminary Injunction in this present case, which was ultimately resolved via the April 18, 2023 Joint Protective Order.

15. Denied. The Needham Affidavit is a written document that speaks for itself.

16. Denied. The Needham Affidavit is a written document that speaks for itself.

17. Denied. The Needham Affidavit is a written document that speaks for itself.

18. Denied. By way of further answer, POM's assertion does not contain any timeframe, so it is unclear whether this refers to statements that were made prior to the Commonwealth Court's decision in *Champions* or sometime thereafter.

---

[1] At the time those cases were pending before the Superior Court.

19.    Admitted in part and denied in part.  It is admitted that the BLCE, as the statutorily mandated entity responsible for enforcing the laws of the Commonwealth within establishments licensed by the Pennsylvania Liquor Control Board, including unlawful gambling occurring within licensed premises, in violation of 18 Pa. C.S. § 5513 (*see* 47 P.S. § 2-211), collaborates with other law enforcement agencies on a range of issues that the Bureau encounters in its investigations within licensed premises.  All other allegations in this paragraph are denied.

20.    Admitted in part and denied in part. It is admitted that the BLCE, as the statutorily mandated entity responsible for enforcing the laws of the Commonwealth within establishments licensed by the Pennsylvania Liquor Control Board, including unlawful gambling occurring within licensed premises, in violation of 18 Pa. C.S. § 5513 (*see* 47 P.S. § 2-211), has collaborated with other law enforcement agencies, including the Monroe County DA's Office, on a range of issues that the Bureau encounters in its investigations within licensed premises, including the use and operation of devices used for the purpose of gambling under 18 Pa. C.S. § 5513, regardless of whether the devices may be labeled by their manufacturers as "skill games."  All other allegations are denied, as each individual DA's Office makes its own prosecutorial decisions in seizing any such devices or prosecuting businesses or individuals that operate them within their establishments.

21.     Admitted in part and denied in part. BLCE may have provided different draft search warrant examples to Monroe County for their own use (and modifications) involving gambling devices and bank records. However, the assertion that these examples may have been intended to be used solely for devices made by POM, one of more than ten different manufacturers of such devices, is expressly denied.

22.     Denied.  BLCE is without sufficient information to respond to how or why the Monroe County DA's Office worded its search warrant, nor was it responsible for any prosecutorial decisions made by the DA's Office regarding the warrant or the subsequent seizure.  By way of further answer, the October 26, 2021, Monroe County Search Warrant (which was written two years before this Honorable Court's decision in *Champions*) is a written document that speaks for itself. For the Court's information, POM previously attached this Search Warrant to its Petition for Review in 222 MD 2022, filed on April 11, 2022. Again, that case remains stayed, like the present case, pending the appeals.

23.     Denied. The characterization of the Monroe County Search Warrant is denied; it is a written document that speaks for itself. Further, as POM knows, the legal issues involving POM's devices are subject to two appeals that are currently under review by the Supreme Court, including *Champions* and *POM v. Department of Revenue*, 5 EAP 2024 (Pa.).

24.     Admitted in part and denied in part. It is admitted that the Judge issued the search warrant for the Monroe County DA's Office. All other assertions are denied, as BCLE does not know what other information may have been provided to the judge on or about October 21, 2021.

25.     Admitted in part and denied in part. It is admitted that the Monroe DA's Office seized POM machines at two locations and that BLCE provided assistance during the investigation. The Monroe County DA's Office picked the specific locations.  Further, in addition to the POM devices that were seized, the DA's Office also seized six devices made by Banilla Games from one of the two locations.  All other assertions are denied.

26.     It is admitted that the Monroe County Court of Common Pleas agreed to return the seized evidence from the businesses at issue and granted their request to suppress the evidence.  The Court's Rule 1925 Opinion is a written document that speaks for itself.

27.     The averments in this paragraph refer to the 1925 Opinion, which is a written document that speaks for itself. The averments in this paragraph are conclusions of law to which no response is required.

28.     Denied as stated.  POM misrepresents the text on page 18 of the Monroe County Court's Opinion, as it did not even mention training materials that were provided by BLCE.  In fact, the Court specifically noted that the BLCE officer who

provided testimony at the hearing "was truthful and based upon hours of watching game play."  The Court then went on to characterize the Monroe County Detective's testimony and called into question his own training and experience watching game play prior to seizing the devices.  Regardless, the averments in this paragraph refer to the 1925 Opinion, which is a written document that speaks for itself, therefore no further response is required.

29.    The averments in this paragraph characterize the Monroe County Court's Rule 1925 Opinion, which is a written document that speaks for itself, therefore no response is required. To the extent a response is required, the Court's findings in that matter do not relate to BLCE.

30.    The averments in this paragraph characterize the Monroe County Court's Rule 1925 Opinion, which is a written document that speaks for itself, therefore no response is required.  To the extent a response is required, the Court's findings in that matter do not relate to BLCE.

31.    Denied.  BLCE is without sufficient information to respond to any subsequent statements that may have been made by the Monroe County DA's Office since the proceedings in that case. BLCE denies that it identified the locations or the devices for seizure (which included both POM and Banilla Games devices), or provided untrue legal and factual information to the Monroe County DA's Office. By way of further answer, POM's assertions in this paragraph are predicated on whether

the Supreme Court affirms the Commonwealth Court in both pending appeals noted above. POM intentionally conflates the probable cause standard to seize machines used for unlawful gambling and the predominant factor test used to determine if a device is not a gambling device per se and thus subject to a return of property. While the Monroe County judge agreed with POM regarding the return of property, that issue is at the heart of the *Champions* appeal before the Supreme Court.

32.     Admitted.

33.     Admitted in part and denied in part. It is admitted that BMM performed an examination of certain POM devices, as fully detailed in testimony before the Dauphin County Court of Common Pleas, and as described to this Honorable Court in BLCE's January 4, 2023 Response to POM's Application for Preliminary Injunction The issues regarding the scope of BMM's examination were ultimately resolved via the April 18, 2023 Joint Protective Order in this case. Any inference that the examination was improper is denied.

34.     Denied.  Again, the examination of POM's devices was fully described in testimony before the Dauphin County Court of Common Pleas and in pleadings filed with this Honorable Court.  By way of further answer, BLCE had initially obtained a search warrant to seize and examine the devices in the *Champions* case (even though BLCE has the authority, upon reasonable and probable cause, to conduct warrantless searches and seizures of property within liquor licensed establishments under 47 P.S.

§ 2-211) and POM knew that BLCE was having its own expert conduct an investigation in the course of the Dauphin County proceedings.  Further, as to POM's "intellectual property rights," BMM took appropriate steps to safeguard against any information being disclosed to any third party, and PSP agreed not to conduct further examinations unless permission is given by POM or through application to this Honorable Court. Further, it should be noted that POM filed a lawsuit against BMM in Dauphin County Court of Common Pleas for and then subsequently withdrew it (2022-CV-08562).  All other assertions are denied.

35.    Denied. BLCE is without sufficient information to respond to any subsequent statements that may have been made by BMM.

36.    Denied as stated. Contrary to POM's commentary, BLCE has not engaged in bad faith in any of these matters.  It is admitted that Pace-O-Matic, Inc. issued a document subpoena to PSP in November 2022, and later, a subpoena for corporate designee testimony in May 2023 related to its federal lawsuit against its former law firm, Eckert, Seamans, Cherin & Mellott, LLC. Many of the subpoenaed documents and items required to be brought with the corporate representative were requested in discovery requests by POM directed to PSP in the instant matter (which included requests for documents involving both Pace-O-Matic, Inc. and POM of Pennsylvania), which were subject to the Protective Order entered by this Honorable Court.  PSP propounded various objections to the majority of the requests, including, but not

11

limited to the fact that the items were subject to the Protective Order, but nevertheless provided more than 6,000 pages of documents to counsel for Pace-O-Matic, Inc. in response to the subpoena. Therefore, the characterization that PSP has "resisted" the subpoena is denied. Finally, while counsel for POM of Pennsylvania, LLC averred in earlier paragraphs that Pace-O-Matic, Inc. is a separate legal entity that issued the subpoena in the Federal Litigation, it says in this paragraph that "POM's counsel" (i.e., POM of Pennsylvania, LLC) issued the subpoena.

37. It is admitted that Pace-O-Matic, Inc. issued a subpoena in the Federal Litigation to PSP for a wide range of documents, many of which were covered by this Honorable Court's discovery order entered on May 25, 2023. The subpoena is a written document that speaks for itself. By way of further response, a second subpoena, attached as Exhibit A, was issued by Pace-O-Matic, Inc. in the Federal Litigation for a corporate representative from PSP "to bring with him/her any and all documents requested in Plaintiff's First and Second Requests for Production of Documents that have not already been produced," and be prepared to discuss those documents. (Ex. A at 5.)

38. Denied. As stated earlier, PSP provided over 6,000 pages of documents, including e-mail correspondence between PSP and specific individuals requested by Pace-O-Matic, Inc., in addition to copies of closed **and adjudicated** investigative case files involving POM devices.

