**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **PACE-O-MATIC, INC.,** | : | | |
| **Plaintiff** | : | **No.  1:20-CV-292** | |
| | : | | |
| **v.** | : | **Honorable Judge Wilson** | |
| | : | | |
| **ECKERT SEAMANS CHERIN &** | : | **Electronically filed document** | |
| **MELLOT, LLC, et al.** | : | | |
| | : | | |
| **Defendant** | : | | |

**PENNSYLVANIA STATE POLICE'S BRIEF IN**
**SUPPORT OF MOTION TO QUASH CORPORATE**
**DESIGNEE SUBPOENA OR FOR A PROTECTIVE ORDER**

The Pennsylvania State Police (PSP), by and through its undersigned counsel, hereby files this Brief in Support of its Motion to Quash Corporate Designee Subpoena or, alternatively, for a Protective Order, as follows.

## I.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND

Pace-O-Matic, Inc. (POM) is improperly attempting to use third-party discovery in this case to gain an advantage in state court litigation against PSP. It has, indeed, already overtly used its subpoenas to try to prejudice PSP in Commonwealth Court, validating PSP's concerns. This, alone, warrants quashing the subpoena. Additionally, the 25-item notice is unduly burdensome on its face, lacking any semblance of reasonable particularity. Thus, the subpoena "must" be quashed pursuant to Federal Rule of Civil Procedure 45(d)(3)(A).

1

Statutory Framework

A person is guilty of a first-degree misdemeanor if they "intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine *or any device to be used for gambling purposes*, except playing cards." 18 Pa.C.S. § 5513(a)(emphasis added). Electronic versions of these devices that offer simulated gambling programs are also prohibited. *See* 18 Pa.C.S. § 5513(a.1). Any gambling device that is used in violation of the provisions of the statute shall be seized and forfeited to the Commonwealth. 18 Pa.C.S. § 5513(b).

BLCE

It is the statutory responsibility of PSP's Bureau of Liquor Control Enforcement ("BLCE") to enforce the liquor laws of the Commonwealth and issue administrative citations for unlawful conduct, such as gambling, that occurs within establishments that are licensed by the Pennsylvania Liquor Control Board ("PLCB"). Citations are heard and adjudicated by an Administrative Law Judge of the PLCB. BLCE has historically cited licensees that operate or allow the operation of gambling within their premises, including through devices used for gambling purposes, per 18 Pa. C.S. § 5513. BLCE has administratively cited hundreds of licensees which have operated so-called "skill games" that were made by various manufactures, including POM, Banilla Games, IGS, Jenka Labs, Prominent Games,

2

and others (in many situations, an establishment will have a mix of devices from different manufacturers). There are currently pending citation cases involving POM devices which have been stayed, at the request of the licensees, until the legality of the devices is decided by various appeals. Accordingly, those citation cases remain "open" or unadjudicated.

Commonwealth Court Litigation

POM of PA, LLC (POM of PA) has filed two separate state court actions against PSP in Commonwealth Court. It first filed a declaratory judgment action (docketed at 503 MD 2018 ("2018 lawsuit")) seeking to have its devices declared lawful under Section 5513 of the Pennsylvania Crimes Code (18 Pa. C.S. § 5513), which prohibits gambling devices. It then filed a second lawsuit against PSP and several (now former) PSP officials (docketed at 222 MD 2022 ("2022 lawsuit")) (the Petitions for Review are attached hereto), claiming that POM was selectively prosecuted in violation of its right to equal protection, seeking damages. Both lawsuits are stayed pending appeals to the Pennsylvania Supreme Court.[1]

During the pendency of the 2018 lawsuit, POM propounded numerous discovery requests upon PSP. POM requested: documents related to investigations

---

[1]    The Pennsylvania Supreme Court is currently reviewing whether POM's devices constitute unlawful gambling devices or slot machines under the Pennsylvania Crimes Code (Title 18) and whether they constitute slot machines under the Pennsylvania Gaming Act (Title 4). There are several dockets pending appeal, including from forfeiture actions.

involving its devices and those of other "skill game" manufacturers; "all PSP training materials concerning or relating to gambling devices, including but not limited to investigating, identifying, and/or seizing said devices"; "all communications between PSP and any local law enforcement or District Attorney's Office concerning or relating to gambling devices"; and, documents regarding the identity of officers that directed certain seizures of POM devices. PSP objected to the discovery and filed an application for protective relief.

