Received 7/20/2018 2:39:23 PM Commonwealth Court of Pennsylvania

Filed 7/20/2018 2:39:00 PM Commonwealth Court
503 MD 2018

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC | : |
| Petitioner, | : |
| v. | : No. ___MD 2018 |
| PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, | : |
| Respondent. | : |

## NOTICE TO PLEAD

To: PENNSYLVANIA STATE POLICE,
    BUREAU OF LIQUOR CONTROL ENFORCEMENT

You are hereby notified to file a written response to the enclosed petition for review within thirty (30) days from service hereof or a judgment may be entered against you.

{01442527;v1 }

Dated: July 20, 2018              s/ Paul G. Gagne/

Paul G. Gagne (No. 42009)
KLEINBARD LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: pgagne@kleinbard.com
*Attorney for Petitioner POM of*
*Pennsylvania, LLC*

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC | : |
| Petitioner, | : |
| v. | : No. ___MD 2018 |
| PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, | : |
| Respondent. | : |

## PETITION FOR REVIEW FOR DECLARATORY AND INJUNCTIVE RELIEF

Petitioner, POM of Pennsylvania, Inc. ("POM"), by and through its undersigned counsel, hereby brings this petition for review in the nature of a complaint for declaratory and injunctive relief, and in support hereof, avers as follows:

## I.    INTRODUCTION

1.    Petitioner POM distributes software for a skill-based video game machine, called the Pennsylvania Skill™ Amusement Device 402.49 PEN (the "Skill Game"), throughout the Commonwealth of Pennsylvania.

2.    It has previously been determined by a court of the Commonwealth that Petitioner's software is one in which the element of

{01442527;v1 }

skill rather than chance predominates, and therefore is not in violation of the Pennsylvania criminal statute regulating games of chance.

3. Notwithstanding the legality of the Skill Game, the Pennsylvania State Police ("PSP"), acting through its Bureau of Liquor control Enforcement ("BLCE"), has during the past year communicated to POM and others its opinion that all games of skill are illegal and that it intends to seize POM's machines from locations in which they are present, primarily taverns, restaurants and social clubs that serve alcohol under license from the Pennsylvania Liquor Control Board ("LCB").

4. On July 11, 2018, BLCE seized the Skill Game from a location in Bucks County.

5. The purpose of this Petition is to seek (i) a declaration that POM's Skill Game is a legal game of skill under Pennsylvania law and (ii) an injunction prohibiting PSP, whether acting through BLCE or otherwise, from threatening or continuing to carry out seizures, arrests, prosecutions and other enforcement actions against POM's skill-based machine.

## II.   JURISDICTION

6.   Petitioner files this petition in the Court's original jurisdiction seeking a declaratory judgment under the Declaratory Judgments Act, 43 Pa.C.S. § 7531, *et seq.*, and injunctive relief.

7.   This Court has jurisdiction under Section 761(a)(1) of the Judicial Code, 42 Pa.C.S. § 761(a)(1).

## III.   PARTY SEEKING RELIEF

8.   Petitioner POM is a limited liability corporation that sells the Skill Game throughout the Commonwealth of Pennsylvania.

## IV.   GOVERNMENT UNIT WHOSE ACTIONS ARE IN ISSUE

9.   Respondent PSP is the statewide law enforcement authority for the Commonwealth.

10.   Through the BLCE, PSP is responsible for, among other things, enforcing the Commonwealth's laws relating to the sale of alcohol. See 10 P.S. § 328.702.

## V.   MATERIAL FACTS

### A.   POM'S SKILL GAME

11.   POM's Skill Game is sold and distributed in the Commonwealth of Pennsylvania and is located primarily in taverns, restaurants and social clubs that serve alcohol under license from LCB.

12.   The Skill Game is a coin-operated video machine.

13.   The primary game the Skill Game offers is a "Tic-Tac-Toe" style puzzle, but the Skill Game also includes a potentially unlockable bonus session and a "Follow Me™" colored dot-matching second phase of game play.

14.   The Tic-Tac-Toe game features six different graphical themes that a player can select, which include "Bombs and Bombshells," "Cocktail Cove," "Pirate's Prize," "Pirates," "Lucky Fruit," and "Living Large."  While the graphics and some payout amounts differ among the various themes, the gameplay is functionally equivalent in all themes.

15.   A player cannot access the bonus session or the Follow-Me™ second phase of play on the Skill Game without first playing the Tic-Tac-Toe game.

16.   When the Tic-Tac-Toe game is initiated, nine reels arranged in a three-by-three grid are spun.

17.   When the wheels stop spinning, nine symbols based on the player's chosen theme are displayed.

18. The pattern that is displayed is selected from a finite pool of multiple tens of thousands of puzzles.

19. Once the reels are spun, the player has thirty seconds to change one of the symbols to a "Wild" symbol in order to complete one or more rows in the grid.

20. The most advantageous spot in which to place the "Wild" symbol depends on whether multiple rows can be completed and the value of the symbols in the row or rows that were completed.

21. Failure to place the "Wild" symbol at all within the thirty-second time limit will result in a loss, however, because the Skill Game does not generate automatic wins.

22. The Skill Game also has a bonus session that can be triggered under certain circumstances by successful completion of the Tic-Tac-Toe game.

