

# GA BIBIKOS LLC
### relentless. advocacy. period.

George A. Bibikos
(717) 580-5305
gbibikos@gabibikos.com
www.gabibikos.com

**VIA ECF**

The Honorable Jennifer P. Wilson
U.S. District Court for the Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 North 6th Street, Harrisburg, PA 17102

September 25, 2024

Re:     Response to Plaintiff's September 16, 2024, Discovery Dispute Letter: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC et al.*, No. 1:20-cv-292-JPW

Dear Judge Wilson:

I represent Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). Please accept this as Parx's response to a letter filed by Pace-O-Matic, Inc. ("POM"), dated September 16, 2024, and filed under seal (Doc. 434). In that letter, POM requests that the Court (a) overrule attorney-client privilege objections during the deposition of non-party Mr. Richard Gmerek lodged by his counsel, the undersigned counsel for Parx, and counsel for the defendants Eckert Seamans Cherin & Mellot, LLC, Mark Stewart, Esq., and Kevin Skodjal, Esq. ("Eckert"); and (b) order Mr. Gmerek to sit for an additional deposition to answer all prior and future questions from POM calling for Parx's privilege information.

## I.     Introduction + Summary

The Court should reject POM's requests. The attorney-client privilege applies to information POM seeks from Mr. Gmerek. Parx properly lodged (or joined in) privilege objections during Mr. Gmerek's deposition and provided limiting instructions pursuant to Fed. R. Civ. P. 30(c)(2) to avoid waiver while directing him to otherwise answer POM's questions. POM does not have good cause to re-call Mr. Gmerek for an additional five hours. POM squandered its time by improperly asking Mr. Gmerek questions attempting to divulge privileged information which, in turn, justifiably engendered privilege objections from counsel. More importantly, POM failed to ask the witness foundational questions during the deposition as required by the rules and case law to determine if the privilege or a waiver applied. POM therefore waived any right to re-call Mr. Gmerek. Finally, the Court should reject POM's misguided arguments that the privilege does not apply, that Parx somehow waived the privilege, and that proper privilege objections somehow obstructed POM's ability to depose Mr. Gmerek fully.

## II.     Relevant Background

Parx, a non-party here, is a licensed casino in Pennsylvania. *See* Decl. of Thomas C. Bonner, Esq. ("Bonner Decl."), Tab "A," ¶ 5 at 1. POM manufactures un-regulated and un-taxed gaming machines. *See* Bonner Decl. ¶¶ 6 at 1. Casinos in Pennsylvania (including Parx) and manufacturers of these so-called "skill" games (including POM) have adverse business interests. *See* Bonner Decl. ¶ 7 at 2.  The underlying dispute, however, is not between Parx or POM; rather, the case involves a claim that Eckert Seams Cherin & Mellot LLC ("Eckert") breached a fiduciary duty to POM by representing Parx and other casinos simultaneously without a conflict waiver adequately in place. *See* Bonner Decl. ¶ 9 at 2.

Mr. Richard Gmerek is CEO of Gmerek Government Relations, Inc. *See* Bonner Decl. ¶ 13 at 2.  Mr. Gmerek has long served as a lobbyist for Parx. *See* Bonner Decl. ¶ 15 at 2.  POM sued Mr. Gmerek and Parx's other consultants in state court based on their work assisting Parx with legal, legislative, regulatory and related efforts to support


a ban on or regulation/taxation of so-called "skill" games manufactured by POM. *See* Bonner Decl. ¶ 11 at 2. POM has pursued and still pursues discovery in this Court to use in state court against Mr. Gmerek and others. *See, e.g., POM of PA, LLC, d/b/a Pace-O-Matic v. Richard Gmerek et al.*, No. CV-22-00362 (Lyco. Cty., filed 4/8/2022).

POM subpoenaed Mr. Gmerek to testify at a deposition in this case. The undersigned counsel for Parx attended the deposition, with POM's full knowledge and consent, for the purpose of asserting attorney-client privilege objections if and as necessary to avoid a waiver. During Mr. Gmerek's deposition, POM asked Mr. Gmerek a great many broad (and often confusing) questions. *See, e.g.*, POM Letter Ex. 1 (portions of transcript). Many of POM's questions called for information about communications between or among Mr. Gmerek, Parx, its CEO, its Board of Directors, and counsel for Parx (both in-house and outside counsel) regarding Parx's various legislative, regulatory, or litigation efforts designed to support a ban on or regulation of so-called "skill" games manufactured by POM. *See, e.g.*, POM Letter Ex. 1, Tr. at pp. 67, 70, 74, 78-79, 86, 94, 98, 100, 101, 119, 120, 122, 124-128, 130, 133-34, 164-66, & 174.

