Tab A - Bonner Declaration 9/25/2024

# In the United States District Court for the Middle District of Pennsylvania

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | [Electronically Filed] |
| | ) | |
| vs. | ) | No. 20-292 |
| | ) | |
| ECKERT SEAMANS CHERIN & | ) | Judge Wilson |
| MELLOT, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## DECLARATION OF THOMAS C. BONNER

I, Thomas C. Bonner, Esq., hereby declare, subject to the penalties of 18 Pa. C.S. § 4904 and 28 U.S.C. § 1746, relating to unsworn falsification to authorities, as follows:

1.      From 2006 until mid-2022, I served as Group Vice President of Legal and Chief Counsel of Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx").

2.      In mid-2022, Karin Ashford assumed the position of Group Vice President of Legal and Chief Counsel and I became Executive Vice President and Special Counsel for Parx, a position which I hold today.

3.      I am authorized to make this declaration on behalf of Parx.

4.      I have personal knowledge of the matters set forth in this declaration.

5.      Parx is a licensed casino in Pennsylvania.

6.      Pace-O-Matic, Inc. ("POM") is a software company that develops un-regulated and un-taxed gaming machines that it commonly refers to as "skill games."

1

7.    Casinos in Pennsylvania (including Parx) and developers and manufacturers of these so-called "skill games" (including POM) have adverse business interests.

8.    The underlying dispute is not between Parx and POM.

9.    Rather, the case involves a claim that Eckert Seams Cherin & Mellot LLC ("Eckert") breached a fiduciary duty to POM by representing Parx and other casinos simultaneously without a conflict waiver adequately in place.

10.    During my tenure as Group Vice President of Legal and Chief Counsel, the company engaged a number of individuals and their respective firms to act as Parx's agents in lobbying and related activities in the Commonwealth of Pennsylvania.

11.    I am aware of various lawsuits, other than this one, in which POM has sued lobbyists, communications consultants, and public relations professionals who perform work on behalf of Parx.

12.    Mr. Richard Gmerek and his firm are among Parx's agents who provide services to the company.

13.    Mr. Gmerek is CEO of Gmerek Government Relations, Inc.

14.    Parx retained Mr. Gmerek and his firm to provide lobbying services.

15.    Mr. Gmerek has long served as a lobbyist for Parx.

16.    It is my understanding that POM deposed Mr. Gmerek on July 31, 2024, and asked a number of questions that call for Mr. Gmerek to discuss his knowledge of and participation in communications regarding Parx's efforts to challenge the

2

legality of so-called "skill games" in various legislative, regulatory, and litigation arenas.

17.    Although Parx engaged Mr. Gmerek as a lobbyist, he plays a broader role in assisting the company and its lawyers with legal matters.

18.    For example, Parx's in-house counsel and outside counsel communicate with (and rely on) Mr. Gmerek and his staff for input on various legal, regulatory, and litigation matters in order to, among other things, inform Parx's legal strategy.

19.    As it relates to this case, Parx relies on Mr. Gmerek's knowledge of and experience with gaming laws and related legal issues, having been intimately involved in the process of enacting the Gaming Act, 4 Pa.C.S. § 1101 *et seq.*

20.    Without divulging details, Mr. Gmerek has worked closely with Parx and its lawyers on a number of legal matters, particularly those involving the legality of so-called "skill games," including (for example) Parx's lawyers advising on pending legislation; drafting proposed legislation; monitoring and reviewing legislative efforts; preparing testimony for legislative hearings; summarizing legislation; making recommendations about legislation; evaluating whether proposed legislation withstands judicial review; evaluating the interests of the client in the event proposed legislation becomes law; and related communications.

21.    As agent of Parx, Mr. Gmerek frequently participates in substantive legal discussions with Parx's in-house attorneys such as myself and with outside counsel such as Mark Stewart of Eckert to provide necessary legislative, political, policy, and other context, background, or information.

3

22.    When Mr. Gmerek so participates in such substantive discussions, his participation is necessary for Parx's in-house and outside counsel to provide legal advice to Parx about a wide range of matters, including (but not limited to) advice regarding the legality of so-called "skill games" manufactured by companies like POM.

23.    Mr. Gmerek's presence during or participation in communications occurred as an agent of Parx, acting on its behalf, to help Parx's lawyers provide advice to the company.

24.    To the extent Mr. Gmerek had such communications with Parx and Parx's outside or in-house counsel, those communications helped Parx's lawyers provide the company with legal advice and strategy in various legislative, regulatory, and litigation arenas involving the question of whether "skill games" are legal or not.

25.    Parx authorized Mr. Gmerek to participate in discussions with Parx's lawyers for purposes of Parx obtaining legal advice from outside and in-house counsel.

26.    These communications involve information relayed to or from or on behalf of Parx for purposes of Parx securing either an opinion of law, legal services, or assistance in such legal matters.

27.    Parx intends that communications among its agents and its lawyers remain confidential.

28.    To that end, Parx instructs third party agents like Mr. Gmerek to maintain confidentiality.

29.    Parx expects all lawyers and agents to maintain confidentiality to avoid any accusation that Parx waived the attorney-client privilege.

4

30.    Parx has not authorized and does not authorize any participant in privileged communications about legal matters, including those involving Mr. Gmerek, to disclose the contents of the communications.

I declare under penalty of perjury under the laws of the United States of America and the Commonwealth of Pennsylvania that the foregoing is true and correct to the best of my knowledge, information, and belief.

September 25, 2024

_____
THOMAS C. BONNER

5