

# GA BIBIKOS LLC
relentless. advocacy. period.

**VIA ECF**

George A. Bibikos
(717) 580-5305
gbibikos@gabibikos.com
www.gabibikos.com

The Honorable Jennifer P. Wilson
U.S. District Court for the Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 North 6th Street, Harrisburg, PA 17102

September 26, 2024

Re:     Supplemental Response to Plaintiff's August 28, 2024 Discovery Dispute Letter: *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellot, LLC et al.*, No. 1:20-cv-292-JPW

Dear Judge Wilson:

I represent Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). The Court granted leave at Doc. 437 to supplement Parx's opening letter ("Opening Letter") dated September 6, 2024, and filed under seal. Parx's Opening Letter also attaches a sealed Declaration of Thomas C. Bonner, Esq. ("Bonner Decl.") (attached to Parx's Opening Letter as Tab "A"). Parx's Opening Letter and supporting declaration respond to a discovery dispute filed by Pace-O-Matic, Inc. ("POM"), dated August 28, 2024, and filed under seal.

As the Court will recall, POM requested that the Court strike the designation by non-party Richard Gmerek and Parx of a document referred to as "Exhibit 53" and marked "CONFIDENTIAL" pursuant to the protective order issued in this case. *See* Doc. 196 (the "Protective Order"). In response, Parx argued, among other things, that the document is confidential under the Court's definition of "Confidential Materials" in the protective order.  The Court granted leave so Parx could discuss whether Exhibit 53 is confidential under this Court's interpretation of the factors set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

Although Parx maintains that the protective order's definition of "Confidential Materials" controls confidentiality designations under the circumstances, Parx further submits that Exhibit 53 is confidential not only under the Protective Order's definition but also under the *Pansy* factors for much of the same reasons that Parx articulated in its opening letter.

Under this Court's interpretation of *Pansy*, *see* Doc. 328, a party (or, in this case, a non-party) seeking to maintain confidentiality of documents marked confidential pursuant to a previously issued protective order has the burden to demonstrate "good cause" for the protection of that material. *See* Fed. R. Civ. P. 26(c); *see also Pansy*, 23 F.3d at 786. "Good cause" means that disclosure will cause a clearly defined and serious injury. *Id.* In *Pansy*, the Third Circuit identified a non-exhaustive list of factors, none of which are mandatory, that courts may consider and balance to evaluate whether good cause exists to maintain the confidentiality of a document. They are, in no particular order of preference: (a) whether disclosure will violate any privacy interests; (b)  whether the information is being sought for a legitimate purpose or for an improper purpose; (c) whether disclosure of the information will cause a party embarrassment; (d) whether confidentiality is being sought over information important to public health and safety; (e) whether the sharing of information among litigants will promote fairness and efficiency; (f) whether a party benefitting from the order of confidentiality is a public entity or official; and (g) whether the case involves issues important to the public. *See Pansy*, 23 F.3d at 787–91.

When applying the "good cause" factors, the courts should take great care to balance private interests against public interests: "Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in

the best position to prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it[.]" *Id.* at 789 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 492 (1991)).

As a threshold matter, Parx explained in great detail in its Opening Letter (supported by Mr. Bonner's declaration), as required by *Pansy*, how disclosure of Exhibit 53 would engender harm to the company. *See generally* Opening Letter p. 3 and Bonner Decl. ¶¶ 23-34, at 3-5. Parx incorporates the discussion and Mr. Bonner's declaration by reference and will not repeat those points here except to ask that the Court review both carefully as it addresses the issues. Although not necessarily keyed to the *Pansy* factors, the Opening Letter and Mr. Bonner's declaration articulate with facts and examples the types of clearly defined and serious harms that would befall the company if the Court gave POM the ability to disseminate Exhibit 53 publicly with impunity.

In addition, the majority of factors weigh heavily in favor of maintaining Exhibit 53 as confidential. First and foremost, it must be clear by now that POM is asking the Court to de-designate Exhibit 53 for an illegitimate purpose. POM has articulated no legitimate motivation for its request for de-designation, nor is there one. The Court should not order disclosure of confidential materials if the party seeking disclosure intends to use it outside of the litigation. *See, e.g.*, Miller, *supra*, at 484 ("There are other potential deleterious side effects. Absent protective orders, greater incentives would exist for commencing litigation and exploiting discovery for reasons other than the adjudication of disputes. Parties might well use the courts to pursue ulterior objectives, such as seeking a competitive advantage, pressing vendettas, or acquiring information for use in collateral proceedings.") (citing *International Union v. Garner*, 102 F.R.D. 108, 109-10 (M.D. Tenn. 1984) (protective order issued to prevent discovery in federal court being used for NLRB proceeding)).

