**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | |
| Plaintiff | : | No. 1:20-CV-292 |
| | : | |
| v. | : | Honorable Judge Wilson |
| | : | |
| ECKERT SEAMANS CHERIN & | : | Electronically filed document |
| MELLOT, LLC, et al. | : | |
| | : | |
| Defendant | : | |

**PENNSYLVANIA STATE POLICE'S REPLY BRIEF IN
SUPPORT OF MOTION TO QUASH CORPORATE
DESIGNEE SUBPOENA OR FOR A PROTECTIVE ORDER**

The Pennsylvania State Police (PSP), by and through its undersigned counsel, hereby files this Reply Brief in Support of its Motion to Quash Corporate Designee Subpoena or, alternatively, for a Protective Order, to address the following points.

I.    **INTRODUCTION**

Plaintiff ignores the substance of PSP's brief, and instead responds with self-serving arguments regarding relevance. The standard to quash a subpoena under Rule 45 does not hinge on relevance, however—rather a subpoena "must" be quashed if it requires disclosure of privileged or protected information or subjects the subject to "undue burden." POM is wholly dismissive, to the degree of conceding the point, as to the significant undue burden imposed on PSP by the 25-item corporate designee subpoena. The subpoena "must" be quashed under Rule 45.

1

## II.    **ARGUMENT**

### A.    **The subpoena "must" be quashed under Rule 45 because it causes undue burden and also because it requires disclosure of privileged information**.

POM does not, because it cannot, rebut the undue burden imposed upon PSP by the corporate designee subpoena, as articulated in PSP's filings. POM ignores PSP's legitimate concerns regarding the sheer breadth of the subpoena, including 25-items, and the impossibility of preparing an individual witness(es) to fairly represent the agency on years' worth of information related to the topic of skill games. Put otherwise, POM fails to acknowledge the extraordinary burden innate in educating a representative, and imposing upon that person a responsibility to fully and properly articulate binding testimony, about topics such as: all Bureau of Liquor Control Enforcement (BLCE) cases (whether opened or closed) involving skill games; evidence and legal strategies in those state actions; communications regarding the agency position on skill games over a period of 9 years; the 6,000 pages of documents produced in response to the subpoena; "actions" by "anyone who has conducted an analysis of any POM game or software"; and every single communication, verbal or otherwise, ever made regarding POM, among other things.

POM also fails to address the gamesmanship inherent in the subpoena that already has and will further lead to undue burden on PSP in the Commonwealth Court litigation. POM, again, provides no explanation of its unfair representations

in Commonwealth Court about the subpoenas. Moreover, it does not discuss the fact that the sweeping corporate designee subpoena seeks the exact discovery that it has not been successful in obtaining in Commonwealth Court. POM gives no moment to the monumental fact that the Commonwealth Court protective order will be vitiated if POM is permitted to embark upon an unfettered corporate designee deposition. There is no mention of the strategic advantage that it will gain through use of the overbroad subpoena in this case. And, it is unsurprising that POM is silent on these points because there is no denying the benefits that they will enjoy at the expense of third-party PSP.

In *Lakeview*, the corporate designee subpoena was quashed where the subpoenaed confidential information "may" have unfairly influenced "related litigation." *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. CV 3:15-290, 2017 WL 4310221, at *10 (M.D. Pa. Sept. 28, 2017). In this case, there is no question that the subpoenaed information will unfairly impact the Commonwealth Court, and Supreme Court of Pennsylvania, litigation. The undue burden under Rule 45 in this case is even stronger than in *Lakeview*. POM makes no attempt to distinguish *Lakeview*.

Instead of addressing PSP's arguments head-on, POM, instead, proffers self-serving arguments regarding relevance and *its* inconvenience in seeking the information elsewhere. POM complains that it cannot immediately obtain the

3

information due to procedural reasons. Plaintiff's procedural gripes do not override PSP's significant articulated and demonstrated undue burden if it must produce a designee to provide testimony on everything skill-game or POM related since 2015. This undue burden, standing alone, warrants quashing regardless of POM's temporary impediments to obtaining the information it seeks.

