# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ECKERT, SEAMANS, CHERIN & | : | |
| MELLOTT, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **ORDER**

Before the court is a discovery dispute concerning whether a document produced to Plaintiff by a non-party was properly designated as confidential under the Stipulated Confidentiality Agreement and Protective Order.  (Doc. 196.) Specifically, Plaintiff, Pace-O-Matic, Inc. ("POM"), contends that non-parties Richard Gmerek ("Gmerek") and Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino, ("Parx") improperly designated a document confidential under the protective order.  POM then sought court intervention to strip the document of its confidential status.  After the disputants each filed their initial discovery dispute letters, Docs. 423, 427, & 429, the court granted leave for Gmerek and Parx to file supplemental letters that explained why the document should remain confidential under *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir. 1994).  (Doc. 437.) Parx and Gmerek each filed supplemental letters on September 26, 2024.  (Docs. 441, 442.)  POM filed a response to the supplemental letters on September 30,

1

2024.  (Doc. 443.)  Upon consideration of these submissions, the court will overrule POM's objection to the confidentiality designation.[1]

The document at issue is a task list ("Task List") that Gmerek's lobbying firm prepared for Parx's benefit.[2] (Doc. 423-1.)  Generally, the Task List summarizes lobbying-related actions and the status of those actions.  (*Id.*)  These actions together provide an overview of Gmerek's and Parx's non-public lobbying strategy designed to pursue Parx's objectives concerning skill games.  (*See* Doc. 429, pp. 8, 10.)[3]  Gmerek produced the Task List in this litigation in response to POM's third-party subpoena.  (Doc. 423, p. 1.)  In doing so, Gmerek designated the Task List as confidential under the protective order.  (*Id.*)

As the court previously explained:

> [T]he protective order permits a producing party to designate documents as confidential. (Doc. 196, p. 4.)[]  But, paragraph 14 of the protective order provides that a receiving party may move for the court to determine the designation status of the documents in the event of disagreement.  (*Id.* at 10–11.)

(Doc. 437, p. 2.)

---

[1] The court writes this order for the benefit of the parties as well as Gmerek and Parx and, thus, omits an overview of the factual and procedural history of the case, given their awareness of this case's history.

[2] The Task List is currently filed under seal as an exhibit to POM's initial discovery dispute letter.  (Doc. 423-1.)

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

When such a challenge is lodged, the party wishing to maintain confidentiality has the burden of proof, notwithstanding the terms of the protective order:

> Generally, when a dispute arises after the issuance of a protective order, "the party seeking to maintain the seal" of confidentiality has "the burden of proof with respect to those documents" at issue. [(Doc. 328, p. 4)] (citing *Pansy* . . ., 23 F.3d [at] 787 n.17 . . . .) As the court explained specifically to this case, even though paragraph 2(b) of the protective order places the burden on a receiving party to show that disputed materials do not warrant the designation of "confidential," the Third Circuit's *Pansy* and *Glenmede* opinions require, notwithstanding the protective order's terms, the burden to show good cause to remain with the party seeking to maintain the seal of confidentiality. *See id*. at 4 n.4 (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 481 n.8 (3rd Cir. 1995); *Oliveri v. U.S. Food Serv.*, 3:09-cv-0921, 2011 WL 13350508, at *2 (M.D. Pa. Jan. 13, 2011); *Chinniah v. E. Pennsboro Twp.*, 08-cv-1330, 2010 WL 11489088, at *2 (M.D. Pa. Nov. 18, 2010).)

(Doc. 437, pp. 2–3.)

*Pansy* and *Glenmede* recognized several non-mandatory, non-exhaustive factors to consider in evaluating whether good causes exists: (1) "whether disclosure will violate any privacy interests"; (2) "whether the information is being sought for a legitimate purpose or for an improper purpose"; (3) "whether disclosure of the information will cause a party embarrassment"; (4) "whether confidentiality is being sought over information important to public health and safety"; (5) "whether the sharing of information among litigants will promote fairness and efficiency"; (6) "whether a party benefiting from the order of

3

confidentiality is a public entity or official"; and (7) "whether the case involves issues important to the public." *Glenmede*, 56 F.3d at 483 (citing *Pansy*, 23 F.3d 787–91). Balancing these factors, the court finds good cause exists to keep the Task List confidential.

