**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACE-O-MATIC, INC., | : | Civil No. 1:20-CV-00292 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ECKERT, SEAMANS CHERIN & | : | |
| MELLOTT, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Plaintiff, Pace-O-Matic, Inc. ("POM"), issued a subpoena for deposition testimony to non-party the Pennsylvania State Police ("PSP") pursuant to Federal Rule of Civil Procedure 45 ("Subpoena"). Accompanying the Subpoena was a Rule 30(b)(6) deposition notice. PSP now seeks to quash the Subpoena, arguing it subjects PSP to an undue burden and is an attempt to obtain privileged information and information protected from disclosure by a court order in a state lawsuit that POM filed against PSP. The court finds that PSP has failed to meet its burden to show that the Subpoena should be quashed in its entirety. The court will, therefore, will deny PSP's motion to quash. Nevertheless, PSP has raised legitimate concerns about the scope of the Subpoena. Thus, the court will order further argument by the parties as to how the Subpoena should be narrowed.

**BACKGROUND**

This case has an extensive history. The court only recounts here the facts necessary to resolve the instant dispute.

**A. The Present Lawsuit**

POM is a corporate entity that produces "electronic games of skill that are sold in Pennsylvania . . . and elsewhere." (Doc. 243, ¶ 1.) POM retained Defendant Eckert, Seamans Cherin & Mellott, LLC ("Eckert") "to provide legal services for itself and its affiliates concerning its skill games products." (*Id.*) POM alleges that while Eckert was representing POM, it was also representing entities in connection with lobbying efforts to ban the type of skill games that POM produces and sells. (*E.g.*, *id.* ¶¶ 29–32.) Needless to say, these entities' interests were directly adverse to POM's. In response, POM sued Eckert and Eckert lawyers Mark Stewart and Kevin Skjoldal (collectively, "Defendants"), claiming that Defendants breached their fiduciary duty to POM, among other claims. (*Id.* ¶¶ 112–20.).

POM alleges that Defendants breached their fiduciary duties by being involved in various campaigns to urge the banning of skill games. One such campaign is relevant to the present dispute. POM alleges that Defendants "actively encouraged Pennsylvania law enforcement authorities to take criminal and regulatory action against POM . . . and locations hosting POM game machines."

(*Id.* ¶ 36.)  So, too, POM alleges that Defendants "actively and repeatedly lobbied [PSP] and [its] Bureau of Liquor Control Enforcement to take criminal and regulatory action against POM."  (*Id.* ¶ 37.)  In response to this lobbying, according to POM, the "law enforcement agencies did seize POM machines," and these "law enforcement actions" caused POM "to defend or initiate several state-court lawsuits to ensure that it could continue to operate in Pennsylvania."  (*Id.* ¶¶ 37, 42.)

### B. Proceedings in State Court between POM and PSP

PSP avers that POM has sued it twice in Pennsylvania Commonwealth Court–once in 2018 and once in 2022.  (Doc. 438, p. 3.)[1]  The 2018 lawsuit ("2018 Lawsuit") is relevant to PSP's instant motion.[2]  PSP represents that POM filed the 2018 Lawsuit seeking a declaratory judgment that its skill game devices are legal under a Pennsylvania criminal statute that prohibits gambling devices.  (*Id.*)  During the course of the 2018 Lawsuit, POM served various document requests on PSP.  PSP objected to POM's discovery requests and then sought protective relief from the Commonwealth Court.  (*Id.* at 4.)  On May 25, 2023, the Commonwealth Court issued an order in the 2018 Lawsuit, stating that PSP "is not required to produce" three categories of documents: (1) "investigative information related to

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] That lawsuit is captioned *POM of Pennsylvania, LLC, v. Pennsylvania State Police, Bureau of Liquor Control Enforcement* and is docketed at number 503 MD 2018.

unlawful gambling devices manufactured by companies other than POM"; (2) "investigative information related to unlawful gambling devices manufactured by POM . . . for matters in which the investigation is ongoing or the administrative process is not completed"; and (3) "training materials." (Doc. 400-3, pp. 2–3.) On August 14, 202, the 2018 Lawsuit was stayed pending appeals to the Pennsylvania Supreme Court that concern the legality of POM's devices. (Doc. 438, p. 4.)

### C. Procedural History

In this lawsuit, PSP avers that it has produced third-party discovery to POM in response to a November 2022 document subpoena. (*Id.* at 5.) POM avers that it produced "over six thousand pages of documents" in response to POM's document requests. (*Id.*) POM then issued to PSP a subpoena for testimony along with a Rule 30(b)(6) deposition notice dated April 27, 2023. (Doc. 431-1, pp. 1–11.) The deposition notice included twenty-five fairly broad topics. (*Id.* at 8–11.)

