**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

Agreed-Upon General Parameters For All 30(b)(6) Topics: (a) limiting the time frame for all Topics to March 7, 2018 to present (except that there is no agreement on a time frame for topics 3 and 4); (b) prohibiting testimony regarding any investigation that has not already resulted in a court proceeding, seizure, or forfeiture (except that there is no agreement on testimony regarding investigations that have not resulted in an adjudication by the Office of Administrative Law Judge); (c) in Topic 15, striking the phrases "their locations from the time of seizure to present" and "all chain of custody documents related thereto"; (d) in Topic 24, to the extent that the Topic involves "communications" or "writings" (other than those that constitute "policies" or "directives"), limiting the Topic to POM games; (e) PA Skill and Pennsylvania Skill are defined to mean those games owned by POM; (f) PSP maintains an ongoing objection to attorney-client privilege and attorney work product privileged materials and reserves the right to object on these bases at the deposition for each and every topic.

POM notes that the above paragraph was drafted by PSP and appears to be generally based upon limits POM proposed in its briefing. However, as POM discussed in the meet and confer and as set forth below, the above temporal limitation should not apply to topic 21 due to the fact that the time frame at issue regarding PSP's actions in response to the decision in *In re: Pace-O-Matic, Inc. Equipment, Terminal I.D. No. 142613*, No. M.D. 965-2013 (Beaver County C.C.P. December 23, 2014) would presumably have occurred prior to 2018. The additional verbiage above regarding PSP's objections is its alone and POM does not agree to it or otherwise endorse it.

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| 1. A description of all Communications relating to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming between You and any of the following persons: | Objection to the extent that this request seeks communications with these individuals that are unrelated to POM. Such communications are irrelevant, and the request is, thus, overly broad and unduly burdensome | A description of all Communications relating to ~~games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming~~ **POM or POM's devices** between You and any of the following persons… | This topic seeks all communications related to POM's games, regardless of what they are called. POM's games and/or devices are often referred to as "skill games." Therefore, any communications that could encompass POM's games is relevant. This would include any reference to "POM," "PA skill," "Pennsylvania skill," or "skill games." POM is not seeking |

1

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| a. Mark Stewart;<br>b. Kevin Skjoldal;<br>c. David (a/k/a Neil) Hittinger;<br>d. Kristine Marsilio;<br>e. Any other employee, officer, or owner of Eckert, including but not limited to any individual whose email address includes the domain "@eckertseamans.com."<br>f. Robert ("Bob") Green;<br>g. Thomas Bonner;<br>h. Bryan Schroeder;<br>i. Any other employee, officer, or agent of Parx;<br>k. Richard Gmerek<br>l. Pete Shelly<br>m. Adrian King<br>n. Senator Robert "Tommy" Tomlinson<br>o. Alex Urrea<br>p. Dave Thomas<br>f. Joseph Uliana | | | communications which are specifically focused on other manufacturers.  However, if there are communications between any of the identified individuals and PSP regarding POM's games, whether referred to specifically or generally, then they are relevant and discoverable.<br><br>However, in order to clarify the scope of this topic, POM agrees to strike the words ""~~gray market~~" ~~gaming, purportedly illegal gaming, or purportedly  unregulated gaming~~" and replace them with "**POM's games or skill games.**" |
| 2.  A description of all Communications between You and any other person | PSP specifically objects to this request because it would require PSP's | A description of all Communications (identified after a fulsome investigation) between You **and any** | POM does not agree that the topic should be limited to the persons |

2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| relating to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia". | corporate representative to review every email, pleading, investigation, court proceeding, document, news article, and reference to "POM" known to PSP, in addition to identifying every verbal communication regarding POM by any PSP employee. It is impossible for a corporate representative to identify and be conversant in every communication by any PSP employee since 2018. By way of further context, since that time, PSP has served under two different Governors, had various different legal staff, and it has had at least 2 Commissioners and several different directors of its Bureau of Liquor Control Enforcement (BLCE). Records would need to be compiled from innumerable sources in order to be compliant with the request, which is simply unreasonable. The | **person listed in Item #1**, ~~or any other person~~ relating to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia" since March 7, 2018. | listed in Topic #1 for the reasons stated below. PSP's objection seems to be primarily one of undue burden, but it fails to explain how or why the topic would be unduly burdensome. The fact that the time frame encompasses two different Governors and at least two Commissioners means nothing without further information. Did those Commissioners communicate with the Governors regarding POM's games? It would appear that PSP has not even made an inquiry into the matter. Perhaps no Commissioner spoke to either Governor about POM's games. Because PSP fails to identify how many potential communications are at issue or how many individuals might be involved, it has failed to establish any merit to its objection. The topic is clearly looking for communications with external individuals related to POM's games. Based on the current record, POM has a good faith basis to believe that Defendants, either directly or through other individuals, pressured PSP to target POM's games despite |

