

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

June 20, 2025

Nicole J. Boland, Esq.
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110
Phone (717) 678-9654
nboland@pa.gov

The Honorable Jennifer P. Wilson
United States District Judge
Middle District of Pennsylvania
Sylvia H. Rambo United States Courthouse
1501 N. 6th Street
Harrisburg, Pennsylvania 17102
**_Via Electronic Filing_**

**Re:** **_Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC_, 1:20-cv-292**

Dear Honorable Judge Wilson,

In accordance with the June 6, 2025, Order of Court (Doc. 470), the Pennsylvania State Police ("PSP") submits this letter regarding Plaintiff POM's proposed modifications to Topics 1, 2, 5, 6 and 7 of the Rule 30(b)(6) subpoena.

PSP will agree to POM's proposed modification for Topics 1 and 5 because it is limited to communications with reasonably identifiable persons, creating a manageable universe.

PSP does not agree to the modifications proposed for Topics 2, 6, and 7. As a first point, while PSP is willing to agree to generally discuss POM and its devices and "skill games" for Topics 1 and 5—that is because the universe of information is narrowed through the listing of reasonably identifiable individuals. Without that limitation, the request to discuss all communications involving POM and "skill games" generally since 2018 is an impossible task for Topics 2, 6, and 7. Use of the term "skill games" expands the subject matter far beyond POM's own devices, despite POM's statement that it "is not seeking communications which are specifically focused on other manufacturers." While POM characterizes its devices as "skill games" or "games of skill," so does every manufacturer or vendor of devices which claim that their devices should not be considered gambling devices under the Pennsylvania Crimes Code.[1]

---

[1]  The test for determining whether a machine is an unlawful gambling device *per se* is whether the element of "chance" <u>predominates</u> the element of skill in determining the outcomes presented to a player of the games. In



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

Complicating matters even further, even POM has publicly acknowledged that there are, in its opinion, "illegal machines masquerading as skill games." "Skill games" is not a statutory nor PSP-coined term; it is a catchphrase used generally by manufacturers and vendors of certain devices, establishments possessing them, and members of the General Assembly and the media to describe such devices within convenience stores, bars, clubs, and other establishments.  In sum, POM is not the only manufacturer which describes its devices as "skill games." Thus, POM's contention that modifying Topics 2, 6, and 7 to include "**skill games**" (but eliminating terms like "purportedly illegal gaming") would limit the scope of the deposition is disingenuous. POM's proposed modification takes the parties back to square one, reinstating the language of these topics in the subpoena. Requiring a corporate representative to go through every investigative file, forfeiture action, or adjudication, whether it involves POM or some other manufacturer, as well as each email and interview involving every former and current employee regarding any meeting, telephone call or conversation he or she had on the topic of "skill games" is overly burdensome and lacks reasonable particularity.

Furthermore, Topics 2, 6 and 7 remain unmanageable in requesting every communication related to POM. POM's proposed modifications would still require a review of innumerable communications including past and current employees over the span of years. While POM offered a limit based on the job duties of PSP personnel, this would involve all former and current employees of at least two entire bureaus within PSP, the Bureau of Liquor Control Enforcement and the Bureau of Gaming Enforcement, which combined have more than <u>330 current employees</u>. PSP would have to conduct individual interviews of every current and retired employee (who is able and willing) about any communications, telephone calls, or meetings the employee had involving POM and its devices, including with any licensee that was investigated for allowing gambling to occur within its premises through the operation of a POM device. PSP would have to inquire into: all communications with OAG, and in-house counsel, regarding POM's litigation against PSP; all discussions regarding the prosecution of all citation matters involving a POM device; and all communications with District Attorney's offices regarding POM and its devices. It further encompasses unadjudicated citation matters before the Office of Administrative Law Judge,[2] and any other communications involving a POM device that any

---

2019, in a return of property case involving "SkillTouch Machine" devices made by Gracie Technologies, the Cambria County Court of Common Pleas (affirmed by Commonwealth Court) held that the devices were gambling devices even though Gracie referred to its games as "games of skill" or "skill games." Conversely, in 2022, certain versions of devices made by Banilla Games, which are also marketed as "games of skill," were determined by the Luzerne County Court of Common Pleas (affirmed by Commonwealth Court) to not be gambling devices *per se*.

[2]    While POM notes that it does not seek testimony "regarding any investigation that has not already resulted in a court proceeding, seizure, or forfeiture," this language is focused on litigation involving the **return** of the devices to its owners. However, there remain multiple administrative citation cases involving the operation of POM devices (i.e., were patrons allowed to gamble within the licensed premises using POM's devices) which have been stayed pending the appeals before the Pennsylvania Supreme Court. PSP objects to providing any information about those cases, regardless of whether there was a court decision related to the return of the devices.



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

such employee has had over the last seven years. This implicates privileged information (attorney-client, work product and deliberative process privileges) and it is an unreasonable, overly broad, and unduly burdensome request for a corporate representative. If POM has learned, through discovery, of additional <u>individuals</u> with casino ties that made outreach to PSP employees that it wished to add to these topics, those names could have been proposed. Topics 2, 6, and 7 should be tethered to the lawsuit.

In addition to the foregoing issues, regarding Topic 6, POM rejected PSP's modification to POM's vague request involving "participants in the gaming industry." POM proposed the alternative language of "persons representing casino interests, including but not limited to law firms, lobbyists, public relations professionals, and casino organizations, and/or their representatives relating to…." While this is admittedly better than POM's original request, PSP is not in a position to opine on who may have been working for or with such business interests. POM, on the other hand, has specifically identified a list of individuals affiliated with such businesses who it believes may have had contact with PSP based on discovery between the parties to-date, and it could have proposed more names. PSP maintains its objection to POM's proposed modification and requests that Topic 6 be limited to individuals and entities listed in Topic 1, which already includes individuals associated with Defendant and Parx Casino.

Finally, it should be noted that, contrary to this Court's Order directing POM to confer to narrow its requests, POM has *added* a topic that it contends is subsumed in Topic 7. Particularly, POM now wants information regarding the "undercover investigation referenced in POM's supplemental letter filing as it relates to POM (but not the criminal proceeding against Rick Goodling)." PSP objects to any questioning related to these matters. PSP cannot answer any questions related to investigations as they implicate grand jury information and/or, to PSP's knowledge, involve investigations of the FBI and/or IRS. The state charges emanated from grand jury proceedings, and while the Presentment and certain limited disclosures were unsealed by the supervising judge, all matters occurring before the grand jury for those investigations remain under seal. Therefore, no PSP witness can answer any question related to the state charges which remain pending against Mr. Goodling.  *See* 42 Pa. C.S.A. § 4549.

PSP very much appreciates this opportunity to respond.

Very Truly Yours,

<u>*s/ Nicole J. Boland*</u>
Nicole J. Boland
Assistant Chief Counsel for Litigation
Pennsylvania State Police

cc: Counsel of record

3