## III.    ARGUMENT

### A. This paragraph is an argumentative heading to which no response is required. To the extent a response is required: Denied.

39.    Denied. By way of further answer, Pace-O-Matic, Inc. issued a document subpoena to PSP in November 2022, and later, a subpoena for corporate designee testimony in May 2023 related to its federal lawsuit against its former law firm, Eckert, Seamans, Cherin & Mellott, LLC. Many of the subpoenaed documents and items required to be brought with the corporate representative were made in discovery requests by POM directed to PSP in the instant matter, which were subject to the Protective Order entered by this Honorable Court.  PSP propounded various objections to many of the requests, including, but not limited to the fact that the items were subject to the Protective Order, but nevertheless provided more than 6,000 pages of documents to counsel for Pace-O-Matic, Inc. in response to the subpoenas.  BLCE has neither refused to comply with discovery, nor improperly relied on this Court's protective order.

40.    The averments in this paragraph are a request for relief to which no response is required. To the extent a response is required, the assertions are denied.  By way of further answer, while PSP has objected to the subpoena request for documents covered under this Honorable Court's discovery order, PSP has, in good faith, provided more than 6,000 pages of documents in response to Pace-O-Matic, Inc.'s subpoena for documents, including correspondence between PSP officials and specific individuals

13

from Eckert Seamans and the casinos, as well as closed and adjudicated investigative reports and attachments. PSP denies that a "lift of the stay" is warranted in this matter.

41. Denied. This paragraph is a request for relief to which no response is required. To the extent a response is required, BLCE specifically denies that POM's Application is a time-sensitive issue given that the subpoena for documents was issued to PSP twenty (20) months ago, and the subpoena to attend and testify was issued fourteen (14) months ago, yet Pace-O-Matic, Inc. never informed the federal judge presiding over the Federal Litigation that it could not reach an agreement with PSP related to the subpoena to attend and testify, nor has it filed a motion to compel. Further, all of POM's arguments have been previously raised and resolved in both the present matter and the 222 MD 2022 litigation before this Court. All other assertions are denied.

42. Denied. This paragraph is a request for relief to which no response is required. To the extent a response is required, lifting the stay of further proceedings in this case, including discovery, does not make any sense if the Supreme Court were to reverse or remand either the *Champions* or the *Revenue* cases.

43. Denied. This paragraph is a request for relief to which no response is required. To the extent a response is required, it is denied.

> **B. This paragraph is an argumentative heading to which no response is required. To the extent a response is required, the assertion is denied.**

14

44.     Denied.  Again, PSP has not refused to comply with the subpoena in the Federal Litigation.  PSP objected to many of the requests for various reasons, including but not limited to the Protective Order issued in this case, but nevertheless provided more than 6,000 pages of documents to Pace-O-Matic, Inc. in response to the subpoena for documents.

45.     Denied.  While the subpoena issued by Pace-O-Matic, Inc. pertains to another court proceeding and *may* involve a separate legal entity (Pace-O-Matic, Inc. as opposed to POM of Pennsylvania, LLC), PSP has not used this Honorable Court's discovery order as "an all-purpose shield to resist" discovery, when, in fact, PSP has already provided more than 6,000 pages of documents in response to the subpoena and has lodged timely objections to requests for other documents.

46.     Admitted in part and denied in part. It is admitted that investigative records are not relevant to the above-captioned matter. It is denied that they are relevant in the Federal Litigation.

47.     Denied.  By way of further response, PSP's production of more than 6,000 pages of documents in response to Pace-O-Matic, Inc.'s subpoena, includes correspondence between PSP and specifically named individuals from Eckert Seamans and the casino industry. Such documents are relevant to Pace-O-Matic, Inc.'s claims against Eckert Seamans. The unadjudicated investigations and training materials governed by this Court's Protective Order are not relevant to the Federal Litigation.

The only apparent reason POM seeks to alter the Protective Order is to get these protected documents through the Federal Litigation as they are not relevant to either action.

48.    Denied.  First, PSP denies any "bad faith" related to its response to the subpoenas issued by Pace-O-Matic, Inc. in the Federal Litigation; in fact, it has acted in good faith in its responses thus far and has filed timely objections to certain requests which have yet been decided by the federal court.  PSP denies the characterization that BLCE has been "dishonest about the POM Game."  The parties have obviously differed over the legality of POM devices throughout the various litigation, which will be resolved following the appeals to the Pennsylvania Supreme Court.  Finally, as noted previously, counsel for POM misstates the Court's protective order, as the order protected disclosure of any investigations that were not both closed <u>and</u> adjudicated. There remain about ten administrative investigation involving POM devices which are closed but the cases have not been adjudicated yet by the Office of Administrative Law Judge pursuant to the procedure set forth in 47 P.S. § 4-471.  These cases have been stayed, mostly at the request of the individual licensees, pending the *Champions* appeal.  Accordingly, those cases have not been adjudicated and remain protected by this Court's Protective Order.

49.    Denied as stated.  While this Honorable Court certainly has the authority to modify the discovery order it issued in this case, PSP denies that such should be

16

done, especially since Pace-O-Matic, Inc. has not availed itself of any relief in the Federal Litigation.

50.    It is admitted that PSP did not concur in the requested relief.  PSP does not have sufficient information to answer whether the City of Philadelphia concurred in the requested relief.

## NEW MATTER

51.    On July 11, 2024, shortly after PSP was served with a copy of the instant Application, counsel for PSP in the Federal Litigation filed a letter with the judge in that case, the Honorable Jennifer P. Wilson, to advise her of the discovery dispute regarding the subpoenas in that litigation and the instant Application filed in this Honorable Court. A copy of that letter was also provided to Pace-O-Matic, Inc.'s counsel in the Federal Litigation, Michael Nolan from the law firm of Husch Blackwell. A true and correct copy of the filed letter is attached as Exhibit B.

52.    In response to that letter, on July 22, 2024, Attorney Nolan filed a responsive letter with Judge Wilson, a true and correct copy of which is attached as Exhibit C.

53.    In his letter to Judge Wilson, Attorney Nolan expressly advised that: "To be clear, POM was not seeking further documents from the PSP, but rather simply the dates for the deposition [of the PSP corporate representative]." (Ex. C at 1.)

54.    Further, on page 5 of Attorney Nolan's letter, he advises Judge Wilson:

"To be clear, POM is not currently requesting further documents from PSP. However, it does intend to question PSP's corporate representative on the topics listed in its subpoena for deposition testimony, which will certainly include the PSP's communications with Eckert and its agents and court rulings as summarized above."

(*Id.* at 5.)

55. PSP had objected to the scope of the requested deposition and has expressed concerns about what topics may be pursued, but PSP has not refused the request for a deposition.

56. However, Attorney Nolan's representation to Judge Wilson about no longer requiring document production at the deposition is at odds with the instant Application.

57. In its Application, counsel for POM focuses solely on the November 2022 subpoena for records and completely omits any reference to the subsequent subpoena for deposition of PSP's corporate representative, which BLCE has attached so that the Court knows the complete picture.  (*See* July 3, 2024 Application ¶¶ 37, 46-47.)

58. At best, the two law firms are not in alignment on what more they want from PSP and why they want it, or, at worst, one has misrepresented the true nature of the request.

59. Indeed, the Application submitted to this Honorable Court goes as far as saying "This Court has the power to remedy BLCE's bad faith, by making clear the

18

May 25 Order applies only in the above-captioned matter, **<u>or, alternatively, even declaring the May 25 Order to be void.</u>**" (*Id.* ¶ 49 (emphasis added).)

60.    This makes clear that what POM really wants is for this Honorable Court to reverse its decision on PSP's Motion for Protective Order altogether, so that it can get all the documents it wants in the state court actions, while stayed, rather than follow the federal discovery rules in Pace-O-Matic, Inc.'s lawsuit against Eckert Seamans.

61.    In either event, if the Application is intended to get the ball rolling on the requested deposition and not seek additional documents, as Attorney Nolan advised Judge Wilson, and it is merely a question of establishing ground rules and topics which may be asked, filing the instant Application with this Honorable Court was not the appropriate vehicle (for either POM of Pennsylvania, LLC or Pace-O-Matic, Inc.) for doing so.

62.    Obviously, counsel for Pace-O-Matic, Inc. and POM of Pennsylvania, LLC have discussed these outstanding discovery issues, otherwise POM would not have known that PSP has referenced this Court's discovery order.

63.    What shocks the conscience is that POM's Application filed with this Court does not even mention the deposition or the related subpoena to attend and testify, only the subpoena to produce documents, which is currently not an issue based on Attorney Nolan's representations to Judge Wilson.

19

64.    Further, POM rehashes the same alleged conduct of "targeting" as it submitted in its request for preliminary injunction in this matter and reputational harm in 222 MD 2022.

65.    POM has always attempted to argue that BLCE "targeted" POM and its devices because there were instances of seizures and administrative citations brought against licensees which may have allowed the operation of POM devices as opposed to its competitor's devices which POM has always allege are all illegal.