In its Order dated May 25, 2023, the Commonwealth Court granted PSP's request for protective relief, ruling that PSP was not required to produce unadjudicated investigative cases involving POM devices, communications with other law enforcement agencies regarding such devices, or any training materials. *See* May 25, 2023 Protective Order. The lawsuit was stayed on August 14, 2023, pending related appeals to the Supreme Court of Pennsylvania (of cases docketed at 707 CD 23 and 761 CD 23).

As to the 2022 lawsuit, shortly after filing the Petition for Review on May 9, 2022, POM served discovery requests upon PSP. Again, POM sought broad categories of information, including: "[a]ll documents reflecting any correspondence or communication between BLCE and any District Attorney's Office regarding skill games, including but not limited to POM's Pennsylvania Skill game," and "[a]ll training materials regarding skill games, including but not limited to training

materials identifying Pennsylvania Skill games." On July 15, 2022, the Commonwealth Court granted PSP's request to stay discovery. On July 10, 2023, the Commonwealth Court stayed the lawsuit pending the outcome of the Supreme Court's review of the legality of POM's devices. On January 16, 2024, the Commonwealth Court denied POM's application to vacate the stay, which will remain in place until a decision from the Supreme Court.

<u>POM's Third-Party Subpoenas to PSP</u>

Plaintiff served a document subpoena on PSP in November 2022, setting forth thirteen requests for documents. Despite propounding objections to the majority of these requests, and not being a party to this litigation, PSP proceeded, in good faith, to provide POM with over six thousand pages of documents, including e-mails between PSP and specific individuals requested by POM, and copies of closed and adjudicated investigative case files involving POM's devices. Those documents evidence *no link* between PSP and Eckert, Seamans, Cherin & Mellott, LLC ("Eckert Seamans"). This effort took dozens of hours to complete over the course of weeks, at the expense of limited governmental resources.

For over a year and a half, POM continued to demand more from PSP. Particularly, unadjudicated investigative case files and documents and training materials that are directly protected by a protective order entered by the Commonwealth Court in the litigation in which PSP *is* a party. Since 2022, PSP has

maintained its objections to further production of documents. PSP articulated to POM its concern that POM is using this litigation to end-run the protective order entered against it in Commonwealth Court. PSP repeatedly reminded POM of its obligations under Federal Rule of Civil Procedure 45 to make efforts to avoid imposing an undue burden.

In May 2023, POM followed-up with a subpoena seeking corporate designee testimony. This subpoena sets forth a sweeping list of 25 matters for examination for which it directs PSP to produce a witness. The topics include:

- "A description of all Communications between You and any other person relating to POM, 'Pennsylvania Skill,' 'PA Skill,' 'Queen of Virginia'."
- "Your policy/agency position regarding the legality of any POM game and/or skill game…"
- "A description of all training received by the Vice Unit or other specific Pennsylvania State Police Units related to games of skill, skill games, 'gray market' gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training."
- "All seizures of POM games by You, their locations from the time of seizure to present, any testing or analysis of such games and all chain of custody documents related thereto."
- "A description of any evidence, and when and how acquired, regarding the play and operation, or the presence or absence of skill, of a POM game or POM software."
- "A description of all communications, writings, policies or directives prepared by Major Scott Miller regarding Skill games or POM games."
- "A description of all Communications relating to Captain James Jones and Pace-O-Matic, POM, 'Pennsylvania Skill,' 'PA Skill,' or 'Queen of Virginia'."

PSP objected to the subpoena and endeavored to engage in discussions regarding reasonable parameters for the deposition, beginning with the May 25, 2023 protective order as a touchstone governing testimony. POM would not agree to any parameters or that it would abide by the protective order, and also continued seeking more documents.

Over a year after serving the subpoena, on July 3, 2024, without notice to PSP (and without even so much as making this Honorable Court aware of the existence of the subpoenas), POM of PA filed an application for relief from the protective order in Commonwealth Court (in a case that is and was stayed) casting PSP in a negative light, and representing, among other things, that PSP has "refused" to comply with discovery in this matter such that relief from the protective order was necessary. The Commonwealth Court denied that application for relief. The protective order remains intact as does the stay of the litigation pending a decision from the Pennsylvania Supreme Court.