23. The bonus sessions differ among the various themes that are available on the Skill Game. "Bombs and Bombshells," "Cocktail Cove," and "Pirate's Prize" have skill-based bonus play (shooting for "Bombs and Bombshells" and "Pirate's Prize," picture-taking for "Cocktail Cove"), during which the player can earn less than the maximum bonus

available, including zero, based on how well he or she performs during the bonus session. The bonus sessions for "Pirates," "Lucky Fruit," and "Living Large" consist of a process that delivers the bonus points to a player that were already determined by the outcome of the Tic-Tac-Toe game. For these themes, the bonus session simply is an entertaining way to deliver to the player 100% of the reward the player already earned in the Tic-Tac-Toe game.

24.  If a player executes perfect skill and still fails to win at least 105% of the amount paid to play the Tic-Tac-Toe game, the player is given the option of selecting the Follow-Me™ phase of play.

25.  The Follow-Me™ second phase of game play begins with a three-by-three grid of colored dots. The dots flash in a random sequence that the player must repeat.

26.  The player needs to follow the sequences for 25 rounds of play, with each sequence adding another circle.

27.  If ultimately successful, the player is awarded with a combined total of 105% of the original amount spent to play.

28. The Skill Game is not an illegal gambling device under Pennsylvania criminal law. To the contrary, it is a legal game of skill. See *infra*, §VII(A)(1).

**B.    BLCE's Enforcement Actions**

29. On December 21, 2017 and again on January 4, 2018, BLCE directed letters to certain liquor licensees in the Commonwealth in which it threatened criminal and/or administrative sanctions against any liquor licensee in possession of a skill game. (True and correct copies of BLCE's letters are attached hereto, and made a part hereof, as Exhibits "A" and "B").

30. In addition, high-ranking PSP officials have advised various persons throughout the Commonwealth, including customers and potential customers in public forums, that all skill games are illegal.

31. Specifically, BLCE has in the last several months asserted that games of skill, including Petitioner's Skill Game, are illegal during small games of chance presentations hosted by Pennsylvania legislators.

32. On multiple occasions in the past several months, BLCE agents have visited users of the Skill Game and threatened them with

seizure of the Skill Game and suspension or revocation of their LCB-issued liquor licenses.

33. On July 11, 2018, BLCE seized five Skill Games from a location in Fairless Hills, Bucks County. BLCE also seized currency and other property. A copy of the July 11 Receipt for Property Seized is attached hereto as Exhibit "C".

34. Respondent is a proper party to this action. PSP, through BLCE, has authority to enforce the Commonwealth's liquor laws. See 10 P.S. 328.702. Respondent also has authority to seize property pursuant to 42 Pa.C.S. § 5803.

## VI.  AVERMENTS OF LAW

### A.  The Skill Game Is Legal Under Pennsylvania Law

#### 1.  The Skill Game Is Not An Illegal Game of Chance.

35. The Skill Game is not an illegal game of chance under Pennsylvania law.

36. The criminal statute that makes a gambling device illegal, 18 Pa. C.S. § 5513, provides as follows:

> Gambling devices, gambling, etc.
>
> (a) Offense defined. --A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

*See* 18 Pa. C.S.A. §5513(a).

37.   A "device to be used for gambling purposes" is not defined by the statute but Pennsylvania courts have found that a machine is a gambling device per se and subject to seizure if it can be used for no purpose other than gambling.

38.   The proper inquiry is "whether the machine is so intrinsically connected with gambling as to constitute a gambling device per se."

39.   The term "gambling" has been interpreted by Pennsylvania courts as requiring three elements: (1) consideration, (2) a result

determined primarily by chance rather than skill, and (3) reward. If all three of these elements are not present in a device, then it is not a gambling device per se. The Commonwealth has the burden of proving the per se nature of the accused machine.

40.    Application of the relevant Pennsylvania law demonstrates that the Skill Game is not a gambling device per se.

41.    For purposes of this Petition only, POM does not dispute the consideration and reward elements.

42.    Consequently, the question under Section 5513 is whether the Tic-Tac-Toe, bonus and Follow-Me™ phases of play on the Skill Game constitutes a game of chance or skill.

43.    Under Pennsylvania law, a given game may feature elements of both chance and skill, but it is the element that predominates that determines whether a game is a game of skill, and therefore legal, or a game of chance, and therefore an illegal gambling device.

44.    The Skill Game, as described in Section VI(A), *supra*, is a game in which skill predominates.

45. The Court of Common Pleas of Beaver County has already determined that the POM game was a game in which skill predominated and, consequently, was not a gambling device per se. [1] *See In re: Pace-O-Matic Equipment, Terminal I.D. No. 142613*, M.D. No. 965-2013 at p.p. 7-12 (Beaver Co. C.C.P. 2014) (a true and correct copy of the court's memorandum opinion and order is attached hereto, and made a part hereof, as Exhibit "D").

46. After the Beaver County decision, the District Attorney for Centre County issued a letter that stated, in light of the Beaver County opinion, her office would not confiscate the same machine. *See* December 3, 2015 Letter from the Office of District Attorney for Centre County (a true and correct copy of this letter is attached hereto, and made a part hereof, as Exhibit "E"). In addition, the District Attorney for Lawrence County issued a letter stating that for the reasons set forth in the Beaver County opinion, "the Pace-O-Matic machine is not considered a game of chance under Pennsylvania gaming laws." *See*

---

1. The game involved in the Beaver County case was POM's Pennsylvania Skill™ Amusement Device SKL 402.44 PEN. The current Skill Game is built off of a newer version of POM's software, which provides substantially the same actual game play as the software version at issue in the Beaver County case. The reasoning of the court in Beaver County applies equally in this case.