Given that POM's broad and sometimes confusing questions during Mr. Gmerek's deposition engendered justifiable concerns about inadvertent waiver of Parx's privilege, counsel for Mr. Gmerek, Parx, and Eckert separately or together lodged objections during the deposition and instructed Mr. Gmerek not to divulge privileged information as part of his answer. *See, e.g.*, POM Letter Ex. 1, Tr. at p. 67. For virtually all (if not all) of the objections, counsel very specifically (a) cautioned Mr. Gmerek to avoid testimony about privileged communications but (b) instructed him to answer otherwise if he could do so without divulging that information. *See, e.g., id.* at p. 70. In some instances, Mr. Gmerek could not answer POM's question as framed without divulging privileged information; in most other instances, however, Mr. Gmerek answered the question as instructed (i.e., testifying about facts without divulging privileged information). *See generally* POM Letter Ex. 1.

Following most (if not all) of the privilege objections and limiting instructions, POM chastised counsel for lodging them in the first place and then simply asked Mr. Gmerek whether or not he refused to answer based on his counsel's instructions. Otherwise, POM did not meaningfully ask the witness any "who, what, when, where, why" questions Your Honor might expect to see in a transcript to solicit facts about whether or not the attorney-client privilege or any waiver applies. *See generally* POM Letter Ex. 1. Instead, POM spent considerable time arguing with counsel; demanding impromptu meet-and-confer sessions on the record about privilege issues; threatening counsel with motions for sanctions; making baseless motions to strike answers as non-responsive; and then (after several wasted hours) abruptly terminated the deposition on the false basis that objections somehow prevented POM from deposing Mr. Gmerek fully. *See generally* POM Letter Ex. 1.

### III.     Analysis

With that background in mind, POM asks the Court to overrule the privilege objections and for leave to depose Mr. Gmerek for another five hours about Parx's privileged information. The Court should reject POM's requests.

### A.     *The attorney-client privilege applies.*

First, the attorney-client privilege applies to the information POM seeks through Mr. Gmerek's testimony. As this Court previously noted, *see* Doc. 87 at p. 29, communications among a client, the client's attorney, and the client's consultants may be privileged. *See BouSamra v. Excela Health*, 210 A.3d 967, 985 (Pa. 2019); *Sandoz Inc. v. Lannett Co., Inc.*, 570 F. Supp. 3d 258, 266 (E.D. Pa. 2021) (applying *BouSamra* and upholding privilege for communications between lawyer and client's consultant). In other words, the attorney-client privilege still attaches despite the presence of a third party when "the third-party's presence was either **indispensable to the lawyer giving legal advice <u>or</u> facilitated the lawyer's ability to give legal advice to the client**." *BouSamra, supra* (emphasis added); *see also In re Lincoln Nat'l COI Litig.*, No. 16-CV-06605-GJP, 2020 WL 1157172, at *3 (E.D. Pa. Mar. 9, 2020) (applying *BouSamra*).


In *Sandoz*, for example, the client engaged a consultant who sent his work to the client's counsel, and counsel replied with comments related to legal strategy. Applying *BouSamra*, the court upheld the privilege for those communications (even without the presence of the client) given "***the obvious active engagement between the attorney and consultant for the purpose of legal advice***." *Sandoz*, 570 F. Supp. 3d at 266 (emphasis added). Courts also have held that the privilege applies to third parties who clients or lawyers engage to help with legal advice or who help facilitate lawyer-client communications or who gather information necessary for lawyers to provide legal advice. *See, e.g., Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 255 F. Supp. 3d 561, 572–73 (M.D. Pa. 2017) (stating that "privilege[d] persons for purposes of the attorney-client privilege include not only the lawyer and the client, but also ***agents of either who facilitate communications between them***" and holding that defendant was not compelled to produce emails between the defendant's outside counsel and the defendant's "automobile-dealership broker" because the broker "was ***engaged for purposes of assisting the client and its counsel***") (emphasis added; internal quotations omitted); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (stating that privilege applies to agents or those who have interests in common with the client and declining to order production of communications between the plaintiff's counsel and its third-party consultants because the consultants "***assist[ed] in obtaining facts and information needed to provide legal advice and assistance***") (emphasis added).