POM already has weaponized the discovery process in this case. POM's misuse of this Court's compulsory discovery processes to obtain and attempt to use confidential materials of non-parties for other purposes weighs heavily in favor of maintaining confidentiality. Based on past behavior (which is well documented and of which the Court is well aware), POM no doubt is asking the Court to de-designate Exhibit 53 for the improper purpose of using that document either in the press or in litigation in state court against various non-parties here, including Mr. Gmerek (Parx's lobbyist), Mr. Pete Shelly (Parx's communications consultant), Mr. Sean Schafer (another of Parx's consultants), and the Pennsylvania State Police. *See* Bonner Decl. ¶ 12 at 2. *See also, e.g.*, Doc. 76 at 4 and exhibits (Parx's brief noting POM's improper use of discovery from this case in other proceedings); *POM of PA, LLC, d/b/a Pace-O-Matic v. Peter J. Shelly et al.*, CV22-00305 (Lyco. Cty., filed 3/23/2022); *POM of PA, LLC, d/b/a Pace-O-Matic v. Richard Gmerek et al.*, No. CV-22-00362 (Lyco. Cty., filed 4/8/2022); *POM of PA, LLC, d/b/a Pace-O-Matic v. Sean D. Schafer et al.*, CV22-00363 (Lyco. Cty., filed 4/8/2022); *see also* Docs. 400, 416, & 438 (State Police bringing to this Court's attention POM's improper use of discovery from this proceeding in other state-court cases). POM's improper purposes weigh heavily in favor of maintaining the confidentiality of Exhibit 53.

Second, the Protective Order strikes the right balance such that there is no need to de-designate Exhibit 53 to promote fairness and efficiency in this litigation. *See, e.g.*, Miller, *supra*, at 446 ("The protective order guards against these harms without impairing the flow of information to the litigants."). The parties have Exhibit 53 at their disposal. POM can use the document to support its claims against Eckert in this litigation. POM has used it during Mr. Gmerek's deposition. *See* Bonner Decl. ¶ 20 at 3. Presumably, POM will continue to use the document in this litigation. There is no need to make the document public to promote fairness or efficiency.

By contrast, it would be eminently unfair to non-parties such as Parx and Mr. Gmerek for the Court to de-designate their confidential materials. It bears repeating that Parx and Mr. Gmerek are not parties and have virtually no say in how this litigation proceeds. The Court should consider their status as non-parties when ruling. *See* Doc. 358 at 3 (rejecting POM's attempt to burden another non-party professional engaged by Parx with a second deposition and stating that "[i]n coming to this decision, the court finds it noteworthy that Shelly is a non-party."); *see also, e.g.*, *Badman v. Stark*, 139 F.R.D. 601 (1991) (protecting non-party from discovery); *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) (same).



Moreover, non-parties who are subject to discovery in federal court should be able to rely on protective orders issued in the case to maintain confidentiality of documents or testimony they are compelled to provide. Courts should not strip that protection away from them at the whim of a party with adverse business interests, particularly when all parties to the case have access to the confidential materials for the litigation. *See, e.g.,* Miller, *supra,* at 502 n. 350 ("Indeed, a nonparty witness who testifies under the aegis of a protective order only to have his guarantee of confidentiality eliminated by a modification of the order quite properly can feel aggrieved."). As non-parties, Parx and Mr. Gmerek should be treated with great care to avoid public dissemination of confidential materials that the parties already may use within the confines of this litigation without implicating confidentiality concerns. Indeed, Parx is only here because POM has pursued Parx's confidential and privileged materials for more than four years, and Parx has no choice but to protect them.

Far from promoting efficiency, POM's arbitrary request to de-designate Exhibit 53 has burdened the parties, non-parties, and the Court with additional delays in this four-year-old case. *See Pansy*, 23 F.3d at 786 (citing efficiency as a factor). POM's contrived discovery disputes will not meaningfully advance the litigation towards its conclusion. To the contrary, POM is prolonging this years-old case with immaterial disputes. If the Court entertains POM's latest request to de-designate Exhibit 53, when will it end? If the Court does not deny POM's request now, every good-faith confidentiality designation going forward will result in a discovery dispute for the Court to resolve. POM's initiation of unnecessary side-squabbles over confidentiality merely wastes the Court's time and places substantial burdens on non-parties like Parx and Mr. Gmerek who have no stake in the outcome of the case yet repeatedly have been compelled to appear and protect their confidential and privileged information from disclosure. The Court's denial of POM's request will promote efficiency going forward.

Finally, there are zero public considerations weighing in favor of disclosure. *See, e.g., Pansy*, 23 F.3d at 788 ("[I]if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."). The parties are private entities, not public figures. Neither Parx nor Mr. Gmerek are public figures. *See* Bonner Decl. ¶¶ 5, 11 at 1. Moreover, Exhibit 53 contains no information about public health or safety. *See* Miller, *supra,* at 477 ("[T]he number of cases that conceivably could contain information that has any bearing on public health or safety is minuscule compared to the corpus of litigation in this country."). To the contrary, Exhibit 53 contains private, non-public information about efforts to challenge the legality of so-called "skill" games manufactured by POM. *See* Bonner Decl. ¶ 15 at 2. Finally, the case does not involve issues important to the public. The underlying dispute involves a claim that Eckert breached a fiduciary duty to POM by representing Parx and other casinos simultaneously without a conflict waiver adequately in place. *See* Bonner Decl. ¶¶ 8-9 at 2. Although the public may have some vague, general interest in the duties owed by law firms to their clients, the public has no interest in the contents of Exhibit 53 (*i.e.,* private, non-public lobbying and related strategies), which have little, if any, bearing on the issues at the core of this case. Thus, the Court would not be promoting the public interest by ordering the public dissemination of this document.

Accordingly, the Court should decline POM's request to de-designate Exhibit 53 because (a) Exhibit 53 meets the standard for confidentiality in the Protective Order; (b) the *Pansy* factors weigh heavily in favor of maintaining confidentiality; (c) POM has access to the document for purposes of this litigation; and (d) POM is not entitled to use the document for any other purpose.

Very truly yours,

**GA BIBIKOS LLC**

George A. Bibikos

c:        Counsel (via ECF)