In sum, the subpoena "must" be quashed under Rule 45—(i) because it causes on undue burden due to its overbreadth and impact on the Commonwealth Court litigation and, (ii) because it requires disclosure of privileged information. PSP's Motion should, thus, be granted.

**B.** **POM has not established that its subpoena is drafted with "reasonable particularity."**

POM attempts to argue that there is no limiting principle inherent to the phrase "reasonable particularity" and that the standard is met by simply providing generic "notice." This proposition is not supported by the case law. Indeed, courts have strictly enforced that requirement, sometimes characterizing the "reasonable particularity" requirement as mandating that the topics be designated "with painstaking specificity." *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000) (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) ("[T]he requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.")); *Memory Integrity, LLC*

*v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (quoting *Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) (To allow Rule 30(b)(6) "to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned.") (emphasis in original)).

Courts within the Third Circuit have said that deposition topics that lack all metes and bounds are facially overbroad and unduly burdensome. *See Fifth Third Bank v. Westwood Zamias Ltd. P'Ship*, 2019 WL 1383713 (W.D. Pa. Feb. 6, 2019); *FTC v. Am. Future Sys.*, 2022 U.S. Dist. LEXIS 81708, at *5, 2022 WL 1437562 (E.D. Pa. Apr. 8, 2022) (stating proposed topics that require witness to master unreasonably large body of knowledge or leave without in doubt about metes and bounds of subject matter fail reasonable particularity test); *see also Pres. Techs. Llc v. Mindgeek United States*, 2020 WL 10965163 (C.D. Cal. Oct. 19, 2020) (stating "deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome"). Thus, the "reasonable particularity" requirement is not simply an empty phrase—there must be fair parameters. Here, this standard has not been satisfied. The subpoena requires education on anything POM or skill game related since 2015—a universe of information without "metes and bounds."[1]

---

[1]    Further, unlike the cases cited by POM, this is not a case wherein the subpoena is targeted to a party regarding the allegations in the Complaint. *See Nippo Corp. Int'l Bridge Corp. v. AMEC Earth & Env't, Inc.*, 2009 WL 4798150, at *2 (E.D. Pa.

POM attempts to distinguish *Fifth Third Bank* by arguing that the subpoena in that case "effectively sought all information potentially related to the litigation" which "is a far cry from the detailed topics here." POM Brief, at 13.  POM maintains this position although it seeks all information related to state court litigation since 2015. *Fifth Third Bank* is not a "far cry" but rather a stone's throw from this matter. POM's argument that its notice satisfies the reasonable particularity requirement because it sets forth a lengthy list does not hold water.

C.   **POM's arguments regarding relevance are without merit.**

While relevance is not dispositive, POM's arguments about the relevance of the subpoenaed information necessitate a brief discussion. First, it is a matter of public record that PSP has long maintained that so-called "skill games," regardless of whether they are made by POM or its rival "skill game" makers like Banilla Games or Jenka Labs, are operated as gambling devices throughout the Commonwealth.[2]   Indeed, the 279 seized devices as referenced in PSP's press release for Beaver County were not POM devices; the seizure involved traditional

Dec. 11, 2009)(notice directed at plaintiff); *Mirlis v. Edgewood Elm Hous., Inc.*, 2023 WL 5981066, at *4 (D. Conn. Sept. 14, 2023) (notices directed at defendants).

[2]    PSP officials have testified before the gaming oversight committees of the General Assembly for years regarding the proliferation of so-called "skill games," their use as gambling devices, and the criminal activity associated with the operation of the devices.  Testimony for hearings on Jun. 10, 2019 & Oct. 30, 2019 before the House Gaming Oversight Committee may be found at https://www.pahousegop.com/Video/Gaming-Oversight/Page-1.

gambling devices, such as Cherry Masters, Pot O' Gold, New Fruit Bonus, and Deuces Wild Poker devices. Plaintiff's conjecture regarding the import of e-mails between individuals outside of PSP regarding how PSP operates is wrong.