### A. Privacy Interest

The first factor considers the privacy interests at stake. Gmerek argues that he has a strong privacy interest in the confidential strategies contained in the Task List, especially since he and Parx still employ these strategies. (Doc. 441, p. 2.) (citing *Brand Energy & Infrastructure Servs. v. Irex Corp.*, No. 16-cv-2499, 2017 WL 9512135, at *4 (E.D. Pa. May 4, 2017)). POM offers several unavailing retorts. It faults Gmerek for relying on *Brand Energy*— a case involving trade secrets—because ordinary confidential business information is not entitled to the same level of protection as trade secrets. (Doc. 443, pp. 1–2.) But, just because trade secrets are entitled to higher degrees of protection does not mean Gmerek has no privacy interest in his confidential business information. *See Goldenberg v. Indel, Inc.*, No. 09-cv-5202, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012.) (collecting cases that found a legitimate privacy interest exists in preventing disclosure of confidential business information). Indeed, this court has found that disclosing non-parties' confidential business information would violate privacy

interests.  *United States v. Chromatex, Inc.*, No. 91-cv-1501, 2010 WL 2696759, at *6 (M.D. Pa. July 6, 2010).

POM further argues that Gmerek has minimal privacy interests in his lobbying activities because he is, as a lobbyist, a public figure.  (Doc. 443, p. 2.) The only support POM provides for this proposition is *Campbell v. Pennsylvania School Boards Association*, 336 F. Supp. 3d 482, 497–98 (E.D. Pa. 2018).  This case is inapposite.  *Campbell* explained that a lobbyist is generally considered a limited public figure for First Amendment purposes under the progeny of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  *Campbell*, 336 F. Supp. 3d at 497–98.  While *Pansy* instructs that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny," 23 F.3d at 787, it does not follow that private persons who happen to be lobbyists have minimal privacy interests, *per se*, in their confidential lobbying strategies for the purpose of discovery confidentiality designations.

Finally, POM argues Gmerek failed to explain how disclosure of the Task List would harm his or Parx's interests, since many of the listed action items "appear time-limited" and are unlikely to be ongoing.  (Doc. 443, p. 1.)  The court disagrees.  First, the fact that certain actions on the Task List appear "time-limited" hardly means that Gmerek is not continuing to employ similar strategies involving similar actions for Parx.  However, even the dissemination of previously executed

actions could undermine ongoing strategies.  Indeed, Gmerek's affidavit explains that public dissemination of his lobbying strategies would "vitiate" the strategies, provide an advantage to those with interests adverse to his client, and discourage clients from engaging him.  (Doc. 427-1, pp. 3–4.)  In sum, the court is convinced that Gmerek has a significant privacy interest in maintaining the confidentiality of the Task List and that disclosure of the Task List would harm Gmerek and his business.  This factor weighs strongly in Gmerek's and Parx's favor.

### B. Proper Purpose

The second factor considers the purpose for which the information is sought. Gmerek and Parx contend that POM intends to use the Task List in separate state court cases that a POM subsidiary has brought against Gmerek, other Parx consultants, and the Pennsylvania State Police.  (Doc. 441, p. 2; Doc. 442, p. 2.) Parx also argues that POM wants to use the Task List in the press.  (Doc. 442, p. 2.)  Both of these purposes are improper according to Gmerek and Parx.  On the other hand, POM responds that de-designation of the document would advance its interests in this litigation.  (Doc. 443, p. 2.)  Specifically, POM insists that the Task List's designation hinders its ability to speak with potential witnesses outside the confines of a deposition and, thus, limits POM's ability to assess those witnesses' relevant knowledge and the prudence of seeking their testimonies.  (*Id.*)

POM's purported justification for seeking de-designation lends credence to Gmerek's and Parx's argument.  It is not clear to the court that POM's ability to litigate this matter is hindered by the Task List's designation.  The mere fact that POM cannot have informal conversations with potential witnesses hardly inhibits its ability to prosecute its case.  POM is free to depose or to seek discovery from those it believes are associated with the Task List, and POM is not prohibited from using the Task List in this matter for "discovery and other trial preparation," as stated in the protective order.  (Doc. 196, p. 6.)  If POM were only to use the Task List for its stated objectives, POM would minimally benefit from de-designation.  This limited upside makes it unlikely that POM is pursuing de-designation solely for its stated purpose.

Moreover, POM's argument concerning the use of the Task List in state court proceedings does not move the needle.  POM contends that using the Task List in the state court actions would be proper, especially since its subsidiary would be able to obtain the Task List under Pennsylvania's discovery rules.[4] (Doc. 443, p. 2.)  Even if it were proper for POM's subsidiary to use the Task List in the state court proceedings, Gmerek has substantial privacy interests in the document and violating those privacy interests by stripping the Task List of all its

---

[4] It is not clear that POM's subsidiary would be able to obtain the Task List in discovery from all the parties involved in the state court cases.  For instance, it is unlikely the subsidiary would be able to obtain the task list from the Pennsylvania State Police.

protections under the protective order is unnecessary for POM to pursue that purpose.

Finally, the court takes note that POM failed to respond meaningfully to the contention it would use the Task List in the press.  Such silence is telling.  This factor weighs strongly in favor of Gmerek and Parx.