On June 7, 2023, PSP responded with a variety of general and specific objections to POM's noticed topics. (*Id.* at 13–28.) PSP avers that it engaged POM in discussions on how to narrow the scope of its deposition. (Doc. 438, p. 7.) According to PSP, it did not want to produce information that was protected by the state-court protective over. (*See id.*) Evidently, no progress was made for over a year.

On July 3, 2024, POM filed an application with the Commonwealth Court to lift the stay in the 2018 Lawsuit for the limited purpose of clarifying that its May 25, 2023 order only applied with respect to the 2018 Lawsuit and not in other federal or state proceedings.  (Doc. 416-2, p. 1.)  The Commonwealth Court denied POM's request, explaining that "any discovery disputes in federal court are properly resolved by that court."  (*Id.* at 2.)

On July 11, 2024, PSP filed in this court a discovery dispute letter seeking protective relief with respect to POM's Subpoena.[3]  (Doc. 400.)  POM responded in opposition on July 22, 2024.  (Doc. 408.)  The court then granted PSP leave to file a motion to quash and/or for protective relief.  (Doc. 417.)  Specifically, the court granted leave for PSP to file a motion regarding three requests: (1) to "quash the subpoena for corporate designee testimony"; (2) to "require POM to seek the desired information elsewhere first"; or (3) to "limit the scope of the topics identified in" POM's Rule 30(b)(6) deposition notice.  (*Id.* at 2.)

PSP timely filed its motion to quash on September 9, 2024 and a brief in support on September 23, 2024.  (Docs. 431 & 438.)  POM responded with a brief

---

[3] PSP also sought relief with respect to POM's November 2022 document subpoena, but the court found that there was, in fact, no active dispute with respect to that subpoena.  (Doc. 417, pp. 1–2.)  POM stated in its opposition letter that it was "not currently requesting further documents from PSP."  (*Id.* (quoting Doc. 408, p. 5.))

in opposition on October 7, 2024.[4]  (Doc. 448.)  PSP filed a reply brief on October

19, 2024.  (Doc. 450.)  POM later filed a supplemental letter clarifying a position

in its brief in opposition.  (Doc. 462.)  PSP responded to POM's letter via a

supplemental letter of its own, and POM filed a reply letter in turn.  (Docs. 463 &

464.)  The court has considered these filings.  This dispute is now ripe for review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 45(d)(3) governs the quashing of a

subpoena.  Rule 45(d)(3)(A) states when a court *must* quash or modify a subpoena:

> (A) *When Required*.  On timely motion, the court for the district where
> compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits
> specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no
> exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

Although not enumerated in Rule 45, "courts have incorporated relevance as

a factor when determining motions to quash a subpoena."  *United States v.*

*Capone*, No. 3-cr-15-214, 2019 WL 108853, at *2 (M.D. Pa. Jan. 4, 2019) (quoting

---

[4] POM moved to file its brief in opposition under seal, because it discusses and attaches
documents that have been designated "Confidential" under the protective order governing this
case.  (Doc. 447-2 pp. 1–2.)  The court granted POM's motion to file under seal.  (Doc. 449.)

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)).  Indeed, a Rule 45 subpoena to produce documents must fall within the proper scope of discovery as defined by Rule 26(b)(1).  *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016).

These basic tenets have led courts to adopt a "serve-and-volley" approach to resolving motions to quash.  *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014).  First, the subpoenaing party bears the burden of showing that "its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1)." *Id.*  Once the subpoenaing party meets its burden, the burden moves to the subpoenaed non-party to show the requested information is protected from disclosure under Rule 45(d)(3)(A) or (B). *Id.*

## DISCUSSION

### A. Relevance

Discovery under the Federal Rules of Civil Procedure is broad.  *See* Fed. R. Civ. P. 26(b)(1).  Rule 26 generally permits discovery "of any items that are relevant or may lead to the discovery of relevant information."  *Wertz v. GEA Heat Exchangers Inc.*, No. 1:14-CV-1991, 2015 WL 8959408, at *1 (M.D. Pa. Dec. 16, 2015).  "Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or

may be in the case." *Green*, 314 F.R.D. at 171 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  This "broad vista for discovery" created by Rule 26(b)(1) "is essential to proper litigation," because it allows both parties to have "[m]utual knowledge of all the relevant facts."  *EEOC v. Princeton Healthcare Sys.*, Civil No. 10-4126, 2012 WL 1623870, at *18 (D.N.J. May 9, 2012) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  In determining the scope of what is relevant, the court "looks initially to the pleadings."  *Osagie v. Borough of State College*, 586 F. Supp. 3d 314, 322 (M.D. Pa. 2022) (quoting *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107, 111 (M.D. Pa. 2017)).