3

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | modified language is tailored for this lawsuit, which relates to the alleged influence by Eckert Seamans and the casino industry on PSP's enforcement efforts regarding POM and its machines, to the exclusion of all other so-called "skill games," which provides a reasonable universe of information to investigate. The bases of the foregoing objection(s) is that this request is onerous, disproportionate, irrelevant, and overly broad and burdensome. | | the fact PSP knew that every court that had adjudicated the legality of POM's games determined that they were legal games of skill.  In POM's opposition brief, it described communications Defendants had through Governor Wolf's office and Senator Tomlinson which were directed at PSP, attempting to get PSP to go after POM's games.  POM is entitled to explore PSP's communications with external individuals regarding POM's games to establish a link between Defendants and PSP's improper actions, whether it be direct or through other individuals.  For instance, if Mark Stewart met with a specific individual and convinced that person to pressure PSP to target POM's legal games of skill, then POM is entitled to obtain discovery on those communications.  It would be unreasonable to expect POM to simply take Mark Stewart's word for whether he had any such communications.  Defendants have refused to provide that information in response to POM's discovery requests.  POM should be permitted to explore these connections through |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | the agencies which Defendants were clearly trying to effectuate their campaign to drive POM out of business.<br><br>However, to clarify the scope of this topic, POM agrees to limit it to communications involving the BLCE, its chain of command, or any other person whose job duties involve gambling or skill games enforcement. |
| 3.  Your policy/agency position regarding the legality of any POM game and/or skill game; any change in position on that issue between January 1, 2016 and the present; the persons involved in any such change and the basis therefore, including the identify of any documents upon which such change is based or which memorialize the decision. | Objection to the scope and duration of time going back to 2016. This request would involve conferring with current POM employee Butler and former PSP Corporal Ricky Goodling, who retired from PSP in 2018 as director of the BLCE's "CAGE" Unit, overseeing gambling-related investigations, and became POM's Pennsylvania compliance director. These are persons over whom PSP has no control. A corporate representative from PSP cannot testify | Your policy/agency position regarding the legality of any POM game and/or skill game **and whether such games may be operated within establishments licensed by the Pennsylvania Liquor Control Board**; any change in position on that those issues between ~~January 1, 2016~~ **March 7, 2018** and the present; the persons involved in any such change**s** and the basis therefore, including the identify of any documents upon which such change is based or which memorialize the decision. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>PSP's objection as to the temporal scope is unreasonable.  PSP clearly changed positions as to targeting POM's games at several specific points in time.  It was a policy decision at some level above the rank-and-file PSP troopers. PSP is obviously aware of these stark changes in its policies or procedures and should be able to speak to the rationale for those changes, even going back to 2016.  The PSP is in the best position to determine who changed its position and why. As |

5

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | as to PSP's legal positions, arguments and policies related to so-called "skill games" (or even the subset of POM's games) dating back 9 years ago. Since 2016, PSP has served under two different Governors, received legal counsel from three (3) different General Counsels and three (3) different PSP Chief Counsels, and it has had three (3) different Commissioners and eight (8) different directors of its Bureau of Liquor Control Enforcement (BLCE). Given POM's contention that Eckert Seamans and/or the casino industry began to exert pressure on law enforcement in 2018, PSP can reasonably prepare a witness to testify as to the Department's position regarding the "legality" of the operation of so-called "skill games," such as POM's games, within licensed premises going | | PSP has repeatedly reminded this Court, there is other litigation going on regarding this very same topic. Thus, there is strong reason to believe that the PSP has institutional knowledge regarding the history of its enforcement against POM. POM has a good faith basis to believe that the changes PSP made as to its targeting of POM's games were caused by pressure by Defendants, either directly or through other specific individuals who were acting at the behest of Defendants to drive POM out of business. <br><br> POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above. <br><br> PSP's proposed edit "**whether such games may be operated within establishments licensed by the Pennsylvania Liquor Control Board**" unreasonably limits the scope of the topic such that it would render it meaningless. |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | back to 2018. In sum, PSP objects because this request is onerous, disproportionate, irrelevant, and overly broad and burdensome. This request further expressly seeks to elicit legal theories, strategies, and/or opinions/memos from either the Office of Attorney General or the Governor's Office of General Counsel, PSP objects to questioning on such privileged matters. | | |
| 4. A description of all Communications between You and any other person relating to a change in Your policy/agency position referenced in the preceding topic between January 1, 2015 and the present. | PSP has no objection to allowing a deponent to testify as to any and all communications between PSP and Eckert Seamans and/or the casino industry regarding any change in its "policy/agency position" regarding POM's games (with the exception of privileged communications). This request extends beyond POM's pleadings. PSP objects because this request is overly broad and unduly burdensome | A description of all Communications between You and any person **listed in Item #1** relating to a change in Your policy/agency position referenced in the preceding topics between ~~January 1, 2015~~ **March 7, 2018**, and the present. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above. PSP knows who was involved in its decision to target POM's games. POM has a good faith belief that PSP knows why it did so. This topic should not be limited solely to communications with the individuals listed in topic #1. POM is entitled to obtain discovery of the communications involved in PSP's policy change, regardless of whether they were directly involved with those persons or through intermediaries like |

7

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | and irrelevant. To the extent that this request seeks to elicit legal theories, strategies, and/or opinions/memos from either the Office of Attorney General or the Governor's Office of General Counsel, PSP objects to questioning on such privileged matters. | | Governor Wolf or Senator Tomlinson.<br><br>Likewise, PSP's objection as to the temporal scope is unreasonable.  It knows who, when, and why the changes were made and should not be permitted to artificially narrow the time frame to evade having to disclose those communications.  It is curious that PSP says that it has no objection to testifying about communications between PSP and Eckert or the casino industry but carves out "privileged communications."  PSP has asserted in its briefing to this Court that there was no contact between PSP and Defendants.  However, if that is the case, how could there be privileged communications about those contacts?  PSP objects to the extent this topic "seeks to elicit the legal theories, strategies, and/or opinions/memos from either the Office of Attorney General or the Governor's Office of General Counsel...."  If Defendants pressured PSP through the Office of Attorney General or the Governor's Office of General Counsel, then POM should |