66.    In fact, the majority of devices that have been seized by BLCE in the last four years have not been POM devices.  Compared to the number of POM devices seized, BLCE seized approximately four times as many so-called "skill games" made by Banilla Games, and almost twice as many "skill games" made by Jenka Labs.

67.    Even in the year 2020, when POM alleges this so-called "targeting" began, BLCE seized more devices made by Banilla Games (POM's largest competitor in the Commonwealth) than devices made by POM.

68.    Using POM's logic, any investigation resulting in a seizure of POM's devices would equate to "targeting," even though there was no statewide precedent related to its devices until this Honorable Court's decision on November 30, 2023.

69.    POM also alleges that BLCE "encouraged local law enforcement in other ways" related specifically to POM's devices, and while BLCE has denied that assertion (*see id.* ¶ 19), it should be noted POM was sending its own "compliance team," headed

20

by Rick Goodling (former director of Pace-O-Matic's Pennsylvania compliance team, and subsequently its national compliance team), to various DA's Offices to discuss the legality of POM's devices and recommend that they instead take prosecutorial action against certain locations that possessed and operated devices made by POM's competitors, including Banilla Games.[2]

70.    Further, POM also alleges that "[s]ince the May 25, 2023 Order, POM also has learned that BLCE's efforts regarding the POM Game in various instances have been laced with deception and abuse of power."

71.    However, absolutely none of the assertions by POM in the instant Application relate to anything occurring since May 25, 2023; it simply relies on prior allegations made in the context of either this case or its second lawsuit against PSP for reputational damages in 222 MD 2022 (which is also stayed pending resolution of the Supreme Court appeals).

72.    Regardless, none of the assertions made by POM in its Application ties PSP's investigative actions to Eckert Seamans or to the casino industry, and, as PSP noted in its letter to Judge Wilson, none of the more than 6,000 pages of documents and emails submitted by PSP in good faith to Pace-O-Matic, Inc. in response to the

---

[2] Chrissy Suttles, Gaming Company Demands Crackdown on "Unlawful" Gambling Amid Legal Ambiguity, Beaver County Times, Sept. 23, 2020 https://www.timesonline.com/story/news/2020/09/23/pennsylvania-skill-demands-crackdown/3503164001/.

federal subpoena evidences any such investigative interference by Eckert Seamans or the casino industry.

73.    Rather than presenting the discovery dispute to Judge Wilson involving the deposition of a PSP corporate representative and the topics that may be addressed, or filing to a motion to compel, fourteen (14) months after issuing the subpoena to attend and testify, POM chose to file the instant Application asking this Honorable Court to lift the stay in the above-captioned matter and amend its discovery order involving document production, even though Pace-O-Matic, Inc.'s counsel in the Federal Litigation advised Judge Wilson it was not seeking any additional documents.

74.    PSP proffers that POM of Pennsylvania, LLC (and/or Pace-O-Matic, Inc.) is acting in bad faith by saying two different things to two different courts, hoping to get the documents it wants, while circumventing federal discovery procedure and seeking an amended order from this Court.

75.    This Honorable Court should not lift the stay in this matter or amend the protective order, or void it, as counsel has suggested, and instead it should allow the federal court to resolve a discovery dispute involving the deposition of a PSP representative.

76.    Finally, POM is fundamentally mistaken on the law governing protective orders.

77.    It is uncontroverted that a protective order issued in the course of litigation in one court is persuasive on the same documents at issue in another litigation or before another court.

78.    POM may attempt to argue that the federal court should not treat this Court's protective order with deference, however, it must do so before the federal court.

79.    Further, POM may argue that PSP's responses to the subpoenas are inadequate and it may pursue a motion to compel in federal court (as it could have done in the last year and a half).

80.    However, POM of Pennsylvania, LLC may not come to this Honorable Court seeking to "clarify" this Court's discovery order so that it may obtain documents this Court held was protected in this case, for use by Pace-O-Matic, Inc. in federal court, especially when Pace-O-Matic, Inc. advised the federal court that it needed no such additional documents for its case against Eckert Seamans.

WHEREFORE, Respondent BLCE respectfully requests that this Court deny Petitioner's Application and maintain the stay in this matter.

**Respectfully submitted,**

**MICHELLE A. HENRY**
**Attorney General**

**By:    s/ *Francis H. Pryzbylkowski***
**FRANCIS H. PRYZBYLKOWSKI**
**Office of Attorney General**             **Deputy Attorney General**
**15th Floor, Strawberry Square**          **PA ID #329644**

23

24

**Harrisburg, PA 17120**
**Phone: (717) 783-6491**

**fpryzbylkowski@attorneygeneral.gov**

**Date:  July 31, 2024**

**NICOLE R. DITOMO**
**Chief Deputy Attorney General**
**Civil Litigation Section**

*Counsel for Respondent*
*Pennsylvania State*
*Police, Bureau of Liquor Control*
*Enforcement*

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| POM OF PENNSYLVANIA, LLC, | : | |
| Petitioner | : | No. 503 MD 2018 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| BUREAU OF LIQUOR CONTROL | : | |
| ENFORCEMENT, | : | |
| Respondent | : | |

## CERTIFICATION

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

*s/ Francis H. Pryzbylkowski*
**FRANCIS H. PRYZBYLKOWSKI**
**Deputy Attorney General**
**PA ID 329644**

25

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| POM OF PENNSYLVANIA, LLC, | : | |
| Petitioner | : | No. 503 MD 2018 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| BUREAU OF LIQUOR CONTROL | : | |
| ENFORCEMENT, | : | |
| Respondent | : | |

**CERTIFICATE OF SERVICE**

I, Francis H. Pryzbylkowski, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on July 31, 2024, I caused to be served a true and correct copy of the foregoing document titled Response to Application for Limited Relief from Stay and Clarification of the Court's May 25, 2023 Order to the following:

| | |
|---|---|
| Edward T. Butkovitz, Esquire<br>Miranda Lu Dang, Esquire<br>Paul G. Gagne, Esquire<br>Matthew H. Haverstick, Esquire<br>Shohin H. Vance, Esquire<br>KLEINBARD, LLC<br>171 Arch Street, 5th Floor<br>Philadelphia, PA 19103<br>ebutkovitz@kleinbard.com<br>mdang@kleinbard.com<br>pgagne@kleinbard.com<br>mhaverstick@kleinbard.com<br>svance@kleinbard.com<br>*Counsel for Petitioner* | Daniel T. Brier, Esquire<br>Donna A. Walsh, Esquire<br>MYERS, BRIER & KELLY, LLP<br>425 Spruce Street, Suite 200<br>Scranton, PA 18503<br>dbrier@mbklaw.com<br>dwalsh@mbklaw.com<br>*Counsel for Petitioner* |

| | |
|---|---|
| Adrian R. King, Jr., Esquire<br>Michael R. McDonald, Esquire<br>David Pittinsky, Esquire<br>Matthew A. White, Esquire<br>BALLARD SPAHR, LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA  19103<br>king@ballardspahr.com<br>mcdonaldm@ballardspahr.com<br>pittinsky@ballardspahr.com<br>whitema@ballardspahr.com<br>*Counsel for Proposed Casino Intervenors* | John J. Cunningham, IV, Esquire<br>Joel L. Frank, Esquire<br>Scot R. Withers, Esquire<br>LAMB MCERLANE, PC<br>24 E. Market St., Box 565<br>West Chester, PA  19381<br>jcunningham@lambmcerlane.com<br>jfrank@lambmcerlane.com<br>swithers@lambmcerlane.com<br>*Counsel for Proposed Casino Intervenors* |
| Stephen S. Cook, Esquire<br>Chad W. Zimmermann, Esquire<br>PENNSYLVANIA GAMING CONTROL BD.<br>303 Walnut Street, Strawberry Square<br>Commonwealth Tower, 5th Floor<br>Harrisburg, PA  17101<br>stcook@pa.gov<br>cwzimmerman@pa.gov<br>*Counsel for Proposed PGCB Intervenor* | Jason R. Greenspon<br>Divisional Deputy City Solicitor<br>Michael J. Rullo<br>Assistant City Solicitor<br>CITY OF PHILADELPHIA LAW DEPARTMENT<br>1515 Arch Street, 17th Floor<br>Philadelphia, PA 19102<br>*Counsel for Proposed Intervenor, City of Philadelphia* |
| Jerry R. DeSiderato, Esq.<br>Timothy J. Ford, Esq.<br>DILWORTH PAXSON LLP<br>1500 Market Street, Suite 3500E<br>Philadelphia, PA 19102<br>jdesiderato@dilworthlaw.com<br>tford@dilworthlaw.com<br><br>*Counsel for Proposed Intervenor, City of Philadelphia* | |

s/ *Francis H. Pryzbylkowski*
**FRANCIS H. PRYZBYLKOWSKI**
**Deputy Attorney General**