PSP has now filed a motion requesting that the subpoena be quashed or that protective relief be afforded. POM has already actually imposed an undue burden on PSP by using the subpoenas to disparage PSP (the representations regarding PSP are part of the record in the Commonwealth Court). Furthermore, the list of 25 topics is burdensome and overly broad on its face, placing PSP in an impossible position to testify as to every conceivable topic related to POM and its devices, including

regarding its impressions and defenses in the state litigation brought by POM, and information protected by a protective order. PSP now files this brief in support of their motion, requesting, chiefly, that the corporate designee subpoena be quashed.

## QUESTIONS PRESENTED

A.    Must POM's subpoena be quashed because it is not crafted with reasonable particularity, seeks disclosure of privileged and protected information, and imposes an undue burden?

B.    Alternatively, must protective relief be granted?

**[Suggested Answers:    YES]**

## ARGUMENT

A.    **POM's subpoena "must" be quashed because it is not crafted with reasonable particularity, seeks disclosure of privileged and protected information, and imposes an undue burden**.

Federal Rule of Civil Procedure 30(b)(6) requires that a party seeking corporate designee testimony notice the matters for examination with "reasonable particularity." F.R.C.P. 30(b)(6). Further, Rule 45, governing subpoenas, provides that a subpoena "must" be quashed where it "requires disclosure of privileged or other protected matter" or "subjects [the target] to undue burden." F.R.C.P. 45(d)(3)(A)(iii)-(iv). Here, POM's subpoena "must" be quashed because, it requires the disclosure of privileged and protected matters and because it has caused undue burden and will cause undue burden with its excessive number of broad topics.

The subpoena lacks any particularity and is unduly burdensome on its face. PSP is not a party to this litigation. Yet, POM has propounded a notice with an astonishing 25 matters for examination (not including sub-parts). POM is attempting to have PSP designate a representative to undertake the impossible task of educating itself as to every conceivable communication and document related to POM, in addition to providing testimony as to PSP's position and strategies regarding its BLCE division and all forfeiture actions involving skill games, in general. POM's requests would require disclosure of PSP's litigation strategy, and mental impressions and attorney work product for its forfeiture actions and the state court lawsuits filed by POM. POM demands all of this testimony in total disregard of the protective order in Commonwealth Court that protects, among other things, unadjudicated files and training documents.  The subpoena "must" be quashed.

Courts have quashed subpoenas for 30(b)(6) testimony containing just one overly-broad topic. For instance, in *Fifth Third Bank v. Westwood Zamias Ltd. P'ship*, 2019 WL 1383713, at *2 (W.D. Pa. Feb. 6, 2019), the Western District of Pennsylvania quashed a subpoena for corporate designee testimony regarding "all topics in or related to Plaintiff's Complaint." The court noted that, "[a]lthough Plaintiff's Complaint is relatively brief, it covers a number of different topics" and, among other things, it included "a series of agreements between the parties spanning a ten-year period, including a loan and subsequent modifications and assignments."

*Id.* The court opined that "the Notice is thus an overly broad request with no clear limitations to assist Plaintiff in preparing its designee." *Id.*; *see also Barrouk v. PNC Bank, N.A.*,2015 WL 9480027, at *5 (M.D. Pa. Dec. 29, 2015) (granting protective relief related to broad corporate designee subpoena that was unduly burdensome including where it asked for changes over several years to a Code of Ethics).

Courts "take a dim view of topics that would require a corporate representative to devote unreasonable time to preparation, to master detailed data-based subject matter, or testify about all of an organization's answers to one or more sets of discovery covering varied subject matter." *Fed. Trade Comm'n v. Am. Future Sys.*, 2022 WL 1437562, at *2–3 (E.D. Pa. Apr. 8, 2022), *R&R adopted as modified sub nom.* 2022 WL 1423661 (E.D. Pa. May 5, 2022)(internal citations omitted)(citing *Michilin Prosperity Co. v. Fellowes Mfg. Co.*, 2006 WL 1441575, at *2 (D.D.C. May 23, 2006)(denying motion for Rule 30(b)(6) deposition that would require witness to review approximately 2,000 pages of documents); *W Holding Co. v. Chartis Ins. Co.*, 300 F.R.D. 43, 46 (D.P.R. 2014) (striking topics "so broad as to be meaningless," such as "the FDIC's data relating to the financial situation of the banks in Puerto Rico")). "Topics that include phrases such as 'including but not limited to, 'all information related to,' 'all facts supporting,' and other similarly expansive language are 'red flags' of overbreadth because they by their nature blur the boundaries of a witness's testimony." *Am. Future Sys., supra*, at *2-3.