October 12, 2016 Letter from the District Attorney for Lawrence County (a true and correct copy of this letter is attached hereto, and made a part hereof, as Exhibit "F").

47. Since the Skill Game is a game in which skill predominates, it is not an illegal gambling device.

48. For all of the above reasons, the Skill Game is not an illegal device subject to enforcement action by Respondent.

## COUNT I—DECLARATORY RELIEF

49. The foregoing Paragraphs are incorporated by reference as if set forth fully herein.

50. A party may obtain a declaration of existing legal rights, duties, or status of parties by filing a petition under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531, *et seq.*

51. The purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." *See Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 874 (Pa. 2010) (citing 42 Pa.C.S. § 7541(a)).

52. BLCE has threatened to seized and is now seizing POM's skill-based machine in the Commonwealth of Pennsylvania.

53. POM designs and sells the essential components of the Skill Game, which is manufactured and distributed by others. POM stands behind the Skill Game and assures distributors and assures customers that the Skill Game is legal under state law and regulations, in Pennsylvania. POM has the right to assume the defense of the legality of the Skill Game and to defend customers against seizures of the Skill Game and other enforcement actions and has been exercising that right to-date in Pennsylvania.

54. If enforcement actions in Pennsylvania are permitted to continue, POM's business in the Commonwealth will be destroyed and its goodwill and reputation throughout Pennsylvania and nationwide will be irreparably damaged.

55. There are in excess of 9,000 of the Skill Game installed in Pennsylvania.

56. PSP, acting through BLCE, is acting outside of its legal authority and is violating POM's rights to property and reputation under the Pennsylvania Constitution.

13

57. Accordingly, there exists a clear legal dispute between POM and Respondent.

58. In light of Respondent's recent seizure, the danger to POM is immediate.

59. The harm to POM caused by seizure of the Skill Game and arrest and prosecution of operators is irreparable.

60. POM is without an adequate remedy at law.

61. A declaratory judgment from the Court would resolve the present legal controversy between the parties.

62. POM is entitled to a declaratory judgment to resolve the present legal dispute.

WHEREFORE, Petitioner POM requests that the Court enter a declaratory judgment in its favor and grant the following relief:

(1) declare that the Skill Game is a legal device under Pennsylvania law;

(2) declare that Respondent BLCE lacks the power and authority to seize or threaten to seize the legal Skill Game, and/or to initiate administrative or criminal proceedings with regard to the Skill Game;

{01442527;v1 }                    14

(3)    permanently enjoin Respondent from seizing or threatening to seize the Skill Game, and/or initiating administrative enforcement or criminal proceedings with regard to the Skill Game; and

(4)    such other and further relief as this Court deems just and proper.

Furthermore, pending the granting of a declaratory judgment, POM requests that the Court enter a preliminary injunction enjoining Respondent from: (i) seizing or threatening to seize the Skill Game; (ii) initiating administrative enforcement or criminal proceedings with regard to the Skill Game; and/or (iii) arresting or prosecuting any persons in connection with operation of the Skill Game.

Respectfully submitted,

Dated: July 20, 2018

_____s/ Matthew H. Haverstick_____
Matthew H. Haverstick (No. 85072)
Eric J. Schreiner (No. 76721)
Paul G. Gagne (No. 42009)
KLEINBARD LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Email:mhaverstick@kleinbard.com
        eschreiner@kleinbard.com
        pgagne@kleinbard.com
*Attorneys for Petitioner POM of Pennsylvania, LLC*

## VERIFICATION

I, Jeff McGinness, verify that I am Director of State Compliance for Petitioner and that the statements made in the foregoing Petition for Review are true and correct based upon my personal knowledge or information and belief. I understand that false statements therein are subject to penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: July 16, 2018

Received 7/20/2018 2:39:23 PM Commonwealth Court of Pennsylvania

Filed 7/20/2018 2:39:00 PM Commonwealth Court
503 MD 2018

# EXHIBIT A

REDACTED



# EXHIBIT B



**PENNSYLVANIA STATE POLICE**
BUREAU OF LIQUOR CONTROL ENFORCEMENT
3655 VARTAN WAY
HARRISBURG, PA 17110
OFFICE OF THE DIRECTOR
January 4, 2018

PHONE: 717-540-7410
FAX:    717-540-7452



Dear Liquor Licensee:

This correspondence is to advise you an Officer from the Pennsylvania State Police, Bureau of Liquor Control Enforcement, has observed a device within your Licensed Premises that is suspected to be used for illegal gambling.

Pennsylvania law limits gambling and gambling devices to entities approved by the Pennsylvania Gaming Control Board, the Pennsylvania Lottery, or the Small Games of Chance Act.

If you or your business are found to be participating in illegal gambling, you, your employees, and your liquor license may be subject to criminal and/or administrative sanctions.

Questions concerning this correspondence should be directed to the Director, Operations Division 717-540-7410.

Sincerely,

MAJOR S.T. Miller

Major Scott T. Miller
Director
Pennsylvania State Police
Bureau of Liquor Control Enforcement

*An Internationally Accredited Law Enforcement Agency*

# EXHIBIT C

SP 3-444 (7-2017)

## PENNSYLVANIA STATE POLICE
## RECEIPT FOR PROPERTY SEIZED
## PURSUANT TO § 5803 42 PA.C.S.A.

The following property was taken/seized by Pennsylvania State Police pursuant to the Forfeiture of Assets Act, 42 Pa.C.S.A § 5803. You are hereby notified that you have a right to seek the return of the seized property under 42 Pa.C.S.A. § 5806.