Here, Mr. Gmerek qualifies as a privileged third party under *BouSamra*, *Sandoz*, and other cases. Parx is the privilege holder. Mr. Gmerek is a lobbyist engaged by Parx. *See* Bonner Decl. ¶ 14 at 2. Although Parx retained Mr. Gmerek and his firm to provide lobbying services, Mr. Gmerek's role is somewhat broader than that. *See* Bonner Decl. ¶ 17 at 3. Mr. Gmerek's knowledge of and experience with gaming laws and legal issues, having been involved in writing the Gaming Act, 4 Pa.C.S. § 1101 *et seq.*, are essential to help Parx's lawyers provide legal advice to the company on various gaming and related matters. *See* Bonner Decl. ¶ 19 at 3. Parx's in-house counsel and outside counsel communicate with (and rely on) Mr. Gmerek and his staff for input on various other legal, regulatory, and litigation matters. *See* Bonner Decl. ¶¶ 18, 20 at 3. Mr. Gmerek's presence during or participation in communications occurred as an agent of Parx, acting on its behalf, to help Parx's lawyers provide advice to the company. *See* Bonner Decl. ¶¶ 21-24 at 4. Finally, Parx specifically instructs third party agents like Mr. Gmerek to maintain confidentiality and expects all lawyers and agents of the client to maintain confidentiality to avoid any accusation that Parx or its agents waived the attorney-client privilege. *See* Bonner Decl. ¶¶ 25-30 at 4-5.

Simply put, information that POM seeks from Mr. Gmerek is privileged and therefore immune from discovery. The Court should sustain the privilege objections.

> ### B. *Parx properly lodged privilege objections and gave limiting instructions to avoid waiver.*

Second, Parx properly lodged privilege objections and gave limiting instructions to avoid waiver given POM's questioning. As the Court knows, Rules 26 and 45 preclude discovery of privileged information. *See* Fed. R. Civ. P. 26(b)(1) and 45(d)(3)(A)(iii). During a deposition, Rule 30(c)(2) provides that "[a] person may instruct a deponent not to answer only ***when necessary to preserve a privilege***, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *See* Fed. R. Civ. P. 30(c)(2) (emphasis added); *Shaffer v. Pennsbury Sch. Dist.*, 525 F. Supp. 3d 573, 580 (E.D. Pa. 2021). Privilege objections during a deposition are therefore proper when questions "***seek to elicit answers about a particular subject for which counsel was consulted and/or legal advice was given***." *See, e.g., Jorjani v. New Jersey Inst. of Tech.*, No. CV 18-11693 (WJM), 2023 WL 2986694, at *5 (D.N.J. Apr. 18, 2023), *aff'd,* No. 2:18-CV-11693, 2023 WL 7895856 (D.N.J. Nov. 14, 2023) (emphasis added).

Here, POM's broad and sometimes confusing questions asking Mr. Gmerek for information about Parx's legal matters engendered privilege and other objections. Although POM only attaches portions of the transcript to its letter, the Court will see from those excerpts that POM repeatedly asked Mr. Gmerek about communications with and work for Parx and its lawyers regarding legal strategies and efforts to challenge the legality of so-called "skill" games. *See, e.g.,* POM Letter Ex. 1, Tr. at pp. 67, 70, 74, 78-79, 86, 94, 98, 100, 101, 119, 120, 122, 124-128, 130, 133-34, 164-66, & 174. For example, the cited portions of the transcript show that POM asked Mr. Gmerek to



testify about communications involving Parx's outside counsel (Mark Stewart) regarding his legal work for Parx; POM asked Mr. Gmerek about communications he had with Mr. Stewart and Parx's CEO regarding legislative, regulatory, and litigation efforts to support a ban on or regulation of "skill" games; and, at one point, POM even asked Mr. Gmerek to testify about legal advice he heard Mr. Stewart give to Parx's Board of Directors.

In short, counsel properly and in good faith lodged privilege objections to POM's questions as framed and cautioned the witness to prevent him from divulging Parx's privileged information as authorized by Rule 30.

### C. POM waived any grounds to re-call Mr. Gmerek.

Third, POM had the obligation to question Mr. Gmerek during the deposition about whether the privilege or a waiver applied but never did. In *Novartis Pharms. Corp. v. Abbott Lab'ys*, 203 F.R.D. 159 (D. Del. 2001), for example, the plaintiff (like POM here) sought to re-depose a witness, arguing (as here) that counsel improperly instructed the witness not to answer questions. The court denied the request, concluding that the plaintiff "had an ample opportunity to examine [the witness] about the telephone conversation, and … [the witness] did not refuse to answer any relevant questions." *Id.* at 166. Importantly, the court noted that "[t]he appropriate time … to pursue this avenue of discovery" relating to whether or not a privilege or a waiver applied was at the deposition in order to establish a record to support the privilege challenge. *Id.*

Here, POM did not ask foundational questions about whether a privilege or a waiver applied.  As noted, POM wasted time during the deposition and did not meaningfully ask the witness any "who, what, when, where, why" questions, opting instead to abandon one question to ask another improper question (which also engendered objections) and then abruptly terminating the deposition early without asking the witness questions that call for non-privileged answers.

POM had its chance.  The Court should not grant leave to re-call a non-party for a second deposition under circumstances in which POM wasted time and failed to lay a foundation with the witness to inquire about the application of the privilege or a waiver.