By way of another example of an erroneous leap, POM references a meeting on March 18, 2019, which Mark Stewart, Richard Gmerick, and Sean Schafer "apparently had with representatives of the PSP."  POM then represents in its brief that this meeting represented an attempt "to persuade the PSP to modify its standard warrant language regarding allegedly illegal gambling" and to adopt a legal theory that POM's devices fit within the definition of a "slot machine" under the Gaming Act.  POM's statement that the meeting related to search warrants is untrue and is directly contradicted by the email attached by POM. The email (ECKERT011897-99) is devoid of any reference to "language" to be used in "search warrants," and in fact specifically relates to "language" to be used in proposed legislation ("So, we met with Tommy afterward and agreed to support the language that the State Police want, Tommy will begin to circulate a bill and Sean and I are to get sponsors.").

Furthermore, while POM also references a May 2, 2019 letter from the casino industry (PSP_000727-734) that "was evidently circulated to senior leadership of PSP" regarding their legal position on "skill games," the letter was actually sent to all four of the legislative caucus leaders with copies to the Governor and key members of the Governor's Office.  The letter was not directed to PSP, and given

7

that it was widely circulated, it is hardly a shock that the letter was given to PSP's leadership for review.  Regardless, the letter was not specific to POM, but addressed general issues involving "skill games."  Thus, while POM's arguments are beguiling, upon closer inspection, they lack merit. PSP is not immediately linked to the Defendant in this case.

D.      **<u>The subpoena should be quashed in lieu of a protective order</u>**.

The corporate designee subpoena is so defective that it warrants being quashed in its entirety. The 25 topics lack reasonable parameters and include a smattering of subject matters. The Court, nor PSP, should be required to scour through the notice to identify appropriate parts. Thus, the subpoena "must" be quashed and not simply modified. POM can seek the information it desires from the players directly involved.

## CONCLUSION

WHEREFORE, PSP respectfully requests that this Honorable Court grant its

Motion, and quash the subpoena.

                        **Respectfully submitted,**

            **By:**  *s/ Nicole J. Boland*

                   **NICOLE J. BOLAND**

**Pennsylvania State Police**        **Assistant Counsel**
**1800 Elmerton Ave.**            **Attorney ID 31406**
**Harrisburg, PA 17110**
**Phone: (717) 787-0338**       **BRENDAN J. O'MALLEY**
                         **Chief Counsel**
**nboland@pa.gov**

**Date:  October 18, 2024**      *Counsel for Pennsylvania State Police*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PACE-O-MATIC, INC.,                            :
                                   Plaintiff   :        No.  1:20-CV-292
                                                    :

               v.                            :
                                                    :

ECKERT SEAMANS CHERIN &            :
MELLOT, LLC, et al.                          :
                                                    :
                          Defendant  :

## CERTIFICATE OF SERVICE

I, Nicole J. Boland, Assistant Counsel for the Pennsylvania State Police,

hereby certify that on October 18, 2024, I caused to be served a true and correct

copy of the foregoing document to the following:

**VIA ELECTRONIC FILING**[3]

**Michael Nolan**
**Jeffrey Jensen**
**Husch Blackwell**
**8001 Forsyth Blvd, Suite 1500**
**St. Louis, MO 63105**
**314-480-1500**
**jeff.jensen@huschblackwell.com**
*Attorney for POM*

**Abraham C Reich**
**Fox Rothschild LLP**
**2000 Market St.**

---

[3]     Defendant initially attempted to file this brief on PACER, but the website was down, so this brief was emailed to counsel and Chambers and will be filed on the docket at the earliest opportunity.

**10th Floor**
**Philadelphia, PA 19103**
**215-299-2090**
**Email: areich@foxrothschild.com**
*Attorney for Eckert Seamans*

      *s/ Nicole J. Boland*
      **NICOLE J. BOLAND**