## C. Efficiency and Fairness

The fifth factor considers whether sharing information will promote efficiency and fairness among litigants.  Gmerek argues that maintaining confidentiality of the Task List would have no effect on the efficiency or fairness of the proceeding because the protective order already permits the use of confidential information in discovery and other trial preparation.  (Doc. 441, p. 3.)  Parx argues, in part, that it "would be eminently unfair" for non-parties to produce documents thinking they could rely on a protective order only to lose that protection.  (Doc. 442, p. 3.)  POM provides no specific rebuttal to Gmerek's and Parx's arguments.

This factor weighs in Gmerek's and Parx's favor.  There would be no discernable efficiency or fairness benefit if the Task List lost its confidential status. POM already can use it for discovery and trial preparation.  *Cf. Damiano v. Sony Music Entm't, Inc.*, 168 F.R.D. 485, 492 (D.N.J. 1996) (finding fairness and efficiency to be a non-issue when "[b]oth parties have equal access to all discovery

materials"). On the other hand, it would be unfair, absent compelling justification, for Gmerek to rely on a docketed protective order in responding to a third-party subpoena only to have the protection stripped. *See Cipollone v. Liggett Grp., Inc.*, 822 F.2d 335, 344 (3rd Cir. 1987) (suggesting justified reliance on a protective order can be reason to deny its modification). Accordingly, the fifth factor weighs in favor of Gmerek and Parx.

### D. Embarrassment

The third factor considers the embarrassment disclosure would cause. Gmerek argues that release of the Task List would cause him embarrassment "among his clients, potential clients, and competitors." (Doc. 441, p. 3.) These general allegations are not enough to support maintaining confidentiality. *Cf. Glenmede*, 56 F.3d at 484 ("General allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privilege documents is insufficient to justify judicial endorsement of an umbrella confidentiality agreement."). Thus, the third *Pansy* factor does not favor maintaining confidentiality.

### E. Matter of Public Interest

The fourth, sixth, and seventh factors all concern the public's interest in access to case information. Gmerek and Parx argue that this litigation involves private parties and does not concern matters of public health or safety. (Doc. 441,

p. 3; Doc. 442, p. 3.)  POM seemingly acknowledges that this is a dispute among private parties.  (Doc. 443, p. 3).  So, the sixth factor weighs in favor of maintaining confidentiality.

Notwithstanding the parties are private actors, POM contends that this case involves issues of public importance.  (Doc. 443, p. 3.)  The Task List is important to the public, according to POM, because it "identifies specific public officials and agencies" who were the subjects of Gmerek's and Parx's lobbying activities.  (*Id.*) POM's argument about the importance of public access to this document is disingenuous.  POM willingly stipulated to a confidentiality agreement and protective order.  (Doc. 196.)  Surely, it would not have done so if it were concerned with the public's access to case information.  Instead, their objections to discrete confidentiality designations make it appear that POM is trying to use the protective order as a sword and a shield.

Nevertheless, it is true that Gmerek's lobbying efforts are important to the public in that they try to influence public policy.  So, too, lobbying efforts related to skill games could presumably be important to public health and safety, broadly defined.  But, POM's stated purpose for seeking de-designation is to help it facilitate its own discovery in the case, not to disseminate the Task List to the public.  Thus, it is unclear how de-designation at this stage of litigation would benefit the public.  *See Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc.*,

10

No. 3:14-cv-00853, 2017 WL 928917, at *3 (M.D. Pa. Mar. 8, 2017) (finding public-health-and-safety factor did not support modification of protective order when party seeking modification had no plans to disseminate information to public). While these public-interest factors might slightly favor de-designation, they do not outweigh the factors that support maintaining confidentiality.

It is important to note that maintaining the confidentiality of the Task List during discovery does not preclude public dissemination of the Task List later in this litigation. *Pansy* does not govern the sealing of *judicial* records, such as exhibits to a summary judgment motion or a trial exhibit. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 675 (3rd Cir. 2019). That question is governed by the more exacting *Avandia* standard. *See id.* Accordingly, the ultimate determination of whether the Task List will remain shielded from public view if it is presented as a judicial record is a question for another day under a different standard. With each of these considerations in mind, further document-by-document challenges to confidentiality designations during discovery, absent compelling justifications, will be disfavored.

11

### CONCLUSION

A balancing of the *Pansy* factors supports maintaining the confidentiality of the Task List at this stage of litigation.  Therefore, **IT IS ORDERED AS FOLLOWS:**

1. Plaintiff's objection to the Task List's confidentiality designation is **OVERRULED**.  The Task List will remain confidential under the protective order.

2. The motions to seal concerning the filings of this dispute, Docs. 422, 426, & 428, are **GRANTED**.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 25, 2024