Here, POM alleges that Defendants "actively encouraged Pennsylvania law enforcement authorities"—including PSP and the Bureau of Liquor Control Enforcement—"to take criminal and regulatory action against POM."  (Doc. 243 ¶¶ 36–37.)  These efforts are one way, POM alleges, that Defendants breached the fiduciary duties they owed to POM.  These allegations go straight to the breach element of POM's claim for breach of fiduciary duty.  *See generally Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. Ct. 2020) (stating that the elements of a breach of fiduciary duty claim are (1) the existence of a fiduciary relationship; (2) the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff; and (3) the plaintiff suffered an

injury caused by the defendant's breach). POM's deposition topics plainly seek information concerning PSP's actions directed towards POM and whether Defendants had any sort of influence in bringing about those actions. These topics are plainly relevant to POM's allegations and claims against Defendants.

PSP's argument to the contrary is unpersuasive. PSP contends that POM's topics are not relevant to this case because POM has failed to evidence a "direct link between the Defendant[s] and PSP." (Doc. 438, p. 12.) Yet, POM has proffered several examples of documents it received in discovery to cast doubt on PSP's assertion. (*See* Doc. 448, pp. 7–11.) At the very least, POM's documents show that the Subpoena's topics are not wholly irrelevant to this lawsuit such that it should be quashed. Accordingly, the court will not quash the Subpoena in its entirety on the ground that the information sought is irrelevant to this lawsuit.

### B. Undue Burden

Under Federal Rule of Civil Procedure 45(d)(3)(A)(iv), a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). It is the responding party's burden to show that a subpoena will impose an undue burden. *Houser v. PowerDot, Inc.*, No. 1:22-MC-00836, 2024 WL 3165486, at *2 (M.D. Pa. June 24, 2024). Such burden is "particularly heavy." *Domestic Drywall*, 300 F.R.D. at 239 (quoting *Frank Brunckhorst Co. v. Ihm*, No. 12-cv-0217, 2012 WL 5250399, at *4 (E.D. Pa. Oct. 23, 2012)). The

responding party must show a "clearly defined and serious injury" and "that the subpoena is 'unreasonable and oppressive.'" *Houser*, 2024 WL 3165486, at *2. Factors to consider in identifying undue burden "include relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon Safety Prods. Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023) (non-precedential). Primary among these factors is the burden imposed. *See Domestic Drywall*, 300 F.R.D. at 239 (finding a subpoenaed non-party must show "clearly defined and serious injury" before the court will weigh other factors). The court considers the purported burdens on PSP and then turns to the other pertinent factors.

### 1. Burdens

PSP advances several arguments to explain why POM's subpoena would be unduly burdensome. None of them satisfy PSP's burden.

The first has to do with the scope of POM's subpoena. PSP complains that POM's notice includes twenty-five broad topics for the deposition, which allegedly would force PSP "to undertake the impossible task of educating itself as to every conceivable communication and document related to POM." (Doc. 438, p. 9.) This complaint is entirely conclusory. PSP fails to quantify or otherwise provide any sort of specificity as to how these twenty-five topics impose a burden. "Mere

assertions that compliance would be burdensome without any showing of specificity will not suffice." *Stokes v. Cenveo Corp.*, No. 2:16-cv-886, 2017 WL 3648327, at *2 (W.D. Pa. Aug. 24, 2017).

Relatedly, PSP argues that POM failed to notice topics for the deposition with "reasonable particularity" as required by Federal Rule of Civil Procedure 30(b)(6). (Doc. 438, p. 8–11.) PSP's argument appears to be that the lack of reasonable particularity leads to overly broad topics for which it would be unduly burdensome to prepare. The court does not find this argument persuasive.