8

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | be entitled to obtain discovery on those contacts.  At the very least, if PSP changed its position based on communications with those offices, then it should be required to admit as much so that POM may then pursue discovery of those individuals. |
| 5.  A description of all meetings, telephone calls, and videoconferences involving You, relating in any way to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming that were attended by any of the following or to which any of the following were invited:<br><br>a. Mark Stewart;<br>b. Kevin Skjoldal;<br>c. David (a/k/a Neil) Hittinger;<br>d. Kristine Marsilio;<br>e. Any other employee, officer, or owner of Eckert;<br>f. Robert ("Bob") Green; | Objection to the extent that this request seeks communications with these individuals that are unrelated to POM. Such communications are irrelevant, and the request is, thus, overly broad and unduly burdensome. | A description of all meetings, telephone calls, and videoconferences involving You, relating in any way to POM, "Pennsylvania Skill," "PA Skill," "Queen of Virginia," ~~games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming~~ that were attended by any of the following or to which any of the following were invited: | *See* POM response to Topic #1. |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| g. Thomas Bonner;<br>h. Bryan Schroeder;<br>j. Any other employee, officer, or agent of Parx.<br>k. Richard Gmerek<br>l. Pete Shelly<br>m. Adrian King<br>n. Senator Robert "Tommy" Tomlinson<br>o. Alex Urrea<br>p. Dave Thomas<br>q. Joseph Uliana | | | |
| 6.  A description of all Communications relating to any actual or proposed joint or coordinated efforts with casinos or participants in the gaming industry and/or their representatives relating to:<br>a. POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or<br>b. games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia. | Objection to the term "participants in the gaming industry" which is undefined and vague. | A description of all Communications relating to any actual or proposed joint or coordinated efforts with casinos or ~~participants in the gaming industry~~ individuals listed in Item #1 and/or their representatives relating to: a. POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; ~~or b. games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming~~ in either Pennsylvania or Virginia. | POM respectfully disagrees.  If PSP is communicating with individuals regarding POM's games, it should have a good idea whether they are participants in the gaming industry. However, POM is willing to clarify the topic as follows: A description of all Communications relating to any actual or proposed joint or coordinated efforts with casinos or ~~participants in the gaming industry~~ **persons representing casino interests, including but not limited to law firms, lobbyists, public relations professionals, and casino industry organizations**, and/or their representatives relating to…. |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | Furthermore, in order to clarify the scope of this topic, POM agrees to strike the words ""gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming" and replace them with "**POM's games or skill games.**" |
| 7.  A description of all Communications relating to any actual or proposed target or focus of Pennsylvania State Police related to:<br><br>a. POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; or b. games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming in either Pennsylvania or Virginia. | PSP objects because this request would require the deponent to review every page of every investigation conducted by PSP, or in which PSP was involved, relating to any unlawful gambling device or suspected gambling device at the Troop level or within BLCE, since 2018. Even if this was limited to POM's devices, the request remains overly broad and unduly burdensome. POM's proffered theory is that Eckert Seamans and/or certain casino representatives or entities directly influenced PSP's enforcement efforts. Thus, the relevant universe of information is | A description of all Communications **between You and any other person listed in Item #1** relating to any actual or proposed target or focus of Pennsylvania State Police related to: a. POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia"; ~~or b. games of skill, skill games, "gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming~~ in either Pennsylvania or Virginia. | *See* POM's response to Topic #1. POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above. PSP's objections of overly broad, unduly burdensome, disproportionate, and irrelevant are without merit.  Clearly, all communications relating to why PSP changed its position and started targeting POM's games are highly relevant.  POM has a good faith belief that Defendants, either directly or through intermediaries, pressured PSP to change its position and target POM games.<br><br>PSP's objection that this topic calls for attorney-client privileged information and work-product protected information suggests that POM's belief is accurate.<br><br>In its opposition brief, POM agreed to limit the time period from March |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
|  | "any communications" to or with the individuals listed in Item #1.PSP's objection is on the bases of the request being overly broad, unduly burdensome, disproportionate, and irrelevant. It also calls for attorney-client privileged information and work-product protected information and information squarely protected by the Commonwealth Court protective order. |  | 7, 2018 to the present. It also agreed that it would not seek testimony regarding any investigation that has not already resulted in a court proceeding, seizure, or forfeiture.<br><br>PSP's objection that the information is protected by the Commonwealth Court protective order is without merit. This Court has already ruled that the generalized order has no effect in the discoverability of information in this case.<br><br>In order to clarify the scope of this topic, POM agrees to strike the words ""gray market" gaming, purportedly illegal gaming, or purportedly unregulated gaming" and replace them with "**POM's games or skill games.**"<br><br>POM notes that this topic includes the undercover investigation referenced in POM's supplemental letter filing as it relates to POM (but not the criminal proceeding against Rick Goodling). PSP's attempt to characterize that investigation as solely an FBI investigation, suggesting that it had no |

12

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | involvement, appears to be inconsistent with other evidence, including statements under oath made by other PSP personnel. POM incorporates herein its response to the last topic in this chart, added by PSP. |
| 8.  A description of all Communications relating to Captain James Jones and Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia. | PSP objects because this request would require the deponent to review every page of every investigation conducted by PSP, or in which former Capt. Jones (former Director of Operations for the BLCE under former Maj. Scott Miller) has ever been involved relating to a POM device. The request particularly appears to be a "fishing expedition" for the pending lawsuits against PSP in the Commonwealth Court (docketed at 518 MD 2018 and 222 MD 2022).<br><br>PSP further objects to inquiries regarding specific investigations involving POM devices | A description of all Communications relating to former Captain James Jones **and any person listed in Item #1 regarding** Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>PSP's objection is without merit. POM attached to its opposition brief an affidavit by former PSP Trooper Leann Needham in which she stated that Captain Jones targeted POM's games – games which the PSP knew had been adjudicated as legal games of skill.  This information is highly relevant and not a fishing expedition.  Based on the other records submitted with POM's brief, it is obvious that Defendants were in direct contact with Major Miller, who PSP admits was Captain Jones' supervisor.  POM has a good faith basis to believe that Defendants, either directly, or through Major Miller, pressured Captain Jones to target POM's games.  The topic |