27

# EXHIBIT A

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania ☐ ▾

| | |
|---|---|
| PACE-O-MATIC, INC., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:20-CV-292-JPW |
| | ) |
| ECKERT SEAMANS CHERIN & MELLOTT, LLC, et al | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Pennsylvania State Police

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attached Notice of Deposition and Exhibit A

| Place: TBD at a place to be agreed upon by the parties. | Date and Time: TBD at a date and time to be agreed upon by the parties. |
|---|---|

The deposition will be recorded by this method: Court Reporter - Video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | Michael P. Nolan |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Pace-O-Matic
_____ , who issues or requests this subpoena, are:

Husch Blackwell LLP- see attached Notice of Deposition for contact information.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:20-CV-292-JPW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC., )
)
Plaintiff, )  No. 1:20-cv-292-JPW
)
v. )  Judge Wilson
)
ECKERT SEAMANS CHERIN & )
MELLOTT, LLC, et al., )
)
Defendants. )

**PLAINTIFF PACE-O-MATIC, INC.'S NOTICE OF**
**VIDEOTAPED DEPOSITION OF PENNSYLVANIA STATE POLICE'S**
**CORPORATE REPRESENTATIVE**

**TO**:   Peter Buckley, Esquire
Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
**Attorneys for Defendant**

**PLEASE TAKE NOTICE THAT** Plaintiff Pace-O-Matic, Inc. through its

undersigned counsel will take the videotaped deposition of **Pennsylvania State**

**Police's Corporate Representative** pursuant to Rule 30 of the Federal Rules of

Civil Procedure and Middle District of Pennsylvania Local Rule 30.2, before a

notary public or some other officer authorized to administer oaths under law,

date and location To Be Determined, and continuing from day to day thereafter

until completed.  The examination will be recorded by stenographic and

audiovisual means by Planet Depos, 1650 Market Street, Suite 3600,

Philadelphia (888) 433-3767.  Pursuant to Rule 30(b)(2) of the Federal Rules of

1

HB: 4874-9131-3239.1

Civil Procedure, the deponent is directed to bring with him/her to the deposition any and all documents requested in Plaintiff's First and Second Requests for Production of Documents that have not already been produced.

DATED:  April 27, 2023

                                        Respectfully submitted,

                                        HUSCH BLACKWELL LLP

                                        */s/ Michael P. Nolan*
                                        Jeffrey B. Jensen*
                                        Michael Nolan*
                                        Michael Martinich-Sauter*
                                        Bola Adeniran*
                                        8001 Forsyth Boulevard
                                        Suite 1500
                                        St. Louis, Missouri 63105
                                        314-345-6464 (Telephone)
                                        314-480-1505 (Facsimile)
                                        Jeff.jensen@huschblackwell.com

                                        * Appearing by special admission

                                        George W. Westervelt, Jr.
                                        Attorney ID No. 18195
                                        706 Monroe Street, PO Box 549
                                        Stroudsburg, Pennsylvania 18360
                                        570-421-6100
                                        geowwest@ptd.net

                                        ***Counsel for Plaintiff Pace-O-Matic, Inc.***

2

## <u>CERTIFICATE OF SERVICE</u>

I, Michael P. Nolan, hereby certify that a true and correct copy of the foregoing Notice of

Videotaped Deposition was served upon the following counsel of record via electronic mail on

this 27th day of April, 2023:

Peter Buckley, Esquire
Abraham C. Reich, Esquire
Robert S. Tintner, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103-3291
Attorneys for Defendant

*/s/ Michael P. Nolan*

3

**EXHIBIT A**

**DEFINITIONS**

"**Communication**" includes every expression, statement, or dissemination of any words, thoughts, statements, ideas, or information, regardless of form, format, medium, or kind. "Communication" includes but is not limited to oral and written communications of any kind, including telephone conversations, discussions, meetings, notes, letters, agreements, emails and other electronic communications, facsimiles, and all other forms of written or oral exchange that are recorded in any way, including video recordings, audio recordings, written notes, or otherwise. Any communication that falls within the definition of "document" shall constitute both a document and a communication for purposes of this Subpoena. To the extent that any item constitutes a "Communication" under this definition, all attachments to that item also constitute "Communications," regardless of whether those items would independently constitute "Communications."

"**Document**" encompasses and includes every item, material, file, expression, document, and other thing that would constitute a "document" as that term is used in Federal Rule of Civil Procedure 34. "Document" includes every item, whether in electronic or tangible form, upon which any expression or communication has been recorded by any means, including but not limited to electronic documents, files, databases, and records, including but not limited to emails, voicemails, text messages, calendar entries, instant messages, MMS messages, SMS messages, iMessages, computer files, spreadsheets, and metadata. The term "document" includes every draft of any other material that falls within the definition of "document."

"**Eckert**" means Eckert, Seamans, Cherin & Mellott, LLC.

A person is "**party to**" a Communication if the person is involved in any way in the Communication, including but not limited to any speaker, listener, writer, drafter, reader, sender, or recipient (whether directly, via "cc," via "bcc," or via forward or similar mechanism).

"**Parx**" means Greenwood Gaming and Entertainment, Inc. d/b/a Parx Casino.

"**POM**" means Pace-O-Matic, Inc.

"**Pennsylvania State Police**" includes any employee, agent or representative of the Pennsylvania State Police as well as any component or subdivision thereof, including but not limited to the Bureau of Liquor Control Enforcement and the Bureau of Gaming Enforcement.

"**You**," and "**your(s)**" refers to the Pennsylvania State Police and includes every component and subdivision, including but not limited to Bureau of Liquor Control Enforcement and Bureau of Gaming Enforcement.

## **TOPICS**

1.    A description of all Communications relating to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming between You and any of the following persons:

    a.    Mark Stewart;
    b.    Kevin Skjoldal;
    c.    David (a/k/a Neil) Hittinger;
    d.    Kristine Marsilio;
    e.    Any other employee, officer, or owner of Eckert, including but not limited to any individual whose email address includes the domain "@eckertseamans.com."
    f.    Robert ("Bob") Green;
    g.    Thomas Bonner;
    h.    Bryan Schroeder;
    i.    Any other employee, officer, or agent of Parx;
    k.    Richard Gmerek
    l.    Pete Shelly
    m.    Adrian King
    n.    Senator Robert "Tommy" Tomlinson
    o.    Alex Urrea
    p.    Dave Thomas
    q.    Joseph Uliana

2.    A description of all Communications between You and any other person relating to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia".

3.    Your policy/agency position regarding the legality of any POM game and/or skill game; any change in position on that issue between January 1, 2016 and the present; the persons involved in any such change and the basis therefore, including the identify of any documents upon which such change is based or which memorialize the decision.

4.    A description of all Communications between You and any other person relating to a change in Your policy/agency position referenced in the preceding topic between January 1, 2015 and the present.

5

HB: 4874-9131-3239.1

5.      A description of all meetings, telephone calls, and videoconferences involving You, relating in any way to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that were attended by any of the following or to which any of the following were invited:

a.      Mark Stewart;
b.      Kevin Skjoldal;
c.      David (a/k/a Neil) Hittinger;
d.      Kristine Marsilio;
e.      Any other employee, officer, or owner of Eckert;
f.      Robert ("Bob") Green;
g.      Thomas Bonner;
h.      Bryan Schroeder;
j.      Any other employee, officer, or agent of Parx.
k.      Richard Gmerek
l.      Pete Shelly
m.      Adrian King
n.      Senator Robert "Tommy" Tomlinson
o.      Alex Urrea
p.      Dave Thomas
q.      Joseph Uliana

6.      A description of all Communications relating to any actual or proposed joint or coordinated efforts with casinos or participants in the gaming industry and/or their representatives relating to:

a.      POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or

b.      games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

7.      A description of all Communications relating to any actual or proposed target or focus of Pennsylvania State Police related to:

a.      POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or

b.      games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

8.      A description of all Communications relating to Captain James Jones and Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia."

6

9.      A description of all investigations in which Captain James Jones was the target of the investigation and involving Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia.

10.      A description of all Communications related to Captain James Jones, Sergeant Fischer, or any of your employees, agents, or officers providing direction or instruction or suggestion to anyone to look for, find, or target Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia games ("POM games") including but not limited calendar entries, notes, records, or minutes of meetings or briefings, descriptions or depictions of the POM games logo, descriptions regarding distinguishing POM games from Banilla games, instructions on writing reports related to seizure of POM games, instruction or descriptions characterizing the legality or illegality of the POM games, or instructions regarding communication with licensees of the POM games.

11.      A description of all training received by the Vice Unit or other specific Pennsylvania State Police Units related to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training.

12.      All grant applications submitted by the Monroe County District Attorney's Office to the Pennsylvania Gaming Control Board.

13.      All prepared remarks, slide decks, Powerpoint presentations, handouts, outlines, agendas, and other Documents reflecting or memorializing any aspect of the content of a training event delivered on or about September 28, 2021 by the Pennsylvania State Police's CAGE Unit.

14.      A description of any actions taken by You or anyone on Your behalf who has conducted and an analysis of any POM game or POM software.