"Varied" requests for testimony indicate lack of particularity. In *Unzicker v. A.W. Chesterston Co.*, 2012 WL 1966028, at \*5 (E.D. Pa. May 31, 2012), the court quashed a notice that requested testimony on disparate topics including multiple products manufactured over thirty years, noting that "even a cursory review" evidenced that it was "seriously overbroad." *See also In re Asbestos Prod. Liab. Litig. (No. IV)*, 2012 WL 3104833, at \*2 (E.D. Pa. July 31, 2012)("Noticing a 30(b)(6) deposition to obtain testimony from a defendant identifying all asbestos products it supplied, sold or distributed over a sixty plus year period is not proper.").

With respect to subpoenas aimed at a governmental agency, there are additional considerations in-play. For example, in *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809, at \*4–5 (D. Md. June 22, 2010), the court entered a protective order guarding the EEOC against an overly broad notice for corporate designee testimony setting forth 13 topics related to its files and procedures. The court indicated that numerous tribunals have "concluded that 30(b) (6) deposition notices directed to a law enforcement agency … would not be permitted given a) the agencies' lack of independent knowledge of the transactions at issue and that the information the noticing party was seeking was generated by the agencies' counsel or counsel's agents in preparation of trial, b) the consequent high potential for intrusion into attorney work product, c) the undue burden and inefficiency entailed to prepare a lay witness to engage in rote

11

memorization and recitation of the evidence in the case, and d) the availability of alternative means to secure legitimate factual discovery."

Pursuant to this case law, POM's corporate designee subpoena "must" be quashed. Initially, the information requested is not directly relevant to this lawsuit. PSP is not a defendant, nor has POM evidenced a direct link between the Defendant and PSP, despite the production of over six thousand pages of documents. Rather, POM proffered that PSP has been manipulated by the Defendant through intermediaries. PSP is, thus, as admitted by POM, not proximately linked to the case. POM has not articulated how PSP falling victim to being "manipulated" by other third parties equates to POM deposing a PSP representative on every communication, document and file related to POM or a POM device.

Even assuming there was relevance (which is denied), the notice is still overly broad and unduly burdensome. It has the "red flags" noted in the caselaw. It contains numerous requests that state they are "including not limited to," and it seeks information such as "all communications" regarding POM, a "description of all training," and "a description of any actions taken" to learn software, among other examples. *See*, *e.g.*, 30(b)(6) Notice ¶¶1, 2, 4, 6, 7, 8, 10, 11, 17, 20-22, 24, 25. The demand that someone testify regarding all of PSP's evidence against POM in any forfeiture action stands alone as herculean. It would be an impossible task to comply with the notice, requiring extensive rote memorization on every communication

related to POM, or every strategy or piece of evidence relating to a forfeiture actions, and on every action taken with respect to litigation. It is not crafted with reasonable particularity, as required by Rule 30(b)(6), even upon cursory review.

The subpoena also fails to comply with Rule 45 as it seeks protected information. It requests information directly guarded by the Commonwealth Court protective order. PSP has not waived its rights under the protective order. Rule 45 directs that a subpoena be quashed where it "requires disclosure of privileged or other protected matter" and there is no exception or waiver. F.R.C.P. 45(d)(3)(A). The subpoena seeks unadjudicated files, communications with other governmental agencies, and training materials in derogation of the protective order.

Additionally, POM, with POM of PA, has already caused undue burden on PSP and will continue to suffer harm. POM attempted to seek relief from the protective order through representing that PSP has not complied with discovery in this case. Although its effort failed, those representations are on the record. Further, PSP will suffer additional undue burden or prejudice if it is forced to testify as to POM's 25 topics because they relate to the litigation in which PSP is a party, and in which POM has, thus far, been unsuccessful in acquiring the information it seeks.