CAD/Case No.: _PA 17-891212_    Property Inventory No.: _____

Investigating Member Name/Badge No.: _Ltd Paul Schoppe 9403_

Member who Seized Property Name/Badge No.: _Tpr Joseph Krawiecki_

Date/Time Seized: _7/11/18 @ 1632_

Property Taken/Seized From:    Print Name: _Charles Gavisanay Jr_

Signature: _____

The following items have been seized:

1. _Facsomatic Pennsylvania Skill VSM (5)_
2. _Red Bank Bag_
3. _Beaver County Court Case Paperwork_
4. _Payout receipts (11)_
5. _$995.00 Recovery_
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.

(Must be completed in duplicate - attach one copy to the

# EXHIBIT D

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY

PENNSYLVANIA

CRIMINAL DIVISION

In re:                                              :
                                                    :
                                                    :
PACE-O-MATIC, INC. EQUIPMENT            :        M.D. 965-2013
                                                    :
                                                    :
TERMINAL I.D. NO. 142613               :

**MEMORANDUM OPINION AND ORDER**

H. KNAFELC, J.                                       December 23rd, 2014

## I.    PROCEDURAL HISTORY

On November 19, 2013, agents of the Pennsylvania Bureau of Liquor Control Enforcement seized a Pace-O-Matic, Inc. video game device from the American-Italian Club located in Aliquippa, Beaver County. The manufacturer of the device filed a timely Petition for Return of Seized Property and requested a post-seizure hearing pursuant to Pennsylvania Rule of Criminal Procedure 588. This Court held a hearing on the matter on September 26, 2014. The sole purpose of that hearing was to gather evidence as to whether the confiscated property constituted a gambling device per se. The evidence fails to demonstrate that the machine is a gambling device per se, and Petitioner's motion for its return is GRANTED.

During the hearing, this Court heard testimony on the operation of the confiscated device. The Court heard testimony on two issues: first, whether Petitioner was entitled to lawful possession of the res; and second, whether the games installed on the device were games of

DEC-24-2014 WED 12:23 PM EddyDeLucaGravinaTownsen    FAX NO. 412 281 3537    P. 03

chance or games of skill. Both parties stipulated that the other elements of a gambling device per se, consideration and reward, were satisfied. The device requires a player to put in cash in order to access the games installed on the device. Successful play has the potential to reward a player with more credits than he or she put into the device. Thus, this Court is tasked only with resolving whether the games on the device are games of skill or games of chance. Because of the level of interactivity between the game and the player, as well as the gameplay mechanics, the evidence fails to show that the games included on the device—Tic-Tac-Toe, unlockable bonus game, and the "Follow-Me" mini-game—are anything other than games of skill. The device is therefore not a gambling device per se and shall be returned to Pace-O-Matic, Inc.

## II.    STATEMENT OF FACTS

The property seized in this case is a coin-operated table top machine that offers a Tic-Tac-Toe puzzle, an unlockable bonus game, and a "Follow-Me" mini-game. The player uses a touch screen navigate through the system. A player initiates the game by inserting money into the device. A player can place a bet of 40, 80, 120, 160, or 200 "points." One point equals one cent. A player then proceeds to select one of three themes. These are "Bombs and Bombshells," "Pirates Prize," and "Cocktail Cove." While the graphics and some pay amounts differ depending on which theme the player chooses, the gameplay is functionally equivalent among the three themes. The player has access to the same features regardless of which theme he or she chooses, and the themes will thus be treated interchangeably.

The first game that the player interacts with is the Tic-Tac-Toe puzzle. This is the primary game included on the device, and a player cannot access the other features of the game without first playing the Tic-Tac-Toe puzzle. Upon initiating gameplay, the game spins each of the nine reels arranged in a three-by-three grid on the screen. After the reels stop spinning, the

player has ten seconds to select one of the nine cells to change a symbol in that position to a wild symbol. The player is tasked with choosing the most advantageous spot to place the wild. Whether one spot is more advantageous than another depends on the value of the symbols in the row, column, or diagonal that was completed, and whether completion of one row, column, or diagonal completes another. If the player does not make a selection in the allotted time, no wild symbol will be placed on the screen. Because a random number generator excludes an automatic winning game, failure to place the wild will always result in a loss for the player. Each game will have at least one spot where placing the wild will result in a nonzero score, and no game will be completely unwinnable.

A player has the opportunity to access a bonus game while playing the Tic-Tac-Toe puzzle. Certain symbols in the three-by-three grid have the potential to unlock the bonus game. A player must align three bonus symbols in a row, column, or diagonal on the three-by-three grid. Where the player manages to place a wild in the proper position, the game awards the player with a bonus shooting game. There are slight differences in the bonus games depending on the theme chosen, but the core gameplay mechanics of the three bonus games are virtually identical, and will be treated in the same manner. The bonus games are shooting-style games. Targets appear at random positions across the screen, and the object of the bonus game is to target all of the symbols on the touch screen during the time allotted (30 or 45 seconds, depending on the theme chosen). The speed with which the targets appear on the screen and the fact that they are scattered about the screen provides the game's challenge. The player is rewarded with points depending on how many of the symbols he or she was able to target and touch.