### D. POM terminated the deposition at its own risk.

Finally, POM had every opportunity to question Mr. Gmerek about non-privileged matters during the deposition but elected to terminate the deposition. POM did so at its own risk.  As the Court knows, merely lodging privilege objections, without more, is not a proper basis for leave to depose a non-party for a second time, particularly when the deposing party failed to exhaust questioning in the first deposition. In *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005), the defendant sought to re-depose a witness where plaintiff had lodged objections on the basis of the attorney-client and deliberative process privilege. The court denied the request, noting that the plaintiff "had a good faith basis for its objections," and the defendant already "had its opportunity to obtain … the non-privileged information to which it is entitled." *Id.* at 112. *See also Rodriguez v. Delta Air Lines,* No. 04-CV-750 (WJM), 2005 WL 8165155 (D.N.J. July 22, 2005) (denying motion to compel second deposition where party "had ample opportunity to obtain the information sought at its first deposition.").

Here, Mr. Gmerek, Parx, and Eckert had a good-faith basis to lodge privilege objections and gave appropriate limiting instructions to the witness to guard against inadvertent waiver of Parx's privilege.  POM had its opportunity to obtain non-privileged information by asking appropriate questions.  POM did not do that.  The Court has no obligation to give POM more opportunities to depose a non-party witness when POM did not think it important enough to ask proper questions the witness could answer without waiving privilege.

Accordingly, the Court should not grant leave to re-call a non-party witness for a second deposition when POM squandered its opportunities during the first deposition.



## E. The Court should reject POM's misguided arguments.

The analysis above is dispositive of POM's purported discovery dispute. POM argues, however, that the privilege does not apply because (a) Mr. Gmerek is a lobbyist, not a lawyer, whose presence during any communications among Parx and its lawyers waived privilege; (b) the privilege objections are overly broad; and (c) POM needs additional time to ask about "important" issues that POM did not ask Mr. Gmerek in the first deposition.

First, the fact that Mr. Gmerek is a lobbyist and does not practice as a lawyer misses the point. If a third party is an agent of the client assisting with legal matters, then disclosure to these third parties does not waive the privilege. *See BouSamra* 210 A.3d at 985 (agents of the client or the client's lawyer who assist with legal advice are privilege third parties); Restatement (Third) of the Law Governing Lawyers § 70 cmt. e (2000) ("If the third person is an agent for the purpose of the privilege, communications through or in the presence of that person are privileged[.]"); *see also Audi of Am., Inc.*, 255 F. Supp. 3d at 572-73. As explained above, Parx lodged (or joined in) privilege objections because Mr. Gmerek is a privileged third party acting as agent for Parx for purposes of the attorney-client privilege, not because he served as a lawyer directly proving legal advice to Parx. The Court should reject POM's red-herring argument that the privilege does not apply based solely on the fact that Mr. Gmerek does not currently practice law.

Second, the Court should reject POM's argument that the non-parties and defendants intended to invoke privilege for "all" communications involving Mr. Gmerek as a lobbyist. That is incorrect. If that were so, query why counsel for Mr. Gmerek, Parx, and Eckert expressly and repeatedly instructed Mr. Gmerek to answer POM's questions without divulging non-privileged information. It is POM's responsibility to formulate proper questions that do not seek privileged information. POM could not do so during the first deposition. It would be imprudent for the Court to give POM another chance to depose a non-party a second time under circumstances in which POM could have discovered non-privileged information during the first deposition.

Finally, note POM's suggestion that it needs another five hours or more to depose Mr. Gmerek given "important issues" to discuss, including discussions about Exhibit 2 attached to POM's letter. If the issues are so important, query why (to Parx's knowledge) POM never showed that document to Mr. Gmerek during his deposition, nor did POM ask him any questions about it. Although POM seems to speculate that questions about that document would lead to objections, that is insufficient. POM had the opportunity to discover non-privileged information from a non-party deponent and is not entitled to second deposition simply because it chose not to ask questions.

## IV. Conclusion

The attorney-client privilege applies to the information POM seeks from Mr. Gmerek as a privileged agent of Parx. The parties and non-parties properly lodged privilege objections in good faith and provided limiting instructions to the witness to avoid waiver as authorized by the federal rules, all while giving POM the opportunity to ask proper questions the witness could answer. POM has not shown any good cause to re-call Mr. Gmerek. If the Court looks past POM's shortcomings and grants additional time to depose Mr. Gmerek, the Court should (a) instruct POM on precisely the questions it may ask so as not to inquire into any privileged matters; and (b) grant Parx equal time for questioning the witness to the extent necessary to support the bases for the privilege, lodge proper objections, and provide limiting instructions to avoid waiver.

Very truly yours,

**GA BIBIKOS LLC**

George A. Bibikos

c: Counsel (via ECF)

+lawyer | innovations
rethink everything.