"No judicial consensus exists concerning what 'reasonable particularity' means, and decisions vary widely about the level of specificity the test requires." *Fed. Trade Comm'n v. Am. Future Sys.*, No. 2:20-cv-02266, 2022 WL 1437562, at *2 (E.D. Pa. Apr. 8, 2022) *R. & R. adopted as modified*, 2022 WL 1423661 (E.D. Pa. May 5, 2022). Nevertheless, "topics that clearly define the subject matter and temporal scope of the testimony satisfy the rule." *Id.* Conversely, Rule 30(b)(6)'s "reasonable particularity" requirement generally prohibits, for example, topics "that lump together unrelated or marginally related subject matter"; "that would require a witness to master an unreasonably large body of knowledge"; that use broad language such as "including but not limited to" or "all facts supporting"; and "that would require a corporate representative to devote unreasonable time to preparation, to master detailed data-based subject matter, or testify about all of an

11

organization's answers to one or more sets of discovery covering varied subject matter." *Id.* at *2–3 (footnotes omitted) (collecting cases).

Here, the subject matter of the testimony POM seeks may be broad, but it is not undefined. POM's topics are all related to PSP's investigations of POM and Defendants' potential involvement with PSP. (See Doc. 431-1, pp. 8–11.) This case is a far cry from the cases to which PSP analogizes. *See Fifth Third Bank v. Westwood Zamias Ltd. P'ship*, No. 3:18-CV-143, 2019 WL 1383713, at *1–2 (W.D. Pa. Feb. 6, 2019) (finding subpoena did not satisfy "reasonable particularity" requirement when it sought testimony about "the allegations made by [the plaintiff] in the complaint . . . and all relevant matters related thereto."); *Unzicker v. A.W. Chesterston Co.*, No. 11-cv-66288, 2012 WL 1966028, at *5 (E.D. Pa. May 31, 2012) (quashing deposition subpoena that sought, *inter alia*, information about products from a thirty-year period, regardless of whether it was relevant to the litigation).

PSP raises legitimate concerns about the temporal scope, or lack thereof, of POM's subpoena. The court addresses that concern below. Yet, this lone concern is insufficient to quash POM's subpoena in its entirety on the ground that it does not detail the topics with reasonable particularity.

### 2. Other Factors

As noted above, the other factors courts must consider in analyzing undue burden include: "relevance, the need for the information requested, whether the information can be obtained by other means . . . the status of the recipient as a non-party, and the costs of compliance." *Rardon*, 2023 WL 5347298, at *2. The only factor that surely weighs in favor of PSP is that it is a non-party. *See Burgess v. Galloway*, Civil No. 20-06744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021) ("[A] non-party to litigation is afforded greater protection from discovery than a party."). The court is mindful of PSP's non-party status, but that status alone cannot carry its burden. The other factors either weigh in favor of POM—such as the relevance factor—or have not been meaningfully addressed by PSP. Indeed, PSP makes no specific argument as to why POM does not need the information requested, how POM may obtain the information by other means, or the cost it would incur to comply with the Subpoena. On this record, it is plain that PSP has failed to show an undue burden that necessitates quashing POM's Subpoena under Rule 45(d)(3)(A)(iv).

### C. Privileged and Protected Information

PSP also argues that this court must quash POM's subpoena pursuant to Rule 45(d)(3)(A)(iii), because it seeks privileged and protected information. PSP proffers two independent bases for its argument. First, PSP contends that POM's

topics seek to elicit privileged communications.  Second, PSP contends that POM

is attempting to use discovery in this lawsuit to obtain information that is protected

from disclosure by a court order in the 2018 Lawsuit.  Neither of these are

legitimate grounds to quash the subpoena in its entirety under Rule

45(d)(3)(A)(iii).

On the first argument, PSP insists that POM's topics would require the

disclosure of information protected by attorney-client privilege and the work

product doctrine.  Yet, PSP's brief fails to identify the specific requests that would

*require* the disclosure of privileged information.  The court can envision how some

topics might implicate privileged information, but it is just as plain that the topics

cover a significant amount of non-privileged information.  The fact that certain

topics may implicate some privileged information does not justify quashing POM's

Subpoena in its entirety.  Instead, the proper procedure would be for PSP to object

if and when POM asks questions that attempt to elicit privileged information.

*aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 777 (N.D. Ill.

2005); *cf. Kaiser v. Mut. Life Ins. Co. of N.Y.*, 161 F.R.D. 378, 380 (S.D. Ind.

1994) ("Protective orders prospectively suppressing depositions are rarely granted;

deponents are expected instead to assert their objections during the deposition and

to allow questioning parties to develop circumstantial facts in order to explore the

propriety of the assertion of the privilege, immunity, or other objection."); 8A

14

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2102 (3d ed. 2025) ("[T]he prospect that the witness may be asked questions that would be objectionable on privilege grounds is not a basis for failure to attend the deposition; instead, the witness must show up and objections can be made on privilege grounds to specific questions.")