13

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
|  | (as described in the request - i.e., instructions from supervisors, notes, records, descriptions of the devices, etc.) except for any investigative information contained in closed and adjudicated citation cases that have already been provided voluntarily by PSP, or any investigations which may have been initiated at the request of the individuals in Item #1 or by casinos. PSP objects on grounds that this information seeks confidential law enforcement strategy, theory, investigative techniques, and sensitive information regarding open cases. Further, pursuant to the Protective Order entered in 503 MD 2018, "PSP is not required to produce investigative information related to unlawful gambling devices manufactured by POM (whether contained in administrative investigative reports |  | should not be unreasonably narrowed to only those individuals listed in topic #1.<br><br>PSP's objection to this topic "on grounds that this information seeks confidential law enforcement strategy, theory, investigative techniques, and sensitive information regarding open cases" is without merit. PSP has failed to support any such objection. A claim of law enforcement privilege requires a balancing of multiple factors: "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | (AIRs), Gambling Device Inspection forms, third party complaints about such devices, property records of seizures, gambling inspection summaries, inspection log entries, questionnaires used by enforcement officers, sample questions asked about such devices, intelligence memos or communications with other law enforcement agencies regarding such devices, all of which is requested by POM in the above discovery requests) for matters in which the investigation is ongoing or the administrative process is not completed." | | or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." *Carusone v. Kane*, No. 1:16-CV-1944, 2017 WL 5900429, at *2 (M.D. Pa. Nov. 30, 2017) citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342-44 (E.D. Pa. 1973).<br><br>To support a claim for the law enforcement privilege, "at least three requirements must be fulfilled.... [t]he head of the agency claiming the privilege must personally review the material, there must be a specific designation and description of the documents claimed to be privileged, and there must be 'precise and certain reasons for preserving the confidentiality of the |

15

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | communications." *Van Hine v. Dep't of State of Com.*, 856 A.2d 204, 208 (Pa. Commw. Ct. 2004). "Usually such claims must be made by affidavit." *Id.*<br><br>Here, PSP has failed to provide an affidavit from anyone, let alone the head of the agency. Nor has it identified the specific information it claims to be privileged or the precise and certain reasons for preserving the confidentiality of that information. None of the *Frankenhauser* factors support PSP's attempt to withhold the information sought in this topic. POM respectfully requests that that an evidentiary hearing be held on the matter in which PSP is required to provide testimony on the subject from the head of its agency.<br><br>As discussed above, the protective order issued in the Commonwealth case 503 MD 2018 has no bearing in this case. |
| 9. A description of all investigations in which Captain James Jones was | Objection to the extent that the request is vague as written. | **Confirming whether PSP conducted an investigation of former Captain James Jones which references** A̶ | PSP's objection is without merit. The topic is not vague. POM has a good faith belief that PSP |

16

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| the target of the investigation and involving Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia. | | ~~description of all investigations in which Captain James Jones was the target of the investigation and involving~~ Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia. | investigated Captain Jones' targeting of POM's games and that investigation might reveal the reasons behind his improper conduct, including his communications with Defendants or other intermediaries.  If there was such an investigation, then POM should be permitted to discover its findings and conclusions.  If there was no such investigation, then it should be an extremely short line of questioning. |
| 10.  A description of all Communications related to Captain James Jones, Sergeant Fischer, or any of your employees, agents, or officers providing direction or instruction or suggestion to anyone to look for, find, or target Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia games ("POM games") including but not limited calendar entries, notes, records, or minutes of meetings or briefings, descriptions or depictions of the POM games logo, descriptions regarding | PSP objects as this request would require the deponent to review every page of every investigation related to any licensee operating a POM device. The request is overly broad, disproportionate, and is "fishing expedition" regarding the two state lawsuits in which POM alleges that PSP "targeted" its devices (former PSP Captain James Jones is a named defendant in 222 MD 2022). PSP objects to the term "targeted," and | A description of all Communications ~~related~~ to or from **former PSP** Captain James Jones, **former PSP** Sergeant Fischer, or any of your employees, agents, or officers, **and any person listed in Item #1 regarding** providing direction or instruction or suggestion to anyone to ~~look for, find, or target~~ **take enforcement action specifically regarding** Pace-O-Matic, POM, "Pennsylvania Skill," "PA Skill," or "Queen of Virginia games ("POM games")… | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.