15.      All seizures of POM games by You, their locations from the time of seizure to present, any testing or analysis of such games and all chain of custody documents related thereto.

16.      A description of any evidence, and when and how acquired, regarding the play and operation, or the presence or absence of skill, of a POM game or POM software.

17.      A description of all communications with PGCB regarding the POM games or POM software and the participants and purpose of those communications.

18.      A description of any and all exculpatory evidence regarding the POM games or POM software and when it became known to the Pennsylvania State Police.

19.      An identification of the highest ranking member of the Pennsylvania State Police who authorized or directed the seizure of POM games in Dauphin County on March 14, 2023, from the Herr Street Stop. A description of all personnel also involved in the implementation of the decision to conduct the seizure of March 14, 2023.

7

HB: 4874-9131-3239.1

20.     A description of all communications, from within the Pennsylvania State Police, and with any entity or individual from another state agency or from outside of the Pennsylvania State Police regarding this seizure.

21.     A description of all communications, training actions or directives, or policies that resulted from the decision in *In re: Pace-O-Matic, Inc. Equipment, Terminal I.D. No. 142613*, No. M.D. 965-2013 (Beaver County C.C.P. December 23, 2014).

22.     A description of all communications with BMM Testlabs or Peter Nikiper regarding the testing or evaluation of POM games or POM software.

23.     A description of any attempt, instance or effort to examine POM software by You or any third Party on Your request or behalf.

24.     A description of all communications, writings, policies or directives prepared by Major Scott Miller regarding Skill games or POM games.

25.     A description of any and all communications between you and District Attorney Ryan Sayers or Peter Weeks regarding POM games or POM software, including but not limited to issues regarding seizures of such games and the lack of basis for such seizures.

8

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PACE-O-MATIC, INC.,                  :
                          Plaintiff  :      No.  1:20-CV-292
                                     :
                v.                   :
                                     :
ECKERT SEAMANS CHERIN &              :
MELLOT, LLC, et al.                  :
                                     :
                         Defendant   :

### PENNSYLVANIA STATE POLICE'S OBJECTIONS AND GROUNDS FOR PROTECTIVE RELIEF DIRECTED TO THE SUBPONEA FOR CORPORATE DESIGNEE TESTIMONY

The Pennsylvania State Police (PSP), by and through its undersigned counsel, hereby sets forth the following objections and grounds for protective relief in response to the subpoena seeking testimony of a corporate representative, as follows.

### GENERAL OBJECTIONS

PSP OBJECTS to the subpoena because it is being used as a vehicle to obtain discovery for pending matters filed by POM against PSP in Commonwealth Court that is irrelevant to the above-captioned matter and beyond the scope of discovery. PSP particularly OBJECTS to those portions of the subpoena, and the document subpoena, that request information and testimony protected by the May 25, 2023 Protective Order entered by the Commonwealth Court in the POM litigation. PSP further OBJECTS to this subpoena as it seeks information protected by the attorney-

1

client and work product privileges. PSP further OBJECTS to this subpoena because it seeks confidential and/or sensitive law enforcement information and strategies. PSP further OBJECTS to this subpoena as it seeks the mental impressions, conclusions, opinions, and legal theories of PSP's attorneys. PSP further OBJECTS to this subpoena because it does not describe with reasonable particularity the matters for examination. PSP further OBJECTS to this subpoena because it is overly broad, burdensome, and disproportionate to the needs of the above-captioned litigation. PSP hereby incorporates its objections to the document subpoena as if set forth more fully herein.

## OBJECTIONS

1.      A description of all Communications relating to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming between You and any of the following persons:

a. Mark Stewart;
b. Kevin Skjoldal;
c. David (a/k/a Neil) Hittinger;
d. Kristine Marsilio;
e. Any other employee, officer, or owner of Eckert, including but not limited
to any individual whose email address includes the domain
"@eckertseamans.com."
f. Robert ("Bob") Green;
g. Thomas Bonner;
h. Bryan Schroeder;
i. Any other employee, officer, or agent of Parx;
k. Richard Gmerek
l. Pete Shelly
m. Adrian King
n. Senator Robert "Tommy" Tomlinson
o. Alex Urrea

p. Dave Thomas
q. Joseph Uliana

**Objection. Corporate designee testimony on this topic would be unduly burdensome and disproportionate to the needs of the case as, as confirmed by the extensive document production, there was no joint effort between PSP and the Defendant or the casinos and the universe of information that can be construed as responsive is so limited or non-existent that other forms of discovery are more appropriate.**

2. A description of all Communications between You and any other person relating to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia".

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony and evidence for both Commonwealth Court litigation matters, which is not appropriate. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. Further, since other manufacturers of devices similar to those made by POM incorporate terms such as "Pennsylvania Skill" or "Skill" into their logos and advertising, searches for "Pennsylvania Skill" or "PA Skill" will invariably necessitate the review of each and every document to ensure that the machine or machines at issue in any given investigation is, in fact, made by POM.[1] This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

---

[1] This fact should be known to counsel for POM, since POM has initiated litigation against several of its competitors for allegedly using its allegedly trademarked name of "PA Skill." *See* 2:18-cv-00722, which was filed in the U.S. District Court for the Western District of Pennsylvania.

3.      Your policy/agency position regarding the legality of any POM game and/or skill game; any change in position on that issue between January 1, 2016 and the present; the persons involved in any such change and the basis therefore, including the identify of any documents upon which such change is based or which memorialize the decision.

**Objection. PSP OBJECTS to this topic as it seeks information protected by the attorney-client and work product privileges. PSP further OBJECTS to this topic because it seeks confidential and/or sensitive law enforcement information and strategies. PSP further OBJECTS to this topic because it seeks the mental impressions, conclusions, opinions, and legal theories of PSP's attorneys. PSP further OBJECTS to this topic because it is irrelevant to the above-captioned matter and is improperly being used a vehicle for discovery into the Commonwealth Court matters.**

4.      A description of all Communications between You and any other person relating to a change in Your policy/agency position referenced in the preceding topic between January 1, 2015 and the present.

**Objection. PSP OBJECTS to this topic as it seeks information protected by the attorney-client and work product privileges. PSP further OBJECTS to this topic because it seeks confidential and/or sensitive law enforcement information and strategies. PSP further OBJECTS to this topic because it seeks the mental impressions, conclusions, opinions, and legal theories of PSP's attorneys. PSP further OBJECTS to this topic because it is irrelevant to the above-captioned matter and is improperly being used a vehicle for discovery into the Commonwealth Court matters.**

5. A description of all meetings, telephone calls, and videoconferences involving You, relating in any way to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that were attended by any of the following or to which any of the following were invited:

a. Mark Stewart;
b. Kevin Skjoldal;
c. David (a/k/a Neil) Hittinger;
d. Kristine Marsilio;

e. Any other employee, officer, or owner of Eckert;
f. Robert ("Bob") Green;
g. Thomas Bonner;
h. Bryan Schroeder;
j. Any other employee, officer, or agent of Parx.
k. Richard Gmerek
l. Pete Shelly
m. Adrian King
n. Senator Robert "Tommy" Tomlinson
o. Alex Urrea
p. Dave Thomas
q. Joseph Uliana

**Objection. Corporate designee testimony on this topic would be unduly burdensome and disproportionate to the needs of the case as, as confirmed by the extensive document production, there was no joint effort between PSP and the Defendant or the casinos and the universe of information that can be construed as responsive is so limited or non-existent that other forms of discovery are more appropriate.**

6. A description of all Communications relating to any actual or proposed joint or coordinated efforts with casinos or participants in the gaming industry and/or their representatives relating to:
a. POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or
b. games of skill, skill games, "gray market" gaming, purportedly illegal
gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

**Objection. This topic does not describe with reasonable particularity the matters for examination. PSP cannot provide information regarding "joint or coordinated efforts" that do not exist. Further, the request is overly burdensome because, as noted above, other manufacturers of devices similar to those made by POM incorporate terms such as "Pennsylvania Skill" or "Skill" into their logos and advertising. Therefore, searches for "Pennsylvania Skill" or "PA Skill" will invariably necessitate the review of each and every document to ensure that the machine or machines at issue in any given investigation is, in fact, made by POM.**

7. A description of all Communications relating to any actual or proposed target or focus of Pennsylvania State Police related to:

a. POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or

b. games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. Further, the request is overly burdensome because, as noted above, other manufacturers of devices similar to those made by POM incorporate terms such as "Pennsylvania Skill" or "Skill" into their logos and advertising. Therefore, searches for "Pennsylvania Skill" or "PA Skill" will invariably necessitate the review of each and every document to ensure that the machine or machines at issue in any given investigation is, in fact, made by POM. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

8.    A description of all Communications relating to Captain James Jones and Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications,**

**administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

9.      A description of all investigations in which Captain James Jones was the target of the investigation and involving Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

10.      A description of all Communications related to Captain James Jones, Sergeant Fischer, or any of your employees, agents, or officers providing direction or instruction or suggestion to anyone to look for, find, or target Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia games ("POM games") including but not limited calendar entries, notes, records, or minutes of meetings or briefings, descriptions or depictions of the POM games logo, descriptions regarding distinguishing POM games from Banilla games, instructions

on writing reports related to seizure of POM games, instruction or descriptions characterizing the legality or illegality of the POM games, or instructions regarding communication with licensees of the POM games.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

11. A description of all training received by the Vice Unit or other specific Pennsylvania State Police Units related to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers,**

**Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

12.    All grant applications submitted by the Monroe County District Attorney's Office to the Pennsylvania Gaming Control Board.