The case of *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *5 (M.D. Pa. Sept. 28, 2017) is instructive. In *Lakeview Pharmacy*, the defendant, a pharmaceutical benefits manager (PBM) sought to quash subpoenas

13

directed to third-party companies for 30(b)(6) testimony. The defendant respectively contracted with the companies to administer its benefit programs, with confidentiality agreements. The third-party companies were privy to reimbursement amounts and calculations that were of interest to the plaintiff. Defendant sought to quash the subpoenas arguing: 1) lack of relevance; 2) disclosure of "protected commercial information"; and 3) lack of purpose beyond harassment. *Id.* at *4. The Court ultimately quashed the subpoena as "disproportionate and unduly burdensome." *Id.* at *10.

Although relevance was demonstrated, the Court ruled that the plaintiff did not prove "proportionality." Third parties possessed the desired information, and the responsive information would contain "confidential information wholly unrelated to the underlying claims." *Id.* at *7. Moreover, exactly as in this case, the subpoena posed an undue burden because disclosing the information would lead to an "unfair advantage" for the defendant "not only in the instant litigation, but also in 'other litigation or contracting.'" *Id.* at *7. A protective order was insufficient to protect the defendants' interests from its competitor (plaintiff) because, as acknowledged by the Court, it would be "divorced from reality" to believe that either party would serve as a champion of the other's interests. There was a risk that "overly broad discovery" may "unfairly influence [plaintiff's] litigation strategy." *Id.* at *10.

So too here. The same reasoning applies in that—any marginal probative value derived from the subpoena is severely outweighed by disproportionality and undue prejudice. POM can and will use the information to gain an unfair advantage in the hard-fought state-court litigation. The notice contains 25 broad topics that go to the heart of the state court litigation. No protective order can adequately guard against misuse, as evidenced by POM's actions to-date. The subpoena is overboard, requests protected information, has caused and will cause an undue burden. It "must" be quashed pursuant to Rule 45.

B.    **<u>Alternatively, a protective order should be entered.</u>**

While the subpoena must be quashed, PSP is also entitled to protective relief pursuant to Rule 26(C) because the subpoena will cause, and has caused, annoyance, oppression, harassment, and undue burden and expense and is disproportionate to the needs of the case. POM should be required to lay a foundation and depose and obtain information from those who were allegedly "manipulating" PSP before embarking on a fishing expedition of PSP's documents regarding how it was purportedly "manipulated." Further, POM should be bound to the Commonwealth Court protective order, precluded from delving into cases or files that have not been produced, and be prohibited from seeking mental impressions or strategies related to state court lawsuits or forfeitures, among other protections.

## CONCLUSION

WHEREFORE, PSP respectfully requests that this Honorable Court grant its

Motion to Quash the Corporate Designee Subpoena.

**Respectfully submitted,**

**By:**  *s/ Nicole J. Boland*

**NICOLE J. BOLAND**
**Pennsylvania State Police**          **Assistant Counsel**
**1800 Elmerton Ave.**                 **Attorney ID 31406**
**Harrisburg, PA 17110**
**Phone: (717) 787-0338**              **BRENDAN J. O'MALLEY**
                                       **Chief Counsel**
**nboland@pa.gov**

**Date:  September 23, 2024**          *Counsel for Pennsylvania State Police*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PACE-O-MATIC, INC.,** | **:** | |
| **Plaintiff :** | | **No. 1:20-CV-292** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **ECKERT SEAMANS CHERIN &** | **:** | |
| **MELLOT, LLC, et al.** | **:** | |
| | **:** | |
| **Defendant :** | | |

**CERTIFICATE OF SERVICE**

I, Nicole J. Boland, Assistant Counsel for the Pennsylvania State Police,

hereby certify that on September 23, 2024, I caused to be served a true and correct

copy of the foregoing document to the following:

**VIA ELECTRONIC FILING**

**Jeffrey Jensen
Husch Blackwell
8001 Forsyth Blvd
Suite 1500
St. Louis, MO 63105
314-480-1500
jeff.jensen@huschblackwell.com**
*Attorney for POM*

**Abraham C Reich
Fox Rothschild LLP
2000 Market St.
10th Floor
Philadelphia, PA 19103
215-299-2090**

17

**Email: areich@foxrothschild.com**
*Attorney for Eckert Seamans*

 *s/ Nicole J. Boland*
**NICOLE J. BOLAND**