DEC-24-2014 WED 12:24 PM EddyDeLucaGravinaTownsen       FAX NO. 412 281 3537         P. 05

If, during the Tic-Tac-Toe game, the player wins an amount that is less than 104% of the purchase price to play the game, the player is afforded the option of selecting the "Follow-Me" mini-game. A player who chooses to proceed with the Follow-Me feature is presented with a three-by-three grid of colored dots. Essentially, the Follow-Me feature is a memory game. The dots flash in a random sequence which the player must repeat. Starting with one circle flashing, the player will need to follow the correct sequence for a total of forty rounds of play, with each sequence adding another circle. If a player successfully follows the pattern each time, the player is awarded with 104% of his or her original wager. For example, if the player had wagered 40 credits, successful completion of the Follow-Me mini-game would result in a payout of 42 credits.

## III.    LEGAL BACKGROUND AND ANALYSIS

A motion for return of property pursuant to Rule 588 is intended to return goods to a person aggrieved by a search and seizure based upon the right to lawful possession and the non-contraband status of the goods. Pa. R. Crim. P. 588; *Com. v. Pomerantz*, 573 A.2d 1149, 1150 (Pa. Super. Ct. 1989). Rule 588 provides, in pertinent part, the following:

**Rule 588. Motion for Return of Property**

(A)    A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B)    The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

A petitioner's motion for return of property must, at a minimum, allege that the petitioner is entitled to lawful possession of the property at issue. *Pomerantz*, 573 A.2d at 1150. The

petitioner must prove that he is entitled to possession by a preponderance of the evidence. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa. Super. Ct. 2009). A preponderance of evidence standard is tantamount to a "more likely than not" standard. *Com. v. $6,425.00 Seized from Esquilin*, 880 A.2d 523 (Pa. 2005).

Where a petitioner meets the minimal burden of establishing entitlement to lawful possession, unless there is countervailing evidence to defeat the claim, the moving party is entitled to the return of the identified property. *Ibid.* The Commonwealth must prove the per se nature of machines seized as gambling devices by a preponderance of the evidence. *Com. v. Irwin*, 636 A.2d 1106, 1107 (Pa. 1993).

A machine is a gambling device per se if three elements are present: (1) consideration, (2) result determined by chance rather than skill, and (3) reward. Because both the Petitioner and the Commonwealth have stipulated that the machine meets the consideration and reward elements, only the second element—whether the result is determined predominantly by chance or skill—will be addressed in depth.

That successful play is determined by chance rather than skill is an element essential to a finding that a machine is a gambling device per se. *Com. v. Two Elec. Video Poker Game Machs.*, 465 A.2d 973, 977 (Pa. 1983). Courts must determine in each case the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome. *Ibid.* In order for a game to constitute gambling, it must be a game where chance predominates rather than skill. *Ibid.* A showing of a large element of chance, without more, is not sufficient, and the outcome need not be wholly determined by skill in order for a machine to fall outside the gambling per se category. *Ibid.* The mere fact that a machine

involves a substantial element of chance is insufficient to find that a machine a gambling device. *Ibid.*

A game decided predominately on the basis of probability rather than any real input of skill from a player will be a game of chance. The level of interactivity and the consequences of a player's choices in playing the game are relevant in determining whether the game is one of chance or skill. *See id.* at 976 (noting that while skill, in the form of knowledge of probabilities, can improve a player's chances of winning a video poker game, chance ultimately determines the outcome because chance determines the card dealt and the cards from which one can draw); *compare Com: v. Dent*, 992 A.2d 190 (Pa. Super. Ct. 2010) (holding that although skill can determine the outcome in a poker game, players are still subject to defeat at the turn of the cards), *with Am. Amusements Co. v. Neb. Dep't of Revenue*, 807 N.W.2d 492 (Neb. 2011) (noting that because the gameplay in a tic-tac-toe puzzle was under the control of the player and not the machine, the game was one of skill rather than chance).

### A.    Lawful Possession

The initial burden is on the Petitioner, Pace-O-Matic, Inc., to prove that it is entitled to lawful possession of the res at issue by a preponderance of the evidence standard. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa. Super. 2009). Petitioner has met that burden here. The device at issue is a coin-operated tabletop video game machine manufactured by Pace-O-Matic, Inc. The fact that Petitioner has manufactured, designed, and provided the source code for the machine makes it more likely than not that Petitioner is entitled to lawful possession of the video game machine at issue.

### B.    Gambling Device Per Se

Upon a showing of lawful entitlement, the burden shifts to the Commonwealth to prove by a preponderance of the evidence that the video game machine seized is contraband. *Com. v. Irwin*, 636 A.2d 1106, 1107 (Pa. 1993). Specifically, the government must show that the video game is a "gambling device per se." *Ibid*. In determining whether a machine can be seized, the machine must be so intrinsically connected with gambling as to constitute a gambling device per se. This intrinsic connection is met where three elements are present: (1) consideration, (2) result determined by chance rather than skill, and (3) reward. *Ibid*. The parties in this case have stipulated that, because a player must insert money to begin play and is enticed to play by the promise of a payout, the first element, consideration, and the third element, reward, are met. The only issue remaining is whether successful play is determined predominantly by skill or chance.