On the second argument, PSP argues that POM's subpoena should be quashed because it inappropriately seeks discovery of information that is protected from disclosure in the 2018 Lawsuit.  It is true that courts are wary of litigants who try to use discovery in federal court "merely as a device to obtain evidence for use in some other proceeding in which discovery is less extensive."  8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2040 (3d ed. 2025); *accord Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, Civ. No. 22-4905, 2024 WL 378691, at *10 (D.N.J. Feb. 1, 2024) (denying motion to intervene when the proposed intervenor was attempting to gain access to discovery that it was not entitled to in a state-court lawsuit); *MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-CV-02220, 2016 WL 1273266, at *3 (N.D. Cal. Mar. 14, 2016) ("[A] court may stop a litigant from using federal civil discovery as part of 'a sham' to evade the discovery limits that apply in another case.")  Here, POM did not initiate this lawsuit in an attempt to obtain protected discovery from PSP.  So, too, POM's subpoena plainly covers topics that are not protected by the

state-court protective order. The court cannot conclude that POM's Subpoena is a "sham" or an attempt to abuse discovery in this case.

Courts are also hesitant to enforce subpoenas that would cause one to violate a court order in another proceeding. *See, e.g.*, *O'Neal v. Capital One Auto Fin., Inc.*, No. 2:10-CV-40, 2011 WL 2649711, at *3 (N.D. W. Va. July 6, 2011) (quashing subpoena seeking documents that a non-party received in another proceeding subject to a state-court protective order). Here, the state-court protective order simply states that PSP "is not required to produce" the protected information in the 2018 Lawsuit and does not provide a reason why the information is protected. (Doc. 400-3, pp. 1–3.) Based on the order itself, it is not apparent to the court that PSP would be violating the order if it were to testify about the protected categories information in this lawsuit. Indeed, the Commonwealth Court made clear that discovery disputes in this lawsuit are properly resolved by this court. (Doc. 416-2, p. 2.) Given these considerations, quashing POM's subpoena in its entirety is not warranted.

### D. Modifications to POM's Subpoena

Although PSP has failed to satisfy its burden to show that POM's subpoena must be quashed in its entirety, PSP has raised genuine concerns about the scope of POM's subpoena. For instance, the Subpoena is not temporally limited in any way. It also seeks information about "Pennsylvania Skill," which PSP contends

could refer to entities other than and unrelated to POM.  (*See* Doc. 431-1, p. 17.)
The court also agrees with PSP that POM's topics could touch on highly sensitive
issues—such as "unadjudicated files, communications with other governmental
agencies, and training materials"—that might have little probative value with
respect to POM's claims against Defendants.  (Doc. 438, p. 13.)  As written, the
court has doubts that the Subpoena is entirely within the proper scope of discovery
under Rule 26(b)(1).

POM, in the alternative, suggested some ways its Subpoena could be
narrowed, like limiting the applicable time period and "prohibiting testimony
regarding any investigation that has not already resulted in a court proceeding,
seizure, or forfeiture."[5]  (Doc. 448, pp. 22–23 n.4.)  These suggestions appear to be
a good start.  Yet, the court cannot say on this record that these modifications are
sufficient.

The court recognizes that nothing in its order granting PSP leave to file its
motion to quash precludes PSP from raising further scope challenges to POM's
subpoena in the future.  In order to minimize the costs and inefficiency that would
come with further litigation over this long-pending subpoena, the court will
exercise its discretion to fashion an expedited procedure to resolve PSP's

---

[5] In its supplemental letter, POM clarified that it would not seek testimony about an ongoing
criminal case against former POM employee Rick Goodling.  (Doc. 462, p. 2.)

legitimate scope concerns. *See In re Merck & Co. Inc. Sec. Derivatives & ERISA Litig.*, No. 2:05-CV-02367, 2012 WL 4764589, at *9 (D.N.J. Oct. 5, 2012) *aff'd*, 2012 WL 12904796 (Dec. 12, 2012) ("District courts have broad discretion in deciding discovery matters . . . to ensure that the court's resources are allocated in the most judicious and efficient manner."); *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D. Pa. 2008) ("Courts have significant discretion when resolving discovery disputes."). Such procedure is laid out in the implementing order to this memorandum.

## CONCLUSION

For the reasons set forth above, the court will deny PSP's motion to quash. However, recognizing that PSP has raised legitimate concerns regarding the scope of POM's Subpoena, the court will order further argument by the parties as to how the Subpoena should be narrowed. Given this, PSP's alternative request for a protective order is currently premature. The court will deny that alternative request without prejudice. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: May 12, 2025