POM incorporates by reference its responses to the above topics as PSP's objections simply reiterate its earlier objections. |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| distinguishing POM games from Banilla games, instructions on writing reports related to seizure of POM games, instruction or descriptions characterizing the legality or illegality of the POM games, or instructions regarding communication with licensees of the POM games. | disagrees that POM was "targeted" as stated by POM. Further, this request is irrelevant. POM proffers that PSP personnel initiated investigations at the behest of Eckert Seamans and/or representatives of certain casinos. This request is far afield from that proffer.<br><br>PSP further objects to inquiries regarding specific investigations involving POM except for any investigative information contained in closed and adjudicated citation cases that have already been provided voluntarily by PSP or any investigations which may have been initiated at the request of the individuals in Item #1 or by casinos. PSP objects on grounds that this information seeks confidential law enforcement strategy, theory, investigative techniques, and sensitive | | |

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | information regarding open cases. Further, pursuant to the Protective Order entered in 503 MD 2018, "PSP is not required to produce investigative information related to unlawful gambling devices manufactured by POM (whether contained in administrative investigative reports (AIRs), Gambling Device Inspection forms, third party complaints about such devices, property records of seizures, gambling inspection summaries, inspection log entries, questionnaires used by enforcement officers, sample questions asked about such devices, intelligence memos or communications with other law enforcement agencies regarding such devices, all of which is requested by POM in the above discovery requests) for matters in which the investigation is ongoing | | |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
|  | or the administrative process is not completed."<br><br>PSP objects to producing "descriptions regarding distinguishing POM games from Banilla games, instructions on writing reports related to seizure of POM games, instruction or descriptions characterizing the legality or illegality of the POM games, or instructions regarding communication with licensees of the POM games," such would be considered training materials which are also protected. Further, these materials are irrelevant to this lawsuit.<br><br>The foregoing materials are irrelevant. The request is overly broad and unduly burdensome and disproportionate to the needs of the case. It seeks confidential law enforcement and legal strategies and theories and open files. |  |  |

20

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| 11.  A description of all training received by the Vice Unit or other specific Pennsylvania State Police Units related to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely protected by the Commonwealth Court protective order which precludes disclosure of training materials. As such, the request is modified for purposes of this lawsuit. | A description of ~~all~~ **any** training materials received by the Vice Unit or other specific Pennsylvania State Police Units **from any person listed in Item #1** related to games of skill, skill games, "gray market" gaming, purportedly illegal gaming, purportedly unregulated gaming, or POM games, including documents related to the cost of the training. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>PSP's objection is without merit. The affidavit of former Trooper, Leann Needham, establishes that PSP leadership specifically instructed officers to target POM games.  This occurred after Defendants and their co-conspirators met with then Governor Wolf, Senator Tomlinson, and representatives of PSP to go after POM's games.  The record clearly establishes that PSP did target POM's games.<br><br>The Commonwealth protective order has no bearing in this case.<br><br>PSP's attempts to re-write the topic would render it meaningless. |
| 12.  All grant applications submitted by the Monroe County District Attorney's Office to the Pennsylvania Gaming Control Board. | Objection. PSP cannot provide testimony on behalf of another agency. Testimony can be provided regarding PSP's own grant application sent to the PA Gaming Control Board and whether it was | All grant applications submitted by the **Pennsylvania State Police** ~~Monroe County District Attorney's Office~~ to the Pennsylvania Gaming Control Board, **limited to whether any information was provided by any person listed in Item #1 in obtaining a grant**. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>PSP's objection is without merit.  It fails to state that PSP has no |

21

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | based in whole or in part on information provided by the casino industry, but not as to content provided by another law enforcement entity which is not under the Governor's jurisdiction. | | information regarding the topic. Therefore, it should be required to provide testimony regarding that information.<br><br>POM has a good faith belief that Defendants and their co-conspirators manipulated local law enforcement to target POM's games by helping them to secure PGCB grant money to fund those improper activities. |
| 13.  All prepared remarks, slide decks, PowerPoint presentations, handouts, outlines, agendas, and other Documents reflecting or memorializing any aspect of the content of a training event delivered on or about September 28, 2021 by the Pennsylvania State Police's CAGE Unit. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely protected by the Commonwealth Court protective order which precludes disclosure of training materials. As such, the request is modified for purposes of this lawsuit. | **Any information or materials provided by any person listed in Item #1 incorporated into any** ~~All~~ prepared remarks, slide decks, Powerpoint presentations, handouts, outlines, agendas, and other Documents reflecting or memorializing any aspect of the content of a training event delivered on or about September 28, 2021 by the Pennsylvania State Police's CAGE Unit. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>PSP's objection is without merit. The affidavit of former Trooper, Leann Needham, establishes that PSP leadership specifically instructed officers to target POM games.  This occurred after Defendants and their co-conspirators met with then Governor Wolf, Senator Tomlinson, and representatives of PSP to convince them to go after POM's games.  The record clearly establishes that PSP did target POM's games.<br><br>The Commonwealth protective order |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | has no bearing in this case.<br><br>PSP's attempts to re-write the topic would render it meaningless. |
| 14.  A description of any actions taken by You or anyone on Your behalf who has conducted and an analysis of any POM game or POM software. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the state litigation. It also seeks information protected by attorney client privilege and work product privilege. | **Any instances in which a person listed in Item #1 requested** ~~A description of any actions taken by~~ You or anyone on Your behalf ~~who has~~ to conduct~~ed and~~ an analysis of any POM game or POM software. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>The topic is relevant to POM's claim that Defendants, either directly or through intermediaries, manipulated PSP to improperly target POM, seize its games, and pursue prosecution in those seizure cases.  POM has a good faith basis to believe that as part of their improper conduct, PSP, either on its own or through a retained expert, BMM Test Labs intrusively searched and examined POM Games in BLCE's custody. The inspections involved BMM's imaging a POM Game hard drive, attempting to decompile the POM Game's source code, and attempting to decrypt encrypted POM Game hardware (which BLCE provided from a POM Game related to a different seizure).  It did so without a court order and in violation of POM's intellectual |