**Objection. This topic is directed to and pertains to information held by third parties.**

13.    All prepared remarks, slide decks, Powerpoint presentations, handouts, outlines, agendas, and other Documents reflecting or memorializing any aspect of the content of a training event delivered on or about September 28, 2021 by the Pennsylvania State Police's CAGE Unit.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

14.    A description of any actions taken by You or anyone on Your behalf who has conducted and an analysis of any POM game or POM software.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is**

irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court. Further, certain information related to the examination and evaluation of POM's games has been provided to counsel for POM in the pending Commonwealth Court matter docketed at 503 MD 2018 pursuant to a Joint Protective Order that was filed on April 4, 2023.

15.    All seizures of POM games by You, their locations from the time of seizure to present, any testing or analysis of such games and all chain of custody documents related thereto.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court. Further, certain information related to the locations of**

**POM games that have been seized by PSP has been provided to counsel for POM in the pending Commonwealth Court matter docketed at 503 MD 2018 pursuant to a Joint Protective Order that was filed on April 4, 2023.**

16. A description of any evidence, and when and how acquired, regarding the play and operation, or the presence or absence of skill, of a POM game or POM software.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

17. A description of all communications with PGCB regarding the POM games or POM software and the participants and purpose of those communications.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of**

11

**whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP.  This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

18. A description of any and all exculpatory evidence regarding the POM games or POM software and when it became known to the Pennsylvania State Police.

**Objection.  This topic does not describe with reasonable particularity the matters for examination.  It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP.  This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

19. An identification of the highest ranking member of the Pennsylvania State Police who authorized or directed the seizure of POM games in Dauphin County on March 14, 2023, from the Herr Street Stop. A description of all personnel also involved in the implementation of the decision to conduct the seizure of March 14, 2023.

**Objection.  This topic does not describe with reasonable particularity the matters for examination.  It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony**

12

**for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court, as there were devices of other manufacturers that were also seized as part of that ongoing criminal investigation.**

20. A description of all communications, from within the Pennsylvania State Police, and with any entity or individual from another state agency or from outside of the Pennsylvania State Police regarding this seizure.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

21. A description of all communications, training actions or directives, or policies that resulted from the decision in *In re: Pace-O-Matic, Inc. Equipment,*

*Terminal I.D. No. 142613*, No. M.D. 965-2013 (Beaver County C.C.P. December 23, 2014).

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

22. A description of all communications with BMM Testlabs or Peter Nikiper regarding the testing or evaluation of POM games or POM software.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by**

14

**Commonwealth Court. Further, certain information related to the examination and evaluation of POM's games has been provided to counsel for POM in the pending Commonwealth Court matter docketed at 503 MD 2018 pursuant to a Joint Protective Order that was filed on April 4, 2023.**

23. A description of any attempt, instance or effort to examine POM software by You or any third Party on Your request or behalf.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court. Further, certain information related to the examination and evaluation of POM's games has been provided to counsel for POM in the pending Commonwealth Court matter docketed at 503 MD 2018 pursuant to a Joint Protective Order that was filed on April 4, 2023.**

24. A description of all communications, writings, policies or directives prepared by Major Scott Miller regarding Skill games or POM games.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications,**

15

administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.

25. A description of any and all communications between you and District Attorney Ryan Sayers or Peter Weeks regarding POM games or POM software, including but not limited to issues regarding seizures of such games and the lack of basis for such seizures.

**Objection. This topic does not describe with reasonable particularity the matters for examination. It would be unduly burdensome and impossible to provide corporate testimony on this overly broad topic. Further, this topic is irrelevant to the above-captioned matter and is an effort to obtain testimony for the Commonwealth Court litigations. PSP OBJECTS because there is no time restriction for this overly broad request. Moreover, as "communication" is defined in this request, this would include privileged and/or protected information, including attorney-client privileged communications, administrative investigative reports (regardless of whether the administrative citations are pending or closed), criminal investigative reports (regardless of whether the criminal charges have yet to be filed or whether charges are pending), intelligence memos which may contain confidential source information, and emails and correspondence of the more than 6,500 Troopers, Liquor Enforcement Officers and civilians employed by PSP. This request creates an unfair, disproportionate, and near impossible burden. This topic also seeks information in violation of the Protective Order entered by Commonwealth Court.**

16

**As to objections,**

By:    *s/ Nicole J. Boland*
       **NICOLE J. BOLAND**
       **Assistant Counsel**
       **Pennsylvania State Police**
       **Attorney ID 314061**

       **BRENDAN J. O'MALLEY**
       **Chief Counsel**

**Date:  June 7, 2023**

17

# CERTIFICATE OF SERVICE

I, Nicole J. Boland, Assistant Counsel, Pennsylvania State Police, hereby certify that on June 7, 2023, I caused to be served a true and correct copy of the foregoing Subpoena Objections to the following:

**VIA US Mail & Email**

**Michael Nolan**
**Husch Blackwell LLP**
**190 Carondelet Plaza**
**Suite 600**
**St. Louis, MO 63105**
**jeff.jenson@huschblackwell.com**

*s/ Nicole J. Boland*
**NICOLE J. BOLAND**

# EXHIBIT B



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

July 11, 2024

Nicole J. Boland, Esquire
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110
Phone (717) 678-9654
nboland@pa.gov

The Honorable Jennifer P. Wilson
United States Judge
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N. 6th Street
Harrisburg, Pennsylvania 17102
*__Via Electronic Filing__*

Re: *__Pace-O-Matic, Inc. v. Eckert Seamans__*
*__Cherin & Mellott, LLC__*, **1:20-cv-292**

Dear Honorable Judge Wilson,

On behalf of the Pennsylvania State Police (PSP), I am writing to notify the Court regarding PSP's intent to seek protective relief related to two subpoenas (for documents and testimony, respectively) that were served by POM over a year ago. POM is overtly attempting to use the subpoenas to obtain documents and materials that the Commonwealth Court protected from disclosure, and is subjecting PSP to undue burden and harassment, including by making misrepresentations to Commonwealth Court about PSP's subpoena response.

By way of background, POM issued a document subpoena to PSP in November 2022, and later, a subpoena for corporate designee testimony in May 2023 (attached, with PSP's objections, as Exhibits "A" and "B"). It appears that the intent of POM's subpoenas is to explore whether Eckert, Seamans, Cherin & Mellott, LLC ("Eckert Seamans") and/or various individuals working in the casino industry,

1



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

corresponded with or influenced the decisions of PSP to investigate liquor licensed establishments allowing the operation of POM's "PA Skill" machines.

The document subpoena contained 13 requests, and the latest subpoena received from POM's counsel contains 25 separately enumerated items. Despite propounding objections to the majority of these requests, and not being a party to this litigation, PSP proceeded, in good faith, to provide POM with over six thousand pages of documents, including e-mail correspondence between PSP and specific individuals requested by POM, in addition to copies of closed and adjudicated investigative case files involving POM's devices.[1]. Those documents evidence *no link* between PSP and Eckert Seamans law firm. Notwithstanding, over a year later, POM continues to demand more from PSP. Particularly, unadjudicated investigative case files and documents that are directly protected by a protective order entered by the Commonwealth Court in a state court action in which PSP *is* a party, docketed at 503 M.D. 2018 (the protective order is attached as Exhibit "C").

Since last year, PSP has maintained its objections to further production of documents. PSP articulated to POM its concern that POM is using this litigation to end-run the protective order entered against it in Commonwealth Court, requesting a proffer from POM as to why it would need additional information protected by the protective order, when over six thousand pages of documents, including correspondence involving PSP, have already been produced, establishing no

---

[1] For the Court's knowledge, it is the statutory responsibility of PSP's Bureau of Liquor Control Enforcement ("BLCE") to enforce the liquor laws of the Commonwealth and issue administrative citations for unlawful conduct that occurs within establishments that are licensed by the Pennsylvania Liquor Control Board ("PLCB"). Citations are heard and adjudicated by an Administrative Law Judge of the PLCB. The BLCE has historically cited licensees which operate or allow the operation of gambling within their premises, including the operation of gambling devices. The BLCE has administratively cited hundreds of licensees which have operated so-called "skill games" that were made by various manufactures, including POM, Banilla Games, IGS, Jenka Labs, Prominent Games, and others (in many situations, an establishment will have a mix of devices from different manufacturers). There are currently less than a dozen or so pending citation cases involving POM devices which have been stayed, at the request of the licensees, until the legality of the devices are decided by various appeals. Accordingly, those citation cases remain "open" or unadjudicated.