There is no doubt that the games at issue contain elements of skill and chance. It is therefore the task of this Court to determine, on balance, whether skill or chance is the dominant factor in successful play. The operation of the machine and the way a player interacts with the machine must be evaluated. As noted, the machine contains the following features: (1) a Tic-Tac-Toe puzzle; (2) an unlockable bonus shooting game; and (3) a "Follow-Me" mini-game. The extent to which chance and skill decide the outcome of each game must be evaluated.

### 1.    Tic-Tac-Toe Puzzle

The parties disagree on whether skill or chance dominates the outcome of the Tic-Tac-Toe puzzle. The Commonwealth asserts that the skill required to place the wild symbol in a spot is outweighed by the chance determination of the puzzle itself. This Court respectfully disagrees with the Commonwealth's position. Although there often is, as the Commonwealth points out, an "obvious" position where placement of the wild would generate a nonzero score, several puzzles

have a position where placement of the wild will lead to a more advantageous score. It takes skill for a player to recognize both which symbols are most advantageous to his or her payout and which position will maximize the player's score. A player who lacks the skill to recognize that the placement of a wild symbol in a particular position will lead to the completion of two or three rows, columns, or diagonals will not achieve as high a score as one who does recognize those patterns. Were the game one predominantly based on chance, one would reasonably expect that a skilled player and an unskilled player would stand to gain roughly the same score. However, a more skilled player is much more likely to achieve a greater score than an unskilled player, which augurs in favor of holding that the game is one of skill, not chance.

The Commonwealth places heavy emphasis on the fact that the device utilizes a random number generator to generate the puzzle itself. However, the fact that a machine utilizes a random generator, without more, is insufficient to push this game into the realm of chance. The function of the random number generator is not to determine whether player wins or loses, but merely to determine which puzzle within a finite pool of puzzles will be presented to the player. The random number generator simply constructs the field on which the player will be playing. It establishes the constraints in which the player must operate to receive the most points possible. Additionally, the generation of a puzzle is not a purely random event. Each puzzle presented to the player has the possibility of a win, and the player will not be presented with a puzzle that is already solved. Thus, the purpose of the random number generator is only to choose, at random, which of a large—yet finite—pool of puzzles to present to the player. Even if the presentation of the puzzle were a "substantial element of chance," this, without more, is insufficient to a finding that the Tic-Tac-Toe game is a game of chance. *Com. v. Two Elec. Video Poker Game Machs.*, 465 A.2d 973, 977 (Pa. 1983).

Even more essential to the analysis than how the game is constructed and presented is the gameplay itself. During the course of play, the element of skill predominates and determines the outcome to a much higher degree than chance. It is up to the player to choose which spot to place the wild in order to achieve the most advantageous score. Our Superior Court's holding in *Dent* is instructive. There, the Court held that Texas Hold 'Em is predominantly a game of chance. *Com. v. Dent*, 992 A.2d 190 (Pa. Super. Ct. 2010). The Court placed great weight on the fact that while skill can determine the outcome in a Texas Hold 'Em poker game, "players are still subject to defeat at the turn of the cards." *Id.* at 196. In the Tic-Tac-Toe game at issue here, the players are not subject to victory or defeat at the spin of the reels. The game's code precludes automatic victories and automatic defeats. Unlike a traditional poker game, the players of the Pennsylvania Skill game are not at the mercy of the hand they are dealt. Every puzzle is winnable, and some have higher wins depending on whether the player has the skill to recognize the most advantageous spot to place the wild. In this game, the player's choices are the "instrumentality for victory"—in sharp contrast to the capricious nature of card dealing and shuffling present in a traditional game of Texas Hold 'Em. *See ibid; see also Am. Amusements Co. v. Neb. Dep't of Revenue*, 807 N.W.2d 492, 504 (Neb. 2011) (holding that where a puzzle is more controlled by the player than not, it is predominantly a game of skill).

This Tic-Tac-Toe puzzle is also different from the devices confiscated in *Two Electronic Poker Game Machines*. There, the Pennsylvania Supreme Court dealt with a coin-operated video game that simulated the events of five card draw poker. 465 A.2d 973 (Pa. 1983). The deck is "shuffled" by a random number generator, and the player is awarded points for various combinations of cards, ranging from one point for a pair of aces to fifty points for a straight flush. *Id.* at 976. The Court emphasized that chance was the predominant factor in the outcome

because chance determined the cards dealt and the cards from which one could draw. *Id.* at 978. The "skill" at issue was knowledge of probabilities. *Ibid.* This is different from the Tic-Tac-Toe game in this case for two reasons. First, the random number generator in the machine here does not determine a win or loss; rather, it merely chooses the puzzle that the player is presented with. Second, knowledge of statistics was the skill at issue in *Two Electronic Poker Game Machines*, whereas the skill at issue here is ability to play Tic-Tac-Toe. Knowledge of statistics was a skill wholly independent of the simulated poker game, and was not contemplated by or integral to the gameplay. It was a skill that was based on the nature of the player rather than the nature of the game. Here, skill at Tic-Tac-Toe and pattern recognition is fully integrated into the gameplay, and is demanded of the player for successful play. A player cannot beat the game with mere knowledge of probabilities; the player must choose the most advantageous spot to place the wild in the allotted time. The player exercises control over the game, and is not at the mercy of getting a lucky hand.

On balance, the outcome of the game is determined predominantly by skill rather than chance.