23

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | property rights.<br><br>PSP's proposed modification would render the topic meaningless. |
| 15.  All seizures of POM games by You, their locations from the time of seizure to present, any testing or analysis of such games and all chain of custody documents related thereto. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the state litigation. It also seeks information protected by attorney client privilege and work product privilege. | **Whether any person listed in Item #1 was involved in any seizure of POM games by You, or directed any testing or analysis of such games.** ~~their locations from the time of seizure to present, any testing or analysis of such games and all chain of custody documents related thereto.~~ | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>This topic is relevant to show PSP's improper and unlawful conduct as set forth in the preceding response relative to attempting to decrypt POM's source code without a court order.  POM has a good faith belief that PSP did so due to the pressure Defendants put on PSP either directly or through intermediaries. Therefore, it should not be limited to persons listed in Topic #1. |
| 16.  A description of any evidence, and when and how acquired, regarding the play and operation, or the presence or absence of skill, of a POM game or POM software. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Moreover, this is overly broad as it can be applied to the investigation of every citation case involving | A description of any evidence, and when and how acquired, **that was provided by any person listed in Item # 1** regarding the play and operation, or the presence or absence of skill, of a POM game or POM software. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>This topic is relevant because PSP improperly targeted POM's games due to the pressure Defendants put on PSP either directly or through intermediaries when PSP knew that |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | gambling in which a POM device may have been operated within the licensed premises, regardless of whether the case has been adjudicated or not. Further, it seeks information squarely targeted at the state litigation. It also seeks information protected by attorney client privilege and work product privilege. | | POM's games were legal games of skill because the outcome of the game was predominately determined by skill.<br><br>PSP's objection as to the breadth of the topic is without merit.  PSP fails to provide any information regarding how many citation cases involve POM's games, whether the POM games differ, or whether the evidence of the game play differs among the games at issue. The fact of the matter is the gameplay involving skill is the same among all of the games.  It is commonly referred to as the "follow me" phase of the game.<br><br>As for PSP's reference to whether or not a case has been adjudicated or not, POM incorporates by reference its response to PSP's objections to Topic #8 regarding PSP's failure to properly invoke the law enforcement privilege.<br><br>POM has agreed that it would not seek testimony regarding any investigation that has not already resulted in a court proceeding, |

25

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | seizure, or forfeiture.<br><br>PSP's proposed modification would render the topic meaningless. |
| 17.  A description of all communications with PGCB regarding the POM games or POM software and the participants and purpose of those communications. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the state litigation. It also seeks information protected by attorney client privilege and work product privilege. | A description of all communications with PGCB regarding the POM games or POM software **involving the individuals in Item #1** ~~and the participants~~ and purpose of those communications. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>This topic is relevant to POM's claim that Defendants either directly or through intermediaries pressured PSP to target POM's games. Defendants campaign to drive POM out of business included pressure on the PGCB to declare POM's games illegal and to get the PGCB to provide grant money to law enforcement agencies to go after POM's games.<br><br>PSP's proposed modification would render the topic meaningless. |
| 18.  A description of any and all exculpatory evidence regarding the POM games or POM software and when it became known to the Pennsylvania State Police. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the | A description of any and all exculpatory evidence regarding the POM games or POM software **which may have been received from any person listed in Item #1** and when it became known to the Pennsylvania State Police. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>This topic is relevant to POM's claim that Defendants either directly or through intermediaries pressured |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | state litigation. It also seeks information protected by attorney client privilege and work product privilege. | | PSP to target POM's games. The fact of the matter is that PSP knew that POM's games were legal games of skill yet still targeted them. POM has a good faith basis to believe that PSP's improper motives were influenced by Defendants' pressure campaign.<br><br>As described in the Presentment POM attached to its February 3, 2025 letter supplementing the briefing on this dispute, PSP placed an undercover Trooper, Ryan Kelly, inside POM for over 3 years. No charges were filed against POM as a result of that investigation. To the contrary, the presentment acknowledged that POM's games were determined by a court to be legal games of skill and found no wrongdoing on the part of POM.<br><br>That undercover operation was initiated and continued by PSP without a court order or legal authority. POM has a good faith belief that Defendants were the impetus for that undercover investigation. |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
|  |  |  | PSP claims that the investigation was conducted solely by the FBI and not PSP. *See* last topic in this chart. That contention appears to be inconsistent with other evidence, including statements under oath by PSP personnel that characterize the investigation as a PSP investigation, as well as representations that have been made by personnel from the Office of Attorney General.<br><br>POM respectfully requests that an evidentiary hearing be held on this matter to resolve any factual disputes. If the Court grants this request, POM intends to subpoena witnesses who will testify as to PSP's true role in the investigation. Those witnesses will include PSP Troopers John Eissler and Frank Pawlowski, who in the Affidavit of Probable Cause related to the investigation, swore that they "reviewed the Presentment and find that the factual findings described therein correspond to the **Pennsylvania State Police investigative findings**." (Emphasis added). They further swore that they "have reviewed the evidence |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | presented to the Grand Jury and find that it comports with the result of the **Pennsylvania State Police investigative efforts** and findings as to the allegations contained in this complaint." (Emphasis added.)<br><br>PSP's proposed modification would unreasonably limit the topic. |
| 19.  An identification of the highest ranking member of the Pennsylvania State Police who authorized or directed the seizure of POM games in Dauphin County on March 14, 2023, from the Herr Street Stop. A description of all personnel also involved in the implementation of the decision to conduct the seizure of March 14, 2023. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the state litigation. | **Whether any person listed in Item #1suggested or in any way requested that You seize** ~~An identification of the highest ranking member of the Pennsylvania State Police who authorized or directed the seizure~~ of POM games in Dauphin County on March 14, 2023, from the Herr Street Stop. ~~A description of all personnel also involved in the implementation of the decision to conduct the seizure of March 14, 2023~~. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>This topic is relevant to POM's claim that Defendants either directly or through intermediaries pressured PSP to target POM's games, including the seizure of POM's games on March 14, 2023.<br><br>PSP's proposed modification would unreasonably limit the topic. |
| 20. A description of all communications, from within the Pennsylvania State Police, and with any entity or individual from another state agency or from outside of the Pennsylvania State Police regarding this seizure. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the | A description of all communications, from within the Pennsylvania State Police, and with any entity or individual **from with any person listed in Item #1** ~~from another state agency or from outside of the Pennsylvania State Police~~ regarding this seizure. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above.<br><br>This topic is relevant to POM's claim that Defendants either directly or through intermediaries pressured |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | state litigation. It also seeks information protected by attorney client privilege and work product privilege. | | PSP to target POM's games, including the seizure of POM's games on March 14, 2023.  POM is entitled to know about any communications whether internal to PSP, between PSP and another agency, or between PSP and any external person, regarding the seizure. If those communications are protected by the attorney client privilege or work product protection, then PSP may object at the deposition to the extent a question would call for the disclosure of such information.<br><br>PSP's proposed modification would unreasonably limit the topic. |
| 21.  A description of all communications, training actions or directives, or policies that resulted from the decision in In re: Pace-O-Matic, Inc. Equipment, Terminal I.D. No. 142613, No. M.D. 965-2013 (Beaver County C.C.P. December 23, 2014). | PSP objects to this request in its entirety. This request is overly burdensome. Among other reasons, the BLCE Director at the time of the decision was Thomas Butler (who retired from PSP in April 2016 and immediately began working for POM), and PSP's corporate representative cannot speak to | n/a | It should be noted that this topic should **not** be limited to the time frame set forth in POM's opposition brief because this topic, like topics 3 & 4 necessarily pre-date the March 17, 2018 time frame.<br><br>This topic is relevant because following the 2014 Beaver County decision in which the Court adjudicated POM's games and found them to be legal games of skill, PSP made the decision not to target skill |