2



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

connection, as alleged, between PSP and Eckert Seamans. The only proffer provided is speculative assertions that, perhaps, there is something discoverable in the file.

The outstanding requests are not proportional to the needs of the case and are a thinly veiled attempt at discovery for the state court litigation. POM has subpoenaed unadjudicated investigative files, PSP internal training materials involving gambling devices, grant applications submitted by other government agencies, any and all testing or analyses involving POM devices, "exculpatory evidence regarding POM games or POM software", the identity of which PSP personnel authorized a seizure of POM devices on March 14, 2023, and correspondence between PSP and the District Attorney of Clearfield County regarding POM devices. Many of these same requests were made in discovery requests by POM directed to PSP in the state court case, which prompted PSP to file a Motion for Protective Order.[2]  In its Order dated May 25, 2023, the Commonwealth Court specifically directed that PSP was not required to produce open or unadjudicated investigative files involving POM devices, communications with other law enforcement agencies regarding such devices, or any training materials. In fact, other than adjudicated investigative files involving POM devices, PSP's Motion for Protective Order was granted in all other respects by the Commonwealth Court.

Instead of bringing its demands for more information related to the year-old subpoenas to this Court's attention, last week, POM filed a motion in Commonwealth Court requesting "clarification" that the protective order is not applicable to this matter, and indicating to the Commonwealth Court, falsely, that PSP has "refused to comply with third-party discovery by a different party in federal court" due to the protective order (attached hereto as Exhibit "D"). Standing alone, Commonwealth Court will have the impression that PSP did not produce *any* documents in response to the subpoena in reliance on the protective order.

---

[2]     For example, in discovery requests filed by POM in 503 MD 2018, POM had similarly asked for "all PSP training materials concerning or relating to gambling devices, including but not limited to investigating, identifying, and/or seizing said devices"; "all communications between PSP and any local law enforcement or District Attorney's Office concerning or relating to gambling devices; " and "identify the person(s) who ordered/directed the Philipsburg raid on February 18, 2020 at K&H Beverage … where Pace-O-Matic Games were seized."

3



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

According to Federal Rule of Civil Procedure 45(d)(1), POM is required to make efforts to avoid imposing an undue burden on the person subject to the subpoena. In this case, PSP objected to both subpoenas and articulated bases for protective relief. Nevertheless, PSP worked in good faith to produce thousands of pages of documents in response to the subpoena. This effort took dozens of hours to complete over the course of weeks. Although none of those documents show a connection between PSP and Eckert Seamans, POM seeks to continue the fishing expedition against PSP, including by asking for all unadjudicated cases involving POM devices, which will also serve the purpose of obtaining the protected discovery in the Commonwealth Court litigation.[3] POM should not be permitted to continue its unreasonable and oppressive efforts against PSP.

Notably, while POM is now using this case to seek relief from the state court protective order against it, PSP has not solely relied on the order in objecting to further production. Several grounds were asserted, including that producing certain requested records may implicate state law confidentiality rules and independent privacy interests, among other concerns. Further, PSP has already absorbed significant burden connected with its extensive production, which even included producing and redacting closed and adjudicated case files. Providing information from administrative investigations in which evidence has not yet been presented to an Administrative Law Judge present further logistical challenges and legal issues.

Any notion that POM's true intention here was not to end-run the protective order in Commonwealth Court was put to rest last week. POM has never sought relief from this Court regarding the subpoenas issued under the above-caption. Instead, POM is now using the subpoena as a vehicle to seek relief from the protective order, and to cast PSP in a negative light, in the case where it is a party. Moreover, even if the Commonwealth Court indicates that its order only applies in

---

[3] POM has also sued PSP and former PSP personnel in a separate state court matter, docketed at 222 MD 2022, alleging that PSP has caused POM reputational damages. Discovery and proceedings in that case were stayed pending a related PA Supreme Court appeal, currently docketed at 7 MAL 2024. On January 16, 2024, the Commonwealth Court denied POM's application to vacate the stay, which will remain in place until the Supreme Court's decision.



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

state court—that still does not resolve PSP's objections and grounds for protective relief, which are maintained and are appropriately vetted by this Court.

In sum, PSP has produced over six thousand pages in documents. There is no connection between PSP and Eckert Seamans because PSP has never had a joint venture with Eckert Seamans regarding POM seizures. Rather, PSP is a law enforcement agency that operates according to its duty of public protection. Ordering PSP to produce all of its files (or discuss the same during a deposition), including unadjudicated files, is unduly burdensome, offends the Commonwealth Court protective order, implicates state law privacy interests, is harassing, and causes prejudice and imposition against third-party PSP. PSP, thus, requests assistance to resolve this dispute before formally filing a motion for a protective order.

Thank you very much for your time and attention to this matter.

Very Truly Yours,

*s/ Nicole J. Boland*

Nicole J. Boland
Assistant Counsel
Pennsylvania State Police

cc: Counsel of record

5

# EXHIBIT C

# HUSCH BLACKWELL

Michael Nolan
Partner

8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Direct: 314.480.1770
Fax: 314.480.1505
michael.nolan@huschblackwell.com

July 22, 2024

Judge Jennifer P. Wilson
United States District Judge
United States District Court for the Middle
District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

> **Re:** *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, et al.*
> **Civil No. 1:20-CV-00292**

Dear Judge Wilson:

The undersigned represents Plaintiff Pace-O-Matic, Inc. ("POM") in the above-referenced lawsuit against its former law firm – Eckert Seamans Cherin & Mellott ("Eckert") – relative to Eckert's surreptitious campaign to destroy POM while POM was one of Eckert's clients. Eckert orchestrated this campaign on behalf of its casino clients, utilizing a team of attorneys (eg. Mark Stewart, Kevin Skjoldal, Niel Hittinger, and Adrian King, lobbyists (eg. Richard Gmerek), and public relation professionals (eg. Peter Shelly) to manipulate governmental agencies such as the Pennsylvania State Police ("PSP") to illegally and maliciously seize POM games and harass and prosecute POM's clients in order to drive POM out of business.

This letter is in response to PSP's letter filed July 11, 2024, objecting to POM's subpoenas for documents and deposition testimony and asserting that it intends to seek protective relief from the Court [Doc. 400]. POM is surprised by the filing, given it has worked diligently with PSP over the last year to obtain the discovery POM needs to establish Eckert's influence over the PSP, while at the same time working to minimize the risk of any undue burden on the PSP. In fact, the last communication which precipitated the PSP's filing was an e-mail exchange between POM's undersigned counsel and PSP counsel, Nicole Boland, in which the undersigned requested dates for the deposition of the PSP corporate representative to testify on topics listed in POM's May 2023 subpoena. *See* **Exhibit 1**, attached hereto. To be clear, POM was <u>not</u> seeking further documents from the PSP, but rather simply dates for the deposition.

In response, Ms. Boland stated:

We stand on our objections and our existing protective order in Commonwealth Court as long indicated. So long as you agree to the bounds of the protective order,

# HUSCH BLACKWELL

Judge
July 22, 2024
Page 2

we can proceed in scheduling dates. If we need to seek a protective order, please advise.

Ex. 1.

In response, the undersigned stated:

Thanks for your response, Nicole.  Please let us know **which specific cases** you are talking about.  My understanding is that there are a number of cases where the machines in question have been returned, which suggests that the investigations are no longer active or ongoing.  It would be helpful to know which ones PSP claims are still a part of an active ongoing investigation.  **Once we have that specific information, we will be in a better position to evaluate whether to stipulate or take the matter up with the court**.  Thanks.

*Id*. (Emphasis added.)

Ms. Boland *never* responded or advised which specific cases the PSP claims are still active and ongoing.  Instead, she filed the letter, repeatedly claiming that there is "no link between PSP and Eckert Seamans Law firm."  Letter, p. 2.

POM respectfully disagrees with PSP's denial of link between Eckert and the PSP.  POM has uncovered direct and circumstantial evidence showing communications between Eckert and its agents on the one hand and the PSP on the other regarding skill games and POM, giving rise to an inference of Eckert's undue influence on the PSP.  POM has a right to obtain all non-privileged information reasonably calculated to lead to the discovery of admissible evidence on that very issue.  Furthermore, there is a strong public interest in discovering Eckert's influence over a governmental agency tasked with enforcing the law for the sole benefit of private corporate interests like those of Eckert and its casino clients.

## I.    Evidence of Eckert's Undue Influence Over the PSP To Illegally Seize POM Games and Enact Anti-Skill Game Legislation

The e-mails and documents summarized below show ongoing direct contact between Eckert and the PSP regarding skill games and POM:

On March 7, 2018, Bob Green, President of Parx Casino e-mailed Defendant Mr. Stewart, copying Mr. Gmerek and others under the subject line "Skill Games," stating "I think we have to go on the offensive and get a successful prosecution that reverses the original lower court edict of 'definition'."  *See* **Exhibit 2,** attached hereto.  Mr. Gmerek forwarded the e-mail to only Mr. Stewart, stating "See?  It worked…."  *Id.*  To which, Mr. Stewart responded:

# HUSCH BLACKWELL

Judge
July 22, 2024
Page 3

LOL. Thanks. Hope you didn't mind my reference of your relationship with Shapiro. I wasn't trying to make it your problem to fix, etc., but knew you have a good relationship there and wanted to recognize its importance.