### 2.    Bonus Game

This shooting-style game is predominantly a game of skill. The game requires that the player recognize, target, and touch the symbol within the allotted time frame. This requires hand-eye coordination and dexterity. Chance or luck has very little to do with the outcome of the game. Instead, the outcome is dependent almost wholly on a player's skill. That the bonus game presents itself only if certain conditions are fulfilled is immaterial to determining whether skill or chance dominates in the bonus game. Rather, the availability of the game is simply a

consequence of one possible puzzle that a player may be presented with in the Tic-Tac-Toe game.

### 3.    "Follow-Me" Mini-Game

Successful play of the Follow-Me feature undoubtedly requires a great deal of skill on the part of the player. The game starts out easy, but becomes progressively more difficult with each recurrence of flashing dots. It is true that the average player cannot be expected to complete the Follow-Me feature successfully. After 10 to 15 sequences, most players would be unable to remember the sequence. The feature is immensely difficult and demands a much higher level of cognitive skill than the average player could muster. This immense difficulty does not, as the Commonwealth suggests, transform the game into a game of chance. The only chance involved in the game is the sequence in which the circles flash. The odds against randomly choosing the correct sequence for each of the forty rounds (a total of 820 flashing dots) are astronomical. Skill determines how well a player does.

### IV.    CONCLUSION

Each of the three games installed on the confiscated machine is predominantly a game of skill rather than a game of chance. Successful play at the Tic-Tac-Toe game depends mainly on a player's ability to recognize Tic-Tac-Toe patterns to maximize his or her score. The bonus game is essentially a shooting game, requiring a player to target and touch numerous symbols on the screen to achieve a high score. Finally, the Follow-Me mini-game, though immensely difficult for the average player, requires a great deal of cognitive ability for a player to remember the intricate sequence of flashing dots. Because the preponderance of the evidence fails to show that

the three games are games of chance, the Commonwealth has failed to prove that the property seized is a gambling device per se. The machine is therefore not contraband, and Petitioner's motion for return of property is granted.

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY

PENNSYLVANIA

CRIMINAL DIVISION

In re:                                          :

PACE-O-MATIC, INC. EQUIPMENT                    :       M.D. 965-2013

                                                :

TERMINAL I.D. NO. 142613                        :

## ORDER

AND NOW, this _23rd_ of _December_, 20_14_, it is hereby

ORDERED and DECREED that Petitioner's Motion of Return of Property pursuant to

Pennsylvania Rule of Criminal Procedure 588 is GRANTED. The Commonwealth is ORDERED

to return the Pennsylvania Skill game to Pace-O-Matic, Inc.

BY THE COURT

_____

                                                                              J.

Page 13 of 13

# EXHIBIT E



**County of Centre**

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE DISTRICT ATTORNEY

**STACY PARKS MILLER**
District Attorney

**MARK S. SMITH**
First Assistant District Attorney

Courthouse, Room 404
Bellefonte, PA 16823
Telephone (814) 355-6735

Victim/Witness (814) 548-1107
FAX (814) 355-6756
www.centreda.org

December 3, 2015

Richard Campbell, Esquire
Law Offices of Campbell, Miller, Williams, Benson, Etter & Consiglio, Inc.
720 South Atherton Street, Suite 201
State College, PA 16801

Re:    Opinion on Pace-O-Matic Machine

Dear Dick:

We received an inquiry from you regarding distribution of a video game in Centre County.

Your client, Pace-O-Matic, Inc., would like to place these games in various clubs (most having liquor licenses) and obviously wants to avoid their confiscation as illegal gambling devices.

As you know, the District Attorney of a county can prosecute Gambling charges, but PSP Liquor Control Enforcement (LCE) can administratively seek the suspension or revocation of a liquor license.

Your memorandum included a Common Pleas Court opinion from Beaver County where the court did NOT find that the video games were gambling devices per se.

In the past, we have worked with LCE in the confiscation and forfeiture of video poker machines, which were considered gambling devices per se because they possessed a "knock-down" switch, which allowed for the elimination of accumulated points, prior to pay-off.

The Pace-O-Matic video games are different and more advanced than the old video poker machines.

First Assistant District Attorney Mark Smith contacted LCE in Duncansville and the Compliance, Auditing and Gambling Enforcement (CAGE) Unit that specializes in gambling complaints.

The CAGE Unit was slow to respond; but finally conferred with Attorney Smith so that we could reconcile our position with theirs. The Supervisor in the CAGE Unit was quite familiar with Pace-O-Matic, Inc., as well as the history of the Beaver County court opinion.

The Supervisor explained the video games and how they contain both elements of skill and chance. The question with this machine was whether skill or chance is dominant factor in successful play. They recognized that the Court found the games are predominantly a game of skill.

Therefore, as a result of the Opinion, the CAGE Unit is not confiscating the games. Additionally, if the law changes or another county obtains a different opinion from an appellate court, then their position may change.

In addition, if their position would ever change, the LCE will give an advanced warning and time for licensed establishments to remove the games from their premises.

My Office will follow the interpretation of the Beaver County Court's opinion as well as LCE's position on the machines.

I hope this opinion letter satisfies your inquiry. I apologize for the delayed response due to the slow reply of the agency. Please feel free to contact either First Assistant District Attorney Mark Smith or myself with any questions. It is always a pleasure dealing with you!