30

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | "communications, training actions or directives, or policies" that he may have instituted or directed. PSP further objects to this request as it relates to training materials of the PSP (which were specifically protected by the Commonwealth Court in its Protective Order). Moreover, "all communications" resulting from the Beaver County decision is simply too broad and again would involve the review of every investigation and email of every PSP employee going back 11 years. PSP further objects as the request, at least with regard to "policies" is subsumed within Item #3. It should be noted that the subject of this lawsuit is not whether PSP developed different legal and enforcement strategies involving POM and its devices which were different from a | | games. PSP later changed its position and began targeting POM's games after Parx CEO Bob Green ordered Mark Stewart and Dick Gmerek "we have to go on the offensive with this and get a successful prosecution" against skill games. Several months later, Gmerek forwarded Green a press release regarding the PSP's recent seizures of hundreds of skill games in Beaver County. In the subject line Gmerek wrote "How'd we do???". POM has a good faith basis to believe that PSP issued communications to its officers following the Beaver County decision in which it informed Troopers that POM's games were legal games of skill and that it began improperly targeting POM's games only after Bob Green ordered Mr. Stewart to "get a successful prosecution" of those games.<br><br>POM incorporates by reference its response to PSP's objections to Topic #3. |

31

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | former PSP Major who became a POM employee. The allegations of the lawsuit involve the extent to which, if at all, Eckert Seamans and representatives of the casino industry influenced PSP's enforcement efforts relative to POM and its devices. Finally, the majority of such items are going to contain privileged attorney/client information and attorney work product involving the impact of the court of common pleas decision involving one version of POM's devices. Unlike other requests, this request has absolutely nothing to do with the instant lawsuit, therefore PSP cannot suggest modifications to make it agreeable. | | |
| 22. A description of all communications with BMM Testlabs or Peter Nikiper regarding the testing or evaluation of POM games or POM software. | Objection to the scope and relevance of this request, because it untethered from the instant lawsuit against Eckert Seamans. This | n/a | POM incorporates by reference its response to PSP's objections to Topics # 14 & 15. |

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | request is not relevant to any POM claim set forth in its pleadings or filings. Further, PSP and POM entered into a Joint Protective Order in 503 MD 2018 providing, in pertinent part: "Until disposition of the underlying declaratory judgment action brought by POM, BLCE is prohibited from any forensic technical analysis of hardware and/or software of POM Games unless POM is notified of and agrees to the analysis. If, after reasonable notice, an agreement has not been obtained, BLCE reserves the right to submit an appropriate application to this Court, including a motion to compel the production of the source code "programming" for the devices at issue in this matter." PSP is willing to have a corporate representative testify that they remain compliant | | The Commonwealth protective order has no bearing in this case |

33

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | with this Order. Otherwise, whatever analysis PSP may have conducted prior to that, unless directed or requested by Eckert Seamans or the individuals listed in Item #1, has no relevance whatsoever to the instant lawsuit and appears to be aimed at advancing unrelated litigation. | | |
| 23. A description of any attempt, instance or effort to examine POM software by You or any third Party on Your request or behalf. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is not relevant. Further, it seeks information squarely targeted at the state litigation. It also seeks information protected by attorney client privilege and work product privilege. | A description of any attempt, instance or effort to examine POM software by You or any third Party on Your request or behalf since entering into the Joint Protective Order (docketed at 503 MD 2018) entered into between POM and PSP on April 18, 2023. | POM incorporates by reference its response to PSP's objections to Topics # 14, 15, & 22.<br><br>POM does not agree to PSP's proposed modifications to this topic. The Commonwealth protective order has no bearing in this case. |
| 24. A description of all communications, writings, policies or directives prepared by Major Scott Miller regarding Skill games or POM games. | PSP objects because this request is untethered from the allegations of this lawsuit, is disproportionate, and seeks information that is | A description of all communications, writings, policies or directives prepared by **former PSP** Major Scott Miller regarding ~~Skill games or~~ POM games **as a result of information received by individuals listed in Item #1**. | POM does not agree that the topic should be limited to the persons listed in Topic #1 for the reasons stated above. |