*Id.*

Not long thereafter, Mr. Gmerek forwarded Mr. Green a press release issued by the PSP regarding seizures it made of alleged "illegal gambling devices" in Beaver County, Pennsylvania. *See* **Exhibit 3**, attached hereto. In the subject line, Mr. Gmerek typed "how'd we do???", implying that Eckert and Mr. Gmerek were responsible for the PSP seizures. *Id.*

On December 13, 2019, defendants Mr. Stewart and Mr. Skjoldal were e-mailing with Mr. Green, Mr. Gmerek and others regarding a preliminary injunction filed by POM of Pennsylvania, LLC in a lawsuit against PSP, involving the legality of POM's games. *See* **Exhibit 4**, attached hereto. Mr. Stewart stated that he had sent his analysis to the Attorney General's office and sent the same to Mr. Gmerek to share with Major Miller, the Director of the PSP's Bureau of Liquor Control Enforcement. *Id.*

On or around January 6 & 7, 2020, Mr. Stewart, Theron Perez (PA Governor's Office of General Counsel), Kenneth Joel (same), Kevin McKeon, and Mr. King e-mailed each other to set up a call with attorneys from several Commonwealth agencies including the PSP regarding a preliminary injunction hearing in a case involving POM's games. *See* **Exhibit 5**, attached hereto.

On February 25, 2020, Mr. Stewart sent an e-mail to Mr. Gmerek, regarding skill games, in which he admitted "On the issue re LCE [Liquor Control Enforcement], Adrian [presumably King] was talking to PSP. They told him that LCE troopers do all the gambling enforcement cases regardless of whether the machines are in a bar or not." *See* **Exhibit 6**, attached hereto.

On March 18, 2020, Mr. Stewart, Mr. Gmerek, and a lobbyist, Sean Shafer met with the PSP regarding skill game legislation. *See* **Exhibit 7**, attached hereto.

On March 25, 2021, in e-mail correspondence with Mr. Stewart, Mr. Gmerek, and Mr. Shelly regarding skill games, Mr. Shelly admitted that they had been sending information about skill games to the "local PSP barracks." *See* **Exhibit 8**, attached hereto.

Defendants have admitted in their supplemental discovery responses that they have been actively involved in work adverse to skill games, including "(e) outreach on behalf of client(s) to regulators, elected officials, government employees **and law enforcement personnel relating to skill game oversight and regulation**…" *See* **Exhibit 9**, attached hereto (emphasis added).

Eckert's campaign of influence over the PSP was effective. Despite the fact that the Court of Common Pleas in Beaver County had previously held in 2014 that POM's games were legal

# HUSCH BLACKWELL

Judge
July 22, 2024
Page 4

games of skill, beginning in or around 2018, PSP began training its officers to differentiate POM games from competitors' games, including training its officers on the colors and logos of the POM games, so as to be able to pinpoint locations with only POM games for selective enforcement and prosecution. *See* Affidavit of Leann Needham, attached hereto as **Exhibit 10**. PSP told its officers to look for the blue POM logo to be sure they were seizing POM games. *Id*.

The PSP then trained and gave technical support to the Monroe County District Attorney's office related to skill games, including providing them with a template search warrant for POM games. Thomas J. McMahon (a member of the Criminal Investigations Division of the Monroe County District Attorney's Office) adapted the PSP search warrant, without making any material changes for use in Monroe County, misrepresenting the state of the law and portraying a version of gameplay on the POM game that purposefully ignored key skill related features of which the PSP and Commonwealth were well aware. Relying on this inaccurate and incomplete affidavit of probable cause, a search warrant was issued on October 26, 2021, and POM games were seized. The owner and operator of the games filed motions for return of property, which were granted. In its Rule 1925 Opinion, the Monroe County Court of Common Pleas elaborated on the reasoning underlying its decision. A copy of the Opinion is attached hereto as **Exhibit 11**.

With respect to the legality of the POM games, the court found that, based on an analysis of the game's characteristics, it was predominantly a game of skill. *Id*. Further, the court found Mr. McMahon's testimony – which was based on the PSP training and materials – was "not relevant, trustworthy, or based upon any acceptable modicum of knowledge, observation of experience." *Id*. at 18. As for the Commonwealth's conduct in the proceedings, the court found that the investigators knowingly and recklessly misstated the relevant law for search warrants and the assistant district attorneys approved and signed off on those errors. *Id*.

In another case before the Dauphin County Court of Common Pleas, the PSP and Office of Attorney General hired BMM Testlabs (BMM) to provide expert testimony related to POM games. Even though PSP never obtained a search warrant to allow it to invasively search the POM machines in a manner to decompile the game's source code or to decrypt encrypted POM game hardware, BMM attempted to do so. *See* Affidavit of Peter Nikiper, attached hereto as **Exhibit 12**. Such actions grossly violated POM's intellectual property rights. BMM has since revealed that had it known there was no search warrant authorizing such an examination and analysis, BMM would have stopped all work until BMM's legal department had evaluated whether PSP and BMM had any lawful basis to do so. *Id*.

## II. POM Is Conducting Discovery Relevant and Necessary to Prosecute Its Claims Against Eckert in This Case

# HUSCH BLACKWELL

Judge
July 22, 2024
Page 5

Contrary to the conclusory and unsubstantiated assertions made by Ms. Boland in her letter, the discovery sought by POM in this case is relevant to its attempt to discover the full scope and breadth of Eckert's campaign to "kill skill," in violation of Eckert's fiduciary duties to POM and to identify and quantify all the fees that should be disgorged from Eckert. Based on the evidence developed to date, it appears that Eckert, through its agents and co-conspirators manipulated the PSP to maliciously target and seize POM Games, knowing full well that the games had already been adjudicated as legal skill games. PSP's purported expert, BMM, tried to decompile the POM game's source code and to decrypt encrypted POM Game hardware, even though the PSP had no legal authority to do so. Such abuses of power are outside the normal course of conduct of a law enforcement agency, which begs the question – what prompted the wrongful conduct? POM submits that a jury could reasonably infer from the evidence that PSP was acting under the direct influence of Eckert in Eckert's campaign to destroy POM.

## III. PSP Has Failed to Establish That Any Privilege Applies to the Issues to Be Addressed at the PSP Corporate Representative Deposition

The PSP states at the end of its letter that the production of "unadjudicated files" "implicates state law privacy interests" without citing any authority for that proposition or providing any detail as to which cases or matters it is referring. PSP Letter, p. 5. To be clear, POM is not currently requesting further documents from PSP. However, it does intend to question PSP's corporate representative on the topics listed in its subpoena for deposition testimony, which will certainly include the PSP's communications with Eckert and its agents and court rulings as summarized above. Because the PSP failed to articulate the cases or matters to which it might be referring or to cite to any controlling authority, POM is unable to further respond to this conclusory argument. If the PSP raises any such argument, authority, or detail in a reply letter, POM requests the opportunity to respond.

## IV. PSP Admits That the Protective Order in the Commonwealth Case Is Inapplicable to This Proceeding

The PSP makes reference in its letter to the May 2023 protective order entered in the Commonwealth case involving POM of Pennsylvania, LLC and the PSP, No. 503 M.D. 2018. *See* PSP Letter, p. 3. However, that case involves different parties, different claims, and different issues than those being litigated in this case. In fact, the PSP admits that the Commonwealth Court's rulings in that case have no bearing on discovery matters in this case. *Id.* at p. 5. The PSP concedes the Commonwealth court's rulings "do[] not resolve PSP's objections and grounds for protective relief, which are maintained and are appropriately vetted by this Court." *Id.* Therefore, the protective order is inapplicable to this dispute and should be disregarded.

## V. POM's Deposition of the PSP's Corporate Representative Will Not Be Unduly Burdensome

# HUSCH BLACKWELL

Judge
July 22, 2024
Page 6


The PSP has engaged in improper and abusive conduct relative to POM and its games. POM is entitled to discover the basis for such conduct and find out who directed it and why. Deposition is the best vehicle for uncovering such information. POM has been working diligently with Ms. Boland to minimize any risk of undue burden. The PSP has had ample time to conduct its investigation and prepare its corporate representative to testify as to the topics listed in POM's subpoena. POM has been very deferential in allowing the PSP to pick a convenient date, time, and location for the deposition.

Based on the foregoing, POM respectfully requests that this Court deny the PSP's requested relief and that it direct the PSP to provide dates for the deposition of the PSP's corporate representative.


Regards,

HUSCH BLACKWELL LLP

*/s/ Michael Nolan*

Michael Nolan