Warmly,

Stacy Parks Miller, Esquire
Centre County District Attorney

SPM/sy

# EXHIBIT F

JOSHUA D. LAMANCUSA
DISTRICT ATTORNEY



COUNTY OF LAWRENCE
New Castle, Pennsylvania
www.colawrence.pa.us/DA/Index.htm

Diane M. Shaffer
Luanne Parkonen
William Flannery
Jonathan Miller
Jessica Sullivan
Thomas W. Minett

Lawrence County
Government Center
430 Court Street
New Castle, PA 16101

Phone 724-656-1916
Fax: 724-656-1986

Eddy, DeLuca, Gravina & Townsend
Manor building Penthouse
564 Forbes Avenue
Pittsburgh, PA 15219

12 OCT 16

RE: Pace-O-Matic

Dear Attorney DeLuca,

I am in receipt of your correspondence regarding the lawfulness of placing Pace-O-Matic games of skill in Lawrence County. I have reviewed Judge Knafelc's Memorandum Opinion and Order regarding the Pace-O-Matic machines and I have contacted the Pennsylvania State Police and Pennsylvania Liquor Control Board regarding the possibility of appeal from Judge Knafelc's Order of Court. I have been informed that the Commonwealth will not appeal the decision. Therefore, the Pace-O-Matic machine is not considered a game of chance under Pennsylvania gaming laws and therefore is legal within the Commonwealth. This letter serves to authorize you to place only Pace-O-Matic machines in Lawrence County. Specifically the only machine that is permissible is the machine that was the subject of Judge Knafelc's Order of Court. Variations or modifications of that machine may result in criminal and/or civil sanctions. Lastly, I would strongly recommend that you refrain from serving alcohol at any establishment where you are operating Pace-O-Matic machines as this letter only serves to insulate you from criminal liability but in no way is controlling or persuasive regarding the legality of a liquor license.

Very Respectfully,

Joshua Lamancusa

Received 7/20/2018 2:39:23 PM Commonwealth Court of Pennsylvania

Filed 7/20/2018 2:39:00 PM Commonwealth Court
503 MD 2018

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document

upon the persons and in the manner indicated below, which service

satisfies the requirements of Pa.R.A.P. 121:


*Via Federal Express*
Josh Shapiro, Attorney General
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120


Dated: July 20, 2018              s/ Paul G. Gagne/
                                 Paul G. Gagne (No. 42009)
                                 KLEINBARD LLC
                                 One Liberty Place, 46th Floor
                                 1650 Market Street
                                 Philadelphia, PA 19103
                                 Ph: (215) 568-2000
                                 Fax: (215) 568-0140
                                 Email: pgagne@kleinbard.com
                                 *Attorney for Petitioner POM of*
                                 *Pennsylvania, LLC*

{01442527;v1}

Received 7/20/2018 2:39:23 PM Commonwealth Court of Pennsylvania

Filed 7/20/2018 2:39:00 PM Commonwealth Court
503 MD 2018

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

POM of Pennsylvania, LLC v. Pennsylvania State      :      New Case
Police Bureau of Liquor Control Enforcement      :

                :

## PROOF OF SERVICE

I hereby certify that this 20th day of July, 2018, I have served the attached document(s) to the persons on the date(s) and

in the manner(s) stated below, which service satisfies the requirements of Pa.R.A.P. 121:

**Service**

| | |
|---|---|
| Served: | Pennsylvania State Police Bureau of Liquor Control Enforcement |
| Service Method: | Commercial Carrier: FedEx |
| Service Date: | 7/20/2018 |
| Address: | Office of Attorney General |
| | 15th Fl, Strawberry Square |
| | Harrisburg, PA 17120 |
| Phone: | --- |
| Representing: | Respondent   Pennsylvania State Police Bureau of Liquor Control Enforcement |

/s/  Matthew Hermann Haverstick
_____

*(Signature of Person Serving)*

| | |
|---|---|
| Person Serving: | Haverstick, Matthew Hermann |
| Attorney Registration No: | 085072 |
| Law Firm: | Kleinbard LLC |
| Address: | 1650 Market St 46th Fl |
| | Philadelphia, PA 19103 |
| Representing: | Petitioner   POM of Pennsylvania, LLC |

Received 7/20/2018 2:39:23 PM Commonwealth Court of Pennsylvania

Filed 7/20/2018 2:39:00 PM Commonwealth Court
503 MD 2018

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| POM of Pennsylvania, LLC v. Pennsylvania State Police Bureau of Liquor Control Enforcement | : : : | New Case |

## **PROOF OF SERVICE**

I hereby certify that this 20th day of July, 2018, I have served the attached document(s) to the persons on the date(s) and

in the manner(s) stated below, which service satisfies the requirements of Pa.R.A.P. 121:

**Service**

Served:             Pennsylvania State Police Bureau of Liquor Control Enforcement
Service Method:     Commercial Carrier: FedEx
Service Date:       7/20/2018
Address:            Office of Attorney General
                    15th Fl, Strawberry Square
                    Harrisburg, PA 17120
Phone:              --
Representing:       Respondent   Pennsylvania State Police Bureau of Liquor Control Enforcement

_____/s/  Matthew Hermann Haverstick_____

*(Signature of Person Serving)*

Person Serving:            Haverstick, Matthew Hermann
Attorney Registration No:  085072
Law Firm:                  Kleinbard LLC
Address:                   1650 Market St 46th Fl
                           Philadelphia, PA 19103
Representing:              Petitioner   POM of Pennsylvania, LLC