34

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | not relevant. Further, it seeks information squarely targeted at the state litigation (former PSP Major Scott Miller is a named defendant in 222 MD 2022). It also seeks information protected by attorney client privilege and work product privilege. | | This topic is relevant to POM's claim that Defendants directly or through intermediaries, pressured PSP to target POM's games. The records produced in this case show direct communications between Defendants and their co-conspirators and Major Miller regarding skill games.<br><br>PSP's proposed modification would unreasonably limit the topic. |
| 25. A description of any and all communications between you and District Attorney Ryan Sayers or Peter Weeks regarding POM games or POM software, including but not limited to issues regarding seizures of such games and the lack of basis for such seizures. | Pursuant to the Protective Order entered in 503 MD 2018, "PSP is not required to produce investigative information related to unlawful gambling devices manufactured by POM (whether contained in administrative investigative reports (AIRs), Gambling Device Inspection forms, third party complaints about such devices, property records of seizures, gambling inspection summaries, inspection log entries, questionnaires used by enforcement officers, sample questions | n/a | This topic is relevant to POM's claim that Defendants directly or through intermediaries pressured PSP to target POM's games. This pressure campaign included PSP's work with DA Sayers and Weeks in prosecuting seizure cases.<br><br>The Commonwealth protective order has no bearing in this case.<br><br>POM does not seek any communications related to games made by other manufacturers. |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
|  | asked about such devices, intelligence memos or communications with other law enforcement agencies regarding such devices, all of which is requested by POM in the above discovery requests) for matters in which the investigation is ongoing or the administrative process is not completed. " Further, with regard to investigations of other so-called "skill game" devices, "PSP is not required to produce investigative information related to unlawful gambling devices manufactured by companies other than POM (whether contained in administrative investigative reports (AIRs), Gambling Device Inspection forms, third party complaints about such devices, property records of seizures, gambling inspection summaries, inspection log entries, questionnaires |  |  |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | used by enforcement officers, sample questions asked about such devices, intelligence memos or communications with other law enforcement agencies regarding such devices, all of which is requested by POM in the above discovery requests)." Given that the instant lawsuit relates only to the alleged influence exerted by Eckert Seamans and certain casino representatives and lobbyists. there is no reason whatsoever for the Commonwealth Court's Protective Order to be essentially voided at POM's request. | | |
| **New Request** | **PSP Objection** | **PSP Proposed Modification** | |
| Although not included in the original request, POM has indicated that it intends to seek information regarding the FBI investigation, of which POM previously notified the Court (and indicated that it would not be seeking | PSP wholly OBJECTS to use of the subpoena to seek this testimony. This is another apparent attempt to misuse the subpoena to gain information for purposes unrelated to this lawsuit. This information is | | As discussed above, PSP's statements appear to be inconsistent with other evidence, including statements under oath made by other PSP personnel. Other evidence, including statements under oath by PSP personnel, indicate that PSP initiated an investigation against |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| information regarding), involving PSP undercover informant Ryan Kelley, and criminal charges Ricky Goodling. | irrelevant to the lawsuit against Eckert Seamans. PSP further OBJECTS because this is an investigation that has not yet been prosecuted, and it is an FBI investigation, not a PSP investigation. PSP is not in a position to provide, is not the authoritative source, and should not be compelled to disclose any information related to this federal investigation. This new request is harassing, burdensome and disproportionate to the needs of the case. | | POM involving its undercover Trooper Ryan Kelly and continued that investigation for over three years.  The FBI was involved for a time but ceased its involvement as it relates to POM because it found no wrongdoing on the part of POM.<br><br>POM stated in its supplemental letter dated February 3, 2025 that it did not seek testimony regarding the pending criminal case against Rick Goodling.  However, POM went on to state that it continued to seek discovery of the origin of the investigation against POM.  POM has a good faith belief that Defendants either directly or through intermediaries were the source of the complaints which started the investigation. That information is highly relevant to POM's claims against the Defendants.<br><br>POM respectfully requests an evidentiary hearing on the matter to resolve any factual disputes.  If the Court grants this request, POM intends to subpoena witnesses who will testify as to PSP's true role in the investigation. Those witnesses |

HB: 4916-9010-9513.2

**PSP Objections to POM 30(b)(6) Subpoena & POM Responses**
*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC, 1:20-cv-292*

| Original Request | Outstanding Objection | PSP Proposed Modification | POM Response |
|---|---|---|---|
| | | | will include PSP Troopers John Eissler and Frank Pawlowski, who in the Affidavit of Probable Cause related to the investigation, swore that they "reviewed the Presentment and find that the factual findings described therein correspond to the **Pennsylvania State Police investigative findings**." (Emphasis added). They further swore that they "have reviewed the evidence presented to the Grand Jury and find that it comports with the result of the **Pennsylvania State Police investigative efforts** and findings as to the allegations contained in this complaint." (Emphasis added.) |

HB: 4916-9010-9513.2